**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-02804-DAP |
| OptumRx and Express Scripts cases listed in ECF Nos. 5546-1, 5547-1, 5548-1, 5565-1 | Judge Dan Aaron Polster |

**THE PBMS' JOINT OPPOSITION**
**TO PLAINTIFFS' OMNIBUS MOTIONS FOR LEAVE TO AMEND**

[PART II]

## TABLE OF CONTENTS

**Page**

1. *City of Lorain v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45000-DAP: Plaintiff Lorain City, Ohio ..................................................213

2. *City of Parma v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45001-DAP: Plaintiff Parma City, Ohio.................................................217

3. *County of Cuyahoga v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45004-DAP: Plaintiff Cuyahoga County, Ohio.................................221

4. *City of Toledo v. Purdue Pharma LP et al.*, Case No. 1:17-op-45005-DAP: Plaintiff Toledo City, Ohio....................................................225

5. *Anderson County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45006-DAP: Plaintiff Anderson County, Kentucky..................................................................229

6. *Franklin County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45007-DAP: Plaintiff Franklin County, Kentucky....................................................................233

7. *Shelby County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45009-DAP: Plaintiff Shelby County, Kentucky ...................................................................236

8. *Henry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45010-DAP: Plaintiff Henry County, Kentucky ....................................................................240

9. *Madison County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45011-DAP: Plaintiff Madison County, Kentucky ..................................................................243

10. *Fiscal Court of Cumberland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45012-DAP: Plaintiff Cumberland County, Kentucky ............................................................247

11. *Louisville/Jefferson County MetroGovernment v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45013-DAP: Plaintiff Jefferson County, Kentucky ................................251

12. *Fiscal Court of Union County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45015-DAP: Plaintiff Union County, Kentucky ........................................................................255

13. *Fiscal Court of Carlisle County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45016-DAP: Plaintiff Carlisle County, Kentucky.....................................................................259

14. *Boyle County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45018-DAP: Plaintiff Boyle County, Kentucky ......................................................................263

15. *Fleming County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45019-DAP: Plaintiff Fleming County, Kentucky ...................................................................266

16. *Boone County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45020-DAP: Plaintiff Boone County, Kentucky ...................................................................270

17. *Pendleton County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45021-DAP: Plaintiff Pendleton County, Kentucky .......................................................274

18. *Campbell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45022-DAP: Plaintiff Campbell County, Kentucky.......................................................278

19. *Garrard County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45023-DAP: Plaintiff Garrard County, Kentucky .......................................................281

20. *Lincoln County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45024-DAP: Plaintiff Lincoln County, Kentucky .........................................................285

21. *Nicholas County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45025-DAP: Plaintiff Nicholas County, Kentucky .......................................................289

22. *Bell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45026-DAP: Plaintiff Bell County, Kentucky ...................................................................292

23. *Harlan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45027-DAP: Plaintiff Harlan County, Kentucky ........................................................296

24. *Knox County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45028-DAP: Plaintiff Knox County, Kentucky .........................................................299

25. *Leslie County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45029-DAP: Plaintiff Leslie County, Kentucky .........................................................303

26. *Whitley County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45030-DAP: Plaintiff Whitley County, Kentucky .......................................................307

27. *Clay County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45031-DAP: Plaintiff Clay County, Kentucky .........................................................310

28. *Dayton v. Purdue Pharma LP et al.*, Case No. 1:17-op-45032-DAP: Plaintiff Dayton City, Ohio.........................................................314

29. *Clermont County Board Of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45033-DAP: Plaintiff Clermont County, Ohio ........................318

30. *Belmont County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45034-DAP: Plaintiff Belmont County, Ohio .........................322

31. *Brown County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45035-DAP: Plaintiff Brown County, Ohio ...............................327

32. *Vinton County Board of County Commissioners v. AmerisourceBergen Corporation et al.*, Case No. 1:17-op-45036-DAP: Plaintiff Vinton County, Ohio ........................................331

33. *Jackson County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45037-DAP: Plaintiff Jackson County, Ohio...........................334

34. *Scioto County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45038-DAP: Plaintiff Scioto County, Ohio ..............................338

35. *Pike County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45039-DAP: Plaintiff Pike County, Ohio .................................341

36. *Ross County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45040-DAP: Plaintiff Ross County, Ohio ................................344

37. *City of Cincinnati v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45041-DAP: Plaintiff Cincinnati City, Ohio .............348

38. *City of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45042-DAP: Plaintiff Portsmouth City, Ohio ...........352

39. *Gallia County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45043-DAP: Plaintiff Gallia County, Ohio...............................................................355

40. *Hocking County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45044-DAP: Plaintiff Hocking County, Ohio ...........................................................359

41. *Lawrence County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45045-DAP: Plaintiff Lawrence County, Ohio .........................................................363

42. *City of Everett v. Purdue Pharma LP et al.*, Case No. 1:17-op-45046-DAP: Plaintiff Everett City, Washington ....................367

43.    *City of Tacoma v. Purdue Pharma, L.P. et al.*, Case No. 1:17-op-45047-DAP: Plaintiff Tacoma City, Washington ...................................370

44.    *People of the State of Illinois et al. v. Purdue Pharma LP et al.*, Case No. 1:17-op-45048-DAP: Plaintiff St. Clair County, Illinois .........374

45.    *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45049-DAP: Plaintiff Jersey County, Illinois ...............................................................................379

46.    *People of State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45050-DAP: Plaintiff Alexander County, Illinois .......................................................................383

47.    *Wyoming County Commission v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45051-DAP: Plaintiff Wyoming County, West Virginia .........................................................386

48.    *Fiscal Court of Oldham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45067-DAP: Plaintiff Oldham County, Kentucky .......................................................................390

49.    *Fiscal Court of Henderson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45069-DAP: Plaintiff Henderson County, Kentucky .................................................................394

50.    *Fiscal Court of Christian County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45070-DAP: Plaintiff Christian County, Kentucky ...................................................................397

51.    *Fiscal Court of Marshall County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45071-DAP: Plaintiff Marshall County, Kentucky ...................................................................400

52.    *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45078-DAP: Plaintiff Christian County, Illinois .......................................................................404

53.    *City of Fort Payne, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45079-DAP: Plaintiff Fort Payne City, Alabama ..............................................................................407

54.    *St. Louis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45083-DAP: Plaintiff St. Louis County, Missouri ....................411

55.    *Boyd County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45084-DAP: Plaintiff Boyd County, Kentucky ...................................................................................415

56.    *County of Upshur v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45085-DAP: Plaintiff Upshur County, Texas .................................419

57.    *County of Morris v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45086-DAP: Plaintiff Morris County, Texas...........................................422

58.    *Fiscal Court of Greenup County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45088-DAP: Plaintiff Greenup County, Kentucky ....................................................425

59.    *Fiscal Court of Kenton County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45089-DAP: Plaintiff Kenton County, Kentucky ....................................................428

60.    *Jessamine County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45090-DAP: Plaintiff Jessamine County, Kentucky ....................................................432

61.    *Lexington-Fayette Urban County Government v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45092-DAP: Plaintiff Lexington-Fayette Urban County, Kentucky .......435

62.    *Adams County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45093-DAP: Plaintiff Adams County, Wisconsin ...................................439

63.    *Scott County Indiana Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45094-DAP: Plaintiff Scott County, Indiana.....................................................................................442

64.    *Marathon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45095-DAP: Plaintiff Marathon County, Wisconsin..............................446

65.    *Tallapoosa County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45097-DAP: Plaintiff Tallapoosa County, Alabama .....................................................449

66.    *Sauk County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45098-DAP: Plaintiff Sauk County, Wisconsin ....................................452

67.    *Iowa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45099-DAP: Plaintiff Iowa County, Wisconsin ....................................456

68.    *Luzerne County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45100-DAP: Plaintiff Luzerne County, Pennsylvania ........459

69.    *City of Gadsden, Alabama et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45101-DAP: Plaintiff Etowah County, Alabama ........................................................463

70.    *City of Gadsden, Alabama et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45101-DAP: Plaintiff Gadsden City, Alabama ........................................................467

71.    *County of Wayne et al. v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45102-DAP: Plaintiff Oakland County, Michigan....................470

72.    *People of the State of Illinois, et al. v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:17-op-45103-DAP: Plaintiff Wabash County, Illinois..........................................................474

73. *Door County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45104-DAP: Plaintiff Door County, Wisconsin .....................................477

74. *Laurel County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45105-DAP: Plaintiff Laurel County, Kentucky ...................................................................480

75. *Fond du Lac County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45106-DAP: Plaintiff Fond Du Lac County, Wisconsin ...................484

76. *Douglas County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45107-DAP: Plaintiff Douglas County, Wisconsin .................................486

77. *Rock County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45108-DAP: Plaintiff Rock County, Wisconsin ....................................490

78. *Pulaski County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45109-DAP: Plaintiff Pulaski County, Kentucky ...................................................................493

79. *Perry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45110-DAP: Plaintiff Perry County, Kentucky ...................................................................497

80. *Eau Claire County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45112-DAP: Plaintiff Eau Claire County, Wisconsin .............................501

81. *Washington County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45114-DAP: Plaintiff Washington County, Wisconsin......................504

82. *Rusk County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45116-DAP: Plaintiff Rusk County, Wisconsin ....................................507

83. *Columbia County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45118-DAP: Plaintiff Columbia County, Wisconsin.............................510

84. *Shawano County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45119-DAP: Plaintiff Shawano County, Wisconsin...............................514

85. *Jackson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45121-DAP: Plaintiff Jackson County, Wisconsin.................................517

86. *Jefferson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45122-DAP: Plaintiff Jefferson County, Wisconsin...............................520

87. *Washburn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45123-DAP: Plaintiff Washburn County, Wisconsin ..............................523

88. *Langlade County v. Purdue Frederick Co et al.*, Case No. 1:17-op-45124-DAP: Plaintiff Langlade County, Wisconsin ..............................527

89. *Florence County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45125-DAP: Plaintiff Florence County, Wisconsin ...............................530

90. *Price County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45126-DAP: Plaintiff Price County, Wisconsin .....................................533

91.  *Wood County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45127-DAP: Plaintiff Wood County, Wisconsin...................536

92.  *Sheboygan County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45128-DAP: Plaintiff Sheboygan County, Wisconsin ...........539

93.  *Oneida County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45129-DAP: Plaintiff Oneida County, Wisconsin...................543

94.  *Ashland County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45130-DAP: Plaintiff Ashland County, Wisconsin .................546

95.  *Chippewa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45132-DAP: Plaintiff Chippewa County, Wisconsin .............550

96.  *Dunn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45133-DAP: Plaintiff Dunn County, Wisconsin ...................553

97.  *Forest County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45134-DAP: Plaintiff Forest County, Wisconsin ...................557

98.  *Manitowoc County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45135-DAP: Plaintiff Manitowoc County, Wisconsin ...........560

99.  *Marquette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45136-DAP: Plaintiff Marquette County, Wisconsin...........563

100.  *Sawyer County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45137-DAP: Plaintiff Sawyer County, Wisconsin .................565

101.  *Trempealeau County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45138-DAP: Plaintiff Trempealeau County, Wisconsin ...................568

102.  *Waushara County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45139-DAP: Plaintiff Waushara County, Wisconsin .............572

103.  *Buffalo County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45141-DAP: Plaintiff Buffalo County, Wisconsin .................575

104.  *Calumet County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45142-DAP: Plaintiff Calumet County, Wisconsin.................578

105.  *Dodge County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45143-DAP: Plaintiff Dodge County, Wisconsin...................581

106.  *Kenosha County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45144-DAP: Plaintiff Kenosha County, Wisconsin .............584

107.  *Marinette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45145-DAP: Plaintiff Marinette County, Wisconsin...........588

108.  *St. Croix County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45147-DAP: Plaintiff St. Croix County, Wisconsin .................592

109.  *Vernon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45148-DAP: Plaintiff Vernon County, Wisconsin .................595

110. *Clark County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45150-DAP: Plaintiff Clark County, Wisconsin ...................................598

111. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45151-DAP: Plaintiff Washington County, Illinois ..............................................................601

112. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45152-DAP: Plaintiff Gallatin County, Illinois...............................................................604

113. *Buncombe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45153-DAP: Plaintiff Buncombe County, North Carolina..............................................................................607

114. *County of Rusk v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45154-DAP: Plaintiff Rusk County, Texas ............................611

115. *County of Cherokee v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45155-DAP: Plaintiff Cherokee County, Texas ................................614

116. *Township of Irvington v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45156-DAP: Plaintiff Irvington Township, New Jersey...........618

117. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45157-DAP: Plaintiff Hamilton County, Illinois .......................................................622

118. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45158-DAP: Plaintiff Pulaski County, Illinois ................................................................625

119. *County of Bowie v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45159-DAP: Plaintiff Bowie County, Texas ...........................................628

120. *County of Red River v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45160-DAP: Plaintiff Red River County, Texas ...............................632

121. *County of Titus v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45161-DAP: Plaintiff Titus County, Texas ............................................635

122. *County of Lamar v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45162-DAP: Plaintiff Lamar County, Texas ...........................................638

123. *Pierce County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45165-DAP: Plaintiff Pierce County, Wisconsin ....................................642

124. *Waupaca County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45166-DAP: Plaintiff Waupaca County, Wisconsin .............................645

125. *Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45167-DAP: Plaintiff Lincoln County, Wisconsin.................................648

126. *Clark County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45172-DAP: Plaintiff Clark County, Kentucky ...................................................................651

127. *Scott County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45173-DAP: Plaintiff Scott County, Kentucky ...................................................................654

128. *Woodford County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45174-DAP: Plaintiff Woodford County, Kentucky.................................................657

129. *Local 404 Teamsters Health Service and Insurance Plan v. Purdue Pharma*, Case No. 1:18-op-45001-DAP: Plaintiff Local 404 Teamsters Health Service and Insurance Plan, Massachusetts...............660

130. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45003-DAP: Plaintiff Hardin County, Illinois ......................................................663

131. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45004-DAP: Plaintiff Bond County, Illinois ......................................................667

132. *Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP: Plaintiff Cherokee Town, Alabama ......670

133. *Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP: Plaintiff Colbert County, Alabama .......674

134. *Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP: Plaintiff Franklin County, Alabama......678

135. *Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP: Plaintiff Tuscumbia City, Alabama ......683

136. *New Hanover County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45006-DAP: Plaintiff New Hanover County, North Carolina ........................................................687

137. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45007-DAP: Plaintiff Shelby County, Illinois ......................................................690

138. *Fiscal Court of Bullitt County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45009-DAP: Plaintiff Bullitt County, Kentucky ........................................................694

139. *Fiscal Court of Hopkins County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45010-DAP: Plaintiff Hopkins County, Kentucky.................................................697

140. *City of Opp, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45011-DAP: Plaintiff Opp City, Alabama ...........701

141. *Ashland County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45012-DAP: Plaintiff Ashland County, Ohio..........................................705

142. *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45013-DAP: Plaintiff American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, New York ....................................... 708

143. *Yadkin County, North Carolina v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45014-DAP: Plaintiff Yadkin County, North Carolina ............................................................. 708

144. *Rockingham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45015-DAP: Plaintiff Rockingham County, North Carolina ........................................................................... 712

145. *City of Greenfield, v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45017-DAP: Plaintiff City of Greenfield, Massachusetts ............................................................................ 716

146. *Rowan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45018-DAP: Plaintiff Rowan County, Kentucky ...................................................................... 720

147. *Houston County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45019-DAP: Plaintiff Houston County, Alabama .................... 723

148. *City of Greenville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45023-DAP: Plaintiff Greenville City, Alabama ............... 727

149. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45024-DAP: Plaintiff White County, Illinois ........................................................................... 732

150. *Sedgwick County Board of Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45025-DAP: Plaintiff Sedgwick County, Kansas ..................................................... 735

151. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45026-DAP: Plaintiff Jasper County, Illinois ........................................................................... 739

152. *Coshocton County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45027-DAP: Plaintiff Coshocton County, Ohio ....................................... 742

153. *Buchanan County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45028-DAP: Plaintiff Buchanan County, Missouri ....................................................... 745

154. *Ottawa County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45031-DAP: Plaintiff Ottawa County, Ohio ............................................. 749

155. *County of Lake v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45032-DAP: Plaintiff Lake County, Ohio ................................................ 752

156. *County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP: Plaintiff Cascade County, Montana ....................................755

157. *County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP: Plaintiff Gallatin County, Montana ....................................759

158. *Lawrence County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45036-DAP: Plaintiff Lawrence County, Mississippi ....................................762

159. *Fairfield Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45038-DAP: Plaintiff Fairfield County, Ohio ....................................765

160. *Licking County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45041-DAP: Plaintiff Licking County, Ohio ....................................768

161. *Adams County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45042-DAP: Plaintiff Adams County, Ohio ....................................772

162. *Guernsey County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45044-DAP: Plaintiff Guernsey County, Ohio ....................................775

163. *Darke County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45046-DAP: Plaintiff Darke County, Ohio ....................................779

164. *Logan County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45047-DAP: Plaintiff Logan County, Ohio ....................................782

165. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45049-DAP: Plaintiff Edwards County, Illinois ....................................786

166. *Leech Lake Band of Ojibwe v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45052-DAP: Plaintiff Leech Lake Band of Ojibwe, Minnesota ....................................789

167. *Township of Bloomfield, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45053-DAP: Plaintiff Bloomfield Township, New Jersey ....................................792

168. *City of Lansing v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45054-DAP: Plaintiff Lansing City, Michigan ....................................795

169. *Morrow County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45059-DAP: Plaintiff Morrow County, Ohio ....................................798

170. *Clinton County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45060-DAP: Plaintiff Clinton County, Ohio........802

171. *Champaign County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45065-DAP: Plaintiff Champaign County, Ohio....................................806

172. *Jefferson Davis County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45070-DAP: Plaintiff Jefferson Davis County, Mississippi.......................................810

173. *Marion County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45075-DAP: Plaintiff Marion County, Mississippi................................................................813

174. *City of Mobile, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45076-DAP: Plaintiff Mobile City, Alabama ........................................................................817

175. *County of Lorain v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45078-DAP: Plaintiff Lorain County, Ohio.............................821

176. *County of Trumbull v. Purdue Pharma L.P.*, Case No. 1:18-op-45079-DAP: Plaintiff Trumbull County, Ohio .......................824

177. *City of Elyria v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45080-DAP: Plaintiff Elyria City, Ohio .................................827

178. *County of Smith v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45081-DAP: Plaintiff Smith County, Texas .............................830

179. *Saginaw, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45082-DAP: Plaintiff Saginaw County, Michigan...........................833

180. *Genesee, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45083-DAP: Plaintiff Genesee County, Michigan ...........................836

181. *City of Detroit, Michigan, A Municipal Corporation v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45084-DAP: Plaintiff Detroit City, Michigan ........................................................................839

182. *Macomb, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45085-DAP: Plaintiff Macomb County, Michigan ...........................841

183. *Surry County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45086-DAP: Plaintiff Surry County, North Carolin ..........844

184. *County of Summit, Ohio et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45090-DAP: Plaintiff Akron City, Ohio ...........................847

185. *Amite County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45097-DAP: Plaintiff Amite County, Mississippi................................................................850

186. *Eastern Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45098-DAP: Plaintiff Eastern Band of Cherokee Indians, North Carolina ............................................... 853

187. *Cecil County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45100-DAP: Plaintiff Cecil County, Maryland ............................................................................................................ 857

188. *City of Woburn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45103-DAP: Plaintiff Woburn City, Massachusetts ..................................................................................................... 862

189. *Marquette, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45104-DAP: Plaintiff Marquette County, Michigan ......................... 865

190. *City of Methuen v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45106-DAP: Plaintiff Methuen Town City, Massachusetts ..................................................................................................... 868

191. *Haywood County v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-45107-DAP: Plaintiff Haywood County, Tennessee ....................................................................................................... 872

192. *Onslow County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45114-DAP: Plaintiff Onslow County, North Carolina ......................................................................................................... 876

193. *City of Jacksonville v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45115-DAP: Plaintiff Jacksonville City, North Carolina ............................................................................................. 880

194. *Polk County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45116-DAP: Plaintiff Polk County, Iowa ......................................................... 883

195. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Brown County, Wisconsin .............................. 886

196. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Crawford County, Wisconsin ......................... 889

197. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Kewaunee County, Wisconsin ....................... 892

198. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Outagamie County, Wisconsin ..................... 895

199. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Ozaukee County, Wisconsin ......................... 899

200. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Pepin County, Wisconsin .............................. 902

201. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Racine County, Wisconsin .............................. 904

202.  *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Winnebago County, Wisconsin......................907

203.  *Tippah County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45118-DAP: Plaintiff Tippah County, Mississippi..................................................................911

204.  *Benton County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45119-DAP: Plaintiff Benton County, Mississippi..................................................................915

205.  *Union County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45120-DAP: Plaintiff Union County, Mississippi..................................................................919

206.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Bremer County, Iowa ............................923

207.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Buchanan County, Iowa ......................926

208.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Carroll County, Iowa.............................929

209.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Clay County, Iowa.................................932

210.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Clayton County, Iowa.........................935

211.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Dallas County, Iowa ..............................938

212.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Humboldt County, Iowa ......................941

213.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Johnson County, Iowa .........................945

214.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Marion County, Iowa ............................948

215.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Mitchell County, Iowa..........................951

216.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Plymouth County, Iowa.......................954

217.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Scott County, Iowa ...............................958

218.  *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Winneshiek County, Iowa ...................961

219. *City of Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45132-DAP: Plaintiff Cleveland City, Ohio ................................................................................................964

220. *Campbell County v. AmerisourceBergen Drug Corporation et al. (JRG2)*, Case No. 1:18-op-45133-DAP: Plaintiff Campbell County, Tennessee ...........................................................................968

221. *Williamson County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45134-DAP: Plaintiff Williamson County, Tennessee ..............................................................972

222. *Greene County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45136-DAP: Plaintiff Greene County, Tennessee ...............................................................................976

223. *Muskingum County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45137-DAP: Plaintiff Muskingum County, Ohio ...................................979

224. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45138-DAP: Plaintiff Coles County, Illinois ....................................................................982

225. *Catawba County North Carolina v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45145-DAP: Plaintiff Catawba County, North Carolina ............................................................986

226. *Forrest County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45147-DAP: Plaintiff Forrest County, Mississippi .......................................................................989

227. *Wayne County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45150-DAP: Plaintiff Wayne County, Ohio ................................................993

228. *Baldwin County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45152-DAP: Plaintiff Baldwin County, Alabama ............................................................................996

229. *Hancock County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45153-DAP: Plaintiff Hancock County, Tennessee .........................................................................1000

230. *City of Revere v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45155-DAP: Plaintiff Revere City, Massachusetts .....................................................................................1004

231. *City of Baton Rouge v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45160-DAP: Plaintiff Baton Rouge City, Louisiana .......................................................................................1007

232. *Franklin County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45162-DAP: Plaintiff Franklin County, Ohio .........................................1011

233. *City of Lebanon v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45163-DAP: Plaintiff Lebanon City, Ohio ..............1016

234. *Johnson County v. Amerisourcebergen Drug Corporation et al. (TV1)*, Case No. 1:18-op-45164-DAP: Plaintiff Johnson County, Tennessee ...............................................................................1019

235. *Gaston County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45166-DAP: Plaintiff Gaston County, North Carolina ...............................................................................1023

236. *County of Onondaga, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45170-DAP: Plaintiff Onondaga County, New York ...............................................................................1026

237. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Dora City, Alabama ......................1029

238. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Jasper City, Alabama ....................1033

239. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Marion County, Alabama .............1037

240. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Pickens County, Alabama............1041

241. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Sumiton City, Alabama ................1045

242. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Walker County, Alabama .............1050

243. *Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP: Plaintiff Burlington City, Washington ......................1054

244. *Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP: Plaintiff Mount Vernon City, Washington.................1058

245. *Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP: Plaintiff Sedro-Woolley City, Washington ................1061

246. *Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP: Plaintiff Skagit County, Washington ..........................1065

247. *Municipality of Guayanilla v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45176-DAP: Plaintiff Municipality of Guayanilla, Puerto Rico ...............................................................................1068

248. *Municipality of Loiza, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45177-DAP: Plaintiff Municipality of Loiza, Puerto Rico ...............................................................................1072

249. *Phenix City, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45179-DAP: Plaintiff Phenix City, Alabama .....1075

250. *Washington County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45180-DAP: Plaintiff Washington County, Alabama..............1079

251. *Wilcox County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45181-DAP: Plaintiff Wilcox County, Alabama ...................................1083

252. *Coffee County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45182-DAP: Plaintiff Coffee County, Alabama ...............................................................................................1087

253. *City of Demopolis, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45183-DAP: Plaintiff Demopolis City, Alabama............................1092

254. *Burke County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45184-DAP: Plaintiff Burke County, North Carolina ..............................................................................................1095

255. *Stokes County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45185-DAP: Plaintiff Stokes County, North Carolina ..............................................................................................1099

256. *Mobile County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45186-DAP: Plaintiff Mobile County, Alabama ...................................1102

257. *Marengo County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45188-DAP: Plaintiff Marengo County, Alabama ...........................1106

258. *Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP: Plaintiff Talladega City, Alabama ......1110

259. *Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP: Plaintiff Talladega County, Alabama ...............................................................................................1113

260. *Calhoun County, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45191-DAP: Plaintiff Calhoun County, Alabama ...................1117

261. *Trussville, City of v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45192-DAP: Plaintiff Trussville City, Alabama ......1120

262. *Winston Medical Center v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45193-DAP: Plaintiff Winston Medical Center, Mississippi ............................................................................................1125

263. *Sumter County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45194-DAP: Plaintiff Sumter County, Alabama ...............................................................................................1127

264. *Tuscaloosa County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45196-DAP: Plaintiff Tuscaloosa County, Alabama ................................................................1132

265.  *Municipality of Sabana Grande et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45197-DAP: Plaintiff Municipality of Cayey, Puerto Rico.............................................................................1136

266.  *City of Selma, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45198-DAP: Plaintiff Selma City, Alabama.............................................1139

267.  *Morgan County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45200-DAP: Plaintiff Morgan County, Alabama..................................................................1143

268.  *City of Decatur, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45201-DAP: Plaintiff Decatur City, Alabama...................................................................1148

269.  *City of Moulton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45202-DAP: Plaintiff Moulton City, Alabama ..................................................................1152

270.  *Lowndes County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45203-DAP: Plaintiff Lowndes County, Alabama.................................................................1155

271.  *City of Union Springs, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45204-DAP: Plaintiff Union Springs City, Alabama ...........................................................1160

272.  *Cherokee County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45207-DAP: Plaintiff Cherokee County, Alabama ................................................................1164

273.  *Pitt County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45208-DAP: Plaintiff Pitt County, North Carolina...........1169

274.  *Greene County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45209-DAP: Plaintiff Greene County, Alabama .............................................................................1172

275.  *City of Enterprise, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45213-DAP: Plaintiff Enterprise City, Alabama.................................................................1176

276.  *City of Ozark, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45214-DAP: Plaintiff Ozark City, Alabama .............................................................................1179

277.  *Crockett County, TN v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45215-DAP: Plaintiff Crockett County, Tennessee ...........................................................................1183

278.  *City of Marion, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45217-DAP: Plaintiff Marion City, Alabama.........................................1187

279. *Mecklenburg County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45221-DAP: Plaintiff Mecklenburg County, North Carolina ..........1191

280. *Brunswick County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45222-DAP: Plaintiff Brunswick County, North Carolina.................................................................................................1194

281. *Cullman County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45227-DAP: Plaintiff Cullman County, Alabama..................................................................1198

282. *Lawrence County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45228-DAP: Plaintiff Lawrence County, Alabama.................................................................1201

283. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Albertville City, Alabama .....1205

284. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Arab City, Alabama .............1210

285. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Boaz City, Alabama .............1214

286. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Douglas Town, Alabama ......1218

287. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Grant Town, Alabama...........1221

288. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Guntersville City, Alabama ............................................................................................1225

289. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Marshall County, Alabama ............................................................................................1229

290. *Augusta, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45233-DAP: Plaintiff Augusta-Richmond County Consolidated Government, Georgia..........................................1233

291. *Wilkes County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45239-DAP: Plaintiff Wilkes County, North Carolina.................................................................................................1238

292. *City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:18-op-45240-DAP: Plaintiff Lakewood City, Ohio .........................................1242

293. *Pickett County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45242-DAP: Plaintiff Pickett County, Tennessee ..............................................................................1245

294. *Rutherford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45243-DAP: Plaintiff Rutherford County, North Carolina.............................................................................1248

295. *Barbour County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45244-DAP: Plaintiff Barbour County, Alabama...................1252

296. *Perry County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45245-DAP: Plaintiff Perry County, Ohio.............................................1255

297. *Bullock County, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45246-DAP: Plaintiff Bullock County, Alabama.................................................................1259

298. *Clay County, Alabama v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-45248-DAP: Plaintiff Clay County, Alabama ........................1263

299. *Indiana County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45249-DAP: Plaintiff Indiana County, Pennsylvania .......1267

300. *Sandusky County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45254-DAP: Plaintiff Sandusky County, Ohio.........................................................................................1270

301. *Sumner County, Tennessee v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45255-DAP: Plaintiff Sumner County, Tennessee .................1275

302. *Geauga County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45256-DAP: Plaintiff Geauga County, Ohio ...................................1279

303. *Williams County Board of County Commissioners v. AmerisourcebergenBergen Drug Corporation et al.*, Case No. 1:18-op-45257-DAP: Plaintiff Williams County, Ohio......................................1283

304. *Beaufort County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45261-DAP: Plaintiff Beaufort County, North Carolina.............................................................................1286

305. *Caldwell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45263-DAP: Plaintiff Caldwell County, North Carolina.............................................................................1290

306. *Delaware County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45266-DAP: Plaintiff Delaware County, Ohio.....................................1293

307. *Chatham County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45267-DAP: Plaintiff Chatham County, Georgia ...................................................1296

308. *City of Brunswick, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45270-DAP: Plaintiff Brunswick City, Georgia .................................................1299

309. *Hamilton County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45272-DAP: Plaintiff Hamilton County, Ohio .....................................1301

310. *Randolph County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45275-DAP: Plaintiff Randolph County, North Carolina................................................................................1305

311. *Person County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45276-DAP: Plaintiff Person County, North Carolina................................................................................1309

312. *Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP: Plaintiff La Crosse County, Wisconsin.......................1311

313. *Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP: Plaintiff Lafayette County, Wisconsin.......................1314

314. *Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP: Plaintiff Menominee County, Wisconsin...................1318

315. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Ashburn City, Georgia ..................................1321

316. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Calhoun City, Georgia ..................................1324

317. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Cartersville City, Georgia ............................1328

318. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Chatsworth City, Georgia ............................1331

319. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Chattooga County, Georgia..........................1334

320. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Colquitt County, Georgia ............................1337

321. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Dawsonville City, Georgia...........................1339

322. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Floyd County, Georgia.................................1342

323. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Gordon County, Georgia...............................1345

324. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Helen City, Georgia ......................................1348

325. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Jackson City, Georgia ....................................1350

326. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Marietta City, Georgia ..................................1353

327. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff McDonough City, Georgia............................1356

328. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Moultrie City, Georgia ..................................1359

329. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Murray County, Georgia ..............................1362

330. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Ringgold City, Georgia .................................1365

331. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Rome City, Georgia ......................................1368

332. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Snellville City, Georgia................................1371

333. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Telfair County, Georgia ................................1375

334. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Valdosta City, Georgia..................................1378

335. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Villa Rica City, Georgia...............................1381

336. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Whitfield County, Georgia...........................1384

337. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Winder City, Georgia ...................................1388

338. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Woodstock City, Georgia............................1391

339. *Bacon County Hospital Foundation, Inc. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45285-DAP: Plaintiff Bacon County (GA) Hospital Authority, Georgia ..................................1393

340. *Crawford County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45288-DAP: Plaintiff Crawford County, Ohio......................................1396

341. *Columbiana County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45289-DAP: Plaintiff Columbiana County, Ohio..................................1399

342. *Seneca County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45290-DAP: Plaintiff Seneca County, Ohio ..........................................1402

343. *Erie County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45291-DAP: Plaintiff Erie County, Ohio................................................1406

344. *Huron County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45292-DAP: Plaintiff Huron County, Ohio ............................................1409

345. *Hawkins County, TN v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45299-DAP: Plaintiff Hawkins County, Tennessee ............................................................................1413

346. *County of Camp v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45301-DAP: Plaintiff Camp County, Texas ..........................................1416

347. *County of Franklin v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45302-DAP: Plaintiff Franklin County, Texas .................................1419

348. *Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP: Plaintiff Des Moines County, Iowa ....................1423

349. *Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP: Plaintiff Harrison County, Iowa ........................1425

350. *Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP: Plaintiff Lyon County, Iowa ..............................1428

351. *Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP: Plaintiff Tama County, Iowa .............................1430

352. *City of Richmond Hill, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45305-DAP: Plaintiff Richmond Hill City, Georgia .................................................................1432

353. *Orange County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45308-DAP: Plaintiff Orange County, North Carolina.................................................................................1435

354. *City of Rockford v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45309-DAP: Plaintiff Rockford City, Illinois ..........1438

355. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45310-DAP: Plaintiff Winnebago County, Illinois .................................................................1442

356. *Athens County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45326-DAP: Plaintiff Athens County, Ohio .........................................................................1448

357. *Limestone County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45328-DAP: Plaintiff Limestone County, Alabama .........1451

358. *City of Anniston Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45329-DAP: Plaintiff Anniston City, Alabama ......................1454

359. *City of Broadview Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45330-DAP: Plaintiff Broadview Heights City, Ohio .............1458

360. *Broward County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45332-DAP: Plaintiff Broward County, Florida .....................1462

361. *City of Lima v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45333-DAP: Plaintiff Lima City, Ohio .............................1465

362. *City of Pittsfield v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45335-DAP: Plaintiff Pittsfield City, Massachusetts ........................................................................................1468

363. *City of Easthampton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45336-DAP: Plaintiff Easthampton Town City, Massachusetts ..............................................1471

364. *City of Northampton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45337-DAP: Plaintiff Northampton City, Massachusetts ........................................................................................1475

365. *County of Oneida, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45338-DAP: Plaintiff Oneida County, New York ............1480

366. *County of Shiawassee, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45350-DAP: Plaintiff Shiawassee County, Michigan ............................................................................................1483

367. *County of Lenawee, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45351-DAP: Plaintiff Lenawee County, Michigan...........1485

368. *County of Sanilac, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45352-DAP: Plaintiff Sanilac County, Michigan .............1488

369. *County of Hillsdale, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45355-DAP: Plaintiff Hillsdale County, Michigan...........1491

370. *Calhoun County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45363-DAP: Plaintiff Calhoun County, Florida ...............................................................................................1493

371. *Jefferson County, Ohio v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45365-DAP: Plaintiff Jefferson County, Ohio........................1497

372. *St. Croix Chippewa Indians of Wisconsin v. McKesson Corporation et al.*, Case No. 1:18-op-45367-DAP: Plaintiff St. Croix Chippewa Indians of Wisconsin, Wisconsin ................................1502

373. *County of Floyd v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45369-DAP: Plaintiff Floyd County, Kentucky ....................................1505

374. *Panama City, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45373-DAP: Plaintiff Panama City, Florida ......1509

113

375. *County of Fulton v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45374-DAP: Plaintiff Fulton County, Georgia.....................................1512

376. *Halifax County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45376-DAP: Plaintiff Halifax County, North Carolina..............................................................................................1516

377. *City of Mansfield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45380-DAP: Plaintiff Mansfield City, Ohio..........................................1519

378. *Martin County Fiscal Court v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45388-DAP: Plaintiff Martin County, Kentucky ...............................................................................1523

379. *Wayne County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45389-DAP: Plaintiff Wayne County, Kentucky ...............................................................................1526

380. *Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP: Plaintiff Family Health Care Clinic, PSC, Kentucky..................................................................1530

381. *Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP: Plaintiff Family Practice Clinic of Booneville, Inc., Kentucky .....................................................1533

382. *City of Pooler, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45391-DAP: Plaintiff Pooler City, Georgia..............................................................................................1536

383. *Carter County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45392-DAP: Plaintiff Carter County, Kentucky ...............................................................................1538

384. *Elliott County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45393-DAP: Plaintiff Elliott County, Kentucky ...............................................................................1542

385. *Bracken County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45395-DAP: Plaintiff Bracken County, Kentucky ...............................................................................1546

386. *Itawamba County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45396-DAP: Plaintiff Itawamba County, Mississippi.............................................................1549

387. *Marshall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45397-DAP: Plaintiff Marshall County, Mississippi .............................................................1552

388. *City of Charleston, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45398-DAP: Plaintiff Charleston City, Mississippi ...............................................................1556

114

389. *Tallahatchie County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45399-DAP: Plaintiff Tallahatchie County, Mississippi............................................................1559

390. *Allen County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45401-DAP: Plaintiff Allen County, Ohio ............................................1563

391. *Milwaukee County Wisconsin v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45402-DAP: Plaintiff Milwaukee County, Wisconsin..............................................................1566

392. *Madison County, Tennessee v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-45403-DAP: Plaintiff Madison County, Tennessee ................................................1570

393. *Henderson County, Tennessee v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-45404-DAP: Plaintiff Henderson County, Tennessee ............................................1574

394. *Grand Rapids, City of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45406-DAP: Plaintiff Grand Rapids City, Michigan..............1578

395. *Chambers County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45408-DAP: Plaintiff Chambers County, Alabama..........1580

396. *Thurston County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45409-DAP: Plaintiff Thurston County, Washington ...........................1584

397. *Walthall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45411-DAP: Plaintiff Walthall County, Mississippi ................................................1587

398. *Bibb County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45413-DAP: Plaintiff Bibb County, Alabama ................................................................1591

399. *Shelby County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45414-DAP: Plaintiff Shelby County, Alabama.....................1595

400. *Blount County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45415-DAP: Plaintiff Blount County, Alabama .....................1599

401. *City of Midfield v. Purdue Pharma LP et al.*, Case No. 1:18-op-45416-DAP: Plaintiff Midfield City, Alabama.....................................1603

402. *Montgomery County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45418-DAP: Plaintiff Montgomery County, Tennessee .........................................1607

403. *Fentress County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45419-DAP: Plaintiff Fentress County, Tennessee ................................................1611

404. *Hale County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45420-DAP: Plaintiff Hale County, Alabama ...................1614

405. *City of Greensboro, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45421-DAP: Plaintiff Greensboro City, Alabama ...........................1618

406. *City of Evergreen, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45422-DAP: Plaintiff Evergreen City, Alabama ....................1622

407. *Town of Yellow Bluff, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45423-DAP: Plaintiff Yellow Bluff Town, Alabama ..............1625

408. *City of North Royalton v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45427-DAP: Plaintiff North Royalton City, Ohio ...............................................................................1629

409. *St. Louis County, Minnesota v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45430-DAP: Plaintiff St. Louis County, Minnesota .........1633

410. *City of Huron v. Cardinal Health Inc. et al.*, Case No. 1:18-op-45431-DAP: Plaintiff Huron City, Ohio ...................................1635

411. *City of Fostoria v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45433-DAP: Plaintiff Fostoria City, Ohio .............................1639

412. *City of Warren v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45434-DAP: Plaintiff Warren City, Ohio ...............................1643

413. *Town of McKenzie, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45435-DAP: Plaintiff McKenzie Town, Alabama............1647

414. *City of Georgiana, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45436-DAP: Plaintiff Georgiana Town, Alabama............1650

415. *City of Abbeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45437-DAP: Plaintiff Abbeville City, Alabama ....................1653

416. *Butler County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45441-DAP: Plaintiff Butler County, Alabama ....................1657

417. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Clackamas County, Oregon .................1661

418. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Clatsop County, Oregon ......................1665

419. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Columbia County, Oregon...................1668

420. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Jackson County, Oregon......................1671

421. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Josephine County, Oregon...................1675

422. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Lane County, Oregon ...........................1678

423. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Washington County, Oregon ...............1682

424. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Yamhill County, Oregon ......................1685

425. *City of Macedonia, Ohio v. Amerisource Bergen Drug Corporation et al.*, Case No. 1:18-op-45447-DAP: Plaintiff Macedonia City, Ohio..................................................................................................1689

426. *City of East Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45448-DAP: Plaintiff East Cleveland City, Ohio ........................................................................1693

427. *Village of Newburgh Heights, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45449-DAP: Plaintiff Newburgh Heights Village, Ohio ........................................................1697

428. *Village of Brooklyn Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45450-DAP: Plaintiff Brooklyn Heights Village, Ohio ...........................................................1701

429. *Cherokee County, Kansas, Board of Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45452-DAP: Plaintiff Cherokee County, Kansas ...................................1705

430. *Bay County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45455-DAP: Plaintiff Bay County, Florida........1709

431. *City of Guin, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45457-DAP: Plaintiff Guin City, Alabama ........1712

432. *Lexington, Tennessee v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-45458-DAP: Plaintiff Lexington City, Tennessee ............................................................................................1716

433. *City of Warwick, RI v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45460-DAP: Plaintiff Warwick City, Rhode Island........................................................................................................1720

434. *Town of North Providence v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45461-DAP: Plaintiff North Providence Town, Rhode Island ............................................................1723

435. *Town of Johnston v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45462-DAP: Plaintiff Johnston Town, Rhode Island..................................................................................................1727

436. *City of Pawtucket, RI v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45463-DAP: Plaintiff Pawtucket City, Rhode Island ........................................................................................1731

437.  *City of East Providence v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45464-DAP: Plaintiff East Providence City, Rhode Island ..................................................................1734

438.  *Town of Cumberland, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45465-DAP: Plaintiff Cumberland Town, Rhode Island ..........................................1738

439.  *City of Central Falls, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45466-DAP: Plaintiff Central Falls City, Rhode Island..................................................1741

440.  *Town of Charlestown Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45467-DAP: Plaintiff Charlestown Town, Rhode Island..........................................1744

441.  *Town of Bristol v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45468-DAP: Plaintiff Bristol Town, Rhode Island..................................................................................1748

442.  *Town of Barrington v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45469-DAP: Plaintiff Barrington Town, Rhode Island ................................................................1751

443.  *Town of Burrillville v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45470-DAP: Plaintiff Burrillville Town, Rhode Island ................................................................1754

444.  *Town of Coventry Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45471-DAP: Plaintiff Coventry Town, Rhode Island ..............................................1757

445.  *City of Cranston, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45472-DAP: Plaintiff Cranston City, Rhode Island..................................................1761

446.  *Town of Foster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45473-DAP: Plaintiff Foster Town, Rhode Island..................................................................................1764

447.  *Town of Glocester v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45474-DAP: Plaintiff Glocester Town, Rhode Island..................................................................1767

448.  *Town of Hopkinton Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45475-DAP: Plaintiff Hopkinton Town, Rhode Island............................................1770

449.  *Town of Jamestown, a municipal corporation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45476-DAP: Plaintiff Jamestown Town, Rhode Island........................1774

450. *Town of North Kingstown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45477-DAP: Plaintiff North Kingstown Town, Rhode Island ............................................................1777

451. *Town of Narragansett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45478-DAP: Plaintiff Narragansett Town, Rhode Island ....................................................................................1781

452. *City of Newport, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45479-DAP: Plaintiff Newport City, Rhode Island ....................................................................1785

453. *Town of Richmond v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45480-DAP: Plaintiff Richmond Town, Rhode Island....................................................................................1788

454. *Town of Smithfield v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45481-DAP: Plaintiff Smithfield Town, Rhode Island....................................................................................1791

455. *Town of South Kingstown Municipal Corporation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45482-DAP: Plaintiff South Kingstown Town, Rhode Island .............1794

456. *Town of West Greenwich v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45483-DAP: Plaintiff West Greenwich Town, Rhode Island................................................................1797

457. *Town of West Warwick, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45484-DAP: Plaintiff West Warwick Town, Rhode Island ...........................................1800

458. *Town of Westerly v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45485-DAP: Plaintiff Westerly Town, Rhode Island....................................................................................1804

459. *City of Malden v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45487-DAP: Plaintiff Malden City, Massachusetts ........................................................................1808

460. *Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP: Plaintiff Big Bend Community Based Care, Florida............................................1812

461. *Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP: Plaintiff Central Florida Behavioral Health Network, Florida..............................1816

462. *Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP: Plaintiff Central Florida Cares Health System, Florida ...........................................1820

119

463. *Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP: Plaintiff Lutheran Services Florida, Florida ...................................................................................1823

464. *Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP: Plaintiff Southeast Florida Behavioral Health Network, Florida....................................................1828

465. *Catoosa County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45497-DAP: Plaintiff Catoosa County, Georgia......................1832

466. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45499-DAP: Plaintiff Effingham County, Illinois ...................................................................1835

467. *Prince George's County Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45501-DAP: Plaintiff Prince Georges County, Maryland ...................................................................................................1838

468. *Lac du Flambeau Band of Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45502-DAP: Plaintiff Lac du Flambeau Band of Chippewa Indians, Wisconsin ..................................1843

469. *DeKalb County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45503-DAP: Plaintiff DeKalb County, Georgia .....................1846

470. *County of Wilcox, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45506-DAP: Plaintiff Wilcox County, Georgia......................1850

471. *City of Hattiesburg, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45512-DAP: Plaintiff Hattiesburg City, Mississippi .................................................................1852

472. *City of Sarasota v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45513-DAP: Plaintiff Sarasota City, Florida .........................................1857

473. *City of Lowell v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45514-DAP: Plaintiff Lowell City, Massachusetts ....................................................................................1860

474. *Town of East Greenwich v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45515-DAP: Plaintiff East Greenwich Town, Rhode Island .............................................................................1864

475. *City of Sandy Springs, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45516-DAP: Plaintiff Sandy Springs City, Georgia.........................................................................1868

476. *City of Clarksville, Tennessee v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45517-DAP: Plaintiff Clarksville City, Tennessee ...........1871

477. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45518-DAP: Plaintiff Lawrence County, Illinois....................................................................1875

478. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45519-DAP: Plaintiff Massac County, Illinois ................................................................................1878

479. *Martin County, NC v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45522-DAP: Plaintiff Martin County, North Carolina ................................................................................1881

480. *McDowell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45524-DAP: Plaintiff McDowell County, North Carolina ................................................................................1884

481. *Watauga County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45525-DAP: Plaintiff Watauga County, North Carolina ................................................................................1888

482. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45527-DAP: Plaintiff Livingston County, Illinois ................................................................................1891

483. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45528-DAP: Plaintiff Saline County, Illinois ................................................................................1895

484. *Marion County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45529-DAP: Plaintiff Marion County, Ohio ................................................1899

485. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45532-DAP: Plaintiff Marion County, Illinois ................................................................................1902

486. *Fiscal Court of Bourbon County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45533-DAP: Plaintiff Bourbon County, Kentucky ................................................................................1906

487. *Fiscal Court of Owen County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45534-DAP: Plaintiff Owen County, Kentucky ................................................................................1909

488. *Warren County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45536-DAP: Plaintiff Warren County, North Carolina ................................................................................1912

489. *City of Metropolis, Illinois v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45537-DAP: Plaintiff Metropolis City, Illinois ................................................................................1916

490. *Marshall County Health Care Authority v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45538-DAP: Plaintiff Marshall County Health Care Authority, Alabama ................................................1920

491. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45539-DAP: Plaintiff Jefferson County, Illinois ........................................................................1923

492. *Henry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45543-DAP: Plaintiff Henry County, Alabama ......................1927

493. *City of Tuskegee, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45544-DAP: Plaintiff Tuskegee City, Alabama......................1931

494. *City of Wilkes Barre, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45545-DAP: Plaintiff Wilkes-Barre City, Pennsylvania ...................................................................................1935

495. *Harrison County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45547-DAP: Plaintiff Harrison County, Ohio.........................................................................................1938

496. *Mayor and Alderman of the City of Savannah v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45550-DAP: Plaintiff Savannah City, Georgia.....................................1942

497. *Miami-Dade County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45552-DAP: Plaintiff Miami-Dade County, Florida.............................................................1947

498. *City of Tuscaloosa, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45553-DAP: Plaintiff Tuscaloosa City, Alabama.............1950

499. *Town of Brewster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45556-DAP: Plaintiff Brewster Town, Massachusetts ...........................................................................1953

500. *Jefferson County Alabama et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45558-DAP: Plaintiff Jefferson County, Alabama ...................................................................................1957

501. *Town of Billerica v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45560-DAP: Plaintiff Billerica Town, Massachusetts ...........................................................................1961

502. *Dale County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45561-DAP: Plaintiff Dale County, Alabama .........................1964

503. *City of Hamilton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45564-DAP: Plaintiff Hamilton City, Alabama ......................................................................1968

504. *City of Weaver, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45565-DAP: Plaintiff Weaver City, Alabama .......................................1972

505. *Cleburne County, Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45566-DAP: Plaintiff Cleburne County, Alabama .................1976

506. *Columbus Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45567-DAP: Plaintiff Columbus City, Georgia .......1979

507. *Overton County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45568-DAP: Plaintiff Overton County, Tennessee ..................................................................1984

508. *Auglaize County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45570-DAP: Plaintiff Auglaize County, Ohio......................................1988

509. *Van Wert County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45571-DAP: Plaintiff Van Wert County, Ohio..................................1991

510. *Hancock County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45572-DAP: Plaintiff Hancock County, Ohio ......................................1994

511. *City of Woodbury Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45575-DAP: Plaintiff Woodbury City, Georgia .....................1997

512. *Macon County Georgia v. Purdue Pharma L.P.,et al.*, Case No. 1:18-op-45577-DAP: Plaintiff Macon County, Georgia ......................2000

513. *Peach County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45579-DAP: Plaintiff Peach County, Georgia ........................2003

514. *Schley County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45580-DAP: Plaintiff Schley County, Georgia........................2006

515. *Town of Derry, New Hampshire v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45582-DAP: Plaintiff Derry Town, New Hampshire ........................................................................2009

516. *Greene County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45584-DAP: Plaintiff Greene County, North Carolina................................................................................................2012

517. *Wayne County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45585-DAP: Plaintiff Wayne County, North Carolina................................................................................................2015

518. *Richmond County, North Carolina v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45586-DAP: Plaintiff Richmond County, North Carolina ........................................2018

519. *Carteret County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45587-DAP: Plaintiff Carteret County, North Carolina................................................................................................2023

520. *Tulalip Tribes v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45589-DAP: Plaintiff Tulalip Tribes, Washington................................2026

521. *City of Kent v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45590-DAP: Plaintiff Kent City, Washington ......................2029

522. *City of Paducah, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45592-DAP: Plaintiff Paducah City, Kentucky ......................2032

523. *County of Ballard Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45593-DAP: Plaintiff Ballard County, Kentucky .............2035

524. *City of Harrisburg, Illinois v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45594-DAP: Plaintiff Harrisburg City, Illinois......................2038

525. *Town of Salisbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45595-DAP: Plaintiff Salisbury Town, Massachusetts ......................2042

526. *City of Everett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45596-DAP: Plaintiff Everett City, Massachusetts ......................2046

527. *Monroe County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45597-DAP: Plaintiff Monroe County, Ohio......................2050

528. *City of Princeton, Illinois v. Actavis LLC et al.*, Case No. 1:18-op-45599-DAP: Plaintiff Princeton City, Illinois ......................2053

529. *Forsyth County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45605-DAP: Plaintiff Forsyth County, North Carolina......................2057

530. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45606-DAP: Plaintiff Lee County, Illinois ......................2060

531. *County of Sacramento v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45608-DAP: Plaintiff Sacramento County, California ......................2064

532. *County of McCracken Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45611-DAP: Plaintiff Mccracken County, Kentucky ......................2067

533. *Clallam County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45612-DAP: Plaintiff Clallam County, Washington ......................2071

534. *County of San Diego et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45613-DAP: Plaintiff San Diego County, California......................2074

535. *St. Clair County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45614-DAP: Plaintiff St. Clair County, Alabama ......................2077

536. *Bergen County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45616-DAP: Plaintiff Bergen County, New Jersey ......................2080

124

537. *City of Frostburg v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45617-DAP: Plaintiff Frostburg City, Maryland......2084

538. *County of Mariposa, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45618-DAP: Plaintiff Mariposa County, California .................................................................2087

539. *County of Tuolumne, et al. v. Amerisource Bergen Drug Corporation et al.*, Case No. 1:18-op-45619-DAP: Plaintiff Tuolumne County, California .................................................................2091

540. *City of Alma, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45620-DAP: Plaintiff Alma City, Georgia.........2093

541. *City of Hagerstown, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45622-DAP: Plaintiff Hagerstown City, Maryland.................................................................2096

542. *City of Cumberland, Maryland v AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45624-DAP: Plaintiff Cumberland City, Maryland .................................................................2100

543. *County of Mono v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45626-DAP: Plaintiff Mono County, California ......2103

544. *County of Butte v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45627-DAP: Plaintiff Butte County, California.......2106

545. *County of Nevada v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45628-DAP: Plaintiff Nevada County, California .................................................................2109

546. *County of El Dorado v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45629-DAP: Plaintiff El Dorado County, California .................................................................2111

547. *County of Siskiyou v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45630-DAP: Plaintiff Siskiyou County, California .................................................................2114

548. *County of Imperial et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45631-DAP: Plaintiff Imperial County, California .................................................................2116

549. *City of Portland, Oregon v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45633-DAP: Plaintiff Portland City, Oregon.................................................................2120

550. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Bridgeport city, Alabama.................................................................2126

551. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Geraldine Town, Alabama ..................................................................2130

552. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Henagar City, Alabama ..........................................................2134

553. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Jackson County, Alabama ........................................................2138

554. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff New Hope City, Alabama..................................................................2142

555. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Scottsboro City, Alabama ..................................................2147

556. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Woodville Town, Alabama................................................2151

557. *City of Mayfield Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45635-DAP: Plaintiff Mayfield Heights City, Ohio..................................................................2155

558. *City of Lyndhurst v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45636-DAP: Plaintiff Lyndhurst City, Ohio ............2159

559. *City of Wickliffe v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45637-DAP: Plaintiff Wickliffe City, Ohio .............2163

560. *City of St. Marys, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45638-DAP: Plaintiff St. Marys City, Ohio........................................................................2166

561. *County of Glenn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45639-DAP: Plaintiff Glenn County, California......2169

562. *County of Sutter v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45640-DAP: Plaintiff Sutter County, California......2172

563. *County of Modoc v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45641-DAP: Plaintiff Modoc County, California ....2175

564. *County of Placer v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45642-DAP: Plaintiff Placer County, California......2178

565. *County of Merced, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45643-DAP: Plaintiff Merced County, California ..................................................................2181

566. *County of Fresno v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45644-DAP: Plaintiff Fresno County, California.....2184

567. *County of Calaveras, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45645-DAP: Plaintiff Calaveras County, California.................................................................2188

568. *County of Inyo, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45646-DAP: Plaintiff Inyo County, California ........................................................................2191

569. *County of Madera, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45647-DAP: Plaintiff Madera County, California ........................................................................2194

570. *County of Yuba v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45648-DAP: Plaintiff Yuba County, California.......2196

571. *County of Plumas v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45649-DAP: Plaintiff Plumas County, California....2199

572. *County of Trinity v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45650-DAP: Plaintiff Trinity County, California ....2202

573. *Allegany County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45652-DAP: Plaintiff Allegany County, Maryland.................................................................2204

574. *County of San Benito v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45653-DAP: Plaintiff San Benito County, California ........................................................................2208

575. *County of Mendocino v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45654-DAP: Plaintiff Mendocino County, California ........................................................................2211

576. *County of Del Norte v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45655-DAP: Plaintiff Del Norte County, California ........................................................................2215

577. *County of Contra Costa v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45656-DAP: Plaintiff Contra Costa County, California.................................................................2218

578. *City of Winston-Salem v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45658-DAP: Plaintiff Winston-Salem City, North Carolina ....................................................................2222

579. *Craven County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45660-DAP: Plaintiff Craven County, North Carolina.............................................................................2226

580. *Knox County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45665-DAP: Plaintiff Knox County, Ohio ............................................2229

581. *Dallas County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45667-DAP: Plaintiff Dallas County, Alabama.....................................2232

582. *Shelby County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45668-DAP: Plaintiff Shelby County, Ohio .........................................2237

583. *County of Osceola v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45669-DAP: Plaintiff Osceola County, Florida ...............................2240

584. *Wilkinson County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45671-DAP: Plaintiff Wilkinson County, Georgia ....................................................2244

585. *Monroe County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45672-DAP: Plaintiff Monroe County, Georgia....................................................................................2248

586. *Town of Watertown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45674-DAP: Plaintiff Watertown Town City, Massachusetts.....................................................................2251

587. *Town of Plymouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45675-DAP: Plaintiff Plymouth Town, Massachusetts ...................................................................2256

588. *Town of Acushnet, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45676-DAP: Plaintiff Acushnet Town, Massachusetts ............................................2260

589. *City of Amesbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45678-DAP: Plaintiff Amesbury Town City, Massachusetts ...................................................................2265

590. *County of Tehama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45680-DAP: Plaintiff Tehama County, California ......................................................................2269

591. *Dare County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45683-DAP: Plaintiff Dare County, North Carolina.........2272

592. *City of Wilmington v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45684-DAP: Plaintiff Wilmington City, North Carolina ...........................................................................2275

593. *Alachua County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45685-DAP: Plaintiff Alachua County, Florida ...................................2279

594. *Town of Southbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45686-DAP: Plaintiff Southbridge Town City, Massachusetts ..................................................................2283

595. *Town of Winchendon Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45687-DAP: Plaintiff Winchendon Town, Massachusetts ..........................................2288

596. *Town of Auburn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45688-DAP: Plaintiff Auburn Town, Massachusetts ..................................................................................2291

597. *Town of Charlton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45689-DAP: Plaintiff Charlton Town, Massachusetts ..................................................................................2295

598. *City of Prichard, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45690-DAP: Plaintiff Prichard City, Alabama ......................2298

599. *Town of Carver v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45691-DAP: Plaintiff Carver Town, Massachusetts ..................................................................................2302

600. *City of Chelsea v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45693-DAP: Plaintiff Chelsea City, Massachusetts ..................................................................................2307

601. *City of Holyoke v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45694-DAP: Plaintiff Holyoke City, Massachusetts ..................................................................................2311

602. *Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45696-DAP: Plaintiff Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation, Nevada ..................................................................2315

603. *Paiute-Shoshone Tribe of the Fallon Reservation and Colony v. McKesson Corporation et al.*, Case No. 1:18-op-45697-DAP: Plaintiff Paiute-Shoshone Tribe of the Fallon Reservation and Colony, Nevada ..................................................................2318

604. *Walker River Paiute Tribe of The Walker River Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45698-DAP: Plaintiff Walker River Paiute Tribe of The Walker River Reservation, Nevada ..................................................................2322

605. *Reno-Sparks Indian Colony v. McKesson Corporation et al.*, Case No. 1:18-op-45699-DAP: Plaintiff Reno-Sparks Indian Colony, Nevada ..................................................................................2325

606. *United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-45700-DAP: Plaintiff United

Food and Commercial Workers Union UFCW Local 1529 and
Employers Health and Welfare Plan and Trust, Tennessee .................. 2328

607. *City of North Adams v. Amerisourcebergen Drug Corporation et
al.*, Case No. 1:18-op-45702-DAP: Plaintiff North Adams City,
Massachusetts ......................................................................................... 2332

608. *Town of Nantucket v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45703-DAP: Plaintiff Nantucket Town,
Massachusetts ......................................................................................... 2336

609. *Town of Hanson v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45704-DAP: Plaintiff Hanson Town,
Massachusetts ......................................................................................... 2340

610. *Town of Freetown v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45705-DAP: Plaintiff Freetown Town,
Massachusetts ......................................................................................... 2344

611. *Town of Douglas v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45706-DAP: Plaintiff Douglas Town,
Massachusetts ......................................................................................... 2348

612. *Town of Dudley v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45707-DAP: Plaintiff Dudley Town,
Massachusetts ......................................................................................... 2352

613. *Town of Leicester v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45709-DAP: Plaintiff Leicester Town,
Massachusetts ......................................................................................... 2356

614. *City of Leominster v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45710-DAP: Plaintiff Leominster City,
Massachusetts ......................................................................................... 2360

615. *Town of Northbridge v. Amerisourcebergen Drug Corporation et
al.*, Case No. 1:18-op-45711-DAP: Plaintiff Northbridge Town,
Massachusetts ......................................................................................... 2364

616. *Lincoln County v. AmerisourceBergen Drug Corporation et al.*,
Case No. 1:18-op-45719-DAP: Plaintiff Lincoln County, North
Carolina .................................................................................................. 2368

617. *Town of East Bridgewater v. Amerisourcebergen Drug
Corporation et al.*, Case No. 1:18-op-45721-DAP: Plaintiff East
Bridgewater Town, Massachusetts .......................................................... 2371

618. *Lincoln County, Mississippi v. Amerisourcebergen Drug
Corporation et al.*, Case No. 1:18-op-45722-DAP1: Plaintiff
Lincoln County, Mississippi ................................................................... 2375

619. *Prentiss County, Mississippi v. Amerisourcebergen Drug
Corporation et al.*, Case No. 1:18-op-45723-DAP: Plaintiff
Prentiss County, Mississippi ................................................................... 2378

620. *Tyrrell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45725-DAP: Plaintiff Tyrrell County, North Carolina .................................................................................2381

621. *City of Fayetteville v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45726-DAP: Plaintiff Fayetteville City, North Carolina .................................................................................2383

622. *City of Franklin, NH v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45728-DAP: Plaintiff Franklin City, New Hampshire .................................................................................2388

623. *Escambia County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45729-DAP: Plaintiff Escambia County, Florida .................................................................................2391

624. *Nez Perce Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45730-DAP: Plaintiff Nez Perce Tribe, Idaho .................................................................................2396

625. *United Food and Commercial Worker Local 1000 Oklahoma Health and Welfare Fund v. McKesson Corporation et al.*, Case No. 1:18-op-45733-DAP: Plaintiff United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund, Oklahoma .................................................................................2398

626. *Chilton County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45735-DAP: Plaintiff Chilton County, Alabama .................................................................................2401

627. *City of Hartselle, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45736-DAP: Plaintiff Hartselle City, Alabama .................................................................................2405

628. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Carbon Hill City, Alabama ...........2409

629. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Cordova City, Alabama .................2413

630. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Nauvoo Town, Alabama ...............2418

631. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Oakman Town, Alabama ..............2421

632. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Parrish Town, Alabama ................2425

633. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Sipsey Town, Alabama .................2429

634. *City of Winfield, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45738-DAP: Plaintiff Winfield City, Alabama .......................2433

635. *Town of Double Springs, AL v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45739-DAP: Plaintiff Double Springs Town, Alabama..........................................................2437

636. *Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP: Plaintiff Alamosa City, Colorado................................2442

637. *Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP: Plaintiff Alamosa County, Colorado.........................2445

638. *Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP: Plaintiff Conejos County, Colorado..........................2448

639. *Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP: Plaintiff Las Animas County, Colorado....................2451

640. *Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP: Plaintiff Otero County, Colorado................................2455

641. *Eastern Atlantic States Carpenters Health Fund v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45741-DAP: Plaintiff Eastern Atlantic States Carpenters Health Fund, New Jersey ..........................2459

642. *Pinellas County, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45742-DAP: Plaintiff Pinellas County, Florida ...................................................................................................2462

643. *Town of Lakeville v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45743-DAP: Plaintiff Lakeville Town, Massachusetts ......................................................................................2466

644. *Town of North Attleborough v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45744-DAP: Plaintiff North Attleborough Town, Massachusetts......................................................2470

645. *Seneca Nation of Indians v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45746-DAP: Plaintiff Seneca Nation of Indians, New York ...............................................................................2475

646. *Cabarrus County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45747-DAP: Plaintiff Cabarrus County, North Carolina.....................2479

647. *Blackfeet Tribe of The Blackfeet Indian Reservation v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45749-DAP: Plaintiff Blackfeet Tribe of The Blackfeet Indian Reservation, Montana ..........................................................................2481

648. *Town of Marshfield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45752-DAP: Plaintiff Marshfield Town, Massachusetts..........................................................2485

649. *Town of Bridgewater, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45754-DAP: Plaintiff Bridgewater Town, Massachusetts .......................................................2489

650. *Town of Mashpee, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45755-DAP: Plaintiff Mashpee Town, Massachusetts ................................................................2493

651. *Vance County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45759-DAP: Plaintiff Vance County, North Carolina ................................................................2497

652. *Town of Danvers, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45760-DAP: Plaintiff Danvers Town, Massachusetts ................................................................2501

653. *City of Newark, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45761-DAP: Plaintiff Newark City, New Jersey ...............2505

654. *Hancock County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45762-DAP: Plaintiff Hancock County, Mississippi ................................................................2508

655. *City of Henderson v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45768-DAP: Plaintiff Henderson City, North Carolina ................................................................2512

656. *Town of Somerset, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45769-DAP: Plaintiff Somerset Town, Massachusetts ................................................................2515

657. *Town of Tyngsborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45770-DAP: Plaintiff Tyngsborough Town, Massachusetts ................................................................2519

658. *City of Parma Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45773-DAP: Plaintiff Parma Heights City, Ohio ....................2523

659. *Iredell County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45774-DAP: Plaintiff Iredell County, North Carolina ..........................2527

660. *Stone County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45775-DAP: Plaintiff Stone County, Mississippi ................................................................2530

661. *Board of County Commissioners of the County of Santa Fe v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45776-DAP: Plaintiff Santa Fe County, New Mexico ................................................................2534

662. *Worth County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45777-DAP: Plaintiff Worth County, Missouri ................................................................2536

663. *Perry County, Mississippi v. Amerisourceberger Drug Corporation et al.*, Case No. 1:18-op-45778-DAP: Plaintiff Perry County, Mississippi ................................................................2540

664. *Montgomery County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45780-DAP: Plaintiff Montgomery County, Kansas ...............................................................2543

665. *Bourbon County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45781-DAP: Plaintiff Bourbon County, Kansas .....................................................................................2547

666. *County of Volusia, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45782-DAP: Plaintiff Volusia County, Florida .................................................................2551

667. *Town of Milford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45783-DAP: Plaintiff Milford Town, Massachusetts .............................................2554

668. *Town of Munford, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45785-DAP: Plaintiff Munford Town, Alabama ..............................2558

669. *City of Lincoln, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45786-DAP: Plaintiff Lincoln City, Alabama .......................................2561

670. *Town of Norton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45787-DAP: Plaintiff Norton Town, Massachusetts ........................................................2565

671. *City of Sandusky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45788-DAP: Plaintiff Sandusky City, Ohio...........................................2568

672. *City of Lynn, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45789-DAP: Plaintiff Lynn City, Massachusetts...............................................................2572

673. *Town of West Tisbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45790-DAP: Plaintiff West Tisbury Town, Massachusetts................................................2576

674. *Town of Marblehead, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45791-DAP: Plaintiff Marblehead Town, Massachusetts .......................................2580

675. *Holmes County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45793-DAP: Plaintiff Holmes County, Mississippi .................................................2585

676. *Nodaway County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45795-DAP: Plaintiff Nodaway County, Missouri ................................................2589

677. *Atchison County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45797-DAP: Plaintiff Atchison County, Missouri .................................................2592

678. *City of Saint Joseph, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45798-DAP: Plaintiff St. Joseph City, Missouri.............................................................2596

679. *Rowan County v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45799-DAP: Plaintiff Rowan County, North Carolina......................................................................2600

680. *City of Lakewood, CO et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45800-DAP: Plaintiff Wheat Ridge City, Colorado..........2603

681. *Dane County, Wisconsin v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45802-DAP: Plaintiff Dane County, Wisconsin.............................................................2607

682. *Pike County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45803-DAP: Plaintiff Pike County, Alabama ....2610

683. *City of Pinellas Park v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45807-DAP: Plaintiff Pinellas Park City, Florida...................................................................2614

684. *Town of Plainville, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45808-DAP: Plaintiff Plainville Town, Massachusetts.................................2619

685. *Town of Spencer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45809-DAP: Plaintiff Spencer Town, Massachusetts...................................2623

686. *Town of Sutton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45810-DAP: Plaintiff Sutton Town, Massachusetts........................................2627

687. *Town of Warren, Massachusetts, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45811-DAP: Plaintiff Warren Town, Massachusetts........................................2631

688. *Town of West Springfield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45813-DAP: Plaintiff West Springfield Town City, Massachusetts.........................2635

689. *Town of Winthrop, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45814-DAP: Plaintiff Winthrop Town City, Massachusetts...................................2639

690. *Town of Norwell, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45815-DAP: Plaintiff Norwell Town, Massachusetts........................................2643

691. *Town of Truro, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45816-DAP: Plaintiff Truro Town, Massachusetts........................................2648

692. *Cobb County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45817-DAP: Plaintiff Cobb County, Georgia.........................................2652

693. *Town of Middletown, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45818-DAP: Plaintiff Middletown Town, Rhode Island .........................................................2656

694. *Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Chesapeake Hospital Corporation, Virginia..........................................................................2659

695. *Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Mary Immaculate Hospital, Incorporated, Virginia ...........................................................2662

696. *Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Maryview Hospital, Virginia ..............................................................................................2665

697. *Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Memorial Regional Medical Center, Inc., Virginia ................................................................2668

698. *Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Richmond Community Hospital, Incorporated, Virginia ........................................................2671

699. *Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff St. Francis Medical Center, Inc., Virginia .........................................................................2674

700. *Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff St. Mary's Hospital of Richmond, Inc., Virginia ........................................................................2676

701. *Bon Secours Health System, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45821-DAP: Plaintiff St. Francis Hospital, Inc., South Carolina .............................................................................2679

702. *Town of Pembroke, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45823-DAP: Plaintiff Pembroke Town, Massachusetts.............................................................2683

703. *Town of Rockland, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45824-DAP: Plaintiff Rockland Town, Massachusetts...............................................................2686

704. *Chitimacha Tribe of Louisiana v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45825-DAP: Plaintiff Chitimacha Tribe of Louisiana, Louisiana..............................................................................................2690

705. *San Juan County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45829-DAP: Plaintiff San Juan County, New Mexico .........................2694

706. *Adams County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45831-DAP: Plaintiff Adams County, Mississippi.................................................................................2696

707. *Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP: Plaintiff Green Lake County, Wisconsin............2700

708. *Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP: Plaintiff Taylor County, Wisconsin...................2703

709. *Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP: Plaintiff Vilas County, Wisconsin ......................2706

710. *Town of Leverett, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45836-DAP: Plaintiff Leverett Town, Massachusetts.......................................................................2708

711. *Jefferson County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45839-DAP: Plaintiff Jefferson County, Mississippi .................................................................2712

712. *Lafayette County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45840-DAP: Plaintiff Lafayette County, Missouri ........................................................................2716

713. *Cass County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45841-DAP: Plaintiff Cass County, Missouri....2719

714. *Neshoba County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45843-DAP: Plaintiff Neshoba County, Mississippi ...................................................................2722

715. *City of Providence, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45844-DAP: Plaintiff Providence City, Rhode Island ..............................................................2725

716. *Columbus County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45847-DAP: Plaintiff Columbus County, North Carolina..................................................................................................2729

717. *Minneapolis, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45850-DAP: Plaintiff Minneapolis City, Minnesota ...............2733

718. *Pasco County, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45851-DAP: Plaintiff Pasco County, Florida.....2736

719. *Cochise County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45855-DAP: Plaintiff Cochise County, Arizona ...................................2739

720. *Town of North Reading, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45856-DAP: Plaintiff North Reading Town, Massachusetts ....................................................2742

137

721. *Town of West Boylston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45858-DAP: Plaintiff West Boylston Town, Massachusetts..............................................................2746

722. *Town of Westborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45859-DAP: Plaintiff Westborough Town, Massachusetts.......................................................2751

723. *City of Peabody, Massachusetts, v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45860-DAP: Plaintiff Peabody City, Massachusetts...................................................................2755

724. *Santa Rosa County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45861-DAP: Plaintiff Santa Rosa County, Florida ............................................................................................2759

725. *Town of Barnstable, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45862-DAP: Plaintiff Barnstable Town City, Massachusetts ...................................................2763

726. *Town of Eastham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45864-DAP: Plaintiff Eastham Town, Massachusetts ...........................................................2767

727. *City of North Miami, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45872-DAP: Plaintiff North Miami City, Florida ...................................................................2770

728. *Town of Holliston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45874-DAP: Plaintiff Holliston Town, Massachusetts ..........................................................2774

729. *Caswell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45875-DAP: Plaintiff Caswell County, North Carolina.............................................................................................2778

730. *Town of Sudbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45877-DAP: Plaintiff Sudbury Town, Massachusetts ............................................................2781

731. *County of Riverside et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45878-DAP: Plaintiff Riverside County, California...............2785

732. *Town of Georgetown, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45879-DAP: Plaintiff Georgetown Town, Massachusetts .......................................................2789

733. *Town of Seekonk, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45881-DAP: Plaintiff Seekonk Town, Massachusetts ............................................................2793

734. *Town of Clarksburg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45882-DAP: Plaintiff Clarksburg Town, Massachusetts .......................................................2797

735. *Town of Williamsburg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45883-DAP: Plaintiff Williamsburg Town, Massachusetts ......................................................2800

736. *County of Washtenaw, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45886-DAP: Plaintiff Washtenaw County, Michigan .....................................................................................................2805

737. *County of Berrien, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45887-DAP: Plaintiff Berrien County, Michigan .............2807

738. *County of Clinton, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45889-DAP: Plaintiff Clinton County, Michigan .............2809

739. *Town of Mattapoisett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45890-DAP: Plaintiff Mattapoisett Town, Massachusetts ............................................................................................2811

740. *Town of Sandwich, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45891-DAP: Plaintiff Sandwich Town, Massachusetts ............................................................2815

741. *City of Springfield, Missouri v. Purdue Pharma, L.P., et al.*, Case No. 1:18-op-45899-DAP: Plaintiff Springfield City, Missouri .............2819

742. *Polk County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45900-DAP: Plaintiff Polk County, North Carolina .........2823

743. *City of Westland, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45903-DAP: Plaintiff Westland City, Michigan .....................2826

744. *Town of Belchertown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45905-DAP: Plaintiff Belchertown Town, Massachusetts ............................................................................................2829

745. *Town of Ludlow v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45906-DAP: Plaintiff Ludlow Town, Massachusetts ............................................................................................2833

746. *Town of Ware v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45907-DAP: Plaintiff Ware Town, Massachusetts ............................................................................................2836

747. *Robinson Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45912-DAP: Plaintiff Robinson Rancheria, California ...........2840

748. *Hopland Band of Pomo Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45913-DAP: Plaintiff Hopland Band of Pomo Indians, California.................................................................................2842

749. *Scotts Valley Band of Pomo Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45914-DAP: Plaintiff Scotts Valley Band of Pomo Indians, California ....................................................................2845

750. *Round Valley Indian Tribes et al. v. McKesson Corporation et al.*, Case No. 1:18-op-45915-DAP: Plaintiff Round Valley Indian Tribes, California ...........................................................................2848

751. *Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45916-DAP: Plaintiff Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria, California ...........................................................................2850

752. *Guidiville Rancheria of California v. McKesson Corporation et al.*, Case No. 1:18-op-45917-DAP: Plaintiff Guidiville Rancheria of California, California ...........................................................................2854

753. *Big Valley Band of Pomo Indians of the Big Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45922-DAP: Plaintiff Big Valley Band of Pomo Indians of the Big Valley Rancheria, California ...........................................................................2856

754. *Big Sandy Rancheria of Western Mono Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45923-DAP: Plaintiff Big Sandy Rancheria of Western Mono Indians, California ........................2859

755. *Lac Courte Oreilles Band Of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45932-DAP: Plaintiff Lac Courte Oreilles Band Of Lake Superior Chippewa Indians, Wisconsin ...........................................................................2862

756. *County of Hudson v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45937-DAP: Plaintiff Hudson County, New Jersey ...........................2866

757. *Humboldt County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45942-DAP: Plaintiff Humboldt County, California ......................2870

758. *Spokane County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45943-DAP: Plaintiff Spokane County, Washington ...........................2872

759. *Franklin County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45944-DAP: Plaintiff Franklin County, Washington ...........................2875

760. *Laurens County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45945-DAP: Plaintiff Laurens County, Georgia ...........................................................................2878

761. *City of Jersey City, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45948-DAP: Plaintiff Jersey City, New Jersey .................2882

762. *City of New Albany, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45949-DAP: Plaintiff New Albany City, Mississippi...........................................................................2886

763. *City of Greenwood, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45950-DAP: Plaintiff Greenwood City, Mississippi...........................................................................2890

140

764. *City of Melrose, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45951-DAP: Plaintiff Melrose City, Massachusetts ........................................................2894

765. *Town of Chelmsford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45952-DAP: Plaintiff Chelmsford Town, Massachusetts ........................................................2899

766. *Gulf County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45953-DAP: Plaintiff Gulf County, Florida .......2902

767. *Whatcom County v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45954-DAP: Plaintiff Whatcom County, Washington ........................2907

768. *Lummi Tribe of the Lummi Reservation v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45955-DAP: Plaintiff Lummi Tribe of the Lummi Reservation, Washington ........................................................2910

769. *Conecuh County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45957-DAP: Plaintiff Conecuh County, Alabama ....................................................................2913

770. *Red Lake Band of Chippewa Indians v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45959-DAP: Plaintiff Red Lake Band of Chippewa Indians, Minnesota ...............................2918

771. *Village of Herkimer, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45964-DAP: Plaintiff Herkimer Village, New York ........2921

772. *Jackson County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45965-DAP: Plaintiff Jackson County, Missouri....................2924

773. *City of Covington, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45967-DAP: Plaintiff Covington City, Kentucky.............2927

774. *City of Meridian v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45969-DAP: Plaintiff Meridian City, Mississippi....2930

775. *Polk County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45970-DAP: Plaintiff Polk County, Florida ....................................2934

776. *County of Eaton v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45971-DAP: Plaintiff Eaton County, Michigan....................................2937

777. *Waukesha County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45978-DAP: Plaintiff Waukesha County, Wisconsin................................................................................................2940

778. *Cherokee County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45979-DAP: Plaintiff Cherokee County, North Carolina..................................................................................................2943

779. *Island County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45982-DAP: Plaintiff Island County, Washington ................................2947

780. *Allamakee County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45983-DAP: Plaintiff Allamakee County, Iowa ...................................... 2949

781. *Pasquotank County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45986-DAP: Plaintiff Pasquotank County, North Carolin ......................................................................... 2953

782. *St. John the Baptist Parish v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45987-DAP: Plaintiff St. John The Baptist Parish, Louisiana .......................................... 2957

783. *Walworth County Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45988-DAP: Plaintiff Walworth County, Wisconsin .............................................................. 2960

784. *Essex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45989-DAP: Plaintiff Essex County, New Jersey .................... 2963

785. *Town of Sturbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45990-DAP: Plaintiff Sturbridge Town, Massachusetts ......................................................................... 2967

786. *Lenoir County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45991-DAP: Plaintiff Lenoir County, North Carolina .................................................................................. 2970

787. *South Central UFCW Unions and Employers Health & Welfare Trust v. McKesson Corporation et al.*, Case No. 1:18-op-45998-DAP: Plaintiff South Central UFCW Unions and Employers Health & Welfare Trust, Texas ............................................... 2973

788. *City of Garfield Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45999-DAP: Plaintiff Garfield Heights City, Ohio ................. 2976

789. *Town of South Hadley v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46000-DAP: Plaintiff South Hadley Town, Massachusetts ......................................................................... 2980

790. *Town of Sheffield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46001-DAP: Plaintiff Sheffield Town, Massachusetts ............................................... 2983

791. *Ely Shoshone Tribe of Nevada v. McKesson Corporation et al.*, Case No. 1:18-op-46003-DAP: Plaintiff Ely Shoshone Tribe of Nevada, Nevada ...................................................................... 2987

792. *Town of Westford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46007-DAP: Plaintiff Westford Town, Massachusetts ............................................... 2991

793. *Kittitas County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46008-DAP: Plaintiff Kittitas County, Washington ............................. 2995

794. *Walla Walla County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46010-DAP: Plaintiff Walla Walla County, Washington ...............2998

795. *City of North Olmsted v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46012-DAP: Plaintiff North Olmsted City, Ohio ...................3002

796. *City of Euclid v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46013-DAP: Plaintiff Euclid City, Ohio.................................................3006

797. *City of Olmsted Falls v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46014-DAP: Plaintiff Olmsted Falls City, Ohio .............................3011

798. *City of North Ridgeville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46015-DAP: Plaintiff North Ridgeville City, Ohio ................3015

799. *South Fork Band of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46016-DAP: Plaintiff South Fork Band of the Te-Moak Tribe of Western Shoshone Indians ...............................................................................3019

800. *Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46017-DAP: Plaintiff Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian, Nevada ........................................................3022

801. *Alleghany County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46019-DAP: Plaintiff Alleghany County, North Carolina.........................................................................................................3026

802. *Makah Indian Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46022-DAP: Plaintiff Makah Indian Tribe, Washington .................3029

803. *Jefferson County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46023-DAP: Plaintiff Jefferson County, Washington ...........................3032

804. *City of Hamilton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46024-DAP: Plaintiff Hamilton City, Ohio .......3035

805. *City of Ironton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46025-DAP: Plaintiff Ironton City, Ohio...........3039

806. *Moore County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46028-DAP: Plaintiff Moore County, North Carolina.........................................................................................................3043

807. *City of Kansas City, Missouri v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46029-DAP: Plaintiff City of Kansas City, Missouri .......3047

808. *Cumberland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46031-DAP: Plaintiff Cumberland County, North Carolina ..................................................................................................3051

809. *County of San Bernardino et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46032-DAP: Plaintiff San Bernardino County, California ..................................................................................................3054

143

810. *Oneida Nation v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46034-DAP: Plaintiff Oneida Nation, Wisconsin ....3057

811. *Township of Painesville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46035-DAP: Plaintiff Painesville Township, Ohio..................3060

812. *Sarpy County, Nebraska v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46038-DAP: Plaintiff Sarpy County, Nebraska ..................................................................................................3064

813. *City of Palmetto v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46055-DAP: Plaintiff Palmetto City, Florida .........................................3067

814. *City of Kingman v. Purdue Pharma LP et al.*, Case No. 1:18-op-46057-DAP: Plaintiff Kingman City, Arizona ......................................3071

815. *St. Charles County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46059-DAP: Plaintiff St. Charles County, Missouri.........3074

816. *Board of County Commissioners of Washington County, Maryland v. AmerisourceBergen Drug Corporation*, Case No. 1:18-op-46060-DAP: Plaintiff Washington County, Maryland .........................3077

817. *Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Adams County, Idaho ...................................3081

818. *Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Blaine County, Idaho ...................................3083

819. *Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Bonneville County, Idaho ............................3086

820. *Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Cassia County, Idaho ...................................3088

821. *Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Elmore County, Idaho ..................................3092

822. *Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Latah County, Idaho.....................................3095

823. *Bland County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46065-DAP: Plaintiff Bland County, Virginia ................................................................................................3097

824. *Madison County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46067-DAP: Plaintiff Madison County, North Carolina................................................................................................3101

825. *Carroll County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46068-DAP: Plaintiff Carroll County, Virginia ................................................................................................3104

826. *Grayson County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46069-DAP: Plaintiff Grayson County, Virginia...................................................................................3107

827. *Yancey County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46071-DAP: Plaintiff Yancey County, North Carolina .................................................................................3111

828. *Wythe County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46072-DAP: Plaintiff Wythe County, Virginia ...............................................................................3114

829. *Russell County, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46073-DAP: Plaintiff Russell County, Virginia ...............................................................................3118

830. *Scott County Board of Supervisors v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46074-DAP: Plaintiff Scott County, Virginia ...............................................................................3121

831. *Pulaski County Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46076-DAP: Plaintiff Pulaski County, Virginia ...............................................................................3125

832. *Smyth County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46077-DAP: Plaintiff Smyth County, Virginia ...............................................................................3128

833. *Wyandot County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46078-DAP: Plaintiff Wyandot County, Ohio.......................................3132

834. *Carroll County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46079-DAP: Plaintiff Carroll County, Ohio..........................................3136

835. *City of Clanton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46084-DAP: Plaintiff Clanton City, Alabama .................................................................................3139

836. *City of Brockton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46089-DAP: Plaintiff Brockton City, Massachusetts.................................................3143

837. *Town of Kingston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46090-DAP: Plaintiff Kingston Town, Massachusetts .............................................3147

838. *City of Eureka et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46092-DAP: Plaintiff Eureka City, California ...................................3151

839. *Town of Walpole, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46093-DAP: Plaintiff Walpole Town, Massachusetts.................................................3154

840. *Mercer County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46094-DAP: Plaintiff Mercer County, Ohio..........................................3157

841. *Town of Falmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46095-DAP: Plaintiff Falmouth Town, Massachusetts ........................................................................3160

842. *Branch County, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46096-DAP: Plaintiff Branch County, Michigan....................3164

843. *Town of Longmeadow v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46097-DAP: Plaintiff Longmeadow Town, Massachusetts ........................................................................3167

844. *Fiscal Court of Wolfe County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46099-DAP: Plaintiff Wolfe County, Kentucky ..............................................................................3171

845. *Fiscal Court of Lee County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46100-DAP: Plaintiff Lee County, Kentucky ....3174

846. *Town of West Bridgewater v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46102-DAP: Plaintiff West Bridgewater Town, Massachusetts ........................................................3177

847. *Bacon County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46105-DAP: Plaintiff Bacon County, Georgia..............................................................................3180

848. *Pierce County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46107-DAP: Plaintiff Pierce County, Georgia..............................................................................3183

849. *City of Strongsville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46111-DAP: Plaintiff Strongsville City, Ohio ................................3185

850. *City of Demorest, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46113-DAP: Plaintiff Demorest City, Georgia ........................................................................3189

851. *Habersham County Medical Center v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46114-DAP: Plaintiff Habersham County Medical Center, Georgia ........................................3192

852. *Glynn County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46115-DAP: Plaintiff Glynn County, Georgia.......................3194

853. *Red Cliff Band of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46116-DAP: Plaintiff Red Cliff Band of Lake Superior Chippewa Indians, Wisconsin.................3199

854. *Borough of Ridgefield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46117-DAP: Plaintiff Ridgefield Borough, New Jersey..........3202

855. *Levy County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46119-DAP: Plaintiff Levy County, Florida ........................................3206

856. *Palm Beach County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46121-DAP: Plaintiff Palm Beach County, Florida .........................3211

857. *Town of Millbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46123-DAP: Plaintiff Millbury Town, Massachusetts ...............................................................3215

858. *Letcher County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46124-DAP: Plaintiff Letcher County, Kentucky ....................................................................3219

859. *City of Palm Bay v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46132-DAP: Plaintiff Palm Bay City, Florida .......................................3223

860. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Canton Charter Township, Michigan ...............................................................................................3226

861. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Huron Charter Township, Michigan ...............................................................................................3230

862. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Livonia City, Michigan .........3233

863. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Northville Charter Township, Michigan ....................................................................................3237

864. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Romulus City, Michigan .......3241

865. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Van Buren Charter Township, Michigan ....................................................................................3245

866. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Wayne City, Michigan ..........3248

867. *Charter Township of Clinton, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46135-DAP: Plaintiff Clinton Charter Township, Michigan ....................................................................................3251

868. *City of Virginia Beach, et al. v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-46137-DAP: Plaintiff Virginia Beach City, Virginia ...............................................................3254

869. *Chelan County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46139-DAP: Plaintiff Chelan County, Washington...............................3257

870. *Robeson County v. Actavis, LLC et al.*, Case No. 1:18-op-46141-DAP: Plaintiff Robeson County, North Carolina ...................................3261

871. *Shinnecock Indian Nation v. McKesson Corporation et al.*, Case No. 1:18-op-46142-DAP: Plaintiff Shinnecock Indian Nation, New York ...................................................................................................3263

872. *Fiscal Court of Montgomery County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46144-DAP: Plaintiff Montgomery County, Kentucky ...........................................................3266

873. *Fiscal Court of Powell County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46145-DAP: Plaintiff Powell County, Kentucky .................................................................................3270

874. *Fond du Lac Band of Lake Superior Chippewa v. McKesson Corporation et al.*, Case No. 1:18-op-46146-DAP: Plaintiff Fond du Lac Band of Lake Superior Chippewa, Minnesota ...........................3274

875. *People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46147-DAP: Plaintiff Schuyler County, Illinois ......3277

876. *People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46148-DAP: Plaintiff Johnson County, Illinois .......3281

877. *Town of Lunenberg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46156-DAP: Plaintiff Lunenburg Town, Massachusetts....................................................3284

878. *Town of Wilmington, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46158-DAP: Plaintiff Wilmington Town, Massachusetts .........................................................3288

879. *Town of North Andover, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46159-DAP: Plaintiff North Andover Town, Massachusetts...................................................3292

880. *Town of Upton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46160-DAP: Plaintiff Upton Town, Massachusetts ................................................................................3296

881. *City of Laurel, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46161-DAP: Plaintiff Laurel City, Mississippi .................................................................................3300

882. *Town of Stoneham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46164-DAP: Plaintiff Stoneham Town, Massachusetts ..........................................................3304

883. *Tazewell County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46167-DAP: Plaintiff Tazewell County, Virginia.................................................................3308

884. *Livingston County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46168-DAP: Plaintiff Livingston County, Missouri ...............................................................3311

148

885.  *City of Syracuse, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46169-DAP: Plaintiff Syracuse City, New York ..............3315

886.  *Lee County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46171-DAP: Plaintiff Lee County, Georgia.......3319

887.  *City of Iuka, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46172-DAP: Plaintiff Iuka City, Mississippi ...............................................................................................3322

888.  *Monroe County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46173-DAP: Plaintiff Monroe County, Mississip ....................................................................3325

889.  *Currituck County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46174-DAP: Plaintiff Currituck County, North Carolina ...............................................................................................3328

890.  *Chowan County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46175-DAP: Plaintiff Chowan County, North Carolina ...............................................................................................3332

891.  *Board of Commissioners for Lucas County, Ohio et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46177-DAP: Plaintiff Lucas County, Ohio ................................................................................3336

892.  *County of Ingham, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46178-DAP: Plaintiff Ingham County, Michigan .............3338

893.  *Ashe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46185-DAP: Plaintiff Ashe County, North Carolina ........3341

894.  *Cole County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46189-DAP: Plaintiff Cole County, Missouri.........................3344

895.  *Gasconade County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46190-DAP: Plaintiff Gasconade County, Missouri.........3348

896.  *Osage County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46191-DAP: Plaintiff Osage County, Missouri ......................3351

897.  *Pulaski County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46192-DAP: Plaintiff Pulaski County, Missouri ....................3353

898.  *Reynolds County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46193-DAP: Plaintiff Reynolds County, Missouri .................3357

899.  *Maries County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46194-DAP: Plaintiff Maries County, Missouri .....................3360

900.  *Phelps County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46195-DAP: Plaintiff Phelps County, Missouri......................3363

901.  *Warren County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46196-DAP: Plaintiff Warren County, Missouri ...................3367

902. *Montgomery County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46197-DAP: Plaintiff Montgomery County, Missouri .....3371

903. *Ozark County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46198-DAP: Plaintiff Ozark County, Missouri ......................3374

904. *Muskegon County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46199-DAP: Plaintiff Muskegon County, Michigan ...........................3377

905. *Town of Middleborough v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46200-DAP: Plaintiff Middleborough Town, Massachusetts ...........................................................................3381

906. *City of Ashland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46203-DAP: Plaintiff Ashland City, Ohio .........3384

907. *Alexander County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46205-DAP: Plaintiff Alexander County, North Carolina............................................................................................3389

908. *County Commissioners of Dona Ana County, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:18-op-46206-DAP: Plaintiff Dona Ana County, New Mexico ......................3393

909. *Davie County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46207-DAP: Plaintiff Davie County, North Carolina............................................................................................3396

910. *Plains Township, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46215-DAP: Plaintiff Plains Township, Pennsylvania .....3399

911. *Franklin County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46216-DAP: Plaintiff Franklin County, North Carolina............................................................................................3403

912. *Nye County, Nevada v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46238-DAP: Plaintiff Nye County, Nevada.......3407

913. *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46239-DAP: Plaintiff Lac Vieux Desert Band of Lake Superior Chippewa Indians, Michigan ................................................................................3410

914. *Leon County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46242-DAP: Plaintiff Leon County, Florida......3413

915. *Ripley County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46262-DAP: Plaintiff Ripley County, Missouri......................3417

916. *Lewis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46263-DAP: Plaintiff Lewis County, Missouri ......................3420

917. *Shelby County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46264-DAP: Plaintiff Shelby County, Missouri ......................3424

918. *Audrain County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46265-DAP: Plaintiff Audrain County, Missouri ...................3427

919. *Tanana Chiefs Conference et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46268-DAP: Plaintiff Southcentral Foundation, Alaska .....................................................................................................3430

920. *Carroll County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46269-DAP: Plaintiff Carroll County, Georgia .....................................3434

921. *Carbon County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46270-DAP: Plaintiff Carbon County, Utah...........................................3437

922. *Hillsborough County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46281-DAP: Plaintiff Hillsborough County, Florida ......................3441

923. *City of Tampa v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46282-DAP: Plaintiff Tampa City, Florida .............................................3444

924. *Union County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46284-DAP: Plaintiff Union County, Georgia.................................................................................................3448

925. *City of Fall River v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46285-DAP: Plaintiff Fall River City, Massachusetts...........................3451

926. *City of Overland Park, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46287-DAP: Plaintiff Overland Park City, Kansas .................................................................3455

927. *People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46294-DAP: Plaintiff Calhoun County, Illinois.......3458

928. *Rockdale County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46296-DAP: Plaintiff Rockdale County, Georgia ...................3462

929. *Clayton County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46298-DAP: Plaintiff Clayton County, Georgia .....................3466

930. *Coos County, Oregon v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46300-DAP: Plaintiff Coos County, Oregon ...........................3470

931. *Lewis County, Washington, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46301-DAP: Plaintiff Lewis County, Washington ............................................................................................3473

932. *Camden County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46306-DAP: Plaintiff Camden County, New Jersey.........3477

933. *City of Hickory v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46307-DAP: Plaintiff Hickory City, North Carolina..............................................................................................3481

934. *City of Portland v. Purdue Pharma LP et al.*, Case No. 1:18-op-46313-DAP: Plaintiff Portland City, Maine ..........................................3485

151

935. *City of Bangor v. Purdue Pharma LP et al.*, Case No. 1:18-op-46314-DAP: Plaintiff Bangor City, Maine ............................................3489

936. *City of Lewiston v. Purdue Pharma LP et al.*, Case No. 1:18-op-46315-DAP: Plaintiff Lewiston City, Maine .........................................3492

937. *Washington County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46317-DAP: Plaintiff Washington County, Tennessee ............................................................3496

938. *Lauderdale County, Tennessee v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-46324-DAP: Plaintiff Lauderdale County, Tennessee ............................................................3499

939. *Montgomery County Board of County Commissioners et al. v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-46326-DAP: Plaintiff Montgomery County, Ohio..................................................3504

940. *Davidson County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46330-DAP: Plaintiff Davidson County, North Carolina.....................3508

941. *City of Bradenton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46331-DAP: Plaintiff Bradenton City, Florida ........3512

942. *Commissioners of St. Mary's County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46334-DAP: Plaintiff St. Marys County, Maryland .............................3515

943. *City of Albany Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46337-DAP: Plaintiff Albany City, Georgia................................................................................................3519

944. *City of Findlay v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46339-DAP: Plaintiff Findlay City, Ohio..............................................3523

945. *Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46344-DAP: Plaintiff Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties, Ohio.....................................3527

946. *City of Van Wert v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46345-DAP: Plaintiff Van Wert City, Ohio.............3531

947. *Webster County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46350-DAP: Plaintiff Webster County, Missouri...................3534

948. *City of Norwalk v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46351-DAP: Plaintiff Norwalk City, Ohio ...........................................3538

949. *Moniteau County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46352-DAP: Plaintiff Moniteau County, Missouri.................3542

950. *Hillsborough County, New Hampshire, v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46353-DAP: Plaintiff Hillsborough County, New Hampshire ....................................................................................3545

951. *City of Utica, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46359-DAP: Plaintiff Utica City, New York ........................ 3548

952. *Anson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46364-DAP: Plaintiff Anson County, North Carolina ............................................................................................ 3551

953. *County of Kent, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45000-DAP: Plaintiff Kent County, Michigan ...................... 3555

954. *Camden County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45001-DAP: Plaintiff Camden County, North Carolina ............................................................................................ 3558

955. *Washington County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45002-DAP: Plaintiff Washington County, North Carolina ........................................................................... 3561

956. *Madison County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45006-DAP: Plaintiff Madison County, Alabama .................................................................... 3565

957. *City of Quincy v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45008-DAP: Plaintiff Quincy City, Massachusetts .............................. 3569

958. *City of Clearwater in the County of Pinellas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45009-DAP: Plaintiff Clearwater City, Florida ...................................................................................... 3573

959. *City of Saint Martinville v. AmerisourceBergen Corp et al.*, Case No. 1:19-op-45013-DAP: Plaintiff St. Martinville City, Louisiana ...... 3577

960. *Haywood County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45014-DAP: Plaintiff Haywood County, North Carolina ............................................................................................ 3581

961. *Unified Government of Wyandotte County/Kansas City, Kansas v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45015-DAP: Plaintiff Kansas City City, Kansas .................................. 3585

962. *Saint Regis Mohawk Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45018-DAP: Plaintiff Saint Regis Mohawk Tribe, New York ................................................................................................ 3588

963. *County of Maricopa v. Purdue Pharma LP et al.*, Case No. 1:19-op-45020-DAP: Plaintiff Maricopa County, Arizona ........................... 3592

964. *Town of Stoughton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45023-DAP: Plaintiff Stoughton Town, Massachusetts .......................................................... 3595

965. *City of Anacortes et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45029-DAP: Plaintiff Anacortes City, Washington ................. 3599

966. *Board of County Commissioners of the County of McKinley v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45033-DAP: Plaintiff McKinley County, New Mexico ........................3603

967. *City of Thornton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45034-DAP: Plaintiff Thornton City, Colorado ....................................3607

968. *Board of County Commissioners of the County of Jefferson v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45035-DAP: Plaintiff Jefferson County, Colorado ......................................................3610

969. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Adams County, Colorado ........................................................3612

970. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Arapahoe County, Colorado ....................................................3616

971. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Aurora City, Colorado ............................................................3618

972. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Black Hawk City, Colorado ....................................................3622

973. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Boulder County, Colorado ......................................................3625

974. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Broomfield City, Colorado ....................................................3627

975. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Commerce City City, Colorado ...............................................3630

976. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Denver City, Colorado ............................................................3633

977. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Fremont County, Colorado ....................................................3635

978. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Hudson Town, Colorado ........................................................3638

979. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Larimer County, Colorado ......................................................3641

980. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Northglenn City, Colorado ........................................................3643

981. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Teller County, Colorado ........................................................3646

982. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Westminster City, Colorado ........................................................3649

983. *Cahto Indian Tribe of the Laytonville Rancheria et al. v. McKesson Corporation et al.*, Case No. 1:19-op-45038-DAP: Plaintiff Cahto Indian Tribe of the Laytonville Rancheria, California..........................3651

984. *Town of Dedham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45039-DAP: Plaintiff Dedham Town, Massachusetts................................................3654

985. *Duplin County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45040-DAP: Plaintiff Duplin County, North Carolina................................................................................3658

986. *Manatee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45044-DAP: Plaintiff Manatee County, Florida .....................3662

987. *Bartow County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45045-DAP: Plaintiff Bartow County, Georgia..................................................................................3665

988. *Polk County, Georgia v. AmerisourceBergen Drug Corporation*, Case No. 1:19-op-45046-DAP: Plaintiff Polk County, Georgia............3669

989. *Westwego City v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45047-DAP: Plaintiff Westwego City, Louisiana .................................3673

990. *City of Columbia, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45048-DAP: Plaintiff Columbia City, Mississippi...............................................................3677

991. *Pamlico County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45049-DAP: Plaintiff Pamlico County, North Carolina................................................................................3681

992. *Board of County Commissioners of the County of Taos v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45051-DAP: Plaintiff Taos County, New Mexico................................3684

993. *Rio Arriba County, New Mexico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45054-DAP: Plaintiff Rio Arriba County, New Mexico ................................................................................3688

994.  *People of the State of Illinois et al. v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45055-DAP: Plaintiff St. Clair County, Illinois ...................................................................................3692

995.  *Town of Athol v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45058-DAP: Plaintiff Athol Town, Massachusetts ..................................................................................3696

996.  *Town of Rehoboth v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45059-DAP: Plaintiff Rehoboth Town, Massachusetts ..................................................................................3700

997.  *Town of Fairhaven, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45060-DAP: Plaintiff Fairhaven Town, Massachusetts ..................................................................................3704

998.  *Town of Norwood v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45061-DAP: Plaintiff Norwood Town, Massachusetts ..................................................................................3708

999.  *Town of Brookline v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45062-DAP: Plaintiff Brookline Town, Massachusetts ..................................................................................3712

1000.  *Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45063-DAP: Plaintiff Scituate Town, Massachusetts ..................................................................................3716

1001.  *County of Brevard, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45064-DAP: Plaintiff Brevard County, Florida .......................3721

1002.  *Town of Orange, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45070-DAP: Plaintiff Orange Town, Massachusetts ..................................................................................3724

1003.  *City of Florence Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45073-DAP: Plaintiff Florence City, Alabama .......................3727

1004.  *Ho-Chunk Nation v. McKesson Corporation et al.*, Case No. 1:19-op-45076-DAP: Plaintiff Ho-Chunk Nation, Wisconsin .......................3731

1005.  *Town of Tewksbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45077-DAP: Plaintiff Tewksbury Town, Massachusetts ..................................................................................3734

1006.  *City of Nanticoke, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45081-DAP: Plaintiff Nanticoke City, Pennsylvania ..................................................................................3738

1007.  *City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP: Plaintiff Anaconda-Deer Lodge County, Montana ..................................................................................3742

1008. *City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP: Plaintiff Great Falls City, Montana ....................3746

1009. *City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP: Plaintiff Lake County, Montana ........................3749

1010. *City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP: Plaintiff Missoula City, Montana ......................3752

1011. *Autauga County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45086-DAP: Plaintiff Autauga County, Alabama ..................3756

1012. *County Commissioners of Charles County, Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45094-DAP: Plaintiff Charles County, Maryland ....................................................................3760

1013. *Noble County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45096-DAP: Plaintiff Noble County, Ohio ......................................3764

1014. *Grant County, New Mexico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45108-DAP: Plaintiff Grant County, New Mexico.................3767

1015. *Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP: Plaintiff Hospital Menonita Caguas, Inc., Puerto Rico .........................................................................3770

1016. *Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP: Plaintiff Hospital Menonita Gauyama, Inc., Puerto Rico ....................................................................3773

1017. *Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP: Plaintiff Mennonite General Hospital, Inc., Puerto Rico .....................................................................3775

1018. *City of Medford v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45110-DAP: Plaintiff Medford City, Massachusetts ............................3778

1019. *Missoula County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45112-DAP: Plaintiff Missoula County, Montana ................................3781

1020. *Harrison County, Mississippi v. McKesson Corporation et al.*, Case No. 1:19-op-45113-DAP: Plaintiff Harrison County, Mississippi ...............................................................................................3784

1021. *County of Mohave v. Purdue Pharma LP et al.*, Case No. 1:19-op-45117-DAP: Plaintiff Mohave County, Arizona ...................................3786

1022. *Town of Dennis v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45124-DAP: Plaintiff Dennis Town, Massachusetts ..............................................................................................3790

1023. *Town of Provincetown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45125-DAP: Plaintiff Provincetown Town, Massachusetts ..............................................................................................3794

1024. *County of San Mateo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45126-DAP: Plaintiff San Mateo County, California ......................3798

1025. *County of Santa Barbara et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45128-DAP: Plaintiff Santa Barbara County, California ...............................................................................................3800

1026. *City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP: Plaintiff Arlington City, Georgia ........................................................3803

1027. *City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP: Plaintiff Blakely City, Georgia ...........................................................3806

1028. *City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP: Plaintiff Damascus City, Georgia ......................................................3810

1029. *Heard County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45130-DAP: Plaintiff Heard County, Georgia ...............................................................................................3813

1030. *Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45132-DAP: Plaintiff Blount County, Tennessee ....3816

1031. *Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45132-DAP: Plaintiff Jefferson County, Tennessee ...............................................................................................3820

1032. *Hospital Authority of Valdosta and Lowndes County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45133-DAP: Plaintiff Valdosta And Lowndes County, Hospital Authority Of D/B/A South Georgia Medical Center, Georgia ....................................3823

1033. *Jackson County Health Care Authority v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45134-DAP: Plaintiff Jackson County Health Care Authority, Alabama .........................................................3827

1034. *City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45135-DAP: Plaintiff Hammondville Town, Alabama ...........................................................3830

1035. *City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45135-DAP: Plaintiff Rainsville City, Alabama .................................................................3834

1036. *City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP: Plaintiff Leighton Town, Alabam ...................................................................3838

1037. *City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP: Plaintiff Red Bay City, Alabama .....................................................................3841

1038.  *City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP: Plaintiff Russellville City, Alabama ...................................................................3845

1039.  *City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP: Plaintiff Sheffield City, Alabama.........................................................................3850

1040.  *Iberville Parish Council v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45140-DAP: Plaintiff Iberville Parish Council, Louisiana ......3853

1041.  *City of Vestavia Hills, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45141-DAP: Plaintiff Vestavia Hills City, Alabama .............................................................3857

1042.  *Jones County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45142-DAP: Plaintiff Jones County, North Carolina........3861

1043.  *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff Attentus Mouton, LLC d/b/a Lawrence Medical Center, Alabama.......3865

1044.  *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff Health Care Authority of Morgan County - Decatur City, Alabama.....3868

1045.  *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff Health Care Authority of the City of Huntsville d/b/a HH Health System, Alabama ...................................................................................3871

1046.  *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital, Alabama..................................................................................3875

1047.  *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children, Alabama ........................................3879

1048.  *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff Health Care Authority of the City of Huntsville d/b/a Madison Hospital, Alabama..................................................................................3884

1049.  *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital, Alabama..................................................................................3888

1050.  *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff HH

Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur Morgan Hospital and Decatur Morgan Hospital-Parkway, Alabama .................3892

1051. *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital, Alabama ........................................................................3896

1052. *Wooten v. Purdue Pharmaceuticals, L.P. et al.*, Case No. 1:19-op-45145-DAP: Plaintiff Sheriff of Coffee County, Georgia ....................3900

1053. *Walker v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45146-DAP: Plaintiff Sheriff of Crawford County, Georgia...........................3903

1054. *Jolley v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45147-DAP: Plaintiff Sheriff of Harris County, Georgia .................................3907

1055. *Jump v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45155-DAP: Plaintiff Sheriff of Glynn County, Georgia ............................................3909

1056. *County of Albany, New York v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45159-DAP: Plaintiff Albany County, New York ...........3914

1057. *Bohannon v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45161-DAP: Plaintiff Sheriff of Jeff Davis County, Georgia..........................3918

1058. *Reece v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45162-DAP: Plaintiff Sheriff of Jones County, Georgia ..................................3922

1059. *Dean v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45163-DAP: Plaintiff Sheriff of Laurens County, Georgia ........................................3926

1060. *Langford v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45164-DAP: Plaintiff Sheriff of Murray County, Georgia ...............................3930

1061. *Berry v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45165-DAP: Plaintiff Sheriff of Oconee County, Georgia ...............................3934

1062. *Bennett v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45166-DAP: Plaintiff Sheriff of Pierce County, Georgia .................................3938

1063. *Kile v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45167-DAP: Plaintiff Sheriff of Screven County, Georgia ........................................3942

1064. *Scarbrough v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45168-DAP: Plaintiff Sheriff of Tift County, Georgia.........................3946

1065. *Royal v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45169-DAP: Plaintiff Sheriff of Ware County, Georgia...................................3949

1066. *Carter v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45170-DAP: Plaintiff Sheriff of Wayne County, Georgia...............................3953

1067. *Aroostook County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45183-DAP: Plaintiff Aroostook County, Maine ..................................3957

1068. *Penobscot County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45184-DAP: Plaintiff Penobscot County, Maine.....................3960

1069. *Washington County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45185-DAP: Plaintiff Washington County, Maine .........................3963

1070. *Cheyenne & Arapaho Tribes v. McKesson Corporation et al.*, Case No. 1:19-op-45187-DAP: Plaintiff Cheyenne & Arapaho Tribes, Oklahoma.................................................................................3967

1071. *City of Auburn v. Purdue Pharma LP et al.*, Case No. 1:19-op-45188-DAP: Plaintiff Auburn City, Maine...........................................3970

1072. *Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45190-DAP: Plaintiff Lincoln County, Maine......................................3973

1073. *York County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45191-DAP: Plaintiff York County, Maine ......................................3977

1074. *City of Waterville v. Purdue Pharma LP et al.*, Case No. 1:19-op-45193-DAP: Plaintiff Waterville City, Maine ...................................3980

1075. *Androscoggin County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45205-DAP: Plaintiff Androscoggin County, Maine .....................3984

1076. *City of Geneva, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45214-DAP: Plaintiff Geneva City, New York .......................3988

1077. *Board of County Commissioners of the County of Otero, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45216-DAP: Plaintiff Otero County, New Mexico.................3991

1078. *County of Navajo v. Purdue Pharma LP et al.*, Case No. 1:19-op-45217-DAP: Plaintiff Navajo County, Arizona.....................................3994

1079. *City of Beverly v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45219-DAP: Plaintiff Beverly City, Massachusetts .............................................................................3997

1080. *City of Memphis v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45220-DAP: Plaintiff Memphis City, Tennessee ...................................4001

1081. *City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:19-op-45221-DAP: Plaintiff Lakewood City, Washington.............................4005

1082. *County Commission of Washington County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45222-DAP: Plaintiff Washington County, Oklahoma.............................................................4008

1083. *County Commission of Okmulgee County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45223-DAP: Plaintiff Okmulgee County, Oklahoma .............................................................4011

1084. *County Commission of Rogers County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45224-DAP: Plaintiff Rogers County, Oklahoma...................................................................4015

1085. *County Commission of Nowata County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45225-DAP: Plaintiff Nowata County, Oklahoma ................................................................4018

1086. *County Commission of Creek County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45226-DAP: Plaintiff Creek County, Oklahoma ...............................................................4022

1087. *County Commissioner of Mayes County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45227-DAP: Plaintiff Mayes County, Oklahoma ..............................................................4025

1088. *Meigs County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45229-DAP: Plaintiff Meigs County, Ohio ...........................4029

1089. *Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP: Plaintiff Marietta City, Ohio ..............................4032

1090. *Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP: Plaintiff Washington County, Ohio ...................4035

1091. *Cheyenne and Arapaho Tribes v. Purdue Pharma LP et al.*, Case No. 1:19-op-45231-DAP: Plaintiff Cheyenne and Arapaho Tribes, Oklahoma ..............................................................................4039

1092. *Cheyenne & Arapaho Tribes v. Watson Laboratories Inc et al.*, Case No. 1:19-op-45232-DAP: Plaintiff Cheyenne and Arapaho Tribes, Oklahoma ..................................................................4043

1093. *Montgomery County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45234-DAP: Plaintiff Montgomery County, Virginia ....................4046

1094. *Giles County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45236-DAP: Plaintiff Giles County, Virginia ......................................4050

1095. *County of Jasper v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45238-DAP: Plaintiff Jasper County, Texas...........................................4053

1096. *County of Hardin v. Endo Health Solutions, Inc. et al.*, Case No. 1:19-op-45241-DAP: Plaintiff Hardin County, Texas..........................4056

1097. *County of Newton v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45242-DAP: Plaintiff Newton County, Texas ........................4059

1098. *City of Galax, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45243-DAP: Plaintiff Galax City, Virginia .............................4063

1099. *Henry County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45245-DAP: Plaintiff Henry County, Virginia ........................4067

1100. *City of Alexandria v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45246-DAP: Plaintiff Alexandria City, Virginia...............................4070

1101. *Pittsylvania County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45247-DAP: Plaintiff Pittsylvania County, Virginia.......................4074

1102. *City of Cullman, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45248-DAP: Plaintiff Cullman City, Alabama ........................................................................4078

1103. *City of Norton, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45249-DAP: Plaintiff Norton City, Virginia............................4082

1104. *Lee County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45251-DAP: Plaintiff Lee County, Virginia.....................................4086

1105. *Dickenson County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45252-DAP: Plaintiff Dickenson County, Virginia .........................4090

1106. *Washington County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45254-DAP: Plaintiff Washington County, Virginia........4094

1107. *Bad River Band of Lake Superior Chippewa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45256-DAP: Plaintiff Bad River Band of Lake Superior Chippewa, Wisconsin ......................................4098

1108. *Kennebec County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45257-DAP: Plaintiff Kennebec County, Maine ....................................4101

1109. *Cumberland County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45259-DAP: Plaintiff Cumberland County, Maine .........................4105

1110. *County of Ionia, Michigan v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45261-DAP: Plaintiff Ionia County, Michigan ........................4109

1111. *County of Livingston, Michigan v. Purdue Pharma, Inc., et al.*, Case No. 1:19-op-45262-DAP: Plaintiff Livingston County, Michigan .................................................................................................4111

1112. *Baldwin County, AL v. Sackler et al.*, Case No. 1:19-op-45264-DAP: Plaintiff Baldwin County, Alabama.............................................4113

1113. *Board of County Commissioners of the County of Lea v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45266-DAP: Plaintiff Lea County, New Mexico ...................................4117

1114. *City of Tucson v. Purdue Pharma LP et al.*, Case No. 1:19-op-45267-DAP: Plaintiff Tucson City, Arizona .........................................4121

1115. *County of Pima v. Purdue Pharma LP et al.*, Case No. 1:19-op-45268-DAP: Plaintiff Pima County, Arizona ........................................4124

1116. *County of Fannin v. Rite Aid of Georgia, Inc. et al.*, Case No. 1:19-op-45269-DAP: Plaintiff Fannin County, Georgia ...............................4127

1117. *Bad River Band of Lake Superior Chippewa v. McKesson Corporation et al.*, Case No. 1:19-op-45270-DAP: Plaintiff Bad River Band of Lake Superior Chippewa, Wisconsin .............................4130

1118. *Winona County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45271-DAP: Plaintiff Winona County, Minnesota................................4134

1119.  *Marion County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45272-DAP: Plaintiff Marion County, Florida ........................4138

1120.  *Miller County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45274-DAP: Plaintiff Miller County, Missouri ......................4141

1121.  *Page County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45275-DAP: Plaintiff Page County, Virginia ........................................4144

1122.  *Hospital Authority of Wayne County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45278-DAP: Plaintiff Wayne County Hospital Authority, Georgia...................................................................4148

1123.  *Town of Warren v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45281-DAP: Plaintiff Warren Town, Rhode Island  4151

1124.  *Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45282-DAP: Plaintiff Scituate Town, Rhode Island  4155

1125.  *Jackson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45283-DAP: Plaintiff Jackson County, Florida........4159

1126.  *City of Rome, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45284-DAP: Plaintiff Rome City, New York .........................4163

1127.  *People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45286-DAP: Plaintiff Union County, Illinois ..........4166

1128.  *City of Greensboro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45289-DAP: Plaintiff Greensboro City, North Carolina .......................................................................................4169

1129.  *Lee County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45290-DAP: Plaintiff Lee County, North Carolina ..........4173

1130.  *City of Gulfport, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45291-DAP: Plaintiff Gulfport City, Mississippi .............4178

1131.  *City of Prestonsburg v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:19-op-45294-DAP: Plaintiff Prestonsburg City, Kentucky ....................................................................................4181

1132.  *Bad River Band of Lake Superior Chippewa v. Watson Laboratories, Inc. et al.*, Case No. 1:19-op-45297-DAP: Plaintiff Bad River Band of Lake Superior Chippewa, Wisconsin.....................4185

1133.  *City of Brighton v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45298-DAP: Plaintiff Brighton City, Colorado ....................................4188

1134.  *Board of County Commissioners of the County of Bernalillo v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45301-DAP: Plaintiff Bernalillo County, New Mexico ........................4190

1135.  *City of Lackawanna, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45303-DAP: Plaintiff Lackawanna City, New York ........4194

1136.  *Meriwether County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45305-DAP: Plaintiff Meriwether County, Georgia .........4197

1137.  *Smith v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45306-DAP: Plaintiff Sheriff of Meriwether County, Georgia........................4202

1138.  *Melton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45307-DAP: Plaintiff Sheriff of Appling County, Georgia .............................4206

1139.  *Talton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45308-DAP: Plaintiff Sheriff of Houston County, Georgia..............................4210

1140.  *City of Sanford v. Purdue Pharma LP et al.*, Case No. 1:19-op-45311-DAP: Plaintiff Sanford City, Maine ...........................................4214

1141.  *Steverson v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45313-DAP: Plaintiff Sheriff of Telfair County, Georgia ................................4217

1142.  *Deese v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45314-DAP: Plaintiff Sheriff of Peach County, Georgia...................................4221

1143.  *Board of County Commissioners of the County of Catron v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45320-DAP: Plaintiff Catron County, New Mexico..............................4225

1144.  *Board of County Commissioners of the County of Cibola v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45321-DAP: Plaintiff Cibola County, New Mexico..............................4229

1145.  *Board of County Commissioners of the County of Sierra v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45322-DAP: Plaintiff Sierra County, New Mexico ...........................4233

1146.  *Board of County Commissioners of the County of Socorro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45323-DAP: Plaintiff Socorro County, New Mexico...........................4236

1147.  *Board of County Commissioners of the County of Valencia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45324-DAP: Plaintiff Valencia County, New Mexico .........................4240

1148.  *Wilkes-Barre Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45325-DAP: Plaintiff Wilkes Barre Township, Pennsylvania ...............................................................4244

1149.  *Richland County South Carolina v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45327-DAP: Plaintiff Richland County, South Carolina....................................................................................4248

1150.  *City of Woonsocket, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45328-DAP: Plaintiff Woonsocket City, Rhode Island .........................................................4251

1151. *City of West Liberty, Kentucky v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45329-DAP: Plaintiff West Liberty City, Kentucky ................................................................................................4255

1152. *Sibley County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45333-DAP: Plaintiff Sibley County, Minnesota ..................................4258

1153. *Scotland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45336-DAP: Plaintiff Scotland County, North Carolina .............................................................................................4262

1154. *Sarasota County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45339-DAP: Plaintiff Sarasota County, Florida .....................4266

1155. *Guilford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45340-DAP: Plaintiff Guilford County, North Carolina .............................................................................................4269

1156. *Lafayette County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45341-DAP: Plaintiff Lafayette County, Mississippi ...............................................................4273

1157. *Granville County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45342-DAP: Plaintiff Granville County, North Carolina .............................................................................................4277

1158. *Meeker County, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45343-DAP: Plaintiff Meeker County, Minnesota ..................4281

1159. *Roseau County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45344-DAP: Plaintiff Roseau County, Minnesota...............................4284

1160. *Durham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45346-DAP: Plaintiff Durham County, North Carolina .............................................................................................4287

1161. *Board of County Commissioners of the County of Curry, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45347-DAP: Plaintiff Curry County, New Mexico ................4291

1162. *Aroostook Band of Micmacs v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45349-DAP: Plaintiff Aroostook Band of Micmacs, Maine ......................................................4294

1163. *Lower Brule Sioux Tribe v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45350-DAP: Plaintiff Lower Brule Sioux Tribe, South Dakota ..............................................................................4298

1164. *Board of County Commissioners of County of Tulsa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45352-DAP: Plaintiff Tulsa County, Oklahoma ................................................................................4301

1165. *Board of County Commissioners for San Miguel County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45354-DAP: Plaintiff San Miguel County, New Mexico ............................................................... 4306

1166. *Fairview Township, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45355-DAP: Plaintiff Fairview Township, Pennsylvania ................................................................................. 4310

1167. *Orange County Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45356-DAP: Plaintiff Orange County, Indiana ...................... 4313

1168. *White Earth Nation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45357-DAP: Plaintiff White Earth Nation, Minnesota ................................................................................. 4317

1169. *William C. Massee, Jr. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45361-DAP: Plaintiff Sheriff Of Baldwin County, Georgia .... 4320

1170. *Snohomish County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45370-DAP: Plaintiff Snohomish County, Washington ...................... 4324

1171. *Boone County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45375-DAP: Plaintiff Boone County, Missouri ...................... 4328

1172. *Callaway County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45378-DAP: Plaintiff Callaway County, Missouri ................. 4332

1173. *Wright County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45383-DAP: Plaintiff Wright County, Missouri ..................... 4336

1174. *Douglas County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45386-DAP: Plaintiff Douglas County, Missouri ................... 4339

1175. *Shannon County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45401-DAP: Plaintiff Shannon County, Missouri ................. 4343

1176. *Gooding County, Idaho et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45404-DAP: Plaintiff Gooding County, Idaho ................ 4346

1177. *Knox County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45406-DAP: Plaintiff Knox County, Missouri ....................... 4351

1178. *Schuyler County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45408-DAP: Plaintiff Schuyler County, Missouri ................. 4355

1179. *Randolph County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45409-DAP: Plaintiff Randolph County, Missouri ........... 4358

1180. *City of Seven Hills, Ohio v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45413-DAP: Plaintiff Seven Hills City, Ohio ......................... 4362

1181. *Pettis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45416-DAP: Plaintiff Pettis County, Missouri ....................... 4366

1182. *Covington County, Mississippi v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45417-DAP: Plaintiff Covington County, Mississippi ..... 4370

1183. *Forsyth County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45420-DAP: Plaintiff Forsyth County, Georgia ....................4374

1184. *Walton County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45423-DAP: Plaintiff Walton County, Florida .......................4378

1185. *City of Saint Paul, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45424-DAP: Plaintiff St. Paul City, Minnesota ...............4382

1186. *Maverick County, Texas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45426-DAP: Plaintiff Maverick County, Texas......................4387

1187. *Township of Saddle Brook, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45431-DAP: Plaintiff Saddle Brook Township, New Jersey ..........................................................................4390

1188. *County of Berkeley, South Carolina v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45436-DAP: Plaintiff Berkeley County, South Carolina.................................................................................................4395

1189. *County of Jefferson, NY v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45437-DAP: Plaintiff Jefferson County, New York ...............4397

1190. *Coushatta Tribe of Louisiana et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45438-DAP: Plaintiff Coushatta Tribe of Louisiana, Louisiana ...............................................4401

1191. *Johnson County, Kansas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45443-DAP: Plaintiff Johnson County, Kansas......................4405

1192. *Quapaw Tribe of Oklahoma v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45460-DAP: Plaintiff Quapaw Tribe of Oklahoma, Oklahoma ................................................4408

1193. *City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP: Plaintiff Canton Town, North Carolina.....................4412

1194. *City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP: Plaintiff Chatham County, North Carolina ................4415

1195. *City of Tupelo, Mississippi v. Amerisourcebergen Drug Cororation et al.*, Case No. 1:19-op-45491-DAP: Plaintiff Tupelo City, Mississippi ..................................................................................4418

1196. *City of Inez, KY v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-45499-DAP: Plaintiff Inez City, Kentucky .............4422

1197. *County of Curry v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45512-DAP: Plaintiff Curry County, Oregon........................................4425

1198. *Board of County Commissioners of the County of Lincoln, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45513-DAP: Plaintiff Lincoln County, New Mexico .............4428

1199. *City of Long Beach, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45517-DAP: Plaintiff Long Beach City, Mississippi ................................................................................4432

1200. *City of Richmond v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45546-DAP: Plaintiff Richmond City, Virginia .......4435

1201. *Pearl River County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45548-DAP: Plaintiff Pearl River County, Mississippi ...................................................4439

1202. *City of Amory, Mississippi v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45549-DAP: Plaintiff Amory City, Mississippi ....................................................................4443

1203. *Mitchell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45550-DAP: Plaintiff Mitchell County, North Carolina ...................................................................................4446

1204. *DeSoto County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45551-DAP: Plaintiff Desoto County, Mississippi ..................................................................4450

1205. *Leflore County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45552-DAP: Plaintiff Leflore County, Mississippi ...................................................4454

1206. *City of South Sioux City, Nebraska v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45553-DAP: Plaintiff South Sioux City, Nebraska ...................................................4457

1207. *Town of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45554-DAP: Plaintiff Portsmouth Town, Rhode Island ...................................................................4462

1208. *County of Northumberland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45555-DAP: Plaintiff Northumberland County, Pennsylvania .................................................................4466

1209. *Bladen County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45557-DAP: Plaintiff Bladen County, North Carolina ...................................................................................4469

1210. *City of Paintsville, KY v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45559-DAP: Plaintiff Paintsville City, Kentucky ...................................................................4472

1211. *County of Calhoun v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45560-DAP: Plaintiff Calhoun County, Michigan ..........................4476

1212. *County of Kalamazoo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45561-DAP: Plaintiff Kalamazoo County, Michigan ..............4479

1213. *Hancock v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45562-DAP: Plaintiff Sheriff of Crisp County, Georgia....................................4483

1214. *St. Johns County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45563-DAP: Plaintiff St Johns County, Florida ......................4486

1215. *Bradford County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45564-DAP: Plaintiff Bradford County, Florida ....................4489

1216. *Seminole County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45565-DAP: Plaintiff Seminole County, Florida....................4493

1217. *Charter Township of Pittsfield, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45566-DAP: Plaintiff Pittsfield Charter Township, Michigan ...........................................................................4497

1218. *Town of Oxford v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45568-DAP: Plaintiff Oxford Town, Massachusetts ..........................................................................................4500

1219. *City of New Bedford et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45569-DAP: Plaintiff New Bedford City, Massachusetts ................................................................4504

1220. *Town of Ayer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45570-DAP: Plaintiff Ayer Town, Massachusetts ..........................................................................4509

1221. *Morgan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45571-DAP: Plaintiff Morgan County, Kentucky....................................................................4513

1222. *City of Sheridan v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45572-DAP: Plaintiff Sheridan City, Colorado ....................................4516

1223. *City of Federal Heights v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45573-DAP: Plaintiff Federal Heights City, Colorado ...........4519

1224. *Wright Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45574-DAP: Plaintiff Wright Township, Pennsylvania ...........................................................................................4522

1225. *County of Yuma v. Purdue Pharma LP et al.*, Case No. 1:19-op-45575-DAP: Plaintiff Yuma County, Arizona.......................................4526

1226. *City of Wiggins, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45576-DAP: Plaintiff Wiggins City, Mississippi ...................................................................4528

1227. *Franklin County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45577-DAP: Plaintiff Franklin County, Mississippi.................................................................4532

1228.   *Tule River Indian Tribe of California v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45579-DAP: Plaintiff Tule River Indian Tribe of California, California ..........................................4536

1229.   *Lytton Band of Pomo Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45580-DAP: Plaintiff Lytton Band of Pomo Indians, California ..........................................................4539

1230.   *Sampson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45583-DAP: Plaintiff Sampson County, North Carolina...................................................................................................4543

1231.   *City of Oviedo, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45584-DAP: Plaintiff Oviedo City, Florida .............................4546

1232.   *Kingston Borough, Pennyslvania v. Purdue Pharma LP et al.*, Case No. 1:19-op-45585-DAP: Plaintiff Kingston Borough, Pennsylvania ......................................................................................4550

1233.   *City of Deltona, Florida v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45586-DAP: Plaintiff Deltona City, Florida ...........................4554

1234.   *Hamilton County, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45589-DAP: Plaintiff Hamilton County, Florida....................4557

1235.   *Suwannee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45590-DAP: Plaintiff Suwannee County, Florida ..................4560

1236.   *Clay County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45591-DAP: Plaintiff Clay County, Florida...............................4565

1237.   *City of St. Augustine, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45592-DAP: Plaintiff St. Augustine City, Florida ...........4568

1238.   *City of Florida City, Florida v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45594-DAP: Plaintiff City of Florida City, Florida ..........4572

1239.   *City of Port St. Lucie, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45596-DAP: Plaintiff Port St. Lucie City, Florida............4575

1240.   *Taylor County Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45597-DAP: Plaintiff Taylor County, Florida..................................4578

1241.   *City of Sanford, Florida v. Purdue Pharma L.P.., et al.*, Case No. 1:19-op-45599-DAP: Plaintiff Sanford City, Florida ...........................4582

1242.   *United Keetoowah Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45600-DAP: Plaintiff United Keetoowah Band of Cherokee Indians, Kansas ..................................................................................4586

1243.   *Board of Commissioners of Leavenworth County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45602-DAP: Plaintiff Leavenworth County, Kansas...........................4590

1244. *Union County, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45603-DAP: Plaintiff Union County, Florida ..........................4594

1245. *Dixie County Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45604-DAP: Plaintiff Dixie County, Florida ...................................4597

1246. *County Commissioners of Calvert County, Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45609-DAP: Plaintiff Calvert County, Maryland ....................................................................4601

1247. *Georgetown County, South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45612-DAP: Plaintiff Georgetown County, South Carolin ................................................................................4605

1248. *Alamance County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45615-DAP: Plaintiff Alamance County, North Carolina........................................................................................4608

1249. *Sussex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45616-DAP: Plaintiff Sussex County, New Jersey.................4613

1250. *City of Clarksdale v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45620-DAP: Plaintiff Clarksdale City, Mississippi...............................4616

1251. *City of Bismarck v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45629-DAP: Plaintiff Bismarck City, North Dakota...........................4620

1252. *Williams County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45633-DAP: Plaintiff Williams County, North Dakota........................4624

1253. *Grand Forks County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45647-DAP: Plaintiff Grand Forks County, North Dakota .............4627

1254. *County Commission of Craig County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45652-DAP: Plaintiff Craig County, Oklahoma .................................................................................4630

1255. *Hanover Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45654-DAP: Plaintiff Hanover Township, Pennsylvania ....................................................................................4634

1256. *County of Lycoming v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45655-DAP: Plaintiff Lycoming County, Pennsylvania .................4638

1257. *St. Lucie County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45656-DAP: Plaintiff St. Lucie County, Florida ....................4642

1258. *People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45657-DAP: Plaintiff Williamson County, Illinois 4645

1259. *Claiborne County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45658-DAP: Plaintiff Claiborne County, Tennessee ...............................................................4648

1260. *County of Rockland, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45662-DAP: Plaintiff Rockland County, New York ........4651

1261. *Hernando County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45667-DAP: Plaintiff Hernando County, Florida ....4654

1262. *Lee County v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45671-DAP: Plaintiff Lee County, Florida............................................4658

1263. *Town of Braintree v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45673-DAP: Plaintiff Braintree Town City, Massachusetts.................4662

1264. *County of Wicomico, Maryland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45681-DAP: Plaintiff Wicomico County, Maryland ...............................................................................................4665

1265. *Fauquier County, Virginia v. Mallinckrodt LLC, et al.*, Case No. 1:19-op-45686-DAP: Plaintiff Fauquier County, Virginia ...................4669

1266. *Board of Supervisors, Prince William County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45687-DAP: Plaintiff Prince William County, Virginia .................................................................................4673

1267. *Northumberland County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45688-DAP: Plaintiff Northumberland County, Virginia ...............................................................................................4677

1268. *Strafford County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45689-DAP: Plaintiff Strafford County, New Hampshire....................4681

1269. *City of Claremont, NH v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45690-DAP: Plaintiff Claremont City, New Hampshire .........4684

1270. *Grafton County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45691-DAP: Plaintiff Grafton County, New Hampshire....................4688

1271. *Halifax County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45692-DAP: Plaintiff Halifax County, Virginia .....................4691

1272. *City of Lexington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45693-DAP: Plaintiff Lexington City, Virginia.......................4695

1273. *Rockbridge County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45694-DAP: Plaintiff Rockbridge County, Virginia.........4699

1274. *Roanoke County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45695-DAP: Plaintiff Roanoke County, Virginia ...................4702

1275. *City of Roanoke, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45696-DAP: Plaintiff Roanoke City, Virginia........................4707

1276. *City of Salem, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45697-DAP: Plaintiff Salem City, Virginia .............................4710

1277. *Floyd County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45698-DAP: Plaintiff Floyd County, Virginia........................4714

1278. *Alleghany County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45700-DAP: Plaintiff Alleghany County, Virginia ................4718

1279. *Franklin County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45701-DAP: Plaintiff Franklin County, Virginia....................4722

1280. *Madison County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45702-DAP: Plaintiff Madison County, Virginia ...................4726

1281. *Rockingham County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45703-DAP: Plaintiff Rockingham County, New Hampshire .........4729

1282. *Belknap County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45705-DAP: Plaintiff Belknap County, New Hampshire.....................4733

1283. *Cheshire County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45706-DAP: Plaintiff Cheshire County, New Hampshire....................4737

1284. *Town of Belmont, NH v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45707-DAP: Plaintiff Belmont Town, New Hampshire ..........4740

1285. *City of Chesapeake, Virginia v. Actavis, LLC et al.*, Case No. 1:19-op-45712-DAP: Plaintiff Chesapeake City, Virginia ...........................4743

1286. *Accomack County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45715-DAP: Plaintiff Accomack County, Virginia ..........4748

1287. *City of Bristol, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45719-DAP: Plaintiff Bristol City, Virginia ...........................4752

1288. *Louisa County, Virginia v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45720-DAP: Plaintiff Louisa County, Virginia .....................4756

1289. *City of St. Albans, VT v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45721-DAP: Plaintiff St. Albans City, Vermont ...............................................................................................4760

1290. *City of Youngstown v. Actavis Pharma, Inc. et al.*, Case No. 1:19-op-45722-DAP: Plaintiff Youngstown City, Ohio ................................4763

1291. *City of Hazleton, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45724-DAP: Plaintiff Hazleton City, Pennsylvania..........4767

1292. *Chatham County Hospital Authority, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45725-DAP: Plaintiff Chatham County Hospital Authority, Georgia..................................................................................................4771

1293. *County of Alameda, California et al. v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Alameda County, California .................................................................................................4773

1294. *City of Westminster et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45727-DAP: Plaintiff Westminster City, California...............4775

1295. *City of San Clemente et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45728-DAP: Plaintiff San Clemente City, California..............4778

1296. *City of Danville, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45730-DAP: Plaintiff Danville City, Virginia..........................................................................4782

1297. *Pemiscot County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45733-DAP: Plaintiff Pemiscot County, Missouri..................4786

1298. *City of Irvine et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45734-DAP: Plaintiff Irvine City, California ...................................4789

1299. *City of Costa Mesa et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45736-DAP: Plaintiff Costa Mesa City, California ................4793

1300. *City of Austin, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45739-DAP: Plaintiff Austin City, Indiana.............................4797

1301. *City of Madison, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45740-DAP: Plaintiff Madison City, Indiana .........................4800

1302. *Passaic County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45741-DAP: Plaintiff Passaic County, New Jersey ..........4803

1303. *City of Fairfield, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45742-DAP: Plaintiff Fairfield City, Ohio.........4807

1304. *City of Argo, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45744-DAP: Plaintiff Argo Town, Alabama ...........................4811

1305. *Covington County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45751-DAP: Plaintiff Covington County, Alabama .........4815

1306. *Bingham County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45758-DAP: Plaintiff Bingham County, Idaho ....................................4818

1307. *Bertie County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45759-DAP: Plaintiff Bertie County, North Carolina..................................................................................4821

1308. *LaMoure County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45760-DAP: Plaintiff La Moure County, North Dakota ......................4825

1309. *Fairfax County Board Of Supervisors v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45766-DAP: Plaintiff Fairfax County, Virginia .................................................................................4828

1310. *City Of San Jose v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45768-DAP: Plaintiff San Jose City, California.......4832

1311. *Oxford, Alabama, City of v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45774-DAP: Plaintiff Oxford City, Alabama ..........................4836

1312. *Ada County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45775-DAP: Plaintiff Ada County, Idaho .............................................4839

1313. *Locust Fork, Town of v. Purdue Pharma LP et al.*, Case No. 1:19-op-45777-DAP: Plaintiff Locust Fork Town, Alabama ........................4842

1314. *City of Daleville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45778-DAP: Plaintiff Daleville City, Alabama ......................4846

1315. *City of Dadeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45779-DAP: Plaintiff Dadeville City, Alabama ....................4850

1316. *Triad Health Systems, Inc. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45780-DAP: Plaintiff Triad Health Systems, Inc., Kentucky ................................................................................................4854

1317. *City of Orange Beach, Alabama v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45784-DAP: Plaintiff Orange Beach City, Alabama ..............................................................................................4857

1318. *City of Warfield, KY v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45787-DAP: Plaintiff Warfield City, Kentucky .......4860

1319. *Chariton County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45790-DAP: Plaintiff Chariton County, Missouri ..................4863

1320. *Town of Bennington, Vermont v. Mallinckrodt PLC, et al.*, Case No. 1:19-op-45791-DAP: Plaintiff Sharon Town, Vermont ................4866

1321. *Laborers Local 235 Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45792-DAP: Plaintiff Laborers Local 235 Welfare Fund, New York.......................................................................4870

1322. *Painting Industry Insurance Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45793-DAP: Plaintiff Painting Industry Insurance Fund, New York ................................................................4873

1323. *CWA Local 1182 & 1183 Health & Welfare Funds v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45794-DAP: Plaintiff CWA Local 1182 Health & Welfare Fund, New York....................................4876

1324. *CWA Local 1182 & 1183 Health & Welfare Funds v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45794-DAP: Plaintiff CWA Local 1183 Health & Welfare Fund, New York....................................4879

1325. *Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45795-DAP: Plaintiff Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund, New York........................................4883

1326. *Orange County, Florida v. Pudue Pharma L.P., et al.*, Case No. 1:19-op-45797-DAP: Plaintiff Orange County, Florida .......................4887

1327. *City of Covington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45799-DAP: Plaintiff Covington City, Virginia .....................4891

1328.  *City of Blackshear, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45802-DAP: Plaintiff Blackshear City, Georgia ...............................................................4894

1329.  *Charleston County, South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45803-DAP: Plaintiff Charleston County, South Carolina ...............................................................................4897

1330.  *NOITU Insurance Trust Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45808-DAP: Plaintiff NOITU Insurance Trust Fund, New York ...................................................................................4901

1331.  *Local 8A-28A Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45809-DAP: Plaintiff Local 8A-28A Welfare Fund, New York ...................................................................................4903

1332.  *Drywall Tapers Insurance Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45810-DAP: Plaintiff Drywall Tapers Insurance Fund, New York .........................................................................4907

1333.  *Nassau University Medical Center v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45812-DAP: Plaintiff Nassau University Medical Center, New York ................................................................4910

1334.  *Municipality of Villalba v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45815-DAP: Plaintiff Municipality of Villalba, Puerto Rico     4913

1335.  *Municipality of Catano, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45816-DAP: Plaintiff Municipality of Catano, Puerto Rico ..............................................................................4916

1336.  *Municipality of Arroyo, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45817-DAP: Plaintiff Municipality of Arroyo, Puerto Ric ...............................................................................4920

1337.  *Municipality of Bayamon, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45818-DAP: Plaintiff Municipality of Bayamon, Puerto Rico .........................................................................4923

1338.  *Municipality of Ceiba, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45819-DAP: Plaintiff Municipality of Ceiba, Puerto Rico ..............................................................................4927

1339.  *Municipality of Coamo, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45820-DAP: Plaintiff Municipality of Coamo, Puerto Rico ..............................................................................4931

1340.  *County of Knox et al. v. Purdue Pharma LP et al.*, Case No. 1:19-op-45822-DAP: Plaintiff Knox County, Maine ....................................4933

1341.  *Russell County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45826-DAP: Plaintiff Russell County, Alabama ....................4937

1342. *City of Alexander City, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45827-DAP: Plaintiff City of Alexander City, Alabama .................................................................................4942

1343. *Structural Steel 806 Health Plan v. McKesson Corporation et al.*, Case No. 1:19-op-45831-DAP: Plaintiff Structural Steel 806 Health Plan, New York ...........................................................4946

1344. *International Brotherhood of Trade Unions Local 713 v. McKesson Corporation et al.*, Case No. 1:19-op-45832-DAP: Plaintiff International Brotherhood of Trade Unions Local 713, New York ................................................................................4949

1345. *City of San Antonio, Texas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45833-DAP: Plaintiff San Antonio City, Texas .................................................................4952

1346. *City of Ocala, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45834-DAP: Plaintiff Ocala City, Florida ..............................4956

1347. *Brighton Health Plan Solutions, llc d/b/a MagnaCare Administrative Services v. McKesson Corporation et al.*, Case No. 1:19-op-45837-DAP: Plaintiff Brighton Health Plan Solutions, llc d/b/a MagnaCare Administrative Services, New York.........................4959

1348. *Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services and MagnaCare, LLC v. McKesson Corporation et al.*, Case No. 1:19-op-45838-DAP: Plaintiff Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services and MagnaCare, LLC, New York .................4962

1349. *Loudoun County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45842-DAP: Plaintiff Loudoun County, Virginia...................4966

1350. *City of Auburn v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45843-DAP: Plaintiff Auburn City, New York ....................................4970

1351. *Wampanoag Tribe of Gay Head (Aquinnah) v. Mallinckrodt Brand Pharmaceuticals, Inc. et al.*, Case No. 1:19-op-45844-DAP: Plaintiff Wampanoag Tribe of Gay Head (Aquinnah), Massachusetts ...........................................................................4973

1352. *Greensville County, VA v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45848-DAP: Plaintiff Greensville County, Virginia...............4977

1353. *Culpeper County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45849-DAP: Plaintiff Culpeper County, Virginia ..................4981

1354. *Charlotte County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45851-DAP: Plaintiff Charlotte County, Virginia ..................4985

1355. *City of Ogdensburg v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45852-DAP: Plaintiff Ogdensburg City, New York .......................4988

1356. *Jamaica Hospital Medical Center v. McKesson Corporation et al.*, Case No. 1:19-op-45855-DAP: Plaintiff Jamaica Hospital Medical Center, New York ...................................................................................4990

1357. *County of Kauai v. CVS Health Corporation, et al.*, Case No. 1:19-op-45862-DAP: Plaintiff Kauai County, Hawaii....................................4993

1358. *Flushing Hospital Medical Center v. McKesson Corporation et al.*, Case No. 1:19-op-45866-DAP: Plaintiff Flushing Hospital Medical Center, New York ...................................................................................4996

1359. *City of Apopka, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45883-DAP: Plaintiff Apopka City, Florida ....................4998

1360. *City of Dothan, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45886-DAP: Plaintiff Dothan City, Alabama .........................5002

1361. *The Fiscal Court of Casey County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45887-DAP: Plaintiff Casey County, Kentucky .................................................5006

1362. *The Fiscal Court of Lewis County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45889-DAP: Plaintiff Lewis County, Kentucky .................................................5009

1363. *The Fiscal Court of Gallatin County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45891-DAP: Plaintiff Gallatin County, Kentucky ............................................5013

1364. *Okaloosa County, FL v. Teva Pharmaceuticals USA Inc. et al.*, Case No. 1:19-op-45894-DAP: Plaintiff Okaloosa County, Florida .....5016

1365. *Mayflower Municipal Health Group et al. v. Johnson & Johnson et al.*, Case No. 1:19-op-45897-DAP: Plaintiff Mayflower Municipal Health Group, Massachusetts..................................................................5020

1366. *City of Fredericksburg, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45898-DAP: Plaintiff Fredericksburg City, Virginia .............................................................................................5023

1367. *Incorporated Village of Garden City, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45902-DAP: Plaintiff Garden City Village, New Yor ............................................................................................5027

1368. *Incorporated Village of Island Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45903-DAP: Plaintiff Island Park Village, New York ................................................................................................5030

1369. *Wise County Board of Supervisors v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45907-DAP: Plaintiff Wise County, Virginia ...................................................................................5033

1370. *City of Vancouver v. Sackler et al.*, Case No. 1:19-op-45908-DAP: Plaintiff Vancouver City, Washington................................................5036

179

1371. *Town of Vance, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-45909-DAP: Plaintiff Vance Town, Alabama ........................5040

1372. *City of Brent, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-45910-DAP: Plaintiff Brent City, Alabama .............................5044

1373. *City of Sweetwater, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45914-DAP: Plaintiff Sweetwater City, Florida ...............5048

1374. *Town of Rockford, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45915-DAP: Plaintiff Rockford Town, Alabama .............5052

1375. *Dickey County v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45919-DAP: Plaintiff Dickey County, North Dakota ..............5056

1376. *Town of Easton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45920-DAP: Plaintiff Easton Town, Massachusetts ...........................................................................5059

1377. *Village of Wappingers Falls, New York v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45922-DAP: Plaintiff Wappingers Falls Village, New York ...................................5063

1378. *Board of County Commissioners of the County of Mesa v. Sackler et al.*, Case No. 1:19-op-45923-DAP: Plaintiff Mesa County, Colorado...............................................................................5067

1379. *City of Norfolk, VA v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45926-DAP: Plaintiff Norfolk City, Virginia.....5069

1380. *County of Burlington v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45928-DAP: Plaintiff Burlington County, New Jersey ...................5073

1381. *Prince George County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45929-DAP: Plaintiff Prince George County, Virginia .............................................................................5077

1382. *Suffolk Transportation Services, Inc. v. McKesson Corporation et al.*, Case No. 1:19-op-45933-DAP: Plaintiff Suffolk Transportation Services, Inc., New York ......................................5080

1383. *City of Pascagoula, Mississippi v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45934-DAP: Plaintiff Pascagoula City, Mississippi .........5082

1384. *UOPW Local 175 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45940-DAP: Plaintiff UOPW Local 175 Welfare Fund, New York...........................................................5086

1385. *AFL-CIO Local 475 Health & Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45941-DAP: Plaintiff AFL-CIO Local 475 Health & Welfare Fund, New York ..............................5088

1386. *Local 381 Group Insurance Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45942-DAP: Plaintiff Local 381 Group Insurance Fund, New York ................................................5091

1387. *IUOE Local 138 Health Benefit Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45943-DAP: Plaintiff IUOE Local 138 Health Benefit Fund, New York ...........................................................5093

1388. *United Crafts Benefits Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45945-DAP: Plaintiff United Crafts Benefits Fund, New York .......................................................................................5095

1389. *Uniformed Fire Officers Association Benefits Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45946-DAP: Plaintiff Uniformed Fire Officers Association Benefits Fund, New York ..........5097

1390. *City of Huntsville, Alabama v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45947-DAP: Plaintiff Huntsville City, Alabama ...........................................................................................5100

1391. *Village of Islandia, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45954-DAP: Plaintiff Islandia Village, New York .................5104

1392. *Village of Amityville, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45955-DAP: Plaintiff Amityville Village, New York .............5107

1393. *Brookhaven Ambulance Co., Inc. d/b/a South Country Ambulance v. McKesson Corporation et al.*, Case No. 1:19-op-45957-DAP: Plaintiff Brookhaven Ambulance Co., Inc. d/b/a South Country Ambulance, New York ........................................................................5110

1394. *Fiscal Court of Grant County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45961-DAP: Plaintiff Grant County, Kentucky ....................................................................5112

1395. *City of San Jose, California et al. v. Sackler et al.*, Case No. 1:19-op-45964-DAP: Plaintiff San Jose City, California..............................5116

1396. *City of Ocoee, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-45966-DAP: Plaintiff Ocoee City, Florida.......................5120

1397. *Town of Southampton, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45968-DAP: Plaintiff Southampton Town, New York .....5124

1398. *Coquille Indian Tribe v. McKesson Corporation et al.*, Case No. 1:19-op-45970-DAP: Plaintiff Coquille Indian Tribe, Oregon..............5127

1399. *Confederated Tribes of the Goshute Reservation v. McKesson Corporation et al.*, Case No. 1:19-op-45972-DAP: Plaintiff Confederated Tribes of the Goshute Reservation, Nevada and Utah ....5130

1400. *City of Homewood, Alabama v. Teva Pharmaceuticals et al.*, Case No. 1:19-op-45973-DAP: Plaintiff Homewood City, Alabama ............5134

1401. *Pinoleville Pomo Nation v. McKesson Corporation et al.*, Case No. 1:19-op-45974-DAP: Plaintiff Pinoleville Pomo Nation, California ....5138

1402. *Pueblo of Pojoaque v. McKesson Corporation et al.*, Case No. 1:19-op-45975-DAP: Plaintiff Pueblo of Pojoaque, New Mexico ........5141

1403. *City of Greeley v. Sackler et al.*, Case No. 1:19-op-45977-DAP: Plaintiff Greeley City, Colorado ..........................................................5144

1404. *City of Columbia South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45979-DAP: Plaintiff Columbia City, South Carolina......5146

1405. *City of Homestead, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45980-DAP: Plaintiff Homestead City, Florida .......5150

1406. *City of Bainbridge Island v. Sackler et al.*, Case No. 1:19-op-45981-DAP: Plaintiff Bainbridge Island City, Washington .................5154

1407. *Macon County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45982-DAP: Plaintiff Macon County, Alabama......................5157

1408. *Crenshaw County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45983-DAP: Plaintiff Crenshaw County, Alabama ..........5161

1409. *City of Palatka, Florida v. Endo Health Solutions Inc., et al.*, Case No. 1:19-op-45984-DAP: Plaintiff Palatka City, Florida .....................5166

1410. *County of Freestone v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45985-DAP: Plaintiff Freestone County, Texas...............................5169

1411. *City of Geneva, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45986-DAP: Plaintiff Geneva City, Alabama..........................5173

1412. *Building Service Local 2 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45991-DAP: Plaintiff Building Service Local 2 Welfare Fund, New York............................................................5177

1413. *Incorporated Village of Lawrence, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45992-DAP: Plaintiff Lawrence Village, New York ................................................................................................5180

1414. *Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP: Plaintiff Richmond County, Virginia ................................................................................................5183

1415. *Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP: Plaintiff Warren County, Virginia ................................................................................................5186

1416. *Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP: Plaintiff Westmoreland County, Virginia ................................................................................................5189

1417. *Coosa County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45995-DAP: Plaintiff Coosa County, Alabama......................5192

1418. *Town of Andover v. Teva Pharmaceuticals USA Inc et al.*, Case No. 1:19-op-45996-DAP: Plaintiff Andover Town, Massachusetts......5195

1419. *West Pittston, Pennsylvania v. The Purdue Frederick Company, Inc., et al.*, Case No. 1:19-op-45997-DAP: Plaintiff West Pittston Borough, Pennsylvania ..........................................................................5200

1420. *Village of Millerton, NY et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45998-DAP: Plaintiff Millerton Village, New York ................................................................5204

1421. *Incorporated Village of East Rockaway, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45999-DAP: Plaintiff East Rockaway Village, New York ...............................................5207

1422. *Incorporated Village of Floral Park v. McKesson Corporation et al.*, Case No. 1:19-op-46000-DAP: Plaintiff Floral Park Village, New York .......................................................................5210

1423. *Village of Stewart Manor, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46002-DAP: Plaintiff Stewart Manor Village, New York .......................................................................5213

1424. *South Farmingdale Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46003-DAP: Plaintiff South Farmingdale Fire District, New York ...............................................5217

1425. *Port Washington Water District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46004-DAP: Plaintiff Port Washington Water District, New York ....................................................5220

1426. *City of Long Beach, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46005-DAP: Plaintiff Long Beach City, New York ...............5223

1427. *Plumbers Local Union No. 68 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46008-DAP: Plaintiff Plumbers Local Union No. 68 Welfare Fund, Texas ..............................5226

1428. *Incorporated Village of Lynbrook, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46009-DAP: Plaintiff Lynbrook Village, New York .......................................................................5229

1429. *Town of Eatonville, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-46014-DAP: Plaintiff Eatonville Town, Florida ......5232

1430. *Roslyn Water District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46015-DAP: Plaintiff Roslyn Water District, New York   5236

1431. *Town of Brookhaven, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46018-DAP: Plaintiff Brookhaven Town, New York.......5239

1432. *Village of Bellport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46019-DAP: Plaintiff Bellport Village, New York.................5242

1433. *Incorporated Village of New Hyde Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46022-DAP: Plaintiff New Hyde Park Village, New York ...........................................................5245

1434. *Incorporated Village of Valley Stream, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46023-DAP: Plaintiff Valley Stream Village, New York ...................................................................5248

1435. *Incorporated Village of Massapequa Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46024-DAP: Plaintiff Massapequa Park Village, New York ...................................................5251

1436. *Incorporated Village of Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46025-DAP: Plaintiff Westbury Village, New York ...........................................................................5255

1437. *Incorporated Village of Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46026-DAP: Plaintiff Hempstead Village, New York ...........................................................................5259

1438. *Incorporated Village of Poquott, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46031-DAP: Plaintiff Poquott Village, New York   5262

1439. *Incorporated Village of Lake Grove, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46032-DAP: Plaintiff Lake Grove Village, New York ...........................................................................5265

1440. *Town of Smithtown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46033-DAP: Plaintiff Smithtown Town, New York ...............5268

1441. *Bellmore Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46034-DAP: Plaintiff Bellmore Fire District, New York   5271

1442. *Town of Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46035-DAP: Plaintiff Hempstead Town, New York ..............5274

1443. *Town of Riverhead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46036-DAP: Plaintiff Riverhead Town, New York................5277

1444. *Incorporated Village of Farmingdale, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46037-DAP: Plaintiff Farmingdale Village, New York ...........................................................................5280

1445. *Town of Huntington, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46038-DAP: Plaintiff Huntington Town, New York ..............5282

1446. *Incorporated Village of Patchogue, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46039-DAP: Plaintiff Patchogue Village, New York ...........................................................................5285

1447. *Town of East Hampton, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46040-DAP: Plaintiff East Hampton Village, New York   5288

1448. *Town of Oyster Bay, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46041-DAP: Plaintiff Oyster Bay Town, New York ..............5291

1449. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Baltimore City Board of School Commissioners, Maryland ............................................................................................5294

1450. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Bangor School Department, Maine .....5299

1451. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Cape Elizabeth School District, Maine  5303

1452. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff The Board of Education of the City of Chicago, School District No. 299, Illinois ......................................................5307

1453. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of East Aurora, School District 131, Illinois 5311

1454. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Ellsworth School Department, Maine  5314

1455. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Joliet Public Schools, Illinois..................................................5319

1456. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 10, Maine  5322

1457. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 13, Maine  5326

1458. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 25, Maine  5330

1459. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 26, Maine  5335

1460. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 29, Maine  5339

1461. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 34, Maine  5343

1462. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 40, Maine  5348

1463. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 50, Maine  5352

1464. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 57, Maine  5356

1465. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 60, Maine  5361

1466. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 71, Maine  5365

1467. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 9, Maine  5369

1468. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 15, Maine ...................................................................................5374

1469. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 35, Maine ...................................................................................5378

1470. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:

Plaintiff Board of Education of Maine School Administrative
District 44, Maine ................................................................................5383

1471. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Board of Education of Maine School Administrative
District 53, Maine ................................................................................5387

1472. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Board of Education of Maine School Administrative
District 55, Maine ................................................................................5392

1473. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Board of Education of Maine School Administrative
District 6, Maine ................................................................................5397

1474. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Board of Education of Maine School Administrative
District 61, Maine ................................................................................5401

1475. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Board of Education of Maine School Administrative
District 72, Maine ................................................................................5406

1476. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Board of Education of Maine School Administrative
District 28/Five Town Central School District, Maine ..........................5410

1477. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Miami-Dade County Public School District, Florida ..............5416

1478. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Board of Education of Portland School Department,
Maine  5419

1479. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Board of Education of Rochester City School District,
New York ................................................................................5423

1480. *The Board of Education of the City of Chicago, School District No.
299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP:
Plaintiff Board of Education of Scarborough School Department,
Maine  5427

1481. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of South Portland School Department, Maine  5432

1482. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of St. George Municipal School District, Maine ....................................................................5436

1483. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Thornton Fractional Township High Schools, District 215, Illinois.......................................................5441

1484. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Thornton Township High Schools, District 205, Illinois ...............................................................5445

1485. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Waterville School Department, Maine  5448

1486. *Town of North Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46043-DAP: Plaintiff North Hempstead Town, New York ...............................................................................5453

1487. *City of Bayonne, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46044-DAP: Plaintiff Bayonne City, New Jersey.............5456

1488. *City of Elizabeth, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46045-DAP: Plaintiff Elizabeth City, New Jersey  5459

1489. *Borough of Paramus, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46046-DAP: Plaintiff Paramus Borough, New Jersey  5463

1490. *Town of Babylon, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46047-DAP: Plaintiff Babylon Town, New York...................5466

1491. *North Merrick Fire District, NY v. McKesson Corporation, et al.*, Case No. 1:19-op-46048-DAP: Plaintiff North Merrick Fire District, New York ...............................................................................5469

1492. *Uniondale Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46049-DAP: Plaintiff Uniondale Fire District, New York   5472

1493.  *Incorporated Village of Northport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46050-DAP: Plaintiff Northport Village, New York ........................................................................................5475

1494.  *Village of Port Washington North, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46051-DAP: Plaintiff Port Washington North Village, New York ....................................................5478

1495.  *Incorporated Village of Lloyd Harbor, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46052-DAP: Plaintiff Lloyd Harbor Village, New York ...............................................................5482

1496.  *The City of Dunwoody, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46054-DAP: Plaintiff Dunwoody City, Georgia ..............................................................5485

1497.  *Incorporated Village of West Hampton Dunes, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46055-DAP: Plaintiff West Hampton Dunes Village, New York ....................................5489

1498.  *The City of Doraville, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46056-DAP: Plaintiff Doraville City, Georgia ..............................................................5492

1499.  *The City of Louisville, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46058-DAP: Plaintiff Louisville Town, Alabama ..............................................................5495

1500.  *The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:19-op-46059-DAP: Plaintiff Cullman Regional Medical Center, Inc., Alabama ........5499

1501.  *The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:19-op-46059-DAP: Plaintiff Health Care Authority of Cullman County, Alabama ...................................................................5503

1502.  *Plainview-Old Bethpage Public Library v. McKesson Corporation et al.*, Case No. 1:19-op-46061-DAP: Plaintiff Plainview-Old Bethpage Public Library, New York ...................................5506

1503.  *Incorporated Village of Babylon, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46062-DAP: Plaintiff Babylon Village, New York   5509

1504.  *Incorporated Village of Nissequogue, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46063-DAP: Plaintiff Nissequogue Village, New York ............................................................5512

1505.  *Incorporated Village of Lindenhurst, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46064-DAP: Plaintiff Lindenhurst Village, New York ...............................................................5516

1506. *Rockville Centre Public Library v. McKesson Corporation et al.*, Case No. 1:19-op-46065-DAP: Plaintiff Rockville Centre Public Library, New York ..................................................................................5519

1507. *City of Alamogordo v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46067-DAP: Plaintiff Alamogordo City, New Mexico ..................................................................................5522

1508. *City of Hobbs, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46068-DAP: Plaintiff Hobbs City, New Mexico ..................................................................................5525

1509. *Board of County Commissioners of the County of Hidalgo, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-46069-DAP: Plaintiff Hidalgo County, New Mexico .............5529

1510. *Atlantic County, New Jersey v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46071-DAP: Plaintiff Atlantic County, New Jersey ................................................................5531

1511. *Town of Clinton, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46072-DAP: Plaintiff Clinton Town, Massachusetts ..................................................................................5535

1512. *City of New Port Ritchey v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46073-DAP: Plaintiff New Port Richey City, Florida ..................................................................................5540

1513. *Incorporated Village of Mill Neck, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46074-DAP: Plaintiff Mill Neck Village, New York ..................................................................................5543

1514. *Incorporated Village of Old Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46075-DAP: Plaintiff Old Westbury Village, New York ................................................................5547

1515. *City of Clifton, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46076-DAP: Plaintiff Clifton City, New Jersey...............5550

1516. *Levittown Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46077-DAP: Plaintiff Levittown Fire District, New York    5553

1517. *Friendship Engine & Hose Company, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46078-DAP: Plaintiff Friendship Engine & Hose Company, New York ..............................5556

1518. *Town of Islip, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46079-DAP: Plaintiff Islip Town, New York ...................................5559

1519. *Village of Saltaire, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46080-DAP: Plaintiff Saltaire Village, New York .................5562

1520. *Town of Orangetown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46081-DAP: Plaintiff Orangetown Town, New York ......5566

1521. *Town of Haverstraw, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46083-DAP: Plaintiff Haverstraw Town, New York...............5569

1522. *Village of Greenport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46084-DAP: Plaintiff Greenport Village, New York........5572

1523. *Town of Clinton, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46085-DAP: Plaintiff Clinton Town, New Jersey ...........5576

1524. *Village of Suffern, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46087-DAP: Plaintiff Suffern Village, New York...................5579

1525. *Town of Clarkstown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46088-DAP: Plaintiff Clarkstown Town, New York..............5582

1526. *Village of West Haverstraw, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46089-DAP: Plaintiff West Haverstraw Village, New York....................................................................................5585

1527. *Town of Southold, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46090-DAP: Plaintiff Southold Town, New York...................5588

1528. *The Town of Wappingers Falls, New York v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46091-DAP: Plaintiff Wappinger Town, New York.................................................................5592

1529. *City of Spokane v. Endo Health Solutions Inc et al.*, Case No. 1:19-op-46092-DAP: Plaintiff Spokane City, Washington...........................5595

1530. *Merrick Library v. McKesson Corporation et al.*, Case No. 1:19-op-46097-DAP: Plaintiff Merrick Library, New York .........................5598

1531. *Dade County, Georgia v. McKesson Corporation et al.*, Case No. 1:19-op-46099-DAP: Plaintiff Dade County, Georgia ..........................5601

1532. *Centereach Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46100-DAP: Plaintiff Centereach Fire District, New York.......................................................................................5604

1533. *City of Ashland, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46102-DAP: Plaintiff Ashland Town, Alabama .....................5607

1534. *City of Center Point, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46103-DAP: Plaintiff Center Point City, Alabama...........5611

1535. *City of Buffalo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46104-DAP: Plaintiff Buffalo City, New York .....................................5615

1536. *United Wire, Metal & Machine Local 810 Health Benefit Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46105-DAP: Plaintiff United Wire, Metal & Machine Local 810 Health Benefit Fund, New York.......................................................................................5619

1537.   *Nesconset Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46106-DAP: Plaintiff Nesconset Fire District, New York ..............................................................................5622

1538.   *Centerport Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46107-DAP: Plaintiff Centerport Fire District, New York ..............................................................5625

1539.   *Hauppauge Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46108-DAP: Plaintiff Hauppauge Fire District, New York ..............................................................5628

1540.   *Miller Place Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46109-DAP: Plaintiff Miller Place Fire District, New York ..............................................................5631

1541.   *Mount Sinai Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46110-DAP: Plaintiff Mount Sinai Fire District, New York ..............................................................5633

1542.   *Smithtown Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46111-DAP: Plaintiff Smithtown Fire District, New York ..............................................................5636

1543.   *Melville Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46112-DAP: Plaintiff Melville Fire District, New York ..............................................................................5639

1544.   *Stony Brook Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46113-DAP: Plaintiff Stony Brook Fire District, New York ..............................................................5642

1545.   *Village of the Branch, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46114-DAP: Plaintiff Village of the Branch, New York ..............................................................................5645

1546.   *City of Haleyville, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46118-DAP: Plaintiff Haleyville City, Alabama ..............................................................5648

1547.   *City of Centerville, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46120-DAP: Plaintiff Centreville City, Alabama ....................5652

1548.   *The City of Ormond Beach, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46121-DAP: Plaintiff Ormond Beach City, Florida ..............................................................5656

1549.   *Putnam County, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-46122-DAP: Plaintiff Putnam County, Florida ................5660

1550.   *City of Brundidge, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46128-DAP: Plaintiff Brundidge City, Alabama ..............5663

1551. *City of Lanett, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46130-DAP: Plaintiff Lanett City, Alabama...........................5667

1552. *City of Headland, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46131-DAP: Plaintiff Headland City, Alabama......................5670

1553. *City of Eufaula, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46132-DAP: Plaintiff Eufaula City, Alabama ........................5674

1554. *City of Middletown, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46133-DAP: Plaintiff Middletown City, Ohio .........................................................................5678

1555. *Coos County et al. v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-46136-DAP: Plaintiff Coos County, New Hampshire ......5682

1556. *Carroll County v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-46137-DAP: Plaintiff Carroll County, New Hampshire ..........5685

1557. *Livingston Parish v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-46140-DAP: Plaintiff Livingston Parish, Louisiana.....................................................................................5688

1558. *City of Espanola, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46142-DAP: Plaintiff Española City, New Mexico .................................................5693

1559. *City of Brookhaven, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46143-DAP: Plaintiff Brookhaven City, Mississippi........................................................5695

1560. *Ridge Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46144-DAP: Plaintiff Ridge Fire District, New York    5699

1561. *Village of Great Neck, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46145-DAP: Plaintiff Great Neck Village, New York    5702

1562. *Teamsters Local 445 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46146-DAP: Plaintiff Teamsters Local 445 Welfare Fund, New York.....................................................5705

1563. *Roofers Local 8 WBPA Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46147-DAP: Plaintiff Roofers Local 8 WBPA Fund, New York .................................................................5708

1564. *Patrick County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46149-DAP: Plaintiff Patrick County, Virginia......................5711

1565. *Shenandoah County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46150-DAP: Plaintiff Shenandoah County, Virginia........5715

1566. *Allegany County v. Purdue Pharma Lp et al.*, Case No. 1:19-op-46151-DAP: Plaintiff Allegany County, New York.............................5718

1567. *City of Waynesboro, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46152-DAP: Plaintiff Waynesboro City, Virginia ............5722

1568. *Cumberland County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46153-DAP: Plaintiff Cumberland County, Virginia .......5725

1569. *City of Radford, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46154-DAP: Plaintiff Radford City, Virginia .........................5729

1570. *County of Ocean, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46157-DAP: Plaintiff Ocean County, New Jersey ............5733

1571. *City of Poughkeepsie v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46163-DAP: Plaintiff Poughkeepsie City, New York ......................5736

1572. *Clark County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46168-DAP: Plaintiff Clark County, Nevada ........................................5740

1573. *Howard County, Maryland v. Teva Pharmaceuticals USA, Inc., et al.*, Case No. 1:19-op-46169-DAP: Plaintiff Howard County, Maryland .........................................................................................5743

1574. *Town of Hull v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46172-DAP: Plaintiff Hull Town, Massachusetts .............5747

1575. *Scott County, Missouri v. AmerisourceBergen Drug Corp. et al.*, Case No. 1:19-op-46174-DAP: Plaintiff Scott County, Missouri .........5751

1576. *Borough of Edwardsville, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46176-DAP: Plaintiff Edwardsville Borough, Pennsylvania ....................................................5755

1577. *Forty Fort Borough, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46177-DAP: Plaintiff Forty Fort Borough, Pennsylvania ...........................................................5759

1578. *City of Pontiac, Michigan v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46183-DAP: Plaintiff Pontiac City, Michigan ......................................................................................5764

1579. *Lawrence County, Kentucky v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46184-DAP: Plaintiff Lawrence County, Kentucky ..............................................................5767

1580. *City of Emporia, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46850-DAP: Plaintiff Emporia City, Virginia ........................5771

1581. *Village of Pleasant Prairie Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45010-DAP: Plaintiff Pleasant Prairie Village, Wisconsin ......................................................5775

1582. *City of Kenosha, Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45011-DAP: Plaintiff Kenosha City, Wisconsin ...................................................................5779

1583. *Bath County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45012-DAP: Plaintiff Bath County, Kentucky ...................................................................5782

1584. *County of Hawaii v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45014-DAP: Plaintiff Hawaii County, Hawaii .......................5786

1585. *Fiscal Court of Monroe County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45016-DAP: Plaintiff Monroe County, Kentucky...................................................................5789

1586. *West Hempstead Public Library v. McKesson Corporation et al.*, Case No. 1:20-op-45018-DAP: Plaintiff West Hempstead Public Library, New York...................................................................5793

1587. *Hui Huliau, A Native Hawaiian Organization v. McKesson Corporation et al.*, Case No. 1:20-op-45025-DAP: Plaintiff Hui Huliau, A Native Hawaiian Organization, Hawaii ................................5796

1588. *Hudson Regional Hospital v. McKesson Corporation et al.*, Case No. 1:20-op-45026-DAP: Plaintiff Hudson Regional Hospital, New Jersey ...................................................................5799

1589. *Iron Workers Local 40 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45027-DAP: Plaintiff Iron Workers Local 40 Health Fund, New York...................................................................5801

1590. *Iron Workers Local 361 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45028-DAP: Plaintiff Iron Workers Local 361 Health Fund, New York...................................................................5803

1591. *Iron Workers Local 417 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45029-DAP: Plaintiff Iron Workers Local 417 Health Fund, New York...................................................................5806

1592. *Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45030-DAP: Plaintiff Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund, New York ..........................5808

1593. *UFCW Local 342 Healthcare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45033-DAP: Plaintiff UFCW Local 342 Healthcare Fund, New York ................................................................5811

1594. *UFCW Local 342 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45034-DAP: Plaintiff UFCW Local 342 Welfare Fund, New York...................................................................5814

1595. *St. James Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45035-DAP: Plaintiff St James Fire District, New York.........5817

1596. *Town of Stony Point, New York v. McKesson Corporation et al.*, Case No. 1:20-op-45036-DAP: Plaintiff Stony Point Town, New York    5820

1597. *IBEW Local 25 Health & Benefit Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45037-DAP: Plaintiff IBEW Local 25 Health & Benefit Fund, New York .......................................................5823

1598. *Tishomingo County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45039-DAP: Plaintiff Tishomingo County, Mississippi .........................................................5826

1599. *UFCW Local 1500 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45041-DAP: Plaintiff UFCW Local 1500 Welfare Fund, New York...................................................................5829

1600. *Town of Ramapo, New York v. McKesson Corporation et al.*, Case No. 1:20-op-45042-DAP: Plaintiff Ramapo Town, New York.............5831

1601. *City of Milwaukee, Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45044-DAP: Plaintiff Milwaukee City, Wisconsin..................................................................5835

1602. *Amherst County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45046-DAP: Plaintiff Amherst County, Virginia ...................5839

1603. *Narragansett Indian Tribe v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45047-DAP: Plaintiff Narragansett Indian Tribe, Rhode Island ........................................................................5842

1604. *Medford Volunteer Ambulance v. McKesson Corporation et al.*, Case No. 1:20-op-45048-DAP: Plaintiff Medford Volunteer Ambulance, New York .........................................................................5845

1605. *Islip Terrace Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45049-DAP: Plaintiff Islip Terrace Fire District, New York   5848

1606. *North Patchogue Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45050-DAP: Plaintiff North Patchogue Fire District, New York................................................................................5850

1607. *City of Calais, Maine v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45051-DAP: Plaintiff Calais City, Maine ..........5853

1608. *County of Angelina v. Allergan PLC, et al.*, Case No. 1:20-op-45053-DAP: Plaintiff Angelina County, Texas ....................................5857

1609. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Anaheim City, California ....................5861

1610. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Encinitas City, California ....................5864

1611. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff La Habra City, California ....................5867

1612. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff La Mesa City, California ....................5870

1613. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Oxnard City, California ........................5872

1614. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Placentia City, California ....................5875

1615. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Santa Ana City, California...................5877

1616. *The Fiscal Court of Adair County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45059-DAP: Plaintiff Adair County, Kentucky ...............................................................................5880

1617. *City of Henderson v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45062-DAP: Plaintiff Henderson City, Kentucky .................................5884

1618. *Hardin County Fiscal Court et al. v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45063-DAP: Plaintiff Ohio County, Kentucky ........5888

1619. *Botetourt County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45064-DAP: Plaintiff Botetourt County, Virginia ..................5891

1620. *Hicksville Water District v. McKesson Corporation et al.*, Case No. 1:20-op-45072-DAP: Plaintiff Hicksville Water District, New York    5895

1621. *Williams v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45073-DAP: Plaintiff Sonji B. Williams, administratrix of The Estate of Tyler Michael Wain Williams, North Carolina ..............5898

1622. *The Fiscal Court of Edmonson County v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45084-DAP: Plaintiff Edmonson County, Kentucky ...................................................................................5900

1623. *Wyoming, Pennsylvania v. Cephalon, Inc. et al.*, Case No. 1:20-op-45087-DAP: Plaintiff Wyoming Borough, Pennsylvania.....................5904

1624. *City of Leeds, Alabama v. Purdue Pharma L P et al.*, Case No. 1:20-op-45088-DAP: Plaintiff Leeds City, Alabama ...........................5907

1625. *Fairfield, City of, Alabama v. Purdue Pharma LP et al.*, Case No. 1:20-op-45089-DAP: Plaintiff Fairfield City, Alabama ......................5911

1626. *Sugar Notch Borough, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45090-DAP: Plaintiff Sugar Notch Borough, Pennsylvania ..............................................................5916

1627. *Pell City, Alabama, City of v. Purdue Pharma LP et al.*, Case No. 1:20-op-45091-DAP: Plaintiff Pell City, Alabama................................5920

1628. *Stevens v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45092-DAP: Plaintiff Susan K. Stevens, administratrix of The Estate of Toria Captri Stevens, North Carolina ............................5923

1629. *City of Level Plains, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45100-DAP: Plaintiff Level Plains Town, Alabama.........5926

1630. *Kickapoo Traditional Tribe of Texas v. McKesson Corporation et al.*, Case No. 1:20-op-45104-DAP: Plaintiff Kickapoo Traditional Tribe of Texas, Texas ..........................................................................5930

1631. *Geneva County, Alabama v. Purdue Pharma L.P.*, Case No. 1:20-op-45105-DAP: Plaintiff Geneva County, Alabama ............................5933

1632. *Leysen v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45107-DAP: Plaintiff Patty Carol Leysen, administrator of The Estate of Brian Keith Johnston, North Carolina ............................5937

1633. *City of Luverne, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45109-DAP: Plaintiff Luverne City, Alabama........................5939

1634. *Rapides Parish Police Jury v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45111-DAP: Plaintiff Rapides Parish, Louisiana............................................................................................5943

1635. *Escambia County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45112-DAP: Plaintiff Escambia County, Alabama...........5947

1636. *City of Chickasaw, Alabama v. Purdue Pharma, L.P. et al.*, Case No. 1:20-op-45115-DAP: Plaintiff Chickasaw City, Alabama .............5951

1637. *City of Satsuma, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45116-DAP: Plaintiff Satsuma City, Alabama .......................5955

1638. *City of Uniontown, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45117-DAP: Plaintiff Uniontown Town, Alabama...........5959

1639. *City of Linden, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45118-DAP: Plaintiff Linden City, Alabama...........................5963

1640. *Town of Dauphin Island, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45119-DAP: Plaintiff Dauphin Island Town, Alabama .........................................................................................5967

1641. *Town of Sweet Water, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45120-DAP: Plaintiff Sweet Water Town, Alabama ........5971

1642. *City of Kirkland v. Endo Health Solutions Inc et al.*, Case No. 1:20-op-45121-DAP: Plaintiff Kirkland City, Washington...................5975

1643. *Town of Faunsdale, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45122-DAP: Plaintiff Faunsdale Town, Alabama ............5978

1644. *Phillip Terrell v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45123-DAP: Plaintiff District Attorney of Rapides Parish, Louisiana............................................................................................5982

1645. *King and Queen County, VA v. Mallinckrodt, PLC, et al.*, Case No. 1:20-op-45138-DAP: Plaintiff King and Queen County, Virginia........5987

1646. *Adams County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45140-DAP: Plaintiff Adams County, Pennsylvania............................5991

1647. *City of Fullerton et al. v. Cephalon Inc. et al.*, Case No. 1:20-op-45143-DAP: Plaintiff Fullerton City, California ....................................5994

1648. *Northampton County, VA v. Mallinckrodt, PLC*, Case No. 1:20-op-45144-DAP: Plaintiff Northampton County, Virginia..........................5997

1649. *Isle of Wight County v. Mallinckrodt, PLC*, Case No. 1:20-op-45145-DAP: Plaintiff Isle of Wight County, Virginia..........................6001

1650. *IBEW Local 716 Electrical Medical Trust v. McKesson Corporation et al.*, Case No. 1:20-op-45148-DAP: Plaintiff IBEW Local 716 Electrical Medical Trust, Texas ...........................................6005

1651. *The People of the State of Illinois et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45154-DAP: Plaintiff Sangamon County, Illinois....................................................................6008

1652. *Perry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45158-DAP: Plaintiff Perry County, Alabama .......................6012

1653. *City of Buena Vista, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45159-DAP: Plaintiff Buena Vista City, Virginia ..................6016

1654. *Mohegan Tribe of Indians of Connecticut v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45164-DAP: Plaintiff Mohegan Tribe of Indians of Connecticut, Connecticut .................................................6020

1655. *Elko Band of the Te-Moak Tribe of Western Shoshone Indians v. Endo Health Solutions, Inc. et al.*, Case No. 1:20-op-45165-DAP: Plaintiff Elko Band of the Te-Moak Tribe of Western Shoshone Indians, Nevada.....................................................................................6023

1656. *Stone County, Mississippi v. McKesson Corporation et al.*, Case No. 1:20-op-45168-DAP: Plaintiff Stone County, Mississippi .............6026

1657. *Seeley v. McKesson Corporation et al.*, Case No. 1:20-op-45169-DAP: Plaintiff Christopher Seeley, as temporary administrator of the Estate of Jennifer Kaczor, deceased, and as guardian of Jocelyn Kaczor, New York ...............................................................................6030

1658. *Wampanoag Tribe of Gay Head (Aquinnah) v. McKesson Corporation et al.*, Case No. 1:20-op-45170-DAP: Plaintiff Wampanoag Tribe of Gay Head (Aquinnah), Massachusetts...............6033

1659. *Henrico County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45172-DAP: Plaintiff Henrico County, Virginia ....................................6036

1660. *Chesterfield County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45173-DAP: Plaintiff Chesterfield County, Virginia..............6040

1661. *Mecklenburg County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45174-DAP: Plaintiff Mecklenburg County, Virginia.............6044

1662. *Goochland County, VA v. Mallinckrodt, PLC et al.*, Case No. 1:20-op-45175-DAP: Plaintiff Goochland County, Virginia ........................6048

1663. *City of Winchester, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45176-DAP: Plaintiff Winchester City, Virginia ....................6052

1664. *City of Fairfax, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45177-DAP: Plaintiff Fairfax City, Virginia .........................................6056

1665. *Stafford County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45178-DAP: Plaintiff Stafford County, Virginia...................................6059

1666. *Bedford County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45184-DAP: Plaintiff Bedford County, Pennsylvania..........................6063

1667. *City of Chico et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45189-DAP: Plaintiff Chico City, California...........6066

1668. *Hinds County, Mississippi v. Teva Pharmaceuticals USA, Inc., et al.*, Case No. 1:20-op-45190-DAP: Plaintiff Hinds County, Mississippi ...............................................................................................6069

1669. *City of West Frankfort, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45191-DAP: Plaintiff West Frankfort City, Illinois ...................................................................................6071

1670. *City of Herrin, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45192-DAP: Plaintiff Herrin City, Illinois.........6074

1671. *People of the State of Illinois et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45194-DAP: Plaintiff Franklin County, Illinois.......................................................................6077

1672. *City of Madison, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45198-DAP: Plaintiff Madison City, Alabama ............................................................................6080

1673. *City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP: Plaintiff Decatur Town, Tennessee ...................................................................6084

1674. *City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP: Plaintiff Germantown City, Tennessee ...............................................................6088

1675. *City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP: Plaintiff Maryville City, Tennessee ...................................................................6092

1676. *City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP: Plaintiff Pigeon Forge City, Tennessee...............................................................6096

1677. *City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP: Plaintiff Ripley City, Tennessee .......................................................................6100

1678.   *DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45209-DAP: Plaintiff DeKalb County, Alabama................................................................6103

1679.   *DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45209-DAP: Plaintiff Powell Town, Alabama................................................................6107

1680.   *City of Oneonta, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45210-DAP: Plaintiff Oneonta City, Alabama................................................................6111

1681.   *City of Marion, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45215-DAP: Plaintiff Marion City, Illinois .......6115

1682.   *Town of Dandridge, Tennessee v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:20-op-45216-DAP: Plaintiff Dandridge Town, Tennessee................................................................6119

1683.   *Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP: Plaintiff Cleveland Town, Alabama................................................................6121

1684.   *Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP: Plaintiff Gurley Town, Alabama................................................................6125

1685.   *Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP: Plaintiff Priceville Town, Alabama ................................................................6128

1686.   *City of Killen, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45218-DAP: Plaintiff Killen Town, Alabama................................................................6131

1687.   *Ard v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:20-op-45220-DAP: Plaintiff Sheriff of Livingston Parish, Louisiana .............6135

1688.   *City of Daphne, Alabama v. Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45227-DAP: Plaintiff Daphne City, Alabama..........6139

1689.   *Wayne Farms, LLC v. McKesson Corporation et al.*, Case No. 1:20-op-45229-DAP: Plaintiff Wayne Farms, LLC, Oklahoma............6143

1690.   *Poarch Band of Creek Indians v. Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45231-DAP: Plaintiff Poarch Band of Creek Indians, Alabama ................................................................6146

1691.   *Frederick County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45233-DAP: Plaintiff Frederick County, Virginia..................6151

1692.   *City of Lakeport et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45242-DAP: Plaintiff Lakeport City, California ................................................................6154

1693. *Municipality of Cidra, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45244-DAP: Plaintiff Municipality of Cidra, Puerto Rico ..........................................................................6157

1694. *Municipality of Adjuntas, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45245-DAP: Plaintiff Municipality of Adjuntas, Puerto Rico ...........................................................6160

1695. *Fond du Lac Band of Lake Superior Chippewa v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:20-op-45250-DAP: Plaintiff Fond du Lac Band of Lake Superior Chippewa, Ohio ...........6164

1696. *City of Clearlake et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45251-DAP: Plaintiff Clearlake City, California ................................................................................6166

1697. *City of Dublin et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45255-DAP: Plaintiff Dublin City, California.......................................6169

1698. *City of Dublin et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45255-DAP: Plaintiff Murrieta City, California ...................................6171

1699. *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Attalla City, Alabama......................................................................................6174

1700. *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Camp Hill Town, Alabama..................................................................................6178

1701. *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Cedar Bluff Town, Alabama..................................................................................6182

1702. *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Centre City, Alabama ......................................................................................6186

1703. *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Fultondale City, Alabama ....................................................................................6190

1704. *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Graysville City, Alabama ....................................................................................6193

1705. *Municipality of Barceloneta v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45267-DAP: Plaintiff Municipality of Barceloneta, Puerto Rico..............................................................................6198

1706. *City of Muscle Shoals, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45268-DAP: Plaintiff Muscle Shoals City, Alabama..............................................................6201

1707. *City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP: Plaintiff Brookwood Town, Alabama ................................................................6204

1708. *City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP: Plaintiff Northport City, Alabama ........................................................6208

1709. *City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP: Plaintiff Robertsdale City, Alabama ................................................................6211

1710. *Monroe County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45273-DAP: Plaintiff Monroe County, Alabama ................................................................6214

1711. *Monroe County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45273-DAP: Plaintiff Monroeville City, Alabama ................................................................6218

1712. *Town of Millis, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45275-DAP: Plaintiff Millis Town, Massachusetts ................................................................6221

1713. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Baltimore City Board of School Commissioners, Maryland ................................................................6224

1714. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Bangor School Department, Maine .....6228

1715. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Cape Elizabeth School District, Maine  6232

1716. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of East Aurora, School District 131, Illinois 6236

1717. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Ellsworth School Department, Maine  6239

1718. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Joliet Public Schools, Illinois................................................................6243

1719. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 10, Maine 6246

1720. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 13, Maine 6250

1721. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 25, Maine 6254

1722. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 26, Maine 6258

1723. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 29, Maine 6262

1724. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 34, Maine 6266

1725. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 40, Maine 6270

1726. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 50, Maine 6274

1727. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 57, Maine 6278

1728. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 60, Maine 6282

1729. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP:

Plaintiff Board of Education of Maine Regional School Unit 71, Maine  6286

1730.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 9, Maine  6290

1731.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 15, Maine ................................................................................6294

1732.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 35, Maine ................................................................................6298

1733.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 44, Maine ................................................................................6302

1734.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 53, Maine ................................................................................6306

1735.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 55, Maine ................................................................................6310

1736.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 6, Maine ................................................................................6314

1737.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 61, Maine ................................................................................6318

1738.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 72, Maine ................................................................................6322

1739.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 28/Five Town Central School District, Maine .........................6327

1740.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 11, Maine ...............................................................................6331

1741.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Mason County Public Schools, West Virginia........................................................................................6335

1742.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Portland School Department, Maine  6338

1743.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Rochester City School District, New York ...............................................................................................6342

1744.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Scarborough School Department, Maine  6346

1745.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of South Portland School Department, Maine  6350

1746.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of St. George Municipal School District, Maine ....................................................................................6354

1747.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Thornton Fractional Township High Schools, District 215, Illinois.......................................................6358

1748.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Thornton Township High Schools, District 205, Illinois ................................................................................6361

1749.  *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Waterville School Department, Maine  6364

1750.   *City of Auburn, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45282-DAP: Plaintiff Auburn City, Alabama ..................................................................................6368

1751.   *Lower Makefield Township v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45284-DAP: Plaintiff Lower Makefield Township, Pennsylvania ..............................................................................6372

1752.   *Poarch Band of Creek Indians v. Amerisourcebergen Drug Corporation*, Case No. 1:20-op-45285-DAP: Plaintiff Poarch Band of Creek Indians, Alabama ................................................6375

1753.   *Poarch Band of Creek Indians v. McKesson Corporation et al.*, Case No. 1:20-op-45286-DAP: Plaintiff Poarch Band of Creek Indians, Alabama ................................................6379

1754.   *Dinwiddie County v. Mallinckrodt, PLC et al.*, Case No. 1:20-op-45291-DAP: Plaintiff Dinwiddie County, Virginia ..............................6383

1755.   *Poarch Band of Creek Indians v. Cardinal Health, Inc.*, Case No. 1:20-op-45294-DAP: Plaintiff Poarch Band of Creek Indians, Alabama ..................................................................................6387

1756.   *District Attorney of Clearfield County v. Purdue Pharma L.P. et al.*, Case No. 1:21-op-45022-DAP: Plaintiff District Attorney of Clearfield County, Pennsylvania ................................................6390

1757.   *Sheet Metal Workers Local 19 Health Fund v. Purdue Pharma L.P. et al.*, Case No. 1:21-op-45025-DAP: Plaintiff Sheet Metal Workers Local 19 Health Fund, Pennsylvania ......................................6394

1758.   *Middletown Township v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:21-op-45030-DAP: Plaintiff Middletown Township, Pennsylvania ..............................................................................6397

1759.   *Pennington County, South Dakota v. Mylan Pharmaceuticals, Inc. et al.*, Case No. 1:21-op-45048-DAP: Plaintiff Pennington County, South Dakota ..................................................................6399

1760.   *City of Piedmont, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45049-DAP: Plaintiff Piedmont City, Alabama ..................................................................6403

1761.   *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Cerro Gordo County, Iowa ................................6406

1762.   *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Chickasaw County, Iowa..................................6408

1763.   *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Emmet County, Iowa..........................................6410

1764.   *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Jones County, Iowa ............................................6412

1765. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Madison County, Iowa .......................................6414

1766. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Muscatine County, Iowa....................................6416

1767. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Osceola County, Iowa ........................................6418

1768. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Poweshiek County, Iowa...................................6421

1769. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Wright County, Iowa...........................................6423

1770. *Board of County Commissioners of the County of Luna v. Allergan PLC et al.*, Case No. 1:21-op-45056-DAP: Plaintiff Luna County, New Mexico ..................................................................................6424

1771. *Board of County Commissioners of The County of Union v. Allergan PLC et al.*, Case No. 1:21-op-45057-DAP: Plaintiff Union County, New Mexico ........................................................................6426

1772. *City of Las Cruces, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45059-DAP: Plaintiff Las Cruces City, New Mexico ....................................................................6428

1773. *St. John's Riverside Hospital v. McKesson Corporation et al.*, Case No. 1:21-op-45063-DAP: Plaintiff St. John's Riverside Hospital, New York ....................................................................................6431

1774. *Transitions Recovery Program v. McKesson Corporation et al.*, Case No. 1:21-op-45066-DAP: Plaintiff Transitions Recovery Program, Florida .........................................................................6433

1775. *Teamsters Local 456 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:21-op-45067-DAP: Plaintiff Teamsters Local 456 Welfare Fund, New York .............................................................6434

1776. *City of Calera, Alabama v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:21-op-45070-DAP: Plaintiff Calera City, Alabama ......................................................................................6437

1777. *City of Gatlinburg, Tennessee v. Teva Pharmaceutical Industries, LTD et al.*, Case No. 1:21-op-45071-DAP: Plaintiff Gatlinburg City, Tennessee ...............................................................................6440

1778. *County Board of Arlington County, Virginia v. Mallinckrodt PLC, et al.*, Case No. 1:21-op-45078-DAP: Plaintiff Arlington County, Virginia .....................................................................................6443

1779. *City of Niceville Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45081-DAP: Plaintiff Niceville City, Florida 6446

1780. *Russell, KY et al. v. Abbott Laboratories et al.*, Case No. 1:21-op-45094-DAP: Plaintiff Russell City, Kentucky ..........................................................6449

1781. *Village of Lexington v. Actavis LLC et al.*, Case No. 1:21-op-45109-DAP: Plaintiff Lexington Village, Ohio ....................................6452

1782. *Threadgill v. McKesson Corporation et al.*, Case No. 1:21-op-45118-DAP: Plaintiff Shannon Lee Threadgill, individually and as next of friend and guardian of Child K.R.T., Washington ...................6455

1783. *Vincent v. McKesson Corporation et al.*, Case No. 1:21-op-45119-DAP: Plaintiff Beth Vincent, individually and as next of friend and guardian of Child S.J.S, Kentucky ..........................................................6458

1784. *Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45121-DAP: Plaintiff Adam Matthew Rubin, individually and as next of friend and guardian of Child C.A.R., New York ...................................6460

1785. *Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45122-DAP: Plaintiff Adam Matthew Rubin, individually and as next of friend and guardian of Child C.M.R., New York ..................................6462

1786. *Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45123-DAP: Plaintiff Adam Matthew Rubin, individually and as next of friend and guardian of Child C.J.R., New York ...................................6464

1787. *Farrell v. McKesson Corporation et al.*, Case No. 1:21-op-45124-DAP: Plaintiff Maryann Farrell, individually and as next of friend and guardian of Child A.N.F., Pennsylvania ..........................................6466

1788. *Funston v. McKesson Corporation et al.*, Case No. 1:21-op-45125-DAP: Plaintiff Christopher Michael Funston, individually and as next of friend and guardian of Child C.C.F., Missouri .........................6468

1789. *MSP Recovery Claims, Series LLC, a*, Case No. 1:21-op-45126-DAP: Plaintiff Tiffany Nicole Burcham, individually and as next of friend and guardian of Child L.R.K., Indiana .................................6470

1790. *Moser et al. v. McKesson Corporation et al.*, Case No. 1:21-op-45127-DAP: Plaintiff Rachel Renee Moser, individually and as next of friend and guardian of Child A.W.J., Florida ...........................6472

1791. *Aanestad v. McKesson Corporation et al.*, Case No. 1:21-op-45128-DAP: Plaintiff Christina Marie Aanestad, individually and as next of friend and guardian of Child P.J.A., California....................6474

1792. *Rowaihy v. McKesson Corporation et al.*, Case No. 1:21-op-45129-DAP: Plaintiff Marsha Marie Rowaihy, individually and as next of friend and guardian of Child J.J.A., Missouri...........................6475

1793. *Calkins v. McKesson Corporation et al.*, Case No. 1:21-op-45130-DAP: Plaintiff Vada Elizabeth Calkins, individually and as next of friend and guardian of Child D.V.L.C., Missouri .................................6477

1794. *Carpenter v. McKesson Corporation et al.*, Case No. 1:21-op-45131-DAP: Plaintiff Holly Janelle Carpenter, individually and as next of friend and guardian of Child C.M.C., Maryland ......................6479

1795. *Chapman v. McKesson Corporation et al.*, Case No. 1:21-op-45132-DAP: Plaintiff Thomas Wayne Chapman, individually and as next of friend and guardian of Child V.D.C., Alabama....................6481

1796. *Covington v. McKesson Corporation et al.*, Case No. 1:21-op-45133-DAP: Plaintiff Regina Marie Covington, individually and as next of friend and guardian of Child K.W.C.C., Missouri....................6484

1797. *Creech v. McKesson Corporation et al.*, Case No. 1:21-op-45134-DAP: Plaintiff Christopher Creech, individually and as next friend and guardian of Child L.R.C., New Mexico ...........................6486

1798. *Board of County Commissioners of the County of Torrance v. Allergan PLC et al.*, Case No. 1:22-op-45004-DAP: Plaintiff Torrance County, New Mexico............................................6488

1799. *County of Coryell v. Walgreens Co. et al.*, Case No. 1:22-op-45009-DAP: Plaintiff Coryell County, Texas........................................6489

1800. *County of Kendall v. Walgreens Co. et al.*, Case No. 1:22-op-45010-DAP: Plaintiff Kendall County, Texas ......................................6493

1801. *Eddy County v. Allergan PLC et al.*, Case No. 1:22-op-45015-DAP: Plaintiff Eddy County, New Mexico ...........................................6496

1802. *City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP: Plaintiff Columbiana City, Alabama....................................................6498

1803. *City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP: Plaintiff Helena City, Alabama ....................................................6502

1804. *City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP: Plaintiff Pelham City, Alabama....................................................6505

1805. *City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45018-DAP: Plaintiff Bay Minette City, Alabama..........................................6508

1806. *City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45018-DAP: Plaintiff Loxley Town, Alabama....................................................6511

1807. *City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45018-DAP: Plaintiff Summerdale Town, Alabama................................................6514

1808. *City of Gulf Shores, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:22-op-45019-DAP: Plaintiff Gulf Shores City, Alabama ..........................................................6517

1809. *City of Childersburg, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45020-DAP: Plaintiff Childersburg City, Alabama ................................................6520

1810. *Board of Education of Boardman Local Schools et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45023-DAP: Plaintiff Board Of Education of Boardman Local Schools, Ohio.......................................6523

1811. *Board of Education of Boardman Local Schools et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45023-DAP: Plaintiff Board of Education of Liberty Local Schools, Ohio ............................................6526

1812. *MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP: Plaintiff MSPA Claims 1, LLC, Ohio ...............6530

1813. *MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP: Plaintiff MAO-MSO Recovery II, LLC, Ohio    6533

1814. *MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP: Plaintiff MSP Recovery Claims, Series LLC, Ohio    6537

1815. *MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP: Plaintiff MSPA Claims 1, LLC, Florida..........................6540

1816. *MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP: Plaintiff MAO-MSO Recovery II, LLC, Florida..............6544

1817. *MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP: Plaintiff MSP Recovery Claims, Series LLC, Florida .....6548

1818. *MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP: Plaintiff MSP Recovery Services LLC, Florida ..............6552

1819. *International Union of Painters and Allied Trades 1974 v. Purde Pharma L.P. et al.*, Case No. 1:19-op-45854-DAP: Plaintiff International Union of Painters and Allied Trades 1974, New York ....6556

1820. *Building Trades Welfare Benefit Fund et. al. v. Purdue Pharma L.P. et. al.*, Case No. 1:19-op-45899-DAP: Plaintiff Building Trades Welfare Benefit Fund, New York ...............................................6559

1821. *SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, v. Par Pharmaceutical*, Case No. 1:21-op-45079-DAP: Plaintiff SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company, Florida ..................................................................6563

211

1822. *Putnam County School Board v. Cephalon, Inc. et al.*, Case No. 1:22-op-45025-DAP: Plaintiff Putnam County School Board, Florida 6566

1823. *Hancock County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45027-DAP: Plaintiff Hamblen County Board of Education, Tennessee ...........................................................................6569

1824. *Hancock County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45027-DAP: Plaintiff Hancock County Board of Education, Tennessee ...........................................................................6572

1825. *Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP: Plaintiff Kanawha County Board of Education, West Virginia ....................................................................6574

1826. *Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP: Plaintiff Marion County Board of Education, West Virginia ....................................................................6577

1827. *Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP: Plaintiff McDowell County Board of Education, West Virginia ................................................................6580

1828. *Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP: Plaintiff Wyoming County Board of Education, West Virginia ................................................................6582

1829. *Susanville Elementary School District et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45031-DAP: Plaintiff Lassen County Office of Education, California ........................................................................6584

1830. *Susanville Elementary School District et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45031-DAP: Plaintiff Susanville Elementary School District, California ................................................................6586

1831. *Lee County, AL et al. v. Mylan Pharmaceuticals Inc. et al.*, Case No. 1:23-op-45010-DAP: Plaintiff Lee County, Alabama ...................6588

1832. *Lee County, AL et al. v. Mylan Pharmaceuticals Inc. et al.*, Case No. 1:23-op-45010-DAP: Plaintiff Winston County, Alabama.............6591

1833. *Cleveland County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45304-DAP: Plaintiff Cleveland County, North Carolina...............6593

CONCLUSION..............................................................................................6597

## C. Each individual Moving Plaintff should be denied leave to amend.

1.    ***City of Lorain v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45000-DAP: Plaintiff Lorain City, Ohio**

Lorain City's untimely motion for leave to amend should be denied for several reasons. Lorain City previously dismissed its claims against some of the PBMs with prejudice in another case. Moreover, Lorain City failed to provide notice of its proposed amendments through a proposed complaint. Lorain City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lorain City's motion should be denied due to futility, as Lorain City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Prior Dismissal with Prejudice.** Lorain City previously dismissed its claims against Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Express Scripts, Inc.; Medco Health Solutions, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.; with prejudice in another case. *See County of Cuyahoga et al. v. Mylan Pharms., Inc. et al.*, Case No. 1:23-op-45003 (N.D. Ohio), ECF No. 50. That dismissal "operates as a final adjudication on the merits and has a res judicata effect." *Warfield v. AlliedSignal TBS Holdings, Inc*., 267 F.3d 538, 542 (6th Cir. 2001); *see also Taylor v. United States Gov't*, 21 F. App'x 264, 266 (6th Cir. 2001) ("A dismissal with prejudice [by stipulation of the parties] operates as a rejection of the plaintiff's claims on the merits and the doctrine of claim preclusion bars further litigation."). Lorain City's proposed claims against Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Express Scripts, Inc.; Medco Health Solutions, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; UnitedHealth Group

Incorporated; Optum, Inc.; and OptumRx, Inc.; are therefore barred by res judicata and leave to amend should be denied as futile. *See Gale v. Charter Twp. of Filer Bd. of Trustees*, 142 F. Supp. 3d 549, 554–55 (W.D. Mich. 2015) ("[A] stipulated dismissal with prejudice constitutes an adjudication on the merits" and denying motion for leave to amend complaint when "[p]laintiffs fail to allege any claim within this Court's federal question jurisdiction that would not be barred by *res judicata*.").

**Lack of Diligence.** Lorain City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lorain City amended its complaint on March 18, 2019, after transfer to the MDL on December 12, 2017. *See City of Lorain v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45000-DAP, ECF No. 68. Unlike many other plaintiffs, Lorain City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lorain City's deadline to amend was in 2019. Lorain City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lorain City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lorain City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Lorain City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lorain City fails to explain why it was unable to assert claims against the PBMs in 2019

when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lorain City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See Gustafson* Decl. (0.08% market share for Lorain City). That insignificant dispensing volume is much too low to support a finding of good cause for Lorain City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lorain City violated its basic duty to implement a timely litigation hold. Lorain City filed its original complaint on June 29, 2017, but waited until November 5, 2018 to implement a litigation hold—one year and four months later. *See City of Lorain v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45000-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 5, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lorain City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lorain City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lorain City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lorain City therefore lacks good cause

215

for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lorain City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lorain City, an Ohio municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lorain City is a plaintiff in Ohio. Lorain City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lorain City's proposed RICO claim against the PBMs has expired. Lorain City filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lorain v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45000-DAP, ECF No. 68. It is therefore indisputable that Lorain City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lorain City's RICO claim is

therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lorain City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lorain City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 2. *City of Parma v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45001-DAP: Plaintiff Parma City, Ohio

Parma City's untimely motion for leave to amend should be denied for several reasons. Parma City failed to provide notice of its proposed amendments through a proposed complaint. Parma City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Parma City's motion should be denied due to futility, as Parma City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Parma City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Parma City amended its complaint on March 15, 2019, after transfer to the MDL on December 12, 2017. *See City of Parma v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45001-DAP, ECF No. 54. Unlike many other plaintiffs, Parma City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Parma City's deadline to amend was in 2019.

Parma City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Parma City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Parma City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Parma City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Parma City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Parma City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Parma City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Parma City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when

the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Parma City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Parma City). That insignificant dispensing volume is much too low to support a finding of good cause for Parma City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Parma City violated its basic duty to implement a timely litigation hold. ECF Nos. 232; 5455. Parma City filed its original complaint on August 9, 2017, but waited until February 26, 2018 to implement a litigation hold—six months later. *See City of Parma v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45001-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 26, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Parma City's case would force the parties and the Court to waste time and resources ascertaining the extent of Parma City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Parma City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Parma City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Parma City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Parma City, an Ohio municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Parma City is a plaintiff in Ohio. Parma City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Parma City's proposed RICO claim against the PBMs has expired. Parma City filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Parma v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45001-DAP, ECF No. 54. It is therefore indisputable that Parma City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Parma City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that

the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Parma City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Parma City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 3.    *County of Cuyahoga v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45004-DAP: Plaintiff Cuyahoga County, Ohio

Cuyahoga County's untimely motion for leave to amend should be denied for several reasons. Cuyahoga County failed to provide notice of its proposed amendments through a proposed complaint. Cuyahoga County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cuyahoga County's motion should be denied due to futility, as Cuyahoga County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cuyahoga County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cuyahoga County amended its complaint on April 25, 2018, after joining the MDL, as well as on May 30, 2018, and December 19, 2019. *See County of Cuyahoga v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45004-DAP, ECF Nos. 27, 35, MDL ECF No. 3021. Unlike many other plaintiffs, Cuyahoga County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Cuyahoga County's deadline to amend was in 2019.

221

Cuyahoga County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cuyahoga County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Cuyahoga County filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Cuyahoga County offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Cuyahoga County's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Cuyahoga County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Cuyahoga County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cuyahoga County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of

other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cuyahoga County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Cuyahoga County). That insignificant dispensing volume is much too low to support a finding of good cause for Cuyahoga County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cuyahoga County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cuyahoga County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Cuyahoga County filed its original complaint on October 27, 2017, but waited until February 20, 2018 to implement a litigation hold. *See County of Cuyahoga v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45004-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 20, 2018). Cuyahoga

County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cuyahoga County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cuyahoga County, an Ohio municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Cuyahoga County is a plaintiff in Ohio. Cuyahoga County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Cuyahoga County's proposed RICO claim against the PBMs has expired. Cuyahoga County filed its second amended complaint on May 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Cuyahoga v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45004-DAP,

ECF No. 35. It is therefore indisputable that Cuyahoga County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cuyahoga County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cuyahoga County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cuyahoga County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 4. *City of Toledo v. Purdue Pharma LP et al.*, Case No. 1:17-op-45005-DAP: Plaintiff Toledo City, Ohio

Toledo City's untimely motion for leave to amend should be denied for several reasons. Toledo City failed to provide notice of its proposed amendments through a proposed complaint. Toledo City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Toledo City's motion should be denied due to futility, as Toledo City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Toledo City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Toledo City amended its complaint on March 18, 2019, after joining the MDL. *See City of Toledo*

*v. Purdue Pharma LP et al.*, Case No. 1:17-op-45005-DAP, ECF No. 27. Unlike many other plaintiffs, Toledo City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Toledo City's deadline to amend was in 2019. Toledo City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Toledo City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Toledo City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Toledo City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Toledo City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Toledo City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Toledo City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much

earlier. Toledo City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Toledo City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Toledo City). That insignificant dispensing volume is much too low to support a finding of good cause for Toledo City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Toledo City filed its original complaint on October 30, 2017, but waited until March 1, 2018 to implement a litigation hold. *See City of Toledo v. Purdue Pharma LP et al.*, Case No. 1:17-op-45005-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: March 1, 2018). Toledo City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Toledo City's delay in seeking to

amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Toledo City, an Ohio municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Toledo City is a plaintiff in Ohio. Toledo City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Toledo City's proposed RICO claim against the PBMs has expired. Toledo City filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Toledo v. Purdue Pharma LP et al.*, Case No. 1:17-op-45005-DAP, ECF No. 27. It is therefore indisputable that Toledo City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Toledo City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Toledo City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Toledo City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

5. ***Anderson County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45006-DAP: Plaintiff Anderson County, Kentucky**

Anderson County's untimely motion for leave to amend should be denied for several reasons. Anderson County failed to provide notice of its proposed amendments through a proposed complaint. Anderson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Anderson County's motion should be denied due to futility, as Anderson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Anderson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Anderson County first amended its complaint on October 3, 2017. *See Anderson County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45006-DAP, ECF No. 9. Anderson County amended its complaint again on March 8, 2019. *See Anderson County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45006-DAP, ECF No. 28. Unlike many other plaintiffs, Anderson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Anderson County's deadline to amend was in 2019. Anderson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Anderson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Anderson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Anderson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Anderson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Anderson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Anderson County). That insignificant dispensing volume is much too low to support a finding of good cause for Anderson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Anderson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Anderson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Anderson County filed its original complaint on September 12, 2017. *See Anderson County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45006-DAP, ECF No. 1. Despite filing its case years ago, Anderson County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Anderson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Anderson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Anderson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Anderson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Anderson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Anderson County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Anderson County's proposed RICO claim against the PBMs has expired. Anderson County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Anderson County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45006-DAP, ECF No. 1. It is therefore indisputable that Anderson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Anderson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Anderson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Anderson County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

232

6.    ***Franklin County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45007-DAP: Plaintiff Franklin County, Kentucky***

Franklin County's untimely motion for leave to amend should be denied for several reasons. Franklin County failed to provide notice of its proposed amendments through a proposed complaint. Franklin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin County's motion should be denied due to futility, as Franklin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Franklin County first amended its complaint on October 3, 2017. *See Franklin County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45007-DAP, ECF No. 9. Franklin County amended its complaint again on March 14, 2019. *See Franklin County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45007-DAP, ECF No. 27. Unlike many other plaintiffs, Franklin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Franklin County's deadline to amend was in 2019. Franklin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Franklin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

233

**Prior Notice Through Counsel.** Franklin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Franklin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Franklin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Franklin County). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Franklin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Franklin County violated its basic duty to implement a timely litigation hold. Franklin County filed its original complaint on September 12, 2017, but waited until September 26, 2024 to implement a litigation hold—seven years later. *See Franklin County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45007-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 26, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Franklin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Franklin County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Franklin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Franklin County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin County's proposed RICO claim against the PBMs has expired. Franklin County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Franklin County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45007-DAP, ECF No. 1. It is therefore indisputable that Franklin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Franklin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Franklin County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**7.** *Shelby County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:17-op-45009-DAP: Plaintiff Shelby County, Kentucky**

Shelby County's untimely motion for leave to amend should be denied for several reasons. Shelby County failed to provide notice of its proposed amendments through a proposed complaint. Shelby County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Shelby County's motion should be denied due to futility, as Shelby County does not assert any allegations tying the

PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Shelby County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Shelby County first amended its complaint on October 4, 2017. *See Shelby County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45009-DAP, ECF No. 10. Shelby County amended its complaint again on March 9, 2019. *See Shelby County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45009-DAP, ECF No. 28. Unlike many other plaintiffs, Shelby County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Shelby County's deadline to amend was in 2019. Shelby County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Shelby County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Shelby County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Shelby County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Shelby County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys

were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Shelby County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Shelby County). That insignificant dispensing volume is much too low to support a finding of good cause for Shelby County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Shelby County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Shelby County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shelby County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shelby County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Shelby County's proposed RICO claim against the PBMs has expired. Shelby County filed its original complaint on September 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Shelby County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45009-DAP, ECF No. 1. It is therefore indisputable that Shelby County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Shelby County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shelby County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Shelby County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**8.** ***Henry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45010-DAP: Plaintiff Henry County, Kentucky**

Henry County's untimely motion for leave to amend should be denied for several reasons. Henry County failed to provide notice of its proposed amendments through a proposed complaint. Henry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Henry County's motion should be denied due to futility, as Henry County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Henry County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Henry County first amended its complaint on October 4, 2017. *See Henry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45010-DAP, ECF No. 10. Henry County amended its complaint again on March 11, 2019. *See Henry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45010-DAP, ECF No. 28. Unlike many other plaintiffs, Henry County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Henry County's deadline to amend was in 2019. Henry County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Henry County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Henry County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Henry County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Henry County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Henry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Henry County). That insignificant dispensing volume is much too low to support a finding of good cause for Henry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Henry County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Henry County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Henry County filed its original complaint on September 13, 2017. *See Henry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45010-DAP, ECF No. 1. Despite filing its case years ago, Henry County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Henry County's case would force the parties and the Court to waste time and resources ascertaining the extent of Henry County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Henry County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Henry County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Henry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Henry County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Henry County's proposed RICO claim against the PBMs has expired. Henry County filed its original complaint on September 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Henry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45010-DAP, ECF No. 1. It is therefore indisputable that Henry County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Henry County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Henry County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Henry County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 9. *Madison County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45011-DAP: Plaintiff Madison County, Kentucky

Madison County's untimely motion for leave to amend should be denied for several reasons. Madison County failed to provide notice of its proposed amendments through a proposed complaint. Madison County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Madison County's motion should be denied due to futility, as Madison County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Madison County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Madison County first amended its complaint on October 4, 2017. *See Madison County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45011-DAP, ECF No. 12. Madison County amended its complaint again on March 9, 2019. *See Madison County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45011-DAP, ECF No. 29. Unlike many other plaintiffs, Madison County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Madison County's deadline to amend was in 2019. Madison County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Madison County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Madison County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Madison County, through its counsel, was on notice of potential claims against the

PBMs and could readily have amended its complaint to add the PBMs much earlier. Madison County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Madison County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Madison County). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Madison County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Madison County's delay in seeking

245

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Madison County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Madison County's proposed RICO claim against the PBMs has expired. Madison County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Madison County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45011-DAP, ECF No. 1. It is therefore indisputable that Madison County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Madison County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Madison County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Madison County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**10.** ***Fiscal Court of Cumberland County v. AmerisourceBergen Drug Corporation et al.***, **Case No. 1:17-op-45012-DAP: Plaintiff Cumberland County, Kentucky**

Cumberland County's untimely motion for leave to amend should be denied for several reasons. Cumberland County failed to provide notice of its proposed amendments through a proposed complaint. Cumberland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cumberland County's motion should be denied due to futility, as Cumberland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cumberland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cumberland County first amended its complaint on October 3, 2017. *See Fiscal Court of Cumberland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45012-DAP, ECF No. 6. Cumberland County amended its complaint again on March 9, 2019. *See Fiscal Court of Cumberland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45012-DAP, ECF No. 25. Unlike many other plaintiffs, Cumberland County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cumberland County's deadline to amend was in 2019. Cumberland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cumberland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cumberland County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cumberland County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cumberland County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cumberland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Cumberland County). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cumberland County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Cumberland County violated its basic duty to implement a timely litigation hold. Cumberland County filed its original complaint on September 20, 2017, but waited until September 26, 2024 to implement a litigation hold—seven years later. *See Fiscal Court of Cumberland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45012-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 26, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Cumberland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cumberland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cumberland County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cumberland County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cumberland County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cumberland County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cumberland County's proposed RICO claim against the PBMs has expired. Cumberland County filed its original complaint on September 20, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Cumberland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45012-DAP, ECF No. 1. It is therefore indisputable that Cumberland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Cumberland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cumberland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cumberland County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **11.** *Louisville/Jefferson County MetroGovernment v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:17-op-45013-DAP: Plaintiff Jefferson County, Kentucky**

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jefferson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson County first amended its complaint on October 5, 2017. *See Louisville/Jefferson County Metro Government v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45013-DAP, ECF No. 24. Jefferson County amended its complaint again on March 8, 2019. *See Louisville/Jefferson County Metro Government v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45013-DAP, ECF No. 37. Unlike many other plaintiffs, Jefferson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jefferson County's deadline to amend was in 2019. Jefferson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jefferson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jefferson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jefferson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jefferson County filed its original complaint on August 21, 2017. *See Louisville/Jefferson County Metro Government v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45013-DAP, ECF No. 1. Despite filing its case years ago, Jefferson County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jefferson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jefferson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jefferson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jefferson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jefferson County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its original complaint on August 21, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Louisville/Jefferson County Metro Government v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45013-DAP, ECF No. 1. It is therefore indisputable that Jefferson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Jefferson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jefferson County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 12. *Fiscal Court of Union County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45015-DAP: Plaintiff Union County, Kentucky

Union County's untimely motion for leave to amend should be denied for several reasons. Union County failed to provide notice of its proposed amendments through a proposed complaint. Union County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Union County's motion should be denied due to futility, as Union County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Union County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Union County first amended its complaint on October 3, 2017. *See Fiscal Court of Union County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45015-DAP, ECF No. 12. Union County amended its complaint again on March 9, 2019. *See Fiscal Court of Union County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45015-DAP, ECF No. 25. Unlike many other plaintiffs, Union County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Union County's deadline to amend was in 2019. Union County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Union County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Union County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Union County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Union County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Union County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Union County). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Union County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Union County filed its original complaint on September 13, 2017. *See Fiscal Court of Union County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45015-DAP, ECF No. 1. Despite filing its case years ago, Union County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Union County's case would force the parties and the Court to waste time and resources ascertaining the extent of Union County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Union County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Union County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Union County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Union County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Union County's proposed RICO claim against the PBMs has expired. Union County filed its original complaint on September 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Union County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45015-DAP, ECF No. 1. It is therefore indisputable that Union County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Union County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Union County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Union County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

258

13.    ***Fiscal Court of Carlisle County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45016-DAP: Plaintiff Carlisle County, Kentucky**

Carlisle County's untimely motion for leave to amend should be denied for several reasons. Carlisle County failed to provide notice of its proposed amendments through a proposed complaint. Carlisle County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carlisle County's motion should be denied due to futility, as Carlisle County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carlisle County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carlisle County first amended its complaint on October 3, 2017. *See Fiscal Court of Carlisle County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45016-DAP, ECF No. 10.[1] Carlisle County amended its complaint again on March 15, 2019. *See Fiscal Court of Carlisle County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45016-DAP, ECF No. 23. Unlike many other plaintiffs, Carlisle County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Carlisle County's deadline to amend was in 2019. Carlisle County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carlisle County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the

---

[1] Some documents appear only as docket text on the individual case docket in the MDL. Those documents are available on the transferor docket, *see Fiscal Court of Carlisle County v. AmerisourceBergen Drug Corporation et al.*, Case No. 5:17-cv-00136-TBR (W.D. Ky.).

scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Carlisle County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Baron & Budd, P.C.; and Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Carlisle County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Carlisle County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carlisle County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.20% market share for Carlisle County). That insignificant dispensing volume is much too low to support a finding of good cause for Carlisle County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts'
mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units
shipped to Carlisle County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,
Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support
a finding of good cause for Carlisle County to add dispensing claims against Express Scripts' mail
order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Carlisle County filed its original complaint on
September 12, 2017. *See Fiscal Court of Carlisle County v. AmerisourceBergen Drug Corporation
et al.*, Case No. 1:17-op-45016-DAP, ECF No. 1. Despite filing its case years ago, Carlisle County
*never* implemented a litigation hold and is instead purporting to rely on non-specific and
unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented:
*(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Carlisle
County's case would force the parties and the Court to waste time and resources ascertaining the
extent of Carlisle County's document destruction and the appropriate sanctions—just as the parties
were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024.
The PBMs are prejudiced by Carlisle County's disregard for its most basic discovery obligations
as a litigant, compounded by the delay in seeking leave to amend, and Carlisle County therefore
lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying
leave to amend in part because the passage of time resulted in significant prejudice due to the loss
of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek
to allocate fault to other parties. *See* Section III.A.6, above. But Carlisle County's delay in seeking
to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carlisle County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carlisle County's proposed RICO claim against the PBMs has expired. Carlisle County filed its second amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Carlisle County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45016-DAP, ECF No. 23. It is therefore indisputable that Carlisle County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Carlisle County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carlisle County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Carlisle County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 14. *Boyle County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45018-DAP: Plaintiff Boyle County, Kentucky

Boyle County's untimely motion for leave to amend should be denied for several reasons. Boyle County failed to provide notice of its proposed amendments through a proposed complaint. Boyle County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Boyle County's motion should be denied due to futility, as Boyle County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Boyle County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Boyle County first amended its complaint on October 3, 2017. *See Boyle County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45018-DAP, ECF No. 11. Boyle County amended its complaint again on March 8, 2019. *See Boyle County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45018-DAP, ECF No. 27. Unlike many other plaintiffs, Boyle County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Boyle County's deadline to amend was in 2019. Boyle County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Boyle County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Boyle County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Boyle County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Boyle County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Boyle County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Boyle County). That insignificant dispensing volume is much too low to support a finding of good cause for Boyle County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Boyle County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Boyle County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Boyle County filed its original complaint on September 12, 2017. *See Boyle County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45018-DAP, ECF No. 1. Despite filing its case years ago, Boyle County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: \*(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Boyle County's case would force the parties and the Court to waste time and resources ascertaining the extent of Boyle County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Boyle County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Boyle County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Boyle County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Boyle County, a Kentucky municipality, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Boyle County's proposed RICO claim against the PBMs has expired. Boyle County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Boyle County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45018-DAP, ECF No. 1. It is therefore indisputable that Boyle County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Boyle County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Boyle County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Boyle County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 15. *Fleming County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45019-DAP: Plaintiff Fleming County, Kentucky

Fleming County's untimely motion for leave to amend should be denied for several reasons. Fleming County failed to provide notice of its proposed amendments through a proposed complaint. Fleming County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fleming County's motion should be denied due to futility, as Fleming County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fleming County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fleming County first amended its complaint on October 3, 2017. *See Fleming County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45019-DAP, ECF No. 11. Fleming County amended its complaint again on March 9, 2019. *See Fleming County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45019-DAP, ECF No. 26. Unlike many other plaintiffs, Fleming County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Fleming County's deadline to amend was in 2019. Fleming County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fleming County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fleming County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL

ECF No. 2582. Fleming County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fleming County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fleming County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Fleming County). That insignificant dispensing volume is much too low to support a finding of good cause for Fleming County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fleming County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fleming County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fleming County violated its basic duty to implement a timely litigation hold. Fleming County filed its original complaint on September 12, 2017, but waited until September 10, 2024 to implement a litigation hold—seven years later. *See Fleming County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45019-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 10, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fleming County's case would force the parties and the Court to waste time and resources ascertaining the extent of Fleming County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fleming County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fleming County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fleming County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fleming County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fleming County's proposed RICO claim against the PBMs has expired. Fleming County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fleming County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45019-DAP, ECF No. 1. It is therefore indisputable that Fleming County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Fleming County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fleming County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fleming County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

16. *Boone County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:17-op-45020-DAP: Plaintiff Boone County, Kentucky**

Boone County's untimely motion for leave to amend should be denied for several reasons. Boone County failed to provide notice of its proposed amendments through a proposed complaint. Boone County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Boone County's motion should be denied due to futility, as Boone County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Boone County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Boone County first amended its complaint on October 3, 2017. *See Boone County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45020-DAP, ECF No. 14. Boone County amended its complaint again on March 8, 2019. *See Boone County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45020-DAP, ECF No. 32. Unlike many other plaintiffs, Boone County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Boone County's deadline to amend was in 2019. Boone County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Boone County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Boone County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Boone County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Boone County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously

aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Boone County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Boone County). That insignificant dispensing volume is much too low to support a finding of good cause for Boone County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Boone County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Boone County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Boone County violated its basic duty to implement a timely litigation hold. Boone County filed its original complaint on September 12, 2017, but waited until September 19, 2024 to implement a litigation hold—seven years later. *See Boone County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45020-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 19, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Boone

County's case would force the parties and the Court to waste time and resources ascertaining the extent of Boone County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Boone County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Boone County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Boone County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

      **Failure to State a Claim.** Boone County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

      **RICO Statute of Limitations.** The statute of limitations for Boone County's proposed RICO claim against the PBMs has expired. Boone County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Boone County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45020-DAP, ECF No. 1. It is therefore indisputable that Boone County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven

years before seeking leave to amend. Boone County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Boone County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Boone County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 17. *Pendleton County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45021-DAP: Plaintiff Pendleton County, Kentucky

Pendleton County's untimely motion for leave to amend should be denied for several reasons. Pendleton County failed to provide notice of its proposed amendments through a proposed complaint. Pendleton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pendleton County's motion should be denied due to futility, as Pendleton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pendleton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pendleton County first amended its complaint on October 4, 2017. *See Pendleton County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45021-DAP, ECF No. 14. Pendleton County amended its complaint again on March 9, 2019. *See*

*Pendleton County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45021-DAP, ECF No. 31. Unlike many other plaintiffs, Pendleton County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Pendleton County's deadline to amend was in 2019. Pendleton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pendleton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pendleton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pendleton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pendleton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pendleton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Pendleton County). That insignificant dispensing volume is much too low to support a finding of good cause for Pendleton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pendleton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pendleton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pendleton County filed its original complaint on September 13, 2017. *See Pendleton County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45021-DAP, ECF No. 1. Despite filing its case years ago, Pendleton County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pendleton County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pendleton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pendleton County's disregard

276

for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pendleton County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pendleton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pendleton County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pendleton County's proposed RICO claim against the PBMs has expired. Pendleton County filed its original complaint on September 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pendleton County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45021-DAP, ECF No. 1. It is therefore indisputable that Pendleton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Pendleton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO

limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pendleton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pendleton County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

18. ***Campbell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45022-DAP: Plaintiff Campbell County, Kentucky**

Campbell County's untimely motion for leave to amend should be denied for several reasons. Campbell County failed to provide notice of its proposed amendments through a proposed complaint. Campbell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Campbell County's motion should be denied due to futility, as Campbell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Campbell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Campbell County first amended its complaint on October 3, 2017. *See Campbell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45022-DAP, ECF No. 8. Campbell County amended its complaint again on March 8, 2019. *See Campbell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45022-DAP, ECF No. 30. Unlike many other plaintiffs, Campbell County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Campbell County's deadline to

amend was in 2019. Campbell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Campbell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Campbell County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Campbell County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Campbell County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Campbell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.05% market share for Campbell County). That insignificant dispensing volume is much too low to support a finding of good cause for Campbell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Campbell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Campbell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Campbell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Campbell County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Campbell County's proposed RICO claim against the PBMs has expired. Campbell County filed its original complaint on September 20, 2017, alleging the same type of injuries *and* alleging a RICO claim against other

defendants. *See Campbell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45022-DAP, ECF No. 1. It is therefore indisputable that Campbell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Campbell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Campbell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Campbell County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 19. *Garrard County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45023-DAP: Plaintiff Garrard County, Kentucky

Garrard County's untimely motion for leave to amend should be denied for several reasons. Garrard County failed to provide notice of its proposed amendments through a proposed complaint. Garrard County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Garrard County's motion should be denied due to futility, as Garrard County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Garrard County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Garrard County first amended its complaint on October 3, 2017. *See Garrard County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45023-DAP, ECF No. 11. Garrard County amended its complaint again on March 9, 2019. *See Garrard County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45023-DAP, ECF No. 28. Unlike many other plaintiffs, Garrard County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Garrard County's deadline to amend was in 2019. Garrard County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Garrard County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Garrard County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Garrard County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Garrard County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of

leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Garrard County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.26% market share for Garrard County). That insignificant dispensing volume is much too low to support a finding of good cause for Garrard County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Garrard County filed its original complaint on September 12, 2017. *See Garrard County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45023-DAP, ECF No. 1. Despite filing its case years ago, Garrard County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Garrard County's case would force the parties and the Court to waste time and resources ascertaining the extent of Garrard County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Garrard County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Garrard County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Garrard County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Garrard County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Garrard County's proposed RICO claim against the PBMs has expired. Garrard County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Garrard County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45023-DAP, ECF No. 1. It is therefore indisputable that Garrard County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Garrard County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Garrard County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Garrard County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **20.** ***Lincoln County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45024-DAP: Plaintiff Lincoln County, Kentucky**

Lincoln County's untimely motion for leave to amend should be denied for several reasons. Lincoln County failed to provide notice of its proposed amendments through a proposed complaint. Lincoln County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lincoln County's motion should be denied due to futility, as Lincoln County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lincoln County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lincoln County first amended its complaint on October 4, 2017. *See Lincoln County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45024-DAP, ECF No. 11. Lincoln County amended its complaint again on March 13, 2019. *See Lincoln County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45024-DAP, ECF No. 28. Unlike many other plaintiffs, Lincoln County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Lincoln County's deadline to amend was in 2019. Lincoln County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lincoln County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the

scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lincoln County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lincoln County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lincoln County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lincoln County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Lincoln County). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lincoln County filed its original complaint on September 12, 2017. *See Lincoln County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45024-DAP, ECF No. 1. Despite filing its case years ago, Lincoln County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lincoln County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lincoln County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lincoln County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lincoln County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lincoln County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lincoln County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lincoln County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lincoln County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lincoln County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lincoln County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lincoln County's potential claims against them. Lincoln County's failure to diligently

prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lincoln County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lincoln County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lincoln County's proposed RICO claim against the PBMs has expired. Lincoln County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lincoln County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45024-DAP, ECF No. 1. It is therefore indisputable that Lincoln County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Lincoln County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lincoln County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lincoln County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 21. *Nicholas County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45025-DAP: Plaintiff Nicholas County, Kentucky

Nicholas County's untimely motion for leave to amend should be denied for several reasons. Nicholas County failed to provide notice of its proposed amendments through a proposed complaint. Nicholas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nicholas County's motion should be denied due to futility, as Nicholas County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Nicholas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nicholas County first amended its complaint on October 4, 2017. *See Nicholas County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45025-DAP, ECF No. 11. Nicholas County amended its complaint again on March 9, 2019. *See Nicholas County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45025-DAP, ECF No. 30. Unlike many other plaintiffs, Nicholas County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Nicholas County's deadline to amend was in 2019. Nicholas County waited five years after its deadline to amend to seek leave to assert claims against

the PBMs. Nicholas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Nicholas County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Nicholas County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Nicholas County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Nicholas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Nicholas County). That insignificant dispensing volume is much too low to support a finding of good cause for Nicholas County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Nicholas County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Nicholas County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nicholas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nicholas County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nicholas County's proposed RICO claim against the PBMs has expired. Nicholas County filed its original complaint on September 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Nicholas County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45025-DAP, ECF No. 1. It is therefore indisputable that Nicholas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost

seven years before seeking leave to amend. Nicholas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nicholas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nicholas County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 22. *Bell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45026-DAP: Plaintiff Bell County, Kentucky

Bell County's untimely motion for leave to amend should be denied for several reasons. Bell County failed to provide notice of its proposed amendments through a proposed complaint. Bell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bell County's motion should be denied due to futility, as Bell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bell County first amended its complaint on October 3, 2017. *See Bell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45026-DAP, ECF No. 11. Bell County amended its complaint again on March 14, 2019. *See Bell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45026-DAP, ECF No. 29. Unlike

many other plaintiffs, Bell County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Bell County's deadline to amend was in 2019. Bell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bell County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bell County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bell County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Bell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Bell County). That insignificant dispensing volume is much too low to support a finding of good cause for Bell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bell County filed its original complaint on September 12, 2017. *See Bell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45026-DAP, ECF No. 1. Despite filing its case years ago, Bell County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bell County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bell County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bell County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bell County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bell County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bell County's proposed RICO claim against the PBMs has expired. Bell County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bell County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45026-DAP, ECF No. 1. It is therefore indisputable that Bell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Bell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bell County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **23.** ***Harlan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45027-DAP: Plaintiff Harlan County, Kentucky**

Harlan County's untimely motion for leave to amend should be denied for several reasons. Harlan County failed to provide notice of its proposed amendments through a proposed complaint. Harlan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Harlan County's motion should be denied due to futility, as Harlan County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Harlan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Harlan County first amended its complaint on October 3, 2017. *See Harlan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45027-DAP, ECF No. 9. Harlan County amended its complaint again on March 9, 2019. *See Harlan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45027-DAP, ECF No. 27. Unlike many other plaintiffs, Harlan County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Harlan County's deadline to amend was in 2019. Harlan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Harlan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Harlan County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Harlan County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Harlan County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Harlan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Harlan County). That insignificant dispensing volume is much too low to support a finding of good cause for Harlan County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Harlan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Harlan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Harlan County filed its original complaint on September 12, 2017, but waited until March 12, 2018 to implement a litigation hold. *See Harlan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45027-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: March 12, 2018). Harlan County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Harlan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Harlan County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Harlan County's proposed RICO claim against the PBMs has expired. Harlan County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Harlan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45027-DAP, ECF No. 1. It is therefore indisputable that Harlan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Harlan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Harlan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Harlan County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 24. *Knox County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45028-DAP: Plaintiff Knox County, Kentucky

Knox County's untimely motion for leave to amend should be denied for several reasons. Knox County failed to provide notice of its proposed amendments through a proposed complaint. Knox County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Knox County's motion should be denied due to futility, as Knox County does not assert

any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Knox County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Knox County first amended its complaint on October 4, 2017. *See Knox County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45028-DAP, ECF No. 11. Knox County amended its complaint again on March 15, 2019. *See Knox County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45028-DAP, ECF No. 28. Unlike many other plaintiffs, Knox County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Knox County's deadline to amend was in 2019. Knox County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Knox County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Knox County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Knox County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Knox County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys

were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Knox County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Knox County). That insignificant dispensing volume is much too low to support a finding of good cause for Knox County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Knox County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Knox County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Knox County filed its original complaint on September 12, 2017. *See Knox County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45028-DAP, ECF No. 1. Despite filing its case years ago, Knox County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See*

ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Knox County's case would force the parties and the Court to waste time and resources ascertaining the extent of Knox County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Knox County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Knox County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Knox County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Knox County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Knox County's proposed RICO claim against the PBMs has expired. Knox County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Knox County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45028-DAP, ECF No. 1. It is therefore indisputable that Knox County knew of its RICO injury, at

the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Knox County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Knox County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Knox County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 25.  *Leslie County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45029-DAP: Plaintiff Leslie County, Kentucky

Leslie County's untimely motion for leave to amend should be denied for several reasons. Leslie County failed to provide notice of its proposed amendments through a proposed complaint. Leslie County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Leslie County's motion should be denied due to futility, as Leslie County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leslie County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leslie County first amended its complaint on October 4, 2017. *See Leslie County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45029-DAP, ECF No. 11. Leslie County amended its complaint again on March 11, 2019. *See Leslie County Fiscal Court v.*

*Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45029-DAP, ECF No. 28. Unlike many other plaintiffs, Leslie County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Leslie County's deadline to amend was in 2019. Leslie County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Leslie County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Leslie County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Leslie County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Leslie County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Leslie County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Leslie County). That insignificant dispensing volume is much too low to support a finding of good cause for Leslie County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Leslie County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Leslie County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Leslie County filed its original complaint on September 12, 2017. *See Leslie County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45029-DAP, ECF No. 1. Despite filing its case years ago, Leslie County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Leslie County's case would force the parties and the Court to waste time and resources ascertaining the extent of Leslie County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leslie County's disregard for its most basic discovery obligations as

a litigant, compounded by the delay in seeking leave to amend, and Leslie County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leslie County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leslie County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leslie County's proposed RICO claim against the PBMs has expired. Leslie County filed its original complaint on September 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Leslie County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45029-DAP, ECF No. 1. It is therefore indisputable that Leslie County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Leslie County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leslie County's request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Leslie County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 26. *Whitley County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45030-DAP: Plaintiff Whitley County, Kentucky

Whitley County's untimely motion for leave to amend should be denied for several reasons. Whitley County failed to provide notice of its proposed amendments through a proposed complaint. Whitley County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Whitley County's motion should be denied due to futility, as Whitley County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Whitley County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Whitley County first amended its complaint on October 4, 2017. *See Whitley County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45030-DAP, ECF No. 11. Whitley County amended its complaint again on March 9, 2019. *See Whitley County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45030-DAP, ECF No. 27. Unlike many other plaintiffs, Whitley County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Whitley County's deadline to amend was in 2019. Whitley County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Whitley County's lack of diligence in pursuing its claims negates any finding of good

cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Whitley County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Whitley County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Whitley County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Whitley County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Whitley County). That insignificant dispensing volume is much too low to support a finding of good cause for Whitley County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Whitley County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Whitley County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Whitley County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Whitley County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Whitley County's proposed RICO claim against the PBMs has expired. Whitley County filed its original complaint on September 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Whitley County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45030-DAP, ECF No. 1. It is therefore indisputable that Whitley County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven

years before seeking leave to amend. Whitley County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Whitley County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Whitley County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 27. *Clay County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45031-DAP: Plaintiff Clay County, Kentucky

Clay County's untimely motion for leave to amend should be denied for several reasons. Clay County failed to provide notice of its proposed amendments through a proposed complaint. Clay County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clay County's motion should be denied due to futility, as Clay County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clay County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clay County first amended its complaint on October 3, 2017. *See Clay County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45031-DAP, ECF No. 6. Clay County amended its complaint again on March 11, 2019. *See Clay County Fiscal Court v.*

*Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45031-DAP, ECF No. 28. Unlike many other plaintiffs, Clay County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Clay County's deadline to amend was in 2019. Clay County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clay County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clay County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Clay County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Clay County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clay County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Clay County). That insignificant dispensing volume is much too low to support a finding of good cause for Clay County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clay County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clay County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Clay County filed its original complaint on September 20, 2017. *See Clay County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45031-DAP, ECF No. 1. Despite filing its case years ago, Clay County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Clay County's case would force the parties and the Court to waste time and resources ascertaining the extent of Clay County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clay County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clay County therefore lacks good cause

for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clay County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clay County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clay County's proposed RICO claim against the PBMs has expired. Clay County filed its original complaint on September 20, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Clay County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45031-DAP, ECF No. 1. It is therefore indisputable that Clay County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Clay County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clay County's request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clay County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 28. *Dayton v. Purdue Pharma LP et al.*, Case No. 1:17-op-45032-DAP: Plaintiff Dayton City, Ohio

Dayton City's untimely motion for leave to amend should be denied for several reasons. Dayton City failed to provide notice of its proposed amendments through a proposed complaint. Dayton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dayton City's motion should be denied due to futility, as Dayton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dayton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dayton City amended its complaint on March 18, 2019, after transfer to the MDL on December 13, 2017. *See Dayton v. Purdue Pharma LP et al.*, Case No. 1:17-op-45032-DAP, ECF No. 51. Unlike many other plaintiffs, Dayton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Dayton City's deadline to amend was in 2019. Dayton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dayton City's lack of diligence in pursuing its claims negates any finding of good cause. *See*

*Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Dayton City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Dayton City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Dayton City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**<u>Prior Notice Through Counsel.</u>** Dayton City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Dayton City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Dayton City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dayton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Dayton City). That insignificant dispensing volume is much too low to support a finding of good cause for Dayton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Dayton City violated its basic duty to implement a timely litigation hold. Dayton City filed its original complaint on June 5, 2017, but waited until February 23, 2018 to implement a litigation hold—eight months later. *See Dayton v. Purdue Pharma LP et al.*, Case No. 1:17-op-45032-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 23, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Dayton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Dayton City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dayton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dayton City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Dayton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Dayton City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Dayton City of this deficiency on September 16, 2024 (*see* Exhibit B), but Dayton City refused to amend or supplement its Fact Sheet. Under this Court's orders, Dayton City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dayton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Dayton City's potential claims against them. Dayton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dayton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dayton City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

317

**Plaintiff's Public Nuisance Claim is Futile.** Dayton City is a plaintiff in Ohio. Dayton City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Dayton City's proposed RICO claim against the PBMs has expired. Dayton City filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Dayton v. Purdue Pharma LP et al.*, Case No. 1:17-op-45032-DAP, ECF No. 51. It is therefore indisputable that Dayton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Dayton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dayton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dayton City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 29. *Clermont County Board Of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45033-DAP: Plaintiff Clermont County, Ohio

Clermont County's untimely motion for leave to amend should be denied for several reasons. Clermont County failed to provide notice of its proposed amendments through a proposed complaint. Clermont County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clermont County's motion should be denied due to futility, as Clermont County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clermont County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clermont County first amended its complaint on October 9, 2017. *See Clermont County Board Of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45033-DAP, ECF No. 62. Clermont County amended its complaint again on March 6, 2019. *See Clermont County Board Of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45033-DAP, ECF No. 94. Unlike many other plaintiffs, Clermont County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Clermont County's deadline to amend was in 2019. Clermont County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clermont County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clermont County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.;

and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Clermont County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Clermont County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clermont County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Clermont County). That insignificant dispensing volume is much too low to support a finding of good cause for Clermont County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Clermont County filed its original complaint on July 28, 2017, but waited until November 3, 2017 to implement a litigation hold. *See Clermont County Board Of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45033-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 3, 2017). Clermont County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs

heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clermont County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clermont County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Clermont County is a plaintiff in Ohio. Clermont County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Clermont County's proposed RICO claim against the PBMs has expired. Clermont County filed its original complaint on July 28, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Clermont County Board Of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45033-DAP, ECF No. 1. It is therefore indisputable that Clermont County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim,

seven years before seeking leave to amend. Clermont County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clermont County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clermont County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 30. *Belmont County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45034-DAP: Plaintiff Belmont County, Ohio

Belmont County's untimely motion for leave to amend should be denied for several reasons. Belmont County failed to provide notice of its proposed amendments through a proposed complaint. Belmont County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Belmont County's motion should be denied due to futility, as Belmont County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Belmont County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Belmont County first amended its complaint on October 11, 2017. *See Belmont County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45034-DAP, ECF No. 61. Belmont County amended its complaint again on March 12, 2019. *See Belmont*

*County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45034-DAP, ECF No. 90. Unlike many other plaintiffs, Belmont County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Belmont County's deadline to amend was in 2019. Belmont County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Belmont County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

 **Prior Notice Through Counsel.** Belmont County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Belmont County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Belmont County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Belmont County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Belmont County). That insignificant dispensing volume is much too low to support a finding of good cause for Belmont County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Belmont County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Belmont County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Belmont County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Belmont County of the PBM services Express Scripts provides and Belmont County began receiving those services on January 1, 2006. *See id.* Inasmuch as Belmont County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Belmont County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Belmont County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's

deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Belmont County violated its basic duty to implement a timely litigation hold. Belmont County filed its original complaint on July 28, 2017, but waited until September 18, 2024 to implement a litigation hold—seven years later. *See Belmont County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45034-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 18, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Belmont County's case would force the parties and the Court to waste time and resources ascertaining the extent of Belmont County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Belmont County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Belmont County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Belmont County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Belmont County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Belmont County is a plaintiff in Ohio. Belmont County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Belmont County's proposed RICO claim against the PBMs has expired. Belmont County filed its original complaint on July 28, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Belmont County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45034-DAP, ECF No. 1. It is therefore indisputable that Belmont County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Belmont County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Belmont County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Belmont County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 31. *Brown County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45035-DAP: Plaintiff Brown County, Ohio

Brown County's untimely motion for leave to amend should be denied for several reasons. Brown County failed to provide notice of its proposed amendments through a proposed complaint. Brown County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brown County's motion should be denied due to futility, as Brown County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brown County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brown County first amended its complaint on October 12, 2017. *See Brown County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45035-DAP, ECF No. 62. Brown County amended its complaint again on March 12, 2019. *See Brown County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45035-DAP, ECF No. 91. Unlike many other plaintiffs, Brown County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Brown County's deadline to amend was in 2019. Brown County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Brown County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion

to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Brown County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Brown County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Brown County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brown County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Brown County). That insignificant dispensing volume is much too low to support a finding of good cause for Brown County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Brown County filed its original complaint on July 28, 2017. *See Brown County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45035-DAP, ECF No. 1. Despite filing its case years ago, Brown County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Brown County's case would force the parties and the Court to waste time and resources ascertaining the extent of Brown County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brown County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brown County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brown County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brown County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Brown County is a plaintiff in Ohio. Brown County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Brown County's proposed RICO claim against the PBMs has expired. Brown County filed its original complaint on July 28, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brown County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45035-DAP, ECF No. 1. It is therefore indisputable that Brown County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Brown County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brown County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Brown County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

32. ***Vinton County Board of County Commissioners v. AmerisourceBergen Corporation et al.*, Case No. 1:17-op-45036-DAP: Plaintiff Vinton County, Ohio**

Vinton County's untimely motion for leave to amend should be denied for several reasons. Vinton County failed to provide notice of its proposed amendments through a proposed complaint. Vinton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Vinton County's motion should be denied due to futility, as Vinton County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Vinton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Vinton County first amended its complaint on October 11, 2017. *See Vinton County Board of County Commissioners v. AmerisourceBergen Corporation et al.*, Case No. 1:17-op-45036-DAP, ECF No. 62. Vinton County amended its complaint again on March 11, 2019. *See Vinton County Board of County Commissioners v. AmerisourceBergen Corporation et al.*, Case No. 1:17-op-45036-DAP, ECF No. 91. Unlike many other plaintiffs, Vinton County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Vinton County's deadline to amend was in 2019. Vinton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Vinton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Vinton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Vinton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Vinton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Vinton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.18% market share for Vinton County). That insignificant dispensing volume is much too low to support a finding of good cause for Vinton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Vinton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Vinton County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Vinton County is a plaintiff in Ohio. Vinton County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Vinton County's proposed RICO claim against the PBMs has expired. Vinton County filed its original complaint on July 28, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Vinton County Board of County Commissioners v. AmerisourceBergen Corporation et al.*, Case No. 1:17-op-45036-DAP, ECF No. 1. It is therefore indisputable that Vinton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Vinton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Vinton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Vinton County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **33.** ***Jackson County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45037-DAP: Plaintiff Jackson County, Ohio**

Jackson County's untimely motion for leave to amend should be denied for several reasons. Jackson County failed to provide notice of its proposed amendments through a proposed complaint. Jackson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jackson County's motion should be denied due to futility, as Jackson County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jackson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jackson County first amended its complaint on October 12, 2017. *See Jackson County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45037-DAP, ECF No. 57. Jackson County amended its complaint again on March 13, 2019. *See Jackson County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45037-DAP, ECF No. 86. Unlike many other plaintiffs, Jackson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Jackson County's deadline to amend was in 2019. Jackson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jackson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion

to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jackson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jackson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jackson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jackson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Jackson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jackson County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jackson County filed its original complaint on August 2, 2017. *See Jackson County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45037-DAP, ECF No. 1. Despite filing its case years ago, Jackson County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jackson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jackson County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jackson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jackson County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jackson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jackson County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Jackson County is a plaintiff in Ohio. Jackson County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Jackson County's proposed RICO claim against the PBMs has expired. Jackson County filed its original complaint on August 2, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45037-DAP, ECF No. 1. It is therefore indisputable that Jackson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Jackson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jackson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jackson County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**34.** ***Scioto County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45038-DAP: Plaintiff Scioto County, Ohio**

Scioto County's untimely motion for leave to amend should be denied for several reasons. Scioto County failed to provide notice of its proposed amendments through a proposed complaint. Scioto County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scioto County's motion should be denied due to futility, as Scioto County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scioto County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scioto County first amended its complaint on October 9, 2017. *See Scioto County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45038-DAP, ECF No. 55. Scioto County amended its complaint again on March 14, 2019. *See Scioto County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45038-DAP, ECF No. 86. Unlike many other plaintiffs, Scioto County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Scioto County's deadline to amend was in 2019. Scioto County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scioto County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Scioto County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Scioto County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Scioto County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Scioto County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Scioto County). That insignificant dispensing volume is much too low to support a finding of good cause for Scioto County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scioto County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scioto County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Scioto County is a plaintiff in Ohio. Scioto County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Scioto County's proposed RICO claim against the PBMs has expired. Scioto County filed its original complaint on August 3, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Scioto County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45038-DAP, ECF No. 1. It is therefore indisputable that Scioto County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Scioto County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scioto County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Scioto County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **35.** ***Pike County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45039-DAP: Plaintiff Pike County, Ohio**

Pike County's untimely motion for leave to amend should be denied for several reasons. Pike County failed to provide notice of its proposed amendments through a proposed complaint. Pike County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pike County's motion should be denied due to futility, as Pike County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pike County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pike County first amended its complaint on October 9, 2017. *See Pike County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45039-DAP, ECF No. 53. Pike County amended its complaint again on March 14, 2019. *See Pike County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45039-DAP, ECF No. 85. Unlike many other plaintiffs, Pike County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Pike County's deadline to amend was in 2019. Pike County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pike County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pike County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pike County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pike County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pike County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Pike County). That insignificant dispensing volume is much too low to support a finding of good cause for Pike County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pike County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pike County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Pike County is a plaintiff in Ohio. Pike County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Pike County's proposed RICO claim against the PBMs has expired. Pike County filed its original complaint on August 10, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pike County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45039-DAP, ECF No. 1. It is therefore indisputable that Pike County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Pike County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Pike County's request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave

to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pike County, a municipality in Ohio, lacks standing to state a

claim for relief under any of the New York laws referenced in the City of Rochester's complaint.

*See* Section III.B.6, above.

> ### 36. *Ross County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45040-DAP: Plaintiff Ross County, Ohio

Ross County's untimely motion for leave to amend should be denied for several reasons.

Ross County failed to provide notice of its proposed amendments through a proposed complaint.

Ross County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, failure to timely implement a litigation hold, and because its untimely

motion would unduly prejudice the PBMs. Moreover, Ross County's motion should be denied due

to futility, as Ross County does not assert any allegations tying the PBMs to its alleged harm, its

proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the

statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ross County was on notice of its claims against the PBMs for years

but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Ross County first amended its complaint on October 12, 2017. *See Ross County Board of County*

*Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45040-DAP,

ECF No. 47. Ross County amended its complaint again on March 11, 2019. *See Ross County Board*

*of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-

45040-DAP, ECF No. 76. Unlike many other plaintiffs, Ross County declined to add claims

against the PBMs in its amended complaints. *See* Section II.A.1, above. Ross County's deadline

to amend was in 2019. Ross County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ross County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ross County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ross County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ross County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ross County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Ross County). That insignificant dispensing volume is much too

345

low to support a finding of good cause for Ross County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ross County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ross County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ross County filed its original complaint on August 11, 2017. *See Ross County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45040-DAP, ECF No. 1. Despite filing its case years ago, Ross County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ross County's case would force the parties and the Court to waste time and resources ascertaining the extent of Ross County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ross County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ross County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ross County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ross County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Ross County is a plaintiff in Ohio. Ross County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Ross County's proposed RICO claim against the PBMs has expired. Ross County filed its original complaint on August 11, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Ross County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45040-DAP, ECF No. 1. It is therefore indisputable that Ross County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Ross County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ross County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ross County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 37. *City of Cincinnati v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45041-DAP: Plaintiff Cincinnati City, Ohio

Cincinnati City's untimely motion for leave to amend should be denied for several reasons. Cincinnati City failed to provide notice of its proposed amendments through a proposed complaint. Cincinnati City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cincinnati City's motion should be denied due to futility, as Cincinnati City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cincinnati City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cincinnati City first amended its complaint on September 22, 2017. *See City Of Cincinnati v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45041-DAP, ECF No. 45. Cincinnati City amended its complaint again on March 14, 2019. *See City Of Cincinnati v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45041-DAP, ECF No. 111. Unlike many other plaintiffs, Cincinnati City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Cincinnati City's deadline to amend was in 2019. Cincinnati

City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cincinnati City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cincinnati City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cincinnati City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cincinnati City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cincinnati City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Cincinnati City). That insignificant dispensing volume is much too

low to support a finding of good cause for Cincinnati City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cincinnati City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cincinnati City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Cincinnati City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Cincinnati City of the PBM services Express Scripts provides and Cincinnati City began receiving those services on January 1, 2011. *See id.* Inasmuch as Cincinnati City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Cincinnati City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Cincinnati City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cincinnati City's delay in seeking to

amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cincinnati City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Cincinnati City is a plaintiff in Ohio. Cincinnati City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Cincinnati City's proposed RICO claim against the PBMs has expired. Cincinnati City filed its original complaint on August 15, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City Of Cincinnati v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45041-DAP, ECF No. 1. It is therefore indisputable that Cincinnati City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Cincinnati City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cincinnati City's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cincinnati City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 38. *City of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45042-DAP: Plaintiff Portsmouth City, Ohio

Portsmouth City's untimely motion for leave to amend should be denied for several reasons. Portsmouth City failed to provide notice of its proposed amendments through a proposed complaint. Portsmouth City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Portsmouth City's motion should be denied due to futility, as Portsmouth City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Portsmouth City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Portsmouth City first amended its complaint on October 26, 2017. *See City of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45042-DAP, ECF No. 55. Portsmouth City amended its complaint again on March 6, 2019. *See City of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45042-DAP, ECF No. 78. Unlike many other plaintiffs, Portsmouth City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Portsmouth City's deadline to amend was in 2019. Portsmouth City waited five years after its deadline to amend to seek leave to assert claims against

the PBMs. Portsmouth City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Portsmouth City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Portsmouth City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Portsmouth City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Portsmouth City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Portsmouth City). That insignificant dispensing volume is much too low to support a finding of good cause for Portsmouth City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Portsmouth City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Portsmouth City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Portsmouth City is a plaintiff in Ohio. Portsmouth City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Portsmouth City's proposed RICO claim against the PBMs has expired. Portsmouth City filed its original complaint on August 16, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45042-DAP, ECF No. 1. It is therefore indisputable that Portsmouth City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Portsmouth City's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Portsmouth City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Portsmouth City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **39.** ***Gallia County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45043-DAP: Plaintiff Gallia County, Ohio**

Gallia County's untimely motion for leave to amend should be denied for several reasons. Gallia County failed to provide notice of its proposed amendments through a proposed complaint. Gallia County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gallia County's motion should be denied due to futility, as Gallia County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gallia County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gallia County first amended its complaint on October 9, 2017. *See Gallia County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45043-DAP, ECF No. 44. Gallia County amended its complaint again on March 11, 2019. *See Gallia County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-

45043-DAP, ECF No. 75. Unlike many other plaintiffs, Gallia County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Gallia County's deadline to amend was in 2019. Gallia County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Gallia County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Gallia County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Gallia County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Gallia County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Gallia County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Gallia County). That insignificant dispensing volume is much too low to support a finding of good cause for Gallia County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Gallia County filed its original complaint on August 31, 2017. *See Gallia County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45043-DAP, ECF No. 1. Despite filing its case years ago, Gallia County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Gallia County's case would force the parties and the Court to waste time and resources ascertaining the extent of Gallia County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gallia County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Gallia County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gallia County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gallia County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Gallia County is a plaintiff in Ohio. Gallia County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Gallia County's proposed RICO claim against the PBMs has expired. Gallia County filed its original complaint on August 31, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Gallia County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45043-DAP, ECF No. 1. It is therefore indisputable that Gallia County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Gallia County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gallia County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Gallia County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

40. ***Hocking County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45044-DAP: Plaintiff Hocking County, Ohio**

Hocking County's untimely motion for leave to amend should be denied for several reasons. Hocking County failed to provide notice of its proposed amendments through a proposed complaint. Hocking County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hocking County's motion should be denied due to futility, as Hocking County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hocking County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hocking County first amended its complaint on October 12, 2017. *See Hocking County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45044-DAP, ECF No. 46. Hocking County amended its complaint again on March 11, 2019. *See Hocking County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45044-DAP, ECF No. 75. Unlike many other plaintiffs, Hocking County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Hocking County's deadline to amend was in 2019. Hocking County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hocking County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion

to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hocking County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hocking County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hocking County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hocking County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Hocking County). That insignificant dispensing volume is much too low to support a finding of good cause for Hocking County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hocking County filed its original complaint on August 31, 2017. *See Hocking County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45044-DAP, ECF No. 1. Despite filing its case years ago, Hocking County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hocking County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hocking County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hocking County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hocking County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hocking County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hocking County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Hocking County is a plaintiff in Ohio. Hocking County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Hocking County's proposed RICO claim against the PBMs has expired. Hocking County filed its original complaint on August 31, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hocking County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45044-DAP, ECF No. 1. It is therefore indisputable that Hocking County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Hocking County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hocking County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hocking County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

41. ***Lawrence County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45045-DAP: Plaintiff Lawrence County, Ohio**

Lawrence County's untimely motion for leave to amend should be denied for several reasons. Lawrence County failed to provide notice of its proposed amendments through a proposed complaint. Lawrence County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lawrence County's motion should be denied due to futility, as Lawrence County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lawrence County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lawrence County first amended its complaint on October 11, 2017. *See Lawrence County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45045-DAP, ECF No. 46. Lawrence County amended its complaint again on March 13, 2019. *See Lawrence County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45045-DAP, ECF No. 75. Unlike many other plaintiffs, Lawrence County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Lawrence County's deadline to amend was in 2019. Lawrence County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lawrence County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lawrence County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lawrence County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lawrence County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lawrence County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Lawrence County). That insignificant dispensing volume is much too low to support a finding of good cause for Lawrence County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lawrence County filed its original complaint on August 31, 2017. *See Lawrence County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45045-DAP, ECF No. 1. Despite filing its case years ago, Lawrence County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lawrence County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lawrence County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lawrence County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lawrence County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lawrence County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lawrence County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lawrence County is a plaintiff in Ohio. Lawrence County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lawrence County's proposed RICO claim against the PBMs has expired. Lawrence County filed its original complaint on August 31, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lawrence County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45045-DAP, ECF No. 1. It is therefore indisputable that Lawrence County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Lawrence County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lawrence County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lawrence County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

42. *City of Everett v. Purdue Pharma LP et al.*, **Case No. 1:17-op-45046-DAP: Plaintiff Everett City, Washington**

Everett City's untimely motion for leave to amend should be denied for several reasons. Everett City failed to provide notice of its proposed amendments through a proposed complaint. Everett City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Everett City's motion should be denied due to futility, as Everett City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Everett City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Everett City first amended its complaint on October 25, 2017. *See City of Everett v. Purdue Pharma LP et al.*, Case No. 1:17-op-45046-DAP, ECF No. 37. Everett City amended its complaint again on March 15, 2019. *See City of Everett v. Purdue Pharma LP et al.*, Case No. 1:17-op-45046-DAP, ECF No. 56. Unlike many other plaintiffs, Everett City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Everett City's deadline to amend was in 2019. Everett City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Everett City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Everett City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Everett City). That insignificant dispensing volume is much too low to support a finding of good cause for Everett City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Everett City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Everett City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Everett City filed its original complaint on January 19, 2017. *See City of Everett v. Purdue Pharma LP et al.*, Case No. 1:17-op-45046-DAP, ECF No. 1-1. Despite filing its case years ago, Everett City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Everett City's case would force the parties and the Court to waste time and resources ascertaining the extent of Everett City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Everett City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Everett City therefore lacks good cause for leave to amend its complaint. *See*

*Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Everett City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Everett City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Everett City's proposed RICO claim against the PBMs has expired. Everett City filed its second amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Everett v. Purdue Pharma LP et al.*, Case No. 1:17-op-45046-DAP, ECF No. 56. It is therefore indisputable that Everett City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Everett City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Everett City's request for leave to amend to add a RICO claim should be denied as futile. *See*

*Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Everett City's public-nuisance claim against the PBMs is therefore time-barred because Everett City sought leave to amend its complaint on July 29, 2024—more than seven years after filing its original complaint on January 19, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora v. Chrisman*, 44 F.4th 452, 480 (6th Cir. 2022) ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Everett City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 43. *City of Tacoma v. Purdue Pharma, L.P. et al.*, Case No. 1:17-op-45047-DAP: Plaintiff Tacoma City, Washington

Tacoma City's untimely motion for leave to amend should be denied for several reasons. Tacoma City failed to provide notice of its proposed amendments through a proposed complaint. Tacoma City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tacoma City's motion should be denied due to futility, as Tacoma City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tacoma City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tacoma City first amended its complaint on May 25, 2018. *See City of Tacoma v. Purdue Pharma, L.P. et al.*, Case No. 1:17-op-45047-DAP, ECF No. 34. Tacoma City amended its complaint again on March 15, 2019, as well as on May 28, 2019. *See City of Tacoma v. Purdue Pharma, L.P. et al.*, Case No. 1:17-op-45047-DAP, ECF Nos. 47, 49. Unlike many other plaintiffs, Tacoma City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Tacoma City's deadline to amend was in 2019. Tacoma City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tacoma City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tacoma City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Tacoma City). That insignificant dispensing volume is much too low to support a finding of good cause for Tacoma City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units

shipped to Tacoma City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tacoma City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Tacoma City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Tacoma City of the PBM services Express Scripts provides and Tacoma City began receiving those services on September 18, 2007. *See id.* Inasmuch as Tacoma City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Tacoma City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Tacoma City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tacoma City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tacoma City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tacoma City's proposed RICO claim against the PBMs has expired. Tacoma City filed its original complaint on September 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Tacoma v. Purdue Pharma, L.P. et al.*, Case No. 1:17-op-45047-DAP, ECF No. 1. It is therefore indisputable that Tacoma City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Tacoma City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tacoma City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Tacoma City's public-nuisance claim against the PBMs is therefore time-barred because Tacoma City sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on September 13, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tacoma City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **44.** *People of the State of Illinois et al. v. Purdue Pharma LP et al.*, Case No. 1:17-op-45048-DAP: Plaintiff St. Clair County, Illinois

St. Clair County's untimely motion for leave to amend should be denied for several reasons. This Court previously remanded St. Clair County's case to state court. Moreover, St. Clair County failed to provide notice of its proposed amendments through a proposed complaint. St. Clair County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Clair County's motion should be denied due to futility, as St. Clair County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court has remanded St. Clair County's case to state court. *See People of the State of Illinois et al. v. Purdue Pharma LP et al.*, Case No. 1:17-op-45048-DAP, ECF No. 60. That remand deprives this Court of jurisdiction to consider St. Clair County's motion to amend. *See, e.g.*, *Cook*, 17 F. App'x at 352 ("A remand to state court pursuant to § 1447(c) divests the federal district court of jurisdiction."); *Joliffe v. Enterprise Rent-a-Car*, 1994 WL 823557, at *2 (W.D. Mich. Aug. 10, 1994) (remanding case to state court and concluding that the court therefore lacked jurisdiction over motion for leave to amend).

**Lack of Diligence.** St. Clair County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Clair County filed its original complaint on April 19, 2017 and the case was transferred to the

MDL on December 13, 2017. *See People of the State of Illinois et al. v. Purdue Pharma LP et al.*, Case No. 1:17-op-45048-DAP, ECF No. 56. St. Clair County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, St. Clair County elected not to do so. Instead, St. Clair County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Clair County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Clair County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for St. Clair County). That insignificant dispensing volume is much too low to support a finding of good cause for St. Clair County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Clair County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Clair County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** St. Clair County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified St. Clair County of the PBM services Express Scripts provides and St. Clair County began receiving those services on January 1, 2006. *See id.* Inasmuch as St. Clair County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), St. Clair County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. St. Clair County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** St. Clair County filed its original complaint on April 19, 2017. *See People of the State of Illinois et al. v. Purdue Pharma LP et al.*, Case No. 1:17-op-45048-DAP, ECF No. 1-1. Despite filing its case years ago, St. Clair County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating St. Clair County's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Clair County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Clair County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Clair County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, St. Clair County has *never* served a Plaintiff Fact Sheet. St. Clair County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. St. Clair County's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Clair County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Clair County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** St. Clair County seeks leave to amend to add claims against the PBMs in two cases: *People of the State of Illinois, et al. v. Purdue Pharma LP, et al.*, No. 1:17-OP-45048-DAP; *People of the State of Illinois, et al. v. Teva Pharmaceuticals USA, Inc.,*

*et al.*, No. 1:19-OP-45055-DAP. St. Clair County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling v. Ingram Barge Co., LLC*, 2023 WL 5120238, at *2–4 (M.D. Tenn. Aug. 9, 2023) (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff Filed a Separate PBM Case.** St. Clair County previously filed an opioid case outside the MDL against the PBMs on December 15, 2023. *See St. Clair County v. Evernorth Health, Inc. et al.*, Case No. 3:24-cv-00189 (S.D. Ill.), ECF No. 1-1. St. Clair County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF No. 31. By suing the PBMs outside the MDL in 2023, St. Clair County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for St. Clair County's proposed RICO claim against the PBMs has expired. St. Clair County filed its original complaint on April 19, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See People of the State of Illinois et al. v. Purdue Pharma LP et al.*, Case No. 1:17-op-45048-DAP, ECF No. 1-1. Even assuming *arguendo* that St. Clair County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 19, 2021. St. Clair County's RICO claim is therefore time-barred. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Clair County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Clair County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 45. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45049-DAP: Plaintiff Jersey County, Illinois

Jersey County's untimely motion for leave to amend should be denied for several reasons. Jersey County failed to provide notice of its proposed amendments through a proposed complaint. Jersey County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jersey County's motion should be denied due to futility, as Jersey County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jersey County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jersey County amended its complaint on March 11, 2019, after transfer to the MDL on December 13, 2017. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45049-DAP, ECF No. 69. Unlike many other plaintiffs, Jersey County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jersey County's deadline to amend was in 2019. Jersey County waited five years after its deadline to

amend to seek leave to assert claims against the PBMs. Jersey County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**<u>Prior Notice Through Counsel.</u>** Jersey County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jersey County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jersey County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jersey County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Jersey County). That insignificant dispensing volume is much too

low to support a finding of good cause for Jersey County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jersey County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jersey County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jersey County filed its original complaint on August 11, 2017. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45049-DAP, ECF No. 1. Despite filing its case years ago, Jersey County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jersey County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jersey County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jersey County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jersey County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jersey County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jersey County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jersey County's proposed RICO claim against the PBMs has expired. Jersey County filed its original complaint on August 11, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45049-DAP, ECF No. 1. It is therefore indisputable that Jersey County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Jersey County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jersey County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jersey County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 46. *People of State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45050-DAP: Plaintiff Alexander County, Illinois

Alexander County's untimely motion for leave to amend should be denied for several reasons. Alexander County failed to provide notice of its proposed amendments through a proposed complaint. Alexander County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alexander County's motion should be denied due to futility, as Alexander County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alexander County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Alexander County first amended its complaint on November 9, 2017. *See People of State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45050-DAP, ECF No. 66. Alexander County amended its complaint again on March 6, 2019. *See People of State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45050-DAP, ECF No. 72. Unlike many other plaintiffs, Alexander County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Alexander County's deadline to amend was in 2019. Alexander County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Alexander County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information

[she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Alexander County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Alexander County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Alexander County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alexander County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Alexander County). That insignificant dispensing volume is much too low to support a finding of good cause for Alexander County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alexander County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alexander County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alexander County's proposed RICO claim against the PBMs has expired. Alexander County filed its original complaint on August 17, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45050-DAP, ECF No. 1. It is therefore indisputable that Alexander County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Alexander County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alexander County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alexander County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **47.**   ***Wyoming County Commission v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45051-DAP: Plaintiff Wyoming County, West Virginia**

Wyoming County's untimely motion for leave to amend should be denied for several reasons. Wyoming County failed to provide notice of its proposed amendments through a proposed complaint. Wyoming County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wyoming County's motion should be denied due to futility, as Wyoming County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in West Virginia, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wyoming County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wyoming County filed its original complaint on April 12, 2017 and the case was transferred to the MDL on December 13, 2017. *See Wyoming County Commission v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45051-DAP, ECF No. 72. Wyoming County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Wyoming County elected not to do so. Instead, Wyoming County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wyoming County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wyoming County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wyoming County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wyoming County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wyoming County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Wyoming County). That insignificant dispensing volume is much too low to support a finding of good cause for Wyoming County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wyoming County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wyoming County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wyoming County filed its original complaint on April 12, 2017. *See Wyoming County Commission v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45051-DAP, ECF No. 1. Despite filing its case years ago, Wyoming County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wyoming County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wyoming County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wyoming County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wyoming County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Wyoming County has *never* served a Plaintiff Fact Sheet. Wyoming County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Wyoming County's failure to diligently prosecute its case negates any

finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under West Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wyoming County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under West Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wyoming County, a municipality in West Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Wyoming County is a plaintiff in West Virginia. Wyoming County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because West Virginia's public nuisance law does not extend to "the sale, distribution, and manufacture of opioids." *Huntington*, 609 F. Supp. 3d at 475; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Wyoming County's proposed RICO claim against the PBMs has expired. Wyoming County filed its original complaint on April 12, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against

389

the PBMs. *See Wyoming County Commission v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45051-DAP, ECF No. 1. Even assuming *arguendo* that Wyoming County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 12, 2021. Wyoming County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wyoming County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wyoming County, a municipality in West Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 48. *Fiscal Court of Oldham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45067-DAP: Plaintiff Oldham County, Kentucky

Oldham County's untimely motion for leave to amend should be denied for several reasons. Oldham County failed to provide notice of its proposed amendments through a proposed complaint. Oldham County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oldham County's motion should be denied due to futility, as Oldham County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oldham County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Oldham County first amended its complaint on October 3, 2017. *See Fiscal Court of Oldham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45067-DAP, ECF No. 5. Oldham County amended its complaint again on March 9, 2019. *See Fiscal Court of Oldham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45067-DAP, ECF No. 25. Unlike many other plaintiffs, Oldham County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Oldham County's deadline to amend was in 2019. Oldham County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Oldham County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Oldham County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Oldham County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Oldham County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of

leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oldham County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Oldham County). That insignificant dispensing volume is much too low to support a finding of good cause for Oldham County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Oldham County violated its basic duty to implement a timely litigation hold. Oldham County filed its original complaint on September 25, 2017, but waited until July 23, 2018 to implement a litigation hold—ten months later. *See Fiscal Court of Oldham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45067-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 23, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Oldham County's case would force the parties and the Court to waste time and resources ascertaining the extent of Oldham County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Oldham County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Oldham County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oldham County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Oldham County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oldham County's proposed RICO claim against the PBMs has expired. Oldham County filed its original complaint on September 25, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Oldham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45067-DAP, ECF No. 1. It is therefore indisputable that Oldham County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Oldham County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oldham County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Oldham County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **49.** ***Fiscal Court of Henderson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45069-DAP: Plaintiff Henderson County, Kentucky**

Henderson County's untimely motion for leave to amend should be denied for several reasons. Henderson County failed to provide notice of its proposed amendments through a proposed complaint. Henderson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Henderson County's motion should be denied due to futility, as Henderson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Henderson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Henderson County first amended its complaint on October 3, 2017. *See Fiscal Court of Henderson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45069-DAP, ECF No. 5. Henderson County amended its complaint again on March 9, 2019. *See Fiscal Court of Henderson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45069-DAP, ECF No. 24. Unlike many other plaintiffs, Henderson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Henderson County's deadline to amend was in 2019. Henderson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Henderson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information

[she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Henderson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Henderson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Henderson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Henderson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Henderson County). That insignificant dispensing volume is much too low to support a finding of good cause for Henderson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Henderson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Henderson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Henderson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Henderson County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Henderson County's proposed RICO claim against the PBMs has expired. Henderson County filed its original complaint on September 29, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Henderson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45069-DAP, ECF No. 1. It is therefore indisputable that Henderson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Henderson County's RICO claim is therefore

time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Henderson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Henderson County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**50.** *Fiscal Court of Christian County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:17-op-45070-DAP: Plaintiff Christian County, Kentucky**

Christian County's untimely motion for leave to amend should be denied for several reasons. Christian County failed to provide notice of its proposed amendments through a proposed complaint. Christian County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Christian County's motion should be denied due to futility, as Christian County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Christian County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Christian County first amended its complaint on October 3, 2017. *See Fiscal Court of Christian County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45070-DAP, ECF No. 4. Christian County amended its complaint again on March 8, 2019. *See Fiscal Court of Christian County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45070-DAP, ECF No. 23. Unlike many other plaintiffs, Christian County declined to add claims against the PBMs in its

amended complaints. *See* Section II.A.1, above. Christian County's deadline to amend was in 2019. Christian County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Christian County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Christian County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Christian County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Christian County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Christian County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.08% market share for Christian County). That insignificant dispensing volume is much too low to support a finding of good cause for Christian County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Christian County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Christian County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Christian County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Christian County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Christian County's proposed RICO claim against the PBMs has expired. Christian County filed its original complaint on September 25, 2017, alleging the same type of injuries *and* alleging a RICO claim against other

defendants. *See Fiscal Court of Christian County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45070-DAP, ECF No. 1. It is therefore indisputable that Christian County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Christian County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Christian County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Christian County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 51. *Fiscal Court of Marshall County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45071-DAP: Plaintiff Marshall County, Kentucky

Marshall County's untimely motion for leave to amend should be denied for several reasons. Marshall County failed to provide notice of its proposed amendments through a proposed complaint. Marshall County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marshall County's motion should be denied due to futility, as Marshall County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marshall County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Marshall County first amended its complaint on October 3, 2017. *See Fiscal Court of Marshall County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45071-DAP, ECF No. 4. Marshall County amended its complaint again on March 9, 2019. *See Fiscal Court of Marshall County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45071-DAP, ECF No. 23. Unlike many other plaintiffs, Marshall County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Marshall County's deadline to amend was in 2019. Marshall County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marshall County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marshall County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Marshall County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marshall County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of

leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marshall County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Marshall County). That insignificant dispensing volume is much too low to support a finding of good cause for Marshall County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Marshall County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Marshall County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Marshall County of this deficiency on September 16, 2024 (*see* Exhibit B), but Marshall County refused to amend or supplement its Fact Sheet. Under this Court's orders, Marshall County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Marshall County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Marshall County's potential claims against them. Marshall County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marshall County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marshall County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marshall County's proposed RICO claim against the PBMs has expired. Marshall County filed its original complaint on September 25, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Marshall County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45071-DAP, ECF No. 1. It is therefore indisputable that Marshall County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Marshall County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marshall County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

52. ***People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45078-DAP: Plaintiff Christian County, Illinois**

Christian County's untimely motion for leave to amend should be denied for several reasons. Christian County failed to provide notice of its proposed amendments through a proposed complaint. Christian County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Christian County's motion should be denied due to futility, as Christian County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Christian County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Christian County amended its complaint on March 6, 2019, after transfer to the MDL on December 18, 2017. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45078-DAP, ECF No. 11. Unlike many other plaintiffs, Christian County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Christian County's deadline to amend was in 2019. Christian County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Christian County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Christian County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Christian County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Christian County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Christian County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Christian County). That insignificant dispensing volume is much too low to support a finding of good cause for Christian County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Christian County violated its basic duty to implement a timely litigation hold. Christian County filed its original complaint on November 14, 2017, but waited until September 25, 2024 to implement a litigation hold—nearly seven years

later. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45078-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Christian County's case would force the parties and the Court to waste time and resources ascertaining the extent of Christian County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Christian County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Christian County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Christian County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Christian County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Christian County's proposed RICO claim against the PBMs has expired. Christian County filed its original complaint on November 14, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45078-DAP, ECF No. 1. It is therefore indisputable that Christian County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Christian County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Christian County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Christian County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 53. *City of Fort Payne, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45079-DAP: Plaintiff Fort Payne City, Alabama

Fort Payne City's untimely motion for leave to amend should be denied for several reasons. Fort Payne City failed to provide notice of its proposed amendments through a proposed complaint. Fort Payne City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fort Payne City's motion should be denied due to futility, as Fort Payne City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance

claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fort Payne City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fort Payne City amended its complaint on March 13, 2019, after transfer to the MDL on December 18, 2017. *See City of Fort Payne, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45079-DAP, ECF No. 26. Unlike many other plaintiffs, Fort Payne City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fort Payne City's deadline to amend was in 2019. Fort Payne City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fort Payne City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fort Payne City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Fort Payne City). That insignificant dispensing volume is much too low to support a finding of good cause for Fort Payne City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fort Payne City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fort Payne City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fort Payne City filed its original complaint on November 8, 2017, but waited until March 13, 2018 to implement a litigation hold. *See City of Fort Payne, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45079-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: March 13, 2018). Fort Payne City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fort Payne City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fort Payne City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fort Payne City's proposed RICO claim against the PBMs has expired. Fort Payne City filed its original complaint on November 8, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Fort Payne, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45079-DAP, ECF No. 1. It is therefore indisputable that Fort Payne City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Fort Payne City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fort Payne City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Fort Payne City's public-nuisance claim against the PBMs is therefore time-barred because Fort Payne City sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on November 8, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Fort Payne City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 54. *St. Louis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45083-DAP: Plaintiff St. Louis County, Missouri

St. Louis County's untimely motion for leave to amend should be denied for several reasons. St. Louis County failed to provide notice of its proposed amendments through a proposed complaint. St. Louis County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Louis County's motion should be denied due to futility, as St. Louis County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Louis County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Louis County first amended its complaint on May 25, 2018. *See St. Louis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45083-DAP, ECF No. 32. St. Louis County amended its complaint again on March 15, 2019. *See St. Louis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45083-DAP, ECF No. 36. Unlike many other plaintiffs, St. Louis County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. St. Louis County's deadline to amend was in 2019. St. Louis County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Louis County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because

plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Louis County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for St. Louis County). That insignificant dispensing volume is much too low to support a finding of good cause for St. Louis County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Louis County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Louis County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** St. Louis County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified St. Louis County of the PBM services Express Scripts provides and St. Louis County began receiving those services on October 1, 2014. *See id.* Inasmuch as St. Louis County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), St. Louis County knew or should have known of the alleged

wrongful conduct more than nine years before moving to amend. *See* Section III.A.2, above. St. Louis County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** St. Louis County filed its original complaint on November 10, 2017. *See St. Louis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45083-DAP, ECF No. 1. Despite filing its case years ago, St. Louis County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Louis County's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Louis County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Louis County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Louis County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, St. Louis County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to St. Louis County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified St. Louis County of this deficiency on September 16, 2024 (*see* Exhibit B), but

St. Louis County refused to amend or supplement its Fact Sheet. Under this Court's orders, St. Louis County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. St. Louis County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against St. Louis County's potential claims against them. St. Louis County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Louis County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Louis County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Louis County's proposed RICO claim against the PBMs has expired. St. Louis County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See St. Louis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45083-

DAP, ECF No. 32. It is therefore indisputable that St. Louis County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. Louis County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Louis County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Louis County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 55. *Boyd County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45084-DAP: Plaintiff Boyd County, Kentucky

Boyd County's untimely motion for leave to amend should be denied for several reasons. Boyd County failed to provide notice of its proposed amendments through a proposed complaint. Boyd County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Boyd County's motion should be denied due to futility, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Boyd County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Boyd County first amended its complaint on October 3, 2017. *See Boyd County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45084-DAP, ECF No. 6. Boyd

County amended its complaint again on March 14, 2019. *See Boyd County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45084-DAP, ECF No. 27. Unlike many other plaintiffs, Boyd County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Boyd County's deadline to amend was in 2019. Boyd County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Boyd County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Boyd County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Boyd County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Boyd County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

416

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Boyd County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Boyd County). That insignificant dispensing volume is much too low to support a finding of good cause for Boyd County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Boyd County filed its original complaint on September 25, 2017. *See Boyd County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45084-DAP, ECF No. 1. Despite filing its case years ago, Boyd County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Boyd County's case would force the parties and the Court to waste time and resources ascertaining the extent of Boyd County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Boyd County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Boyd County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Boyd County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Boyd County's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Boyd County of this deficiency on September 16, 2024 (*see* Exhibit B), but Boyd County refused to amend or supplement its Fact Sheet. Under this Court's orders, Boyd County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Boyd County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Boyd County's potential claims against them. Boyd County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Boyd County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Boyd County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Boyd County's proposed RICO claim against the PBMs has expired. Boyd County filed its original complaint on September

25, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Boyd County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45084-DAP, ECF No. 1. It is therefore indisputable that Boyd County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Boyd County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Boyd County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Boyd County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **56.** ***County of Upshur v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45085-DAP: Plaintiff Upshur County, Texas**

Upshur County's untimely motion for leave to amend should be denied for several reasons. Upshur County failed to provide notice of its proposed amendments through a proposed complaint. Upshur County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Upshur County's motion should be denied due to futility, as Upshur County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Upshur County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Upshur County amended its complaint on March 14, 2019, after transfer to the MDL on December 15, 2017. *See County of Upshur v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45085-DAP, ECF No. 78. Unlike many other plaintiffs, Upshur County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Upshur County's deadline to amend was in 2019. Upshur County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Upshur County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Upshur County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Upshur County). That insignificant dispensing volume is much too low to support a finding of good cause for Upshur County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Upshur County filed its original complaint on September 29, 2017. *See County of Upshur v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45085-DAP, ECF No. 1. Despite filing its case years ago, Upshur County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Upshur County's case would force the parties and the Court to waste time and resources ascertaining the extent of Upshur County's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Upshur County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Upshur County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Upshur County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Upshur County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Upshur County's proposed RICO claim against the PBMs has expired. Upshur County filed its original complaint on September 29, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Upshur v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45085-DAP, ECF No. 1. It is therefore indisputable that Upshur County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Upshur County's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Upshur County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Upshur County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **57.** ***County of Morris v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45086-DAP: Plaintiff Morris County, Texas**

Morris County's untimely motion for leave to amend should be denied for several reasons. Morris County failed to provide notice of its proposed amendments through a proposed complaint. Morris County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Morris County's motion should be denied due to futility, as Morris County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Morris County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Morris County amended its complaint on March 14, 2019, after transfer to the MDL on December 15, 2017. *See County of Morris v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45086-DAP, ECF No. 57. Unlike many other plaintiffs, Morris County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Morris County's deadline to amend was in 2019. Morris County waited five years after its deadline to amend to seek leave to assert claims against

the PBMs. Morris County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Morris County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Morris County). That insignificant dispensing volume is much too low to support a finding of good cause for Morris County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Morris County filed its original complaint on November 3, 2017. *See County of Morris v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45086-DAP, ECF No. 1. Despite filing its case years ago, Morris County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Morris County's case would force the parties and the Court to waste time and resources ascertaining the extent of Morris County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Morris County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Morris County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Morris County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Morris County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Morris County's proposed RICO claim against the PBMs has expired. Morris County filed its original complaint on November 3, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Morris v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45086-DAP, ECF No. 1. It is therefore indisputable that Morris County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Morris County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Morris County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Morris County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **58.** ***Fiscal Court of Greenup County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45088-DAP: Plaintiff Greenup County, Kentucky**

Greenup County's untimely motion for leave to amend should be denied for several reasons. Greenup County failed to provide notice of its proposed amendments through a proposed complaint. Greenup County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greenup County's motion should be denied due to futility, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greenup County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greenup County first amended its complaint on October 3, 2017. *See Fiscal Court of Greenup County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45088-DAP, ECF No. 9. Greenup County amended its complaint again on March 9, 2019. *See Fiscal Court of Greenup County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45088-DAP, ECF No. 28. Unlike many other plaintiffs, Greenup County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Greenup County's deadline to amend was in 2019. Greenup County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Greenup County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Greenup County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Greenup County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Greenup County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Greenup County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Greenup County). That insignificant dispensing volume is much too low to support a finding of good cause for Greenup County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Greenup County filed its original complaint on September 25, 2017. *See Fiscal Court of Greenup County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45088-DAP, ECF No. 1. Despite filing its case years ago, Greenup County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Greenup County's case would force the parties and the Court to waste time and resources ascertaining the extent of Greenup County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Greenup County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Greenup County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greenup County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greenup County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greenup County's proposed RICO claim against the PBMs has expired. Greenup County filed its original complaint on September 25, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Greenup County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45088-DAP, ECF No. 1. It is therefore indisputable that Greenup County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Greenup County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greenup County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Greenup County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

59.    *Fiscal Court of Kenton County v. Amerisourcebergen Drug Corporation et al., Case No. 1:17-op-45089-DAP: Plaintiff Kenton County, Kentucky*

Kenton County's untimely motion for leave to amend should be denied for several reasons. Kenton County failed to provide notice of its proposed amendments through a proposed complaint. Kenton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kenton County's motion should be denied due to futility, as Kenton County does not assert any allegations tying the

PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kenton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kenton County first amended its complaint on October 30, 2017. *See Fiscal Court of Kenton County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45089-DAP, ECF No. 16. Kenton County amended its complaint again on March 9, 2019. *See Fiscal Court of Kenton County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45089-DAP, ECF No. 29. Unlike many other plaintiffs, Kenton County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Kenton County's deadline to amend was in 2019. Kenton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kenton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Kenton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Kenton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Kenton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own

attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kenton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Kenton County). That insignificant dispensing volume is much too low to support a finding of good cause for Kenton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kenton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kenton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kenton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kenton County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kenton County's proposed RICO claim against the PBMs has expired. Kenton County filed its original complaint on September 29, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Kenton County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45089-DAP, ECF No. 1. It is therefore indisputable that Kenton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Kenton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kenton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kenton County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**60.** ***Jessamine County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45090-DAP: Plaintiff Jessamine County, Kentucky**

Jessamine County's untimely motion for leave to amend should be denied for several reasons. Jessamine County failed to provide notice of its proposed amendments through a proposed complaint. Jessamine County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jessamine County's motion should be denied due to futility, as Jessamine County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jessamine County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jessamine County amended its complaint on March 15, 2019, after transfer to the MDL on December 18, 2017, as well as on March 18, 2019. *See Jessamine County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45090-DAP, ECF Nos. 19, 20. Unlike many other plaintiffs, Jessamine County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Jessamine County's deadline to amend was in 2019. Jessamine County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jessamine County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jessamine County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

432

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jessamine County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jessamine County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jessamine County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Jessamine County). That insignificant dispensing volume is much too low to support a finding of good cause for Jessamine County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jessamine County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Jessamine County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jessamine County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jessamine County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jessamine County's proposed RICO claim against the PBMs has expired. Jessamine County filed its original complaint on November 7, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jessamine County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45090-DAP, ECF No. 1. It is therefore indisputable that Jessamine County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Jessamine County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jessamine County's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jessamine County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **61.** ***Lexington-Fayette Urban County Government v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45092-DAP: Plaintiff Lexington-Fayette Urban County, Kentucky**

Lexington-Fayette Urban County's untimely motion for leave to amend should be denied for several reasons. Lexington-Fayette Urban County failed to provide notice of its proposed amendments through a proposed complaint. Lexington-Fayette Urban County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lexington-Fayette Urban County's motion should be denied due to futility, as Lexington-Fayette Urban County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lexington-Fayette Urban County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lexington-Fayette Urban County amended its complaint on March 8, 2019, after transfer to the MDL on December 18, 2017. *See Lexington-Fayette Urban County Government v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45092-DAP, ECF No. 18. Unlike many other plaintiffs, Lexington-Fayette Urban County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lexington-Fayette Urban County's deadline to amend was in 2019. Lexington-Fayette Urban County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lexington-Fayette Urban

County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lexington-Fayette Urban County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lexington-Fayette Urban County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lexington-Fayette Urban County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lexington-Fayette Urban County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Lexington-Fayette Urban County). That

insignificant dispensing volume is much too low to support a finding of good cause for Lexington-Fayette Urban County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lexington-Fayette Urban County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lexington-Fayette Urban County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lexington-Fayette Urban County violated its basic duty to implement a timely litigation hold. Lexington-Fayette Urban County filed its original complaint on November 9, 2017, but waited until December 13, 2018 to implement a litigation hold—one year later. *See Lexington-Fayette Urban County Government v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45092-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lexington-Fayette Urban County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lexington-Fayette Urban County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lexington-Fayette Urban County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lexington-Fayette Urban County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time

resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lexington-Fayette Urban County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lexington-Fayette Urban County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lexington-Fayette Urban County's proposed RICO claim against the PBMs has expired. Lexington-Fayette Urban County filed its original complaint on November 9, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lexington-Fayette Urban County Government v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45092-DAP, ECF No. 1. It is therefore indisputable that Lexington-Fayette Urban County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Lexington-Fayette Urban County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lexington-Fayette Urban County's request

for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lexington-Fayette Urban County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 62.  *Adams County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45093-DAP: Plaintiff Adams County, Wisconsin

Adams County's untimely motion for leave to amend should be denied for several reasons. Adams County failed to provide notice of its proposed amendments through a proposed complaint. Adams County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Adams County's motion should be denied due to futility, as Adams County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Adams County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Adams County first amended its complaint on May 25, 2018. *See Adams County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45093-DAP, ECF No. 7. Adams County amended its complaint again on March 15, 2019. *See Adams County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45093-DAP, ECF No. 9. Unlike many other plaintiffs, Adams County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Adams County's deadline to amend was in 2019. Adams County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Adams County's lack of diligence in pursuing its claims negates any finding of

good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Adams County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Adams County). That insignificant dispensing volume is much too low to support a finding of good cause for Adams County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Adams County filed its original complaint on November 7, 2017. *See Adams County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45093-DAP, ECF No. 1. Despite filing its case years ago, Adams County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Adams County's case would force the parties and the Court to waste time and resources ascertaining the extent of Adams County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Adams County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Adams County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Adams County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Adams County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Adams County of this deficiency on September 16, 2024 (*see* Exhibit B), but Adams County refused to amend or supplement its Fact Sheet. Under this Court's orders, Adams County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Adams County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Adams County's potential claims against them. Adams County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Adams County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Adams County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Adams County's proposed RICO claim against the PBMs has expired. Adams County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adams County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45093-DAP, ECF No. 7. It is therefore indisputable that Adams County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Adams County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Adams County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Adams County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

63. ***Scott County Indiana Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45094-DAP: Plaintiff Scott County, Indiana**

Scott County's untimely motion for leave to amend should be denied for several reasons. Scott County failed to provide notice of its proposed amendments through a proposed complaint. Scott County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scott County's motion should be denied due to futility, as Scott County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scott County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scott County amended its complaint on March 15, 2019, after transfer to the MDL on December 18, 2017. *See Scott County Indiana Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45094-DAP, ECF No. 25. Unlike many other plaintiffs, Scott County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Scott County's deadline to amend was in 2019. Scott County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scott County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Scott County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Scott County). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against

443

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scott County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Scott County filed its original complaint on September 11, 2017. *See Scott County Indiana Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45094-DAP, ECF No. 1-1. Despite filing its case years ago, Scott County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Scott County's case would force the parties and the Court to waste time and resources ascertaining the extent of Scott County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Scott County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Scott County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Indiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scott County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Indiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scott County, a municipality in Indiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scott County's proposed RICO claim against the PBMs has expired. Scott County filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Scott County Indiana Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45094-DAP, ECF No. 25. It is therefore indisputable that Scott County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Scott County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scott County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Scott County, a municipality in Indiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 64. *Marathon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45095-DAP: Plaintiff Marathon County, Wisconsin

Marathon County's untimely motion for leave to amend should be denied for several reasons. Marathon County failed to provide notice of its proposed amendments through a proposed complaint. Marathon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marathon County's motion should be denied due to futility, as Marathon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marathon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marathon County first amended its complaint on May 25, 2018. *See Marathon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45095-DAP, ECF No. 6. Marathon County amended its complaint again on March 15, 2019. *See Marathon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45095-DAP, ECF No. 10. Unlike many other plaintiffs, Marathon County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Marathon County's deadline to amend was in 2019. Marathon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marathon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because

plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marathon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Marathon County). That insignificant dispensing volume is much too low to support a finding of good cause for Marathon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Marathon County violated its basic duty to implement a timely litigation hold. Marathon County filed its original complaint on November 7, 2017, but waited until May 11, 2018 to implement a litigation hold—six months later. *See Marathon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45095-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 11, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marathon County's case would force the parties and the Court to waste time and resources ascertaining the extent of Marathon County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marathon County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marathon County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marathon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marathon County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marathon County's proposed RICO claim against the PBMs has expired. Marathon County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marathon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45095-DAP, ECF No. 6. It is therefore indisputable that Marathon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marathon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marathon County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marathon County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

65. *Tallapoosa County, Alabama v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:17-op-45097-DAP: Plaintiff Tallapoosa County, Alabama**

Tallapoosa County's untimely motion for leave to amend should be denied for several reasons. Tallapoosa County failed to provide notice of its proposed amendments through a proposed complaint. Tallapoosa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tallapoosa County's motion should be denied due to futility, as Tallapoosa County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tallapoosa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tallapoosa County amended its complaint on March 8, 2019, after transfer to the MDL on December 18, 2017. *See Tallapoosa County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45097-DAP, ECF No. 7. Unlike many other plaintiffs, Tallapoosa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tallapoosa County's deadline to amend was in 2019. Tallapoosa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tallapoosa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

449

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Tallapoosa County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty, & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Tallapoosa County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tallapoosa County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tallapoosa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Tallapoosa County). That insignificant dispensing volume is much too low to support a finding of good cause for Tallapoosa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tallapoosa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tallapoosa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tallapoosa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tallapoosa County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tallapoosa County's proposed RICO claim against the PBMs has expired. Tallapoosa County filed its original complaint on November 8, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Tallapoosa County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45097-DAP, ECF No. 1. It is therefore indisputable that Tallapoosa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Tallapoosa County's RICO claim is therefore time-

barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tallapoosa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Tallapoosa County's public-nuisance claim against the PBMs is therefore time-barred because Tallapoosa County sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on November 8, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tallapoosa County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Tallapoosa County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

66. ***Sauk County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45098-DAP: Plaintiff Sauk County, Wisconsin**

Sauk County's untimely motion for leave to amend should be denied for several reasons. Sauk County failed to provide notice of its proposed amendments through a proposed complaint.

Sauk County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sauk County's motion should be denied due to futility, as Sauk County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sauk County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sauk County first amended its complaint on May 25, 2018. *See Sauk County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45098-DAP, ECF No. 6. Sauk County amended its complaint again on March 15, 2019. *See Sauk County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45098-DAP, ECF No. 8. Unlike many other plaintiffs, Sauk County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Sauk County's deadline to amend was in 2019. Sauk County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sauk County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sauk County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Sauk County). That insignificant dispensing volume is much too low to support a finding of good cause for Sauk County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sauk County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sauk County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Sauk County violated its basic duty to implement a timely litigation hold. Sauk County filed its original complaint on November 7, 2017, but waited until May 11, 2018 to implement a litigation hold—six months later. *See Sauk County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45098-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 11, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sauk County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sauk County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sauk County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sauk County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sauk County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sauk County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sauk County's proposed RICO claim against the PBMs has expired. Sauk County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sauk County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45098-DAP, ECF No. 6. It is therefore indisputable that Sauk County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sauk County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sauk County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sauk County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 67. *Iowa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45099-DAP: Plaintiff Iowa County, Wisconsin

Iowa County's untimely motion for leave to amend should be denied for several reasons. Iowa County failed to provide notice of its proposed amendments through a proposed complaint. Iowa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Iowa County's motion should be denied due to futility, as Iowa County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Iowa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Iowa County first amended its complaint on May 25, 2018. *See Iowa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45099-DAP, ECF No. 7. Iowa County amended its complaint again on March 15, 2019. *See Iowa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45099-DAP, ECF No. 9. Unlike many other plaintiffs, Iowa County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Iowa County's deadline to amend was in 2019. Iowa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Iowa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Iowa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Iowa County). That insignificant dispensing volume is much too low to support a finding of good cause for Iowa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Iowa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Iowa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Iowa County filed its original complaint on November 7, 2017. *See Iowa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45099-DAP, ECF No. 1. Despite filing its case years ago, Iowa County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Iowa County's case would force the parties and the Court to waste time and resources ascertaining the extent of Iowa County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that

failed to implement litigation holds until 2024. The PBMs are prejudiced by Iowa County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Iowa County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Iowa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Iowa County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Iowa County's proposed RICO claim against the PBMs has expired. Iowa County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Iowa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45099-DAP, ECF No. 7. It is therefore indisputable that Iowa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Iowa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13

(holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Iowa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Iowa County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **68.** *Luzerne County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45100-DAP: Plaintiff Luzerne County, Pennsylvania

Luzerne County's untimely motion for leave to amend should be denied for several reasons. Luzerne County failed to provide notice of its proposed amendments through a proposed complaint. Luzerne County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Luzerne County's motion should be denied due to futility, as Luzerne County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Luzerne County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Luzerne County amended its complaint on March 13, 2019, after transfer to the MDL on December 19, 2017. *See Luzerne County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45100-DAP, ECF No. 10. Unlike many other plaintiffs, Luzerne County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Luzerne County's deadline

to amend was in 2019. Luzerne County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Luzerne County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Luzerne County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Baron & Budd, P.C.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Luzerne County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Luzerne County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Luzerne County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Luzerne County). That insignificant dispensing volume is much too

low to support a finding of good cause for Luzerne County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Luzerne County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Luzerne County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Luzerne County violated its basic duty to implement a timely litigation hold. Luzerne County filed its original complaint on November 8, 2017, but waited until September 23, 2024 to implement a litigation hold—nearly seven years later. *See Luzerne County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45100-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 23, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Luzerne County's case would force the parties and the Court to waste time and resources ascertaining the extent of Luzerne County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Luzerne County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Luzerne County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Luzerne County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Luzerne County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Luzerne County of this deficiency on September 16, 2024 (*see* Exhibit B), but Luzerne County refused to amend or supplement its Fact Sheet. Under this Court's orders, Luzerne County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Luzerne County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Luzerne County's potential claims against them. Luzerne County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Luzerne County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Luzerne County, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Luzerne County's proposed RICO claim against the PBMs has expired. Luzerne County filed its original complaint on November 8, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Luzerne County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45100-DAP, ECF No. 1. It is therefore indisputable that Luzerne County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Luzerne County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Luzerne County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Luzerne County, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 69. *City of Gadsden, Alabama et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45101-DAP: Plaintiff Etowah County, Alabama

Etowah County's untimely motion for leave to amend should be denied for several reasons. Etowah County failed to provide notice of its proposed amendments through a proposed complaint. Etowah County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Etowah County's motion should be denied due to futility, as Etowah County does not assert any allegations tying

the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Etowah County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Etowah County amended its complaint on March 15, 2019, after transfer to the MDL on December 19, 2017, as well as on March 15, 2019. *See City of Gadsden, Alabama et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45101-DAP, ECF Nos. 5, 6. Unlike many other plaintiffs, Etowah County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Etowah County's deadline to amend was in 2019. Etowah County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Etowah County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Etowah County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Etowah County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Etowah County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming

464

denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Etowah County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Etowah County). That insignificant dispensing volume is much too low to support a finding of good cause for Etowah County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Etowah County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Etowah County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Etowah County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Etowah County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Etowah County's proposed RICO claim against the PBMs has expired. Etowah County filed its original complaint on October 25, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Gadsden, Alabama et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45101-DAP, ECF No. 1. It is therefore indisputable that Etowah County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Etowah County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Etowah County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Etowah County's public-nuisance claim against the PBMs is therefore time-barred because Etowah County sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on October 25, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Etowah County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Etowah County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 70.    *City of Gadsden, Alabama et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45101-DAP: Plaintiff Gadsden City, Alabama

Gadsden City's untimely motion for leave to amend should be denied for several reasons. Gadsden City failed to provide notice of its proposed amendments through a proposed complaint. Gadsden City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gadsden City's motion should be denied due to futility, as Gadsden City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gadsden City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gadsden City amended its complaint on March 15, 2019, after transfer to the MDL on December 19, 2017, as well as on March 15, 2019. *See City of Gadsden, Alabama et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45101-DAP, ECF Nos. 5, 6. Unlike many other

plaintiffs, Gadsden City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Gadsden City's deadline to amend was in 2019. Gadsden City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Gadsden City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

      **Prior Notice Through Counsel.** Gadsden City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Gadsden City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Gadsden City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

      **OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gadsden City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.02% market share for Gadsden City). That insignificant dispensing volume is much too low to support a finding of good cause for Gadsden City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Gadsden City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Gadsden City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gadsden City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gadsden City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Gadsden City's proposed RICO claim against the PBMs has expired. Gadsden City filed its original complaint on October 25, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Gadsden, Alabama et al. v. Amerisourcebergen Drug Corporation et al.*, Case No.

1:17-op-45101-DAP, ECF No. 1. It is therefore indisputable that Gadsden City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Gadsden City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gadsden City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Gadsden City's public-nuisance claim against the PBMs is therefore time-barred because Gadsden City sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on October 25, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Gadsden City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 71. *County of Wayne et al. v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45102-DAP: Plaintiff Oakland County, Michigan

Oakland County's untimely motion for leave to amend should be denied for several reasons. Oakland County failed to provide notice of its proposed amendments through a proposed complaint. Oakland County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oakland County's motion should be denied due to futility, as Oakland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oakland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oakland County amended its complaint on March 15, 2019, after transfer to the MDL on December 20, 2017. *See County of Wayne et al. v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45102-DAP, ECF No. 42. Unlike many other plaintiffs, Oakland County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Oakland County's deadline to amend was in 2019. Oakland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Oakland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oakland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Oakland County). That insignificant dispensing volume is much too low to support a finding of good cause for Oakland County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Oakland County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Oakland County of the PBM services Express Scripts provides and Oakland County began receiving those services on January 1, 2006. *See id.* Inasmuch as Oakland County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Oakland County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Oakland County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Oakland County filed its original complaint on October 12, 2017. *See County of Wayne et al. v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45102-DAP, ECF No. 1. Despite filing its case years ago, Oakland County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Oakland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Oakland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Oakland County's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Oakland County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oakland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Oakland County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oakland County's proposed RICO claim against the PBMs has expired. Oakland County filed its original complaint on October 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Wayne et al. v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45102-DAP, ECF No. 1. It is therefore indisputable that Oakland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Oakland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oakland County's request for leave to amend to add a RICO claim should

473

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Oakland County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 72. *People of the State of Illinois, et al. v. Amerisourcebergen Drug Corporation, et al.*, **Case No. 1:17-op-45103-DAP: Plaintiff Wabash County, Illinois**

Wabash County's untimely motion for leave to amend should be denied for several reasons. Wabash County failed to provide notice of its proposed amendments through a proposed complaint. Wabash County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wabash County's motion should be denied due to futility, as Wabash County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wabash County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wabash County amended its complaint on March 6, 2019, after transfer to the MDL on December 20, 2017. *See People of the State of Illinois, et al. v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:17-op-45103-DAP, ECF No. 18. Unlike many other plaintiffs, Wabash County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wabash County's deadline to amend was in 2019. Wabash County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wabash County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because

plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wabash County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wabash County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wabash County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wabash County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.22% market share for Wabash County). That insignificant dispensing volume is much too low to support a finding of good cause for Wabash County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wabash County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wabash County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wabash County's proposed RICO claim against the PBMs has expired. Wabash County filed its original complaint on October 26, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois, et al. v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:17-op-45103-DAP, ECF No. 1. It is therefore indisputable that Wabash County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Wabash County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wabash County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wabash County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 73. *Door County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45104-DAP: Plaintiff Door County, Wisconsin

Door County's untimely motion for leave to amend should be denied for several reasons. Door County failed to provide notice of its proposed amendments through a proposed complaint. Door County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Door County's motion should be denied due to futility, as Door County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Door County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Door County first amended its complaint on May 25, 2018. *See Door County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45104-DAP, ECF No. 7. Door County amended its complaint again on March 15, 2019. *See Door County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45104-DAP, ECF No. 9. Unlike many other plaintiffs, Door County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Door County's deadline to amend was in 2019. Door County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Door County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Door County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.20% market share for Door County). That insignificant dispensing volume is much too low to support a finding of good cause for Door County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Door County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Door County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Door County filed its original complaint on November 7, 2017, but waited until April 28, 2018 to implement a litigation hold. *See Door County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45104-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 28, 2018). Door County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Door County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Door County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Door County's proposed RICO claim against the PBMs has expired. Door County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Door County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45104-DAP, ECF No. 7. It is therefore indisputable that Door County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Door County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Door County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Door County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 74. *Laurel County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45105-DAP: Plaintiff Laurel County, Kentucky

Laurel County's untimely motion for leave to amend should be denied for several reasons. Laurel County failed to provide notice of its proposed amendments through a proposed complaint. Laurel County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Laurel County's motion should be denied due to futility, as Laurel County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Laurel County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Laurel County first amended its complaint on October 4, 2017. *See Laurel County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45105-DAP, ECF No. 4. Laurel County amended its complaint again on March 14, 2019. *See Laurel County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45105-DAP, ECF No. 27. Unlike many other plaintiffs, Laurel County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Laurel County's deadline to amend was in 2019. Laurel County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Laurel County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Laurel County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Laurel County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Laurel County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Laurel County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Laurel County). That insignificant dispensing volume is much too low to support a finding of good cause for Laurel County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Laurel County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Laurel County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Laurel County filed its original complaint on September 29, 2017. *See Laurel County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45105-DAP, ECF No. 2. Despite filing its case years ago, Laurel County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Laurel County's case would force the parties and the Court to waste time and resources ascertaining the extent of Laurel County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Laurel County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Laurel County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Laurel County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Laurel County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Laurel County's proposed RICO claim against the PBMs has expired. Laurel County filed its original complaint on September 29, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Laurel County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45105-DAP, ECF No. 2. It is therefore indisputable that Laurel County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Laurel County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Laurel County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Laurel County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**75.** *Fond du Lac County v. Purdue Pharma LP et al.*, **Case No. 1:17-op-45106-DAP: Plaintiff Fond Du Lac County, Wisconsin**

Fond Du Lac County's untimely motion for leave to amend should be denied for several reasons. Fond Du Lac County failed to provide notice of its proposed amendments through a proposed complaint. Fond Du Lac County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fond Du Lac County's motion should be denied due to futility, as Fond Du Lac County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fond Du Lac County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fond Du Lac County first amended its complaint on May 25, 2018. *See Fond du Lac County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45106-DAP, ECF No. 7. Fond Du Lac County amended its complaint again on March 15, 2019. *See Fond du Lac County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45106-DAP, ECF No. 9. Unlike many other plaintiffs, Fond Du Lac County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Fond Du Lac County's deadline to amend was in 2019. Fond Du Lac County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fond Du Lac County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fond Du Lac County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Fond Du Lac County). That insignificant dispensing volume is much too low to support a finding of good cause for Fond Du Lac County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fond Du Lac County filed its original complaint on November 7, 2017, but waited until May 3, 2018 to implement a litigation hold. *See Fond du Lac County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45106-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 3, 2018). Fond Du Lac County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fond Du Lac County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fond Du Lac County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fond Du Lac County's proposed RICO claim against the PBMs has expired. Fond Du Lac County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fond du Lac County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45106-DAP, ECF No. 7. It is therefore indisputable that Fond Du Lac County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Fond Du Lac County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fond Du Lac County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fond Du Lac County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

76. ***Douglas County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45107-DAP: Plaintiff Douglas County, Wisconsin**

Douglas County's untimely motion for leave to amend should be denied for several reasons. Douglas County failed to provide notice of its proposed amendments through a proposed complaint. Douglas County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Douglas County's motion should be denied due to futility, as Douglas County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Douglas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Douglas County first amended its complaint on May 25, 2018. *See Douglas County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45107-DAP, ECF No. 7. Douglas County amended its complaint again on March 15, 2019. *See Douglas County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45107-DAP, ECF No. 9. Unlike many other plaintiffs, Douglas County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Douglas County's deadline to amend was in 2019. Douglas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Douglas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Douglas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Douglas County). That insignificant dispensing volume is much too

low to support a finding of good cause for Douglas County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Douglas County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Douglas County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Douglas County filed its original complaint on November 7, 2017, but waited until April 27, 2018 to implement a litigation hold. *See Douglas County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45107-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Douglas County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Douglas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Douglas County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Douglas County's proposed RICO claim against the PBMs has expired. Douglas County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Douglas County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45107-DAP, ECF No. 7. It is therefore indisputable that Douglas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Douglas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Douglas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Douglas County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

77. ***Rock County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45108-DAP: Plaintiff Rock County, Wisconsin**

Rock County's untimely motion for leave to amend should be denied for several reasons. Rock County failed to provide notice of its proposed amendments through a proposed complaint. Rock County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rock County's motion should be denied due to futility, as Rock County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rock County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rock County first amended its complaint on May 25, 2018. *See Rock County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45108-DAP, ECF No. 6. Rock County amended its complaint again on March 15, 2019. *See Rock County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45108-DAP, ECF No. 8. Unlike many other plaintiffs, Rock County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Rock County's deadline to amend was in 2019. Rock County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rock County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Rock County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Rock County). That insignificant dispensing volume is much too low to support a finding of good cause for Rock County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Rock County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Rock County of the PBM services Express Scripts provides and Rock County began receiving those services on January 1, 2006. *See id.* Inasmuch as Rock County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Rock County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Rock County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Rock County filed its original complaint on November 7, 2017, but waited until April 30, 2018 to implement a litigation hold. *See Rock County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45108-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Rock County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*,

2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rock County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rock County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rock County's proposed RICO claim against the PBMs has expired. Rock County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rock County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45108-DAP, ECF No. 6. It is therefore indisputable that Rock County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Rock County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rock County's request for leave to amend to add a RICO claim should be denied as futile. *See*

*Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rock County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 78. *Pulaski County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45109-DAP: Plaintiff Pulaski County, Kentucky

Pulaski County's untimely motion for leave to amend should be denied for several reasons. Pulaski County failed to provide notice of its proposed amendments through a proposed complaint. Pulaski County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pulaski County's motion should be denied due to futility, as Pulaski County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pulaski County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pulaski County first amended its complaint on October 4, 2017. *See Pulaski County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45109-DAP, ECF No. 5. Pulaski County amended its complaint again on March 9, 2019. *See Pulaski County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45109-DAP, ECF No. 28. Unlike many other plaintiffs, Pulaski County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Pulaski County's deadline to amend was in 2019. Pulaski County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pulaski County's lack of diligence in pursuing its claims negates any finding of good cause.

*See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pulaski County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pulaski County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pulaski County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pulaski County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Pulaski County). That insignificant dispensing volume is much too low to support a finding of good cause for Pulaski County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pulaski County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pulaski County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Pulaski County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Pulaski County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Pulaski County of this deficiency on September 16, 2024 (*see* Exhibit B), but Pulaski County refused to amend or supplement its Fact Sheet. Under this Court's orders, Pulaski County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Pulaski County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Pulaski County's potential claims against them. Pulaski County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pulaski County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pulaski County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pulaski County's proposed RICO claim against the PBMs has expired. Pulaski County filed its original complaint on September 25, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pulaski County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45109-DAP, ECF No. 1. It is therefore indisputable that Pulaski County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Pulaski County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pulaski County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pulaski County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 79. *Perry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45110-DAP: Plaintiff Perry County, Kentucky

Perry County's untimely motion for leave to amend should be denied for several reasons. Perry County failed to provide notice of its proposed amendments through a proposed complaint. Perry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Perry County's motion should be denied due to futility, as Perry County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Perry County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Perry County first amended its complaint on October 4, 2017. *See Perry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45110-DAP, ECF No. 5. Perry County amended its complaint again on March 14, 2019. *See Perry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45110-DAP, ECF No. 29. Unlike many other plaintiffs, Perry County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Perry County's deadline to amend was in 2019. Perry County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Perry County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Perry County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Perry County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Perry County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Perry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Perry County). That insignificant dispensing volume is much too low to support a finding of good cause for Perry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Perry County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Perry County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Perry County filed its original complaint on September 25, 2017. *See Perry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45110-DAP, ECF No. 1. Despite filing its case years ago, Perry County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Perry County's case would force the parties and the Court to waste time and resources ascertaining the extent of Perry County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Perry County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Perry County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Perry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Perry County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Perry County's proposed RICO claim against the PBMs has expired. Perry County filed its original complaint on September 25, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Perry County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45110-DAP, ECF No. 1. It is therefore indisputable that Perry County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost seven years before seeking leave to amend. Perry County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Perry County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Perry County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

80. *Eau Claire County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45112-DAP: Plaintiff Eau Claire County, Wisconsin

Eau Claire County's untimely motion for leave to amend should be denied for several reasons. Eau Claire County failed to provide notice of its proposed amendments through a proposed complaint. Eau Claire County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Eau Claire County's motion should be denied due to futility, as Eau Claire County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Eau Claire County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Eau Claire County first amended its complaint on May 25, 2018. *See Eau Claire County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45112-DAP, ECF No. 7. Eau Claire County amended its complaint again on March 15, 2019. *See Eau Claire County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45112-DAP, ECF No. 9. Unlike many other plaintiffs, Eau Claire County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Eau Claire County's deadline to amend was in 2019. Eau Claire County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Eau Claire County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Eau Claire County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Eau Claire County). That insignificant dispensing volume is much too low to support a finding of good cause for Eau Claire County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Eau Claire County violated its basic duty to implement a timely litigation hold. Eau Claire County filed its original complaint on November 7, 2017, but waited until August 23, 2018 to implement a litigation hold—nine months later. *See Eau Claire County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45112-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 23, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Eau Claire County's case would force the parties and the Court to waste time and resources ascertaining the extent of Eau Claire County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Eau Claire County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Eau Claire County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Eau Claire County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Eau Claire County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Eau Claire County's proposed RICO claim against the PBMs has expired. Eau Claire County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Eau Claire County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45112-DAP, ECF No. 7. It is therefore indisputable that Eau Claire County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Eau Claire County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Eau Claire County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Eau Claire County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**81.**   ***Washington County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45114-DAP: Plaintiff Washington County, Wisconsin**

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County first amended its complaint on May 25, 2018. *See Washington County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45114-DAP, ECF No. 6. Washington County amended its complaint again on March 15, 2019. *See Washington County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45114-DAP, ECF No. 7. Unlike many other plaintiffs, Washington County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Washington County's deadline to amend was in 2019. Washington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.27% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Washington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Washington County filed its original complaint on November 7, 2017, but waited until April 27, 2018 to implement a litigation hold. *See Washington County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45114-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Washington County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Washington County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45114-DAP, ECF No. 6. It is therefore indisputable that Washington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Washington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washington County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 82. *Rusk County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45116-DAP: Plaintiff Rusk County, Wisconsin

Rusk County's untimely motion for leave to amend should be denied for several reasons. Rusk County failed to provide notice of its proposed amendments through a proposed complaint. Rusk County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rusk County's motion should be denied due to futility, as Rusk County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rusk County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rusk County first amended its complaint on May 25, 2018. *See Rusk County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45116-DAP, ECF No. 6. Rusk County amended its complaint again on March 15, 2019. *See Rusk County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45116-DAP, ECF No. 10. Unlike many other plaintiffs, Rusk County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Rusk County's deadline to amend was in 2019. Rusk County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rusk County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rusk County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Rusk County). That insignificant dispensing volume is much too low to support a finding of good cause for Rusk County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rusk County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rusk County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Rusk County filed its original complaint on November 7, 2017, but waited until April 25, 2018 to implement a litigation hold. *See Rusk County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45116-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 25, 2018). Rusk County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rusk County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rusk County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rusk County's proposed RICO claim against the PBMs has expired. Rusk County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rusk County v. Purdue Pharma Inc et al.*, Case No. 1:17-op-45116-DAP, ECF No. 6. It is therefore indisputable that Rusk County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Rusk County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rusk County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rusk County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 83. *Columbia County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45118-DAP: Plaintiff Columbia County, Wisconsin

Columbia County's untimely motion for leave to amend should be denied for several reasons. Columbia County failed to provide notice of its proposed amendments through a proposed complaint. Columbia County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Columbia County's motion should be denied due to futility, as Columbia County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Columbia County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Columbia County first amended its complaint on July 6, 2018. *See Columbia County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45118-DAP, ECF No. 7. Columbia County amended its complaint again on March 15, 2019. *See Columbia County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45118-DAP, ECF No. 10. Unlike many other plaintiffs, Columbia County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Columbia County's deadline to amend was in 2019. Columbia County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Columbia County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all

the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Columbia County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Columbia County). That insignificant dispensing volume is much too low to support a finding of good cause for Columbia County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Columbia County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Columbia County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Columbia County filed its original complaint on November 7, 2017. *See Columbia County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45118-DAP, ECF No. 1. Despite filing its case years ago, Columbia County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Columbia County's case would force the parties and the Court to waste time and resources ascertaining the extent of Columbia

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Columbia County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Columbia County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Columbia County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Columbia County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Columbia County of this deficiency on September 16, 2024 (*see* Exhibit B), but Columbia County refused to amend or supplement its Fact Sheet. Under this Court's orders, Columbia County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Columbia County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Columbia County's potential claims against them. Columbia County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Columbia County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Columbia County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Columbia County's proposed RICO claim against the PBMs has expired. Columbia County filed its first amended complaint on July 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Columbia County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45118-DAP, ECF No. 7. It is therefore indisputable that Columbia County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Columbia County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Columbia County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Columbia County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 84. *Shawano County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45119-DAP: Plaintiff Shawano County, Wisconsin

Shawano County's untimely motion for leave to amend should be denied for several reasons. Shawano County failed to provide notice of its proposed amendments through a proposed complaint. Shawano County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Shawano County's motion should be denied due to futility, as Shawano County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Shawano County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Shawano County first amended its complaint on May 25, 2018. *See Shawano County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45119-DAP, ECF No. 6. Shawano County amended its complaint again on March 15, 2019. *See Shawano County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45119-DAP, ECF No. 10. Unlike many other plaintiffs, Shawano County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Shawano County's deadline to amend was in 2019. Shawano County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Shawano County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Shawano County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Shawano County). That insignificant dispensing volume is much too low to support a finding of good cause for Shawano County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Shawano County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Shawano County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Shawano County violated its basic duty to implement a timely litigation hold. Shawano County filed its original complaint on November 7, 2017, but waited until May 22, 2018 to implement a litigation hold—over six months later. *See Shawano County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45119-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 22, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Shawano County's case would force the parties and the Court to waste time and resources ascertaining the extent of Shawano County's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Shawano County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Shawano County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shawano County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shawano County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Shawano County's proposed RICO claim against the PBMs has expired. Shawano County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Shawano County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45119-DAP, ECF No. 6. It is therefore indisputable that Shawano County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend.

Shawano County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shawano County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Shawano County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 85. *Jackson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45121-DAP: Plaintiff Jackson County, Wisconsin

Jackson County's untimely motion for leave to amend should be denied for several reasons. Jackson County failed to provide notice of its proposed amendments through a proposed complaint. Jackson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jackson County's motion should be denied due to futility, as Jackson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jackson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jackson County first amended its complaint on May 25, 2018. *See Jackson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45121-DAP, ECF No. 7. Jackson County amended its complaint again on March 15, 2019. *See Jackson County v. Purdue Pharma LP et al.*, Case No.

1:17-op-45121-DAP, ECF No. 9. Unlike many other plaintiffs, Jackson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Jackson County's deadline to amend was in 2019. Jackson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jackson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jackson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Jackson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jackson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jackson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jackson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Jackson County filed its original complaint on November 7, 2017, but waited until April 27, 2018 to implement a litigation hold. *See Jackson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45121-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Jackson County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jackson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jackson County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jackson County's proposed RICO claim against the PBMs has expired. Jackson County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45121-DAP, ECF

No. 7. It is therefore indisputable that Jackson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Jackson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jackson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jackson County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 86. *Jefferson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45122-DAP: Plaintiff Jefferson County, Wisconsin

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jefferson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson County first amended its complaint on May 25, 2018. *See Jefferson County v. Purdue*

*Pharma LP et al.*, Case No. 1:17-op-45122-DAP, ECF No. 5. Jefferson County amended its complaint again on March 15, 2019. *See Jefferson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45122-DAP, ECF No. 7. Unlike many other plaintiffs, Jefferson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Jefferson County's deadline to amend was in 2019. Jefferson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Jefferson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Jefferson County filed its original complaint on November 7, 2017, but waited until April 27, 2018 to implement a litigation hold. *See Jefferson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Jefferson County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jefferson County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its first amended complaint on

May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jefferson County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45122-DAP, ECF No. 5. It is therefore indisputable that Jefferson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Jefferson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jefferson County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 87. *Washburn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45123-DAP: Plaintiff Washburn County, Wisconsin

Washburn County's untimely motion for leave to amend should be denied for several reasons. Washburn County failed to provide notice of its proposed amendments through a proposed complaint. Washburn County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washburn County's motion should be denied due to futility, as Washburn County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washburn County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washburn County first amended its complaint on May 25, 2018. *See Washburn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45123-DAP, ECF No. 6. Washburn County amended its complaint again on March 15, 2019. *See Washburn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45123-DAP, ECF No. 7. Unlike many other plaintiffs, Washburn County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Washburn County's deadline to amend was in 2019. Washburn County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washburn County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washburn County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Washburn County). That insignificant dispensing volume is much too low to support a finding of good cause for Washburn County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Washburn County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Washburn County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Washburn County filed its original complaint on November 7, 2017, but waited until May 1, 2018 to implement a litigation hold. *See Washburn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45123-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 1, 2018). Washburn County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Washburn County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Washburn County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Washburn County of this deficiency on September 16, 2024 (*see* Exhibit B), but Washburn County refused to amend or supplement its Fact Sheet. Under this Court's orders, Washburn County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Washburn County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Washburn County's potential claims against them. Washburn County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs,

negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washburn County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washburn County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washburn County's proposed RICO claim against the PBMs has expired. Washburn County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Washburn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45123-DAP, ECF No. 6. It is therefore indisputable that Washburn County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Washburn County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the

injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washburn County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washburn County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 88.    *Langlade County v. Purdue Frederick Co et al.*, Case No. 1:17-op-45124-DAP: Plaintiff Langlade County, Wisconsin

Langlade County's untimely motion for leave to amend should be denied for several reasons. Langlade County failed to provide notice of its proposed amendments through a proposed complaint. Langlade County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Langlade County's motion should be denied due to futility, as Langlade County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Langlade County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Langlade County first amended its complaint on May 25, 2018. *See Langlade County v. Purdue Frederick Co et al.*, Case No. 1:17-op-45124-DAP, ECF No. 6. Langlade County amended its complaint again on March 15, 2019. *See Langlade County v. Purdue Frederick Co et al.*, Case No. 1:17-op-45124-DAP, ECF No. 8. Unlike many other plaintiffs, Langlade County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above.

Langlade County's deadline to amend was in 2019. Langlade County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Langlade County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Langlade County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Langlade County). That insignificant dispensing volume is much too low to support a finding of good cause for Langlade County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Langlade County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Langlade County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Langlade County violated its basic duty to implement a timely litigation hold. Langlade County filed its original complaint on November 7, 2017, but waited until November 27, 2018 to implement a litigation hold—one year later. *See*

*Langlade County v. Purdue Frederick Co et al.*, Case No. 1:17-op-45124-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 27, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Langlade County's case would force the parties and the Court to waste time and resources ascertaining the extent of Langlade County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Langlade County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Langlade County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Langlade County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Langlade County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Langlade County's proposed RICO claim against the PBMs has expired. Langlade County filed its first amended complaint on

May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Langlade County v. Purdue Frederick Co et al.*, Case No. 1:17-op-45124-DAP, ECF No. 6. It is therefore indisputable that Langlade County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Langlade County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Langlade County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Langlade County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 89. *Florence County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45125-DAP: Plaintiff Florence County, Wisconsin

Florence County's untimely motion for leave to amend should be denied for several reasons. Florence County failed to provide notice of its proposed amendments through a proposed complaint. Florence County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Florence County's motion should be denied due to futility, as Florence County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Florence County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Florence County first amended its complaint on May 25, 2018. *See Florence County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45125-DAP, ECF No. 6. Florence County amended its complaint again on March 15, 2019. *See Florence County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45125-DAP, ECF No. 10. Unlike many other plaintiffs, Florence County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Florence County's deadline to amend was in 2019. Florence County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Florence County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Florence County filed its original complaint on November 7, 2017, but waited until April 27, 2018 to implement a litigation hold. *See Florence County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45125-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Florence County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Florence County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Florence County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Florence County of this deficiency on September 16, 2024 (*see* Exhibit B), but Florence County refused to amend or supplement its Fact Sheet. Under this Court's orders, Florence County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Florence County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Florence County's potential claims against them. Florence County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Florence County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Florence County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Florence County's proposed RICO claim against the PBMs has expired. Florence County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Florence County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45125-DAP, ECF No. 6. It is therefore indisputable that Florence County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Florence County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Florence County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Florence County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 90. *Price County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45126-DAP: Plaintiff Price County, Wisconsin

Price County's untimely motion for leave to amend should be denied for several reasons. Price County failed to provide notice of its proposed amendments through a proposed complaint. Price County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Price County's motion should be denied due to futility, as Price County does

not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Price County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Price County first amended its complaint on May 25, 2018. *See Price County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45126-DAP, ECF No. 6. Price County amended its complaint again on March 15, 2019. *See Price County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45126-DAP, ECF No. 10. Unlike many other plaintiffs, Price County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Price County's deadline to amend was in 2019. Price County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Price County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Price County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Price County). That insignificant dispensing volume is much too low to support a finding of good cause for Price County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Price County violated its basic duty to implement a timely litigation hold. Price County filed its original complaint on November 7, 2017, but waited until July 17, 2018 to implement a litigation hold—eight months later. *See Price County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45126-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 17, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Price County's case would force the parties and the Court to waste time and resources ascertaining the extent of Price County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Price County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Price County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Price County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Price County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Price County's proposed RICO claim against the PBMs has expired. Price County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Price County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45126-DAP, ECF No. 6. It is therefore indisputable that Price County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Price County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Price County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Price County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 91. *Wood County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45127-DAP: Plaintiff Wood County, Wisconsin

Wood County's untimely motion for leave to amend should be denied for several reasons. Wood County failed to provide notice of its proposed amendments through a proposed complaint. Wood County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wood County's motion should be denied due to futility, as Wood County does

not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wood County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wood County first amended its complaint on May 25, 2018. *See Wood County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45127-DAP, ECF No. 6. Wood County amended its complaint again on March 15, 2019. *See Wood County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45127-DAP, ECF No. 8. Unlike many other plaintiffs, Wood County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Wood County's deadline to amend was in 2019. Wood County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wood County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wood County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Wood County). That insignificant dispensing volume is much too low to support a finding of good cause for Wood County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wood County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wood County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Wood County filed its original complaint on November 7, 2017, but waited until April 30, 2018 to implement a litigation hold. *See Wood County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45127-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Wood County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wood County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wood County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wood County's proposed RICO claim against the PBMs has expired. Wood County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wood County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45127-DAP, ECF No. 6. It is therefore indisputable that Wood County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wood County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wood County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wood County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

92. *Sheboygan County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45128-DAP: Plaintiff Sheboygan County, Wisconsin

Sheboygan County's untimely motion for leave to amend should be denied for several reasons. Sheboygan County failed to provide notice of its proposed amendments through a proposed complaint. Sheboygan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheboygan County's motion should be denied due

to futility, as Sheboygan County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheboygan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheboygan County first amended its complaint on May 25, 2018. *See Sheboygan County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45128-DAP, ECF No. 7. Sheboygan County amended its complaint again on March 15, 2019. *See Sheboygan County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45128-DAP, ECF No. 9. Unlike many other plaintiffs, Sheboygan County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Sheboygan County's deadline to amend was in 2019. Sheboygan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheboygan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheboygan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Sheboygan County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheboygan County to add

540

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheboygan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheboygan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Sheboygan County violated its basic duty to implement a timely litigation hold. Sheboygan County filed its original complaint on November 7, 2017, but waited until August 15, 2018 to implement a litigation hold—nine months later. *See Sheboygan County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45128-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 15, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sheboygan County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheboygan County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheboygan County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheboygan County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheboygan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheboygan County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheboygan County's proposed RICO claim against the PBMs has expired. Sheboygan County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sheboygan County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45128-DAP, ECF No. 7. It is therefore indisputable that Sheboygan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sheboygan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheboygan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheboygan County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 93. *Oneida County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45129-DAP: Plaintiff Oneida County, Wisconsin

Oneida County's untimely motion for leave to amend should be denied for several reasons. Oneida County failed to provide notice of its proposed amendments through a proposed complaint. Oneida County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oneida County's motion should be denied due to futility, as Oneida County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oneida County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oneida County first amended its complaint on May 25, 2018. *See Oneida County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45129-DAP, ECF No. 6. Oneida County amended its complaint again on March 15, 2019. *See Oneida County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45129-DAP, ECF No. 8. Unlike many other plaintiffs, Oneida County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Oneida County's deadline to amend was in 2019. Oneida County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Oneida County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oneida County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Oneida County). That insignificant dispensing volume is much too low to support a finding of good cause for Oneida County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Oneida County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Oneida County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Oneida County filed its original complaint on November 7, 2017, but waited until April 28, 2018 to implement a litigation hold. *See Oneida County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45129-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 28, 2018). Oneida County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oneida County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Oneida County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oneida County's proposed RICO claim against the PBMs has expired. Oneida County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Oneida County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45129-DAP, ECF No. 6. It is therefore indisputable that Oneida County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Oneida County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oneida County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Oneida County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

94. *Ashland County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45130-DAP: Plaintiff Ashland County, Wisconsin

Ashland County's untimely motion for leave to amend should be denied for several reasons. Ashland County failed to provide notice of its proposed amendments through a proposed complaint. Ashland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ashland County's motion should be denied due to futility, as Ashland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ashland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ashland County first amended its complaint on May 25, 2018. *See Ashland County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45130-DAP, ECF No. 5. Ashland County amended its complaint again on March 15, 2019. *See Ashland County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45130-DAP, ECF No. 9. Unlike many other plaintiffs, Ashland County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Ashland County's deadline to amend was in 2019. Ashland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ashland County's lack of diligence in pursuing its

546

claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ashland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Ashland County). That insignificant dispensing volume is much too low to support a finding of good cause for Ashland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ashland County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ashland County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ashland County filed its original complaint on November 28, 2017. *See Ashland County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45130-DAP, ECF No. 1. Despite filing its case years ago, Ashland County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of

this Court's orders. ECF Nos. 232; 5455. Litigating Ashland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Ashland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ashland County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ashland County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ashland County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ashland County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ashland County of this deficiency on September 16, 2024 (*see* Exhibit B), but Ashland County refused to amend or supplement its Fact Sheet. Under this Court's orders, Ashland County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ashland County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ashland County's potential claims against them. Ashland County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ashland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ashland County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ashland County's proposed RICO claim against the PBMs has expired. Ashland County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Ashland County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45130-DAP, ECF No. 5. It is therefore indisputable that Ashland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Ashland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ashland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ashland County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 95. *Chippewa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45132-DAP: Plaintiff Chippewa County, Wisconsin

Chippewa County's untimely motion for leave to amend should be denied for several reasons. Chippewa County failed to provide notice of its proposed amendments through a proposed complaint. Chippewa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chippewa County's motion should be denied due to futility, as Chippewa County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chippewa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chippewa County first amended its complaint on May 25, 2018. *See Chippewa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45132-DAP, ECF No. 5. Chippewa County amended its complaint again on March 15, 2019. *See Chippewa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45132-DAP, ECF No. 9. Unlike many other plaintiffs, Chippewa County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Chippewa County's deadline to amend was in 2019. Chippewa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chippewa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because

plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chippewa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Chippewa County). That insignificant dispensing volume is much too low to support a finding of good cause for Chippewa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chippewa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chippewa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Chippewa County filed its original complaint on November 28, 2017, but waited until May 7, 2018 to implement a litigation hold. *See Chippewa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45132-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 7, 2018). Chippewa County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Chippewa County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Chippewa County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Chippewa County of this deficiency on September 16, 2024 (*see* Exhibit B), but Chippewa County refused to amend or supplement its Fact Sheet. Under this Court's orders, Chippewa County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Chippewa County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Chippewa County's potential claims against them. Chippewa County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chippewa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chippewa County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chippewa County's proposed RICO claim against the PBMs has expired. Chippewa County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Chippewa County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45132-DAP, ECF No. 5. It is therefore indisputable that Chippewa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Chippewa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chippewa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chippewa County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

96. ***Dunn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45133-DAP: Plaintiff Dunn County, Wisconsin**

Dunn County's untimely motion for leave to amend should be denied for several reasons. Dunn County failed to provide notice of its proposed amendments through a proposed complaint. Dunn County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dunn County's motion should be denied due to futility, as Dunn County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dunn County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dunn County first amended its complaint on May 25, 2018. *See Dunn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45133-DAP, ECF No. 5. Dunn County amended its complaint again on March 15, 2019. *See Dunn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45133-DAP, ECF No. 9. Unlike many other plaintiffs, Dunn County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Dunn County's deadline to amend was in 2019. Dunn County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dunn County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dunn County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Dunn County). That insignificant dispensing volume is much too low to support a finding of good cause for Dunn County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dunn County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dunn County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dunn County filed its original complaint on November 28, 2017. *See Dunn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45133-DAP, ECF No. 1. Despite filing its case years ago, Dunn County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Dunn County's case would force the parties and the Court to waste time and resources ascertaining the extent of Dunn County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dunn County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dunn County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dunn County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dunn County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dunn County's proposed RICO claim against the PBMs has expired. Dunn County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Dunn County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45133-DAP, ECF No. 5. It is therefore indisputable that Dunn County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Dunn County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dunn County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dunn County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 97. *Forest County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45134-DAP: Plaintiff Forest County, Wisconsin

Forest County's untimely motion for leave to amend should be denied for several reasons. Forest County failed to provide notice of its proposed amendments through a proposed complaint. Forest County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Forest County's motion should be denied due to futility, as Forest County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Forest County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Forest County first amended its complaint on May 25, 2018. *See Forest County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45134-DAP, ECF No. 5. Forest County amended its complaint again on March 15, 2019. *See Forest County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45134-DAP, ECF No. 9. Unlike many other plaintiffs, Forest County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Forest County's deadline to amend was in 2019. Forest County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Forest County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Forest County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Forest County). That insignificant dispensing volume is much too low to support a finding of good cause for Forest County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Forest County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Forest County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Forest County filed its original complaint on November 28, 2017. *See Forest County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45134-DAP, ECF No. 1. Despite filing its case years ago, Forest County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Forest County's case would force the parties and the Court to waste time and resources ascertaining the extent of Forest County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM

bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Forest County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Forest County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Forest County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

      **Failure to State a Claim.** Forest County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

      **RICO Statute of Limitations.** The statute of limitations for Forest County's proposed RICO claim against the PBMs has expired. Forest County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Forest County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45134-DAP, ECF No. 5. It is therefore indisputable that Forest County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Forest County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Forest County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Forest County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 98. *Manitowoc County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45135-DAP: Plaintiff Manitowoc County, Wisconsin

Manitowoc County's untimely motion for leave to amend should be denied for several reasons. Manitowoc County failed to provide notice of its proposed amendments through a proposed complaint. Manitowoc County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Manitowoc County's motion should be denied due to futility, as Manitowoc County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Manitowoc County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Manitowoc County first amended its complaint on May 25, 2018. *See Manitowoc County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45135-DAP, ECF No. 5. Manitowoc County amended its complaint again on March 15, 2019. *See Manitowoc County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45135-DAP, ECF No. 9. Unlike many other plaintiffs,

Manitowoc County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Manitowoc County's deadline to amend was in 2019. Manitowoc County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Manitowoc County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Manitowoc County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Manitowoc County). That insignificant dispensing volume is much too low to support a finding of good cause for Manitowoc County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Manitowoc County filed its original complaint on November 28, 2017, but waited until April 30, 2018 to implement a litigation hold. *See Manitowoc County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45135-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Manitowoc County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because

the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Manitowoc County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Manitowoc County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Manitowoc County's proposed RICO claim against the PBMs has expired. Manitowoc County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Manitowoc County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45135-DAP, ECF No. 5. It is therefore indisputable that Manitowoc County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Manitowoc County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Manitowoc County's request for leave to amend to add

a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Manitowoc County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 99. *Marquette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45136-DAP: Plaintiff Marquette County, Wisconsin

Marquette County's untimely motion for leave to amend should be denied for several reasons. Marquette County failed to provide notice of its proposed amendments through a proposed complaint. Marquette County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marquette County's motion should be denied due to futility, as Marquette County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marquette County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marquette County first amended its complaint on May 25, 2018. *See Marquette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45136-DAP, ECF No. 5. Marquette County amended its complaint again on March 15, 2019. *See Marquette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45136-DAP, ECF No. 10. Unlike many other plaintiffs, Marquette County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Marquette County's deadline to amend was in 2019. Marquette County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marquette County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marquette County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marquette County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marquette County's proposed RICO claim against the PBMs has expired. Marquette County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marquette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45136-DAP, ECF No. 5. It is therefore indisputable that Marquette County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marquette County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see*

Section III.B.4, above. Marquette County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marquette County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 100.  *Sawyer County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45137-DAP: Plaintiff Sawyer County, Wisconsin

Sawyer County's untimely motion for leave to amend should be denied for several reasons. Sawyer County failed to provide notice of its proposed amendments through a proposed complaint. Sawyer County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sawyer County's motion should be denied due to futility, as Sawyer County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sawyer County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sawyer County first amended its complaint on May 25, 2018. *See Sawyer County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45137-DAP, ECF No. 5. Sawyer County amended its complaint again on March 15, 2019. *See Sawyer County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45137-DAP, ECF No. 9. Unlike many other plaintiffs, Sawyer County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Sawyer County's deadline to amend was in 2019. Sawyer County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sawyer County's lack of diligence in pursuing its

claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sawyer County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Sawyer County). That insignificant dispensing volume is much too low to support a finding of good cause for Sawyer County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sawyer County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sawyer County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sawyer County filed its original complaint on November 28, 2017. *See Sawyer County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45137-DAP, ECF No. 1. Despite filing its case years ago, Sawyer County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of

this Court's orders. ECF Nos. 232; 5455. Litigating Sawyer County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sawyer County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sawyer County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sawyer County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sawyer County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sawyer County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sawyer County's proposed RICO claim against the PBMs has expired. Sawyer County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sawyer County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45137-DAP, ECF

No. 5. It is therefore indisputable that Sawyer County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sawyer County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sawyer County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sawyer County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 101. *Trempealeau County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45138-DAP: Plaintiff Trempealeau County, Wisconsin

Trempealeau County's untimely motion for leave to amend should be denied for several reasons. Trempealeau County failed to provide notice of its proposed amendments through a proposed complaint. Trempealeau County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Trempealeau County's motion should be denied due to futility, as Trempealeau County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Trempealeau County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Trempealeau County first amended its complaint on May 25, 2018. *See Trempealeau*

*County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45138-DAP, ECF No. 6. Trempealeau County amended its complaint again on March 15, 2019. *See Trempealeau County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45138-DAP, ECF No. 10. Unlike many other plaintiffs, Trempealeau County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Trempealeau County's deadline to amend was in 2019. Trempealeau County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Trempealeau County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Trempealeau County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.22% market share for Trempealeau County). That insignificant dispensing volume is much too low to support a finding of good cause for Trempealeau County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Trempealeau County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Trempealeau County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Trempealeau County violated its basic duty to implement a timely litigation hold. Trempealeau County filed its original complaint on November 28, 2017, but waited until August 16, 2018 to implement a litigation hold—eight months later. *See Trempealeau County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45138-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 16, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Trempealeau County's case would force the parties and the Court to waste time and resources ascertaining the extent of Trempealeau County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Trempealeau County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Trempealeau County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Trempealeau County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Trempealeau County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Trempealeau County of this deficiency on September 16, 2024 (*see* Exhibit B), but Trempealeau County refused to amend or supplement its Fact Sheet. Under this Court's orders, Trempealeau County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

Trempealeau County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Trempealeau County's potential claims against them. Trempealeau County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Trempealeau County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Trempealeau County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Trempealeau County's proposed RICO claim against the PBMs has expired. Trempealeau County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Trempealeau County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45138-DAP, ECF No. 6. It is therefore indisputable that Trempealeau County knew of its RICO injury,

at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Trempealeau County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Trempealeau County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Trempealeau County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 102. *Waushara County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45139-DAP: Plaintiff Waushara County, Wisconsin

Waushara County's untimely motion for leave to amend should be denied for several reasons. Waushara County failed to provide notice of its proposed amendments through a proposed complaint. Waushara County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Waushara County's motion should be denied due to futility, as Waushara County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Waushara County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Waushara County first amended its complaint on May 25, 2018. *See Waushara County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45139-DAP, ECF No. 5. Waushara County

amended its complaint again on March 15, 2019. *See Waushara County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45139-DAP, ECF No. 9. Unlike many other plaintiffs, Waushara County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Waushara County's deadline to amend was in 2019. Waushara County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Waushara County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Waushara County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.20% market share for Waushara County). That insignificant dispensing volume is much too low to support a finding of good cause for Waushara County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Waushara County filed its original complaint on November 28, 2017, but waited until April 30, 2018 to implement a litigation hold. *See Waushara County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45139-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Waushara County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend.

*See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6Waushara County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Waushara County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Waushara County's proposed RICO claim against the PBMs has expired. Waushara County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Waushara County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45139-DAP, ECF No. 5. It is therefore indisputable that Waushara County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Waushara County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Waushara County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Waushara County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 103. *Buffalo County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45141-DAP: Plaintiff Buffalo County, Wisconsin

Buffalo County's untimely motion for leave to amend should be denied for several reasons. Buffalo County failed to provide notice of its proposed amendments through a proposed complaint. Buffalo County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Buffalo County's motion should be denied due to futility, as Buffalo County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Buffalo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Buffalo County first amended its complaint on May 25, 2018. *See Buffalo County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45141-DAP, ECF No. 5. Buffalo County amended its complaint again on March 15, 2019 *See Buffalo County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45141-DAP, ECF No. 9. Unlike many other plaintiffs, Buffalo County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Buffalo County's deadline to amend was in 2019. Buffalo County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Buffalo County's lack of diligence in pursuing its

claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Buffalo County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.27% market share for Buffalo County). That insignificant dispensing volume is much too low to support a finding of good cause for Buffalo County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Buffalo County filed its original complaint on November 28, 2017. *See Buffalo County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45141-DAP, ECF No. 1. Despite filing its case years ago, Buffalo County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Buffalo County's case would force the parties and the Court to waste time and resources ascertaining the extent of Buffalo County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Buffalo County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Buffalo County therefore lacks good cause for leave to

amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Buffalo County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Buffalo County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Buffalo County of this deficiency on September 16, 2024 (*see* Exhibit B), but Buffalo County refused to amend or supplement its Fact Sheet. Under this Court's orders, Buffalo County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Buffalo County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Buffalo County's potential claims against them. Buffalo County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Buffalo County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Buffalo County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Buffalo County's proposed RICO claim against the PBMs has expired. Buffalo County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Buffalo County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45141-DAP, ECF No. 5. It is therefore indisputable that Buffalo County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Buffalo County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Buffalo County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Buffalo County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 104. *Calumet County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45142-DAP: Plaintiff Calumet County, Wisconsin

Calumet County's untimely motion for leave to amend should be denied for several reasons. Calumet County failed to provide notice of its proposed amendments through a proposed complaint. Calumet County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Calumet County's motion should be denied due to futility, as Calumet County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calumet County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calumet County first amended its complaint on May 25, 2018. *See Calumet County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45142-DAP, ECF No. 5. Calumet County amended its complaint again on March 15, 2019. *See Calumet County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45142-DAP, ECF No. 9. Unlike many other plaintiffs, Calumet County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Calumet County's deadline to amend was in 2019. Calumet County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Calumet County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Calumet County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Calumet County). That insignificant dispensing volume is much

too low to support a finding of good cause for Calumet County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Calumet County violated its basic duty to implement a timely litigation hold. Calumet County filed its original complaint on November 28, 2017, but waited until November 1, 2021 to implement a litigation hold—almost four years later. *See Calumet County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45142-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 1, 2021). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Calumet County's case would force the parties and the Court to waste time and resources ascertaining the extent of Calumet County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Calumet County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Calumet County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calumet County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Calumet County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Calumet County's proposed RICO claim against the PBMs has expired. Calumet County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Calumet County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45142-DAP, ECF No. 5. It is therefore indisputable that Calumet County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Calumet County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Calumet County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Calumet County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 105. *Dodge County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45143-DAP: Plaintiff Dodge County, Wisconsin

Dodge County's untimely motion for leave to amend should be denied for several reasons. Dodge County failed to provide notice of its proposed amendments through a proposed complaint. Dodge County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dodge County's motion should be denied due to futility, as Dodge County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dodge County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dodge County first amended its complaint on May 25, 2018. *See Dodge County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45143-DAP, ECF No. 5. Dodge County amended its complaint again on March 15, 2019. *See Dodge County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45143-DAP, ECF No. 9. Unlike many other plaintiffs, Dodge County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Dodge County's deadline to amend was in 2019. Dodge County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dodge County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dodge County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.23% market share for Dodge County). That insignificant dispensing volume is much too low to support a finding of good cause for Dodge County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dodge County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dodge County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Dodge County filed its original complaint on November 28, 2017, but waited until April 30, 2018 to implement a litigation hold. *See Dodge County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45143-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Dodge County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dodge County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dodge County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dodge County's proposed RICO claim against the PBMs has expired. Dodge County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Dodge County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45143-DAP, ECF No. 5. It is therefore indisputable that Dodge County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Dodge County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dodge County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dodge County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 106. *Kenosha County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45144-DAP: Plaintiff Kenosha County, Wisconsin

Kenosha County's untimely motion for leave to amend should be denied for several reasons. Kenosha County failed to provide notice of its proposed amendments through a proposed complaint. Kenosha County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kenosha County's motion should be denied due to futility, as Kenosha County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kenosha County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kenosha County first amended its complaint on May 25, 2018. *See Kenosha County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45144-DAP, ECF No. 5. Kenosha County amended its complaint again on March 15, 2019. *See Kenosha County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45144-DAP, ECF No. 9. Unlike many other plaintiffs, Kenosha County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Kenosha County's deadline to amend was in 2019. Kenosha County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kenosha County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kenosha County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.11% market share for Kenosha County). That insignificant dispensing volume is much too low to support a finding of good cause for Kenosha County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Kenosha County filed its original complaint on November 28, 2017, but waited until April 30, 2018 to implement a litigation hold. *See Kenosha County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45144-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Kenosha County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Kenosha County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Kenosha County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Kenosha County of this deficiency on September 16, 2024 (*see* Exhibit B), but Kenosha County refused to amend or supplement its Fact Sheet. Under this Court's orders, Kenosha County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Kenosha County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Kenosha County's potential claims against them. Kenosha County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause

and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kenosha County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kenosha County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kenosha County's proposed RICO claim against the PBMs has expired. Kenosha County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Kenosha County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45144-DAP, ECF No. 5. It is therefore indisputable that Kenosha County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Kenosha County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see*

Section III.B.4, above. Kenosha County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kenosha County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 107. *Marinette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45145-DAP: Plaintiff Marinette County, Wisconsin

Marinette County's untimely motion for leave to amend should be denied for several reasons. Marinette County failed to provide notice of its proposed amendments through a proposed complaint. Marinette County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marinette County's motion should be denied due to futility, as Marinette County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marinette County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marinette County first amended its complaint on May 25, 2018. *See Marinette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45145-DAP, ECF No. 4. Marinette County amended its complaint again on March 15, 2019. *See Marinette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45145-DAP, ECF No. 8. Unlike many other plaintiffs, Marinette County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Marinette County's deadline to amend was in 2019. Marinette County waited five years after its

deadline to amend to seek leave to assert claims against the PBMs. Marinette County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marinette County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Marinette County). That insignificant dispensing volume is much too low to support a finding of good cause for Marinette County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Marinette County violated its basic duty to implement a timely litigation hold. Marinette County filed its original complaint on November 28, 2017, but waited until July 12, 2018 to implement a litigation hold—seven months later. *See Marinette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45145-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 12, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marinette County's case would force the parties and the Court to waste time and resources ascertaining the extent of Marinette County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marinette County's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Marinette County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

> **Failure to Prosecute.** In its Plaintiff Fact Sheet, Marinette County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Marinette County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Marinette County of this deficiency on September 16, 2024 (*see* Exhibit B), but Marinette County refused to amend or supplement its Fact Sheet. Under this Court's orders, Marinette County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Marinette County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Marinette County's potential claims against them. Marinette County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

> **Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marinette County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marinette County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marinette County's proposed RICO claim against the PBMs has expired. Marinette County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marinette County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45145-DAP, ECF No. 4. It is therefore indisputable that Marinette County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marinette County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marinette County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marinette County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**108.** *St. Croix County v. Purdue Pharma LP et al.*, **Case No. 1:17-op-45147-DAP: Plaintiff St. Croix County, Wisconsin**

St. Croix County's untimely motion for leave to amend should be denied for several reasons. St. Croix County failed to provide notice of its proposed amendments through a proposed complaint. St. Croix County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Croix County's motion should be denied due to futility, as St. Croix County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Croix County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Croix County first amended its complaint on May 25, 2018. *See St. Croix County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45147-DAP, ECF No. 5. St. Croix County amended its complaint again on March 15, 2019. *See St. Croix County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45147-DAP, ECF No. 6. Unlike many other plaintiffs, St. Croix County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. St. Croix County's deadline to amend was in 2019. St. Croix County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Croix County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Croix County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for St. Croix County). That insignificant dispensing volume is much too low to support a finding of good cause for St. Croix County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Croix County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Croix County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** St. Croix County violated its basic duty to implement a timely litigation hold. St. Croix County filed its original complaint on November 28, 2017, but waited until June 20, 2018 to implement a litigation hold—six months later. *See St. Croix County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45147-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 20, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Croix County's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Croix County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Croix County's disregard for its most basic discovery obligations as a litigant, compounded by the

delay in seeking leave to amend, and St. Croix County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Croix County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Croix County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Croix County's proposed RICO claim against the PBMs has expired. St. Croix County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See St. Croix County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45147-DAP, ECF No. 5. It is therefore indisputable that St. Croix County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. Croix County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. St. Croix County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Croix County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 109. *Vernon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45148-DAP: Plaintiff Vernon County, Wisconsin

Vernon County's untimely motion for leave to amend should be denied for several reasons. Vernon County failed to provide notice of its proposed amendments through a proposed complaint. Vernon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Vernon County's motion should be denied due to futility, as Vernon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Vernon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Vernon County first amended its complaint on May 25, 2018. *See Vernon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45148-DAP, ECF No. 5. Vernon County amended its complaint again on March 15, 2019. *See Vernon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45148-DAP, ECF No. 7. Unlike many other plaintiffs, Vernon County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Vernon County's deadline to amend was in 2019. Vernon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Vernon County's lack of diligence in pursuing its

claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Vernon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Vernon County). That insignificant dispensing volume is much too low to support a finding of good cause for Vernon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Vernon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Vernon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Vernon County filed its original complaint on November 28, 2017, but waited until April 30, 2018 to implement a litigation hold. *See Vernon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45148-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Vernon County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is

prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Vernon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Vernon County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Vernon County's proposed RICO claim against the PBMs has expired. Vernon County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Vernon County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45148-DAP, ECF No. 5. It is therefore indisputable that Vernon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Vernon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see*

Section III.B.4, above. Vernon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Vernon County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 110. *Clark County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45150-DAP: Plaintiff Clark County, Wisconsin

Clark County's untimely motion for leave to amend should be denied for several reasons. Clark County failed to provide notice of its proposed amendments through a proposed complaint. Clark County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clark County's motion should be denied due to futility, as Clark County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clark County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clark County first amended its complaint on May 25, 2018. *See Clark County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45150-DAP, ECF No. 5. Clark County amended its complaint again on March 15, 2019. *See Clark County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45150-DAP, ECF No. 9. Unlike many other plaintiffs, Clark County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Clark County's deadline to amend was in 2019. Clark County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clark County's lack of diligence in pursuing its claims negates any finding of

good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clark County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Clark County). That insignificant dispensing volume is much too low to support a finding of good cause for Clark County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clark County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clark County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Clark County filed its original complaint on November 28, 2017. *See Clark County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45150-DAP, ECF No. 1. Despite filing its case years ago, Clark County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Clark County's case would force the parties and

the Court to waste time and resources ascertaining the extent of Clark County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clark County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clark County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clark County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clark County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clark County's proposed RICO claim against the PBMs has expired. Clark County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Clark County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45150-DAP, ECF No. 5. It is therefore indisputable that Clark County knew of its RICO injury, at the very latest, the day it filed

a complaint asserting a RICO claim, six years before seeking leave to amend. Clark County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clark County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clark County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 111. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45151-DAP: Plaintiff Washington County, Illinois

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County amended its complaint on March 6, 2019, after transfer to the MDL on December 20, 2017. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45151-DAP, ECF No. 17. Unlike many other plaintiffs,

Washington County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Washington County's deadline to amend was in 2019. Washington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Washington County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Washington County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Washington County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.48% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its original complaint on October 26, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45151-DAP, ECF No. 1. It is therefore indisputable that Washington County knew of its RICO injury, at the very latest, the day it filed a complaint

asserting a RICO claim, six and a half years before seeking leave to amend. Washington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washington County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 112. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45152-DAP: Plaintiff Gallatin County, Illinois

Gallatin County's untimely motion for leave to amend should be denied for several reasons. Gallatin County failed to provide notice of its proposed amendments through a proposed complaint. Gallatin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gallatin County's motion should be denied due to futility, as Gallatin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gallatin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gallatin County amended its complaint on March 5, 2019, after transfer to the MDL on December 20, 2017. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45152-DAP, ECF No. 17. Unlike many other plaintiffs, Gallatin County

declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Gallatin County's deadline to amend was in 2019. Gallatin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Gallatin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Gallatin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Gallatin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Gallatin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Gallatin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.44% market share for Gallatin County). That insignificant dispensing volume is much too low to support a finding of good cause for Gallatin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Gallatin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Gallatin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gallatin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gallatin County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Gallatin County's proposed RICO claim against the PBMs has expired. Gallatin County filed its original complaint on October 26, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

606

*See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45152-DAP, ECF No. 1. It is therefore indisputable that Gallatin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Gallatin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gallatin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Gallatin County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 113. *Buncombe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45153-DAP: Plaintiff Buncombe County, North Carolina

Buncombe County's untimely motion for leave to amend should be denied for several reasons. Buncombe County failed to provide notice of its proposed amendments through a proposed complaint. Buncombe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Buncombe County's motion should be denied due to futility, as Buncombe County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Buncombe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Buncombe County amended its complaint on March 11, 2019, after transfer to the MDL on December 20, 2017. *See Buncombe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45153-DAP, ECF No. 6. Unlike many other plaintiffs, Buncombe County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Buncombe County's deadline to amend was in 2019. Buncombe County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Buncombe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Buncombe County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Buncombe County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Buncombe County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Buncombe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Buncombe County). That insignificant dispensing volume is much too low to support a finding of good cause for Buncombe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Buncombe County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Buncombe County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Buncombe County violated its basic duty to implement a timely litigation hold. Buncombe County filed its original complaint on November 14, 2017, but waited until September 26, 2024 to implement a litigation hold—nearly seven years later. *See Buncombe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45153-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 26, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Buncombe County's case would force the parties and the Court to waste time and resources ascertaining the extent of Buncombe County's document destruction and the appropriate

609

sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Buncombe County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Buncombe County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Buncombe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Buncombe County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Buncombe County's proposed RICO claim against the PBMs has expired. Buncombe County filed its original complaint on November 14, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Buncombe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:17-op-45153-DAP, ECF No. 1. It is therefore indisputable that Buncombe County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years

before seeking leave to amend. Buncombe County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Buncombe County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Buncombe County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 114. *County of Rusk v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45154-DAP: Plaintiff Rusk County, Texas

Rusk County's untimely motion for leave to amend should be denied for several reasons. Rusk County failed to provide notice of its proposed amendments through a proposed complaint. Rusk County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rusk County's motion should be denied due to futility, as Rusk County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rusk County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rusk County amended its complaint on March 14, 2019, after transfer to the MDL on December 20, 2017. *See County of Rusk v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45154-DAP, ECF No. 56. Unlike many other plaintiffs, Rusk County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rusk County's deadline to amend was in 2019.

Rusk County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rusk County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rusk County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Rusk County). That insignificant dispensing volume is much too low to support a finding of good cause for Rusk County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rusk County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rusk County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Rusk County filed its original complaint on November 7, 2017. *See County of Rusk v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45154-DAP, ECF No. 1. Despite filing its case years ago, Rusk County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date

Litigation Hold Implemented: Never). Litigating Rusk County's case would force the parties and the Court to waste time and resources ascertaining the extent of Rusk County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rusk County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rusk County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rusk County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rusk County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rusk County's proposed RICO claim against the PBMs has expired. Rusk County filed its original complaint on November 7, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Rusk v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45154-DAP, ECF No. 1. It is therefore indisputable that Rusk County knew of its RICO injury, at the very latest, the day it filed

a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Rusk County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rusk County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rusk County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 115. *County of Cherokee v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45155-DAP: Plaintiff Cherokee County, Texas

Cherokee County's untimely motion for leave to amend should be denied for several reasons. Cherokee County failed to provide notice of its proposed amendments through a proposed complaint. Cherokee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cherokee County's motion should be denied due to futility, as Cherokee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cherokee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cherokee County amended its complaint on March 14, 2019, after transfer to the MDL on December 20, 2017. *See County of Cherokee v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-

45155-DAP, ECF No. 46. Unlike many other plaintiffs, Cherokee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cherokee County's deadline to amend was in 2019. Cherokee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cherokee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cherokee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Cherokee County). That insignificant dispensing volume is much too low to support a finding of good cause for Cherokee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cherokee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cherokee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cherokee County filed its original complaint on November 20, 2017. *See County of Cherokee v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45155-DAP, ECF No. 1. Despite filing its case years ago, Cherokee County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cherokee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cherokee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cherokee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cherokee County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cherokee County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cherokee County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cherokee County of this deficiency on September 16, 2024 (*see* Exhibit B), but Cherokee County refused to amend or supplement its Fact Sheet. Under this Court's orders, Cherokee County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cherokee County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cherokee County's potential claims against them. Cherokee County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any

finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cherokee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cherokee County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cherokee County's proposed RICO claim against the PBMs has expired. Cherokee County filed its original complaint on November 20, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Cherokee v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45155-DAP, ECF No. 1. It is therefore indisputable that Cherokee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Cherokee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Cherokee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cherokee County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 116. *Township of Irvington v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45156-DAP: Plaintiff Irvington Township, New Jersey

Irvington Township's untimely motion for leave to amend should be denied for several reasons. Irvington Township failed to provide notice of its proposed amendments through a proposed complaint. Irvington Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Irvington Township's motion should be denied due to futility, as Irvington Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Irvington Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Irvington Township first amended its complaint on December 6, 2017. *See Township of Irvington v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45156-DAP, ECF No. 4. Unlike many other plaintiffs, Irvington Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Irvington Township's deadline to amend was in 2019. Irvington Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Irvington Township's lack of diligence in pursuing its claims negates any

finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Irvington Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Irvington Township). That insignificant dispensing volume is much too low to support a finding of good cause for Irvington Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Irvington Township's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Irvington Township to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Irvington Township previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Irvington Township of the PBM services Express Scripts provides and Irvington Township began receiving those services on January 2, 2006. *See id.* Inasmuch as Irvington Township seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am.

Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Irvington Township knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Irvington Township's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Irvington Township filed its original complaint on November 28, 2017. *See Township of Irvington v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45156-DAP, ECF No. 1. Despite filing its case years ago, Irvington Township *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Irvington Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Irvington Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Irvington Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Irvington Township therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Irvington Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Irvington Township, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Irvington Township's proposed RICO claim against the PBMs has expired. Irvington Township filed its original complaint on November 28, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Township of Irvington v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45156-DAP, ECF No. 1. It is therefore indisputable that Irvington Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Irvington Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Irvington Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Irvington Township, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

117. ***People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45157-DAP: Plaintiff Hamilton County, Illinois**

Hamilton County's untimely motion for leave to amend should be denied for several reasons. Hamilton County failed to provide notice of its proposed amendments through a proposed complaint. Hamilton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hamilton County's motion should be denied due to futility, as Hamilton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hamilton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hamilton County amended its complaint on March 16, 2019, after transfer to the MDL on December 21, 2017. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45157-DAP, ECF No. 15. Unlike many other plaintiffs, Hamilton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hamilton County's deadline to amend was in 2019. Hamilton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hamilton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hamilton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hamilton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hamilton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hamilton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.45% market share for Hamilton County). That insignificant dispensing volume is much too low to support a finding of good cause for Hamilton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hamilton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hamilton County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hamilton County's proposed RICO claim against the PBMs has expired. Hamilton County filed its original complaint on October 27, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45157-DAP, ECF No. 1. It is therefore indisputable that Hamilton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Hamilton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hamilton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hamilton County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**118.** *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:17-op-45158-DAP: Plaintiff Pulaski County, Illinois**

Pulaski County's untimely motion for leave to amend should be denied for several reasons. Pulaski County failed to provide notice of its proposed amendments through a proposed complaint. Pulaski County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pulaski County's motion should be denied due to futility, as Pulaski County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pulaski County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pulaski County amended its complaint on March 6, 2019, after transfer to the MDL on December 21, 2017. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45158-DAP, ECF No. 14. Unlike many other plaintiffs, Pulaski County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pulaski County's deadline to amend was in 2019. Pulaski County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pulaski County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pulaski County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pulaski County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pulaski County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pulaski County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Pulaski County). That insignificant dispensing volume is much too low to support a finding of good cause for Pulaski County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pulaski County filed its original complaint on November 17, 2017. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45158-DAP, ECF No. 1. Despite filing its case years ago, Pulaski County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold

Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pulaski County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pulaski County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pulaski County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pulaski County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pulaski County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pulaski County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pulaski County's proposed RICO claim against the PBMs has expired. Pulaski County filed its original complaint on November 17, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45158-DAP, ECF No. 1. It is therefore indisputable that Pulaski County

knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Pulaski County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pulaski County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pulaski County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 119. *County of Bowie v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45159-DAP: Plaintiff Bowie County, Texas

Bowie County's untimely motion for leave to amend should be denied for several reasons. Bowie County failed to provide notice of its proposed amendments through a proposed complaint. Bowie County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bowie County's motion should be denied due to futility, as Bowie County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bowie County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bowie County amended its complaint on March 14, 2019, after transfer to the MDL on December 21, 2017. *See County of Bowie v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45159-DAP, ECF

No. 83. Unlike many other plaintiffs, Bowie County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bowie County's deadline to amend was in 2019. Bowie County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bowie County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bowie County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Bowie County). That insignificant dispensing volume is much too low to support a finding of good cause for Bowie County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bowie County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bowie County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bowie County filed its original complaint on October 2, 2017. *See County of Bowie v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45159-

DAP, ECF No. 1. Despite filing its case years ago, Bowie County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Bowie County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bowie County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bowie County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bowie County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bowie County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bowie County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bowie County of this deficiency on September 16, 2024 (*see* Exhibit B), but Bowie County refused to amend or supplement its Fact Sheet. Under this Court's orders, Bowie County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bowie County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Bowie County's potential claims against them. Bowie County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bowie County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bowie County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bowie County's proposed RICO claim against the PBMs has expired. Bowie County filed its original complaint on October 2, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Bowie v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45159-DAP, ECF No. 1. It is therefore indisputable that Bowie County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, seven years before seeking leave to amend. Bowie County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bowie County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bowie County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 120. *County of Red River v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45160-DAP: Plaintiff Red River County, Texas

Red River County's untimely motion for leave to amend should be denied for several reasons. Red River County failed to provide notice of its proposed amendments through a proposed complaint. Red River County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Red River County's motion should be denied due to futility, as Red River County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Red River County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Red River County amended its complaint on March 14, 2019, after transfer to the MDL on December 21, 2017. *See County of Red River v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45160-DAP, ECF No. 58. Unlike many other plaintiffs, Red River County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Red River County's deadline to amend was in 2019. Red River County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Red River County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Red River County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Red River County). That insignificant dispensing volume is much too low to support a finding of good cause for Red River County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Red River County filed its original complaint on November 2, 2017. *See County of Red River v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45160-DAP, ECF No. 1. Despite filing its case years ago, Red River County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Red River County's case would force the parties and the Court to waste time and resources ascertaining the extent of Red River County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Red River County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Red River County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Red River County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Red River County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Red River County of this deficiency on September 16, 2024 (*see* Exhibit B), but Red River County refused to amend or supplement its Fact Sheet. Under this Court's orders, Red River County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Red River County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Red River County's potential claims against them. Red River County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Red River County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Red River County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Red River County's proposed RICO claim against the PBMs has expired. Red River County filed its original complaint on November 2, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Red River v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45160-DAP, ECF No. 1. It is therefore indisputable that Red River County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Red River County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Red River County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Red River County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 121. *County of Titus v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45161-DAP: Plaintiff Titus County, Texas

Titus County's untimely motion for leave to amend should be denied for several reasons. Titus County failed to provide notice of its proposed amendments through a proposed complaint. Titus County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Titus County's motion should be denied due to futility, as Titus County does not assert

any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Titus County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Titus County amended its complaint on March 14, 2019, after transfer to the MDL on December 21, 2017. *See County of Titus v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45161-DAP, ECF No. 57. Unlike many other plaintiffs, Titus County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Titus County's deadline to amend was in 2019. Titus County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Titus County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Titus County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Titus County). That insignificant dispensing volume is much too low to support a finding of good cause for Titus County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Titus County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Titus County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Titus County filed its original complaint on November 8, 2017. *See County of Titus v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45161-DAP, ECF No. 1. Despite filing its case years ago, Titus County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Titus County's case would force the parties and the Court to waste time and resources ascertaining the extent of Titus County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Titus County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Titus County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Titus County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Titus County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Titus County's proposed RICO claim against the PBMs has expired. Titus County filed its original complaint on November 8, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Titus v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45161-DAP, ECF No. 1. It is therefore indisputable that Titus County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Titus County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Titus County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Titus County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 122. *County of Lamar v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45162-DAP: Plaintiff Lamar County, Texas

Lamar County's untimely motion for leave to amend should be denied for several reasons. Lamar County failed to provide notice of its proposed amendments through a proposed complaint. Lamar County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lamar County's motion should be denied due to futility, as Lamar County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lamar County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lamar County amended its complaint on March 14, 2019, after transfer to the MDL on December 21, 2017. *See County of Lamar v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45162-DAP, ECF No. 58. Unlike many other plaintiffs, Lamar County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lamar County's deadline to amend was in 2019. Lamar County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lamar County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lamar County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Lamar County). That insignificant dispensing volume is much too low to support a finding of good cause for Lamar County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lamar County filed its original complaint on November 20, 2017. *See County of Lamar v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45162-DAP, ECF No. 1. Despite filing its case years ago, Lamar County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lamar County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lamar County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lamar County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lamar County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lamar County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lamar County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lamar County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lamar County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lamar County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lamar County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lamar

County's potential claims against them. Lamar County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lamar County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lamar County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lamar County's proposed RICO claim against the PBMs has expired. Lamar County filed its original complaint on November 20, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Lamar v. Purdue Pharma L.P. et al.*, Case No. 1:17-op-45162-DAP, ECF No. 1. It is therefore indisputable that Lamar County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Lamar County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery

of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));
*see* Section III.B.4, above. Lamar County's request for leave to amend to add a RICO claim should
be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend
because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lamar County, a municipality in Texas, lacks standing to state
a claim for relief under any of the New York laws referenced in the City of Rochester's complaint.
*See* Section III.B.6, above.

### 123. *Pierce County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45165-DAP: Plaintiff Pierce County, Wisconsin

Pierce County's untimely motion for leave to amend should be denied for several reasons.
Pierce County failed to provide notice of its proposed amendments through a proposed complaint.
Pierce County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure
to timely implement a litigation hold, and because its untimely motion would unduly prejudice the
PBMs. Moreover, Pierce County's motion should be denied due to futility, as Pierce County does
not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the
statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pierce County was on notice of its claims against the PBMs for years
but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,
Pierce County first amended its complaint on May 25, 2018. *See Pierce County v. Purdue Pharma
LP et al.*, Case No. 1:17-op-45165-DAP, ECF No. 6. Pierce County amended its complaint again
on March 15, 2019. *See Pierce County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45165-DAP,
ECF No. 10. Unlike many other plaintiffs, Pierce County declined to add claims against the PBMs
in its amended complaints. *See* Section II.A.1, above. Pierce County's deadline to amend was in
2019. Pierce County waited five years after its deadline to amend to seek leave to assert claims

against the PBMs. Pierce County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pierce County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Pierce County). That insignificant dispensing volume is much too low to support a finding of good cause for Pierce County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Pierce County filed its original complaint on November 7, 2017, but waited until May 2, 2018 to implement a litigation hold. *See Pierce County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45165-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 2, 2018). Pierce County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pierce County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pierce County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pierce County's proposed RICO claim against the PBMs has expired. Pierce County filed its original complaint on November 7, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Pierce County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45165-DAP, ECF No. 1. Even assuming *arguendo* that Pierce County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 7, 2021. Pierce County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pierce County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pierce County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**124.** ***Waupaca County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45166-DAP: Plaintiff Waupaca County, Wisconsin**

Waupaca County's untimely motion for leave to amend should be denied for several reasons. Waupaca County failed to provide notice of its proposed amendments through a proposed complaint. Waupaca County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Waupaca County's motion should be denied due to futility, as Waupaca County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Waupaca County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Waupaca County first amended its complaint on May 25, 2018. *See Waupaca County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45166-DAP, ECF No. 6. Waupaca County amended its complaint again on March 15, 2019. *See Waupaca County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45166-DAP, ECF No. 8. Unlike many other plaintiffs, Waupaca County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Waupaca County's deadline to amend was in 2019. Waupaca County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Waupaca County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Waupaca County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Waupaca County). That insignificant dispensing volume is much too low to support a finding of good cause for Waupaca County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Waupaca County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Waupaca County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Waupaca County filed its original complaint on November 7, 2017. *See Waupaca County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45166-DAP, ECF No. 1. Despite filing its case years ago, Waupaca County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Waupaca County's case would force the parties and the Court to waste time and resources ascertaining the extent of Waupaca County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Waupaca County's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Waupaca County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Waupaca County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Waupaca County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Waupaca County's proposed RICO claim against the PBMs has expired. Waupaca County filed its original complaint on November 7, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Waupaca County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45166-DAP, ECF No. 1. Even assuming *arguendo* that Waupaca County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 7, 2021. Waupaca County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Waupaca County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Waupaca County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 125. *Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45167-DAP: Plaintiff Lincoln County, Wisconsin

Lincoln County's untimely motion for leave to amend should be denied for several reasons. Lincoln County failed to provide notice of its proposed amendments through a proposed complaint. Lincoln County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lincoln County's motion should be denied due to futility, as Lincoln County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lincoln County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lincoln County first amended its complaint on May 25, 2018. *See Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45167-DAP, ECF No. 6. Lincoln County amended its complaint again on March 15, 2019. *See Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45167-DAP, ECF No. 10. Unlike many other plaintiffs, Lincoln County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Lincoln County's deadline to amend was in 2019. Lincoln County waited five years after its deadline to amend to

seek leave to assert claims against the PBMs. Lincoln County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lincoln County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Lincoln County). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lincoln County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lincoln County filed its original complaint on November 7, 2017, but waited until April 30, 2018 to implement a litigation hold. *See Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45167-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Lincoln County's

violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lincoln County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lincoln County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lincoln County's proposed RICO claim against the PBMs has expired. Lincoln County filed its original complaint on November 7, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:17-op-45167-DAP, ECF No. 1. Even assuming *arguendo* that Lincoln County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 7, 2021. Lincoln County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury,

not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lincoln County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lincoln County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 126. *Clark County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45172-DAP: Plaintiff Clark County, Kentucky

Clark County's untimely motion for leave to amend should be denied for several reasons. Clark County failed to provide notice of its proposed amendments through a proposed complaint. Clark County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Clark County's motion should be denied due to futility, as Clark County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clark County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clark County amended its complaint on March 12, 2019, after transfer to the MDL on December 28, 2017. *See Clark County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45172-DAP, ECF No. 23. Unlike many other plaintiffs, Clark County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Clark County's deadline to amend was in 2019. Clark County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clark County's lack of diligence in pursuing its claims

negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clark County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Clark County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Clark County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clark County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Clark County). That insignificant dispensing volume is much too low to support a finding of good cause for Clark County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clark County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clark County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clark County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clark County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clark County's proposed RICO claim against the PBMs has expired. Clark County filed its original complaint on December 1, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Clark County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45172-DAP, ECF No. 1. It is therefore indisputable that Clark County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before

seeking leave to amend. Clark County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clark County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clark County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 127. *Scott County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45173-DAP: Plaintiff Scott County, Kentucky

Scott County's untimely motion for leave to amend should be denied for several reasons. Scott County failed to provide notice of its proposed amendments through a proposed complaint. Scott County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Scott County's motion should be denied due to futility, as Scott County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scott County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scott County amended its complaint on March 9, 2019, after transfer to the MDL on December 28, 2017. *See Scott County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45173-DAP, ECF No. 23. Unlike many other plaintiffs, Scott County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Scott County's

deadline to amend was in 2019. Scott County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scott County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Scott County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Scott County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Scott County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Scott County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.01% market share for Scott County). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scott County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scott County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scott County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scott County's proposed RICO claim against the PBMs has expired. Scott County filed its original complaint on December 2, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Scott County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-

45173-DAP, ECF No. 1. It is therefore indisputable that Scott County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Scott County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scott County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Scott County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

128. ***Woodford County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45174-DAP: Plaintiff Woodford County, Kentucky**

Woodford County's untimely motion for leave to amend should be denied for several reasons. Woodford County failed to provide notice of its proposed amendments through a proposed complaint. Woodford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Woodford County's motion should be denied due to futility, as Woodford County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Woodford County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Woodford County amended its complaint on March 9, 2019, after transfer to the MDL on December 28, 2017. *See Woodford County Fiscal Court v. Amerisourcebergen Drug*

*Corporation et al.*, Case No. 1:17-op-45174-DAP, ECF No. 23. Unlike many other plaintiffs, Woodford County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Woodford County's deadline to amend was in 2019. Woodford County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Woodford County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Woodford County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Woodford County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Woodford County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

658

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Woodford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Woodford County). That insignificant dispensing volume is much too low to support a finding of good cause for Woodford County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Woodford County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Woodford County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Woodford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Woodford County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Woodford County's proposed RICO claim against the PBMs has expired. Woodford County filed its original complaint on December 2, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Woodford County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:17-op-45174-DAP, ECF No. 1. It is therefore indisputable that Woodford County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Woodford County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Woodford County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Woodford County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 129. *Local 404 Teamsters Health Service and Insurance Plan v. Purdue Pharma*, Case No. 1:18-op-45001-DAP: Plaintiff Local 404 Teamsters Health Service and Insurance Plan, Massachusetts

Local 404 Teamsters Health Service and Insurance Plan's untimely motion for leave to amend should be denied for several reasons. Local 404 Teamsters Health Service and Insurance Plan failed to provide notice of its proposed amendments through a proposed complaint. Local 404 Teamsters Health Service and Insurance Plan also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Local 404 Teamsters Health Service and Insurance Plan's motion should be denied due to futility, as Local 404 Teamsters Health Service and

Insurance Plan does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Local 404 Teamsters Health Service and Insurance Plan was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Local 404 Teamsters Health Service and Insurance Plan filed its original complaint on November 28, 2017 and the case was transferred to the MDL on January 3, 2018. *See Local 404 Teamsters Health Service and Insurance Plan v. Purdue Pharma*, Case No. 1:18-op-45001-DAP, ECF No. 8. Local 404 Teamsters Health Service and Insurance Plan could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Local 404 Teamsters Health Service and Insurance Plan elected not to do so. Instead, Local 404 Teamsters Health Service and Insurance Plan waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Local 404 Teamsters Health Service and Insurance Plan's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Local 404 Teamsters Health Service and Insurance Plan filed its original complaint on November 28, 2017, but waited until April 25, 2018 to implement a litigation hold. *See Local 404 Teamsters Health Service and Insurance Plan v. Purdue Pharma*, Case No. 1:18-op-45001-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date

Litigation Hold Implemented: April 25, 2018). Local 404 Teamsters Health Service and Insurance Plan's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Local 404 Teamsters Health Service and Insurance Plan's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Local 404 Teamsters Health Service and Insurance Plan, a third party payor in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Local 404 Teamsters Health Service and Insurance Plan's proposed RICO claim against the PBMs has expired. Local 404 Teamsters Health Service and Insurance Plan filed its original complaint on November 28, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Local 404 Teamsters Health Service and Insurance Plan v. Purdue Pharma*, Case No. 1:18-op-45001-DAP, ECF No. 1. It is therefore indisputable that Local 404 Teamsters Health Service and Insurance Plan knew of its RICO injury, at the very latest, the day it filed a complaint asserting a

RICO claim, six and a half years before seeking leave to amend. Local 404 Teamsters Health Service and Insurance Plan's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Local 404 Teamsters Health Service and Insurance Plan's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Local 404 Teamsters Health Service and Insurance Plan's public-nuisance claim against the PBMs is therefore time-barred because Local 404 Teamsters Health Service and Insurance Plan sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on November 28, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Local 404 Teamsters Health Service and Insurance Plan, a third party payor in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

130. ***People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45003-DAP: Plaintiff Hardin County, Illinois**

Hardin County's untimely motion for leave to amend should be denied for several reasons. Hardin County failed to provide notice of its proposed amendments through a proposed complaint. Hardin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hardin County's motion should be denied due to futility, as Hardin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hardin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hardin County amended its complaint on March 6, 2019, after transfer to the MDL on January 5, 2018. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45003-DAP, ECF No. 17. Unlike many other plaintiffs, Hardin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hardin County's deadline to amend was in 2019. Hardin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hardin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hardin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hardin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

664

much earlier. Hardin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hardin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Hardin County). That insignificant dispensing volume is much too low to support a finding of good cause for Hardin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hardin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hardin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hardin County filed its original complaint on October 26, 2017. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45003-DAP, ECF No. 1. Despite filing its case years ago, Hardin County

*never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hardin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hardin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hardin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hardin County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hardin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hardin County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hardin County's proposed RICO claim against the PBMs has expired. Hardin County filed its original complaint on October 26, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45003-DAP, ECF No. 1. It is therefore indisputable that Hardin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Hardin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hardin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hardin County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

131. ***People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45004-DAP: Plaintiff Bond County, Illinois**

Bond County's untimely motion for leave to amend should be denied for several reasons. Bond County failed to provide notice of its proposed amendments through a proposed complaint. Bond County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Bond County's motion should be denied due to futility, as Bond County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bond County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bond County amended its complaint on March 6, 2019, after transfer to the MDL on January 5,

2018. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45004-DAP, ECF No. 18. Unlike many other plaintiffs, Bond County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bond County's deadline to amend was in 2019. Bond County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bond County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bond County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bond County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bond County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bond County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Bond County). That insignificant dispensing volume is much too low to support a finding of good cause for Bond County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bond County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bond County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bond County's proposed RICO claim against the PBMs has expired. Bond County filed its original complaint on October 26, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45004-DAP, ECF No. 1. It is therefore indisputable that Bond County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Bond County's RICO claim is therefore time-barred by RICO's

four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bond County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bond County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

132.    *Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, **Case No. 1:18-op-45005-DAP: Plaintiff Cherokee Town, Alabama**

Cherokee Town's untimely motion for leave to amend should be denied for several reasons. Cherokee Town failed to provide notice of its proposed amendments through a proposed complaint. Cherokee Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cherokee Town's motion should be denied due to futility, as Cherokee Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cherokee Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cherokee Town amended its complaint on March 15, 2019, after transfer to the MDL on January 10, 2018, as well as on March 15, 2019. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF Nos. 12, 13. Unlike many other plaintiffs, Cherokee

Town declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Cherokee Town's deadline to amend was in 2019. Cherokee Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cherokee Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cherokee Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Cherokee Town). That insignificant dispensing volume is much too low to support a finding of good cause for Cherokee Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cherokee Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cherokee Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cherokee Town filed its original complaint on December 13, 2017. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No.

1:18-op-45005-DAP, ECF No. 1. Despite filing its case years ago, Cherokee Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cherokee Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Cherokee Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cherokee Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cherokee Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cherokee Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cherokee Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cherokee Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Cherokee Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Cherokee Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cherokee Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cherokee Town's potential claims against them. Cherokee Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cherokee Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cherokee Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cherokee Town's proposed RICO claim against the PBMs has expired. Cherokee Town filed its original complaint on December 13, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF No. 1. Even assuming *arguendo* that Cherokee Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 13, 2021. Cherokee Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cherokee Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Cherokee Town's public-nuisance claim against the PBMs is therefore time-barred because Cherokee Town sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on December 13, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Cherokee Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 133. *Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP: Plaintiff Colbert County, Alabama

Colbert County's untimely motion for leave to amend should be denied for several reasons. Colbert County failed to provide notice of its proposed amendments through a proposed complaint. Colbert County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Colbert County's motion should be denied due to futility, as Colbert County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Colbert County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Colbert County amended its complaint on March 15, 2019, after transfer to the MDL on January 10, 2018, as well as on March 15, 2019. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF Nos. 12, 13. Unlike many other plaintiffs, Colbert County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Colbert County's deadline to amend was in 2019. Colbert County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Colbert County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Colbert County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Colbert County). That insignificant dispensing volume is much too low to support a finding of good cause for Colbert County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Colbert County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Colbert County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Colbert County filed its original complaint on December 13, 2017. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF No. 1. Despite filing its case years ago, Colbert County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Colbert County's case would force the parties and the Court to waste time and resources ascertaining the extent of Colbert County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Colbert County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Colbert County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Colbert County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Colbert County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Colbert County of this deficiency on September 16, 2024 (*see* Exhibit B), but Colbert County refused to amend or supplement its Fact Sheet. Under this Court's orders, Colbert County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Colbert County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Colbert

County's potential claims against them. Colbert County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Colbert County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Colbert County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Colbert County's proposed RICO claim against the PBMs has expired. Colbert County filed its original complaint on December 13, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF No. 1. Even assuming *arguendo* that Colbert County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 13, 2021. Colbert County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery

of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Colbert County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Colbert County's public-nuisance claim against the PBMs is therefore time-barred because Colbert County sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on December 13, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Colbert County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Colbert County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

134. ***Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP: Plaintiff Franklin County, Alabama**

Franklin County's untimely motion for leave to amend should be denied for several reasons. Franklin County failed to provide notice of its proposed amendments through a proposed complaint. Franklin County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin County's motion should be denied due to futility, as Franklin County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Franklin County amended its complaint on March 15, 2019, after transfer to the MDL on January 10, 2018, as well as on March 15, 2019. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF Nos. 12, 13. Unlike many other plaintiffs, Franklin County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Franklin County's deadline to amend was in 2019. Franklin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Franklin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Franklin County). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Franklin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Franklin County filed its original complaint on December 13, 2017. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF No. 1. Despite filing its case years ago, Franklin County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Franklin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Franklin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Franklin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Franklin County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Franklin County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Franklin County's health plans, carriers,

third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Franklin County of this deficiency on September 16, 2024 (*see* Exhibit B), but Franklin County refused to amend or supplement its Fact Sheet. Under this Court's orders, Franklin County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Franklin County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Franklin County's potential claims against them. Franklin County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin County's proposed RICO claim against the PBMs has expired. Franklin County filed its original complaint on

681

December 13, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF No. 1. Even assuming *arguendo* that Franklin County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 13, 2021. Franklin County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Franklin County's public-nuisance claim against the PBMs is therefore time-barred because Franklin County sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on December 13, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Franklin County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Franklin County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

>    **135.** ***Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP: Plaintiff Tuscumbia City, Alabama**

Tuscumbia City's untimely motion for leave to amend should be denied for several reasons. Tuscumbia City failed to provide notice of its proposed amendments through a proposed complaint. Tuscumbia City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tuscumbia City's motion should be denied due to futility, as Tuscumbia City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tuscumbia City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tuscumbia City amended its complaint on March 15, 2019, after transfer to the MDL on January 10, 2018, as well as on March 15, 2019. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF Nos. 12, 13. Unlike many other plaintiffs, Tuscumbia City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Tuscumbia City's deadline to amend was in 2019. Tuscumbia City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tuscumbia City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because

plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tuscumbia City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Tuscumbia City). That insignificant dispensing volume is much too low to support a finding of good cause for Tuscumbia City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tuscumbia City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tuscumbia City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tuscumbia City filed its original complaint on December 13, 2017. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF No. 1. Despite filing its case years ago, Tuscumbia City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Tuscumbia City's case would force the parties and the Court to waste time and resources ascertaining the extent of Tuscumbia City's document destruction and the appropriate sanctions—just as the parties were forced to do

in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tuscumbia City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tuscumbia City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Tuscumbia City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Tuscumbia City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Tuscumbia City of this deficiency on September 16, 2024 (*see* Exhibit B), but Tuscumbia City refused to amend or supplement its Fact Sheet. Under this Court's orders, Tuscumbia City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Tuscumbia City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Tuscumbia City's potential claims against them. Tuscumbia City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tuscumbia City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tuscumbia City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tuscumbia City's proposed RICO claim against the PBMs has expired. Tuscumbia City filed its original complaint on December 13, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Cherokee Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45005-DAP, ECF No. 1. Even assuming *arguendo* that Tuscumbia City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 13, 2021. Tuscumbia City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tuscumbia City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Tuscumbia City's public-nuisance claim against the PBMs is therefore time-barred because Tuscumbia City sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on December 13, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tuscumbia City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 136. *New Hanover County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45006-DAP: Plaintiff New Hanover County, North Carolina

New Hanover County's untimely motion for leave to amend should be denied for several reasons. New Hanover County failed to provide notice of its proposed amendments through a proposed complaint. New Hanover County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, New Hanover County's motion should be denied due to futility, as New Hanover County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** New Hanover County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, New Hanover County amended its complaint on March 11, 2019, after transfer to the MDL on January 10, 2018. *See New Hanover County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45006-DAP, ECF No. 7. Unlike many other plaintiffs, New Hanover County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. New Hanover County's deadline to amend was in 2019. New Hanover County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. New Hanover County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** New Hanover County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. New Hanover County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. New Hanover County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to New Hanover County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for New Hanover County). That insignificant dispensing volume is much too low to support a finding of good cause for New Hanover County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to New Hanover County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for New Hanover County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But New Hanover County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** New Hanover County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for New Hanover County's proposed RICO claim against the PBMs has expired. New Hanover County filed its original complaint on December 14, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See New Hanover County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45006-DAP, ECF No. 1. It is therefore indisputable that New Hanover

County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. New Hanover County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. New Hanover County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** New Hanover County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 137. ***People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45007-DAP: Plaintiff Shelby County, Illinois**

Shelby County's untimely motion for leave to amend should be denied for several reasons. Shelby County failed to provide notice of its proposed amendments through a proposed complaint. Shelby County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Shelby County's motion should be denied due to futility, as Shelby County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Shelby County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Shelby County amended its complaint on March 15, 2019, after transfer to the MDL on January 10, 2018. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*,

Case No. 1:18-op-45007-DAP, ECF No. 11. Unlike many other plaintiffs, Shelby County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Shelby County's deadline to amend was in 2019. Shelby County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Shelby County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Shelby County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Shelby County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Shelby County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

691

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Shelby County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Shelby County). That insignificant dispensing volume is much too low to support a finding of good cause for Shelby County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Shelby County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Shelby County of the PBM services Express Scripts provides and Shelby County began receiving those services on December 17, 2008. *See id.* Inasmuch as Shelby County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Shelby County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Shelby County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shelby County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shelby County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Shelby County's proposed RICO claim against the PBMs has expired. Shelby County filed its original complaint on December 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45007-DAP, ECF No. 1. It is therefore indisputable that Shelby County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Shelby County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shelby County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Shelby County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

138. ***Fiscal Court of Bullitt County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45009-DAP: Plaintiff Bullitt County, Kentucky**

Bullitt County's untimely motion for leave to amend should be denied for several reasons. Bullitt County failed to provide notice of its proposed amendments through a proposed complaint. Bullitt County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bullitt County's motion should be denied due to futility, as Bullitt County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bullitt County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bullitt County amended its complaint on March 14, 2019, after transfer to the MDL on January 10, 2018. *See Fiscal Court of Bullitt County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45009-DAP, ECF No. 14. Unlike many other plaintiffs, Bullitt County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bullitt County's deadline to amend was in 2019. Bullitt County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bullitt County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bullitt County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

694

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bullitt County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bullitt County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bullitt County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Bullitt County). That insignificant dispensing volume is much too low to support a finding of good cause for Bullitt County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bullitt County filed its original complaint on December 1, 2017. *See Fiscal Court of Bullitt County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45009-DAP, ECF No. 1. Despite filing its case years ago, Bullitt County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Bullitt County's case

would force the parties and the Court to waste time and resources ascertaining the extent of Bullitt County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bullitt County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bullitt County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bullitt County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bullitt County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bullitt County's proposed RICO claim against the PBMs has expired. Bullitt County filed its original complaint on December 1, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Bullitt County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45009-DAP, ECF No. 1. It is therefore indisputable that Bullitt County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years

before seeking leave to amend. Bullitt County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bullitt County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bullitt County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 139. *Fiscal Court of Hopkins County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45010-DAP: Plaintiff Hopkins County, Kentucky**

Hopkins County's untimely motion for leave to amend should be denied for several reasons. Hopkins County failed to provide notice of its proposed amendments through a proposed complaint. Hopkins County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hopkins County's motion should be denied due to futility, as Hopkins County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hopkins County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hopkins County amended its complaint on March 9, 2019, after transfer to the MDL on January 11, 2018. *See Fiscal Court of Hopkins County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45010-DAP, ECF No. 35. Unlike many other plaintiffs, Hopkins County

declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hopkins County's deadline to amend was in 2019. Hopkins County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hopkins County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hopkins County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hopkins County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hopkins County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Hopkins County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Hopkins County). That insignificant dispensing volume is much too low to support a finding of good cause for Hopkins County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hopkins County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hopkins County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hopkins County filed its original complaint on December 1, 2017. *See Fiscal Court of Hopkins County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45010-DAP, ECF No. 1. Despite filing its case years ago, Hopkins County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hopkins County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hopkins County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hopkins County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hopkins County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hopkins County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hopkins County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hopkins County's proposed RICO claim against the PBMs has expired. Hopkins County filed its original complaint on December 1, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Hopkins County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45010-DAP, ECF No. 1. It is therefore indisputable that Hopkins County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Hopkins County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hopkins County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hopkins County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 140. *City of Opp, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45011-DAP: Plaintiff Opp City, Alabama

Opp City's untimely motion for leave to amend should be denied for several reasons. Opp City failed to provide notice of its proposed amendments through a proposed complaint. Opp City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Opp City's motion should be denied due to futility, as Opp City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Opp City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Opp City amended its complaint on March 7, 2019, after transfer to the MDL on January 11, 2018. *See City of Opp, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45011-DAP, ECF No. 21. Unlike many other plaintiffs, Opp City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Opp City's deadline to amend was in 2019. Opp City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Opp City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Opp City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Opp City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Opp City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Opp City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Opp City). That insignificant dispensing volume is much too low to support a finding of good cause for Opp City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Opp City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Opp City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Opp City filed its original complaint on December 14, 2017. *See City of Opp, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45011-DAP, ECF No. 1. Despite filing its case years ago, Opp City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Opp City's case would force the parties and the Court to waste time and resources ascertaining the extent of Opp City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Opp City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Opp City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Opp City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Opp City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Opp City's proposed RICO claim against the PBMs has expired. Opp City filed its original complaint on December 14, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Opp, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45011-DAP, ECF No. 1. It is therefore indisputable that Opp City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Opp City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Opp City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Opp City's public-nuisance claim against the PBMs is therefore time-barred because Opp City sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on December 14, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Opp City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **141.** ***Ashland County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45012-DAP: Plaintiff Ashland County, Ohio**

Ashland County's untimely motion for leave to amend should be denied for several reasons. Ashland County failed to provide notice of its proposed amendments through a proposed complaint. Ashland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Ashland County's motion should be denied due to futility, as Ashland County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ashland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ashland County amended its complaint on March 6, 2019, after transfer to the MDL on January 18, 2018. *See Ashland County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45012-DAP, ECF No. 28. Unlike many other plaintiffs, Ashland County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ashland County's deadline to amend was in 2019. Ashland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ashland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ashland County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ashland County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ashland County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ashland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Ashland County). That insignificant dispensing volume is much too low to support a finding of good cause for Ashland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ashland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Ashland County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Ashland County is a plaintiff in Ohio. Ashland County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at \*1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Ashland County's proposed RICO claim against the PBMs has expired. Ashland County filed its original complaint on December 8, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Ashland County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45012-DAP, ECF No. 1. Even assuming *arguendo* that Ashland County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 8, 2021. Ashland County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ashland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ashland County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

142. ***American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45013-DAP: Plaintiff American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, New York**

American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan's untimely motion for leave to amend should be denied as moot because American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan already amended its complaint to add claims against the PBMs, despite the PBMs' objections. *See* MDL ECF Nos. 5638, 5663, 5697. To the extent American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan seeks to allege additional claims other than those set forth in its September 20, 2024 amended complaint, American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan has made no attempt to establish good cause.

143. ***Yadkin County, North Carolina v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45014-DAP: Plaintiff Yadkin County, North Carolina**

Yadkin County's untimely motion for leave to amend should be denied for several reasons. Yadkin County failed to provide notice of its proposed amendments through a proposed complaint. Yadkin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the

PBMs. Moreover, Yadkin County's motion should be denied due to futility, as Yadkin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Yadkin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Yadkin County amended its complaint on March 12, 2019, after transfer to the MDL on January 11, 2018. *See Yadkin County, North Carolina v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45014-DAP, ECF No. 6. Unlike many other plaintiffs, Yadkin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Yadkin County's deadline to amend was in 2019. Yadkin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Yadkin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Yadkin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Yadkin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Yadkin County fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Yadkin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Yadkin County). That insignificant dispensing volume is much too low to support a finding of good cause for Yadkin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Yadkin County filed its original complaint on December 1, 2017, but waited until March 5, 2018 to implement a litigation hold. *See Yadkin County, North Carolina v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45014-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: March 5, 2018). Yadkin County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Yadkin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Yadkin County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Yadkin County's proposed RICO claim against the PBMs has expired. Yadkin County filed its original complaint on December 1, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Yadkin County, North Carolina v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45014-DAP, ECF No. 1. It is therefore indisputable that Yadkin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Yadkin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Yadkin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Yadkin County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 144. *Rockingham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45015-DAP: Plaintiff Rockingham County, North Carolina

Rockingham County's untimely motion for leave to amend should be denied for several reasons. Rockingham County failed to provide notice of its proposed amendments through a proposed complaint. Rockingham County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rockingham County's motion should be denied due to futility, as Rockingham County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rockingham County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rockingham County amended its complaint on March 12, 2019, after transfer to the MDL on January 11, 2018. *See Rockingham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45015-DAP, ECF No. 7. Unlike many other plaintiffs, Rockingham County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rockingham County's deadline to amend was in 2019. Rockingham County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rockingham County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rockingham County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Rockingham County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Rockingham County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rockingham County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Rockingham County). That insignificant dispensing volume is much too low to support a finding of good cause for Rockingham County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rockingham County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rockingham County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Rockingham County filed its original complaint on December 12, 2017. *See Rockingham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45015-DAP, ECF No. 1. Despite filing its case years ago, Rockingham County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Rockingham County's case would force the parties and the Court to waste time and resources ascertaining the extent of Rockingham County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rockingham County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rockingham County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rockingham County's

delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rockingham County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rockingham County's proposed RICO claim against the PBMs has expired. Rockingham County filed its original complaint on December 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rockingham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45015-DAP, ECF No. 1. It is therefore indisputable that Rockingham County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Rockingham County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rockingham County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rockingham County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**145.** *City of Greenfield, v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45017-DAP: Plaintiff City of Greenfield, Massachusetts**

City of Greenfield's untimely motion for leave to amend should be denied for several reasons. City of Greenfield failed to provide notice of its proposed amendments through a proposed complaint. City of Greenfield also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, City of Greenfield's motion should be denied due to futility, as City of Greenfield does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** City of Greenfield was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, City of Greenfield amended its complaint on March 6, 2019, after transfer to the MDL on January 11, 2018. *See City of Greenfield, v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45017-DAP, ECF No. 23. Unlike many other plaintiffs, City of Greenfield declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. City of Greenfield's deadline to amend was in 2019. City of Greenfield waited five years after its deadline to amend to seek leave to assert claims against the PBMs. City of Greenfield's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** City of Greenfield cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. City of Greenfield, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. City of Greenfield fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to City of Greenfield's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for City of Greenfield). That insignificant dispensing volume is much too low to support a finding of good cause for City of Greenfield to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to City of Greenfield's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for City of Greenfield to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** City of Greenfield violated its basic duty to implement a timely litigation hold. City of Greenfield filed its original complaint on December 14, 2017, but waited until December 18, 2018 to implement a litigation hold—one year later. *See City of Greenfield, v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45017-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 18, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating City of Greenfield's case would force the parties and the Court to waste time and resources ascertaining the extent of City of Greenfield's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by City of Greenfield's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and City of Greenfield therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But City of Greenfield's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** City of Greenfield, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for City of Greenfield's proposed RICO claim against the PBMs has expired. City of Greenfield filed its original complaint on December 14, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Greenfield, v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45017-DAP, ECF No. 1. It is therefore indisputable that City of Greenfield knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. City of Greenfield's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. City of Greenfield's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. City of Greenfield's public-nuisance claim against the PBMs is therefore time-barred because City of Greenfield sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on December 14, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** City of Greenfield, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 146. *Rowan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45018-DAP: Plaintiff Rowan County, Kentucky

Rowan County's untimely motion for leave to amend should be denied for several reasons. Rowan County failed to provide notice of its proposed amendments through a proposed complaint. Rowan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Rowan County's motion should be denied due to futility, as Rowan County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rowan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rowan County amended its complaint on March 9, 2019, after transfer to the MDL on January 11, 2018. *See Rowan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45018-DAP, ECF No. 24. Unlike many other plaintiffs, Rowan County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rowan County's deadline to amend was in 2019. Rowan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rowan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion

to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rowan County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Rowan County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Rowan County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rowan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Rowan County). That insignificant dispensing volume is much too low to support a finding of good cause for Rowan County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rowan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rowan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rowan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rowan County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rowan County's proposed RICO claim against the PBMs has expired. Rowan County filed its original complaint on December 2, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rowan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45018-DAP, ECF No. 1. It is therefore indisputable that Rowan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half

years before seeking leave to amend. Rowan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rowan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rowan County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 147. *Houston County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45019-DAP: Plaintiff Houston County, Alabama

Houston County's untimely motion for leave to amend should be denied for several reasons. Houston County failed to provide notice of its proposed amendments through a proposed complaint. Houston County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Houston County's motion should be denied due to futility, as Houston County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Houston County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Houston County filed its original complaint on December 14, 2017 and the case was transferred to the MDL on January 11, 2018. *See Houston County, Alabama v. Purdue Pharma L.P. et al.*,

Case No. 1:18-op-45019-DAP, ECF No. 24. Houston County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Houston County elected not to do so. Instead, Houston County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Houston County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Houston County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Houston County). That insignificant dispensing volume is much too low to support a finding of good cause for Houston County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Houston County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Houston County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Houston County filed its original complaint on December 14, 2017. *See Houston County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45019-DAP, ECF No. 1. Despite filing its case years ago, Houston County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Houston County's case would force the parties and the Court to waste time and resources ascertaining the extent of Houston County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Houston County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Houston County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Houston County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Houston County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Houston County of this deficiency on September 16, 2024 (*see* Exhibit B), but Houston County refused to amend or supplement its Fact Sheet. Under this Court's orders, Houston County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Houston County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Houston County's potential claims against them. Houston County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause

and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Houston County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Houston County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Houston County's proposed RICO claim against the PBMs has expired. Houston County filed its original complaint on December 14, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Houston County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45019-DAP, ECF No. 1. It is therefore indisputable that Houston County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Houston County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Houston County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Houston County's public-nuisance claim against the PBMs is therefore time-barred because Houston County sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on December 14, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Houston County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Houston County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 148. *City of Greenville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45023-DAP: Plaintiff Greenville City, Alabama

Greenville City's untimely motion for leave to amend should be denied for several reasons. Greenville City failed to provide notice of its proposed amendments through a proposed complaint. Greenville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greenville City's motion should

be denied due to futility, as Greenville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greenville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greenville City filed its original complaint on December 13, 2017 and the case was transferred to the MDL on January 11, 2018. *See City of Greenville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45023-DAP, ECF No. 25. Greenville City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Greenville City elected not to do so. Instead, Greenville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Greenville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Greenville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Greenville City). That insignificant dispensing volume is much too low to support a finding of good cause for Greenville City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Greenville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Greenville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Greenville City filed its original complaint on December 13, 2017. *See City of Greenville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45023-DAP, ECF No. 1. Despite filing its case years ago, Greenville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Greenville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Greenville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Greenville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Greenville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Greenville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Greenville City's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Greenville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Greenville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Greenville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Greenville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Greenville City's potential claims against them. Greenville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greenville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greenville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greenville City's proposed RICO claim against the PBMs has expired. Greenville City filed its original complaint on

December 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Greenville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45023-DAP, ECF No. 1. It is therefore indisputable that Greenville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Greenville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greenville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Greenville City's public-nuisance claim against the PBMs is therefore time-barred because Greenville City sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on December 13, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Greenville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

149.    ***People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45024-DAP: Plaintiff White County, Illinois**

White County's untimely motion for leave to amend should be denied for several reasons. White County failed to provide notice of its proposed amendments through a proposed complaint. White County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, White County's motion should be denied due to futility, as White County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** White County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, White County amended its complaint on March 6, 2019, after transfer to the MDL on January 11, 2018. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45024-DAP, ECF No. 12. Unlike many other plaintiffs, White County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. White County's deadline to amend was in 2019. White County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. White County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** White County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. White County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. White County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to White County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for White County). That insignificant dispensing volume is much too low to support a finding of good cause for White County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** White County violated its basic duty to implement a timely litigation hold. White County filed its original complaint on December 12, 2017, but waited until September 25, 2024 to implement a litigation hold—nearly seven years later. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45024-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold

Implemented: September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating White County's case would force the parties and the Court to waste time and resources ascertaining the extent of White County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by White County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and White County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But White County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** White County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for White County's proposed RICO claim against the PBMs has expired. White County filed its original complaint on December 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45024-DAP, ECF No. 1. It is therefore indisputable that White County knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. White County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. White County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** White County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 150. ***Sedgwick County Board of Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45025-DAP: Plaintiff Sedgwick County, Kansas**

Sedgwick County's untimely motion for leave to amend should be denied for several reasons. Sedgwick County failed to provide notice of its proposed amendments through a proposed complaint. Sedgwick County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sedgwick County's motion should be denied due to futility, as Sedgwick County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sedgwick County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sedgwick County amended its complaint on March 14, 2019, after transfer to the MDL on January 12, 2018. *See Sedgwick County Board of Commissioners v. Amerisourcebergen Drug*

*Corporation et al.*, Case No. 1:18-op-45025-DAP, ECF No. 7. Unlike many other plaintiffs, Sedgwick County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sedgwick County's deadline to amend was in 2019. Sedgwick County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sedgwick County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sedgwick County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sedgwick County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sedgwick County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sedgwick County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Sedgwick County). That insignificant dispensing volume is much too low to support a finding of good cause for Sedgwick County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sedgwick County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sedgwick County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sedgwick County filed its original complaint on December 21, 2017. *See Sedgwick County Board of Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45025-DAP, ECF No. 1. Despite filing its case years ago, Sedgwick County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sedgwick County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sedgwick County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sedgwick County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to

amend, and Sedgwick County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kansas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sedgwick County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kansas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sedgwick County, a municipality in Kansas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sedgwick County's proposed RICO claim against the PBMs has expired. Sedgwick County filed its original complaint on December 21, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sedgwick County Board of Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45025-DAP, ECF No. 1. It is therefore indisputable that Sedgwick County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Sedgwick County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other

elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sedgwick County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sedgwick County, a municipality in Kansas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 151. ***People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45026-DAP: Plaintiff Jasper County, Illinois**

Jasper County's untimely motion for leave to amend should be denied for several reasons. Jasper County failed to provide notice of its proposed amendments through a proposed complaint. Jasper County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jasper County's motion should be denied due to futility, as Jasper County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jasper County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jasper County amended its complaint on March 6, 2019, after transfer to the MDL on January 12, 2018. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45026-DAP, ECF No. 15. Unlike many other plaintiffs, Jasper County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jasper County's deadline to amend was in 2019. Jasper County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jasper County's lack of diligence in pursuing its claims

negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jasper County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jasper County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jasper County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jasper County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.22% market share for Jasper County). That insignificant dispensing volume is much too low to support a finding of good cause for Jasper County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jasper County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jasper County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jasper County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jasper County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jasper County's proposed RICO claim against the PBMs has expired. Jasper County filed its original complaint on December 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45026-DAP, ECF No. 1. It is therefore indisputable that Jasper County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years

before seeking leave to amend. Jasper County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jasper County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jasper County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 152. *Coshocton County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45027-DAP: Plaintiff Coshocton County, Ohio

Coshocton County's untimely motion for leave to amend should be denied for several reasons. Coshocton County failed to provide notice of its proposed amendments through a proposed complaint. Coshocton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Coshocton County's motion should be denied due to futility, as Coshocton County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coshocton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coshocton County amended its complaint on March 11, 2019, after transfer to the MDL on January 12, 2018. *See Coshocton County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45027-DAP, ECF No. 26. Unlike

many other plaintiffs, Coshocton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Coshocton County's deadline to amend was in 2019. Coshocton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Coshocton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Coshocton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Coshocton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Coshocton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Coshocton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Coshocton County). That insignificant dispensing volume is much too low to support a finding of good cause for Coshocton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Coshocton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Coshocton County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Coshocton County is a plaintiff in Ohio. Coshocton County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Coshocton County's proposed RICO claim against the PBMs has expired. Coshocton County filed its original complaint on

December 18, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Coshocton County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45027-DAP, ECF No. 1. It is therefore indisputable that Coshocton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Coshocton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Coshocton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Coshocton County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 153. *Buchanan County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45028-DAP: Plaintiff Buchanan County, Missouri

Buchanan County's untimely motion for leave to amend should be denied for several reasons. Buchanan County failed to provide notice of its proposed amendments through a proposed complaint. Buchanan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Buchanan County's motion should be denied due to futility, as Buchanan County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Buchanan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Buchanan County amended its complaint on March 14, 2019, after transfer to the MDL on January 12, 2018. *See Buchanan County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45028-DAP, ECF No. 25. Unlike many other plaintiffs, Buchanan County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Buchanan County's deadline to amend was in 2019. Buchanan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Buchanan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Buchanan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Buchanan County). That insignificant dispensing volume is much too low to support a finding of good cause for Buchanan County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Buchanan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Buchanan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Buchanan County filed its original complaint on November 29, 2017. *See Buchanan County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45028-DAP, ECF No. 1. Despite filing its case years ago, Buchanan County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Buchanan County's case would force the parties and the Court to waste time and resources ascertaining the extent of Buchanan County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Buchanan County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Buchanan County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Buchanan County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Buchanan County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Buchanan County of this deficiency on September 16, 2024 (*see* Exhibit B), but Buchanan County refused to amend or supplement its Fact Sheet. Under this Court's orders, Buchanan County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

747

Buchanan County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Buchanan County's potential claims against them. Buchanan County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Buchanan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Buchanan County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Buchanan County's proposed RICO claim against the PBMs has expired. Buchanan County filed its original complaint on November 29, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Buchanan County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45028-DAP, ECF No. 1. It is therefore indisputable that Buchanan County knew of

its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Buchanan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Buchanan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Buchanan County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 154. *Ottawa County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45031-DAP: Plaintiff Ottawa County, Ohio

Ottawa County's untimely motion for leave to amend should be denied for several reasons. Ottawa County failed to provide notice of its proposed amendments through a proposed complaint. Ottawa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ottawa County's motion should be denied due to futility, as Ottawa County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ottawa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ottawa County amended its complaint on March 6, 2019, after transfer through judicial reassignment to the MDL. *See Ottawa County Board of County Commissioners v.*

*AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45031-DAP, ECF No. 27. Unlike many other plaintiffs, Ottawa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ottawa County's deadline to amend was in 2019. Ottawa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ottawa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ottawa County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ottawa County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ottawa County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ottawa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Ottawa County). That insignificant dispensing volume is much too low to support a finding of good cause for Ottawa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ottawa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ottawa County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Ottawa County is a plaintiff in Ohio. Ottawa County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Ottawa County's proposed RICO claim against the PBMs has expired. Ottawa County filed its original complaint on

December 8, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Ottawa County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45031-DAP, ECF No. 1. It is therefore indisputable that Ottawa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Ottawa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ottawa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ottawa County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 155. *County of Lake v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45032-DAP: Plaintiff Lake County, Ohio

Lake County's untimely motion for leave to amend should be denied for several reasons. Lake County failed to provide notice of its proposed amendments through a proposed complaint. Lake County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lake County's motion should be denied due to futility, as Lake County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lake County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lake County amended its complaint on March 18, 2019, after transfer to the MDL on January 11, 2018, as well as on June 5, 2020. *See County of Lake v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45032-DAP, ECF Nos. 16, 19. Unlike many other plaintiffs, Lake County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Lake County's deadline to amend was in 2019. Lake County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lake County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lake County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Lake County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lake County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lake County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Lake County). That insignificant dispensing volume is much too low to support a finding of good cause for Lake County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lake County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lake County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lake County is a plaintiff in Ohio. Lake County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lake County's proposed RICO claim against the PBMs has expired. Lake County filed its original complaint on December 11, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Lake v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45032-DAP, ECF No. 1-2. Even assuming *arguendo* that Lake County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 11, 2021. Lake County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lake County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lake County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 156. *County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP: Plaintiff Cascade County, Montana

Cascade County's untimely motion for leave to amend should be denied for several reasons. Cascade County failed to provide notice of its proposed amendments through a proposed complaint. Cascade County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cascade County's motion should be denied due to futility, as Cascade County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cascade County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cascade County first amended its complaint on December 1, 2017. *See County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP, ECF No. 2. Cascade County amended its complaint again on December 20, 2018, as well as on March 15, 2019. *See County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP, ECF Nos. 19, 20. Unlike many other plaintiffs, Cascade County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Cascade County's deadline to amend was in 2019. Cascade County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cascade County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cascade County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Cascade County). That insignificant dispensing volume is much too low to support a finding of good cause for Cascade County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Cascade County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cascade County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cascade County filed its original complaint on November 29, 2017. *See County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP, ECF No. 1. Despite filing its case years ago, Cascade County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cascade County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cascade County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cascade County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cascade County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cascade County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cascade County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cascade County of this deficiency on September 16, 2024 (*see* Exhibit B), but Cascade County refused to amend or supplement its Fact Sheet. Under this Court's orders, Cascade County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF

No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cascade County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cascade County's potential claims against them. Cascade County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Cascade County, a municipality in Montana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cascade County's proposed RICO claim against the PBMs has expired. Cascade County filed its original complaint on November 29, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP, ECF No. 1. It is therefore indisputable that Cascade County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Cascade County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cascade County's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cascade County, a municipality in Montana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 157. *County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP: Plaintiff Gallatin County, Montana

Gallatin County's untimely motion for leave to amend should be denied for several reasons. Gallatin County failed to provide notice of its proposed amendments through a proposed complaint. Gallatin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gallatin County's motion should be denied due to futility, as Gallatin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gallatin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gallatin County first amended its complaint on December 20, 2018. *See County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP, ECF No. 19. Gallatin County amended its complaint again on March 15, 2019. *See County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP, ECF No. 20. Unlike many other plaintiffs, Gallatin County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Gallatin County's deadline to amend was in 2019. Gallatin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Gallatin County's lack of diligence in pursuing its

claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gallatin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Gallatin County). That insignificant dispensing volume is much too low to support a finding of good cause for Gallatin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Gallatin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Gallatin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Gallatin County filed its original complaint on December 1, 2017. *See County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP, ECF No. 2. Despite filing its case years ago, Gallatin County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Gallatin County's case would force the parties

and the Court to waste time and resources ascertaining the extent of Gallatin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gallatin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Gallatin County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Gallatin County, a municipality in Montana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Gallatin County's proposed RICO claim against the PBMs has expired. Gallatin County filed its first amended complaint on December 1, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Cascade v. Purdue Pharma et al.*, Case No. 1:18-op-45033-DAP, ECF No. 2. It is therefore indisputable that Gallatin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Gallatin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gallatin County's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Gallatin County, a municipality in Montana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **158.** ***Lawrence County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45036-DAP: Plaintiff Lawrence County, Mississippi**

Lawrence County's untimely motion for leave to amend should be denied for several reasons. Lawrence County failed to provide notice of its proposed amendments through a proposed complaint. Lawrence County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lawrence County's motion should be denied due to futility, as Lawrence County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lawrence County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lawrence County amended its complaint on March 7, 2019, after transfer to the MDL on January 16, 2018. *See Lawrence County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45036-DAP, ECF No. 8. Unlike many other plaintiffs, Lawrence County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lawrence County's deadline to amend was in 2019. Lawrence County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lawrence County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because

plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lawrence County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Lawrence County). That insignificant dispensing volume is much too low to support a finding of good cause for Lawrence County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice Through Counsel.** Lawrence County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lawrence County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lawrence County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lawrence County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lawrence County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lawrence County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lawrence County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lawrence County's proposed RICO claim against the PBMs has expired. Lawrence County filed its original complaint on December 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lawrence County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45036-DAP, ECF No. 1. It is therefore indisputable that Lawrence County knew

of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Lawrence County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lawrence County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lawrence County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 159. *Fairfield Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45038-DAP: Plaintiff Fairfield County, Ohio

Fairfield County's untimely motion for leave to amend should be denied for several reasons. Fairfield County failed to provide notice of its proposed amendments through a proposed complaint. Fairfield County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fairfield County's motion should be denied due to futility, as Fairfield County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fairfield County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fairfield County amended its complaint on March 6, 2019, after transfer to the MDL on January 16, 2018. *See Fairfield Board of County Commissioners v. Amerisourcebergen Drug Corporation*

*et al.*, Case No. 1:18-op-45038-DAP, ECF No. 37. Unlike many other plaintiffs, Fairfield County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fairfield County's deadline to amend was in 2019. Fairfield County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fairfield County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fairfield County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Fairfield County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fairfield County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fairfield County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Fairfield County). That insignificant dispensing volume is much too low to support a finding of good cause for Fairfield County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fairfield County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fairfield County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Fairfield County is a plaintiff in Ohio. Fairfield County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Fairfield County's proposed RICO claim against the PBMs has expired. Fairfield County filed its original complaint on

November 17, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fairfield Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45038-DAP, ECF No. 1. It is therefore indisputable that Fairfield County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Fairfield County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fairfield County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fairfield County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

160. ***Licking County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45041-DAP: Plaintiff Licking County, Ohio**

Licking County's untimely motion for leave to amend should be denied for several reasons. Licking County failed to provide notice of its proposed amendments through a proposed complaint. Licking County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Licking County's motion should be denied due to futility, as Licking County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Licking County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Licking County amended its complaint on March 6, 2019, after transfer to the MDL on January 16, 2018. *See Licking County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45041-DAP, ECF No. 50. Unlike many other plaintiffs, Licking County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Licking County's deadline to amend was in 2019. Licking County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Licking County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Licking County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Licking County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Licking County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Licking County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Licking County). That insignificant dispensing volume is much too low to support a finding of good cause for Licking County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Licking County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Licking County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Licking County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Licking County of the PBM services Express Scripts provides and Licking County began receiving those services on January 2, 2013. *See id.* Inasmuch as Licking County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Licking County knew or should have known of the alleged

wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Licking County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Licking County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Licking County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Licking County is a plaintiff in Ohio. Licking County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Licking County's proposed RICO claim against the PBMs has expired. Licking County filed its original complaint on October 18, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Licking County Board of County Commissioners v. Amerisourcebergen Drug Corporation et*

*al.*, Case No. 1:18-op-45041-DAP, ECF No. 1. It is therefore indisputable that Licking County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Licking County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Licking County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Licking County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 161. *Adams County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45042-DAP: Plaintiff Adams County, Ohio

Adams County's untimely motion for leave to amend should be denied for several reasons. Adams County failed to provide notice of its proposed amendments through a proposed complaint. Adams County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Adams County's motion should be denied due to futility, as Adams County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Adams County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Adams County amended its complaint on March 12, 2019, after transfer to the MDL on January

16, 2018. *See Adams County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45042-DAP, ECF No. 58. Unlike many other plaintiffs, Adams County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Adams County's deadline to amend was in 2019. Adams County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Adams County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Adams County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Adams County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Adams County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Adams County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Adams County). That insignificant dispensing volume is much too low to support a finding of good cause for Adams County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Adams County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Adams County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Adams County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Adams County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Adams County is a plaintiff in Ohio. Adams County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Adams County's proposed RICO claim against the PBMs has expired. Adams County filed its original complaint on October 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adams County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45042-DAP, ECF No. 1. It is therefore indisputable that Adams County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Adams County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Adams County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Adams County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **162.** ***Guernsey County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45044-DAP: Plaintiff Guernsey County, Ohio**

Guernsey County's untimely motion for leave to amend should be denied for several reasons. Guernsey County failed to provide notice of its proposed amendments through a proposed

complaint. Guernsey County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Guernsey County's motion should be denied due to futility, as Guernsey County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Guernsey County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Guernsey County amended its complaint on March 11, 2019, after transfer to the MDL on January 16, 2018. *See Guernsey County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45044-DAP, ECF No. 54. Unlike many other plaintiffs, Guernsey County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Guernsey County's deadline to amend was in 2019. Guernsey County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Guernsey County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Guernsey County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the

PBMs in 2019. *See* MDL ECF No. 2582. Guernsey County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Guernsey County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Guernsey County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Guernsey County). That insignificant dispensing volume is much too low to support a finding of good cause for Guernsey County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Guernsey County filed its original complaint on October 11, 2017. *See Guernsey County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45044-DAP, ECF No. 1. Despite filing its case years ago, Guernsey County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455.

Litigating Guernsey County's case would force the parties and the Court to waste time and resources ascertaining the extent of Guernsey County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Guernsey County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Guernsey County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Guernsey County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Guernsey County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Guernsey County is a plaintiff in Ohio. Guernsey County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

778

**RICO Statute of Limitations.** The statute of limitations for Guernsey County's proposed RICO claim against the PBMs has expired. Guernsey County filed its original complaint on October 11, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Guernsey County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45044-DAP, ECF No. 1. It is therefore indisputable that Guernsey County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Guernsey County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Guernsey County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Guernsey County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **163.** ***Darke County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45046-DAP: Plaintiff Darke County, Ohio**

Darke County's untimely motion for leave to amend should be denied for several reasons. Darke County failed to provide notice of its proposed amendments through a proposed complaint. Darke County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Darke County's motion should be denied due to futility, as Darke County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO

claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Darke County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Darke County amended its complaint on March 15, 2019, after transfer to the MDL on January 16, 2018. *See Darke County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45046-DAP, ECF No. 22. Unlike many other plaintiffs, Darke County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Darke County's deadline to amend was in 2019. Darke County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Darke County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Darke County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Darke County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Darke County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Darke County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Darke County). That insignificant dispensing volume is much too low to support a finding of good cause for Darke County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Darke County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Darke County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Darke County is a plaintiff in Ohio. Darke County's request for leave to add the PBMs as defendants to a public nuisance claim should be

denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Darke County's proposed RICO claim against the PBMs has expired. Darke County filed its original complaint on December 9, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Darke County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45046-DAP, ECF No. 1. It is therefore indisputable that Darke County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Darke County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Darke County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Darke County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 164. *Logan County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45047-DAP: Plaintiff Logan County, Ohio

Logan County's untimely motion for leave to amend should be denied for several reasons. Logan County failed to provide notice of its proposed amendments through a proposed complaint. Logan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the

PBMs. Moreover, Logan County's motion should be denied due to futility, as Logan County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Logan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Logan County amended its complaint on March 11, 2019, after transfer to the MDL on January 16, 2018. *See Logan County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45047-DAP, ECF No. 26. Unlike many other plaintiffs, Logan County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Logan County's deadline to amend was in 2019. Logan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Logan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Logan County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Logan County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Logan County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

### OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.

OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Logan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.18% market share for Logan County). That insignificant dispensing volume is much too low to support a finding of good cause for Logan County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

### Failure to Timely Implement a Litigation Hold. Logan County violated its basic duty to

implement a timely litigation hold. Logan County filed its original complaint on December 15, 2017, but waited until September 18, 2024 to implement a litigation hold—nearly seven years later. *See Logan County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45047-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 18, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Logan County's case would force the parties and the Court to waste time and resources ascertaining the extent of Logan County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to

implement litigation holds until 2024. The PBMs are prejudiced by Logan County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Logan County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Logan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Logan County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Logan County is a plaintiff in Ohio. Logan County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Logan County's proposed RICO claim against the PBMs has expired. Logan County filed its original complaint on December 15, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Logan County Board of County Commissioners v. Amerisourcebergen Drug Corporation et*

*al.*, Case No. 1:18-op-45047-DAP, ECF No. 1. It is therefore indisputable that Logan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Logan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Logan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Logan County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 165. *People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45049-DAP: Plaintiff Edwards County, Illinois

Edwards County's untimely motion for leave to amend should be denied for several reasons. Edwards County failed to provide notice of its proposed amendments through a proposed complaint. Edwards County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Edwards County's motion should be denied due to futility, as Edwards County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Edwards County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Edwards County amended its complaint on March 6, 2019, after transfer to the MDL on January 16, 2018. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*,

Case No. 1:18-op-45049-DAP, ECF No. 13. Unlike many other plaintiffs, Edwards County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Edwards County's deadline to amend was in 2019. Edwards County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Edwards County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Edwards County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Edwards County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Edwards County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

787

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Edwards County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.29% market share for Edwards County). That insignificant dispensing volume is much too low to support a finding of good cause for Edwards County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Edwards County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Edwards County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Edwards County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Edwards County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Edwards County's proposed RICO claim against the PBMs has expired. Edwards County filed its original complaint on December 12, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45049-DAP, ECF No. 1. It is therefore indisputable that Edwards County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Edwards County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Edwards County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Edwards County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

166. ***Leech Lake Band of Ojibwe v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45052-DAP: Plaintiff Leech Lake Band of Ojibwe, Minnesota**

Leech Lake Band of Ojibwe's untimely motion for leave to amend should be denied for several reasons. Leech Lake Band of Ojibwe failed to provide notice of its proposed amendments through a proposed complaint. Leech Lake Band of Ojibwe also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Leech Lake Band of Ojibwe's motion should be denied due to futility, as Leech Lake Band of Ojibwe does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leech Lake Band of Ojibwe was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leech Lake Band of Ojibwe amended its complaint on August 9, 2019, after transfer to the MDL on January 17, 2018. *See Leech Lake Band of Ojibwe v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45052-DAP, ECF No. 19. Unlike many other plaintiffs, Leech Lake Band of Ojibwe declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Leech Lake Band of Ojibwe's deadline to amend was in 2019. Leech Lake Band of Ojibwe waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Leech Lake Band of Ojibwe's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Leech Lake Band of Ojibwe's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Leech Lake Band of Ojibwe filed its original complaint on December 19, 2017. *See Leech Lake Band of Ojibwe v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45052-DAP, ECF No. 1. Despite filing its case years ago, Leech Lake Band of

Ojibwe *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Leech Lake Band of Ojibwe's case would force the parties and the Court to waste time and resources ascertaining the extent of Leech Lake Band of Ojibwe's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leech Lake Band of Ojibwe's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Leech Lake Band of Ojibwe therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leech Lake Band of Ojibwe's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leech Lake Band of Ojibwe, a native tribe in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leech Lake Band of Ojibwe's proposed RICO claim against the PBMs has expired. Leech Lake Band of Ojibwe filed its amended

complaint on August 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Leech Lake Band of Ojibwe v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45052-DAP, ECF No. 19. It is therefore indisputable that Leech Lake Band of Ojibwe knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Leech Lake Band of Ojibwe's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leech Lake Band of Ojibwe's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Leech Lake Band of Ojibwe, a native tribe in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 167. *Township of Bloomfield, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45053-DAP: Plaintiff Bloomfield Township, New Jersey

Bloomfield Township's untimely motion for leave to amend should be denied for several reasons. Bloomfield Township failed to provide notice of its proposed amendments through a proposed complaint. Bloomfield Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bloomfield Township's motion should be denied due to futility, as Bloomfield Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bloomfield Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bloomfield Township filed its original complaint on December 21, 2017 and the case was transferred to the MDL on January 17, 2018. *See Township of Bloomfield, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45053-DAP, ECF No. 5. Bloomfield Township could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bloomfield Township elected not to do so. Instead, Bloomfield Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bloomfield Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bloomfield Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Bloomfield Township). That insignificant dispensing volume is much too low to support a finding of good cause for Bloomfield Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bloomfield Township's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bloomfield Township to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bloomfield Township filed its original complaint on December 21, 2017. *See Township of Bloomfield, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45053-DAP, ECF No. 1. Despite filing its case years ago, Bloomfield Township *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Bloomfield Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Bloomfield Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bloomfield Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bloomfield Township therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bloomfield Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bloomfield Township, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bloomfield Township's proposed RICO claim against the PBMs has expired. Bloomfield Township filed its original complaint on December 21, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Township of Bloomfield, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45053-DAP, ECF No. 1. It is therefore indisputable that Bloomfield Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Bloomfield Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bloomfield Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bloomfield Township, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 168. *City of Lansing v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45054-DAP: Plaintiff Lansing City, Michigan

Lansing City's untimely motion for leave to amend should be denied for several reasons. Lansing City failed to provide notice of its proposed amendments through a proposed complaint. Lansing City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lansing City's motion should be denied due to futility, as Lansing City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lansing City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lansing City amended its complaint on March 16, 2019, after transfer to the MDL on January 17, 2018. *See City of Lansing v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45054-DAP, ECF No. 27. Unlike many other plaintiffs, Lansing City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lansing City's deadline to amend was in 2019. Lansing City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lansing City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lansing City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Lansing City). That insignificant dispensing volume is much too low to support a finding of good cause for Lansing City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lansing City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lansing City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lansing City of this deficiency on September 16, 2024 (*see* Exhibit B), but Lansing City refused to amend or supplement its Fact Sheet. Under this Court's orders, Lansing City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lansing City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lansing City's potential claims against them. Lansing City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lansing City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lansing City, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lansing City's proposed RICO claim against the PBMs has expired. Lansing City filed its original complaint on December 19, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lansing v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45054-DAP, ECF No. 1. It is therefore indisputable that Lansing City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Lansing City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lansing City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lansing City, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

169. ***Morrow County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45059-DAP: Plaintiff Morrow County, Ohio**

Morrow County's untimely motion for leave to amend should be denied for several reasons. Morrow County failed to provide notice of its proposed amendments through a proposed complaint. Morrow County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Morrow County's motion should be denied due to futility, as Morrow County does not assert any allegations tying the PBMs to its alleged harm, its proposed

public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Morrow County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Morrow County amended its complaint on March 14, 2019, after transfer to the MDL on January 18, 2018. *See Morrow County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45059-DAP, ECF No. 25. Unlike many other plaintiffs, Morrow County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Morrow County's deadline to amend was in 2019. Morrow County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Morrow County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Morrow County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Morrow County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Morrow County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Morrow County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Morrow County). That insignificant dispensing volume is much too low to support a finding of good cause for Morrow County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Morrow County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Morrow County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Morrow County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Morrow County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Morrow County of this deficiency on September 16, 2024 (*see* Exhibit B), but Morrow County refused to amend or supplement its Fact Sheet. Under this Court's orders, Morrow

County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Morrow County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Morrow County's potential claims against them. Morrow County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Morrow County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Morrow County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Morrow County is a plaintiff in Ohio. Morrow County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Morrow County's proposed RICO claim against the PBMs has expired. Morrow County filed its original complaint on December 21, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Morrow County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45059-DAP, ECF No. 1. It is therefore indisputable that Morrow County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Morrow County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Morrow County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Morrow County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 170. *Clinton County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45060-DAP: Plaintiff Clinton County, Ohio

Clinton County's untimely motion for leave to amend should be denied for several reasons. Clinton County failed to provide notice of its proposed amendments through a proposed complaint. Clinton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clinton County's motion should be denied due to futility, as Clinton County does not assert any allegations tying the PBMs to its

alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clinton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clinton County amended its complaint on March 18, 2019, after transfer to the MDL on January 18, 2018. *See Clinton County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45060-DAP, ECF No. 19. Unlike many other plaintiffs, Clinton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Clinton County's deadline to amend was in 2019. Clinton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clinton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clinton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Clinton County). That insignificant dispensing volume is much too low to support a finding of good cause for Clinton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Clinton County violated its basic duty to implement a timely litigation hold. Clinton County filed its original complaint on December 20, 2017, but waited until September 13, 2024 to implement a litigation hold—nearly seven years later. *See Clinton County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45060-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Clinton County's case would force the parties and the Court to waste time and resources ascertaining the extent of Clinton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clinton County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clinton County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Clinton County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Clinton County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Clinton County of this deficiency on September 16, 2024 (*see* Exhibit B), but Clinton County refused to amend or supplement its Fact Sheet. Under this Court's orders, Clinton County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Clinton County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Clinton County's potential claims against them. Clinton County's failure to diligently prosecute its case,

804

coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clinton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clinton County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Clinton County is a plaintiff in Ohio. Clinton County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Clinton County's proposed RICO claim against the PBMs has expired. Clinton County filed its original complaint on December 20, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Clinton County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No.

1:18-op-45060-DAP, ECF No. 1. It is therefore indisputable that Clinton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Clinton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clinton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clinton County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 171. *Champaign County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45065-DAP: Plaintiff Champaign County, Ohio

Champaign County's untimely motion for leave to amend should be denied for several reasons. Champaign County failed to provide notice of its proposed amendments through a proposed complaint. Champaign County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Champaign County's motion should be denied due to futility, as Champaign County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Champaign County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Champaign County amended its complaint on March 14, 2019, after transfer to the

MDL on January 18, 2018. *See Champaign County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45065-DAP, ECF No. 22. Unlike many other plaintiffs, Champaign County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Champaign County's deadline to amend was in 2019. Champaign County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Champaign County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Champaign County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Champaign County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Champaign County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Champaign County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Champaign County). That insignificant dispensing volume is much too low to support a finding of good cause for Champaign County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Champaign County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Champaign County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Champaign County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Champaign County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Champaign County is a plaintiff in Ohio. Champaign County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Champaign County's proposed RICO claim against the PBMs has expired. Champaign County filed its original complaint on December 21, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Champaign County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45065-DAP, ECF No. 1. It is therefore indisputable that Champaign County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Champaign County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Champaign County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Champaign County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

172. ***Jefferson Davis County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45070-DAP: Plaintiff Jefferson Davis County, Mississippi**

Jefferson Davis County's untimely motion for leave to amend should be denied for several reasons. Jefferson Davis County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson Davis County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson Davis County's motion should be denied due to futility, as Jefferson Davis County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jefferson Davis County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson Davis County amended its complaint on March 12, 2019, after transfer to the MDL on January 19, 2018. *See Jefferson Davis County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45070-DAP, ECF No. 8. Unlike many other plaintiffs, Jefferson Davis County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jefferson Davis County's deadline to amend was in 2019. Jefferson Davis County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson Davis County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jefferson Davis County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey

& Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jefferson Davis County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jefferson Davis County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jefferson Davis County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Jefferson Davis County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson Davis County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson Davis County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too

low to support a finding of good cause for Jefferson Davis County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson Davis County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jefferson Davis County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson Davis County's proposed RICO claim against the PBMs has expired. Jefferson Davis County filed its original complaint on December 13, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jefferson Davis County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45070-DAP, ECF No. 1. It is therefore indisputable that Jefferson Davis County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Jefferson Davis County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson Davis County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jefferson Davis County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 173. *Marion County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45075-DAP: Plaintiff Marion County, Mississippi

Marion County's untimely motion for leave to amend should be denied for several reasons. Marion County failed to provide notice of its proposed amendments through a proposed complaint. Marion County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marion County's motion should be denied due to futility, as Marion County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marion County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marion County amended its complaint on March 12, 2019, after transfer to the MDL on January 22, 2018. *See Marion County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45075-DAP, ECF No. 9. Unlike many other plaintiffs, Marion County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marion County's deadline to amend was in 2019. Marion County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marion County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all

the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marion County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Marion County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marion County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marion County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Marion County). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marion County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marion County filed its original complaint on December 14, 2017. *See Marion County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45075-DAP, ECF No. 1. Despite filing its case years ago, Marion County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Marion County's case would force the parties and the Court to waste time and resources ascertaining the extent of Marion County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marion County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marion County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marion County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marion County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marion County's proposed RICO claim against the PBMs has expired. Marion County filed its original complaint on December 14, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marion County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45075-DAP, ECF No. 1. It is therefore indisputable that Marion County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Marion County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marion County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marion County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

174. ***City of Mobile, Alabama v. Amerisourcebergen Drug Corporation et al.,*
***Case No. 1:18-op-45076-DAP: Plaintiff Mobile City, Alabama***

Mobile City's untimely motion for leave to amend should be denied for several reasons. Mobile City failed to provide notice of its proposed amendments through a proposed complaint. Mobile City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mobile City's motion should be denied due to futility, as Mobile City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mobile City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mobile City amended its complaint on March 7, 2019, after transfer to the MDL on January 22, 2018. *See City of Mobile, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45076-DAP, ECF No. 21. Unlike many other plaintiffs, Mobile City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mobile City's deadline to amend was in 2019. Mobile City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mobile City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mobile City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP;

Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Mobile City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mobile City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mobile City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Mobile City). That insignificant dispensing volume is much too low to support a finding of good cause for Mobile City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mobile City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mobile City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Mobile City violated its basic duty to implement a timely litigation hold. Mobile City filed its original complaint on December 27, 2017, but waited until January 23, 2020 to implement a litigation hold—a little over 2 years later. *See City of Mobile, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45076-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 23, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Mobile City's case would force the parties and the Court to waste time and resources ascertaining the extent of Mobile City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mobile City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mobile City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mobile City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mobile City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mobile City's proposed RICO claim against the PBMs has expired. Mobile City filed its original complaint on December 27, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Mobile, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45076-DAP, ECF No. 1. It is therefore indisputable that Mobile City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Mobile City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mobile City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Mobile City's public-nuisance claim against the PBMs is therefore time-barred because Mobile City sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on December 27, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Mobile City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

175.    ***County of Lorain v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45078-DAP: Plaintiff Lorain County, Ohio**

Lorain County's untimely motion for leave to amend should be denied for several reasons. Lorain County failed to provide notice of its proposed amendments through a proposed complaint. Lorain County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lorain County's motion should be denied due to futility, as Lorain County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lorain County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lorain County amended its complaint on March 18, 2019, after transfer to the MDL on January 18, 2018. *See County of Lorain v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45078-DAP, ECF No. 10. Unlike many other plaintiffs, Lorain County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lorain County's deadline to amend was in 2019. Lorain County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lorain County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Lorain County filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding

Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Lorain County offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Lorain County's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lorain County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Lorain County). That insignificant dispensing volume is much too low to support a finding of good cause for Lorain County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lorain County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lorain County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lorain County is a plaintiff in Ohio. Lorain County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lorain County's proposed RICO claim against the PBMs has expired. Lorain County filed its original complaint on January 18, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Lorain v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45078-DAP, ECF No. 1-1. Even assuming *arguendo* that Lorain County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 18, 2022. Lorain County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lorain County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lorain County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**176.** ***County of Trumbull v. Purdue Pharma L.P.*, Case No. 1:18-op-45079-DAP: Plaintiff Trumbull County, Ohio**

Trumbull County's untimely motion for leave to amend should be denied for several reasons. Trumbull County failed to provide notice of its proposed amendments through a proposed complaint. Trumbull County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Trumbull County's motion should be denied due to futility, as Trumbull County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Trumbull County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Trumbull County amended its complaint on March 18, 2019, after transfer to the MDL on January 18, 2018, as well as on June 5, 2020. *See County of Trumbull v. Purdue Pharma L.P.*, Case No. 1:18-op-45079-DAP, ECF Nos. 11, 13. Unlike many other plaintiffs, Trumbull County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Trumbull County's deadline to amend was in 2019. Trumbull County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Trumbull County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Trumbull County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Trumbull County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Trumbull County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Trumbull County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Trumbull County). That insignificant dispensing volume is much too low to support a finding of good cause for Trumbull County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Trumbull County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

825

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Trumbull County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Trumbull County is a plaintiff in Ohio. Trumbull County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Trumbull County's proposed RICO claim against the PBMs has expired. Trumbull County filed its original complaint on December 11, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Trumbull v. Purdue Pharma L.P.*, Case No. 1:18-op-45079-DAP, ECF No. 1-1. Even assuming *arguendo* that Trumbull County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 11, 2021. Trumbull County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Trumbull County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Trumbull County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **177.** *City of Elyria v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45080-DAP: Plaintiff Elyria City, Ohio**

Elyria City's untimely motion for leave to amend should be denied for several reasons. Elyria City failed to provide notice of its proposed amendments through a proposed complaint. Elyria City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Elyria City's motion should be denied due to futility, as Elyria City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Elyria City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Elyria City amended its complaint on March 15, 2019. *See City of Elyria v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45080-DAP, ECF No. 21. Unlike many other plaintiffs, Elyria City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Elyria City's deadline to amend was in 2019. Elyria City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Elyria City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Elyria City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Elyria City). That insignificant dispensing volume is much too low to support a finding of good cause for Elyria City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Elyria City violated its basic duty to implement a timely litigation hold. Elyria City filed its original complaint on January 3, 2018, but waited until July 24, 2018 to implement a litigation hold—six months later. *See City of Elyria v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45080-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 24, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Elyria City's case would force the parties and the Court to waste time and resources ascertaining the extent of Elyria City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Elyria City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Elyria City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Elyria City's delay in seeking to

amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Elyria City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Elyria City is a plaintiff in Ohio. Elyria City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Elyria City's proposed RICO claim against the PBMs has expired. Elyria City filed its original complaint on November 28, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Elyria v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45080-DAP, ECF No. 1-1. It is therefore indisputable that Elyria City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Elyria City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Elyria City's request for leave to amend to add a RICO claim should be denied as futile. *See*

829

*Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Elyria City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 178. *County of Smith v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45081-DAP: Plaintiff Smith County, Texas

Smith County's untimely motion for leave to amend should be denied for several reasons. Smith County failed to provide notice of its proposed amendments through a proposed complaint. Smith County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Smith County's motion should be denied due to futility, as Smith County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Smith County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Smith County amended its complaint on March 14, 2019, after transfer to the MDL on January 23, 2018. *See County of Smith v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45081-DAP, ECF No. 41. Unlike many other plaintiffs, Smith County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Smith County's deadline to amend was in 2019. Smith County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Smith County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Smith County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Smith County). That insignificant dispensing volume is much too low to support a finding of good cause for Smith County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Smith County filed its original complaint on December 19, 2017. *See County of Smith v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45081-DAP, ECF No. 1. Despite filing its case years ago, Smith County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Smith County's case would force the parties and the Court to waste time and resources ascertaining the extent of Smith County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Smith County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Smith County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Smith County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Smith County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Smith County's proposed RICO claim against the PBMs has expired. Smith County filed its original complaint on December 19, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Smith v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45081-DAP, ECF No. 1. It is therefore indisputable that Smith County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Smith County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Smith County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Smith County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **179.** *Saginaw, County of v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45082-DAP: Plaintiff Saginaw County, Michigan**

Saginaw County's untimely motion for leave to amend should be denied for several reasons. Saginaw County failed to provide notice of its proposed amendments through a proposed complaint. Saginaw County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Saginaw County's motion should be denied due to futility, as Saginaw County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Saginaw County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Saginaw County amended its complaint on March 16, 2019, after transfer to the MDL on January 23, 2018. *See Saginaw, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45082-DAP, ECF No. 28. Unlike many other plaintiffs, Saginaw County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Saginaw County's deadline to amend was in 2019. Saginaw County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Saginaw County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Saginaw County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Saginaw County). That insignificant dispensing volume is much too low to support a finding of good cause for Saginaw County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Saginaw County violated its basic duty to implement a timely litigation hold. Saginaw County filed its original complaint on December 19, 2017, but waited until September 30, 2018 to implement a litigation hold—nine and a half months later. *See Saginaw, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45082-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 30, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Saginaw County's case would force the parties and the Court to waste time and resources ascertaining the extent of Saginaw County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Saginaw County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Saginaw County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Saginaw County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Saginaw County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Saginaw County's proposed RICO claim against the PBMs has expired. Saginaw County filed its original complaint on December 19, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Saginaw, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45082-DAP, ECF No. 1. It is therefore indisputable that Saginaw County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Saginaw County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Saginaw County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Saginaw County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **180.** ***Genesee, County of v. Purdue Pharma L.P. et al.***, **Case No. 1:18-op-45083-DAP: Plaintiff Genesee County, Michigan**

Genesee County's untimely motion for leave to amend should be denied for several reasons. Genesee County failed to provide notice of its proposed amendments through a proposed complaint. Genesee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Genesee County's motion should be denied due to futility, as Genesee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Genesee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Genesee County amended its complaint on March 16, 2019, after transfer to the MDL on January 23, 2018. *See Genesee, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45083-DAP, ECF No. 28. Unlike many other plaintiffs, Genesee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Genesee County's deadline to amend was in 2019. Genesee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Genesee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Genesee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Genesee County). That insignificant dispensing volume is much too low to support a finding of good cause for Genesee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Genesee County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Genesee County of the PBM services Express Scripts provides and Genesee County began receiving those services on June 1, 2008. *See id.* Inasmuch as Genesee County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Genesee County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Genesee County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Genesee County violated its basic duty to implement a timely litigation hold. Genesee County filed its original complaint on December

18, 2017, but waited until October 12, 2018 to implement a litigation hold—nearly ten months later. *See Genesee, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45083-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: October 12, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Genesee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Genesee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Genesee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Genesee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Genesee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Genesee County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Genesee County's proposed RICO claim against the PBMs has expired. Genesee County filed its original complaint on

December 18, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Genesee, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45083-DAP, ECF No. 1. It is therefore indisputable that Genesee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Genesee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Genesee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Genesee County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

181. ***City of Detroit, Michigan, A Municipal Corporation v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45084-DAP: Plaintiff Detroit City, Michigan**

Detroit City's untimely motion for leave to amend should be denied for several reasons. Detroit City failed to provide notice of its proposed amendments through a proposed complaint. Detroit City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Detroit City's motion should be denied due to futility, as Detroit City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Detroit City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Detroit City amended its complaint on March 16, 2019, after transfer to the MDL on January 23, 2018. *See City of Detroit, Michigan, A Municipal Corporation v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45084-DAP, ECF No. 27. Unlike many other plaintiffs, Detroit City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Detroit City's deadline to amend was in 2019. Detroit City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Detroit City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Detroit City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.24% market share for Detroit City). That insignificant dispensing volume is much too low to support a finding of good cause for Detroit City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Detroit City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Detroit City, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Detroit City's proposed RICO claim against the PBMs has expired. Detroit City filed its original complaint on December 18, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Detroit, Michigan, A Municipal Corporation v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45084-DAP, ECF No. 1. It is therefore indisputable that Detroit City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Detroit City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Detroit City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Detroit City, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 182. *Macomb, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45085-DAP: Plaintiff Macomb County, Michigan

Macomb County's untimely motion for leave to amend should be denied for several reasons. Macomb County failed to provide notice of its proposed amendments through a proposed complaint. Macomb County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Macomb County's motion should be denied due to futility, as Macomb County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Macomb County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Macomb County amended its complaint on March 16, 2019, after transfer to the MDL on January 23, 2018. *See Macomb, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45085-DAP, ECF No. 27. Unlike many other plaintiffs, Macomb County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Macomb County's deadline to amend was in 2019. Macomb County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Macomb County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Macomb County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Macomb County). That insignificant dispensing volume is much too low to support a finding of good cause for Macomb County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

842

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Macomb County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Macomb County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Macomb County's proposed RICO claim against the PBMs has expired. Macomb County filed its original complaint on December 19, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Macomb, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45085-DAP, ECF No. 1. It is therefore indisputable that Macomb County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Macomb County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Macomb County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Macomb County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **183.** ***Surry County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45086-DAP: Plaintiff Surry County, North Carolin**

Surry County's untimely motion for leave to amend should be denied for several reasons. Surry County failed to provide notice of its proposed amendments through a proposed complaint. Surry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Surry County's motion should be denied due to futility, as Surry County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Surry County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Surry County amended its complaint on March 12, 2019, after transfer to the MDL on January 23, 2018. *See Surry County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45086-DAP, ECF No. 7. Unlike many other plaintiffs, Surry County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Surry County's deadline to amend was in 2019. Surry County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Surry County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Surry County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Surry County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Surry County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Surry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Surry County). That insignificant dispensing volume is much too low to support a finding of good cause for Surry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Surry County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit

C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Surry County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Surry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Surry County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Surry County's proposed RICO claim against the PBMs has expired. Surry County filed its original complaint on December 29, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Surry County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45086-DAP, ECF No. 1. It is therefore indisputable that Surry County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Surry County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Surry County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Surry County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 184. *County of Summit, Ohio et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45090-DAP: Plaintiff Akron City, Ohio

Akron City's untimely motion for leave to amend should be denied for several reasons. Akron City failed to provide notice of its proposed amendments through a proposed complaint. Akron City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Akron City's motion should be denied due to futility, as Akron City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Akron City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Akron City first amended its complaint on April 25, 2018. *See County of Summit, Ohio et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45090-DAP, ECF No. 7. Akron City amended its complaint again on May 18, 2018, as well as on March 21, 2019. *See County of Summit, Ohio et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45090-DAP, ECF Nos. 8, 157. Unlike many other plaintiffs, Akron City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Akron City's deadline to amend was in 2019. Akron City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Akron City's

lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Akron City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Akron City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Akron City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Akron City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Akron City). That insignificant dispensing volume is much too low to support a finding of good cause for Akron City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Akron City has *never* served a Plaintiff Fact Sheet. Akron City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Akron City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Akron City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Akron City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Akron City is a plaintiff in Ohio. Akron City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Akron City's proposed RICO claim against the PBMs has expired. Akron City filed its first amended complaint on May 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Summit, Ohio et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45090-DAP, ECF No. 8. It is therefore indisputable that Akron City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Akron City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Akron City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Akron City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 185. *Amite County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45097-DAP: Plaintiff Amite County, Mississippi

Amite County's untimely motion for leave to amend should be denied for several reasons. Amite County failed to provide notice of its proposed amendments through a proposed complaint. Amite County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Amite County's motion should be denied due to futility, as Amite County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Amite County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Amite County amended its complaint on March 7, 2019, after transfer to the MDL on January 25, 2018. *See Amite County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45097-DAP, ECF No. 25. Unlike many other plaintiffs, Amite County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Amite County's deadline to amend was in 2019. Amite County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Amite County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Amite County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Amite County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Amite County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part

because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Amite County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Amite County). That insignificant dispensing volume is much too low to support a finding of good cause for Amite County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Amite County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Amite County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Amite County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Amite County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Amite County's proposed RICO claim against the PBMs has expired. Amite County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Amite County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45097-DAP, ECF No. 25. It is therefore indisputable that Amite County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Amite County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Amite County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Amite County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **186.** *Eastern Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45098-DAP: Plaintiff Eastern Band of Cherokee Indians, North Carolina

Eastern Band of Cherokee Indians' untimely motion for leave to amend should be denied for several reasons. Eastern Band of Cherokee Indians failed to provide notice of its proposed amendments through a proposed complaint. Eastern Band of Cherokee Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Eastern Band of

Cherokee Indians' motion should be denied due to futility, as Eastern Band of Cherokee Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Eastern Band of Cherokee Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Eastern Band of Cherokee Indians amended its complaint on March 10, 2019, after transfer to the MDL on January 25, 2018, as well as on August 13, 2019. *See Eastern Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45098-DAP, ECF Nos. 6, 23. Unlike many other plaintiffs, Eastern Band of Cherokee Indians declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Eastern Band of Cherokee Indians' deadline to amend was in 2019. Eastern Band of Cherokee Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Eastern Band of Cherokee Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Eastern Band of Cherokee Indians cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Eastern Band of Cherokee Indians, through its counsel, was on notice of potential claims against the PBMs and could readily have amended

its complaint to add the PBMs much earlier. Eastern Band of Cherokee Indians fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Eastern Band of Cherokee Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.004% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Eastern Band of Cherokee Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Eastern Band of Cherokee Indians filed its original complaint on January 4, 2018. *See Eastern Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45098-DAP, ECF No. 1. Despite filing its case years ago, Eastern Band of Cherokee Indians *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Eastern Band of Cherokee Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Eastern Band of Cherokee Indians' document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Eastern Band of Cherokee Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Eastern Band of Cherokee Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Eastern Band of Cherokee Indians' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Eastern Band of Cherokee Indians, a native tribe in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Eastern Band of Cherokee Indians' proposed RICO claim against the PBMs has expired. Eastern Band of Cherokee Indians filed its original complaint on January 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Eastern Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45098-DAP, ECF No. 1. It is therefore indisputable that Eastern Band of Cherokee Indians knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend.

Eastern Band of Cherokee Indians' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Eastern Band of Cherokee Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Eastern Band of Cherokee Indians, a native tribe in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 187. *Cecil County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45100-DAP: Plaintiff Cecil County, Maryland

Cecil County's untimely motion for leave to amend should be denied for several reasons. Cecil County failed to provide notice of its proposed amendments through a proposed complaint. Cecil County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cecil County's motion should be denied due to futility, as Cecil County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cecil County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cecil County amended its complaint on March 6, 2019, after transfer to the MDL on January 25, 2018. *See Cecil County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45100-DAP, ECF No. 6. Unlike many other plaintiffs, Cecil County declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Cecil County's deadline to amend was in 2019. Cecil County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cecil County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cecil County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cecil County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cecil County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cecil County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.06% market share for Cecil County). That insignificant dispensing volume is much too low to support a finding of good cause for Cecil County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cecil County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cecil County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Cecil County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Cecil County of the PBM services Express Scripts provides and Cecil County began receiving those services on January 1, 2016. *See id.* Inasmuch as Cecil County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Cecil County knew or should have known of the alleged wrongful conduct eight years before moving to amend. *See* Section III.A.2, above. Cecil County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Cecil County filed its original complaint on January 9, 2018. *See Cecil County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case

No. 1:18-op-45100-DAP, ECF No. 1. Despite filing its case years ago, Cecil County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Cecil County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cecil County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cecil County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cecil County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cecil County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cecil County, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cecil County's proposed RICO claim against the PBMs has expired. Cecil County filed its original complaint on January 9,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cecil County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45100-DAP, ECF No. 1. It is therefore indisputable that Cecil County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cecil County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cecil County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Cecil County's public-nuisance claim against the PBMs is therefore time-barred because Cecil County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 9, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Cecil County, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**188.** *City of Woburn v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45103-DAP: Plaintiff Woburn City, Massachusetts**

Woburn City's untimely motion for leave to amend should be denied for several reasons. Woburn City failed to provide notice of its proposed amendments through a proposed complaint. Woburn City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Woburn City's motion should be denied due to futility, as Woburn City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Woburn City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Woburn City amended its complaint on March 6, 2019, after transfer to the MDL on January 25, 2018. *See City of Woburn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45103-DAP, ECF No. 24. Unlike many other plaintiffs, Woburn City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Woburn City's deadline to amend was in 2019. Woburn City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Woburn City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Woburn City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Woburn City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Woburn City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Woburn City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Woburn City). That insignificant dispensing volume is much too low to support a finding of good cause for Woburn City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Woburn City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding

of good cause for Woburn City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Woburn City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Woburn City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Woburn City's proposed RICO claim against the PBMs has expired. Woburn City filed its original complaint on January 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Woburn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45103-DAP, ECF No. 1. It is therefore indisputable that Woburn City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Woburn City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Woburn City's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Woburn City's public-nuisance claim against the PBMs is therefore time-barred because Woburn City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Woburn City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

189. ***Marquette, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45104-DAP: Plaintiff Marquette County, Michigan**

Marquette County's untimely motion for leave to amend should be denied for several reasons. Marquette County failed to provide notice of its proposed amendments through a proposed complaint. Marquette County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marquette County's motion should be denied due to futility, as Marquette County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marquette County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marquette County amended its complaint on March 16, 2019, after transfer to the MDL on January 25, 2018. *See Marquette, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45104-DAP, ECF No. 28. Unlike many other plaintiffs, Marquette County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marquette County's deadline to amend was in 2019. Marquette County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marquette County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marquette County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Marquette County). That insignificant dispensing volume is much too low to support a finding of good cause for Marquette County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Marquette County violated its basic duty to implement a timely litigation hold. Marquette County filed its original complaint on January 8, 2018, but waited until September 28, 2018 to implement a litigation hold—eight and a

half months later. *See Marquette, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45104-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 28, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marquette County's case would force the parties and the Court to waste time and resources ascertaining the extent of Marquette County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marquette County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marquette County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marquette County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marquette County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marquette County's proposed RICO claim against the PBMs has expired. Marquette County filed its original complaint on January 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marquette, County of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45104-DAP, ECF No. 1. It is therefore indisputable that Marquette County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marquette County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marquette County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marquette County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

190.    ***City of Methuen v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45106-DAP: Plaintiff Methuen Town City, Massachusetts**

Methuen Town City's untimely motion for leave to amend should be denied for several reasons. Methuen Town City failed to provide notice of its proposed amendments through a proposed complaint. Methuen Town City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Methuen Town City's motion should be denied due to futility, as Methuen Town City does not assert any allegations tying the PBMs to its alleged harm,

its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Methuen Town City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Methuen Town City amended its complaint on March 6, 2019, after transfer to the MDL on January 25, 2018. *See City of Methuen v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45106-DAP, ECF No. 24. Unlike many other plaintiffs, Methuen Town City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Methuen Town City's deadline to amend was in 2019. Methuen Town City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Methuen Town City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Methuen Town City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Methuen Town City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Methuen Town City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Methuen Town City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Methuen Town City). That insignificant dispensing volume is much too low to support a finding of good cause for Methuen Town City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Methuen Town City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Methuen Town City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Methuen Town City filed its original complaint on January 8, 2018. *See City of Methuen v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45106-DAP, ECF No. 1. Despite filing its case years ago, Methuen Town City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified

document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Methuen Town City's case would force the parties and the Court to waste time and resources ascertaining the extent of Methuen Town City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Methuen Town City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Methuen Town City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Methuen Town City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Methuen Town City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Methuen Town City's proposed RICO claim against the PBMs has expired. Methuen Town City filed its original complaint on January 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against

other defendants. *See City of Methuen v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45106-DAP, ECF No. 1. It is therefore indisputable that Methuen Town City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Methuen Town City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Methuen Town City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Methuen Town City's public-nuisance claim against the PBMs is therefore time-barred because Methuen Town City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Methuen Town City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **191.** ***Haywood County v. Amerisourcebergen Drug Cororpation et al.*, Case No. 1:18-op-45107-DAP: Plaintiff Haywood County, Tennessee**

Haywood County's untimely motion for leave to amend should be denied for several reasons. Haywood County failed to provide notice of its proposed amendments through a proposed

complaint. Haywood County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Haywood County's motion should be denied due to futility, as Haywood County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Haywood County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Haywood County amended its complaint on March 11, 2019, after transfer to the MDL on January 25, 2018. *See Haywood County v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:18-op-45107-DAP, ECF No. 10. Unlike many other plaintiffs, Haywood County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Haywood County's deadline to amend was in 2019. Haywood County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Haywood County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Haywood County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the

PBMs in 2019. *See* MDL ECF No. 2582. Haywood County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Haywood County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Haywood County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Haywood County). That insignificant dispensing volume is much too low to support a finding of good cause for Haywood County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Haywood County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Haywood County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Haywood County violated its basic duty to implement a timely litigation hold. Haywood County filed its original complaint on January 4, 2018, but waited until December 13, 2019 to implement a litigation hold—almost two years later. *See Haywood County v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-45107-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Haywood County's case would force the parties and the Court to waste time and resources ascertaining the extent of Haywood County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Haywood County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Haywood County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Haywood County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Haywood County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Haywood County's proposed RICO claim against the PBMs has expired. Haywood County filed its original complaint on January 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Haywood County v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-45107-DAP, ECF No. 1. It is therefore indisputable that Haywood County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Haywood County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Haywood County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Haywood County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 192. *Onslow County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45114-DAP: Plaintiff Onslow County, North Carolina

Onslow County's untimely motion for leave to amend should be denied for several reasons. Onslow County failed to provide notice of its proposed amendments through a proposed complaint. Onslow County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Onslow County's motion should be denied due to futility, as Onslow County does not assert any allegations

tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Onslow County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Onslow County amended its complaint on March 11, 2019, after transfer to the MDL on January 29, 2018. *See Onslow County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45114-DAP, ECF No. 6. Unlike many other plaintiffs, Onslow County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Onslow County's deadline to amend was in 2019. Onslow County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Onslow County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Onslow County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Onslow County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Onslow County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Onslow County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Onslow County). That insignificant dispensing volume is much too low to support a finding of good cause for Onslow County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Onslow County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Onslow County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Onslow County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Onslow County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Onslow County's proposed RICO claim against the PBMs has expired. Onslow County filed its original complaint on January 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Onslow County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45114-DAP, ECF No. 1. It is therefore indisputable that Onslow County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Onslow County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Onslow County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Onslow County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

193.   *City of Jacksonville v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45115-DAP: Plaintiff Jacksonville City, North Carolina

Jacksonville City's untimely motion for leave to amend should be denied for several reasons. Jacksonville City failed to provide notice of its proposed amendments through a proposed complaint. Jacksonville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Jacksonville City's motion should be denied due to futility, as Jacksonville City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jacksonville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jacksonville City amended its complaint on March 11, 2019, after transfer to the MDL on January 29, 2018. *See City of Jacksonville v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45115-DAP, ECF No. 6. Unlike many other plaintiffs, Jacksonville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jacksonville City's deadline to amend was in 2019. Jacksonville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jacksonville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jacksonville City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jacksonville City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jacksonville City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jacksonville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Jacksonville City). That insignificant dispensing volume is much too low to support a finding of good cause for Jacksonville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jacksonville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Jacksonville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jacksonville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jacksonville City, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jacksonville City's proposed RICO claim against the PBMs has expired. Jacksonville City filed its original complaint on January 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Jacksonville v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45115-DAP, ECF No. 1. It is therefore indisputable that Jacksonville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Jacksonville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jacksonville City's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jacksonville City, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 194. *Polk County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45116-DAP: Plaintiff Polk County, Iowa

Polk County's untimely motion for leave to amend should be denied for several reasons. Polk County failed to provide notice of its proposed amendments through a proposed complaint. Polk County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Polk County's motion should be denied due to futility, as Polk County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Polk County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Polk County first amended its complaint on May 25, 2018. *See Polk County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45116-DAP, ECF No. 7. Polk County amended its complaint again on March 15, 2019. *See Polk County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45116-DAP, ECF No. 8. Unlike many other plaintiffs, Polk County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Polk County's deadline to amend was in 2019. Polk County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Polk County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling

order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Polk County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Polk County). That insignificant dispensing volume is much too low to support a finding of good cause for Polk County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Polk County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Polk County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Polk County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See Polk County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45116-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Polk County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL

6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Polk County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Polk County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Polk County's proposed RICO claim against the PBMs has expired. Polk County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Polk County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45116-DAP, ECF No. 7. It is therefore indisputable that Polk County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Polk County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Polk County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Polk County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **195.** ***Brown County et al. v. Purdue Pharma LP et al.,* Case No. 1:18-op-45117-DAP: Plaintiff Brown County, Wisconsin**

Brown County's untimely motion for leave to amend should be denied for several reasons. Brown County failed to provide notice of its proposed amendments through a proposed complaint. Brown County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brown County's motion should be denied due to futility, as Brown County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brown County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brown County first amended its complaint on May 25, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. Brown County amended its complaint again on March 15, 2019. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 7. Unlike many other plaintiffs, Brown County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Brown County's deadline to amend was in 2019. Brown County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Brown County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brown County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Brown County). That insignificant dispensing volume is much too low to support a finding of good cause for Brown County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brown County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brown County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Brown County filed its original complaint on January 5, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 1. Despite filing its case years ago, Brown County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Brown County's case would force the parties and the Court to waste time and resources ascertaining the extent of Brown County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM

bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brown County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brown County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brown County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brown County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brown County's proposed RICO claim against the PBMs has expired. Brown County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. It is therefore indisputable that Brown County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Brown County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF

No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brown County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Brown County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 196. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Crawford County, Wisconsin

Crawford County's untimely motion for leave to amend should be denied for several reasons. Crawford County failed to provide notice of its proposed amendments through a proposed complaint. Crawford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Crawford County's motion should be denied due to futility, as Crawford County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Crawford County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Crawford County first amended its complaint on May 25, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. Crawford County amended its complaint again on March 15, 2019. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 7. Unlike many other plaintiffs, Crawford County

declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Crawford County's deadline to amend was in 2019. Crawford County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Crawford County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Crawford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Crawford County). That insignificant dispensing volume is much too low to support a finding of good cause for Crawford County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Crawford County filed its original complaint on January 5, 2018, but waited until May 4, 2018 to implement a litigation hold. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 4, 2018). Crawford County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Crawford County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Crawford County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Crawford County of this deficiency on September 16, 2024 (*see* Exhibit B), but Crawford County refused to amend or supplement its Fact Sheet. Under this Court's orders, Crawford County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Crawford County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Crawford County's potential claims against them. Crawford County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Crawford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Crawford County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Crawford County's proposed RICO claim against the PBMs has expired. Crawford County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. It is therefore indisputable that Crawford County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Crawford County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Crawford County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Crawford County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

197. ***Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Kewaunee County, Wisconsin**

Kewaunee County's untimely motion for leave to amend should be denied for several reasons. Kewaunee County failed to provide notice of its proposed amendments through a proposed complaint. Kewaunee County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kewaunee County's motion should be denied due to futility, as Kewaunee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kewaunee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kewaunee County first amended its complaint on May 25, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. Kewaunee County amended its complaint again on March 15, 2019. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 7. Unlike many other plaintiffs, Kewaunee County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Kewaunee County's deadline to amend was in 2019. Kewaunee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kewaunee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kewaunee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.37% market share for Kewaunee County). That insignificant dispensing

volume is much too low to support a finding of good cause for Kewaunee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Kewaunee County filed its original complaint on January 5, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 1. Despite filing its case years ago, Kewaunee County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Kewaunee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Kewaunee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kewaunee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kewaunee County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kewaunee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kewaunee County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kewaunee County's proposed RICO claim against the PBMs has expired. Kewaunee County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. It is therefore indisputable that Kewaunee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Kewaunee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kewaunee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kewaunee County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 198. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Outagamie County, Wisconsin

Outagamie County's untimely motion for leave to amend should be denied for several reasons. Outagamie County failed to provide notice of its proposed amendments through a proposed complaint. Outagamie County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Outagamie County's motion should be denied due to futility, as Outagamie County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Outagamie County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Outagamie County first amended its complaint on May 25, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. Outagamie County amended its complaint again on March 15, 2019. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 7. Unlike many other plaintiffs, Outagamie County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Outagamie County's deadline to amend was in 2019. Outagamie County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Outagamie County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Outagamie County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Outagamie County). That insignificant dispensing

volume is much too low to support a finding of good cause for Outagamie County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Outagamie County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Outagamie County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Outagamie County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Outagamie County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Outagamie County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Outagamie County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Outagamie County's proposed RICO claim against the PBMs has expired. Outagamie County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. It is therefore indisputable that Outagamie County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Outagamie County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Outagamie County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Outagamie County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**199.** *Brown County et al. v. Purdue Pharma LP et al.*, **Case No. 1:18-op-45117-DAP: Plaintiff Ozaukee County, Wisconsin**

Ozaukee County's untimely motion for leave to amend should be denied for several reasons. Ozaukee County failed to provide notice of its proposed amendments through a proposed complaint. Ozaukee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ozaukee County's motion should be denied due to futility, as Ozaukee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ozaukee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ozaukee County first amended its complaint on May 25, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. Ozaukee County amended its complaint again on March 15, 2019. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 7. Unlike many other plaintiffs, Ozaukee County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Ozaukee County's deadline to amend was in 2019. Ozaukee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ozaukee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ozaukee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.22% market share for Ozaukee County). That insignificant dispensing volume is much too low to support a finding of good cause for Ozaukee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ozaukee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ozaukee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Ozaukee County filed its original complaint on January 5, 2018, but waited until April 30, 2018 to implement a litigation hold. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Ozaukee County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ozaukee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ozaukee County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ozaukee County's proposed RICO claim against the PBMs has expired. Ozaukee County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. It is therefore indisputable that Ozaukee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Ozaukee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ozaukee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ozaukee County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **200.** *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Pepin County, Wisconsin

Pepin County's untimely motion for leave to amend should be denied for several reasons. Pepin County failed to provide notice of its proposed amendments through a proposed complaint. Pepin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Pepin County's motion should be denied due to futility, as Pepin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pepin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pepin County first amended its complaint on May 25, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. Pepin County amended its complaint again on March 15, 2019. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 7. Unlike many other plaintiffs, Pepin County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Pepin County's deadline to amend was in 2019. Pepin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pepin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Pepin County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Pepin County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pepin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pepin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pepin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pepin County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

903

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pepin County's proposed RICO claim against the PBMs has expired. Pepin County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. It is therefore indisputable that Pepin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pepin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pepin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pepin County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 201. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Racine County, Wisconsin

Racine County's untimely motion for leave to amend should be denied for several reasons. Racine County failed to provide notice of its proposed amendments through a proposed complaint. Racine County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Racine County's motion should be denied due to futility, as Racine County does

not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Racine County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Racine County first amended its complaint on May 25, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. Racine County amended its complaint again on March 15, 2019. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 7. Unlike many other plaintiffs, Racine County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Racine County's deadline to amend was in 2019. Racine County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Racine County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Racine County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Racine County). That insignificant dispensing volume is much too low to support a finding of good cause for Racine County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Racine County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Racine County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Racine County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Racine County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Racine County's proposed RICO claim against the PBMs has expired. Racine County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP,

ECF No. 5. It is therefore indisputable that Racine County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Racine County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Racine County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Racine County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 202. *Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP: Plaintiff Winnebago County, Wisconsin

Winnebago County's untimely motion for leave to amend should be denied for several reasons. Winnebago County failed to provide notice of its proposed amendments through a proposed complaint. Winnebago County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winnebago County's motion should be denied due to futility, as Winnebago County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winnebago County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Winnebago County first amended its complaint on May 25, 2018. *See Brown County*

*et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. Winnebago County amended its complaint again on March 15, 2019. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 7. Unlike many other plaintiffs, Winnebago County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Winnebago County's deadline to amend was in 2019. Winnebago County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Winnebago County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Winnebago County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Winnebago County). That insignificant dispensing volume is much too low to support a finding of good cause for Winnebago County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Winnebago County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Winnebago County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Winnebago County filed its original complaint on January 5, 2018. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 1. Despite filing its case years ago, Winnebago County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Winnebago County's case would force the parties and the Court to waste time and resources ascertaining the extent of Winnebago County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Winnebago County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Winnebago County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Winnebago County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Winnebago County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Winnebago County of this deficiency on September 16, 2024 (*see* Exhibit B), but Winnebago County refused to amend or supplement its Fact Sheet. Under this Court's orders, Winnebago County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

Winnebago County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Winnebago County's potential claims against them. Winnebago County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winnebago County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winnebago County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winnebago County's proposed RICO claim against the PBMs has expired. Winnebago County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brown County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45117-DAP, ECF No. 5. It is therefore indisputable that Winnebago County knew of its RICO injury, at

910

the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Winnebago County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winnebago County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Winnebago County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 203. *Tippah County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45118-DAP: Plaintiff Tippah County, Mississippi

Tippah County's untimely motion for leave to amend should be denied for several reasons. Tippah County failed to provide notice of its proposed amendments through a proposed complaint. Tippah County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tippah County's motion should be denied due to futility, as Tippah County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tippah County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tippah County amended its complaint on March 7, 2019, after transfer to the MDL on January 29, 2018. *See Tippah County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45118-DAP, ECF No. 22. Unlike many other plaintiffs, Tippah County declined to add

claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tippah County's deadline to amend was in 2019. Tippah County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tippah County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Tippah County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Tippah County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tippah County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tippah County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.02% market share for Tippah County). That insignificant dispensing volume is much too low to support a finding of good cause for Tippah County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tippah County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tippah County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Tippah County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Tippah County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Tippah County of this deficiency on September 16, 2024 (*see* Exhibit B), but Tippah County refused to amend or supplement its Fact Sheet. Under this Court's orders, Tippah County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Tippah County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Tippah County's potential claims against them. Tippah County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tippah County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tippah County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tippah County's proposed RICO claim against the PBMs has expired. Tippah County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Tippah County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45118-DAP, ECF No. 22. It is therefore indisputable that Tippah County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Tippah County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tippah County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tippah County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 204. *Benton County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45119-DAP: Plaintiff Benton County, Mississippi

Benton County's untimely motion for leave to amend should be denied for several reasons. Benton County failed to provide notice of its proposed amendments through a proposed complaint. Benton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Benton County's motion should be denied due to futility, as Benton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Benton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Benton County amended its complaint on March 11, 2019, after transfer to the MDL on January 30, 2018. *See Benton County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45119-DAP, ECF No. 23. Unlike many other plaintiffs, Benton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Benton County's deadline to amend was in 2019. Benton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Benton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all

the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Benton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Benton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Benton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Benton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Benton County). That insignificant dispensing volume is much too low to support a finding of good cause for Benton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Benton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Benton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Benton County filed its original complaint on January 8, 2018. *See Benton County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45119-DAP, ECF No. 1. Despite filing its case years ago, Benton County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Benton County's case would force the parties and the Court to waste time and resources ascertaining the extent of Benton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Benton County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Benton County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Benton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Benton County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Benton County's proposed RICO claim against the PBMs has expired. Benton County filed its amended complaint on March 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Benton County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45119-DAP, ECF No. 23. It is therefore indisputable that Benton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Benton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Benton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Benton County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**205.** *Union County, Mississippi v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45120-DAP: Plaintiff Union County, Mississippi

Union County's untimely motion for leave to amend should be denied for several reasons. Union County failed to provide notice of its proposed amendments through a proposed complaint. Union County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Union County's motion should be denied due to futility, as Union County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Union County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Union County amended its complaint on March 11, 2019, after transfer to the MDL on January 30, 2018. *See Union County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45120-DAP, ECF No. 6. Unlike many other plaintiffs, Union County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Union County's deadline to amend was in 2019. Union County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Union County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Union County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Union County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Union County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Union County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Union County). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Union County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Union County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Union County filed its original complaint on January 8, 2018. *See Union County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45120-DAP, ECF No. 1. Despite filing its case years ago, Union County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Union County's case would force the parties and the Court to waste time and resources ascertaining the extent of Union County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Union County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Union County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Union County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Union County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Union County of this deficiency on September 16, 2024 (*see* Exhibit B), but Union County refused to amend or supplement its Fact Sheet. Under this Court's orders, Union County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Union County's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Union County's potential claims against them. Union County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Union County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Union County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Union County's proposed RICO claim against the PBMs has expired. Union County filed its amended complaint on March 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Union County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45120-DAP, ECF No. 6. It is therefore indisputable that Union County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking

leave to amend. Union County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Union County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Union County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 206. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Bremer County, Iowa

Bremer County's untimely motion for leave to amend should be denied for several reasons. Bremer County failed to provide notice of its proposed amendments through a proposed complaint. Bremer County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bremer County's motion should be denied due to futility, as Bremer County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bremer County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bremer County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Bremer County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Bremer County declined to add

claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Bremer County's deadline to amend was in 2019. Bremer County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bremer County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bremer County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Bremer County). That insignificant dispensing volume is much too low to support a finding of good cause for Bremer County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bremer County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bremer County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Bremer County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See*

*Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Bremer County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bremer County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

      **Failure to State a Claim.** Bremer County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

      **RICO Statute of Limitations.** The statute of limitations for Bremer County's proposed RICO claim against the PBMs has expired. Bremer County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Bremer County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bremer County's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bremer County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bremer County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

207. ***Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Buchanan County, Iowa**

Buchanan County's untimely motion for leave to amend should be denied for several reasons. Buchanan County failed to provide notice of its proposed amendments through a proposed complaint. Buchanan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Buchanan County's motion should be denied due to futility, as Buchanan County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Buchanan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Buchanan County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Buchanan County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Buchanan County

declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Buchanan County's deadline to amend was in 2019. Buchanan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Buchanan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Buchanan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Buchanan County). That insignificant dispensing volume is much too low to support a finding of good cause for Buchanan County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Buchanan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Buchanan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Buchanan County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See*

*Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Buchanan County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Buchanan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Buchanan County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Buchanan County's proposed RICO claim against the PBMs has expired. Buchanan County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Buchanan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Buchanan County's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Buchanan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Buchanan County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 208. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Carroll County, Iowa

Carroll County's untimely motion for leave to amend should be denied for several reasons. Carroll County failed to provide notice of its proposed amendments through a proposed complaint. Carroll County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carroll County's motion should be denied due to futility, as Carroll County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carroll County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carroll County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Carroll County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Carroll County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Carroll County's

929

deadline to amend was in 2019. Carroll County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carroll County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carroll County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Carroll County). That insignificant dispensing volume is much too low to support a finding of good cause for Carroll County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Carroll County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Carroll County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Carroll County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see*

*also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Carroll County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carroll County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carroll County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carroll County's proposed RICO claim against the PBMs has expired. Carroll County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Carroll County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Carroll County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the

injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carroll County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Carroll County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 209. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Clay County, Iowa

Clay County's untimely motion for leave to amend should be denied for several reasons. Clay County failed to provide notice of its proposed amendments through a proposed complaint. Clay County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clay County's motion should be denied due to futility, as Clay County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clay County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clay County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Clay County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Clay County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Clay County's deadline

to amend was in 2019. Clay County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clay County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clay County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.32% market share for Clay County). That insignificant dispensing volume is much too low to support a finding of good cause for Clay County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Clay County filed its original complaint on January 5, 2018, but waited until May 1, 2018 to implement a litigation hold. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 1, 2018). Clay County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Clay County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Clay County's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Clay County of this deficiency on September 16, 2024 (*see* Exhibit B), but Clay County refused to amend or supplement its Fact Sheet. Under this Court's orders, Clay County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Clay County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Clay County's potential claims against them. Clay County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clay County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clay County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clay County's proposed RICO claim against the PBMs has expired. Clay County filed its first amended complaint on May 25,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Clay County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Clay County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clay County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clay County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 210. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Clayton County, Iowa

Clayton County's untimely motion for leave to amend should be denied for several reasons. Clayton County failed to provide notice of its proposed amendments through a proposed complaint. Clayton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clayton County's motion should be denied due to futility, as Clayton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clayton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clayton County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Clayton County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Clayton County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Clayton County's deadline to amend was in 2019. Clayton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clayton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clayton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Clayton County). That insignificant dispensing volume is much too low to support a finding of good cause for Clayton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units

shipped to Clayton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clayton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Clayton County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Clayton County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clayton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clayton County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clayton County's proposed RICO claim against the PBMs has expired. Clayton County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Clayton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Clayton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clayton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clayton County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 211. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Dallas County, Iowa

Dallas County's untimely motion for leave to amend should be denied for several reasons. Dallas County failed to provide notice of its proposed amendments through a proposed complaint. Dallas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dallas County's motion should be denied due to futility, as Dallas County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dallas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dallas County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Dallas County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Dallas County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Dallas County's deadline to amend was in 2019. Dallas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dallas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dallas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.24% market share for Dallas County). That insignificant dispensing volume is much too low to support a finding of good cause for Dallas County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Dallas County filed its original complaint on January 5, 2018, but waited until June 28, 2018 to implement a litigation hold. *See*

*Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 28, 2018). Dallas County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

    **Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dallas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

    **Failure to State a Claim.** Dallas County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

    **RICO Statute of Limitations.** The statute of limitations for Dallas County's proposed RICO claim against the PBMs has expired. Dallas County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Dallas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Dallas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF

No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dallas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dallas County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 212. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Humboldt County, Iowa

Humboldt County's untimely motion for leave to amend should be denied for several reasons. Humboldt County failed to provide notice of its proposed amendments through a proposed complaint. Humboldt County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Humboldt County's motion should be denied due to futility, as Humboldt County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Humboldt County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Humboldt County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Humboldt County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Humboldt County

declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Humboldt County's deadline to amend was in 2019. Humboldt County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Humboldt County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Humboldt County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Humboldt County). That insignificant dispensing volume is much too low to support a finding of good cause for Humboldt County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Humboldt County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Humboldt County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Humboldt County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See*

*Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Humboldt County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Humboldt County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Humboldt County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Humboldt County of this deficiency on September 16, 2024 (*see* Exhibit B), but Humboldt County refused to amend or supplement its Fact Sheet. Under this Court's orders, Humboldt County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Humboldt County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Humboldt County's potential claims against them. Humboldt County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Humboldt County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Humboldt County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Humboldt County's proposed RICO claim against the PBMs has expired. Humboldt County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Humboldt County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Humboldt County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Humboldt County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Humboldt County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **213.** *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Johnson County, Iowa

Johnson County's untimely motion for leave to amend should be denied for several reasons. Johnson County failed to provide notice of its proposed amendments through a proposed complaint. Johnson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Johnson County's motion should be denied due to futility, as Johnson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Johnson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Johnson County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Johnson County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Johnson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Johnson County's deadline to amend was in 2019. Johnson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Johnson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Johnson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Johnson County). That insignificant dispensing volume is much too low to support a finding of good cause for Johnson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Johnson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Johnson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Johnson County filed its original complaint on January 5, 2018, but waited until June 19, 2018 to implement a litigation hold. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 19, 2018). Johnson County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Johnson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Johnson County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Johnson County's proposed RICO claim against the PBMs has expired. Johnson County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Johnson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Johnson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Johnson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

947

**Plaintiff Lacks Standing.** Johnson County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 214. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Marion County, Iowa

Marion County's untimely motion for leave to amend should be denied for several reasons. Marion County failed to provide notice of its proposed amendments through a proposed complaint. Marion County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marion County's motion should be denied due to futility, as Marion County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marion County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marion County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Marion County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Marion County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Marion County's deadline to amend was in 2019. Marion County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marion County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marion County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.25% market share for Marion County). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marion County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Marion County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Marion County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marion County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marion County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marion County's proposed RICO claim against the PBMs has expired. Marion County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Marion County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marion County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marion County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marion County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **215.** *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Mitchell County, Iowa

Mitchell County's untimely motion for leave to amend should be denied for several reasons. Mitchell County failed to provide notice of its proposed amendments through a proposed complaint. Mitchell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mitchell County's motion should be denied due to futility, as Mitchell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mitchell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mitchell County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Mitchell County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Mitchell County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Mitchell County's deadline to amend was in 2019. Mitchell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mitchell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Mitchell County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Mitchell County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mitchell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mitchell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Mitchell County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Mitchell County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Mitchell County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Mitchell County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Mitchell County of this deficiency on September 16, 2024 (*see* Exhibit B), but Mitchell County refused to amend or supplement its Fact Sheet. Under this Court's orders, Mitchell County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Mitchell County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Mitchell County's potential claims against them. Mitchell County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mitchell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28..

**Failure to State a Claim.** Mitchell County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

      **RICO Statute of Limitations.** The statute of limitations for Mitchell County's proposed RICO claim against the PBMs has expired. Mitchell County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Mitchell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mitchell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mitchell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

      **Plaintiff Lacks Standing.** Mitchell County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 216. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Plymouth County, Iowa

      Plymouth County's untimely motion for leave to amend should be denied for several reasons. Plymouth County failed to provide notice of its proposed amendments through a proposed complaint. Plymouth County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Plymouth

County's motion should be denied due to futility, as Plymouth County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Plymouth County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Plymouth County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Plymouth County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Plymouth County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Plymouth County's deadline to amend was in 2019. Plymouth County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Plymouth County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Plymouth County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Plymouth County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts'
mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units
shipped to Plymouth County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,
Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support
a finding of good cause for Plymouth County to add dispensing claims against Express Scripts'
mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Plymouth County filed its original
complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See*
*Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see*
*also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Plymouth County's
violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is
prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend.
*See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of
time resulted in significant prejudice due to the loss of documents or records); *see also* Section
III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Plymouth County failed to provide
complete answers to Questions I.B.8 and I.B.9, relating to Plymouth County's health plans,
carriers, third party administrators, and pharmacy benefit managers throughout the relevant time
period. The PBMs notified Plymouth County of this deficiency on September 16, 2024 (*see* Exhibit
B), but Plymouth County refused to amend or supplement its Fact Sheet. Under this Court's orders,
Plymouth County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to
prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Plymouth
County's refusal to provide basic information related to its health care plans prejudices the PBMs'

ability to defend against Plymouth County's potential claims against them. Plymouth County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Plymouth County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Plymouth County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Plymouth County's proposed RICO claim against the PBMs has expired. Plymouth County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Plymouth County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Plymouth County's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Plymouth County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Plymouth County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 217. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Scott County, Iowa

Scott County's untimely motion for leave to amend should be denied for several reasons. Scott County failed to provide notice of its proposed amendments through a proposed complaint. Scott County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scott County's motion should be denied due to futility, as Scott County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scott County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scott County first amended its complaint on May 25, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Scott County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Scott County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Scott County's deadline

to amend was in 2019. Scott County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scott County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Scott County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Scott County). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scott County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Scott County filed its original complaint on January 5, 2018. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1. Despite filing its case years ago, Scott County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws.

*See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Scott County's case would force the parties and the Court to waste time and resources ascertaining the extent of Scott County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Scott County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Scott County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scott County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scott County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scott County's proposed RICO claim against the PBMs has expired. Scott County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It

is therefore indisputable that Scott County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Scott County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scott County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Scott County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 218. *Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP: Plaintiff Winneshiek County, Iowa

Winneshiek County's untimely motion for leave to amend should be denied for several reasons. Winneshiek County failed to provide notice of its proposed amendments through a proposed complaint. Winneshiek County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winneshiek County's motion should be denied due to futility, as Winneshiek County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winneshiek County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Winneshiek County first amended its complaint on May 25, 2018. *See Adair County et*

*al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. Winneshiek County amended its complaint again on March 15, 2019. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 10. Unlike many other plaintiffs, Winneshiek County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Winneshiek County's deadline to amend was in 2019. Winneshiek County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Winneshiek County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Winneshiek County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Winneshiek County). That insignificant dispensing volume is much too low to support a finding of good cause for Winneshiek County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Winneshiek County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Winneshiek County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Winneshiek County filed its original complaint on January 5, 2018, but waited until April 27, 2018 to implement a litigation hold. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 27, 2018). Winneshiek County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winneshiek County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winneshiek County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winneshiek County's proposed RICO claim against the PBMs has expired. Winneshiek County filed its first amended

complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adair County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45122-DAP, ECF No. 7. It is therefore indisputable that Winneshiek County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Winneshiek County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winneshiek County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Winneshiek County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 219. *City of Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45132-DAP: Plaintiff Cleveland City, Ohio

Cleveland City's untimely motion for leave to amend should be denied for several reasons. Cleveland City failed to provide notice of its proposed amendments through a proposed complaint. Cleveland City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cleveland City's motion should be denied due to futility, as Cleveland City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cleveland City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cleveland City first amended its complaint on April 25, 2018. *See City of Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45132-DAP, ECF No. 12. Cleveland City amended its complaint again on May 18, 2018. *See City of Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45132-DAP, ECF No. 98. Unlike many other plaintiffs, Cleveland City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Cleveland City's deadline to amend was in 2019. Cleveland City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cleveland City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cleveland City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cleveland City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cleveland City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cleveland City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Cleveland City). That insignificant dispensing volume is much too low to support a finding of good cause for Cleveland City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cleveland City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cleveland City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Cleveland City has *never* served a Plaintiff Fact Sheet. Cleveland City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cleveland City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs'

counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cleveland City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cleveland City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Cleveland City is a plaintiff in Ohio. Cleveland City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Cleveland City's proposed RICO claim against the PBMs has expired. Cleveland City filed its original complaint on March 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45132-DAP, ECF No. 1. It is therefore indisputable that Cleveland City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking

leave to amend. Cleveland City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cleveland City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cleveland City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 220. *Campbell County v. AmerisourceBergen Drug Corporation et al. (JRG2)*, Case No. 1:18-op-45133-DAP: Plaintiff Campbell County, Tennessee

Campbell County's untimely motion for leave to amend should be denied for several reasons. Campbell County failed to provide notice of its proposed amendments through a proposed complaint. Campbell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Campbell County's motion should be denied due to futility, as Campbell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Campbell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Campbell County amended its complaint on March 6, 2019, after transfer to the MDL on January 30, 2018. *See Campbell County v. AmerisourceBergen Drug Corporation et al. (JRG2)*, Case No. 1:18-op-45133-DAP, ECF No. 12. Unlike many other plaintiffs, Campbell County

declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Campbell County's deadline to amend was in 2019. Campbell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Campbell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Campbell County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Campbell County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Campbell County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Campbell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Campbell County). That insignificant dispensing volume is much too low to support a finding of good cause for Campbell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Campbell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Campbell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Campbell County filed its original complaint on January 4, 2018, but waited until April 30, 2018 to implement a litigation hold. *See Campbell County v. AmerisourceBergen Drug Corporation et al. (JRG2)*, Case No. 1:18-op-45133-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Campbell County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Campbell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Campbell County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Campbell County's proposed RICO claim against the PBMs has expired. Campbell County filed its original complaint on January 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Campbell County v. AmerisourceBergen Drug Corporation et al. (JRG2)*, Case No. 1:18-op-45133-DAP, ECF No. 1. It is therefore indisputable that Campbell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Campbell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Campbell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Campbell County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **221.** ***Williamson County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45134-DAP: Plaintiff Williamson County, Tennessee**

Williamson County's untimely motion for leave to amend should be denied for several reasons. Williamson County failed to provide notice of its proposed amendments through a proposed complaint. Williamson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Williamson County's motion should be denied due to futility, as Williamson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Williamson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Williamson County amended its complaint on March 13, 2019, after transfer to the MDL on January 31, 2018. *See Williamson County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45134-DAP, ECF No. 13. Unlike many other plaintiffs, Williamson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Williamson County's deadline to amend was in 2019. Williamson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Williamson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Williamson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Williamson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Williamson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Williamson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Williamson County). That insignificant dispensing volume is much too low to support a finding of good cause for Williamson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Williamson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Williamson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Williamson County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Williamson County of the PBM services Express Scripts provides and Williamson County began receiving those services on April 1, 2014. *See id.* Inasmuch as Williamson County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Williamson County knew or should have known of the alleged wrongful conduct ten years before moving to amend. *See* Section III.A.2, above. Williamson County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Williamson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Williamson County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**RICO Statute of Limitations.** The statute of limitations for Williamson County's proposed RICO claim against the PBMs has expired. Williamson County filed its original complaint on January 3, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Williamson County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45134-DAP, ECF No. 1. It is therefore indisputable that Williamson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Williamson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Williamson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Williamson County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

222.   ***Greene County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45136-DAP: Plaintiff Greene County, Tennessee**

Greene County's untimely motion for leave to amend should be denied for several reasons. Greene County failed to provide notice of its proposed amendments through a proposed complaint. Greene County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greene County's motion should be denied due to futility, as Greene County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greene County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greene County amended its complaint on March 8, 2019, after transfer to the MDL on February 1, 2018. *See Greene County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45136-DAP, ECF No. 7. Unlike many other plaintiffs, Greene County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Greene County's deadline to amend was in 2019. Greene County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Greene County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Greene County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Greene County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Greene County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Greene County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Greene County). That insignificant dispensing volume is much too low to support a finding of good cause for Greene County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Greene County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Greene County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Greene County filed its original complaint on January 4, 2018, but waited until April 30, 2018 to implement a litigation hold. *See Greene County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45136-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Greene County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greene County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greene County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greene County's proposed RICO claim against the PBMs has expired. Greene County filed its original complaint on January

4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Greene County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45136-DAP, ECF No. 1. It is therefore indisputable that Greene County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Greene County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greene County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Greene County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **223.** ***Muskingum    County    Board    of    County    Commissioners    v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45137-DAP: Plaintiff Muskingum County, Ohio**

Muskingum County's untimely motion for leave to amend should be denied for several reasons. Muskingum County failed to provide notice of its proposed amendments through a proposed complaint. Muskingum County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Muskingum County's motion should be denied due to futility, as Muskingum County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Muskingum County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Muskingum County amended its complaint on March 14, 2019, after transfer to the MDL on February 2, 2018. *See Muskingum County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45137-DAP, ECF No. 26. Unlike many other plaintiffs, Muskingum County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Muskingum County's deadline to amend was in 2019. Muskingum County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Muskingum County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Muskingum County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Muskingum County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Muskingum County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Muskingum County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Muskingum County). That insignificant dispensing volume is much too low to support a finding of good cause for Muskingum County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Muskingum County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Muskingum County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Muskingum County is a plaintiff in Ohio. Muskingum County's request for leave to add the PBMs as defendants to a public nuisance claim

should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Muskingum County's proposed RICO claim against the PBMs has expired. Muskingum County filed its original complaint on January 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Muskingum County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45137-DAP, ECF No. 1. It is therefore indisputable that Muskingum County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Muskingum County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Muskingum County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Muskingum County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **224.** *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45138-DAP: Plaintiff Coles County, Illinois**

Coles County's untimely motion for leave to amend should be denied for several reasons. Coles County failed to provide notice of its proposed amendments through a proposed complaint. Coles County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and

because its untimely motion would unduly prejudice the PBMs. Moreover, Coles County's motion should be denied due to futility, as Coles County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coles County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coles County amended its complaint on March 6, 2019, after transfer to the MDL on February 2, 2018. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45138-DAP, ECF No. 9. Unlike many other plaintiffs, Coles County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Coles County's deadline to amend was in 2019. Coles County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Coles County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Coles County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Coles County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Coles County

fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Coles County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Coles County). That insignificant dispensing volume is much too low to support a finding of good cause for Coles County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Coles County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Coles County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Coles County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Coles County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Coles County's proposed RICO claim against the PBMs has expired. Coles County filed its original complaint on January 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45138-DAP, ECF No. 1. It is therefore indisputable that Coles County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Coles County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Coles County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Coles County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**225.** ***Catawba County North Carolina v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45145-DAP: Plaintiff Catawba County, North Carolina**

Catawba County's untimely motion for leave to amend should be denied for several reasons. Catawba County failed to provide notice of its proposed amendments through a proposed complaint. Catawba County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Catawba County's motion should be denied due to futility, as Catawba County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Catawba County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Catawba County amended its complaint on March 11, 2019, after transfer to the MDL on February 5, 2018. *See Catawba County North Carolina v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45145-DAP, ECF No. 23. Unlike many other plaintiffs, Catawba County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Catawba County's deadline to amend was in 2019. Catawba County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Catawba County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Catawba County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Catawba County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Catawba County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Catawba County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Catawba County). That insignificant dispensing volume is much too low to support a finding of good cause for Catawba County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Catawba County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Catawba County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Catawba County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Catawba County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Catawba County's proposed RICO claim against the PBMs has expired. Catawba County filed its original complaint on January 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Catawba County North Carolina v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45145-DAP, ECF No. 1. It is therefore indisputable that Catawba County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Catawba County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Catawba County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Catawba County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 226. *Forrest County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45147-DAP: Plaintiff Forrest County, Mississippi

Forrest County's untimely motion for leave to amend should be denied for several reasons. Forrest County failed to provide notice of its proposed amendments through a proposed complaint. Forrest County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Forrest County's motion should be denied due to futility, as Forrest County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Forrest County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Forrest County amended its complaint on March 7, 2019, after transfer to the MDL on April 2, 2018. *See Forrest County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45147-DAP, ECF No. 17. Unlike many other plaintiffs, Forrest County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Forrest County's deadline to amend was in 2019. Forrest County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Forrest County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Forrest County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Forrest County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Forrest County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Forrest County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Forrest County). That insignificant dispensing volume is much too low to support a finding of good cause for Forrest County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Forrest County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Forrest County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Forrest County filed its original complaint on January 18, 2018. *See Forrest County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45147-DAP, ECF No. 1. Despite filing its case years ago, Forrest County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Forrest County's case would force the parties and the Court to waste time and resources ascertaining the extent of Forrest County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Forrest County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Forrest County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Forrest County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Forrest County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Forrest County's proposed RICO claim against the PBMs has expired. Forrest County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Forrest County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45147-DAP, ECF No. 17. It is therefore indisputable that Forrest County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Forrest County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Forrest County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Forrest County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

227. ***Wayne County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45150-DAP: Plaintiff Wayne County, Ohio**

Wayne County's untimely motion for leave to amend should be denied for several reasons. Wayne County failed to provide notice of its proposed amendments through a proposed complaint. Wayne County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Wayne County's motion should be denied due to futility, as Wayne County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wayne County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wayne County amended its complaint on March 6, 2019, after directly filing in the MDL. *See Wayne County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45150-DAP, ECF No. 38. Unlike many other plaintiffs, Wayne County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wayne County's deadline to amend was in 2019. Wayne County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wayne County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wayne County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wayne County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wayne County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wayne County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Wayne County). That insignificant dispensing volume is much too low to support a finding of good cause for Wayne County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wayne County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

994

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wayne County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Wayne County is a plaintiff in Ohio. Wayne County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Wayne County's proposed RICO claim against the PBMs has expired. Wayne County filed its original complaint on February 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wayne County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45150-DAP, ECF No. 1. It is therefore indisputable that Wayne County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wayne County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wayne County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wayne County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **228.** ***Baldwin County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45152-DAP: Plaintiff Baldwin County, Alabama**

Baldwin County's untimely motion for leave to amend should be denied for several reasons. Baldwin County failed to provide notice of its proposed amendments through a proposed complaint. Baldwin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Baldwin County's motion should be denied due to futility, as Baldwin County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Baldwin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Baldwin County amended its complaint on March 6, 2019, after transfer to the MDL on February 5, 2018. *See Baldwin County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45152-DAP, ECF No. 11. Unlike many other plaintiffs, Baldwin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Baldwin County's deadline to amend was in 2019. Baldwin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Baldwin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Baldwin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Baldwin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Baldwin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Baldwin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Baldwin County). That insignificant dispensing volume is much too low to support a finding of good cause for Baldwin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Baldwin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Baldwin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Baldwin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Baldwin County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Baldwin County seeks leave to amend to add claims against the PBMs in two cases: *Baldwin County, Alabama v. Amerisourcebergen Drug Corporation, et al.*, No. 1:18-op-45152-DAP; and *Baldwin County, Alabama v. Sackler, et al.*, No. 1:19-op-45264-DAP. Baldwin County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same

facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Baldwin County's proposed RICO claim against the PBMs has expired. Baldwin County filed its original complaint on January 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Baldwin County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45152-DAP, ECF No. 1. It is therefore indisputable that Baldwin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Baldwin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Baldwin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Baldwin County's public-nuisance claim against the PBMs is therefore time-barred because Baldwin County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 12, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Baldwin County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Baldwin County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 229. *Hancock County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45153-DAP: Plaintiff Hancock County, Tennessee

Hancock County's untimely motion for leave to amend should be denied for several reasons. Hancock County failed to provide notice of its proposed amendments through a proposed complaint. Hancock County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hancock County's motion should be denied due to futility, as Hancock County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hancock County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hancock County amended its complaint on March 8, 2019, after transfer to the MDL on February 6, 2018. *See Hancock County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45153-DAP, ECF No. 7. Unlike many other plaintiffs, Hancock County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hancock County's deadline to amend was in 2019. Hancock County waited five years after its deadline to amend to seek leave

to assert claims against the PBMs. Hancock County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hancock County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hancock County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hancock County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hancock County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Hancock County). That insignificant dispensing volume is much

too low to support a finding of good cause for Hancock County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hancock County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hancock County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hancock County filed its original complaint on January 18, 2018. *See Hancock County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45153-DAP, ECF No. 1. Despite filing its case years ago, Hancock County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hancock County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hancock County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hancock County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hancock County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hancock County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hancock County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hancock County's proposed RICO claim against the PBMs has expired. Hancock County filed its original complaint on January 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hancock County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45153-DAP, ECF No. 1. It is therefore indisputable that Hancock County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hancock County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hancock County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hancock County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **230.** ***City of Revere v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45155-DAP: Plaintiff Revere City, Massachusetts**

Revere City's untimely motion for leave to amend should be denied for several reasons. Revere City failed to provide notice of its proposed amendments through a proposed complaint. Revere City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Revere City's motion should be denied due to futility, as Revere City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Revere City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Revere City amended its complaint on March 8, 2019, after transfer to the MDL on February 7, 2018. *See City of Revere v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45155-DAP, ECF No. 27. Unlike many other plaintiffs, Revere City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Revere City's deadline to amend was in 2019. Revere City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Revere City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Revere City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Revere City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Revere City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Revere City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Revere City). That insignificant dispensing volume is much too low to support a finding of good cause for Revere City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units

shipped to Revere City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Revere City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Revere City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Revere City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Revere City's proposed RICO claim against the PBMs has expired. Revere City filed its original complaint on January 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Revere v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45155-DAP, ECF No. 1. It is therefore indisputable that Revere City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Revere City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above.

Revere City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Revere City's public-nuisance claim against the PBMs is therefore time-barred because Revere City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 22, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Revere City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 231. *City of Baton Rouge v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45160-DAP: Plaintiff Baton Rouge City, Louisiana

Baton Rouge City's untimely motion for leave to amend should be denied for several reasons. Baton Rouge City failed to provide notice of its proposed amendments through a proposed complaint. Baton Rouge City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Baton Rouge City's motion should be denied due to futility, as Baton Rouge City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Baton Rouge City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Baton Rouge City amended its complaint on March 14, 2019, after transfer to the MDL on February 8, 2018. *See City of Baton Rouge v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45160-DAP, ECF No. 7. Unlike many other plaintiffs, Baton Rouge City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Baton Rouge City's deadline to amend was in 2019. Baton Rouge City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Baton Rouge City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Baton Rouge City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Baton Rouge City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Baton Rouge City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Baton Rouge City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Baton Rouge City). That insignificant dispensing volume is much too low to support a finding of good cause for Baton Rouge City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Baton Rouge City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Baton Rouge City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Baton Rouge City filed its original complaint on January 23, 2018. *See City of Baton Rouge v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45160-DAP, ECF No. 1. Despite filing its case years ago, Baton Rouge City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Baton Rouge City's case would force the parties and the Court to waste time and resources ascertaining the extent of Baton

Rouge City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Baton Rouge City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Baton Rouge City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Baton Rouge City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Baton Rouge City, a municipality in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Baton Rouge City's proposed RICO claim against the PBMs has expired. Baton Rouge City filed its original complaint on January 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Baton Rouge v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45160-DAP, ECF No. 1. It is therefore indisputable that Baton Rouge City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before

seeking leave to amend. Baton Rouge City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Baton Rouge City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to an one-year limitations period. Baton Rouge City's public-nuisance claim against the PBMs is therefore time-barred because Baton Rouge City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 23, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Baton Rouge City, a municipality in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 232. *Franklin County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45162-DAP: Plaintiff Franklin County, Ohio**

Franklin County's untimely motion for leave to amend should be denied for several reasons. Franklin County failed to provide notice of its proposed amendments through a proposed complaint. Franklin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin County's motion should be denied due to futility,

as Franklin County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Franklin County amended its complaint on March 14, 2019, after transfer to the MDL on February 12, 2018. *See Franklin County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45162-DAP, ECF No. 23. Unlike many other plaintiffs, Franklin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Franklin County's deadline to amend was in 2019. Franklin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Franklin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Franklin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Franklin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Franklin County fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Franklin County). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Franklin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Franklin County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Franklin County of the PBM services Express Scripts provides and Franklin County began receiving those services on April 1,

2007. *See id.* Inasmuch as Franklin County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Franklin County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Franklin County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Franklin County violated its basic duty to implement a timely litigation hold. Franklin County filed its original complaint on January 30, 2018, but waited until September 20, 2024 to implement a litigation hold—six years later. *See Franklin County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45162-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 20, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Franklin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Franklin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Franklin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Franklin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Franklin County is a plaintiff in Ohio. Franklin County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin County's proposed RICO claim against the PBMs has expired. Franklin County filed its original complaint on January 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Franklin County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45162-DAP, ECF No. 1. It is therefore indisputable that Franklin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Franklin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Franklin County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 233. *City of Lebanon v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45163-DAP: Plaintiff Lebanon City, Ohio

Lebanon City's untimely motion for leave to amend should be denied for several reasons. Lebanon City failed to provide notice of its proposed amendments through a proposed complaint. Lebanon City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Lebanon City's motion should be denied due to futility, as Lebanon City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lebanon City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lebanon City amended its complaint on March 13, 2019, after transfer to the MDL on February 12, 2018. *See City of Lebanon v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45163-DAP, ECF No. 23. Unlike many other plaintiffs, Lebanon City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lebanon City's deadline to amend was in 2019. Lebanon City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lebanon City's lack of diligence in pursuing its claims negates

any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lebanon City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lebanon City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lebanon City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lebanon City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Lebanon City). That insignificant dispensing volume is much too low to support a finding of good cause for Lebanon City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Lebanon City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Lebanon City of the PBM services Express Scripts provides and Lebanon City began receiving those services on June 6, 2012. *See id.* Inasmuch as Lebanon City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Lebanon City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Lebanon City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lebanon City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lebanon City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lebanon City is a plaintiff in Ohio. Lebanon City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lebanon City's proposed RICO claim against the PBMs has expired. Lebanon City filed its original complaint on January 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lebanon v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45163-DAP, ECF No. 1. It is therefore indisputable that Lebanon City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lebanon City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lebanon City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lebanon City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

234. ***Johnson County v. Amerisourcebergen Drug Corporation et al. (TV1),*** **Case No. 1:18-op-45164-DAP: Plaintiff Johnson County, Tennessee**

Johnson County's untimely motion for leave to amend should be denied for several reasons. Johnson County failed to provide notice of its proposed amendments through a proposed

complaint. Johnson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Johnson County's motion should be denied due to futility, as Johnson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Johnson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Johnson County amended its complaint on March 8, 2019, after transfer to the MDL on February 12, 2018. *See Johnson County v. Amerisourcebergen Drug Corporation et al. (TV1)*, Case No. 1:18-op-45164-DAP, ECF No. 8. Unlike many other plaintiffs, Johnson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Johnson County's deadline to amend was in 2019. Johnson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Johnson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Johnson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the

PBMs in 2019. *See* MDL ECF No. 2582. Johnson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Johnson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Johnson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Johnson County). That insignificant dispensing volume is much too low to support a finding of good cause for Johnson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Johnson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Johnson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Johnson County filed its original complaint on January 4, 2018, but waited until April 30, 2018 to implement a litigation hold. *See Johnson County v. Amerisourcebergen Drug Corporation et al. (TV1)*, Case No. 1:18-op-45164-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 30, 2018). Johnson County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Johnson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Johnson County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Johnson County's proposed RICO claim against the PBMs has expired. Johnson County filed its original complaint on January 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Johnson County v. Amerisourcebergen Drug Corporation et al. (TV1)*, Case No. 1:18-op-

45164-DAP, ECF No. 1. It is therefore indisputable that Johnson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Johnson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Johnson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Johnson County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 235. *Gaston County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45166-DAP: Plaintiff Gaston County, North Carolina

Gaston County's untimely motion for leave to amend should be denied for several reasons. Gaston County failed to provide notice of its proposed amendments through a proposed complaint. Gaston County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Gaston County's motion should be denied due to futility, as Gaston County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gaston County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gaston County amended its complaint on March 12, 2019, after transfer to the MDL on February 12, 2018. *See Gaston County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-

45166-DAP, ECF No. 6. Unlike many other plaintiffs, Gaston County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Gaston County's deadline to amend was in 2019. Gaston County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Gaston County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Gaston County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Gaston County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Gaston County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Gaston County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Gaston County). That insignificant dispensing volume is much too low to support a finding of good cause for Gaston County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Gaston County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Gaston County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gaston County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gaston County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Gaston County's proposed RICO claim against the PBMs has expired. Gaston County filed its original complaint on January

28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Gaston County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45166-DAP, ECF No. 1. It is therefore indisputable that Gaston County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Gaston County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gaston County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Gaston County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 236. *County of Onondaga, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45170-DAP: Plaintiff Onondaga County, New York

Onondaga County's untimely motion for leave to amend should be denied for several reasons. Onondaga County failed to provide notice of its proposed amendments through a proposed complaint. Onondaga County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Onondaga County's motion should be denied due to futility, as Onondaga County does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Onondaga County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Onondaga County amended its complaint on March 13, 2019, after transfer to the MDL on February 12, 2018. *See County of Onondaga, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45170-DAP, ECF No. 68. Unlike many other plaintiffs, Onondaga County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Onondaga County's deadline to amend was in 2019. Onondaga County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Onondaga County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Onondaga County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Onondaga County). That insignificant dispensing volume is much too low to support a finding of good cause for Onondaga County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Onondaga County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Onondaga County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Onondaga County filed its original complaint on January 23, 2018. *See County of Onondaga, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45170-DAP, ECF No. 1. Despite filing its case years ago, Onondaga County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Onondaga County's case would force the parties and the Court to waste time and resources ascertaining the extent of Onondaga County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Onondaga County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Onondaga County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Onondaga County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Onondaga County's proposed RICO claim against the PBMs has expired. Onondaga County filed its original complaint on

January 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Onondaga, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45170-DAP, ECF No. 1. It is therefore indisputable that Onondaga County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Onondaga County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Onondaga County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

### 237. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Dora City, Alabama

Dora City's untimely motion for leave to amend should be denied for several reasons. Dora City failed to provide notice of its proposed amendments through a proposed complaint. Dora City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dora City's motion should be denied due to futility, as Dora City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dora City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dora City amended its complaint on March 15, 2019, after transfer to the MDL on February 12, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-

DAP, ECF Nos. 11, 12. Unlike many other plaintiffs, Dora City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Dora City's deadline to amend was in 2019. Dora City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dora City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dora City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Dora City). That insignificant dispensing volume is much too low to support a finding of good cause for Dora City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dora City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dora City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dora City filed its original complaint on January 29, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. Despite filing its case years ago, Dora City *never* implemented a litigation

hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Dora City's case would force the parties and the Court to waste time and resources ascertaining the extent of Dora City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dora City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dora City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Dora City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Dora City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Dora City of this deficiency on September 16, 2024 (*see* Exhibit B), but Dora City refused to amend or supplement its Fact Sheet. Under this Court's orders, Dora City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dora City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Dora City's potential claims against them. Dora City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dora City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dora City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dora City's proposed RICO claim against the PBMs has expired. Dora City filed its original complaint on January 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. It is therefore indisputable that Dora City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Dora City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dora City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Dora City's public-nuisance claim against the PBMs is therefore

time-barred because Dora City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Dora City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 238. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Jasper City, Alabama

Jasper City's untimely motion for leave to amend should be denied for several reasons. Jasper City failed to provide notice of its proposed amendments through a proposed complaint. Jasper City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jasper City's motion should be denied due to futility, as Jasper City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jasper City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jasper City amended its complaint on March 15, 2019, after transfer to the MDL on February 12, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-

DAP, ECF Nos. 11, 12. Unlike many other plaintiffs, Jasper City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Jasper City's deadline to amend was in 2019. Jasper City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jasper City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jasper City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Jasper City). That insignificant dispensing volume is much too low to support a finding of good cause for Jasper City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jasper City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jasper City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jasper City filed its original complaint on January 29, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. Despite filing its case years ago, Jasper City *never* implemented a

litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Jasper City's case would force the parties and the Court to waste time and resources ascertaining the extent of Jasper City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jasper City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jasper City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Jasper City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Jasper City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Jasper City of this deficiency on September 16, 2024 (*see* Exhibit B), but Jasper City refused to amend or supplement its Fact Sheet. Under this Court's orders, Jasper City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Jasper City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Jasper City's potential claims against them. Jasper City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in

litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jasper City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jasper City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jasper City's proposed RICO claim against the PBMs has expired. Jasper City filed its original complaint on January 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. It is therefore indisputable that Jasper City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Jasper City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jasper City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Jasper City's public-nuisance claim against the PBMs is therefore time-barred because Jasper City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Jasper City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 239. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Marion County, Alabama

Marion County's untimely motion for leave to amend should be denied for several reasons. Marion County failed to provide notice of its proposed amendments through a proposed complaint. Marion County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marion County's motion should be denied due to futility, as Marion County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marion County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Marion County amended its complaint on March 15, 2019, after transfer to the MDL on February 12, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF Nos. 11, 12. Unlike many other plaintiffs, Marion County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Marion County's deadline to amend was in 2019. Marion County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marion County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marion County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Marion County). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marion County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marion County filed its original complaint on January 29, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. Despite filing its case years ago, Marion County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Marion County's case would force the parties and the Court to waste time and resources ascertaining the extent of Marion County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marion County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marion County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Marion County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Marion County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Marion County of this deficiency on September 16, 2024 (*see* Exhibit B), but Marion County refused to amend or supplement its Fact Sheet. Under this Court's orders, Marion County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Marion County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Marion County's potential claims against them. Marion County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marion County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marion County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marion County's proposed RICO claim against the PBMs has expired. Marion County filed its original complaint on January 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. It is therefore indisputable that Marion County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marion County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marion County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Marion County's public-nuisance claim against the PBMs is therefore time-barred because Marion County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Marion County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Marion County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 240. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Pickens County, Alabama

Pickens County's untimely motion for leave to amend should be denied for several reasons. Pickens County failed to provide notice of its proposed amendments through a proposed complaint. Pickens County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pickens County's

motion should be denied due to futility, as Pickens County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pickens County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pickens County amended its complaint on March 15, 2019, after transfer to the MDL on February 12, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF Nos. 11, 12. Unlike many other plaintiffs, Pickens County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Pickens County's deadline to amend was in 2019. Pickens County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pickens County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pickens County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Pickens County). That insignificant dispensing volume is much too low to support a finding of good cause for Pickens County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pickens County filed its original complaint on January 29, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. Despite filing its case years ago, Pickens County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Pickens County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pickens County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pickens County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pickens County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Pickens County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Pickens County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Pickens County of this deficiency on September 16, 2024 (*see* Exhibit B), but Pickens County refused to amend or supplement its Fact Sheet. Under this Court's orders, Pickens County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Pickens County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend

against Pickens County's potential claims against them. Pickens County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pickens County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pickens County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pickens County's proposed RICO claim against the PBMs has expired. Pickens County filed its original complaint on January 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. It is therefore indisputable that Pickens County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pickens County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the

injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pickens County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Pickens County's public-nuisance claim against the PBMs is therefore time-barred because Pickens County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Pickens County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Pickens County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 241. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP: Plaintiff Sumiton City, Alabama

Sumiton City's untimely motion for leave to amend should be denied for several reasons. Sumiton City failed to provide notice of its proposed amendments through a proposed complaint. Sumiton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sumiton City's motion should be denied due to futility, as Sumiton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sumiton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sumiton City amended its complaint on March 15, 2019, after transfer to the MDL on February 12, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF Nos. 11, 12. Unlike many other plaintiffs, Sumiton City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Sumiton City's deadline to amend was in 2019. Sumiton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sumiton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sumiton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Sumiton City). That insignificant dispensing volume is much too low to support a finding of good cause for Sumiton City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sumiton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sumiton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sumiton City filed its original complaint on January 29, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. Despite filing its case years ago, Sumiton City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sumiton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Sumiton City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sumiton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sumiton City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sumiton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sumiton City's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sumiton City of this deficiency on September 16, 2024 (*see* Exhibit B), but Sumiton City refused to amend or supplement its Fact Sheet. Under this Court's orders, Sumiton City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sumiton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sumiton City's potential claims against them. Sumiton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sumiton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sumiton City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sumiton City's proposed RICO claim against the PBMs has expired. Sumiton City filed its original complaint on January

1048

29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. It is therefore indisputable that Sumiton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sumiton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sumiton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Sumiton City's public-nuisance claim against the PBMs is therefore time-barred because Sumiton City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sumiton City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

242. *Marion County, Alabama et al. v. Purdue Pharma LP et al.*, **Case No. 1:18-op-45171-DAP: Plaintiff Walker County, Alabama**

Walker County's untimely motion for leave to amend should be denied for several reasons. Walker County failed to provide notice of its proposed amendments through a proposed complaint. Walker County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Walker County's motion should be denied due to futility, as Walker County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Walker County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Walker County amended its complaint on March 15, 2019, after transfer to the MDL on February 12, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF Nos. 11, 12. Unlike many other plaintiffs, Walker County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Walker County's deadline to amend was in 2019. Walker County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Walker County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Walker County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Walker County). That insignificant dispensing volume is much too low to support a finding of good cause for Walker County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Walker County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Walker County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Walker County filed its original complaint on January 29, 2018. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. Despite filing its case years ago, Walker County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Walker County's case would force the parties and the Court to waste time and resources ascertaining the extent of Walker County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Walker County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Walker County therefore lacks good

cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Walker County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Walker County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Walker County of this deficiency on September 16, 2024 (*see* Exhibit B), but Walker County refused to amend or supplement its Fact Sheet. Under this Court's orders, Walker County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Walker County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Walker County's potential claims against them. Walker County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Walker County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Walker County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Walker County's proposed RICO claim against the PBMs has expired. Walker County filed its original complaint on January 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marion County, Alabama et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45171-DAP, ECF No. 1. It is therefore indisputable that Walker County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Walker County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Walker County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Walker County's public-nuisance claim against the PBMs is therefore time-barred because Walker County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Walker County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Walker County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 243. *Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP: Plaintiff Burlington City, Washington

Burlington City's untimely motion for leave to amend should be denied for several reasons. Burlington City failed to provide notice of its proposed amendments through a proposed complaint. Burlington City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Burlington City's motion should be denied due to futility, as Burlington City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Burlington City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Burlington City first amended its complaint on May 25, 2018. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 14. Burlington City amended its complaint again on March 15, 2019, as well as on May 28, 2019. *See Skagit County et al. v. Purdue*

*Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF Nos. 24, 26. Burlington City amended its complaint a fourth time on March 19, 2021. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 27. Unlike many other plaintiffs, Burlington City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Burlington City's deadline to amend was in 2019. Burlington City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Burlington City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Burlington City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Burlington City). That insignificant dispensing volume is much too low to support a finding of good cause for Burlington City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Burlington City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Burlington City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Burlington City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Burlington City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Burlington City of this deficiency on September 16, 2024 (*see* Exhibit B), but Burlington City refused to amend or supplement its Fact Sheet. Under this Court's orders, Burlington City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Burlington City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Burlington City's potential claims against them. Burlington City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Burlington City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Burlington City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Burlington City's proposed RICO claim against the PBMs has expired. Burlington City filed its original complaint on January 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 1. It is therefore indisputable that Burlington City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Burlington City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Burlington City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Burlington City's public-nuisance claim against the PBMs is therefore time-barred because Burlington City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 25, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Burlington City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **244.** ***Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP: Plaintiff Mount Vernon City, Washington**

Mount Vernon City's untimely motion for leave to amend should be denied for several reasons. Mount Vernon City failed to provide notice of its proposed amendments through a proposed complaint. Mount Vernon City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Mount Vernon City's motion should be denied due to futility, as Mount Vernon City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mount Vernon City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mount Vernon City first amended its complaint on May 25, 2018. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 14. Mount Vernon City amended its complaint again on March 15, 2019, as well as on May 28, 2019. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF Nos. 24, 26. Mount Vernon City amended its complaint a fourth time on March 19, 2021. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 27. Unlike many other plaintiffs, Mount Vernon City declined to add claims against the PBMs in its amended complaints. *See*

Section II.A.1, above. Mount Vernon City's deadline to amend was in 2019. Mount Vernon City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mount Vernon City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mount Vernon City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Mount Vernon City). That insignificant dispensing volume is much too low to support a finding of good cause for Mount Vernon City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mount Vernon City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mount Vernon City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mount Vernon City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mount Vernon City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mount Vernon City's proposed RICO claim against the PBMs has expired. Mount Vernon City filed its original complaint on January 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 1. It is therefore indisputable that Mount Vernon City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mount Vernon City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mount Vernon City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Mount Vernon City's public-nuisance claim against the PBMs is therefore time-barred because Mount Vernon City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 25, 2018—

and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Mount Vernon City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 245.  *Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP: Plaintiff Sedro-Woolley City, Washington

Sedro-Woolley City's untimely motion for leave to amend should be denied for several reasons. Sedro-Woolley City failed to provide notice of its proposed amendments through a proposed complaint. Sedro-Woolley City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sedro-Woolley City's motion should be denied due to futility, as Sedro-Woolley City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sedro-Woolley City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sedro-Woolley City first amended its complaint on May 25, 2018. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 14. Sedro-Woolley City amended its complaint again on March 15, 2019, as well as on May 28, 2019. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF Nos. 24, 26. Sedro-Woolley City amended its complaint a fourth time on March 19, 2021. *See Skagit County et al. v.*

*Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 27. Unlike many other plaintiffs, Sedro-Woolley City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Sedro-Woolley City's deadline to amend was in 2019. Sedro-Woolley City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sedro-Woolley City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sedro-Woolley City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Sedro-Woolley City). That insignificant dispensing volume is much too low to support a finding of good cause for Sedro-Woolley City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sedro-Woolley City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sedro-Woolley City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sedro-Woolley City filed its original complaint on January 25, 2018. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 1. Despite filing its case years ago, Sedro-Woolley City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sedro-Woolley City's case would force the parties and the Court to waste time and resources ascertaining the extent of Sedro-Woolley City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sedro-Woolley City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sedro-Woolley City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sedro-Woolley City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sedro-Woolley City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sedro-Woolley City's proposed RICO claim against the PBMs has expired. Sedro-Woolley City filed its original complaint on January 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 1. It is therefore indisputable that Sedro-Woolley City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sedro-Woolley City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sedro-Woolley City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Sedro-Woolley City's public-nuisance claim against the PBMs is therefore time-barred because Sedro-Woolley City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 25, 2018— and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sedro-Woolley City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **246.** *Skagit County et al. v. Purdue Pharma, LP et al.*, **Case No. 1:18-op-45173-DAP: Plaintiff Skagit County, Washington**

Skagit County's untimely motion for leave to amend should be denied for several reasons. Skagit County failed to provide notice of its proposed amendments through a proposed complaint. Skagit County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Skagit County's motion should be denied due to futility, as Skagit County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Skagit County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Skagit County first amended its complaint on May 25, 2018. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 14. Skagit County amended its complaint again on March 15, 2019, as well as on May 28, 2019. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF Nos. 24, 26. Skagit County amended its complaint a fourth time on March 19, 2021. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 27. Unlike many other plaintiffs, Skagit County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Skagit County's deadline to amend was in 2019. Skagit County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Skagit County's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Skagit County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Skagit County). That insignificant dispensing volume is much too low to support a finding of good cause for Skagit County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Skagit County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Skagit County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Skagit County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Skagit County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Skagit County's proposed RICO claim against the PBMs has expired. Skagit County filed its original complaint on January 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Skagit County et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45173-DAP, ECF No. 1. It is therefore indisputable that Skagit County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Skagit County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Skagit County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Skagit County's public-nuisance claim against the PBMs is therefore time-barred because Skagit County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 25, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Skagit County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 247. *Municipality of Guayanilla v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45176-DAP: Plaintiff Municipality of Guayanilla, Puerto Rico

Municipality of Guayanilla's untimely motion for leave to amend should be denied for several reasons. Municipality of Guayanilla failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Guayanilla also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Guayanilla's motion should be denied due to futility, as Municipality of Guayanilla does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Guayanilla was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Guayanilla amended its complaint on March 15, 2019, after transfer to the MDL on February 15, 2018. *See Municipality of Guayanilla v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45176-DAP, ECF No. 16. Unlike many other plaintiffs, Municipality of Guayanilla declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Municipality of Guayanilla's deadline to amend was in 2019. Municipality of Guayanilla

waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Guayanilla's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Municipality of Guayanilla's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Municipality of Guayanilla cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Municipality of Guayanilla's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Municipality of Guayanilla to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Guayanilla filed its original complaint on December 18, 2017. *See Municipality of Guayanilla v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45176-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Guayanilla *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232;

5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Guayanilla's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Guayanilla's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Guayanilla's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Guayanilla therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Guayanilla failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Guayanilla's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Guayanilla of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Guayanilla refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Guayanilla's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Guayanilla's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Guayanilla's potential claims against them. Municipality of Guayanilla's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel

does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Guayanilla, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Guayanilla's proposed RICO claim against the PBMs has expired. Municipality of Guayanilla filed its original complaint on December 18, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Guayanilla v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45176-DAP, ECF No. 1. It is therefore indisputable that Municipality of Guayanilla knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Municipality of Guayanilla's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Guayanilla's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Guayanilla, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**248.** *Municipality of Loiza, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45177-DAP: Plaintiff Municipality of Loiza, Puerto Rico

Municipality of Loiza's untimely motion for leave to amend should be denied for several reasons. Municipality of Loiza failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Loiza also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Loiza's motion should be denied due to futility, as Municipality of Loiza does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Loiza was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Loiza amended its complaint on March 15, 2019, after transfer to the MDL on February 15, 2018. *See Municipality of Loiza, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45177-DAP, ECF No. 15. Unlike many other plaintiffs, Municipality of Loiza declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Municipality of Loiza's deadline to amend was in 2019. Municipality of Loiza waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Loiza's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Municipality of Loiza's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Municipality of Loiza cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Municipality of Loiza's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Loiza filed its original complaint on December 20, 2017. *See Municipality of Loiza, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45177-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Loiza *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Loiza's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Loiza's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Loiza's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Loiza therefore lacks good cause for leave to amend its complaint. *See Pethtel*,

2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Loiza failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Loiza's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Loiza of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Loiza refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Loiza's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Loiza's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Loiza's potential claims against them. Municipality of Loiza's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Loiza, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Loiza's proposed RICO claim against the PBMs has expired. Municipality of Loiza filed its original

complaint on December 20, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Loiza, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45177-DAP, ECF No. 1. It is therefore indisputable that Municipality of Loiza knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Municipality of Loiza's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Loiza's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Loiza, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 249. *Phenix City, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45179-DAP: Plaintiff Phenix City, Alabama

Phenix City's untimely motion for leave to amend should be denied for several reasons. Phenix City failed to provide notice of its proposed amendments through a proposed complaint. Phenix City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Phenix City's motion should be denied due to futility, as Phenix City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Phenix City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Phenix City amended its complaint on March 15, 2019, after transfer to the MDL on April 2, 2018. *See Phenix City, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45179-DAP, ECF No. 21. Unlike many other plaintiffs, Phenix City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Phenix City's deadline to amend was in 2019. Phenix City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Phenix City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Phenix City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Phenix City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Phenix City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of

leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Phenix City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Phenix City). That insignificant dispensing volume is much too low to support a finding of good cause for Phenix City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Phenix City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Phenix City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Phenix City filed its original complaint on February 1, 2018. *See Phenix City, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45179-DAP, ECF No. 1. Despite filing its case years ago, Phenix City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Phenix City's case would force the parties and the Court to waste time and resources ascertaining the extent of Phenix City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

1077

prejudiced by Phenix City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Phenix City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Phenix City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Phenix City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Phenix City's proposed RICO claim against the PBMs has expired. Phenix City filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Phenix City, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45179-DAP, ECF No. 1. It is therefore indisputable that Phenix City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Phenix City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Phenix City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Phenix City's public-nuisance claim against the PBMs is therefore time-barred because Phenix City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Phenix City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **250.** ***Washington County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45180-DAP: Plaintiff Washington County, Alabama**

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County amended its complaint on March 8, 2019, after transfer to the MDL on February 16, 2018. *See Washington County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45180-DAP, ECF No. 19. Unlike many other plaintiffs, Washington County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Washington County's deadline to amend was in 2019. Washington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Washington County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Washington County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Washington County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for

undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Washington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Washington County filed its original complaint on February 1, 2018. *See Washington County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45180-DAP, ECF No. 1. Despite filing its case years ago, Washington County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Washington County's case would force the parties and the Court to waste time and resources ascertaining the extent of Washington County's document destruction and the appropriate sanctions—just as the parties were forced to

do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Washington County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Washington County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Washington County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45180-DAP, ECF No. 1. It is therefore indisputable that Washington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Washington County's RICO claim is therefore time-barred by RICO's

four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Washington County's public-nuisance claim against the PBMs is therefore time-barred because Washington County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Washington County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Washington County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 251. *Wilcox County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45181-DAP: Plaintiff Wilcox County, Alabama

Wilcox County's untimely motion for leave to amend should be denied for several reason. Wilcox County failed to provide notice of its proposed amendments through a proposed complaint.

Wilcox County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wilcox County's motion should be denied due to futility, as Wilcox County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wilcox County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wilcox County amended its complaint on March 8, 2019, after transfer to the MDL on February 16, 2018. *See Wilcox County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45181-DAP, ECF No. 19. Unlike many other plaintiffs, Wilcox County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wilcox County's deadline to amend was in 2019. Wilcox County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wilcox County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wilcox County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wilcox County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wilcox County fails to explain

why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wilcox County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.008% market share for Wilcox County). That insignificant dispensing volume is much too low to support a finding of good cause for Wilcox County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wilcox County filed its original complaint on February 1, 2018. *See Wilcox County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45181-DAP, ECF No. 1. Despite filing its case years ago, Wilcox County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wilcox County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wilcox County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wilcox County's disregard for its most basic discovery obligations as a litigant, compounded by

the delay in seeking leave to amend, and Wilcox County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wilcox County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wilcox County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wilcox County's proposed RICO claim against the PBMs has expired. Wilcox County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wilcox County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45181-DAP, ECF No. 1. It is therefore indisputable that Wilcox County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wilcox County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wilcox County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

      **Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Wilcox County's public-nuisance claim against the PBMs is therefore time-barred because Wilcox County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

      **Plaintiff Lacks Standing.** Wilcox County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

      **Plaintiff Lacks Standing.** Wilcox County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **252.** ***Coffee County, Alabama v. Amerisourcebergen Drug Corporation et al.,*** **Case No. 1:18-op-45182-DAP: Plaintiff Coffee County, Alabama**

      Coffee County's untimely motion for leave to amend should be denied for several reason. Coffee County failed to provide notice of its proposed amendments through a proposed complaint. Coffee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Coffee County's motion should be denied due to futility, as Coffee County

does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coffee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coffee County amended its complaint on March 7, 2019, after transfer to the MDL on February 16, 2018. *See Coffee County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45182-DAP, ECF No. 21. Unlike many other plaintiffs, Coffee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Coffee County's deadline to amend was in 2019. Coffee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Coffee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Coffee County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Coffee County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Coffee County fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Coffee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Coffee County). That insignificant dispensing volume is much too low to support a finding of good cause for Coffee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Coffee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Coffee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Coffee County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Coffee County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Coffee County of this deficiency on September 16, 2024 (*see* Exhibit B), but Coffee

County refused to amend or supplement its Fact Sheet. Under this Court's orders, Coffee County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Coffee County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Coffee County's potential claims against them. Coffee County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Coffee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Coffee County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Coffee County's proposed RICO claim against the PBMs has expired. Coffee County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Coffee County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-

45182-DAP, ECF No. 1. It is therefore indisputable that Coffee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Coffee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Coffee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Coffee County's public-nuisance claim against the PBMs is therefore time-barred because Coffee County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Coffee County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Coffee County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**253.** *City of Demopolis, Alabama v. Actavis, LLC et al.*, **Case No. 1:18-op-45183-DAP: Plaintiff Demopolis City, Alabama**

Demopolis City's untimely motion for leave to amend should be denied for several reason. Demopolis City failed to provide notice of its proposed amendments through a proposed complaint. Demopolis City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Demopolis City's motion should be denied due to futility, as Demopolis City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Demopolis City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Demopolis City amended its complaint on March 7, 2019, after transfer to the MDL on February 16, 2018. *See City of Demopolis, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45183-DAP, ECF No. 19. Unlike many other plaintiffs, Demopolis City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Demopolis City's deadline to amend was in 2019. Demopolis City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Demopolis City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Demopolis City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Demopolis City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Demopolis City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Demopolis City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Demopolis City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Timely Implement a Litigation Hold.** Demopolis City violated its basic duty to implement a timely litigation hold. Demopolis City filed its original complaint on February 1, 2018, but waited until September 20, 2024 to implement a litigation hold—six and a half years later. *See City of Demopolis, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45183-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 20, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Demopolis City's case would force the parties and the Court to waste time and resources ascertaining the extent of

Demopolis City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Demopolis City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Demopolis City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Demopolis City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Demopolis City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Demopolis City's proposed RICO claim against the PBMs has expired. Demopolis City filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Demopolis, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45183-DAP, ECF No. 1. It is therefore indisputable that Demopolis City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Demopolis City's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Demopolis City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Demopolis City's public-nuisance claim against the PBMs is therefore time-barred because Demopolis City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Demopolis City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 254. *Burke County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45184-DAP: Plaintiff Burke County, North Carolina

Burke County's untimely motion for leave to amend should be denied for several reason. Burke County failed to provide notice of its proposed amendments through a proposed complaint. Burke County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Burke County's motion should be denied due to futility, as Burke County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Burke County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Burke County amended its complaint on March 11, 2019, after transfer to the MDL on February 16, 2018. *See Burke County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45184-DAP, ECF No. 6. Unlike many other plaintiffs, Burke County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Burke County's deadline to amend was in 2019. Burke County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Burke County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Burke County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Burke County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Burke County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Burke County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Burke County). That insignificant dispensing volume is much too low to support a finding of good cause for Burke County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Burke County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Burke County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Burke County filed its original complaint on January 31, 2018. *See Burke County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45184-DAP, ECF No. 1. Despite filing its case years ago, Burke County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Burke County's case would force the parties and the Court to waste time and resources ascertaining the extent of Burke

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Burke County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Burke County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Burke County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Burke County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Burke County's proposed RICO claim against the PBMs has expired. Burke County filed its original complaint on January 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Burke County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45184-DAP, ECF No. 1. It is therefore indisputable that Burke County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend.

Burke County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Burke County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Burke County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 255. *Stokes County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45185-DAP: Plaintiff Stokes County, North Carolina

Stokes County's untimely motion for leave to amend should be denied for several reason. Stokes County failed to provide notice of its proposed amendments through a proposed complaint. Stokes County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Stokes County's motion should be denied due to futility, as Stokes County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Stokes County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Stokes County amended its complaint on March 12, 2019, after transfer to the MDL on February 16, 2018. *See Stokes County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45185-DAP, ECF No. 7. Unlike many other plaintiffs, Stokes County declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Stokes County's deadline to amend was in 2019. Stokes County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Stokes County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Stokes County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Stokes County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Stokes County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Stokes County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.15% market share for Stokes County). That insignificant dispensing volume is much too low to support a finding of good cause for Stokes County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stokes County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Stokes County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Stokes County's proposed RICO claim against the PBMs has expired. Stokes County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Stokes County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45185-DAP, ECF No. 1. It is therefore indisputable that Stokes County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Stokes County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Stokes County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Stokes County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 256. *Mobile County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45186-DAP: Plaintiff Mobile County, Alabama

Mobile County's untimely motion for leave to amend should be denied for several reason. Mobile County failed to provide notice of its proposed amendments through a proposed complaint. Mobile County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mobile County's motion should be denied due to futility, as Mobile County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mobile County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mobile County amended its complaint on March 8, 2019, after transfer to the MDL on February 16, 2018. *See Mobile County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45186-DAP, ECF No. 19. Unlike many other plaintiffs, Mobile County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mobile County's deadline to amend was in 2019. Mobile County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mobile County's lack of diligence in pursuing its claims negates any finding of

good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mobile County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Mobile County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mobile County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mobile County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Mobile County). That insignificant dispensing volume is much too low to support a finding of good cause for Mobile County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mobile County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mobile County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Mobile County filed its original complaint on February 1, 2018. *See Mobile County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45186-DAP, ECF No. 1. Despite filing its case years ago, Mobile County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Mobile County's case would force the parties and the Court to waste time and resources ascertaining the extent of Mobile County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mobile County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mobile County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mobile County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mobile County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mobile County's proposed RICO claim against the PBMs has expired. Mobile County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mobile County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45186-DAP, ECF No. 1. It is therefore indisputable that Mobile County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mobile County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mobile County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Mobile County's public-nuisance claim against the PBMs is therefore time-barred because Mobile County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Mobile County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Mobile County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **257.** ***Marengo County, Alabama v. Actavis, LLC et al.***, **Case No. 1:18-op-45188-DAP: Plaintiff Marengo County, Alabama**

Marengo County's untimely motion for leave to amend should be denied for several reason. Marengo County failed to provide notice of its proposed amendments through a proposed complaint. Marengo County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Marengo County's motion should be denied due to futility, as Marengo County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marengo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marengo County amended its complaint on March 15, 2019, after transfer to the MDL on February 16, 2018. *See Marengo County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45188-DAP,

ECF No. 20. Unlike many other plaintiffs, Marengo County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marengo County's deadline to amend was in 2019. Marengo County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marengo County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marengo County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Marengo County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marengo County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marengo County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.02% market share for Marengo County). That insignificant dispensing volume is much too low to support a finding of good cause for Marengo County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marengo County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marengo County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marengo County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marengo County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marengo County's proposed RICO claim against the PBMs has expired. Marengo County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marengo County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45188-DAP,

ECF No. 1. It is therefore indisputable that Marengo County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marengo County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marengo County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Marengo County's public-nuisance claim against the PBMs is therefore time-barred because Marengo County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Marengo County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Marengo County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

258. ***Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP: Plaintiff Talladega City, Alabama**

Talladega City's untimely motion for leave to amend should be denied for several reason. Talladega City failed to provide notice of its proposed amendments through a proposed complaint. Talladega City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Talladega City's motion should be denied due to futility, as Talladega City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Talladega City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Talladega City amended its complaint on March 15, 2019, after transfer to the MDL on February 16, 2018. *See Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP, ECF No. 25. Unlike many other plaintiffs, Talladega City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Talladega City's deadline to amend was in 2019. Talladega City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Talladega City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Talladega City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Talladega City). That insignificant dispensing volume is much too low to support a finding of good cause for Talladega City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Talladega City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Talladega City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Talladega City filed its original complaint on January 31, 2018. *See Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP, ECF No. 1. Despite filing its case years ago, Talladega City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Talladega City's case would force the parties and the Court to waste time and resources ascertaining the extent of Talladega City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Talladega City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Talladega City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Talladega City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Talladega City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Talladega City's proposed RICO claim against the PBMs has expired. Talladega City filed its original complaint on January 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP, ECF No. 1. It is therefore indisputable that Talladega City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Talladega City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Talladega City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Talladega City's public-nuisance claim against the PBMs is therefore time-barred because Talladega City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Talladega City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 259. *Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP: Plaintiff Talladega County, Alabama

Talladega County's untimely motion for leave to amend should be denied for several reason. Talladega County failed to provide notice of its proposed amendments through a proposed complaint. Talladega County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Talladega County's motion should be denied due to futility, as Talladega County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Talladega County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Talladega County amended its complaint on March 15, 2019, after transfer to the MDL

on February 16, 2018. *See Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP, ECF No. 25. Unlike many other plaintiffs, Talladega County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Talladega County's deadline to amend was in 2019. Talladega County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Talladega County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Talladega County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Talladega County). That insignificant dispensing volume is much too low to support a finding of good cause for Talladega County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Talladega County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Talladega County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Talladega County filed its original complaint on January 31, 2018. *See Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP, ECF No. 1. Despite filing its case years ago, Talladega County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Talladega County's case would force the parties and the Court to waste time and resources ascertaining the extent of Talladega County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Talladega County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Talladega County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Talladega County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Talladega County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Talladega County's proposed RICO claim against the PBMs has expired. Talladega County filed its original complaint on January 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Talladega County, Alabama et al. v. Cardinal Health Inc et al.*, Case No. 1:18-op-45190-DAP, ECF No. 1. It is therefore indisputable that Talladega County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Talladega County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Talladega County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Talladega County's public-nuisance claim against the PBMs is therefore time-barred because Talladega County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Talladega County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the

[s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Talladega County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 260. *Calhoun County, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45191-DAP: Plaintiff Calhoun County, Alabama

Calhoun County's untimely motion for leave to amend should be denied for several reason. Calhoun County failed to provide notice of its proposed amendments through a proposed complaint. Calhoun County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Calhoun County's motion should be denied due to futility, as Calhoun County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calhoun County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calhoun County amended its complaint on March 15, 2019, after transfer to the MDL on February 16, 2018. *See Calhoun County, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45191-DAP, ECF No. 25. Unlike many other plaintiffs, Calhoun County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Calhoun County's deadline to amend was in 2019. Calhoun County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Calhoun County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Calhoun County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Calhoun County). That insignificant dispensing volume is much too low to support a finding of good cause for Calhoun County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Calhoun County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Calhoun County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Calhoun County filed its original complaint on January 31, 2018. *See Calhoun County, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45191-DAP, ECF No. 1. Despite filing its case years ago, Calhoun County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Calhoun County's case would force the parties and the Court to waste time and resources ascertaining the extent of Calhoun County's document destruction and the appropriate sanctions—just as the parties were forced to do in the

three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Calhoun County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Calhoun County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calhoun County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Calhoun County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Calhoun County's proposed RICO claim against the PBMs has expired. Calhoun County filed its original complaint on January 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Calhoun County, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45191-DAP, ECF No. 1. It is therefore indisputable that Calhoun County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Calhoun County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the

injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Calhoun County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Calhoun County's public-nuisance claim against the PBMs is therefore time-barred because Calhoun County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Calhoun County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Calhoun County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 261. *Trussville, City of v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45192-DAP: Plaintiff Trussville City, Alabama

Trussville City's untimely motion for leave to amend should be denied for several reason. Trussville City failed to provide notice of its proposed amendments through a proposed complaint. Trussville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Trussville City's motion should be denied due to futility, as Trussville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Trussville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Trussville City first amended its complaint on May 24, 2018. *See Trussville, City of v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45192-DAP, ECF No. 5. Trussville City amended its complaint again on March 15, 2019. *See Trussville, City of v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45192-DAP, ECF No. 6. Unlike many other plaintiffs, Trussville City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Trussville City's deadline to amend was in 2019. Trussville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Trussville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Trussville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.004% market share for Trussville City). That insignificant dispensing volume is much too low to support a finding of good cause for Trussville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Trussville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Trussville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Trussville City filed its original complaint on January 27, 2018. *See Trussville, City of v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45192-DAP, ECF No. 1. Despite filing its case years ago, Trussville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Trussville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Trussville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Trussville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Trussville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Trussville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Trussville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Trussville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Trussville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Trussville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Trussville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Trussville City's potential claims against them. Trussville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Trussville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Trussville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Trussville City's proposed RICO claim against the PBMs has expired. Trussville City filed its original complaint on January 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Trussville, City of v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45192-DAP, ECF No. 1. It is therefore indisputable that Trussville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Trussville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Trussville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Trussville City's public-nuisance claim against the PBMs is therefore time-barred because Trussville City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on January 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Trussville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**262.** ***Winston Medical Center v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45193-DAP: Plaintiff Winston Medical Center, Mississippi**

Winston Medical Center's untimely motion for leave to amend should be denied for several reason. Winston Medical Center failed to provide notice of its proposed amendments through a proposed complaint. Winston Medical Center also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winston Medical Center's motion should be denied due to futility, as Winston Medical Center does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winston Medical Center was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Winston Medical Center filed its original complaint on February 1, 2018 and the case was transferred to the MDL on February 16, 2018. *See Winston Medical Center v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45193-DAP, ECF No. 24. Winston Medical Center could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Winston Medical Center elected not to do so. Instead, Winston Medical Center waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Winston Medical Center's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Winston Medical Center filed its original complaint on February 1, 2018. *See Winston Medical Center v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45193-DAP, ECF No. 1. Despite filing its case years ago, Winston Medical Center *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Winston Medical Center's case would force the parties and the Court to waste time and resources ascertaining the extent of Winston Medical Center's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Winston Medical Center's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Winston Medical Center therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winston Medical Center's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winston Medical Center, a hospital in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winston Medical Center's proposed RICO claim against the PBMs has expired. Winston Medical Center filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Winston Medical Center v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45193-DAP, ECF No. 1. It is therefore indisputable that Winston Medical Center knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Winston Medical Center's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winston Medical Center's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Winston Medical Center, a hospital in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 263. *Sumter County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45194-DAP: Plaintiff Sumter County, Alabama

Sumter County's untimely motion for leave to amend should be denied for several reason. Sumter County failed to provide notice of its proposed amendments through a proposed complaint. Sumter County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sumter County's motion should be denied due to futility, as Sumter County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sumter County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sumter County amended its complaint on March 11, 2019, after transfer to the MDL on February 16, 2018. *See Sumter County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45194-DAP, ECF No. 21. Unlike many other plaintiffs, Sumter County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sumter County's deadline to amend was in 2019. Sumter County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sumter County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sumter County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sumter County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sumter County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sumter County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.0003% market share for Sumter County). That insignificant dispensing volume is much too low to support a finding of good cause for Sumter County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sumter County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sumter County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sumter County filed its original complaint on February 1, 2018. *See Sumter County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45194-DAP, ECF No. 1. Despite filing its case years ago, Sumter County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)).

This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sumter County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sumter County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sumter County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sumter County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sumter County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sumter County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sumter County's proposed RICO claim against the PBMs has expired. Sumter County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sumter County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45194-DAP, ECF No. 1. It is therefore indisputable that Sumter County knew of its RICO injury,

at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sumter County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sumter County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Sumter County's public-nuisance claim against the PBMs is therefore time-barred because Sumter County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sumter County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Sumter County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

264. ***Tuscaloosa County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45196-DAP: Plaintiff Tuscaloosa County, Alabama**

Tuscaloosa County's untimely motion for leave to amend should be denied for several reason. Tuscaloosa County failed to provide notice of its proposed amendments through a proposed complaint. Tuscaloosa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tuscaloosa County's motion should be denied due to futility, as Tuscaloosa County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tuscaloosa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tuscaloosa County amended its complaint on March 8, 2019, after transfer to the MDL on February 16, 2018. *See Tuscaloosa County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45196-DAP, ECF No. 10. Unlike many other plaintiffs, Tuscaloosa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tuscaloosa County's deadline to amend was in 2019. Tuscaloosa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tuscaloosa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

1132

**Prior Notice Through Counsel.** Tuscaloosa County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Tuscaloosa County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tuscaloosa County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tuscaloosa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Tuscaloosa County). That insignificant dispensing volume is much too low to support a finding of good cause for Tuscaloosa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tuscaloosa County filed its original complaint on February 1, 2018. *See Tuscaloosa County, Alabama v. Amerisourcebergen Drug Corporation*

*et al.*, Case No. 1:18-op-45196-DAP, ECF No. 1. Despite filing its case years ago, Tuscaloosa County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Tuscaloosa County's case would force the parties and the Court to waste time and resources ascertaining the extent of Tuscaloosa County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tuscaloosa County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tuscaloosa County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tuscaloosa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tuscaloosa County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tuscaloosa County's proposed RICO claim against the PBMs has expired. Tuscaloosa County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Tuscaloosa County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45196-DAP, ECF No. 1. It is therefore indisputable that Tuscaloosa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tuscaloosa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tuscaloosa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Tuscaloosa County's public-nuisance claim against the PBMs is therefore time-barred because Tuscaloosa County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tuscaloosa County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the

[s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Tuscaloosa County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **265.** ***Municipality of Sabana Grande et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45197-DAP: Plaintiff Municipality of Cayey, Puerto Rico**

Municipality of Cayey's untimely motion for leave to amend should be denied for several reason. Municipality of Cayey failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Cayey also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Cayey's motion should be denied due to futility, as Municipality of Cayey does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Cayey was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Cayey amended its complaint on March 15, 2019, after transfer to the MDL on February 20, 2018. *See Municipality of Sabana Grande et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45197-DAP, ECF No. 17. Unlike many other plaintiffs, Municipality of Cayey declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Municipality of Cayey's deadline to amend was in 2019. Municipality of Cayey waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Cayey's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972

F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Municipality of Cayey's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Municipality of Cayey cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Municipality of Cayey's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Cayey filed its original complaint on December 27, 2017. *See Municipality of Sabana Grande et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45197-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Cayey *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Cayey's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Cayey's document destruction and the

appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Cayey's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Cayey therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Cayey failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Cayey's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Cayey of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Cayey refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Cayey's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Cayey's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Cayey's potential claims against them. Municipality of Cayey's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Cayey, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Cayey's proposed RICO claim against the PBMs has expired. Municipality of Cayey filed its original complaint on December 27, 2017, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Sabana Grande et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45197-DAP, ECF No. 1. It is therefore indisputable that Municipality of Cayey knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six and a half years before seeking leave to amend. Municipality of Cayey's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Cayey's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Cayey, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

266.  *City of Selma, Alabama v. Actavis, LLC et al.*, **Case No. 1:18-op-45198-DAP: Plaintiff Selma City, Alabama**

Selma City's untimely motion for leave to amend should be denied for several reason. Selma City failed to provide notice of its proposed amendments through a proposed complaint. Selma City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Selma City's motion should be denied due to futility, as Selma City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Selma City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Selma City amended its complaint on March 15, 2019, after transfer to the MDL on February 20, 2018. *See City of Selma, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45198-DAP, ECF No. 19. Unlike many other plaintiffs, Selma City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Selma City's deadline to amend was in 2019. Selma City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Selma City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Selma City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Selma City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Selma City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those

claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Selma City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Selma City). That insignificant dispensing volume is much too low to support a finding of good cause for Selma City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Selma City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Selma City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Selma City filed its original complaint on February 1, 2018. *See City of Selma, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45198-DAP, ECF No. 1. Despite filing its case years ago, Selma City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this

Court's orders. ECF Nos. 232; 5455. Litigating Selma City's case would force the parties and the Court to waste time and resources ascertaining the extent of Selma City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Selma City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Selma City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Selma City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Selma City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Selma City's proposed RICO claim against the PBMs has expired. Selma City filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Selma, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45198-DAP, ECF No. 1. It is therefore indisputable that Selma City knew of its RICO injury, at the very latest, the day it filed a complaint

asserting a RICO claim, six years before seeking leave to amend. Selma City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Selma City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Selma City's public-nuisance claim against the PBMs is therefore time-barred because Selma City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Selma City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

267. ***Morgan County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45200-DAP: Plaintiff Morgan County, Alabama**

Morgan County's untimely motion for leave to amend should be denied for several reason. Morgan County failed to provide notice of its proposed amendments through a proposed complaint. Morgan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Morgan County's motion should be denied due to futility,

as Morgan County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Morgan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Morgan County amended its complaint on March 15, 2019, after transfer to the MDL on February 22, 2018. *See Morgan County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45200-DAP, ECF No. 21. Unlike many other plaintiffs, Morgan County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Morgan County's deadline to amend was in 2019. Morgan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Morgan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Morgan County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Morgan County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Morgan County fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Morgan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Morgan County). That insignificant dispensing volume is much too low to support a finding of good cause for Morgan County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Morgan County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Morgan County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Morgan County of this deficiency on September 16, 2024 (*see* Exhibit B), but Morgan County refused to amend or supplement its Fact Sheet. Under this Court's orders, Morgan County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Morgan County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Morgan County's potential claims against them. Morgan County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Morgan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Morgan County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Morgan County's proposed RICO claim against the PBMs has expired. Morgan County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Morgan County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45200-DAP, ECF No. 1. It is therefore indisputable that Morgan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Morgan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Morgan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Morgan County's public-nuisance claim against the PBMs is

therefore time-barred because Morgan County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Morgan County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Morgan County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 268. *City of Decatur, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45201-DAP: Plaintiff Decatur City, Alabama

Decatur City's untimely motion for leave to amend should be denied for several reason. Decatur City failed to provide notice of its proposed amendments through a proposed complaint. Decatur City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Decatur City's motion should be denied due to futility, as Decatur City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Decatur City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Decatur City amended its complaint on March 7, 2019, after transfer to the MDL on February 22, 2018. *See City of Decatur, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45201-DAP, ECF No. 20. Unlike many other plaintiffs, Decatur City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Decatur City's deadline to amend was in 2019. Decatur City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Decatur City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Decatur City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Decatur City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Decatur City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Decatur City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Decatur City). That insignificant dispensing volume is much too low to support a finding of good cause for Decatur City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Decatur City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Decatur City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Decatur City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Decatur City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Decatur City's proposed RICO claim against the PBMs has expired. Decatur City filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Decatur, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45201-DAP, ECF No. 1. It is therefore indisputable that Decatur City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Decatur City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Decatur City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Decatur City's public-nuisance claim against the PBMs is therefore time-barred because Decatur City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Decatur City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

269. ***City of Moulton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45202-DAP: Plaintiff Moulton City, Alabama**

Moulton City's untimely motion for leave to amend should be denied for several reason. Moulton City failed to provide notice of its proposed amendments through a proposed complaint. Moulton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Moulton City's motion should be denied due to futility, as Moulton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Moulton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Moulton City amended its complaint on March 11, 2019, after transfer to the MDL on February 22, 2018. *See City of Moulton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45202-DAP, ECF No. 21. Unlike many other plaintiffs, Moulton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Moulton City's deadline to amend was in 2019. Moulton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Moulton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Moulton City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Moulton City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Moulton City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Moulton City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Moulton City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Moulton City filed its original complaint on February 1, 2018. *See City of Moulton, Alabama v. Amerisourcebergen Drug Corporation et al.*,

Case No. 1:18-op-45202-DAP, ECF No. 1. Despite filing its case years ago, Moulton City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Moulton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Moulton City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Moulton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Moulton City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Moulton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Moulton City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Moulton City's proposed RICO claim against the PBMs has expired. Moulton City filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See City of Moulton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45202-DAP, ECF No. 1. It is therefore indisputable that Moulton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Moulton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Moulton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**<u>Public Nuisance Statute of Limitations.</u>** In Alabama, public-nuisance claims are subject to a two-year limitations period. Moulton City's public-nuisance claim against the PBMs is therefore time-barred because Moulton City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**<u>Plaintiff Lacks Standing.</u>** Moulton City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 270. ***Lowndes County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45203-DAP: Plaintiff Lowndes County, Alabama**

Lowndes County's untimely motion for leave to amend should be denied for several reason. Lowndes County failed to provide notice of its proposed amendments through a proposed

complaint. Lowndes County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lowndes County's motion should be denied due to futility, as Lowndes County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lowndes County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lowndes County amended its complaint on March 8, 2019, after transfer to the MDL on February 22, 2018. *See Lowndes County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45203-DAP, ECF No. 20. Unlike many other plaintiffs, Lowndes County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lowndes County's deadline to amend was in 2019. Lowndes County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lowndes County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lowndes County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the

PBMs in 2019. *See* MDL ECF No. 2582. Lowndes County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lowndes County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lowndes County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Lowndes County). That insignificant dispensing volume is much too low to support a finding of good cause for Lowndes County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lowndes County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lowndes County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lowndes County filed its original complaint on February 1, 2018. *See Lowndes County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45203-DAP, ECF No. 1. Despite filing its case years ago, Lowndes County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lowndes County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lowndes County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lowndes County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lowndes County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lowndes County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lowndes County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lowndes County's proposed RICO claim against the PBMs has expired. Lowndes County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lowndes County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45203-DAP, ECF No. 1. It is therefore indisputable that Lowndes County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lowndes County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lowndes County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Lowndes County's public-nuisance claim against the PBMs is therefore time-barred because Lowndes County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lowndes County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the

[s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Lowndes County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 271. *City of Union Springs, Alabama v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45204-DAP: Plaintiff Union Springs City, Alabama**

Union Springs City's untimely motion for leave to amend should be denied for several reason. Union Springs City failed to provide notice of its proposed amendments through a proposed complaint. Union Springs City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Union Springs City's motion should be denied due to futility, as Union Springs City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Union Springs City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Union Springs City amended its complaint on March 7, 2019, after transfer to the MDL on February 22, 2018. *See City of Union Springs, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45204-DAP, ECF No. 21. Unlike many other plaintiffs, Union Springs City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Union Springs City's deadline to amend was in 2019. Union Springs City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Union

Springs City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Union Springs City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Union Springs City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Union Springs City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Union Springs City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in

the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Union Springs City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Union Springs City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Union Springs City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Union Springs City violated its basic duty to implement a timely litigation hold. Union Springs City filed its original complaint on February 1, 2018, but waited until December 20, 2021 to implement a litigation hold—three years and nine months later. *See City of Union Springs, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45204-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 20, 2021). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Union Springs City's case would force the parties and the Court to waste time and resources ascertaining the extent of Union Springs City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Union Springs City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Union Springs City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Union Springs City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Union Springs City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Union Springs City's proposed RICO claim against the PBMs has expired. Union Springs City filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Union Springs, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45204-DAP, ECF No. 1. It is therefore indisputable that Union Springs City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Union Springs City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Union Springs

City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Union Springs City's public-nuisance claim against the PBMs is therefore time-barred because Union Springs City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Union Springs City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **272.** ***Cherokee County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45207-DAP: Plaintiff Cherokee County, Alabama**

Cherokee County's untimely motion for leave to amend should be denied for several reason. Cherokee County failed to provide notice of its proposed amendments through a proposed complaint. Cherokee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cherokee County's motion should be denied due to futility, as Cherokee County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cherokee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cherokee County amended its complaint on March 14, 2019, after transfer to the MDL on February 22, 2018. *See Cherokee County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45207-DAP, ECF No. 21. Unlike many other plaintiffs, Cherokee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cherokee County's deadline to amend was in 2019. Cherokee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cherokee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cherokee County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cherokee County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cherokee County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cherokee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Cherokee County). That insignificant dispensing volume is much too low to support a finding of good cause for Cherokee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cherokee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cherokee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cherokee County filed its original complaint on February 1, 2018. *See Cherokee County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45207-DAP, ECF No. 1. Despite filing its case years ago, Cherokee County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Cherokee

County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cherokee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cherokee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cherokee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cherokee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cherokee County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cherokee County's proposed RICO claim against the PBMs has expired. Cherokee County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cherokee County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45207-DAP, ECF No. 1. It is therefore indisputable that Cherokee County knew of

its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cherokee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cherokee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Cherokee County's public-nuisance claim against the PBMs is therefore time-barred because Cherokee County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Cherokee County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Cherokee County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

273. ***Pitt County v. AmerisourceBergen Drug Corporation et al.***, Case No. 1:18-op-45208-DAP: Plaintiff Pitt County, North Carolina

Pitt County's untimely motion for leave to amend should be denied for several reason. Pitt County failed to provide notice of its proposed amendments through a proposed complaint. Pitt County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Pitt County's motion should be denied due to futility, as Pitt County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pitt County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pitt County amended its complaint on March 12, 2019, after transfer to the MDL on February 22, 2018. *See Pitt County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45208-DAP, ECF No. 6. Unlike many other plaintiffs, Pitt County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pitt County's deadline to amend was in 2019. Pitt County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pitt County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pitt County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty &

Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pitt County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pitt County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pitt County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Pitt County). That insignificant dispensing volume is much too low to support a finding of good cause for Pitt County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pitt County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pitt County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pitt County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pitt County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pitt County's proposed RICO claim against the PBMs has expired. Pitt County filed its original complaint on February 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pitt County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45208-DAP, ECF No. 1. It is therefore indisputable that Pitt County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pitt County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pitt County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pitt County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 274. *Greene County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45209-DAP: Plaintiff Greene County, Alabama

Greene County's untimely motion for leave to amend should be denied for several reason. Greene County failed to provide notice of its proposed amendments through a proposed complaint. Greene County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greene County's motion should be denied due to futility, as Greene County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greene County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greene County amended its complaint on March 8, 2019, after transfer to the MDL on February 22, 2018. *See Greene County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45209-DAP, ECF No. 20. Unlike many other plaintiffs, Greene County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Greene County's deadline to amend was in 2019. Greene County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Greene County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Greene County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Greene County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Greene County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Greene County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.25% market share for Greene County). That insignificant dispensing volume is much too low to support a finding of good cause for Greene County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Greene County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Greene County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Greene County of this deficiency on September 16, 2024 (*see* Exhibit B), but Greene County refused to amend or supplement its Fact Sheet. Under this Court's orders, Greene County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Greene County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Greene County's potential claims against them. Greene County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greene County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greene County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greene County's proposed RICO claim against the PBMs has expired. Greene County filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Greene County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45209-DAP, ECF No. 1. It is therefore indisputable that Greene County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Greene County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greene County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Greene County's public-nuisance claim against the PBMs is therefore time-barred because Greene County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Greene County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the

[s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at \*4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Greene County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 275. *City of Enterprise, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45213-DAP: Plaintiff Enterprise City, Alabama

Enterprise City's untimely motion for leave to amend should be denied for several reason. Enterprise City failed to provide notice of its proposed amendments through a proposed complaint. Enterprise City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Enterprise City's motion should be denied due to futility, as Enterprise City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Enterprise City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Enterprise City amended its complaint on March 15, 2019, after transfer to the MDL on February 23, 2018. *See City of Enterprise, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45213-DAP, ECF No. 20. Unlike many other plaintiffs, Enterprise City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Enterprise City's deadline to amend was in 2019. Enterprise City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Enterprise City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion

to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Enterprise City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Enterprise City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Enterprise City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Enterprise City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Enterprise City). That insignificant dispensing volume is much too low to support a finding of good cause for Enterprise City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Enterprise City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Enterprise City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Enterprise City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Enterprise City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Enterprise City's proposed RICO claim against the PBMs has expired. Enterprise City filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Enterprise, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45213-DAP, ECF No. 1. It is therefore indisputable that Enterprise City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before

seeking leave to amend. Enterprise City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Enterprise City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Enterprise City's public-nuisance claim against the PBMs is therefore time-barred because Enterprise City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Enterprise City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 276. *City of Ozark, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45214-DAP: Plaintiff Ozark City, Alabama

Ozark City's untimely motion for leave to amend should be denied for several reasons. Ozark City failed to provide notice of its proposed amendments through a proposed complaint. Ozark City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ozark City's motion should be denied due to futility, as Ozark City does not

assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ozark City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ozark City amended its complaint on March 7, 2019, after transfer to the MDL on February 23, 2018. *See City of Ozark, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45214-DAP, ECF No. 21. Unlike many other plaintiffs, Ozark City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ozark City's deadline to amend was in 2019. Ozark City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ozark City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ozark City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ozark City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ozark City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195

F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ozark City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Ozark City). That insignificant dispensing volume is much too low to support a finding of good cause for Ozark City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ozark City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ozark City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Ozark City violated its basic duty to implement a timely litigation hold. Ozark City filed its original complaint on February 1, 2018, but waited until September 24, 2024 to implement a litigation hold—six and a half years later. *See City of Ozark, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45214-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 24, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ozark City's

case would force the parties and the Court to waste time and resources ascertaining the extent of Ozark City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ozark City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ozark City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ozark City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ozark City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ozark City's proposed RICO claim against the PBMs has expired. Ozark City filed its original complaint on February 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Ozark, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45214-DAP, ECF No. 1. It is therefore indisputable that Ozark City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Ozark

City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ozark City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Ozark City's public-nuisance claim against the PBMs is therefore time-barred because Ozark City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Ozark City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 277. *Crockett County, TN v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45215-DAP: Plaintiff Crockett County, Tennessee

Crockett County's untimely motion for leave to amend should be denied for several reasons. Crockett County failed to provide notice of its proposed amendments through a proposed complaint. Crockett County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Crockett County's motion should be denied due to futility,

as Crockett County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Crockett County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Crockett County amended its complaint on March 8, 2019, after transfer to the MDL on February 23, 2018. *See Crockett County, TN v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45215-DAP, ECF No. 11. Unlike many other plaintiffs, Crockett County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Crockett County's deadline to amend was in 2019. Crockett County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Crockett County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Crockett County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Crockett County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Crockett County fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Crockett County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Crockett County). That insignificant dispensing volume is much too low to support a finding of good cause for Crockett County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Crockett County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Crockett County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Crockett County violated its basic duty to implement a timely litigation hold. Crockett County filed its original complaint on February 2, 2018, but waited until December 13, 2019 to implement a litigation hold—one year and ten months later. *See Crockett County, TN v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-

45215-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Crockett County's case would force the parties and the Court to waste time and resources ascertaining the extent of Crockett County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Crockett County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Crockett County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Crockett County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Crockett County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Crockett County's proposed RICO claim against the PBMs has expired. Crockett County filed its original complaint on February 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other

defendants. *See Crockett County, TN v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45215-DAP, ECF No. 1. It is therefore indisputable that Crockett County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Crockett County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Crockett County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Crockett County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 278. *City of Marion, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45217-DAP: Plaintiff Marion City, Alabama

Marion City's untimely motion for leave to amend should be denied for several reasons. Marion City failed to provide notice of its proposed amendments through a proposed complaint. Marion City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marion City's motion should be denied due to futility, as Marion City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marion City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Marion City amended its complaint on March 13, 2019, after transfer to the MDL on February 26, 2018. *See City of Marion, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45217-DAP, ECF No. 21. Unlike many other plaintiffs, Marion City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marion City's deadline to amend was in 2019. Marion City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marion City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marion City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Marion City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marion City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Marion City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Marion City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marion City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marion City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marion City filed its original complaint on February 2, 2018. *See City of Marion, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45217-DAP, ECF No. 1. Despite filing its case years ago, Marion City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Marion City's case would force the parties and the Court to waste time and resources ascertaining the extent of Marion City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marion City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marion City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marion City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marion City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marion City's proposed RICO claim against the PBMs has expired. Marion City filed its original complaint on February 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Marion, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45217-DAP, ECF No. 1. It is therefore indisputable that Marion City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marion City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marion City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Marion City's public-nuisance claim against the PBMs is therefore time-barred because Marion City sought leave to amend its complaint on July 29, 2024— more than six years after filing its original complaint on February 2, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Marion City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 279. *Mecklenburg County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45221-DAP: Plaintiff Mecklenburg County, North Carolina

Mecklenburg County's untimely motion for leave to amend should be denied for several reasons. Mecklenburg County failed to provide notice of its proposed amendments through a proposed complaint. Mecklenburg County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mecklenburg County's motion should be denied due to futility, as Mecklenburg County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mecklenburg County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mecklenburg County first amended its complaint on May 25, 2018. *See Mecklenburg*

*County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45221-DAP, ECF No. 6. Mecklenburg County amended its complaint again on March 15, 2019. *See Mecklenburg County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45221-DAP, ECF No. 9. Unlike many other plaintiffs, Mecklenburg County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Mecklenburg County's deadline to amend was in 2019. Mecklenburg County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mecklenburg County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mecklenburg County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Mecklenburg County). That insignificant dispensing volume is much too low to support a finding of good cause for Mecklenburg County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mecklenburg County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Mecklenburg County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Mecklenburg County violated its basic duty to implement a timely litigation hold. Mecklenburg County filed its original complaint on February 8, 2018, but waited until June 8, 2019 to implement a litigation hold—one year and four months later. *See Mecklenburg County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45221-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 8, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Mecklenburg County's case would force the parties and the Court to waste time and resources ascertaining the extent of Mecklenburg County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mecklenburg County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mecklenburg County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mecklenburg County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mecklenburg County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mecklenburg County's proposed RICO claim against the PBMs has expired. Mecklenburg County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mecklenburg County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45221-DAP, ECF No. 6. It is therefore indisputable that Mecklenburg County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mecklenburg County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mecklenburg County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mecklenburg County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 280. *Brunswick County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45222-DAP: Plaintiff Brunswick County, North Carolina

Brunswick County's untimely motion for leave to amend should be denied for several reasons. Brunswick County failed to provide notice of its proposed amendments through a proposed complaint. Brunswick County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Brunswick County's motion should be denied due to futility, as Brunswick County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brunswick County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brunswick County amended its complaint on March 11, 2019, after transfer to the MDL on February 28, 2018. *See Brunswick County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45222-DAP, ECF No. 7. Unlike many other plaintiffs, Brunswick County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Brunswick County's deadline to amend was in 2019. Brunswick County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Brunswick County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Brunswick County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Brunswick County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the

PBMs much earlier. Brunswick County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brunswick County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Brunswick County). That insignificant dispensing volume is much too low to support a finding of good cause for Brunswick County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brunswick County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brunswick County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brunswick County's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brunswick County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brunswick County's proposed RICO claim against the PBMs has expired. Brunswick County filed its original complaint on February 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brunswick County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45222-DAP, ECF No. 1. It is therefore indisputable that Brunswick County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Brunswick County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brunswick County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Brunswick County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

281. ***Cullman County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45227-DAP: Plaintiff Cullman County, Alabama**

Cullman County's untimely motion for leave to amend should be denied for several reasons. Cullman County failed to provide notice of its proposed amendments through a proposed complaint. Cullman County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Cullman County's motion should be denied due to futility, as Cullman County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cullman County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cullman County amended its complaint on March 18, 2019, after transfer to the MDL on February 28, 2018. *See Cullman County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45227-DAP, ECF No. 21. Unlike many other plaintiffs, Cullman County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cullman County's deadline to amend was in 2019. Cullman County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cullman County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cullman County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cullman County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cullman County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cullman County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Cullman County). That insignificant dispensing volume is much too low to support a finding of good cause for Cullman County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cullman County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cullman County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cullman County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cullman County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cullman County's proposed RICO claim against the PBMs has expired. Cullman County filed its original complaint on February 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cullman County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45227-DAP, ECF No. 1. It is therefore indisputable that Cullman County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cullman County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cullman County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Cullman County's public-nuisance claim against the PBMs is therefore time-barred because Cullman County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 9, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Cullman County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Cullman County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

282. ***Lawrence County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45228-DAP: Plaintiff Lawrence County, Alabama**

Lawrence County's untimely motion for leave to amend should be denied for several reasons. Lawrence County failed to provide notice of its proposed amendments through a proposed complaint. Lawrence County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lawrence County's motion should be denied due to futility, as

Lawrence County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lawrence County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lawrence County amended its complaint on March 8, 2019, after transfer to the MDL on February 28, 2018. *See Lawrence County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45228-DAP, ECF No. 20. Unlike many other plaintiffs, Lawrence County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lawrence County's deadline to amend was in 2019. Lawrence County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lawrence County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lawrence County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lawrence County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lawrence County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834

(affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lawrence County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Lawrence County). That insignificant dispensing volume is much too low to support a finding of good cause for Lawrence County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lawrence County filed its original complaint on February 12, 2018. *See Lawrence County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45228-DAP, ECF No. 1. Despite filing its case years ago, Lawrence County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lawrence County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lawrence County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lawrence County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to

amend, and Lawrence County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lawrence County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lawrence County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lawrence County's proposed RICO claim against the PBMs has expired. Lawrence County filed its original complaint on February 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lawrence County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45228-DAP, ECF No. 1. It is therefore indisputable that Lawrence County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lawrence County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lawrence County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Lawrence County's public-nuisance claim against the PBMs is therefore time-barred because Lawrence County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 12, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lawrence County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Lawrence County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 283. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Albertville City, Alabama

Albertville City's untimely motion for leave to amend should be denied for several reasons. Albertville City failed to provide notice of its proposed amendments through a proposed complaint. Albertville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet,

and because its untimely motion would unduly prejudice the PBMs. Moreover, Albertville City's motion should be denied due to futility, as Albertville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Albertville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Albertville City amended its complaint on March 15, 2019, after transfer to the MDL on February 28, 2018, as well as on March 15, 2019. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF Nos. 14, 15. Unlike many other plaintiffs, Albertville City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Albertville City's deadline to amend was in 2019. Albertville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Albertville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Albertville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Albertville City). That insignificant dispensing volume is much too low to support a finding of good cause for Albertville City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Albertville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Albertville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Albertville City filed its original complaint on February 8, 2018. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. Despite filing its case years ago, Albertville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Albertville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Albertville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Albertville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Albertville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Albertville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Albertville City's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Albertville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Albertville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Albertville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Albertville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Albertville City's potential claims against them. Albertville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Albertville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28

.

**Failure to State a Claim.** Albertville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Albertville City's proposed RICO claim against the PBMs has expired. Albertville City filed its original complaint on February 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. It is therefore indisputable that Albertville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Albertville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Albertville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Albertville City's public-nuisance claim against the PBMs is therefore time-barred because Albertville City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Albertville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

284.  ***Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Arab City, Alabama**

Arab City's untimely motion for leave to amend should be denied for several reasons. Arab City failed to provide notice of its proposed amendments through a proposed complaint. Arab City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Arab City's motion should be denied due to futility, as Arab City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Arab City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Arab City amended its complaint on March 15, 2019, after transfer to the MDL on February 28, 2018, as well as on March 15, 2019. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF Nos. 14, 15. Unlike many other plaintiffs, Arab City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Arab City's deadline to amend was in 2019. Arab City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Arab City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Arab City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Arab City). That insignificant dispensing volume is much too low to support a finding of good cause for Arab City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Arab City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Arab City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Arab City filed its original complaint on February 8, 2018. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. Despite filing its case years ago, Arab City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Arab City's case would force the parties and the Court to waste time and resources ascertaining the extent of Arab City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Arab City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Arab City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

1211

time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Arab City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Arab City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Arab City of this deficiency on September 16, 2024 (*see* Exhibit B), but Arab City refused to amend or supplement its Fact Sheet. Under this Court's orders, Arab City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Arab City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Arab City's potential claims against them. Arab City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Arab City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Arab City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Arab City's proposed RICO claim against the PBMs has expired. Arab City filed its original complaint on February 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. It is therefore indisputable that Arab City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Arab City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Arab City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Arab City's public-nuisance claim against the PBMs is therefore time-barred because Arab City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Arab City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **285.** ***Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Boaz City, Alabama**

Boaz City's untimely motion for leave to amend should be denied for several reasons. Boaz City failed to provide notice of its proposed amendments through a proposed complaint. Boaz City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Boaz City's motion should be denied due to futility, as Boaz City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Boaz City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Boaz City amended its complaint on March 15, 2019, after transfer to the MDL on February 28, 2018, as well as on March 15, 2019. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF Nos. 14, 15. Unlike many other plaintiffs, Boaz City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Boaz City's deadline to amend was in 2019. Boaz City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Boaz City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Boaz City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Boaz City). That insignificant dispensing volume is much too low to support a finding of good cause for Boaz City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Boaz City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Boaz City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Boaz City filed its original complaint on February 8, 2018. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. Despite filing its case years ago, Boaz City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Boaz City's case would force the parties and the Court to waste time and resources ascertaining the extent of Boaz City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Boaz City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in

seeking leave to amend, and Boaz City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Boaz City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Boaz City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Boaz City of this deficiency on September 16, 2024 (*see* Exhibit B), but Boaz City refused to amend or supplement its Fact Sheet. Under this Court's orders, Boaz City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Boaz City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Boaz City's potential claims against them. Boaz City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Boaz City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Boaz City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Boaz City's proposed RICO claim against the PBMs has expired. Boaz City filed its original complaint on February 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. It is therefore indisputable that Boaz City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Boaz City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Boaz City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Boaz City's public-nuisance claim against the PBMs is therefore time-barred because Boaz City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new

party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Boaz City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 286. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Douglas Town, Alabama

Douglas Town's untimely motion for leave to amend should be denied for several reasons. Douglas Town failed to provide notice of its proposed amendments through a proposed complaint. Douglas Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Douglas Town's motion should be denied due to futility, as Douglas Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Douglas Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Douglas Town amended its complaint on March 15, 2019, after transfer to the MDL on February 28, 2018, as well as on March 15, 2019. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF Nos. 14, 15. Unlike many other plaintiffs, Douglas Town declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Douglas Town's deadline to amend was in 2019. Douglas Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Douglas Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Douglas Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Douglas Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Douglas Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Douglas Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Douglas Town filed its original complaint on February 8, 2018. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. Despite filing its case years ago, Douglas Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Douglas Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Douglas Town's document destruction and the appropriate sanctions—just as the parties were forced to do

in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Douglas Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Douglas Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Douglas Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Douglas Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Douglas Town's proposed RICO claim against the PBMs has expired. Douglas Town filed its original complaint on February 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. It is therefore indisputable that Douglas Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Douglas Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury,

not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Douglas Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Douglas Town's public-nuisance claim against the PBMs is therefore time-barred because Douglas Town sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Douglas Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 287. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Grant Town, Alabama

Grant Town's untimely motion for leave to amend should be denied for several reasons. Grant Town failed to provide notice of its proposed amendments through a proposed complaint. Grant Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Grant Town's motion should be denied due to futility, as Grant Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred

by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Grant Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Grant Town amended its complaint on March 15, 2019, after transfer to the MDL on February 28, 2018, as well as on March 15, 2019. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF Nos. 14, 15. Unlike many other plaintiffs, Grant Town declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Grant Town's deadline to amend was in 2019. Grant Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Grant Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Grant Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Grant Town). That insignificant dispensing volume is much too low to support a finding of good cause for Grant Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units

shipped to Grant Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Grant Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Grant Town filed its original complaint on February 8, 2018. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. Despite filing its case years ago, Grant Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Grant Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Grant Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Grant Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Grant Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Grant Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Grant Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Grant Town's proposed RICO claim against the PBMs has expired. Grant Town filed its original complaint on February 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. It is therefore indisputable that Grant Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Grant Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Grant Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Grant Town's public-nuisance claim against the PBMs is therefore time-barred because Grant Town sought leave to amend its complaint on July 29, 2024— more than six years after filing its original complaint on February 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Grant Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 288. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Guntersville City, Alabama

Guntersville City's untimely motion for leave to amend should be denied for several reasons. Guntersville City failed to provide notice of its proposed amendments through a proposed complaint. Guntersville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Guntersville City's motion should be denied due to futility, as Guntersville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Guntersville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Guntersville City amended its complaint on March 15, 2019, after transfer to the MDL on February 28, 2018, as well as on March 15, 2019. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF Nos. 14, 15. Unlike many other plaintiffs, Guntersville City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Guntersville City's deadline to amend was in 2019. Guntersville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs.

Guntersville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy. But OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Guntersville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Guntersville City). That insignificant dispensing volume is much too low to support a finding of good cause for Guntersville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Guntersville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Guntersville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Guntersville City filed its original complaint on February 8, 2018. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. Despite filing its case years ago, Guntersville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Guntersville City's case would

force the parties and the Court to waste time and resources ascertaining the extent of Guntersville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Guntersville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Guntersville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Guntersville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Guntersville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Guntersville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Guntersville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Guntersville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Guntersville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Guntersville City's potential claims against them. Guntersville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Guntersville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Guntersville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Guntersville City's proposed RICO claim against the PBMs has expired. Guntersville City filed its original complaint on February 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. It is therefore indisputable that Guntersville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Guntersville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Guntersville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Guntersville City's public-nuisance claim against the PBMs is therefore time-barred because Guntersville City sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Guntersville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 289. *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP: Plaintiff Marshall County, Alabama

Marshall County's untimely motion for leave to amend should be denied for several reasons. Marshall County failed to provide notice of its proposed amendments through a proposed complaint. Marshall County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marshall County's motion should be denied due to futility, as Marshall County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marshall County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Marshall County amended its complaint on March 15, 2019, after transfer to the MDL on February 28, 2018, as well as on March 15, 2019. *See Marshall County, Alabama et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45230-DAP, ECF Nos. 14, 15. Unlike many other plaintiffs, Marshall County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Marshall County's deadline to amend was in 2019. Marshall County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marshall County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marshall County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Marshall County). That insignificant dispensing volume is much too low to support a finding of good cause for Marshall County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marshall County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Marshall County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marshall County filed its original complaint on February 8, 2018. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. Despite filing its case years ago, Marshall County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Marshall County's case would force the parties and the Court to waste time and resources ascertaining the extent of Marshall County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marshall County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marshall County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Marshall County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Marshall County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Marshall County of this deficiency on September 16, 2024 (*see* Exhibit B), but Marshall County refused to amend or supplement its Fact Sheet. Under this Court's orders, Marshall County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Marshall County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend

against Marshall County's potential claims against them. Marshall County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marshall County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marshall County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marshall County's proposed RICO claim against the PBMs has expired. Marshall County filed its original complaint on February 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, Case No. 1:18-op-45230-DAP, ECF No. 1. It is therefore indisputable that Marshall County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marshall County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marshall County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Marshall County's public-nuisance claim against the PBMs is therefore time-barred because Marshall County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Marshall County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Marshall County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **290.** ***Augusta, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45233-DAP: Plaintiff Augusta-Richmond County Consolidated Government, Georgia**

Augusta-Richmond County Consolidated Government's untimely motion for leave to amend should be denied for several reasons. Augusta-Richmond County Consolidated Government failed to provide notice of its proposed amendments through a proposed complaint.

Augusta-Richmond County Consolidated Government also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Augusta-Richmond County Consolidated Government's motion should be denied due to futility, as Augusta-Richmond County Consolidated Government does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Augusta-Richmond County Consolidated Government was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Augusta-Richmond County Consolidated Government amended its complaint on March 11, 2019, after transfer to the MDL on February 28, 2018. *See Augusta, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45233-DAP, ECF No. 6. Unlike many other plaintiffs, Augusta-Richmond County Consolidated Government declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Augusta-Richmond County Consolidated Government's deadline to amend was in 2019. Augusta-Richmond County Consolidated Government waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Augusta-Richmond County Consolidated Government's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**<u>Prior Notice Through Counsel.</u>** Augusta-Richmond County Consolidated Government cannot meet the Rule 16 good cause standard because it is represented by the same counsel— Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC— that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Augusta-Richmond County Consolidated Government, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Augusta-Richmond County Consolidated Government fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Augusta-Richmond County Consolidated Government's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Augusta-Richmond County Consolidated Government). That insignificant dispensing volume is much too low to support a finding of good cause for Augusta-Richmond County Consolidated Government to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Augusta-Richmond County Consolidated Government's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Augusta-Richmond County Consolidated Government to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Augusta-Richmond County Consolidated Government filed its original complaint on February 13, 2018. *See Augusta, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45233-DAP, ECF No. 1. Despite filing its case years ago, Augusta-Richmond County Consolidated Government *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Augusta-Richmond County Consolidated Government's case would force the parties and the Court to waste time and resources ascertaining the extent of Augusta-Richmond County Consolidated Government's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Augusta-Richmond County Consolidated Government's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Augusta-Richmond County Consolidated Government therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Augusta-Richmond County Consolidated Government has *never* served a Plaintiff Fact Sheet. Augusta-Richmond County Consolidated Government's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Augusta-Richmond County Consolidated Government's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Augusta-Richmond County Consolidated Government's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Augusta-Richmond County Consolidated Government, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Augusta-Richmond County Consolidated Government's proposed RICO claim against the PBMs has expired. Augusta-Richmond County Consolidated Government filed its original complaint on February 13, 2018,

alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Augusta, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45233-DAP, ECF No. 1. It is therefore indisputable that Augusta-Richmond County Consolidated Government knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Augusta-Richmond County Consolidated Government's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Augusta-Richmond County Consolidated Government's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Augusta-Richmond County Consolidated Government, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 291. *Wilkes County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45239-DAP: Plaintiff Wilkes County, North Carolina

Wilkes County's untimely motion for leave to amend should be denied for several reasons. Wilkes County failed to provide notice of its proposed amendments through a proposed complaint. Wilkes County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wilkes County's motion should be denied due to futility, as Wilkes County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wilkes County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wilkes County amended its complaint on March 12, 2019, after transfer to the MDL on March 5, 2018. *See Wilkes County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45239-DAP, ECF No. 6. Unlike many other plaintiffs, Wilkes County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wilkes County's deadline to amend was in 2019. Wilkes County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wilkes County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wilkes County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wilkes County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wilkes County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wilkes County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Wilkes County). That insignificant dispensing volume is much too low to support a finding of good cause for Wilkes County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wilkes County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wilkes County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Wilkes County filed its original complaint on February 16, 2018, but waited until June 27, 2018 to implement a litigation hold. *See Wilkes County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45239-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 27, 2018). Wilkes County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because

the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wilkes County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wilkes County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wilkes County's proposed RICO claim against the PBMs has expired. Wilkes County filed its original complaint on February 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wilkes County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45239-DAP, ECF No. 1. It is therefore indisputable that Wilkes County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wilkes County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wilkes County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wilkes County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 292. *City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:18-op-45240-DAP: Plaintiff Lakewood City, Ohio

Lakewood City's untimely motion for leave to amend should be denied for several reasons. Lakewood City failed to provide notice of its proposed amendments through a proposed complaint. Lakewood City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lakewood City's motion should be denied due to futility, as Lakewood City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lakewood City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lakewood City first amended its complaint on March 16, 2018. *See City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:18-op-45240-DAP, ECF No. 4. Lakewood City amended its complaint again on March 14, 2019. *See City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:18-op-45240-DAP, ECF No. 44. Unlike many other plaintiffs, Lakewood City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Lakewood City's deadline to amend was in 2019. Lakewood City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lakewood City's lack of diligence in pursuing its

claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lakewood City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Lakewood City). That insignificant dispensing volume is much too low to support a finding of good cause for Lakewood City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lakewood City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lakewood City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lakewood City violated its basic duty to implement a timely litigation hold. Lakewood City filed its original complaint on March 5, 2018, but waited until August 13, 2024 to implement a litigation hold—six years later. *See City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:18-op-45240-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 13, 2024). This is a plain violation of this

Court's orders. ECF Nos. 232; 5455. Litigating Lakewood City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lakewood City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lakewood City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lakewood City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lakewood City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lakewood City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lakewood City is a plaintiff in Ohio. Lakewood City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lakewood City's proposed RICO claim against the PBMs has expired. Lakewood City filed its original complaint on March 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:18-op-45240-DAP, ECF No. 1. It is therefore indisputable that Lakewood City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lakewood City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lakewood City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lakewood City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 293.    *Pickett County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45242-DAP: Plaintiff Pickett County, Tennessee

Pickett County's untimely motion for leave to amend should be denied for several reasons. Pickett County failed to provide notice of its proposed amendments through a proposed complaint. Pickett County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pickett County's motion should be denied due to futility, as Pickett County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pickett County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pickett County amended its complaint on March 11, 2019, after transfer to the MDL on March 7, 2018. *See Pickett County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45242-DAP, ECF No. 12. Unlike many other plaintiffs, Pickett County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pickett County's deadline to amend was in 2019. Pickett County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pickett County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pickett County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pickett County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pickett County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pickett County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Pickett County). That insignificant dispensing volume is much too low to support a finding of good cause for Pickett County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pickett County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pickett County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pickett County's proposed RICO claim against the PBMs has expired. Pickett County filed its original complaint on February 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Pickett County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45242-DAP, ECF No. 1. It is therefore indisputable that Pickett County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pickett County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pickett County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pickett County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 294. *Rutherford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45243-DAP: Plaintiff Rutherford County, North Carolina

Rutherford County's untimely motion for leave to amend should be denied for several reasons. Rutherford County failed to provide notice of its proposed amendments through a proposed complaint. Rutherford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rutherford County's motion should be denied due to futility, as Rutherford County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rutherford County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Rutherford County amended its complaint on March 12, 2019, after transfer to the MDL on March 9, 2018. *See Rutherford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45243-DAP, ECF No. 6. Unlike many other plaintiffs, Rutherford County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rutherford County's deadline to amend was in 2019. Rutherford County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rutherford County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rutherford County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Rutherford County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Rutherford County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rutherford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Rutherford County). That insignificant dispensing volume is much too low to support a finding of good cause for Rutherford County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rutherford County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rutherford County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Rutherford County filed its original complaint on February 26, 2018, but waited until July 2, 2018 to implement a litigation hold. *See Rutherford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45243-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 2, 2018). Rutherford County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rutherford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rutherford County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rutherford County's proposed RICO claim against the PBMs has expired. Rutherford County filed its original complaint on February 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rutherford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45243-DAP, ECF No. 1. It is therefore indisputable that Rutherford County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Rutherford County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rutherford County's request for leave to

amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rutherford County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 295. *Barbour County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45244-DAP: Plaintiff Barbour County, Alabama

Barbour County's untimely motion for leave to amend should be denied for several reasons. Barbour County failed to provide notice of its proposed amendments through a proposed complaint. Barbour County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Barbour County's motion should be denied due to futility, as Barbour County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Barbour County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Barbour County filed its original complaint on February 20, 2018 and the case was transferred to the MDL on March 9, 2018. *See Barbour County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45244-DAP, ECF No. 19. Barbour County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Barbour County elected not to do so. Instead, Barbour County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Barbour County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Barbour County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Barbour County). That insignificant dispensing volume is much too low to support a finding of good cause for Barbour County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Barbour County filed its original complaint on February 20, 2018. *See Barbour County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45244-DAP, ECF No. 1. Despite filing its case years ago, Barbour County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Barbour County's case would force the parties and the Court to waste time and resources ascertaining the extent of Barbour County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Barbour County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Barbour County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Barbour County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Barbour County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Barbour County's proposed RICO claim against the PBMs has expired. Barbour County filed its original complaint on February 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Barbour County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45244-DAP, ECF No. 1. It is therefore indisputable that Barbour County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Barbour County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Barbour County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Barbour County's public-nuisance claim against the PBMs is therefore time-barred because Barbour County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Barbour County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Barbour County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 296. *Perry County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45245-DAP: Plaintiff Perry County, Ohio

Perry County's untimely motion for leave to amend should be denied for several reasons. Perry County failed to provide notice of its proposed amendments through a proposed complaint. Perry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Perry County's motion should be denied due to futility, as Perry County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim

is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Perry County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Perry County amended its complaint on March 11, 2019, after transfer to the MDL on March 9, 2018. *See Perry County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45245-DAP, ECF No. 27. Unlike many other plaintiffs, Perry County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Perry County's deadline to amend was in 2019. Perry County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Perry County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Perry County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Perry County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Perry County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Perry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Perry County). That insignificant dispensing volume is much too low to support a finding of good cause for Perry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Perry County violated its basic duty to implement a timely litigation hold. Perry County filed its original complaint on February 23, 2018, but waited until September 26, 2024 to implement a litigation hold—six years later. *See Perry County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45245-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 26, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Perry County's case would force the parties and the Court to waste time and resources ascertaining the extent of Perry County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Perry County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Perry

1257

County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Perry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Perry County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Perry County is a plaintiff in Ohio. Perry County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Perry County's proposed RICO claim against the PBMs has expired. Perry County filed its original complaint on February 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Perry County Board of County Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45245-DAP, ECF No. 1. It is therefore indisputable that Perry County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years

before seeking leave to amend. Perry County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Perry County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Perry County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 297. *Bullock County, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45246-DAP: Plaintiff Bullock County, Alabama

Bullock County's untimely motion for leave to amend should be denied for several reasons. Bullock County failed to provide notice of its proposed amendments through a proposed complaint. Bullock County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bullock County's motion should be denied due to futility, as Bullock County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bullock County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bullock County amended its complaint on March 6, 2019, after transfer to the MDL on March 9, 2018. *See Bullock County, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45246-DAP, ECF No. 12. Unlike many other plaintiffs, Bullock County declined to add

claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bullock County's deadline to amend was in 2019. Bullock County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bullock County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bullock County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bullock County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bullock County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bullock County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.04% market share for Bullock County). That insignificant dispensing volume is much too low to support a finding of good cause for Bullock County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bullock County filed its original complaint on February 15, 2018. *See Bullock County, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45246-DAP, ECF No. 1. Despite filing its case years ago, Bullock County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Bullock County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bullock County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bullock County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bullock County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bullock County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bullock County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bullock County's proposed RICO claim against the PBMs has expired. Bullock County filed its original complaint on February 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bullock County, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45246-DAP, ECF No. 1. It is therefore indisputable that Bullock County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bullock County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bullock County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Bullock County's public-nuisance claim against the PBMs is therefore time-barred because Bullock County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Bullock County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Bullock County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 298. *Clay County, Alabama v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-45248-DAP: Plaintiff Clay County, Alabama

Clay County's untimely motion for leave to amend should be denied for several reasons. Clay County failed to provide notice of its proposed amendments through a proposed complaint. Clay County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clay County's motion should be denied due to futility, as Clay County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clay County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clay County amended its complaint on March 15, 2019, after transfer to the MDL on March 9, 2018. *See Clay County, Alabama v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-45248-DAP, ECF No. 27. Unlike many other plaintiffs, Clay County declined to add claims against the PBMs

in its amended complaint. *See* Section II.A.1, above. Clay County's deadline to amend was in 2019. Clay County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clay County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clay County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Clay County). That insignificant dispensing volume is much too low to support a finding of good cause for Clay County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clay County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clay County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Clay County filed its original complaint on February 19, 2018. *See Clay County, Alabama v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-45248-DAP, ECF No. 1. Despite filing its case years ago, Clay County *never* implemented a

litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Clay County's case would force the parties and the Court to waste time and resources ascertaining the extent of Clay County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clay County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clay County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clay County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clay County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clay County's proposed RICO claim against the PBMs has expired. Clay County filed its original complaint on February 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Clay County, Alabama v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-45248-DAP, ECF No. 1.

It is therefore indisputable that Clay County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Clay County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clay County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Clay County's public-nuisance claim against the PBMs is therefore time-barred because Clay County sought leave to amend its complaint on July 29, 2024—more than six years after filing its original complaint on February 19, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Clay County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Clay County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

299.    ***Indiana County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45249-DAP: Plaintiff Indiana County, Pennsylvania**

Indiana County's untimely motion for leave to amend should be denied for several reasons. Indiana County failed to provide notice of its proposed amendments through a proposed complaint. Indiana County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Indiana County's motion should be denied due to futility, as Indiana County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Indiana County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Indiana County amended its complaint on March 6, 2019, after transfer to the MDL on March 12, 2018. *See Indiana County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45249-DAP, ECF No. 6. Unlike many other plaintiffs, Indiana County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Indiana County's deadline to amend was 2019. Indiana County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Indiana County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Indiana County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Indiana County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Indiana County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Indiana County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Indiana County). That insignificant dispensing volume is much too low to support a finding of good cause for Indiana County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Indiana County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Indiana County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Indiana County violated its basic duty to implement a timely litigation hold. Indiana County filed its original complaint on February 20, 2018, but waited until September 27, 2018 to implement a litigation hold—seven months later. *See Indiana County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45249-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 27, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Indiana County's case would force the parties and the Court to waste time and resources ascertaining the extent of Indiana County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Indiana County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Indiana County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Indiana County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Indiana County, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Indiana County's proposed RICO claim against the PBMs has expired. Indiana County filed its original complaint on February 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Indiana County, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45249-DAP, ECF No. 1. It is therefore indisputable that Indiana County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Indiana County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Indiana County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Indiana County, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **300.** *Sandusky County Board of Commissioners v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45254-DAP: Plaintiff Sandusky County, Ohio**

Sandusky County's untimely motion for leave to amend should be denied for several reasons. Sandusky County failed to provide notice of its proposed amendments through a proposed complaint. Sandusky County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sandusky

County's motion should be denied due to futility, as Sandusky County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sandusky County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sandusky County amended its complaint on March 18, 2019, after transfer to the MDL on March 14, 2018. *See Sandusky County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45254-DAP, ECF No. 7. Unlike many other plaintiffs, Sandusky County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sandusky County's deadline to amend was in 2019. Sandusky County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sandusky County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Sandusky County filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Sandusky County offers no good cause for its failure to bring its

proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Sandusky County's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Sandusky County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Sandusky County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sandusky County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sandusky County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Sandusky County). That insignificant dispensing volume is much too low to support a finding of good cause for Sandusky County to add dispensing claims

against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Sandusky County filed its original complaint on January 28, 2018, but waited until June 11, 2018 to implement a litigation hold. *See Sandusky County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45254-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 11, 2018). Sandusky County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sandusky County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sandusky County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sandusky County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sandusky County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sandusky County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sandusky County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sandusky County's potential claims against them. Sandusky County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs'

counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sandusky County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sandusky County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Sandusky County is a plaintiff in Ohio. Sandusky County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Sandusky County's proposed RICO claim against the PBMs has expired. Sandusky County filed its original complaint on January 28, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Sandusky County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45254-DAP, ECF No. 1-3. Even assuming *arguendo* that Sandusky County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of

limitations expired, at the very latest, on January 28, 2022. Sandusky County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sandusky County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sandusky County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 301. *Sumner County, Tennessee v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45255-DAP: Plaintiff Sumner County, Tennessee

Sumner County's untimely motion for leave to amend should be denied for several reasons. Sumner County failed to provide notice of its proposed amendments through a proposed complaint. Sumner County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sumner County's motion should be denied due to futility, as Sumner County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sumner County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sumner County filed its original complaint on February 27, 2018 and the case was transferred to the MDL on March 15, 2018. *See Sumner County, Tennessee v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45255-DAP, ECF No. 26. Sumner County could have amended its complaint, without

leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Sumner County elected not to do so. Instead, Sumner County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sumner County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sumner County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Sumner County). That insignificant dispensing volume is much too low to support a finding of good cause for Sumner County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sumner County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sumner County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Sumner County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary

development. *See* Achter Decl., Exhibit A. That contract notified Sumner County of the PBM services Express Scripts provides and Sumner County began receiving those services on July 26, 2007. *See id.* Inasmuch as Sumner County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Sumner County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Sumner County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Sumner County filed its original complaint on February 27, 2018. *See Sumner County, Tennessee v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45255-DAP, ECF No. 1. Despite filing its case years ago, Sumner County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sumner County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sumner County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sumner County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sumner County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Sumner County has *never* served a Plaintiff Fact Sheet. Sumner County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sumner County's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sumner County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sumner County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sumner County's proposed RICO claim against the PBMs has expired. Sumner County filed its original complaint on February 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sumner County, Tennessee v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45255-DAP, ECF

No. 1. It is therefore indisputable that Sumner County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sumner County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sumner County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sumner County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 302. *Geauga County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45256-DAP: Plaintiff Geauga County, Ohio

Geauga County's untimely motion for leave to amend should be denied for several reasons. Geauga County failed to provide notice of its proposed amendments through a proposed complaint. Geauga County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Geauga County's motion should be denied due to futility, as Geauga County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Geauga County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Geauga County amended its complaint on March 14, 2019, after directly filing in the MDL. *See*

*Geauga County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45256-DAP, ECF No. 30. Unlike many other plaintiffs, Geauga County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Geauga County's deadline to amend was in 2019. Geauga County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Geauga County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Geauga County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Geauga County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Geauga County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Geauga County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Geauga County). That insignificant dispensing volume is much too low to support a finding of good cause for Geauga County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Geauga County filed its original complaint on March 15, 2018. *See Geauga County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45256-DAP, ECF No. 1. Despite filing its case years ago, Geauga County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Geauga County's case would force the parties and the Court to waste time and resources ascertaining the extent of Geauga County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Geauga County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Geauga County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Geauga County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Geauga County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Geauga County is a plaintiff in Ohio. Geauga County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Geauga County's proposed RICO claim against the PBMs has expired. Geauga County filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Geauga County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45256-DAP, ECF No. 1. It is therefore indisputable that Geauga County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Geauga County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Geauga County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Geauga County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **303.** ***Williams County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45257-DAP: Plaintiff Williams County, Ohio**

Williams County's untimely motion for leave to amend should be denied for several reasons. Williams County failed to provide notice of its proposed amendments through a proposed complaint. Williams County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Williams County's motion should be denied due to futility, as Williams County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Williams County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Williams County amended its complaint on March 11, 2019, after directly filing in the MDL. *See Williams County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45257-DAP, ECF No. 30. Unlike many other plaintiffs, Williams County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Williams County's deadline to amend was in 2019. Williams County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Williams County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Williams County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Williams County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Williams County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Williams County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Williams County). That insignificant dispensing volume is much too low to support a finding of good cause for Williams County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Williams County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Williams County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Williams County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Williams County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Williams County is a plaintiff in Ohio. Williams County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Williams County's proposed RICO claim against the PBMs has expired. Williams County filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Williams County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45257-DAP, ECF No. 1. It is therefore indisputable that Williams County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Williams County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Williams County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Williams County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 304. *Beaufort County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45261-DAP: Plaintiff Beaufort County, North Carolina

Beaufort County's untimely motion for leave to amend should be denied for several reasons. Beaufort County failed to provide notice of its proposed amendments through a proposed complaint. Beaufort County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Beaufort County's motion should be denied due to futility, as Beaufort County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Beaufort County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Beaufort County amended its complaint on March 11, 2019, after transfer to the MDL on March 22, 2018. *See Beaufort County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45261-DAP, ECF No. 6. Unlike many other plaintiffs, Beaufort County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Beaufort County's deadline to amend was in 2019. Beaufort County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Beaufort County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Beaufort County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Beaufort County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Beaufort County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Beaufort County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Beaufort County). That insignificant dispensing volume is much too low to support a finding of good cause for Beaufort County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Beaufort County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Beaufort County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Beaufort County filed its original complaint on March 2, 2018. *See Beaufort County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45261-DAP, ECF No. 1. Despite filing its case years ago, Beaufort County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Beaufort County's case would force the parties and the Court to waste time and resources ascertaining the extent of Beaufort County's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Beaufort County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Beaufort County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Beaufort County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Beaufort County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Beaufort County's proposed RICO claim against the PBMs has expired. Beaufort County filed its original complaint on March 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Beaufort County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45261-DAP, ECF No. 1. It is therefore indisputable that Beaufort County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Beaufort County's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Beaufort County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Beaufort County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 305. *Caldwell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45263-DAP: Plaintiff Caldwell County, North Carolina

Caldwell County's untimely motion for leave to amend should be denied for several reasons. Caldwell County failed to provide notice of its proposed amendments through a proposed complaint. Caldwell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Caldwell County's motion should be denied due to futility, as Caldwell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Caldwell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Caldwell County amended its complaint on March 14, 2019, after transfer to the MDL on March 22, 2018. *See Caldwell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45263-DAP, ECF No. 6. Unlike many other plaintiffs, Caldwell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Caldwell County's deadline to amend was in 2019. Caldwell County waited five years after its deadline to amend to seek leave

to assert claims against the PBMs. Caldwell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Caldwell County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Caldwell County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Caldwell County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Caldwell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Caldwell County). That insignificant dispensing volume is much

too low to support a finding of good cause for Caldwell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Caldwell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Caldwell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Caldwell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Caldwell County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Caldwell County's proposed RICO claim against the PBMs has expired. Caldwell County filed its original complaint on March 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Caldwell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45263-

DAP, ECF No. 1. It is therefore indisputable that Caldwell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Caldwell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Caldwell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Caldwell County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 306. *Delaware County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45266-DAP: Plaintiff Delaware County, Ohio

Delaware County's untimely motion for leave to amend should be denied for several reasons. Delaware County failed to provide notice of its proposed amendments through a proposed complaint. Delaware County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Delaware County's motion should be denied due to futility, as Delaware County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Delaware County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Delaware County amended its complaint on March 15, 2019, after transfer to the MDL

on March 22, 2018. *See Delaware County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45266-DAP, ECF No. 23. Unlike many other plaintiffs, Delaware County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Delaware County's deadline to amend was in 2019. Delaware County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Delaware County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Delaware County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Delaware County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Delaware County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Delaware County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Delaware County). That insignificant dispensing volume is much too low to support a finding of good cause for Delaware County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Delaware County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Delaware County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Delaware County is a plaintiff in Ohio. Delaware County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Delaware County's proposed RICO claim against the PBMs has expired. Delaware County filed its original complaint on February 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Delaware County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45266-DAP, ECF No. 1. It is therefore indisputable that Delaware County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Delaware County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Delaware County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Delaware County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 307. *Chatham County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45267-DAP: Plaintiff Chatham County, Georgia

Chatham County's untimely motion for leave to amend should be denied for several reasons. Chatham County failed to provide notice of its proposed amendments through a proposed complaint. Chatham County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chatham County's motion should be denied due to futility, as Chatham County does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chatham County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chatham County first amended its complaint on December 14, 2018. *See Chatham County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45267-DAP, ECF No. 25. Unlike many other plaintiffs, Chatham County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Chatham County's deadline to amend was in 2019. Chatham County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chatham County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chatham County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Chatham County). That insignificant dispensing volume is much too low to support a finding of good cause for Chatham County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units

shipped to Chatham County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chatham County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chatham County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chatham County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chatham County's proposed RICO claim against the PBMs has expired. Chatham County filed its original complaint on March 6, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Chatham County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45267-DAP, ECF No. 1. Even assuming *arguendo* that Chatham County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 6, 2022. Chatham County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chatham County's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chatham County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **308.** ***City of Brunswick, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45270-DAP: Plaintiff Brunswick City, Georgia**

Brunswick City's untimely motion for leave to amend should be denied for several reasons. Brunswick City failed to provide notice of its proposed amendments through a proposed complaint. Brunswick City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brunswick City's motion should be denied due to futility, as Brunswick City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brunswick City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brunswick City filed its original complaint on March 6, 2018 and the case was transferred to the MDL on March 24, 2018. *See City of Brunswick, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45270-DAP, ECF No. 3. Brunswick City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Brunswick City elected not to do so. Instead, Brunswick City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Brunswick City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling

order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brunswick City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Brunswick City). That insignificant dispensing volume is much too low to support a finding of good cause for Brunswick City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brunswick City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brunswick City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brunswick City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brunswick City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brunswick City's proposed RICO claim against the PBMs has expired. Brunswick City filed its original complaint on March 6, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Brunswick, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45270-DAP, ECF No. 1. Even assuming *arguendo* that Brunswick City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 6, 2022. Brunswick City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brunswick City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Brunswick City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

309. ***Hamilton County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45272-DAP: Plaintiff Hamilton County, Ohio**

Hamilton County's untimely motion for leave to amend should be denied for several reasons. Hamilton County failed to provide notice of its proposed amendments through a proposed complaint. Hamilton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hamilton County's motion should be denied due to futility, as

Hamilton County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hamilton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hamilton County amended its complaint on March 15, 2019, after transfer to the MDL on March 24, 2018. *See Hamilton County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45272-DAP, ECF No. 30. Unlike many other plaintiffs, Hamilton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hamilton County's deadline to amend was in 2019. Hamilton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hamilton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hamilton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hamilton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hamilton County fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hamilton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Hamilton County). That insignificant dispensing volume is much too low to support a finding of good cause for Hamilton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hamilton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hamilton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hamilton County filed its original complaint on March 1, 2018. *See Hamilton County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45272-DAP, ECF No. 1. Despite filing its case years ago, Hamilton County *never* implemented a litigation hold and is instead purporting to rely on

non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hamilton County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hamilton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hamilton County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hamilton County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hamilton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hamilton County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Hamilton County is a plaintiff in Ohio. Hamilton County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale

of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Hamilton County's proposed RICO claim against the PBMs has expired. Hamilton County filed its original complaint on March 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hamilton County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45272-DAP, ECF No. 1. It is therefore indisputable that Hamilton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hamilton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hamilton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hamilton County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **310.** *Randolph County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45275-DAP: Plaintiff Randolph County, North Carolina**

Randolph County's untimely motion for leave to amend should be denied for several reasons. Randolph County failed to provide notice of its proposed amendments through a proposed complaint. Randolph County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Randolph County's motion should be denied due to futility, as Randolph County does not assert

any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Randolph County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Randolph County amended its complaint on March 12, 2019, after transfer to the MDL on March 24, 2018. *See Randolph County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45275-DAP, ECF No. 7. Unlike many other plaintiffs, Randolph County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Randolph County's deadline to amend was in 2019. Randolph County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Randolph County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Randolph County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Randolph County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Randolph County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Randolph County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Randolph County). That insignificant dispensing volume is much too low to support a finding of good cause for Randolph County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Randolph County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Randolph County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Randolph County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Randolph County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Randolph County's proposed RICO claim against the PBMs has expired. Randolph County filed its original complaint on March 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Randolph County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45275-DAP, ECF No. 1. It is therefore indisputable that Randolph County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Randolph County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Randolph County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Randolph County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

311. ***Person County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45276-DAP: Plaintiff Person County, North Carolina**

Person County's untimely motion for leave to amend should be denied for several reasons. Person County failed to provide notice of its proposed amendments through a proposed complaint. Person County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Person County's motion should be denied due to futility, as Person County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Person County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Person County amended its complaint on March 12, 2019, after transfer to the MDL on March 24, 2018. *See Person County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45276-DAP, ECF No. 7. Unlike many other plaintiffs, Person County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Person County's deadline to amend was in 2019. Person County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Person County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Person County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.;

and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Person County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Person County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Person County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Person County). That insignificant dispensing volume is much too low to support a finding of good cause for Person County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Person County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Person County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Person County's proposed RICO claim against the PBMs has expired. Person County filed its original complaint on March 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Person County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45276-DAP, ECF No. 1. It is therefore indisputable that Person County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Person County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Person County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Person County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

312. ***Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP: Plaintiff La Crosse County, Wisconsin**

La Crosse County's untimely motion for leave to amend should be denied for several reasons. La Crosse County failed to provide notice of its proposed amendments through a proposed complaint. La Crosse County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, La Crosse County's motion should be denied due to futility, as La Crosse County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** La Crosse County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, La Crosse County first amended its complaint on May 25, 2018. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 5. La Crosse County amended its complaint again on March 15, 2019. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 9. Unlike many other plaintiffs, La Crosse County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. La Crosse County's deadline to amend was in 2019. La Crosse County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. La Crosse County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to La Crosse County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for La Crosse County). That insignificant dispensing volume is much too low to support a finding of good cause for La Crosse County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to La Crosse County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for La Crosse County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But La Crosse County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** La Crosse County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for La Crosse County's proposed RICO claim against the PBMs has expired. La Crosse County filed its original complaint on March 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 5. It is therefore indisputable that La Crosse County knew of its RICO injury, at the very latest, the

day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. La Crosse County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. La Crosse County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** La Crosse County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 313.  *Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP: Plaintiff Lafayette County, Wisconsin

Lafayette County's untimely motion for leave to amend should be denied for several reasons. Lafayette County failed to provide notice of its proposed amendments through a proposed complaint. Lafayette County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lafayette County's motion should be denied due to futility, as Lafayette County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lafayette County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lafayette County first amended its complaint on May 25, 2018. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 5. Lafayette County

amended its complaint again on March 15, 2019. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 9. Unlike many other plaintiffs, Lafayette County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Lafayette County's deadline to amend was in 2019. Lafayette County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lafayette County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lafayette County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Lafayette County). That insignificant dispensing volume is much too low to support a finding of good cause for Lafayette County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lafayette County filed its original complaint on March 7, 2018. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 1. Despite filing its case years ago, Lafayette County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lafayette County's case would

force the parties and the Court to waste time and resources ascertaining the extent of Lafayette County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lafayette County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lafayette County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lafayette County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lafayette County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lafayette County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lafayette County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lafayette County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lafayette County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lafayette County's potential claims against them. Lafayette County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lafayette County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lafayette County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lafayette County's proposed RICO claim against the PBMs has expired. Lafayette County filed its original complaint on March 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 5. It is therefore indisputable that Lafayette County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lafayette County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lafayette County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lafayette County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 314. *Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP: Plaintiff Menominee County, Wisconsin

Menominee County's untimely motion for leave to amend should be denied for several reasons. Menominee County failed to provide notice of its proposed amendments through a proposed complaint. Menominee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Menominee County's motion should be denied due to futility, as Menominee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Menominee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Menominee County first amended its complaint on May 25, 2018. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 5. Menominee County amended its complaint again on March 15, 2019. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 9. Unlike many other plaintiffs, Menominee County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Menominee County's deadline to amend was in 2019. Menominee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Menominee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline

because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Menominee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Menominee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Menominee County filed its original complaint on March 7, 2018. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 1. Despite filing its case years ago, Menominee County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Menominee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Menominee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Menominee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Menominee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Menominee County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Menominee County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Menominee County of this deficiency on September 16, 2024 (*see* Exhibit B), but Menominee County refused to amend or supplement its Fact Sheet. Under this Court's orders, Menominee County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Menominee County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Menominee County's potential claims against them. Menominee County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Menominee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Menominee County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Menominee County's proposed RICO claim against the PBMs has expired. Menominee County filed its original complaint on March 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Barron County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45277-DAP, ECF No. 5. It is therefore indisputable that Menominee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Menominee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Menominee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Menominee County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

315. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Ashburn City, Georgia

Ashburn City's untimely motion for leave to amend should be denied for several reasons. Ashburn City failed to provide notice of its proposed amendments through a proposed complaint. Ashburn City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ashburn City's motion should be

denied due to futility, as Ashburn City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ashburn City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Ashburn City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Ashburn City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ashburn City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Ashburn City). That insignificant dispensing volume is much too low to support a finding of good cause for Ashburn City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ashburn City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit

C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ashburn City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ashburn City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Ashburn City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ashburn City's case would force the parties and the Court to waste time and resources ascertaining the extent of Ashburn City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ashburn City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ashburn City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ashburn City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ashburn City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ashburn City of this deficiency on September 16, 2024 (*see* Exhibit B), but Ashburn City refused to amend or supplement its Fact Sheet. Under this Court's orders, Ashburn City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1

(emphasis in original); *see* Section III.A.5, above. Ashburn City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ashburn City's potential claims against them. Ashburn City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ashburn City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ashburn City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Ashburn City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 316. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Calhoun City, Georgia

Calhoun City's untimely motion for leave to amend should be denied for several reasons. Calhoun City failed to provide notice of its proposed amendments through a proposed complaint.

Calhoun City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Calhoun City's motion should be denied due to futility, as Calhoun City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calhoun City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Calhoun City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Calhoun City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Calhoun City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Calhoun City). That insignificant dispensing volume is much too low to support a finding of good cause for Calhoun City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Calhoun City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Calhoun City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Calhoun City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Calhoun City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Calhoun City's case would force the parties and the Court to waste time and resources ascertaining the extent of Calhoun City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Calhoun City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Calhoun City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Calhoun City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Calhoun City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs

notified Calhoun City of this deficiency on September 16, 2024 (*see* Exhibit B), but Calhoun City refused to amend or supplement its Fact Sheet. Under this Court's orders, Calhoun City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Calhoun City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Calhoun City's potential claims against them. Calhoun City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calhoun City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Calhoun City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Calhoun City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**317.** *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Cartersville City, Georgia

Cartersville City's untimely motion for leave to amend should be denied for several reasons. Cartersville City failed to provide notice of its proposed amendments through a proposed complaint. Cartersville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cartersville City's motion should be denied due to futility, as Cartersville City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cartersville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cartersville City amended its complaint on March 15, 2019, after transfer to the MDL on March 24, 2018, as well as on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF Nos. 24, 44-1. Unlike many other plaintiffs, Cartersville City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Cartersville City's deadline to amend was in 2019. Cartersville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cartersville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cartersville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Cartersville City). That insignificant dispensing volume is much too low to support a finding of good cause for Cartersville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cartersville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cartersville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cartersville City filed its original complaint on March 2, 2018. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 1. Despite filing its case years ago, Cartersville City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Cartersville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Cartersville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cartersville City's disregard for its most basic discovery obligations as a litigant, compounded by

the delay in seeking leave to amend, and Cartersville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cartersville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cartersville City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cartersville City's proposed RICO claim against the PBMs has expired. Cartersville City filed its original complaint on March 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 1. It is therefore indisputable that Cartersville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cartersville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cartersville City's request for leave to amend to add a RICO claim should

1330

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cartersville City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 318. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Chatsworth City, Georgia

Chatsworth City's untimely motion for leave to amend should be denied for several reasons. Chatsworth City failed to provide notice of its proposed amendments through a proposed complaint. Chatsworth City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chatsworth City's motion should be denied due to futility, as Chatsworth City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chatsworth City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Chatsworth City (among others) as a plaintiff. *See id.*, ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Chatsworth City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id.*,

ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chatsworth City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Chatsworth City). That insignificant dispensing volume is much too low to support a finding of good cause for Chatsworth City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chatsworth City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chatsworth City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Chatsworth City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Chatsworth City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chatsworth City's case would force the parties and the Court to waste time and resources ascertaining the extent of Chatsworth City's document destruction and the appropriate sanctions—just as the parties were forced to do

in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chatsworth City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chatsworth City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Chatsworth City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Chatsworth City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Chatsworth City of this deficiency on September 16, 2024 (*see* Exhibit B), but Chatsworth City refused to amend or supplement its Fact Sheet. Under this Court's orders, Chatsworth City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Chatsworth City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Chatsworth City's potential claims against them. Chatsworth City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chatsworth City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chatsworth City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Chatsworth City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 319. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Chattooga County, Georgia

Chattooga County's untimely motion for leave to amend should be denied for several reasons. Chattooga County failed to provide notice of its proposed amendments through a proposed complaint. Chattooga County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chattooga County's motion should be denied due to futility, as Chattooga County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chattooga County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chattooga County amended its complaint on March 15, 2019, after transfer to the MDL on March 24, 2018, as well as on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF Nos. 24, 44-1. Unlike many other plaintiffs,

Chattooga County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Chattooga County's deadline to amend was in 2019. Chattooga County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chattooga County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chattooga County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Chattooga County). That insignificant dispensing volume is much too low to support a finding of good cause for Chattooga County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Chattooga County filed its original complaint on March 2, 2018. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 1. Despite filing its case years ago, Chattooga County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chattooga County's case would force the parties and the Court to waste time and resources ascertaining the extent of Chattooga County's document destruction and the appropriate sanctions—just as the parties were forced to

do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chattooga County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chattooga County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chattooga County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chattooga County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chattooga County's proposed RICO claim against the PBMs has expired. Chattooga County filed its original complaint on March 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 1. It is therefore indisputable that Chattooga County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Chattooga County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chattooga County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chattooga County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 320. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Colquitt County, Georgia

Colquitt County's untimely motion for leave to amend should be denied for several reasons. Colquitt County failed to provide notice of its proposed amendments through a proposed complaint. Colquitt County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Colquitt County's motion should be denied due to futility, as Colquitt County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Colquitt County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Colquitt County (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1,

above. Although Colquitt County was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id.*, ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Colquitt County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Colquitt County). That insignificant dispensing volume is much too low to support a finding of good cause for Colquitt County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Colquitt County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Colquitt County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Colquitt County filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Colquitt County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Colquitt County's case would

force the parties and the Court to waste time and resources ascertaining the extent of Colquitt County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Colquitt County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Colquitt County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Colquitt County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Colquitt County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Colquitt County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 321. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Dawsonville City, Georgia

Dawsonville City's untimely motion for leave to amend should be denied for several reasons. Dawsonville City failed to provide notice of its proposed amendments through a proposed

complaint. Dawsonville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dawsonville City's motion should be denied due to futility, as Dawsonville City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dawsonville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Dawsonville City (among others) as a plaintiff. *See id.*, ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Dawsonville City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id.*, ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dawsonville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Dawsonville City). That insignificant dispensing volume is much too low to support a finding of good cause for Dawsonville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dawsonville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dawsonville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dawsonville City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Dawsonville City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Dawsonville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Dawsonville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dawsonville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dawsonville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dawsonville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dawsonville City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Dawsonville City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

322.     *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Floyd County, Georgia

Floyd County's untimely motion for leave to amend should be denied for several reasons. Floyd County failed to provide notice of its proposed amendments through a proposed complaint. Floyd County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Floyd County's motion should be denied due to futility, as Floyd County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Floyd County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Floyd County amended its complaint on March 15, 2019, after transfer to the MDL on March 24, 2018, as well as on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF Nos. 24, 44-1. Unlike many other plaintiffs, Floyd County declined

to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Floyd County's deadline to amend was in 2019. Floyd County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Floyd County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Floyd County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Floyd County). That insignificant dispensing volume is much too low to support a finding of good cause for Floyd County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Floyd County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Floyd County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Floyd County filed its original complaint on March 2, 2018. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-

DAP, ECF No. 1. Despite filing its case years ago, Floyd County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Floyd County's case would force the parties and the Court to waste time and resources ascertaining the extent of Floyd County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Floyd County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Floyd County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Floyd County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Floyd County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Floyd County's proposed RICO claim against the PBMs has expired. Floyd County filed its original complaint on March 2,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 1. It is therefore indisputable that Floyd County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Floyd County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Floyd County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Floyd County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 323. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Gordon County, Georgia

Gordon County's untimely motion for leave to amend should be denied for several reasons. Gordon County failed to provide notice of its proposed amendments through a proposed complaint. Gordon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gordon County's motion should be denied due to futility, as Gordon County does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gordon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The

original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Gordon County (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Gordon County was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gordon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Gordon County). That insignificant dispensing volume is much too low to support a finding of good cause for Gordon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Gordon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Gordon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Gordon County filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Gordon County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Gordon County's case would force the parties and the Court to waste time and resources ascertaining the extent of Gordon County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gordon County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Gordon County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gordon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gordon County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Gordon County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 324. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Helen City, Georgia

Helen City's untimely motion for leave to amend should be denied for several reasons. Helen City failed to provide notice of its proposed amendments through a proposed complaint. Helen City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Helen City's motion should be denied due to futility, as Helen City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Helen City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Helen City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Helen City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Helen City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Helen City). That insignificant dispensing volume is much too low to support a finding of good cause for Helen City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Helen City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Helen City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Helen City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Helen City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Helen City's case would force the parties and the Court to waste time and resources ascertaining the extent of Helen City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Helen City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Helen City therefore lacks good cause for leave to amend its

complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Helen City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Helen City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Helen City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 325. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Jackson City, Georgia

Jackson City's untimely motion for leave to amend should be denied for several reasons. Jackson City failed to provide notice of its proposed amendments through a proposed complaint. Jackson City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jackson City's motion should be denied due to futility, as Jackson City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jackson City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Jackson City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Jackson City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jackson City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Jackson City). That insignificant dispensing volume is much too low to support a finding of good cause for Jackson City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jackson City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding

of good cause for Jackson City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jackson City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Jackson City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jackson City's case would force the parties and the Court to waste time and resources ascertaining the extent of Jackson City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jackson City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jackson City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Jackson City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Jackson City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Jackson City of this deficiency on September 16, 2024 (*see* Exhibit B), but Jackson City refused to amend or supplement its Fact Sheet. Under this Court's orders, Jackson City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Jackson City's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Jackson City's potential claims against them. Jackson City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jackson City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jackson City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Jackson City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 326. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Marietta City, Georgia

Marietta City's untimely motion for leave to amend should be denied for several reasons. Marietta City failed to provide notice of its proposed amendments through a proposed complaint. Marietta City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marietta City's motion should be denied due to futility, as Marietta City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marietta City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Marietta City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Marietta City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marietta City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Marietta City). That insignificant dispensing volume is much too low to support a finding of good cause for Marietta City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marietta City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marietta City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marietta City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Marietta City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marietta City's case would force the parties and the Court to waste time and resources ascertaining the extent of Marietta City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marietta City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marietta City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marietta City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marietta City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

> **327.** *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff McDonough City, Georgia

McDonough City's untimely motion for leave to amend should be denied for several reasons. McDonough City failed to provide notice of its proposed amendments through a proposed complaint. McDonough City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, McDonough City's motion should be denied due to futility, as McDonough City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** McDonough City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding McDonough City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although McDonough City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*.,

ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to McDonough City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for McDonough City). That insignificant dispensing volume is much too low to support a finding of good cause for McDonough City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to McDonough City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for McDonough City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** McDonough City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, McDonough City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating McDonough City's case would force the parties and the Court to waste time and resources ascertaining the extent of McDonough City's document destruction and the appropriate sanctions—just as the parties were forced to do

in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by McDonough City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and McDonough City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, McDonough City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to McDonough City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified McDonough City of this deficiency on September 16, 2024 (*see* Exhibit B), but McDonough City refused to amend or supplement its Fact Sheet. Under this Court's orders, McDonough City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. McDonough City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against McDonough City's potential claims against them. McDonough City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But McDonough City's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** McDonough City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** McDonough City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 328. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Moultrie City, Georgia

Moultrie City's untimely motion for leave to amend should be denied for several reasons. Moultrie City failed to provide notice of its proposed amendments through a proposed complaint. Moultrie City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Moultrie City's motion should be denied due to futility, as Moultrie City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Moultrie City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 24. The original

plaintiffs amended their complaint again on September 14, 2021, adding Moultrie City (among others) as a plaintiff. *See id.*, ECF No. 44-1. Unlike many other plaintiffs, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Moultrie City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id.*, ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Moultrie City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Moultrie City). That insignificant dispensing volume is much too low to support a finding of good cause for Moultrie City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Moultrie City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Moultrie City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Moultrie City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Moultrie City *never* implemented a

litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Moultrie City's case would force the parties and the Court to waste time and resources ascertaining the extent of Moultrie City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Moultrie City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Moultrie City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Moultrie City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Moultrie City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Moultrie City of this deficiency on September 16, 2024 (*see* Exhibit B), but Moultrie City refused to amend or supplement its Fact Sheet. Under this Court's orders, Moultrie City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Moultrie City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Moultrie City's potential claims against them. Moultrie City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Moultrie City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Moultrie City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Moultrie City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 329. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Murray County, Georgia

Murray County's untimely motion for leave to amend should be denied for several reasons. Murray County failed to provide notice of its proposed amendments through a proposed complaint. Murray County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Murray County's motion should be denied due to futility, as Murray County does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Murray County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Murray County (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Murray County was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Murray County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Murray County). That insignificant dispensing volume is much too low to support a finding of good cause for Murray County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Murray County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support

1363

a finding of good cause for Murray County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Murray County filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Murray County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Murray County's case would force the parties and the Court to waste time and resources ascertaining the extent of Murray County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Murray County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Murray County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Murray County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Murray County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Murray County seeks leave to amend to add claims against the PBMs in two cases: *City of Rome, et al. v. Purdue Pharma L.P., et al.*, No. 1:19-op-45282-DAP; and *Langford v. Purdue Pharma, L.P. et al.*, No. 1:19-op-45164-DAP. Murray County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff Lacks Standing.** Murray County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 330. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Ringgold City, Georgia

Ringgold City's untimely motion for leave to amend should be denied for several reasons. Ringgold City failed to provide notice of its proposed amendments through a proposed complaint. Ringgold City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ringgold City's motion should be denied due to futility, as Ringgold City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ringgold City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Ringgold City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Ringgold City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ringgold City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Ringgold City). That insignificant dispensing volume is much too low to support a finding of good cause for Ringgold City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ringgold City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Ringgold City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ringgold City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Ringgold City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ringgold City's case would force the parties and the Court to waste time and resources ascertaining the extent of Ringgold City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ringgold City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ringgold City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ringgold City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ringgold City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ringgold City of this deficiency on September 16, 2024 (*see* Exhibit B), but Ringgold City refused to amend or supplement its Fact Sheet. Under this Court's orders, Ringgold City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ringgold City's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Ringgold City's potential claims against them. Ringgold City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ringgold City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ringgold City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Ringgold City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

331.   ***City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Rome City, Georgia**

Rome City's untimely motion for leave to amend should be denied for several reasons. Rome City failed to provide notice of its proposed amendments through a proposed complaint. Rome City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rome City's motion should be denied due to futility, as Rome City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rome City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rome City amended its complaint on March 15, 2019, after transfer to the MDL on March 24, 2018, as well as on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF Nos. 24, 44-1. Unlike many other plaintiffs, Rome City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Rome City's deadline to amend was in 2019. Rome City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rome City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rome City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Rome City). That insignificant dispensing volume is much too low to support a finding of good cause for Rome City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rome City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rome City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Rome City filed its original complaint on March 2, 2018. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 1. Despite filing its case years ago, Rome City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Rome City's case would force the parties and the Court to waste time and resources ascertaining the extent of Rome City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rome City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rome City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rome City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rome City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rome City's proposed RICO claim against the PBMs has expired. Rome City filed its original complaint on March 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 1. It is therefore indisputable that Rome City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Rome City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rome City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rome City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 332. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Snellville City, Georgia

Snellville City's untimely motion for leave to amend should be denied for several reasons. Snellville City failed to provide notice of its proposed amendments through a proposed complaint.

Snellville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Snellville City's motion should be denied due to futility, as Snellville City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Snellville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Snellville City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Snellville City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Snellville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Snellville City). That insignificant dispensing volume is much too low to support a finding of good cause for Snellville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Snellville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Snellville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Snellville City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Snellville City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Snellville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Snellville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Snellville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Snellville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Snellville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Snellville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs

1373

notified Snellville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Snellville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Snellville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Snellville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Snellville City's potential claims against them. Snellville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Snellville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Snellville City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Snellville City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**333.** *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Telfair County, Georgia

Telfair County's untimely motion for leave to amend should be denied for several reasons. Telfair County failed to provide notice of its proposed amendments through a proposed complaint. Telfair County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Telfair County's motion should be denied due to futility, as Telfair County does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Telfair County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Telfair County (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Telfair County was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Telfair County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the

case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Telfair County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Telfair County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Telfair County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Telfair County filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Telfair County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Telfair County's case would force the parties and the Court to waste time and resources ascertaining the extent of Telfair County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Telfair County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Telfair County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Telfair County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Telfair County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Telfair County seeks leave to amend to add claims against the PBMs in two cases: *City of Rome, et al. v. Purdue Pharma L.P., et al.*, No. 1:18-op-45282-DAP; and *Steverson v. Purdue Pharma L.P., et al.*, No. 1:19-op-45313-DAP. Telfair County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff Lacks Standing.** Telfair County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**334.** *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Valdosta City, Georgia

Valdosta City's untimely motion for leave to amend should be denied for several reasons. Valdosta City failed to provide notice of its proposed amendments through a proposed complaint. Valdosta City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Valdosta City's motion should be denied due to futility, as Valdosta City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Valdosta City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Valdosta City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Valdosta City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Valdosta City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Valdosta City). That insignificant dispensing volume is much too

low to support a finding of good cause for Valdosta City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Valdosta City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Valdosta City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Valdosta City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Valdosta City of the PBM services Express Scripts provides and Valdosta City began receiving those services on July 1, 2011. *See id.* Inasmuch as Valdosta City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Valdosta City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Valdosta City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Valdosta City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Valdosta City *never* implemented a

1379

litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Valdosta City's case would force the parties and the Court to waste time and resources ascertaining the extent of Valdosta City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Valdosta City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Valdosta City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Valdosta City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Valdosta City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Valdosta City of this deficiency on September 16, 2024 (*see* Exhibit B), but Valdosta City refused to amend or supplement its Fact Sheet. Under this Court's orders, Valdosta City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Valdosta City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Valdosta City's potential claims against them. Valdosta City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Valdosta City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Valdosta City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Valdosta City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 335. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Villa Rica City, Georgia

Villa Rica City's untimely motion for leave to amend should be denied for several reasons. Villa Rica City failed to provide notice of its proposed amendments through a proposed complaint. Villa Rica City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Villa Rica City's motion should be denied due to futility, as Villa Rica City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Villa Rica City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Villa Rica City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Villa Rica City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Villa Rica City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Villa Rica City). That insignificant dispensing volume is much too low to support a finding of good cause for Villa Rica City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Villa Rica City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Villa Rica City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Villa Rica City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Villa Rica City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Villa Rica City's case would force the parties and the Court to waste time and resources ascertaining the extent of Villa Rica City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Villa Rica City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Villa Rica City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Villa Rica City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Villa Rica City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Villa Rica City of this deficiency on September 16, 2024 (*see* Exhibit B), but Villa Rica City refused to amend or supplement its Fact Sheet. Under this Court's orders, Villa Rica City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Villa Rica City's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Villa Rica City's potential claims against them. Villa Rica City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Villa Rica City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Villa Rica City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Villa Rica City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

336. ***City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Whitfield County, Georgia**

Whitfield County's untimely motion for leave to amend should be denied for several reasons. Whitfield County failed to provide notice of its proposed amendments through a proposed complaint. Whitfield County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Whitfield County's motion should be denied due to futility, as Whitfield County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Whitfield County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

**Lack of Diligence.** Whitfield County amended its complaint on March 15, 2019, after transfer to the MDL on March 24, 2018, as well as on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF Nos. 24, 44-1. Unlike many other plaintiffs, Whitfield County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Whitfield County's deadline to amend was in 2019. Whitfield County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Whitfield County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Whitfield County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Whitfield County). That insignificant dispensing volume is much too low to support a finding of good cause for Whitfield County to add dispensing claims

against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Whitfield County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Whitfield County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Whitfield County filed its original complaint on March 2, 2018. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 1. Despite filing its case years ago, Whitfield County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Whitfield County's case would force the parties and the Court to waste time and resources ascertaining the extent of Whitfield County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Whitfield County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Whitfield County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Whitfield County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Whitfield County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Whitfield County's proposed RICO claim against the PBMs has expired. Whitfield County filed its original complaint on March 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 1. It is therefore indisputable that Whitfield County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Whitfield County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Whitfield County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Whitfield County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 337. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Winder City, Georgia

Winder City's untimely motion for leave to amend should be denied for several reasons. Winder City failed to provide notice of its proposed amendments through a proposed complaint. Winder City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winder City's motion should be denied due to futility, as Winder City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winder City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Winder City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Winder City was not formally a plaintiff at the time of the first amended complaint, it was "represented by counsel and participating at the time of the original filing," *id*., ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Winder City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Winder City). That insignificant dispensing volume is much too low to support a finding of good cause for Winder City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Winder City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Winder City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Winder City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Winder City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Winder City's case would force the parties and the Court to waste time and resources ascertaining the extent of Winder City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Winder City's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Winder City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Winder City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Winder City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Winder City of this deficiency on September 16, 2024 (*see* Exhibit B), but Winder City refused to amend or supplement its Fact Sheet. Under this Court's orders, Winder City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Winder City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Winder City's potential claims against them. Winder City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winder City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winder City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Winder City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 338. *City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP: Plaintiff Woodstock City, Georgia

Woodstock City's untimely motion for leave to amend should be denied for several reasons. Woodstock City failed to provide notice of its proposed amendments through a proposed complaint. Woodstock City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Woodstock City's motion should be denied due to futility, as Woodstock City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Woodstock City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. The original plaintiffs in *City of Rome* first amended their complaint on March 15, 2019. S*ee City of Rome et al. v. Purdue Pharma L.P. et al*., Case No. 1:18-op-45282-DAP, ECF No. 24. The original plaintiffs amended their complaint again on September 14, 2021, adding Woodstock City (among others) as a plaintiff. *See id*., ECF No. 44-1. Unlike many other plaintiffs, above, the original plaintiffs declined to add claims against the PBMs in their amended complaints. *See* Section II.A.1, above. Although Woodstock City was not formally a plaintiff at the time of the first amended

complaint, it was "represented by counsel and participating at the time of the original filing," *id.*, ECF No. 44, so the failure to add claims against the PBMs at the time of the first amended complaint demonstrates its own lack of diligence.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Woodstock City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Woodstock City). That insignificant dispensing volume is much too low to support a finding of good cause for Woodstock City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Woodstock City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Woodstock City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Woodstock City filed its original complaint on September 14, 2021. *See City of Rome et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45282-DAP, ECF No. 44-1. Despite filing its case years ago, Woodstock City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Woodstock City's case would force the parties and the Court to waste time and resources ascertaining the extent of Woodstock

City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Woodstock City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Woodstock City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Woodstock City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Woodstock City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Woodstock City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

339. ***Bacon County Hospital Foundation, Inc. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45285-DAP: Plaintiff Bacon County (GA) Hospital Authority, Georgia**

Bacon County (GA) Hospital Authority's untimely motion for leave to amend should be denied for several reasons. Bacon County (GA) Hospital Authority failed to provide notice of its proposed amendments through a proposed complaint. Bacon County (GA) Hospital Authority also

lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Bacon County (GA) Hospital Authority's motion should be denied due to futility, as Bacon County (GA) Hospital Authority does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bacon County (GA) Hospital Authority was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bacon County (GA) Hospital Authority filed its original complaint on March 9, 2018 and the case was transferred to the MDL on March 27, 2018. *See Bacon County Hospital Foundation, Inc. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45285-DAP, ECF No. 4. Bacon County (GA) Hospital Authority could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bacon County (GA) Hospital Authority elected not to do so. Instead, Bacon County (GA) Hospital Authority waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bacon County (GA) Hospital Authority's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bacon County (GA) Hospital Authority's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise

those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bacon County (GA) Hospital Authority, a hospital in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff is Not a Party.** Bacon County (GA) Hospital Authority seeks leave to amend the complaint in *Bacon County Hospital Foundation, Inc. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45285-DAP, but Bacon County (GA) Hospital Authority is not a named plaintiff in that case. Because Bacon County (GA) Hospital Authority has not submitted any proposed complaint and is not a plaintiff in the existing case, Bacon County (GA) Hospital Authority has not pleaded any facts establishing injury to Bacon County (GA) Hospital Authority and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co. v. Gavronsky*, 2016 WL 7365093, at *2 (S.D. Ohio Dec. 19, 2016), *report and recommendation adopted*, 2017 WL 999247 (S.D. Ohio Mar. 15, 2017) (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**RICO Statute of Limitations.** The statute of limitations for Bacon County (GA) Hospital Authority's proposed RICO claim against the PBMs has expired. Bacon County (GA) Hospital Authority filed its original complaint on March 9, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Bacon County Hospital Foundation, Inc. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45285-DAP, ECF No. 1. Even assuming *arguendo* that Bacon County (GA) Hospital Authority first learned of

its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 9, 2022. Bacon County (GA) Hospital Authority's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bacon County (GA) Hospital Authority's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bacon County (GA) Hospital Authority, a hospital in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 340. *Crawford County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45288-DAP: Plaintiff Crawford County, Ohio

Crawford County's untimely motion for leave to amend should be denied for several reasons. Crawford County failed to provide notice of its proposed amendments through a proposed complaint. Crawford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Crawford County's motion should be denied due to futility, as Crawford County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Crawford County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Crawford County amended its complaint on March 12, 2019, after directly filing in the MDL. *See Crawford County Board of County Commissioners v. AmerisourceBergen Drug*

*Corporation et al.*, Case No. 1:18-op-45288-DAP, ECF No. 29. Unlike many other plaintiffs, Crawford County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Crawford County's deadline to amend was in 2019. Crawford County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Crawford County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Crawford County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Crawford County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Crawford County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Crawford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Crawford County). That insignificant dispensing volume is much too low to support a finding of good cause for Crawford County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Crawford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Crawford County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Crawford County is a plaintiff in Ohio. Crawford County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Crawford County's proposed RICO claim against the PBMs has expired. Crawford County filed its original complaint on March

15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Crawford County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45288-DAP, ECF No. 1. It is therefore indisputable that Crawford County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Crawford County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Crawford County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Crawford County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 341. *Columbiana County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45289-DAP: Plaintiff Columbiana County, Ohio

Columbiana County's untimely motion for leave to amend should be denied for several reasons. Columbiana County failed to provide notice of its proposed amendments through a proposed complaint. Columbiana County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Columbiana County's motion should be denied due to futility, as Columbiana County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Columbiana County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Columbiana County amended its complaint on March 13, 2019, after directly filing in the MDL. *See Columbiana County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45289-DAP, ECF No. 28. Unlike many other plaintiffs, Columbiana County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Columbiana County's deadline to amend was in 2019. Columbiana County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Columbiana County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Columbiana County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Columbiana County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Columbiana County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Columbiana County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Columbiana County). That insignificant dispensing volume is much too low to support a finding of good cause for Columbiana County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Columbiana County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Columbiana County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Columbiana County is a plaintiff in Ohio. Columbiana County's request for leave to add the PBMs as defendants to a public nuisance claim

should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Columbiana County's proposed RICO claim against the PBMs has expired. Columbiana County filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Columbiana County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45289-DAP, ECF No. 1. It is therefore indisputable that Columbiana County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Columbiana County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Columbiana County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Columbiana County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **342.** ***Seneca County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45290-DAP: Plaintiff Seneca County, Ohio**

Seneca County's untimely motion for leave to amend should be denied for several reasons. Seneca County failed to provide notice of its proposed amendments through a proposed complaint. Seneca County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and

because its untimely motion would unduly prejudice the PBMs. Moreover, Seneca County's motion should be denied due to futility, as Seneca County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Seneca County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Seneca County amended its complaint on March 14, 2019, after directly filing in the MDL. *See Seneca County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45290-DAP, ECF No. 28. Unlike many other plaintiffs, Seneca County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Seneca County's deadline to amend was in 2019. Seneca County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Seneca County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Seneca County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Seneca County, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Seneca County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Seneca County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Seneca County). That insignificant dispensing volume is much too low to support a finding of good cause for Seneca County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Seneca County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Seneca County of the PBM services Express Scripts provides and Seneca County began receiving those services on December 1, 2008. *See id.* Inasmuch as Seneca County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Seneca County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Seneca

County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Seneca County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Seneca County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Seneca County is a plaintiff in Ohio. Seneca County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Seneca County's proposed RICO claim against the PBMs has expired. Seneca County filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Seneca County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45290-DAP, ECF No. 1. It is therefore indisputable that Seneca County

knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Seneca County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Seneca County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Seneca County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **343.** ***Erie County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45291-DAP: Plaintiff Erie County, Ohio**

Erie County's untimely motion for leave to amend should be denied for several reasons. Erie County failed to provide notice of its proposed amendments through a proposed complaint. Erie County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Erie County's motion should be denied due to futility, as Erie County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Erie County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Erie County amended its complaint on March 13, 2019, after directly filing in the MDL. *See Erie County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No.

1:18-op-45291-DAP, ECF No. 29. Unlike many other plaintiffs, Erie County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Erie County's deadline to amend was in 2019. Erie County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Erie County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Erie County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Erie County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Erie County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Erie County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Erie County). That insignificant dispensing volume is much too low to support a finding of good cause for Erie County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Erie County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Erie County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Erie County is a plaintiff in Ohio. Erie County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Erie County's proposed RICO claim against the PBMs has expired. Erie County filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Erie*

*County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45291-DAP, ECF No. 1. It is therefore indisputable that Erie County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Erie County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Erie County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Erie County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 344. *Huron County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45292-DAP: Plaintiff Huron County, Ohio

Huron County's untimely motion for leave to amend should be denied for several reasons. Huron County failed to provide notice of its proposed amendments through a proposed complaint. Huron County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Huron County's motion should be denied due to futility, as Huron County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Huron County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Huron County amended its complaint on March 6, 2019, after directly filing in the MDL. *See Huron County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45292-DAP, ECF No. 28. Unlike many other plaintiffs, Huron County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Huron County's deadline to amend was in 2019. Huron County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Huron County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Huron County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Huron County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Huron County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Huron County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Huron County). That insignificant dispensing volume is much too low to support a finding of good cause for Huron County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Huron County filed its original complaint on March 15, 2018. *See Huron County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45292-DAP, ECF No. 1. Despite filing its case years ago, Huron County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Huron County's case would force the parties and the Court to waste time and resources ascertaining the extent of Huron County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Huron County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Huron County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

1411

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Huron County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Huron County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Huron County's proposed RICO claim against the PBMs has expired. Huron County filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Huron County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45292-DAP, ECF No. 1. It is therefore indisputable that Huron County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Huron County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Huron County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Huron County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 345. *Hawkins County, TN v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45299-DAP: Plaintiff Hawkins County, Tennessee

Hawkins County's untimely motion for leave to amend should be denied for several reasons. Hawkins County failed to provide notice of its proposed amendments through a proposed complaint. Hawkins County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hawkins County's motion should be denied due to futility, as Hawkins County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hawkins County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hawkins County amended its complaint on March 11, 2019, after transfer to the MDL on March 27, 2018. *See Hawkins County, TN v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45299-DAP, ECF No. 9. Unlike many other plaintiffs, Hawkins County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hawkins County's deadline to amend was in 2019. Hawkins County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hawkins County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hawkins County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hawkins County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hawkins County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hawkins County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Hawkins County). That insignificant dispensing volume is much too low to support a finding of good cause for Hawkins County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hawkins County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hawkins County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hawkins County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hawkins County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hawkins County's proposed RICO claim against the PBMs has expired. Hawkins County filed its original complaint on March 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hawkins County, TN v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45299-DAP, ECF No. 1. It is therefore indisputable that Hawkins County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hawkins County's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hawkins County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hawkins County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 346. *County of Camp v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45301-DAP: Plaintiff Camp County, Texas

Camp County's untimely motion for leave to amend should be denied for several reasons. Camp County failed to provide notice of its proposed amendments through a proposed complaint. Camp County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Camp County's motion should be denied due to futility, as Camp County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Camp County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Camp County amended its complaint on March 14, 2019, after transfer to the MDL on March 27, 2018. *See County of Camp v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45301-DAP, ECF No. 13. Unlike many other plaintiffs, Camp County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Camp County's deadline to amend was in 2019.

Camp County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Camp County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Camp County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Camp County). That insignificant dispensing volume is much too low to support a finding of good cause for Camp County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Camp County filed its original complaint on January 5, 2018. *See County of Camp v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45301-DAP, ECF No. 1. Despite filing its case years ago, Camp County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Camp County's case would force the parties and the Court to waste time and resources ascertaining the extent of Camp County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Camp County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Camp County therefore lacks good cause for leave to amend its

complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Camp County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Camp County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Camp County of this deficiency on September 16, 2024 (*see* Exhibit B), but Camp County refused to amend or supplement its Fact Sheet. Under this Court's orders, Camp County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Camp County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Camp County's potential claims against them. Camp County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Camp County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Camp County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Camp County's proposed RICO claim against the PBMs has expired. Camp County filed its original complaint on January 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Camp v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45301-DAP, ECF No. 1. It is therefore indisputable that Camp County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Camp County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Camp County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Camp County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

347. *County of Franklin v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45302-DAP: Plaintiff Franklin County, Texas**

Franklin County's untimely motion for leave to amend should be denied for several reasons. Franklin County failed to provide notice of its proposed amendments through a proposed complaint. Franklin County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin County's motion should be denied due to futility, as Franklin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Franklin County amended its complaint on March 14, 2019, after transfer to the MDL on March 27, 2018. *See County of Franklin v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45302-DAP, ECF No. 12. Unlike many other plaintiffs, Franklin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Franklin County's deadline to amend was in 2019. Franklin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Franklin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Franklin County). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Franklin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Franklin County filed its original complaint on January 5, 2018. *See County of Franklin v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45302-DAP, ECF No. 1. Despite filing its case years ago, Franklin County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Franklin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Franklin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Franklin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Franklin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin County's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin County's proposed RICO claim against the PBMs has expired. Franklin County filed its original complaint on January 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Franklin v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45302-DAP, ECF No. 1. It is therefore indisputable that Franklin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Franklin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Franklin County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**348.** ***Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP: Plaintiff Des Moines County, Iowa**

Des Moines County's untimely motion for leave to amend should be denied for several reasons. Des Moines County failed to provide notice of its proposed amendments through a proposed complaint. Des Moines County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Des Moines County's motion should be denied due to futility, as Des Moines County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Des Moines County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Des Moines County first amended its complaint on May 25, 2018. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 7. Des Moines County amended its complaint again on March 15, 2019. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 10. Unlike many other plaintiffs, Des Moines County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Des Moines County's deadline to amend was in 2019. Des Moines County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Des Moines County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Des Moines County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Des Moines County). That insignificant dispensing volume is much too low to support a finding of good cause for Des Moines County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Des Moines County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Des Moines County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Des Moines County's proposed RICO claim against the PBMs has expired. Des Moines County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 7. It is therefore indisputable that Des Moines County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before

seeking leave to amend. Des Moines County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Des Moines County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Des Moines County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 349. *Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP: Plaintiff Harrison County, Iowa

Harrison County's untimely motion for leave to amend should be denied for several reasons. Harrison County failed to provide notice of its proposed amendments through a proposed complaint. Harrison County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Harrison County's motion should be denied due to futility, as Harrison County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Harrison County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Harrison County first amended its complaint on May 25, 2018. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 7. Harrison County amended its complaint again on March 15, 2019. *See Black Hawk County et al. v. Purdue Pharma LP et al.*,

Case No. 1:18-op-45303-DAP, ECF No. 10. Unlike many other plaintiffs, Harrison County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Harrison County's deadline to amend was in 2019. Harrison County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Harrison County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Harrison County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.22% market share for Harrison County). That insignificant dispensing volume is much too low to support a finding of good cause for Harrison County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Harrison County filed its original complaint on March 8, 2018, but waited until August 17, 2018 to implement a litigation hold. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 17, 2018). Harrison County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because

the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Harrison County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Harrison County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Harrison County's proposed RICO claim against the PBMs has expired. Harrison County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 7. It is therefore indisputable that Harrison County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Harrison County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Harrison County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Harrison County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **350.** ***Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP: Plaintiff Lyon County, Iowa**

Lyon County's untimely motion for leave to amend should be denied for several reasons. Lyon County failed to provide notice of its proposed amendments through a proposed complaint. Lyon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lyon County's motion should be denied due to futility, as Lyon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lyon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lyon County first amended its complaint on May 25, 2018. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 7. Lyon County amended its complaint again on March 15, 2019. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 10. Unlike many other plaintiffs, Lyon County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Lyon County's deadline to amend was in 2019. Lyon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lyon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lyon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Lyon County). That insignificant dispensing volume is much too low to support a finding of good cause for Lyon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lyon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28,

**Failure to State a Claim.** Lyon County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lyon County's proposed RICO claim against the PBMs has expired. Lyon County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 7. It is therefore indisputable that Lyon County knew of its RICO injury, at the very latest, the

day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lyon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lyon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lyon County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 351. *Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP: Plaintiff Tama County, Iowa

Tama County's untimely motion for leave to amend should be denied for several reasons. Tama County failed to provide notice of its proposed amendments through a proposed complaint. Tama County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Tama County's motion should be denied due to futility, as Tama County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tama County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tama County first amended its complaint on May 25, 2018. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 7. Tama County amended its complaint again on March 15, 2019. *See Black Hawk County et al. v. Purdue Pharma LP et al.*,

Case No. 1:18-op-45303-DAP, ECF No. 10. Unlike many other plaintiffs, Tama County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Tama County's deadline to amend was in 2019. Tama County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tama County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tama County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Tama County). That insignificant dispensing volume is much too low to support a finding of good cause for Tama County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tama County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tama County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tama County's proposed RICO claim against the PBMs has expired. Tama County filed its first amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Black Hawk County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45303-DAP, ECF No. 7. It is therefore indisputable that Tama County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tama County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tama County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tama County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

352. *City of Richmond Hill, Georgia v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45305-DAP: Plaintiff Richmond Hill City, Georgia**

Richmond Hill City's untimely motion for leave to amend should be denied for several reasons. Richmond Hill City failed to provide notice of its proposed amendments through a proposed complaint. Richmond Hill City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Richmond Hill City's motion should be denied due to futility, as Richmond Hill City does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Richmond Hill City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Richmond Hill City filed its original complaint on March 9, 2018 and the case was transferred to the MDL on March 28, 2018. *See City of Richmond Hill, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45305-DAP, ECF No. 4. Richmond Hill City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Richmond Hill City elected not to do so. Instead, Richmond Hill City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Richmond Hill City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Richmond Hill City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Richmond Hill City). That insignificant dispensing volume is much too low to support a finding of good cause for Richmond Hill City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Richmond Hill City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Richmond Hill City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Richmond Hill City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Richmond Hill City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Richmond Hill City's proposed RICO claim against the PBMs has expired. Richmond Hill City filed its original complaint on March 9, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Richmond Hill, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45305-DAP, ECF No. 1. Even assuming *arguendo* that Richmond Hill City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 9, 2022. Richmond Hill City's

RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Richmond Hill City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Richmond Hill City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 353. *Orange County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45308-DAP: Plaintiff Orange County, North Carolina

Orange County's untimely motion for leave to amend should be denied for several reasons. Orange County failed to provide notice of its proposed amendments through a proposed complaint. Orange County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Orange County's motion should be denied due to futility, as Orange County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Orange County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Orange County amended its complaint on March 15, 2019, after transfer to the MDL on March 30, 2018. *See Orange County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45308-DAP, ECF No. 7. Unlike many other plaintiffs, Orange County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Orange County's deadline to amend was in 2019. Orange County waited five years after its deadline to amend to seek leave

to assert claims against the PBMs. Orange County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Orange County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Orange County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Orange County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Orange County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Orange County). That insignificant dispensing volume is much too low to support a finding of good cause for Orange County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Orange County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Orange County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Orange County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Orange County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Orange County's proposed RICO claim against the PBMs has expired. Orange County filed its original complaint on March 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Orange County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45308-DAP, ECF No. 1. It is therefore indisputable that Orange County knew of its RICO injury, at the

very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Orange County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Orange County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Orange County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 354. *City of Rockford v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45309-DAP: Plaintiff Rockford City, Illinois

Rockford City's untimely motion for leave to amend should be denied for several reasons. Rockford City failed to provide notice of its proposed amendments through a proposed complaint. Rockford City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rockford City's motion should be denied due to futility, as Rockford City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rockford City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rockford City amended its complaint on March 6, 2019, after transfer to the MDL on March 30, 2018. *See City of Rockford v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45309-DAP, ECF No. 11. Unlike many other plaintiffs, Rockford City declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Rockford City's deadline to amend was in 2019. Rockford City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rockford City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rockford City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Rockford City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Rockford City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rockford City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.04% market share for Rockford City). That insignificant dispensing volume is much too low to support a finding of good cause for Rockford City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rockford City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rockford City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Rockford City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Rockford City of the PBM services Express Scripts provides and Rockford City began receiving those services on January 2, 2012. *See id.* Inasmuch as Rockford City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Rockford City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Rockford City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Rockford City filed its original complaint on March 12, 2018. *See City of Rockford v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45309-DAP, ECF No. 1. Despite filing its case years ago, Rockford City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Rockford City's case would force the parties and the Court to waste time and resources ascertaining the extent of Rockford City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rockford City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rockford City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rockford City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rockford City, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rockford City's proposed RICO claim against the PBMs has expired. Rockford City filed its original complaint on March 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Rockford v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45309-DAP, ECF No. 1. It is therefore indisputable that Rockford City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Rockford City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rockford City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rockford City, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

355. ***People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45310-DAP: Plaintiff Winnebago County, Illinois**

Winnebago County's untimely motion for leave to amend should be denied for several reasons. Winnebago County failed to provide notice of its proposed amendments through a proposed complaint. Winnebago County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winnebago County's motion should be denied due to futility, as Winnebago County does not assert any allegations tying the PBMs to its alleged

harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winnebago County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Winnebago County amended its complaint on March 9, 2019, after transfer to the MDL on March 30, 2018. *See People Of The State Of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45310-DAP, ECF No. 11. Unlike many other plaintiffs, Winnebago County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Winnebago County's deadline to amend was in 2019. Winnebago County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Winnebago County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Winnebago County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Winnebago County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Winnebago County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Winnebago County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Winnebago County). That insignificant dispensing volume is much too low to support a finding of good cause for Winnebago County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Winnebago County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Winnebago County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Winnebago County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit E. That contract notified Winnebago County of the PBM services Express Scripts provides and Winnebago County began receiving those services on

January 3, 2012. *See id.* Inasmuch as Winnebago County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Winnebago County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Winnebago County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

Winnebago County's agreement with Express Scripts, Inc., also includes a mandatory mediation provision. *See* Achter Decl., ¶ 18, Exhibit E. This provision requires that all claims arising from the agreement or relating to the performance or interpretation of the agreement be mediated (or proceed through other informal dispute resolution procedures) *before* any party may commence arbitration or litigation. *Id.* This provision thus forecloses Winnebago County from seeking redress against Express Scripts, Inc., in the MDL.

The contractual obligation to mediate claims prior to filing suit is binding and courts routinely hold parties to such agreements. *See CJ Consultants, LLC v. Window World, Inc.*, 2022 WL 4354265, at *7 (W.D. Mich. Sept. 20, 2022) (granting defendant's motion to dismiss complaint in order to enforce the informal resolution/mediation procedures in the parties' contract); *see also Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 894 (M.D. Tenn. 2003) ("[F]ederal policy favors arbitration in a broad sense, and mediation surely falls under the preference for non-judicial dispute resolution. Thus, agreements like [the one at issue] are to be encouraged. Accordingly, the court finds that plaintiff['s] agreement to mediate any claim before filing it in court is binding under the FAA."). Because Winnebago County entered into an agreement to

mediate or pursue other dispute resolution prior to bringing suit against Express Scripts, Inc., its proposed claims should not proceed in this Court. Winnebago County's motion for leave to add claims against Express Scripts, Inc., must therefore be denied as futile.

**Failure to Timely Implement a Litigation Hold.** Winnebago County violated its basic duty to implement a timely litigation hold. Winnebago County filed its original complaint on March 13, 2018, but waited until January 13, 2020 to implement a litigation hold—nearly two years later. *See People Of The State Of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45310-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 13, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Winnebago County's case would force the parties and the Court to waste time and resources ascertaining the extent of Winnebago County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Winnebago County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Winnebago County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winnebago County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winnebago County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winnebago County's proposed RICO claim against the PBMs has expired. Winnebago County filed its original complaint on March 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People Of The State Of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45310-DAP, ECF No. 1. It is therefore indisputable that Winnebago County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Winnebago County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winnebago County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Winnebago County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

356. ***Athens County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45326-DAP: Plaintiff Athens County, Ohio**

Athens County's untimely motion for leave to amend should be denied for several reasons. Athens County failed to provide notice of its proposed amendments through a proposed complaint. Athens County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Athens County's motion should be denied due to futility, as Athens County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Athens County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Athens County amended its complaint on March 14, 2019, after transfer to the MDL on March 30, 2018. *See Athens County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45326-DAP, ECF No. 23. Unlike many other plaintiffs, Athens County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Athens County's deadline to amend was in 2019. Athens County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Athens County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Athens County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Athens County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Athens County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Athens County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Athens County). That insignificant dispensing volume is much too low to support a finding of good cause for Athens County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Athens County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Athens County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Athens County is a plaintiff in Ohio. Athens County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Athens County's proposed RICO claim against the PBMs has expired. Athens County filed its original complaint on March 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Athens County Board of Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45326-DAP, ECF No. 1. It is therefore indisputable that Athens County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Athens County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Athens County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Athens County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 357. *Limestone County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45328-DAP: Plaintiff Limestone County, Alabama

Limestone County's untimely motion for leave to amend should be denied for several reasons. Limestone County failed to provide notice of its proposed amendments through a proposed complaint. Limestone County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Limestone County's motion should be denied due to futility, as Limestone County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Limestone County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Limestone County filed its original complaint on March 14, 2018 and the case was transferred to the MDL on March 30, 2018. *See Limestone County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45328-DAP, ECF No. 9. Limestone County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Limestone County elected not to do so. Instead, Limestone County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Limestone County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Limestone County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Limestone County). That insignificant dispensing volume is much too low to support a finding of good cause for Limestone County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Limestone County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Limestone County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Limestone County filed its original complaint on March 14, 2018. *See Limestone County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45328-DAP, ECF No. 1. Despite filing its case years ago, Limestone County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Limestone County's case would force the parties and the Court to waste time and resources ascertaining the extent of Limestone County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The

PBMs are prejudiced by Limestone County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Limestone County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Limestone County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Limestone County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Limestone County's proposed RICO claim against the PBMs has expired. Limestone County filed its original complaint on March 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Limestone County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45328-DAP, ECF No. 1. It is therefore indisputable that Limestone County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Limestone County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Limestone County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Limestone County's public-nuisance claim against the PBMs is therefore time-barred because Limestone County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 14, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Limestone County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Limestone County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 358. *City of Anniston Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45329-DAP: Plaintiff Anniston City, Alabama

Anniston City's untimely motion for leave to amend should be denied for several reasons. Anniston City failed to provide notice of its proposed amendments through a proposed complaint. Anniston City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Anniston City's motion should be denied due to futility, as Anniston City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Anniston City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Anniston City filed its original complaint on March 14, 2018 and the case was transferred to the MDL on March 30, 2018. *See City of Anniston Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45329-DAP, ECF No. 10. Anniston City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Anniston City elected not to do so. Instead, Anniston City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Anniston City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Anniston City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Anniston City). That insignificant dispensing volume is much too low to support a finding of good cause for Anniston City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Anniston City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Anniston City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Anniston City filed its original complaint on March 14, 2018. *See City of Anniston Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45329-DAP, ECF No. 1. Despite filing its case years ago, Anniston City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Anniston City's case would force the parties and the Court to waste time and resources ascertaining the extent of Anniston City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Anniston City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Anniston City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Anniston City's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Anniston City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Anniston City's proposed RICO claim against the PBMs has expired. Anniston City filed its original complaint on March 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Anniston Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45329-DAP, ECF No. 1. It is therefore indisputable that Anniston City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Anniston City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Anniston City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Anniston City's public-nuisance claim against the PBMs is therefore time-barred because Anniston City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 14, 2018—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Anniston City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 359. *City of Broadview Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45330-DAP: Plaintiff Broadview Heights City, Ohio

Broadview Heights City's untimely motion for leave to amend should be denied for several reasons. Broadview Heights City failed to provide notice of its proposed amendments through a proposed complaint. Broadview Heights City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Broadview Heights City's motion should be denied due to futility, as Broadview Heights City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Broadview Heights City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Broadview Heights City amended its complaint on March 18, 2019, after transfer to the MDL on March 29, 2018. *See City of Broadview Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45330-DAP, ECF No. 8. Unlike many other plaintiffs, Broadview Heights City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Broadview

Heights City's deadline to amend was in 2019. Broadview Heights City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Broadview Heights City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Broadview Heights City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Broadview Heights City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Broadview Heights City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Broadview Heights City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Broadview Heights City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Broadview Heights City fails to explain why it was

unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Broadview Heights City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Broadview Heights City). That insignificant dispensing volume is much too low to support a finding of good cause for Broadview Heights City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Broadview Heights City violated its basic duty to implement a timely litigation hold. Broadview Heights City filed its original complaint on February 26, 2018, but waited until September 7, 2018 to implement a litigation hold—six months later. *See City of Broadview Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45330-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 7, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Broadview Heights City's case would force the parties and the Court to waste time and resources ascertaining the extent of Broadview Heights City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to

implement litigation holds until 2024. The PBMs are prejudiced by Broadview Heights City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Broadview Heights City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Broadview Heights City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Broadview Heights City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Broadview Heights City is a plaintiff in Ohio. Broadview Heights City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Broadview Heights City's proposed RICO claim against the PBMs has expired. Broadview Heights City filed its amended

complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Broadview Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45330-DAP, ECF No. 8. It is therefore indisputable that Broadview Heights City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Broadview Heights City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Broadview Heights City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Broadview Heights City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

360. ***Broward County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45332-DAP: Plaintiff Broward County, Florida**

Broward County's untimely motion for leave to amend should be denied for several reasons. Broward County failed to provide notice of its proposed amendments through a proposed complaint. Broward County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Broward County's motion should be denied due to futility, as Broward County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Broward County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Broward County first amended its complaint on April 25, 2018. *See Broward County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45332-DAP, ECF No. 26. Broward County amended its complaint again on May 30, 2018, as well as on December 21, 2019. *See Broward County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45332-DAP, ECF Nos. 32, 88. Unlike many other plaintiffs, Broward County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Broward County's deadline to amend was in 2019. Broward County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Broward County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Broward County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.33% market share for Broward County). That insignificant dispensing volume is much too low to support a finding of good cause for Broward County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units

shipped to Broward County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Broward County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Broward County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Broward County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Broward County's proposed RICO claim against the PBMs has expired. Broward County filed its original complaint on March 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Broward County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45332-DAP, ECF No. 1. It is therefore indisputable that Broward County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Broward County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Broward County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Broward County's public-nuisance claim against the PBMs is therefore time-barred because Broward County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 12, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Broward County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **361.** ***City of Lima v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45333-DAP: Plaintiff Lima City, Ohio**

Lima City's untimely motion for leave to amend should be denied for several reasons. Lima City failed to provide notice of its proposed amendments through a proposed complaint. Lima City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Lima City's motion should be denied due to futility, as Lima City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lima City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Lima City amended its complaint on March 16, 2019, after directly filing in the MDL. *See City Of Lima v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45333-DAP, ECF No. 23. Unlike many other plaintiffs, Lima City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lima City's deadline to amend was in 2019. Lima City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lima City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lima City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Lima City). That insignificant dispensing volume is much too low to support a finding of good cause for Lima City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lima City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lima City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lima City is a plaintiff in Ohio. Lima City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lima City's proposed RICO claim against the PBMs has expired. Lima City filed its original complaint on April 3, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City Of Lima v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45333-DAP, ECF No. 1. It is therefore indisputable that Lima City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lima City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lima City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lima City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

362. *City of Pittsfield v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45335-DAP: Plaintiff Pittsfield City, Massachusetts**

Pittsfield City's untimely motion for leave to amend should be denied for several reasons. Pittsfield City failed to provide notice of its proposed amendments through a proposed complaint. Pittsfield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Pittsfield City's motion should be denied due to futility, as Pittsfield City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pittsfield City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pittsfield City amended its complaint on March 6, 2019, after transfer to the MDL on April 4, 2018. *See City of Pittsfield v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45335-DAP, ECF No. 23. Unlike many other plaintiffs, Pittsfield City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pittsfield City's deadline to amend was in 2019. Pittsfield City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pittsfield City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pittsfield City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pittsfield City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pittsfield City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pittsfield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Pittsfield City). That insignificant dispensing volume is much too low to support a finding of good cause for Pittsfield City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pittsfield City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Pittsfield City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pittsfield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pittsfield City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pittsfield City's proposed RICO claim against the PBMs has expired. Pittsfield City filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Pittsfield v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45335-DAP, ECF No. 1. It is therefore indisputable that Pittsfield City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pittsfield City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pittsfield City's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Pittsfield City's public-nuisance claim against the PBMs is therefore time-barred because Pittsfield City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Pittsfield City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **363.** ***City of Easthampton, Massachusetts v. Amerisourcebergen Drug Corporation et al.***, Case No. 1:18-op-45336-DAP: Plaintiff Easthampton Town City, Massachusetts

Easthampton Town City's untimely motion for leave to amend should be denied for several reasons. Easthampton Town City failed to provide notice of its proposed amendments through a proposed complaint. Easthampton Town City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Easthampton Town City's motion should be denied due to futility, as Easthampton Town City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Easthampton Town City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Easthampton Town City amended its complaint on March 6, 2019, after transfer to the MDL on April 4, 2018. *See City of Easthampton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45336-DAP, ECF No. 23. Unlike many other plaintiffs, Easthampton Town City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Easthampton Town City's deadline to amend was in 2019. Easthampton Town City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Easthampton Town City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Easthampton Town City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and McHugh Fuller Law Group, PLLC— that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Easthampton Town City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Easthampton Town City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part

of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Easthampton Town City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Easthampton Town City). That insignificant dispensing volume is much too low to support a finding of good cause for Easthampton Town City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Easthampton Town City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Easthampton Town City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Easthampton Town City filed its original complaint on March 15, 2018. *See City of Easthampton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45336-DAP, ECF No. 1. Despite filing its case years ago, Easthampton Town City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Easthampton Town City's case would force the parties and the Court to waste time and

resources ascertaining the extent of Easthampton Town City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Easthampton Town City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Easthampton Town City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Easthampton Town City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Easthampton Town City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Easthampton Town City's proposed RICO claim against the PBMs has expired. Easthampton Town City filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Easthampton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45336-DAP, ECF No. 1. It is therefore indisputable that

Easthampton Town City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Easthampton Town City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Easthampton Town City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Easthampton Town City's public-nuisance claim against the PBMs is therefore time-barred because Easthampton Town City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Easthampton Town City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

364. ***City of Northampton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45337-DAP: Plaintiff Northampton City, Massachusetts**

Northampton City's untimely motion for leave to amend should be denied for several reasons. Northampton City failed to provide notice of its proposed amendments through a proposed complaint. Northampton City also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Northampton City's motion should be denied due to futility, as Northampton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Northampton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Northampton City amended its complaint on March 6, 2019, after transfer to the MDL on April 4, 2018. *See City of Northampton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45337-DAP, ECF No. 23. Unlike many other plaintiffs, Northampton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Northampton City's deadline to amend was in 2019. Northampton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Northampton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Northampton City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and McHugh Fuller Law Group, PLLC— that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Northampton City, through

its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Northampton City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Northampton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.0007% market share for Northampton City). That insignificant dispensing volume is much too low to support a finding of good cause for Northampton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Northampton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Northampton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Northampton City filed its original complaint on March 16, 2018, but waited until August 7, 2018 to implement a litigation hold. *See City of Northampton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45337-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 7, 2018). Northampton City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Northampton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Northampton City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Northampton City of this deficiency on September 16, 2024 (*see* Exhibit B), but Northampton City refused to amend or supplement its Fact Sheet. Under this Court's orders, Northampton City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Northampton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Northampton City's potential claims against them. Northampton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Northampton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Northampton City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Northampton City's proposed RICO claim against the PBMs has expired. Northampton City filed its original complaint on March 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Northampton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45337-DAP, ECF No. 1. It is therefore indisputable that Northampton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Northampton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Northampton City's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Northampton City's public-nuisance claim against the PBMs is therefore time-barred because Northampton City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Northampton City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **365.** ***County of Oneida, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45338-DAP: Plaintiff Oneida County, New York**

Oneida County's untimely motion for leave to amend should be denied for several reasons. Oneida County failed to provide notice of its proposed amendments through a proposed complaint. Oneida County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oneida County's motion should be denied due to futility, as Oneida County does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Oneida County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Oneida County amended its complaint on March 12, 2019, after transfer to the MDL on April 4, 2018. *See County of Oneida, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45338-DAP, ECF No. 78. Unlike many other plaintiffs, Oneida County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Oneida County's deadline to amend was in 2019. Oneida County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Oneida County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oneida County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Oneida County). That insignificant dispensing volume is much too low to support a finding of good cause for Oneida County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Oneida County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Oneida County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Oneida County filed its original complaint on March 14, 2018. *See County of Oneida, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45338-DAP, ECF No. 1. Despite filing its case years ago, Oneida County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Oneida County's case would force the parties and the Court to waste time and resources ascertaining the extent of Oneida County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Oneida County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Oneida County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oneida County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Oneida County's proposed RICO claim against the PBMs has expired. Oneida County filed its original complaint on March 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Oneida, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45338-DAP,

ECF No. 1. It is therefore indisputable that Oneida County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Oneida County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oneida County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

<blockquote>

**366.** ***County of Shiawassee, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45350-DAP: Plaintiff Shiawassee County, Michigan**

</blockquote>

Shiawassee County's untimely motion for leave to amend should be denied for several reasons. Shiawassee County failed to provide notice of its proposed amendments through a proposed complaint. Shiawassee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Shiawassee County's motion should be denied due to futility, as Shiawassee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Shiawassee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Shiawassee County amended its complaint on March 16, 2019, after transfer to the MDL on April 5, 2018. *See County of Shiawassee, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45350-DAP, ECF No. 23. Unlike many other plaintiffs, Shiawassee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Shiawassee County's deadline to amend was in 2019. Shiawassee County waited five years after its deadline

to amend to seek leave to assert claims against the PBMs. Shiawassee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Shiawassee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Shiawassee County). That insignificant dispensing volume is much too low to support a finding of good cause for Shiawassee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shiawassee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shiawassee County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Shiawassee County's proposed RICO claim against the PBMs has expired. Shiawassee County filed its original complaint on March 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Shiawassee, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45350-DAP, ECF No. 1. It is therefore indisputable that Shiawassee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Shiawassee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shiawassee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Shiawassee County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

367. *County of Lenawee, Michigan v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45351-DAP: Plaintiff Lenawee County, Michigan**

Lenawee County's untimely motion for leave to amend should be denied for several reasons. Lenawee County failed to provide notice of its proposed amendments through a proposed complaint. Lenawee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Lenawee County's motion should be denied due to futility, as Lenawee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lenawee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lenawee County amended its complaint on March 16, 2019, after transfer to the MDL on April 5, 2018. *See County of Lenawee, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45351-DAP, ECF No. 22. Unlike many other plaintiffs, Lenawee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lenawee County's deadline to amend was in 2019. Lenawee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lenawee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lenawee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Lenawee County). That insignificant dispensing volume is much too low to support a finding of good cause for Lenawee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lenawee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lenawee County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lenawee County's proposed RICO claim against the PBMs has expired. Lenawee County filed its original complaint on March 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Lenawee, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45351-DAP, ECF No. 1. It is therefore indisputable that Lenawee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lenawee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lenawee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lenawee County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

368. *County of Sanilac, Michigan v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45352-DAP: Plaintiff Sanilac County, Michigan**

Sanilac County's untimely motion for leave to amend should be denied for several reasons. Sanilac County failed to provide notice of its proposed amendments through a proposed complaint. Sanilac County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Sanilac County's motion should be denied due to futility, as Sanilac County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sanilac County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sanilac County first amended its complaint on March 13, 2018. *See County of Sanilac, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45352-DAP, ECF No. 2. Sanilac County amended its complaint again on March 16, 2019. *See County of Sanilac, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45352-DAP, ECF No. 25. Unlike many other plaintiffs, Sanilac County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Sanilac County's deadline to amend was in 2019. Sanilac County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sanilac County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sanilac County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Sanilac County). That insignificant dispensing volume is much too low to support a finding of good cause for Sanilac County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Sanilac County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Sanilac County of the PBM services Express Scripts provides and Sanilac County began receiving those services on July 20, 2007. *See id.* Inasmuch as Sanilac County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Sanilac County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.2, above. Sanilac County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sanilac County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sanilac County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sanilac County's proposed RICO claim against the PBMs has expired. Sanilac County filed its original complaint on March 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Sanilac, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45352-DAP, ECF No. 1. It is therefore indisputable that Sanilac County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sanilac County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sanilac County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sanilac County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**369.** ***County of Hillsdale, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45355-DAP: Plaintiff Hillsdale County, Michigan**

Hillsdale County's untimely motion for leave to amend should be denied for several reasons. Hillsdale County failed to provide notice of its proposed amendments through a proposed complaint. Hillsdale County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Hillsdale County's motion should be denied due to futility, as Hillsdale County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hillsdale County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hillsdale County amended its complaint on March 16, 2019, after transfer to the MDL on April 5, 2018. *See County of Hillsdale, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45355-DAP, ECF No. Unlike many other plaintiffs, Hillsdale County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hillsdale County's deadline to amend was in 2019. Hillsdale County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hillsdale County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hillsdale County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.11% market share for Hillsdale County). That insignificant dispensing volume is much too low to support a finding of good cause for Hillsdale County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hillsdale County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hillsdale County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hillsdale County's proposed RICO claim against the PBMs has expired. Hillsdale County filed its original complaint on March 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Hillsdale, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45355-DAP, ECF No. 1. It is therefore indisputable that Hillsdale County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hillsdale County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hillsdale County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hillsdale County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 370. *Calhoun County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45363-DAP: Plaintiff Calhoun County, Florida

Calhoun County's untimely motion for leave to amend should be denied for several reasons. Calhoun County failed to provide notice of its proposed amendments through a proposed complaint. Calhoun County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Calhoun County's motion should be denied due to futility, as Calhoun County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calhoun County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calhoun County amended its complaint on March 8, 2019, after transfer to the MDL on April 5, 2018. *See Calhoun County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45363-DAP, ECF No. 13. Unlike many other plaintiffs, Calhoun County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Calhoun County's deadline to amend was in 2019. Calhoun County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Calhoun County's lack of diligence in pursuing its claims

negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Calhoun County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Calhoun County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Calhoun County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Calhoun County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Calhoun County). That insignificant dispensing volume is much too low to support a finding of good cause for Calhoun County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Calhoun County filed its original complaint on March 16, 2018. *See Calhoun County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45363-DAP, ECF No. 1. Despite filing its case years ago, Calhoun County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Calhoun County's case would force the parties and the Court to waste time and resources ascertaining the extent of Calhoun County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Calhoun County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Calhoun County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Calhoun County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Calhoun County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Calhoun County of this deficiency on September 16, 2024 (*see* Exhibit B), but Calhoun County refused to amend or supplement its Fact Sheet. Under this Court's orders, Calhoun County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Calhoun County's refusal to

provide basic information related to its health care plans prejudices the PBMs' ability to defend against Calhoun County's potential claims against them. Calhoun County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calhoun County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Calhoun County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Calhoun County's proposed RICO claim against the PBMs has expired. Calhoun County filed its original complaint on March 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Calhoun County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45363-DAP, ECF No. 1. It is therefore indisputable that Calhoun County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Calhoun County's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Calhoun County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Calhoun County's public-nuisance claim against the PBMs is therefore time-barred because Calhoun County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Calhoun County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **371.** ***Jefferson County, Ohio v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45365-DAP: Plaintiff Jefferson County, Ohio**

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County previously dismissed its claims against some of the PBMs with prejudice in another case. Moreover, Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should

be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Prior Dismissal with Prejudice.** Jefferson County previously dismissed its claims against Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Express Scripts, Inc.; Medco Health Solutions, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.; with prejudice in another case. *See County of Cuyahoga et al. v. Mylan Pharms., Inc. et al.*, Case No. 1:23-op-45003 (N.D. Ohio), ECF No. 50. That dismissal "operates as a final adjudication on the merits and has a res judicata effect." *Warfield*, 267 F.3d at 542; *see also Taylor*, 21 F. App'x at 266 ("A dismissal with prejudice [by stipulation of the parties] operates as a rejection of the plaintiff's claims on the merits and the doctrine of claim preclusion bars further litigation."). Jefferson County's proposed claims against Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Express Scripts, Inc.; Medco Health Solutions, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.; are therefore barred by res judicata and leave to amend should be denied as futile. *See Gale*, 142 F. Supp. 3d at 554–55 ("[A] stipulated dismissal with prejudice constitutes an adjudication on the merits" and denying motion for leave to amend complaint when "[p]laintiffs fail to allege any claim within this Court's federal question jurisdiction that would not be barred by *res judicata*.").

**Lack of Diligence.** Jefferson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson County amended its complaint on March 15, 2019, after transfer to the MDL on April 6,

2018. *See Jefferson County, Ohio v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45365-DAP, ECF No. 40. Unlike many other plaintiffs, Jefferson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jefferson County's deadline to amend was in 2019. Jefferson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jefferson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Jefferson County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jefferson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Jefferson County violated its basic duty to implement a timely litigation hold. Jefferson County filed its original complaint on December 13, 2017, but waited until November 24, 2018 to implement a litigation hold—almost a year later. *See Jefferson County, Ohio v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45365-DAP, ECF No. 3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 24, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jefferson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jefferson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jefferson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jefferson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jefferson County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Jefferson County is a plaintiff in Ohio. Jefferson County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jefferson County, Ohio v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45365-DAP, ECF No. 40. It is therefore indisputable that Jefferson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Jefferson County's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jefferson County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

>    **372.**    ***St. Croix Chippewa Indians of Wisconsin v. McKesson Corporation et al.*, Case No. 1:18-op-45367-DAP: Plaintiff St. Croix Chippewa Indians of Wisconsin, Wisconsin**

St. Croix Chippewa Indians of Wisconsin's untimely motion for leave to amend should be denied for several reasons. St. Croix Chippewa Indians of Wisconsin failed to provide notice of its proposed amendments through a proposed complaint. St. Croix Chippewa Indians of Wisconsin also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Croix Chippewa Indians of Wisconsin's motion should be denied due to futility, as St. Croix Chippewa Indians of Wisconsin does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Croix Chippewa Indians of Wisconsin was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Croix Chippewa Indians of Wisconsin amended its complaint on August 12, 2019, after transfer to the MDL on April 5, 2018. *See St. Croix Chippewa Indians of Wisconsin v. McKesson Corporation et al.*, Case No. 1:18-op-45367-DAP, ECF No. 64. Unlike

many other plaintiffs, St. Croix Chippewa Indians of Wisconsin declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Croix Chippewa Indians of Wisconsin's deadline to amend was in 2019. St. Croix Chippewa Indians of Wisconsin waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Croix Chippewa Indians of Wisconsin's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Croix Chippewa Indians of Wisconsin's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Croix Chippewa Indians of Wisconsin to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Croix Chippewa Indians of Wisconsin filed its original complaint on December 6, 2017. *See St. Croix Chippewa Indians of Wisconsin v. McKesson Corporation et al.*, Case No. 1:18-op-45367-DAP, ECF No. 1. Despite filing its case years ago, St. Croix Chippewa Indians of Wisconsin *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating St. Croix Chippewa Indians of Wisconsin's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Croix Chippewa

Indians of Wisconsin's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Croix Chippewa Indians of Wisconsin's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Croix Chippewa Indians of Wisconsin therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Croix Chippewa Indians of Wisconsin's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Croix Chippewa Indians of Wisconsin, a native tribe in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Croix Chippewa Indians of Wisconsin's proposed RICO claim against the PBMs has expired. St. Croix Chippewa Indians of Wisconsin filed its amended complaint on August 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See St. Croix Chippewa Indians of Wisconsin v. McKesson Corporation et al.*, Case No. 1:18-op-45367-DAP, ECF No. 64. It is therefore

indisputable that St. Croix Chippewa Indians of Wisconsin knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. St. Croix Chippewa Indians of Wisconsin's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Croix Chippewa Indians of Wisconsin's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Croix Chippewa Indians of Wisconsin, a native tribe in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 373. *County of Floyd v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45369-DAP: Plaintiff Floyd County, Kentucky

Floyd County's untimely motion for leave to amend should be denied for several reasons. Floyd County failed to provide notice of its proposed amendments through a proposed complaint. Floyd County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Floyd County's motion should be denied due to futility, as Floyd County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Floyd County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Floyd County amended its complaint on March 18, 2019, after transfer to the MDL on April 6, 2018. *See County of Floyd v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45369-DAP, ECF No.

40. Unlike many other plaintiffs, Floyd County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Floyd County's deadline to amend was in 2019. Floyd County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Floyd County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Floyd County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Floyd County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Floyd County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Floyd County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.002% market share for Floyd County). That insignificant dispensing volume is much too low to support a finding of good cause for Floyd County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Floyd County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Floyd County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Floyd County violated its basic duty to implement a timely litigation hold. Floyd County filed its original complaint on November 2, 2017, but waited until September 1, 2018 to implement a litigation hold—ten months later. *See County of Floyd v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45369-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 1, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Floyd County's case would force the parties and the Court to waste time and resources ascertaining the extent of Floyd County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Floyd County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Floyd County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Floyd County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Floyd County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Floyd County's proposed RICO claim against the PBMs has expired. Floyd County filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Floyd v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45369-DAP, ECF No. 40. It is therefore indisputable that Floyd County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Floyd County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Floyd County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Floyd County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 374. *Panama City, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45373-DAP: Plaintiff Panama City, Florida

Panama City's untimely motion for leave to amend should be denied for several reasons. Panama City failed to provide notice of its proposed amendments through a proposed complaint. Panama City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Panama City's motion should be denied due to futility, as Panama City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Panama City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Panama City amended its complaint on March 8, 2019, after transfer to the MDL on April 6, 2018. *See Panama City, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45373-DAP, ECF No. 20. Unlike many other plaintiffs, Panama City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Panama City's deadline to amend was in 2019. Panama City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Panama City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** City of Panama City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. City of Panama City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. City of Panama City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Panama City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for City of Panama City). That insignificant dispensing volume is much too low to support a finding of good cause for Panama City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Panama City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Panama City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Panama City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Panama City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Panama City's proposed RICO claim against the PBMs has expired. Panama City filed its original complaint on March 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Panama City, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45373-DAP, ECF No. 1. It is therefore indisputable that Panama City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Panama City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury,

not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Panama City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Panama City's public-nuisance claim against the PBMs is therefore time-barred because Panama City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Panama City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 375. *County of Fulton v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45374-DAP: Plaintiff Fulton County, Georgia

Fulton County's untimely motion for leave to amend should be denied for several reasons. Fulton County failed to provide notice of its proposed amendments through a proposed complaint. Fulton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fulton County's motion should be denied due to futility, as Fulton County does not assert any allegations tying the PBMs to its

alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fulton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fulton County amended its complaint on March 18, 2019, after transfer to the MDL on April 6, 2018. *See County of Fulton v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45374-DAP, ECF No. 55. Unlike many other plaintiffs, Fulton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fulton County's deadline to amend was in 2019. Fulton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fulton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fulton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Fulton County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fulton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F.

App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fulton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Fulton County). That insignificant dispensing volume is much too low to support a finding of good cause for Fulton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fulton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fulton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fulton County filed its original complaint on October 23, 2017, but waited until February 22, 2018 to implement a litigation hold. *See County of Fulton v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45374-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 22, 2018). Fulton County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Fulton County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Fulton County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Fulton County of this deficiency on September 16, 2024 (*see* Exhibit B), but Fulton County refused to amend or supplement its Fact Sheet. Under this Court's orders, Fulton County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Fulton County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Fulton County's potential claims against them. Fulton County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fulton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fulton County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fulton County's proposed RICO claim against the PBMs has expired. Fulton County filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Fulton v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45374-DAP, ECF No. 55. It is therefore indisputable that Fulton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Fulton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fulton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fulton County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

376. *Halifax County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45376-DAP: Plaintiff Halifax County, North Carolina**

Halifax County's untimely motion for leave to amend should be denied for several reasons. Halifax County failed to provide notice of its proposed amendments through a proposed complaint. Halifax County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Halifax County's motion should be denied due to futility, as Halifax County does not assert any allegations tying

the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Halifax County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Halifax County amended its complaint on March 11, 2019, after transfer to the MDL on April 9, 2018. *See Halifax County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45376-DAP, ECF No. 8. Unlike many other plaintiffs, Halifax County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Halifax County's deadline to amend was in 2019. Halifax County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Halifax County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Halifax County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Halifax County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Halifax County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Halifax County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Halifax County). That insignificant dispensing volume is much too low to support a finding of good cause for Halifax County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Halifax County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Halifax County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Halifax County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Halifax County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Halifax County's proposed RICO claim against the PBMs has expired. Halifax County filed its original complaint on March 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Halifax County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45376-DAP, ECF No. 1. It is therefore indisputable that Halifax County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Halifax County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Halifax County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Halifax County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 377. *City of Mansfield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45380-DAP: Plaintiff Mansfield City, Ohio

Mansfield City's untimely motion for leave to amend should be denied for several reasons. Mansfield City failed to provide notice of its proposed amendments through a proposed complaint. Mansfield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mansfield City's motion should be denied due to futility, as Mansfield City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mansfield City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mansfield City filed its original complaint on March 8, 2018 and the case joined the MDL on April 9, 2018. *See City of Mansfield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45380-DAP, ECF No. 1-3. Mansfield City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Mansfield City elected not to do so. Instead, Mansfield City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mansfield City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mansfield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Mansfield City). That insignificant dispensing volume is much too low to support a finding of good cause for Mansfield City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Mansfield City filed its original complaint on March 8, 2018. *See City of Mansfield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45380-DAP, ECF No. 1-3. Despite filing its case years ago, Mansfield City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Mansfield City's case would force the parties and the Court to waste time and resources ascertaining the extent of Mansfield City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mansfield City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mansfield City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Mansfield City has *never* served a Plaintiff Fact Sheet. Mansfield City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Mansfield City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6

(denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mansfield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mansfield City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Mansfield City is a plaintiff in Ohio. Mansfield City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Mansfield City's proposed RICO claim against the PBMs has expired. Mansfield City filed its original complaint on March 8, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Mansfield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45380-DAP, ECF No. 1-3. Even assuming *arguendo* that Mansfield City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 8, 2022. Mansfield City's RICO claim is therefore time-barred. ECF No. 2568 at 13

(holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mansfield City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mansfield City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 378. *Martin County Fiscal Court v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45388-DAP: Plaintiff Martin County, Kentucky

Martin County's untimely motion for leave to amend should be denied for several reasons. Martin County failed to provide notice of its proposed amendments through a proposed complaint. Martin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Martin County's motion should be denied due to futility, as Martin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Martin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Martin County amended its complaint on March 9, 2019, after transfer to the MDL on April 11, 2018. *See Martin County Fiscal Court v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45388-DAP, ECF No. 21. Unlike many other plaintiffs, Martin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Martin County's deadline to amend was in 2019. Martin County waited five years after its deadline to amend to

seek leave to assert claims against the PBMs. Martin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Martin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Martin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Martin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Martin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Martin County). That insignificant dispensing volume is much too

low to support a finding of good cause for Martin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Martin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Martin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Martin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Martin County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Martin County's proposed RICO claim against the PBMs has expired. Martin County filed its original complaint on March 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Martin County Fiscal Court v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45388-DAP, ECF No. 1. It is therefore indisputable that Martin County knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before

seeking leave to amend. Martin County's RICO claim is therefore time-barred by RICO's four-

year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Martin County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for

leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Martin County, a municipality in Kentucky, lacks standing to

state a claim for relief under any of the New York laws referenced in the City of Rochester's

complaint. *See* Section III.B.6, above.

### 379. *Wayne County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45389-DAP: Plaintiff Wayne County, Kentucky

Wayne County's untimely motion for leave to amend should be denied for several reasons.

Wayne County failed to provide notice of its proposed amendments through a proposed complaint.

Wayne County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Wayne County's motion should be denied due to futility, as Wayne County does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute

of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wayne County was on notice of its claims against the PBMs for years

but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Wayne County amended its complaint on March 13, 2019, after transfer to the MDL on April 11,

2018. *See Wayne County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No.

1:18-op-45389-DAP, ECF No. 21. Unlike many other plaintiffs, Wayne County declined to add

claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wayne County's deadline to amend was in 2019. Wayne County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wayne County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wayne County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wayne County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wayne County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Wayne County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Wayne County). That insignificant dispensing volume is much too low to support a finding of good cause for Wayne County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wayne County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wayne County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wayne County filed its original complaint on March 22, 2018. *See Wayne County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45389-DAP, ECF No. 1. Despite filing its case years ago, Wayne County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Wayne County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wayne County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wayne County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wayne County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wayne County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wayne County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wayne County's proposed RICO claim against the PBMs has expired. Wayne County filed its original complaint on March 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wayne County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45389-DAP, ECF No. 1. It is therefore indisputable that Wayne County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wayne County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wayne County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wayne County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **380.** ***Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP: Plaintiff Family Health Care Clinic, PSC, Kentucky**

Family Health Care Clinic, PSC's untimely motion for leave to amend should be denied for several reasons. Family Health Care Clinic, PSC failed to provide notice of its proposed amendments through a proposed complaint. Family Health Care Clinic, PSC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Family Health Care Clinic, PSC's motion should be denied due to futility, as Family Health Care Clinic, PSC does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Family Health Care Clinic, PSC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Family Health Care Clinic, PSC amended its complaint on March 15, 2019, after transfer to the MDL on April 11, 2018. *See Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP, ECF No. 20. Unlike many other plaintiffs, Family Health Care Clinic, PSC declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Family Health Care Clinic, PSC's deadline to amend was in 2019. Family Health Care Clinic, PSC waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Family Health Care Clinic, PSC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Family Health Care Clinic, PSC filed its original complaint on March 21, 2018. *See Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP, ECF No. 1. Despite filing its case years ago, Family Health Care Clinic, PSC *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never))*. This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Family Health Care Clinic, PSC's case would force the parties and the Court to waste time and resources ascertaining the extent of Family Health Care Clinic, PSC's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Family Health Care Clinic, PSC's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Family Health Care Clinic, PSC therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Family Health Care Clinic, PSC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Family Health Care Clinic, PSC, a hospital in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Family Health Care Clinic, PSC's proposed RICO claim against the PBMs has expired. Family Health Care Clinic, PSC filed its original complaint on March 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP, ECF No. 1. It is therefore indisputable that Family Health Care Clinic, PSC knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Family Health Care Clinic, PSC's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Family Health Care Clinic, PSC's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Family Health Care Clinic, PSC, a hospital in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

381. ***Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP: Plaintiff Family Practice Clinic of Booneville, Inc., Kentucky**

Family Practice Clinic of Booneville, Inc.'s untimely motion for leave to amend should be denied for several reasons. Family Practice Clinic of Booneville, Inc. failed to provide notice of its proposed amendments through a proposed complaint. Family Practice Clinic of Booneville, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Family Practice Clinic of Booneville, Inc.'s motion should be denied due to futility, as Family Practice Clinic of Booneville, Inc. does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Family Practice Clinic of Booneville, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Family Practice Clinic of Booneville, Inc. amended its complaint on March 15, 2019, after transfer to the MDL on April 11, 2018. *See Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP, ECF No. 20. Unlike many other plaintiffs, Family Practice Clinic of Booneville, Inc. declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Family Practice Clinic of Booneville, Inc.'s deadline to amend was in 2019. Family Practice Clinic of Booneville, Inc. waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Family Practice Clinic of Booneville, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Family Practice Clinic of Booneville, Inc. filed its original complaint on March 21, 2018. *See Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP, ECF No. 1. Despite filing its case years ago, Family Practice Clinic of Booneville, Inc. *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Family Practice Clinic of Booneville, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of Family Practice Clinic of Booneville, Inc.'s document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Family Practice Clinic of Booneville, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Family Practice Clinic of Booneville, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Family Practice Clinic of Booneville, Inc.'s delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence

over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Family Practice Clinic of Booneville, Inc., a hospital in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Family Practice Clinic of Booneville, Inc.'s proposed RICO claim against the PBMs has expired. Family Practice Clinic of Booneville, Inc. filed its original complaint on March 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Family Practice Clinic of Booneville, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45390-DAP, ECF No. 1. It is therefore indisputable that Family Practice Clinic of Booneville, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Family Practice Clinic of Booneville, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Family Practice Clinic of Booneville, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Family Practice Clinic of Booneville, Inc., a hospital in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

382. ***City of Pooler, Georgia v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45391-DAP: Plaintiff Pooler City, Georgia**

Pooler City's untimely motion for leave to amend should be denied for several reasons. Pooler City failed to provide notice of its proposed amendments through a proposed complaint. Pooler City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pooler City's motion should be denied due to futility, as Pooler City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pooler City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pooler City filed its original complaint on March 20, 2018 and the case was transferred to the MDL on April 10, 2018. *See City of Pooler, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45391-DAP, ECF No. 3. Pooler City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Pooler City elected not to do so. Instead, Pooler City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pooler City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Pooler City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Pooler City). That insignificant dispensing volume is much too low to support a finding of good cause for Pooler City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pooler City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pooler City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pooler City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pooler City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pooler City's proposed RICO claim against the PBMs has expired. Pooler City filed its original complaint on March 20, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Pooler, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-

45391-DAP, ECF No. 1. Even assuming *arguendo* that Pooler City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 20, 2022. Pooler City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pooler City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pooler City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 383. *Carter County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45392-DAP: Plaintiff Carter County, Kentucky

Carter County's untimely motion for leave to amend should be denied for several reasons. Carter County failed to provide notice of its proposed amendments through a proposed complaint. Carter County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carter County's motion should be denied due to futility, as Carter County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carter County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carter County amended its complaint on March 8, 2019, after transfer to the MDL on April 11,

2018. *See Carter County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45392-DAP, ECF No. 21. Unlike many other plaintiffs, Carter County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Carter County's deadline to amend was in 2019. Carter County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carter County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Carter County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Carter County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Carter County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carter County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.30% market share for Carter County). That insignificant dispensing volume is much too low to support a finding of good cause for Carter County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Carter County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Carter County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Carter County violated its basic duty to implement a timely litigation hold. Carter County filed its original complaint on March 22, 2018, but waited until October 29, 2021 to implement a litigation hold—more than three and a half years later. *See Carter County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45392-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: October 29, 2021). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Carter County's case would force the parties and the Court to waste time and resources ascertaining the extent of Carter County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Carter County's disregard for its most basic discovery

obligations as a litigant, compounded by the delay in seeking leave to amend, and Carter County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carter County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carter County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carter County's proposed RICO claim against the PBMs has expired. Carter County filed its original complaint on March 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Carter County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45392-DAP, ECF No. 1. It is therefore indisputable that Carter County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Carter County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carter County's request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Carter County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 384. *Elliott County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45393-DAP: Plaintiff Elliott County, Kentucky

Elliott County's untimely motion for leave to amend should be denied for several reasons. Elliott County failed to provide notice of its proposed amendments through a proposed complaint. Elliott County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Elliott County's motion should be denied due to futility, as Elliott County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Elliott County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Elliott County amended its complaint on March 9, 2019, after transfer to the MDL on April 11, 2018. *See Elliott County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45393-DAP, ECF No. 21. Unlike many other plaintiffs, Elliott County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Elliott County's deadline to amend was in 2019. Elliott County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Elliott County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Elliott County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Elliott County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Elliott County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Elliott County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Elliott County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Elliott County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Elliott County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Elliott County filed its original complaint on March 22, 2018. *See Elliott County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45393-DAP, ECF No. 1. Despite filing its case years ago, Elliott County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)*). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Elliott County's case would force the parties and the Court to waste time and resources ascertaining the extent of Elliott County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Elliott County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Elliott County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Elliott County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Elliott County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Elliott County's proposed RICO claim against the PBMs has expired. Elliott County filed its original complaint on March 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Elliott County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45393-DAP, ECF No. 1. It is therefore indisputable that Elliott County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Elliott County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Elliott County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Elliott County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

385.   ***Bracken County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45395-DAP: Plaintiff Bracken County, Kentucky**

Bracken County's untimely motion for leave to amend should be denied for several reasons. Bracken County failed to provide notice of its proposed amendments through a proposed complaint. Bracken County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bracken County's motion should be denied due to futility, as Bracken County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bracken County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bracken County amended its complaint on March 8, 2019, after transfer to the MDL on April 11, 2018. *See Bracken County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45395-DAP, ECF No. 13. Unlike many other plaintiffs, Bracken County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bracken County's deadline to amend was in 2019. Bracken County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bracken County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bracken County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bracken County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bracken County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Bracken County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Bracken County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Bracken County filed its original complaint on March 22, 2018. *See Bracken County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45395-DAP, ECF No. 1. Despite filing its case years ago, Bracken County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified

document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bracken County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bracken County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bracken County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bracken County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bracken County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bracken County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bracken County's proposed RICO claim against the PBMs has expired. Bracken County filed its original complaint on March 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bracken County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-

op-45395-DAP, ECF No. 1. It is therefore indisputable that Bracken County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bracken County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bracken County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bracken County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

386. ***Itawamba County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45396-DAP: Plaintiff Itawamba County, Mississippi**

Itawamba County's untimely motion for leave to amend should be denied for several reasons. Itawamba County failed to provide notice of its proposed amendments through a proposed complaint. Itawamba County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Itawamba County's motion should be denied due to futility, as Itawamba County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Itawamba County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Itawamba County amended its complaint on March 7, 2019, after transfer to the MDL on April 11, 2018. *See Itawamba County, Mississippi v. Amerisourcebergen Drug Corporation et*

*al.*, Case No. 1:18-op-45396-DAP, ECF No. 7. Unlike many other plaintiffs, Itawamba County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Itawamba County's deadline to amend was in 2019. Itawamba County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Itawamba County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Itawamba County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Itawamba County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Itawamba County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Itawamba County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Itawamba County). That insignificant dispensing volume is much too low to support a finding of good cause for Itawamba County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Itawamba County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Itawamba County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Itawamba County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Itawamba County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Itawamba County's proposed RICO claim against the PBMs has expired. Itawamba County filed its amended complaint on

March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Itawamba County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45396-DAP, ECF No. 7. It is therefore indisputable that Itawamba County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Itawamba County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Itawamba County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Itawamba County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 387. *Marshall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45397-DAP: Plaintiff Marshall County, Mississippi

Marshall County's untimely motion for leave to amend should be denied for several reasons. Marshall County failed to provide notice of its proposed amendments through a proposed complaint. Marshall County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marshall County's motion should be denied due to futility, as Marshall County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marshall County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marshall County amended its complaint on March 7, 2019, after transfer to the MDL on April 11, 2018. *See Marshall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45397-DAP, ECF No. 6. Unlike many other plaintiffs, Marshall County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marshall County's deadline to amend was in 2019. Marshall County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marshall County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marshall County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Marshall County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marshall County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part

because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marshall County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marshall County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marshall County filed its original complaint on March 26, 2018. *See Marshall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45397-DAP, ECF No. 1. Despite filing its case years ago, Marshall County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marshall County's case would force the parties and the Court to waste time and resources ascertaining the extent of Marshall County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marshall County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marshall County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marshall County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marshall County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marshall County's proposed RICO claim against the PBMs has expired. Marshall County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marshall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45397-DAP, ECF No. 6. It is therefore indisputable that Marshall County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Marshall County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marshall County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marshall County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **388.** ***City of Charleston, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45398-DAP: Plaintiff Charleston City, Mississippi**

Charleston City's untimely motion for leave to amend should be denied for several reasons. Charleston City failed to provide notice of its proposed amendments through a proposed complaint. Charleston City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Charleston City's motion should be denied due to futility, as Charleston City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Charleston City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Charleston City amended its complaint on March 7, 2019, after transfer to the MDL on April 11, 2018. *See City of Charleston, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45398-DAP, ECF No. 14. Unlike many other plaintiffs, Charleston City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Charleston City's deadline to amend was in 2019. Charleston City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Charleston City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Charleston City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Charleston City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Charleston City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Charleston City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Charleston City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Charleston City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Charleston City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Charleston City filed its original complaint on March 26, 2018. *See City of Charleston, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45398-DAP, ECF No. 1. Despite filing its case years ago, Charleston City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Charleston City's case would force the parties and the Court to waste time and resources ascertaining the extent of Charleston City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Charleston City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Charleston City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Charleston City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Charleston City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Charleston City's proposed RICO claim against the PBMs has expired. Charleston City filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Charleston, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45398-DAP, ECF No. 14. It is therefore indisputable that Charleston City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Charleston City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Charleston City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Charleston City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 389. *Tallahatchie County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45399-DAP: Plaintiff Tallahatchie County, Mississippi**

Tallahatchie County's untimely motion for leave to amend should be denied for several reasons. Tallahatchie County failed to provide notice of its proposed amendments through a proposed complaint. Tallahatchie County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tallahatchie County's motion should be denied due to futility, as Tallahatchie County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tallahatchie County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tallahatchie County amended its complaint on March 7, 2019, after transfer to the MDL on April 11, 2018. *See Tallahatchie County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45399-DAP, ECF No. 6. Unlike many other plaintiffs, Tallahatchie County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tallahatchie County's deadline to amend was in 2019. Tallahatchie County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tallahatchie County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Tallahatchie County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Tallahatchie County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tallahatchie County fails to explain why it was unable

to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tallahatchie County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.18% market share for Tallahatchie County). That insignificant dispensing volume is much too low to support a finding of good cause for Tallahatchie County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tallahatchie County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tallahatchie County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tallahatchie County filed its original complaint on March 26, 2018. *See Tallahatchie County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45399-DAP, ECF No. 1. Despite filing its case years ago, Tallahatchie

County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Tallahatchie County's case would force the parties and the Court to waste time and resources ascertaining the extent of Tallahatchie County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tallahatchie County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tallahatchie County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tallahatchie County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tallahatchie County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tallahatchie County's proposed RICO claim against the PBMs has expired. Tallahatchie County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against

other defendants. *See Tallahatchie County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45399-DAP, ECF No. 6. It is therefore indisputable that Tallahatchie County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Tallahatchie County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tallahatchie County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tallahatchie County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **390.** ***Allen County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45401-DAP: Plaintiff Allen County, Ohio**

Allen County's untimely motion for leave to amend should be denied for several reasons. Allen County failed to provide notice of its proposed amendments through a proposed complaint. Allen County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Allen County's motion should be denied due to futility, as Allen County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Allen County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Allen County amended its complaint on March 16, 2019, after directly filing in the MDL. *See Allen County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45401-DAP, ECF No. 23. Unlike many other plaintiffs, Allen County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Allen County's deadline to amend was in 2019. Allen County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Allen County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Allen County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Allen County). That insignificant dispensing volume is much too low to support a finding of good cause for Allen County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Allen County filed its original complaint on April 10, 2018. *See Allen County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45401-DAP, ECF No. 1. Despite filing its case years ago, Allen County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold

Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Allen County's case would force the parties and the Court to waste time and resources ascertaining the extent of Allen County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Allen County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Allen County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Allen County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Allen County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Allen County is a plaintiff in Ohio. Allen County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Allen County's proposed RICO claim against the PBMs has expired. Allen County filed its original complaint on April 10, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Allen County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45401-DAP, ECF No. 1. It is therefore indisputable that Allen County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Allen County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Allen County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Allen County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

391. ***Milwaukee County Wisconsin v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45402-DAP: Plaintiff Milwaukee County, Wisconsin**

Milwaukee County's untimely motion for leave to amend should be denied for several reasons. Milwaukee County failed to provide notice of its proposed amendments through a proposed complaint. Milwaukee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Milwaukee County's motion should be denied due to futility, as Milwaukee County does not assert any allegations tying the PBMs to its alleged harm,

its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Milwaukee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Milwaukee County amended its complaint on March 13, 2019, after transfer to the MDL on April 11, 2018. *See Milwaukee County Wisconsin v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45402-DAP, ECF No. 4. Unlike many other plaintiffs, Milwaukee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Milwaukee County's deadline to amend was in 2019. Milwaukee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Milwaukee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Milwaukee County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Milwaukee County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Milwaukee County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Milwaukee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Milwaukee County). That insignificant dispensing volume is much too low to support a finding of good cause for Milwaukee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Milwaukee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Milwaukee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Milwaukee County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Milwaukee County of the PBM services Express Scripts provides and Milwaukee County began receiving those services on

January 1, 2009. *See id.* Inasmuch as Milwaukee County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Milwaukee County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Milwaukee County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Milwaukee County filed its original complaint on March 14, 2018, but waited until July 25, 2018 to implement a litigation hold. *See Milwaukee County Wisconsin v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45402-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 25, 2018). Milwaukee County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Milwaukee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Milwaukee County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Milwaukee County's proposed RICO claim against the PBMs has expired. Milwaukee County filed its original complaint on March 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Milwaukee County Wisconsin v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45402-DAP, ECF No. 1. It is therefore indisputable that Milwaukee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Milwaukee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Milwaukee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Milwaukee County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 392. *Madison County, Tennessee v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:18-op-45403-DAP: Plaintiff Madison County, Tennessee

Madison County's untimely motion for leave to amend should be denied for several reasons. Madison County failed to provide notice of its proposed amendments through a proposed complaint. Madison County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Madison County's motion should be denied due to futility, as Madison County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Madison County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Madison County amended its complaint on March 8, 2019, after transfer to the MDL on April 11, 2018. *See Madison County, Tennessee v. Amerisourcebergen Drug Cororation et al.*, Case No. 1:18-op-45403-DAP, ECF No. 10. Unlike many other plaintiffs, Madison County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Madison County's deadline to amend was in 2019. Madison County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Madison County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Madison County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Madison County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Madison County fails to

explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Madison County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Madison County). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Madison County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Madison County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Madison County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Madison County's proposed RICO claim against the PBMs has expired. Madison County filed its original complaint on March 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Madison County, Tennessee v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:18-op-45403-DAP, ECF No. 1. It is therefore indisputable that Madison County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Madison County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Madison County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Madison County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

393. ***Henderson County, Tennessee v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-45404-DAP: Plaintiff Henderson County, Tennessee**

Henderson County's untimely motion for leave to amend should be denied for several reasons. Henderson County failed to provide notice of its proposed amendments through a proposed complaint. Henderson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Henderson County's motion should be denied due to futility, as Henderson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Henderson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Henderson County amended its complaint on March 8, 2019, after transfer to the MDL on April 11, 2018. *See Henderson County, Tennessee v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-45404-DAP, ECF No. 10. Unlike many other plaintiffs, Henderson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Henderson County's deadline to amend was in 2019. Henderson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Henderson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Henderson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Henderson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Henderson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Henderson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Henderson County). That insignificant dispensing volume is much too low to support a finding of good cause for Henderson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Henderson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Henderson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Henderson County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Henderson County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Henderson County of this deficiency on September 16, 2024 (*see* Exhibit B), but Henderson County refused to amend or supplement its Fact Sheet. Under this Court's orders, Henderson County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Henderson County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Henderson County's potential claims against them. Henderson County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Henderson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Henderson County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Henderson County's proposed RICO claim against the PBMs has expired. Henderson County filed its original complaint on March 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Henderson County, Tennessee v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-45404-DAP, ECF No. 1. It is therefore indisputable that Henderson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Henderson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Henderson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Henderson County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

394. ***Grand Rapids, City of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45406-DAP: Plaintiff Grand Rapids City, Michigan**

Grand Rapids City's untimely motion for leave to amend should be denied for several reasons. Grand Rapids City failed to provide notice of its proposed amendments through a proposed complaint. Grand Rapids City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Grand Rapids City's motion should be denied due to futility, as Grand Rapids City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Grand Rapids City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Grand Rapids City amended its complaint on March 16, 2019, after transfer to the MDL on April 12, 2018. *See Grand Rapids, City of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45406-DAP, ECF No. 23. Unlike many other plaintiffs, Grand Rapids City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Grand Rapids City's deadline to amend was in 2019. Grand Rapids City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Grand Rapids City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Grand Rapids City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Grand Rapids City). That insignificant dispensing volume is much too low to support a finding of good cause for Grand Rapids City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Grand Rapids City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Grand Rapids City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Grand Rapids City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Grand Rapids City, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Grand Rapids City's proposed RICO claim against the PBMs has expired. Grand Rapids City filed its original complaint on March 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Grand Rapids, City of v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45406-DAP, ECF No. 1. It is therefore indisputable that Grand Rapids City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Grand Rapids City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Grand Rapids City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Grand Rapids City, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 395. *Chambers County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45408-DAP: Plaintiff Chambers County, Alabama

Chambers County's untimely motion for leave to amend should be denied for several reasons. Chambers County failed to provide notice of its proposed amendments through a proposed complaint. Chambers County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chambers County's motion should be denied due to futility, as Chambers County does not assert any allegations tying the PBMs to its alleged harm, its proposed

public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chambers County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chambers County filed its original complaint on March 20, 2018 and the case was transferred to the MDL on April 12, 2018. *See Chambers County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45408-DAP, ECF No. 17. Chambers County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Chambers County elected not to do so. Instead, Chambers County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chambers County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chambers County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Chambers County). That insignificant dispensing volume is much too low to support a finding of good cause for Chambers County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chambers County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chambers County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Chambers County filed its original complaint on March, 20, 2018. *See Chambers County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45408-DAP, ECF No. 1. Despite filing its case years ago, Chambers County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Chambers County's case would force the parties and the Court to waste time and resources ascertaining the extent of Chambers County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chambers County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chambers County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chambers County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chambers County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chambers County's proposed RICO claim against the PBMs has expired. Chambers County filed its original complaint on March 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Chambers County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45408-DAP, ECF No. 1. It is therefore indisputable that Chambers County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Chambers County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chambers County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Chambers County's public-nuisance claim against the PBMs is therefore time-barred because Chambers County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Chambers County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Chambers County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

396. ***Thurston County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45409-DAP: Plaintiff Thurston County, Washington**

Thurston County's untimely motion for leave to amend should be denied for several reasons. Thurston County failed to provide notice of its proposed amendments through a proposed complaint. Thurston County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Thurston County's motion should be denied due to futility, as Thurston County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Thurston County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Thurston County amended its complaint on March 15, 2019, after transfer to the MDL on April 12, 2018, as well as on May 28, 2019 and December 30, 2020. *See Thurston County v. Purdue*

*Pharma, L.P. et al.*, Case No. 1:18-op-45409-DAP, ECF Nos. 25, 27, 31. Unlike many other plaintiffs, Thurston County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Thurston County's deadline to amend was in 2019. Thurston County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Thurston County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Thurston County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Thurston County). That insignificant dispensing volume is much too low to support a finding of good cause for Thurston County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Thurston County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Thurston County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Thurston County filed its original complaint on March, 26, 2018, but waited until July 10, 2018 to implement a litigation hold. *See Thurston County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45409-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 10, 2018). Thurston County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Thurston County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Thurston County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Thurston County's proposed RICO claim against the PBMs has expired. Thurston County filed its original complaint on March, 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Thurston County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45409-DAP, ECF No. 1. It

is therefore indisputable that Thurston County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Thurston County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Thurston County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Thurston County's public-nuisance claim against the PBMs is therefore time-barred because Thurston County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March, 26, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Thurston County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

397. ***Walthall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45411-DAP: Plaintiff Walthall County, Mississippi**

Walthall County's untimely motion for leave to amend should be denied for several reasons. Walthall County failed to provide notice of its proposed amendments through a proposed complaint. Walthall County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Walthall County's motion should be denied due to futility, as Walthall County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Walthall County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Walthall County amended its complaint on March 12, 2019, after transfer to the MDL on April 12, 2018. *See Walthall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45411-DAP, ECF No. 8. Unlike many other plaintiffs, Walthall County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Walthall County's deadline to amend was in 2019. Walthall County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Walthall County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Walthall County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Walthall County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Walthall County fails to explain why it was unable to

assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Walthall County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Walthall County). That insignificant dispensing volume is much too low to support a finding of good cause for Walthall County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Walthall County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Walthall County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Walthall County filed its original complaint on March 26, 2018. *See Walthall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45411-DAP, ECF No. 1. Despite filing its case years ago, Walthall County *never*

implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Walthall County's case would force the parties and the Court to waste time and resources ascertaining the extent of Walthall County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Walthall County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Walthall County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Walthall County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Walthall County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Walthall County's proposed RICO claim against the PBMs has expired. Walthall County filed its amended complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Walthall County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45411-DAP, ECF No. 8. It is therefore indisputable that Walthall County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Walthall County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Walthall County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Walthall County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 398. *Bibb County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45413-DAP: Plaintiff Bibb County, Alabama

Bibb County's untimely motion for leave to amend should be denied for several reasons. Bibb County failed to provide notice of its proposed amendments through a proposed complaint. Bibb County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bibb County's motion should be denied due to futility, as Bibb County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bibb County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Bibb County amended its complaint on March 6, 2019, after transfer to the MDL on April 12, 2018. *See Bibb County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45413-DAP, ECF No. 11. Unlike many other plaintiffs, Bibb County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bibb County's deadline to amend was in 2019. Bibb County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bibb County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bibb County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bibb County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bibb County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bibb County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Bibb County). That insignificant dispensing volume is much too low to support a finding of good cause for Bibb County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bibb County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bibb County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bibb County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bibb County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bibb County of this deficiency on September 16, 2024 (*see* Exhibit B), but Bibb County refused to amend or supplement its Fact Sheet. Under this Court's orders, Bibb County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bibb County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Bibb County's potential claims against them. Bibb County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bibb County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bibb County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bibb County's proposed RICO claim against the PBMs has expired. Bibb County filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bibb County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45413-DAP, ECF No. 1. It is therefore indisputable that Bibb County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bibb County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bibb County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Bibb County's public-nuisance claim against the PBMs is therefore time-barred because Bibb County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 26, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Bibb County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Bibb County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

399. ***Shelby County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45414-DAP: Plaintiff Shelby County, Alabama**

Shelby County's untimely motion for leave to amend should be denied for several reasons. Shelby County failed to provide notice of its proposed amendments through a proposed complaint. Shelby County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Shelby County's motion should be denied due to futility, as Shelby County does not

assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Shelby County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Shelby County filed its original complaint on March 26, 2018 and the case was transferred to the MDL on April 12, 2018. *See Shelby County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45414-DAP, ECF No. 22. Shelby County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Shelby County elected not to do so. Instead, Shelby County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Shelby County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Shelby County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Shelby County). That insignificant dispensing volume is much too low to support a finding of good cause for Shelby County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Shelby County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Shelby County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Shelby County filed its original complaint on March 26, 2018. *See Shelby County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45414-DAP, ECF No. 1. Despite filing its case years ago, Shelby County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Shelby County's case would force the parties and the Court to waste time and resources ascertaining the extent of Shelby County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Shelby County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Shelby County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shelby County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shelby County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Shelby County's proposed RICO claim against the PBMs has expired. Shelby County filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Shelby County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45414-DAP, ECF No. 1. It is therefore indisputable that Shelby County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Shelby County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shelby County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Shelby County's public-nuisance claim against the PBMs is therefore time-barred because Shelby County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 26, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Shelby County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Shelby County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 400.    *Blount County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45415-DAP: Plaintiff Blount County, Alabama

Blount County's untimely motion for leave to amend should be denied for several reasons. Blount County failed to provide notice of its proposed amendments through a proposed complaint. Blount County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Blount County's motion should be denied due to futility, as Blount County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Blount County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Blount County filed its original complaint on March 28, 2018 and the case was transferred to the

MDL on April 12, 2018. *See Blount County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45415-DAP, ECF No. 8. Blount County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Blount County elected not to do so. Instead, Blount County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Blount County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Blount County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Blount County). That insignificant dispensing volume is much too low to support a finding of good cause for Blount County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Blount County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Blount County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Blount County filed its original complaint on March 28, 2018. *See Blount County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45415-DAP, ECF No. 1. Despite filing its case years ago, Blount County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Blount County's case would force the parties and the Court to waste time and resources ascertaining the extent of Blount County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Blount County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Blount County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Blount County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Blount County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Blount County of this deficiency on September 16, 2024 (*see* Exhibit B), but Blount County refused to amend or supplement its Fact Sheet. Under this Court's orders, Blount County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Blount County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Blount County's potential claims against them. Blount County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Blount County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Blount County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Blount County's proposed RICO claim against the PBMs has expired. Blount County filed its original complaint on March 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Blount County Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45415-DAP, ECF No. 1. It is therefore indisputable that Blount County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Blount County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Blount County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Blount County's public-nuisance claim against the PBMs is therefore time-barred because Blount County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 28, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Blount County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at \*4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Blount County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 401. *City of Midfield v. Purdue Pharma LP et al.*, Case No. 1:18-op-45416-DAP: Plaintiff Midfield City, Alabama

Midfield City's untimely motion for leave to amend should be denied for several reasons. Midfield City failed to provide notice of its proposed amendments through a proposed complaint. Midfield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Midfield City's motion should be

denied due to futility, as Midfield City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Midfield City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Midfield City filed its original complaint on March 27, 2018 and the case was transferred to the MDL on April 11, 2018. *See Midfield, City of v. Purdue Pharma LP et al.*, Case No. 1:18-op-45416-DAP, ECF No. 7. Midfield City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Midfield City elected not to do so. Instead, Midfield City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Midfield City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Midfield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Midfield City). That insignificant dispensing volume is much too low to support a finding of good cause for Midfield City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Midfield City filed its original complaint on March 27, 2018. *See Midfield, City of v. Purdue Pharma LP et al.*, Case No. 1:18-op-45416-DAP, ECF No. 1. Despite filing its case years ago, Midfield City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Midfield City's case would force the parties and the Court to waste time and resources ascertaining the extent of Midfield City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Midfield City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Midfield City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Midfield City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Midfield City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Midfield City of this deficiency on September 16, 2024 (*see* Exhibit B), but Midfield City refused to amend or supplement its Fact Sheet. Under this Court's orders, Midfield City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Midfield City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Midfield

City's potential claims against them. Midfield City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Midfield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Midfield City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Midfield City's proposed RICO claim against the PBMs has expired. Midfield City filed its original complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Midfield, City of v. Purdue Pharma LP et al.*, Case No. 1:18-op-45416-DAP, ECF No. 1. It is therefore indisputable that Midfield City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Midfield City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of

[the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Midfield City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Midfield City's public-nuisance claim against the PBMs is therefore time-barred because Midfield City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Midfield City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **402.** *Montgomery County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45418-DAP: Plaintiff Montgomery County, Tennessee**

Montgomery County's untimely motion for leave to amend should be denied for several reasons. Montgomery County failed to provide notice of its proposed amendments through a proposed complaint. Montgomery County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Montgomery County's motion should be denied due to futility, as Montgomery County does not assert any allegations tying the PBMs to its alleged

harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Montgomery County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Montgomery County amended its complaint on March 6, 2019, after transfer to the MDL on April 12, 2018. *See Montgomery County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45418-DAP, ECF No. 11. Unlike many other plaintiffs, Montgomery County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Montgomery County's deadline to amend was in 2019. Montgomery County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Montgomery County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Montgomery County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Montgomery County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Montgomery County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Montgomery County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Montgomery County). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Montgomery County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Montgomery County violated its basic duty to implement a timely litigation hold. Montgomery County filed its original complaint on March 26, 2018, but waited until January 9, 2020 to implement a litigation hold—over a year and a half later. *See Montgomery County, Tennessee v. AmerisourceBergen Drug Corporation et al.*,

Case No. 1:18-op-45418-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 9, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Montgomery County's case would force the parties and the Court to waste time and resources ascertaining the extent of Montgomery County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Montgomery County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Montgomery County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Montgomery County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Montgomery County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Montgomery County's proposed RICO claim against the PBMs has expired. Montgomery County filed its original

complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Montgomery County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45418-DAP, ECF No. 1. It is therefore indisputable that Montgomery County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Montgomery County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Montgomery County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Montgomery County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 403. *Fentress County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45419-DAP: Plaintiff Fentress County, Tennessee

Fentress County's untimely motion for leave to amend should be denied for several reasons. Fentress County failed to provide notice of its proposed amendments through a proposed complaint. Fentress County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fentress County's motion should be denied due to futility, as Fentress County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fentress County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Fentress County amended its complaint on March 8, 2019, after transfer to the MDL on April 12, 2018. *See Fentress County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45419-DAP, ECF No. 11. Unlike many other plaintiffs, Fentress County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fentress County's deadline to amend was in 2019. Fentress County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fentress County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fentress County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Fentress County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fentress County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fentress County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Fentress County). That insignificant dispensing volume is much too low to support a finding of good cause for Fentress County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fentress County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fentress County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fentress County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fentress County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fentress County's proposed RICO claim against the PBMs has expired. Fentress County filed its original complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fentress County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45419-DAP, ECF No. 1. It is therefore indisputable that Fentress County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Fentress County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fentress County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fentress County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 404. *Hale County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45420-DAP: Plaintiff Hale County, Alabama

Hale County's untimely motion for leave to amend should be denied for several reasons. Hale County failed to provide notice of its proposed amendments through a proposed complaint. Hale County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hale County's motion should be denied due to futility, as Hale County does not assert

any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hale County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hale County filed its original complaint on March 27, 2018 and the case was transferred to the MDL on April 13, 2018. *See Hale County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45420-DAP, ECF No. 8. Hale County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Hale County elected not to do so. Instead, Hale County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hale County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hale County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Hale County). That insignificant dispensing volume is much too low to support a finding of good cause for Hale County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hale County filed its original complaint on March 27, 2018. *See Hale County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45420-DAP, ECF No. 1. Despite filing its case years ago, Hale County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hale County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hale County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hale County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hale County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hale County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hale County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hale County's proposed RICO claim against the PBMs has expired. Hale County filed its original complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hale County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45420-DAP, ECF No. 1. It is therefore indisputable that Hale County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hale County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hale County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Hale County's public-nuisance claim against the PBMs is therefore time-barred because Hale County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Hale County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and

thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Hale County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 405. *City of Greensboro, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45421-DAP: Plaintiff Greensboro City, Alabama

Greensboro City's untimely motion for leave to amend should be denied for several reasons. Greensboro City failed to provide notice of its proposed amendments through a proposed complaint. Greensboro City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greensboro City's motion should be denied due to futility, as Greensboro City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greensboro City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greensboro City filed its original complaint on March 27, 2018 and the case was transferred to the MDL on April 13, 2018. *See City of Greensboro, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45421-DAP, ECF No. 10. Greensboro City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Greensboro City elected not to do so. Instead, Greensboro City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Greensboro City's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Greensboro City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Greensboro City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Greensboro City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Greensboro City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Greensboro City filed its original complaint on March 27, 2018. *See City of Greensboro, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45421-DAP, ECF No. 1. Despite filing its case years ago, Greensboro City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Greensboro City's case would force the parties and the Court to waste time and resources ascertaining the extent of Greensboro City's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Greensboro City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Greensboro City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Greensboro City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Greensboro City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Greensboro City of this deficiency on September 16, 2024 (*see* Exhibit B), but Greensboro City refused to amend or supplement its Fact Sheet. Under this Court's orders, Greensboro City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Greensboro City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Greensboro City's potential claims against them. Greensboro City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greensboro City's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greensboro City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greensboro City's proposed RICO claim against the PBMs has expired. Greensboro City filed its original complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Greensboro, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45421-DAP, ECF No. 1. It is therefore indisputable that Greensboro City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Greensboro City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greensboro City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Greensboro City's public-nuisance claim against the PBMs is therefore time-barred because Greensboro City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 27, 2018—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Greensboro City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 406. *City of Evergreen, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45422-DAP: Plaintiff Evergreen City, Alabama

Evergreen City's untimely motion for leave to amend should be denied for several reasons. Evergreen City failed to provide notice of its proposed amendments through a proposed complaint. Evergreen City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Evergreen City's motion should be denied due to futility, as Evergreen City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Evergreen City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Evergreen City filed its original complaint on March 15, 2018, and the case was transferred to the MDL on April 13, 2018. *See City of Evergreen, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45422-DAP, ECF No. 16. Evergreen City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Evergreen City elected not to do so. Instead, Evergreen City waited five years after its deadline to

amend to seek leave to assert claims against the PBMs. Evergreen City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Evergreen City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Evergreen City). That insignificant dispensing volume is much too low to support a finding of good cause for Evergreen City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Evergreen City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Evergreen City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Evergreen City filed its original complaint on March 15, 2018. *See City of Evergreen, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45422-DAP, ECF No. 1. Despite filing its case years ago, Evergreen City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1

(Date Litigation Hold Implemented: Never). Litigating Evergreen City's case would force the parties and the Court to waste time and resources ascertaining the extent of Evergreen City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Evergreen City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Evergreen City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Evergreen City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Evergreen City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Evergreen City's proposed RICO claim against the PBMs has expired. Evergreen City filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Evergreen, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45422-DAP, ECF No. 1. It is therefore indisputable that Evergreen City knew of its RICO injury, at the very latest, the

day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Evergreen City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Evergreen City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Evergreen City's public-nuisance claim against the PBMs is therefore time-barred because Evergreen City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Evergreen City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 407. *Town of Yellow Bluff, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45423-DAP: Plaintiff Yellow Bluff Town, Alabama

Yellow Bluff Town's untimely motion for leave to amend should be denied for several reasons. Yellow Bluff Town failed to provide notice of its proposed amendments through a proposed complaint. Yellow Bluff Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would

unduly prejudice the PBMs. Moreover, Yellow Bluff Town's motion should be denied due to futility, as Yellow Bluff Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Yellow Bluff Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Yellow Bluff Town filed its original complaint on March 15, 2018, and the case was transferred to the MDL on April 13, 2018. *See Town of Yellow Bluff, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45423-DAP, ECF No. 17. Yellow Bluff Town could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Yellow Bluff Town elected not to do so. Instead, Yellow Bluff Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Yellow Bluff Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Yellow Bluff Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Yellow Bluff Town

cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Yellow Bluff Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Yellow Bluff Town filed its original complaint on March 15, 2018. *See Town of Yellow Bluff, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45423-DAP, ECF No. 1. Despite filing its case years ago, Yellow Bluff Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Yellow Bluff Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Yellow Bluff Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Yellow Bluff Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Yellow Bluff Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Yellow Bluff Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Yellow Bluff Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Yellow Bluff Town's proposed RICO claim against the PBMs has expired. Yellow Bluff Town filed its original complaint on March 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Yellow Bluff, Alabama v. Purdue Pharma, L.P.*, Case No. 1:18-op-45423-DAP, ECF No. 1. It is therefore indisputable that Yellow Bluff Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Yellow Bluff Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Yellow Bluff Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Yellow Bluff Town's public-nuisance claim against the PBMs is therefore time-barred because Yellow Bluff Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Yellow Bluff Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **408.** *City of North Royalton v. AmerisourceBergen Drug Corporation, et al.,* **Case No. 1:18-op-45427-DAP: Plaintiff North Royalton City, Ohio**

North Royalton City's untimely motion for leave to amend should be denied for several reasons. North Royalton City failed to provide notice of its proposed amendments through a proposed complaint. North Royalton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Royalton City's motion should be denied due to futility, as North Royalton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Royalton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Royalton City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of North Royalton v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45427-DAP, ECF No. 4. Unlike many other plaintiffs, North Royalton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Royalton City's deadline to amend was in 2019. North Royalton City waited five years after its deadline to

amend to seek leave to assert claims against the PBMs. North Royalton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to North Royalton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.30% market share for North Royalton City). That insignificant dispensing volume is much too low to support a finding of good cause for North Royalton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** North Royalton City filed its original complaint on April 13, 2018. *See City of North Royalton v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45427-DAP, ECF No. 1. Despite filing its case years ago, North Royalton City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating North Royalton City's case would force the parties and the Court to waste time and resources ascertaining the extent of North Royalton City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by North Royalton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and North Royalton

City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, North Royalton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to North Royalton City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified North Royalton City of this deficiency on September 16, 2024 (*see* Exhibit B), but North Royalton City refused to amend or supplement its Fact Sheet. Under this Court's orders, North Royalton City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. North Royalton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against North Royalton City's potential claims against them. North Royalton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Royalton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Royalton City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** North Royalton City is a plaintiff in Ohio. North Royalton City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for North Royalton City's proposed RICO claim against the PBMs has expired. North Royalton City filed its original complaint on April 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of North Royalton v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45427-DAP, ECF No. 1. It is therefore indisputable that North Royalton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. North Royalton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Royalton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** North Royalton City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **409.** *St. Louis County, Minnesota v. Purdue Pharma L.P., et al.***, Case No. 1:18-op-45430-DAP: Plaintiff St. Louis County, Minnesota**

St. Louis County's untimely motion for leave to amend should be denied for several reasons. St. Louis County failed to provide notice of its proposed amendments through a proposed complaint. St. Louis County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Louis County's motion should be denied due to futility, as St. Louis County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Louis County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Louis County amended its complaint on March 15, 2019, after transfer to the MDL on April 13, 2018. *See St. Louis County, Minnesota v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45430-DAP, ECF No. 20. Unlike many other plaintiffs, St. Louis County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Louis County's deadline to amend was in 2019. St. Louis County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Louis County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Louis County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for St. Louis County). That insignificant dispensing volume is much too low to support a finding of good cause for St. Louis County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Louis County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Louis County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Louis County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Louis County, a municipality in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Louis County's proposed RICO claim against the PBMs has expired. St. Louis County filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See St. Louis County, Minnesota v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45430-DAP, ECF No. 20. It is therefore indisputable that St. Louis County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. St. Louis County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Louis County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Louis County, a municipality in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 410. *City of Huron v. Cardinal Health Inc. et al.*, Case No. 1:18-op-45431-DAP: Plaintiff Huron City, Ohio

Huron City's untimely motion for leave to amend should be denied for several reasons. Huron City failed to provide notice of its proposed amendments through a proposed complaint. Huron City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Huron City's motion should be

denied due to futility, as Huron City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Huron City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Huron City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Huron v. Cardinal Health Inc. et al.*, Case No. 1:18-op-45431-DAP, ECF No. 4. Unlike many other plaintiffs, Huron City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Huron City's deadline to amend was in 2019. Huron City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Huron City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Huron City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Huron City). That insignificant dispensing volume is much too low to support a finding of good cause for Huron City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Huron City filed its original complaint on April 13, 2018. *See City of Huron v. Cardinal Health Inc. et al.*, Case No. 1:18-op-45431-DAP, ECF

No. 1. Despite filing its case years ago, Huron City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Huron City's case would force the parties and the Court to waste time and resources ascertaining the extent of Huron City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Huron City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Huron City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Huron City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Huron City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Huron City of this deficiency on September 16, 2024 (*see* Exhibit B), but Huron City refused to amend or supplement its Fact Sheet. Under this Court's orders, Huron City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Huron City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Huron City's potential claims against them. Huron City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in

litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Huron City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Huron City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Huron City is a plaintiff in Ohio. Huron City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Huron City's proposed RICO claim against the PBMs has expired. Huron City filed its original complaint on April 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Huron v. Cardinal Health Inc. et al.*, Case No. 1:18-op-45431-DAP, ECF No. 1. It is therefore indisputable that Huron City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Huron City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that

the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Huron City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Huron City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 411. *City of Fostoria v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45433-DAP: Plaintiff Fostoria City, Ohio

Fostoria City's untimely motion for leave to amend should be denied for several reasons. Fostoria City failed to provide notice of its proposed amendments through a proposed complaint. Fostoria City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fostoria City's motion should be denied due to futility, as Fostoria City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fostoria City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fostoria City filed its original complaint on March 12, 2018 and the case was transferred to the MDL on April 13, 2018. *See City of Fostoria v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45433-DAP, ECF No. 1-3. Fostoria City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Fostoria City elected not to do so. Instead, Fostoria City waited five years after its deadline to amend to

seek leave to assert claims against the PBMs. Fostoria City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fostoria City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Fostoria City). That insignificant dispensing volume is much too low to support a finding of good cause for Fostoria City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Fostoria City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Fostoria City of the PBM services Express Scripts provides and Fostoria City began receiving those services on January 3, 2006. *See id.* Inasmuch as Fostoria City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Fostoria City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Fostoria City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at

879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Fostoria City filed its original complaint on March 12, 2018. *See City of Fostoria v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45433-DAP, ECF No. 1-3. Despite filing its case years ago, Fostoria City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fostoria City's case would force the parties and the Court to waste time and resources ascertaining the extent of Fostoria City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fostoria City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fostoria City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fostoria City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fostoria City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Fostoria City is a plaintiff in Ohio. Fostoria City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Fostoria City's proposed RICO claim against the PBMs has expired. Fostoria City filed its original complaint on March 12, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Fostoria v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45433-DAP, ECF No. 1-3. Even assuming *arguendo* that Fostoria City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 12, 2022. Fostoria City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fostoria City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fostoria City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**412.**  *City of Warren v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45434-DAP: Plaintiff Warren City, Ohio**

Warren City's untimely motion for leave to amend should be denied for several reasons. Warren City failed to provide notice of its proposed amendments through a proposed complaint. Warren City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Warren City's motion should be denied due to futility, as Warren City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Warren City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Warren City amended its complaint on March 18, 2019, after transfer to the MDL on April 13, 2018. *See City of Warren v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45434-DAP, ECF No. 1-8. Unlike many other plaintiffs, Warren City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Warren City's deadline to amend was in 2019. Warren City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Warren City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Warren City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding

Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Warren City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Warren City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Warren City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Warren City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Warren City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Warren City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Warren City). That insignificant dispensing volume is much too

low to support a finding of good cause for Warren City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Warren City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Warren City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Warren City of this deficiency on September 16, 2024 (*see* Exhibit B), but Warren City refused to amend or supplement its Fact Sheet. Under this Court's orders, Warren City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Warren City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Warren City's potential claims against them. Warren City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Warren City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Warren City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Warren City is a plaintiff in Ohio. Warren City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Warren City's proposed RICO claim against the PBMs has expired. Warren City filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Warren v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45434-DAP, ECF No. 8. It is therefore indisputable that Warren City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Warren City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Warren City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Warren City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 413. *Town of McKenzie, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45435-DAP: Plaintiff McKenzie Town, Alabama

McKenzie Town's untimely motion for leave to amend should be denied for several reasons. McKenzie Town failed to provide notice of its proposed amendments through a proposed complaint. McKenzie Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, McKenzie Town's motion should be denied due to futility, as McKenzie Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** McKenzie Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, McKenzie Town filed its original complaint on March 19, 2018 and the case was transferred to the MDL on April 17, 2018. *See Town of McKenzie, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45435-DAP, ECF No. 32. McKenzie Town could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, McKenzie Town elected not to do so. Instead, McKenzie Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. McKenzie Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in McKenzie Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** McKenzie Town filed its original complaint on March 19, 2018. *See Town of McKenzie, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45435-DAP, ECF No. 1. Despite filing its case years ago, McKenzie Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating McKenzie Town's case would force the parties and the Court to waste time and resources ascertaining the extent of McKenzie Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by McKenzie Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and McKenzie Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But McKenzie Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** McKenzie Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for McKenzie Town's proposed RICO claim against the PBMs has expired. McKenzie Town filed its original complaint on March 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of McKenzie, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45435-DAP, ECF No. 1. It is therefore indisputable that McKenzie Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. McKenzie Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. McKenzie Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. McKenzie Town's public-nuisance claim against the PBMs is therefore time-barred because McKenzie Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 19, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** McKenzie Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 414. *City of Georgiana, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45436-DAP: Plaintiff Georgiana Town, Alabama

Georgiana Town's untimely motion for leave to amend should be denied for several reasons. Georgiana Town failed to provide notice of its proposed amendments through a proposed complaint. Georgiana Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Georgiana Town's motion should be denied due to futility, as Georgiana Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Georgiana Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Georgiana Town filed its original complaint on March 19, 2018 and the case was transferred to the MDL on April 17, 2018. *See City of Georgiana, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45436-DAP, ECF No. 22. Georgiana Town could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Georgiana Town elected not to do so. Instead, Georgiana Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Georgiana Town's lack

of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Georgiana Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Georgiana Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Georgiana Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Georgiana Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Georgiana Town filed its original complaint on March 19, 2018. *See City of Georgiana, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45436-DAP, ECF No. 1. Despite filing its case years ago, Georgiana Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Georgiana Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Georgiana Town's

document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Georgiana Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Georgiana Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Georgiana Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Georgiana Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Georgiana Town's proposed RICO claim against the PBMs has expired. Georgiana Town filed its original complaint on March 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Georgiana, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45436-DAP, ECF No. 1. It is therefore indisputable that Georgiana Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Georgiana Town's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Georgiana Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Georgiana Town's public-nuisance claim against the PBMs is therefore time-barred because Georgiana Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 19, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Georgiana Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 415. *City of Abbeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45437-DAP: Plaintiff Abbeville City, Alabama

Abbeville City's untimely motion for leave to amend should be denied for several reasons. Abbeville City failed to provide notice of its proposed amendments through a proposed complaint. Abbeville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Abbeville City's motion should be denied due to futility, as Abbeville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Abbeville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Abbeville City filed its original complaint on March 20, 2018 and the case was transferred to the MDL on April 17, 2018. *See City of Abbeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45437-DAP, ECF No. 24. Abbeville City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Abbeville City elected not to do so. Instead, Abbeville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Abbeville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Abbeville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Abbeville City). That insignificant dispensing volume is much too low to support a finding of good cause for Abbeville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Abbeville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Abbeville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Abbeville City filed its original complaint on March 20, 2018. *See City of Abbeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45437-DAP, ECF No. 1. Despite filing its case years ago, Abbeville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Abbeville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Abbeville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Abbeville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Abbeville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Abbeville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Abbeville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Abbeville City's proposed RICO claim against the PBMs has expired. Abbeville City filed its original complaint on March 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Abbeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45437-DAP, ECF No. 1. It is therefore indisputable that Abbeville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Abbeville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Abbeville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Abbeville City's public-nuisance claim against the PBMs is therefore time-barred because Abbeville City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Abbeville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 416. *Butler County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45441-DAP: Plaintiff Butler County, Alabama

Butler County's untimely motion for leave to amend should be denied for several reasons. Butler County failed to provide notice of its proposed amendments through a proposed complaint. Butler County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Butler County's motion should be denied due to futility, as Butler County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Butler County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Butler County filed its original complaint on March 20, 2018 and the case was transferred to the MDL on April 18, 2018. *See Butler County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45441-DAP, ECF No. 33. Butler County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Butler County elected not to do so. Instead, Butler County waited five years after its deadline to

amend to seek leave to assert claims against the PBMs. Butler County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Butler County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Butler County). That insignificant dispensing volume is much too low to support a finding of good cause for Butler County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Butler County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Butler County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Butler County filed its original complaint on March 20, 2018. *See Butler County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45441-DAP, ECF No. 1. Despite filing its case years ago, Butler County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1

(Date Litigation Hold Implemented: Never). Litigating Butler County's case would force the parties and the Court to waste time and resources ascertaining the extent of Butler County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Butler County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Butler County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

    **Failure to Prosecute.** In its Plaintiff Fact Sheet, Butler County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Butler County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Butler County of this deficiency on September 16, 2024 (*see* Exhibit B), but Butler County refused to amend or supplement its Fact Sheet. Under this Court's orders, Butler County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Butler County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Butler County's potential claims against them. Butler County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Butler County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Butler County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Butler County's proposed RICO claim against the PBMs has expired. Butler County filed its original complaint on March 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Butler County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45441-DAP, ECF No. 1. It is therefore indisputable that Butler County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Butler County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Butler County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Butler County's public-nuisance claim against the PBMs is

therefore time-barred because Butler County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Butler County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Butler County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 417. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Clackamas County, Oregon

Clackamas County's untimely motion for leave to amend should be denied for several reasons. Clackamas County failed to provide notice of its proposed amendments through a proposed complaint. Clackamas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clackamas County's motion should be denied due to futility, as Clackamas County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clackamas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clackamas County first amended its complaint on June 8, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 7. Clackamas County amended its complaint again on March 16, 2019. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. Unlike many other plaintiffs, Clackamas County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Clackamas County's deadline to amend was in 2019. Clackamas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clackamas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clackamas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Clackamas County). That insignificant dispensing volume is much too low to support a finding of good cause for Clackamas County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Clackamas County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clackamas County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Clackamas County filed its original complaint on March 27, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 1. Despite filing its case years ago, Clackamas County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Clackamas County's case would force the parties and the Court to waste time and resources ascertaining the extent of Clackamas County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clackamas County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clackamas County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clackamas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clackamas County, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clackamas County's proposed RICO claim against the PBMs has expired. Clackamas County filed its second amended complaint on March 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. It is therefore indisputable that Clackamas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Clackamas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clackamas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clackamas County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

418. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Clatsop County, Oregon

Clatsop County's untimely motion for leave to amend should be denied for several reasons. Clatsop County failed to provide notice of its proposed amendments through a proposed complaint. Clatsop County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clatsop County's motion should be denied due to futility, as Clatsop County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clatsop County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clatsop County first joined its case on June 8, 2018.

 *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 7. Clatsop County amended its complaint on March 16, 2019. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. Unlike many other plaintiffs, Clatsop County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Clatsop County's deadline to amend was in 2019. Clatsop County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clatsop County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clatsop County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Clatsop County). That insignificant dispensing volume is much too low to support a finding of good cause for Clatsop County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clatsop County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clatsop County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Clatsop County joined its case on June 8, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 7. Despite filing its case years ago, Clatsop County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Clatsop County's case would force the parties and the Court to waste time and resources ascertaining the extent of Clatsop County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clatsop County's disregard for its most basic discovery obligations as a litigant, compounded by

the delay in seeking leave to amend, and Clatsop County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clatsop County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clatsop County, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clatsop County's proposed RICO claim against the PBMs has expired. Clatsop County amended its complaint on March 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. It is therefore indisputable that Clatsop County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Clatsop County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clatsop County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clatsop County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 419. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Columbia County, Oregon

Columbia County's untimely motion for leave to amend should be denied for several reasons. Columbia County failed to provide notice of its proposed amendments through a proposed complaint. Columbia County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Columbia County's motion should be denied due to futility, as Columbia County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Columbia County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Columbia County first amended its complaint on June 8, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 7. Columbia County amended its complaint again on March 16, 2019. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. Unlike many other plaintiffs, Columbia County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Columbia County's deadline to amend was in 2019. Columbia County waited five years after its deadline to amend to seek leave to assert claims against the PBMs.

Columbia County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Columbia County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Columbia County). That insignificant dispensing volume is much too low to support a finding of good cause for Columbia County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Columbia County filed its original complaint on March 27, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 1. Despite filing its case years ago, Columbia County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Columbia County's case would force the parties and the Court to waste time and resources ascertaining the extent of Columbia County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Columbia County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Columbia County therefore lacks

good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Columbia County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Columbia County, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Columbia County's proposed RICO claim against the PBMs has expired. Columbia County filed its second amended complaint on March 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. It is therefore indisputable that Columbia County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking to amend. Columbia County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Columbia County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Columbia County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 420. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Jackson County, Oregon

Jackson County's untimely motion for leave to amend should be denied for several reasons. Jackson County failed to provide notice of its proposed amendments through a proposed complaint. Jackson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jackson County's motion should be denied due to futility, as Jackson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jackson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jackson County first amended its complaint on June 8, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 7. Jackson County amended its complaint again on March 16, 2019. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. Unlike many other plaintiffs, Jackson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Jackson County's deadline to amend was in 2019. Jackson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jackson County's lack of

diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jackson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Jackson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jackson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jackson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jackson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jackson County filed its original complaint on March 27, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 1. Despite filing its case years ago, Jackson County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain

violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jackson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jackson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jackson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jackson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Jackson County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Jackson County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Jackson County of this deficiency on September 16, 2024 (*see* Exhibit B), but Jackson County refused to amend or supplement its Fact Sheet. Under this Court's orders, Jackson County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Jackson County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Jackson County's potential claims against them. Jackson County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jackson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jackson County, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jackson County's proposed RICO claim against the PBMs has expired. Jackson County filed its second amended complaint on March 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. It is therefore indisputable that Jackson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Jackson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jackson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jackson County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **421.** *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Josephine County, Oregon

Josephine County's untimely motion for leave to amend should be denied for several reasons. Josephine County failed to provide notice of its proposed amendments through a proposed complaint. Josephine County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Josephine County's motion should be denied due to futility, as Josephine County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Josephine County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Josephine County first amended its complaint on June 8, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 7. Josephine County amended its complaint again on March 16, 2019. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. Unlike many other plaintiffs, Josephine County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Josephine County's deadline to amend was in 2019. Josephine County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Josephine County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling

order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Josephine County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Josephine County). That insignificant dispensing volume is much too low to support a finding of good cause for Josephine County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Josephine County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Josephine County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Josephine County filed its original complaint on March 27, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 1. Despite filing its case years ago, Josephine County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Josephine County's case would force the parties and the Court to waste time and resources ascertaining the extent of Josephine

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Josephine County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Josephine County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Josephine County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Josephine County, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Josephine County's proposed RICO claim against the PBMs has expired. Josephine County filed its second amended complaint on March 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. It is therefore indisputable that Josephine County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave

to amend. Josephine County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Josephine County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Josephine County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 422. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Lane County, Oregon

Lane County's untimely motion for leave to amend should be denied for several reasons. Lane County failed to provide notice of its proposed amendments through a proposed complaint. Lane County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lane County's motion should be denied due to futility, as Lane County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lane County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lane County first amended its complaint on June 8, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 7. Lane County amended its complaint again on March 16, 2019. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*,

Case No. 1:18-op-45442-DAP, ECF No. 9. Unlike many other plaintiffs, Lane County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Lane County's deadline to amend was in 2019. Lane County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lane County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lane County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Lane County). That insignificant dispensing volume is much too low to support a finding of good cause for Lane County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lane County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lane County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lane County filed its original complaint on March 27, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 1. Despite filing its case years ago, Lane County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lane County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lane County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lane County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lane County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lane County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lane County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lane County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lane County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lane County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lane County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lane County's potential claims against them. Lane County's failure to diligently prosecute its case,

coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lane County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lane County, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lane County's proposed RICO claim against the PBMs has expired. Lane County filed its second amended complaint on March 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. It is therefore indisputable that Lane County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lane County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Lane County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lane County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 423. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Washington County, Oregon

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County first amended its complaint on June 8, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 7. Washington County amended its complaint again on March 16, 2019. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. Unlike many other plaintiffs, Washington County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Washington County's deadline to amend was in 2019. Washington

County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Washington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Washington County filed its original complaint on March 27, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 1. Despite filing its case years ago, Washington County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified

document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)).
This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Washington
County's case would force the parties and the Court to waste time and resources ascertaining the
extent of Washington County's document destruction and the appropriate sanctions—just as the
parties were forced to do in the three PBM bellwethers that failed to implement litigation holds
until 2024. The PBMs are prejudiced by Washington County's disregard for its most basic
discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and
Washington County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020
WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in
significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek
to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in
seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-
fault rights under Oregon law due to the loss of relevant evidence over time. That impairment
substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL
6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Oregon, has not pleaded
any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies
exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from
another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's
proposed RICO claim against the PBMs has expired. Washington County filed its second amended
complaint on March 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against

other defendants. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. It is therefore indisputable that Washington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Washington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washington County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 424. *County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP: Plaintiff Yamhill County, Oregon

Yamhill County's untimely motion for leave to amend should be denied for several reasons. Yamhill County failed to provide notice of its proposed amendments through a proposed complaint. Yamhill County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Yamhill County's motion should be denied due to futility, as Yamhill County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Yamhill County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Yamhill County first amended its complaint on June 8, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 7. Yamhill County amended its complaint again on March 16, 2019. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. Unlike many other plaintiffs, Yamhill County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Yamhill County's deadline to amend was in 2019. Yamhill County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Yamhill County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Yamhill County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Yamhill County). That insignificant dispensing volume is much too low to support a finding of good cause for Yamhill County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Yamhill County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Yamhill County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Yamhill County filed its original complaint on March 27, 2018. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 1. Despite filing its case years ago, Yamhill County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Yamhill County's case would force the parties and the Court to waste time and resources ascertaining the extent of Yamhill County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Yamhill County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Yamhill County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Yamhill County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Yamhill County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Yamhill County of this deficiency on September 16, 2024 (*see* Exhibit B), but Yamhill County refused to amend or supplement its Fact Sheet. Under this Court's orders, Yamhill County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Yamhill County's refusal to

provide basic information related to its health care plans prejudices the PBMs' ability to defend against Yamhill County's potential claims against them. Yamhill County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Yamhill County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Yamhill County, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Yamhill County's proposed RICO claim against the PBMs has expired. Yamhill County filed its second amended complaint on March 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Clackamas et al. v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45442-DAP, ECF No. 9. It is therefore indisputable that Yamhill County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Yamhill County's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Yamhill County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Yamhill County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 425. *City of Macedonia, Ohio v. Amerisource Bergen Drug Corporation et al.*, Case No. 1:18-op-45447-DAP: Plaintiff Macedonia City, Ohio

Macedonia City's untimely motion for leave to amend should be denied for several reasons. Macedonia City failed to provide notice of its proposed amendments through a proposed complaint. Macedonia City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Macedonia City's motion should be denied due to futility, as Macedonia City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Macedonia City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Macedonia City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Macedonia, Ohio v. Amerisource Bergen Drug Corporation et al.*, Case No. 1:18-op-45447-DAP, ECF No. 3. Unlike many other plaintiffs, Macedonia City declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Macedonia City's deadline to amend was in 2019. Macedonia City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Macedonia City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Macedonia City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Macedonia City). That insignificant dispensing volume is much too low to support a finding of good cause for Macedonia City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Macedonia City filed its original complaint on April 17, 2018. *See City of Macedonia, Ohio v. Amerisource Bergen Drug Corporation et al.*, Case No. 1:18-op-45447-DAP, ECF No. 1. Despite filing its case years ago, Macedonia City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Macedonia City's case would force the parties and the Court to waste time and resources ascertaining the extent of Macedonia City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Macedonia City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Macedonia City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Macedonia City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Macedonia City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Macedonia City of this deficiency on September 16, 2024 (*see* Exhibit B), but Macedonia City refused to amend or supplement its Fact Sheet. Under this Court's orders, Macedonia City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Macedonia City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Macedonia City's potential claims against them. Macedonia City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Macedonia City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Macedonia City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Macedonia City is a plaintiff in Ohio. Macedonia City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Macedonia City's proposed RICO claim against the PBMs has expired. Macedonia City filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Macedonia, Ohio v. Amerisource Bergen Drug Corporation et al.*, Case No. 1:18-op-45447-DAP, ECF No. 1. It is therefore indisputable that Macedonia City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Macedonia City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Macedonia City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Macedonia City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 426. *City of East Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45448-DAP: Plaintiff East Cleveland City, Ohio

East Cleveland City's untimely motion for leave to amend should be denied for several reasons. East Cleveland City failed to provide notice of its proposed amendments through a proposed complaint. East Cleveland City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, East Cleveland City's motion should be denied due to futility, as East Cleveland City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** East Cleveland City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, East Cleveland City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of East Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45448-DAP, ECF No. 3. Unlike many other plaintiffs, East Cleveland City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. East Cleveland City's deadline to amend was in 2019. East Cleveland City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. East Cleveland City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because

plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to East Cleveland City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for East Cleveland City). That insignificant dispensing volume is much too low to support a finding of good cause for East Cleveland City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** East Cleveland City filed its original complaint on April 17, 2018. *See City of East Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45448-DAP, ECF No. 1. Despite filing its case years ago, East Cleveland City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating East Cleveland City's case would force the parties and the Court to waste time and resources ascertaining the extent of East Cleveland City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by East Cleveland City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and East Cleveland City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, East Cleveland City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to East Cleveland City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified East Cleveland City of this deficiency on September 16, 2024 (*see* Exhibit B), but East Cleveland City refused to amend or supplement its Fact Sheet. Under this Court's orders, East Cleveland City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. East Cleveland City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against East Cleveland City's potential claims against them. East Cleveland City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But East Cleveland City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** East Cleveland City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** East Cleveland City is a plaintiff in Ohio. East Cleveland City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for East Cleveland City's proposed RICO claim against the PBMs has expired. East Cleveland City filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of East Cleveland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45448-DAP, ECF No. 1. It is therefore indisputable that East Cleveland City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. East Cleveland City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. East Cleveland City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** East Cleveland City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**427.** *Village of Newburgh Heights, Ohio v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45449-DAP: Plaintiff Newburgh Heights Village, Ohio**

Newburgh Heights Village's untimely motion for leave to amend should be denied for several reasons. Newburgh Heights Village failed to provide notice of its proposed amendments through a proposed complaint. Newburgh Heights Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Newburgh Heights Village's motion should be denied due to futility, as Newburgh Heights Village does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Newburgh Heights Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Newburgh Heights Village amended its complaint on March 15, 2019, after directly filing in the MDL. *See Village of Newburgh Heights, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45449-DAP, ECF No. 3. Unlike many other plaintiffs, Newburgh Heights Village declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Newburgh Heights Village's deadline to amend was in 2019. Newburgh Heights Village waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Newburgh Heights Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Newburgh Heights Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Newburgh Heights Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Newburgh Heights Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Newburgh Heights Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Newburgh Heights Village filed its original complaint on April 17, 2018. *See Village of Newburgh Heights, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45449-DAP, ECF No. 1. Despite filing its case years ago, Newburgh Heights Village *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Newburgh Heights Village's case would force the parties and the Court to waste time and resources ascertaining the extent of Newburgh Heights Village's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Newburgh Heights Village's disregard for its most basic discovery obligations as a litigant, compounded by the delay

in seeking leave to amend, and Newburgh Heights Village therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Newburgh Heights Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Newburgh Heights Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Newburgh Heights Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Newburgh Heights Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Newburgh Heights Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Newburgh Heights Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Newburgh Heights Village's potential claims against them. Newburgh Heights Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Newburgh Heights Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Newburgh Heights Village, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Newburgh Heights Village is a plaintiff in Ohio. Newburgh Heights Village's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Newburgh Heights Village's proposed RICO claim against the PBMs has expired. Newburgh Heights Village filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Village of Newburgh Heights, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45449-DAP, ECF No. 1. It is therefore indisputable that Newburgh Heights Village knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Newburgh Heights Village's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Newburgh Heights Village's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Newburgh Heights Village, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **428.** ***Village of Brooklyn Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45450-DAP: Plaintiff Brooklyn Heights Village, Ohio**

Brooklyn Heights Village's untimely motion for leave to amend should be denied for several reasons. Brooklyn Heights Village failed to provide notice of its proposed amendments through a proposed complaint. Brooklyn Heights Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brooklyn Heights Village's motion should be denied due to futility, as Brooklyn Heights Village does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brooklyn Heights Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brooklyn Heights Village amended its complaint on March 15, 2019, after directly filing in the MDL. *See Village of Brooklyn Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45450-DAP, ECF No. 3. Unlike many other plaintiffs, Brooklyn Heights Village declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Brooklyn Heights Village's deadline to amend was in 2019. Brooklyn Heights Village waited five years after its deadline to amend to seek leave to assert claims against the PBMs.

Brooklyn Heights Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Brooklyn Heights Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Brooklyn Heights Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brooklyn Heights Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brooklyn Heights Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Brooklyn Heights Village filed its original complaint on April 17, 2018. *See Village of Brooklyn Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45450-DAP, ECF No. 1. Despite filing its case years ago, Brooklyn Heights Village *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never).

Litigating Brooklyn Heights Village's case would force the parties and the Court to waste time and resources ascertaining the extent of Brooklyn Heights Village's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brooklyn Heights Village's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brooklyn Heights Village therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Brooklyn Heights Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Brooklyn Heights Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Brooklyn Heights Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Brooklyn Heights Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Brooklyn Heights Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Brooklyn Heights Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Brooklyn Heights Village's potential claims against them. Brooklyn Heights Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in

litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brooklyn Heights Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brooklyn Heights Village, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Brooklyn Heights Village is a plaintiff in Ohio. Brooklyn Heights Village's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Brooklyn Heights Village's proposed RICO claim against the PBMs has expired. Brooklyn Heights Village filed its original complaint on April 17, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Brooklyn Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45450-DAP, ECF No. 1. Even assuming *arguendo* that

Brooklyn Heights Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 17, 2022. Brooklyn Heights Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brooklyn Heights Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Brooklyn Heights Village, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **429.** ***Cherokee County, Kansas, Board of Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45452-DAP: Plaintiff Cherokee County, Kansas**

Cherokee County's untimely motion for leave to amend should be denied for several reasons. Cherokee County failed to provide notice of its proposed amendments through a proposed complaint. Cherokee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cherokee County's motion should be denied due to futility, as Cherokee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cherokee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cherokee County amended its complaint on March 13, 2019, after transfer to the MDL

on April 19, 2018. *See Cherokee County, Kansas, Board of Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45452-DAP, ECF No. 8. Unlike many other plaintiffs, Cherokee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cherokee County's deadline to amend was in 2019. Cherokee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cherokee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**<u>Prior Notice Through Counsel.</u>** Cherokee County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cherokee County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cherokee County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cherokee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Cherokee County). That insignificant dispensing volume is much too low to support a finding of good cause for Cherokee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cherokee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cherokee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cherokee County filed its original complaint on April 5, 2018. *See Cherokee County, Kansas, Board of Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45452-DAP, ECF No. 1. Despite filing its case years ago, Cherokee County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cherokee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cherokee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to

1707

implement litigation holds until 2024. The PBMs are prejudiced by Cherokee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cherokee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kansas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cherokee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kansas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cherokee County, a municipality in Kansas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cherokee County's proposed RICO claim against the PBMs has expired. Cherokee County filed its original complaint on April 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cherokee County, Kansas, Board of Commissioners v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45452-DAP, ECF No. 1. It is therefore indisputable that Cherokee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cherokee County's RICO claim is therefore time-barred by

RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cherokee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cherokee County, a municipality in Kansas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 430. *Bay County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45455-DAP: Plaintiff Bay County, Florida

Bay County's untimely motion for leave to amend should be denied for several reasons. Bay County failed to provide notice of its proposed amendments through a proposed complaint. Bay County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Bay County's motion should be denied due to futility, as Bay County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bay County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bay County amended its complaint on March 8, 2019, after transfer to the MDL on April 26, 2018. *See Bay County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45455-DAP, ECF No. 14. Unlike many other plaintiffs, Bay County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bay County's deadline to amend was

in 2019. Bay County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bay County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bay County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bay County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bay County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bay County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Bay County). That insignificant dispensing volume is much too low

to support a finding of good cause for Bay County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bay County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bay County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bay County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bay County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bay County's proposed RICO claim against the PBMs has expired. Bay County filed its original complaint on April 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bay County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45455-DAP, ECF No. 1. It is therefore indisputable that Bay County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bay

County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bay County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Bay County's public-nuisance claim against the PBMs is therefore time-barred because Bay County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Bay County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 431. *City of Guin, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45457-DAP: Plaintiff Guin City, Alabama

Guin City's untimely motion for leave to amend should be denied for several reasons. Guin City failed to provide notice of its proposed amendments through a proposed complaint. Guin City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Guin City's motion should be denied due to futility, as Guin City does not assert any allegations

tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Guin City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Guin City amended its complaint on March 7, 2019, after transfer to the MDL on April 26, 2018. *See City of Guin, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45457-DAP, ECF No. 19. Unlike many other plaintiffs, Guin City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Guin City's deadline to amend was in 2019. Guin City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Guin City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Guin City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Guin City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Guin City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the

claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Guin City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Guin City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Guin City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Guin City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Guin City filed its original complaint on April 4, 2018. *See City of Guin, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45457-DAP, ECF No. 1. Despite filing its case years ago, Guin City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Guin City's case would force the parties and the Court to waste time and resources ascertaining the extent of Guin City's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Guin City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Guin City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Guin City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Guin City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Guin City's proposed RICO claim against the PBMs has expired. Guin City filed its original complaint on April 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Guin, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45457-DAP, ECF No. 1. It is therefore indisputable that Guin City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Guin City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568

at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Guin City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Guin City's public-nuisance claim against the PBMs is therefore time-barred because Guin City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Guin City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **432.** ***Lexington, Tennessee v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:18-op-45458-DAP: Plaintiff Lexington City, Tennessee**

Lexington City's untimely motion for leave to amend should be denied for several reasons. Lexington City failed to provide notice of its proposed amendments through a proposed complaint. Lexington City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lexington City's motion should be denied due to futility, as Lexington City

does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lexington City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lexington City amended its complaint on March 8, 2019, after transfer to the MDL on April 26, 2018. *See Lexington, Tennessee v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:18-op-45458-DAP, ECF No. 11. Unlike many other plaintiffs, Lexington City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lexington City's deadline to amend was in 2019. Lexington City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lexington City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lexington City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lexington City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lexington City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lexington City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.0009% market share for Lexington City). That insignificant dispensing volume is much too low to support a finding of good cause for Lexington City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lexington City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lexington City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lexington City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lexington City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lexington City of this deficiency on September 16, 2024 (*see* Exhibit B), but Lexington City refused to amend or supplement its Fact Sheet. Under this Court's orders, Lexington City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at

1 (emphasis in original); *see* Section III.A.5, above. Lexington City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lexington City's potential claims against them. Lexington City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lexington City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lexington City, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lexington City's proposed RICO claim against the PBMs has expired. Lexington City filed its original complaint on April 3, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lexington, Tennessee v. Amerisourcebergen Drug Cororpation et al.*, Case No. 1:18-op-45458-DAP, ECF No. 1. It is therefore indisputable that Lexington City knew of its RICO injury, at the

very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lexington City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lexington City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lexington City, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 433. *City of Warwick, RI v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45460-DAP: Plaintiff Warwick City, Rhode Island

Warwick City's untimely motion for leave to amend should be denied for several reasons. Warwick City failed to provide notice of its proposed amendments through a proposed complaint. Warwick City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Warwick City's motion should be denied due to futility, as Warwick City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Warwick City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Warwick City amended its complaint on March 7, 2019, after transfer to the MDL on April 26, 2018. *See City of Warwick, RI v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45460-DAP, ECF No. 23. Unlike many other plaintiffs, Warwick City declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Warwick City's deadline to amend was in 2019. Warwick City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Warwick City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Warwick City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Warwick City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Warwick City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Warwick City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Warwick City). That insignificant dispensing volume is much too

low to support a finding of good cause for Warwick City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Warwick City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Warwick City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Warwick City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Warwick City, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Warwick City's proposed RICO claim against the PBMs has expired. Warwick City filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Warwick, RI v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45460-

DAP, ECF No. 1. It is therefore indisputable that Warwick City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Warwick City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Warwick City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Warwick City, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 434. *Town of North Providence v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45461-DAP: Plaintiff North Providence Town, Rhode Island

North Providence Town's untimely motion for leave to amend should be denied for several reasons. North Providence Town failed to provide notice of its proposed amendments through a proposed complaint. North Providence Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Providence Town's motion should be denied due to futility, as North Providence Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Providence Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Providence Town amended its complaint on March 7, 2019, after transfer to the

MDL on April 26, 2018. *See Town of North Providence v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45461-DAP, ECF No. 23. Unlike many other plaintiffs, North Providence Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Providence Town's deadline to amend was in 2019. North Providence Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. North Providence Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** North Providence Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. North Providence Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. North Providence Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to North Providence Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for North Providence Town). That insignificant dispensing volume is much too low to support a finding of good cause for North Providence Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to North Providence Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for North Providence Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** North Providence Town filed its original complaint on March 26, 2018. *See Town of North Providence v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45461-DAP, ECF No. 1. Despite filing its case years ago, North Providence Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating North Providence Town's case would force the parties and the Court to waste time and resources ascertaining the extent of North Providence Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by North Providence Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay

in seeking leave to amend, and North Providence Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Providence Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Providence Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for North Providence Town's proposed RICO claim against the PBMs has expired. North Providence Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of North Providence v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45461-DAP, ECF No. 1. It is therefore indisputable that North Providence Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. North Providence Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of

a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Providence Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** North Providence Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 435. *Town of Johnston v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45462-DAP: Plaintiff Johnston Town, Rhode Island

Johnston Town's untimely motion for leave to amend should be denied for several reasons. Johnston Town failed to provide notice of its proposed amendments through a proposed complaint. Johnston Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Johnston Town's motion should be denied due to futility, as Johnston Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Johnston Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Johnston Town amended its complaint on March 7, 2019, after transfer to the MDL on April 26, 2018. *See Town of Johnston v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45462-DAP, ECF No. 23. Unlike many other plaintiffs, Johnston Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Johnston Town's deadline to amend was in 2019. Johnston Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Johnston Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Johnston Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Johnston Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Johnston Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Johnston Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Johnston Town). That insignificant dispensing volume is much too low to support a finding of good cause for Johnston Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Johnston Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Johnston Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Johnston Town filed its original complaint on March 26, 2018. *See Town of Johnston v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45462-DAP, ECF No. 1. Despite filing its case years ago, Johnston Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Johnston Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Johnston Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Johnston Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Johnston Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Johnston Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Johnston Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Johnston Town's proposed RICO claim against the PBMs has expired. Johnston Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Johnston v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45462-DAP, ECF No. 1. It is therefore indisputable that Johnston Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Johnston Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Johnston Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Johnston Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**436.** *City of Pawtucket, RI v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45463-DAP: Plaintiff Pawtucket City, Rhode Island**

Pawtucket City's untimely motion for leave to amend should be denied for several reasons. Pawtucket City failed to provide notice of its proposed amendments through a proposed complaint. Pawtucket City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pawtucket City's motion should be denied due to futility, as Pawtucket City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pawtucket City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pawtucket City amended its complaint on March 7, 2019, after transfer to the MDL on April 26, 2018. *See City of Pawtucket, RI v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45463-DAP, ECF No. 17. Unlike many other plaintiffs, Pawtucket City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pawtucket City's deadline to amend was in 2019. Pawtucket City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pawtucket City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pawtucket City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582.

Pawtucket City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pawtucket City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pawtucket City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Pawtucket City). That insignificant dispensing volume is much too low to support a finding of good cause for Pawtucket City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pawtucket City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pawtucket City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Pawtucket City violated its basic duty to implement a timely litigation hold. Pawtucket City filed its original complaint on March 29, 2018, but waited until September 11, 2024 to implement a litigation hold—six years later. *See City of Pawtucket, RI v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45463-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 11, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pawtucket City's case would force the parties and the Court to waste time and resources ascertaining the extent of Pawtucket City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pawtucket City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pawtucket City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pawtucket City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pawtucket City, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pawtucket City's proposed RICO claim against the PBMs has expired. Pawtucket City filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Pawtucket, RI v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45463-DAP, ECF No. 1. It is therefore indisputable that Pawtucket City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pawtucket City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pawtucket City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pawtucket City, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **437.** *City of East Providence v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45464-DAP: Plaintiff East Providence City, Rhode Island**

East Providence City's untimely motion for leave to amend should be denied for several reasons. East Providence City failed to provide notice of its proposed amendments through a proposed complaint. East Providence City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, East Providence City's motion should be denied due to

futility, as East Providence City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** East Providence City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, East Providence City amended its complaint on March 13, 2019, after transfer to the MDL on April 26, 2018. *See City of East Providence v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45464-DAP, ECF No. 18. Unlike many other plaintiffs, East Providence City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. East Providence City's deadline to amend was in 2019. East Providence City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. East Providence City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** East Providence City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. East Providence City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. East Providence City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834

(affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to East Providence City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for East Providence City). That insignificant dispensing volume is much too low to support a finding of good cause for East Providence City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has Low Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to East Providence City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for East Providence City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** East Providence City filed its original complaint on March 26, 2018. *See City of East Providence v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45464-DAP, ECF No. 1. Despite filing its case years ago, East Providence City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented:

*(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating East Providence City's case would force the parties and the Court to waste time and resources ascertaining the extent of East Providence City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by East Providence City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and East Providence City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But East Providence City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** East Providence City, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for East Providence City's proposed RICO claim against the PBMs has expired. East Providence City filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against

other defendants. *See City of East Providence v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45464-DAP, ECF No. 1. It is therefore indisputable that East Providence City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. East Providence City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. East Providence City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** East Providence City, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 438. *Town of Cumberland, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45465-DAP: Plaintiff Cumberland Town, Rhode Island

Cumberland Town's untimely motion for leave to amend should be denied for several reasons. Cumberland Town failed to provide notice of its proposed amendments through a proposed complaint. Cumberland Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cumberland Town's motion should be denied due to futility, as Cumberland Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cumberland Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cumberland Town amended its complaint on March 14, 2019, after transfer to the MDL

on April 26, 2018. *See Town of Cumberland, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45465-DAP, ECF No. 17. Unlike many other plaintiffs, Cumberland Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cumberland Town's deadline to amend was in 2019. Cumberland Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cumberland Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cumberland Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cumberland Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cumberland Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cumberland Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Cumberland Town). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cumberland Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cumberland Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cumberland Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cumberland Town's proposed RICO claim against the PBMs has expired. Cumberland Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Cumberland, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45465-DAP, ECF No. 1. It is therefore indisputable that Cumberland Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cumberland Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cumberland Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cumberland Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

439. *City of Central Falls, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45466-DAP: Plaintiff Central Falls City, Rhode Island**

Central Falls City's untimely motion for leave to amend should be denied for several reasons. Central Falls City failed to provide notice of its proposed amendments through a proposed complaint. Central Falls City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Central Falls City's motion should be denied due to futility, as Central Falls City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Central Falls City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Central Falls City amended its complaint on March 17, 2019, after transfer to the MDL on April 26, 2018. *See City of Central Falls, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45466-DAP, ECF No. 18. Unlike many other plaintiffs, Central Falls City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Central Falls City's deadline to amend was in 2019. Central Falls City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Central Falls City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Central Falls City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Central Falls City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Central Falls City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for

undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Central Falls City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Central Falls City). That insignificant dispensing volume is much too low to support a finding of good cause for Central Falls City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Central Falls City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Central Falls City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Central Falls City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Central Falls City, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Central Falls City's proposed RICO claim against the PBMs has expired. Central Falls City filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Central Falls, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45466-DAP, ECF No. 1. It is therefore indisputable that Central Falls City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Central Falls City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Central Falls City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Central Falls City, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **440.** *Town of Charlestown Rhode Island v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45467-DAP: Plaintiff Charlestown Town, Rhode Island**

Charlestown Town's untimely motion for leave to amend should be denied for several reasons. Charlestown Town failed to provide notice of its proposed amendments through a proposed complaint. Charlestown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Charlestown Town's motion should be denied due to

futility, as Charlestown Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Charlestown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Charlestown Town amended its complaint on March 7, 2019, after transfer to the MDL on April 26, 2018. *See Town of Charlestown Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45467-DAP, ECF No. 17. Unlike many other plaintiffs, Charlestown Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Charlestown Town's deadline to amend was in 2019. Charlestown Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Charlestown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Charlestown Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Charlestown Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Charlestown Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834

(affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Charlestown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Charlestown Town). That insignificant dispensing volume is much too low to support a finding of good cause for Charlestown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Charlestown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Charlestown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Charlestown Town filed its original complaint on March 26, 2018. *See Town of Charlestown Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45467-DAP, ECF No. 1. Despite filing its case years ago, Charlestown Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold

Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Charlestown Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Charlestown Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Charlestown Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Charlestown Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Charlestown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Charlestown Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Charlestown Town's proposed RICO claim against the PBMs has expired. Charlestown Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other

defendants. *See Town of Charlestown Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45467-DAP, ECF No. 1. It is therefore indisputable that Charlestown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Charlestown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Charlestown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Charlestown Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 441. *Town of Bristol v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45468-DAP: Plaintiff Bristol Town, Rhode Island

Bristol Town's untimely motion for leave to amend should be denied for several reasons. Bristol Town failed to provide notice of its proposed amendments through a proposed complaint. Bristol Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bristol Town's motion should be denied due to futility, as Bristol Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bristol Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bristol Town amended its complaint on March 7, 2019, after transfer to the MDL on April 26,

2018. *See Town of Bristol v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45468-DAP, ECF No. 17. Unlike many other plaintiffs, Bristol Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bristol Town's deadline to amend was in 2019. Bristol Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bristol Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bristol Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bristol Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bristol Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Bristol Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Bristol Town). That insignificant dispensing volume is much too low to support a finding of good cause for Bristol Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bristol Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bristol Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bristol Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bristol Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bristol Town's proposed RICO claim against the PBMs has expired. Bristol Town filed its original complaint on March 26,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Bristol v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45468-DAP, ECF No. 1. It is therefore indisputable that Bristol Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bristol Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bristol Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bristol Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 442. *Town of Barrington v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45469-DAP: Plaintiff Barrington Town, Rhode Island

Barrington Town's untimely motion for leave to amend should be denied for several reasons. Barrington Town failed to provide notice of its proposed amendments through a proposed complaint. Barrington Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Barrington Town's motion should be denied due to futility, as Barrington Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Barrington Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Barrington Town amended its complaint on March 7, 2019, after transfer to the MDL on April 26, 2018. *See Town of Barrington v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45469-DAP, ECF No. 17. Unlike many other plaintiffs, Barrington Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Barrington Town's deadline to amend was in 2019. Barrington Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Barrington Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Barrington Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Barrington Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Barrington Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Barrington Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Barrington Town). That insignificant dispensing volume is much too low to support a finding of good cause for Barrington Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Barrington Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Barrington Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Barrington Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Barrington Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Barrington Town's proposed RICO claim against the PBMs has expired. Barrington Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Barrington v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45469-DAP, ECF No. 1. It is therefore indisputable that Barrington Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Barrington Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Barrington Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Barrington Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 443. *Town of Burrillville v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45470-DAP: Plaintiff Burrillville Town, Rhode Island

Burrillville Town's untimely motion for leave to amend should be denied for several reasons. Burrillville Town failed to provide notice of its proposed amendments through a proposed complaint. Burrillville Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Burrillville Town's motion should be denied due to futility, as Burrillville Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

1754

**Lack of Diligence.** Burrillville Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Burrillville Town amended its complaint on March 13, 2019, after transfer to the MDL on April 27, 2018. *See Town of Burrillville v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45470-DAP, ECF No. 17. Unlike many other plaintiffs, Burrillville Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Burrillville Town's deadline to amend was in 2019. Burrillville Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Burrillville Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Burrillville Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Burrillville Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Burrillville Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for

undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Burrillville Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Burrillville Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Burrillville Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Burrillville Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Burrillville Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Burrillville Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Burrillville Town's proposed RICO claim against the PBMs has expired. Burrillville Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Burrillville v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45470-DAP, ECF No. 1. It is therefore indisputable that Burrillville Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Burrillville Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Burrillville Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Burrillville Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **444.** ***Town of Coventry Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45471-DAP: Plaintiff Coventry Town, Rhode Island**

Coventry Town's untimely motion for leave to amend should be denied for several reasons. Coventry Town failed to provide notice of its proposed amendments through a proposed complaint. Coventry Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Coventry Town's motion should be denied due to futility, as

Coventry Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coventry Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coventry Town amended its complaint on March 11, 2019, after transfer to the MDL on April 27, 2018. *See Town of Coventry Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45471-DAP, ECF No. 17. Unlike many other plaintiffs, Coventry Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Coventry Town's deadline to amend was in 2019. Coventry Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Coventry Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Coventry Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Coventry Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Coventry Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming

denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Coventry Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Coventry Town). That insignificant dispensing volume is much too low to support a finding of good cause for Coventry Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Coventry Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Coventry Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Coventry Town filed its original complaint on March 26, 2018. *See Town of Coventry Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45471-DAP, ECF No. 1. Despite filing its case years ago, Coventry Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Coventry Town's case

would force the parties and the Court to waste time and resources ascertaining the extent of Coventry Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Coventry Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Coventry Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Coventry Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Coventry Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Coventry Town's proposed RICO claim against the PBMs has expired. Coventry Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Coventry Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45471-DAP, ECF No. 1. It is therefore indisputable that Coventry Town knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Coventry Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Coventry Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Coventry Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

445. *City of Cranston, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45472-DAP: Plaintiff Cranston City, Rhode Island**

Cranston City's untimely motion for leave to amend should be denied for several reasons. Cranston City failed to provide notice of its proposed amendments through a proposed complaint. Cranston City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cranston City's motion should be denied due to futility, as Cranston City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cranston City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cranston City amended its complaint on March 7, 2019, after transfer to the MDL on April 27, 2018. *See City of Cranston, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45472-DAP, ECF No. 18. Unlike many other plaintiffs, Cranston City declined to

add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cranston City's deadline to amend was in 2019. Cranston City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cranston City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cranston City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cranston City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cranston City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cranston City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.02% market share for Cranston City). That insignificant dispensing volume is much too low to support a finding of good cause for Cranston City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cranston City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cranston City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cranston City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cranston City, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cranston City's proposed RICO claim against the PBMs has expired. Cranston City filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See City of Cranston, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45472-DAP, ECF No. 1. It is therefore indisputable that Cranston City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cranston City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cranston City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cranston City, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 446. *Town of Foster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45473-DAP: Plaintiff Foster Town, Rhode Island

Foster Town's untimely motion for leave to amend should be denied for several reasons. Foster Town failed to provide notice of its proposed amendments through a proposed complaint. Foster Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Foster Town's motion should be denied due to futility, as Foster Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Foster Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Foster Town amended its complaint on March 7, 2019, after transfer to the MDL on April 27,

2018. *See Town of Foster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45473-DAP, ECF No. 21. Unlike many other plaintiffs, Foster Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Foster Town's deadline to amend was in 2019. Foster Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Foster Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Foster Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Foster Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Foster Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Foster Town's geographic

jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Foster Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Foster Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Foster Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Foster Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Foster Town's proposed RICO claim against the PBMs has expired. Foster Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Foster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45473-DAP, ECF No. 1. It is therefore indisputable that Foster Town knew of its RICO injury, at the very latest, the day

it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Foster Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Foster Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Foster Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 447. *Town of Glocester v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45474-DAP: Plaintiff Glocester Town, Rhode Island

Glocester Town's untimely motion for leave to amend should be denied for several reasons. Glocester Town failed to provide notice of its proposed amendments through a proposed complaint. Glocester Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Glocester Town's motion should be denied due to futility, as Glocester Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Glocester Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Glocester Town amended its complaint on March 13, 2019, after transfer to the MDL on April 19, 2018. *See Town of Glocester v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45474-DAP, ECF No. 18. Unlike many other plaintiffs, Glocester Town declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Glocester Town's deadline to amend was in 2019. Glocester Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Glocester Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Glocester Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Glocester Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Glocester Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Glocester Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl..

Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Glocester Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Glocester Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Glocester Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Glocester Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Glocester Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Glocester Town's proposed RICO claim against the PBMs has expired. Glocester Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Glocester v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45474-

DAP, ECF No. 1. It is therefore indisputable that Glocester Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Glocester Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Glocester Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Glocester Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

448. ***Town of Hopkinton Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45475-DAP: Plaintiff Hopkinton Town, Rhode Island**

Hopkinton Town's untimely motion for leave to amend should be denied for several reasons. Hopkinton Town failed to provide notice of its proposed amendments through a proposed complaint. Hopkinton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hopkinton Town's motion should be denied due to futility, as Hopkinton Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hopkinton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hopkinton Town amended its complaint on March 11, 2019, after transfer to the MDL on April

19, 2018. *See Town of Hopkinton Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45475-DAP, ECF No. 17. Unlike many other plaintiffs, Hopkinton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hopkinton Town's deadline to amend was in 2019. Hopkinton Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hopkinton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hopkinton Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hopkinton Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hopkinton Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Hopkinton Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Hopkinton Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Hopkinton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Hopkinton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hopkinton Town filed its original complaint on March 26, 2018. *See Town of Hopkinton Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45475-DAP, ECF No. 1. Despite filing its case years ago, Hopkinton Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hopkinton Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Hopkinton Town's document destruction and the appropriate

sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hopkinton Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hopkinton Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hopkinton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hopkinton Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hopkinton Town's proposed RICO claim against the PBMs has expired. Hopkinton Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Hopkinton Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45475-DAP, ECF No. 1. It is therefore indisputable that Hopkinton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before

seeking leave to amend. Hopkinton Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hopkinton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hopkinton Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **449.** ***Town of Jamestown, a municipal corporation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45476-DAP: Plaintiff Jamestown Town, Rhode Island**

Jamestown Town's untimely motion for leave to amend should be denied for several reasons. Jamestown Town failed to provide notice of its proposed amendments through a proposed complaint. Jamestown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jamestown Town's motion should be denied due to futility, as Jamestown Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jamestown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jamestown Town amended its complaint on March 7, 2019, after transfer to the MDL on April 19, 2018. *See Town of Jamestown, a municipal corporation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45476-DAP, ECF No. 18. Unlike many other plaintiffs, Jamestown Town declined to add claims against the PBMs in its amended complaint. *See* Section

II.A.1, above. Jamestown Town's deadline to amend was in 2019. Jamestown Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jamestown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jamestown Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jamestown Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jamestown Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jamestown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Jamestown Town). That insignificant dispensing volume

is much too low to support a finding of good cause for Jamestown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jamestown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jamestown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jamestown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jamestown Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jamestown Town's proposed RICO claim against the PBMs has expired. Jamestown Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Jamestown, a municipal corporation v. Amerisourcebergen Drug Corporation et al.*,

Case No. 1:18-op-45476-DAP, ECF No. 1. It is therefore indisputable that Jamestown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Jamestown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jamestown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jamestown Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 450. *Town of North Kingstown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45477-DAP: Plaintiff North Kingstown Town, Rhode Island

North Kingstown Town's untimely motion for leave to amend should be denied for several reasons. North Kingstown Town failed to provide notice of its proposed amendments through a proposed complaint. North Kingstown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Kingstown Town's motion should be denied due to futility, as North Kingstown Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Kingstown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Kingstown Town amended its complaint on March 7, 2019, after transfer to the

MDL on April 19, 2018. *See Town of North Kingstown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45477-DAP, ECF No. 17. Unlike many other plaintiffs, North Kingstown Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Kingstown Town's deadline to amend was in 2019. North Kingstown Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. North Kingstown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** North Kingstown Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. North Kingstown Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. North Kingstown Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to North Kingstown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for North Kingstown Town). That insignificant dispensing volume is much too low to support a finding of good cause for North Kingstown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to North Kingstown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for North Kingstown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** North Kingstown Town filed its original complaint on March 26, 2018. *See Town of North Kingstown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45477-DAP, ECF No. 1. Despite filing its case years ago, North Kingstown Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating North Kingstown Town's case would force the parties and the Court to waste time and resources ascertaining the extent of North Kingstown Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by North Kingstown

Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and North Kingstown Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Kingstown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** North Kingstown Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for North Kingstown Town's proposed RICO claim against the PBMs has expired. North Kingstown Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of North Kingstown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45477-DAP, ECF No. 1. It is therefore indisputable that North Kingstown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. North Kingstown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO

limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Kingstown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** North Kingstown Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

451. ***Town of Narragansett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45478-DAP: Plaintiff Narragansett Town, Rhode Island**

Narragansett Town's untimely motion for leave to amend should be denied for several reasons. Narragansett Town failed to provide notice of its proposed amendments through a proposed complaint. Narragansett Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Narragansett Town's motion should be denied due to futility, as Narragansett Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Narragansett Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Narragansett Town amended its complaint on March 7, 2019, after transfer to the MDL on April 19, 2018. *See Town of Narragansett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45478-DAP, ECF No. 21. Unlike many other plaintiffs, Narragansett Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Narragansett Town's deadline to amend was in 2019. Narragansett Town waited five years after its deadline to

amend to seek leave to assert claims against the PBMs. Narragansett Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Narragansett Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Narragansett Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Narragansett Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Narragansett Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Narragansett Town). That insignificant dispensing volume is much too low to support a finding of good cause for Narragansett Town to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Narragansett Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Narragansett Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Narragansett Town filed its original complaint on March 26, 2018. *See Town of Narragansett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45478-DAP, ECF No. 1. Despite filing its case years ago, Narragansett Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Narragansett Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Narragansett Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Narragansett Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Narragansett Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Narragansett Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Narragansett Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Narragansett Town's proposed RICO claim against the PBMs has expired. Narragansett Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Narragansett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45478-DAP, ECF No. 1. It is therefore indisputable that Narragansett Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Narragansett Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Narragansett Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Narragansett Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **452.** ***City of Newport, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45479-DAP: Plaintiff Newport City, Rhode Island**

Newport City's untimely motion for leave to amend should be denied for several reasons. Newport City failed to provide notice of its proposed amendments through a proposed complaint. Newport City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Newport City's motion should be denied due to futility, as Newport City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Newport City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Newport City amended its complaint on March 13, 2019, after transfer to the MDL on April 19, 2018. *See City of Newport, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45479-DAP, ECF No. 18. Unlike many other plaintiffs, Newport City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Newport City's deadline to amend was in 2019. Newport City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Newport City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Newport City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Newport City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Newport City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Newport City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Newport City). That insignificant dispensing volume is much too low to support a finding of good cause for Newport City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Newport City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Newport City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Newport City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Newport City, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Newport City's proposed RICO claim against the PBMs has expired. Newport City filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Newport, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45479-DAP, ECF No. 1. It is therefore indisputable that Newport City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Newport City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Newport City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Newport City, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 453. *Town of Richmond v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45480-DAP: Plaintiff Richmond Town, Rhode Island

Richmond Town's untimely motion for leave to amend should be denied for several reasons. Richmond Town failed to provide notice of its proposed amendments through a proposed complaint. Richmond Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Richmond Town's motion should be denied due to futility, as Richmond Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Richmond Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Richmond Town amended its complaint on March 7, 2019, after transfer to the MDL on April 19, 2018. *See Town of Richmond v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45480-DAP, ECF No. 21. Unlike many other plaintiffs, Richmond Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Richmond Town's deadline to amend was in 2019. Richmond Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Richmond Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Richmond Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Richmond Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Richmond Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Richmond Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Richmond Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Richmond Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Richmond Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Richmond Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Richmond Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Richmond Town's proposed RICO claim against the PBMs has expired. Richmond Town filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Richmond v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45480-DAP, ECF No. 1. It is therefore indisputable that Richmond Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Richmond Town's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Richmond Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Richmond Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 454. *Town of Smithfield v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45481-DAP: Plaintiff Smithfield Town, Rhode Island

Smithfield Town's untimely motion for leave to amend should be denied for several reasons. Smithfield Town failed to provide notice of its proposed amendments through a proposed complaint. Smithfield Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Smithfield Town's motion should be denied due to futility, as Smithfield Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Smithfield Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Smithfield Town amended its complaint on March 7, 2019, after transfer to the MDL on April 19, 2018. *See Town of Smithfield v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45481-DAP, ECF No. 17. Unlike many other plaintiffs, Smithfield Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Smithfield Town's deadline to amend was in 2019. Smithfield Town waited five years after its deadline to amend to seek leave

to assert claims against the PBMs. Smithfield Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Smithfield Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Smithfield Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Smithfield Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Smithfield Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.29% market share for Smithfield Town). That insignificant dispensing volume is much too low to support a finding of good cause for Smithfield Town to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Smithfield Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Smithfield Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Smithfield Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Smithfield Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Smithfield Town's proposed RICO claim against the PBMs has expired. Smithfield Town filed its original complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Smithfield v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45481-DAP, ECF No. 1. It is therefore indisputable that Smithfield Town knew of its RICO injury, at the

very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Smithfield Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Smithfield Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Smithfield Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 455. ***Town of South Kingstown Municipal Corporation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45482-DAP: Plaintiff South Kingstown Town, Rhode Island**

South Kingstown Town's untimely motion for leave to amend should be denied for several reasons. South Kingstown Town failed to provide notice of its proposed amendments through a proposed complaint. South Kingstown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, South Kingstown Town's motion should be denied due to futility, as South Kingstown Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** South Kingstown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, South Kingstown Town amended its complaint on March 7, 2019, after transfer to the MDL on April 19, 2018. *See Town of South Kingstown Municipal Corporation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45482-DAP, ECF No. 17. Unlike

many other plaintiffs, South Kingstown Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. South Kingstown Town's deadline to amend was in 2019. South Kingstown Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. South Kingstown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** South Kingstown Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. South Kingstown Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. South Kingstown Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

South Kingstown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for South Kingstown Town). That insignificant dispensing volume is much too low to support a finding of good cause for South Kingstown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to South Kingstown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for South Kingstown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But South Kingstown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See* *Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** South Kingstown Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for South Kingstown Town's proposed RICO claim against the PBMs has expired. South Kingstown Town filed its original

complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of South Kingstown Municipal Corporation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45482-DAP, ECF No. 1. It is therefore indisputable that South Kingstown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. South Kingstown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. South Kingstown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** South Kingstown Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 456. *Town of West Greenwich v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45483-DAP: Plaintiff West Greenwich Town, Rhode Island

West Greenwich Town's untimely motion for leave to amend should be denied for several reasons. West Greenwich Town failed to provide notice of its proposed amendments through a proposed complaint. West Greenwich Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Greenwich Town's motion should be denied due to futility, as West Greenwich Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** West Greenwich Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Greenwich Town amended its complaint on March 11, 2019, after transfer to the MDL on April 19, 2018. *See Town of West Greenwich v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45483-DAP, ECF No. 17. Unlike many other plaintiffs, West Greenwich Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. West Greenwich Town's deadline to amend was in 2019. West Greenwich Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. West Greenwich Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** West Greenwich Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. West Greenwich Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. West Greenwich Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in West Greenwich Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Greenwich Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Greenwich Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Greenwich Town's proposed RICO claim against the PBMs has expired. West Greenwich Town filed its original complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of West Greenwich v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45483-DAP, ECF No. 1. It is therefore indisputable that West Greenwich Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. West Greenwich Town's RICO claim is therefore time-

barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the other elements of a claim") (quoting *Rotella*, 528 U.S. at 555); *see* Section III.B.4, above. West Greenwich Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** West Greenwich Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **457.** ***Town of West Warwick, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45484-DAP: Plaintiff West Warwick Town, Rhode Island**

West Warwick Town's untimely motion for leave to amend should be denied for several reasons. West Warwick Town failed to provide notice of its proposed amendments through a proposed complaint. West Warwick Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Warwick Town's motion should be denied due to futility, as West Warwick Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** West Warwick Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Warwick Town amended its complaint on March 7, 2019, after transfer to the MDL on April 19, 2018. *See Town of West Warwick, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45484-DAP, ECF No. 17. Unlike many other plaintiffs, West Warwick Town declined to add claims against the PBMs in its amended complaint. *See* Section

II.A.1, above. West Warwick Town's deadline to amend was in 2019. West Warwick Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. West Warwick Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** West Warwick Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. West Warwick Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. West Warwick Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to West Warwick Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for West Warwick Town). That insignificant dispensing

volume is much too low to support a finding of good cause for West Warwick Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to West Warwick Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for West Warwick Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** West Warwick Town filed its original complaint on March 27, 2018. *See Town of West Warwick, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45484-DAP, ECF No. 1. Despite filing its case years ago, West Warwick Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating West Warwick Town's case would force the parties and the Court to waste time and resources ascertaining the extent of West Warwick Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by West Warwick Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and West Warwick Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, West Warwick Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to West Warwick Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified West Warwick Town of this deficiency on September 16, 2024 (*see* Exhibit B), but West Warwick Town refused to amend or supplement its Fact Sheet. Under this Court's orders, West Warwick Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. West Warwick Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against West Warwick Town's potential claims against them. West Warwick Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Warwick Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Warwick Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Warwick Town's proposed RICO claim against the PBMs has expired. West Warwick Town filed its original complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of West Warwick, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45484-DAP, ECF No. 1. It is therefore indisputable that West Warwick Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. West Warwick Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Warwick Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** West Warwick Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 458. *Town of Westerly v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45485-DAP: Plaintiff Westerly Town, Rhode Island**

Westerly Town's untimely motion for leave to amend should be denied for several reasons. Westerly Town failed to provide notice of its proposed amendments through a proposed complaint.

Westerly Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Westerly Town's motion should be denied due to futility, as Westerly Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Westerly Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Westerly Town amended its complaint on March 7, 2019, after transfer to the MDL on April 19, 2018. *See Town of Westerly v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45485-DAP, ECF No. 21. Unlike many other plaintiffs, Westerly Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Westerly Town's deadline to amend was in 2019. Westerly Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Westerly Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Westerly Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Westerly Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Westerly Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already

asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Westerly Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Westerly Town). That insignificant dispensing volume is much too low to support a finding of good cause for Westerly Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Westerly Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Westerly Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Westerly Town filed its original complaint on March 27, 2018. *See Town of Westerly v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45485-DAP, ECF No. 1. Despite filing its case years ago, Westerly Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified

document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Westerly Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Westerly Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Westerly Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Westerly Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Westerly Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Westerly Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Westerly Town's proposed RICO claim against the PBMs has expired. Westerly Town filed its original complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Town of Westerly v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45485-DAP, ECF No. 1. It is therefore indisputable that Westerly Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Westerly Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westerly Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Westerly Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **459.** *City of Malden v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45487-DAP: Plaintiff Malden City, Massachusetts

Malden City's untimely motion for leave to amend should be denied for several reasons. Malden City failed to provide notice of its proposed amendments through a proposed complaint. Malden City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Malden City's motion should be denied due to futility, as Malden City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Malden City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Malden City amended its complaint on March 6, 2019, after transfer to the MDL on April 27, 2018. *See City of Malden v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45487-DAP, ECF No. 9. Unlike many other plaintiffs, Malden City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Malden City's deadline to amend was in 2019. Malden City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Malden City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Malden City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Malden City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Malden City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Malden City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.0005% market share for Malden City). That insignificant dispensing volume is much too low to support a finding of good cause for Malden City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Malden City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Malden City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Malden City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Malden City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Malden City's proposed RICO claim against the PBMs has expired. Malden City filed its original complaint on March 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Malden v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45487-DAP, ECF No. 1. It is therefore indisputable that Malden City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Malden City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Malden City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Malden City's public-nuisance claim against the PBMs is therefore time-barred because Malden City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on March 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Malden City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**460.** ***Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*,
Case No. 1:18-op-45493-DAP: Plaintiff Big Bend Community Based
Care, Florida**

Big Bend Community Based Care's untimely motion for leave to amend should be denied

for several reasons. The Court previously dismissed Big Bend Community Based Care's case.

Moreover, Big Bend Community Based Care failed to provide notice of its proposed amendments

through a proposed complaint. Big Bend Community Based Care also lacks good cause under Rule

15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its

untimely motion would unduly prejudice the PBMs. Moreover, Big Bend Community Based

Care's motion should be denied due to futility, as Big Bend Community Based Care does not assert

any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred

by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks

standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously dismissed Big Bend Community Based

Care's case on June 14, 2024. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma*

*LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 44. "Following entry of final judgment, a party

may not seek to amend their complaint without first moving to alter, set aside or vacate judgment

pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp.*

*Derivative Litig.*, 511 F.3d 611, 624 (6th Cir. 2008) (citation omitted). Without such post-judgment

relief, the "'district court lacks power to grant a motion to amend the complaint'" because there is

no "live case or controversy before the district court." *Id.* (quoting *Acevedo-Villalobos v.*

*Hernandez*, 22 F.3d 384, 389 (1st Cir. 1994)). Big Bend Community Based Care has neither moved

for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure*

*Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must

provide a compelling explanation to the district court for granting the motion."). Big Bend

Community Based Care has not offered any basis to reopen its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Lack of Diligence.** Big Bend Community Based Care was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Big Bend Community Based Care amended its complaint on March 16, 2019, after transfer to the MDL on April 23, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 32. Unlike many other plaintiffs, Big Bend Community Based Care declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Big Bend Community Based Care's deadline to amend was in 2019. Big Bend Community Based Care waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Big Bend Community Based Care's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Big Bend Community Based Care filed its original complaint on April 4, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. Despite filing its case years ago, Big Bend Community Based Care *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation

Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Big Bend Community Based Care's case would force the parties and the Court to waste time and resources ascertaining the extent of Big Bend Community Based Care's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Big Bend Community Based Care's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Big Bend Community Based Care therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Big Bend Community Based Care's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Big Bend Community Based Care, a hospital in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Big Bend Community Based Care's proposed RICO claim against the PBMs has expired. Big Bend Community Based Care filed its original complaint on April 4, 2018, alleging the same type of injuries *and* alleging a RICO

claim against other defendants. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. It is therefore indisputable that Big Bend Community Based Care knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Big Bend Community Based Care's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Big Bend Community Based Care's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Big Bend Community Based Care's public-nuisance claim against the PBMs is therefore time-barred because Big Bend Community Based Care sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Big Bend Community Based Care, a hospital in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

461. ***Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP: Plaintiff Central Florida Behavioral Health Network, Florida**

Central Florida Behavioral Health Network's untimely motion for leave to amend should be denied for several reasons. The Court previously dismissed Central Florida Behavioral Health Network 's case. Moreover, Central Florida Behavioral Health Network failed to provide notice of its proposed amendments through a proposed complaint. Central Florida Behavioral Health Network also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Central Florida Behavioral Health Network's motion should be denied due to futility, as Central Florida Behavioral Health Network does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously dismissed Central Florida Behavioral Health Network's case on June 14, 2024. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 44. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp*, 511 F.3d at 624 (citation omitted). Without such post-judgment relief, the "'district court lacks power to grant a motion to amend the complaint'" because there is no "live case or controversy before the district court." *Id.* (quoting *Acevedo-Villalobos*, 22 F.3d at 389). Central Florida Behavioral Health Network has neither moved for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to

the district court for granting the motion."). Central Florida Behavioral Health Network has not offered any basis to reopen its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Lack of Diligence.** Central Florida Behavioral Health Network was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Central Florida Behavioral Health Network amended its complaint on March 16, 2019, after transfer to the MDL on April 27, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 32. Unlike many other plaintiffs, Central Florida Behavioral Health Network declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Central Florida Behavioral Health Network's deadline to amend was in 2019. Central Florida Behavioral Health Network waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Central Florida Behavioral Health Network's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Central Florida Behavioral Health Network filed its original complaint on April 4, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. Despite filing its case years ago, Central Florida Behavioral Health Network *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1

(Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Central Florida Behavioral Health Network's case would force the parties and the Court to waste time and resources ascertaining the extent of Central Florida Behavioral Health Network's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Central Florida Behavioral Health Network's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Central Florida Behavioral Health Network therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Central Florida Behavioral Health Network's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Central Florida Behavioral Health Network, a hospital in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Central Florida Behavioral Health Network's proposed RICO claim against the PBMs has expired. Central Florida Behavioral

Health Network filed its original complaint on April 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. It is therefore indisputable that Central Florida Behavioral Health Network knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Central Florida Behavioral Health Network's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Central Florida Behavioral Health Network's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Central Florida Behavioral Health Network's public-nuisance claim against the PBMs is therefore time-barred because Central Florida Behavioral Health Network sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Central Florida Behavioral Health Network, a hospital in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

462. ***Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP: Plaintiff Central Florida Cares Health System, Florida**

Central Florida Cares Health System's untimely motion for leave to amend should be denied for several reasons. The Court previously dismissed Central Florida Cares Health System's case. Moreover, Central Florida Cares Health System failed to provide notice of its proposed amendments through a proposed complaint. Central Florida Cares Health System also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Central Florida Cares Health System's motion should be denied due to futility, as Central Florida Cares Health System does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously dismissed Central Florida Cares Health System's case on June 14, 2024. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 44. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp*, 511 F.3d at 624 (citation omitted). Without such post-judgment relief, the "'district court lacks power to grant a motion to amend the complaint'" because there is no "live case or controversy before the district court." *Id.* (quoting *Acevedo-Villalobos*, 22 F.3d at 389). Central Florida Cares Health System has neither moved for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion."). Central Florida Cares Health System has not offered any basis to reopen

its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Lack of Diligence.** Central Florida Cares Health System was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Central Florida Cares Health System amended its complaint on March 16, 2019, after transfer to the MDL on April 27, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 32. Unlike many other plaintiffs, Central Florida Cares Health System declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Central Florida Cares Health System's deadline to amend was in 2019. Central Florida Cares Health System waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Central Florida Cares Health System's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Central Florida Cares Health System filed its original complaint on April 4, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. Despite filing its case years ago, Central Florida Cares Health System *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos.

232; 5455. Litigating Central Florida Cares Health System's case would force the parties and the Court to waste time and resources ascertaining the extent of Central Florida Cares Health System's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Central Florida Cares Health System's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Central Florida Cares Health System therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Central Florida Cares Health System's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Central Florida Cares Health System, a hospital in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Central Florida Cares Health System's proposed RICO claim against the PBMs has expired. Central Florida Cares Health System filed its original complaint on April 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Big Bend Community Based Care, Inc. et al. v. Purdue*

*Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. It is therefore indisputable that Central Florida Cares Health System knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Central Florida Cares Health System's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Central Florida Cares Health System's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Central Florida Cares Health System's public-nuisance claim against the PBMs is therefore time-barred because Central Florida Cares Health System sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Central Florida Cares Health System, a hospital in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **463.** ***Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP: Plaintiff Lutheran Services Florida, Florida**

Lutheran Services Florida's untimely motion for leave to amend should be denied for several reasons. The Court previously dismissed Lutheran Services Florida's case. Moreover,

Lutheran Services Florida failed to provide notice of its proposed amendments through a proposed complaint. Lutheran Services Florida also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lutheran Services Florida's motion should be denied due to futility, as Lutheran Services Florida does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously dismissed Lutheran Services Florida's case on June 14, 2024. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 44. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp*, 511 F.3d at 624 (citation omitted). Without such post-judgment relief, the "'district court lacks power to grant a motion to amend the complaint'" because there is no "live case or controversy before the district court." *Id.* (quoting *Acevedo-Villalobos*, 22 F.3d at 389). Lutheran Services Florida has neither moved for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion."). Lutheran Services Florida has not offered any basis to reopen its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Lack of Diligence.** Lutheran Services Florida was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lutheran Services Florida amended its complaint on March 16, 2019, after transfer to the MDL on April 27, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 32. Unlike many other plaintiffs, Lutheran Services Florida declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lutheran Services Florida's deadline to amend was in 2019. Lutheran Services Florida waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lutheran Services Florida's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Lutheran Services Florida previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Lutheran Services Florida of the PBM services Express Scripts provides and Lutheran Services Florida began receiving those services on July 2, 2018. *See id.* Inasmuch as Lutheran Services Florida seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Lutheran Services Florida knew or should have known of the alleged wrongful conduct six years before moving to amend. *See* Section III.A.3, above. Lutheran Services Florida's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying

motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Lutheran Services Florida filed its original complaint on April 4, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. Despite filing its case years ago, Lutheran Services Florida *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lutheran Services Florida's case would force the parties and the Court to waste time and resources ascertaining the extent of Lutheran Services Florida's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lutheran Services Florida's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lutheran Services Florida therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lutheran Services Florida's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lutheran Services Florida, a hospital in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lutheran Services Florida's proposed RICO claim against the PBMs has expired. Lutheran Services Florida filed its original complaint on April 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. It is therefore indisputable that Lutheran Services Florida knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lutheran Services Florida's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lutheran Services Florida's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Lutheran Services Florida's public-nuisance claim against the PBMs is therefore time-barred because Lutheran Services Florida sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lutheran Services Florida, a hospital in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 464. *Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP: Plaintiff Southeast Florida Behavioral Health Network, Florida

Southeast Florida Behavioral Health Network's untimely motion for leave to amend should be denied for several reasons. The Court previously dismissed Southeast Florida Behavioral Health Network's case. Moreover, Southeast Florida Behavioral Health Network failed to provide notice of its proposed amendments through a proposed complaint. Southeast Florida Behavioral Health Network also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Southeast Florida Behavioral Health Network's motion should be denied due to futility, as Southeast Florida Behavioral Health Network does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously dismissed Southeast Florida Behavioral Health Network's case on June 14, 2024. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 44. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp*, 511 F.3d at 624 (citation omitted). Without such post-judgment relief, the

"'district court lacks power to grant a motion to amend the complaint'" because there is no "live case or controversy before the district court." *Id.* (quoting *Acevedo-Villalobos*, 22 F.3d at 389). Southeast Florida Behavioral Health Network has neither moved for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion."). Southeast Florida Behavioral Health Network has not offered any basis to reopen its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Lack of Diligence.** Southeast Florida Behavioral Health Network was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Southeast Florida Behavioral Health Network amended its complaint on March 16, 2019, after transfer to the MDL on April 27, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 32. Unlike many other plaintiffs, Southeast Florida Behavioral Health Network declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Southeast Florida Behavioral Health Network's deadline to amend was in 2019. Southeast Florida Behavioral Health Network waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Southeast Florida Behavioral Health Network's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Southeast Florida Behavioral Health Network filed its original complaint on April 4, 2018. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. Despite filing its case years ago, Southeast Florida Behavioral Health Network *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Southeast Florida Behavioral Health Network's case would force the parties and the Court to waste time and resources ascertaining the extent of Southeast Florida Behavioral Health Network's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Southeast Florida Behavioral Health Network's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Southeast Florida Behavioral Health Network therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Southeast Florida Behavioral Health Network's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over

time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Southeast Florida Behavioral Health Network, a hospital in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Southeast Florida Behavioral Health Network's proposed RICO claim against the PBMs has expired. Southeast Florida Behavioral Health Network filed its original complaint on April 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Big Bend Community Based Care, Inc. et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45493-DAP, ECF No. 1. It is therefore indisputable that Southeast Florida Behavioral Health Network knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Southeast Florida Behavioral Health Network's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Southeast Florida Behavioral Health Network's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Southeast Florida Behavioral Health Network's public-nuisance claim against the PBMs is therefore time-barred because Southeast Florida Behavioral Health

Network sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Southeast Florida Behavioral Health Network, a hospital in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **465.** ***Catoosa County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45497-DAP: Plaintiff Catoosa County, Georgia**

Catoosa County's untimely motion for leave to amend should be denied for several reasons. Catoosa County failed to provide notice of its proposed amendments through a proposed complaint. Catoosa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Catoosa County's motion should be denied due to futility, as Catoosa County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Catoosa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Catoosa County amended its complaint on March 15, 2019, after transfer to the MDL on April 27, 2018. *See Catoosa County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45497-DAP, ECF No. 35. Unlike many other plaintiffs, Catoosa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Catoosa County's deadline to amend

was in 2019. Catoosa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Catoosa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Catoosa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Catoosa County). That insignificant dispensing volume is much too low to support a finding of good cause for Catoosa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Catoosa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Catoosa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Catoosa County filed its original complaint on April 10, 2018. *See Catoosa County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45497-DAP, ECF No. 6. Despite filing its case years ago, Catoosa County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document

retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Catoosa County's case would force the parties and the Court to waste time and resources ascertaining the extent of Catoosa County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Catoosa County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Catoosa County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Catoosa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Catoosa County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Catoosa County's proposed RICO claim against the PBMs has expired. Catoosa County filed its original complaint on April 10, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Catoosa County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45497-DAP, ECF

No. 6. It is therefore indisputable that Catoosa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Catoosa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Catoosa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Catoosa County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

466. ***People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45499-DAP: Plaintiff Effingham County, Illinois**

Effingham County's untimely motion for leave to amend should be denied for several reasons. Effingham County failed to provide notice of its proposed amendments through a proposed complaint. Effingham County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Effingham County's motion should be denied due to futility, as Effingham County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Effingham County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Effingham County amended its complaint on March 14, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*,

Case No. 1:18-op-45499-DAP, ECF No. 3. Unlike many other plaintiffs, Effingham County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Effingham County's deadline to amend was in 2019. Effingham County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Effingham County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Effingham County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Effingham County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Effingham County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Effingham County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Effingham County). That insignificant dispensing volume is much too low to support a finding of good cause for Effingham County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Effingham County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Effingham County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Effingham County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Effingham County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Effingham County's proposed RICO claim against the PBMs has expired. Effingham County filed its original complaint on April 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45499-DAP, ECF No. 1. It is therefore indisputable that Effingham County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Effingham County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Effingham County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Effingham County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

467. ***Prince George's County Maryland v. Purdue Pharma L.P. et al.***, **Case No. 1:18-op-45501-DAP: Plaintiff Prince Georges County, Maryland**

Prince Georges County's untimely motion for leave to amend should be denied for several reasons. Prince Georges County failed to provide notice of its proposed amendments through a proposed complaint. Prince Georges County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Prince Georges County's motion should be denied due to futility, as Prince Georges County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO

claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Prince Georges County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Prince Georges County amended its complaint on March 18, 2019, after transfer to the MDL on April 30, 2018. *See Prince George's County Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45501-DAP, ECF No. 36. Unlike many other plaintiffs, Prince Georges County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Prince Georges County's deadline to amend was in 2019. Prince Georges County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Prince Georges County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Prince Georges County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Prince Georges County—through its counsel— was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Prince Georges County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for

many months, especially since some underlying facts were made a part of the complaint”);
*Thurmond*, 649 F. App’x at 1006 (affirming denial of leave to amend for undue delay in part
because plaintiff’s counsel had access to discovery in related cases and was previously aware of
the proposed new defendants’ conduct).

**OptumRx’s Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx’s
home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to
Prince Georges County’s geographic jurisdiction over the ten-year period of 2010 to 2019. *See*
Gustafson Decl. (0.05% market share for Prince Georges County). That insignificant dispensing
volume is much too low to support a finding of good cause for Prince Georges County to add
dispensing claims against OptumRx’s home-delivery pharmacy years after the amendment
deadline. *See* Section III.A.2, above.

**Express Scripts’ Mail Order Pharmacy Has a Negligible Market Share.** Express
Scripts’ mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid
units shipped to Prince Georges County’s geographic jurisdiction during 2009 to 2019. *See*
DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too
low to support a finding of good cause for Prince Georges County to add dispensing claims against
Express Scripts’ mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Prince Georges County previously entered
into a contract with Express Scripts for PBM services related to utilization management and
formulary development. *See* Achter Decl., Exhibit A. That contract notified Prince Georges
County of the PBM services Express Scripts provides and Prince Georges County began receiving
those services on January 5, 2006. *See id.* Inasmuch as Prince Georges County seeks to add claims
against Express Scripts entities related to utilization management or formulary placement (*see,*

*e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Prince Georges County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Prince Georges County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Prince Georges County violated its basic duty to implement a timely litigation hold. Prince Georges County filed its original complaint on March 26, 2018, but waited until September 26, 2018 to implement a litigation hold—184 days later. *See Prince George's County Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45501-DAP, ECF No. 2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 26, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Prince Georges County's case would force the parties and the Court to waste time and resources ascertaining the extent of Prince Georges County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Prince Georges County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Prince Georges County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Prince Georges County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Prince Georges County, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Prince Georges County's proposed RICO claim against the PBMs has expired. Prince Georges County filed its original complaint on March 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Prince George's County Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45501-DAP, ECF No. 2. It is therefore indisputable that Prince Georges County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Prince Georges County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Prince Georges County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Prince Georges County's public-nuisance claim against the PBMs is therefore time-barred because Prince Georges County sought leave to amend its

complaint on July 29, 2024—six years after filing its original complaint on March 26, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Prince Georges County, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **468.** ***Lac du Flambeau Band of Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45502-DAP: Plaintiff Lac du Flambeau Band of Chippewa Indians, Wisconsin**

Lac du Flambeau Band of Chippewa Indians' untimely motion for leave to amend should be denied for several reasons. Lac du Flambeau Band of Chippewa Indians failed to provide notice of its proposed amendments through a proposed complaint. Lac du Flambeau Band of Chippewa Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lac du Flambeau Band of Chippewa Indians' motion should be denied due to futility, as Lac du Flambeau Band of Chippewa Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lac du Flambeau Band of Chippewa Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lac du Flambeau Band of Chippewa Indians amended its complaint on August 12, 2019, after transfer to the MDL on April 30, 2018. *See Lac du Flambeau Band of Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45502-DAP, ECF

No. 33. Unlike many other plaintiffs, Lac du Flambeau Band of Chippewa Indians declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lac du Flambeau Band of Chippewa Indians' deadline to amend was in 2019. Lac du Flambeau Band of Chippewa Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lac du Flambeau Band of Chippewa Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lac du Flambeau Band of Chippewa Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lac du Flambeau Band of Chippewa Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lac du Flambeau Band of Chippewa Indians filed its original complaint on March 30, 2018. *See Lac du Flambeau Band of Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45502-DAP, ECF No. 1. Despite filing its case years ago, Lac du Flambeau Band of Chippewa Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lac du Flambeau Band of Chippewa Indians' case would force

the parties and the Court to waste time and resources ascertaining the extent of Lac du Flambeau Band of Chippewa Indians' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lac du Flambeau Band of Chippewa Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lac du Flambeau Band of Chippewa Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lac du Flambeau Band of Chippewa Indians' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lac du Flambeau Band of Chippewa Indians, a native tribe in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lac du Flambeau Band of Chippewa Indians' proposed RICO claim against the PBMs has expired. Lac du Flambeau Band of Chippewa Indians filed its original complaint on March 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lac du Flambeau Band of*

1845

*Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45502-DAP, ECF No. 1. It is therefore indisputable that Lac du Flambeau Band of Chippewa Indians knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lac du Flambeau Band of Chippewa Indians' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lac du Flambeau Band of Chippewa Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lac du Flambeau Band of Chippewa Indians, a native tribe in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 469. *DeKalb County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45503-DAP: Plaintiff DeKalb County, Georgia

DeKalb County's untimely motion for leave to amend should be denied for several reasons. DeKalb County failed to provide notice of its proposed amendments through a proposed complaint. DeKalb County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, DeKalb County's motion should be denied due to futility, as DeKalb County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** DeKalb County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

DeKalb County amended its complaint on March 15, 2019, after transfer to the MDL on April 30, 2018 *See DeKalb County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45503-DAP, ECF No. 14. Unlike many other plaintiffs, DeKalb County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. DeKalb County's deadline to amend was in 2019. DeKalb County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. DeKalb County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** DeKalb County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. DeKalb County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. DeKalb County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to DeKalb County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for DeKalb County). That insignificant dispensing volume is much too low to support a finding of good cause for DeKalb County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to DeKalb County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for DeKalb County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But DeKalb County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** DeKalb County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** DeKalb County previously filed an opioid case outside the MDL against the PBMs on March 21, 2023. *See City of Atlanta et al. v. Mylan Pharms., Inc. et al.*, Case No. 1:23-cv-01193 (N.D. Ga.), ECF No. 1. DeKalb County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 147, 148, 150, 151. By suing the PBMs outside the MDL in 2023, DeKalb County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for DeKalb County's proposed RICO claim against the PBMs has expired. DeKalb County filed its original complaint on April 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See DeKalb County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45503-DAP, ECF No. 1. It is therefore indisputable that DeKalb County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. DeKalb County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. DeKalb County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** DeKalb County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**470.** *County of Wilcox, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45506-DAP: Plaintiff Wilcox County, Georgia

Wilcox County's untimely motion for leave to amend should be denied for several reasons. Wilcox County failed to provide notice of its proposed amendments through a proposed complaint. Wilcox County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wilcox County's motion should be denied due to futility, as Wilcox County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wilcox County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wilcox County amended its complaint on March 15, 2019, after directly filing in the MDL. *See County of Wilcox, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45506-DAP, ECF No. 2. Unlike many other plaintiffs, Wilcox County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wilcox County's deadline to amend was in 2019. Wilcox County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wilcox County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wilcox County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.14% market share for Wilcox County). That insignificant dispensing volume is much too low to support a finding of good cause for Wilcox County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wilcox County filed its original complaint on April 27, 2018. *See County of Wilcox, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45506-DAP, ECF No. 1. Despite filing its case years ago, Wilcox County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wilcox County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wilcox County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wilcox County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wilcox County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wilcox County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wilcox County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wilcox County's proposed RICO claim against the PBMs has expired. Wilcox County filed its original complaint on April 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Wilcox, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45506-DAP, ECF No. 1. It is therefore indisputable that Wilcox County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wilcox County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wilcox County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wilcox County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

471. ***City of Hattiesburg, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45512-DAP: Plaintiff Hattiesburg City, Mississippi**

Hattiesburg City's untimely motion for leave to amend should be denied for several reasons. Hattiesburg City failed to provide notice of its proposed amendments through a proposed complaint. Hattiesburg City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hattiesburg City's motion should be denied due to futility, as Hattiesburg City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hattiesburg City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hattiesburg City amended its complaint on March 7, 2019, after transfer to the MDL on April 30, 2018. *See City of Hattiesburg, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45512-DAP, ECF No. 8. Unlike many other plaintiffs, Hattiesburg City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hattiesburg City's deadline to amend was in 2019. Hattiesburg City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hattiesburg City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hattiesburg City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hattiesburg City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hattiesburg City fails to explain why it was unable to

assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hattiesburg City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Hattiesburg City). That insignificant dispensing volume is much too low to support a finding of good cause for Hattiesburg City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hattiesburg City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hattiesburg City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hattiesburg City filed its original complaint on April 17, 2018. *See City of Hattiesburg, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45512-DAP, ECF No. 1. Despite filing its case years ago, Hattiesburg City

*never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hattiesburg City's case would force the parties and the Court to waste time and resources ascertaining the extent of Hattiesburg City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hattiesburg City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hattiesburg City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hattiesburg City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hattiesburg City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hattiesburg City of this deficiency on September 16, 2024 (*see* Exhibit B), but Hattiesburg City refused to amend or supplement its Fact Sheet. Under this Court's orders, Hattiesburg City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hattiesburg City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hattiesburg City's potential claims against them. Hattiesburg City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hattiesburg City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hattiesburg City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hattiesburg City's proposed RICO claim against the PBMs has expired. Hattiesburg City filed its original complaint on April 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Hattiesburg, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45512-DAP, ECF No. 1. It is therefore indisputable that Hattiesburg City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hattiesburg City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hattiesburg City's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hattiesburg City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 472. *City of Sarasota v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45513-DAP: Plaintiff Sarasota City, Florida

Sarasota City's untimely motion for leave to amend should be denied for several reasons. Sarasota City failed to provide notice of its proposed amendments through a proposed complaint. Sarasota City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sarasota City's motion should be denied due to futility, as Sarasota City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sarasota City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sarasota City amended its complaint on March 14, 2019, after transfer to the MDL on May 1, 2018. *See City of Sarasota v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45513-DAP, ECF No. 9. Unlike many other plaintiffs, Sarasota City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sarasota City's deadline to amend was in 2019. Sarasota City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sarasota City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the

scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sarasota City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.41% market share for Sarasota City). That insignificant dispensing volume is much too low to support a finding of good cause for Sarasota City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sarasota City filed its original complaint on April 11, 2018. *See City of Sarasota v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45513-DAP, ECF No. 1. Despite filing its case years ago, Sarasota City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sarasota City's case would force the parties and the Court to waste time and resources ascertaining the extent of Sarasota City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sarasota City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sarasota City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time

resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Sarasota City has *never* served a Plaintiff Fact Sheet. Sarasota City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sarasota City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sarasota City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sarasota City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sarasota City's proposed RICO claim against the PBMs has expired. Sarasota City filed its original complaint on April 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Sarasota v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45513-DAP, ECF No. 1. It is

therefore indisputable that Sarasota City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sarasota City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sarasota City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Sarasota City's public-nuisance claim against the PBMs is therefore time-barred because Sarasota City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 11, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sarasota City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 473. *City of Lowell v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45514-DAP: Plaintiff Lowell City, Massachusetts

Lowell City's untimely motion for leave to amend should be denied for several reasons. Lowell City failed to provide notice of its proposed amendments through a proposed complaint. Lowell City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lowell City's motion should be denied due to futility, as Lowell City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lowell City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lowell City amended its complaint on March 6, 2019, after transfer to the MDL on May 1, 2018. *See City of Lowell v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45514-DAP, ECF No. 9. Unlike many other plaintiffs, Lowell City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lowell City's deadline to amend was in 2019. Lowell City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lowell City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lowell City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lowell City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier.

Lowell City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lowell City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.005% market share for Lowell City). That insignificant dispensing volume is much too low to support a finding of good cause for Lowell City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lowell City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lowell City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lowell City filed its original complaint on April 16, 2018. *See City of Lowell v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45514-DAP, ECF No. 1. Despite filing its case years ago, Lowell City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document

retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lowell City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lowell City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lowell City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lowell City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

 **Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lowell City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

 **Failure to State a Claim.** Lowell City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

 **RICO Statute of Limitations.** The statute of limitations for Lowell City's proposed RICO claim against the PBMs has expired. Lowell City filed its original complaint on April 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of*

*Lowell v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45514-DAP, ECF No. 1. It is therefore indisputable that Lowell City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lowell City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lowell City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Lowell City's public-nuisance claim against the PBMs is therefore time-barred because Lowell City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lowell City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **474.** ***Town of East Greenwich v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45515-DAP: Plaintiff East Greenwich Town, Rhode Island**

East Greenwich Town's untimely motion for leave to amend should be denied for several reasons. East Greenwich Town failed to provide notice of its proposed amendments through a

proposed complaint. East Greenwich Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, East Greenwich Town's motion should be denied due to futility, as East Greenwich Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** East Greenwich Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, East Greenwich Town amended its complaint on March 7, 2019, after transfer to the MDL on May 1, 2018. *See Town of East Greenwich v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45515-DAP, ECF No. 17. Unlike many other plaintiffs, East Greenwich Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. East Greenwich Town's deadline to amend was in 2019. East Greenwich Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. East Greenwich Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** East Greenwich Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. East Greenwich Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. East

Greenwich Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to East Greenwich Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for East Greenwich Town). That insignificant dispensing volume is much too low to support a finding of good cause for East Greenwich Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to East Greenwich Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for East Greenwich Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But East Greenwich Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** East Greenwich Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for East Greenwich Town's proposed RICO claim against the PBMs has expired. East Greenwich Town filed its original complaint on April 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of East Greenwich v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45515-DAP, ECF No. 1. It is therefore indisputable that East Greenwich Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. East Greenwich Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. East Greenwich Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** East Greenwich Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

475. *City of Sandy Springs, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45516-DAP: Plaintiff Sandy Springs City, Georgia

Sandy Springs City's untimely motion for leave to amend should be denied for several reasons. Sandy Springs City failed to provide notice of its proposed amendments through a proposed complaint. Sandy Springs City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sandy Springs City's motion should be denied due to futility, as Sandy Springs City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sandy Springs City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sandy Springs City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Sandy Springs, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45516-DAP, ECF No. 4. Unlike many other plaintiffs, Sandy Springs City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sandy Springs City's deadline to amend was in 2019. Sandy Springs City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sandy Springs City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sandy Springs City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Sandy Springs City). That insignificant dispensing volume is much too low to support a finding of good cause for Sandy Springs City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sandy Springs City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sandy Springs City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sandy Springs City filed its original complaint on May 1, 2018. *See City of Sandy Springs, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45516-DAP, ECF No. 1. Despite filing its case years ago, Sandy Springs City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sandy Springs City's case would force the parties and the Court to waste time and resources ascertaining the extent of Sandy Springs City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sandy Springs City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sandy Springs City therefore

lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sandy Springs City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sandy Springs City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sandy Springs City's proposed RICO claim against the PBMs has expired. Sandy Springs City filed its original complaint on May 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Sandy Springs, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45516-DAP, ECF No. 1. It is therefore indisputable that Sandy Springs City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sandy Springs City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sandy Springs City's request for

leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sandy Springs City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 476. *City of Clarksville, Tennessee v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45517-DAP: Plaintiff Clarksville City, Tennessee

Clarksville City's untimely motion for leave to amend should be denied for several reasons. Clarksville City failed to provide notice of its proposed amendments through a proposed complaint. Clarksville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clarksville City's motion should be denied due to futility, as Clarksville City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clarksville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clarksville City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Clarksville, Tennessee v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45517-DAP, ECF No. 3. Unlike many other plaintiffs, Clarksville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Clarksville City's deadline to amend was in 2019. Clarksville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clarksville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after

the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clarksville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Clarksville City). That insignificant dispensing volume is much too low to support a finding of good cause for Clarksville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clarksville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clarksville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Clarksville City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Clarksville City of the PBM services Express Scripts provides and Clarksville City began receiving those services on January 2, 2009. *See id.* Inasmuch as Clarksville City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Clarksville City knew or should have known of the alleged

wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Clarksville City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Clarksville City filed its original complaint on May 1, 2018. *See City of Clarksville, Tennessee v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45517-DAP, ECF No. 1. Despite filing its case years ago, Clarksville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Clarksville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Clarksville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clarksville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clarksville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clarksville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clarksville City, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clarksville City's proposed RICO claim against the PBMs has expired. Clarksville City filed its original complaint on May 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Clarksville, Tennessee v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45517-DAP, ECF No. 1. It is therefore indisputable that Clarksville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Clarksville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clarksville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clarksville City, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**477.** ***People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45518-DAP: Plaintiff Lawrence County, Illinois**

Lawrence County's untimely motion for leave to amend should be denied for several reasons. Lawrence County failed to provide notice of its proposed amendments through a proposed complaint. Lawrence County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Lawrence County's motion should be denied due to futility, as Lawrence County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lawrence County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lawrence County amended its complaint on March 6, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45518-DAP, ECF No. 3. Unlike many other plaintiffs, Lawrence County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lawrence County's deadline to amend was in 2019. Lawrence County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lawrence County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lawrence County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lawrence County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lawrence County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lawrence County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.21% market share for Lawrence County). That insignificant dispensing volume is much too low to support a finding of good cause for Lawrence County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lawrence County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lawrence County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lawrence County's proposed RICO claim against the PBMs has expired. Lawrence County filed its original complaint on May 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45518-DAP, ECF No. 1. It is therefore indisputable that Lawrence County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lawrence County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lawrence County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lawrence County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

478.  ***People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45519-DAP: Plaintiff Massac County, Illinois**

Massac County's untimely motion for leave to amend should be denied for several reasons. Massac County failed to provide notice of its proposed amendments through a proposed complaint. Massac County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Massac County's motion should be denied due to futility, as Massac County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Massac County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Massac County amended its complaint on March 13, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45519-DAP, ECF No. 2. Unlike many other plaintiffs, Massac County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Massac County's deadline to amend was in 2019. Massac County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Massac County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Massac County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Massac County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Massac County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Massac County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Massac County). That insignificant dispensing volume is much too low to support a finding of good cause for Massac County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Massac County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Massac County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Massac County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Massac County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Massac County's proposed RICO claim against the PBMs has expired. Massac County filed its original complaint on May 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45519-DAP, ECF No. 1. It is therefore indisputable that Massac County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Massac County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Massac County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Massac County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **479.** *Martin County, NC v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45522-DAP: Plaintiff Martin County, North Carolina**

Martin County's untimely motion for leave to amend should be denied for several reasons. Martin County failed to provide notice of its proposed amendments through a proposed complaint. Martin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Martin County's motion should be denied due to futility, as Martin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Martin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Martin County amended its complaint on March 11, 2019, after transfer to the MDL on May 3, 2018. *See Martin County, NC v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45522-DAP, ECF No. 8. Unlike many other plaintiffs, Martin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Martin County's deadline to amend was in 2019. Martin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Martin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Martin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Martin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Martin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Martin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Martin County). That insignificant dispensing volume is much too low to support a finding of good cause for Martin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Martin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Martin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Martin County filed its original complaint on April 16, 2018. *See Martin County, NC v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45522-DAP, ECF No. 1. Despite filing its case years ago, Martin County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Martin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Martin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Martin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Martin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Martin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Martin County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Martin County's proposed RICO claim against the PBMs has expired. Martin County filed its original complaint on April 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Martin County, NC v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45522-DAP, ECF No. 1. It is therefore indisputable that Martin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Martin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Martin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Martin County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **480.** *McDowell County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45524-DAP: Plaintiff McDowell County, North Carolina**

McDowell County's untimely motion for leave to amend should be denied for several reasons. McDowell County failed to provide notice of its proposed amendments through a proposed complaint. McDowell County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, McDowell County's motion should be denied due to futility, as McDowell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** McDowell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, McDowell County amended its complaint on March 11, 2019, after transfer to the MDL on May 7, 2018. *See McDowell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45524-DAP, ECF No. 6. Unlike many other plaintiffs, McDowell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. McDowell County's deadline to amend was in 2019. McDowell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. McDowell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** McDowell County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. McDowell County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. McDowell County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to McDowell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for McDowell County). That insignificant dispensing volume is much too low to support a finding of good cause for McDowell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to McDowell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for McDowell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But McDowell County's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** McDowell County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for McDowell County's proposed RICO claim against the PBMs has expired. McDowell County filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See McDowell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45524-DAP, ECF No. 1. It is therefore indisputable that McDowell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. McDowell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. McDowell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** McDowell County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

481. ***Watauga County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45525-DAP: Plaintiff Watauga County, North Carolina**

Watauga County's untimely motion for leave to amend should be denied for several reasons. Watauga County failed to provide notice of its proposed amendments through a proposed complaint. Watauga County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Watauga County's motion should be denied due to futility, as Watauga County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Watauga County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Watauga County amended its complaint on March 12, 2019, after transfer to the MDL on May 7, 2018. *See Watauga County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45525-DAP, ECF No. 5. Unlike many other plaintiffs, Watauga County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Watauga County's deadline to amend was in 2019. Watauga County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Watauga County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Watauga County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Watauga County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Watauga County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Watauga County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Watauga County). That insignificant dispensing volume is much too low to support a finding of good cause for Watauga County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Watauga County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Watauga County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Watauga County filed its original complaint on April 17, 2018. *See Watauga County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45525-DAP, ECF No. 1. Despite filing its case years ago, Watauga County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Watauga County's case would force the parties and the Court to waste time and resources ascertaining the extent of Watauga County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Watauga County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Watauga County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Watauga County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Watauga County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Watauga County's proposed RICO claim against the PBMs has expired. Watauga County filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Watauga County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45525-DAP, ECF No. 1. It is therefore indisputable that Watauga County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Watauga County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Watauga County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Watauga County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **482.** *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45527-DAP: Plaintiff Livingston County, Illinois**

Livingston County's untimely motion for leave to amend should be denied for several reasons. Livingston County failed to provide notice of its proposed amendments through a proposed complaint. Livingston County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Livingston County's motion should be denied due to futility, as Livingston County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Livingston County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Livingston County amended its complaint on March 6, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45527-DAP, ECF No. 2. Unlike many other plaintiffs, Livingston County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Livingston County's deadline to amend was in 2019. Livingston County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Livingston County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Livingston County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Livingston County, through its counsel, was on notice

of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Livingston County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Livingston County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Livingston County). That insignificant dispensing volume is much too low to support a finding of good cause for Livingston County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Livingston County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Livingston County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Livingston County violated its basic duty to implement a timely litigation hold. Livingston County filed its original complaint on May 3, 2018, but waited until September 18, 2024 to implement a litigation hold—six years later. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45527-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 18, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Livingston County's case would force the parties and the Court to waste time and resources ascertaining the extent of Livingston County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Livingston County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Livingston County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Livingston County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Livingston County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

1894

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Livingston County's proposed RICO claim against the PBMs has expired. Livingston County filed its original complaint on May 3, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45527-DAP, ECF No. 1. It is therefore indisputable that Livingston County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Livingston County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Livingston County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Livingston County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

483. ***People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45528-DAP: Plaintiff Saline County, Illinois**

Saline County's untimely motion for leave to amend should be denied for several reasons. Saline County failed to provide notice of its proposed amendments through a proposed complaint. Saline County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Saline County's motion should be denied due to futility, as Saline County does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Saline County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Saline County amended its complaint on March 13, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45528-DAP, ECF No. 2. Unlike many other plaintiffs, Saline County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Saline County's deadline to amend was in 2019. Saline County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Saline County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Saline County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Saline County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Saline County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Saline County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Saline County). That insignificant dispensing volume is much too low to support a finding of good cause for Saline County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Saline County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Saline County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Saline County filed its original complaint on May 3, 2018. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45528-DAP, ECF No. 1. Despite filing its case years ago, Saline County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Saline

County's case would force the parties and the Court to waste time and resources ascertaining the extent of Saline County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Saline County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Saline County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Saline County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Saline County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Saline County's proposed RICO claim against the PBMs has expired. Saline County filed its original complaint on May 3, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45528-DAP, ECF No. 1. It is therefore indisputable that Saline County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking

leave to amend. Saline County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Saline County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Saline County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 484. *Marion County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45529-DAP: Plaintiff Marion County, Ohio

Marion County's untimely motion for leave to amend should be denied for several reasons. Marion County failed to provide notice of its proposed amendments through a proposed complaint. Marion County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Marion County's motion should be denied due to futility, as Marion County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marion County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marion County amended its complaint on March 11, 2019, after directly filing in the MDL. *See Marion County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45529-DAP, ECF No. 24. Unlike many other plaintiffs, Marion County declined

to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marion County's deadline to amend was in 2019. Marion County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marion County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marion County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Marion County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marion County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Marion County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Marion County). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marion County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marion County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marion County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Marion County is a plaintiff in Ohio. Marion County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product

have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Marion County's proposed RICO claim against the PBMs has expired. Marion County filed its original complaint on May 3, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marion County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45529-DAP, ECF No. 1. It is therefore indisputable that Marion County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marion County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marion County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marion County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **485.** *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45532-DAP: Plaintiff Marion County, Illinois**

Marion County's untimely motion for leave to amend should be denied for several reasons. Marion County failed to provide notice of its proposed amendments through a proposed complaint. Marion County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marion County's motion should be denied due to futility, as Marion County

does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marion County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marion County amended its complaint on March 13, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45532-DAP, ECF No. 2. Unlike many other plaintiffs, Marion County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marion County's deadline to amend was in 2019. Marion County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marion County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marion County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Marion County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marion County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marion County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Marion County). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marion County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Marion County violated its basic duty to implement a timely litigation hold. Marion County filed its original complaint on May 4, 2018, but waited until July 10, 2024 to implement a litigation hold—six years later. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45532-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 10, 2024).

This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marion County's case would force the parties and the Court to waste time and resources ascertaining the extent of Marion County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marion County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marion County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marion County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marion County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marion County's proposed RICO claim against the PBMs has expired. Marion County filed its original complaint on May 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45532-DAP, ECF No. 1. It is therefore indisputable that Marion County knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marion County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marion County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marion County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

486. ***Fiscal Court of Bourbon County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45533-DAP: Plaintiff Bourbon County, Kentucky**

Bourbon County's untimely motion for leave to amend should be denied for several reasons. Bourbon County failed to provide notice of its proposed amendments through a proposed complaint. Bourbon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bourbon County's motion should be denied due to futility, as Bourbon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bourbon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bourbon County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Fiscal Court of Bourbon County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-

45533-DAP, ECF No. 25. Unlike many other plaintiffs, Bourbon County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bourbon County's deadline to amend was in 2019. Bourbon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bourbon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bourbon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Bourbon County). That insignificant dispensing volume is much too low to support a finding of good cause for Bourbon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bourbon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bourbon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bourbon County filed its original complaint on May 4, 2018. *See Fiscal Court of Bourbon County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45533-DAP, ECF No. 1. Despite filing its case years ago, Bourbon County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bourbon County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bourbon County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bourbon County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bourbon County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bourbon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bourbon County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bourbon County's proposed RICO claim against the PBMs has expired. Bourbon County filed its original complaint on May 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Bourbon County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45533-DAP, ECF No. 1. It is therefore indisputable that Bourbon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bourbon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bourbon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bourbon County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 487. *Fiscal Court of Owen County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45534-DAP: Plaintiff Owen County, Kentucky

Owen County's untimely motion for leave to amend should be denied for several reasons. Owen County failed to provide notice of its proposed amendments through a proposed complaint. Owen County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Owen County's motion should be denied due to futility, as Owen County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Owen County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Owen County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Fiscal Court of Owen County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45534-DAP, ECF No. 25. Unlike many other plaintiffs, Owen County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Owen County's deadline to amend was in 2019. Owen County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Owen County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Owen County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Owen County). That insignificant dispensing volume is much too low to support a finding of good cause for Owen County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Owen County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Owen County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Owen County filed its original complaint on May 4, 2018. *See Fiscal Court of Owen County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45534-DAP, ECF No. 1. Despite filing its case years ago, Owen County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Owen County's case would force the parties and the Court to waste time and resources ascertaining the extent of Owen County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Owen County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Owen County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Owen County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Owen County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Owen County's proposed RICO claim against the PBMs has expired. Owen County filed its original complaint on May 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Owen County, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45534-DAP, ECF No. 1. It is therefore indisputable that Owen County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Owen County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Owen County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Owen County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

488. *Warren County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45536-DAP: Plaintiff Warren County, North Carolina**

Warren County's untimely motion for leave to amend should be denied for several reasons. Warren County failed to provide notice of its proposed amendments through a proposed complaint. Warren County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Warren County's motion should be denied due to futility, as Warren County does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Warren County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Warren County amended its complaint on March 12, 2019, after transfer to the MDL on May 8, 2018. *See Warren County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45536-DAP, ECF No. 7. Unlike many other plaintiffs, Warren County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Warren County's deadline to amend was in 2019. Warren County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Warren County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Warren County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Warren County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Warren County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Warren County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.34% market share for Warren County). That insignificant dispensing volume is much too low to support a finding of good cause for Warren County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Warren County filed its original complaint on April 17, 2018. *See Warren County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45536-DAP, ECF No. 1. Despite filing its case years ago, Warren County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Warren County's case would force the parties and the Court to waste time and resources ascertaining the extent of Warren County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Warren County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Warren County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Warren County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Warren County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Warren County's proposed RICO claim against the PBMs has expired. Warren County filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Warren County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45536-DAP, ECF No. 1. It is therefore indisputable that Warren County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Warren County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Warren County's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Warren County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 489. *City of Metropolis, Illinois v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45537-DAP: Plaintiff Metropolis City, Illinois

Metropolis City's untimely motion for leave to amend should be denied for several reasons. Metropolis City failed to provide notice of its proposed amendments through a proposed complaint. Metropolis City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Metropolis City's motion should be denied due to futility, as Metropolis City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Metropolis City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Metropolis City amended its complaint on March 6, 2019, after directly filing in the MDL. *See City of Metropolis, Illinois v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45537-DAP, ECF No. 2. Unlike many other plaintiffs, Metropolis City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Metropolis City's deadline to amend was in 2019. Metropolis City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Metropolis City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Metropolis City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Metropolis City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Metropolis City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Metropolis City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Metropolis City). That insignificant dispensing volume is much too low to support a finding of good cause for Metropolis City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Metropolis City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Metropolis City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Metropolis City violated its basic duty to implement a timely litigation hold. Metropolis City filed its original complaint on May 7, 2018, but waited until September 25, 2024 to implement a litigation hold—six years later. *See City of Metropolis, Illinois v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45537-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Metropolis City's case would force the parties and the Court to waste time and resources ascertaining the extent of Metropolis City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Metropolis City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Metropolis City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Metropolis City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Metropolis City, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Metropolis City's proposed RICO claim against the PBMs has expired. Metropolis City filed its original complaint on May 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Metropolis, Illinois v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45537-DAP, ECF No. 1. It is therefore indisputable that Metropolis City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Metropolis City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Metropolis City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Metropolis City, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 490. *Marshall County Health Care Authority v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45538-DAP: Plaintiff Marshall County Health Care Authority, Alabama

Marshall County Health Care Authority's untimely motion for leave to amend should be denied for several reasons. Marshall County Health Care Authority failed to provide notice of its proposed amendments through a proposed complaint. Marshall County Health Care Authority also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marshall County Health Care Authority's motion should be denied due to futility, as Marshall County Health Care Authority does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marshall County Health Care Authority was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marshall County Health Care Authority filed its original complaint directly into the MDL on May 7, 2018. *See Marshall County Health Care Authority v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45538-DAP, ECF No. 1. Marshall County Health Care Authority could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Marshall County Health Care Authority elected not to do so. Marshall County Health Care Authority waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marshall County Health Care Authority's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*,

972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Marshall County Health Care Authority filed its original complaint on May 7, 2018. *See Marshall County Health Care Authority v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45538-DAP, ECF No. 1. Despite filing its case years ago, Marshall County Health Care Authority *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Marshall County Health Care Authority's case would force the parties and the Court to waste time and resources ascertaining the extent of Marshall County Health Care Authority's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marshall County Health Care Authority's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marshall County Health Care Authority therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marshall County Health Care Authority's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time.

That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marshall County Health Care Authority, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marshall County Health Care Authority's proposed RICO claim against the PBMs has expired. Marshall County Health Care Authority filed its original complaint on May 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marshall County Health Care Authority v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45538-DAP, ECF No. 1. It is therefore indisputable that Marshall County Health Care Authority knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marshall County Health Care Authority's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marshall County Health Care Authority's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Marshall County Health Care Authority's public-nuisance claim against the PBMs is therefore time-barred because Marshall County Health Care Authority sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May

7, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Duplicative Recovery**. Marshall County Health Care Authority, a municipal health care authority, seeks leave to add the same claims and recover the same alleged damages as the related municipality, Marshall County, Alabama, a plaintiff in *Marshall County, Alabama et al. v. Purdue Pharma L P et al.*, 1:18-op-45230-DAP. These duplicative claims are subject to dismissal and leave to amend should be denied as futile. *See* Section III.B.2, above; *cf. Firestone Laser & Mfg. LLC v. Bristow*, __ F. Supp. 3d __, 2024 WL 3819623, at *12 (N.D. Ohio Aug. 14, 2024) (dismissing claim because otherwise it would produce an impermissible double recovery).

**Plaintiff Lacks Standing.** Marshall County Health Care Authority, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 491. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45539-DAP: Plaintiff Jefferson County, Illinois

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jefferson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson County amended its complaint on March 6, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45539-DAP, ECF No. 2. Unlike many other plaintiffs, Jefferson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jefferson County's deadline to amend was in 2019. Jefferson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jefferson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jefferson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jefferson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Jefferson County violated its basic duty to implement a timely litigation hold. Jefferson County filed its original complaint on May 7, 2018, but waited until September 27, 2024 to implement a litigation hold—six years later. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45539-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 27, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jefferson County's case would force the parties and the Court to waste time and resources ascertaining the

extent of Jefferson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jefferson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jefferson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jefferson County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its original complaint on May 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45539-DAP, ECF No. 1. It is therefore indisputable that Jefferson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before

seeking leave to amend. Jefferson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jefferson County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 492. *Henry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45543-DAP: Plaintiff Henry County, Alabama

Henry County's untimely motion for leave to amend should be denied for several reasons. Henry County failed to provide notice of its proposed amendments through a proposed complaint. Henry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Henry County's motion should be denied due to futility, as Henry County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Henry County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Henry County filed its original complaint on April 17, 2018 and the case was transferred to the MDL on May 8, 2018. *See Henry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-

op-45543-DAP, ECF No. 27. Henry County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Henry County elected not to do so. Instead, Henry County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Henry County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Henry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Henry County). That insignificant dispensing volume is much too low to support a finding of good cause for Henry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Henry County filed its original complaint on April 17, 2018. *See Henry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45543-DAP, ECF No. 1. Despite filing its case years ago, Henry County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Henry County's case would force the parties and the Court to waste time and resources ascertaining the extent of Henry County's document destruction and the appropriate sanctions—just as the parties were forced to do in the

three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Henry County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Henry County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Henry County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Henry County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Henry County of this deficiency on September 16, 2024 (*see* Exhibit B), but Henry County refused to amend or supplement its Fact Sheet. Under this Court's orders, Henry County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Henry County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Henry County's potential claims against them. Henry County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Henry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Henry County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Henry County's proposed RICO claim against the PBMs has expired. Henry County filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Henry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45543-DAP, ECF No. 1. It is therefore indisputable that Henry County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Henry County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Henry County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Henry County's public-nuisance claim against the PBMs is therefore time-barred because Henry County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Henry County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Henry County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 493. *City of Tuskegee, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45544-DAP: Plaintiff Tuskegee City, Alabama

Tuskegee City's untimely motion for leave to amend should be denied for several reasons. Tuskegee City failed to provide notice of its proposed amendments through a proposed complaint. Tuskegee City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tuskegee City's motion should be denied due to futility, as Tuskegee City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tuskegee City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tuskegee City filed its original complaint on April 19, 2018 and the case was transferred to the MDL on May 8, 2018. *See City of Tuskegee, Alabama v. Purdue Pharma L.P. et al.*, Case No.

1:18-op-45544-DAP, ECF No. 23. Tuskegee City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Tuskegee City elected not to do so. Instead, Tuskegee City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tuskegee City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tuskegee City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.21% market share for Tuskegee City). That insignificant dispensing volume is much too low to support a finding of good cause for Tuskegee City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tuskegee City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tuskegee City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tuskegee City filed its original complaint on April 19, 2018. *See City of Tuskegee, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45544-DAP, ECF No. 1. Despite filing its case years ago, Tuskegee City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Tuskegee City's case would force the parties and the Court to waste time and resources ascertaining the extent of Tuskegee City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tuskegee City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tuskegee City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tuskegee City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tuskegee City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tuskegee City's proposed RICO claim against the PBMs has expired. Tuskegee City filed its original complaint on April 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Tuskegee, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45544-DAP, ECF No. 1. It is therefore indisputable that Tuskegee City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tuskegee City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tuskegee City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Tuskegee City's public-nuisance claim against the PBMs is therefore time-barred because Tuskegee City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 19, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tuskegee City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**494.** *City of Wilkes Barre, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45545-DAP: Plaintiff Wilkes-Barre City, Pennsylvania

Wilkes-Barre City's untimely motion for leave to amend should be denied for several reasons. Wilkes-Barre City failed to provide notice of its proposed amendments through a proposed complaint. Wilkes-Barre City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Wilkes-Barre City's motion should be denied due to futility, as Wilkes-Barre City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wilkes-Barre City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wilkes-Barre City amended its complaint on March 5, 2019, after transfer to the MDL on May 8, 2018. *See City of Wilkes Barre, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45545-DAP, ECF No. 6. Unlike many other plaintiffs, Wilkes-Barre City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wilkes-Barre City's deadline to amend was in 2019. Wilkes-Barre City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wilkes-Barre City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wilkes-Barre City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wilkes-Barre City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wilkes-Barre City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wilkes-Barre City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Wilkes-Barre City). That insignificant dispensing volume is much too low to support a finding of good cause for Wilkes-Barre City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wilkes-Barre City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Wilkes-Barre City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wilkes-Barre City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wilkes-Barre City, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wilkes-Barre City's proposed RICO claim against the PBMs has expired. Wilkes-Barre City filed its original complaint on April 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Wilkes Barre, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45545-DAP, ECF No. 1. It is therefore indisputable that Wilkes-Barre City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wilkes-Barre City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wilkes-Barre City's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wilkes-Barre City, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 495. *Harrison County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45547-DAP: Plaintiff Harrison County, Ohio

Harrison County's untimely motion for leave to amend should be denied for several reasons. Harrison County previously dismissed its claims against some of the PBMs with prejudice in another case. Moreover, Harrison County failed to provide notice of its proposed amendments through a proposed complaint. Harrison County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Harrison County's motion should be denied due to futility, as Harrison County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Prior Dismissal with Prejudice.** Harrison County previously dismissed its claims against Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Express Scripts, Inc.; Medco Health Solutions, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.; with prejudice in another case. *See County of Cuyahoga et al. v. Mylan Pharms., Inc. et al.*, Case No. 1:23-op-45003 (N.D. Ohio), ECF No. 50. That dismissal "operates as a final adjudication on the merits and has a res judicata effect." *Warfield*, 267 F.3d at 542; *see also Taylor*, 21 F. App'x at 266 ("A dismissal with prejudice [by stipulation of the parties] operates as a rejection of the plaintiff's claims on the merits and the

doctrine of claim preclusion bars further litigation."). Harrison County's proposed claims against Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Express Scripts, Inc.; Medco Health Solutions, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.; are therefore barred by res judicata and leave to amend should be denied as futile. *See Gale*, 142 F. Supp. 3d at 554–55 ("[A] stipulated dismissal with prejudice constitutes an adjudication on the merits" and denying motion for leave to amend complaint when "[p]laintiffs fail to allege any claim within this Court's federal question jurisdiction that would not be barred by *res judicata*.").

**Lack of Diligence.** Harrison County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Harrison County amended its complaint on March 18, 2019, after transfer to the MDL on May 9, 2018. *See Harrison County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45547-DAP, ECF No. 15. Unlike many other plaintiffs, Harrison County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Harrison County's deadline to amend was in 2019. Harrison County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Harrison County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Harrison County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been

bringing claims against the PBMs since 2019. Harrison County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Harrison County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Harrison County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Harrison County). That insignificant dispensing volume is much too low to support a finding of good cause for Harrison County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Harrison County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Harrison County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Harrison County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Harrison County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Harrison County of this deficiency on September 16, 2024 (*see* Exhibit B), but Harrison County refused to amend or supplement its Fact Sheet. Under this Court's orders, Harrison County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Harrison County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Harrison County's potential claims against them. Harrison County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Harrison County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Harrison County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Harrison County is a plaintiff in Ohio. Harrison County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Harrison County's proposed RICO claim against the PBMs has expired. Harrison County filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Harrison County Board of Commissioners v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45547-DAP, ECF No. 15. It is therefore indisputable that Harrison County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Harrison County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Harrison County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Harrison County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 496. ***Mayor and Alderman of the City of Savannah v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45550-DAP: Plaintiff Savannah City, Georgia**

Savannah City's untimely motion for leave to amend should be denied for several reasons. Savannah City failed to provide notice of its proposed amendments through a proposed complaint.

Savannah City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Savannah City's motion should be denied due to futility, as Savannah City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Savannah City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Savannah City amended its complaint on March 15, 2019, after transfer to the MDL on May 9, 2018. *See Mayor and Alderman of the City of Savannah v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45550-DAP, ECF No. 24. Unlike many other plaintiffs, Savannah City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Savannah City's deadline to amend was in 2019. Savannah City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Savannah City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Savannah City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Savannah City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Savannah City fails to explain why it was unable to assert claims against

the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Savannah City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Savannah City). That insignificant dispensing volume is much too low to support a finding of good cause for Savannah City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Savannah City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Savannah City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Savannah City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Savannah City of the PBM

services Express Scripts provides and Savannah City began receiving those services on January 1, 2010. *See id.* Inasmuch as Savannah City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Savannah City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Savannah City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Savannah City filed its original complaint on April 17, 2018. *See Mayor and Alderman of the City of Savannah v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45550-DAP, ECF No. 1. Despite filing its case years ago, Savannah City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Savannah City's case would force the parties and the Court to waste time and resources ascertaining the extent of Savannah City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Savannah City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Savannah City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Savannah City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Savannah City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Savannah City's proposed RICO claim against the PBMs has expired. Savannah City filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mayor and Alderman of the City of Savannah v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45550-DAP, ECF No. 1. It is therefore indisputable that Savannah City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Savannah City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Savannah City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Savannah City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **497.** ***Miami-Dade County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45552-DAP: Plaintiff Miami-Dade County, Florida**

Miami-Dade County's untimely motion for leave to amend should be denied for several reasons. Miami-Dade County failed to provide notice of its proposed amendments through a proposed complaint. Miami-Dade County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Miami-Dade County's motion should be denied due to futility, as Miami-Dade County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Miami-Dade County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Miami-Dade County amended its complaint on March 15, 2019, after transfer to the MDL on May 9, 2018. *See Miami-Dade County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45552-DAP, ECF No. 7. Unlike many other plaintiffs, Miami-Dade County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Miami-Dade County's deadline to amend was in 2019. Miami-Dade County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Miami-Dade County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Miami-Dade County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Miami-Dade County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Miami-Dade County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Miami-Dade County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Miami-Dade County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Miami-Dade County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Miami-Dade County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Miami-Dade County's proposed RICO claim against the PBMs has expired. Miami-Dade County filed its original complaint on April 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Miami-Dade County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45552-DAP, ECF No. 1. It is therefore indisputable that Miami-Dade County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Miami-Dade County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Miami-Dade County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Miami-Dade County's public-nuisance claim against the PBMs is therefore time-barred because Miami-Dade County sought leave to amend its complaint on July

29, 2024—six years after filing its original complaint on April 23, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Miami-Dade County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 498. *City of Tuscaloosa, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45553-DAP: Plaintiff Tuscaloosa City, Alabama

Tuscaloosa City's untimely motion for leave to amend should be denied for several reasons. Tuscaloosa City failed to provide notice of its proposed amendments through a proposed complaint. Tuscaloosa City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tuscaloosa City's motion should be denied due to futility, as Tuscaloosa City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tuscaloosa City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tuscaloosa City amended its complaint on March 15, 2019, after transfer to the MDL on May 9, 2018. *See City of Tuscaloosa, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45553-DAP, ECF No. 32. Unlike many other plaintiffs, Tuscaloosa City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tuscaloosa City's deadline to

amend was in 2019. Tuscaloosa City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tuscaloosa City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tuscaloosa City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Tuscaloosa City). That insignificant dispensing volume is much too low to support a finding of good cause for Tuscaloosa City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tuscaloosa City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tuscaloosa City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tuscaloosa City filed its original complaint on April 20, 2018. *See City of Tuscaloosa, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45553-DAP, ECF No. 1. Despite filing its case years ago, Tuscaloosa City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1

(Date Litigation Hold Implemented: Never). Litigating Tuscaloosa City's case would force the parties and the Court to waste time and resources ascertaining the extent of Tuscaloosa City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tuscaloosa City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tuscaloosa City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tuscaloosa City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tuscaloosa City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tuscaloosa City's proposed RICO claim against the PBMs has expired. Tuscaloosa City filed its original complaint on April 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Tuscaloosa, Alabama v. Cardinal Health Inc et al.*, Case No. 1:18-op-45553-DAP, ECF No. 1. It is therefore indisputable that Tuscaloosa City knew of its RICO injury, at the very

latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tuscaloosa City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tuscaloosa City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Tuscaloosa City's public-nuisance claim against the PBMs is therefore time-barred because Tuscaloosa City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tuscaloosa City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 499. *Town of Brewster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45556-DAP: Plaintiff Brewster Town, Massachusetts

Brewster Town's untimely motion for leave to amend should be denied for several reasons. Brewster Town failed to provide notice of its proposed amendments through a proposed complaint. Brewster Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Brewster Town's motion should be denied due to futility, as Brewster Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brewster Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brewster Town amended its complaint on March 6, 2019, after transfer to the MDL on May 10, 2018. *See Town of Brewster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45556-DAP, ECF No. 9. Unlike many other plaintiffs, Brewster Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Brewster Town's deadline to amend was in 2019. Brewster Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Brewster Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Brewster Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Brewster Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Brewster Town fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Brewster Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Brewster Town filed its original complaint on April 5, 2018. *See Town of Brewster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45556-DAP, ECF No. 1. Despite filing its case years ago, Brewster Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Brewster Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Brewster Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brewster Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brewster Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brewster Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brewster Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brewster Town's proposed RICO claim against the PBMs has expired. Brewster Town filed its original complaint on April 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Brewster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45556-DAP, ECF No. 1. It is therefore indisputable that Brewster Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Brewster Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brewster Town's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Brewster Town's public-nuisance claim against the PBMs is therefore time-barred because Brewster Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 5, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Brewster Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 500. *Jefferson County Alabama et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45558-DAP: Plaintiff Jefferson County, Alabama

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jefferson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson County first amended its complaint on May 24, 2018. *See Jefferson County Alabama et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45558-DAP, ECF No. 14. Jefferson County amended its complaint again on March 15, 2019. *See Jefferson County Alabama et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45558-DAP, ECF Nos. 28, 29. Unlike many other plaintiffs, Jefferson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Jefferson County's deadline to amend was in 2019. Jefferson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jefferson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Jefferson County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jefferson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F.

App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jefferson County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its original complaint on March 15, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Jefferson County Alabama et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45558-DAP, ECF Nos. 1-2; 1-3. Even assuming *arguendo* that Jefferson County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 15, 2022. Jefferson County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Jefferson County's public-nuisance claim against the PBMs is therefore time-barred because Jefferson County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 19, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Jefferson County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at \*4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Jefferson County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 501. *Town of Billerica v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45560-DAP: Plaintiff Billerica Town, Massachusetts

Billerica Town's untimely motion for leave to amend should be denied for several reasons. Billerica Town failed to provide notice of its proposed amendments through a proposed complaint. Billerica Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Billerica Town's motion should be denied due to futility, as Billerica Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Billerica Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Billerica Town amended its complaint on March 8, 2019, after transfer to the MDL on May 11, 2018. *See Town of Billerica v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45560-DAP, ECF No. 9. Unlike many other plaintiffs, Billerica Town declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Billerica Town's deadline

to amend was in 2019. Billerica Town waited five years after its deadline to amend to seek leave

to assert claims against the PBMs. Billerica Town's lack of diligence in pursuing its claims negates

any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion

to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Billerica Town cannot meet the Rule 16 good cause

standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the

PBMs in 2019. *See* MDL ECF No. 2582. Billerica Town, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Billerica Town fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,

e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access

to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's

home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Billerica Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.03% market share for Billerica Town). That insignificant dispensing volume is much too low to support a finding of good cause for Billerica Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Billerica Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Billerica Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Billerica Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Billerica Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Billerica Town's proposed RICO claim against the PBMs has expired. Billerica Town filed its original complaint on April 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*Town of Billerica v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45560-DAP, ECF No. 1. It is therefore indisputable that Billerica Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Billerica Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Billerica Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Billerica Town's public-nuisance claim against the PBMs is therefore time-barred because Billerica Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 5, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Billerica Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **502.** ***Dale County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45561-DAP: Plaintiff Dale County, Alabama**

Dale County's untimely motion for leave to amend should be denied for several reasons. Dale County failed to provide notice of its proposed amendments through a proposed complaint.

Dale County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dale County's motion should be denied due to futility, as Dale County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dale County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dale County filed its original complaint on April 24, 2018 and the case was transferred to the MDL on May 11, 2018. *See Dale County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45561-DAP, ECF No. 22. Dale County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Dale County elected not to do so. Instead, Dale County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dale County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dale County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Dale County). That insignificant dispensing volume is much too

low to support a finding of good cause for Dale County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dale County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dale County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dale County filed its original complaint on April 24, 2018. *See Dale County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45561-DAP, ECF No. 1. Despite filing its case years ago, Dale County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Dale County's case would force the parties and the Court to waste time and resources ascertaining the extent of Dale County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dale County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dale County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dale County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dale County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dale County's proposed RICO claim against the PBMs has expired. Dale County filed its original complaint on April 24, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Dale County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45561-DAP, ECF No. 1. It is therefore indisputable that Dale County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Dale County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dale County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Dale County's public-nuisance claim against the PBMs is

therefore time-barred because Dale County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 24, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Dale County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Dale County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **503.** *City of Hamilton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45564-DAP: Plaintiff Hamilton City, Alabama

Hamilton City's untimely motion for leave to amend should be denied for several reasons. Hamilton City failed to provide notice of its proposed amendments through a proposed complaint. Hamilton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hamilton City's motion should be denied due to futility, as Hamilton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hamilton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hamilton City amended its complaint on March 15, 2019, after transfer to the MDL on May 14, 2018. *See City of Hamilton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45564-DAP, ECF No. 19. Unlike many other plaintiffs, Hamilton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hamilton City's deadline to amend was in 2019. Hamilton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hamilton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hamilton City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hamilton City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hamilton City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue

delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hamilton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Hamilton City). That insignificant dispensing volume is much too low to support a finding of good cause for Hamilton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hamilton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hamilton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hamilton City filed its original complaint on May 14, 2018. *See City of Hamilton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45564-DAP, ECF No. 1. Despite filing its case years ago, Hamilton City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hamilton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Hamilton City's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hamilton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hamilton City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hamilton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hamilton City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hamilton City's proposed RICO claim against the PBMs has expired. Hamilton City filed its original complaint on April 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Hamilton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45564-DAP, ECF No. 1. It is therefore indisputable that Hamilton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hamilton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hamilton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

      **Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Hamilton City's public-nuisance claim against the PBMs is therefore time-barred because Hamilton City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

      **Plaintiff Lacks Standing.** Hamilton City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

      **504.**   *City of Weaver, Alabama v. Actavis LLC et al.*, **Case No. 1:18-op-45565-DAP: Plaintiff Weaver City, Alabama**

      Weaver City's untimely motion for leave to amend should be denied for several reasons. Weaver City failed to provide notice of its proposed amendments through a proposed complaint. Weaver City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Weaver City's motion should be denied due to futility, as Weaver City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is

barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Weaver City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Weaver City filed its original complaint on April 17, 2018 and the case was transferred to the MDL on May 14, 2018. *See City of Weaver, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45565-DAP, ECF No. 14. Weaver City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Weaver City elected not to do so. Instead, Weaver City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Weaver City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Weaver City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Weaver City filed its original complaint on April 17, 2018. *See City of Weaver, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45565-DAP, ECF No. 1. Despite filing its case years ago, Weaver City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold

Implemented: Never). Litigating Weaver City's case would force the parties and the Court to waste time and resources ascertaining the extent of Weaver City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Weaver City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Weaver City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Weaver City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Weaver City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Weaver City of this deficiency on September 16, 2024 (*see* Exhibit B), but Weaver City refused to amend or supplement its Fact Sheet. Under this Court's orders, Weaver City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Weaver City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Weaver City's potential claims against them. Weaver City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Weaver City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Weaver City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Weaver City's proposed RICO claim against the PBMs has expired. Weaver City filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Weaver, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45565-DAP, ECF No. 1. It is therefore indisputable that Weaver City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Weaver City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Weaver City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Weaver City's public-nuisance claim against the PBMs is

therefore time-barred because Weaver City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Weaver City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 505. *Cleburne County, Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45566-DAP: Plaintiff Cleburne County, Alabama

Cleburne County's untimely motion for leave to amend should be denied for several reasons. Cleburne County failed to provide notice of its proposed amendments through a proposed complaint. Cleburne County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cleburne County's motion should be denied due to futility, as Cleburne County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cleburne County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cleburne County filed its original complaint on April 17, 2018 and the case was transferred to the MDL on May 14, 2018. *See Cleburne County, Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45566-DAP, ECF No. 17. Cleburne County could have amended its complaint, without

leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Cleburne County elected not to do so. Instead, Cleburne County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cleburne County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cleburne County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Cleburne County). That insignificant dispensing volume is much too low to support a finding of good cause for Cleburne County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cleburne County filed its original complaint on April 17, 2018. *See Cleburne County, Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45566-DAP, ECF No. 1. Despite filing its case years ago, Cleburne County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cleburne County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cleburne County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Cleburne County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cleburne County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cleburne County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cleburne County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cleburne County's proposed RICO claim against the PBMs has expired. Cleburne County filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cleburne County, Alabama v. Purdue Pharma L P et al.*, Case No. 1:18-op-45566-DAP, ECF No. 1. It is therefore indisputable that Cleburne County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cleburne County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the

injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cleburne County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Cleburne County's public-nuisance claim against the PBMs is therefore time-barred because Cleburne County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Cleburne County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Cleburne County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **506.** ***Columbus Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45567-DAP: Plaintiff Columbus City, Georgia**

Columbus City's untimely motion for leave to amend should be denied for several reasons. Columbus City failed to provide notice of its proposed amendments through a proposed complaint. Columbus City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Columbus City's motion should be denied due to futility, as Columbus City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Columbus City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Columbus City amended its complaint on March 12, 2019, after transfer to the MDL on May 14, 2018. *See Columbus Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45567-DAP, ECF No. 5. Unlike many other plaintiffs, Columbus City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Columbus City's deadline to amend was in 2019. Columbus City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Columbus City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Columbus City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Columbus City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Columbus City fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Columbus City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Columbus City). That insignificant dispensing volume is much too low to support a finding of good cause for Columbus City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Columbus City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Columbus City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Columbus City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Columbus City of the PBM services Express Scripts provides and Columbus City began receiving those services on January

1, 2011. *See id.* Inasmuch as Columbus City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Columbus City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Columbus City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Columbus City violated its basic duty to implement a timely litigation hold. Columbus City filed its original complaint on May 14, 2018, but waited until January 8, 2020 to implement a litigation hold—one year and eight months later. *See Columbus Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45567-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 8, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Columbus City's case would force the parties and the Court to waste time and resources ascertaining the extent of Columbus City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Columbus City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Columbus City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Columbus City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Columbus City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Columbus City's proposed RICO claim against the PBMs has expired. Columbus City filed its original complaint on April 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Columbus Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45567-DAP, ECF No. 1. It is therefore indisputable that Columbus City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Columbus City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Columbus City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Columbus City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **507.** ***Overton County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45568-DAP: Plaintiff Overton County, Tennessee**

Overton County's untimely motion for leave to amend should be denied for several reasons. Overton County failed to provide notice of its proposed amendments through a proposed complaint. Overton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Overton County's motion should be denied due to futility, as Overton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Overton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Overton County amended its complaint on March 11, 2019, after transfer to the MDL on May 14, 2018. *See Overton County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45568-DAP, ECF No. 10. Unlike many other plaintiffs, Overton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Overton County's deadline to amend was in 2019. Overton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Overton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Overton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Overton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Overton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Overton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Overton County). That insignificant dispensing volume is much too low to support a finding of good cause for Overton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Overton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Overton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Overton County filed its original complaint on April 17, 2018. *See Overton County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45568-DAP, ECF No. 1. Despite filing its case years ago, Overton County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Overton County's case would force the parties and the Court to waste time and resources ascertaining the extent of Overton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Overton County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Overton County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Overton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Overton County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Overton County's proposed RICO claim against the PBMs has expired. Overton County filed its original complaint on April 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Overton County, Tennessee v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45568-DAP, ECF No. 1. It is therefore indisputable that Overton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Overton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Overton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Overton County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

508. ***Auglaize County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.***, **Case No. 1:18-op-45570-DAP: Plaintiff Auglaize County, Ohio**

Auglaize County's untimely motion for leave to amend should be denied for several reasons. Auglaize County failed to provide notice of its proposed amendments through a proposed complaint. Auglaize County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Auglaize County's motion should be denied due to futility, as Auglaize County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Auglaize County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Auglaize County amended its complaint on March 11, 2019, after directly filing in the MDL. *See Auglaize County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45570-DAP, ECF No. 23. Unlike many other plaintiffs, Auglaize County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Auglaize County's deadline to amend was in 2019. Auglaize County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Auglaize County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Auglaize County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Auglaize County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Auglaize County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Auglaize County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.24% market share for Auglaize County). That insignificant dispensing volume is much too low to support a finding of good cause for Auglaize County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Auglaize County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Auglaize County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Auglaize County is a plaintiff in Ohio. Auglaize County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Auglaize County's proposed RICO claim against the PBMs has expired. Auglaize County filed its original complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Auglaize County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45570-DAP, ECF No. 1. It is therefore indisputable that Auglaize County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Auglaize County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Auglaize County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Auglaize County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **509.** ***Van Wert County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45571-DAP: Plaintiff Van Wert County, Ohio**

Van Wert County's untimely motion for leave to amend should be denied for several reasons. Van Wert County failed to provide notice of its proposed amendments through a proposed complaint. Van Wert County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Van Wert County's motion should be denied due to futility, as Van Wert County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Van Wert County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Van Wert County amended its complaint on March 16, 2019, after directly filing in the MDL. *See Van Wert County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45571-DAP, ECF No. 21. Unlike many other plaintiffs, Van Wert County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Van Wert County's deadline to amend was in 2019. Van Wert County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Van Wert County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Van Wert County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Van Wert County). That insignificant dispensing volume is much too low to support a finding of good cause for Van Wert County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Van Wert County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Van Wert County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Van Wert County of this deficiency on September 16, 2024 (*see* Exhibit B), but Van Wert County refused to amend or supplement its Fact Sheet. Under this Court's orders, Van Wert County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Van Wert County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Van Wert County's potential claims against them. Van Wert County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6

(denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Van Wert County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Van Wert County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Van Wert County is a plaintiff in Ohio. Van Wert County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Van Wert County's proposed RICO claim against the PBMs has expired. Van Wert County filed its original complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Van Wert County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45571-DAP, ECF No. 1. It is therefore indisputable that Van Wert County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Van Wert County's RICO claim is therefore time-barred by

RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Van Wert County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Van Wert County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **510.** ***Hancock County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45572-DAP: Plaintiff Hancock County, Ohio**

Hancock County's untimely motion for leave to amend should be denied for several reasons. Hancock County failed to provide notice of its proposed amendments through a proposed complaint. Hancock County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hancock County's motion should be denied due to futility, as Hancock County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hancock County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hancock County amended its complaint on March 16, 2019, after directly filing in the MDL. *See Hancock County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45572-DAP, ECF No. 19. Unlike many other plaintiffs, Hancock County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above.

Hancock County's deadline to amend was in 2019. Hancock County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hancock County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hancock County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Hancock County). That insignificant dispensing volume is much too low to support a finding of good cause for Hancock County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hancock County filed its original complaint on May 14, 2018. *See Hancock County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45572-DAP, ECF No. 1. Despite filing its case years ago, Hancock County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hancock County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hancock County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to

implement litigation holds until 2024. The PBMs are prejudiced by Hancock County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hancock County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hancock County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hancock County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Hancock County is a plaintiff in Ohio. Hancock County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Hancock County's proposed RICO claim against the PBMs has expired. Hancock County filed its original complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Hancock County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45572-DAP, ECF No. 1. It is therefore indisputable that Hancock County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hancock County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hancock County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hancock County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 511. *City of Woodbury Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45575-DAP: Plaintiff Woodbury City, Georgia

Woodbury City's untimely motion for leave to amend should be denied for several reasons. Woodbury City failed to provide notice of its proposed amendments through a proposed complaint. Woodbury City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Woodbury City's motion should be denied due to futility, as Woodbury City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Woodbury City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Woodbury City amended its complaint on March 15, 2019, after directly filing in the MDL. *See*

*City of Woodbury Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45575-DAP, ECF No. 2. Unlike many other plaintiffs, Woodbury City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Woodbury City's deadline to amend was in 2019. Woodbury City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Woodbury City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Woodbury City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Woodbury City). That insignificant dispensing volume is much too low to support a finding of good cause for Woodbury City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Woodbury City filed its original complaint on May 15, 2018. *See City of Woodbury Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45575-DAP, ECF No. 1. Despite filing its case years ago, Woodbury City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Woodbury City's case would force the parties and the Court to waste time and resources ascertaining the extent of Woodbury City's document destruction and the appropriate sanctions—just as the parties were forced to do in the

three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Woodbury City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Woodbury City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Woodbury City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Woodbury City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Woodbury City's proposed RICO claim against the PBMs has expired. Woodbury City filed its original complaint on May 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Woodbury Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45575-DAP, ECF No. 1. It is therefore indisputable that Woodbury City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Woodbury City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the

injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Woodbury City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Woodbury City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 512. *Macon County Georgia v. Purdue Pharma L.P.,et al.*, Case No. 1:18-op-45577-DAP: Plaintiff Macon County, Georgia

Macon County's untimely motion for leave to amend should be denied for several reasons. Macon County failed to provide notice of its proposed amendments through a proposed complaint. Macon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Macon County's motion should be denied due to futility, as Macon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Macon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Macon County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Macon County Georgia v. Purdue Pharma L.P.,et al.*, Case No. 1:18-op-45577-DAP, ECF No. 2. Unlike many other plaintiffs, Macon County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Macon County's deadline to amend was in 2019. Macon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Macon County's lack of diligence in pursuing its claims negates any finding of good

cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Macon County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Macon County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Macon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Macon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Macon County filed its original complaint on May 15, 2018. *See Macon County Georgia v. Purdue Pharma L.P.,et al.*, Case No. 1:18-op-45577-DAP, ECF No. 1. Despite filing its case years ago, Macon County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Macon County's case would force the parties and the Court to waste time and resources ascertaining the extent of Macon County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM

2001

bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Macon County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Macon County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Macon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Macon County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Macon County's proposed RICO claim against the PBMs has expired. Macon County filed its original complaint on May 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Macon County Georgia v. Purdue Pharma L.P.,et al.*, Case No. 1:18-op-45577-DAP, ECF No. 1. It is therefore indisputable that Macon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Macon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not

discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Macon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Macon County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 513. *Peach County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45579-DAP: Plaintiff Peach County, Georgia

Peach County's untimely motion for leave to amend should be denied for several reasons. Peach County failed to provide notice of its proposed amendments through a proposed complaint. Peach County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Peach County's motion should be denied due to futility, as Peach County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Peach County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Peach County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Peach County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45579-DAP, ECF No. 2. Unlike many other plaintiffs, Peach County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Peach County's deadline to amend was in 2019. Peach County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Peach County's lack of diligence in pursuing its claims negates any finding of good

cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Peach County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Peach County). That insignificant dispensing volume is much too low to support a finding of good cause for Peach County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Peach County filed its original complaint on May 15, 2018. *See Peach County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45579-DAP, ECF No. 1. Despite filing its case years ago, Peach County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Peach County's case would force the parties and the Court to waste time and resources ascertaining the extent of Peach County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Peach County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Peach County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Peach County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Peach County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Peach County seeks leave to amend to add claims against the PBMs in two cases: *Peach County, Georgia v. Purdue Pharma, L.P. et al.*, No. 1:18-op-45579-DAP; and *Deese v. Purdue Pharma L.P., et al.*, No. 1:19-op-45314-DAP. Peach County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Peach County's proposed RICO claim against the PBMs has expired. Peach County filed its original complaint on May 15,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Peach County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45579-DAP, ECF No. 1. It is therefore indisputable that Peach County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Peach County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Peach County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Peach County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 514. *Schley County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45580-DAP: Plaintiff Schley County, Georgia

Schley County's untimely motion for leave to amend should be denied for several reasons. Schley County failed to provide notice of its proposed amendments through a proposed complaint. Schley County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Schley County's motion should be denied due to futility, as Schley County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Schley County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Schley County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Schley County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45580-DAP, ECF No. 2. Unlike many other plaintiffs, Schley County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Schley County's deadline to amend was in 2019. Schley County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Schley County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Schley County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.23% market share for Schley County). That insignificant dispensing volume is much too low to support a finding of good cause for Schley County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Schley County filed its original complaint on May 15, 2018. *See Schley County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45580-DAP, ECF No. 1. Despite filing its case years ago, Schley County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Schley County's case would force the parties and the Court to waste time and resources ascertaining the extent of Schley County's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Schley County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Schley County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Schley County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Schley County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Schley County's proposed RICO claim against the PBMs has expired. Schley County filed its original complaint on May 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Schley County Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45580-DAP, ECF No. 1. It is therefore indisputable that Schley County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Schley County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Schley County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Schley County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 515. *Town of Derry, New Hampshire v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45582-DAP: Plaintiff Derry Town, New Hampshire**

Derry Town's untimely motion for leave to amend should be denied for several reasons. Derry Town failed to provide notice of its proposed amendments through a proposed complaint. Derry Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Derry Town's motion should be denied due to futility, as Derry Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Derry Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Derry Town first amended its complaint on April 30, 2018. *See Town of Derry, New Hampshire v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45582-DAP, ECF No. 2. Derry Town amended its complaint again on March 9, 2019. *See Town of Derry, New Hampshire v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45582-DAP, ECF No. 23. Unlike many other plaintiffs, Derry Town declined to add claims against the PBMs in its amended

complaints. *See* Section II.A.1, above. Derry Town's deadline to amend was in 2019. Derry Town

waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Derry

Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972

F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline

because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-

see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Derry Town cannot meet the Rule 16 good cause standard

because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty &

Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Derry Town,

through its counsel, was on notice of potential claims against the PBMs and could readily have

amended its complaint to add the PBMs much earlier. Derry Town fails to explain why it was

unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting

those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of

leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis

of the claim for many months, especially since some underlying facts were made a part of the

complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay

in part because plaintiff's counsel had access to discovery in related cases and was previously

aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's

home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Derry Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.002% market share for Derry Town). That insignificant dispensing volume is much too

low to support a finding of good cause for Derry Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Derry Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Derry Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Derry Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Derry Town, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Derry Town's proposed RICO claim against the PBMs has expired. Derry Town filed its original complaint on May 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Derry, New Hampshire v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-

45582-DAP, ECF No. 1. It is therefore indisputable that Derry Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Derry Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Derry Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Derry Town, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 516. *Greene County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45584-DAP: Plaintiff Greene County, North Carolina

Greene County's untimely motion for leave to amend should be denied for several reasons. Greene County failed to provide notice of its proposed amendments through a proposed complaint. Greene County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greene County's motion should be denied due to futility, as Greene County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greene County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greene County amended its complaint on March 11, 2019, after transfer to the MDL on May 17, 2018. *See Greene County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-

45584-DAP, ECF No. 7. Unlike many other plaintiffs, Greene County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Greene County's deadline to amend was in 2019. Greene County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Greene County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Greene County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Greene County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Greene County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Greene County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Greene County). That insignificant dispensing volume is much too low to support a finding of good cause for Greene County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Greene County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Greene County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greene County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greene County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greene County's proposed RICO claim against the PBMs has expired. Greene County filed its original complaint on May 17,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Greene County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45584-DAP, ECF No. 1. It is therefore indisputable that Greene County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Greene County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greene County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Greene County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **517.**  *Wayne County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45585-DAP: Plaintiff Wayne County, North Carolina**

Wayne County's untimely motion for leave to amend should be denied for several reasons. Wayne County failed to provide notice of its proposed amendments through a proposed complaint. Wayne County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wayne County's motion should be denied due to futility, as Wayne County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wayne County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Wayne County amended its complaint on March 12, 2019, after transfer to the MDL on May 17, 2018. *See Wayne County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45585-DAP, ECF No. 6. Unlike many other plaintiffs, Wayne County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wayne County's deadline to amend was in 2019. Wayne County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wayne County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wayne County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wayne County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wayne County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wayne County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Wayne County). That insignificant dispensing volume is much too low to support a finding of good cause for Wayne County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wayne County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wayne County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wayne County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wayne County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wayne County's proposed RICO claim against the PBMs has expired. Wayne County filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wayne County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45585-DAP, ECF No. 1. It is therefore indisputable that Wayne County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wayne County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wayne County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wayne County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

518. ***Richmond County, North Carolina v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45586-DAP: Plaintiff Richmond County, North Carolina**

Richmond County's untimely motion for leave to amend should be denied for several reasons. Richmond County failed to provide notice of its proposed amendments through a proposed complaint. Richmond County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Richmond County's motion should be denied due to futility, as Richmond County does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Richmond County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Richmond County amended its complaint on March 12, 2019, after transfer to the MDL on May 17, 2018. *See Richmond County, North Carolina v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45586-DAP, ECF No. 5. Unlike many other plaintiffs, Richmond County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Richmond County's deadline to amend was in 2019. Richmond County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Richmond County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Richmond County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Richmond County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Richmond County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Richmond County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Richmond County). That insignificant dispensing volume is much too low to support a finding of good cause for Richmond County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Richmond County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Richmond County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Richmond County filed its original complaint on May 17, 2018. *See Richmond County, North Carolina v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45586-DAP, ECF No. 1. Despite filing its case years ago, Richmond County *never* implemented a litigation hold and is instead purporting to rely on non-specific and

unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Richmond County's case would force the parties and the Court to waste time and resources ascertaining the extent of Richmond County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Richmond County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Richmond County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Richmond County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Richmond County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Richmond County of this deficiency on September 16, 2024 (*see* Exhibit B), but Richmond County refused to amend or supplement its Fact Sheet. Under this Court's orders, Richmond County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Richmond County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Richmond County's potential claims against them. Richmond County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that

"plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Richmond County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Richmond County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Richmond County's proposed RICO claim against the PBMs has expired. Richmond County filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Richmond County, North Carolina v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45586-DAP, ECF No. 1. It is therefore indisputable that Richmond County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Richmond County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Richmond County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Richmond County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 519. *Carteret County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45587-DAP: Plaintiff Carteret County, North Carolina

Carteret County's untimely motion for leave to amend should be denied for several reasons. Carteret County failed to provide notice of its proposed amendments through a proposed complaint. Carteret County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Carteret County's motion should be denied due to futility, as Carteret County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carteret County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carteret County amended its complaint on March 14, 2019, after transfer to the MDL on May 17, 2018. *See Carteret County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45587-DAP, ECF No. 5. Unlike many other plaintiffs, Carteret County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Carteret County's deadline to amend was in 2019. Carteret County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carteret County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information

[she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Carteret County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Carteret County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Carteret County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carteret County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Carteret County). That insignificant dispensing volume is much too low to support a finding of good cause for Carteret County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carteret County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Carteret County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carteret County's proposed RICO claim against the PBMs has expired. Carteret County filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Carteret County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45587-DAP, ECF No. 1. It is therefore indisputable that Carteret County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Carteret County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carteret County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Carteret County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 520. *Tulalip Tribes v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45589-DAP: Plaintiff Tulalip Tribes, Washington

Tulalip Tribes' untimely motion for leave to amend should be denied for several reasons. Tulalip Tribes failed to provide notice of its proposed amendments through a proposed complaint. Tulalip Tribes also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tulalip Tribes' motion should be denied due to futility, as Tulalip Tribes does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tulalip Tribes was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tulalip Tribes amended its complaint on March 13, 2019, after transfer to the MDL on May 17, 2018, as well as on August 8, 2019 and January 14, 2021. *See Tulalip Tribes v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45589-DAP, ECF Nos. 27, 31, 32. Unlike many other plaintiffs, Tulalip Tribes declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Tulalip Tribes' deadline to amend was in 2019. Tulalip Tribes waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tulalip Tribes' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Tulalip Tribes violated its basic duty to implement a timely litigation hold. Tulalip Tribes filed its original complaint on May 17, 2018, but waited until September 13, 2024 to implement a litigation hold—six years and four months later. *See Tulalip Tribes v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45589-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Tulalip Tribes' case would force the parties and the Court to waste time and resources ascertaining the extent of Tulalip Tribes' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tulalip Tribes' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tulalip Tribes therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tulalip Tribes' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tulalip Tribes, a native tribe in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tulalip Tribes' proposed RICO claim against the PBMs has expired. Tulalip Tribes filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Tulalip Tribes v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45589-DAP, ECF No. 1. It is therefore indisputable that Tulalip Tribes knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tulalip Tribes' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tulalip Tribes' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Tulalip Tribes' public-nuisance claim against the PBMs is therefore time-barred because Tulalip Tribes sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new

party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tulalip Tribes, a native tribe in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 521. *City of Kent v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45590-DAP: Plaintiff Kent City, Washington

Kent City's untimely motion for leave to amend should be denied for several reasons. Kent City failed to provide notice of its proposed amendments through a proposed complaint. Kent City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Kent City's motion should be denied due to futility, as Kent City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kent City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kent City amended its complaint on March 15, 2019, after transfer to the MDL on May 17, 2018, as well as on May 28, 2019 and January 12, 2021. *See City of Kent v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45590-DAP, ECF Nos. 26, 28, 29. Unlike many other plaintiffs, Kent City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Kent City's deadline to amend was in 2019. Kent City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kent City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information

[she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kent City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Kent City). That insignificant dispensing volume is much too low to support a finding of good cause for Kent City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kent City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kent City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kent City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kent City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kent City's proposed RICO claim against the PBMs has expired. Kent City filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Kent v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45590-DAP, ECF No. 1. It is therefore indisputable that Kent City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Kent City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kent City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Kent City's public-nuisance claim against the PBMs is therefore time-barred because Kent City sought leave to amend its complaint on July 29, 2024— six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Kent City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 522. *City of Paducah, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45592-DAP: Plaintiff Paducah City, Kentucky

Paducah City's untimely motion for leave to amend should be denied for several reasons. Paducah City failed to provide notice of its proposed amendments through a proposed complaint. Paducah City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Paducah City's motion should be denied due to futility, as Paducah City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Paducah City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Paducah City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Paducah, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45592-DAP, ECF No. 2. Unlike many other plaintiffs, Paducah City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Paducah City's deadline to amend was in 2019. Paducah City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Paducah City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Paducah City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Paducah City). That insignificant dispensing volume is much too low to support a finding of good cause for Paducah City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Paducah City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Paducah City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Paducah City filed its original complaint on May 16, 2018. *See City of Paducah, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45592-DAP, ECF No. 1. Despite filing its case years ago, Paducah City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Paducah City's case would force the parties and the Court to waste time and resources ascertaining the extent of Paducah City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Paducah City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Paducah City therefore lacks good cause for leave to amend

its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Paducah City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Paducah City, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Paducah City's proposed RICO claim against the PBMs has expired. Paducah City filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Paducah, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45592-DAP, ECF No. 1. It is therefore indisputable that Paducah City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Paducah City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Paducah City's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Paducah City, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 523. *County of Ballard Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45593-DAP: Plaintiff Ballard County, Kentucky

Ballard County's untimely motion for leave to amend should be denied for several reasons. Ballard County failed to provide notice of its proposed amendments through a proposed complaint. Ballard County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ballard County's motion should be denied due to futility, as Ballard County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ballard County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ballard County amended its complaint on March 15, 2019, after directly filing in the MDL. *See County of Ballard Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45593-DAP, ECF No. 3. Unlike many other plaintiffs, Ballard County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ballard County's deadline to amend was in 2019. Ballard County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ballard County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ballard County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Ballard County). That insignificant dispensing volume is much too low to support a finding of good cause for Ballard County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ballard County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ballard County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ballard County filed its original complaint on May 16, 2018. *See County of Ballard Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45593-DAP, ECF No. 1. Despite filing its case years ago, Ballard County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Ballard County's case would force the parties and the Court to waste time and resources ascertaining the extent of Ballard County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Ballard County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ballard County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ballard County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ballard County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ballard County's proposed RICO claim against the PBMs has expired. Ballard County filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Ballard Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45593-DAP, ECF No. 1. It is therefore indisputable that Ballard County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Ballard County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see*

Section III.B.4, above. Ballard County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ballard County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 524.    *City of Harrisburg, Illinois v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45594-DAP: Plaintiff Harrisburg City, Illinois

Harrisburg City's untimely motion for leave to amend should be denied for several reasons. Harrisburg City failed to provide notice of its proposed amendments through a proposed complaint. Harrisburg City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Harrisburg City's motion should be denied due to futility, as Harrisburg City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Harrisburg City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Harrisburg City amended its complaint on March 15, 2019, after transfer to the MDL on May 18, 2018. *See City of Harrisburg, Illinois v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45594-DAP, ECF No. 10. Unlike many other plaintiffs, Harrisburg City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Harrisburg City's deadline to amend was in 2019. Harrisburg City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Harrisburg City's lack of diligence in pursuing its claims negates any

finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Harrisburg City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Harrisburg City). That insignificant dispensing volume is much too low to support a finding of good cause for Harrisburg City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Harrisburg City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Harrisburg City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Harrisburg City filed its original complaint on May 18, 2018. *See City of Harrisburg, Illinois v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45594-DAP, ECF No. 1. Despite filing its case years ago, Harrisburg City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Harrisburg City's case would force the parties and the Court to waste time and resources ascertaining the extent of Harrisburg City's

document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Harrisburg City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Harrisburg City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Harrisburg City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Harrisburg City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Harrisburg City of this deficiency on September 16, 2024 (*see* Exhibit B), but Harrisburg City refused to amend or supplement its Fact Sheet. Under this Court's orders, Harrisburg City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Harrisburg City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Harrisburg City's potential claims against them. Harrisburg City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Harrisburg City's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Harrisburg City, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Harrisburg City's proposed RICO claim against the PBMs has expired. Harrisburg City filed its original complaint on May 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Harrisburg, Illinois v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45594-DAP, ECF No. 1. It is therefore indisputable that Harrisburg City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Harrisburg City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Harrisburg City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Harrisburg City, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

525. ***Town of Salisbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45595-DAP: Plaintiff Salisbury Town, Massachusetts**

Salisbury Town's untimely motion for leave to amend should be denied for several reasons. Salisbury Town failed to provide notice of its proposed amendments through a proposed complaint. Salisbury Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Salisbury Town's motion should be denied due to futility, as Salisbury Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Salisbury Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Salisbury Town amended its complaint on March 8, 2019, after transfer to the MDL on May 18, 2018. *See Town Of Salisbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45595-DAP, ECF No. 9. Unlike many other plaintiffs, Salisbury Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Salisbury Town's deadline to amend was in 2019. Salisbury Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Salisbury Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Salisbury Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Salisbury Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Salisbury Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Salisbury Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Salisbury Town). That insignificant dispensing volume is much too low to support a finding of good cause for Salisbury Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Salisbury Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Salisbury Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Salisbury Town filed its original complaint on May 18, 2018. *See Town Of Salisbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45595-DAP, ECF No. 1. Despite filing its case years ago, Salisbury Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Salisbury Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Salisbury Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Salisbury Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Salisbury Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Salisbury Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Salisbury Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Salisbury Town's proposed RICO claim against the PBMs has expired. Salisbury Town filed its original complaint on May 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town Of Salisbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45595-DAP, ECF No. 1. It is therefore indisputable that Salisbury Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Salisbury Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Salisbury Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Salisbury Town's public-nuisance claim against the PBMs is therefore time-barred because Salisbury Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 18, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Salisbury Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 526. *City of Everett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45596-DAP: Plaintiff Everett City, Massachusetts

Everett City's untimely motion for leave to amend should be denied for several reasons. Everett City failed to provide notice of its proposed amendments through a proposed complaint. Everett City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Everett City's motion should be denied due to futility, as Everett City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Everett City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Everett City amended its complaint on March 6, 2019, after transfer to the MDL on May 18, 2018. *See City of Everett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45596-DAP, ECF No. 9. Unlike many other plaintiffs, Everett City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Everett City's deadline to amend was in 2019. Everett City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Everett City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling

order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Everett City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Everett City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Everett City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Everett City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Everett City). That insignificant dispensing volume is much too low to support a finding of good cause for Everett City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Everett City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Everett City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Everett City filed its original complaint on April 5, 2018. *See City of Everett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45596-DAP, ECF No. 1. Despite filing its case years ago, Everett City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232, 5455. Litigating Everett City's case would force the parties and the Court to waste time and resources ascertaining the extent of Everett City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Everett City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Everett City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Everett City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Everett City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Everett City's proposed RICO claim against the PBMs has expired. Everett City filed its original complaint on April 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Everett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45596-DAP, ECF No. 1. It is therefore indisputable that Everett City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Everett City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Everett City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Everett City's public-nuisance claim against the PBMs is therefore time-barred because Everett City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 5, 2018—and the proposed amendment

does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Everett City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 527. *Monroe County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45597-DAP: Plaintiff Monroe County, Ohio

Monroe County's untimely motion for leave to amend should be denied for several reasons. Monroe County failed to provide notice of its proposed amendments through a proposed complaint. Monroe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Monroe County's motion should be denied due to futility, as Monroe County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Monroe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Monroe County amended its complaint on March 11, 2019, after transfer to the MDL on May 18, 2018. *See Monroe County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45597-DAP, ECF No. 22. Unlike many other plaintiffs, Monroe County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Monroe County's deadline to amend was in 2019. Monroe County waited five years

after its deadline to amend to seek leave to assert claims against the PBMs. Monroe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Monroe County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Monroe County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Monroe County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Monroe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Monroe County). That insignificant dispensing volume is much too

low to support a finding of good cause for Monroe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Monroe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Monroe County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Monroe County is a plaintiff in Ohio. Monroe County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Monroe County's proposed RICO claim against the PBMs has expired. Monroe County filed its original complaint on May 3, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Monroe County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45597-DAP, ECF No. 1. It is therefore indisputable that Monroe County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years

before seeking leave to amend. Monroe County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Monroe County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Monroe County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 528. *City of Princeton, Illinois v. Actavis LLC et al.*, Case No. 1:18-op-45599-DAP: Plaintiff Princeton City, Illinois

Princeton City's untimely motion for leave to amend should be denied for several reasons. Princeton City failed to provide notice of its proposed amendments through a proposed complaint. Princeton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Princeton City's motion should be denied due to futility, as Princeton City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Princeton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Princeton City amended its complaint on March 15, 2019, after transfer to the MDL on May 18, 2018. *See City of Princeton, Illinois v. Actavis LLC et al.*, Case No. 1:18-op-45599-DAP, ECF No. 6. Unlike many other plaintiffs, Princeton City declined to add claims against the PBMs in its

amended complaint. *See* Section II.A.1, above. Princeton City's deadline to amend was in 2019. Princeton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Princeton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Princeton City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Princeton City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Princeton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Princeton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Princeton City filed its original complaint on May 5, 2018. *See City of Princeton, Illinois v. Actavis LLC et al.*, Case No. 1:18-op-45599-DAP, ECF No. 1. Despite filing its case years ago, Princeton City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232, 5455). *See* ECF No. 5687-1 (Date Litigation

Hold Implemented: Never). Litigating Princeton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Princeton City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Princeton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Princeton City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Princeton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Princeton City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Princeton City of this deficiency on September 16, 2024 (*see* Exhibit B), but Princeton City refused to amend or supplement its Fact Sheet. Under this Court's orders, Princeton City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Princeton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Princeton City's potential claims against them. Princeton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Princeton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Princeton City, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Princeton City's proposed RICO claim against the PBMs has expired. Princeton City filed its original complaint on May 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Princeton, Illinois v. Actavis LLC et al.*, Case No. 1:18-op-45599-DAP, ECF No. 1. It is therefore indisputable that Princeton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Princeton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Princeton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Princeton City, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 529. *Forsyth County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45605-DAP: Plaintiff Forsyth County, North Carolina

Forsyth County's untimely motion for leave to amend should be denied for several reasons. Forsyth County failed to provide notice of its proposed amendments through a proposed complaint. Forsyth County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Forsyth County's motion should be denied due to futility, as Forsyth County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Forsyth County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Forsyth County amended its complaint on March 13, 2019, after transfer to the MDL on May 23, 2018. *See Forsyth County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45605-DAP, ECF No. 5. Unlike many other plaintiffs, Forsyth County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Forsyth County's deadline to amend was in 2019. Forsyth County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Forsyth County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Forsyth County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Forsyth County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Forsyth County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Forsyth County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Forsyth County). That insignificant dispensing volume is much too low to support a finding of good cause for Forsyth County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Forsyth County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Forsyth County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Forsyth County filed its original complaint on April 27. 2018, but waited until September 17, 2018 to implement a litigation hold. *See Forsyth County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45605-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 17, 2018). Forsyth County's violation of the Court's orders (ECF Nos. 232, 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Forsyth County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Forsyth County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Forsyth County's proposed RICO claim against the PBMs has expired. Forsyth County filed its original complaint on April 27. 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Forsyth County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45605-DAP, ECF No. 1. It is therefore indisputable that Forsyth County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Forsyth County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Forsyth County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Forsyth County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 530. *People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45606-DAP: Plaintiff Lee County, Illinois**

Lee County's untimely motion for leave to amend should be denied for several reasons. Lee County failed to provide notice of its proposed amendments through a proposed complaint. Lee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lee County's motion should be denied due to futility, as Lee County does not assert

any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lee County amended its complaint on March 12, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45606-DAP, ECF No. 2. Unlike many other plaintiffs, Lee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lee County's deadline to amend was in 2019. Lee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lee County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lee County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lee County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff

was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Lee County). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lee County filed its original complaint on May 23. 2018. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45606-DAP, ECF No. 1. Despite filing its case years ago, Lee County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232, 5455. Litigating Lee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lee

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lee County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lee County's proposed RICO claim against the PBMs has expired. Lee County filed its original complaint on May 23. 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45606-DAP, ECF No. 1. It is therefore indisputable that Lee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lee County's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lee County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 531. *County of Sacramento v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45608-DAP: Plaintiff Sacramento County, California

Sacramento County's untimely motion for leave to amend should be denied for several reasons. Sacramento County failed to provide notice of its proposed amendments through a proposed complaint. Sacramento County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Sacramento County's motion should be denied due to futility, as Sacramento County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sacramento County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sacramento County amended its complaint on March 11, 2019, after transfer to the MDL on May 30, 2018. *See County of Sacramento v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45608-DAP, ECF No. 14. Unlike many other plaintiffs, Sacramento County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sacramento County's deadline to amend was in 2019. Sacramento County waited five years after

its deadline to amend to seek leave to assert claims against the PBMs. Sacramento County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sacramento County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sacramento County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sacramento County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sacramento County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.14% market share for Sacramento County). That insignificant dispensing volume is much too low to support a finding of good cause for Sacramento County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sacramento County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sacramento County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Sacramento County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Sacramento County of the PBM services Express Scripts provides and Sacramento County began receiving those services on July 12, 2007. *See id.* Inasmuch as Sacramento County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Sacramento County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Sacramento County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to State a Claim.** Sacramento County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sacramento County's proposed RICO claim against the PBMs has expired. Sacramento County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Sacramento v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45608-DAP, ECF No. 1. It is therefore indisputable that Sacramento County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sacramento County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sacramento County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sacramento County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **532.** *County of McCracken Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45611-DAP: Plaintiff Mccracken County, Kentucky

Mccracken County's untimely motion for leave to amend should be denied for several reasons. Mccracken County failed to provide notice of its proposed amendments through a proposed complaint. Mccracken County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mccracken County's motion should be denied due to futility, as Mccracken County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mccracken County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mccracken County amended its complaint on March 15, 2019, after directly filing in the MDL, as well as on March 10, 2023. *See County of McCracken Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45611-DAP, ECF Nos. 2, 8. Unlike many other plaintiffs, Mccracken County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Mccracken County's deadline to amend was in 2019. Mccracken County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mccracken County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mccracken County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Mccracken County). That insignificant dispensing volume is much too low to support a finding of good cause for Mccracken County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mccracken County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mccracken County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Mccracken County filed its original complaint on May 29, 2018. *See County of McCracken Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45611-DAP, ECF No. 1. Despite filing its case years ago, Mccracken County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232, 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Mccracken County's case would force the parties and the Court to waste time and resources ascertaining the extent of Mccracken County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mccracken County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mccracken County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mccracken County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mccracken County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mccracken County's proposed RICO claim against the PBMs has expired. Mccracken County filed its original complaint on May 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of McCracken Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45611-DAP, ECF No. 1. It is therefore indisputable that Mccracken County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mccracken County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mccracken County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mccracken County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**533.** *Clallam County v. Purdue Pharma, L.P. et al.*, **Case No. 1:18-op-45612-DAP: Plaintiff Clallam County, Washington**

Clallam County's untimely motion for leave to amend should be denied for several reasons. Clallam County failed to provide notice of its proposed amendments through a proposed complaint. Clallam County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Clallam County's motion should be denied due to futility, as Clallam County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clallam County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clallam County amended its complaint on March 13, 2019, after transfer to the MDL on May 30, 2018, as well as on May 28, 2019, and February 11, 2021. *See Clallam County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45612-DAP, ECF Nos. 26, 30, 33. Unlike many other plaintiffs, Clallam County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Clallam County's deadline to amend was in 2019. Clallam County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clallam County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clallam County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Clallam County). That insignificant dispensing volume is much too low to support a finding of good cause for Clallam County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clallam County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clallam County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clallam County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clallam County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clallam County's proposed RICO claim against the PBMs has expired. Clallam County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Clallam County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45612-DAP, ECF No. 1. It is therefore indisputable that Clallam County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Clallam County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clallam County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Clallam County's public-nuisance claim against the PBMs is therefore time-barred because Clallam County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Clallam County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

534. ***County of San Diego et al. v. Amerisourcebergen Drug Corporation et al.*,**
**Case No. 1:18-op-45613-DAP: Plaintiff San Diego County, California**

San Diego County's untimely motion for leave to amend should be denied for several reasons. San Diego County failed to provide notice of its proposed amendments through a proposed complaint. San Diego County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, San Diego County's motion should be denied due to futility, as San Diego County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** San Diego County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, an Diego County amended its complaint on March 13, 2019, after transfer to the MDL on May 30, 2018. *See County of San Diego et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45613-DAP, ECF No. 11. Unlike many other plaintiffs, San Diego County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. San Diego County's deadline to amend was in 2019. San Diego County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. San Diego County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** San Diego County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. San Diego County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. San Diego County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to San Diego County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for San Diego County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** San Diego County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified San Diego County of the PBM services Express Scripts provides and San Diego County began receiving those services on June 6, 2007. *See id.* Inasmuch as San Diego County seeks to add claims against Express Scripts entities

related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), San Diego County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. San Diego County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to State a Claim.** San Diego County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for San Diego County's proposed RICO claim against the PBMs has expired. San Diego County filed its original complaint on May 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of San Diego et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45613-DAP, ECF No. 1. It is therefore indisputable that San Diego County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. San Diego County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Diego County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Diego County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 535. *St. Clair County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45614-DAP: Plaintiff St. Clair County, Alabama

St. Clair County's untimely motion for leave to amend should be denied for several reasons. St. Clair County failed to provide notice of its proposed amendments through a proposed complaint. St. Clair County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Clair County's motion should be denied due to futility, as St. Clair County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Clair County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Clair County filed its original complaint on May 8, 2018 and the case was transferred to the MDL on May 30, 2018. *See St. Clair County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45614-DAP, ECF No. 18. St. Clair County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, St. Clair County elected not to do so. Instead, St. Clair County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Clair County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Clair County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for St. Clair County). That insignificant dispensing volume is much too low to support a finding of good cause for St. Clair County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Clair County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Clair County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Clair County filed its original complaint on May 8, 2018. *See St. Clair County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45614-DAP, ECF No. 1. Despite filing its case years ago, St. Clair County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232, 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating St. Clair County's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Clair County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St.

Clair County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Clair County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Clair County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Clair County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Clair County's proposed RICO claim against the PBMs has expired. St. Clair County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See St. Clair County, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45614-DAP, ECF No. 1. It is therefore indisputable that St. Clair County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. Clair County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. St. Clair County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. St. Clair County's public-nuisance claim against the PBMs is therefore time-barred because St. Clair County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** St. Clair County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** St. Clair County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 536. *Bergen County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45616-DAP: Plaintiff Bergen County, New Jersey

Bergen County's untimely motion for leave to amend should be denied for several reasons. Bergen County failed to provide notice of its proposed amendments through a proposed complaint. Bergen County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the

PBMs. Moreover, Bergen County's motion should be denied due to futility, as Bergen County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bergen County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bergen County filed its original complaint on May 4, 2018 and the case was transferred to the MDL on May 30, 2018. *See Bergen County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45616-DAP, ECF No. 4. Bergen County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bergen County elected not to do so. Instead, Bergen County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bergen County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bergen County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Bergen County). That insignificant dispensing volume is much too low to support a finding of good cause for Bergen County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bergen County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bergen County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Bergen County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Bergen County of the PBM services Express Scripts provides and Bergen County began receiving those services on January 19, 2006. *See id.* Inasmuch as Bergen County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Bergen County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Bergen County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Bergen County filed its original complaint on May 4, 2018, but waited until October 22, 2018 to implement a litigation hold. *See Bergen County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45616-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: October 22, 2018). Bergen County's violation of the Court's orders (ECF Nos. 232, 5455) and disregard for its discovery obligations is

prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bergen County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bergen County, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bergen County's proposed RICO claim against the PBMs has expired. Bergen County filed its original complaint on May 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bergen County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45616-DAP, ECF No. 1. It is therefore indisputable that Bergen County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bergen County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Bergen County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bergen County, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **537.** *City of Frostburg v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45617-DAP: Plaintiff Frostburg City, Maryland**

Frostburg City's untimely motion for leave to amend should be denied for several reasons. Frostburg City failed to provide notice of its proposed amendments through a proposed complaint. Frostburg City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Frostburg City's motion should be denied due to futility, as Frostburg City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Frostburg City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Frostburg City amended its complaint on March 15, 2019, after transfer to the MDL on May 31, 2018. *See City of Frostburg v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45617-DAP, ECF No. 8. Unlike many other plaintiffs, Frostburg City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Frostburg City's deadline to amend was in 2019. Frostburg City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Frostburg City's lack of diligence in pursuing its claims negates

any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Frostburg City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Frostburg City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Frostburg City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Frostburg City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Frostburg City). That insignificant dispensing volume is much too low to support a finding of good cause for Frostburg City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Frostburg City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Frostburg City, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Frostburg City's proposed RICO claim against the PBMs has expired. Frostburg City filed its original complaint on May 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Frostburg v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45617-DAP, ECF No. 1. It is therefore indisputable that Frostburg City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Frostburg City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Frostburg City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Frostburg City's public-nuisance claim against the PBMs is therefore time-barred because Frostburg City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 11, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Frostburg City, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 538. *County of Mariposa, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45618-DAP: Plaintiff Mariposa County, California

Mariposa County's untimely motion for leave to amend should be denied for several reasons. Mariposa County failed to provide notice of its proposed amendments through a proposed complaint. Mariposa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mariposa County's motion should be denied due to futility, as Mariposa County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mariposa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mariposa County amended its complaint on March 8, 2019, after transfer to the MDL

on May 30, 2018. *See County of Mariposa, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45618-DAP, ECF No. 17. Unlike many other plaintiffs, Mariposa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mariposa County's deadline to amend was in 2019. Mariposa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mariposa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mariposa County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Mariposa County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mariposa County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Failure to Timely Implement a Litigation Hold.** Mariposa County filed its original complaint on May 7, 2018, but waited until September 12, 2018 to implement a litigation hold. *See County of Mariposa, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45618-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 12, 2018). Mariposa County's violation of the Court's orders (ECF Nos. 232, 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Mariposa County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Mariposa County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Mariposa County of this deficiency on September 16, 2024 (*see* Exhibit B), but Mariposa County refused to amend or supplement its Fact Sheet. Under this Court's orders, Mariposa County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Mariposa County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Mariposa County's potential claims against them. Mariposa County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6

(denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Mariposa County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mariposa County's proposed RICO claim against the PBMs has expired. Mariposa County filed its original complaint on May 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Mariposa, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45618-DAP, ECF No. 1. It is therefore indisputable that Mariposa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mariposa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mariposa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mariposa County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**539.** ***County of Tuolumne, et al. v. Amerisource Bergen Drug Corporation et al.*, Case No. 1:18-op-45619-DAP: Plaintiff Tuolumne County, California**

Tuolumne County's untimely motion for leave to amend should be denied for several reasons. Tuolumne County failed to provide notice of its proposed amendments through a proposed complaint. Tuolumne County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Tuolumne County's motion should be denied due to futility, as Tuolumne County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tuolumne County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tuolumne County amended its complaint on March 6, 2019, after transfer to the MDL on May 30, 2018. *See County of Tuolumne, et al. v. Amerisource Bergen Drug Corporation et al.*, Case No. 1:18-op-45619-DAP, ECF No. 18. Unlike many other plaintiffs, Tuolumne County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tuolumne County's deadline to amend was in 2019. Tuolumne County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tuolumne County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Tuolumne County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Tuolumne County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tuolumne County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tuolumne County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.24% market share for Tuolumne County). That insignificant dispensing volume is much too low to support a finding of good cause for Tuolumne County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Tuolumne County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tuolumne County's proposed RICO claim against the PBMs has expired. Tuolumne County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Tuolumne, et al. v. Amerisource Bergen Drug Corporation et al.*, Case No. 1:18-op-45619-DAP, ECF No. 1. It is therefore indisputable that Tuolumne County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tuolumne County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tuolumne County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tuolumne County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 540. *City of Alma, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45620-DAP: Plaintiff Alma City, Georgia

Alma City's untimely motion for leave to amend should be denied for several reasons. Alma City failed to provide notice of its proposed amendments through a proposed complaint. Alma City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alma City's motion should be denied due to futility, as Alma City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alma City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Alma City filed its original complaint on May 11, 2018 and the case was transferred to the MDL on May 31, 2018. *See City of Alma, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45620-DAP, ECF No. 4. Alma City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Alma City elected not to do so. Instead, Alma City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Alma City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alma City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Alma City). That insignificant dispensing volume is much too low to support a finding of good cause for Alma City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alma City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Alma City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Alma City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Alma City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Alma City of this deficiency on September 16, 2024 (*see* Exhibit B), but Alma City refused to amend or supplement its Fact Sheet. Under this Court's orders, Alma City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Alma City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Alma City's potential claims against them. Alma City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alma City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alma City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alma City's proposed RICO claim against the PBMs has expired. Alma City filed its original complaint on May 11, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Alma, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45620-DAP, ECF No. 1. Even assuming *arguendo* that Alma City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 11, 2022. Alma City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alma City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alma City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 541. *City of Hagerstown, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45622-DAP: Plaintiff Hagerstown City, Maryland

Hagerstown City's untimely motion for leave to amend should be denied for several reasons. Hagerstown City failed to provide notice of its proposed amendments through a proposed complaint. Hagerstown City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Hagerstown City's motion should be denied due to futility, as Hagerstown City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the

statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hagerstown City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hagerstown City amended its complaint on March 15, 2019, after transfer to the MDL on May 31, 2018. *See City of Hagerstown, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45622-DAP, ECF Nos. 6, 8. Unlike many other plaintiffs, Hagerstown City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hagerstown City's deadline to amend was in 2019. Hagerstown City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hagerstown City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hagerstown City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hagerstown City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hagerstown City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hagerstown City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Hagerstown City). That insignificant dispensing volume is much too low to support a finding of good cause for Hagerstown City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hagerstown City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hagerstown City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hagerstown City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hagerstown City, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hagerstown City's proposed RICO claim against the PBMs has expired. Hagerstown City filed its original complaint on May 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Hagerstown, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45622-DAP, ECF No. 1. It is therefore indisputable that Hagerstown City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hagerstown City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hagerstown City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Hagerstown City's public-nuisance claim against the PBMs is therefore time-barred because Hagerstown City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 11, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new

party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Hagerstown City, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 542. *City of Cumberland, Maryland v AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45624-DAP: Plaintiff Cumberland City, Maryland

Cumberland City's untimely motion for leave to amend should be denied for several reasons. Cumberland City failed to provide notice of its proposed amendments through a proposed complaint. Cumberland City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Cumberland City's motion should be denied due to futility, as Cumberland City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cumberland City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cumberland City amended its complaint on March 15, 2019, after transfer to the MDL on May 31, 2018. *See City of Cumberland, Maryland v AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45624-DAP, ECF No. 8. Unlike many other plaintiffs, Cumberland City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cumberland City's deadline to amend was in 2019. Cumberland City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cumberland City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cumberland City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cumberland City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cumberland City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cumberland City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Cumberland City). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cumberland City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cumberland City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cumberland City, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cumberland City's proposed RICO claim against the PBMs has expired. Cumberland City filed its original complaint on May 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Cumberland, Maryland v AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45624-DAP, ECF No. 1. It is therefore indisputable that Cumberland City knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cumberland City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cumberland City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**<u>Public Nuisance Statute of Limitations.</u>** In Maryland, public-nuisance claims are subject to a three-year limitations period. Cumberland City's public-nuisance claim against the PBMs is therefore time-barred because Cumberland City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 11, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**<u>Plaintiff Lacks Standing.</u>** Cumberland City, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 543. *County of Mono v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45626-DAP: Plaintiff Mono County, California

Mono County's untimely motion for leave to amend should be denied for several reasons. Mono County failed to provide notice of its proposed amendments through a proposed complaint. Mono County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Mono County's motion

should be denied due to futility, as Mono County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mono County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mono County amended its complaint on March 11, 2019, after transfer to the MDL on June 1, 2018. *See County of Mono v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45626-DAP, ECF No. 14. Unlike many other plaintiffs, Mono County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mono County's deadline to amend was in 2019. Mono County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mono County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mono County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Mono County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mono County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mono County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.36% market share for Mono County). That insignificant dispensing volume is much too low to support a finding of good cause for Mono County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Mono County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mono County's proposed RICO claim against the PBMs has expired. Mono County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Mono v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45626-DAP, ECF No. 1. It is therefore indisputable that Mono County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mono County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF

No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mono County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mono County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 544. *County of Butte v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45627-DAP: Plaintiff Butte County, California

Butte County's untimely motion for leave to amend should be denied for several reasons. Butte County failed to provide notice of its proposed amendments through a proposed complaint. Butte County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Butte County's motion should be denied due to futility, as Butte County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Butte County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Butte County amended its complaint on March 8, 2019, after transfer to the MDL on June 1, 2018. *See County of Butte v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45627-DAP, ECF No. 13. Unlike many other plaintiffs, Butte County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Butte County's deadline to amend was in 2019. Butte County waited five years after its deadline to amend to seek leave to assert claims

against the PBMs. Butte County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Butte County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Butte County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Butte County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Butte County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Butte County). That insignificant dispensing volume is much too low to support a finding of good cause for Butte County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Butte County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Butte County's proposed RICO claim against the PBMs has expired. Butte County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Butte v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45627-DAP, ECF No. 1. It is therefore indisputable that Butte County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Butte County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Butte County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Butte County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**545.** *County of Nevada v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45628-DAP: Plaintiff Nevada County, California**

Nevada County's untimely motion for leave to amend should be denied for several reasons. Nevada County failed to provide notice of its proposed amendments through a proposed complaint. Nevada County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Nevada County's motion should be denied due to futility, as Nevada County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Nevada County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nevada County amended its complaint on March 8, 2019, after transfer to the MDL on June 1, 2018. *See County of Nevada v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45628-DAP, ECF No. 13. Unlike many other plaintiffs, Nevada County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Nevada County's deadline to amend was in 2019. Nevada County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Nevada County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Nevada County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Nevada County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Nevada County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Nevada County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.43% market share for Nevada County). That insignificant dispensing volume is much too low to support a finding of good cause for Nevada County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Nevada County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nevada County's proposed RICO claim against the PBMs has expired. Nevada County filed its original complaint on May 9,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Nevada v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45628-DAP, ECF No. 1. It is therefore indisputable that Nevada County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Nevada County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nevada County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nevada County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 546. *County of El Dorado v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45629-DAP: Plaintiff El Dorado County, California

El Dorado County's untimely motion for leave to amend should be denied for several reasons. El Dorado County failed to provide notice of its proposed amendments through a proposed complaint. El Dorado County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, El Dorado County's motion should be denied due to futility, as El Dorado County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** El Dorado County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, El Dorado County amended its complaint on March 8, 2019, after transfer to the MDL on June 1, 2018. *See County of El Dorado v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45629-DAP, ECF No. 10. Unlike many other plaintiffs, El Dorado County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. El Dorado County's deadline to amend was in 2019. El Dorado County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. El Dorado County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** El Dorado County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. El Dorado County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. El Dorado County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

2112

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to El Dorado County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.37% market share for El Dorado County). That insignificant dispensing volume is much too low to support a finding of good cause for El Dorado County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** El Dorado County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for El Dorado County's proposed RICO claim against the PBMs has expired. El Dorado County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of El Dorado v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45629-DAP, ECF No. 1. It is therefore indisputable that El Dorado County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. El Dorado County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. El Dorado County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** El Dorado County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 547. *County of Siskiyou v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45630-DAP: Plaintiff Siskiyou County, California

Siskiyou County's untimely motion for leave to amend should be denied for several reasons. Siskiyou County failed to provide notice of its proposed amendments through a proposed complaint. Siskiyou County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Siskiyou County's motion should be denied due to futility, as Siskiyou County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Siskiyou County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Siskiyou County amended its complaint on March 11, 2019, after transfer to the MDL on June 1, 2018. *See County of Siskiyou v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45630-DAP, ECF No. 7. Unlike many other plaintiffs, Siskiyou County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Siskiyou County's deadline to amend was in 2019. Siskiyou County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Siskiyou County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information

[she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Siskiyou County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Siskiyou County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Siskiyou County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Siskiyou County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.32% market share for Siskiyou County). That insignificant dispensing volume is much too low to support a finding of good cause for Siskiyou County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Siskiyou County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Siskiyou County's proposed RICO claim against the PBMs has expired. Siskiyou County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Siskiyou v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45630-DAP, ECF No. 1. It is therefore indisputable that Siskiyou County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Siskiyou County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Siskiyou County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Siskiyou County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

548. *County of Imperial et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45631-DAP: Plaintiff Imperial County, California

Imperial County's untimely motion for leave to amend should be denied for several reasons. Imperial County failed to provide notice of its proposed amendments through a proposed complaint. Imperial County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Imperial County's motion should be denied due to futility, as Imperial County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Imperial County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Imperial County amended its complaint on March 8, 2019, after transfer to the MDL on June 1, 2018. *See County of Imperial et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45631-DAP, ECF No. 10. Unlike many other plaintiffs, Imperial County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Imperial County's deadline to amend was in 2019. Imperial County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Imperial County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Imperial County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Imperial County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Imperial County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Imperial County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Imperial County). That insignificant dispensing volume is much too low to support a finding of good cause for Imperial County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Imperial County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Imperial County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Imperial County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Imperial County of the PBM

services Express Scripts provides and Imperial County began receiving those services on January 3, 2018. *See id.* Inasmuch as Imperial County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Imperial County knew or should have known of the alleged wrongful conduct more than six years before moving to amend. *See* Section III.A.3, above. Imperial County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to State a Claim.** Imperial County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Imperial County's proposed RICO claim against the PBMs has expired. Imperial County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Imperial et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45631-DAP, ECF No. 1. It is therefore indisputable that Imperial County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Imperial County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Imperial County's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Imperial County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 549. *City of Portland, Oregon v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45633-DAP: Plaintiff Portland City, Oregon

Portland City's untimely motion for leave to amend should be denied for several reasons. Portland City failed to provide notice of its proposed amendments through a proposed complaint. Portland City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Portland City's motion should be denied due to futility, as Portland City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Portland City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Portland City amended its complaint on March 13, 2019, after transfer to the MDL on June 4, 2018. *See City of Portland, Oregon v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45633-DAP, ECF No. 10. Unlike many other plaintiffs, Portland City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Portland City's deadline to amend was in 2019. Portland City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Portland City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Portland City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Portland City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Portland City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Portland City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Portland City). That insignificant dispensing volume is much too low to support a finding of good cause for Portland City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Portland City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Portland City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Portland City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit C. That contract notified Portland City of the PBM services Express Scripts provides and Portland City began receiving those services on July 1, 2016. *See id.* Inasmuch as Portland City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Portland City knew or should have known of the alleged wrongful conduct eight years before moving to amend. *See* Section III.A.3, above. Portland City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

Portland City's agreement with Express Scripts, Inc., also includes a binding arbitration provision. *See* Achter Decl., ¶ 16, Exhibit C. This provision requires that all claims arising from the agreement or relating to the performance or interpretation of the agreement be brought in arbitration and forecloses Portland City from seeking redress against Express Scripts, Inc., in the MDL. *Id.* As the Sixth Circuit held, "[w]here the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and

should not deny an order to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 485 (6th Cir. 2006). The MDL does not change this fundamental rule of law. *In re Polyurethane Foam Antitrust Litig.*, 998 F. Supp. 2d 625, 636 (N.D. Ohio 2014) ("Simply put, an MDL's efficient qualities cannot alone override a party's agreement to arbitrate."). Courts routinely find that leave for amend would be futile where an arbitration provision covers the claims at issue. *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC,* 310 F. App'x 858, 860 (6th Cir. 2009) (denying motion to amend complaint where the parties' agreement contained an arbitration clause such that "amendment therefore would have been futile")*; see also Hickey v. Smith*, 2024 WL 912041, at *2 (S.D.N.Y. Mar. 4, 2024) ("Courts have recognized that where the court has determined that an arbitration clause applies to a claim, the court lacks subject matter jurisdiction over the claim and any amendment would be futile.") (internal citation omitted) (collecting cases).

Here, Portland City seeks to add claims arising from and related to its agreement with Express Scripts, Inc., to provide PBM services, including utilization management and formulary development. *See, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–-22, 845. These claims are subject to binding arbitration and cannot be litigated in this MDL. Portland City's motion for leave to add claims against Express Scripts entities must therefore be denied as futile.

Additionally, Portland City's contract with Express Scripts, Inc., includes a mandatory mediation provision. *See* Achter Decl., ¶ 19, Exhibit C. This provision requires that all claims arising from the agreement or relating to the performance or interpretation of the agreement be mediated (or proceed through other informal dispute resolution procedures) *before* any party may commence arbitration or litigation. *Id.* This provision thus forecloses Portland City from seeking

redress against Express Scripts, Inc., in the MDL. The contractual obligation to mediate claims prior to filing suit is binding and courts routinely hold parties to such agreements. *See CJ Consultants*, 2022 WL 4354265, at *7 (granting defendant's motion to dismiss complaint in order to enforce the informal resolution/mediation procedures in the parties' contract); *see also Fisher*, 276 F. Supp. 2d at 894 ("[F]ederal policy favors arbitration in a broad sense, and mediation surely falls under the preference for non-judicial dispute resolution. Thus, agreements like [the one at issue] are to be encouraged. Accordingly, the court finds that plaintiff['s] agreement to mediate any claim before filing it in court is binding under the FAA."). Because Portland City entered into an agreement to mediate or pursue other dispute resolution prior to bringing suit against Express Scripts, Inc., its proposed claims should not proceed in this Court.

Finally, Portland City's contract with Express Scripts, Inc., also includes a forum selection clause requiring that any disputes arising under the agreement or out of work performed under the agreement be commenced in the Multnomah County Circuit Court or United States District Court for the District of Oregon. *See* Achter Decl., ¶ 20, Exhibit C. This forum selection clause is "mandatory" and "valid on its face," and as such the Court must uphold the forum selection clause absent a strong showing that it should be set aside. *See C&S Outdoor Power Equip., Inc. v. Odes Indus. LLC*, 2019 WL 4197608, at *4 (W.D. Tenn. Sept. 4, 2019) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)). This Court should therefore deny Portland City's motion for leave to amend its complaint to add claims against Express Scripts, Inc., as futile because those claims are subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to file suit in the selected fora as required by the parties' contract. *See Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 934 (6th Cir. 2014) (affirming dismissal under Rule 12(b)(6) for violation of forum selection clause).

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Portland City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Portland City, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Portland City's proposed RICO claim against the PBMs has expired. Portland City filed its original complaint on May 10, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Portland, Oregon v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45633-DAP, ECF No. 1. It is therefore indisputable that Portland City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Portland City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Portland City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Portland City, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **550.** ***Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Bridgeport city, Alabama**

Bridgeport city's untimely motion for leave to amend should be denied for several reasons. Bridgeport city failed to provide notice of its proposed amendments through a proposed complaint. Bridgeport city also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bridgeport city's motion should be denied due to futility, as Bridgeport city does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bridgeport city was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bridgeport city amended its complaint on March 15, 2019, after directly filing in the MDL. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 2. Unlike many other plaintiffs, Bridgeport city declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bridgeport city's deadline to amend was in 2019. Bridgeport city waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bridgeport city's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bridgeport city's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Bridgeport city). That insignificant dispensing volume is much too low to support a finding of good cause for Bridgeport city to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bridgeport city's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bridgeport city to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bridgeport city filed its original complaint on June 1, 2018. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. Despite filing its case years ago, Bridgeport city *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232, 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Bridgeport city's case would force the parties and the Court to waste time and resources ascertaining the extent of Bridgeport city's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

2127

prejudiced by Bridgeport city's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bridgeport city therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bridgeport city failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bridgeport city's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bridgeport city of this deficiency on September 16, 2024 (*see* Exhibit B), but Bridgeport city refused to amend or supplement its Fact Sheet. Under this Court's orders, Bridgeport city's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bridgeport city's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Bridgeport city's potential claims against them. Bridgeport city's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bridgeport city's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bridgeport city, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bridgeport city's proposed RICO claim against the PBMs has expired. Bridgeport city filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. It is therefore indisputable that Bridgeport city knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bridgeport city's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bridgeport city's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Bridgeport city's public-nuisance claim against the PBMs is therefore time-barred because Bridgeport city sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See*

*Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Bridgeport city, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 551. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Geraldine Town, Alabama

Geraldine Town's untimely motion for leave to amend should be denied for several reasons. Geraldine Town failed to provide notice of its proposed amendments through a proposed complaint. Geraldine Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet. Moreover, Geraldine Town's motion should be denied due to futility, as Geraldine Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Geraldine Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Geraldine Town amended its complaint on March 15, 2019, after directly filing in the MDL. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 2. Unlike many other plaintiffs, Geraldine Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Geraldine Town's deadline to amend was in 2019. Geraldine Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Geraldine Town's lack of diligence in pursuing its claims

negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Geraldine Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Geraldine Town). That insignificant dispensing volume is much too low to support a finding of good cause for Geraldine Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Geraldine Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Geraldine Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Geraldine Town filed its original complaint on June 1, 2018. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. Despite filing its case years ago, Geraldine Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Geraldine Town's case would

force the parties and the Court to waste time and resources ascertaining the extent of Geraldine Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Geraldine Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Geraldine Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Geraldine Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Geraldine Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Geraldine Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Geraldine Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Geraldine Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Geraldine Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Geraldine Town's potential claims against them. Geraldine Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Geraldine Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791.

**Failure to State a Claim.** Geraldine Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Geraldine Town's proposed RICO claim against the PBMs has expired. Geraldine Town filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. It is therefore indisputable that Geraldine Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Geraldine Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Geraldine Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Geraldine Town's public-nuisance claim against the PBMs is

therefore time-barred because Geraldine Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Geraldine Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 552. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Henagar City, Alabama

Henagar City's untimely motion for leave to amend should be denied for several reasons. Henagar City failed to provide notice of its proposed amendments through a proposed complaint. Henagar City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Henagar City's motion should be denied due to futility, as Henagar City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Henagar City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Henagar City amended its complaint on March 15, 2019, after directly filing in the MDL. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-

op-45634-DAP, ECF No. 2. Unlike many other plaintiffs, Henagar City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Henagar City's deadline to amend was in 2019. Henagar City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Henagar City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Henagar City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Henagar City). That insignificant dispensing volume is much too low to support a finding of good cause for Henagar City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Henagar City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Henagar City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Henagar City filed its original complaint on June 1, 2018. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*,

Case No. 1:18-op-45634-DAP, ECF No. 1. Despite filing its case years ago, Henagar City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Henagar City's case would force the parties and the Court to waste time and resources ascertaining the extent of Henagar City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Henagar City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Henagar City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Henagar City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Henagar City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Henagar City of this deficiency on September 16, 2024 (*see* Exhibit B), but Henagar City refused to amend or supplement its Fact Sheet. Under this Court's orders, Henagar City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Henagar City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Henagar City's potential claims against them. Henagar City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Henagar City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Henagar City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Henagar City's proposed RICO claim against the PBMs has expired. Henagar City filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. It is therefore indisputable that Henagar City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Henagar City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Henagar City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Henagar City's public-nuisance claim against the PBMs is therefore time-barred because Henagar City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Henagar City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

553. ***Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP: Plaintiff Jackson County, Alabama**

Jackson County's untimely motion for leave to amend should be denied for several reasons. Jackson County failed to provide notice of its proposed amendments through a proposed complaint. Jackson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jackson County's motion should be denied due to futility, as Jackson County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jackson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Jackson County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 2. Unlike many other plaintiffs, Jackson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jackson County's deadline to amend was in 2019. Jackson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jackson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jackson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Jackson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jackson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jackson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Jackson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jackson County filed its original complaint on June 1, 2018. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. Despite filing its case years ago, Jackson County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Jackson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jackson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jackson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jackson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Jackson County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Jackson County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Jackson County of this deficiency on September 16, 2024 (*see* Exhibit B), but Jackson County refused to amend or supplement its Fact Sheet. Under this Court's orders, Jackson County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Jackson County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend

against Jackson County's potential claims against them. Jackson County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jackson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jackson County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jackson County's proposed RICO claim against the PBMs has expired. Jackson County filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. It is therefore indisputable that Jackson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Jackson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jackson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Jackson County's public-nuisance claim against the PBMs is therefore time-barred because Jackson County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Jackson County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Jackson County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **554.** *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45634-DAP: Plaintiff New Hope City, Alabama**

New Hope City's untimely motion for leave to amend should be denied for several reasons. New Hope City failed to provide notice of its proposed amendments through a proposed complaint. New Hope City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, New Hope City's motion should be denied due to futility, as New Hope City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** New Hope City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, New Hope City amended its complaint on March 15, 2019, after directly filing in the MDL. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 2. Unlike many other plaintiffs, New Hope City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. New Hope City's deadline to amend was in 2019. New Hope City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. New Hope City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to New Hope City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the

case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, New Hope City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to New Hope City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for New Hope City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** New Hope City filed its original complaint on June 1, 2018. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. Despite filing its case years ago, New Hope City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating New Hope City's case would force the parties and the Court to waste time and resources ascertaining the extent of New Hope City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by New Hope City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and New Hope City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, New Hope City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to New Hope City's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified New Hope City of this deficiency on September 16, 2024 (*see* Exhibit B), but New Hope City refused to amend or supplement its Fact Sheet. Under this Court's orders, New Hope City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. New Hope City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against New Hope City's potential claims against them. New Hope City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But New Hope City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** New Hope City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for New Hope City's proposed RICO claim against the PBMs has expired. New Hope City filed its original complaint on June 1,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. It is therefore indisputable that New Hope City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. New Hope City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. New Hope City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. New Hope City's public-nuisance claim against the PBMs is therefore time-barred because New Hope City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** New Hope City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**555.** *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45634-DAP: Plaintiff Scottsboro City, Alabama**

Scottsboro City's untimely motion for leave to amend should be denied for several reasons. Scottsboro City failed to provide notice of its proposed amendments through a proposed complaint. Scottsboro City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scottsboro City's motion should be denied due to futility, as Scottsboro City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scottsboro City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scottsboro City amended its complaint on March 15, 2019, after directly filing in the MDL. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 2. Unlike many other plaintiffs, Scottsboro City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Scottsboro City's deadline to amend was in 2019. Scottsboro City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scottsboro City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Scottsboro City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Scottsboro City). That insignificant dispensing volume is much too low to support a finding of good cause for Scottsboro City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scottsboro City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scottsboro City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Scottsboro City filed its original complaint on June 1, 2018. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. Despite filing its case years ago, Scottsboro City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Scottsboro City's case would force the parties and the Court to waste time and resources ascertaining the extent of Scottsboro City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Scottsboro City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Scottsboro City therefore lacks good

cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Scottsboro City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Scottsboro City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Scottsboro City of this deficiency on September 16, 2024 (*see* Exhibit B), but Scottsboro City refused to amend or supplement its Fact Sheet. Under this Court's orders, Scottsboro City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Scottsboro City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Scottsboro City's potential claims against them. Scottsboro City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scottsboro City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scottsboro City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scottsboro City's proposed RICO claim against the PBMs has expired. Scottsboro City filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. It is therefore indisputable that Scottsboro City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Scottsboro City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scottsboro City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Scottsboro City's public-nuisance claim against the PBMs is therefore time-barred because Scottsboro City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new

party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Scottsboro City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 556. *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45634-DAP: Plaintiff Woodville Town, Alabama**

Woodville Town's untimely motion for leave to amend should be denied for several reasons. Woodville Town failed to provide notice of its proposed amendments through a proposed complaint. Woodville Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Woodville Town's motion should be denied due to futility, as Woodville Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Woodville Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Woodville Town amended its complaint on March 15, 2019, after directly filing in the MDL. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 2. Unlike many other plaintiffs, Woodville Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Woodville Town's deadline to amend was in 2019. Woodville Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Woodville Town's lack of diligence in pursuing its claims

negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Woodville Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Woodville Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Woodville Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Woodville Town filed its original complaint on June 1, 2018. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. Despite filing its case years ago, Woodville Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Woodville Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Woodville Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The

PBMs are prejudiced by Woodville Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Woodville Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Woodville Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Woodville Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Woodville Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Woodville Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Woodville Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Woodville Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Woodville Town's potential claims against them. Woodville Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Woodville Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Woodville Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Woodville Town's proposed RICO claim against the PBMs has expired. Woodville Town filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45634-DAP, ECF No. 1. It is therefore indisputable that Woodville Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Woodville Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Woodville Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Woodville Town's public-nuisance claim against the PBMs is therefore time-barred because Woodville Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See*

*Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Woodville Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 557. *City of Mayfield Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45635-DAP: Plaintiff Mayfield Heights City, Ohio

Mayfield Heights City's untimely motion for leave to amend should be denied for several reasons. Mayfield Heights City failed to provide notice of its proposed amendments through a proposed complaint. Mayfield Heights City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mayfield Heights City's motion should be denied due to futility, as Mayfield Heights City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mayfield Heights City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mayfield Heights City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Mayfield Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45635-DAP, ECF No. 3. Unlike many other plaintiffs, Mayfield Heights City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mayfield Heights City's deadline to amend was in 2019. Mayfield Heights City waited five years

after its deadline to amend to seek leave to assert claims against the PBMs. Mayfield Heights City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mayfield Heights City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Mayfield Heights City). That insignificant dispensing volume is much too low to support a finding of good cause for Mayfield Heights City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mayfield Heights City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mayfield Heights City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Mayfield Heights City filed its original complaint on June 1, 2018. *See City of Mayfield Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45635-DAP, ECF No. 1. Despite filing its case years ago, Mayfield Heights City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos.

232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Mayfield Heights City's case would force the parties and the Court to waste time and resources ascertaining the extent of Mayfield Heights City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mayfield Heights City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mayfield Heights City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Mayfield Heights City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Mayfield Heights City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Mayfield Heights City of this deficiency on September 16, 2024 (*see* Exhibit B), but Mayfield Heights City refused to amend or supplement its Fact Sheet. Under this Court's orders, Mayfield Heights City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Mayfield Heights City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Mayfield Heights City's potential claims against them. Mayfield Heights City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mayfield Heights City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mayfield Heights City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Mayfield Heights City is a plaintiff in Ohio. Mayfield Heights City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Mayfield Heights City's proposed RICO claim against the PBMs has expired. Mayfield Heights City filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Mayfield Heights v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45635-DAP, ECF No. 1. It is therefore indisputable that Mayfield Heights City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six

years before seeking leave to amend. Mayfield Heights City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mayfield Heights City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mayfield Heights City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 558. *City of Lyndhurst v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45636-DAP: Plaintiff Lyndhurst City, Ohio

Lyndhurst City's untimely motion for leave to amend should be denied for several reasons. Lyndhurst City failed to provide notice of its proposed amendments through a proposed complaint. Lyndhurst City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lyndhurst City's motion should be denied due to futility, as Lyndhurst City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lyndhurst City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lyndhurst City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Lyndhurst v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45636-DAP,

ECF No. 3. Unlike many other plaintiffs, Lyndhurst City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lyndhurst City's deadline to amend was in 2019. Lyndhurst City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lyndhurst City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lyndhurst City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Lyndhurst City). That insignificant dispensing volume is much too low to support a finding of good cause for Lyndhurst City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lyndhurst City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lyndhurst City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lyndhurst City filed its original complaint on June 1, 2018. *See City of Lyndhurst v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-

op-45636-DAP, ECF No. 1. Despite filing its case years ago, Lyndhurst City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lyndhurst City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lyndhurst City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lyndhurst City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lyndhurst City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lyndhurst City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lyndhurst City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lyndhurst City of this deficiency on September 16, 2024 (*see* Exhibit B), but Lyndhurst City refused to amend or supplement its Fact Sheet. Under this Court's orders, Lyndhurst City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lyndhurst City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lyndhurst City's potential claims against them. Lyndhurst City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See Final Amendment Order*, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lyndhurst City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lyndhurst City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lyndhurst City is a plaintiff in Ohio. Lyndhurst City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lyndhurst City's proposed RICO claim against the PBMs has expired. Lyndhurst City filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lyndhurst v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45636-DAP, ECF No. 1. It is therefore indisputable that Lyndhurst City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lyndhurst City's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lyndhurst City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lyndhurst City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 559. *City of Wickliffe v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45637-DAP: Plaintiff Wickliffe City, Ohio

Wickliffe City's untimely motion for leave to amend should be denied for several reasons. Wickliffe City failed to provide notice of its proposed amendments through a proposed complaint. Wickliffe City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wickliffe City's motion should be denied due to futility, as Wickliffe City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wickliffe City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wickliffe City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Wickliffe v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45637-DAP, ECF No. 3. Unlike many other plaintiffs, Wickliffe City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wickliffe City's deadline to amend was in

2019. Wickliffe City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wickliffe City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Wickliffe City filed its original complaint on June 1, 2018. *See City of Wickliffe v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45637-DAP, ECF No. 1. Despite filing its case years ago, Wickliffe City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wickliffe City's case would force the parties and the Court to waste time and resources ascertaining the extent of Wickliffe City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wickliffe City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wickliffe City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wickliffe City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

2164

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wickliffe City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Wickliffe City is a plaintiff in Ohio. Wickliffe City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Wickliffe City's proposed RICO claim against the PBMs has expired. Wickliffe City filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Wickliffe v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45637-DAP, ECF No. 1. It is therefore indisputable that Wickliffe City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wickliffe City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wickliffe City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wickliffe City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **560.** *City of St. Marys, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45638-DAP: Plaintiff St. Marys City, Ohio

St. Marys City's untimely motion for leave to amend should be denied for several reasons. St. Marys City failed to provide notice of its proposed amendments through a proposed complaint. St. Marys City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Marys City's motion should be denied due to futility, as St. Marys City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Marys City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Marys City amended its complaint on March 16, 2019, after directly filing in the MDL. *See City of St. Marys, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45638-DAP, ECF No. 22. Unlike many other plaintiffs, St. Marys City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Marys City's deadline to amend was in 2019. St. Marys City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Marys City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Marys City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.28% market share for St. Marys City). That insignificant dispensing volume is much too low to support a finding of good cause for St. Marys City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Marys City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Marys City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Marys City filed its original complaint on June 1, 2018. *See City of St. Marys, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45638-DAP, ECF No. 1. Despite filing its case years ago, St. Marys City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Marys City's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Marys City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The

PBMs are prejudiced by St. Marys City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Marys City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Marys City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Marys City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** St. Marys City is a plaintiff in Ohio. St. Marys City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for St. Marys City's proposed RICO claim against the PBMs has expired. St. Marys City filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of St. Marys, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45638-

DAP, ECF No. 1. It is therefore indisputable that St. Marys City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. Marys City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Marys City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Marys City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 561. *County of Glenn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45639-DAP: Plaintiff Glenn County, California

Glenn County's untimely motion for leave to amend should be denied for several reasons. Glenn County failed to provide notice of its proposed amendments through a proposed complaint. Glenn County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Glenn County's motion should be denied due to futility, as Glenn County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Glenn County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Glenn County amended its complaint on March 8, 2019, after transfer to the MDL on June 4, 2018. *See County of Glenn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45639-

DAP, ECF No. 11. Unlike many other plaintiffs, Glenn County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Glenn County's deadline to amend was in 2019. Glenn County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Glenn County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Glenn County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Glenn County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Glenn County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Glenn County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Glenn County). That insignificant dispensing volume is much too low to support a finding of good cause for Glenn County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Glenn County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Glenn County's proposed RICO claim against the PBMs has expired. Glenn County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Glenn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45639-DAP, ECF No. 1. It is therefore indisputable that Glenn County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Glenn County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Glenn County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Glenn County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **562.** ***County of Sutter v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45640-DAP: Plaintiff Sutter County, California**

Sutter County's untimely motion for leave to amend should be denied for several reasons. Sutter County failed to provide notice of its proposed amendments through a proposed complaint. Sutter County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Sutter County's motion should be denied due to futility, as Sutter County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sutter County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sutter County amended its complaint on March 11, 2019, after transfer to the MDL on June 4, 2018. *See County of Sutter v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45640-DAP, ECF No. 10. Unlike many other plaintiffs, Sutter County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sutter County's deadline to amend was in 2019. Sutter County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sutter County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sutter County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sutter County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sutter County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sutter County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Sutter County). That insignificant dispensing volume is much too low to support a finding of good cause for Sutter County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Sutter County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Sutter County of the PBM

services Express Scripts provides and Sutter County began receiving those services on November 9, 2010. *See id.* Inasmuch as Sutter County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Sutter County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Sutter County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to State a Claim.** Sutter County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sutter County's proposed RICO claim against the PBMs has expired. Sutter County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Sutter v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45640-DAP, ECF No. 1. It is therefore indisputable that Sutter County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sutter County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sutter County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sutter County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 563. *County of Modoc v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45641-DAP: Plaintiff Modoc County, California

Modoc County's untimely motion for leave to amend should be denied for several reasons. Modoc County failed to provide notice of its proposed amendments through a proposed complaint. Modoc County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Modoc County's motion should be denied due to futility, as Modoc County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Modoc County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Modoc County amended its complaint on March 11, 2019, after transfer to the MDL on June 4, 2018. *See County of Modoc v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45641-DAP, ECF No. 12. Unlike many other plaintiffs, Modoc County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Modoc County's deadline to amend was in 2019. Modoc County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Modoc County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Modoc County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Modoc County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Modoc County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Modoc County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.38% market share for Modoc County). That insignificant dispensing volume is much too low to support a finding of good cause for Modoc County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Modoc County violated its basic duty to implement a timely litigation hold. Modoc County filed its original complaint on May 8, 2018, but waited until September 23, 2019 to implement a litigation hold—over a year later. *See County of Modoc v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45641-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 23, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Modoc County's case would force the parties and the Court to waste time and resources ascertaining the extent of Modoc County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Modoc County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Modoc County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Modoc County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Modoc County's proposed RICO claim against the PBMs has expired. Modoc County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Modoc v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45641-DAP, ECF No. 1. It is therefore indisputable that Modoc County knew of its RICO injury, at the very

latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Modoc County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Modoc County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Modoc County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 564. *County of Placer v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45642-DAP: Plaintiff Placer County, California

Placer County's untimely motion for leave to amend should be denied for several reasons. Placer County failed to provide notice of its proposed amendments through a proposed complaint. Placer County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Placer County's motion should be denied due to futility, as Placer County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Placer County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Placer County amended its complaint on March 8, 2019, after transfer to the MDL on June 4, 2018. *See County of Placer v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45642-DAP, ECF No. 10. Unlike many other plaintiffs, Placer County declined to add claims against the

PBMs in its amended complaint. *See* Section II.A.1, above. Placer County's deadline to amend was in 2019. Placer County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Placer County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Placer County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Placer County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Placer County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Placer County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.21% market share for Placer County). That insignificant dispensing volume is much too low to support a finding of good cause for Placer County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Placer County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Placer County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to State a Claim.** Placer County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Placer County's proposed RICO claim against the PBMs has expired. Placer County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Placer v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45642-DAP, ECF No. 1. It is therefore indisputable that Placer County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Placer County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Placer County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Placer County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 565. *County of Merced, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45643-DAP: Plaintiff Merced County, California

Merced County's untimely motion for leave to amend should be denied for several reasons. Merced County failed to provide notice of its proposed amendments through a proposed complaint. Merced County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Merced County's motion should be denied due to futility, as Merced County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Merced County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Merced County amended its complaint on March 8, 2019, after transfer to the MDL on June 4, 2018. *See County of Merced, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45643-DAP, ECF No. 15. Unlike many other plaintiffs, Merced County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Merced County's deadline to amend was in 2019. Merced County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Merced County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Merced County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Merced County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Merced County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Merced County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.45% market share for Merced County). That insignificant dispensing volume is much too low to support a finding of good cause for Merced County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Merced County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Merced County of the PBM services Express Scripts provides and Merced County began receiving those services on February 27, 2006. *See id.* Inasmuch as Merced County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Merced County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Merced County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to State a Claim.** Merced County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Merced County's proposed RICO claim against the PBMs has expired. Merced County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Merced, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45643-DAP, ECF No. 1. It is therefore indisputable that Merced County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Merced County's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Merced County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Merced County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **566.** ***County of Fresno v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45644-DAP: Plaintiff Fresno County, California**

Fresno County's untimely motion for leave to amend should be denied for several reasons. Fresno County failed to provide notice of its proposed amendments through a proposed complaint. Fresno County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fresno County's motion should be denied due to futility, as Fresno County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fresno County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fresno County amended its complaint on March 14, 2019, after transfer to the MDL on June 4, 2018. *See County of Fresno v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45644-DAP, ECF No. 14. Unlike many other plaintiffs, Fresno County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fresno County's deadline to amend was in 2019. Fresno County waited five years after its deadline to amend to seek leave

to assert claims against the PBMs. Fresno County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fresno County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Fresno County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fresno County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fresno County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Fresno County). That insignificant dispensing volume is much too low to support a finding of good cause for Fresno County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fresno County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fresno County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Fresno County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Fresno County of the PBM services Express Scripts provides and Fresno County began receiving those services on January 1, 2006. *See id.* Inasmuch as Fresno County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Fresno County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Fresno County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Fresno County filed its original complaint on May 9, 2018. *See County of Fresno v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45644-DAP, ECF No. 1. Despite filing its case years ago, Fresno County *never*

implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fresno County's case would force the parties and the Court to waste time and resources ascertaining the extent of Fresno County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fresno County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fresno County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Fresno County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fresno County's proposed RICO claim against the PBMs has expired. Fresno County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Fresno v. Amerisourcebergen Drug Corporation, et al.*, Case No. 1:18-op-45644-DAP, ECF No. 1. It is therefore indisputable that Fresno County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Fresno County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury,

not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fresno County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fresno County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **567.** ***County of Calaveras, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45645-DAP: Plaintiff Calaveras County, California**

Calaveras County's untimely motion for leave to amend should be denied for several reasons. Calaveras County failed to provide notice of its proposed amendments through a proposed complaint. Calaveras County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Calaveras County's motion should be denied due to futility, as Calaveras County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calaveras County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calaveras County amended its complaint on March 6, 2019, after transfer to the MDL on June 4, 2018. *See County of Calaveras, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45645-DAP, ECF No. 20. Unlike many other plaintiffs, Calaveras County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Calaveras County's deadline to amend was in 2019. Calaveras County waited five years after its

deadline to amend to seek leave to assert claims against the PBMs. Calaveras County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Calaveras County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Calaveras County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Calaveras County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Calaveras County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.50% market share for Calaveras County). That insignificant dispensing volume is much too low to support a finding of good cause for Calaveras County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Calaveras County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Calaveras County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Calaveras County of this deficiency on September 16, 2024 (*see* Exhibit B), but Calaveras County refused to amend or supplement its Fact Sheet. Under this Court's orders, Calaveras County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Calaveras County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Calaveras County's potential claims against them. Calaveras County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Calaveras County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Calaveras County's proposed RICO claim against the PBMs has expired. Calaveras County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Calaveras, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45645-DAP, ECF No. 1. It is therefore indisputable that Calaveras County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Calaveras County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Calaveras County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Calaveras County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 568. ***County of Inyo, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45646-DAP: Plaintiff Inyo County, California**

Inyo County's untimely motion for leave to amend should be denied for several reasons. Inyo County failed to provide notice of its proposed amendments through a proposed complaint. Inyo County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Inyo County's motion should be denied due to futility, as Inyo County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Inyo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Inyo County amended its complaint on March 8, 2019, after transfer to the MDL on June 4, 2018. *See County of Inyo, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45646-DAP, ECF No. 15. Unlike many other plaintiffs, Inyo County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Inyo County's deadline to amend was in 2019. Inyo County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Inyo County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Inyo County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Inyo County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Inyo County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Inyo County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Inyo County). That insignificant dispensing volume is much too low to support a finding of good cause for Inyo County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Inyo County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Inyo County's proposed RICO claim against the PBMs has expired. Inyo County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Inyo, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45646-DAP, ECF No. 1. It is therefore indisputable that Inyo County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Inyo County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Inyo County's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Inyo County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 569. *County of Madera, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45647-DAP: Plaintiff Madera County, California

Madera County's untimely motion for leave to amend should be denied for several reasons. Madera County failed to provide notice of its proposed amendments through a proposed complaint. Madera County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Madera County's motion should be denied due to futility, as Madera County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Madera County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Madera County amended its complaint on March 8, 2019, after transfer to the MDL on June 4, 2018. *See County of Madera, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45647-DAP, ECF No. 18. Unlike many other plaintiffs, Madera County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Madera County's deadline to amend was in 2019. Madera County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Madera County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

2194

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Madera County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Madera County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Madera County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Madera County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Madera County). That insignificant dispensing volume is much too low to support a finding of good cause for Madera County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Madera County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Madera County's proposed RICO claim against the PBMs has expired. Madera County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Madera, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45647-DAP, ECF No. 1. It is therefore indisputable that Madera County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Madera County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Madera County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Madera County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

570. *County of Yuba v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45648-DAP: Plaintiff Yuba County, California**

Yuba County's untimely motion for leave to amend should be denied for several reasons. Yuba County failed to provide notice of its proposed amendments through a proposed complaint. Yuba County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because

its untimely motion would unduly prejudice the PBMs. Moreover, Yuba County's motion should be denied due to futility, as Yuba County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Yuba County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Yuba County amended its complaint on March 12, 2019, after transfer to the MDL on June 4, 2018. *See County of Yuba v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45648-DAP, ECF No. 13. Unlike many other plaintiffs, Yuba County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Yuba County's deadline to amend was in 2019. Yuba County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Yuba County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Yuba County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Yuba County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Yuba County fails to explain why it was unable to assert claims against the PBMs in

2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Yuba County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.31% market share for Yuba County). That insignificant dispensing volume is much too low to support a finding of good cause for Yuba County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Yuba County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Yuba County's proposed RICO claim against the PBMs has expired. Yuba County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Yuba v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45648-DAP, ECF No. 1. It is therefore indisputable that Yuba County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend.

Yuba County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Yuba County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Yuba County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 571. *County of Plumas v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45649-DAP: Plaintiff Plumas County, California

Plumas County's untimely motion for leave to amend should be denied for several reasons. Plumas County failed to provide notice of its proposed amendments through a proposed complaint. Plumas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Plumas County's motion should be denied due to futility, as Plumas County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Plumas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Plumas County amended its complaint on March 8, 2019, after transfer to the MDL on June 4, 2018. *See County of Plumas v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45649-DAP, ECF No. 10. Unlike many other plaintiffs, Plumas County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Plumas County's deadline

to amend was in 2019. Plumas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Plumas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Plumas County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Plumas County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Plumas County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Plumas County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Plumas County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Plumas County of this deficiency on September 16, 2024 (*see* Exhibit B), but Plumas

County refused to amend or supplement its Fact Sheet. Under this Court's orders, Plumas County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Plumas County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Plumas County's potential claims against them. Plumas County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Plumas County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Plumas County's proposed RICO claim against the PBMs has expired. Plumas County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Plumas v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45649-DAP, ECF No. 1. It is therefore indisputable that Plumas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Plumas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see*

Section III.B.4, above. Plumas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Plumas County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 572. *County of Trinity v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45650-DAP: Plaintiff Trinity County, California

Trinity County's untimely motion for leave to amend should be denied for several reasons. Trinity County failed to provide notice of its proposed amendments through a proposed complaint. Trinity County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Trinity County's motion should be denied due to futility, as Trinity County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Trinity County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Trinity County amended its complaint on March 11, 2019, after transfer to the MDL on June 4, 2018. *See County of Trinity v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45650-DAP, ECF No. 10. Unlike many other plaintiffs, Trinity County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Trinity County's deadline to amend was in 2019. Trinity County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Trinity County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Trinity County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Trinity County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Trinity County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Trinity County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.22% market share for Trinity County). That insignificant dispensing volume is much too low to support a finding of good cause for Trinity County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Trinity County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Trinity County's proposed RICO claim against the PBMs has expired. Trinity County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Trinity v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45650-DAP, ECF No. 1. It is therefore indisputable that Trinity County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Trinity County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Trinity County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Trinity County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 573. *Allegany County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45652-DAP: Plaintiff Allegany County, Maryland

Allegany County's untimely motion for leave to amend should be denied for several reasons. Allegany County failed to provide notice of its proposed amendments through a proposed complaint. Allegany County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Allegany County's motion should be denied due to futility, as Allegany County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Allegany County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Allegany County amended its complaint on March 15, 2019, after transfer to the MDL on June 4, 2018. *See Allegany County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45652-DAP, ECF No. 8. Unlike many other plaintiffs, Allegany County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Allegany County's deadline to amend was in 2019. Allegany County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Allegany County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Allegany County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Allegany County, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Allegany County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Allegany County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Allegany County). That insignificant dispensing volume is much too low to support a finding of good cause for Allegany County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Allegany County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Allegany County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Allegany County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Allegany County, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Allegany County's proposed RICO claim against the PBMs has expired. Allegany County filed its original complaint on May 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Allegany County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45652-DAP, ECF No. 1. It is therefore indisputable that Allegany County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Allegany County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Allegany County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Allegany County's public-nuisance claim against the PBMs is therefore time-barred because Allegany County sought leave to amend its complaint on July 29,

2024—six years after filing its original complaint on May 11, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Allegany County, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 574. *County of San Benito v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45653-DAP: Plaintiff San Benito County, California

San Benito County's untimely motion for leave to amend should be denied for several reasons. San Benito County failed to provide notice of its proposed amendments through a proposed complaint. San Benito County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, San Benito County's motion should be denied due to futility, as San Benito County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** San Benito County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, San Benito County amended its complaint on March 8, 2019, after transfer to the MDL on June 4, 2018. *See County of San Benito v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45653-DAP, ECF No. 8. Unlike many other plaintiffs, San Benito County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. San Benito County's deadline to amend was in 2019. San Benito County waited five years after its deadline

to amend to seek leave to assert claims against the PBMs. San Benito County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** San Benito County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. San Benito County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. San Benito County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to San Benito County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.20% market share for San Benito County). That insignificant dispensing volume is much too low to support a finding of good cause for San Benito County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** San Benito County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified San Benito County of the PBM services Express Scripts provides and San Benito County began receiving those services on January 4, 2017. *See id.* Inasmuch as San Benito County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), San Benito County knew or should have known of the alleged wrongful conduct seven years before moving to amend. *See* Section III.A.3, above. San Benito County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to State a Claim.** San Benito County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for San Benito County's proposed RICO claim against the PBMs has expired. San Benito County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See County of San Benito v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45653-DAP, ECF No. 1. It is therefore indisputable that San Benito County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. San Benito County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Benito County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Benito County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 575. *County of Mendocino v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45654-DAP: Plaintiff Mendocino County, California

Mendocino County's untimely motion for leave to amend should be denied for several reasons. Mendocino County failed to provide notice of its proposed amendments through a proposed complaint. Mendocino County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Mendocino County's motion should be denied due to futility, as Mendocino County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mendocino County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mendocino County amended its complaint on March 4, 2019, after transfer to the MDL

on June 4, 2018. *See County of Mendocino v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45654-DAP, ECF No. 8. Unlike many other plaintiffs, Mendocino County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mendocino County's deadline to amend was in 2019. Mendocino County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mendocino County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mendocino County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Mendocino County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mendocino County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mendocino County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.22% market share for Mendocino County). That insignificant dispensing volume is much too low to support a finding of good cause for Mendocino County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mendocino County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mendocino County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Mendocino County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Mendocino County of the PBM services Express Scripts provides and Mendocino County began receiving those services on February 28, 2006. *See id.* Inasmuch as Mendocino County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Mendocino County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3,

above. Mendocino County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to State a Claim.** Mendocino County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mendocino County's proposed RICO claim against the PBMs has expired. Mendocino County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Mendocino v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45654-DAP, ECF No. 1. It is therefore indisputable that Mendocino County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mendocino County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mendocino County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mendocino County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**576.** *County of Del Norte v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45655-DAP: Plaintiff Del Norte County, California

Del Norte County's untimely motion for leave to amend should be denied for several reasons. Del Norte County failed to provide notice of its proposed amendments through a proposed complaint. Del Norte County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Del Norte County's motion should be denied due to futility, as Del Norte County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Del Norte County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Del Norte County amended its complaint on March 8, 2019, after transfer to the MDL on June 4, 2018. *See County of Del Norte v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45655-DAP, ECF No. 11. Unlike many other plaintiffs, Del Norte County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Del Norte County's deadline to amend was in 2019. Del Norte County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Del Norte County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Del Norte County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Del Norte County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Del Norte County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Del Norte County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Del Norte County). That insignificant dispensing volume is much too low to support a finding of good cause for Del Norte County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Del Norte County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Del Norte County of the PBM services Express Scripts provides and Del Norte County began receiving those services on July 1,

2015. *See id.* Inasmuch as Del Norte County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Del Norte County knew or should have known of the alleged wrongful conduct nine years before moving to amend. *See* Section III.A.3, above. Del Norte County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to State a Claim.** Del Norte County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Del Norte County's proposed RICO claim against the PBMs has expired. Del Norte County filed its original complaint on May 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Del Norte v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45655-DAP, ECF No. 1. It is therefore indisputable that Del Norte County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Del Norte County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Del Norte County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Del Norte County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 577. *County of Contra Costa v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45656-DAP: Plaintiff Contra Costa County, California

Contra Costa County's untimely motion for leave to amend should be denied for several reasons. Contra Costa County failed to provide notice of its proposed amendments through a proposed complaint. Contra Costa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Contra Costa County's motion should be denied due to futility, as Contra Costa County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Contra Costa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Contra Costa County amended its complaint on March 8, 2019, after transfer to the MDL on June 4, 2018. *See County of Contra Costa v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45656-DAP, ECF No. 9. Unlike many other plaintiffs, Contra Costa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Contra Costa County's deadline to amend was in 2019. Contra Costa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Contra Costa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at

879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Contra Costa County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Contra Costa County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Contra Costa County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Contra Costa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Contra Costa County). That insignificant dispensing volume is much too low to support a finding of good cause for Contra Costa County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Contra Costa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Contra Costa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Contra Costa County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Contra Costa County of the PBM services Express Scripts provides and Contra Costa County began receiving those services on July 2, 2007. *See id.* Inasmuch as Contra Costa County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Contra Costa County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Contra Costa County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Contra Costa County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Contra Costa County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time

period. The PBMs notified Contra Costa County of this deficiency on September 16, 2024 (*see* Exhibit B), but Contra Costa County refused to amend or supplement its Fact Sheet. Under this Court's orders, Contra Costa County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Contra Costa County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Contra Costa County's potential claims against them. Contra Costa County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Contra Costa County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Contra Costa County's proposed RICO claim against the PBMs has expired. Contra Costa County filed its original complaint on May 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Contra Costa v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45656-DAP, ECF No. 1. It is therefore indisputable that Contra Costa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Contra Costa County's RICO claim is therefore time-barred by

RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Contra Costa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Contra Costa County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **578.** ***City of Winston-Salem v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45658-DAP: Plaintiff Winston-Salem City, North Carolina**

Winston-Salem City's untimely motion for leave to amend should be denied for several reasons. Winston-Salem City failed to provide notice of its proposed amendments through a proposed complaint. Winston-Salem City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winston-Salem City's motion should be denied due to futility, as Winston-Salem City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winston-Salem City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Winston-Salem City amended its complaint on March 11, 2019, after transfer to the MDL on June 5, 2018. *See City of Winston-Salem v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45658-DAP, ECF No. 6. Unlike many other plaintiffs, Winston-Salem City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Winston-Salem City's deadline to amend was in 2019. Winston-Salem City waited five years after

its deadline to amend to seek leave to assert claims against the PBMs. Winston-Salem City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Winston-Salem City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Winston-Salem City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Winston-Salem City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Winston-Salem City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.04% market share for Winston-Salem City). That insignificant dispensing volume is much too low to support a finding of good cause for Winston-Salem City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Winston-Salem City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Winston-Salem City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Winston-Salem City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Winston-Salem City of the PBM services Express Scripts provides and Winston-Salem City began receiving those services on July 3, 2007. *See id.* Inasmuch as Winston-Salem City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Winston-Salem City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Winston-Salem City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winston-Salem City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winston-Salem City, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winston-Salem City's proposed RICO claim against the PBMs has expired. Winston-Salem City filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Winston-Salem v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45658-DAP, ECF No. 1. It is therefore indisputable that Winston-Salem City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Winston-Salem City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winston-Salem City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Winston-Salem City, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 579. *Craven County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45660-DAP: Plaintiff Craven County, North Carolina

Craven County's untimely motion for leave to amend should be denied for several reasons. Craven County failed to provide notice of its proposed amendments through a proposed complaint. Craven County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Craven County's motion should be denied due to futility, as Craven County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Craven County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Craven County amended its complaint on March 11, 2019, after transfer to the MDL on June 5, 2018. *See Craven County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45660-DAP, ECF No. 5. Unlike many other plaintiffs, Craven County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Craven County's deadline to amend was in 2019. Craven County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Craven County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Craven County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Craven County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Craven County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Craven County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Craven County). That insignificant dispensing volume is much too low to support a finding of good cause for Craven County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Craven County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Craven County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Craven County's proposed RICO claim against the PBMs has expired. Craven County filed its original complaint on May 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Craven County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45660-DAP, ECF No. 1. It is therefore indisputable that Craven County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Craven County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Craven County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Craven County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

580. ***Knox County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45665-DAP: Plaintiff Knox County, Ohio**

Knox County's untimely motion for leave to amend should be denied for several reasons. Knox County failed to provide notice of its proposed amendments through a proposed complaint. Knox County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Knox County's motion should be denied due to futility, as Knox County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Knox County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Knox County amended its complaint on March 6, 2019, after transfer to the MDL on June 6, 2018. *See Knox County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45665-DAP, ECF No. 25. Unlike many other plaintiffs, Knox County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Knox County's deadline to amend was in 2019. Knox County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Knox County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Knox County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Knox County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Knox County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Knox County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Knox County). That insignificant dispensing volume is much too low to support a finding of good cause for Knox County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Knox County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Knox County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Knox County is a plaintiff in Ohio. Knox County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Knox County's proposed RICO claim against the PBMs has expired. Knox County filed its original complaint on May 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Knox County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45665-DAP, ECF No. 1. It is therefore indisputable that Knox County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Knox County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Knox County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

2231

**Plaintiff Lacks Standing.** Knox County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **581.** ***Dallas County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45667-DAP: Plaintiff Dallas County, Alabama**

Dallas County's untimely motion for leave to amend should be denied for several reasons. Dallas County failed to provide notice of its proposed amendments through a proposed complaint. Dallas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dallas County's motion should be denied due to futility, as Dallas County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dallas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dallas County amended its complaint on March 9, 2019, after transfer to the MDL on June 6, 2018. *See Dallas County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45667-DAP, ECF No. 6. Unlike many other plaintiffs, Dallas County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Dallas County's deadline to amend was in 2019. Dallas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dallas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Dallas County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Dallas County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Dallas County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dallas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Dallas County). That insignificant dispensing volume is much too low to support a finding of good cause for Dallas County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Dallas County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dallas County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dallas County filed its original complaint on May 14, 2018. *See Dallas County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45667-DAP, ECF No. 1. Despite filing its case years ago, Dallas County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Dallas County's case would force the parties and the Court to waste time and resources ascertaining the extent of Dallas County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dallas County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dallas County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Dallas County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Dallas County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Dallas County of this deficiency on September 16, 2024 (*see* Exhibit B), but Dallas County refused to amend or supplement its Fact Sheet. Under this Court's orders, Dallas County's case is

therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dallas County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Dallas County's potential claims against them. Dallas County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dallas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dallas County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dallas County's proposed RICO claim against the PBMs has expired. Dallas County filed its original complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Dallas County, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45667-DAP, ECF No. 1. It is therefore indisputable that Dallas County knew of its RICO injury, at the very latest, the day it

filed a complaint asserting a RICO claim, six years before seeking leave to amend. Dallas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dallas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Dallas County's public-nuisance claim against the PBMs is therefore time-barred because Dallas County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 14, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Dallas County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Dallas County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

582.    ***Shelby County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45668-DAP: Plaintiff Shelby County, Ohio***

Shelby County's untimely motion for leave to amend should be denied for several reasons. Shelby County failed to provide notice of its proposed amendments through a proposed complaint. Shelby County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Shelby County's motion should be denied due to futility, as Shelby County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Shelby County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Shelby County amended its complaint on March 14, 2019, after transfer to the MDL on June 6, 2018. *See Shelby County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45668-DAP, ECF No. 23. Unlike many other plaintiffs, Shelby County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Shelby County's deadline to amend was in 2019. Shelby County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Shelby County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Shelby County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Shelby County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Shelby County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Shelby County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Shelby County). That insignificant dispensing volume is much too low to support a finding of good cause for Shelby County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Shelby County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Shelby County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shelby County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shelby County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Shelby County is a plaintiff in Ohio. Shelby County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Shelby County's proposed RICO claim against the PBMs has expired. Shelby County filed its original complaint on May 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Shelby County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45668-DAP, ECF No. 1. It is therefore indisputable that Shelby County knew

of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Shelby County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shelby County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Shelby County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 583.    *County of Osceola v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45669-DAP: Plaintiff Osceola County, Florida

Osceola County's untimely motion for leave to amend should be denied for several reasons. Osceola County failed to provide notice of its proposed amendments through a proposed complaint. Osceola County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Osceola County's motion should be denied due to futility, as Osceola County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Osceola County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Osceola County amended its complaint on March 18, 2019, after transfer to the MDL on June 6, 2018. *See County of Osceola v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45669-DAP, ECF

No. 37. Unlike many other plaintiffs, Osceola County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Osceola County's deadline to amend was in 2019. Osceola County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Osceola County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Osceola County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Osceola County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Osceola County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Osceola County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.14% market share for Osceola County). That insignificant dispensing volume is much too low to support a finding of good cause for Osceola County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Osceola County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Osceola County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Osceola County filed its original complaint on November 20, 2017, but waited until February 22, 2018 to implement a litigation hold. *See County of Osceola v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45669-DAP, ECF No. 2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 22, 2018). Osceola County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Osceola County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Osceola County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** Osceola County previously filed an opioid case outside the MDL against the PBMs on March 17, 2023. *See Palm Beach County et al. v. Mylan Pharms., Inc. et al.*, Case No. 9:23-cv-80431 (S.D. Fla.), ECF No. 1. Osceola County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 199, 200, 202, 203. By suing the PBMs outside the MDL in 2023, Osceola County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Osceola County's proposed RICO claim against the PBMs has expired. Osceola County filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Osceola v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45669-DAP, ECF No. 37. It is therefore indisputable that Osceola County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Osceola County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Osceola County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Osceola County's public-nuisance claim against the PBMs is therefore time-barred because Osceola County sought leave to amend its complaint on July 29, 2024—nearly seven years after filing its original complaint on November 20, 2017—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Osceola County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 584. *Wilkinson County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45671-DAP: Plaintiff Wilkinson County, Georgia

Wilkinson County's untimely motion for leave to amend should be denied for several reasons. Wilkinson County failed to provide notice of its proposed amendments through a proposed complaint. Wilkinson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wilkinson County's motion should be denied due to futility, as Wilkinson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wilkinson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wilkinson County amended its complaint on March 12, 2019, after transfer to the MDL on June 7, 2018. *See Wilkinson County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45671-DAP, ECF No. 5. Unlike many other plaintiffs, Wilkinson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wilkinson County's deadline to amend was in 2019. Wilkinson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wilkinson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wilkinson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wilkinson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wilkinson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wilkinson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Wilkinson County). That insignificant dispensing volume is much too low to support a finding of good cause for Wilkinson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Wilkinson County violated its basic duty to implement a timely litigation hold. Wilkinson County filed its original complaint on May 16, 2018, but waited until April 15, 2022 to implement a litigation hold—nearly four years later. *See Wilkinson County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45671-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: April 15, 2022). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Wilkinson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wilkinson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wilkinson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wilkinson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL

6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wilkinson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wilkinson County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wilkinson County's proposed RICO claim against the PBMs has expired. Wilkinson County filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wilkinson County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45671-DAP, ECF No. 1. It is therefore indisputable that Wilkinson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wilkinson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wilkinson County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wilkinson County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 585. *Monroe County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45672-DAP: Plaintiff Monroe County, Georgia

Monroe County's untimely motion for leave to amend should be denied for several reasons. Monroe County failed to provide notice of its proposed amendments through a proposed complaint. Monroe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Monroe County's motion should be denied due to futility, as Monroe County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Monroe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Monroe County amended its complaint on March 12, 2019, after transfer to the MDL on June 7, 2018. *See Monroe County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45672-DAP, ECF No. 5. Unlike many other plaintiffs, Monroe County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Monroe County's deadline to amend was in 2019. Monroe County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Monroe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Monroe County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Monroe County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Monroe County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Monroe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Monroe County). That insignificant dispensing volume is much too low to support a finding of good cause for Monroe County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Monroe County violated its basic duty to implement a timely litigation hold. Monroe County filed its original complaint on May 16, 2018, but waited until March 19, 2019 to implement a litigation hold—ten months later. *See Monroe County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45672-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: March 19, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Monroe County's case would force the parties and the Court to waste time and resources ascertaining the extent of Monroe County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Monroe County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Monroe County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Monroe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Monroe County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Monroe County's proposed RICO claim against the PBMs has expired. Monroe County filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Monroe County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45672-DAP, ECF No. 1. It is therefore indisputable that Monroe County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Monroe County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Monroe County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Monroe County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

586. ***Town of Watertown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45674-DAP: Plaintiff Watertown Town City, Massachusetts**

Watertown Town City's untimely motion for leave to amend should be denied for several reasons. Watertown Town City failed to provide notice of its proposed amendments through a proposed complaint. Watertown Town City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Watertown Town City's motion should be denied due to

futility, as Watertown Town City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Watertown Town City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Watertown Town City amended its complaint on March 7, 2019, after transfer to the MDL on June 7, 2018. *See Town of Watertown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45674-DAP, ECF No. 9. Unlike many other plaintiffs, Watertown Town City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Watertown Town City's deadline to amend was in 2019. Watertown Town City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Watertown Town City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Watertown Town City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Watertown Town City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the

PBMs much earlier. Watertown Town City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Watertown Town City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Watertown Town City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Watertown Town City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Watertown Town City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Watertown Town City filed its original complaint on May 14, 2018. *See Town of Watertown v. Amerisourcebergen Drug Corporation et*

*al.*, Case No. 1:18-op-45674-DAP, ECF No. 1. Despite filing its case years ago, Watertown Town City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Watertown Town City's case would force the parties and the Court to waste time and resources ascertaining the extent of Watertown Town City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Watertown Town City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Watertown Town City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Watertown Town City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Watertown Town City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Watertown Town City's proposed RICO claim against the PBMs has expired. Watertown Town City filed its original

complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Watertown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45674-DAP, ECF No. 1. It is therefore indisputable that Watertown Town City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Watertown Town City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Watertown Town City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Watertown Town City's public-nuisance claim against the PBMs is therefore time-barred because Watertown Town City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 14, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Watertown Town City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

587. ***Town of Plymouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45675-DAP: Plaintiff Plymouth Town, Massachusetts**

Plymouth Town's untimely motion for leave to amend should be denied for several reasons. Plymouth Town failed to provide notice of its proposed amendments through a proposed complaint. Plymouth Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Plymouth Town's motion should be denied due to futility, as Plymouth Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Plymouth Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Plymouth Town amended its complaint on March 8, 2019, after transfer to the MDL on June 7, 2018. *See Town of Plymouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45675-DAP, ECF No. 9. Unlike many other plaintiffs, Plymouth Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Plymouth Town's deadline to amend was in 2019. Plymouth Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Plymouth Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Plymouth Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Plymouth Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Plymouth Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Plymouth Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Plymouth Town). That insignificant dispensing volume is much too low to support a finding of good cause for Plymouth Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Plymouth Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Plymouth Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Plymouth Town filed its original complaint on May 14, 2018. *See Town of Plymouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45675-DAP, ECF No. 1. Despite filing its case years ago, Plymouth Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Plymouth Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Plymouth Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Plymouth Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Plymouth Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Plymouth Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Plymouth Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Plymouth Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Plymouth Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Plymouth Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute.

ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Plymouth Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Plymouth Town's potential claims against them. Plymouth Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Plymouth Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Plymouth Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Plymouth Town's proposed RICO claim against the PBMs has expired. Plymouth Town filed its original complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Plymouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45675-DAP, ECF No. 1. It is therefore indisputable that Plymouth Town knew of its RICO injury, at the

very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Plymouth Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Plymouth Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Plymouth Town's public-nuisance claim against the PBMs is therefore time-barred because Plymouth Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 14, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Plymouth Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

588. ***Town of Acushnet, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45676-DAP: Plaintiff Acushnet Town, Massachusetts**

Acushnet Town's untimely motion for leave to amend should be denied for several reasons. Acushnet Town failed to provide notice of its proposed amendments through a proposed complaint. Acushnet Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet,

and because its untimely motion would unduly prejudice the PBMs. Moreover, Acushnet Town's motion should be denied due to futility, as Acushnet Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Acushnet Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Acushnet Town amended its complaint on March 6, 2019, after transfer to the MDL on June 7, 2018. *See Town of Acushnet, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45676-DAP, ECF No. 9. Unlike many other plaintiffs, Acushnet Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Acushnet Town's deadline to amend was in 2019. Acushnet Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Acushnet Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Acushnet Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Acushnet Town, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Acushnet Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Acushnet Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Acushnet Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Acushnet Town filed its original complaint on May 16, 2018. *See Town of Acushnet, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45676-DAP, ECF No. 1. Despite filing its case years ago, Acushnet Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Acushnet Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Acushnet Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Acushnet Town's disregard for its most basic discovery obligations as a

litigant, compounded by the delay in seeking leave to amend, and Acushnet Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Acushnet Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Acushnet Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Acushnet Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Acushnet Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Acushnet Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Acushnet Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Acushnet Town's potential claims against them. Acushnet Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Acushnet Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Acushnet Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Acushnet Town's proposed RICO claim against the PBMs has expired. Acushnet Town filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Acushnet, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45676-DAP, ECF No. 1. It is therefore indisputable that Acushnet Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Acushnet Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Acushnet Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Acushnet Town's public-nuisance claim against the PBMs is therefore time-barred because Acushnet Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Acushnet Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 589. *City of Amesbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45678-DAP: Plaintiff Amesbury Town City, Massachusetts

Amesbury Town City's untimely motion for leave to amend should be denied for several reasons. Amesbury Town City failed to provide notice of its proposed amendments through a proposed complaint. Amesbury Town City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Amesbury Town City's motion should be denied due to futility, as Amesbury Town City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Amesbury Town City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Amesbury Town City amended its complaint on March 6, 2019, after transfer to the MDL on June 7, 2018. *See City of Amesbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45678-DAP, ECF No. 11. Unlike many other plaintiffs, Amesbury Town City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Amesbury Town City's deadline to amend was in 2019. Amesbury Town City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Amesbury Town City's

lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Amesbury Town City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Amesbury Town City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Amesbury Town City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Amesbury Town City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Amesbury Town City). That insignificant dispensing

volume is much too low to support a finding of good cause for Amesbury Town City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Amesbury Town City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Amesbury Town City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Amesbury Town City filed its original complaint on May 16, 2018. *See City of Amesbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45678-DAP, ECF No. 1. Despite filing its case years ago, Amesbury Town City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Amesbury Town City's case would force the parties and the Court to waste time and resources ascertaining the extent of Amesbury Town City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Amesbury Town City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Amesbury Town City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Amesbury Town City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Amesbury Town City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Amesbury Town City's proposed RICO claim against the PBMs has expired. Amesbury Town City filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Amesbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45678-DAP, ECF No. 1. It is therefore indisputable that Amesbury Town City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Amesbury Town City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Amesbury Town City's request for leave to

amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Amesbury Town City's public-nuisance claim against the PBMs is therefore time-barred because Amesbury Town City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Amesbury Town City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 590. *County of Tehama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45680-DAP: Plaintiff Tehama County, California

Tehama County's untimely motion for leave to amend should be denied for several reasons. Tehama County failed to provide notice of its proposed amendments through a proposed complaint. Tehama County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Tehama County's motion should be denied due to futility, as Tehama County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tehama County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Tehama County filed its original complaint on May 14, 2018 and the case was transferred to the MDL on June 7, 2018. *See County of Tehama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45680-DAP, ECF No. 9. Tehama County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Tehama County elected not to do so. Instead, Tehama County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tehama County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Tehama County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Tehama County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tehama County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tehama County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.22% market share for Tehama County). That insignificant dispensing volume is much too low to support a finding of good cause for Tehama County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Tehama County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tehama County's proposed RICO claim against the PBMs has expired. Tehama County filed its original complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Tehama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45680-DAP, ECF No. 1. It is therefore indisputable that Tehama County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tehama County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tehama County's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tehama County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 591. *Dare County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45683-DAP: Plaintiff Dare County, North Carolina

Dare County's untimely motion for leave to amend should be denied for several reasons. Dare County failed to provide notice of its proposed amendments through a proposed complaint. Dare County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Dare County's motion should be denied due to futility, as Dare County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dare County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dare County amended its complaint on March 11, 2019, after transfer to the MDL on June 11, 2018. *See Dare County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45683-DAP, ECF No. 8. Unlike many other plaintiffs, Dare County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Dare County's deadline to amend was in 2019. Dare County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dare County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Dare County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Dare County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Dare County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dare County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Dare County). That insignificant dispensing volume is much too low to support a finding of good cause for Dare County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dare County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dare County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dare County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dare County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dare County's proposed RICO claim against the PBMs has expired. Dare County filed its original complaint on May 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Dare County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45683-DAP, ECF No. 1. It is therefore indisputable that Dare County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Dare County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dare County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dare County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 592. *City of Wilmington v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45684-DAP: Plaintiff Wilmington City, North Carolina

Wilmington City's untimely motion for leave to amend should be denied for several reasons. Wilmington City failed to provide notice of its proposed amendments through a proposed complaint. Wilmington City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wilmington City's motion should be denied due to futility, as Wilmington City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wilmington City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wilmington City amended its complaint on March 15, 2019, after transfer to the MDL on June 11, 2018. *See City of Wilmington v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45684-DAP, ECF No. 7. Unlike many other plaintiffs, Wilmington City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wilmington City's deadline

to amend was in 2019. Wilmington City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wilmington City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wilmington City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wilmington City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wilmington City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wilmington City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.06% market share for Wilmington City). That insignificant dispensing volume is much too low to support a finding of good cause for Wilmington City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wilmington City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wilmington City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wilmington City filed its original complaint on May 16, 2018. *See City of Wilmington v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45684-DAP, ECF No. 1. Despite filing its case years ago, Wilmington City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Wilmington City's case would force the parties and the Court to waste time and resources ascertaining the extent of Wilmington City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wilmington City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wilmington City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wilmington City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wilmington City, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wilmington City's proposed RICO claim against the PBMs has expired. Wilmington City filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Wilmington v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45684-DAP, ECF No. 1. It is therefore indisputable that Wilmington City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wilmington City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wilmington City's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wilmington City, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 593. *Alachua County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45685-DAP: Plaintiff Alachua County, Florida

Alachua County's untimely motion for leave to amend should be denied for several reasons. Alachua County failed to provide notice of its proposed amendments through a proposed complaint. Alachua County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alachua County's motion should be denied due to futility, as Alachua County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alachua County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Alachua County amended its complaint on March 18, 2019, after transfer to the MDL on June 11, 2018. *See Alachua County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45685-DAP, ECF No. 15. Unlike many other plaintiffs, Alachua County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Alachua County's deadline to amend was in 2019. Alachua County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Alachua County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the

scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Alachua County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Alachua County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Alachua County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alachua County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Alachua County). That insignificant dispensing volume is much too low to support a finding of good cause for Alachua County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alachua County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Alachua County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Alachua County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Alachua County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Alachua County of this deficiency on September 16, 2024 (*see* Exhibit B), but Alachua County refused to amend or supplement its Fact Sheet. Under this Court's orders, Alachua County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Alachua County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Alachua County's potential claims against them. Alachua County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alachua County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Alachua County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** Alachua County previously filed an opioid case outside the MDL against the PBMs on March 17, 2023. *See Palm Beach County et al. v. Mylan Pharms., Inc. et al.*, Case No. 9:23-cv-80431 (S.D. Fla.), ECF No. 1. Alachua County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 199, 200, 202, 203. By suing the PBMs outside the MDL in 2023, Alachua County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at \*4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Alachua County's proposed RICO claim against the PBMs has expired. Alachua County filed its amended complaint on May 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Alachua County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45685-DAP, ECF No. 15. It is therefore indisputable that Alachua County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Alachua County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Alachua County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Alachua County's public-nuisance claim against the PBMs is therefore time-barred because Alachua County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on January 30, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Alachua County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

594. ***Town of Southbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45686-DAP: Plaintiff Southbridge Town City, Massachusetts**

Southbridge Town City's untimely motion for leave to amend should be denied for several reasons. Southbridge Town City failed to provide notice of its proposed amendments through a proposed complaint. Southbridge Town City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Southbridge Town City's motion should be denied due to futility, as Southbridge Town City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is

barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Southbridge Town City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Southbridge Town City amended its complaint on March 8, 2019, after transfer to the MDL on June 11, 2018. *See Town of Southbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45686-DAP, ECF No. 8. Unlike many other plaintiffs, Southbridge Town City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Southbridge Town City's deadline to amend was in 2019. Southbridge Town City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Southbridge Town City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Southbridge Town City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Southbridge Town City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Southbridge Town City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of

other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Southbridge Town City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Southbridge Town City). That insignificant dispensing volume is much too low to support a finding of good cause for Southbridge Town City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Southbridge Town City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Southbridge Town City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Southbridge Town City filed its original complaint on May 14, 2018. *See Town of Southbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45686-DAP, ECF No. 1. Despite filing its case years ago, Southbridge Town City *never* implemented a litigation hold and is instead purporting to rely on non-specific and

unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Southbridge Town City's case would force the parties and the Court to waste time and resources ascertaining the extent of Southbridge Town City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Southbridge Town City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Southbridge Town City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Southbridge Town City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Southbridge Town City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Southbridge Town City's proposed RICO claim against the PBMs has expired. Southbridge Town City filed its original

complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Southbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45686-DAP, ECF No. 1. It is therefore indisputable that Southbridge Town City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Southbridge Town City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Southbridge Town City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Southbridge Town City's public-nuisance claim against the PBMs is therefore time-barred because Southbridge Town City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 14, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Southbridge Town City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

595. *Town of Winchendon Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45687-DAP: Plaintiff Winchendon Town, Massachusetts**

Winchendon Town's untimely motion for leave to amend should be denied for several reasons. Winchendon Town failed to provide notice of its proposed amendments through a proposed complaint. Winchendon Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winchendon Town's motion should be denied due to futility, as Winchendon Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winchendon Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Winchendon Town amended its complaint on March 8, 2019, after transfer to the MDL on June 11, 2018. *See Town of Winchendon Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45687-DAP, ECF No. 8. Unlike many other plaintiffs, Winchendon Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Winchendon Town's deadline to amend was in 2019. Winchendon Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Winchendon Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Winchendon Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Winchendon Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Winchendon Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Winchendon Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Winchendon Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Winchendon Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Winchendon Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winchendon Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winchendon Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winchendon Town's proposed RICO claim against the PBMs has expired. Winchendon Town filed its original complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Winchendon Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45687-DAP, ECF No. 1. It is therefore indisputable that Winchendon Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Winchendon Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other

elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winchendon Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Winchendon Town's public-nuisance claim against the PBMs is therefore time-barred because Winchendon Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 14, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Winchendon Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **596.** ***Town of Auburn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45688-DAP: Plaintiff Auburn Town, Massachusetts**

Auburn Town's untimely motion for leave to amend should be denied for several reasons. Auburn Town failed to provide notice of its proposed amendments through a proposed complaint. Auburn Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Auburn Town's motion should be denied due to futility, as Auburn Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its

RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Auburn Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Auburn Town amended its complaint on March 6, 2019, after transfer to the MDL on June 11, 2018. *See Town of Auburn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45688-DAP, ECF No. 8. Unlike many other plaintiffs, Auburn Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Auburn Town's deadline to amend was in 2019. Auburn Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Auburn Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Auburn Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Auburn Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Auburn Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Auburn Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Auburn Town). That insignificant dispensing volume is much too low to support a finding of good cause for Auburn Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Auburn Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Auburn Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Auburn Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Auburn Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Auburn Town's proposed RICO claim against the PBMs has expired. Auburn Town filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Auburn v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45688-DAP, ECF No. 1. It is therefore indisputable that Auburn Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Auburn Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Auburn Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Auburn Town's public-nuisance claim against the PBMs is therefore time-barred because Auburn Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new

party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Auburn Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 597. *Town of Charlton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45689-DAP: Plaintiff Charlton Town, Massachusetts

Charlton Town's untimely motion for leave to amend should be denied for several reasons. Charlton Town failed to provide notice of its proposed amendments through a proposed complaint. Charlton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Charlton Town's motion should be denied due to futility, as Charlton Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Charlton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Charlton Town amended its complaint on March 8, 2019, after transfer to the MDL on June 11, 2018. *See Town of Charlton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45689-DAP, ECF No. 8. Unlike many other plaintiffs, Charlton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Charlton Town's deadline to amend was in 2019. Charlton Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Charlton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Charlton Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Charlton Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Charlton Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Charlton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Charlton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Charlton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Charlton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Charlton Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Charlton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Charlton Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Charlton Town's proposed RICO claim against the PBMs has expired. Charlton Town filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Charlton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45689-DAP, ECF No. 1. It is therefore indisputable that Charlton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Charlton Town's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Charlton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Charlton Town's public-nuisance claim against the PBMs is therefore time-barred because Charlton Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Charlton Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 598. *City of Prichard, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45690-DAP: Plaintiff Prichard City, Alabama

Prichard City's untimely motion for leave to amend should be denied for several reasons. Prichard City failed to provide notice of its proposed amendments through a proposed complaint. Prichard City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Prichard City's motion should be denied due to futility, as Prichard City does not assert any allegations tying the PBMs to its alleged

harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Prichard City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Prichard City amended its complaint on March 18, 2019, after transfer to the MDL on June 11, 2018. *See City of Prichard, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45690-DAP, ECF No. 4. Unlike many other plaintiffs, Prichard City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Prichard City's deadline to amend was in 2019. Prichard City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Prichard City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Prichard City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Prichard City). That insignificant dispensing volume is much too low to support a finding of good cause for Prichard City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Prichard City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Prichard City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Prichard City filed its original complaint on May 16, 2018. *See City of Prichard, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45690-DAP, ECF No. 1. Despite filing its case years ago, Prichard City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Prichard City's case would force the parties and the Court to waste time and resources ascertaining the extent of Prichard City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Prichard City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Prichard City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Prichard City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Prichard City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Prichard City of this deficiency on September 16, 2024 (*see* Exhibit B), but Prichard City

refused to amend or supplement its Fact Sheet. Under this Court's orders, Prichard City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Prichard City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Prichard City's potential claims against them. Prichard City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Prichard City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Prichard City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Prichard City's proposed RICO claim against the PBMs has expired. Prichard City filed its original complaint on May 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Prichard, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45690-DAP, ECF No.

1. It is therefore indisputable that Prichard City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Prichard City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Prichard City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Prichard City's public-nuisance claim against the PBMs is therefore time-barred because Prichard City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Prichard City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

599. ***Town of Carver v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45691-DAP: Plaintiff Carver Town, Massachusetts**

Carver Town's untimely motion for leave to amend should be denied for several reasons. Carver Town failed to provide notice of its proposed amendments through a proposed complaint. Carver Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carver Town's motion should be denied due to futility, as Carver Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carver Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carver Town amended its complaint on March 6, 2019, after transfer to the MDL on June 11, 2018. *See Town of Carver v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45691-DAP, ECF No. 10. Unlike many other plaintiffs, Carver Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Carver Town's deadline to amend was in 2019. Carver Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carver Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Carver Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Carver Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Carver Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carver Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Carver Town). That insignificant dispensing volume is much too low to support a finding of good cause for Carver Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Carver Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Carver Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Carver Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Carver Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs

notified Carver Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Carver Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Carver Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Carver Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Carver Town's potential claims against them. Carver Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carver Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carver Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carver Town's proposed RICO claim against the PBMs has expired. Carver Town filed its original complaint on May 17,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Carver v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45691-DAP, ECF No. 1. It is therefore indisputable that Carver Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Carver Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carver Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Carver Town's public-nuisance claim against the PBMs is therefore time-barred because Carver Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Carver Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**600.** *City of Chelsea v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45693-DAP: Plaintiff Chelsea City, Massachusetts**

Chelsea City's untimely motion for leave to amend should be denied for several reasons. Chelsea City failed to provide notice of its proposed amendments through a proposed complaint. Chelsea City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chelsea City's motion should be denied due to futility, as Chelsea City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chelsea City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chelsea City amended its complaint on March 6, 2019, after transfer to the MDL on June 11, 2018. *See City of Chelsea v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45693-DAP, ECF No. 12. Unlike many other plaintiffs, Chelsea City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Chelsea City's deadline to amend was in 2019. Chelsea City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chelsea City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Chelsea City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Chelsea City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Chelsea City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chelsea City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Chelsea City). That insignificant dispensing volume is much too low to support a finding of good cause for Chelsea City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chelsea City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Chelsea City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Chelsea City filed its original complaint on May 17, 2018. *See City of Chelsea v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45693-DAP, ECF No. 1. Despite filing its case years ago, Chelsea City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chelsea City's case would force the parties and the Court to waste time and resources ascertaining the extent of Chelsea City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chelsea City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chelsea City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chelsea City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chelsea City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chelsea City's proposed RICO claim against the PBMs has expired. Chelsea City filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Chelsea v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45693-DAP, ECF No. 1. It is therefore indisputable that Chelsea City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Chelsea City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chelsea City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Chelsea City's public-nuisance claim against the PBMs is therefore time-barred because Chelsea City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new

party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Chelsea City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 601. *City of Holyoke v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45694-DAP: Plaintiff Holyoke City, Massachusetts

Holyoke City's untimely motion for leave to amend should be denied for several reasons. Holyoke City failed to provide notice of its proposed amendments through a proposed complaint. Holyoke City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Holyoke City's motion should be denied due to futility, as Holyoke City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Holyoke City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Holyoke City amended its complaint on March 6, 2019, after transfer to the MDL on June 11, 2018. *See City of Holyoke v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45694-DAP, ECF No. 9. Unlike many other plaintiffs, Holyoke City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Holyoke City's deadline to amend was in 2019. Holyoke City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Holyoke City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Holyoke City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Holyoke City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Holyoke City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Holyoke City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Holyoke City). That insignificant dispensing volume is much too low to support a finding of good cause for Holyoke City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Holyoke City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Holyoke City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Holyoke City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Holyoke City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Holyoke City of this deficiency on September 16, 2024 (*see* Exhibit B), but Holyoke City refused to amend or supplement its Fact Sheet. Under this Court's orders, Holyoke City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Holyoke City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Holyoke City's potential claims against them. Holyoke City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Holyoke City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Holyoke City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Holyoke City's proposed RICO claim against the PBMs has expired. Holyoke City filed its original complaint on May 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Holyoke v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45694-DAP, ECF No. 1. It is therefore indisputable that Holyoke City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Holyoke City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Holyoke City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Holyoke City's public-nuisance claim against the PBMs is therefore time-barred because Holyoke City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 14, 2018—and the proposed amendment

does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Holyoke City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 602. *Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45696-DAP: Plaintiff Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation, Nevada

Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's untimely motion for leave to amend should be denied for several reasons. Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation failed to provide notice of its proposed amendments through a proposed complaint. Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's motion should be denied due to futility, as Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation amended its complaint on August 12, 2019, after directly filing in the MDL. *See*

*Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45696-DAP, ECF No. 28. Unlike many other plaintiffs, Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's deadline to amend was in 2019. Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation filed its original complaint on June 8, 2018. *See Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45696-DAP, ECF No. 1. Despite filing its case years ago, Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Pyramid

Lake Paiute Tribe of the Pyramid Lake Reservation's case would force the parties and the Court to waste time and resources ascertaining the extent of Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation, a native tribe in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's proposed RICO claim against the PBMs has expired. Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation filed its original complaint on June 8, 2018,

alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45696-DAP, ECF No. 1. It is therefore indisputable that Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation, a native tribe in Nevada, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 603. *Paiute-Shoshone Tribe of the Fallon Reservation and Colony v. McKesson Corporation et al.*, **Case No. 1:18-op-45697-DAP: Plaintiff Paiute-Shoshone Tribe of the Fallon Reservation and Colony, Nevada**

Paiute-Shoshone Tribe of the Fallon Reservation and Colony's untimely motion for leave to amend should be denied for several reasons. Paiute-Shoshone Tribe of the Fallon Reservation and Colony failed to provide notice of its proposed amendments through a proposed complaint. Paiute-Shoshone Tribe of the Fallon Reservation and Colony also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Paiute-Shoshone Tribe of the Fallon Reservation and Colony's motion should be denied due to futility, as Paiute-Shoshone Tribe

of the Fallon Reservation and Colony does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Paiute-Shoshone Tribe of the Fallon Reservation and Colony was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Paiute-Shoshone Tribe of the Fallon Reservation and Colony amended its complaint on August 12, 2019, after directly filing in the MDL. *See Paiute-Shoshone Tribe of the Fallon Reservation and Colony v. McKesson Corporation et al.*, Case No. 1:18-op-45697-DAP, ECF No. 28. Unlike many other plaintiffs, Paiute-Shoshone Tribe of the Fallon Reservation and Colony declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Paiute-Shoshone Tribe of the Fallon Reservation and Colony's deadline to amend was in 2019. Paiute-Shoshone Tribe of the Fallon Reservation and Colony waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Paiute-Shoshone Tribe of the Fallon Reservation and Colony's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Paiute-Shoshone Tribe of the Fallon Reservation and Colony's geographic

jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Paiute-Shoshone Tribe of the Fallon Reservation and Colony to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Paiute-Shoshone Tribe of the Fallon Reservation and Colony filed its original complaint on June 8, 2018. *See Paiute-Shoshone Tribe of the Fallon Reservation and Colony v. McKesson Corporation et al.*, Case No. 1:18-op-45697-DAP, ECF No. 1. Despite filing its case years ago, Paiute-Shoshone Tribe of the Fallon Reservation and Colony *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Paiute-Shoshone Tribe of the Fallon Reservation and Colony's case would force the parties and the Court to waste time and resources ascertaining the extent of Paiute-Shoshone Tribe of the Fallon Reservation and Colony's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Paiute-Shoshone Tribe of the Fallon Reservation and Colony's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Paiute-Shoshone Tribe of the Fallon Reservation and Colony therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Paiute-Shoshone Tribe of the Fallon Reservation and Colony's delay in seeking to amend its complaint has impaired the PBMs'

ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Paiute-Shoshone Tribe of the Fallon Reservation and Colony, a native tribe in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Paiute-Shoshone Tribe of the Fallon Reservation and Colony's proposed RICO claim against the PBMs has expired. Paiute-Shoshone Tribe of the Fallon Reservation and Colony filed its original complaint on June 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Paiute-Shoshone Tribe of the Fallon Reservation and Colony v. McKesson Corporation et al.*, Case No. 1:18-op-45697-DAP, ECF No. 1. It is therefore indisputable that Paiute-Shoshone Tribe of the Fallon Reservation and Colony knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Paiute-Shoshone Tribe of the Fallon Reservation and Colony's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Paiute-Shoshone Tribe of the Fallon Reservation and Colony's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Paiute-Shoshone Tribe of the Fallon Reservation and Colony, a native tribe in Nevada, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **604.** ***Walker River Paiute Tribe of The Walker River Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45698-DAP: Plaintiff Walker River Paiute Tribe of The Walker River Reservation, Nevada**

Walker River Paiute Tribe of The Walker River Reservation's untimely motion for leave to amend should be denied for several reasons. Walker River Paiute Tribe of The Walker River Reservation failed to provide notice of its proposed amendments through a proposed complaint. Walker River Paiute Tribe of The Walker River Reservation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Walker River Paiute Tribe of The Walker River Reservation's motion should be denied due to futility, as Walker River Paiute Tribe of The Walker River Reservation does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Walker River Paiute Tribe of The Walker River Reservation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Walker River Paiute Tribe of The Walker River Reservation amended its complaint on August 12, 2019, after directly filing in the MDL. *See Walker River Paiute Tribe of The Walker River Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45698-DAP, ECF No. 28. Unlike many other plaintiffs, Walker River Paiute Tribe of The Walker River Reservation declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Walker River Paiute Tribe of The Walker River Reservation's deadline

to amend was in 2019. Walker River Paiute Tribe of The Walker River Reservation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Walker River Paiute Tribe of The Walker River Reservation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Walker River Paiute Tribe of The Walker River Reservation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Walker River Paiute Tribe of The Walker River Reservation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Walker River Paiute Tribe of The Walker River Reservation filed its original complaint on June 8, 2018. *See Walker River Paiute Tribe of The Walker River Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45698-DAP, ECF No. 1. Despite filing its case years ago, Walker River Paiute Tribe of The Walker River Reservation *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Walker

River Paiute Tribe of The Walker River Reservation's case would force the parties and the Court to waste time and resources ascertaining the extent of Walker River Paiute Tribe of The Walker River Reservation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Walker River Paiute Tribe of The Walker River Reservation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Walker River Paiute Tribe of The Walker River Reservation therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Walker River Paiute Tribe of The Walker River Reservation's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Walker River Paiute Tribe of The Walker River Reservation, a native tribe in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Walker River Paiute Tribe of The Walker River Reservation's proposed RICO claim against the PBMs has expired. Walker River Paiute Tribe of The Walker River Reservation filed its original complaint on June 8, 2018,

alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Walker River Paiute Tribe of The Walker River Reservation v. McKesson Corporation et al.*, Case No. 1:18-op-45698-DAP, ECF No. 1. It is therefore indisputable that Walker River Paiute Tribe of The Walker River Reservation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Walker River Paiute Tribe of The Walker River Reservation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Walker River Paiute Tribe of The Walker River Reservation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Walker River Paiute Tribe of The Walker River Reservation, a native tribe in Nevada, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **605.** ***Reno-Sparks Indian Colony v. McKesson Corporation et al.*, Case No. 1:18-op-45699-DAP: Plaintiff Reno-Sparks Indian Colony, Nevada**

Reno-Sparks Indian Colony's untimely motion for leave to amend should be denied for several reasons. Reno-Sparks Indian Colony failed to provide notice of its proposed amendments through a proposed complaint. Reno-Sparks Indian Colony also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Reno-Sparks Indian Colony's motion should be denied due to futility, as Reno-Sparks Indian Colony does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the

statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Reno-Sparks Indian Colony was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Reno-Sparks Indian Colony amended its complaint on August 12, 2019, after directly filing in the MDL, as well as on August 12, 2019. *See Reno-Sparks Indian Colony v. McKesson Corporation et al.*, Case No. 1:18-op-45699-DAP, ECF Nos. 28, 29. Unlike many other plaintiffs, Reno-Sparks Indian Colony declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Reno-Sparks Indian Colony's deadline to amend was in 2019. Reno-Sparks Indian Colony waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Reno-Sparks Indian Colony's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Reno-Sparks Indian Colony's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Reno-Sparks Indian Colony to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Reno-Sparks Indian Colony filed its original complaint on June 8, 2018. *See Reno-Sparks Indian Colony v. McKesson Corporation et al.*, Case No. 1:18-op-45699-DAP, ECF No. 1. Despite filing its case years ago, Reno-Sparks Indian Colony *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Reno-Sparks Indian Colony's case would force the parties and the Court to waste time and resources ascertaining the extent of Reno-Sparks Indian Colony's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Reno-Sparks Indian Colony's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Reno-Sparks Indian Colony therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Reno-Sparks Indian Colony's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Reno-Sparks Indian Colony, a native tribe in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Reno-Sparks Indian Colony's proposed RICO claim against the PBMs has expired. Reno-Sparks Indian Colony filed its original complaint on June 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Reno-Sparks Indian Colony v. McKesson Corporation et al.*, Case No. 1:18-op-45699-DAP, ECF No. 1. It is therefore indisputable that Reno-Sparks Indian Colony knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Reno-Sparks Indian Colony's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Reno-Sparks Indian Colony's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Reno-Sparks Indian Colony, a native tribe in Nevada, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **606.** *United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust v. Cardinal Health, Inc. et al.*, **Case No. 1:18-op-45700-DAP: Plaintiff United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust, Tennessee**

United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust's untimely motion for leave to amend should be denied for several reasons. United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust failed to provide notice of its proposed amendments through a

proposed complaint. United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust's motion should be denied due to futility, as United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust filed its original complaint directly into the MDL on June 8, 2018. *See United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-45700-DAP, ECF No. 1. United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust elected not to do so. United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust waited five years after its deadline to amend to seek leave to assert claims against the PBMs. United Food and Commercial Workers Union UFCW

Local 1529 and Employers Health and Welfare Plan and Trust's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust filed its original complaint on June 8, 2018. *See United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-45700-DAP, ECF No. 1. Despite filing its case years ago, United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust's case would force the parties and the Court to waste time and resources ascertaining the extent of United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and United Food and Commercial Workers

Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust, a third party payor in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust's proposed RICO claim against the PBMs has expired. United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust filed its original complaint on June 8, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-45700-DAP,

ECF No. 1. Even assuming *arguendo* that United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 8, 2022. United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** United Food and Commercial Workers Union UFCW Local 1529 and Employers Health and Welfare Plan and Trust, a third party payor in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

607. ***City of North Adams v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45702-DAP: Plaintiff North Adams City, Massachusetts**

North Adams City's untimely motion for leave to amend should be denied for several reasons. North Adams City failed to provide notice of its proposed amendments through a proposed complaint. North Adams City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Adams City's motion should be denied due to futility, as North Adams City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred

by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Adams City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Adams City amended its complaint on March 8, 2019, after transfer to the MDL on June 12, 2018. *See City of North Adams v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45702-DAP, ECF No. 9. Unlike many other plaintiffs, North Adams City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Adams City's deadline to amend was in 2019. North Adams City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. North Adams City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** North Adams City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. North Adams City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. North Adams City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to North Adams City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for North Adams City). That insignificant dispensing volume is much too low to support a finding of good cause for North Adams City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to North Adams City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for North Adams City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Adams City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Adams City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for North Adams City's proposed RICO claim against the PBMs has expired. North Adams City filed its original complaint on May 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of North Adams v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45702-DAP, ECF No. 1. It is therefore indisputable that North Adams City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. North Adams City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Adams City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. North Adams City's public-nuisance claim against the PBMs is therefore time-barred because North Adams City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 18, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** North Adams City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

608. ***Town of Nantucket v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45703-DAP: Plaintiff Nantucket Town, Massachusetts**

Nantucket Town's untimely motion for leave to amend should be denied for several reasons. Nantucket Town failed to provide notice of its proposed amendments through a proposed complaint. Nantucket Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nantucket Town's motion should be denied due to futility, as Nantucket Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Nantucket Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nantucket Town amended its complaint on March 8, 2019, after transfer to the MDL on June 12, 2018. *See Town of Nantucket v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45703-DAP, ECF No. 9. Unlike many other plaintiffs, Nantucket Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Nantucket Town's deadline to amend was in 2019. Nantucket Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Nantucket Town's lack of diligence in pursuing its claims

negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Nantucket Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Nantucket Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Nantucket Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Nantucket Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Nantucket Town). That insignificant dispensing volume is much too low to support a finding of good cause for Nantucket Town to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Nantucket Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Nantucket Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Nantucket Town filed its original complaint on May 18, 2018. *See Town of Nantucket v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45703-DAP, ECF No. 1. Despite filing its case years ago, Nantucket Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Nantucket Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Nantucket Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Nantucket Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Nantucket Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nantucket Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nantucket Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nantucket Town's proposed RICO claim against the PBMs has expired. Nantucket Town filed its original complaint on May 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Nantucket v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45703-DAP, ECF No. 1. It is therefore indisputable that Nantucket Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Nantucket Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nantucket Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Nantucket Town's public-nuisance claim against the PBMs is therefore time-barred because Nantucket Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 18, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Nantucket Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **609.** ***Town of Hanson v. Amerisourcebergen Drug Corporation et al.***, Case No. 1:18-op-45704-DAP: Plaintiff Hanson Town, Massachusetts

Hanson Town's untimely motion for leave to amend should be denied for several reasons. Hanson Town failed to provide notice of its proposed amendments through a proposed complaint. Hanson Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hanson Town's motion should be denied due to futility, as Hanson Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hanson Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hanson Town amended its complaint on March 8, 2019, after transfer to the MDL on June 12,

2018. *See Town of Hanson v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45704-DAP, ECF No. 9. Unlike many other plaintiffs, Hanson Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hanson Town's deadline to amend was in 2019. Hanson Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hanson Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hanson Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hanson Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hanson Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Hanson Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Hanson Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hanson Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hanson Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hanson Town filed its original complaint on May 17, 2018. *See Town of Hanson v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45704-DAP, ECF No. 1. Despite filing its case years ago, Hanson Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hanson Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Hanson Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hanson Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hanson Town therefore lacks good cause

for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hanson Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hanson Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hanson Town's proposed RICO claim against the PBMs has expired. Hanson Town filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Hanson v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45704-DAP, ECF No. 1. It is therefore indisputable that Hanson Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hanson Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hanson Town's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Hanson Town's public-nuisance claim against the PBMs is therefore time-barred because Hanson Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Hanson Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **610.** ***Town of Freetown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45705-DAP: Plaintiff Freetown Town, Massachusetts**

Freetown Town's untimely motion for leave to amend should be denied for several reasons. Freetown Town failed to provide notice of its proposed amendments through a proposed complaint. Freetown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Freetown Town's motion should be denied due to futility, as Freetown Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Freetown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Freetown Town amended its complaint on March 8, 2019, after transfer to the MDL on June 12, 2018. *See Town of Freetown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45705-DAP, ECF No. 9. Unlike many other plaintiffs, Freetown Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Freetown Town's deadline to amend was in 2019. Freetown Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Freetown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Freetown Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Freetown Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Freetown Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Freetown Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Freetown Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Freetown Town filed its original complaint on May 17, 2018. *See Town of Freetown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45705-DAP, ECF No. 1. Despite filing its case years ago, Freetown Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Freetown Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Freetown Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Freetown Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Freetown Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Freetown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Freetown Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Freetown Town's proposed RICO claim against the PBMs has expired. Freetown Town filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Freetown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45705-DAP, ECF No. 1. It is therefore indisputable that Freetown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Freetown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Freetown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Freetown Town's public-nuisance claim against the PBMs is therefore time-barred because Freetown Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Freetown Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 611. *Town of Douglas v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45706-DAP: Plaintiff Douglas Town, Massachusetts

Douglas Town's untimely motion for leave to amend should be denied for several reasons. Douglas Town failed to provide notice of its proposed amendments through a proposed complaint. Douglas Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Douglas Town's motion should be denied due to futility, as Douglas Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Douglas Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Douglas Town amended its complaint on March 6, 2019, after transfer to the MDL on June 12, 2018. *See Town of Douglas v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45706-DAP, ECF No. 9. Unlike many other plaintiffs, Douglas Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Douglas Town's deadline to amend was in 2019. Douglas Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Douglas Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Douglas Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Douglas Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Douglas Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Douglas Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Douglas Town filed its original complaint on May 17, 2018. *See Town of Douglas v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45706-DAP, ECF No. 1. Despite filing its case years ago, Douglas Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never))*. This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Douglas Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Douglas Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Douglas Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Douglas Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Douglas Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Douglas Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Douglas Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Douglas Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Douglas Town's

case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Douglas Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Douglas Town's potential claims against them. Douglas Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Douglas Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Douglas Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Douglas Town's proposed RICO claim against the PBMs has expired. Douglas Town filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Douglas v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45706-DAP,

ECF No. 1. It is therefore indisputable that Douglas Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Douglas Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Douglas Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Douglas Town's public-nuisance claim against the PBMs is therefore time-barred because Douglas Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Douglas Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 612. *Town of Dudley v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45707-DAP: Plaintiff Dudley Town, Massachusetts

Dudley Town's untimely motion for leave to amend should be denied for several reasons. Dudley Town failed to provide notice of its proposed amendments through a proposed complaint. Dudley Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and

because its untimely motion would unduly prejudice the PBMs. Moreover, Dudley Town's motion should be denied due to futility, as Dudley Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dudley Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dudley Town amended its complaint on March 8, 2019, after transfer to the MDL on June 12, 2018. *See Town of Dudley v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45707-DAP, ECF No. 9. Unlike many other plaintiffs, Dudley Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Dudley Town's deadline to amend was in 2019. Dudley Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dudley Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Dudley Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Dudley Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Dudley Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dudley Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Dudley Town). That insignificant dispensing volume is much too low to support a finding of good cause for Dudley Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dudley Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dudley Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dudley Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dudley Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dudley Town's proposed RICO claim against the PBMs has expired. Dudley Town filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Dudley v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45707-DAP, ECF No. 1. It is therefore indisputable that Dudley Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Dudley Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dudley Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Dudley Town's public-nuisance claim against the PBMs is therefore time-barred because Dudley Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment

does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Dudley Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 613. *Town of Leicester v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45709-DAP: Plaintiff Leicester Town, Massachusetts

Leicester Town's untimely motion for leave to amend should be denied for several reasons. Leicester Town failed to provide notice of its proposed amendments through a proposed complaint. Leicester Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Leicester Town's motion should be denied due to futility, as Leicester Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leicester Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leicester Town amended its complaint on March 6, 2019, after transfer to the MDL on June 12, 2018. *See Town of Leicester v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45709-DAP, ECF No. 9. Unlike many other plaintiffs, Leicester Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Leicester Town's deadline to amend was in 2019. Leicester Town waited five years after its deadline to amend to seek leave

to assert claims against the PBMs. Leicester Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Leicester Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Leicester Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Leicester Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Leicester Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.20% market share for Leicester Town). That insignificant dispensing volume is much too low to support a finding of good cause for Leicester Town to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Leicester Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Leicester Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Leicester Town violated its basic duty to implement a timely litigation hold. Leicester Town filed its original complaint on May 17, 2018, but waited until September 26, 2024 to implement a litigation hold—six years and four months later. *See Town of Leicester v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45709-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 26, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Leicester Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Leicester Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leicester Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Leicester Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leicester Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leicester Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leicester Town's proposed RICO claim against the PBMs has expired. Leicester Town filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Leicester v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45709-DAP, ECF No. 1. It is therefore indisputable that Leicester Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Leicester Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leicester Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Leicester Town's public-nuisance claim against the PBMs is therefore time-barred because Leicester Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Leicester Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 614. *City of Leominster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45710-DAP: Plaintiff Leominster City, Massachusetts

Leominster City's untimely motion for leave to amend should be denied for several reasons. Leominster City failed to provide notice of its proposed amendments through a proposed complaint. Leominster City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Leominster City's motion should be denied due to futility, as Leominster City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leominster City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leominster City amended its complaint on March 11, 2019, after transfer to the MDL on June 13,

2018. *See City of Leominster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45710-DAP, ECF No. 9. Unlike many other plaintiffs, Leominster City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Leominster City's deadline to amend was in 2019. Leominster City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Leominster City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Leominster City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Leominster City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Leominster City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Leominster City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Leominster City). That insignificant dispensing volume is much too low to support a finding of good cause for Leominster City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Leominster City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Leominster City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Leominster City filed its original complaint on May 17, 2018. *See City of Leominster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45710-DAP, ECF No. 1. Despite filing its case years ago, Leominster City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Leominster City's case would force the parties and the Court to waste time and resources ascertaining the extent of Leominster City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leominster City's disregard for its most basic discovery obligations as a

litigant, compounded by the delay in seeking leave to amend, and Leominster City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leominster City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leominster City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leominster City's proposed RICO claim against the PBMs has expired. Leominster City filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Leominster v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45710-DAP, ECF No. 1. It is therefore indisputable that Leominster City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Leominster City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Leominster City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Leominster City's public-nuisance claim against the PBMs is therefore time-barred because Leominster City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Leominster City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 615. *Town of Northbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45711-DAP: Plaintiff Northbridge Town, Massachusetts

Northbridge Town's untimely motion for leave to amend should be denied for several reasons. Northbridge Town failed to provide notice of its proposed amendments through a proposed complaint. Northbridge Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Northbridge Town's motion should be denied due to futility, as Northbridge Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Northbridge Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Northbridge Town amended its complaint on March 7, 2019, after transfer to the MDL on June 13, 2018. *See Town of Northbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45711-DAP, ECF No. 8. Unlike many other plaintiffs, Northbridge Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Northbridge Town's deadline to amend was in 2019. Northbridge Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Northbridge Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Northbridge Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Northbridge Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Northbridge Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Northbridge Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Northbridge Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Northbridge Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Northbridge Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Northbridge Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Northbridge Town's proposed RICO claim against the PBMs has expired. Northbridge Town filed its original complaint on May 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Northbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45711-DAP, ECF No. 1. It is therefore indisputable that Northbridge Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Northbridge Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Northbridge Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Northbridge Town's public-nuisance claim against the PBMs is therefore time-barred because Northbridge Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 18, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Northbridge Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 616. *Lincoln County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45719-DAP: Plaintiff Lincoln County, North Carolina

Lincoln County's untimely motion for leave to amend should be denied for several reasons. Lincoln County failed to provide notice of its proposed amendments through a proposed complaint. Lincoln County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Lincoln County's motion should be denied due to futility, as Lincoln County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lincoln County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lincoln County amended its complaint on March 11, 2019, after transfer to the MDL on June 13, 2018. *See Lincoln County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45719-DAP, ECF No. 5. Unlike many other plaintiffs, Lincoln County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lincoln County's deadline to amend was in 2019. Lincoln County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lincoln County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

2368

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lincoln County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lincoln County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lincoln County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lincoln County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Lincoln County). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lincoln County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lincoln County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lincoln County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lincoln County's proposed RICO claim against the PBMs has expired. Lincoln County filed its original complaint on May 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lincoln County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45719-DAP, ECF No. 1. It is therefore indisputable that Lincoln County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lincoln County's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lincoln County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lincoln County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 617. *Town of East Bridgewater v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45721-DAP: Plaintiff East Bridgewater Town, Massachusetts

East Bridgewater Town's untimely motion for leave to amend should be denied for several reasons. East Bridgewater Town failed to provide notice of its proposed amendments through a proposed complaint. East Bridgewater Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, East Bridgewater Town's motion should be denied due to futility, as East Bridgewater Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** East Bridgewater Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, East Bridgewater Town amended its complaint on March 6, 2019, after transfer to the MDL on June 13, 2018. *See Town of East Bridgewater v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45721-DAP, ECF No. 9. Unlike many other plaintiffs, East Bridgewater Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1,

above. East Bridgewater Town's deadline to amend was in 2019. East Bridgewater Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. East Bridgewater Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** East Bridgewater Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. East Bridgewater Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. East Bridgewater Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

2372

East Bridgewater Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for East Bridgewater Town). That insignificant dispensing volume is much too low to support a finding of good cause for East Bridgewater Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to East Bridgewater Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for East Bridgewater Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But East Bridgewater Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See* *Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** East Bridgewater Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for East Bridgewater Town's proposed RICO claim against the PBMs has expired. East Bridgewater Town filed its original

complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of East Bridgewater v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45721-DAP, ECF No. 1. It is therefore indisputable that East Bridgewater Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. East Bridgewater Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. East Bridgewater Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. East Bridgewater Town's public-nuisance claim against the PBMs is therefore time-barred because East Bridgewater Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** East Bridgewater Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

618. ***Lincoln County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45722-DAP1: Plaintiff Lincoln County, Mississippi**

Lincoln County's untimely motion for leave to amend should be denied for several reasons. Lincoln County failed to provide notice of its proposed amendments through a proposed complaint. Lincoln County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lincoln County's motion should be denied due to futility, as Lincoln County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lincoln County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lincoln County amended its complaint on March 12, 2019, after transfer to the MDL on June 13, 2018. *See Lincoln County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45722-DAP1, ECF No. 23. Unlike many other plaintiffs, Lincoln County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lincoln County's deadline to amend was in 2019. Lincoln County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lincoln County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lincoln County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that

filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lincoln County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lincoln County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lincoln County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Lincoln County). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lincoln County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lincoln County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lincoln County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lincoln County's proposed RICO claim against the PBMs has expired. Lincoln County filed its amended complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lincoln County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45722-DAP1, ECF No. 23. It is therefore indisputable that Lincoln County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lincoln County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lincoln County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lincoln County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **619.** ***Prentiss County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45723-DAP: Plaintiff Prentiss County, Mississippi**

Prentiss County's untimely motion for leave to amend should be denied for several reasons. Prentiss County failed to provide notice of its proposed amendments through a proposed complaint. Prentiss County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Prentiss County's motion should be denied due to futility, as Prentiss County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Prentiss County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Prentiss County amended its complaint on March 14, 2019, after transfer to the MDL on June 14, 2018. *See Prentiss County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45723-DAP, ECF No. 23. Unlike many other plaintiffs, Prentiss County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Prentiss County's deadline to amend was in 2019. Prentiss County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Prentiss County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Prentiss County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Prentiss County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Prentiss County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Prentiss County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Prentiss County). That insignificant dispensing volume is much too low to support a finding of good cause for Prentiss County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Prentiss County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Prentiss County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Prentiss County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Prentiss County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Prentiss County's proposed RICO claim against the PBMs has expired. Prentiss County filed its amended complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Prentiss County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45723-DAP, ECF No. 23. It is therefore indisputable that Prentiss County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Prentiss County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Prentiss County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Prentiss County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

620.  ***Tyrrell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45725-DAP: Plaintiff Tyrrell County, North Carolina**

Tyrrell County's untimely motion for leave to amend should be denied for several reasons. Tyrrell County failed to provide notice of its proposed amendments through a proposed complaint. Tyrrell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Tyrrell County's motion should be denied due to futility, as Tyrrell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tyrrell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tyrrell County amended its complaint on March 12, 2019, after transfer to the MDL on June 14, 2018. *See Tyrrell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45725-DAP, ECF No. 7. Unlike many other plaintiffs, Tyrrell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tyrrell County's deadline to amend was in 2019. Tyrrell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tyrrell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Tyrrell County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Tyrrell County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tyrrell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tyrrell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tyrrell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tyrrell County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tyrrell County's proposed RICO claim against the PBMs has expired. Tyrrell County filed its original complaint on May 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Tyrrell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45725-DAP, ECF No. 1. It is therefore indisputable that Tyrrell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tyrrell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tyrrell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tyrrell County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 621. *City of Fayetteville v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45726-DAP: Plaintiff Fayetteville City, North Carolina

Fayetteville City's untimely motion for leave to amend should be denied for several reasons. Fayetteville City failed to provide notice of its proposed amendments through a proposed complaint. Fayetteville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fayetteville City's motion should be denied due to futility,

as Fayetteville City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fayetteville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fayetteville City amended its complaint on March 11, 2019, after transfer to the MDL on June 14, 2018. *See City Of Fayetteville v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45726-DAP, ECF No. 7. Unlike many other plaintiffs, Fayetteville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fayetteville City's deadline to amend was in 2019. Fayetteville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fayetteville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fayetteville City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Fayetteville City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fayetteville City fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fayetteville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Fayetteville City). That insignificant dispensing volume is much too low to support a finding of good cause for Fayetteville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fayetteville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fayetteville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Fayetteville City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Fayetteville City of the PBM services Express Scripts provides and Fayetteville City began receiving those services on July 1,

2012. *See id.* Inasmuch as Fayetteville City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Fayetteville City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Fayetteville City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Fayetteville City violated its basic duty to implement a timely litigation hold. Fayetteville City filed its original complaint on May 23, 2018, but waited until September 27, 2024 to implement a litigation hold—more than six years later. *See City Of Fayetteville v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45726-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 27, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fayetteville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Fayetteville City's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fayetteville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fayetteville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fayetteville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fayetteville City, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fayetteville City's proposed RICO claim against the PBMs has expired. Fayetteville City filed its original complaint on May 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City Of Fayetteville v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45726-DAP, ECF No. 1. It is therefore indisputable that Fayetteville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Fayetteville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fayetteville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fayetteville City, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 622. *City of Franklin, NH v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45728-DAP: Plaintiff Franklin City, New Hampshire

Franklin City's untimely motion for leave to amend should be denied for several reasons. Franklin City failed to provide notice of its proposed amendments through a proposed complaint. Franklin City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin City's motion should be denied due to futility, as Franklin City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Franklin City amended its complaint on March 9, 2019, after transfer to the MDL on June 14, 2018. *See City of Franklin, NH v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45728-DAP, ECF No. 20. Unlike many other plaintiffs, Franklin City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Franklin City's deadline to amend was in 2019. Franklin City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Franklin City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

2388

**Prior Notice Through Counsel.** Franklin City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Franklin City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Franklin City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Franklin City). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Franklin City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Franklin City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin City, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin City's proposed RICO claim against the PBMs has expired. Franklin City filed its original complaint on May 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Franklin, NH v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45728-DAP, ECF No. 1. It is therefore indisputable that Franklin City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Franklin City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin City's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Franklin City, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 623. *Escambia County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45729-DAP: Plaintiff Escambia County, Florida

Escambia County's untimely motion for leave to amend should be denied for several reasons. Escambia County failed to provide notice of its proposed amendments through a proposed complaint. Escambia County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Escambia County's motion should be denied due to futility, as Escambia County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Escambia County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Escambia County amended its complaint on March 8, 2019, after transfer to the MDL on June 14, 2018. *See Escambia County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45729-DAP, ECF No. 5. Unlike many other plaintiffs, Escambia County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Escambia County's deadline to amend was in 2019. Escambia County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Escambia County's lack of

diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Escambia County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Escambia County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Escambia County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Escambia County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Escambia County). That insignificant dispensing volume is much too low to support a finding of good cause for Escambia County to add dispensing claims

against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Escambia County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Escambia County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Escambia County filed its original complaint on May 22, 2018. *See Escambia County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45729-DAP, ECF No. 1. Despite filing its case years ago, Escambia County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Escambia County's case would force the parties and the Court to waste time and resources ascertaining the extent of Escambia County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Escambia County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Escambia County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Escambia County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Escambia County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Escambia County of this deficiency on September 16, 2024 (*see* Exhibit B), but Escambia County refused to amend or supplement its Fact Sheet. Under this Court's orders, Escambia County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Escambia County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Escambia County's potential claims against them. Escambia County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Escambia County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Escambia County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Escambia County's proposed RICO claim against the PBMs has expired. Escambia County filed its original complaint on May 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Escambia County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45729-DAP, ECF No. 1. It is therefore indisputable that Escambia County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Escambia County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Escambia County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Escambia County's public-nuisance claim against the PBMs is therefore time-barred because Escambia County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 22, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Escambia County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 624. *Nez Perce Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45730-DAP: Plaintiff Nez Perce Tribe, Idaho

Nez Perce Tribe's untimely motion for leave to amend should be denied for several reasons. Nez Perce Tribe failed to provide notice of its proposed amendments through a proposed complaint. Nez Perce Tribe also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Nez Perce Tribe's motion should be denied due to futility, as Nez Perce Tribe does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Nez Perce Tribe was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nez Perce Tribe amended its complaint on August 8, 2019, after transfer to the MDL on June 14, 2018, as well as on December 24, 2020. *See Nez Perce Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45730-DAP, ECF Nos. 24, 28. Unlike many other plaintiffs, Nez Perce Tribe declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Nez Perce Tribe's deadline to amend was in 2019. Nez Perce Tribe waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Nez Perce Tribe's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

2396

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Nez Perce Tribe's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Nez Perce Tribe to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nez Perce Tribe's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nez Perce Tribe, a native tribe in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nez Perce Tribe's proposed RICO claim against the PBMs has expired. Nez Perce Tribe filed its original complaint on May 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Nez Perce Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45730-DAP, ECF No. 1. It is therefore indisputable that Nez Perce Tribe knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Nez Perce

Tribe's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nez Perce Tribe's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nez Perce Tribe, a native tribe in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **625.** ***United Food and Commercial Worker Local 1000 Oklahoma Health and Welfare Fund v. McKesson Corporation et al.*, Case No. 1:18-op-45733-DAP: Plaintiff United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund, Oklahoma**

United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund's untimely motion for leave to amend should be denied for several reasons. United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund's motion should be denied due to futility, as United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Oklahoma, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund filed its original complaint directly into the MDL on June 15, 2018. *See United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund v. McKesson Corporation et al.*, Case No. 1:18-op-45733-DAP, ECF No. 1. United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund elected not to do so. United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund waited five years after its deadline to amend to seek leave to assert claims against the PBMs. United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under

Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund, a third party payor in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund is a plaintiff in Oklahoma. United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund's proposed RICO claim against the PBMs has expired. United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund filed its original complaint on June 15, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund v. McKesson Corporation et al.*, Case No. 1:18-op-45733-DAP, ECF No. 1. Even assuming *arguendo* that United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 15, 2022. United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare

Fund's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** United Food and Commercial Workers Local 1000 Oklahoma Health and Welfare Fund, a third party payor in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **626.** ***Chilton County, Alabama v. Amerisourcebergen Drug Corporation et al.*,** **Case No. 1:18-op-45735-DAP: Plaintiff Chilton County, Alabama**

Chilton County's untimely motion for leave to amend should be denied for several reasons. Chilton County failed to provide notice of its proposed amendments through a proposed complaint. Chilton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chilton County's motion should be denied due to futility, as Chilton County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chilton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chilton County amended its complaint on March 6, 2019, after transfer to the MDL on June 15, 2018. *See Chilton County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-

op-45735-DAP, ECF No. 6. Unlike many other plaintiffs, Chilton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Chilton County's deadline to amend was in 2019. Chilton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chilton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Chilton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Chilton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Chilton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chilton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.04% market share for Chilton County). That insignificant dispensing volume is much too low to support a finding of good cause for Chilton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chilton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chilton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Chilton County filed its original complaint on June 1, 2018. *See Chilton County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45735-DAP, ECF No. 1. Despite filing its case years ago, Chilton County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chilton County's case would force the parties and the Court to waste time and resources ascertaining the extent of Chilton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chilton County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chilton County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chilton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chilton County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chilton County's proposed RICO claim against the PBMs has expired. Chilton County filed its original complaint on June 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Chilton County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45735-DAP, ECF No. 1. It is therefore indisputable that Chilton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Chilton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chilton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Chilton County's public-nuisance claim against the PBMs is therefore time-barred because Chilton County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Chilton County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Chilton County, a municipality in Alabama, also lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 627. *City of Hartselle, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45736-DAP: Plaintiff Hartselle City, Alabama

Hartselle City's untimely motion for leave to amend should be denied for several reasons. Hartselle City failed to provide notice of its proposed amendments through a proposed complaint. Hartselle City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hartselle City's motion should be denied due to futility, as Hartselle City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred

by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hartselle City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hartselle City amended its complaint on March 15, 2019, after transfer to the MDL on June 15, 2018. *See City of Hartselle, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45736-DAP, ECF No. 7. Unlike many other plaintiffs, Hartselle City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hartselle City's deadline to amend was in 2019. Hartselle City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hartselle City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hartselle City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hartselle City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hartselle City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part

of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hartselle City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Hartselle City). That insignificant dispensing volume is much too low to support a finding of good cause for Hartselle City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hartselle City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hartselle City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hartselle City filed its original complaint on May 25, 2018. *See City of Hartselle, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45736-DAP, ECF No. 1. Despite filing its case years ago, Hartselle City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hartselle City's case would force the parties and the Court to waste time and resources ascertaining the extent of Hartselle City's

document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hartselle City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hartselle City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hartselle City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Hartselle City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hartselle City's proposed RICO claim against the PBMs has expired. Hartselle City filed its original complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Hartselle, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45736-DAP, ECF No. 1. It is therefore indisputable that Hartselle City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hartselle City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568

at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hartselle City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Hartselle City's public-nuisance claim against the PBMs is therefore time-barred because Hartselle City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 25, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Hartselle City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **628.** ***City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Carbon Hill City, Alabama**

Carbon Hill City's untimely motion for leave to amend should be denied for several reasons. Carbon Hill City failed to provide notice of its proposed amendments through a proposed complaint. Carbon Hill City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carbon Hill City's motion should be denied due to futility, as Carbon Hill City does not assert any allegations tying

the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carbon Hill City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carbon Hill City amended its complaint on March 15, 2019, after transfer to the MDL on June 15, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 4. Unlike many other plaintiffs, Carbon Hill City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Carbon Hill City's deadline to amend was in 2019. Carbon Hill City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carbon Hill City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carbon Hill City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Carbon Hill City). That insignificant dispensing volume is much too low to support a finding of good cause for Carbon Hill City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Carbon Hill City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Carbon Hill City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Carbon Hill City filed its original complaint on May 24, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. Despite filing its case years ago, Carbon Hill City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Carbon Hill City's case would force the parties and the Court to waste time and resources ascertaining the extent of Carbon Hill City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Carbon Hill City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Carbon Hill City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Carbon Hill City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Carbon Hill City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Carbon Hill City of this deficiency on September 16, 2024 (*see* Exhibit B), but

Carbon Hill City refused to amend or supplement its Fact Sheet. Under this Court's orders, Carbon Hill City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Carbon Hill City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Carbon Hill City's potential claims against them. Carbon Hill City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carbon Hill City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carbon Hill City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carbon Hill City's proposed RICO claim against the PBMs has expired. Carbon Hill City filed its original complaint on May 24, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP,

ECF No. 1. It is therefore indisputable that Carbon Hill City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Carbon Hill City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carbon Hill City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Carbon Hill City's public-nuisance claim against the PBMs is therefore time-barred because Carbon Hill City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 24, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Carbon Hill City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

629. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, **Case No. 1:18-op-45737-DAP: Plaintiff Cordova City, Alabama**

Cordova City's untimely motion for leave to amend should be denied for several reasons. Cordova City failed to provide notice of its proposed amendments through a proposed complaint. Cordova City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cordova City's motion should be denied due to futility, as Cordova City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cordova City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cordova City amended its complaint on March 15, 2019, after transfer to the MDL on June 15, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 4. Unlike many other plaintiffs, Cordova City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cordova City's deadline to amend was in 2019. Cordova City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cordova City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cordova City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Cordova City). That insignificant dispensing volume is much too low to support a finding of good cause for Cordova City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cordova City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cordova City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cordova City filed its original complaint on May 24, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. Despite filing its case years ago, Cordova City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cordova City's case would force the parties and the Court to waste time and resources ascertaining the extent of Cordova City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cordova City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cordova City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cordova City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cordova City's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cordova City of this deficiency on September 16, 2024 (*see* Exhibit B), but Cordova City refused to amend or supplement its Fact Sheet. Under this Court's orders, Cordova City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cordova City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cordova City's potential claims against them. Cordova City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cordova City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cordova City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cordova City's proposed RICO claim against the PBMs has expired. Cordova City filed its original complaint on May 24,

2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. It is therefore indisputable that Cordova City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cordova City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cordova City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Cordova City's public-nuisance claim against the PBMs is therefore time-barred because Cordova City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 24, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Cordova City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

630. ***City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.***, **Case No. 1:18-op-45737-DAP: Plaintiff Nauvoo Town, Alabama**

Nauvoo Town's untimely motion for leave to amend should be denied for several reasons. Nauvoo Town failed to provide notice of its proposed amendments through a proposed complaint. Nauvoo Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nauvoo Town's motion should be denied due to futility, as Nauvoo Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Nauvoo Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nauvoo Town amended its complaint on March 15, 2019, after transfer to the MDL on June 15, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 4. Unlike many other plaintiffs, Nauvoo Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Nauvoo Town's deadline to amend was in 2019. Nauvoo Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Nauvoo Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Nauvoo Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Nauvoo Town filed its original complaint on May 24, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. Despite filing its case years ago, Nauvoo Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Nauvoo Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Nauvoo Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Nauvoo Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Nauvoo Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Nauvoo Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Nauvoo Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Nauvoo Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Nauvoo Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Nauvoo Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at

1 (emphasis in original); *see* Section III.A.5, above. Nauvoo Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Nauvoo Town's potential claims against them. Nauvoo Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nauvoo Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nauvoo Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nauvoo Town's proposed RICO claim against the PBMs has expired. Nauvoo Town filed its original complaint on May 24, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. It is therefore indisputable that Nauvoo Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend.

Nauvoo Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nauvoo Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Nauvoo Town's public-nuisance claim against the PBMs is therefore time-barred because Nauvoo Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 24, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Nauvoo Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 631. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Oakman Town, Alabama

Oakman Town's untimely motion for leave to amend should be denied for several reasons. Oakman Town failed to provide notice of its proposed amendments through a proposed complaint. Oakman Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oakman Town's motion should

be denied due to futility, as Oakman Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oakman Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oakman Town amended its complaint on March 15, 2019, after transfer to the MDL on June 15, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 4. Unlike many other plaintiffs, Oakman Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Oakman Town's deadline to amend was in 2019. Oakman Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Oakman Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Oakman Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Oakman Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Oakman Town filed its original complaint on May 24, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. Despite filing its case years ago, Oakman Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Oakman Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Oakman Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Oakman Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Oakman Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Oakman Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Oakman Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Oakman Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Oakman Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Oakman Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Oakman Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Oakman Town's potential claims against them. Oakman Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oakman Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Oakman Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oakman Town's proposed RICO claim against the PBMs has expired. Oakman Town filed its original complaint on May 24, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. It is therefore indisputable that Oakman Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Oakman Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oakman Town's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Oakman Town's public-nuisance claim against the PBMs is therefore time-barred because Oakman Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 24, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Oakman Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 632. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Parrish Town, Alabama

Parrish Town's untimely motion for leave to amend should be denied for several reasons. Parrish Town failed to provide notice of its proposed amendments through a proposed complaint. Parrish Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Parrish Town's motion should be denied due to futility, as Parrish Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Parrish Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Parrish Town amended its complaint on March 15, 2019, after transfer to the MDL on June 15, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 4. Unlike many other plaintiffs, Parrish Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Parrish Town's deadline to amend was in 2019. Parrish Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Parrish Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Parrish Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Parrish Town). That insignificant dispensing volume is much too low to support a finding of good cause for Parrish Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Parrish Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Parrish Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Parrish Town filed its original complaint on May 24, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. Despite filing its case years ago, Parrish Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Parrish Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Parrish Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Parrish Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Parrish Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Parrish Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Parrish Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Parrish Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Parrish Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Parrish Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Parrish Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Parrish

Town's potential claims against them. Parrish Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Parrish Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Parrish Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Parrish Town's proposed RICO claim against the PBMs has expired. Parrish Town filed its original complaint on May 24, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. It is therefore indisputable that Parrish Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Parrish Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not

discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Parrish Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Parrish Town's public-nuisance claim against the PBMs is therefore time-barred because Parrish Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 24, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Parrish Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 633. *City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP: Plaintiff Sipsey Town, Alabama

Sipsey Town's untimely motion for leave to amend should be denied for several reasons. Sipsey Town failed to provide notice of its proposed amendments through a proposed complaint. Sipsey Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sipsey Town's motion should be denied due to futility, as Sipsey Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred

by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sipsey Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sipsey Town amended its complaint on March 15, 2019, after transfer to the MDL on June 15, 2018 *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 4. Unlike many other plaintiffs, Sipsey Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sipsey Town's deadline to amend was in 2019. Sipsey Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sipsey Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Sipsey Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Sipsey Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Sipsey Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s]

no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sipsey Town filed its original complaint on May 24, 2018. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. Despite filing its case years ago, Sipsey Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sipsey Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Sipsey Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sipsey Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sipsey Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sipsey Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sipsey Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sipsey Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Sipsey Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Sipsey Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sipsey Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sipsey

Town's potential claims against them. Sipsey Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sipsey Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sipsey Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sipsey Town's proposed RICO claim against the PBMs has expired. Sipsey Town filed its original complaint on May 24, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Nauvoo, Alabama, et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45737-DAP, ECF No. 1. It is therefore indisputable that Sipsey Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sipsey Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not

discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sipsey Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Sipsey Town's public-nuisance claim against the PBMs is therefore time-barred because Sipsey Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 24, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sipsey Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 634. *City of Winfield, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45738-DAP: Plaintiff Winfield City, Alabama

Winfield City's untimely motion for leave to amend should be denied for several reasons. Winfield City failed to provide notice of its proposed amendments through a proposed complaint. Winfield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winfield City's motion should be denied due to futility, as Winfield City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is

barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winfield City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Winfield City amended its complaint on March 15, 2019, after transfer to the MDL on June 15, 2018. *See City of Winfield, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45738-DAP, ECF No. 4. Unlike many other plaintiffs, Winfield City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Winfield City's deadline to amend was in 2019. Winfield City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Winfield City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Winfield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Winfield City). That insignificant dispensing volume is much too low to support a finding of good cause for Winfield City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Winfield City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Winfield City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Winfield City filed its original complaint on May 28, 2018. *See City of Winfield, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45738-DAP, ECF No. 1. Despite filing its case years ago, Winfield City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Winfield City's case would force the parties and the Court to waste time and resources ascertaining the extent of Winfield City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Winfield City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Winfield City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Winfield City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Winfield City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Winfield City of this deficiency on September 16, 2024 (*see* Exhibit B), but Winfield City refused to amend or supplement its Fact Sheet. Under this Court's orders, Winfield City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1

(emphasis in original); *see* Section III.A.5, above. Winfield City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Winfield City's potential claims against them. Winfield City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winfield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winfield City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winfield City's proposed RICO claim against the PBMs has expired. Winfield City filed its original complaint on May 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Winfield, Alabama v. Purdue Pharma LP et al.*, Case No. 1:18-op-45738-DAP, ECF No. 1. It is therefore indisputable that Winfield City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Winfield

City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winfield City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Winfield City's public-nuisance claim against the PBMs is therefore time-barred because Winfield City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 28, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Winfield City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **635.** ***Town of Double Springs, AL v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45739-DAP: Plaintiff Double Springs Town, Alabama**

Double Springs Town's untimely motion for leave to amend should be denied for several reasons. Double Springs Town failed to provide notice of its proposed amendments through a proposed complaint. Double Springs Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Double Springs Town's motion should be denied due to

2350 of 6510

futility, as Double Springs Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Double Springs Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Double Springs Town amended its complaint on March 8, 2019, after transfer to the MDL on June 15, 2018. *See Town of Double Springs, AL v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45739-DAP, ECF No. 4. Unlike many other plaintiffs, Double Springs Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Double Springs Town's deadline to amend was in 2019. Double Springs Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Double Springs Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Double Springs Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Double Springs Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Double Springs Town fails to explain why it was unable to assert claims against the PBMs in 2019 when

its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Double Springs Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Double Springs Town). That insignificant dispensing volume is much too low to support a finding of good cause for Double Springs Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Double Springs Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Double Springs Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Double Springs Town filed its original complaint on May 25, 2018. *See Town of Double Springs, AL v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45739-DAP, ECF No. 1. Despite filing its case years ago, Double Springs Town *never* implemented a litigation hold and is instead purporting to rely on non-

specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Double Springs Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Double Springs Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Double Springs Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Double Springs Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Double Springs Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Double Springs Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Double Springs Town's proposed RICO claim against the PBMs has expired. Double Springs Town filed its original

complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Double Springs, AL v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45739-DAP, ECF No. 1. It is therefore indisputable that Double Springs Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Double Springs Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Double Springs Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Double Springs Town's public-nuisance claim against the PBMs is therefore time-barred because Double Springs Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 25, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Double Springs Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**636.** ***Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP: Plaintiff Alamosa City, Colorado**

Alamosa City's untimely motion for leave to amend should be denied for several reasons. Alamosa City failed to provide notice of its proposed amendments through a proposed complaint. Alamosa City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alamosa City's motion should be denied due to futility, as Alamosa City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alamosa City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Alamosa City amended its complaint on March 15, 2019, after transfer to the MDL on June 18, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. Unlike many other plaintiffs, Alamosa City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Alamosa City's deadline to amend was in 2019. Alamosa City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Alamosa City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Alamosa City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Alamosa City). That insignificant dispensing volume is much too low to support a finding of good cause for Alamosa City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alamosa City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Alamosa City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Alamosa City filed its original complaint on May 29, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 1. Despite filing its case years ago, Alamosa City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Alamosa City's case would force the parties and the Court to waste time and resources ascertaining the extent of Alamosa City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Alamosa City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Alamosa City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alamosa City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alamosa City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alamosa City's proposed RICO claim against the PBMs has expired. Alamosa City filed its amended complaint on May 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. It is therefore indisputable that Alamosa City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Alamosa City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alamosa City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alamosa City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **637.** *Conejos County et al. v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45740-DAP: Plaintiff Alamosa County, Colorado**

Alamosa County's untimely motion for leave to amend should be denied for several reasons. Alamosa County failed to provide notice of its proposed amendments through a proposed complaint. Alamosa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alamosa County's motion should be denied due to futility, as Alamosa County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alamosa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Alamosa County amended its complaint on March 15, 2019, after transfer to the MDL on June 18, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. Unlike many other plaintiffs, Alamosa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Alamosa County's deadline to amend was in 2019. Alamosa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Alamosa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alamosa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Alamosa County). That insignificant dispensing volume is much too low to support a finding of good cause for Alamosa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alamosa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Alamosa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Alamosa County filed its original complaint on May 29, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 1. Despite filing its case years ago, Alamosa County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Alamosa County's case would force the parties and the Court to waste time and resources ascertaining the extent of Alamosa County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by

Alamosa County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Alamosa County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alamosa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alamosa County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alamosa County's proposed RICO claim against the PBMs has expired. Alamosa County filed its amended complaint on May 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. It is therefore indisputable that Alamosa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Alamosa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see*

Section III.B.4, above. Alamosa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alamosa County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

638. *Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP: Plaintiff Conejos County, Colorado

Conejos County's untimely motion for leave to amend should be denied for several reasons. Conejos County failed to provide notice of its proposed amendments through a proposed complaint. Conejos County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Conejos County's motion should be denied due to futility, as Conejos County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Conejos County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Conejos County amended its complaint on March 15, 2019, after transfer to the MDL on June 18, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. Unlike many other plaintiffs, Conejos County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Conejos County's deadline to amend was in 2019. Conejos County waited five years after its deadline to amend to seek leave to assert claims

against the PBMs. Conejos County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Conejos County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Conejos County). That insignificant dispensing volume is much too low to support a finding of good cause for Conejos County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Conejos County filed its original complaint on May 29, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 1. Despite filing its case years ago, Conejos County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Conejos County's case would force the parties and the Court to waste time and resources ascertaining the extent of Conejos County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Conejos County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Conejos County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Conejos County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Conejos County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Conejos County of this deficiency on September 16, 2024 (*see* Exhibit B), but Conejos County refused to amend or supplement its Fact Sheet. Under this Court's orders, Conejos County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Conejos County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Conejos County's potential claims against them. Conejos County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Conejos County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Conejos County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Conejos County's proposed RICO claim against the PBMs has expired. Conejos County filed its amended complaint on May 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. It is therefore indisputable that Conejos County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Conejos County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Conejos County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Conejos County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

639. *Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP: Plaintiff Las Animas County, Colorado

Las Animas County's untimely motion for leave to amend should be denied for several reasons. Las Animas County failed to provide notice of its proposed amendments through a proposed complaint. Las Animas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Las Animas

County's motion should be denied due to futility, as Las Animas County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Las Animas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Las Animas County amended its complaint on March 15, 2019, after transfer to the MDL on June 18, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. Unlike many other plaintiffs, Las Animas County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Las Animas County's deadline to amend was in 2019. Las Animas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Las Animas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Las Animas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Las Animas County). That insignificant dispensing volume is much too low to support a finding of good cause for Las Animas County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Las Animas County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Las Animas County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Las Animas County filed its original complaint on May 29, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 1. Despite filing its case years ago, Las Animas County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Las Animas County's case would force the parties and the Court to waste time and resources ascertaining the extent of Las Animas County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Las Animas County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Las Animas County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Las Animas County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Las Animas County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Las Animas County of this deficiency on September 16, 2024 (*see*

Exhibit B), but Las Animas County refused to amend or supplement its Fact Sheet. Under this Court's orders, Las Animas County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Las Animas County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Las Animas County's potential claims against them. Las Animas County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Las Animas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Las Animas County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Las Animas County's proposed RICO claim against the PBMs has expired. Las Animas County filed its amended

complaint on May 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. It is therefore indisputable that Las Animas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Las Animas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Las Animas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Las Animas County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 640. *Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP: Plaintiff Otero County, Colorado

Otero County's untimely motion for leave to amend should be denied for several reasons. Otero County failed to provide notice of its proposed amendments through a proposed complaint. Otero County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Otero County's motion should be denied due to futility, as Otero County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Otero County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Otero County amended its complaint on March 15, 2019, after transfer to the MDL on June 18, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. Unlike many other plaintiffs, Otero County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Otero County's deadline to amend was in 2019. Otero County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Otero County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Otero County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Otero County). That insignificant dispensing volume is much too low to support a finding of good cause for Otero County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Otero County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Otero County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Otero County filed its original complaint on May 29, 2018. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 1. Despite filing its case years ago, Otero County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Otero County's case would force the parties and the Court to waste time and resources ascertaining the extent of Otero County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Otero County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Otero County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Otero County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Otero County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Otero County of this deficiency on September 16, 2024 (*see* Exhibit B), but Otero County refused to amend or supplement its Fact Sheet. Under this Court's orders, Otero County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Otero County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Otero

County's potential claims against them. Otero County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Otero County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Otero County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Otero County's proposed RICO claim against the PBMs has expired. Otero County filed its amended complaint on May 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Conejos County et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45740-DAP, ECF No. 13. It is therefore indisputable that Otero County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Otero County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of

[the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Otero County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Otero County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 641. *Eastern Atlantic States Carpenters Health Fund v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45741-DAP: Plaintiff Eastern Atlantic States Carpenters Health Fund, New Jersey**

Eastern Atlantic States Carpenters Health Fund's untimely motion for leave to amend should be denied for several reasons. Eastern Atlantic States Carpenters Health Fund failed to provide notice of its proposed amendments through a proposed complaint. Eastern Atlantic States Carpenters Health Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Eastern Atlantic States Carpenters Health Fund's motion should be denied due to futility, as Eastern Atlantic States Carpenters Health Fund does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Eastern Atlantic States Carpenters Health Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Eastern Atlantic States Carpenters Health Fund amended its complaint on March 15, 2019, after transfer to the MDL on June 18, 2018, as well as on February 27, 2023. *See Eastern Atlantic States Carpenters Health Fund v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45741-DAP, ECF Nos. 9, 16. Unlike many other plaintiffs, Eastern Atlantic States

Carpenters Health Fund declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Eastern Atlantic States Carpenters Health Fund's deadline to amend was in 2019. Eastern Atlantic States Carpenters Health Fund waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Eastern Atlantic States Carpenters Health Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Eastern Atlantic States Carpenters Health Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Eastern Atlantic States Carpenters Health Fund of the PBM services Express Scripts provides and Eastern Atlantic States Carpenters Health Fund began receiving those services on October 18, 2006. *See id.* Inasmuch as Eastern Atlantic States Carpenters Health Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Eastern Atlantic States Carpenters Health Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Eastern Atlantic States Carpenters Health Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Eastern Atlantic States Carpenters Health Fund filed its original complaint on April 9, 2018, but waited until September 17, 2018 to implement a litigation hold. *See Eastern Atlantic States Carpenters Health Fund v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45741-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 17, 2018). Eastern Atlantic States Carpenters Health Fund's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Eastern Atlantic States Carpenters Health Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Eastern Atlantic States Carpenters Health Fund, a third party payor in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Eastern Atlantic States Carpenters Health Fund's proposed RICO claim against the PBMs has expired. Eastern Atlantic States Carpenters Health Fund filed its first amended complaint on March 15, 2019, alleging the

same type of injuries *and* alleging a RICO claim against other defendants. *See Eastern Atlantic States Carpenters Health Fund v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45741-DAP, ECF No. 9. It is therefore indisputable that Eastern Atlantic States Carpenters Health Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Eastern Atlantic States Carpenters Health Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Eastern Atlantic States Carpenters Health Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Eastern Atlantic States Carpenters Health Fund, a third party payor in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **642.** ***Pinellas County, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45742-DAP: Plaintiff Pinellas County, Florida**

Pinellas County's untimely motion for leave to amend should be denied for several reasons. Pinellas County failed to provide notice of its proposed amendments through a proposed complaint. Pinellas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pinellas County's motion should be denied due to futility, as Pinellas County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pinellas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pinellas County amended its complaint on March 8, 2019, after transfer to the MDL on June 18, 2018. *See Pinellas County, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45742-DAP, ECF No. 8. Unlike many other plaintiffs, Pinellas County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pinellas County's deadline to amend was in 2019. Pinellas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pinellas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pinellas County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pinellas County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pinellas County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pinellas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.31% market share for Pinellas County). That insignificant dispensing volume is much too low to support a finding of good cause for Pinellas County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Pinellas County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Pinellas County of the PBM services Express Scripts provides and Pinellas County began receiving those services on January 1, 2012. *See id.* Inasmuch as Pinellas County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Pinellas County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Pinellas County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pinellas County's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pinellas County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pinellas County's proposed RICO claim against the PBMs has expired. Pinellas County filed its original complaint on May 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pinellas County, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45742-DAP, ECF No. 1. It is therefore indisputable that Pinellas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pinellas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pinellas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Pinellas County's public-nuisance claim against the PBMs is therefore time-barred because Pinellas County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 18, 2018—and the proposed amendment

does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Pinellas County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 643. *Town of Lakeville v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45743-DAP: Plaintiff Lakeville Town, Massachusetts

Lakeville Town's untimely motion for leave to amend should be denied for several reasons. Lakeville Town failed to provide notice of its proposed amendments through a proposed complaint. Lakeville Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lakeville Town's motion should be denied due to futility, as Lakeville Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lakeville Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lakeville Town amended its complaint on March 6, 2019, after transfer to the MDL on June 18, 2018. *See Town of Lakeville v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45743-DAP, ECF No. 9. Unlike many other plaintiffs, Lakeville Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lakeville Town's deadline to amend was in 2019. Lakeville Town waited five years after its deadline to amend to seek leave

to assert claims against the PBMs. Lakeville Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lakeville Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lakeville Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lakeville Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lakeville Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Lakeville Town). That insignificant dispensing volume is much

too low to support a finding of good cause for Lakeville Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lakeville Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lakeville Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lakeville Town filed its original complaint on May 17, 2018. *See Town of Lakeville v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45743-DAP, ECF No. 1. Despite filing its case years ago, Lakeville Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lakeville Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Lakeville Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lakeville Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lakeville Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lakeville Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lakeville Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lakeville Town's proposed RICO claim against the PBMs has expired. Lakeville Town filed its original complaint on May 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Lakeville v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45743-DAP, ECF No. 1. It is therefore indisputable that Lakeville Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lakeville Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lakeville Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Lakeville Town's public-nuisance claim against the PBMs is therefore time-barred because Lakeville Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 17, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lakeville Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 644. ***Town of North Attleborough v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45744-DAP: Plaintiff North Attleborough Town, Massachusetts**

North Attleborough Town's untimely motion for leave to amend should be denied for several reasons. North Attleborough Town failed to provide notice of its proposed amendments through a proposed complaint. North Attleborough Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Attleborough Town's motion should be denied due to futility, as North Attleborough Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Attleborough Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, North Attleborough Town amended its complaint on March 7, 2019, after transfer to the MDL on June 18, 2018. *See Town of North Attleborough v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45744-DAP, ECF No. 10. Unlike many other plaintiffs, North Attleborough Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Attleborough Town's deadline to amend was in 2019. North Attleborough Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. North Attleborough Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** North Attleborough Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. North Attleborough Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. North Attleborough Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part

because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to North Attleborough Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for North Attleborough Town). That insignificant dispensing volume is much too low to support a finding of good cause for North Attleborough Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to North Attleborough Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for North Attleborough Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** North Attleborough Town filed its original complaint on May 18, 2018. *See Town of North Attleborough v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45744-DAP, ECF No. 1. Despite filing its case years ago, North Attleborough Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating North Attleborough Town's case would force the parties and the Court to waste time and resources ascertaining the extent of North Attleborough Town's document destruction and the

appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by North Attleborough Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and North Attleborough Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, North Attleborough Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to North Attleborough Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified North Attleborough Town of this deficiency on September 16, 2024 (*see* Exhibit B), but North Attleborough Town refused to amend or supplement its Fact Sheet. Under this Court's orders, North Attleborough Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. North Attleborough Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against North Attleborough Town's potential claims against them. North Attleborough Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Attleborough Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Attleborough Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for North Attleborough Town's proposed RICO claim against the PBMs has expired. North Attleborough Town filed its original complaint on May 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of North Attleborough v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45744-DAP, ECF No. 1. It is therefore indisputable that North Attleborough Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. North Attleborough Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Attleborough Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. North Attleborough Town's public-nuisance claim against the PBMs is therefore time-barred because North Attleborough Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 18, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** North Attleborough Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 645. *Seneca Nation of Indians v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45746-DAP: Plaintiff Seneca Nation of Indians, New York

Seneca Nation of Indians' untimely motion for leave to amend should be denied for several reasons. Seneca Nation of Indians failed to provide notice of its proposed amendments through a proposed complaint. Seneca Nation of Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Seneca Nation of Indians' motion should be denied due to futility, as Seneca Nation of Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Seneca Nation of Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Seneca Nation of Indians amended its complaint on March 10, 2019, after transfer to the MDL on June 21, 2018, as well as on August 13, 2019. *See Seneca Nation of Indians v.*

*Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45746-DAP, ECF Nos. 7, 25. Unlike many other plaintiffs, Seneca Nation of Indians declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Seneca Nation of Indians' deadline to amend was in 2019. Seneca Nation of Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Seneca Nation of Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Seneca Nation of Indians cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Seneca Nation of Indians, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Seneca Nation of Indians fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Seneca Nation of Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Seneca Nation of Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Seneca Nation of Indians filed its original complaint on May 31, 2018. *See Seneca Nation of Indians v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45746-DAP, ECF No. 1. Despite filing its case years ago, Seneca Nation of Indians *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Seneca Nation of Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Seneca Nation of Indians' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Seneca Nation of Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Seneca Nation of Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Seneca Nation of Indians'

delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Seneca Nation of Indians, a native tribe in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Seneca Nation of Indians' proposed RICO claim against the PBMs has expired. Seneca Nation of Indians filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Seneca Nation of Indians v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45746-DAP, ECF No. 1. It is therefore indisputable that Seneca Nation of Indians knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Seneca Nation of Indians' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Seneca Nation of Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Seneca Nation of Indians, a native tribe in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Seneca Nation of Indians' request

for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 646. *Cabarrus County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45747-DAP: Plaintiff Cabarrus County, North Carolina

Cabarrus County's untimely motion for leave to amend should be denied for several reasons. Cabarrus County failed to provide notice of its proposed amendments through a proposed complaint. Cabarrus County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cabarrus County's motion should be denied due to futility, as Cabarrus County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cabarrus County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cabarrus County amended its complaint on March 15, 2019, after transfer to the MDL on June 21, 2018. *See Cabarrus County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45747-DAP, ECF No. 10. Unlike many other plaintiffs, Cabarrus County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cabarrus County's deadline to amend was in 2019. Cabarrus County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cabarrus County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cabarrus County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Cabarrus County). That insignificant dispensing volume is much too low to support a finding of good cause for Cabarrus County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cabarrus County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cabarrus County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cabarrus County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cabarrus County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cabarrus County's proposed RICO claim against the PBMs has expired. Cabarrus County filed its original complaint on June 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cabarrus County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45747-DAP, ECF No. 1. It is therefore indisputable that Cabarrus County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cabarrus County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cabarrus County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cabarrus County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 647. ***Blackfeet Tribe of The Blackfeet Indian Reservation v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45749-DAP: Plaintiff Blackfeet Tribe of The Blackfeet Indian Reservation, Montana**

Blackfeet Tribe of The Blackfeet Indian Reservation's untimely motion for leave to amend should be denied for several reasons. Blackfeet Tribe of The Blackfeet Indian Reservation failed to provide notice of its proposed amendments through a proposed complaint. Blackfeet Tribe of The Blackfeet Indian Reservation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Blackfeet Tribe of The Blackfeet Indian Reservation's motion

should be denied due to futility, as Blackfeet Tribe of The Blackfeet Indian Reservation does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Blackfeet Tribe of The Blackfeet Indian Reservation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Blackfeet Tribe of The Blackfeet Indian Reservation first amended its complaint on August 29, 2018. *See Blackfeet Tribe of The Blackfeet Indian Reservation v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45749-DAP, ECF No. 9. Unlike many other plaintiffs, Blackfeet Tribe of The Blackfeet Indian Reservation declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Blackfeet Tribe of The Blackfeet Indian Reservation's deadline to amend was in 2019. Blackfeet Tribe of The Blackfeet Indian Reservation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Blackfeet Tribe of The Blackfeet Indian Reservation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Blackfeet Tribe of The Blackfeet Indian Reservation cannot meet the Rule 16 good cause standard because it is represented by the same counsel— Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC— that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Blackfeet Tribe of The

Blackfeet Indian Reservation, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Blackfeet Tribe of The Blackfeet Indian Reservation fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Blackfeet Tribe of The Blackfeet Indian Reservation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.003% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Blackfeet Tribe of The Blackfeet Indian Reservation to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Blackfeet Tribe of The Blackfeet Indian Reservation filed its original complaint on June 26, 2018. *See Blackfeet Tribe of The Blackfeet Indian Reservation v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45749-DAP, ECF No. 1. Despite filing its case years ago, Blackfeet Tribe of The Blackfeet Indian Reservation *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold

Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Blackfeet Tribe of The Blackfeet Indian Reservation's case would force the parties and the Court to waste time and resources ascertaining the extent of Blackfeet Tribe of The Blackfeet Indian Reservation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Blackfeet Tribe of The Blackfeet Indian Reservation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Blackfeet Tribe of The Blackfeet Indian Reservation therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Blackfeet Tribe of The Blackfeet Indian Reservation, a native tribe in Montana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Blackfeet Tribe of The Blackfeet Indian Reservation's proposed RICO claim against the PBMs has expired. Blackfeet Tribe of The Blackfeet Indian Reservation filed its original complaint on June 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Blackfeet Tribe of The Blackfeet Indian Reservation v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45749-DAP, ECF No. 1. It is therefore indisputable that Blackfeet Tribe of The Blackfeet Indian Reservation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Blackfeet Tribe of The Blackfeet Indian

Reservation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Blackfeet Tribe of The Blackfeet Indian Reservation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Blackfeet Tribe of The Blackfeet Indian Reservation, a native tribe in Montana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 648. *Town of Marshfield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45752-DAP: Plaintiff Marshfield Town, Massachusetts

Marshfield Town's untimely motion for leave to amend should be denied for several reasons. Marshfield Town failed to provide notice of its proposed amendments through a proposed complaint. Marshfield Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marshfield Town's motion should be denied due to futility, as Marshfield Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marshfield Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marshfield Town amended its complaint on March 6, 2019, after transfer to the MDL on June 27, 2018. *See Town of Marshfield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45752-DAP, ECF No. 10. Unlike many other plaintiffs,

Marshfield Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marshfield Town's deadline to amend was in 2019. Marshfield Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marshfield Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marshfield Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Marshfield Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marshfield Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Marshfield Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Marshfield Town). That insignificant dispensing volume is much too low to support a finding of good cause for Marshfield Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marshfield Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marshfield Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marshfield Town filed its original complaint on June 5, 2018. *See Town of Marshfield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45752-DAP, ECF No. 1. Despite filing its case years ago, Marshfield Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marshfield Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Marshfield Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marshfield Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marshfield Town therefore lacks good cause for leave to amend its complaint. *See*

*Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marshfield Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marshfield Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marshfield Town's proposed RICO claim against the PBMs has expired. Marshfield Town filed its original complaint on June 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Marshfield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45752-DAP, ECF No. 1. It is therefore indisputable that Marshfield Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marshfield Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marshfield Town's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Marshfield Town's public-nuisance claim against the PBMs is therefore time-barred because Marshfield Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 5, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Marshfield Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 649. ***Town of Bridgewater, Massachusetts v. Amerisourcebergen Drug Corporation et al.***, **Case No. 1:18-op-45754-DAP: Plaintiff Bridgewater Town, Massachusetts**

Bridgewater Town's untimely motion for leave to amend should be denied for several reasons. Bridgewater Town failed to provide notice of its proposed amendments through a proposed complaint. Bridgewater Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bridgewater Town's motion should be denied due to futility, as Bridgewater Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bridgewater Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bridgewater Town amended its complaint on March 6, 2019, after transfer to the MDL on June 27, 2018. *See Town of Bridgewater, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45754-DAP, ECF No. 12. Unlike many other plaintiffs, Bridgewater Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bridgewater Town's deadline to amend was in 2019. Bridgewater Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bridgewater Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bridgewater Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bridgewater Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bridgewater Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bridgewater Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Bridgewater Town). That insignificant dispensing volume is much too low to support a finding of good cause for Bridgewater Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bridgewater Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bridgewater Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bridgewater Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bridgewater Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bridgewater Town's proposed RICO claim against the PBMs has expired. Bridgewater Town filed its original complaint on June 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Bridgewater, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45754-DAP, ECF No. 1. It is therefore indisputable that Bridgewater Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bridgewater Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bridgewater Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Bridgewater Town's public-nuisance claim against the PBMs is therefore time-barred because Bridgewater Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 6, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Bridgewater Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **650.** ***Town of Mashpee, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45755-DAP: Plaintiff Mashpee Town, Massachusetts**

Mashpee Town's untimely motion for leave to amend should be denied for several reasons. Mashpee Town failed to provide notice of its proposed amendments through a proposed complaint. Mashpee Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mashpee Town's motion should be denied due to futility, as Mashpee Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mashpee Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mashpee Town amended its complaint on March 8, 2019, after transfer to the MDL on June 27, 2018. *See Town of Mashpee, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45755-DAP, ECF No. 10. Unlike many other plaintiffs, Mashpee Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mashpee Town's deadline to amend was in 2019. Mashpee Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mashpee Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial

of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mashpee Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Mashpee Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mashpee Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mashpee Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Mashpee Town). That insignificant dispensing volume is much too low to support a finding of good cause for Mashpee Town to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mashpee Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mashpee Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Mashpee Town filed its original complaint on June 6, 2018. *See Town of Mashpee, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45755-DAP, ECF No. 1. Despite filing its case years ago, Mashpee Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Mashpee Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Mashpee Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mashpee Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mashpee Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mashpee Town's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mashpee Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mashpee Town's proposed RICO claim against the PBMs has expired. Mashpee Town filed its original complaint on June 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Mashpee, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45755-DAP, ECF No. 1. It is therefore indisputable that Mashpee Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mashpee Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mashpee Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Mashpee Town's public-nuisance claim against the PBMs is therefore time-barred because Mashpee Town sought leave to amend its complaint on

July 29, 2024—six years after filing its original complaint on June 6, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Mashpee Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **651.** *Vance County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45759-DAP: Plaintiff Vance County, North Carolina**

Vance County's untimely motion for leave to amend should be denied for several reasons. Vance County failed to provide notice of its proposed amendments through a proposed complaint. Vance County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Vance County's motion should be denied due to futility, as Vance County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Vance County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Vance County amended its complaint on March 12, 2019, after transfer to the MDL on June 28, 2018. *See Vance County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45759-DAP, ECF No. 5. Unlike many other plaintiffs, Vance County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Vance County's deadline to amend was in 2019. Vance County waited five years after its deadline to amend to seek leave to assert

claims against the PBMs. Vance County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Vance County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Vance County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Vance County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Vance County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Vance County). That insignificant dispensing volume is much too low to support a finding of good cause for Vance County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Vance County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Vance County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Vance County filed its original complaint on June 13, 2018. *See Vance County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45759-DAP, ECF No. 1. Despite filing its case years ago, Vance County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Vance County's case would force the parties and the Court to waste time and resources ascertaining the extent of Vance County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Vance County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Vance County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Vance County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**<u>Failure to State a Claim.</u>** Vance County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**<u>RICO Statute of Limitations.</u>** The statute of limitations for Vance County's proposed RICO claim against the PBMs has expired. Vance County filed its original complaint on June 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Vance County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45759-DAP, ECF No. 1. It is therefore indisputable that Vance County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Vance County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Vance County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**<u>Plaintiff Lacks Standing.</u>** Vance County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**652.** *Town of Danvers, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45760-DAP: Plaintiff Danvers Town, Massachusetts**

Danvers Town's untimely motion for leave to amend should be denied for several reasons. Danvers Town failed to provide notice of its proposed amendments through a proposed complaint. Danvers Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Danvers Town's motion should be denied due to futility, as Danvers Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Danvers Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Danvers Town amended its complaint on March 6, 2019, after transfer to the MDL on June 28, 2018. *See Town of Danvers, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45760-DAP, ECF No. 10. Unlike many other plaintiffs, Danvers Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Danvers Town's deadline to amend was in 2019. Danvers Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Danvers Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Danvers Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Danvers Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Danvers Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Danvers Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Danvers Town). That insignificant dispensing volume is much too low to support a finding of good cause for Danvers Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Danvers Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Danvers Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Danvers Town filed its original complaint on June 5, 2018. *See Town of Danvers, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45760-DAP, ECF No. 1. Despite filing its case years ago, Danvers Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Danvers Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Danvers Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Danvers Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Danvers Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Danvers Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Danvers Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Danvers Town's proposed RICO claim against the PBMs has expired. Danvers Town filed its original complaint on June 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Danvers, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45760-DAP, ECF No. 1. It is therefore indisputable that Danvers Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Danvers Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Danvers Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Danvers Town's public-nuisance claim against the PBMs is therefore time-barred because Danvers Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 5, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new

party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Danvers Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 653. *City of Newark, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45761-DAP: Plaintiff Newark City, New Jersey

Newark City's untimely motion for leave to amend should be denied for several reasons. Newark City failed to provide notice of its proposed amendments through a proposed complaint. Newark City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Newark City's motion should be denied due to futility, as Newark City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Newark City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Newark City amended its complaint on March 15, 2019, after transfer to the MDL on June 28, 2018. *See City of Newark, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45761-DAP, ECF No. 7. Unlike many other plaintiffs, Newark City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Newark City's deadline to amend was in 2019. Newark City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Newark City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Newark City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Newark City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Newark City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Newark City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Newark City). That insignificant dispensing volume is much too low to support a finding of good cause for Newark City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Newark City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Newark City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Newark City filed its original complaint on May 10, 2018. *See City of Newark, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45761-DAP, ECF No. 1-1. Despite filing its case years ago, Newark City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Newark City's case would force the parties and the Court to waste time and resources ascertaining the extent of Newark City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Newark City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Newark City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Newark City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Newark City, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Newark City's proposed RICO claim against the PBMs has expired. Newark City filed its original complaint on May 10, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Newark, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45761-DAP, ECF No. 1-1. It is therefore indisputable that Newark City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Newark City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Newark City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Newark City, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 654. *Hancock County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45762-DAP: Plaintiff Hancock County, Mississippi**

Hancock County's untimely motion for leave to amend should be denied for several reasons. Hancock County failed to provide notice of its proposed amendments through a proposed complaint. Hancock County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hancock County's motion should be denied due to futility, as Hancock County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hancock County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hancock County amended its complaint on March 15, 2019, after transfer to the MDL on June 28, 2018. *See Hancock County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45762-DAP, ECF No. 6. Unlike many other plaintiffs, Hancock County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hancock County's deadline to amend was in 2019. Hancock County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hancock County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hancock County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Hancock County). That insignificant dispensing volume is much too low to support a finding of good cause for Hancock County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hancock County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hancock County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Hancock County violated its basic duty to implement a timely litigation hold. Hancock County filed its original complaint on June 12, 2018, but waited until September 16, 2024 to implement a litigation hold—six years and three months later. *See Hancock County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45762-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hancock County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hancock County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hancock County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hancock County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hancock County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hancock County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hancock County's proposed RICO claim against the PBMs has expired. Hancock County filed its original complaint on June 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hancock County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45762-DAP, ECF No. 1. It is therefore indisputable that Hancock County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hancock County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hancock County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hancock County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **655.** ***City of Henderson v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45768-DAP: Plaintiff Henderson City, North Carolina**

Henderson City's untimely motion for leave to amend should be denied for several reasons. Henderson City failed to provide notice of its proposed amendments through a proposed complaint. Henderson City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Henderson City's motion should be denied due to futility, as Henderson City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Henderson City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Henderson City amended its complaint on March 11, 2019, after transfer to the MDL on July 2, 2018. *See City of Henderson v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45768-DAP, ECF No. 5. Unlike many other plaintiffs, Henderson City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Henderson City's deadline to amend was in 2019. Henderson City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Henderson City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Henderson City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Henderson City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Henderson City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Henderson City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Henderson City). That insignificant dispensing volume is much too low to support a finding of good cause for Henderson City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Henderson City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Henderson City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Henderson City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Henderson City, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Henderson City's proposed RICO claim against the PBMs has expired. Henderson City filed its original complaint on June 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Henderson v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45768-DAP, ECF No. 1. It is therefore indisputable that Henderson City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Henderson City's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Henderson City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Henderson City, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **656.** ***Town of Somerset, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45769-DAP: Plaintiff Somerset Town, Massachusetts**

Somerset Town's untimely motion for leave to amend should be denied for several reasons. Somerset Town failed to provide notice of its proposed amendments through a proposed complaint. Somerset Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Somerset Town's motion should be denied due to futility, as Somerset Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Somerset Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Somerset Town amended its complaint on March 8, 2019, after transfer to the MDL on July 2, 2018. *See Town of Somerset, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45769-DAP, ECF No. 10. Unlike many other plaintiffs, Somerset Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Somerset

Town's deadline to amend was in 2019. Somerset Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Somerset Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Somerset Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Somerset Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Somerset Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Somerset Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.01% market share for Somerset Town). That insignificant dispensing volume is much too low to support a finding of good cause for Somerset Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Somerset Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Somerset Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Somerset Town filed its original complaint on June 5, 2018. *See Town of Somerset, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45769-DAP, ECF No. 1. Despite filing its case years ago, Somerset Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Somerset Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Somerset Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Somerset Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Somerset Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying

leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Somerset Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Somerset Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Somerset Town's proposed RICO claim against the PBMs has expired. Somerset Town filed its original complaint on June 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Somerset, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45769-DAP, ECF No. 1. It is therefore indisputable that Somerset Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Somerset Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Somerset Town's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Somerset Town's public-nuisance claim against the PBMs is therefore time-barred because Somerset Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 5, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Somerset Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **657.** ***Town of Tyngsborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45770-DAP: Plaintiff Tyngsborough Town, Massachusetts**

Tyngsborough Town's untimely motion for leave to amend should be denied for several reasons. Tyngsborough Town failed to provide notice of its proposed amendments through a proposed complaint. Tyngsborough Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tyngsborough Town's motion should be denied due to futility, as Tyngsborough Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tyngsborough Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tyngsborough Town amended its complaint on March 7, 2019, after transfer to the MDL on July 2, 2018. *See Town of Tyngsborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45770-DAP, ECF No. 10. Unlike many other plaintiffs, Tyngsborough Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tyngsborough Town's deadline to amend was in 2019. Tyngsborough Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tyngsborough Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Tyngsborough Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Tyngsborough Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tyngsborough Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tyngsborough Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Tyngsborough Town). That insignificant dispensing volume is much too low to support a finding of good cause for Tyngsborough Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tyngsborough Town filed its original complaint on June 5, 2018. *See Town of Tyngsborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45770-DAP, ECF No. 1. Despite filing its case years ago, Tyngsborough Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Tyngsborough Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Tyngsborough Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tyngsborough Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tyngsborough Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tyngsborough Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tyngsborough Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tyngsborough Town's proposed RICO claim against the PBMs has expired. Tyngsborough Town filed its original complaint on June 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Tyngsborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45770-DAP, ECF No. 1. It is therefore indisputable that Tyngsborough Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tyngsborough Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tyngsborough Town's request for leave to amend to add a RICO claim should be denied as futile.

*See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Tyngsborough Town's public-nuisance claim against the PBMs is therefore time-barred because Tyngsborough Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 5, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tyngsborough Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **658.** *City of Parma Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45773-DAP: Plaintiff Parma Heights City, Ohio

Parma Heights City's untimely motion for leave to amend should be denied for several reasons. Parma Heights City failed to provide notice of its proposed amendments through a proposed complaint. Parma Heights City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Parma Heights City's motion should be denied due to futility, as Parma Heights City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Parma Heights City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Parma Heights City amended its complaint on March 15, 2019, after transfer to the MDL on July 2, 2018. *See City of Parma Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45773-DAP, ECF No. 4. Unlike many other plaintiffs, Parma Heights City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Parma Heights City's deadline to amend was in 2019. Parma Heights City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Parma Heights City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Parma Heights City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Parma Heights City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Parma Heights City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Parma Heights City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Parma Heights City). That insignificant dispensing volume is much too low to support a finding of good cause for Parma Heights City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Parma Heights City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Parma Heights City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Parma Heights City of this deficiency on September 16, 2024 (*see* Exhibit B), but Parma Heights City refused to amend or supplement its Fact Sheet. Under this Court's orders, Parma Heights City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Parma Heights City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Parma Heights City's potential claims against them. Parma Heights City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693,

at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Parma Heights City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Parma Heights City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Parma Heights City is a plaintiff in Ohio. Parma Heights City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Parma Heights City's proposed RICO claim against the PBMs has expired. Parma Heights City filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Parma Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45773-DAP, ECF No. 4. It is therefore indisputable that Parma Heights City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before

seeking leave to amend. Parma Heights City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Parma Heights City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Parma Heights City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 659. *Iredell County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45774-DAP: Plaintiff Iredell County, North Carolina

Iredell County's untimely motion for leave to amend should be denied for several reasons. Iredell County failed to provide notice of its proposed amendments through a proposed complaint. Iredell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Iredell County's motion should be denied due to futility, as Iredell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Iredell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Iredell County amended its complaint on March 15, 2019, after transfer to the MDL on July 3, 2018. *See Iredell County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45774-DAP, ECF No. 7. Unlike many other plaintiffs, Iredell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Iredell County's deadline to amend was in 2019.

Iredell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Iredell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Iredell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Iredell County). That insignificant dispensing volume is much too low to support a finding of good cause for Iredell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Iredell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Iredell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Iredell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Iredell County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Iredell County's proposed RICO claim against the PBMs has expired. Iredell County filed its original complaint on June 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Iredell County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45774-DAP, ECF No. 1. It is therefore indisputable that Iredell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Iredell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Iredell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Iredell County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**660.** ***Stone County, Mississippi v. Amerisourcebergen Drug Corporation et al.*,
Case No. 1:18-op-45775-DAP: Plaintiff Stone County, Mississippi**

Stone County's untimely motion for leave to amend should be denied for several reasons. Stone County failed to provide notice of its proposed amendments through a proposed complaint. Stone County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Stone County's motion should be denied due to futility, as Stone County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Stone County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Stone County amended its complaint on March 14, 2019, after transfer to the MDL on July 3, 2018. *See Stone County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45775-DAP, ECF No. 6. Unlike many other plaintiffs, Stone County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Stone County's deadline to amend was in 2019. Stone County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Stone County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Stone County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that

filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Stone County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Stone County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Stone County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Stone County). That insignificant dispensing volume is much too low to support a finding of good cause for Stone County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Stone County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Stone County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Stone County filed its original complaint on May 23, 2018. *See Stone County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45775-DAP, ECF No. 1. Despite filing its case years ago, Stone County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Stone County's case would force the parties and the Court to waste time and resources ascertaining the extent of Stone County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Stone County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Stone County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stone County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Stone County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Stone County seeks leave to amend to add claims against the PBMs in two cases: *Stone County, Mississippi v. Amerisourcebergen Drug Corporation, et al.*, No. 1:18-op-45775-DAP; and *Stone County, Mississippi v. McKesson Corporation, et al.*, No. 1:20-op-45168-DAP. Stone County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Stone County's proposed RICO claim against the PBMs has expired. Stone County filed its amended complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Stone County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45775-DAP, ECF No. 6. It is therefore indisputable that Stone County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Stone County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Stone County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Stone County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 661. *Board of County Commissioners of the County of Santa Fe v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45776-DAP: Plaintiff Santa Fe County, New Mexico

Santa Fe County's untimely motion for leave to amend should be denied for several reasons. Santa Fe County failed to provide notice of its proposed amendments through a proposed complaint. Santa Fe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Santa Fe County's motion should be denied due to futility, as Santa Fe County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Santa Fe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Santa Fe County amended its complaint on March 15, 2019, after transfer to the MDL on July 5, 2018, as well as on July 14, 2021. *See Board of County Commissioners of the County of Santa Fe v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45776-DAP, ECF Nos. 7, 28. Unlike many other plaintiffs, Santa Fe County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Santa Fe County's deadline to amend was in 2019. Santa Fe County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Santa Fe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's

deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Santa Fe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Santa Fe County). That insignificant dispensing volume is much too low to support a finding of good cause for Santa Fe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Santa Fe County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Santa Fe County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Santa Fe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Santa Fe County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Santa Fe County's proposed RICO claim against the PBMs has expired. Santa Fe County filed its original complaint on June 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Santa Fe v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45776-DAP, ECF No. 1. It is therefore indisputable that Santa Fe County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Santa Fe County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Santa Fe County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Santa Fe County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 662. *Worth County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45777-DAP: Plaintiff Worth County, Missouri

Worth County's untimely motion for leave to amend should be denied for several reasons. Worth County failed to provide notice of its proposed amendments through a proposed complaint. Worth County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Worth County's motion should be denied due to futility, as Worth County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Worth County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Worth County amended its complaint on March 14, 2019, after transfer to the MDL on July 5, 2018. *See Worth County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45777-DAP, ECF No. 22. Unlike many other plaintiffs, Worth County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Worth County's deadline to amend was in 2019. Worth County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Worth County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Worth County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Worth County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Worth County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Worth County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Worth County filed its original complaint on June 12, 2018. *See Worth County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45777-DAP, ECF No. 1. Despite filing its case years ago, Worth County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Worth County's case would force the parties and the Court to waste time and resources ascertaining the extent of Worth County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Worth County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Worth County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Worth County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Worth County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Worth County's proposed RICO claim against the PBMs has expired. Worth County filed its original complaint on June 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Worth County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45777-DAP, ECF No. 1. It is therefore indisputable that Worth County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Worth County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Worth County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Worth County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**663.** *Perry County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45778-DAP: Plaintiff Perry County, Mississippi

Perry County's untimely motion for leave to amend should be denied for several reasons. Perry County failed to provide notice of its proposed amendments through a proposed complaint. Perry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Perry County's motion should be denied due to futility, as Perry County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Perry County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Perry County amended its complaint on March 7, 2019, after transfer to the MDL on July 5, 2018. *See Perry County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45778-DAP, ECF No. 7. Unlike many other plaintiffs, Perry County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Perry County's deadline to amend was in 2019. Perry County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Perry County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Perry County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Perry County, through its counsel,

was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Perry County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Perry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Perry County). That insignificant dispensing volume is much too low to support a finding of good cause for Perry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Perry County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Perry County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Perry County violated its basic duty to implement a timely litigation hold. Perry County filed its original complaint on May 23, 2018, but waited until September 25, 2024 to implement a litigation hold—six years and four months later. *See Perry County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45778-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Perry County's case would force the parties and the Court to waste time and resources ascertaining the extent of Perry County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Perry County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Perry County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Perry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Perry County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Perry County's proposed RICO claim against the PBMs has expired. Perry County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Perry County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45778-DAP, ECF No. 7. It is therefore indisputable that Perry County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Perry County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Perry County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Perry County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **664.** *Montgomery County, Kansas v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45780-DAP: Plaintiff Montgomery County, Kansas**

Montgomery County's untimely motion for leave to amend should be denied for several reasons. Montgomery County failed to provide notice of its proposed amendments through a proposed complaint. Montgomery County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Montgomery

County's motion should be denied due to futility, as Montgomery County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Montgomery County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Montgomery County amended its complaint on March 14, 2019, after transfer to the MDL on July 5, 2018. *See Montgomery County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45780-DAP, ECF No. 21. Unlike many other plaintiffs, Montgomery County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Montgomery County's deadline to amend was in 2019. Montgomery County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Montgomery County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Montgomery County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Montgomery County). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Montgomery County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Montgomery County filed its original complaint on June 11, 2018. *See Montgomery County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45780-DAP, ECF No. 1. Despite filing its case years ago, Montgomery County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Montgomery County's case would force the parties and the Court to waste time and resources ascertaining the extent of Montgomery County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Montgomery County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Montgomery County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Montgomery County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Montgomery County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Montgomery County of this deficiency on September 16, 2024 (*see*

Exhibit B), but Montgomery County refused to amend or supplement its Fact Sheet. Under this Court's orders, Montgomery County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Montgomery County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Montgomery County's potential claims against them. Montgomery County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kansas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Montgomery County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kansas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Montgomery County, a municipality in Kansas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Montgomery County's proposed RICO claim against the PBMs has expired. Montgomery County filed its original

complaint on June 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Montgomery County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45780-DAP, ECF No. 1. It is therefore indisputable that Montgomery County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Montgomery County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Montgomery County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Montgomery County, a municipality in Kansas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 665. *Bourbon County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45781-DAP: Plaintiff Bourbon County, Kansas

Bourbon County's untimely motion for leave to amend should be denied for several reasons. Bourbon County failed to provide notice of its proposed amendments through a proposed complaint. Bourbon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bourbon County's motion should be denied due to futility, as Bourbon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bourbon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bourbon County amended its complaint on March 14, 2019, after transfer to the MDL on July 5, 2018. *See Bourbon County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45781-DAP, ECF No. 21. Unlike many other plaintiffs, Bourbon County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bourbon County's deadline to amend was in 2019. Bourbon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bourbon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bourbon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Bourbon County). That insignificant dispensing volume is much too low to support a finding of good cause for Bourbon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bourbon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bourbon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bourbon County filed its original complaint on June 12, 2018. *See Bourbon County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45781-DAP, ECF No. 1. Despite filing its case years ago, Bourbon County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Bourbon County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bourbon County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bourbon County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bourbon County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bourbon County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bourbon County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bourbon County of this deficiency on September 16, 2024 (*see* Exhibit B), but Bourbon County refused to amend or supplement its Fact Sheet. Under this Court's orders, Bourbon County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bourbon County's refusal

to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Bourbon County's potential claims against them. Bourbon County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kansas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bourbon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kansas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bourbon County, a municipality in Kansas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bourbon County's proposed RICO claim against the PBMs has expired. Bourbon County filed its original complaint on June 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bourbon County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45781-DAP, ECF No. 1. It is therefore indisputable that Bourbon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bourbon County's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bourbon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bourbon County, a municipality in Kansas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

666. ***County of Volusia, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45782-DAP: Plaintiff Volusia County, Florida**

Volusia County's untimely motion for leave to amend should be denied for several reasons. Volusia County failed to provide notice of its proposed amendments through a proposed complaint. Volusia County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Volusia County's motion should be denied due to futility, as Volusia County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Volusia County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Volusia County amended its complaint on March 8, 2019, after transfer to the MDL on July 5, 2018. *See County of Volusia, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45782-DAP, ECF No. 10. Unlike many other plaintiffs, Volusia County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Volusia County's

deadline to amend was in 2019. Volusia County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Volusia County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Volusia County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Volusia County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Volusia County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Volusia County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.38% market share for Volusia County). That insignificant dispensing volume is much too

low to support a finding of good cause for Volusia County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Volusia County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Volusia County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Volusia County's proposed RICO claim against the PBMs has expired. Volusia County filed its original complaint on June 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Volusia, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45782-DAP, ECF No. 1. It is therefore indisputable that Volusia County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Volusia County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Volusia County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Volusia County's public-nuisance claim against the PBMs is therefore time-barred because Volusia County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Volusia County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **667.** *Town of Milford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45783-DAP: Plaintiff Milford Town, Massachusetts**

Milford Town's untimely motion for leave to amend should be denied for several reasons. Milford Town failed to provide notice of its proposed amendments through a proposed complaint. Milford Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Milford Town's motion should be denied due to futility, as Milford Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Milford Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Milford Town amended its complaint on March 6, 2019, after transfer to the MDL on July 6, 2018. *See Town of Milford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45783-DAP, ECF No. 10. Unlike many other plaintiffs, Milford Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Milford Town's deadline to amend was in 2019. Milford Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Milford Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Milford Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Milford Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Milford Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Milford Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Milford Town). That insignificant dispensing volume is much too low to support a finding of good cause for Milford Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Milford Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Milford Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Milford Town filed its original complaint on June 11, 2018. *See Town of Milford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45783-DAP, ECF No. 1. Despite filing its case years ago, Milford Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Milford Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Milford Town's document destruction and the appropriate sanctions—just as the parties were forced to do

in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Milford Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Milford Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Milford Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Milford Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Milford Town's proposed RICO claim against the PBMs has expired. Milford Town filed its original complaint on June 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Milford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45783-DAP, ECF No. 1. It is therefore indisputable that Milford Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Milford Town's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Milford Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Milford Town's public-nuisance claim against the PBMs is therefore time-barred because Milford Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 11, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Milford Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 668. ***Town of Munford, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45785-DAP: Plaintiff Munford Town, Alabama**

Munford Town's untimely motion for leave to amend should be denied for several reasons. Munford Town failed to provide notice of its proposed amendments through a proposed complaint. Munford Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Munford Town's motion should be denied due to futility, as Munford Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Munford Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Munford Town amended its complaint on March 15, 2019, after transfer to the MDL on July 6, 2018. *See Town of Munford, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45785-DAP, ECF No. 26. Unlike many other plaintiffs, Munford Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Munford Town's deadline to amend was in 2019. Munford Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Munford Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Munford Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Munford Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Munford Town filed its original complaint on May 29, 2018. *See Town of Munford, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45785-DAP, ECF No. 1. Despite filing its case years ago, Munford Town *never* implemented a litigation

hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Munford Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Munford Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Munford Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Munford Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Munford Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Munford Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Munford Town's proposed RICO claim against the PBMs has expired. Munford Town filed its original complaint on May 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Munford, Alabama v. Actavis, LLC et al.*, Case No. 1:18-op-45785-DAP, ECF No. 1. It is

therefore indisputable that Munford Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Munford Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Munford Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Munford Town's public-nuisance claim against the PBMs is therefore time-barred because Munford Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Munford Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

669. *City of Lincoln, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45786-DAP: Plaintiff Lincoln City, Alabama

Lincoln City's untimely motion for leave to amend should be denied for several reasons. Lincoln City failed to provide notice of its proposed amendments through a proposed complaint. Lincoln City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lincoln City's motion should be denied due to futility, as Lincoln City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lincoln City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lincoln City amended its complaint on March 15, 2019, after transfer to the MDL on July 6, 2018. *See City of Lincoln, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45786-DAP, ECF No. 27. Unlike many other plaintiffs, Lincoln City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lincoln City's deadline to amend was in 2019. Lincoln City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lincoln City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lincoln City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Lincoln City). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lincoln City filed its original complaint on May 29, 2018. *See City of Lincoln, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45786-DAP, ECF No. 1. Despite filing its case years ago, Lincoln City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lincoln City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lincoln City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lincoln City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lincoln City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lincoln City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lincoln City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lincoln City's proposed RICO claim against the PBMs has expired. Lincoln City filed its original complaint on May 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lincoln, Alabama v. Actavis LLC et al.*, Case No. 1:18-op-45786-DAP, ECF No. 1. It is therefore indisputable that Lincoln City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lincoln City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lincoln City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Lincoln City's public-nuisance claim against the PBMs is therefore time-barred because Lincoln City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lincoln City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **670.** ***Town of Norton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45787-DAP: Plaintiff Norton Town, Massachusetts**

Norton Town's untimely motion for leave to amend should be denied for several reasons. Norton Town failed to provide notice of its proposed amendments through a proposed complaint. Norton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Norton Town's motion should be denied due to futility, as Norton Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Norton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Norton Town amended its complaint on March 8, 2019, after transfer to the MDL on July 6, 2018. *See Town of Norton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45787-DAP, ECF No. 10. Unlike many other plaintiffs, Norton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Norton Town's deadline to amend was in 2019. Norton Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Norton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Norton Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Norton Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Norton Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Norton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Norton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Norton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Norton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Norton Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Norton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Norton Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Norton Town's proposed RICO claim against the PBMs has expired. Norton Town filed its original complaint on June 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Norton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45787-DAP, ECF No. 1. It is therefore indisputable that Norton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Norton Town's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Norton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Norton Town's public-nuisance claim against the PBMs is therefore time-barred because Norton Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Norton Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 671. *City of Sandusky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45788-DAP: Plaintiff Sandusky City, Ohio

Sandusky City's untimely motion for leave to amend should be denied for several reasons. Sandusky City failed to provide notice of its proposed amendments through a proposed complaint. Sandusky City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sandusky City's motion should be denied due to futility, as Sandusky City does not assert any allegations tying the PBMs to its

alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sandusky City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sandusky City filed its original complaint on July 9, 2018 and the case was transferred to the MDL. *See City of Sandusky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45788-DAP, ECF No. 1. Sandusky City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Sandusky City elected not to do so. Instead, Sandusky City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sandusky City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sandusky City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Sandusky City). That insignificant dispensing volume is much too low to support a finding of good cause for Sandusky City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sandusky City filed its original complaint on July 9, 2018. *See City of Sandusky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45788-DAP, ECF No. 1. Despite filing its case years ago, Sandusky City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sandusky City's case would force the parties and the Court to waste time and resources ascertaining the extent of Sandusky City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sandusky City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sandusky City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sandusky City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sandusky City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sandusky City of this deficiency on September 16, 2024 (*see* Exhibit B), but Sandusky City refused to amend or supplement its Fact Sheet. Under this Court's orders, Sandusky City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sandusky City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sandusky City's potential claims against them. Sandusky City's failure to diligently prosecute its case,

coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sandusky City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sandusky City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Sandusky City is a plaintiff in Ohio. Sandusky City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Sandusky City's proposed RICO claim against the PBMs has expired. Sandusky City filed its original complaint on June 6, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Sandusky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45788-DAP, ECF

No. 1. Even assuming *arguendo* that Sandusky City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 6, 2022. Sandusky City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sandusky City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sandusky City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 672. *City of Lynn, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45789-DAP: Plaintiff Lynn City, Massachusetts

Lynn City's untimely motion for leave to amend should be denied for several reasons. Lynn City failed to provide notice of its proposed amendments through a proposed complaint. Lynn City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lynn City's motion should be denied due to futility, as Lynn City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lynn City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lynn City amended its complaint on March 6, 2019, after transfer to the MDL on July 10, 2018. *See City of Lynn, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-

op-45789-DAP, ECF No. 9. Unlike many other plaintiffs, Lynn City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lynn City's deadline to amend was in 2019. Lynn City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lynn City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lynn City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lynn City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lynn City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Lynn City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Lynn City). That insignificant dispensing volume is much too low to support a finding of good cause for Lynn City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lynn City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lynn City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lynn City filed its original complaint on June 11, 2018. *See City of Lynn, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45789-DAP, ECF No. 1. Despite filing its case years ago, Lynn City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lynn City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lynn City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lynn City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lynn City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lynn City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lynn City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lynn City's proposed RICO claim against the PBMs has expired. Lynn City filed its original complaint on June 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lynn, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45789-DAP, ECF No. 1. It is therefore indisputable that Lynn City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lynn City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lynn City's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Lynn City's public-nuisance claim against the PBMs is therefore time-barred because Lynn City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 11, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lynn City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **673.** ***Town of West Tisbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45790-DAP: Plaintiff West Tisbury Town, Massachusetts**

West Tisbury Town's untimely motion for leave to amend should be denied for several reasons. West Tisbury Town failed to provide notice of its proposed amendments through a proposed complaint. West Tisbury Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Tisbury Town's motion should be denied due to futility, as West Tisbury Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** West Tisbury Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Tisbury Town amended its complaint on March 7, 2019, after transfer to the MDL on July 10, 2018. *See Town of West Tisbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45790-DAP, ECF No. 11. Unlike many other plaintiffs, West Tisbury Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. West Tisbury Town's deadline to amend was in 2019. West Tisbury Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. West Tisbury Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** West Tisbury Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. West Tisbury Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. West Tisbury Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to West Tisbury Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, West Tisbury Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to West Tisbury Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for West Tisbury Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** West Tisbury Town filed its original complaint on June 12, 2018. *See Town of West Tisbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45790-DAP, ECF No. 1. Despite filing its case years ago, West Tisbury Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455.

Litigating West Tisbury Town's case would force the parties and the Court to waste time and resources ascertaining the extent of West Tisbury Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by West Tisbury Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and West Tisbury Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Tisbury Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Tisbury Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Tisbury Town's proposed RICO claim against the PBMs has expired. West Tisbury Town filed its original complaint on June 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of West Tisbury, Massachusetts v. Amerisourcebergen Drug*

*Corporation et al.*, Case No. 1:18-op-45790-DAP, ECF No. 1. It is therefore indisputable that West Tisbury Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. West Tisbury Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Tisbury Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. West Tisbury Town's public-nuisance claim against the PBMs is therefore time-barred because West Tisbury Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 12, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** West Tisbury Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

674. ***Town of Marblehead, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45791-DAP: Plaintiff Marblehead Town, Massachusetts**

Marblehead Town's untimely motion for leave to amend should be denied for several reasons. Marblehead Town failed to provide notice of its proposed amendments through a

proposed complaint. Marblehead Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marblehead Town's motion should be denied due to futility, as Marblehead Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marblehead Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marblehead Town amended its complaint on March 8, 2019, after transfer to the MDL on July 10, 2018. *See Town of Marblehead, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45791-DAP, ECF No. 10. Unlike many other plaintiffs, Marblehead Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marblehead Town's deadline to amend was in 2019. Marblehead Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marblehead Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marblehead Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the

PBMs in 2019. *See* MDL ECF No. 2582. Marblehead Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marblehead Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marblehead Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Marblehead Town). That insignificant dispensing volume is much too low to support a finding of good cause for Marblehead Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marblehead Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marblehead Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marblehead Town filed its original complaint on June 8, 2018. *See Town of Marblehead, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45791-DAP, ECF No. 1. Despite filing its case years ago, Marblehead Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marblehead Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Marblehead Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marblehead Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marblehead Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marblehead Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marblehead Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marblehead Town's proposed RICO claim against the PBMs has expired. Marblehead Town filed its original complaint on June 8, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Marblehead, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45791-DAP, ECF No. 1. It is therefore indisputable that Marblehead Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Marblehead Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marblehead Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Marblehead Town's public-nuisance claim against the PBMs is therefore time-barred because Marblehead Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 8, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Marblehead Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 675. *Holmes County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45793-DAP: Plaintiff Holmes County, Mississippi

Holmes County's untimely motion for leave to amend should be denied for several reasons. Holmes County failed to provide notice of its proposed amendments through a proposed complaint. Holmes County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Holmes County's motion should be denied due to futility, as Holmes County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Holmes County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Holmes County amended its complaint on March 14, 2019, after transfer to the MDL on July 10, 2018. *See Holmes County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45793-DAP, ECF No. 8. Unlike many other plaintiffs, Holmes County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Holmes County's deadline to amend was in 2019. Holmes County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Holmes County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Holmes County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Holmes County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Holmes County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Holmes County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Holmes County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Holmes County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Holmes County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Holmes County violated its basic duty to implement a timely litigation hold. Holmes County filed its original complaint on June 20, 2018, but waited until December 14, 2019 to implement a litigation hold—one and a half years later. *See Holmes County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45793-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 14, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Holmes County's case would force the parties and the Court to waste time and resources ascertaining the extent of Holmes County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Holmes County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Holmes County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Holmes County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Holmes County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Holmes County of this deficiency on September 16, 2024 (*see* Exhibit B), but Holmes County refused to amend or supplement its Fact Sheet. Under this Court's orders, Holmes

County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Holmes County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Holmes County's potential claims against them. Holmes County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Holmes County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Holmes County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Holmes County's proposed RICO claim against the PBMs has expired. Holmes County filed its amended complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Holmes County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-

op-45793-DAP, ECF No. 8. It is therefore indisputable that Holmes County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Holmes County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Holmes County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Holmes County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 676. *Nodaway County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45795-DAP: Plaintiff Nodaway County, Missouri

Nodaway County's untimely motion for leave to amend should be denied for several reasons. Nodaway County failed to provide notice of its proposed amendments through a proposed complaint. Nodaway County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nodaway County's motion should be denied due to futility, as Nodaway County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Nodaway County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nodaway County amended its complaint on March 14, 2019, after transfer to the MDL

on July 10, 2018. *See Nodaway County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45795-DAP, ECF No. 20. Unlike many other plaintiffs, Nodaway County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Nodaway County's deadline to amend was in 2019. Nodaway County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Nodaway County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Nodaway County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Nodaway County). That insignificant dispensing volume is much too low to support a finding of good cause for Nodaway County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Nodaway County filed its original complaint on June 13, 2018. *See Nodaway County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45795-DAP, ECF No. 1. Despite filing its case years ago, Nodaway County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Nodaway County's case would force the parties and the Court to waste time and resources ascertaining the extent of

Nodaway County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Nodaway County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Nodaway County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nodaway County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nodaway County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nodaway County's proposed RICO claim against the PBMs has expired. Nodaway County filed its original complaint on June 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Nodaway County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45795-DAP, ECF No. 1. It is therefore indisputable that Nodaway County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before

seeking leave to amend. Nodaway County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nodaway County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nodaway County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 677. *Atchison County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45797-DAP: Plaintiff Atchison County, Missouri

Atchison County's untimely motion for leave to amend should be denied for several reasons. Atchison County failed to provide notice of its proposed amendments through a proposed complaint. Atchison County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Atchison County's motion should be denied due to futility, as Atchison County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Atchison County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Atchison County amended its complaint on March 14, 2019, after transfer to the MDL on July 10, 2018. *See Atchison County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45797-DAP, ECF No. 22. Unlike many other plaintiffs, Atchison County declined to add

claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Atchison County's deadline to amend was in 2019. Atchison County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Atchison County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Atchison County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Atchison County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Atchison County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Atchison County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Atchison County filed its original complaint on June 13, 2018. *See Atchison County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45797-DAP, ECF No. 1. Despite filing its case years ago, Atchison County

*never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Atchison County's case would force the parties and the Court to waste time and resources ascertaining the extent of Atchison County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Atchison County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Atchison County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Atchison County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Atchison County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Atchison County of this deficiency on September 16, 2024 (*see* Exhibit B), but Atchison County refused to amend or supplement its Fact Sheet. Under this Court's orders, Atchison County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Atchison County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Atchison County's potential claims against them. Atchison County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Atchison County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Atchison County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Atchison County's proposed RICO claim against the PBMs has expired. Atchison County filed its original complaint on June 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Atchison County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45797-DAP, ECF No. 1. It is therefore indisputable that Atchison County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Atchison County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Atchison County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Atchison County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **678.** *City of Saint Joseph, Missouri v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45798-DAP: Plaintiff St. Joseph City, Missouri**

St. Joseph City's untimely motion for leave to amend should be denied for several reasons. St. Joseph City failed to provide notice of its proposed amendments through a proposed complaint. St. Joseph City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Joseph City's motion should be denied due to futility, as St. Joseph City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Joseph City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Joseph City amended its complaint on March 14, 2019, after transfer to the MDL on July 10, 2018. *See City of Saint Joseph, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45798-DAP, ECF No. 22. Unlike many other plaintiffs, St. Joseph City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Joseph City's deadline to amend was in 2019. St. Joseph City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Joseph City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Joseph City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for St. Joseph City). That insignificant dispensing volume is much too low to support a finding of good cause for St. Joseph City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Joseph City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Joseph City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Joseph City filed its original complaint on June 13, 2018. *See City of Saint Joseph, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45798-DAP, ECF No. 1. Despite filing its case years ago, St. Joseph City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating St. Joseph City's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Joseph City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by St. Joseph City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Joseph City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, St. Joseph City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to St. Joseph City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified St. Joseph City of this deficiency on September 16, 2024 (*see* Exhibit B), but St. Joseph City refused to amend or supplement its Fact Sheet. Under this Court's orders, St. Joseph City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. St. Joseph City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against St. Joseph City's potential claims against them. St. Joseph City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Joseph City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Joseph City, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Joseph City's proposed RICO claim against the PBMs has expired. St. Joseph City filed its original complaint on June 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Saint Joseph, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45798-DAP, ECF No. 1. It is therefore indisputable that St. Joseph City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. Joseph City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Joseph City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Joseph City, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**679.** *Rowan County v. AmerisourceBergen Drug Corporation, et al.*, **Case No. 1:18-op-45799-DAP: Plaintiff Rowan County, North Carolina**

Rowan County's untimely motion for leave to amend should be denied for several reasons. Rowan County failed to provide notice of its proposed amendments through a proposed complaint. Rowan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rowan County's motion should be denied due to futility, as Rowan County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rowan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rowan County amended its complaint on March 12, 2019, after transfer to the MDL on July 10, 2018. *See Rowan County v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45799-DAP, ECF No. 6. Unlike many other plaintiffs, Rowan County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rowan County's deadline to amend was in 2019. Rowan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rowan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rowan County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Rowan County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Rowan County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rowan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Rowan County). That insignificant dispensing volume is much too low to support a finding of good cause for Rowan County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rowan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rowan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Rowan County filed its original complaint on June 20, 2018. *See Rowan County v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45799-DAP, ECF No. 1. Despite filing its case years ago, Rowan County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Rowan County's case would force the parties and the Court to waste time and resources ascertaining the extent of Rowan County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rowan County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rowan County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rowan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rowan County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rowan County's proposed RICO claim against the PBMs has expired. Rowan County filed its original complaint on June 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rowan County v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-45799-DAP, ECF No. 1. It is therefore indisputable that Rowan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Rowan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rowan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rowan County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **680.** *City of Lakewood, CO et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45800-DAP: Plaintiff Wheat Ridge City, Colorado

Wheat Ridge City's untimely motion for leave to amend should be denied for several reasons. Wheat Ridge City failed to provide notice of its proposed amendments through a proposed complaint. Wheat Ridge City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wheat Ridge City's motion should be denied due to futility, as

Wheat Ridge City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wheat Ridge City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wheat Ridge City amended its complaint on March 15, 2019, after transfer to the MDL on July 10, 2018. *See City of Lakewood, CO et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45800-DAP, ECF No. 8. Unlike many other plaintiffs, Wheat Ridge City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wheat Ridge City's deadline to amend was in 2019. Wheat Ridge City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wheat Ridge City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wheat Ridge City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wheat Ridge City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wheat Ridge City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close

of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wheat Ridge City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Wheat Ridge City). That insignificant dispensing volume is much too low to support a finding of good cause for Wheat Ridge City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wheat Ridge City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wheat Ridge City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wheat Ridge City filed its original complaint on June 8, 2018. *See City of Lakewood, CO et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45800-DAP, ECF No. 1. Despite filing its case years ago, Wheat Ridge City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wheat Ridge City's case would force the

parties and the Court to waste time and resources ascertaining the extent of Wheat Ridge City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wheat Ridge City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wheat Ridge City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wheat Ridge City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wheat Ridge City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wheat Ridge City's proposed RICO claim against the PBMs has expired. Wheat Ridge City filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lakewood, CO et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45800-DAP, ECF No. 8. It is therefore indisputable that Wheat Ridge City knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Wheat Ridge City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wheat Ridge City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wheat Ridge City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 681. *Dane County, Wisconsin v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45802-DAP: Plaintiff Dane County, Wisconsin

Dane County's untimely motion for leave to amend should be denied for several reasons. Dane County failed to provide notice of its proposed amendments through a proposed complaint. Dane County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Dane County's motion should be denied due to futility, as Dane County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dane County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dane County amended its complaint on March 13, 2019, after transfer to the MDL on July 10, 2018. *See Dane County, Wisconsin v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45802-DAP, ECF No. 6. Unlike many other plaintiffs, Dane County declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Dane County's deadline to amend was in 2019. Dane County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dane County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Dane County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Dane County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Dane County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dane County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

2608

Decl. (0.04% market share for Dane County). That insignificant dispensing volume is much too low to support a finding of good cause for Dane County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dane County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dane County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dane County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dane County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dane County's proposed RICO claim against the PBMs has expired. Dane County filed its original complaint on June 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*Dane County, Wisconsin v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45802-DAP, ECF No. 1. It is therefore indisputable that Dane County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Dane County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dane County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dane County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 682. *Pike County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45803-DAP: Plaintiff Pike County, Alabama

Pike County's untimely motion for leave to amend should be denied for several reasons. Pike County failed to provide notice of its proposed amendments through a proposed complaint. Pike County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pike County's motion should be denied due to futility, as Pike County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pike County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Pike County amended its complaint on March 8, 2019, after transfer to the MDL on July 11, 2018. *See Pike County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45803-DAP, ECF No. 6. Unlike many other plaintiffs, Pike County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pike County's deadline to amend was in 2019. Pike County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pike County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pike County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pike County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pike County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pike County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Pike County). That insignificant dispensing volume is much too low to support a finding of good cause for Pike County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pike County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pike County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pike County filed its original complaint on June 15, 2018. *See Pike County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45803-DAP, ECF No. 1. Despite filing its case years ago, Pike County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pike County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pike County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pike County's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Pike County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pike County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pike County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pike County's proposed RICO claim against the PBMs has expired. Pike County filed its original complaint on June 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pike County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45803-DAP, ECF No. 1. It is therefore indisputable that Pike County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pike County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pike County's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Pike County's public-nuisance claim against the PBMs is therefore time-barred because Pike County sought leave to amend its complaint on July 29, 2024— six years after filing its original complaint on June 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Pike County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Pike County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 683. *City of Pinellas Park v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45807-DAP: Plaintiff Pinellas Park City, Florida

Pinellas Park City's untimely motion for leave to amend should be denied for several reasons. Pinellas Park City failed to provide notice of its proposed amendments through a proposed complaint. Pinellas Park City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pinellas Park City's motion should be denied due to

futility, as Pinellas Park City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pinellas Park City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pinellas Park City amended its complaint on March 8, 2019, after transfer to the MDL on July 11, 2018. *See City of Pinellas Park v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45807-DAP, ECF No. 8. Unlike many other plaintiffs, Pinellas Park City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pinellas Park City's deadline to amend was in 2019. Pinellas Park City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pinellas Park City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pinellas Park City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pinellas Park City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pinellas Park City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pinellas Park City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.25% market share for Pinellas Park City). That insignificant dispensing volume is much too low to support a finding of good cause for Pinellas Park City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pinellas Park City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pinellas Park City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Pinellas Park City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Pinellas Park City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Pinellas Park City of this deficiency on September 16, 2024 (*see*

Exhibit B), but Pinellas Park City refused to amend or supplement its Fact Sheet. Under this Court's orders, Pinellas Park City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Pinellas Park City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Pinellas Park City's potential claims against them. Pinellas Park City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pinellas Park City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pinellas Park City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pinellas Park City's proposed RICO claim against the PBMs has expired. Pinellas Park City filed its original complaint on June

15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Pinellas Park v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45807-DAP, ECF No. 1. It is therefore indisputable that Pinellas Park City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pinellas Park City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pinellas Park City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Pinellas Park City's public-nuisance claim against the PBMs is therefore time-barred because Pinellas Park City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Pinellas Park City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**684.** ***Town of Plainville, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45808-DAP: Plaintiff Plainville Town, Massachusetts**

Plainville Town's untimely motion for leave to amend should be denied for several reasons. Plainville Town failed to provide notice of its proposed amendments through a proposed complaint. Plainville Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Plainville Town's motion should be denied due to futility, as Plainville Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Plainville Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Plainville Town amended its complaint on March 7, 2019, after transfer to the MDL on July 11, 2018. *See Town of Plainville, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45808-DAP, ECF No. 10. Unlike many other plaintiffs, Plainville Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Plainville Town's deadline to amend was in 2019. Plainville Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Plainville Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Plainville Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Plainville Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Plainville Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Plainville Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Plainville Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Plainville Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Plainville Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Plainville Town filed its original complaint on May 31, 2018. *See Town of Plainville, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45808-DAP, ECF No. 1. Despite filing its case years ago, Plainville Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Plainville Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Plainville Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Plainville Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Plainville Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Plainville Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Plainville Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Plainville Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Plainville Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Plainville Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Plainville Town's refusal to

provide basic information related to its health care plans prejudices the PBMs' ability to defend against Plainville Town's potential claims against them. Plainville Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Plainville Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Plainville Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Plainville Town's proposed RICO claim against the PBMs has expired. Plainville Town filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Plainville, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45808-DAP, ECF No. 1. It is therefore indisputable that Plainville Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before

seeking leave to amend. Plainville Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Plainville Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Plainville Town's public-nuisance claim against the PBMs is therefore time-barred because Plainville Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Plainville Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **685.** *Town of Spencer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45809-DAP: Plaintiff Spencer Town, Massachusetts**

Spencer Town's untimely motion for leave to amend should be denied for several reasons. Spencer Town failed to provide notice of its proposed amendments through a proposed complaint. Spencer Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Spencer Town's motion should be denied due to futility, as Spencer Town does not

assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Spencer Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Spencer Town amended its complaint on March 8, 2019, after transfer to the MDL on July 11, 2018. *See Town of Spencer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45809-DAP, ECF No. 9. Unlike many other plaintiffs, Spencer Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Spencer Town's deadline to amend was in 2019. Spencer Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Spencer Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Spencer Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Spencer Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Spencer Town fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Spencer Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Spencer Town). That insignificant dispensing volume is much too low to support a finding of good cause for Spencer Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Spencer Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Spencer Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Spencer Town filed its original complaint on May 31, 2018. *See Town of Spencer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45809-DAP, ECF No. 1. Despite filing its case years ago, Spencer Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See*

ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Spencer Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Spencer Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Spencer Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Spencer Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Spencer Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Spencer Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Spencer Town's proposed RICO claim against the PBMs has expired. Spencer Town filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Spencer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-

op-45809-DAP, ECF No. 1. It is therefore indisputable that Spencer Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Spencer Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Spencer Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Spencer Town's public-nuisance claim against the PBMs is therefore time-barred because Spencer Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Spencer Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

686. ***Town of Sutton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45810-DAP: Plaintiff Sutton Town, Massachusetts**

Sutton Town's untimely motion for leave to amend should be denied for several reasons. Sutton Town failed to provide notice of its proposed amendments through a proposed complaint. Sutton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sutton Town's motion should be denied due to futility, as Sutton Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sutton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sutton Town amended its complaint on March 7, 2019, after transfer to the MDL on July 11, 2018. *See Town of Sutton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45810-DAP, ECF No. 9. Unlike many other plaintiffs, Sutton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sutton Town's deadline to amend was in 2019. Sutton Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sutton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sutton Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sutton Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Sutton Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sutton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Sutton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Sutton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sutton Town filed its original complaint on May 31, 2018. *See Town of Sutton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45810-DAP, ECF No. 1. Despite filing its case years ago, Sutton Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sutton Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Sutton Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Sutton Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sutton Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sutton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sutton Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sutton Town's proposed RICO claim against the PBMs has expired. Sutton Town filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Sutton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45810-DAP, ECF No. 1. It is therefore indisputable that Sutton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sutton Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery

of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Sutton Town's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend

because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are

subject to a three-year limitations period. Sutton Town's public-nuisance claim against the PBMs

is therefore time-barred because Sutton Town sought leave to amend its complaint on July 29,

2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment

does not relate back to the original filing for purposes of the applicable statute of limitations. *See*

*Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new

party creates a new cause of action and there is no relation back to the original filing for purposes

of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sutton Town, a municipality in Massachusetts, lacks standing

to state a claim for relief under any of the New York laws referenced in the City of Rochester's

complaint. *See* Section III.B.6, above.

687. ***Town of Warren, Massachusetts, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45811-DAP: Plaintiff Warren Town, Massachusetts**

Warren Town's untimely motion for leave to amend should be denied for several reasons.

Warren Town failed to provide notice of its proposed amendments through a proposed complaint.

Warren Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Warren Town's motion should be denied due to futility, as Warren Town does not assert

any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred

by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Warren Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Warren Town amended its complaint on March 7, 2019, after transfer to the MDL on July 11, 2018. *See Town of Warren, Massachusetts, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45811-DAP, ECF No. 9. Unlike many other plaintiffs, Warren Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Warren Town's deadline to amend was in 2019. Warren Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Warren Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Warren Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Warren Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Warren Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Warren Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Warren Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Warren Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Warren Town filed its original complaint on May 31, 2018. *See Town of Warren, Massachusetts, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45811-DAP, ECF No. 1. Despite filing its case years ago, Warren Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Warren Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Warren Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Warren Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Warren Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Warren Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Warren Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Warren Town's proposed RICO claim against the PBMs has expired. Warren Town filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Warren, Massachusetts, et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45811-DAP, ECF No. 1. It is therefore indisputable that Warren Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Warren Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Warren Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

      **Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Warren Town's public-nuisance claim against the PBMs is therefore time-barred because Warren Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

      **Plaintiff Lacks Standing.** Warren Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

      **688.** ***Town of West Springfield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45813-DAP: Plaintiff West Springfield Town City, Massachusetts**

      West Springfield Town City's untimely motion for leave to amend should be denied for several reasons. West Springfield Town City failed to provide notice of its proposed amendments through a proposed complaint. West Springfield Town City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Springfield Town City's motion should be denied due to futility, as West Springfield Town City does not assert any allegations tying the PBMs to its alleged harm, its

proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** West Springfield Town City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Springfield Town City amended its complaint on March 7, 2019, after transfer to the MDL on July 11, 2018. *See Town of West Springfield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45813-DAP, ECF No. 11. Unlike many other plaintiffs, West Springfield Town City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. West Springfield Town City's deadline to amend was in 2019. West Springfield Town City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. West Springfield Town City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** West Springfield Town City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. West Springfield Town City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. West Springfield Town City fails to explain why it was

unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to West Springfield Town City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for West Springfield Town City). That insignificant dispensing volume is much too low to support a finding of good cause for West Springfield Town City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to West Springfield Town City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for West Springfield Town City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Springfield Town City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those

allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Springfield Town City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Springfield Town City's proposed RICO claim against the PBMs has expired. West Springfield Town City filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of West Springfield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45813-DAP, ECF No. 1. It is therefore indisputable that West Springfield Town City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. West Springfield Town City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Springfield Town City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. West Springfield Town City's public-nuisance claim against the PBMs is therefore time-barred because West Springfield Town City sought leave to

amend its complaint on July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** West Springfield Town City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 689. ***Town of Winthrop, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45814-DAP: Plaintiff Winthrop Town City, Massachusetts**

Winthrop Town City's untimely motion for leave to amend should be denied for several reasons. Winthrop Town City failed to provide notice of its proposed amendments through a proposed complaint. Winthrop Town City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winthrop Town City's motion should be denied due to futility, as Winthrop Town City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winthrop Town City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Winthrop Town City amended its complaint on March 7, 2019, after transfer to the MDL on July 11, 2018. *See Town of Winthrop, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45814-DAP, ECF No. 11. Unlike many other plaintiffs, Winthrop Town City declined to add claims against the PBMs in its amended complaint. *See*

Section II.A.1, above. Winthrop Town City's deadline to amend was in 2019. Winthrop Town City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Winthrop Town City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Winthrop Town City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Winthrop Town City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Winthrop Town City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Winthrop Town City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Winthrop Town City). That insignificant dispensing volume is much too low to support a finding of good cause for Winthrop Town City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Winthrop Town City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Winthrop Town City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Winthrop Town City filed its original complaint on May 31, 2018. *See Town of Winthrop, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45814-DAP, ECF No. 1. Despite filing its case years ago, Winthrop Town City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Winthrop Town City's case would force the parties and the Court to waste time and resources ascertaining the extent of Winthrop Town City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Winthrop Town City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Winthrop Town City therefore lacks good cause for leave to amend its complaint. *See Pethtel*,

2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winthrop Town City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winthrop Town City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winthrop Town City's proposed RICO claim against the PBMs has expired. Winthrop Town City filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Winthrop, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45814-DAP, ECF No. 1. It is therefore indisputable that Winthrop Town City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Winthrop Town City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winthrop Town City's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Winthrop Town City's public-nuisance claim against the PBMs is therefore time-barred because Winthrop Town City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Winthrop Town City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **690.** ***Town of Norwell, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45815-DAP: Plaintiff Norwell Town, Massachusetts**

Norwell Town's untimely motion for leave to amend should be denied for several reasons. Norwell Town failed to provide notice of its proposed amendments through a proposed complaint. Norwell Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Norwell Town's motion should be denied due to futility, as Norwell Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Norwell Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Norwell Town amended its complaint on March 7, 2019, after transfer to the MDL on July 11, 2018. *See Town of Norwell, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45815-DAP, ECF No. 10. Unlike many other plaintiffs, Norwell Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Norwell Town's deadline to amend was in 2019. Norwell Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Norwell Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Norwell Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Norwell Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Norwell Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Norwell Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Norwell Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Norwell Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Norwell Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Norwell Town filed its original complaint on May 31, 2018. *See Town of Norwell, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45815-DAP, ECF No. 1. Despite filing its case years ago, Norwell Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Norwell Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Norwell Town's document destruction and the appropriate sanctions—just as the parties

were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024.

The PBMs are prejudiced by Norwell Town's disregard for its most basic discovery obligations as

a litigant, compounded by the delay in seeking leave to amend, and Norwell Town therefore lacks

good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of

documents or records); *see also* Section III.A.4, above.

      **Failure to Prosecute.** In its Plaintiff Fact Sheet, Norwell Town failed to provide complete

answers to Questions I.B.8 and I.B.9, relating to Norwell Town's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs

notified Norwell Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Norwell

Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Norwell Town's

case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at

1 (emphasis in original); *see* Section III.A.5, above. Norwell Town's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Norwell

Town's potential claims against them. Norwell Town's failure to diligently prosecute its case,

coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to

dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as

moot because claims were dismissed for failure to prosecute).

      **Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right

to seek to allocate fault to other parties. *See* Section III.A.6, above. But Norwell Town's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Norwell Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Norwell Town's proposed RICO claim against the PBMs has expired. Norwell Town filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Norwell, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45815-DAP, ECF No. 1. It is therefore indisputable that Norwell Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Norwell Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Norwell Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Norwell Town's public-nuisance claim against the PBMs is therefore time-barred because Norwell Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment

does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Norwell Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

691. ***Town of Truro, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45816-DAP: Plaintiff Truro Town, Massachusetts**

Truro Town's untimely motion for leave to amend should be denied for several reasons. Truro Town failed to provide notice of its proposed amendments through a proposed complaint. Truro Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Truro Town's motion should be denied due to futility, as Truro Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Truro Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Truro Town amended its complaint on March 7, 2019, after transfer to the MDL on July 11, 2018. *See Town of Truro, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45816-DAP, ECF No. 10. Unlike many other plaintiffs, Truro Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Truro Town's deadline to amend was in 2019. Truro Town waited five years after its deadline to amend to seek leave to

assert claims against the PBMs. Truro Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Truro Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Truro Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Truro Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Truro Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the

case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Truro Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Truro Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Truro Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Truro Town filed its original complaint on May 31, 2018. *See Town of Truro, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45816-DAP, ECF No. 1. Despite filing its case years ago, Truro Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Truro Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Truro Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Truro Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Truro Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Truro Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

      **Failure to State a Claim.** Truro Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

      **RICO Statute of Limitations.** The statute of limitations for Truro Town's proposed RICO claim against the PBMs has expired. Truro Town filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Truro, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45816-DAP, ECF No. 1. It is therefore indisputable that Truro Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Truro Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Truro Town's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Truro Town's public-nuisance claim against the PBMs is therefore time-barred because Truro Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Truro Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 692. *Cobb County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45817-DAP: Plaintiff Cobb County, Georgia

Cobb County's untimely motion for leave to amend should be denied for several reasons. Cobb County failed to provide notice of its proposed amendments through a proposed complaint. Cobb County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cobb County's motion should be denied due to futility, as Cobb County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cobb County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Cobb County amended its complaint on March 15, 2019, after transfer to the MDL on July 11, 2018, as well as on July 14, 2021. *See Cobb County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45817-DAP, ECF Nos. 6, 22. Unlike many other plaintiffs, Cobb County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Cobb County's deadline to amend was in 2019. Cobb County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cobb County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cobb County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Cobb County). That insignificant dispensing volume is much too low to support a finding of good cause for Cobb County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cobb County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cobb County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Cobb County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Cobb County of the PBM services Express Scripts provides and Cobb County began receiving those services on March 1, 2006. *See id.* Inasmuch as Cobb County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Cobb County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Cobb County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Cobb County violated its basic duty to implement a timely litigation hold. Cobb County filed its original complaint on June 12, 2018, but waited until May 13, 2021 to implement a litigation hold—nearly three years later. *See Cobb County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45817-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 13, 2021). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Cobb County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cobb County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cobb County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cobb County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cobb County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Cobb County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cobb County's proposed RICO claim against the PBMs has expired. Cobb County filed its original complaint on June 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cobb County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45817-DAP, ECF No. 1. It is therefore indisputable that Cobb County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cobb County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cobb County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cobb County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **693.** *Town of Middletown, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45818-DAP: Plaintiff Middletown Town, Rhode Island**

Middletown Town's untimely motion for leave to amend should be denied for several reasons. Middletown Town failed to provide notice of its proposed amendments through a proposed complaint. Middletown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Middletown Town's motion should be denied due to futility, as Middletown Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Middletown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Middletown Town amended its complaint on March 12, 2019, after transfer to the MDL on July 11, 2018. *See Town of Middletown, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45818-DAP, ECF No. 7. Unlike many other plaintiffs, Middletown Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Middletown Town's deadline to amend was in 2019. Middletown Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Middletown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Middletown Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Middletown Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Middletown Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Middletown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Middletown Town). That insignificant dispensing volume is much too low to support a finding of good cause for Middletown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Middletown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Middletown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Middletown Town filed its original complaint on June 13, 2018. *See Town of Middletown, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45818-DAP, ECF No. 1. Despite filing its case years ago, Middletown Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Middletown Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Middletown Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Middletown Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Middletown Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Middletown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Middletown Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Middletown Town's proposed RICO claim against the PBMs has expired. Middletown Town filed its original complaint on June 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Middletown, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45818-DAP, ECF No. 1. It is therefore indisputable that Middletown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Middletown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Middletown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Middletown Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 694. ***Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Chesapeake Hospital Corporation, Virginia**

Chesapeake Hospital Corporation's untimely motion for leave to amend should be denied for several reasons. Chesapeake Hospital Corporation failed to provide notice of its proposed amendments through a proposed complaint. Chesapeake Hospital Corporation also lacks good

cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chesapeake Hospital Corporation's motion should be denied due to futility, as Chesapeake Hospital Corporation does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chesapeake Hospital Corporation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chesapeake Hospital Corporation amended its complaint on March 15, 2019, after directly filing in the MDL. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 22. Unlike many other plaintiffs, Chesapeake Hospital Corporation declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Chesapeake Hospital Corporation's deadline to amend was in 2019. Chesapeake Hospital Corporation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chesapeake Hospital Corporation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Chesapeake Hospital Corporation filed its original complaint on July 12, 2018. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. Despite filing its case years ago, Chesapeake

Hospital Corporation *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chesapeake Hospital Corporation's case would force the parties and the Court to waste time and resources ascertaining the extent of Chesapeake Hospital Corporation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chesapeake Hospital Corporation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chesapeake Hospital Corporation therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chesapeake Hospital Corporation's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chesapeake Hospital Corporation, a hospital in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chesapeake Hospital Corporation's proposed RICO claim against the PBMs has expired. Chesapeake Hospital Corporation filed its original complaint on July 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. It is therefore indisputable that Chesapeake Hospital Corporation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Chesapeake Hospital Corporation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chesapeake Hospital Corporation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chesapeake Hospital Corporation, a hospital in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 695. *Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Mary Immaculate Hospital, Incorporated, Virginia

Mary Immaculate Hospital, Incorporated's untimely motion for leave to amend should be denied for several reasons. Mary Immaculate Hospital, Incorporated failed to provide notice of its proposed amendments through a proposed complaint. Mary Immaculate Hospital, Incorporated also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mary Immaculate Hospital, Incorporated's motion should be denied due to futility, as Mary

Immaculate Hospital, Incorporated does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mary Immaculate Hospital, Incorporated was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mary Immaculate Hospital, Incorporated amended its complaint on March 15, 2019, after directly filing in the MDL. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 22. Unlike many other plaintiffs, Mary Immaculate Hospital, Incorporated declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mary Immaculate Hospital, Incorporated's deadline to amend was in 2019. Mary Immaculate Hospital, Incorporated waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mary Immaculate Hospital, Incorporated's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Mary Immaculate Hospital, Incorporated filed its original complaint on July 12, 2018. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. Despite filing its case years ago, Mary Immaculate Hospital, Incorporated *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF

Nos. 232; 5455. Litigating Mary Immaculate Hospital, Incorporated's case would force the parties

and the Court to waste time and resources ascertaining the extent of Mary Immaculate Hospital,

Incorporated's document destruction and the appropriate sanctions—just as the parties were forced

to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs

are prejudiced by Mary Immaculate Hospital, Incorporated's disregard for its most basic discovery

obligations as a litigant, compounded by the delay in seeking leave to amend, and Mary

Immaculate Hospital, Incorporated therefore lacks good cause for leave to amend its complaint.

*See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

time resulted in significant prejudice due to the loss of documents or records); *see also* Section

III.A.4, above.

      **Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek

to allocate fault to other parties. *See* Section III.A.6, above. But Mary Immaculate Hospital,

Incorporated's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise

those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time.

That impairment substantially prejudices the PBMs in their ability to defend themselves. *See

Pethtel*, 2020 WL 6827791, at *28.

      **Failure to State a Claim.** Mary Immaculate Hospital, Incorporated, a hospital in Virginia,

has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently

situated plaintiff from another state. *See* Section III.B.1, above.

      **RICO Statute of Limitations.** The statute of limitations for Mary Immaculate Hospital,

Incorporated's proposed RICO claim against the PBMs has expired. Mary Immaculate Hospital,

Incorporated filed its original complaint on July 12, 2018, alleging the same type of injuries *and*

alleging a RICO claim against other defendants. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. It is therefore indisputable that Mary Immaculate Hospital, Incorporated knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mary Immaculate Hospital, Incorporated's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mary Immaculate Hospital, Incorporated's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mary Immaculate Hospital, Incorporated, a hospital in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 696. *Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Maryview Hospital, Virginia

Maryview Hospital's untimely motion for leave to amend should be denied for several reasons. Maryview Hospital failed to provide notice of its proposed amendments through a proposed complaint. Maryview Hospital also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Maryview Hospital's motion should be denied due to futility, as Maryview Hospital does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Maryview Hospital was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Maryview Hospital amended its complaint on March 15, 2019, after directly filing in the MDL. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 22. Unlike many other plaintiffs, Maryview Hospital declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Maryview Hospital's deadline to amend was in 2019. Maryview Hospital waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Maryview Hospital's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Maryview Hospital filed its original complaint on July 12, 2018. *See Bon Secours Health System, Inc. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. Despite filing its case years ago, Maryview Hospital *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Maryview Hospital's case would force the parties and the Court to waste time and resources ascertaining the extent of Maryview Hospital's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Maryview Hospital's disregard for its most basic

discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Maryview Hospital therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Maryview Hospital's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Maryview Hospital, a hospital in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Maryview Hospital's proposed RICO claim against the PBMs has expired. Maryview Hospital filed its original complaint on July 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. It is therefore indisputable that Maryview Hospital knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Maryview Hospital's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Maryview Hospital's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Maryview Hospital, a hospital in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 697. ***Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Memorial Regional Medical Center, Inc., Virginia**

Memorial Regional Medical Center, Inc.'s untimely motion for leave to amend should be denied for several reasons. Memorial Regional Medical Center, Inc. failed to provide notice of its proposed amendments through a proposed complaint. Memorial Regional Medical Center, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Memorial Regional Medical Center, Inc.'s motion should be denied due to futility, as Memorial Regional Medical Center, Inc. does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Memorial Regional Medical Center, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Memorial Regional Medical Center, Inc. amended its complaint on March 15, 2019, after directly filing in the MDL. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 22. Unlike many other plaintiffs, Memorial Regional Medical Center, Inc. declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Memorial Regional Medical Center, Inc.'s deadline

to amend was in 2019. Memorial Regional Medical Center, Inc. waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Memorial Regional Medical Center, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Memorial Regional Medical Center, Inc. filed its original complaint on July 12, 2018. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. Despite filing its case years ago, Memorial Regional Medical Center, Inc. *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Memorial Regional Medical Center, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of Memorial Regional Medical Center, Inc.'s document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Memorial Regional Medical Center, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Memorial Regional Medical Center, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Memorial Regional Medical Center, Inc.'s delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Memorial Regional Medical Center, Inc., a hospital in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Memorial Regional Medical Center, Inc.'s proposed RICO claim against the PBMs has expired. Memorial Regional Medical Center, Inc. filed its original complaint on July 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. It is therefore indisputable that Memorial Regional Medical Center, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Memorial Regional Medical Center, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Memorial Regional Medical Center, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Memorial Regional Medical Center, Inc., a hospital in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **698.** ***Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff Richmond Community Hospital, Incorporated, Virginia**

Richmond Community Hospital, Incorporated's untimely motion for leave to amend should be denied for several reasons. Richmond Community Hospital, Incorporated failed to provide notice of its proposed amendments through a proposed complaint. Richmond Community Hospital, Incorporated also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Richmond Community Hospital, Incorporated's motion should be denied due to futility, as Richmond Community Hospital, Incorporated does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Richmond Community Hospital, Incorporated was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Richmond Community Hospital, Incorporated amended its complaint on March 15, 2019, after directly filing in the MDL. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 22. Unlike many other plaintiffs, Richmond Community Hospital, Incorporated declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Richmond Community Hospital, Incorporated's deadline to amend was in 2019. Richmond Community Hospital, Incorporated waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Richmond Community Hospital, Incorporated's lack of diligence in pursuing its claims negates

any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Richmond Community Hospital, Incorporated filed its original complaint on July 12, 2018. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. Despite filing its case years ago, Richmond Community Hospital, Incorporated *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Richmond Community Hospital, Incorporated's case would force the parties and the Court to waste time and resources ascertaining the extent of Richmond Community Hospital, Incorporated's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Richmond Community Hospital, Incorporated's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Richmond Community Hospital, Incorporated therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Richmond Community Hospital, Incorporated's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise

those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Richmond Community Hospital, Incorporated, a hospital in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Richmond Community Hospital, Incorporated's proposed RICO claim against the PBMs has expired. Richmond Community Hospital, Incorporated filed its original complaint on July 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. It is therefore indisputable that Richmond Community Hospital, Incorporated knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Richmond Community Hospital, Incorporated's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Richmond Community Hospital, Incorporated's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Richmond Community Hospital, Incorporated, a hospital in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **699.** ***Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff St. Francis Medical Center, Inc., Virginia**

St. Francis Medical Center, Inc.'s untimely motion for leave to amend should be denied for several reasons. St. Francis Medical Center, Inc. failed to provide notice of its proposed amendments through a proposed complaint. St. Francis Medical Center, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Francis Medical Center, Inc.'s motion should be denied due to futility, as St. Francis Medical Center, Inc. does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Francis Medical Center, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Francis Medical Center, Inc. amended its complaint on March 15, 2019, after directly filing in the MDL. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 22. Unlike many other plaintiffs, St. Francis Medical Center, Inc. declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Francis Medical Center, Inc.'s deadline to amend was in 2019. St. Francis Medical Center, Inc. waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Francis Medical Center, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** St. Francis Medical Center, Inc. filed its original complaint on July 12, 2018. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. Despite filing its case years ago, St. Francis Medical Center, Inc. *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Francis Medical Center, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of St. Francis Medical Center, Inc.'s document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Francis Medical Center, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Francis Medical Center, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Francis Medical Center, Inc.'s delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Francis Medical Center, Inc., a hospital in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Francis Medical Center, Inc.'s proposed RICO claim against the PBMs has expired. St. Francis Medical Center, Inc. filed its original complaint on July 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. It is therefore indisputable that St. Francis Medical Center, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. Francis Medical Center, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Francis Medical Center, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Francis Medical Center, Inc., a hospital in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **700.** ***Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP: Plaintiff St. Mary's Hospital of Richmond, Inc., Virginia**

St. Mary's Hospital of Richmond, Inc.'s untimely motion for leave to amend should be denied for several reasons. St. Mary's Hospital of Richmond, Inc. failed to provide notice of its

proposed amendments through a proposed complaint. St. Mary's Hospital of Richmond, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Mary's Hospital of Richmond, Inc.'s motion should be denied due to futility, as St. Mary's Hospital of Richmond, Inc. does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Mary's Hospital of Richmond, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Mary's Hospital of Richmond, Inc. amended its complaint on March 15, 2019, after directly filing in the MDL. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 22. Unlike many other plaintiffs, St. Mary's Hospital of Richmond, Inc. declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Mary's Hospital of Richmond, Inc.'s deadline to amend was in 2019. St. Mary's Hospital of Richmond, Inc. waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Mary's Hospital of Richmond, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** St. Mary's Hospital of Richmond, Inc. filed its original complaint on July 12, 2018. *See Bon Secours Health System, Inc. v. Purdue Pharma,*

*L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. Despite filing its case years ago, St. Mary's Hospital of Richmond, Inc. *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Mary's Hospital of Richmond, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of St. Mary's Hospital of Richmond, Inc.'s document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Mary's Hospital of Richmond, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Mary's Hospital of Richmond, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Mary's Hospital of Richmond, Inc.'s delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Mary's Hospital of Richmond, Inc., a hospital in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Mary's Hospital of Richmond, Inc.'s proposed RICO claim against the PBMs has expired. St. Mary's Hospital of Richmond, Inc. filed its original complaint on July 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45820-DAP, ECF No. 1. It is therefore indisputable that St. Mary's Hospital of Richmond, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. Mary's Hospital of Richmond, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Mary's Hospital of Richmond, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Mary's Hospital of Richmond, Inc., a hospital in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 701. *Bon Secours Health System, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45821-DAP: Plaintiff St. Francis Hospital, Inc., South Carolina

St. Francis Hospital, Inc.'s untimely motion for leave to amend should be denied for several reasons. St. Francis Hospital, Inc. failed to provide notice of its proposed amendments through a proposed complaint. St. Francis Hospital, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would

unduly prejudice the PBMs. Moreover, St. Francis Hospital, Inc.'s motion should be denied due to futility, as St. Francis Hospital, Inc. does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Francis Hospital, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Francis Hospital, Inc. amended its complaint on March 15, 2019, after directly filing in the MDL. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45821-DAP, ECF No. 22. Unlike many other plaintiffs, St. Francis Hospital, Inc. declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Francis Hospital, Inc.'s deadline to amend was in 2019. St. Francis Hospital, Inc. waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Francis Hospital, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** St. Francis Hospital, Inc. previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified St. Francis Hospital, Inc. of the PBM services Express Scripts provides and St. Francis Hospital, Inc. began receiving those services on July 14, 2006. *See id.* Inasmuch as St. Francis Hospital, Inc. seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see,*

*e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), St. Francis Hospital, Inc. knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. St. Francis Hospital, Inc.'s delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** St. Francis Hospital, Inc. filed its original complaint on July 12, 2018. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45821-DAP, ECF No. 1. Despite filing its case years ago, St. Francis Hospital, Inc. *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Francis Hospital, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of St. Francis Hospital, Inc.'s document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Francis Hospital, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Francis Hospital, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under South Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Francis Hospital, Inc.'s

delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under South Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Francis Hospital, Inc., a hospital in South Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Francis Hospital, Inc.'s proposed RICO claim against the PBMs has expired. St. Francis Hospital, Inc. filed its original complaint on July 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bon Secours Health System, Inc. et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45821-DAP, ECF No. 1. It is therefore indisputable that St. Francis Hospital, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. Francis Hospital, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Francis Hospital, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Francis Hospital, Inc., a hospital in South Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**702.** ***Town of Pembroke, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45823-DAP: Plaintiff Pembroke Town, Massachusetts**

Pembroke Town's untimely motion for leave to amend should be denied for several reasons. Pembroke Town failed to provide notice of its proposed amendments through a proposed complaint. Pembroke Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pembroke Town's motion should be denied due to futility, as Pembroke Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pembroke Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pembroke Town amended its complaint on March 7, 2019, after transfer to the MDL on July 13, 2018. *See Town of Pembroke, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45823-DAP, ECF No. 10. Unlike many other plaintiffs, Pembroke Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pembroke Town's deadline to amend was in 2019. Pembroke Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pembroke Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pembroke Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and Bardon & Budd, P.C.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pembroke Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pembroke Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pembroke Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Pembroke Town). That insignificant dispensing volume is much too low to support a finding of good cause for Pembroke Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pembroke Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Pembroke Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pembroke Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pembroke Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pembroke Town's proposed RICO claim against the PBMs has expired. Pembroke Town filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Pembroke, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45823-DAP, ECF No. 1. It is therefore indisputable that Pembroke Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pembroke Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pembroke Town's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Pembroke Town's public-nuisance claim against the PBMs is therefore time-barred because Pembroke Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Pembroke Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **703.** *Town of Rockland, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45824-DAP: Plaintiff Rockland Town, Massachusetts**

Rockland Town's untimely motion for leave to amend should be denied for several reasons. Rockland Town failed to provide notice of its proposed amendments through a proposed complaint. Rockland Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rockland Town's motion should be denied due to futility, as Rockland Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rockland Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rockland Town amended its complaint on March 7, 2019, after transfer to the MDL on July 13, 2018. *See Town of Rockland, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45824-DAP, ECF No. 10. Unlike many other plaintiffs, Rockland Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rockland Town's deadline to amend was in 2019. Rockland Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rockland Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rockland Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Rockland Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Rockland Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part

of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rockland Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Rockland Town). That insignificant dispensing volume is much too low to support a finding of good cause for Rockland Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rockland Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rockland Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rockland Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rockland Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rockland Town's proposed RICO claim against the PBMs has expired. Rockland Town filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Rockland, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45824-DAP, ECF No. 1. It is therefore indisputable that Rockland Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Rockland Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rockland Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Rockland Town's public-nuisance claim against the PBMs is therefore time-barred because Rockland Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Rockland Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 704. *Chitimacha Tribe of Louisiana v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45825-DAP: Plaintiff Chitimacha Tribe of Louisiana, Louisiana

Chitimacha Tribe of Louisiana's untimely motion for leave to amend should be denied for several reasons. Chitimacha Tribe of Louisiana failed to provide notice of its proposed amendments through a proposed complaint. Chitimacha Tribe of Louisiana also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chitimacha Tribe of Louisiana's motion should be denied due to futility, as Chitimacha Tribe of Louisiana does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chitimacha Tribe of Louisiana was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chitimacha Tribe of Louisiana amended its complaint on August 12, 2019, after directly filing in the MDL. *See Chitimacha Tribe of Louisiana v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45825-DAP, ECF No. 26. Unlike many other plaintiffs, Chitimacha Tribe of Louisiana declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Chitimacha Tribe of Louisiana's deadline to amend was in 2019. Chitimacha Tribe of Louisiana waited five years after its deadline to amend to seek leave to assert claims against the

PBMs. Chitimacha Tribe of Louisiana's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chitimacha Tribe of Louisiana's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chitimacha Tribe of Louisiana to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Chitimacha Tribe of Louisiana previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Chitimacha Tribe of Louisiana of the PBM services Express Scripts provides and Chitimacha Tribe of Louisiana began receiving those services on January 1, 2006. *See id.* Inasmuch as Chitimacha Tribe of Louisiana seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Chitimacha Tribe of Louisiana knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Chitimacha Tribe of Louisiana's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's

deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Chitimacha Tribe of Louisiana filed its original complaint on July 16, 2018. *See Chitimacha Tribe of Louisiana v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45825-DAP, ECF No. 1. Despite filing its case years ago, Chitimacha Tribe of Louisiana *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chitimacha Tribe of Louisiana's case would force the parties and the Court to waste time and resources ascertaining the extent of Chitimacha Tribe of Louisiana's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chitimacha Tribe of Louisiana's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chitimacha Tribe of Louisiana therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chitimacha Tribe of Louisiana's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chitimacha Tribe of Louisiana, a native tribe in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chitimacha Tribe of Louisiana's proposed RICO claim against the PBMs has expired. Chitimacha Tribe of Louisiana filed its original complaint on July 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Chitimacha Tribe of Louisiana v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45825-DAP, ECF No. 1. It is therefore indisputable that Chitimacha Tribe of Louisiana knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Chitimacha Tribe of Louisiana's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chitimacha Tribe of Louisiana's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to an one-year limitations period. Chitimacha Tribe of Louisiana's public-nuisance claim against the PBMs is therefore time-barred because Chitimacha Tribe of Louisiana sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Chitimacha Tribe of Louisiana, a native tribe in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 705. *San Juan County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45829-DAP: Plaintiff San Juan County, New Mexico

San Juan County's untimely motion for leave to amend should be denied for several reasons. San Juan County failed to provide notice of its proposed amendments through a proposed complaint. San Juan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, San Juan County's motion should be denied due to futility, as San Juan County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** San Juan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, San Juan County amended its complaint on March 15, 2019, after transfer to the MDL on July 17, 2018. *See San Juan County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45829-DAP, ECF No. 7. Unlike many other plaintiffs, San Juan County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. San Juan County's deadline to amend was in 2019. San Juan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. San Juan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to San Juan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for San Juan County). That insignificant dispensing volume is much too low to support a finding of good cause for San Juan County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to San Juan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for San Juan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But San Juan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** San Juan County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for San Juan County's proposed RICO claim against the PBMs has expired. San Juan County filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See San Juan County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45829-DAP, ECF No. 1. It is therefore indisputable that San Juan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. San Juan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Juan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Juan County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 706. *Adams County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45831-DAP: Plaintiff Adams County, Mississippi

Adams County's untimely motion for leave to amend should be denied for several reasons. Adams County failed to provide notice of its proposed amendments through a proposed complaint. Adams County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Adams County's motion should be denied due to futility, as Adams County does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Adams County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Adams County amended its complaint on March 7, 2019, after transfer to the MDL on July 18, 2018. *See Adams County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45831-DAP, ECF No. 8. Unlike many other plaintiffs, Adams County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Adams County's deadline to amend was in 2019. Adams County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Adams County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Adams County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Adams County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Adams County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for

many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Adams County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Adams County). That insignificant dispensing volume is much too low to support a finding of good cause for Adams County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Adams County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Adams County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Adams County filed its original complaint on June 22, 2018. *See Adams County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45831-DAP, ECF No. 1. Despite filing its case years ago, Adams County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Adams County's

case would force the parties and the Court to waste time and resources ascertaining the extent of Adams County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Adams County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Adams County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Adams County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Adams County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Adams County's proposed RICO claim against the PBMs has expired. Adams County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adams County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45831-DAP, ECF No. 8. It is therefore indisputable that Adams County knew of its RICO injury,

at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Adams County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Adams County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Adams County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 707. *Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP: Plaintiff Green Lake County, Wisconsin

Green Lake County's untimely motion for leave to amend should be denied for several reasons. Green Lake County failed to provide notice of its proposed amendments through a proposed complaint. Green Lake County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Green Lake County's motion should be denied due to futility, as Green Lake County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Green Lake County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Green Lake County amended its complaint on March 15, 2019, after transfer to the MDL on July 18, 2018. *See Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP, ECF No. 3. Unlike many other plaintiffs, Green Lake County declined to add

claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Green Lake County's deadline to amend was in 2019. Green Lake County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Green Lake County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Green Lake County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Green Lake County). That insignificant dispensing volume is much too low to support a finding of good cause for Green Lake County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Green Lake County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Green Lake County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Green Lake County's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Green Lake County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Green Lake County's proposed RICO claim against the PBMs has expired. Green Lake County filed its original complaint on May 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP, ECF No. 1. It is therefore indisputable that Green Lake County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Green Lake County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Green Lake County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Green Lake County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**708.** *Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP: Plaintiff Taylor County, Wisconsin

Taylor County's untimely motion for leave to amend should be denied for several reasons. Taylor County failed to provide notice of its proposed amendments through a proposed complaint. Taylor County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Taylor County's motion should be denied due to futility, as Taylor County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Taylor County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Taylor County amended its complaint on March 15, 2019, after transfer to the MDL on July 18, 2018. *See Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP, ECF No. 3. Unlike many other plaintiffs, Taylor County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Taylor County's deadline to amend was in 2019. Taylor County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Taylor County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Taylor County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.003% market share for Taylor County). That insignificant dispensing volume is much too low to support a finding of good cause for Taylor County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Taylor County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Taylor County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Taylor County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Taylor County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Taylor County of this deficiency on September 16, 2024 (*see* Exhibit B), but Taylor County refused to amend or supplement its Fact Sheet. Under this Court's orders, Taylor County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Taylor County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Taylor County's potential claims against them. Taylor County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Taylor County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Taylor County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Taylor County's proposed RICO claim against the PBMs has expired. Taylor County filed its original complaint on May 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP, ECF No. 1. It is therefore indisputable that Taylor County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Taylor County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Taylor County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Taylor County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **709.** ***Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP: Plaintiff Vilas County, Wisconsin**

Vilas County's untimely motion for leave to amend should be denied for several reasons. Vilas County failed to provide notice of its proposed amendments through a proposed complaint. Vilas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Vilas County's motion should be denied due to futility, as Vilas County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Vilas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Vilas County amended its complaint on March 15, 2019, after transfer to the MDL on July 18, 2018. *See Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP, ECF No. 3. Unlike many other plaintiffs, Vilas County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Vilas County's deadline to amend was in 2019. Vilas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Vilas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Vilas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Vilas County). That insignificant dispensing volume is much too low to support a finding of good cause for Vilas County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Vilas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Vilas County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Vilas County's proposed RICO claim against the PBMs has expired. Vilas County filed its original complaint on May 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Green Lake County et al. v. Purdue Pharma LP et al.*, Case No. 1:18-op-45832-DAP, ECF No. 1.

It is therefore indisputable that Vilas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Vilas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Vilas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Vilas County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **710.** *Town of Leverett, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45836-DAP: Plaintiff Leverett Town, Massachusetts**

Leverett Town's untimely motion for leave to amend should be denied for several reasons. Leverett Town failed to provide notice of its proposed amendments through a proposed complaint. Leverett Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Leverett Town's motion should be denied due to futility, as Leverett Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leverett Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leverett Town amended its complaint on March 8, 2019, after transfer to the MDL on July 18,

2018. *See Town of Leverett, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45836-DAP, ECF No. 12. Unlike many other plaintiffs, Leverett Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Leverett Town's deadline to amend was in 2019. Leverett Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Leverett Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Leverett Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Leverett Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Leverett Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Leverett Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Leverett Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Leverett Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Leverett Town filed its original complaint on June 5, 2018. *See Town of Leverett, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45836-DAP, ECF No. 1. Despite filing its case years ago, Leverett Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Leverett Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Leverett Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leverett Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Leverett Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leverett Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leverett Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leverett Town's proposed RICO claim against the PBMs has expired. Leverett Town filed its original complaint on June 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Leverett, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45836-DAP, ECF No. 1. It is therefore indisputable that Leverett Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Leverett Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leverett Town's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Leverett Town's public-nuisance claim against the PBMs is therefore time-barred because Leverett Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 5, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Leverett Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 711. *Jefferson County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45839-DAP: Plaintiff Jefferson County, Mississippi

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jefferson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson County amended its complaint on March 7, 2019, after transfer to the MDL on July 18, 2018. *See Jefferson County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45839-DAP, ECF No. 8. Unlike many other plaintiffs, Jefferson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jefferson County's deadline to amend was in 2019. Jefferson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jefferson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jefferson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jefferson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part

because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jefferson County filed its original complaint on June 22, 2018. *See Jefferson County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45839-DAP, ECF No. 1. Despite filing its case years ago, Jefferson County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Jefferson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jefferson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The

PBMs are prejudiced by Jefferson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jefferson County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jefferson County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jefferson County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45839-DAP, ECF No. 8. It is therefore indisputable that Jefferson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Jefferson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jefferson County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 712. *Lafayette County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45840-DAP: Plaintiff Lafayette County, Missouri

Lafayette County's untimely motion for leave to amend should be denied for several reasons. Lafayette County failed to provide notice of its proposed amendments through a proposed complaint. Lafayette County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lafayette County's motion should be denied due to futility, as Lafayette County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lafayette County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lafayette County amended its complaint on March 14, 2019, after transfer to the MDL on July 19, 2018. *See Lafayette County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45840-DAP, ECF No. 21. Unlike many other plaintiffs, Lafayette County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lafayette County's deadline to amend was in 2019. Lafayette County waited five years after its

deadline to amend to seek leave to assert claims against the PBMs. Lafayette County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lafayette County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Lafayette County). That insignificant dispensing volume is much too low to support a finding of good cause for Lafayette County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lafayette County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lafayette County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lafayette County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lafayette County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lafayette County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lafayette County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lafayette County's potential claims against them. Lafayette County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any

finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lafayette County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lafayette County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lafayette County's proposed RICO claim against the PBMs has expired. Lafayette County filed its original complaint on June 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lafayette County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45840-DAP, ECF No. 1. It is therefore indisputable that Lafayette County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lafayette County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Lafayette County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for

leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lafayette County, a municipality in Missouri, lacks standing to

state a claim for relief under any of the New York laws referenced in the City of Rochester's

complaint. *See* Section III.B.6, above.

### 713. *Cass County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45841-DAP: Plaintiff Cass County, Missouri

Cass County's untimely motion for leave to amend should be denied for several reasons.

Cass County failed to provide notice of its proposed amendments through a proposed complaint.

Cass County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its

untimely motion would unduly prejudice the PBMs. Moreover, Cass County's motion should be

denied due to futility, as Cass County does not assert any allegations tying the PBMs to its alleged

harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims

under New York state law.

**Lack of Diligence.** Cass County was on notice of its claims against the PBMs for years but

failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Cass County amended its complaint on March 14, 2019, after transfer to the MDL on July 19,

2018. *See Cass County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-

op-45841-DAP, ECF No. 20. Unlike many other plaintiffs, Cass County declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Cass County's deadline to

amend was in 2019. Cass County waited five years after its deadline to amend to seek leave to

assert claims against the PBMs. Cass County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cass County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Cass County). That insignificant dispensing volume is much too low to support a finding of good cause for Cass County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cass County filed its original complaint on June 26, 2018. *See Cass County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45841-DAP, ECF No. 1. Despite filing its case years ago, Cass County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cass County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cass County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cass County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cass County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cass County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cass County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cass County of this deficiency on September 16, 2024 (*see* Exhibit B), but Cass County refused to amend or supplement its Fact Sheet. Under this Court's orders, Cass County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cass County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cass County's potential claims against them. Cass County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cass County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cass County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cass County's proposed RICO claim against the PBMs has expired. Cass County filed its original complaint on June 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cass County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45841-DAP, ECF No. 1. It is therefore indisputable that Cass County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cass County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cass County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cass County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 714. ***Neshoba County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45843-DAP: Plaintiff Neshoba County, Mississippi**

Neshoba County's untimely motion for leave to amend should be denied for several reasons. Neshoba County failed to provide notice of its proposed amendments through a proposed complaint. Neshoba County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Neshoba County's motion should be denied due to futility, as Neshoba County does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Neshoba County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Neshoba County amended its complaint on March 7, 2019, after transfer to the MDL on July 19, 2018. *See Neshoba County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45843-DAP, ECF No. 7. Unlike many other plaintiffs, Neshoba County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Neshoba County's deadline to amend was in 2019. Neshoba County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Neshoba County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Neshoba County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Neshoba County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Neshoba County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for

many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Neshoba County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Neshoba County). That insignificant dispensing volume is much too low to support a finding of good cause for Neshoba County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Neshoba County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Neshoba County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Neshoba County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Neshoba County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Neshoba County's proposed RICO claim against the PBMs has expired. Neshoba County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Neshoba County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45843-DAP, ECF No. 7. It is therefore indisputable that Neshoba County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Neshoba County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Neshoba County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Neshoba County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **715.** *City of Providence, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45844-DAP: Plaintiff Providence City, Rhode Island**

Providence City's untimely motion for leave to amend should be denied for several reasons. Providence City failed to provide notice of its proposed amendments through a proposed complaint. Providence City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Providence City's motion should be denied due to futility, as Providence City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Providence City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Providence City amended its complaint on March 15, 2019, after transfer to the MDL on July 19, 2018. *See City of Providence, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45844-DAP, ECF No. 6. Unlike many other plaintiffs, Providence City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Providence City's deadline to amend was in 2019. Providence City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Providence City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Providence City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Providence City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Providence City fails to explain why it was unable to assert claims against

the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Providence City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Providence City). That insignificant dispensing volume is much too low to support a finding of good cause for Providence City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Providence City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Providence City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Providence City violated its basic duty to implement a timely litigation hold. Providence City filed its original complaint on June 28, 2018, but waited until September 5, 2024 to implement a litigation hold—five years and three

months later. *See City of Providence, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45844-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 5, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Providence City's case would force the parties and the Court to waste time and resources ascertaining the extent of Providence City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Providence City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Providence City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Providence City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Providence City, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Providence City's proposed RICO claim against the PBMs has expired. Providence City filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Providence, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45844-DAP, ECF No. 6. It is therefore indisputable that Providence City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Providence City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Providence City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Providence City, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

716. *Columbus County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45847-DAP: Plaintiff Columbus County, North Carolina**

Columbus County's untimely motion for leave to amend should be denied for several reasons. Columbus County failed to provide notice of its proposed amendments through a proposed complaint. Columbus County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Columbus County's motion should be denied due to futility, as Columbus County does not assert any allegations tying the PBMs to its alleged harm,

its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Columbus County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Columbus County amended its complaint on March 13, 2019, after transfer to the MDL on July 19, 2018. *See Columbus County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45847-DAP, ECF No. 7. Unlike many other plaintiffs, Columbus County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Columbus County's deadline to amend was in 2019. Columbus County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Columbus County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Columbus County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Columbus County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Columbus County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Columbus County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Columbus County). That insignificant dispensing volume is much too low to support a finding of good cause for Columbus County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Columbus County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Columbus County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Columbus County filed its original complaint on June 22, 2018, but waited until November 15, 2018 to implement a litigation hold. *See Columbus County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45847-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 15,

2018). Columbus County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Columbus County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Columbus County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Columbus County's proposed RICO claim against the PBMs has expired. Columbus County filed its original complaint on June 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Columbus County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45847-DAP, ECF No. 1. It is therefore indisputable that Columbus County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Columbus County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Columbus County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Columbus County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 717. *Minneapolis, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45850-DAP: Plaintiff Minneapolis City, Minnesota

Minneapolis City's untimely motion for leave to amend should be denied for several reasons. Minneapolis City failed to provide notice of its proposed amendments through a proposed complaint. Minneapolis City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Minneapolis City's motion should be denied due to futility, as Minneapolis City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Minneapolis City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Minneapolis City amended its complaint on March 15, 2019, after transfer to the MDL on July 19, 2018. *See Minneapolis, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45850-DAP, ECF No. 28. Unlike many other plaintiffs, Minneapolis City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Minneapolis City's deadline to amend was in 2019. Minneapolis City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Minneapolis City's lack of diligence in pursuing its

claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Minneapolis City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Minneapolis City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Minneapolis City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Minneapolis City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Minneapolis City). That insignificant dispensing volume is much too low to support a finding of good cause for Minneapolis City to add dispensing claims

against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Minneapolis City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Minneapolis City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Minneapolis City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Minneapolis City, a municipality in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Minneapolis City's proposed RICO claim against the PBMs has expired. Minneapolis City filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Minneapolis, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45850-DAP, ECF No. 28. It is therefore indisputable that Minneapolis City knew of its RICO injury, at

the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Minneapolis City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Minneapolis City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Minneapolis City, a municipality in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 718. *Pasco County, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45851-DAP: Plaintiff Pasco County, Florida

Pasco County's untimely motion for leave to amend should be denied for several reasons. Pasco County failed to provide notice of its proposed amendments through a proposed complaint. Pasco County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pasco County's motion should be denied due to futility, as Pasco County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pasco County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pasco County amended its complaint on March 13, 2019, after transfer to the MDL on July 20, 2018. *See Pasco County, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-

op-45851-DAP, ECF No. 8. Unlike many other plaintiffs, Pasco County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pasco County's deadline to amend was in 2019. Pasco County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pasco County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pasco County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pasco County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pasco County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Failure to Implement a Litigation Hold.** Pasco County filed its original complaint on June 27, 2018. *See Pasco County, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45851-DAP, ECF No. 1. Despite filing its case years ago, Pasco County *never*

implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pasco County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pasco County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pasco County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pasco County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pasco County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pasco County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pasco County's proposed RICO claim against the PBMs has expired. Pasco County filed its original complaint on June 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*Pasco County, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45851-DAP, ECF No. 1. It is therefore indisputable that Pasco County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pasco County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pasco County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Pasco County's public-nuisance claim against the PBMs is therefore time-barred because Pasco County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Pasco County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 719. *Cochise County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45855-DAP: Plaintiff Cochise County, Arizona

Cochise County's untimely motion for leave to amend should be denied for several reasons. Cochise County failed to provide notice of its proposed amendments through a proposed

complaint. Cochise County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Cochise County's motion should be denied due to futility, as Cochise County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cochise County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cochise County first amended its complaint on July 20, 2018. *See Cochise County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45855-DAP, ECF No. 7. Cochise County amended its complaint again on March 13, 2019, as well as on May 28, 2019. *See Cochise County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45855-DAP, ECF Nos. 26, 29. Cochise County amended its complaint a fourth time on December 24, 2020. *See Cochise County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45855-DAP, ECF No. 31. Unlike many other plaintiffs, Cochise County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Cochise County's deadline to amend was in 2019. Cochise County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cochise County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Cochise County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Cochise County). That insignificant dispensing volume is much too low to support a finding of good cause for Cochise County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cochise County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cochise County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Arizona law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cochise County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Arizona law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cochise County, a municipality in Arizona, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cochise County's proposed RICO claim against the PBMs has expired. Cochise County filed its original complaint on June 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Cochise County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45855-DAP, ECF No. 1. It is therefore indisputable that Cochise County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cochise County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cochise County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cochise County, a municipality in Arizona, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **720.** ***Town of North Reading, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45856-DAP: Plaintiff North Reading Town, Massachusetts**

North Reading Town's untimely motion for leave to amend should be denied for several reasons. North Reading Town failed to provide notice of its proposed amendments through a proposed complaint. North Reading Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Reading Town's motion should be denied due to futility, as North Reading Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Reading Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, North Reading Town amended its complaint on March 8, 2019, after transfer to the MDL on July 24, 2018. *See Town of North Reading, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45856-DAP, ECF No. 11. Unlike many other plaintiffs, North Reading Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Reading Town's deadline to amend was in 2019. North Reading Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. North Reading Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** North Reading Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. North Reading Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. North Reading Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to North Reading Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for North Reading Town). That insignificant dispensing volume is much too low to support a finding of good cause for North Reading Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to North Reading Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for North Reading Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** North Reading Town filed its original complaint on June 28, 2018. *See Town of North Reading, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45856-DAP, ECF No. 1. Despite filing its case years ago, North Reading Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating North Reading Town's case would force the parties and the Court to waste time and resources ascertaining the extent of North Reading Town's document destruction and the

appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by North Reading Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and North Reading Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Reading Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Reading Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for North Reading Town's proposed RICO claim against the PBMs has expired. North Reading Town filed its original complaint on June 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of North Reading, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45856-DAP, ECF No. 1. It is therefore indisputable that North Reading Town knew of its RICO injury, at the very latest, the day it filed a complaint

asserting a RICO claim, six years before seeking leave to amend. North Reading Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Reading Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. North Reading Town's public-nuisance claim against the PBMs is therefore time-barred because North Reading Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 28, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** North Reading Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **721.** ***Town of West Boylston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45858-DAP: Plaintiff West Boylston Town, Massachusetts**

West Boylston Town's untimely motion for leave to amend should be denied for several reasons. West Boylston Town failed to provide notice of its proposed amendments through a proposed complaint. West Boylston Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would

unduly prejudice the PBMs. Moreover, West Boylston Town's motion should be denied due to futility, as West Boylston Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** West Boylston Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Boylston Town amended its complaint on March 7, 2019, after transfer to the MDL on July 25, 2018. *See Town of West Boylston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45858-DAP, ECF No. 11. Unlike many other plaintiffs, West Boylston Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. West Boylston Town's deadline to amend was in 2019. West Boylston Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. West Boylston Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** West Boylston Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. West Boylston Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the

PBMs much earlier. West Boylston Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to West Boylston Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for West Boylston Town). That insignificant dispensing volume is much too low to support a finding of good cause for West Boylston Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to West Boylston Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.0008% market share). That insignificant dispensing volume is much too low to support a finding of good cause for West Boylston Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** West Boylston Town filed its original complaint on June 29, 2018. *See Town of West Boylston, Massachusetts v. Amerisourcebergen Drug*

*Corporation et al.*, Case No. 1:18-op-45858-DAP, ECF No. 1. Despite filing its case years ago, West Boylston Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating West Boylston Town's case would force the parties and the Court to waste time and resources ascertaining the extent of West Boylston Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by West Boylston Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and West Boylston Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Boylston Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Boylston Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Boylston Town's proposed RICO claim against the PBMs has expired. West Boylston Town filed its original complaint on June 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of West Boylston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45858-DAP, ECF No. 1. It is therefore indisputable that West Boylston Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. West Boylston Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Boylston Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. West Boylston Town's public-nuisance claim against the PBMs is therefore time-barred because West Boylston Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** West Boylston Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **722.** ***Town of Westborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45859-DAP: Plaintiff Westborough Town, Massachusetts**

Westborough Town's untimely motion for leave to amend should be denied for several reasons. Westborough Town failed to provide notice of its proposed amendments through a proposed complaint. Westborough Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Westborough Town's motion should be denied due to futility, as Westborough Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Westborough Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Westborough Town amended its complaint on March 7, 2019, after transfer to the MDL on July 25, 2018. *See Town of Westborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45859-DAP, ECF No. 10. Unlike many other plaintiffs, Westborough Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Westborough Town's deadline to amend was in 2019. Westborough Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Westborough Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Westborough Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Westborough Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Westborough Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Westborough Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Westborough Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Westborough Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Westborough Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Westborough Town filed its original complaint on June 29, 2018. *See Town of Westborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45859-DAP, ECF No. 1. Despite filing its case years ago, Westborough Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Westborough Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Westborough Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Westborough Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Westborough Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Westborough Town's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Westborough Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Westborough Town's proposed RICO claim against the PBMs has expired. Westborough Town filed its original complaint on June 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Westborough, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45859-DAP, ECF No. 1. It is therefore indisputable that Westborough Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Westborough Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westborough Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Westborough Town's public-nuisance claim against the

PBMs is therefore time-barred because Westborough Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Westborough Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 723. *City of Peabody, Massachusetts, v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45860-DAP: Plaintiff Peabody City, Massachusetts

Peabody City's untimely motion for leave to amend should be denied for several reasons. Peabody City failed to provide notice of its proposed amendments through a proposed complaint. Peabody City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Peabody City's motion should be denied due to futility, as Peabody City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Peabody City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Peabody City amended its complaint on March 8, 2019, after transfer to the MDL on July 25, 2018. *See City of Peabody, Massachusetts, v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45860-DAP, ECF No. 12. Unlike many other plaintiffs, Peabody City declined to add

claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Peabody City's deadline to amend was in 2019. Peabody City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Peabody City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Peabody City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Peabody City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Peabody City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Peabody City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Peabody City). That insignificant dispensing volume is much too low to support a finding of good cause for Peabody City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Peabody City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Peabody City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Peabody City filed its original complaint on July 5, 2018. *See City of Peabody, Massachusetts, v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45860-DAP, ECF No. 1. Despite filing its case years ago, Peabody City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Peabody City's case would force the parties and the Court to waste time and resources ascertaining the extent of Peabody City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Peabody City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Peabody City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Peabody City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Peabody City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Peabody City's proposed RICO claim against the PBMs has expired. Peabody City filed its original complaint on July 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Peabody, Massachusetts, v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45860-DAP, ECF No. 1. It is therefore indisputable that Peabody City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Peabody City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Peabody City's request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Peabody City's public-nuisance claim against the PBMs is therefore time-barred because Peabody City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 5, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Peabody City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **724.** *Santa Rosa County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45861-DAP: Plaintiff Santa Rosa County, Florida

Santa Rosa County's untimely motion for leave to amend should be denied for several reasons. Santa Rosa County failed to provide notice of its proposed amendments through a proposed complaint. Santa Rosa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Santa Rosa County's motion should be denied due to futility, as Santa Rosa County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Santa Rosa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Santa Rosa County amended its complaint on March 13, 2019, after transfer to the MDL on July 25, 2018. *See Santa Rosa County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45861-DAP, ECF No. 5. Unlike many other plaintiffs, Santa Rosa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Santa Rosa County's deadline to amend was in 2019. Santa Rosa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Santa Rosa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Santa Rosa County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Santa Rosa County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Santa Rosa County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F.

App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Santa Rosa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Santa Rosa County). That insignificant dispensing volume is much too low to support a finding of good cause for Santa Rosa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Santa Rosa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Santa Rosa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Santa Rosa County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Santa Rosa County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Santa Rosa County of this deficiency on September 16, 2024 (*see* Exhibit B), but Santa Rosa County refused to amend or supplement its Fact Sheet. Under this Court's orders, Santa Rosa County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Santa

Rosa County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Santa Rosa County's potential claims against them. Santa Rosa County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Santa Rosa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Santa Rosa County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Santa Rosa County's proposed RICO claim against the PBMs has expired. Santa Rosa County filed its original complaint on June 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Santa Rosa County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45861-DAP, ECF No. 1. It is therefore indisputable that Santa Rosa County knew of its RICO injury, at

the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Santa Rosa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Santa Rosa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Santa Rosa County's public-nuisance claim against the PBMs is therefore time-barred because Santa Rosa County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Santa Rosa County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **725.** ***Town of Barnstable, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45862-DAP: Plaintiff Barnstable Town City, Massachusetts**

Barnstable Town City's untimely motion for leave to amend should be denied for several reasons. Barnstable Town City failed to provide notice of its proposed amendments through a proposed complaint. Barnstable Town City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover,

Barnstable Town City's motion should be denied due to futility, as Barnstable Town City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Barnstable Town City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Barnstable Town City amended its complaint on March 8, 2019, after transfer to the MDL on July 25, 2018. *See Town of Barnstable, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45862-DAP, ECF No. 12. Unlike many other plaintiffs, Barnstable Town City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Barnstable Town City's deadline to amend was in 2019. Barnstable Town City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Barnstable Town City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Barnstable Town City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Barnstable Town City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Barnstable Town

City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Barnstable Town City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Barnstable Town City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See* *Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Barnstable Town City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Barnstable Town City's proposed RICO claim against the PBMs has expired. Barnstable Town City filed its original

complaint on July 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Barnstable, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45862-DAP, ECF No. 1. It is therefore indisputable that Barnstable Town City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Barnstable Town City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Barnstable Town City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Barnstable Town City's public-nuisance claim against the PBMs is therefore time-barred because Barnstable Town City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 6, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Barnstable Town City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**726.** ***Town of Eastham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45864-DAP: Plaintiff Eastham Town, Massachusetts**

Eastham Town's untimely motion for leave to amend should be denied for several reasons. Eastham Town failed to provide notice of its proposed amendments through a proposed complaint. Eastham Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Eastham Town's motion should be denied due to futility, as Eastham Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Eastham Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Eastham Town amended its complaint on March 8, 2019, after transfer to the MDL on July 25, 2018. *See Town of Eastham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45864-DAP, ECF No. 10. Unlike many other plaintiffs, Eastham Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Eastham Town's deadline to amend was in 2019. Eastham Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Eastham Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Eastham Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Eastham Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Eastham Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Eastham Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Eastham Town filed its original complaint on June 27, 2018. *See Town of Eastham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45864-DAP, ECF No. 1. Despite filing its case years ago, Eastham Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Eastham

2768

Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Eastham Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Eastham Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Eastham Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Eastham Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Eastham Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Eastham Town's proposed RICO claim against the PBMs has expired. Eastham Town filed its original complaint on June 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Eastham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45864-DAP, ECF No. 1. It is therefore indisputable that Eastham Town knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Eastham Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Eastham Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Eastham Town's public-nuisance claim against the PBMs is therefore time-barred because Eastham Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Eastham Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 727. *City of North Miami, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45872-DAP: Plaintiff North Miami City, Florida

North Miami City's untimely motion for leave to amend should be denied for several reasons. North Miami City failed to provide notice of its proposed amendments through a proposed complaint. North Miami City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly

prejudice the PBMs. Moreover, North Miami City's motion should be denied due to futility, as North Miami City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Miami City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Miami City amended its complaint on March 16, 2019, after transfer to the MDL on July 25, 2018. *See City of North Miami, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45872-DAP, ECF No. 9. Unlike many other plaintiffs, North Miami City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Miami City's deadline to amend was in 2019. North Miami City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. North Miami City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** North Miami City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. North Miami City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. North Miami City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys

were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to North Miami City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for North Miami City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** North Miami City filed its original complaint on May 30, 2018. *See City of North Miami, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45872-DAP, ECF No. 1. Despite filing its case years ago, North Miami City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating North Miami City's case would force the parties and the Court to waste time and resources ascertaining the extent of North Miami City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by North Miami City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and North Miami

City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Miami City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Miami City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for North Miami City's proposed RICO claim against the PBMs has expired. North Miami City filed its original complaint on May 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of North Miami, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45872-DAP, ECF No. 1. It is therefore indisputable that North Miami City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. North Miami City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Miami City's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. North Miami City's public-nuisance claim against the PBMs is therefore time-barred because North Miami City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 30, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** North Miami City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **728.** *Town of Holliston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45874-DAP: Plaintiff Holliston Town, Massachusetts**

Holliston Town's untimely motion for leave to amend should be denied for several reasons. Holliston Town failed to provide notice of its proposed amendments through a proposed complaint. Holliston Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Holliston Town's motion should be denied due to futility, as Holliston Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Holliston Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Holliston Town amended its complaint on March 6, 2019, after transfer to the MDL on July 25, 2018. *See Town of Holliston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45874-DAP, ECF No. 12. Unlike many other plaintiffs, Holliston Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Holliston Town's deadline to amend was in 2019. Holliston Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Holliston Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Holliston Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and McHugh Fuller Law Group, PLLC— that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Holliston Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Holliston Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint");

*Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Holliston Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Holliston Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Holliston Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Holliston Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Holliston Town violated its basic duty to implement a timely litigation hold. Holliston Town filed its original complaint on July 6, 2018, but waited until November 4, 2020 to implement a litigation hold—two years and four months later. *See Town of Holliston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45874-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 4, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Holliston Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Holliston Town's document destruction and the appropriate

sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Holliston Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Holliston Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Holliston Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Holliston Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Holliston Town's proposed RICO claim against the PBMs has expired. Holliston Town filed its original complaint on July 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Holliston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45874-DAP, ECF No. 1. It is therefore indisputable that Holliston Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before

seeking leave to amend. Holliston Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Holliston Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Holliston Town's public-nuisance claim against the PBMs is therefore time-barred because Holliston Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 6, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Holliston Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **729.** *Caswell County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-45875-DAP: Plaintiff Caswell County, North Carolina**

Caswell County's untimely motion for leave to amend should be denied for several reasons. Caswell County failed to provide notice of its proposed amendments through a proposed complaint. Caswell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Caswell County's motion should be denied due to futility, as Caswell County does not assert any allegations

tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Caswell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Caswell County amended its complaint on March 12, 2019, after transfer to the MDL on July 25, 2018. *See Caswell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45875-DAP, ECF No. 7. Unlike many other plaintiffs, Caswell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Caswell County's deadline to amend was in 2019. Caswell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Caswell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Caswell County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Caswell County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Caswell County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

2779

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Caswell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Caswell County). That insignificant dispensing volume is much too low to support a finding of good cause for Caswell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Caswell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Caswell County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Caswell County's proposed RICO claim against the PBMs has expired. Caswell County filed its original complaint on July 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Caswell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45875-DAP, ECF No. 1. It is therefore indisputable that Caswell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Caswell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Caswell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Caswell County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **730.** *Town of Sudbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45877-DAP: Plaintiff Sudbury Town, Massachusetts**

Sudbury Town's untimely motion for leave to amend should be denied for several reasons. Sudbury Town failed to provide notice of its proposed amendments through a proposed complaint. Sudbury Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sudbury Town's motion should be denied due to futility, as Sudbury Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sudbury Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sudbury Town amended its complaint on March 8, 2019, after transfer to the MDL on July 26, 2018. *See Town of Sudbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45877-DAP, ECF No. 11. Unlike many other plaintiffs, Sudbury Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sudbury Town's deadline to amend was in 2019. Sudbury Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sudbury Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sudbury Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sudbury Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sudbury Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sudbury Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Sudbury Town). That insignificant dispensing volume is much too low to support a finding of good cause for Sudbury Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sudbury Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sudbury Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sudbury Town filed its original complaint on June 29, 2018. *See Town of Sudbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45877-DAP, ECF No. 1. Despite filing its case years ago, Sudbury Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sudbury

Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Sudbury Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sudbury Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sudbury Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sudbury Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sudbury Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sudbury Town's proposed RICO claim against the PBMs has expired. Sudbury Town filed its original complaint on June 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Sudbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45877-DAP, ECF No. 1. It is therefore indisputable that Sudbury Town knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sudbury Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sudbury Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Sudbury Town's public-nuisance claim against the PBMs is therefore time-barred because Sudbury Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sudbury Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 731. *County of Riverside et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45878-DAP: Plaintiff Riverside County, California

Riverside County's untimely motion for leave to amend should be denied for several reasons. Riverside County failed to provide notice of its proposed amendments through a proposed complaint. Riverside County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly

prejudice the PBMs. Moreover, Riverside County's motion should be denied due to futility, as Riverside County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Riverside County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Riverside County amended its complaint on March 15, 2019, after transfer to the MDL on July 26, 2018. *See County of Riverside et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45878-DAP, ECF No. 9. Unlike many other plaintiffs, Riverside County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Riverside County's deadline to amend was in 2019. Riverside County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Riverside County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Riverside County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Riverside County). That insignificant dispensing volume is much too low to support a finding of good cause for Riverside County to add dispensing claims

against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Riverside County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Riverside County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Riverside County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Riverside County of the PBM services Express Scripts provides and Riverside County began receiving those services on January 26, 2006. *See id.* Inasmuch as Riverside County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Riverside County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Riverside County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Riverside County filed its original complaint on June 27, 2018. *See County of Riverside et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45878-DAP, ECF No. 1. Despite filing its case years ago, Riverside County *never* implemented a

litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Riverside County's case would force the parties and the Court to waste time and resources ascertaining the extent of Riverside County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Riverside County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Riverside County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Riverside County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Riverside County's proposed RICO claim against the PBMs has expired. Riverside County filed its original complaint on June 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Riverside et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45878-DAP, ECF No. 1. It is therefore indisputable that Riverside County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Riverside County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the

injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Riverside County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Riverside County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **732.** ***Town of Georgetown, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45879-DAP: Plaintiff Georgetown Town, Massachusetts**

Georgetown Town's untimely motion for leave to amend should be denied for several reasons. Georgetown Town failed to provide notice of its proposed amendments through a proposed complaint. Georgetown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Georgetown Town's motion should be denied due to futility, as Georgetown Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Georgetown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Georgetown Town amended its complaint on March 11, 2019, after transfer to the MDL on July 26, 2018. *See Town of Georgetown, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45879-DAP, ECF No. 13. Unlike many other plaintiffs, Georgetown Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Georgetown Town's deadline to amend was in 2019. Georgetown Town waited five

years after its deadline to amend to seek leave to assert claims against the PBMs. Georgetown

Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972

F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline

because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-

see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Georgetown Town cannot meet the Rule 16 good cause

standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against

the PBMs in 2019. *See* MDL ECF No. 2582. Georgetown Town, through its counsel, was on notice

of potential claims against the PBMs and could readily have amended its complaint to add the

PBMs much earlier. Georgetown Town fails to explain why it was unable to assert claims against

the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of

discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F.

App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new

defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's

home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Georgetown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.01% market share for Georgetown Town). That insignificant dispensing

volume is much too low to support a finding of good cause for Georgetown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Georgetown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Georgetown Town filed its original complaint on June 27, 2018. *See Town of Georgetown, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45879-DAP, ECF No. 1. Despite filing its case years ago, Georgetown Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Georgetown Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Georgetown Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Georgetown Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Georgetown Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Georgetown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Georgetown Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Georgetown Town's proposed RICO claim against the PBMs has expired. Georgetown Town filed its original complaint on June 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Georgetown, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45879-DAP, ECF No. 1. It is therefore indisputable that Georgetown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Georgetown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Georgetown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Georgetown Town's public-nuisance claim against the PBMs is therefore time-barred because Georgetown Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Georgetown Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

733. ***Town of Seekonk, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45881-DAP: Plaintiff Seekonk Town, Massachusetts**

Seekonk Town's untimely motion for leave to amend should be denied for several reasons. Seekonk Town failed to provide notice of its proposed amendments through a proposed complaint. Seekonk Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Seekonk Town's motion should be denied due to futility, as Seekonk Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Seekonk Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Seekonk Town amended its complaint on March 11, 2019, after transfer to the MDL on July 26,

2018. *See Town of Seekonk, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45881-DAP, ECF No. 11. Unlike many other plaintiffs, Seekonk Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Seekonk Town's deadline to amend was in 2019. Seekonk Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Seekonk Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

      **Prior Notice Through Counsel.** Seekonk Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Seekonk Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Seekonk Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Seekonk Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Seekonk Town). That insignificant dispensing volume is much too low to support a finding of good cause for Seekonk Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Seekonk Town filed its original complaint on June 28, 2018. *See Town of Seekonk, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45881-DAP, ECF No. 1. Despite filing its case years ago, Seekonk Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Seekonk Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Seekonk Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Seekonk Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Seekonk Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Seekonk Town's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Seekonk Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Seekonk Town's proposed RICO claim against the PBMs has expired. Seekonk Town filed its original complaint on June 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Seekonk, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45881-DAP, ECF No. 1. It is therefore indisputable that Seekonk Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Seekonk Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Seekonk Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Seekonk Town's public-nuisance claim against the PBMs is therefore time-barred because Seekonk Town sought leave to amend its complaint on

July 29, 2024—six years after filing its original complaint on June 28, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Seekonk Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **734.** ***Town of Clarksburg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45882-DAP: Plaintiff Clarksburg Town, Massachusetts**

Clarksburg Town's untimely motion for leave to amend should be denied for several reasons. Clarksburg Town failed to provide notice of its proposed amendments through a proposed complaint. Clarksburg Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Clarksburg Town's motion should be denied due to futility, as Clarksburg Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clarksburg Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clarksburg Town amended its complaint on March 15, 2019, after transfer to the MDL on July 26, 2018. *See Town of Clarksburg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45882-DAP, ECF No. 13. Unlike many other plaintiffs, Clarksburg Town declined to add claims against the PBMs in its amended complaint. *See* Section

II.A.1, above. Clarksburg Town's deadline to amend was in 2019. Clarksburg Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clarksburg Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clarksburg Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Clarksburg Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Clarksburg Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Clarksburg Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl..

Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Clarksburg Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clarksburg Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clarksburg Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clarksburg Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clarksburg Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clarksburg Town's proposed RICO claim against the PBMs has expired. Clarksburg Town filed its original complaint on June 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Clarksburg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No.

1:18-op-45882-DAP, ECF No. 1. It is therefore indisputable that Clarksburg Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Clarksburg Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clarksburg Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Clarksburg Town's public-nuisance claim against the PBMs is therefore time-barred because Clarksburg Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Clarksburg Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

735. ***Town of Williamsburg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45883-DAP: Plaintiff Williamsburg Town, Massachusetts**

Williamsburg Town's untimely motion for leave to amend should be denied for several reasons. Williamsburg Town failed to provide notice of its proposed amendments through a proposed complaint. Williamsburg Town also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Williamsburg Town's motion should be denied due to futility, as Williamsburg Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Williamsburg Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Williamsburg Town amended its complaint on March 8, 2019, after transfer to the MDL on July 26, 2018. *See Town of Williamsburg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45883-DAP, ECF No. 11. Unlike many other plaintiffs, Williamsburg Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Williamsburg Town's deadline to amend was in 2019. Williamsburg Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Williamsburg Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Williamsburg Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Williamsburg Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add

the PBMs much earlier. Williamsburg Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Williamsburg Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Williamsburg Town). That insignificant dispensing volume is much too low to support a finding of good cause for Williamsburg Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Williamsburg Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Williamsburg Town filed its original complaint on June 29, 2018. *See Town of Williamsburg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45883-DAP, ECF No. 1. Despite filing its case years ago,

Williamsburg Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Williamsburg Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Williamsburg Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Williamsburg Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Williamsburg Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Williamsburg Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Williamsburg Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Williamsburg Town's proposed RICO claim against the PBMs has expired. Williamsburg Town filed its original

complaint on June 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Williamsburg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45883-DAP, ECF No. 1. It is therefore indisputable that Williamsburg Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Williamsburg Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Williamsburg Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Williamsburg Town's public-nuisance claim against the PBMs is therefore time-barred because Williamsburg Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Williamsburg Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

736. ***County of Washtenaw, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45886-DAP: Plaintiff Washtenaw County, Michigan**

Washtenaw County's untimely motion for leave to amend should be denied for several reasons. Washtenaw County failed to provide notice of its proposed amendments through a proposed complaint. Washtenaw County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washtenaw County's motion should be denied due to futility, as Washtenaw County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washtenaw County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washtenaw County amended its complaint on March 16, 2019, after directly filing in the MDL. *See County of Washtenaw, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45886-DAP, ECF No. 22. Unlike many other plaintiffs, Washtenaw County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Washtenaw County's deadline to amend was in 2019. Washtenaw County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washtenaw County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Washtenaw County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Washtenaw County). That insignificant dispensing volume is much too low to support a finding of good cause for Washtenaw County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washtenaw County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washtenaw County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washtenaw County's proposed RICO claim against the PBMs has expired. Washtenaw County filed its original complaint on July 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Washtenaw, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45886-DAP, ECF No. 1. It is therefore indisputable that Washtenaw County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Washtenaw County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is

triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washtenaw County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washtenaw County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 737. *County of Berrien, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45887-DAP: Plaintiff Berrien County, Michigan

Berrien County's untimely motion for leave to amend should be denied for several reasons. Berrien County failed to provide notice of its proposed amendments through a proposed complaint. Berrien County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Berrien County's motion should be denied due to futility, as Berrien County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Berrien County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Berrien County amended its complaint on March 16, 2019, after directly filing in the MDL. *See County of Berrien, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45887-DAP, ECF No. 22. Unlike many other plaintiffs, Berrien County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Berrien County's deadline to amend was in 2019. Berrien County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Berrien County's lack of diligence in pursuing its claims negates any finding

of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Berrien County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Berrien County). That insignificant dispensing volume is much too low to support a finding of good cause for Berrien County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Berrien County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Berrien County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Berrien County's proposed RICO claim against the PBMs has expired. Berrien County filed its original complaint on July 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*County of Berrien, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45887-DAP, ECF No. 1. It is therefore indisputable that Berrien County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Berrien County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Berrien County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Berrien County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **738.** *County of Clinton, Michigan v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45889-DAP: Plaintiff Clinton County, Michigan**

Clinton County's untimely motion for leave to amend should be denied for several reasons. Clinton County failed to provide notice of its proposed amendments through a proposed complaint. Clinton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clinton County's motion should be denied due to futility, as Clinton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clinton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clinton County amended its complaint on March 16, 2019, after directly filing in the MDL. *See*

*County of Clinton, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45889-DAP, ECF No. 22. Unlike many other plaintiffs, Clinton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Clinton County's deadline to amend was in 2019. Clinton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clinton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clinton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Clinton County). That insignificant dispensing volume is much too low to support a finding of good cause for Clinton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clinton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clinton County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clinton County's proposed RICO claim against the PBMs has expired. Clinton County filed its original complaint on July 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Clinton, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45889-DAP, ECF No. 1. It is therefore indisputable that Clinton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Clinton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clinton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clinton County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 739. ***Town of Mattapoisett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45890-DAP: Plaintiff Mattapoisett Town, Massachusetts**

Mattapoisett Town's untimely motion for leave to amend should be denied for several reasons. Mattapoisett Town failed to provide notice of its proposed amendments through a proposed complaint. Mattapoisett Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mattapoisett Town's motion should be denied due to futility, as Mattapoisett Town does not assert

any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mattapoisett Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mattapoisett Town amended its complaint on March 6, 2019, after transfer to the MDL on July 30, 2018. *See Town of Mattapoisett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45890-DAP, ECF No. 13. Unlike many other plaintiffs, Mattapoisett Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mattapoisett Town's deadline to amend was in 2019. Mattapoisett Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mattapoisett Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mattapoisett Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Mattapoisett Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mattapoisett Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Mattapoisett Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Mattapoisett Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Mattapoisett Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mattapoisett Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mattapoisett Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mattapoisett Town's proposed RICO claim against the PBMs has expired. Mattapoisett Town filed its original complaint on June 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Mattapoisett v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45890-DAP, ECF No. 1. It is therefore indisputable that Mattapoisett Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mattapoisett Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mattapoisett Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Mattapoisett Town's public-nuisance claim against the PBMs is therefore time-barred because Mattapoisett Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Mattapoisett Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **740.** ***Town of Sandwich, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45891-DAP: Plaintiff Sandwich Town, Massachusetts**

Sandwich Town's untimely motion for leave to amend should be denied for several reasons. Sandwich Town failed to provide notice of its proposed amendments through a proposed complaint. Sandwich Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sandwich Town's motion should be denied due to futility, as Sandwich Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sandwich Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sandwich Town amended its complaint on March 8, 2019, after transfer to the MDL on July 30, 2018. *See Town of Sandwich, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45891-DAP, ECF No. 13. Unlike many other plaintiffs, Sandwich Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sandwich Town's deadline to amend was in 2019. Sandwich Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sandwich Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial

of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sandwich Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sandwich Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sandwich Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sandwich Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Sandwich Town). That insignificant dispensing volume is much too low to support a finding of good cause for Sandwich Town to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sandwich Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sandwich Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sandwich Town filed its original complaint on May 31, 2018. *See Town of Sandwich, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45891-DAP, ECF No. 1. Despite filing its case years ago, Sandwich Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sandwich Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Sandwich Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sandwich Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sandwich Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sandwich Town's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sandwich Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sandwich Town's proposed RICO claim against the PBMs has expired. Sandwich Town filed its original complaint on May 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Sandwich, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45891-DAP, ECF No. 1. It is therefore indisputable that Sandwich Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sandwich Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sandwich Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Sandwich Town's public-nuisance claim against the PBMs is therefore time-barred because Sandwich Town sought leave to amend its complaint on

July 29, 2024—six years after filing its original complaint on May 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sandwich Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 741. *City of Springfield, Missouri v. Purdue Pharma, L.P., et al.*, Case No. 1:18-op-45899-DAP: Plaintiff Springfield City, Missouri

Springfield City's untimely motion for leave to amend should be denied for several reasons. Springfield City failed to provide notice of its proposed amendments through a proposed complaint. Springfield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Springfield City's motion should be denied due to futility, as Springfield City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Springfield City previously alleged claims against some of the PBMs in its original complaint on May 30, 2018. *See City of Springfield, Missouri v. Purdue Pharma, L.P., et al.*, Case No. 1:18-op-45899-DAP, ECF No. 1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Springfield City could have amended its complaint, without leave, to add claims against other PBM-related entities in 2019, but elected not to do so. *See* Section II.A.1, above.

Now, Springfield City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants five years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Springfield City's complaint, Springfield City already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2018. *See* Section II.A, above. Springfield City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Springfield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Springfield City). That insignificant dispensing volume is much too low to support a finding of good cause for Springfield City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Springfield City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Springfield City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Springfield City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary

development. *See* Achter Decl., Exhibit A. That contract notified Springfield City of the PBM services Express Scripts provides and Springfield City began receiving those services on January 2, 2008. *See id.* Inasmuch as Springfield City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Springfield City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Springfield City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Springfield City filed its original complaint on May 30, 2018. *See City of Springfield, Missouri v. Purdue Pharma, L.P., et al.*, Case No. 1:18-op-45899-DAP, ECF No. 1. Despite filing its case years ago, Springfield City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Springfield City's case would force the parties and the Court to waste time and resources ascertaining the extent of Springfield City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Springfield City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Springfield City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Springfield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Springfield City, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Springfield City's proposed RICO claim against the PBMs has expired. Springfield City filed a complaint on May 30, 2018, alleging a RICO claim against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. *See City of Springfield, Missouri v. Purdue Pharma, L.P., et al.*, 1:18-op-45899-DAP, ECF No. 1. It is therefore indisputable that Springfield City knew of its injury *and* the factual basis for its alleged RICO claim against the PBMs, at the very latest, the day it filed that complaint, six years before seeking leave to amend. Springfield City's proposed amended RICO claim against the additional PBMs it did not previously name is therefore time-barred. ECF No. 2568 at 13 (RICO limitations period is triggered by "discovery of the injury, not discovery of the other elements of a claim") (quoting *Rotella*, 528 U.S. at 555); *see* Section III.B.4, above. Springfield City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Springfield City, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **742.** *Polk County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45900-DAP: Plaintiff Polk County, North Carolina

Polk County's untimely motion for leave to amend should be denied for several reasons. Polk County failed to provide notice of its proposed amendments through a proposed complaint. Polk County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Polk County's motion should be denied due to futility, as Polk County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Polk County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Polk County amended its complaint on March 12, 2019, after transfer to the MDL on July 31, 2018. *See Polk County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45900-DAP, ECF No. 5. Unlike many other plaintiffs, Polk County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Polk County's deadline to amend was in 2019. Polk County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Polk County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Polk County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Polk County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Polk County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Polk County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Polk County). That insignificant dispensing volume is much too low to support a finding of good cause for Polk County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Polk County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Polk County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Polk County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Polk County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Polk County of this deficiency on September 16, 2024 (*see* Exhibit B), but Polk County refused to amend or supplement its Fact Sheet. Under this Court's orders, Polk County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Polk County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Polk County's potential claims against them. Polk County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Polk County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Polk County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Polk County's proposed RICO claim against the PBMs has expired. Polk County filed its original complaint on July 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Polk County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45900-DAP, ECF No. 1. It is therefore indisputable that Polk County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Polk County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Polk County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Polk County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 743. *City of Westland, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45903-DAP: Plaintiff Westland City, Michigan

Westland City's untimely motion for leave to amend should be denied for several reasons. Westland City failed to provide notice of its proposed amendments through a proposed complaint. Westland City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and

because its untimely motion would unduly prejudice the PBMs. Moreover, Westland City's motion should be denied due to futility, as Westland City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Westland City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Westland City amended its complaint on March 16, 2019, after directly filing in the MDL. *See City of Westland, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45903-DAP, ECF No. 22. Unlike many other plaintiffs, Westland City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Westland City's deadline to amend was in 2019. Westland City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Westland City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Westland City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Westland City). That insignificant dispensing volume is much too low to support a finding of good cause for Westland City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Westland City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Westland City, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Westland City's proposed RICO claim against the PBMs has expired. Westland City filed its original complaint on July 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Westland, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45903-DAP, ECF No. 1. It is therefore indisputable that Westland City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Westland City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westland City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Westland City, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **744.** ***Town of Belchertown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45905-DAP: Plaintiff Belchertown Town, Massachusetts**

Belchertown Town's untimely motion for leave to amend should be denied for several reasons. Belchertown Town failed to provide notice of its proposed amendments through a proposed complaint. Belchertown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Belchertown Town's motion should be denied due to futility, as Belchertown Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Belchertown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Belchertown Town amended its complaint on March 6, 2019, after transfer to the MDL on August 2, 2018. *See Town of Belchertown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45905-DAP, ECF No. 12. Unlike many other plaintiffs, Belchertown Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Belchertown Town's deadline to amend was in 2019. Belchertown Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Belchertown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Belchertown Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Belchertown Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Belchertown Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Belchertown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Belchertown Town). That insignificant dispensing volume is much too low to support a finding of good cause for Belchertown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Belchertown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Belchertown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Belchertown Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Belchertown Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Belchertown Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Belchertown Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Belchertown Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Belchertown Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Belchertown Town's potential claims against them. Belchertown Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Belchertown Town's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Belchertown Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Belchertown Town's proposed RICO claim against the PBMs has expired. Belchertown Town filed its original complaint on July 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Belchertown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45905-DAP, ECF No. 1. It is therefore indisputable that Belchertown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Belchertown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Belchertown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Belchertown Town's public-nuisance claim against the PBMs is therefore time-barred because Belchertown Town sought leave to amend its complaint

on July 29, 2024—six years after filing its original complaint on July 6, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Belchertown Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

745. ***Town of Ludlow v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45906-DAP: Plaintiff Ludlow Town, Massachusetts**

Ludlow Town's untimely motion for leave to amend should be denied for several reasons. Ludlow Town failed to provide notice of its proposed amendments through a proposed complaint. Ludlow Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ludlow Town's motion should be denied due to futility, as Ludlow Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ludlow Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ludlow Town amended its complaint on March 6, 2019, after transfer to the MDL on August 2, 2018. *See Town of Ludlow v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45906-DAP, ECF No. 12. Unlike many other plaintiffs, Ludlow Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ludlow Town's deadline

to amend was in 2019. Ludlow Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ludlow Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ludlow Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and McHugh Fuller Law Group, PLLC— that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ludlow Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ludlow Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Ludlow Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the

case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Ludlow Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ludlow Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ludlow Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ludlow Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ludlow Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ludlow Town's proposed RICO claim against the PBMs has expired. Ludlow Town filed its original complaint on July 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Ludlow v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45906-DAP, ECF No. 1. It is therefore indisputable that Ludlow Town knew of its RICO injury, at the very

latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Ludlow Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ludlow Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Ludlow Town's public-nuisance claim against the PBMs is therefore time-barred because Ludlow Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 9, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Ludlow Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

746. ***Town of Ware v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45907-DAP: Plaintiff Ware Town, Massachusetts**

Ware Town's untimely motion for leave to amend should be denied for several reasons. Ware Town failed to provide notice of its proposed amendments through a proposed complaint. Ware Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Ware Town's motion should be denied due to futility, as Ware Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ware Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ware Town amended its complaint on March 7, 2019, after transfer to the MDL on August 2, 2018. *See Town of Ware v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45907-DAP, ECF No. 11. Unlike many other plaintiffs, Ware Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ware Town's deadline to amend was in 2019. Ware Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ware Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ware Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ware Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ware Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Ware Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Ware Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ware Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ware Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ware Town filed its original complaint on July 9, 2018. *See Town of Ware v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45907-DAP, ECF No. 1. Despite filing its case years ago, Ware Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain

violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ware Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Ware Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ware Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ware Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ware Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ware Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ware Town's proposed RICO claim against the PBMs has expired. Ware Town filed its original complaint on July 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Ware v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45907-DAP, ECF No.

1. It is therefore indisputable that Ware Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Ware Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ware Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Ware Town's public-nuisance claim against the PBMs is therefore time-barred because Ware Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 9, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Ware Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **747.** ***Robinson Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45912-DAP: Plaintiff Robinson Rancheria, California**

Robinson Rancheria's untimely motion for leave to amend should be denied for several reasons. Robinson Rancheria failed to provide notice of its proposed amendments through a proposed complaint. Robinson Rancheria also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Robinson Rancheria's motion should be denied due to futility, as Robinson Rancheria does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Robinson Rancheria was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Robinson Rancheria filed its original complaint on March 2, 2018 and the case was transferred to the MDL on August 8, 2018. *See Robinson Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45912-DAP, ECF No. 25. Robinson Rancheria could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Robinson Rancheria elected not to do so. Instead, Robinson Rancheria waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Robinson Rancheria's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Robinson Rancheria's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to State a Claim.** Robinson Rancheria, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Robinson Rancheria's proposed RICO claim against the PBMs has expired. Robinson Rancheria filed its original complaint on March 2, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Robinson Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45912-DAP, ECF No. 1-1. Even assuming *arguendo* that Robinson Rancheria first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 2, 2022. Robinson Rancheria's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Robinson Rancheria's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Robinson Rancheria, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **748.** ***Hopland Band of Pomo Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45913-DAP: Plaintiff Hopland Band of Pomo Indians, California**

Hopland Band of Pomo Indians' untimely motion for leave to amend should be denied for several reasons. Hopland Band of Pomo Indians failed to provide notice of its proposed amendments through a proposed complaint. Hopland Band of Pomo Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hopland Band of Pomo

Indians' motion should be denied due to futility, as Hopland Band of Pomo Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hopland Band of Pomo Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hopland Band of Pomo Indians filed its original complaint on February 21, 2018 and the case was transferred to the MDL on August 8, 2018. *See Hopland Band of Pomo Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45913-DAP, ECF No. 28. Hopland Band of Pomo Indians could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Hopland Band of Pomo Indians elected not to do so. Instead, Hopland Band of Pomo Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hopland Band of Pomo Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Hopland Band of Pomo Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hopland Band of Pomo Indians filed its original complaint on February 21, 2018. *See Hopland Band of Pomo Indians v. McKesson Corporation et*

*al.*, Case No. 1:18-op-45913-DAP, ECF No. 1-1. Despite filing its case years ago, Hopland Band of Pomo Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hopland Band of Pomo Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Hopland Band of Pomo Indians' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hopland Band of Pomo Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hopland Band of Pomo Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Hopland Band of Pomo Indians, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hopland Band of Pomo Indians' proposed RICO claim against the PBMs has expired. Hopland Band of Pomo Indians filed its original complaint on February 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Hopland Band of Pomo Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45913-DAP, ECF No. 1-1. Even assuming *arguendo* that Hopland Band of Pomo Indians first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 21, 2022. Hopland

Band of Pomo Indians' RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hopland Band of Pomo Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hopland Band of Pomo Indians, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 749. *Scotts Valley Band of Pomo Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45914-DAP: Plaintiff Scotts Valley Band of Pomo Indians, California

Scotts Valley Band of Pomo Indians' untimely motion for leave to amend should be denied for several reasons. Scotts Valley Band of Pomo Indians failed to provide notice of its proposed amendments through a proposed complaint. Scotts Valley Band of Pomo Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scotts Valley Band of Pomo Indians' motion should be denied due to futility, as Scotts Valley Band of Pomo Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scotts Valley Band of Pomo Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scotts Valley Band of Pomo Indians filed its original complaint on February 21, 2018 and the case was transferred to the MDL on August 8, 2018. *See Scotts Valley Band of Pomo Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45914-DAP, ECF No.

28. Scotts Valley Band of Pomo Indians could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Scotts Valley Band of Pomo Indians elected not to do so. Instead, Scotts Valley Band of Pomo Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scotts Valley Band of Pomo Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scotts Valley Band of Pomo Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scotts Valley Band of Pomo Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Scotts Valley Band of Pomo Indians filed its original complaint on February 21, 2018. *See Scotts Valley Band of Pomo Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45914-DAP, ECF No. 1-1. Despite filing its case years ago, Scotts Valley Band of Pomo Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Scotts Valley Band of Pomo Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Scotts Valley Band of Pomo Indians'

document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Scotts Valley Band of Pomo Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Scotts Valley Band of Pomo Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Scotts Valley Band of Pomo Indians, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scotts Valley Band of Pomo Indians' proposed RICO claim against the PBMs has expired. Scotts Valley Band of Pomo Indians filed its original complaint on February 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Scotts Valley Band of Pomo Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45914-DAP, ECF No. 1-1. Even assuming *arguendo* that Scotts Valley Band of Pomo Indians first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 21, 2022. Scotts Valley Band of Pomo Indians' RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scotts Valley Band of Pomo Indians' request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Scotts Valley Band of Pomo Indians, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **750.** ***Round Valley Indian Tribes et al. v. McKesson Corporation et al.*, Case No. 1:18-op-45915-DAP: Plaintiff Round Valley Indian Tribes, California**

Round Valley Indian Tribes' untimely motion for leave to amend should be denied for several reasons. Round Valley Indian Tribes failed to provide notice of its proposed amendments through a proposed complaint. Round Valley Indian Tribes also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because their untimely motion would unduly prejudice the PBMs. Moreover, Round Valley Indian Tribes' motion should be denied due to futility, as Round Valley Indian Tribes does not assert any allegations tying the PBMs to its alleged harm, their RICO claim is barred by the statute of limitations, and they lack standing to assert claims under New York state law.

**Lack of Diligence.** Round Valley Indian Tribes was on notice of their claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Round Valley Indian Tribes filed their original complaint on March 2, 2018 and the case was transferred to the MDL on August 8, 2018. *See Round Valley Indian Tribes. v. McKesson Corporation et al.*, Case No. 1:18-op-45915-DAP, ECF No. 37. Round Valley Indian Tribes could have amended the complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Round Valley Indian Tribes elected not to do so. Instead, Round Valley Indian Tribes waited five years after their deadline to amend to seek leave to assert claims against the PBMs. Round Valley Indian Tribes' lack of diligence in pursuing

their claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Round Valley Indian Tribes' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Round Valley Indian Tribes filed their original complaint on March 2, 2018. *See Round Valley Indian Tribes et al. v. McKesson Corporation et al.*, Case No. 1:18-op-45915-DAP, ECF No. 1-1. Despite filing this case years ago, Round Valley Indian Tribes *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Round Valley Indian Tribes' case would force the parties and the Court to waste time and resources ascertaining the extent of Round Valley Indian Tribes' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Round Valley Indian Tribes' disregard for their most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Round Valley Indian Tribes therefore lack good cause for leave to amend their complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Round Valley Indian Tribes, native tribes in California, have not pleaded any facts showing that the PBMs caused or substantially contributed to their injuries. Instead, they rely exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Round Valley Indian Tribes' proposed RICO claim against the PBMs has expired. Round Valley Indian Tribes filed their original complaint on March 2, 2018, alleging the same type of injuries for which they now seek to recover under RICO against the PBMs. *See Round Valley Indian Tribes et al. v. McKesson Corporation et al.*, Case No. 1:18-op-45915-DAP, ECF No. 1-1. Even assuming *arguendo* that Round Valley Indian Tribes first learned of their injury on the day they filed their original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 2, 2022. Round Valley Indian Tribes' RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Round Valley Indian Tribes' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiffs Lack Standing.** Round Valley Indian Tribes, native tribes in California, lack standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 751. ***Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-**

**45916-DAP: Plaintiff Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria, California**

Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's untimely motion for leave to amend should be denied for several reasons. Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria failed to provide notice of its proposed amendments through a proposed complaint. Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's motion should be denied due to futility, as Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria filed its original complaint on February 21, 2018 and the case was transferred to the MDL on August 8, 2018. *See Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45916-DAP, ECF No. 28. Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria elected not to do so. Instead, Redwood Valley or Little River Band of Pomo Indians of

the Redwood Valley Rancheria waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria filed its original complaint on February 21, 2018. *See Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45916-DAP, ECF No. 1-1. Despite filing its case years ago, Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's case would force the parties and the Court to waste time and resources ascertaining the extent of Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers

that failed to implement litigation holds until 2024. The PBMs are prejudiced by Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's proposed RICO claim against the PBMs has expired. Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria filed its original complaint on February 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45916-DAP, ECF No. 1-1. Even assuming *arguendo* that Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 21, 2022. Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding

that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 752. *Guidiville Rancheria of California v. McKesson Corporation et al.*, Case No. 1:18-op-45917-DAP: Plaintiff Guidiville Rancheria of California, California

Guidiville Rancheria of California's untimely motion for leave to amend should be denied for several reasons. Guidiville Rancheria of California failed to provide notice of its proposed amendments through a proposed complaint. Guidiville Rancheria of California also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Guidiville Rancheria of California's motion should be denied due to futility, as Guidiville Rancheria of California does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Guidiville Rancheria of California was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Guidiville Rancheria of California filed its original complaint on February 13, 2018 and the case was transferred to the MDL on August 8, 2018. *See Guidiville Rancheria of California v. McKesson Corporation et al.*, Case No. 1:18-op-45917-DAP, ECF No. 27. Guidiville

Rancheria of California could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Guidiville Rancheria of California elected not to do so. Instead, Guidiville Rancheria of California waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Guidiville Rancheria of California's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Guidiville Rancheria of California's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Guidiville Rancheria of California to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to State a Claim.** Guidiville Rancheria of California, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Guidiville Rancheria of California's proposed RICO claim against the PBMs has expired. Guidiville Rancheria of California filed its original complaint on February 13, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Guidiville Rancheria of*

*California v. McKesson Corporation et al.*, Case No. 1:18-op-45917-DAP, ECF No. 1-1. Even assuming *arguendo* that Guidiville Rancheria of California first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 13, 2022. Guidiville Rancheria of California's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Guidiville Rancheria of California's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Guidiville Rancheria of California, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 753. *Big Valley Band of Pomo Indians of the Big Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45922-DAP: Plaintiff Big Valley Band of Pomo Indians of the Big Valley Rancheria, California

Big Valley Band of Pomo Indians of the Big Valley Rancheria's untimely motion for leave to amend should be denied for several reasons. Big Valley Band of Pomo Indians of the Big Valley Rancheria failed to provide notice of its proposed amendments through a proposed complaint. Big Valley Band of Pomo Indians of the Big Valley Rancheria also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Big Valley Band of Pomo Indians of the Big Valley Rancheria's motion should be denied due to futility, as Big Valley Band of Pomo Indians of the Big Valley Rancheria does not assert any allegations tying the PBMs to its alleged harm, its

RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Big Valley Band of Pomo Indians of the Big Valley Rancheria was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Big Valley Band of Pomo Indians of the Big Valley Rancheria filed its original complaint on February 13, 2018 and the case was transferred to the MDL on August 8, 2018. *See Big Valley Band of Pomo Indians of the Big Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45922-DAP, ECF No. 30. Big Valley Band of Pomo Indians of the Big Valley Rancheria could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Big Valley Band of Pomo Indians of the Big Valley Rancheria elected not to do so. Instead, Big Valley Band of Pomo Indians of the Big Valley Rancheria waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Big Valley Band of Pomo Indians of the Big Valley Rancheria's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Big Valley Band of Pomo Indians of the Big Valley Rancheria's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Big Valley

Band of Pomo Indians of the Big Valley Rancheria to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Big Valley Band of Pomo Indians of the Big Valley Rancheria filed its original complaint on February 13, 2018. *See Big Valley Band of Pomo Indians of the Big Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45922-DAP, ECF No. 1-1. Despite filing its case years ago, Big Valley Band of Pomo Indians of the Big Valley Rancheria *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Big Valley Band of Pomo Indians of the Big Valley Rancheria's case would force the parties and the Court to waste time and resources ascertaining the extent of Big Valley Band of Pomo Indians of the Big Valley Rancheria's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Big Valley Band of Pomo Indians of the Big Valley Rancheria's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Big Valley Band of Pomo Indians of the Big Valley Rancheria therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Big Valley Band of Pomo Indians of the Big Valley Rancheria, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Big Valley Band of Pomo Indians of the Big Valley Rancheria's proposed RICO claim against the PBMs has expired. Big Valley Band of Pomo Indians of the Big Valley Rancheria filed its original complaint on February 13, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Big Valley Band of Pomo Indians of the Big Valley Rancheria v. McKesson Corporation et al.*, Case No. 1:18-op-45922-DAP, ECF No. 1-1. Even assuming *arguendo* that Big Valley Band of Pomo Indians of the Big Valley Rancheria first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 13, 2022. Big Valley Band of Pomo Indians of the Big Valley Rancheria's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Big Valley Band of Pomo Indians of the Big Valley Rancheria's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Big Valley Band of Pomo Indians of the Big Valley Rancheria, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

754. ***Big Sandy Rancheria of Western Mono Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45923-DAP: Plaintiff Big Sandy Rancheria of Western Mono Indians, California**

Big Sandy Rancheria of Western Mono Indians' untimely motion for leave to amend should be denied for several reasons. Big Sandy Rancheria of Western Mono Indians failed to provide notice of its proposed amendments through a proposed complaint. Big Sandy Rancheria of Western Mono Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence,

failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Big Sandy Rancheria of Western Mono Indians' motion should be denied due to futility, as Big Sandy Rancheria of Western Mono Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Big Sandy Rancheria of Western Mono Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Big Sandy Rancheria of Western Mono Indians filed its original complaint on March 2, 2018 and the case was transferred to the MDL on August 8, 2018. *See Big Sandy Rancheria of Western Mono Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45923-DAP, ECF No. 27. Big Sandy Rancheria of Western Mono Indians could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Big Sandy Rancheria of Western Mono Indians elected not to do so. Instead, Big Sandy Rancheria of Western Mono Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Big Sandy Rancheria of Western Mono Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Big Sandy Rancheria of Western Mono Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM

"ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Big Sandy Rancheria of Western Mono Indians filed its original complaint on March 2, 2018. *See Big Sandy Rancheria of Western Mono Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45923-DAP, ECF No. 1-1. Despite filing its case years ago, Big Sandy Rancheria of Western Mono Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Big Sandy Rancheria of Western Mono Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Big Sandy Rancheria of Western Mono Indians' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Big Sandy Rancheria of Western Mono Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Big Sandy Rancheria of Western Mono Indians therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Big Sandy Rancheria of Western Mono Indians, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Big Sandy Rancheria of Western Mono Indians' proposed RICO claim against the PBMs has expired. Big Sandy Rancheria

of Western Mono Indians filed its original complaint on March 2, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Big Sandy Rancheria of Western Mono Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45923-DAP, ECF No. 1-1. Even assuming *arguendo* that Big Sandy Rancheria of Western Mono Indians first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 2, 2022. Big Sandy Rancheria of Western Mono Indians' RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Big Sandy Rancheria of Western Mono Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Big Sandy Rancheria of Western Mono Indians, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

755. *Lac Courte Oreilles Band Of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, **Case No. 1:18-op-45932-DAP: Plaintiff Lac Courte Oreilles Band Of Lake Superior Chippewa Indians, Wisconsin**

Lac Courte Oreilles Band Of Lake Superior Chippewa Indians' untimely motion for leave to amend should be denied for several reasons. Lac Courte Oreilles Band Of Lake Superior Chippewa Indians failed to provide notice of its proposed amendments through a proposed complaint. Lac Courte Oreilles Band Of Lake Superior Chippewa Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lac Courte Oreilles

Band Of Lake Superior Chippewa Indians' motion should be denied due to futility, as Lac Courte Oreilles Band Of Lake Superior Chippewa Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lac Courte Oreilles Band Of Lake Superior Chippewa Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lac Courte Oreilles Band Of Lake Superior Chippewa Indians filed its original complaint on March 20, 2018 and the case was transferred to the MDL on August 9, 2018. *See Lac Courte Oreilles Band Of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45932-DAP, ECF No. 29. Lac Courte Oreilles Band Of Lake Superior Chippewa Indians could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Lac Courte Oreilles Band Of Lake Superior Chippewa Indians elected not to do so. Instead, Lac Courte Oreilles Band Of Lake Superior Chippewa Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lac Courte Oreilles Band Of Lake Superior Chippewa Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lac Courte Oreilles Band Of Lake Superior Chippewa Indians' geographic

jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lac Courte Oreilles Band Of Lake Superior Chippewa Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lac Courte Oreilles Band Of Lake Superior Chippewa Indians filed its original complaint on March 16, 2018. *See Lac Courte Oreilles Band Of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45932-DAP, ECF No. 1-1. Despite filing its case years ago, Lac Courte Oreilles Band Of Lake Superior Chippewa Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lac Courte Oreilles Band Of Lake Superior Chippewa Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Lac Courte Oreilles Band Of Lake Superior Chippewa Indians document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lac Courte Oreilles Band Of Lake Superior Chippewa Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lac Courte Oreilles Band Of Lake Superior Chippewa Indians therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lac Courte Oreilles Band Of Lake Superior Chippewa Indians' delay in seeking to amend its complaint has impaired the PBMs'

ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lac Courte Oreilles Band Of Lake Superior Chippewa Indians, a native tribe in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lac Courte Oreilles Band Of Lake Superior Chippewa Indians' proposed RICO claim against the PBMs has expired. Lac Courte Oreilles Band Of Lake Superior Chippewa Indians filed its original complaint on March 20, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Lac Courte Oreilles Band Of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-45932-DAP, ECF No. 1-1. Even assuming *arguendo* that Lac Courte Oreilles Band Of Lake Superior Chippewa Indians first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 20, 2022. Lac Courte Oreilles Band Of Lake Superior Chippewa Indians' RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lac Courte Oreilles Band Of Lake Superior Chippewa Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lac Courte Oreilles Band Of Lake Superior Chippewa Indians, a native tribe in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **756.** *County of Hudson v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45937-DAP: Plaintiff Hudson County, New Jersey

Hudson County's untimely motion for leave to amend should be denied for several reasons. Hudson County failed to provide notice of its proposed amendments through a proposed complaint. Hudson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hudson County's motion should be denied due to futility, as Hudson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hudson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hudson County first amended its complaint on April 26, 2018. *See County of Hudson v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45937-DAP, ECF No. 1. Hudson County amended its complaint again on March 15, 2019. *See County of Hudson v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45937-DAP, ECF No. 30. Unlike many other plaintiffs, Hudson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Hudson County's deadline to amend was in 2019. Hudson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hudson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hudson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Hudson County). That insignificant dispensing volume is much too low to support a finding of good cause for Hudson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hudson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hudson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hudson County filed its original complaint on April 3, 2018. *See County of Hudson v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45937-DAP, ECF No. 1-1. Despite filing its case years ago, Hudson County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hudson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hudson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM

bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hudson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hudson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hudson County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hudson County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hudson County of this deficiency on September 16, 2024 (*see* Exhibit B), but Hudson County refused to amend or supplement its Fact Sheet. Under this Court's orders, Hudson County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hudson County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hudson County's potential claims against them. Hudson County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hudson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hudson County, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hudson County's proposed RICO claim against the PBMs has expired. Hudson County filed its second amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Hudson v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45937-DAP, ECF No. 30. It is therefore indisputable that Hudson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Hudson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hudson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hudson County, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**757.** *Humboldt County v. Purdue Pharma, L.P. et al.*, **Case No. 1:18-op-45942-DAP: Plaintiff Humboldt County, California**

Humboldt County's untimely motion for leave to amend should be denied for several reasons. Humboldt County failed to provide notice of its proposed amendments through a proposed complaint. Humboldt County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Humboldt County's motion should be denied due to futility, as Humboldt County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Humboldt County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Humboldt County amended its complaint on March 14, 2019, after transfer to the MDL on August 13, 2018, as well as on May 28, 2019 and December 20, 2020. *See Humboldt County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45942-DAP, ECF Nos. 25, 26, 28. Unlike many other plaintiffs, Humboldt County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Humboldt County's deadline to amend was in 2019. Humboldt County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Humboldt County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Humboldt County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Humboldt County). That insignificant dispensing volume is much too low to support a finding of good cause for Humboldt County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Humboldt County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Humboldt County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Humboldt County of this deficiency on September 16, 2024 (*see* Exhibit B), but Humboldt County refused to amend or supplement its Fact Sheet. Under this Court's orders, Humboldt County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Humboldt County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Humboldt County's potential claims against them. Humboldt County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Humboldt County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Humboldt County's proposed RICO claim against the PBMs has expired. Humboldt County filed its original complaint on July 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Humboldt County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45942-DAP, ECF No. 1. It is therefore indisputable that Humboldt County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Humboldt County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Humboldt County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Humboldt County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 758. *Spokane County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45943-DAP: Plaintiff Spokane County, Washington

Spokane County's untimely motion for leave to amend should be denied for several reasons. Spokane County failed to provide notice of its proposed amendments through a proposed complaint. Spokane County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Spokane County's motion should be denied due to futility, as Spokane County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Spokane County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Spokane County amended its complaint on March 13, 2019, after transfer to the MDL on August 13, 2018, as well as on May 28, 2019 and March 1, 2021. *See Spokane County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45943-DAP, ECF Nos. 28, 29, 31. Unlike many other plaintiffs, Spokane County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Spokane County's deadline to amend was in 2019. Spokane County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Spokane County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Spokane County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Spokane County). That insignificant dispensing volume is much too low to support a finding of good cause for Spokane County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Spokane County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Spokane County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Spokane County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Spokane County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Spokane County's proposed RICO claim against the PBMs has expired. Spokane County filed its original complaint on June 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Spokane County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45943-DAP, ECF No. 1. It is therefore indisputable that Spokane County knew of its RICO injury, at the very latest, the day

it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Spokane County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Spokane County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Spokane County's public-nuisance claim against the PBMs is therefore time-barred because Spokane County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 21, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Spokane County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 759. *Franklin County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45944-DAP: Plaintiff Franklin County, Washington

Franklin County's untimely motion for leave to amend should be denied for several reasons. Franklin County failed to provide notice of its proposed amendments through a proposed complaint. Franklin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin

County's motion should be denied due to futility, as Franklin County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Franklin County amended its complaint on March 15, 2019, after transfer to the MDL on August 13, 2018, as well as on May 28, 2019 and December 24, 2020. *See Franklin County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45944-DAP, ECF Nos. 21, 22, 24. Unlike many other plaintiffs, Franklin County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Franklin County's deadline to amend was in 2019. Franklin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Franklin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Franklin County). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Franklin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin County's proposed RICO claim against the PBMs has expired. Franklin County filed its original complaint on July 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Franklin County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45944-DAP, ECF No. 1. It is therefore indisputable that Franklin County knew of its RICO injury, at the very latest, the day it

filed a complaint asserting a RICO claim, six years before seeking leave to amend. Franklin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Franklin County's public-nuisance claim against the PBMs is therefore time-barred because Franklin County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 11, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Franklin County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 760. *Laurens County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45945-DAP: Plaintiff Laurens County, Georgia

Laurens County's untimely motion for leave to amend should be denied for several reasons. Laurens County failed to provide notice of its proposed amendments through a proposed complaint. Laurens County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly

prejudice the PBMs. Moreover, Laurens County's motion should be denied due to futility, as Laurens County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Laurens County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Laurens County amended its complaint on March 12, 2019, after transfer to the MDL on August 13, 2018. *See Laurens County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45945-DAP, ECF No. 6. Unlike many other plaintiffs, Laurens County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Laurens County's deadline to amend was in 2019. Laurens County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Laurens County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Laurens County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; and Baron & Budd, P.C.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Laurens County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Laurens County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys

were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Laurens County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Laurens County). That insignificant dispensing volume is much too low to support a finding of good cause for Laurens County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Laurens County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Laurens County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Laurens County filed its original complaint on July 10, 2018. *See Laurens County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45945-DAP, ECF No. 1. Despite filing its case years ago, Laurens County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF

No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Laurens County's case would force the parties and the Court to waste time and resources ascertaining the extent of Laurens County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Laurens County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Laurens County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Laurens County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Laurens County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Laurens County seeks leave to amend to add claims against the PBMs in two cases: *Laurens County, Georgia v. Amerisourcebergen Drug Corporation, et al.*, No. 1:18-op-45945-DAP; and *Dean v. Purdue Pharma L.P., et al.*, No. 1:19-op-45163-DAP. Laurens County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where

district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Laurens County's proposed RICO claim against the PBMs has expired. Laurens County filed its original complaint on July 10, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Laurens County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45945-DAP, ECF No. 1. It is therefore indisputable that Laurens County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Laurens County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Laurens County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Laurens County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 761. *City of Jersey City, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45948-DAP: Plaintiff Jersey City, New Jersey

Jersey City's untimely motion for leave to amend should be denied for several reasons. Jersey City failed to provide notice of its proposed amendments through a proposed complaint.

Jersey City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jersey City's motion should be denied due to futility, as Jersey City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jersey City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jersey City filed its original complaint on June 28, 2018 and the case was transferred to the MDL on August 13, 2018. *See City of Jersey City, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45948-DAP, ECF No. 4. Jersey City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Jersey City elected not to do so. Instead, Jersey City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jersey City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jersey City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Jersey City). That insignificant dispensing volume is much too low to

support a finding of good cause for Jersey City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jersey City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jersey City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Jersey City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Jersey City of the PBM services Express Scripts provides and Jersey City began receiving those services on July 1, 2006. *See id.* Inasmuch as Jersey City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Jersey City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Jersey City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Jersey City filed its original complaint on June 28, 2018. *See City of Jersey City, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45948-DAP, ECF No. 1. Despite filing its case years ago, Jersey City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1

(Date Litigation Hold Implemented: Never). Litigating Jersey City's case would force the parties and the Court to waste time and resources ascertaining the extent of Jersey City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jersey City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jersey City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jersey City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jersey City, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jersey City's proposed RICO claim against the PBMs has expired. Jersey City filed its original complaint on June 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Jersey City, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45948-DAP, ECF No. 1. It is therefore indisputable that Jersey City knew of its RICO injury, at the very latest, the day it

filed a complaint asserting a RICO claim, six years before seeking leave to amend. Jersey City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jersey City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jersey City, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

762. *City of New Albany, Mississippi v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45949-DAP: Plaintiff New Albany City, Mississippi**

New Albany City's untimely motion for leave to amend should be denied for several reasons. New Albany City failed to provide notice of its proposed amendments through a proposed complaint. New Albany City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, New Albany City's motion should be denied due to futility, as New Albany City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** New Albany City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, New Albany City amended its complaint on March 11, 2019, after transfer to the MDL on August 13, 2018. *See City of New Albany, Mississippi v. Amerisourcebergen Drug Corporation*

*et al.*, Case No. 1:18-op-45949-DAP, ECF No. 5. Unlike many other plaintiffs, New Albany City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. New Albany City's deadline to amend was in 2019. New Albany City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. New Albany City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** New Albany City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. New Albany City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. New Albany City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

New Albany City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for New Albany City). That insignificant dispensing volume is much too low to support a finding of good cause for New Albany City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to New Albany City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for New Albany City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** New Albany City filed its original complaint on July 12, 2018. *See City of New Albany, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45949-DAP, ECF No. 1. Despite filing its case years ago, New Albany City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating New Albany City's case would force the parties and the Court to waste time and resources ascertaining the extent of New Albany City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by New Albany City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and New Albany City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791,

at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, New Albany City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to New Albany City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified New Albany City of this deficiency on September 16, 2024 (*see* Exhibit B), but New Albany City refused to amend or supplement its Fact Sheet. Under this Court's orders, New Albany City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. New Albany City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against New Albany City's potential claims against them. New Albany City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But New Albany City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** New Albany City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for New Albany City's proposed RICO claim against the PBMs has expired. New Albany City filed its amended complaint on March 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of New Albany, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45949-DAP, ECF No. 5. It is therefore indisputable that New Albany City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. New Albany City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. New Albany City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** New Albany City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

763. *City of Greenwood, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45950-DAP: Plaintiff Greenwood City, Mississippi

Greenwood City's untimely motion for leave to amend should be denied for several reasons. Greenwood City failed to provide notice of its proposed amendments through a proposed complaint. Greenwood City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greenwood City's motion should be denied due to futility, as Greenwood City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greenwood City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greenwood City amended its complaint on March 7, 2019, after transfer to the MDL on August 13, 2018. *See City of Greenwood, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45950-DAP, ECF No. 5. Unlike many other plaintiffs, Greenwood City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Greenwood City's deadline to amend was in 2019. Greenwood City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Greenwood City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Greenwood City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Greenwood City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Greenwood City fails to explain why it was unable to

assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Greenwood City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Greenwood City). That insignificant dispensing volume is much too low to support a finding of good cause for Greenwood City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Greenwood City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Greenwood City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Greenwood City filed its original complaint on July 12, 2018. *See City of Greenwood, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45950-DAP, ECF No. 1. Despite filing its case years ago, Greenwood City *never*

implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Greenwood City's case would force the parties and the Court to waste time and resources ascertaining the extent of Greenwood City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Greenwood City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Greenwood City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greenwood City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greenwood City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greenwood City's proposed RICO claim against the PBMs has expired. Greenwood City filed its amended complaint on March

7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Greenwood, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45950-DAP, ECF No. 5. It is therefore indisputable that Greenwood City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Greenwood City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greenwood City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Greenwood City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 764. *City of Melrose, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45951-DAP: Plaintiff Melrose City, Massachusetts

Melrose City's untimely motion for leave to amend should be denied for several reasons. Melrose City failed to provide notice of its proposed amendments through a proposed complaint. Melrose City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Melrose City's motion should be denied due to futility, as Melrose City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Melrose City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Melrose City amended its complaint on March 6, 2019, after transfer to the MDL on August 13, 2018. *See City of Melrose, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45951-DAP, ECF No. 12. Unlike many other plaintiffs, Melrose City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Melrose City's deadline to amend was in 2019. Melrose City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Melrose City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Melrose City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Melrose City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Melrose City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part

of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Melrose City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Melrose City). That insignificant dispensing volume is much too low to support a finding of good cause for Melrose City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Melrose City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Melrose City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Melrose City filed its original complaint on July 6, 2018. *See City of Melrose, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45951-DAP, ECF No. 1. Despite filing its case years ago, Melrose City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Melrose City's case would force the parties and the Court to waste time and resources ascertaining the extent of Melrose City's document destruction and the appropriate sanctions—just as the parties were forced to do

in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Melrose City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Melrose City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

       **Failure to Prosecute.** In its Plaintiff Fact Sheet, Melrose City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Melrose City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Melrose City of this deficiency on September 16, 2024 (*see* Exhibit B), but Melrose City refused to amend or supplement its Fact Sheet. Under this Court's orders, Melrose City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Melrose City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Melrose City's potential claims against them. Melrose City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

       **Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Melrose City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Melrose City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Melrose City's proposed RICO claim against the PBMs has expired. Melrose City filed its original complaint on July 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Melrose, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45951-DAP, ECF No. 1. It is therefore indisputable that Melrose City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Melrose City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Melrose City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Melrose City's public-nuisance claim against the PBMs is therefore time-barred because Melrose City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 6, 2018—and the proposed amendment

does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Melrose City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 765. *Town of Chelmsford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45952-DAP: Plaintiff Chelmsford Town, Massachusetts

Chelmsford Town's untimely motion for leave to amend should be denied for several reasons. Chelmsford Town failed to provide notice of its proposed amendments through a proposed complaint. Chelmsford Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chelmsford Town's motion should be denied due to futility, as Chelmsford Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chelmsford Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chelmsford Town amended its complaint on March 6, 2019, after transfer to the MDL on August 13, 2018. *See Town of Chelmsford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45952-DAP, ECF No. 16. Unlike many other plaintiffs, Chelmsford Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Chelmsford Town's deadline to amend was in 2019. Chelmsford Town waited five

years after its deadline to amend to seek leave to assert claims against the PBMs. Chelmsford Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Chelmsford Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Chelmsford Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Chelmsford Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chelmsford Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Chelmsford Town). That insignificant dispensing volume

is much too low to support a finding of good cause for Chelmsford Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chelmsford Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chelmsford Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chelmsford Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chelmsford Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chelmsford Town's proposed RICO claim against the PBMs has expired. Chelmsford Town filed its original complaint on July 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Chelmsford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No.

1:18-op-45952-DAP, ECF No. 1. It is therefore indisputable that Chelmsford Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Chelmsford Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chelmsford Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Chelmsford Town's public-nuisance claim against the PBMs is therefore time-barred because Chelmsford Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 6, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Chelmsford Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 766. *Gulf County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45953-DAP: Plaintiff Gulf County, Florida

Gulf County's untimely motion for leave to amend should be denied for several reasons. Gulf County failed to provide notice of its proposed amendments through a proposed complaint. Gulf County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gulf County's motion should be denied due to futility, as Gulf County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gulf County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gulf County amended its complaint on March 8, 2019, after transfer to the MDL on August 13, 2018. *See Gulf County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45953-DAP, ECF No. 7. Unlike many other plaintiffs, Gulf County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Gulf County's deadline to amend was in 2019. Gulf County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Gulf County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Gulf County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Gulf County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Gulf County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gulf County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.32% market share for Gulf County). That insignificant dispensing volume is much too low to support a finding of good cause for Gulf County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Gulf County filed its original complaint on July 11, 2018. *See Gulf County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45953-DAP, ECF No. 1. Despite filing its case years ago, Gulf County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Gulf County's case would force the parties and the Court to waste time and resources ascertaining the extent of Gulf County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gulf County's disregard for its most basic discovery obligations as a litigant, compounded by the delay

in seeking leave to amend, and Gulf County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Gulf County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Gulf County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Gulf County of this deficiency on September 16, 2024 (*see* Exhibit B), but Gulf County refused to amend or supplement its Fact Sheet. Under this Court's orders, Gulf County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Gulf County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Gulf County's potential claims against them. Gulf County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gulf County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gulf County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Gulf County's proposed RICO claim against the PBMs has expired. Gulf County filed its original complaint on July 11, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Gulf County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45953-DAP, ECF No. 1. It is therefore indisputable that Gulf County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Gulf County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gulf County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Gulf County's public-nuisance claim against the PBMs is therefore time-barred because Gulf County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 11, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new

cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Gulf County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 767. *Whatcom County v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45954-DAP: Plaintiff Whatcom County, Washington

Whatcom County's untimely motion for leave to amend should be denied for several reasons. Whatcom County failed to provide notice of its proposed amendments through a proposed complaint. Whatcom County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Whatcom County's motion should be denied due to futility, as Whatcom County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Whatcom County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Whatcom County amended its complaint on March 14, 2019, after transfer to the MDL on August 13, 2018, as well as on May 28, 2019 and December 23, 2020. *See Whatcom County v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45954-DAP, ECF Nos. 21, 22, 24. Unlike many other plaintiffs, Whatcom County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Whatcom County's deadline to amend was in 2019. Whatcom County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Whatcom County's lack of diligence in pursuing its claims negates any finding of good cause. *See*

*Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Whatcom County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Whatcom County). That insignificant dispensing volume is much too low to support a finding of good cause for Whatcom County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Whatcom County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Whatcom County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Whatcom County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Whatcom County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Whatcom County's proposed RICO claim against the PBMs has expired. Whatcom County filed its original complaint on June 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Whatcom County v. Purdue Pharma, LP et al.*, Case No. 1:18-op-45954-DAP, ECF No. 1. It is therefore indisputable that Whatcom County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Whatcom County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Whatcom County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Whatcom County's public-nuisance claim against the PBMs is therefore time-barred because Whatcom County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Whatcom County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 768. *Lummi Tribe of the Lummi Reservation v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45955-DAP: Plaintiff Lummi Tribe of the Lummi Reservation, Washington

Lummi Tribe of the Lummi Reservation's untimely motion for leave to amend should be denied for several reasons. Lummi Tribe of the Lummi Reservation failed to provide notice of its proposed amendments through a proposed complaint. Lummi Tribe of the Lummi Reservation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lummi Tribe of the Lummi Reservation's motion should be denied due to futility, as Lummi Tribe of the Lummi Reservation does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lummi Tribe of the Lummi Reservation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lummi Tribe of the Lummi Reservation amended its complaint on August 8, 2019, after transfer to the MDL on August 13, 2018, as well as on January 20, 2021. *See Lummi Tribe of the Lummi Reservation v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45955-DAP, ECF Nos. 25, 30. Unlike many other plaintiffs, Lummi Tribe of the Lummi Reservation declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above.

Lummi Tribe of the Lummi Reservation's deadline to amend was in 2019. Lummi Tribe of the Lummi Reservation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lummi Tribe of the Lummi Reservation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lummi Tribe of the Lummi Reservation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lummi Tribe of the Lummi Reservation to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lummi Tribe of the Lummi Reservation violated its basic duty to implement a timely litigation hold. Lummi Tribe of the Lummi Reservation filed its original complaint on July 19, 2018, but waited until September 12, 2024 to implement a litigation hold—six years later. *See Lummi Tribe of the Lummi Reservation v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45955-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 12, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lummi Tribe of the Lummi Reservation's case would force the parties and the Court to waste time and resources ascertaining the extent of Lummi Tribe of the

Lummi Reservation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lummi Tribe of the Lummi Reservation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lummi Tribe of the Lummi Reservation therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lummi Tribe of the Lummi Reservation's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lummi Tribe of the Lummi Reservation, a native tribe in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lummi Tribe of the Lummi Reservation's proposed RICO claim against the PBMs has expired. Lummi Tribe of the Lummi Reservation filed its original complaint on July 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lummi Tribe of the Lummi Reservation v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45955-DAP, ECF No. 1. It is therefore indisputable

that Lummi Tribe of the Lummi Reservation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lummi Tribe of the Lummi Reservation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lummi Tribe of the Lummi Reservation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Lummi Tribe of the Lummi Reservation's public-nuisance claim against the PBMs is therefore time-barred because Lummi Tribe of the Lummi Reservation sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 19, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lummi Tribe of the Lummi Reservation, a native tribe in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

769.     ***Conecuh County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45957-DAP: Plaintiff Conecuh County, Alabama**

Conecuh County's untimely motion for leave to amend should be denied for several reasons. Conecuh County failed to provide notice of its proposed amendments through a proposed complaint. Conecuh County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Conecuh County's motion should be denied due to futility, as Conecuh County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Conecuh County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Conecuh County amended its complaint on March 15, 2019, after transfer to the MDL on August 13, 2018. *See Conecuh County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45957-DAP, ECF No. 7. Unlike many other plaintiffs, Conecuh County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Conecuh County's deadline to amend was in 2019. Conecuh County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Conecuh County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Conecuh County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Conecuh County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Conecuh County fails to

explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Conecuh County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Conecuh County). That insignificant dispensing volume is much too low to support a finding of good cause for Conecuh County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Conecuh County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Conecuh County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Conecuh County filed its original complaint on July 12, 2018. *See Conecuh County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45957-DAP, ECF No. 1. Despite filing its case years ago, Conecuh County *never*

implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Conecuh County's case would force the parties and the Court to waste time and resources ascertaining the extent of Conecuh County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Conecuh County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Conecuh County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Conecuh County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Conecuh County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Conecuh County's proposed RICO claim against the PBMs has expired. Conecuh County filed its original complaint on July 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Conecuh County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45957-DAP, ECF No. 1. It is therefore indisputable that Conecuh County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Conecuh County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Conecuh County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Conecuh County's public-nuisance claim against the PBMs is therefore time-barred because Conecuh County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 12, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Conecuh County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Conecuh County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **770.** ***Red Lake Band of Chippewa Indians v. Amerisourcebergen Drug Corporation et al.***, **Case No. 1:18-op-45959-DAP: Plaintiff Red Lake Band of Chippewa Indians, Minnesota**

Red Lake Band of Chippewa Indians' untimely motion for leave to amend should be denied for several reasons. Red Lake Band of Chippewa Indians failed to provide notice of its proposed amendments through a proposed complaint. Red Lake Band of Chippewa Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Red Lake Band of Chippewa Indians' motion should be denied due to futility, as Red Lake Band of Chippewa Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Red Lake Band of Chippewa Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Red Lake Band of Chippewa Indians amended its complaint on March 10, 2019, after transfer to the MDL on August 13, 2018, as well as on August 13, 2019. *See Red Lake Band of Chippewa Indians v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45959-DAP, ECF Nos. 7, 13. Unlike many other plaintiffs, Red Lake Band of Chippewa Indians declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Red Lake Band of Chippewa Indians' deadline to amend was in 2019. Red Lake Band of Chippewa Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Red Lake Band of Chippewa Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Red Lake Band of Chippewa Indians cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Red Lake Band of Chippewa Indians, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Red Lake Band of Chippewa Indians fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Red Lake Band of Chippewa Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Red Lake Band of Chippewa Indians filed its original complaint on July 23, 2018. *See Red Lake Band of Chippewa Indians v.*

*Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45959-DAP, ECF No. 1. Despite filing its case years ago, Red Lake Band of Chippewa Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Red Lake Band of Chippewa Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Red Lake Band of Chippewa Indians' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Red Lake Band of Chippewa Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Red Lake Band of Chippewa Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Red Lake Band of Chippewa Indians' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Red Lake Band of Chippewa Indians, a native tribe in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Red Lake Band of Chippewa Indians' proposed RICO claim against the PBMs has expired. Red Lake Band of Chippewa Indians filed its original complaint on July 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Red Lake Band of Chippewa Indians v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45959-DAP, ECF No. 1. It is therefore indisputable that Red Lake Band of Chippewa Indians knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Red Lake Band of Chippewa Indians' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Red Lake Band of Chippewa Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Red Lake Band of Chippewa Indians, a native tribe in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

771. *Village of Herkimer, New York v. Purdue Pharma, L.P. et al.*, **Case No. 1:18-op-45964-DAP: Plaintiff Herkimer Village, New York**

Herkimer Village's untimely motion for leave to amend should be denied for several reasons. Herkimer Village failed to provide notice of its proposed amendments through a proposed complaint. Herkimer Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Herkimer Village's motion should be denied due to futility, as

Herkimer Village does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Herkimer Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Herkimer Village amended its complaint on March 14, 2019, after transfer to the MDL on August 14, 2018. *See Village of Herkimer, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45964-DAP, ECF No. 64. Unlike many other plaintiffs, Herkimer Village declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Herkimer Village's deadline to amend was in 2019. Herkimer Village waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Herkimer Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Herkimer Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Herkimer Village). That insignificant dispensing volume is much too low to support a finding of good cause for Herkimer Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Herkimer Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Herkimer Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Herkimer Village filed its original complaint on July 5, 2018. *See Village of Herkimer, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45964-DAP, ECF No. 1. Despite filing its case years ago, Herkimer Village *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Herkimer Village's case would force the parties and the Court to waste time and resources ascertaining the extent of Herkimer Village's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Herkimer Village's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Herkimer Village therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Herkimer Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Herkimer Village's proposed RICO claim against the PBMs has expired. Herkimer Village filed its original complaint on July 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Village of Herkimer, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45964-DAP, ECF No. 1. It is therefore indisputable that Herkimer Village knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Herkimer Village's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Herkimer Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Herkimer Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Herkimer Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 772. *Jackson County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45965-DAP: Plaintiff Jackson County, Missouri

Jackson County's untimely motion for leave to amend should be denied for several reasons. Jackson County failed to provide notice of its proposed amendments through a proposed

complaint. Jackson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jackson County's motion should be denied due to futility, as Jackson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jackson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jackson County amended its complaint on March 15, 2019, after transfer to the MDL on August 14, 2018. *See Jackson County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45965-DAP, ECF No. 8. Unlike many other plaintiffs, Jackson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jackson County's deadline to amend was in 2019. Jackson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jackson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jackson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Jackson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jackson County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jackson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jackson County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jackson County's proposed RICO claim against the PBMs has expired. Jackson County filed its original complaint on July 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45965-DAP, ECF No. 1. It is therefore indisputable that Jackson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Jackson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jackson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jackson County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 773. *City of Covington, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45967-DAP: Plaintiff Covington City, Kentucky

Covington City's untimely motion for leave to amend should be denied for several reasons. Covington City failed to provide notice of its proposed amendments through a proposed complaint. Covington City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Covington City's motion should be denied due to futility, as Covington City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Covington City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Covington City amended its complaint on March 11, 2019, after transfer to the MDL on August 14, 2018. *See City of Covington, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45967-DAP, ECF No. 51. Unlike many other plaintiffs, Covington City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Covington City's deadline to amend was in 2019. Covington City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Covington City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Covington City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Covington City). That insignificant dispensing volume is much too low to support a finding of good cause for Covington City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Covington City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Covington City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Covington City filed its original complaint on July 24, 2018. *See City of Covington, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45967-DAP, ECF No. 1. Despite filing its case years ago, Covington City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Covington City's case would force the parties and the Court to waste time and resources ascertaining the extent of Covington City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Covington City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Covington City therefore lacks good

cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Covington City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Covington City, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Covington City's proposed RICO claim against the PBMs has expired. Covington City filed its original complaint on July 24, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Covington, Kentucky v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45967-DAP, ECF No. 1. It is therefore indisputable that Covington City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Covington City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Covington City's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Covington City, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 774. *City of Meridian v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45969-DAP: Plaintiff Meridian City, Mississippi

Meridian City's untimely motion for leave to amend should be denied for several reasons. Meridian City failed to provide notice of its proposed amendments through a proposed complaint. Meridian City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Meridian City's motion should be denied due to futility, as Meridian City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Meridian City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Meridian City amended its complaint on March 7, 2019, after transfer to the MDL on August 14, 2018. *See City of Meridian v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45969-DAP, ECF No. 8. Unlike many other plaintiffs, Meridian City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Meridian City's deadline to amend was in 2019. Meridian City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Meridian City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Meridian City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Meridian City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Meridian City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Meridian City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Meridian City). That insignificant dispensing volume is much too low to support a finding of good cause for Meridian City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Meridian City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Meridian City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Meridian City violated its basic duty to implement a timely litigation hold. Meridian City filed its original complaint on July 24, 2018, but waited until December 13, 2019 to implement a litigation hold—a year and half later. *See City of Meridian v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45969-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Meridian City's case would force the parties and the Court to waste time and resources ascertaining the extent of Meridian City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Meridian City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Meridian City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Meridian City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Meridian City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Meridian City's proposed RICO claim against the PBMs has expired. Meridian City filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Meridian v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45969-DAP, ECF No. 8. It is therefore indisputable that Meridian City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Meridian City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Meridian City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Meridian City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**775.** *Polk County, Florida v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-45970-DAP: Plaintiff Polk County, Florida**

Polk County's untimely motion for leave to amend should be denied for several reasons. Polk County failed to provide notice of its proposed amendments through a proposed complaint. Polk County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Polk County's motion should be denied due to futility, as Polk County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Polk County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Polk County filed its original complaint on May 23, 2018 and the case was transferred to the MDL on August 14, 2018. *See Polk County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45970-DAP, ECF No. 5. Polk County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Polk County elected not to do so. Instead, Polk County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Polk County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Polk County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.18% market share for Polk County). That insignificant dispensing volume is much too low to support a finding of good cause for Polk County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Polk County filed its original complaint on May 23, 2018. *See Polk County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45970-DAP, ECF No. 2. Despite filing its case years ago, Polk County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Polk County's case would force the parties and the Court to waste time and resources ascertaining the extent of Polk County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Polk County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Polk County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Polk County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Polk County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Polk County's proposed RICO claim against the PBMs has expired. Polk County filed its original complaint on May 23, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Polk County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45970-DAP, ECF No. 2. Even assuming *arguendo* that Polk County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 23, 2022. Polk County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Polk County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Polk County's public-nuisance claim against the PBMs is therefore time-barred because Polk County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on May 23, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new

cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Polk County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 776. *County of Eaton v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45971-DAP: Plaintiff Eaton County, Michigan

Eaton County's untimely motion for leave to amend should be denied for several reasons. Eaton County failed to provide notice of its proposed amendments through a proposed complaint. Eaton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Eaton County's motion should be denied due to futility, as Eaton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Eaton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Eaton County amended its complaint on March 13, 2019, after transfer to the MDL on August 15, 2018. *See County of Eaton v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45971-DAP, ECF No. 8. Unlike many other plaintiffs, Eaton County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Eaton County's deadline to amend was in 2019. Eaton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Eaton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Eaton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Eaton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Eaton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Eaton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Eaton County). That insignificant dispensing volume is much too low to support a finding of good cause for Eaton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Eaton County violated its basic duty to implement a timely litigation hold. Eaton County filed its original complaint on July 25, 2018, but waited until January 10, 2020 to implement a litigation hold—a year and a half later. *See County of Eaton v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45971-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 10, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Eaton County's case would force the parties and the Court to waste time and resources ascertaining the extent of Eaton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Eaton County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Eaton County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Eaton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Eaton County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Eaton County's proposed RICO claim against the PBMs has expired. Eaton County filed its original complaint on July 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Eaton v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45971-DAP, ECF No. 1. It is therefore indisputable that Eaton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Eaton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Eaton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Eaton County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 777.	*Waukesha County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45978-DAP: Plaintiff Waukesha County, Wisconsin

Waukesha County's untimely motion for leave to amend should be denied for several reasons. Waukesha County failed to provide notice of its proposed amendments through a proposed complaint. Waukesha County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Waukesha County's motion should be denied due to futility, as Waukesha County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Waukesha County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Waukesha County amended its complaint on March 13, 2019, after transfer to the MDL on August 17, 2018. *See Waukesha County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45978-DAP, ECF No. 5. Unlike many other plaintiffs, Waukesha County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Waukesha County's deadline to amend was in 2019. Waukesha County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Waukesha County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Waukesha County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Waukesha County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Waukesha County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F.

App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Waukesha County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.24% market share for Waukesha County). That insignificant dispensing volume is much too low to support a finding of good cause for Waukesha County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Waukesha County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Waukesha County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Waukesha County's proposed RICO claim against the PBMs has expired. Waukesha County filed its original complaint on July 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Waukesha County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45978-DAP, ECF No. 1. It is therefore indisputable that Waukesha County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Waukesha County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Waukesha County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Waukesha County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 778. *Cherokee County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45979-DAP: Plaintiff Cherokee County, North Carolina

Cherokee County's untimely motion for leave to amend should be denied for several reasons. Cherokee County failed to provide notice of its proposed amendments through a proposed complaint. Cherokee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cherokee County's motion should be denied due to futility, as Cherokee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cherokee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Cherokee County amended its complaint on March 11, 2019, after transfer to the MDL on August 17, 2018. *See Cherokee County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45979-DAP, ECF No. 5. Unlike many other plaintiffs, Cherokee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cherokee County's deadline to amend was in 2019. Cherokee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cherokee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cherokee County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cherokee County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cherokee County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cherokee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.31% market share for Cherokee County). That insignificant dispensing volume is much too low to support a finding of good cause for Cherokee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Cherokee County violated its basic duty to implement a timely litigation hold. Cherokee County filed its original complaint on July 30, 2018, but waited until May 17, 2021 to implement a litigation hold—almost three years later. *See Cherokee County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45979-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: May 17, 2021). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Cherokee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cherokee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cherokee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cherokee County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cherokee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cherokee County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cherokee County's proposed RICO claim against the PBMs has expired. Cherokee County filed its original complaint on July 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cherokee County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45979-DAP, ECF No. 1. It is therefore indisputable that Cherokee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cherokee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cherokee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cherokee County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 779. *Island County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45982-DAP: Plaintiff Island County, Washington

Island County's untimely motion for leave to amend should be denied for several reasons. Island County failed to provide notice of its proposed amendments through a proposed complaint. Island County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Island County's motion should be denied due to futility, as Island County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Island County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Island County amended its complaint on March 13, 2019, after transfer to the MDL on August 17, 2018, as well as on May 28, 2019 and December 22, 2020. *See Island County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45982-DAP, ECF Nos. 22, 25, 27. Unlike many other plaintiffs, Island County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Island County's deadline to amend was in 2019. Island County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Island County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Island County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Island County). That insignificant dispensing volume is much too low to support a finding of good cause for Island County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Island County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Island County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Island County's proposed RICO claim against the PBMs has expired. Island County filed its original complaint on August 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Island County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45982-DAP, ECF No. 1. It is

therefore indisputable that Island County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Island County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Island County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Island County's public-nuisance claim against the PBMs is therefore time-barred because Island County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Island County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

780. ***Allamakee County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45983-DAP: Plaintiff Allamakee County, Iowa**

Allamakee County's untimely motion for leave to amend should be denied for several reasons. Allamakee County failed to provide notice of its proposed amendments through a proposed complaint. Allamakee County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Allamakee County's motion should be denied due to futility, as Allamakee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Allamakee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Allamakee County amended its complaint on March 15, 2019, after transfer to the MDL on August 17, 2018. *See Allamakee County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45983-DAP, ECF No. 7. Unlike many other plaintiffs, Allamakee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Allamakee County's deadline to amend was in 2019. Allamakee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Allamakee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Allamakee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Allamakee County). That insignificant dispensing volume is much too low to support a finding of good cause for Allamakee County to add dispensing

claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Allamakee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Allamakee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Allamakee County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Allamakee County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Allamakee County of this deficiency on September 16, 2024 (*see* Exhibit B), but Allamakee County refused to amend or supplement its Fact Sheet. Under this Court's orders, Allamakee County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Allamakee County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Allamakee County's potential claims against them. Allamakee County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Allamakee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Allamakee County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Allamakee County's proposed RICO claim against the PBMs has expired. Allamakee County filed its original complaint on August 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Allamakee County v. Purdue Pharma LP et al.*, Case No. 1:18-op-45983-DAP, ECF No. 1. It is therefore indisputable that Allamakee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Allamakee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Allamakee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Allamakee County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 781. *Pasquotank County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45986-DAP: Plaintiff Pasquotank County, North Carolin

Pasquotank County's untimely motion for leave to amend should be denied for several reasons. Pasquotank County failed to provide notice of its proposed amendments through a proposed complaint. Pasquotank County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pasquotank County's motion should be denied due to futility, as Pasquotank County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pasquotank County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pasquotank County amended its complaint on March 13, 2019, after transfer to the MDL on August 20, 2018. *See Pasquotank County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45986-DAP, ECF No. 5. Unlike many other plaintiffs, Pasquotank County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pasquotank County's deadline to amend was in 2019. Pasquotank County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pasquotank County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pasquotank County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pasquotank County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pasquotank County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pasquotank County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Pasquotank County). That insignificant dispensing volume is much too low to support a finding of good cause for Pasquotank County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pasquotank County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pasquotank County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pasquotank County filed its original complaint on July 30, 2018. *See Pasquotank County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45986-DAP, ECF No. 1. Despite filing its case years ago, Pasquotank County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pasquotank County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pasquotank County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pasquotank County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pasquotank County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pasquotank County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pasquotank County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pasquotank County's proposed RICO claim against the PBMs has expired. Pasquotank County filed its original complaint on July 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pasquotank County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45986-DAP, ECF No. 1. It is therefore indisputable that Pasquotank County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pasquotank County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pasquotank County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pasquotank County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

782. ***St. John the Baptist Parish v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45987-DAP: Plaintiff St. John The Baptist Parish, Louisiana**

St. John The Baptist Parish's untimely motion for leave to amend should be denied for several reasons. St. John The Baptist Parish failed to provide notice of its proposed amendments through a proposed complaint. St. John The Baptist Parish also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. John The Baptist Parish's motion should be denied due to futility, as St. John The Baptist Parish does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. John The Baptist Parish was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. John The Baptist Parish amended its complaint on March 13, 2019, after transfer to the MDL on August 20, 2018. *See St. John the Baptist Parish v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45987-DAP, ECF No. 8. Unlike many other plaintiffs, St. John The Baptist Parish declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. John The Baptist Parish's deadline to amend was in 2019. St. John The Baptist Parish waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. John The Baptist Parish's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** St. John The Baptist Parish cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. St. John The Baptist Parish, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. St. John The Baptist Parish fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. John The Baptist Parish's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for St. John The Baptist Parish). That insignificant dispensing volume is much too low to support a finding of good cause for St. John The Baptist Parish to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to St. John The Baptist Parish's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. John The Baptist Parish to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. John The Baptist Parish's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. John The Baptist Parish, a municipality in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. John The Baptist Parish's proposed RICO claim against the PBMs has expired. St. John The Baptist Parish filed its original complaint on July 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See St. John the Baptist Parish v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45987-DAP, ECF No. 1. It is therefore indisputable that St. John The Baptist Parish knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. John The Baptist Parish's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other

elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. John The Baptist Parish's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to a one-year limitations period. St. John The Baptist Parish's public-nuisance claim against the PBMs is therefore time-barred because St. John The Baptist Parish sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** St. John The Baptist Parish, a municipality in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

783. ***Walworth County Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45988-DAP: Plaintiff Walworth County, Wisconsin**

Walworth County's untimely motion for leave to amend should be denied for several reasons. Walworth County failed to provide notice of its proposed amendments through a proposed complaint. Walworth County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Walworth County's motion should be denied due to futility, as Walworth County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Walworth County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Walworth County amended its complaint on March 13, 2019, after transfer to the MDL on August 20, 2018. *See Walworth County Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45988-DAP, ECF No. 5. Unlike many other plaintiffs, Walworth County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Walworth County's deadline to amend was in 2019. Walworth County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Walworth County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Walworth County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Walworth County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Walworth County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Walworth County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Walworth County). That insignificant dispensing volume is much too low to support a finding of good cause for Walworth County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Walworth County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Walworth County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Walworth County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Walworth County, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Walworth County's proposed RICO claim against the PBMs has expired. Walworth County filed its original complaint on August 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Walworth County Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45988-DAP, ECF No. 1. It is therefore indisputable that Walworth County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Walworth County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Walworth County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Walworth County, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 784. *Essex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45989-DAP: Plaintiff Essex County, New Jersey

Essex County's untimely motion for leave to amend should be denied for several reasons. Essex County failed to provide notice of its proposed amendments through a proposed complaint. Essex County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Essex County's motion should be denied due to futility, as Essex County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Essex County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Essex County filed its original complaint on August 1, 2018 and the case was transferred to the MDL on August 20, 2018. *See Essex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45989-DAP, ECF No. 3. Essex County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Essex County elected not to do so. Instead, Essex County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Essex County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Essex County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Essex County). That insignificant dispensing volume is much too low to support a finding of good cause for Essex County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Essex County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Essex County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Essex County filed its original complaint on August 1, 2018. *See Essex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45989-DAP, ECF No. 1. Despite filing its case years ago, Essex County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Essex County's case would force the parties and the Court to waste time and resources ascertaining the extent of Essex County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Essex County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Essex County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Essex County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Essex County, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Essex County's proposed RICO claim against the PBMs has expired. Essex County filed its original complaint on August 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Essex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45989-DAP, ECF No. 1. It is therefore indisputable that Essex County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Essex County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Essex County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Essex County, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**785.** *Town of Sturbridge v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-45990-DAP: Plaintiff Sturbridge Town, Massachusetts**

Sturbridge Town's untimely motion for leave to amend should be denied for several reasons. Sturbridge Town failed to provide notice of its proposed amendments through a proposed complaint. Sturbridge Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sturbridge Town's motion should be denied due to futility, as Sturbridge Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sturbridge Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sturbridge Town amended its complaint on March 7, 2019, after transfer to the MDL on August 20, 2018. *See Town of Sturbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45990-DAP, ECF No. 11. Unlike many other plaintiffs, Sturbridge Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sturbridge Town's deadline to amend was in 2019. Sturbridge Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sturbridge Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sturbridge Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sturbridge Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sturbridge Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Sturbridge Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Sturbridge Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sturbridge Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Sturbridge Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sturbridge Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sturbridge Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sturbridge Town's proposed RICO claim against the PBMs has expired. Sturbridge Town filed its original complaint on July 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Sturbridge v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-45990-DAP, ECF No. 1. It is therefore indisputable that Sturbridge Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sturbridge Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sturbridge Town's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Sturbridge Town's public-nuisance claim against the PBMs is therefore time-barred because Sturbridge Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 26, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sturbridge Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 786. ***Lenoir County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45991-DAP: Plaintiff Lenoir County, North Carolina**

Lenoir County's untimely motion for leave to amend should be denied for several reasons. Lenoir County failed to provide notice of its proposed amendments through a proposed complaint. Lenoir County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Lenoir County's motion should be denied due to futility, as Lenoir County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lenoir County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Lenoir County amended its complaint on March 11, 2019, after transfer to the MDL on August 20, 2018. *See Lenoir County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45991-DAP, ECF No. 5. Unlike many other plaintiffs, Lenoir County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lenoir County's deadline to amend was in 2019. Lenoir County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lenoir County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lenoir County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lenoir County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lenoir County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lenoir County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Lenoir County). That insignificant dispensing volume is much too low to support a finding of good cause for Lenoir County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lenoir County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lenoir County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lenoir County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lenoir County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lenoir County's proposed RICO claim against the PBMs has expired. Lenoir County filed its original complaint on July 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lenoir County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-45991-DAP, ECF No. 1. It is therefore indisputable that Lenoir County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lenoir County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lenoir County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lenoir County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

787. ***South Central UFCW Unions and Employers Health & Welfare Trust v. McKesson Corporation et al.*, Case No. 1:18-op-45998-DAP: Plaintiff South Central UFCW Unions and Employers Health & Welfare Trust, Texas**

South Central UFCW Unions and Employers Health & Welfare Trust's untimely motion for leave to amend should be denied for several reasons. South Central UFCW Unions and Employers Health & Welfare Trust failed to provide notice of its proposed amendments through a proposed complaint. South Central UFCW Unions and Employers Health & Welfare Trust also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, South Central UFCW Unions and

2973

Employers Health & Welfare Trust's motion should be denied due to futility, as South Central UFCW Unions and Employers Health & Welfare Trust does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** South Central UFCW Unions and Employers Health & Welfare Trust was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, South Central UFCW Unions and Employers Health & Welfare Trust filed its original complaint directly into the MDL on August 23, 2018. *See South Central UFCW Unions and Employers Health & Welfare Trust v. McKesson Corporation et al.*, Case No. 1:18-op-45998-DAP, ECF No. 1. South Central UFCW Unions and Employers Health & Welfare Trust could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, South Central UFCW Unions and Employers Health & Welfare Trust elected not to do so. South Central UFCW Unions and Employers Health & Welfare Trust waited five years after its deadline to amend to seek leave to assert claims against the PBMs. South Central UFCW Unions and Employers Health & Welfare Trust's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But South Central UFCW Unions and Employers Health & Welfare Trust's delay in seeking to amend its complaint has impaired the

PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** South Central UFCW Unions and Employers Health & Welfare Trust, a third party payor in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for South Central UFCW Unions and Employers Health & Welfare Trust's proposed RICO claim against the PBMs has expired. South Central UFCW Unions and Employers Health & Welfare Trust filed its original complaint on August 23, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See South Central UFCW Unions and Employers Health & Welfare Trust v. McKesson Corporation et al.*, Case No. 1:18-op-45998-DAP, ECF No. 1. Even assuming *arguendo* that South Central UFCW Unions and Employers Health & Welfare Trust first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 23, 2022. South Central UFCW Unions and Employers Health & Welfare Trust's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. South Central UFCW Unions and Employers Health & Welfare Trust's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** South Central UFCW Unions and Employers Health & Welfare Trust, a third party payor in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **788.** *City of Garfield Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45999-DAP: Plaintiff Garfield Heights City, Ohio

Garfield Heights City's untimely motion for leave to amend should be denied for several reasons. Garfield Heights City failed to provide notice of its proposed amendments through a proposed complaint. Garfield Heights City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Garfield Heights City's motion should be denied due to futility, as Garfield Heights City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Garfield Heights City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Garfield Heights City first amended its complaint on August 2, 2018. *See City of Garfield Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45999-DAP, ECF No. 1-3. Garfield Heights City amended its complaint again on March 18, 2019. *See City of Garfield Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45999-DAP, ECF No. 7. Unlike many other plaintiffs, Garfield Heights City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Garfield Heights City's deadline to amend was in 2019. Garfield Heights City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Garfield Heights City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Garfield Heights City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Garfield Heights City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Garfield Heights City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Garfield Heights City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Garfield Heights City—through its counsel— was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Garfield Heights City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint");

*Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Garfield Heights City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Garfield Heights City). That insignificant dispensing volume is much too low to support a finding of good cause for Garfield Heights City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Garfield Heights City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Garfield Heights City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Garfield Heights City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Garfield Heights City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Garfield Heights City is a plaintiff in Ohio. Garfield Heights City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Garfield Heights City's proposed RICO claim against the PBMs has expired. Garfield Heights City filed its second amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Garfield Heights v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45999-DAP, ECF No. 7. It is therefore indisputable that Garfield Heights City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Garfield Heights City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Garfield Heights City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Garfield Heights City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **789.** ***Town of South Hadley v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46000-DAP: Plaintiff South Hadley Town, Massachusetts**

South Hadley Town's untimely motion for leave to amend should be denied for several reasons. South Hadley Town failed to provide notice of its proposed amendments through a proposed complaint. South Hadley Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, South Hadley Town's motion should be denied due to futility, as South Hadley Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** South Hadley Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, South Hadley Town amended its complaint on March 7, 2019, after transfer to the MDL on August 24, 2018. *See Town of South Hadley v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46000-DAP, ECF No. 11. Unlike many other plaintiffs, South Hadley Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. South Hadley Town's deadline to amend was in 2019. South Hadley Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. South Hadley Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** South Hadley Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. South Hadley Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. South Hadley Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to South Hadley Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for South Hadley Town). That insignificant dispensing volume is much too low to support a finding of good cause for South Hadley Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But South Hadley Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** South Hadley Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for South Hadley Town's proposed RICO claim against the PBMs has expired. South Hadley Town filed its original complaint on July 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of South Hadley v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46000-DAP, ECF No. 1. It is therefore indisputable that South Hadley Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. South Hadley Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. South Hadley Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. South Hadley Town's public-nuisance claim against the PBMs is therefore time-barred because South Hadley Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on July 9, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** South Hadley Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **790.** ***Town of Sheffield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46001-DAP: Plaintiff Sheffield Town, Massachusetts**

Sheffield Town's untimely motion for leave to amend should be denied for several reasons. Sheffield Town failed to provide notice of its proposed amendments through a proposed complaint. Sheffield Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheffield Town's motion should be denied due to futility, as Sheffield Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheffield Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheffield Town amended its complaint on March 7, 2019, after transfer to the MDL on August 24,

2018. *See Town of Sheffield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case

No. 1:18-op-46001-DAP, ECF No. 11. Unlike many other plaintiffs, Sheffield Town declined to

add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheffield

Town's deadline to amend was in 2019. Sheffield Town waited five years after its deadline to

amend to seek leave to assert claims against the PBMs. Sheffield Town's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial

of motion to amend nine months after the scheduling order's deadline because plaintiff "had all

the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of

timely moving to amend).

**Prior Notice Through Counsel.** Sheffield Town cannot meet the Rule 16 good cause

standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the

PBMs in 2019. *See* MDL ECF No. 2582. Sheffield Town, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Sheffield Town fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access

to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Sheffield Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Sheffield Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Sheffield Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheffield Town filed its original complaint on June 28, 2018. *See Town of Sheffield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46001-DAP, ECF No. 1. Despite filing its case years ago, Sheffield Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sheffield Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheffield Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheffield Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheffield Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying

leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheffield Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheffield Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheffield Town's proposed RICO claim against the PBMs has expired. Sheffield Town filed its original complaint on June 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Sheffield, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46001-DAP, ECF No. 1. It is therefore indisputable that Sheffield Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Sheffield Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheffield Town's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Sheffield Town's public-nuisance claim against the PBMs is therefore time-barred because Sheffield Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 28, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sheffield Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 791. *Ely Shoshone Tribe of Nevada v. McKesson Corporation et al.*, Case No. 1:18-op-46003-DAP: Plaintiff Ely Shoshone Tribe of Nevada, Nevada

Ely Shoshone Tribe of Nevada's untimely motion for leave to amend should be denied for several reasons. Ely Shoshone Tribe of Nevada failed to provide notice of its proposed amendments through a proposed complaint. Ely Shoshone Tribe of Nevada also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ely Shoshone Tribe of Nevada's motion should be denied due to futility, as Ely Shoshone Tribe of Nevada does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ely Shoshone Tribe of Nevada was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ely Shoshone Tribe of Nevada amended its complaint on August 12, 2019, after directly filing in the MDL. *See Ely Shoshone Tribe of Nevada v. McKesson Corporation et al.*, Case No. 1:18-op-46003-DAP, ECF No. 22. Unlike many other plaintiffs, Ely Shoshone Tribe of Nevada declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ely Shoshone Tribe of Nevada's deadline to amend was in 2019. Ely Shoshone Tribe of Nevada waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ely Shoshone Tribe of Nevada's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ely Shoshone Tribe of Nevada's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ely Shoshone Tribe of Nevada to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ely Shoshone Tribe of Nevada filed its original complaint on August 27, 2018. *See Ely Shoshone Tribe of Nevada v. McKesson Corporation et al.*, Case No. 1:18-op-46003-DAP, ECF No. 1. Despite filing its case years ago, Ely Shoshone Tribe of Nevada *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos.

232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Ely Shoshone Tribe of Nevada's case would force the parties and the Court to waste time and resources ascertaining the extent of Ely Shoshone Tribe of Nevada's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ely Shoshone Tribe of Nevada's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ely Shoshone Tribe of Nevada therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ely Shoshone Tribe of Nevada's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ely Shoshone Tribe of Nevada, a native tribe in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ely Shoshone Tribe of Nevada's proposed RICO claim against the PBMs has expired. Ely Shoshone Tribe of Nevada filed its original complaint on August 27, 2018, alleging the same type of injuries *and* alleging a

RICO claim against other defendants. *See Ely Shoshone Tribe of Nevada v. McKesson Corporation et al.*, Case No. 1:18-op-46003-DAP, ECF No. 1. It is therefore indisputable that Ely Shoshone Tribe of Nevada knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Ely Shoshone Tribe of Nevada's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ely Shoshone Tribe of Nevada's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Nevada, public-nuisance claims are subject to a one-year limitations period. Ely Shoshone Tribe of Nevada's public-nuisance claim against the PBMs is therefore time-barred because Ely Shoshone Tribe of Nevada sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Ely Shoshone Tribe of Nevada, a native tribe in Nevada, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**792.** *Town of Westford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-46007-DAP: Plaintiff Westford Town, Massachusetts**

Westford Town's untimely motion for leave to amend should be denied for several reasons. Westford Town failed to provide notice of its proposed amendments through a proposed complaint. Westford Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Westford Town's motion should be denied due to futility, as Westford Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Westford Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Westford Town amended its complaint on March 8, 2019, after transfer to the MDL on August 29, 2018. *See Town of Westford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46007-DAP, ECF No. 11. Unlike many other plaintiffs, Westford Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Westford Town's deadline to amend was in 2019. Westford Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Westford Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Westford Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Westford Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Westford Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Westford Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Westford Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Westford Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Westford Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Westford Town filed its original complaint on June 29, 2018. *See Town of Westford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46007-DAP, ECF No. 1. Despite filing its case years ago, Westford Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Westford Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Westford Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Westford Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Westford Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Westford Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Westford Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Westford Town's proposed RICO claim against the PBMs has expired. Westford Town filed its original complaint on June 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Westford, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46007-DAP, ECF No. 1. It is therefore indisputable that Westford Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Westford Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westford Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Westford Town's public-nuisance claim against the PBMs is therefore time-barred because Westford Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on June 29, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Westford Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 793. *Kittitas County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46008-DAP: Plaintiff Kittitas County, Washington

Kittitas County's untimely motion for leave to amend should be denied for several reasons. Kittitas County failed to provide notice of its proposed amendments through a proposed complaint. Kittitas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kittitas County's motion should be denied due to futility, as Kittitas County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kittitas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kittitas County amended its complaint on March 14, 2019, after transfer to the MDL on August 29, 2018, as well as on May 28, 2019 and December 24, 2020. *See Kittitas County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46008-DAP, ECF Nos. 22, 25, 28. Unlike many other plaintiffs, Kittitas County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Kittitas County's deadline to amend was in 2019. Kittitas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kittitas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*,

972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kittitas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Kittitas County). That insignificant dispensing volume is much too low to support a finding of good cause for Kittitas County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kittitas County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kittitas County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Kittitas County filed its original complaint on August 9, 2018. *See Kittitas County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46008-DAP, ECF No. 1. Despite filing its case years ago, Kittitas County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Kittitas County's case would force the parties and

the Court to waste time and resources ascertaining the extent of Kittitas County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kittitas County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kittitas County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kittitas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kittitas County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kittitas County's proposed RICO claim against the PBMs has expired. Kittitas County filed its original complaint on August 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Kittitas County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46008-DAP, ECF No. 1. It is therefore indisputable that Kittitas County knew of its RICO injury, at the very latest, the day it

filed a complaint asserting a RICO claim, six years before seeking leave to amend. Kittitas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kittitas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Kittitas County's public-nuisance claim against the PBMs is therefore time-barred because Kittitas County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 9, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Kittitas County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 794. *Walla Walla County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46010-DAP: Plaintiff Walla Walla County, Washington

Walla Walla County's untimely motion for leave to amend should be denied for several reasons. Walla Walla County failed to provide notice of its proposed amendments through a proposed complaint. Walla Walla County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would

unduly prejudice the PBMs. Moreover, Walla Walla County's motion should be denied due to futility, as Walla Walla County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Walla Walla County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Walla Walla County amended its complaint on March 13, 2019, after transfer to the MDL on September 4, 2018, as well as on May 28, 2019 and January 4, 2021. *See Walla Walla County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46010-DAP, ECF Nos. 22, 23, 25. Unlike many other plaintiffs, Walla Walla County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Walla Walla County's deadline to amend was in 2019. Walla Walla County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Walla Walla County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Walla Walla County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Walla Walla County). That insignificant dispensing volume is much too low to support a finding of good cause for Walla Walla County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Walla Walla County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Walla Walla County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Walla Walla County filed its original complaint on August 7, 2018. *See Walla Walla County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46010-DAP, ECF No. 1. Despite filing its case years ago, Walla Walla County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Walla Walla County's case would force the parties and the Court to waste time and resources ascertaining the extent of Walla Walla County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Walla Walla County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Walla Walla County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Walla Walla County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Walla Walla County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Walla Walla County's proposed RICO claim against the PBMs has expired. Walla Walla County filed its original complaint on August 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Walla Walla County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46010-DAP, ECF No. 1. It is therefore indisputable that Walla Walla County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Walla Walla County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Walla Walla County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Walla Walla County's public-nuisance claim against the PBMs is therefore time-barred because Walla Walla County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 7, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Walla Walla County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 795. *City of North Olmsted v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46012-DAP: Plaintiff North Olmsted City, Ohio

North Olmsted City's untimely motion for leave to amend should be denied for several reasons. North Olmsted City failed to provide notice of its proposed amendments through a proposed complaint. North Olmsted City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Olmsted City's motion should be denied due to futility, as North Olmsted City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Olmsted City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Olmsted City amended its complaint on March 18, 2019, after transfer to the

MDL on August 29, 2018. *See City of North Olmsted v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46012-DAP, ECF No. 7. Unlike many other plaintiffs, North Olmsted City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Olmsted City's deadline to amend was in 2019. North Olmsted City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. North Olmsted City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, North Olmsted City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. North Olmsted City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, North Olmsted City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**<u>Prior Notice Through Counsel.</u>** North Olmsted City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been

bringing claims against the PBMs since 2019. North Olmsted City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. North Olmsted City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to North Olmsted City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for North Olmsted City). That insignificant dispensing volume is much too low to support a finding of good cause for North Olmsted City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, North Olmsted City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to North Olmsted City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified North Olmsted City of this deficiency on September 16, 2024 (*see* Exhibit B), but North Olmsted City refused to amend or supplement its Fact Sheet. Under this Court's orders, North Olmsted City's case is therefore subject to "***dismiss[al] with prejudice***" for

failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. North Olmsted City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against North Olmsted City's potential claims against them. North Olmsted City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Olmsted City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Olmsted City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** North Olmsted City is a plaintiff in Ohio. North Olmsted City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale

of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for North Olmsted City's proposed RICO claim against the PBMs has expired. North Olmsted City filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of North Olmsted v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46012-DAP, ECF No. 7. It is therefore indisputable that North Olmsted City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. North Olmsted City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Olmsted City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** North Olmsted City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

796. ***City of Euclid v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46013-DAP: Plaintiff Euclid City, Ohio**

Euclid City's untimely motion for leave to amend should be denied for several reasons. Euclid City failed to provide notice of its proposed amendments through a proposed complaint. Euclid City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Euclid City's motion should be denied due to futility, as Euclid City does

not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Euclid City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Euclid City amended its complaint on March 18, 2019, after transfer to the MDL on August 29, 2018. *See City of Euclid v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46013-DAP, ECF No. 7. Unlike many other plaintiffs, Euclid City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Euclid City's deadline to amend was in 2019. Euclid City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Euclid City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Euclid City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Euclid City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Euclid City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762

F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Euclid City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Euclid City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Euclid City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Euclid City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Euclid City). That insignificant dispensing volume is much too low to support a finding of good cause for Euclid City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Euclid City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Euclid City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Euclid City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Euclid City of the PBM services Express Scripts provides and Euclid City began receiving those services on January 3, 2006. *See id.* Inasmuch as Euclid City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Euclid City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Euclid City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Euclid City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Euclid City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Euclid City of this deficiency on September 16, 2024 (*see* Exhibit B), but Euclid City refused to amend or supplement its Fact Sheet. Under this Court's orders, Euclid City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Euclid City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Euclid City's potential claims against them. Euclid City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should

be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Euclid City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Euclid City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Euclid City's proposed RICO claim against the PBMs has expired. Euclid City filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Euclid v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46013-DAP, ECF No. 7. It is therefore indisputable that Euclid City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Euclid City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Euclid City's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Euclid City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 797. *City of Olmsted Falls v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-46014-DAP: Plaintiff Olmsted Falls City, Ohio**

Olmsted Falls City's untimely motion for leave to amend should be denied for several reasons. Olmsted Falls City failed to provide notice of its proposed amendments through a proposed complaint. Olmsted Falls City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Olmsted Falls City's motion should be denied due to futility, as Olmsted Falls City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Olmsted Falls City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Olmsted Falls City amended its complaint on March 18, 2019, after transfer to the MDL on August 29, 2019. *See City of Olmsted Falls v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46014-DAP, ECF No. 7. Unlike many other plaintiffs, Olmsted Falls City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Olmsted Falls City's deadline to amend was in 2019. Olmsted Falls City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Olmsted Falls City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of

motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Olmsted Falls City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Olmsted Falls City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Olmsted Falls City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Olmsted Falls City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Olmsted Falls City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Olmsted Falls City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Olmsted Falls City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Olmsted Falls City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Olmsted Falls City of this deficiency on September 16, 2024 (*see* Exhibit B), but Olmsted Falls City refused to amend or supplement its Fact Sheet. Under this Court's orders, Olmsted Falls City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Olmsted Falls City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Olmsted Falls City's potential claims against them. Olmsted Falls City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Olmsted Falls City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Olmsted Falls City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Olmsted Falls City is a plaintiff in Ohio. Olmsted Falls City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Olmsted Falls City's proposed RICO claim against the PBMs has expired. Olmsted Falls City filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Olmsted Falls v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46014-DAP, ECF No. 7. It is therefore indisputable that Olmsted Falls City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Olmsted Falls City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Olmsted Falls City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Olmsted Falls City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **798.** *City of North Ridgeville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46015-DAP: Plaintiff North Ridgeville City, Ohio

North Ridgeville City's untimely motion for leave to amend should be denied for several reasons. North Ridgeville City failed to provide notice of its proposed amendments through a proposed complaint. North Ridgeville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Ridgeville City's motion should be denied due to futility, as North Ridgeville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Ridgeville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Ridgeville City amended its complaint on March 18, 2019, after transfer to the MDL on August 30, 2018. *See City of North Ridgeville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46015-DAP, ECF No. 5. Unlike many other plaintiffs, North Ridgeville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Ridgeville City's deadline to amend was in 2019. North Ridgeville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. North Ridgeville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had

3015

all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, North Ridgeville City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. North Ridgeville City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, North Ridgeville City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** North Ridgeville City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. North Ridgeville City—through its counsel— was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. North Ridgeville City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint");

*Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to North Ridgeville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.36% market share for North Ridgeville City). That insignificant dispensing volume is much too low to support a finding of good cause for North Ridgeville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, North Ridgeville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to North Ridgeville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified North Ridgeville City of this deficiency on September 16, 2024 (*see* Exhibit B), but North Ridgeville City refused to amend or supplement its Fact Sheet. Under this Court's orders, North Ridgeville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. North Ridgeville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against North Ridgeville City's potential claims against them. North Ridgeville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Ridgeville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Ridgeville City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** North Ridgeville City is a plaintiff in Ohio. North Ridgeville City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for North Ridgeville City's proposed RICO claim against the PBMs has expired. North Ridgeville City filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of North Ridgeville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46015-DAP, ECF No. 5. It is therefore indisputable that North Ridgeville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before

seeking leave to amend. North Ridgeville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Ridgeville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** North Ridgeville City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **799.** ***South Fork Band of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46016-DAP: Plaintiff South Fork Band of the Te-Moak Tribe of Western Shoshone Indians**

South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' untimely motion for leave to amend should be denied for several reasons. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians failed to provide notice of its proposed amendments through a proposed complaint. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' motion should be denied due to futility, as South Fork Band of the Te-Moak Tribe of Western Shoshone Indians does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** South Fork Band of the Te-Moak Tribe of Western Shoshone Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by

moving to amend earlier. *See* Section II.A, above. Moreover, South Fork Band of the Te-Moak Tribe of Western Shoshone Indians amended its complaint on August 12, 2019, after directly filing in the MDL. *See South Fork Band of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46016-DAP, ECF No. 21. Unlike many other plaintiffs, South Fork Band of the Te-Moak Tribe of Western Shoshone Indians declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' deadline to amend was in 2019. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for South Fork Band of the Te-Moak Tribe of Western Shoshone Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** South Fork Band of the Te-Moak Tribe of Western Shoshone Indians filed its original complaint on August 31, 2018. *See South Fork Band*

*of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46016-DAP, ECF No. 1. Despite filing its case years ago, South Fork Band of the Te-Moak Tribe of Western Shoshone Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating South Fork Band of the Te-

Moak Tribe of Western Shoshone Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and South Fork Band of the Te-Moak Tribe of Western Shoshone Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** South Fork Band of the Te-

Moak Tribe of Western Shoshone Indians, a native tribe in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' proposed RICO claim against the PBMs has expired. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians filed its original complaint on August 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See South Fork Band of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46016-DAP, ECF No. 1. It is therefore indisputable that South Fork Band of the Te-Moak Tribe of Western Shoshone Indians knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** South Fork Band of the Te-Moak Tribe of Western Shoshone Indians, a native tribe in Nevada, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **800.** ***Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46017-DAP:**

**Plaintiff Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian, Nevada**

Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's untimely motion for leave to amend should be denied for several reasons. Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian failed to provide notice of its proposed amendments through a proposed complaint. Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's motion should be denied due to futility, as Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian amended its complaint on August 12, 2019, after directly filing in the MDL. *See Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46017-DAP, ECF No. 21. Unlike many other plaintiffs, Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's deadline to amend was in 2019. Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Battle Mountain Band of the

Te-Moak Tribe of Western Shoshone Indian's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian filed its original complaint on August 31, 2018. *See Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46017-DAP, ECF No. 1. Despite filing its case years ago, Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's case would force the parties and the Court to waste time and resources ascertaining the extent of Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian, a native tribe in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's proposed RICO claim against the PBMs has expired. Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian filed its original complaint on August 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46017-DAP, ECF No. 1. It is therefore

indisputable that Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian knew

of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years

before seeking leave to amend. Battle Mountain Band of the Te-Moak Tribe of Western Shoshone

Indian's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not

discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Battle Mountain Band of the Te-Moak Tribe of Western Shoshone Indian's request

for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596,

at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Battle Mountain Band of the Te-Moak Tribe of Western

Shoshone Indian, a native tribe in Nevada, lacks standing to state a claim for relief under any of

the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 801. *Alleghany County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46019-DAP: Plaintiff Alleghany County, North Carolina

Alleghany County's untimely motion for leave to amend should be denied for several

reasons. Alleghany County failed to provide notice of its proposed amendments through a

proposed complaint. Alleghany County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover,

Alleghany County's motion should be denied due to futility, as Alleghany County does not assert

any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of

limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alleghany County was on notice of its claims against the PBMs for

years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Alleghany County amended its complaint on March 11, 2019, after transfer to the MDL

on September 4, 2018. *See Alleghany County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46019-DAP, ECF No. 5. Unlike many other plaintiffs, Alleghany County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Alleghany County's deadline to amend was in 2019. Alleghany County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Alleghany County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Alleghany County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Alleghany County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Alleghany County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alleghany County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Alleghany County). That insignificant dispensing volume is much too low to support a finding of good cause for Alleghany County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alleghany County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Alleghany County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alleghany County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alleghany County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alleghany County's proposed RICO claim against the PBMs has expired. Alleghany County filed its original complaint on August 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Alleghany County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46019-DAP, ECF No. 1. It is therefore indisputable that Alleghany County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Alleghany County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alleghany County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alleghany County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 802. *Makah Indian Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46022-DAP: Plaintiff Makah Indian Tribe, Washington

Makah Indian Tribe's untimely motion for leave to amend should be denied for several reasons. Makah Indian Tribe failed to provide notice of its proposed amendments through a proposed complaint. Makah Indian Tribe also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Makah Indian Tribe's motion should be denied due to futility, as Makah Indian Tribe does not

assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Makah Indian Tribe was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Makah Indian Tribe amended its complaint on August 8, 2019, after transfer to the MDL on September 4, 2018, as well as on December 24, 2020. *See Makah Indian Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46022-DAP, ECF Nos. 24, 27. Unlike many other plaintiffs, Makah Indian Tribe declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Makah Indian Tribe's deadline to amend was in 2019. Makah Indian Tribe waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Makah Indian Tribe's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Makah Indian Tribe's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Makah Indian Tribe to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Makah Indian Tribe's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Makah Indian Tribe, a native tribe in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Makah Indian Tribe's proposed RICO claim against the PBMs has expired. Makah Indian Tribe filed its original complaint on August 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Makah Indian Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46022-DAP, ECF No. 1. It is therefore indisputable that Makah Indian Tribe knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Makah Indian Tribe's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Makah Indian Tribe's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Makah Indian Tribe's public-nuisance claim against the PBMs is therefore time-barred because Makah Indian Tribe sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 14, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Makah Indian Tribe, a native tribe in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 803. *Jefferson County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46023-DAP: Plaintiff Jefferson County, Washington

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jefferson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson County amended its complaint on March 15, 2019, after transfer to the MDL on

September 4, 2018, as well as on May 28, 2019 and February 11, 2021. *See Jefferson County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46023-DAP, ECF Nos. 24, 27, 31. Unlike many other plaintiffs, Jefferson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Jefferson County's deadline to amend was in 2019. Jefferson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.31% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jefferson County filed its original complaint on August 14, 2018. *See Jefferson County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46023-DAP, ECF No. 1. Despite filing its case years ago, Jefferson County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jefferson County's case would force the parties

and the Court to waste time and resources ascertaining the extent of Jefferson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jefferson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jefferson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jefferson County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its original complaint on August 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jefferson County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46023-DAP, ECF No. 1. It is therefore indisputable that Jefferson County knew of its RICO injury, at the very latest, the day

it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Jefferson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Jefferson County's public-nuisance claim against the PBMs is therefore time-barred because Jefferson County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 14, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Jefferson County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **804.** ***City of Hamilton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46024-DAP: Plaintiff Hamilton City, Ohio**

Hamilton City's untimely motion for leave to amend should be denied for several reasons. Hamilton City failed to provide notice of its proposed amendments through a proposed complaint. Hamilton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Hamilton City's motion should be denied due to futility, as Hamilton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hamilton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hamilton City amended its complaint on March 14, 2019, after transfer to the MDL on September 4, 2018. *See City of Hamilton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46024-DAP, ECF No. 24. Unlike many other plaintiffs, Hamilton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hamilton City's deadline to amend was in 2019. Hamilton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hamilton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hamilton City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hamilton City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hamilton City fails to explain why it was unable to assert

claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hamilton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Hamilton City). That insignificant dispensing volume is much too low to support a finding of good cause for Hamilton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hamilton City filed its original complaint on August 14, 2018. *See City of Hamilton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46024-DAP, ECF No. 1. Despite filing its case years ago, Hamilton City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hamilton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Hamilton City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The

PBMs are prejudiced by Hamilton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hamilton City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hamilton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hamilton City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Hamilton City is a plaintiff in Ohio. Hamilton City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Hamilton City's proposed RICO claim against the PBMs has expired. Hamilton City filed its original complaint on August 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Hamilton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-

46024-DAP, ECF No. 1. It is therefore indisputable that Hamilton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Hamilton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hamilton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hamilton City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 805. *City of Ironton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46025-DAP: Plaintiff Ironton City, Ohio

Ironton City's untimely motion for leave to amend should be denied for several reasons. Ironton City failed to provide notice of its proposed amendments through a proposed complaint. Ironton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ironton City's motion should be denied due to futility, as Ironton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ironton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ironton City amended its complaint on March 11, 2019, after transfer to the MDL on September

4, 2018. *See City of Ironton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46025-DAP, ECF No. 22. Unlike many other plaintiffs, Ironton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ironton City's deadline to amend was in 2019. Ironton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ironton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ironton City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ironton City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ironton City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ironton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Ironton City). That insignificant dispensing volume is much too low to support a finding of good cause for Ironton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ironton City filed its original complaint on August 14, 2018. *See City of Ironton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46025-DAP, ECF No. 1. Despite filing its case years ago, Ironton City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ironton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Ironton City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ironton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ironton City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ironton City's delay in seeking to

amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ironton City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Ironton City is a plaintiff in Ohio. Ironton City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Ironton City's proposed RICO claim against the PBMs has expired. Ironton City filed its original complaint on August 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Ironton, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46025-DAP, ECF No. 1. It is therefore indisputable that Ironton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Ironton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ironton City's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ironton City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

806. ***Moore County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46028-DAP: Plaintiff Moore County, North Carolina**

Moore County's untimely motion for leave to amend should be denied for several reasons. Moore County failed to provide notice of its proposed amendments through a proposed complaint. Moore County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Moore County's motion should be denied due to futility, as Moore County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Moore County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Moore County amended its complaint on March 11, 2019, after transfer to the MDL on September 4, 2018. *See Moore County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46028-DAP, ECF No. 6. Unlike many other plaintiffs, Moore County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Moore County's deadline to amend was in 2019. Moore County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Moore County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

3043

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Moore County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Moore County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Moore County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Moore County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Moore County). That insignificant dispensing volume is much too low to support a finding of good cause for Moore County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Moore County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Moore County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Moore County filed its original complaint on August 14, 2018. *See Moore County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46028-DAP, ECF No. 1. Despite filing its case years ago, Moore County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Moore County's case would force the parties and the Court to waste time and resources ascertaining the extent of Moore County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Moore County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Moore County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Moore County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Moore County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Moore County's proposed RICO claim against the PBMs has expired. Moore County filed its original complaint on August 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Moore County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46028-DAP, ECF No. 1. It is therefore indisputable that Moore County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Moore County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Moore County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Moore County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

3046

807. ***City of Kansas City, Missouri v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46029-DAP: Plaintiff City of Kansas City, Missouri**

City of Kansas City's untimely motion for leave to amend should be denied for several reasons. City of Kansas City failed to provide notice of its proposed amendments through a proposed complaint. City of Kansas City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, City of Kansas City's motion should be denied due to futility, as City of Kansas City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** City of Kansas City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, City of Kansas City amended its complaint on March 15, 2019, after transfer to the MDL on September 4, 2018. *See City of Kansas City, Missouri v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46029-DAP, ECF No. 7. Unlike many other plaintiffs, City of Kansas City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. City of Kansas City's deadline to amend was in 2019. City of Kansas City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. City of Kansas City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to City of Kansas City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for City of Kansas City). That insignificant dispensing volume is much too low to support a finding of good cause for City of Kansas City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to City of Kansas City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for City of Kansas City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** City of Kansas City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified City of Kansas City of the PBM services Express Scripts provides and City of Kansas City began receiving those services on February 6, 2008. *See id.* Inasmuch as City of Kansas City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), City of Kansas City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. City of Kansas City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the

scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** City of Kansas City filed its original complaint on August 9, 2018. *See City of Kansas City, Missouri v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46029-DAP, ECF No. 1. Despite filing its case years ago, City of Kansas City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating City of Kansas City's case would force the parties and the Court to waste time and resources ascertaining the extent of City of Kansas City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by City of Kansas City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and City of Kansas City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, City of Kansas City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to City of Kansas City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified City of Kansas City of this deficiency on September 16, 2024 (*see* Exhibit B), but City of Kansas City refused to amend or supplement its Fact Sheet. Under this Court's orders, City of Kansas City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. City of

Kansas City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against City of Kansas City's potential claims against them. City of Kansas City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But City of Kansas City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** City of Kansas City, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for City of Kansas City's proposed RICO claim against the PBMs has expired. City of Kansas City filed its original complaint on August 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Kansas City, Missouri v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46029-DAP, ECF No. 1. It is therefore indisputable that City of Kansas City knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. City of Kansas City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. City of Kansas City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** City of Kansas City, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 808. ***Cumberland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46031-DAP: Plaintiff Cumberland County, North Carolina**

Cumberland County's untimely motion for leave to amend should be denied for several reasons. Cumberland County failed to provide notice of its proposed amendments through a proposed complaint. Cumberland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cumberland County's motion should be denied due to futility, as Cumberland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cumberland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cumberland County amended its complaint on March 15, 2019, after transfer to the MDL on September 4, 2018. *See Cumberland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46031-DAP, ECF No. 7. Unlike many other plaintiffs, Cumberland County

declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cumberland County's deadline to amend was in 2019. Cumberland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cumberland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cumberland County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cumberland County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cumberland County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Cumberland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Cumberland County). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cumberland County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cumberland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See* *Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cumberland County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cumberland County's proposed RICO claim against the PBMs has expired. Cumberland County filed its original

complaint on August 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cumberland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46031-DAP, ECF No. 1. It is therefore indisputable that Cumberland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cumberland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cumberland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cumberland County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **809.** *County of San Bernardino et al. v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-46032-DAP: Plaintiff San Bernardino County, California**

San Bernardino County's untimely motion for leave to amend should be denied for several reasons. San Bernardino County failed to provide notice of its proposed amendments through a proposed complaint. San Bernardino County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, San Bernardino County's motion should be denied due to futility, as San Bernardino County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** San Bernardino County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, San Bernardino County amended its complaint on March 15, 2019, after transfer to the MDL on September 4, 2018. *See County of San Bernardino et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46032-DAP, ECF No. 17. Unlike many other plaintiffs, San Bernardino County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. San Bernardino County's deadline to amend was in 2019. San Bernardino County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. San Bernardino County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to San Bernardino County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for San Bernardino County). That insignificant dispensing volume is much too low to support a finding of good cause for San Bernardino County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to San Bernardino County's geographic jurisdiction during 2009 to 2019. *See*

DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for San Bernardino County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** San Bernardino County filed its original complaint on July 19, 2018. *See County of San Bernardino et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46032-DAP, ECF No. 1. Despite filing its case years ago, San Bernardino County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating San Bernardino County's case would force the parties and the Court to waste time and resources ascertaining the extent of San Bernardino County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by San Bernardino County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and San Bernardino County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** San Bernardino County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for San Bernardino County's proposed RICO claim against the PBMs has expired. San Bernardino County filed its original complaint on July 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of San Bernardino et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46032-DAP, ECF No. 1. It is therefore indisputable that San Bernardino County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. San Bernardino County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Bernardino County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Bernardino County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 810. *Oneida Nation v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-46034-DAP: Plaintiff Oneida Nation, Wisconsin**

Oneida Nation's untimely motion for leave to amend should be denied for several reasons. Oneida Nation failed to provide notice of its proposed amendments through a proposed complaint. Oneida Nation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Oneida Nation's motion should be denied due to futility, as Oneida Nation does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oneida Nation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oneida Nation amended its complaint on March 10, 2019, after directly filing in the MDL, as well as on August 13, 2019. *See Oneida Nation v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46034-DAP, ECF Nos. 3, 5. Unlike many other plaintiffs, Oneida Nation declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Oneida Nation's deadline to amend was in 2019. Oneida Nation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Oneida Nation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Oneida Nation cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Oneida Nation, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Oneida Nation fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Oneida Nation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Oneida Nation to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oneida Nation's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Oneida Nation, a native tribe in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oneida Nation's proposed RICO claim against the PBMs has expired. Oneida Nation filed its original complaint on September 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Oneida Nation v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-

46034-DAP, ECF No. 1. It is therefore indisputable that Oneida Nation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Oneida Nation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oneida Nation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Oneida Nation, a native tribe in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 811. *Township of Painesville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46035-DAP: Plaintiff Painesville Township, Ohio

Painesville Township's untimely motion for leave to amend should be denied for several reasons. Painesville Township failed to provide notice of its proposed amendments through a proposed complaint. Painesville Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Painesville Township's motion should be denied due to futility, as Painesville Township does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Painesville Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Painesville Township amended its complaint on March 18, 2019, after transfer to the MDL on September 4, 2018. *See Township of Painesville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46035-DAP, ECF No. 3. Unlike many other plaintiffs, Painesville Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Painesville Township's deadline to amend was in 2019. Painesville Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Painesville Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Painesville Township filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Painesville Township offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Painesville Township's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Painesville Township cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Painesville Township—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Painesville Township fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Painesville Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Painesville Township). That insignificant dispensing volume is much too low to support a finding of good cause for Painesville Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Painesville Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Painesville Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Painesville Township of this deficiency on September 16, 2024 (*see*

Exhibit B), but Painesville Township refused to amend or supplement its Fact Sheet. Under this Court's orders, Painesville Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Painesville Township's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Painesville Township's potential claims against them. Painesville Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Painesville Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Painesville Township, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Painesville Township is a plaintiff in Ohio. Painesville Township's request for leave to add the PBMs as defendants to a public nuisance claim

should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Painesville Township's proposed RICO claim against the PBMs has expired. Painesville Township filed its original complaint on July 26, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Township of Painesville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46035-DAP, ECF No. 1-3. Even assuming *arguendo* that Painesville Township first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on July 26, 2022. Painesville Township's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Painesville Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Painesville Township, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 812. *Sarpy County, Nebraska v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46038-DAP: Plaintiff Sarpy County, Nebraska

Sarpy County's untimely motion for leave to amend should be denied for several reasons. Sarpy County failed to provide notice of its proposed amendments through a proposed complaint. Sarpy County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sarpy County's motion

should be denied due to futility, as Sarpy County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sarpy County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sarpy County amended its complaint on March 13, 2019, after transfer to the MDL on September 5, 2018. *See Sarpy County, Nebraska v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46038-DAP, ECF No. 13. Unlike many other plaintiffs, Sarpy County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sarpy County's deadline to amend was in 2019. Sarpy County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sarpy County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sarpy County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Sarpy County). That insignificant dispensing volume is much too low to support a finding of good cause for Sarpy County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sarpy County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sarpy County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Nebraska law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sarpy County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nebraska law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sarpy County, a municipality in Nebraska, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sarpy County's proposed RICO claim against the PBMs has expired. Sarpy County filed its original complaint on August 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sarpy County, Nebraska v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46038-DAP, ECF No. 1. It is therefore indisputable that Sarpy County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking

leave to amend. Sarpy County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sarpy County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Nebraska, public-nuisance claims are subject to a four-year limitations period. Sarpy County's public-nuisance claim against the PBMs is therefore time-barred because Sarpy County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sarpy County, a municipality in Nebraska, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 813. *City of Palmetto v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46055-DAP: Plaintiff Palmetto City, Florida

Palmetto City's untimely motion for leave to amend should be denied for several reasons. Palmetto City failed to provide notice of its proposed amendments through a proposed complaint. Palmetto City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Palmetto City's motion should be denied due to futility, as Palmetto City does not assert

any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Palmetto City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Palmetto City amended its complaint on March 14, 2019, after transfer to the MDL on September 12, 2018. *See City of Palmetto v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46055-DAP, ECF No. 6. Unlike many other plaintiffs, Palmetto City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Palmetto City's deadline to amend was in 2019. Palmetto City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Palmetto City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Palmetto City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.47% market share for Palmetto City). That insignificant dispensing volume is much too low to support a finding of good cause for Palmetto City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Palmetto City filed its original complaint on August 16, 2018. *See City of Palmetto v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46055-DAP, ECF No. 1. Despite filing its case years ago, Palmetto City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Palmetto City's case would force the parties and the Court to waste time and resources ascertaining the extent of Palmetto City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Palmetto City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Palmetto City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Palmetto City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Palmetto City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Palmetto City's proposed RICO claim against the PBMs has expired. Palmetto City filed its original complaint on August 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Palmetto v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46055-DAP, ECF No. 1. It is therefore indisputable that Palmetto City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Palmetto City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Palmetto City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Palmetto City's public-nuisance claim against the PBMs is therefore time-barred because Palmetto City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Palmetto City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**814.** *City of Kingman v. Purdue Pharma LP et al.*, Case No. 1:18-op-46057-DAP: Plaintiff Kingman City, Arizona

Kingman City's untimely motion for leave to amend should be denied for several reasons. Kingman City failed to provide notice of its proposed amendments through a proposed complaint. Kingman City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kingman City's motion should be denied due to futility, as Kingman City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kingman City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kingman City amended its complaint on March 12, 2019, after transfer to the MDL on September 12, 2018, as well as on May 28, 2019 and December 29, 2020. *See City of Kingman v. Purdue Pharma LP et al.*, Case No. 1:18-op-46057-DAP, ECF Nos. 25, 26. Unlike many other plaintiffs, Kingman City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Kingman City's deadline to amend was in 2019. Kingman City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kingman City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Kingman City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Kingman City). That insignificant dispensing volume is much too low to support a finding of good cause for Kingman City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kingman City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kingman City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Kingman City violated its basic duty to implement a timely litigation hold. Kingman City filed its original complaint on August 16, 2018, but waited until September 9, 2024 to implement a litigation hold—six years later. *See City of Kingman v. Purdue Pharma LP et al.*, Case No. 1:18-op-46057-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 9, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Kingman City's case would force the parties and the Court to waste time and resources ascertaining the extent of Kingman City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kingman City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kingman City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Arizona law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kingman City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Arizona law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kingman City, a municipality in Arizona, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kingman City's proposed RICO claim against the PBMs has expired. Kingman City filed its original complaint on August 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Kingman v. Purdue Pharma LP et al.*, Case No. 1:18-op-46057-DAP, ECF No. 1. It is therefore indisputable that Kingman City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Kingman City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kingman City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kingman City, a municipality in Arizona, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

815. ***St. Charles County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46059-DAP: Plaintiff St. Charles County, Missouri**

St. Charles County's untimely motion for leave to amend should be denied for several reasons. St. Charles County failed to provide notice of its proposed amendments through a proposed complaint. St. Charles County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Charles County's motion should be denied due to futility, as St. Charles County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Charles County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Charles County amended its complaint on March 15, 2019, after transfer to the MDL on September 13, 2018. *See St. Charles County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46059-DAP, ECF No. 9. Unlike many other plaintiffs, St. Charles County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Charles County's deadline to amend was in 2019. St. Charles County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Charles County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Charles County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for St. Charles County). That insignificant dispensing volume is much too low to support a finding of good cause for St. Charles County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Charles County filed its original complaint on August 20, 2018. *See St. Charles County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46059-DAP, ECF No. 1. Despite filing its case years ago, St. Charles County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Charles County's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Charles County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Charles County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Charles County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Charles County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Charles County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Charles County's proposed RICO claim against the PBMs has expired. St. Charles County filed its original complaint on August 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See St. Charles County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46059-DAP, ECF No. 1. It is therefore indisputable that St. Charles County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. St. Charles County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Charles County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Charles County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **816.** ***Board of County Commissioners of Washington County, Maryland v. AmerisourceBergen Drug Corporation*, Case No. 1:18-op-46060-DAP: Plaintiff Washington County, Maryland**

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County amended its complaint on March 15, 2019, after transfer to the MDL on September 13, 2018. *See Board of County Commissioners of Washington County, Maryland v. AmerisourceBergen Drug Corporation*, Case No. 1:18-op-46060-DAP, ECF No. 6. Unlike many other plaintiffs, Washington County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Washington County's deadline to amend was in 2019. Washington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Washington County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Washington County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Washington County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Washington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Washington County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Washington County of the PBM services Express Scripts provides and Washington County began receiving those services on July 1, 2010. *See id.* Inasmuch as Washington County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Washington County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Washington County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment

3079

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its original complaint on August 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of Washington County, Maryland v. AmerisourceBergen Drug Corporation*, Case No. 1:18-op-46060-DAP, ECF No. 1. It is therefore indisputable that Washington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Washington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Washington County's public-nuisance claim against the PBMs is therefore time-barred because Washington County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 21, 2018—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Washington County, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

817. ***Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Adams County, Idaho**

Adams County's untimely motion for leave to amend should be denied for several reasons. Adams County failed to provide notice of its proposed amendments through a proposed complaint. Adams County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Adams County's motion should be denied due to futility, as Adams County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Adams County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Adams County amended its complaint on March 15, 2019, after transfer to the MDL on September 13, 2018. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 9. Unlike many other plaintiffs, Adams County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Adams County's deadline to amend was in 2019. Adams County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Adams County's lack of diligence in pursuing its claims negates any finding of

good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Adams County filed its original complaint on August 17, 2018. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 1. Despite filing its case years ago, Adams County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Adams County's case would force the parties and the Court to waste time and resources ascertaining the extent of Adams County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Adams County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Adams County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Adams County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Adams County, a municipality in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Adams County's proposed RICO claim against the PBMs has expired. Adams County filed its original complaint on August 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 1. It is therefore indisputable that Adams County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Adams County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Adams County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Adams County, a municipality in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

818. ***Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Blaine County, Idaho**

Blaine County's untimely motion for leave to amend should be denied for several reasons. Blaine County failed to provide notice of its proposed amendments through a proposed complaint. Blaine County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and

because its untimely motion would unduly prejudice the PBMs. Moreover, Blaine County's motion should be denied due to futility, as Blaine County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Blaine County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Blaine County amended its complaint on March 15, 2019, after transfer to the MDL on September 13, 2018. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 9. Unlike many other plaintiffs, Blaine County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Blaine County's deadline to amend was in 2019. Blaine County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Blaine County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Blaine County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Blaine County). That insignificant dispensing volume is much too low to support a finding of good cause for Blaine County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Blaine County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Blaine County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Blaine County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Blaine County, a municipality in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Blaine County's proposed RICO claim against the PBMs has expired. Blaine County filed its original complaint on August 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 1. It is therefore indisputable that Blaine County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Blaine County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not

discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Blaine County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Blaine County, a municipality in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 819. *Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Bonneville County, Idaho

Bonneville County's untimely motion for leave to amend should be denied for several reasons. Bonneville County failed to provide notice of its proposed amendments through a proposed complaint. Bonneville County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bonneville County's motion should be denied due to futility, as Bonneville County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bonneville County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bonneville County amended its complaint on March 15, 2019, after transfer to the MDL on September 13, 2018. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 9. Unlike many other plaintiffs, Bonneville County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bonneville County's deadline to amend was in 2019. Bonneville County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bonneville County's lack of diligence in pursuing

its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bonneville County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Bonneville County). That insignificant dispensing volume is much too low to support a finding of good cause for Bonneville County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bonneville County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bonneville County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bonneville County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bonneville County, a municipality in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bonneville County's proposed RICO claim against the PBMs has expired. Bonneville County filed its original complaint on August 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 1. It is therefore indisputable that Bonneville County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bonneville County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bonneville County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bonneville County, a municipality in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **820.** ***Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Cassia County, Idaho**

Cassia County's untimely motion for leave to amend should be denied for several reasons. Cassia County failed to provide notice of its proposed amendments through a proposed complaint. Cassia County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cassia County's motion should be denied due to futility, as Cassia County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cassia County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cassia County amended its complaint on March 15, 2019, after transfer to the MDL on September 13, 2018. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 9. Unlike many other plaintiffs, Cassia County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cassia County's deadline to amend was in 2019. Cassia County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cassia County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cassia County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Cassia County). That insignificant dispensing volume is much too low to support a finding of good cause for Cassia County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cassia County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cassia County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cassia County filed its original complaint on August 17, 2018. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 1. Despite filing its case years ago, Cassia County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Cassia County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cassia County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cassia County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cassia County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cassia County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cassia County, a municipality in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cassia County's proposed RICO claim against the PBMs has expired. Cassia County filed its original complaint on August 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 1. It is therefore indisputable that Cassia County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cassia County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cassia County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cassia County, a municipality in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

821. ***Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Elmore County, Idaho**

Elmore County's untimely motion for leave to amend should be denied for several reasons. Elmore County failed to provide notice of its proposed amendments through a proposed complaint. Elmore County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Elmore County's motion should be denied due to futility, as Elmore County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Elmore County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Elmore County amended its complaint on March 15, 2019, after transfer to the MDL on September 13, 2018. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 9. Unlike many other plaintiffs, Elmore County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Elmore County's deadline to amend was in 2019. Elmore County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Elmore County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Elmore County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.07% market share for Elmore County). That insignificant dispensing volume is much too low to support a finding of good cause for Elmore County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Elmore County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Elmore County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Elmore County filed its original complaint on August 17, 2018. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 1. Despite filing its case years ago, Elmore County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Elmore County's case would force the parties and the Court to waste time and resources ascertaining the extent of Elmore County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Elmore County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Elmore County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Elmore County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Elmore County, a municipality in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Elmore County's proposed RICO claim against the PBMs has expired. Elmore County filed its original complaint on August 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 1. It is therefore indisputable that Elmore County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Elmore County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Elmore County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Elmore County, a municipality in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 822. *Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP: Plaintiff Latah County, Idaho

Latah County's untimely motion for leave to amend should be denied for several reasons. Latah County failed to provide notice of its proposed amendments through a proposed complaint. Latah County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Latah County's motion should be denied due to futility, as Latah County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Latah County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Latah County amended its complaint on March 15, 2019, after transfer to the MDL on September 13, 2018. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 9. Unlike many other plaintiffs, Latah County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Latah County's deadline to amend was in 2019. Latah County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Latah County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Latah County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Latah County). That insignificant dispensing volume is much too low to support a finding of good cause for Latah County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Latah County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Latah County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Latah County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Latah County, a municipality in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Latah County's proposed RICO claim against the PBMs has expired. Latah County filed its original complaint on August 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Adams County et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46062-DAP, ECF No. 1. It is therefore indisputable that Latah County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Latah County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Latah County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Latah County, a municipality in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 823. *Bland County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46065-DAP: Plaintiff Bland County, Virginia

Bland County's untimely motion for leave to amend should be denied for several reasons. Bland County failed to provide notice of its proposed amendments through a proposed complaint. Bland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bland County's motion should be denied due to futility, as Bland County does not assert any allegations tying the PBMs to its alleged

harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bland County amended its complaint on March 14, 2019, after transfer to the MDL on September 17, 2018. *See Bland County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46065-DAP, ECF No. 17. Unlike many other plaintiffs, Bland County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bland County's deadline to amend was in 2019. Bland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Bland County). That insignificant dispensing volume is much too low to support a finding of good cause for Bland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bland County filed its original complaint on June 28, 2018. *See Bland County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46065-DAP, ECF No. 1. Despite filing its case years ago, Bland County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Bland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bland County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bland County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bland County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bland County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bland County of this deficiency on September 16, 2024 (*see* Exhibit B), but Bland County refused to amend or supplement its Fact Sheet. Under this Court's orders, Bland County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bland County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Bland County's potential claims against them. Bland County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Bland County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bland County's proposed RICO claim against the PBMs has expired. Bland County filed its original complaint on June 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bland County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46065-DAP, ECF No. 1. It is therefore indisputable that Bland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Bland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bland County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bland County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 824. *Madison County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46067-DAP: Plaintiff Madison County, North Carolina

Madison County's untimely motion for leave to amend should be denied for several reasons. Madison County failed to provide notice of its proposed amendments through a proposed complaint. Madison County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Madison County's motion should be denied due to futility, as Madison County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Madison County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Madison County amended its complaint on March 11, 2019, after transfer to the MDL on September 18, 2018. *See Madison County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46067-DAP, ECF No. 5. Unlike many other plaintiffs, Madison County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Madison County's deadline to amend was in 2019. Madison County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Madison County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all

the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Madison County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Madison County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Madison County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Madison County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Madison County). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Madison County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Madison County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Madison County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Madison County's proposed RICO claim against the PBMs has expired. Madison County filed its original complaint on August 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Madison County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46067-DAP, ECF No. 1. It is therefore indisputable that Madison County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Madison County's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Madison County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Madison County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 825. *Carroll County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46068-DAP: Plaintiff Carroll County, Virginia

Carroll County's untimely motion for leave to amend should be denied for several reasons. Carroll County failed to provide notice of its proposed amendments through a proposed complaint. Carroll County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carroll County's motion should be denied due to futility, as Carroll County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carroll County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carroll County amended its complaint on March 14, 2019, after transfer to the MDL on September 18, 2018. *See Carroll County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46068-DAP, ECF No. 17. Unlike many other plaintiffs, Carroll County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Carroll County's

deadline to amend was in 2019. Carroll County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carroll County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carroll County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Carroll County). That insignificant dispensing volume is much too low to support a finding of good cause for Carroll County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Carroll County filed its original complaint on June 28, 2018, but waited until December 6, 2018 to implement a litigation hold. *See Carroll County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46068-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 6, 2018). Carroll County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Carroll County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Carroll County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Carroll County of this deficiency on September 16, 2024 (*see* Exhibit B), but Carroll County refused to amend or supplement its Fact Sheet. Under this Court's orders, Carroll County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Carroll County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Carroll County's potential claims against them. Carroll County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carroll County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carroll County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carroll County's proposed RICO claim against the PBMs has expired. Carroll County filed its original complaint on June 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Carroll County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46068-DAP, ECF No. 1. It is therefore indisputable that Carroll County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Carroll County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carroll County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Carroll County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **826.** ***Grayson County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46069-DAP: Plaintiff Grayson County, Virginia**

Grayson County's untimely motion for leave to amend should be denied for several reasons. Grayson County failed to provide notice of its proposed amendments through a proposed complaint. Grayson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Grayson County's motion should be denied due to futility, as Grayson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim

is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Grayson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Grayson County amended its complaint on March 14, 2019, after transfer to the MDL on September 18, 2018. *See Grayson County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46069-DAP, ECF No. 17. Unlike many other plaintiffs, Grayson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Grayson County's deadline to amend was in 2019. Grayson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Grayson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Grayson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Grayson County). That insignificant dispensing volume is much too low to support a finding of good cause for Grayson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Grayson County filed its original complaint on June 28, 2018. *See Grayson County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46069-DAP, ECF No. 1. Despite filing its case years ago, Grayson County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Grayson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Grayson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Grayson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Grayson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Grayson County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Grayson County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Grayson County of this deficiency on September 16, 2024 (*see* Exhibit B), but Grayson County refused to amend or supplement its Fact Sheet. Under this Court's orders, Grayson County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Grayson County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Grayson County's potential claims against them. Grayson County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause

and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Grayson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Grayson County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Grayson County's proposed RICO claim against the PBMs has expired. Grayson County filed its original complaint on June 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Grayson County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46069-DAP, ECF No. 1. It is therefore indisputable that Grayson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Grayson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Grayson County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Grayson County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 827. *Yancey County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46071-DAP: Plaintiff Yancey County, North Carolina

Yancey County's untimely motion for leave to amend should be denied for several reasons. Yancey County failed to provide notice of its proposed amendments through a proposed complaint. Yancey County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Yancey County's motion should be denied due to futility, as Yancey County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Yancey County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Yancey County amended its complaint on March 12, 2019, after transfer to the MDL on September 18, 2018. *See Yancey County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46071-DAP, ECF No. 5. Unlike many other plaintiffs, Yancey County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Yancey County's deadline to amend was in 2019. Yancey County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Yancey County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Yancey County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Yancey County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Yancey County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Yancey County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Yancey County). That insignificant dispensing volume is much too low to support a finding of good cause for Yancey County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Yancey County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Yancey County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Yancey County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Yancey County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Yancey County's proposed RICO claim against the PBMs has expired. Yancey County filed its original complaint on August 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Yancey County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46071-DAP, ECF No. 1. It is therefore indisputable that Yancey County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Yancey County's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Yancey County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Yancey County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 828. *Wythe County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46072-DAP: Plaintiff Wythe County, Virginia

Wythe County's untimely motion for leave to amend should be denied for several reasons. Wythe County failed to provide notice of its proposed amendments through a proposed complaint. Wythe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wythe County's motion should be denied due to futility, as Wythe County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wythe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wythe County amended its complaint on March 14, 2019, after transfer to the MDL on September 18, 2018. *See Wythe County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46072-DAP, ECF No. 16. Unlike many other plaintiffs, Wythe County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wythe County's

deadline to amend was in 2019. Wythe County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wythe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wythe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Wythe County). That insignificant dispensing volume is much too low to support a finding of good cause for Wythe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wythe County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wythe County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wythe County filed its original complaint on July 19, 2018. *See Wythe County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46072-DAP, ECF No. 1. Despite filing its case years ago, Wythe County *never*

implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wythe County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wythe County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wythe County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wythe County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Wythe County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Wythe County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Wythe County of this deficiency on September 16, 2024 (*see* Exhibit B), but Wythe County refused to amend or supplement its Fact Sheet. Under this Court's orders, Wythe County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Wythe County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Wythe County's potential claims against them. Wythe County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wythe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wythe County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wythe County's proposed RICO claim against the PBMs has expired. Wythe County filed its original complaint on July 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wythe County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46072-DAP, ECF No. 1. It is therefore indisputable that Wythe County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Wythe County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wythe County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wythe County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 829. *Russell County, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46073-DAP: Plaintiff Russell County, Virginia

Russell County's untimely motion for leave to amend should be denied for several reasons. Russell County failed to provide notice of its proposed amendments through a proposed complaint. Russell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Russell County's motion should be denied due to futility, as Russell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Russell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Russell County amended its complaint on March 14, 2019, after transfer to the MDL on September 18, 2018. *See Russell County, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46073-DAP, ECF No. 16. Unlike many other plaintiffs, Russell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Russell County's deadline to amend was in 2019. Russell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Russell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Russell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Russell County). That insignificant dispensing volume is much too low to support a finding of good cause for Russell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Russell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Russell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Russell County filed its original complaint on July 10, 2018. *See Russell County, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46073-DAP, ECF No. 1. Despite filing its case years ago, Russell County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Russell County's case would force the parties and the Court to waste time and resources ascertaining the extent of Russell County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs

are prejudiced by Russell County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Russell County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Russell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Russell County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Russell County's proposed RICO claim against the PBMs has expired. Russell County filed its original complaint on July 10, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Russell County, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46073-DAP, ECF No. 1. It is therefore indisputable that Russell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Russell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Russell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Russell County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 830. *Scott County Board of Supervisors v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46074-DAP: Plaintiff Scott County, Virginia

Scott County's untimely motion for leave to amend should be denied for several reasons. Scott County failed to provide notice of its proposed amendments through a proposed complaint. Scott County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scott County's motion should be denied due to futility, as Scott County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scott County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scott County amended its complaint on March 9, 2019, after transfer to the MDL on September 18, 2018. *See Scott County Board of Supervisors v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46074-DAP, ECF No. 39. Unlike many other plaintiffs, Scott County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Scott County's deadline to amend was in 2019. Scott County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scott County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of

motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Scott County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Scott County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Scott County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Scott County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Scott County). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scott County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Scott County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Scott County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Scott County of this deficiency on September 16, 2024 (*see* Exhibit B), but Scott County refused to amend or supplement its Fact Sheet. Under this Court's orders, Scott County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Scott County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Scott County's potential claims against them. Scott County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scott County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scott County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scott County's proposed RICO claim against the PBMs has expired. Scott County filed its original complaint on July 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Scott County Board of Supervisors v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46074-DAP, ECF No. 1. It is therefore indisputable that Scott County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Scott County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scott County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Scott County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **831.** ***Pulaski County Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46076-DAP: Plaintiff Pulaski County, Virginia**

Pulaski County's untimely motion for leave to amend should be denied for several reasons. Pulaski County failed to provide notice of its proposed amendments through a proposed complaint. Pulaski County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pulaski County's motion should be denied due to futility, as Pulaski County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pulaski County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pulaski County amended its complaint on March 14, 2019, after transfer to the MDL on September 18, 2018. *See Pulaski County Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46076-DAP, ECF No. 16. Unlike many other plaintiffs, Pulaski County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pulaski County's deadline to amend was in 2019. Pulaski County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pulaski County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

3125

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pulaski County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Pulaski County). That insignificant dispensing volume is much too low to support a finding of good cause for Pulaski County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pulaski County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pulaski County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Pulaski County filed its original complaint on July 16, 2018, but waited until December 3, 2018 to implement a litigation hold. *See Pulaski County Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46076-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 3, 2018). Pulaski County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Pulaski County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Pulaski County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Pulaski County of this deficiency on September 16, 2024 (*see* Exhibit B), but Pulaski County refused to amend or supplement its Fact Sheet. Under this Court's orders, Pulaski County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Pulaski County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Pulaski County's potential claims against them. Pulaski County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pulaski County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pulaski County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pulaski County's proposed RICO claim against the PBMs has expired. Pulaski County filed its original complaint on July 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pulaski County Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46076-DAP, ECF No. 1. It is therefore indisputable that Pulaski County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Pulaski County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pulaski County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pulaski County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

832. *Smyth County, Virginia v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-46077-DAP: Plaintiff Smyth County, Virginia**

Smyth County's untimely motion for leave to amend should be denied for several reasons. Smyth County failed to provide notice of its proposed amendments through a proposed complaint. Smyth County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Smyth County's motion should

be denied due to futility, as Smyth County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Smyth County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Smyth County amended its complaint on March 14, 2019, after transfer to the MDL on September 18, 2018. *See Smyth County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46077-DAP, ECF No. 17. Unlike many other plaintiffs, Smyth County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Smyth County's deadline to amend was in 2019. Smyth County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Smyth County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Smyth County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Smyth County). That insignificant dispensing volume is much too low to support a finding of good cause for Smyth County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Smyth County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Smyth County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Smyth County filed its original complaint on June 28, 2018, but waited until December 13, 2018 to implement a litigation hold. *See Smyth County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46077-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2018). Smyth County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Smyth County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Smyth County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Smyth County of this deficiency on September 16, 2024 (*see* Exhibit B), but Smyth County refused to amend or supplement its Fact Sheet. Under this Court's orders, Smyth County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Smyth County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Smyth

County's potential claims against them. Smyth County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Smyth County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Smyth County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Smyth County's proposed RICO claim against the PBMs has expired. Smyth County filed its original complaint on June 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Smyth County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46077-DAP, ECF No. 1. It is therefore indisputable that Smyth County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Smyth County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery

of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));
*see* Section III.B.4, above. Smyth County's request for leave to amend to add a RICO claim should
be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend
because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Smyth County, a municipality in Virginia, lacks standing to
state a claim for relief under any of the New York laws referenced in the City of Rochester's
complaint. *See* Section III.B.6, above.

> **833.** ***Wyandot County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46078-DAP: Plaintiff Wyandot County, Ohio**

Wyandot County's untimely motion for leave to amend should be denied for several
reasons. Wyandot County failed to provide notice of its proposed amendments through a proposed
complaint. Wyandot County also lacks good cause under Rule 15 or Rule 16 due to a lack of
diligence, failure to implement a litigation hold, and because its untimely motion would unduly
prejudice the PBMs. Moreover, Wyandot County's motion should be denied due to futility, as
Wyandot County does not assert any allegations tying the PBMs to its alleged harm, its proposed
public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of
limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wyandot County was on notice of its claims against the PBMs for years
but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,
Wyandot County amended its complaint on March 11, 2019, after directly filing in the MDL. *See
Wyandot County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*,
Case No. 1:18-op-46078-DAP, ECF No. 21. Unlike many other plaintiffs, Wyandot County
declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above.
Wyandot County's deadline to amend was in 2019. Wyandot County waited five years after its

deadline to amend to seek leave to assert claims against the PBMs. Wyandot County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wyandot County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wyandot County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wyandot County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wyandot County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Wyandot County). That insignificant dispensing volume is much

too low to support a finding of good cause for Wyandot County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wyandot County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wyandot County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wyandot County filed its original complaint on September 18, 2018. *See Wyandot County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46078-DAP, ECF No. 1. Despite filing its case years ago, Wyandot County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Wyandot County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wyandot County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wyandot County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wyandot County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time

resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wyandot County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wyandot County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Wyandot County is a plaintiff in Ohio. Wyandot County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Wyandot County's proposed RICO claim against the PBMs has expired. Wyandot County filed its original complaint on September 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wyandot County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46078-DAP, ECF No. 1. It is therefore indisputable that Wyandot County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Wyandot County's RICO claim is

therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wyandot County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wyandot County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 834. *Carroll County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46079-DAP: Plaintiff Carroll County, Ohio

Carroll County's untimely motion for leave to amend should be denied for several reasons. Carroll County failed to provide notice of its proposed amendments through a proposed complaint. Carroll County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carroll County's motion should be denied due to futility, as Carroll County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carroll County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carroll County amended its complaint on March 11, 2019, after directly filing in the MDL. *See Carroll County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46079-DAP, ECF No. 21. Unlike many other plaintiffs, Carroll County declined

to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Carroll County's deadline to amend was in 2019. Carroll County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carroll County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Carroll County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Carroll County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Carroll County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Carroll County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See Gustafson* Decl. (0.01% market share for Carroll County). That insignificant dispensing volume is much too low to support a finding of good cause for Carroll County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carroll County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carroll County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Carroll County is a plaintiff in Ohio. Carroll County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Carroll County's proposed RICO claim against the PBMs has expired. Carroll County filed its original complaint on September 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Carroll County Board of County Commissioners v. AmerisourceBergen Drug*

*Corporation et al.*, Case No. 1:18-op-46079-DAP, ECF No. 1. It is therefore indisputable that Carroll County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Carroll County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carroll County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Carroll County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 835. *City of Clanton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46084-DAP: Plaintiff Clanton City, Alabama

Clanton City's untimely motion for leave to amend should be denied for several reasons. Clanton City failed to provide notice of its proposed amendments through a proposed complaint. Clanton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Clanton City's motion should be denied due to futility, as Clanton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clanton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Clanton City amended its complaint on March 7, 2019, after transfer to the MDL on September 24, 2018. *See City of Clanton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46084-DAP, ECF No. 6. Unlike many other plaintiffs, Clanton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Clanton City's deadline to amend was in 2019. Clanton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clanton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clanton City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Clanton City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Clanton City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clanton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Clanton City). That insignificant dispensing volume is much too low to support a finding of good cause for Clanton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clanton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clanton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clanton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clanton City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clanton City's proposed RICO claim against the PBMs has expired. Clanton City filed its original complaint on August 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Clanton, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46084-DAP, ECF No. 1. It is therefore indisputable that Clanton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Clanton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clanton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Clanton City's public-nuisance claim against the PBMs is therefore time-barred because Clanton City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 27, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Clanton City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**836.** *City of Brockton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-46089-DAP: Plaintiff Brockton City, Massachusetts**

Brockton City's untimely motion for leave to amend should be denied for several reasons. Brockton City failed to provide notice of its proposed amendments through a proposed complaint. Brockton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brockton City's motion should be denied due to futility, as Brockton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brockton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brockton City amended its complaint on March 6, 2019, after transfer to the MDL on September 24, 2018. *See City of Brockton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46089-DAP, ECF No. 11. Unlike many other plaintiffs, Brockton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Brockton City's deadline to amend was in 2019. Brockton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Brockton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Brockton City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Brockton City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Brockton City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brockton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Brockton City). That insignificant dispensing volume is much too low to support a finding of good cause for Brockton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brockton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brockton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Brockton City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Brockton City of the PBM services Express Scripts provides and Brockton City began receiving those services on July 24, 2007. *See id.* Inasmuch as Brockton City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Brockton City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Brockton City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Brockton City filed its original complaint on September 4, 2018. *See City of Brockton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46089-DAP, ECF No. 1. Despite filing its case years ago, Brockton City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Brockton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Brockton City's document destruction and the appropriate sanctions—just as the parties

were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brockton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brockton City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brockton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brockton City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brockton City's proposed RICO claim against the PBMs has expired. Brockton City filed its original complaint on September 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Brockton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46089-DAP, ECF No. 1. It is therefore indisputable that Brockton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Brockton City's RICO claim is therefore time-barred by RICO's

four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brockton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Brockton City's public-nuisance claim against the PBMs is therefore time-barred because Brockton City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Brockton City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 837. ***Town of Kingston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46090-DAP: Plaintiff Kingston Town, Massachusetts**

Kingston Town's untimely motion for leave to amend should be denied for several reasons. Kingston Town failed to provide notice of its proposed amendments through a proposed complaint. Kingston Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kingston Town's motion should be denied due to futility, as Kingston Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kingston Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kingston Town amended its complaint on March 15, 2019, after transfer to the MDL on September 24, 2018. *See Town of Kingston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46090-DAP, ECF No. 13. Unlike many other plaintiffs, Kingston Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Kingston Town's deadline to amend was in 2019. Kingston Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kingston Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Kingston Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Kingston Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Kingston Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kingston Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Kingston Town). That insignificant dispensing volume is much too low to support a finding of good cause for Kingston Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kingston Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kingston Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Kingston Town filed its original complaint on September 4, 2018. *See Town of Kingston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46090-DAP, ECF No. 1. Despite filing its case years ago, Kingston Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Kingston

Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Kingston Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kingston Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kingston Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kingston Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kingston Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kingston Town's proposed RICO claim against the PBMs has expired. Kingston Town filed its original complaint on September 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Kingston, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46090-DAP, ECF No. 1. It is therefore indisputable that Kingston Town knew

of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Kingston Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kingston Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Kingston Town's public-nuisance claim against the PBMs is therefore time-barred because Kingston Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Kingston Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 838. *City of Eureka et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46092-DAP: Plaintiff Eureka City, California

Eureka City's untimely motion for leave to amend should be denied for several reasons. Eureka City failed to provide notice of its proposed amendments through a proposed complaint. Eureka City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Eureka City's motion should

be denied due to futility, as Eureka City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Eureka City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Eureka City amended its complaint on March 14, 2019, after transfer to the MDL on September 24, 2018, as well as on May 28, 2019 and December 22, 2020. *See City of Eureka et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46092-DAP, ECF Nos. 24, 25, 27. Unlike many other plaintiffs, Eureka City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Eureka City's deadline to amend was in 2019. Eureka City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Eureka City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Eureka City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Eureka City). That insignificant dispensing volume is much too low to support a finding of good cause for Eureka City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Eureka City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Eureka City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to State a Claim.** Eureka City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Eureka City's proposed RICO claim against the PBMs has expired. Eureka City filed its original complaint on August 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Eureka et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46092-DAP, ECF No. 1. It is therefore indisputable that Eureka City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Eureka City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Eureka City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Eureka City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

839. ***Town of Walpole, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46093-DAP: Plaintiff Walpole Town, Massachusetts**

Walpole Town's untimely motion for leave to amend should be denied for several reasons. Walpole Town failed to provide notice of its proposed amendments through a proposed complaint. Walpole Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Walpole Town's motion should be denied due to futility, as Walpole Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Walpole Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Walpole Town amended its complaint on March 7, 2019, after transfer to the MDL on September 24, 2018. *See Town of Walpole, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46093-DAP, ECF No. 13. Unlike many other plaintiffs, Walpole Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Walpole Town's deadline to amend was in 2019. Walpole Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Walpole Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Walpole Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Walpole Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Walpole Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Walpole Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.005% market share for Walpole Town). That insignificant dispensing volume is much too low to support a finding of good cause for Walpole Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Walpole Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Walpole Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Walpole Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Walpole Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Walpole Town's proposed RICO claim against the PBMs has expired. Walpole Town filed its original complaint on September 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Walpole, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46093-DAP, ECF No. 1. It is therefore indisputable that Walpole Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Walpole Town's RICO claim is therefore time-barred by

RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Walpole Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Walpole Town's public-nuisance claim against the PBMs is therefore time-barred because Walpole Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Walpole Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **840.** ***Mercer County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46094-DAP: Plaintiff Mercer County, Ohio**

Mercer County's untimely motion for leave to amend should be denied for several reasons. Mercer County failed to provide notice of its proposed amendments through a proposed complaint. Mercer County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mercer County's motion should be denied due to futility, as Mercer County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its

RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mercer County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mercer County amended its complaint on March 6, 2019, after directly filing in the MDL. *See Mercer County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46094-DAP, ECF No. 21. Unlike many other plaintiffs, Mercer County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mercer County's deadline to amend was in 2019. Mercer County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mercer County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mercer County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Mercer County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mercer County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mercer County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.26% market share for Mercer County). That insignificant dispensing volume is much too low to support a finding of good cause for Mercer County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mercer County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mercer County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Mercer County is a plaintiff in Ohio. Mercer County's request for leave to add the PBMs as defendants to a public nuisance claim should be

denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Mercer County's proposed RICO claim against the PBMs has expired. Mercer County filed its original complaint on September 24, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mercer County Board of County Commissioners v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46094-DAP, ECF No. 1. It is therefore indisputable that Mercer County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Mercer County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mercer County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mercer County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 841. *Town of Falmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46095-DAP: Plaintiff Falmouth Town, Massachusetts

Falmouth Town's untimely motion for leave to amend should be denied for several reasons. Falmouth Town failed to provide notice of its proposed amendments through a proposed complaint. Falmouth Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover,

Falmouth Town's motion should be denied due to futility, as Falmouth Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Falmouth Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Falmouth Town amended its complaint on March 6, 2019, after transfer to the MDL on September 25, 2018. *See Town of Falmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46095-DAP, ECF No. 13. Unlike many other plaintiffs, Falmouth Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Falmouth Town's deadline to amend was in 2019. Falmouth Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Falmouth Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Falmouth Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Falmouth Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Falmouth Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Falmouth Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Falmouth Town). That insignificant dispensing volume is much too low to support a finding of good cause for Falmouth Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Falmouth Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.003% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Falmouth Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Falmouth Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Falmouth Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Falmouth Town's proposed RICO claim against the PBMs has expired. Falmouth Town filed its original complaint on August 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Falmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46095-DAP, ECF No. 1. It is therefore indisputable that Falmouth Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Falmouth Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Falmouth Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Falmouth Town's public-nuisance claim against the PBMs is therefore time-barred because Falmouth Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 28, 2018—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Falmouth Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 842. *Branch County, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46096-DAP: Plaintiff Branch County, Michigan

Branch County's untimely motion for leave to amend should be denied for several reasons. Branch County failed to provide notice of its proposed amendments through a proposed complaint. Branch County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Branch County's motion should be denied due to futility, as Branch County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Branch County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Branch County amended its complaint on March 13, 2019, after transfer to the MDL on September 25, 2018. *See Branch County, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46096-DAP, ECF No. 8. Unlike many other plaintiffs, Branch County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Branch County's deadline to amend was in 2019. Branch County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Branch County's lack of diligence in pursuing its claims negates any

finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Branch County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Branch County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Branch County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Branch County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Branch County). That insignificant dispensing volume is much too low to support a finding of good cause for Branch County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Branch County filed its original complaint on August 30, 2018, but waited until December 1, 2018 to implement a litigation hold. *See Branch County, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46096-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 1, 2018). Branch County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Branch County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Branch County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Branch County's proposed RICO claim against the PBMs has expired. Branch County filed its original complaint on August 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Branch County, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46096-DAP, ECF No. 1. It is therefore indisputable that Branch County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Branch County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Branch County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Branch County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 843. ***Town of Longmeadow v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46097-DAP: Plaintiff Longmeadow Town, Massachusetts**

Longmeadow Town's untimely motion for leave to amend should be denied for several reasons. Longmeadow Town failed to provide notice of its proposed amendments through a proposed complaint. Longmeadow Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Longmeadow Town's motion should be denied due to futility, as Longmeadow Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Longmeadow Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Longmeadow Town amended its complaint on March 6, 2019, after transfer to the MDL on September 25, 2018. *See Town of Longmeadow v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46097-DAP, ECF No. 11. Unlike many other plaintiffs, Longmeadow Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Longmeadow Town's deadline to amend was in 2019. Longmeadow Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Longmeadow Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Longmeadow Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Longmeadow Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Longmeadow Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Longmeadow Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Longmeadow Town). That insignificant dispensing volume is much too low to support a finding of good cause for Longmeadow Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Longmeadow Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Longmeadow Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Longmeadow Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See* *Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Longmeadow Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Longmeadow Town's proposed RICO claim against the PBMs has expired. Longmeadow Town filed its original complaint on August 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Longmeadow v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46097-DAP, ECF No. 1. It is therefore indisputable that Longmeadow Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Longmeadow Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Longmeadow Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Longmeadow Town's public-nuisance claim against the PBMs is therefore time-barred because Longmeadow Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Longmeadow Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **844.** ***Fiscal Court of Wolfe County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46099-DAP: Plaintiff Wolfe County, Kentucky**

Wolfe County's untimely motion for leave to amend should be denied for several reasons. Wolfe County failed to provide notice of its proposed amendments through a proposed complaint. Wolfe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wolfe County's motion should be denied due to futility, as Wolfe County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wolfe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wolfe County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Fiscal Court of Wolfe County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46099-DAP, ECF No. 23. Unlike many other plaintiffs, Wolfe County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wolfe County's deadline to amend was in 2019. Wolfe County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wolfe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wolfe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Wolfe County). That insignificant dispensing volume is much too low to support a finding of good cause for Wolfe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wolfe County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wolfe County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wolfe County filed its original complaint on September 26, 2018. *See Fiscal Court of Wolfe County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46099-DAP, ECF No. 1. Despite filing its case years ago, Wolfe County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Wolfe County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wolfe County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wolfe County's disregard for its most basic discovery obligations as a

litigant, compounded by the delay in seeking leave to amend, and Wolfe County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wolfe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wolfe County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wolfe County's proposed RICO claim against the PBMs has expired. Wolfe County filed its original complaint on September 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Wolfe County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46099-DAP, ECF No. 1. It is therefore indisputable that Wolfe County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Wolfe County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wolfe County's request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wolfe County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 845. *Fiscal Court of Lee County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46100-DAP: Plaintiff Lee County, Kentucky

Lee County's untimely motion for leave to amend should be denied for several reasons. Lee County failed to provide notice of its proposed amendments through a proposed complaint. Lee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lee County's motion should be denied due to futility, as Lee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lee County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Fiscal Court of Lee County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46100-DAP, ECF No. 23. Unlike many other plaintiffs, Lee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lee County's deadline to amend was in 2019. Lee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.005% market share for Lee County). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lee County filed its original complaint on September 26, 2018. *See Fiscal Court of Lee County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46100-DAP, ECF No. 1. Despite filing its case years ago, Lee County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs

are prejudiced by Lee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lee County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lee County's proposed RICO claim against the PBMs has expired. Lee County filed its original complaint on September 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Lee County, Kentucky v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46100-DAP, ECF No. 1. It is therefore indisputable that Lee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Lee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Lee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lee County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

846. ***Town of West Bridgewater v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46102-DAP: Plaintiff West Bridgewater Town, Massachusetts**

West Bridgewater Town's untimely motion for leave to amend should be denied for several reasons. West Bridgewater Town failed to provide notice of its proposed amendments through a proposed complaint. West Bridgewater Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Bridgewater Town's motion should be denied due to futility, as West Bridgewater Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** West Bridgewater Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Bridgewater Town amended its complaint on March 7, 2019, after transfer to the MDL on September 27, 2018. *See Town of West Bridgewater v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46102-DAP, ECF No. 11. Unlike many other plaintiffs, West Bridgewater Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. West Bridgewater Town's deadline to amend was in 2019. West Bridgewater Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. West

Bridgewater Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** West Bridgewater Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. West Bridgewater Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. West Bridgewater Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to West Bridgewater Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in

the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, West Bridgewater Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Bridgewater Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Bridgewater Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Bridgewater Town's proposed RICO claim against the PBMs has expired. West Bridgewater Town filed its original complaint on August 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of West Bridgewater v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46102-DAP, ECF No. 1. It is therefore indisputable that West Bridgewater Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. West Bridgewater Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Bridgewater Town's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. West Bridgewater Town's public-nuisance claim against the PBMs is therefore time-barred because West Bridgewater Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 31, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** West Bridgewater Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **847.**  ***Bacon County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46105-DAP: Plaintiff Bacon County, Georgia**

Bacon County's untimely motion for leave to amend should be denied for several reasons. Bacon County failed to provide notice of its proposed amendments through a proposed complaint. Bacon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Bacon County's motion should be denied due to futility, as Bacon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bacon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Bacon County filed its original complaint on September 7, 2018 and the case was transferred to the MDL on September 27, 2018. *See Bacon County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46105-DAP, ECF No. 6. Bacon County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bacon County elected not to do so. Instead, Bacon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bacon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bacon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Bacon County). That insignificant dispensing volume is much too low to support a finding of good cause for Bacon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bacon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Bacon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bacon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bacon County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bacon County's proposed RICO claim against the PBMs has expired. Bacon County filed its original complaint on September 7, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Bacon County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46105-DAP, ECF No. 1. Even assuming *arguendo* that Bacon County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 7, 2022. Bacon County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bacon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bacon County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 848. *Pierce County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46107-DAP: Plaintiff Pierce County, Georgia

Pierce County's untimely motion for leave to amend should be denied for several reasons. Pierce County failed to provide notice of its proposed amendments through a proposed complaint. Pierce County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pierce County's motion should be denied due to futility, as Pierce County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pierce County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pierce County filed its original complaint on September 7, 2018 and the case was transferred to the MDL on September 28, 2018. *See Pierce County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46107-DAP, ECF No. 5. Pierce County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Pierce County elected not to do so. Instead, Pierce County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pierce County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pierce County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Pierce County). That insignificant dispensing volume is much too low to support a finding of good cause for Pierce County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pierce County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pierce County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Pierce County seeks leave to amend to add claims against the PBMs in two cases: *Pierce County, Georgia v. Amerisourcebergen Drug Corporation, et al.*, No. 1:18-op-46107-DAP; and *Bennett v. Purdue Pharma L.P., et al.*, No. 1:19-op-45166-DAP. Pierce County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court

dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Pierce County's proposed RICO claim against the PBMs has expired. Pierce County filed its original complaint on September 7, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Pierce County, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46107-DAP, ECF No. 1. Even assuming *arguendo* that Pierce County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 7, 2022. Pierce County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pierce County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pierce County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 849. *City of Strongsville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46111-DAP: Plaintiff Strongsville City, Ohio

Strongsville City's untimely motion for leave to amend should be denied for several reasons. Strongsville City failed to provide notice of its proposed amendments through a proposed

complaint. Strongsville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Strongsville City's motion should be denied due to futility, as Strongsville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Strongsville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Strongsville City amended its complaint on March 18, 2019, after transfer to the MDL on September 28, 2018. *See City of Strongsville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46111-DAP, ECF No. 7. Unlike many other plaintiffs, Strongsville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Strongsville City's deadline to amend was in 2019. Strongsville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Strongsville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Strongsville City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx,

Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Strongsville City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Strongsville City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Strongsville City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Strongsville City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Strongsville City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Strongsville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Strongsville City). That insignificant dispensing volume is much

too low to support a finding of good cause for Strongsville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Strongsville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Strongsville City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Strongsville City is a plaintiff in Ohio. Strongsville City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Strongsville City's proposed RICO claim against the PBMs has expired. Strongsville City filed its original complaint on August 28, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Strongsville v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46111-DAP, ECF No. 1. Even assuming *arguendo* that Strongsville City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on

August 28, 2022. Strongsville City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Strongsville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Strongsville City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 850. *City of Demorest, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46113-DAP: Plaintiff Demorest City, Georgia

Demorest City's untimely motion for leave to amend should be denied for several reasons. Demorest City failed to provide notice of its proposed amendments through a proposed complaint. Demorest City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Demorest City's motion should be denied due to futility, as Demorest City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Demorest City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Demorest City filed its original complaint on September 7, 2018 and the case was transferred to the MDL on October 2, 2018. *See City of Demorest, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46113-DAP, ECF No. 4. Demorest City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above.

Unlike many other plaintiffs, Demorest City elected not to do so. Instead, Demorest City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Demorest City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Demorest City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Demorest City). That insignificant dispensing volume is much too low to support a finding of good cause for Demorest City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Demorest City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Demorest City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Demorest City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Demorest City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs

notified Demorest City of this deficiency on September 16, 2024 (*see* Exhibit B), but Demorest City refused to amend or supplement its Fact Sheet. Under this Court's orders, Demorest City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Demorest City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Demorest City's potential claims against them. Demorest City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Demorest City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Demorest City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Demorest City's proposed RICO claim against the PBMs has expired. Demorest City filed its original complaint on September 7, 2018, alleging the same type of injuries for which it now seeks to recover under

RICO against the PBMs. *See City of Demorest, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46113-DAP, ECF No. 1. Even assuming *arguendo* that Demorest City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 7, 2022. Demorest City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Demorest City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Demorest City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **851.** ***Habersham County Medical Center v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46114-DAP: Plaintiff Habersham County Medical Center, Georgia**

Habersham County Medical Center's untimely motion for leave to amend should be denied for several reasons. Habersham County Medical Center failed to provide notice of its proposed amendments through a proposed complaint. Habersham County Medical Center also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Habersham County Medical Center's motion should be denied due to futility, as Habersham County Medical Center does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Habersham County Medical Center was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section

II.A, above. Moreover, Habersham County Medical Center filed its original complaint on September 7, 2018 and the case was transferred to the MDL on October 2, 2018. *See Habersham County Medical Center v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46114-DAP, ECF No. 4. Habersham County Medical Center could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Habersham County Medical Center elected not to do so. Instead, Habersham County Medical Center waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Habersham County Medical Center's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Habersham County Medical Center's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Habersham County Medical Center, a hospital in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Habersham County Medical Center's proposed RICO claim against the PBMs has expired. Habersham County Medical Center filed its original complaint on September 7, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Habersham County Medical Center v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46114-DAP, ECF No. 1. Even assuming *arguendo* that Habersham County Medical Center first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 7, 2022. Habersham County Medical Center's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Habersham County Medical Center's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Habersham County Medical Center, a hospital in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 852. *Glynn County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46115-DAP: Plaintiff Glynn County, Georgia

Glynn County's untimely motion for leave to amend should be denied for several reasons. Glynn County failed to provide notice of its proposed amendments through a proposed complaint. Glynn County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Glynn County's motion should be denied due to futility, as Glynn County does not assert any allegations tying the PBMs to its alleged

harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Glynn County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Glynn County amended its complaint twice—on March 15, 2019 and March 18, 2019—after directly filing in the MDL on October 16, 2018. *See Glynn County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46115-DAP, ECF Nos. 25, 26. Unlike many other plaintiffs, Glynn County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Glynn County's deadline to amend was in 2019. Glynn County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Glynn County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Glynn County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Glynn County). That insignificant dispensing volume is much too low to support a finding of good cause for Glynn County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Glynn County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Glynn County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Glynn County filed its original complaint on October 16, 2018. *See Glynn County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46115-DAP, ECF No. 1. Despite filing its case years ago, Glynn County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Glynn County's case would force the parties and the Court to waste time and resources ascertaining the extent of Glynn County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Glynn County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Glynn County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Glynn County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Glynn County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Glynn County of this deficiency on September 16, 2024 (*see* Exhibit B), but Glynn County

refused to amend or supplement its Fact Sheet. Under this Court's orders, Glynn County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Glynn County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Glynn County's potential claims against them. Glynn County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Glynn County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Glynn County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Glynn County seeks leave to amend to add claims against the PBMs in two cases: *Glynn County, Georgia v. Purdue Pharma, L.P., et al.*, No. 1:18-op-46115-DAP; and *Jump v. Purdue Pharma L.P., et al.*, No. 1:19-op-45155-DAP. Glynn County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*,

762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Glynn County's proposed RICO claim against the PBMs has expired. Glynn County filed its original complaint on October 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Glynn County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46115-DAP, ECF No. 1. It is therefore indisputable that Glynn County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Glynn County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Glynn County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Glynn County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**853.** *Red Cliff Band of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, **Case No. 1:18-op-46116-DAP: Plaintiff Red Cliff Band of Lake Superior Chippewa Indians, Wisconsin**

Red Cliff Band of Lake Superior Chippewa Indians' untimely motion for leave to amend should be denied for several reasons. Red Cliff Band of Lake Superior Chippewa Indians failed to provide notice of its proposed amendments through a proposed complaint. Red Cliff Band of Lake Superior Chippewa Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Red Cliff Band of Lake Superior Chippewa Indians' motion should be denied due to futility, as Red Cliff Band of Lake Superior Chippewa Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Red Cliff Band of Lake Superior Chippewa Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Red Cliff Band of Lake Superior Chippewa Indians filed its original complaint on April 13, 2018 and the case was transferred to the MDL on October 4, 2018. *See Red Cliff Band of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46116-DAP, ECF No. 12. Red Cliff Band of Lake Superior Chippewa Indians could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Red Cliff Band of Lake Superior Chippewa Indians elected not to do so. Instead, Red Cliff Band of Lake Superior Chippewa Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Red Cliff Band of Lake Superior Chippewa Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Red Cliff Band of Lake Superior Chippewa Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Red Cliff Band of Lake Superior Chippewa Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Red Cliff Band of Lake Superior Chippewa Indians filed its original complaint on April 13, 2018. *See Red Cliff Band of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46116-DAP, ECF No. 1. Despite filing its case years ago, Red Cliff Band of Lake Superior Chippewa Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Red Cliff Band of Lake Superior Chippewa Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Red Cliff Band of Lake Superior Chippewa Indians' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Red Cliff Band of Lake Superior Chippewa Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Red Cliff Band of Lake Superior Chippewa Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time

resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Red Cliff Band of Lake Superior Chippewa Indians' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Red Cliff Band of Lake Superior Chippewa Indians, a native tribe in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Red Cliff Band of Lake Superior Chippewa Indians' proposed RICO claim against the PBMs has expired. Red Cliff Band of Lake Superior Chippewa Indians filed its original complaint on April 13, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Red Cliff Band of Lake Superior Chippewa Indians v. McKesson Corporation et al.*, Case No. 1:18-op-46116-DAP, ECF No. 1. Even assuming *arguendo* that Red Cliff Band of Lake Superior Chippewa Indians first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 13, 2022. Red Cliff Band of Lake Superior Chippewa Indians' RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Red Cliff

Band of Lake Superior Chippewa Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Red Cliff Band of Lake Superior Chippewa Indians, a native tribe in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 854. *Borough of Ridgefield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46117-DAP: Plaintiff Ridgefield Borough, New Jersey

Ridgefield Borough's untimely motion for leave to amend should be denied for several reasons. Ridgefield Borough failed to provide notice of its proposed amendments through a proposed complaint. Ridgefield Borough also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ridgefield Borough's motion should be denied due to futility, as Ridgefield Borough does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ridgefield Borough was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ridgefield Borough amended its complaint on March 15, 2019, after transfer to the MDL on October 4, 2018. *See Borough of Ridgefield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46117-DAP, ECF No. 21. Unlike many other plaintiffs, Ridgefield Borough declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ridgefield Borough's deadline to amend was in 2019. Ridgefield Borough waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ridgefield Borough's lack of diligence

in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ridgefield Borough cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Ridgefield Borough—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ridgefield Borough fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Ridgefield Borough's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Ridgefield Borough

cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ridgefield Borough's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ridgefield Borough to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Ridgefield Borough violated its basic duty to implement a timely litigation hold. Ridgefield Borough filed its original complaint on November 8, 2017, but waited until September 7, 2018 to implement a litigation hold—nearly ten months later. *See Borough of Ridgefield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46117-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 7, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ridgefield Borough's case would force the parties and the Court to waste time and resources ascertaining the extent of Ridgefield Borough's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ridgefield Borough's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ridgefield Borough therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ridgefield Borough failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ridgefield Borough's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ridgefield Borough of this deficiency on September 16, 2024 (*see* Exhibit B), but Ridgefield Borough refused to amend or supplement its Fact Sheet. Under this Court's orders, Ridgefield Borough's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ridgefield Borough's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ridgefield Borough's potential claims against them. Ridgefield Borough's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ridgefield Borough's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ridgefield Borough, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ridgefield Borough's proposed RICO claim against the PBMs has expired. Ridgefield Borough filed its original complaint on November 8, 2017, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Borough of Ridgefield v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46117-DAP, ECF No. 1. Even assuming *arguendo* that Ridgefield Borough first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 8, 2021. Ridgefield Borough's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ridgefield Borough's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ridgefield Borough, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **855.** *Levy County v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-46119-DAP: Plaintiff Levy County, Florida**

Levy County's untimely motion for leave to amend should be denied for several reasons. Levy County failed to provide notice of its proposed amendments through a proposed complaint. Levy County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Levy County's motion should be denied due to futility, as Levy County does

not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Levy County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Levy County amended its complaint on March 18, 2019, after transfer to the MDL on October 4, 2018. *See Levy County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46119-DAP, ECF No. 36. Unlike many other plaintiffs, Levy County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Levy County's deadline to amend was in 2019. Levy County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Levy County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Levy County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Levy County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Levy County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Levy County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Levy County). That insignificant dispensing volume is much too low to support a finding of good cause for Levy County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Levy County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Levy County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Levy County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Levy County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Levy County of this deficiency on September 16, 2024 (*see* Exhibit B), but Levy County refused to amend or supplement its Fact Sheet. Under this Court's orders, Levy County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1

(emphasis in original); *see* Section III.A.5, above. Levy County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Levy County's potential claims against them. Levy County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Levy County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Levy County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** Levy County previously filed an opioid case outside the MDL against the PBMs on March 17, 2023. *See Palm Beach County et al. v. Mylan Pharms., Inc. et al.*, Case No. 9:23-cv-80431 (S.D. Fla.), ECF No. 1. Levy County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 199, 200, 202, 203. By suing the PBMs outside the MDL in 2023, Levy County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See*

*Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Levy County's proposed RICO claim against the PBMs has expired. Levy County filed its original complaint on April 9, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Levy County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46119-DAP, ECF No. 1. Even assuming *arguendo* that Levy County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 9, 2022. Levy County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Levy County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Levy County's public-nuisance claim against the PBMs is therefore time-barred because Levy County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 9, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Levy County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 856. *Palm Beach County v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-46121-DAP: Plaintiff Palm Beach County, Florida**

Palm Beach County's untimely motion for leave to amend should be denied for several reasons. Palm Beach County failed to provide notice of its proposed amendments through a proposed complaint. Palm Beach County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Palm Beach County's motion should be denied due to futility, as Palm Beach County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Palm Beach County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Palm Beach County amended its complaint on March 18, 2019, after transfer to the MDL on October 4, 2018. *See Palm Beach County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46121-DAP, ECF No. 18. Unlike many other plaintiffs, Palm Beach County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Palm Beach County's deadline to amend was in 2019. Palm Beach County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Palm Beach County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had

all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Palm Beach County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Palm Beach County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Palm Beach County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Palm Beach County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.38% market share for Palm Beach County). That insignificant dispensing volume is much too low to support a finding of good cause for Palm Beach County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Palm Beach County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Palm Beach County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Palm Beach County violated its basic duty to implement a timely litigation hold. Palm Beach County filed its original complaint on April 5, 2018, but waited until November 5, 2018 to implement a litigation hold—seven months later. *See Palm Beach County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46121-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 5, 2018). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Palm Beach County's case would force the parties and the Court to waste time and resources ascertaining the extent of Palm Beach County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Palm Beach County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Palm Beach County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Palm Beach County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Palm Beach County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** Palm Beach County previously filed an opioid case outside the MDL against the PBMs on March 17, 2023. *See Palm Beach County et al. v. Mylan Pharms., Inc. et al.*, Case No. 9:23-cv-80431 (S.D. Fla.), ECF No. 1. Palm Beach County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 199, 200, 202, 203. By suing the PBMs outside the MDL in 2023, Palm Beach County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Palm Beach County's proposed RICO claim against the PBMs has expired. Palm Beach County filed its original complaint on April 5, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Palm Beach County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46121-DAP, ECF No. 1. It is therefore indisputable that Palm Beach County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Palm Beach County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Palm Beach County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Palm Beach County's public-nuisance claim against the PBMs is therefore time-barred because Palm Beach County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on April 5, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Palm Beach County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

857. ***Town of Millbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46123-DAP: Plaintiff Millbury Town, Massachusetts**

Millbury Town's untimely motion for leave to amend should be denied for several reasons. Millbury Town failed to provide notice of its proposed amendments through a proposed complaint. Millbury Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Millbury Town's motion should be denied due to futility, as Millbury Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Millbury Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Millbury Town amended its complaint on March 6, 2019, after transfer to the MDL on October 5, 2018. *See Town of Millbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46123-DAP, ECF No. 11. Unlike many other plaintiffs, Millbury Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Millbury Town's deadline to amend was in 2019. Millbury Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Millbury Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Millbury Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Millbury Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Millbury Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Millbury Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Millbury Town). That insignificant dispensing volume is much too low to support a finding of good cause for Millbury Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Millbury Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Millbury Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Millbury Town filed its original complaint on September 4, 2018. *See Town of Millbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46123-DAP, ECF No. 1. Despite filing its case years ago, Millbury Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold

Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Millbury Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Millbury Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Millbury Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Millbury Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Millbury Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Millbury Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Millbury Town's proposed RICO claim against the PBMs has expired. Millbury Town filed its original complaint on September 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Millbury, Massachusetts v. Amerisourcebergen Drug Corporation et al.*,

Case No. 1:18-op-46123-DAP, ECF No. 1. It is therefore indisputable that Millbury Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Millbury Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Millbury Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Millbury Town's public-nuisance claim against the PBMs is therefore time-barred because Millbury Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 4, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Millbury Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

858. *Letcher County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46124-DAP: Plaintiff Letcher County, Kentucky

Letcher County's untimely motion for leave to amend should be denied for several reasons. Letcher County failed to provide notice of its proposed amendments through a proposed complaint. Letcher County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and

because its untimely motion would unduly prejudice the PBMs. Moreover, Letcher County's motion should be denied due to futility, as Letcher County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Letcher County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Letcher County amended its complaint on March 9, 2019, after transfer to the MDL on October 5, 2018. *See Letcher County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46124-DAP, ECF No. 7. Unlike many other plaintiffs, Letcher County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Letcher County's deadline to amend was in 2019. Letcher County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Letcher County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Letcher County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Letcher County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Letcher County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Letcher County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.0006% market share for Letcher County). That insignificant dispensing volume is much too low to support a finding of good cause for Letcher County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Letcher County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Letcher County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Letcher County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Letcher County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Letcher County's proposed RICO claim against the PBMs has expired. Letcher County filed its original complaint on September 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Letcher County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46124-DAP, ECF No. 1. It is therefore indisputable that Letcher County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Letcher County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Letcher County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Letcher County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**859.** *City of Palm Bay v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-46132-DAP: Plaintiff Palm Bay City, Florida**

Palm Bay City's untimely motion for leave to amend should be denied for several reasons. Palm Bay City failed to provide notice of its proposed amendments through a proposed complaint. Palm Bay City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Palm Bay City's motion should be denied due to futility, as Palm Bay City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Palm Bay City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Palm Bay City amended its complaint on March 15, 2019, after transfer to the MDL on October 5, 2018, as well as on March 18, 2019. *See City of Palm Bay v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46132-DAP, ECF Nos. 44, 45. Unlike many other plaintiffs, Palm Bay City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Palm Bay City's deadline to amend was in 2019. Palm Bay City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Palm Bay City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Palm Bay City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Palm Bay City). That insignificant dispensing volume is much too low to support a finding of good cause for Palm Bay City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Palm Bay City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Palm Bay City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Palm Bay City filed its original complaint on September 19, 2018. *See City of Palm Bay v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46132-DAP, ECF No. 2. Despite filing its case years ago, Palm Bay City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Palm Bay City's case would force the parties and the Court to waste time and resources ascertaining the extent of Palm Bay City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Palm Bay City's disregard for its most basic discovery obligations as a litigant, compounded by the

delay in seeking leave to amend, and Palm Bay City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Palm Bay City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Palm Bay City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Palm Bay City's proposed RICO claim against the PBMs has expired. Palm Bay City filed its original complaint on September 19, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Palm Bay v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46132-DAP, ECF No. 2. Even assuming *arguendo* that Palm Bay City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 19, 2022. Palm Bay City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Palm Bay City's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Palm Bay City's public-nuisance claim against the PBMs is therefore time-barred because Palm Bay City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 19, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Palm Bay City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

860. ***Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Canton Charter Township, Michigan**

Canton Charter Township's untimely motion for leave to amend should be denied for several reasons. Canton Charter Township failed to provide notice of its proposed amendments through a proposed complaint. Canton Charter Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Canton Charter Township's motion should be denied due to futility, as Canton Charter Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Canton Charter Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Canton Charter Township amended its complaint on March 12, 2019, after transfer to the MDL on October 5, 2018. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 7. Unlike many other plaintiffs, Canton Charter Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Canton Charter Township's deadline to amend was in 2019. Canton Charter Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Canton Charter Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Canton Charter Township cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Canton Charter Township, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Canton Charter Township fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for

many months, especially since some underlying facts were made a part of the complaint");
*Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part
because plaintiff's counsel had access to discovery in related cases and was previously aware of
the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's
home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to
Canton Charter Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*
Gustafson Decl. (0.05% market share for Canton Charter Township). That insignificant dispensing
volume is much too low to support a finding of good cause for Canton Charter Township to add
dispensing claims against OptumRx's home-delivery pharmacy years after the amendment
deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Canton Charter Township filed its original
complaint on September 19, 2018. *See Charter Township of Canton, et al. v. Purdue Pharma L.P.
et al.*, Case No. 1:18-op-46134-DAP, ECF No. 1. Despite filing its case years ago, Canton Charter
Township *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232;
5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Canton Charter
Township's case would force the parties and the Court to waste time and resources ascertaining
the extent of Canton Charter Township's document destruction and the appropriate sanctions—
just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation
holds until 2024. The PBMs are prejudiced by Canton Charter Township's disregard for its most
basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and
Canton Charter Township therefore lacks good cause for leave to amend its complaint. *See Pethtel*,

2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Canton Charter Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Canton Charter Township, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Canton Charter Township's proposed RICO claim against the PBMs has expired. Canton Charter Township filed its original complaint on September 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 1. It is therefore indisputable that Canton Charter Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Canton Charter Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Canton Charter Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*,

2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Canton Charter Township, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**861.** ***Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Huron Charter Township, Michigan**

Huron Charter Township's untimely motion for leave to amend should be denied for several reasons. Huron Charter Township failed to provide notice of its proposed amendments through a proposed complaint. Huron Charter Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Huron Charter Township's motion should be denied due to futility, as Huron Charter Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Huron Charter Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Huron Charter Township amended its complaint on March 12, 2019, after transfer to the MDL on October 5, 2018. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 7. Unlike many other plaintiffs, Huron Charter Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Huron Charter Township's deadline to amend was in 2019. Huron Charter Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Huron Charter Township's lack of diligence in pursuing its claims negates any finding of good cause. *See*

*Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Huron Charter Township cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Huron Charter Township, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Huron Charter Township fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Huron Charter Township's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Huron Charter

Township cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Huron Charter Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Huron Charter Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Huron Charter Township of this deficiency on September 16, 2024 (*see* Exhibit B), but Huron Charter Township refused to amend or supplement its Fact Sheet. Under this Court's orders, Huron Charter Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Huron Charter Township's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Huron Charter Township's potential claims against them. Huron Charter Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Huron Charter Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Huron Charter Township, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Huron Charter Township's proposed RICO claim against the PBMs has expired. Huron Charter Township filed its original complaint on September 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 1. It is therefore indisputable that Huron Charter Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Huron Charter Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Huron Charter Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Huron Charter Township, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 862. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Livonia City, Michigan

Livonia City's untimely motion for leave to amend should be denied for several reasons. Livonia City failed to provide notice of its proposed amendments through a proposed complaint.

Livonia City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Livonia City's motion should be denied due to futility, as Livonia City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Livonia City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Livonia City amended its complaint on March 12, 2019, after transfer to the MDL on October 5, 2018. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 7. Unlike many other plaintiffs, Livonia City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Livonia City's deadline to amend was in 2019. Livonia City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Livonia City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Livonia City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Livonia City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Livonia City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Livonia City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Livonia City). That insignificant dispensing volume is much too low to support a finding of good cause for Livonia City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Livonia City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Livonia City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Livonia City of this deficiency on September 16, 2024 (*see* Exhibit B), but Livonia City refused to amend or supplement its Fact Sheet. Under this Court's orders, Livonia City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Livonia City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Livonia City's potential claims against them. Livonia City's failure to diligently prosecute its case, coupled

with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Livonia City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Livonia City, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Livonia City's proposed RICO claim against the PBMs has expired. Livonia City filed its original complaint on September 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 1. It is therefore indisputable that Livonia City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Livonia City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Livonia City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Livonia City, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 863. ***Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Northville Charter Township, Michigan**

Northville Charter Township's untimely motion for leave to amend should be denied for several reasons. Northville Charter Township failed to provide notice of its proposed amendments through a proposed complaint. Northville Charter Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Northville Charter Township's motion should be denied due to futility, as Northville Charter Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Northville Charter Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Northville Charter Township amended its complaint on March 12, 2019, after transfer to the MDL on October 5, 2018. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 7. Unlike many other plaintiffs, Northville Charter Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Northville Charter Township's deadline to amend was in 2019. Northville Charter

Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Northville Charter Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Northville Charter Township cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Northville Charter Township, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Northville Charter Township fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Northville Charter Township's geographic jurisdiction over the ten-year period of 2010 to 2019.

*See* Gustafson Decl. (0.22% market share for Northville Charter Township). That insignificant dispensing volume is much too low to support a finding of good cause for Northville Charter Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Northville Charter Township filed its original complaint on September 19, 2018. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 1. Despite filing its case years ago, Northville Charter Township *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Northville Charter Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Northville Charter Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Northville Charter Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Northville Charter Township therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Northville Charter Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Northville Charter Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Northville Charter Township of this deficiency on

September 16, 2024 (*see* Exhibit B), but Northville Charter Township refused to amend or supplement its Fact Sheet. Under this Court's orders, Northville Charter Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Northville Charter Township's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Northville Charter Township's potential claims against them. Northville Charter Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Northville Charter Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Northville Charter Township, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Northville Charter Township's proposed RICO claim against the PBMs has expired. Northville Charter Township filed its original complaint on September 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 1. It is therefore indisputable that Northville Charter Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Northville Charter Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Northville Charter Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Northville Charter Township, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 864. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Romulus City, Michigan

Romulus City's untimely motion for leave to amend should be denied for several reasons. Romulus City failed to provide notice of its proposed amendments through a proposed complaint. Romulus City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Romulus City's motion should be denied due to futility, as Romulus City

does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Romulus City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Romulus City amended its complaint on March 12, 2019, after transfer to the MDL on October 5, 2018. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 7. Unlike many other plaintiffs, Romulus City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Romulus City's deadline to amend was in 2019. Romulus City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Romulus City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Romulus City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Romulus City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Romulus City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Romulus City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.26% market share for Romulus City). That insignificant dispensing volume is much too low to support a finding of good cause for Romulus City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Romulus City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Romulus City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Romulus City of this deficiency on September 16, 2024 (*see* Exhibit B), but Romulus City refused to amend or supplement its Fact Sheet. Under this Court's orders, Romulus City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Romulus City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Romulus City's potential claims against them. Romulus City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Romulus City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Romulus City, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Romulus City's proposed RICO claim against the PBMs has expired. Romulus City filed its original complaint on September 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 1. It is therefore indisputable that Romulus City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Romulus City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Romulus City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Romulus City, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 865. *Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Van Buren Charter Township, Michigan

Van Buren Charter Township's untimely motion for leave to amend should be denied for several reasons. Van Buren Charter Township failed to provide notice of its proposed amendments through a proposed complaint. Van Buren Charter Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Van Buren Charter Township's motion should be denied due to futility, as Van Buren Charter Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Van Buren Charter Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Van Buren Charter Township amended its complaint on March 12, 2019, after transfer to the MDL on October 5, 2018. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 7. Unlike many other plaintiffs, Van Buren Charter Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Van Buren Charter Township's deadline to amend was in 2019. Van Buren Charter Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Van Buren Charter Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Van Buren Charter Township cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Van Buren Charter Township, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Van Buren Charter Township fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Van Buren Charter Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Van Buren Charter Township). That insignificant dispensing volume is much too low to support a finding of good cause for Van Buren Charter Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Van Buren Charter Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Van Buren Charter Township, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Van Buren Charter Township's proposed RICO claim against the PBMs has expired. Van Buren Charter Township filed its original complaint on September 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 1. It is therefore indisputable that Van Buren Charter Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Van Buren Charter Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Van Buren Charter Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Van Buren Charter Township, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **866.** ***Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP: Plaintiff Wayne City, Michigan**

Wayne City's untimely motion for leave to amend should be denied for several reasons. Wayne City failed to provide notice of its proposed amendments through a proposed complaint. Wayne City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wayne City's motion should be denied due to futility, as Wayne City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wayne City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wayne City amended its complaint on March 12, 2019, after transfer to the MDL on October 5, 2018. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP, ECF No. 7. Unlike many other plaintiffs, Wayne City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wayne City's deadline to amend was in 2019. Wayne City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wayne City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wayne City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wayne City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wayne City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wayne City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Wayne City). That insignificant dispensing volume is much too low to support a finding of good cause for Wayne City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Wayne City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Wayne City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Wayne City of this deficiency on September 16, 2024 (*see* Exhibit B), but Wayne City

refused to amend or supplement its Fact Sheet. Under this Court's orders, Wayne City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Wayne City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Wayne City's potential claims against them. Wayne City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wayne City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wayne City, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wayne City's proposed RICO claim against the PBMs has expired. Wayne City filed its original complaint on September 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charter Township of Canton, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46134-DAP,

ECF No. 1. It is therefore indisputable that Wayne City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Wayne City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wayne City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wayne City, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 867. *Charter Township of Clinton, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46135-DAP: Plaintiff Clinton Charter Township, Michigan

Clinton Charter Township's untimely motion for leave to amend should be denied for several reasons. Clinton Charter Township failed to provide notice of its proposed amendments through a proposed complaint. Clinton Charter Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clinton Charter Township's motion should be denied due to futility, as Clinton Charter Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clinton Charter Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clinton Charter Township amended its complaint on March 15, 2019, after transfer to

the MDL on October 5, 2018. *See Charter Township of Clinton, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46135-DAP, ECF No. 8. Unlike many other plaintiffs, Clinton Charter Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Clinton Charter Township's deadline to amend was in 2019. Clinton Charter Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clinton Charter Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clinton Charter Township cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Clinton Charter Township, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Clinton Charter Township fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part

because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clinton Charter Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Clinton Charter Township). That insignificant dispensing volume is much too low to support a finding of good cause for Clinton Charter Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clinton Charter Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clinton Charter Township, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clinton Charter Township's proposed RICO claim against the PBMs has expired. Clinton Charter Township filed its original complaint on September 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charter Township of Clinton, Michigan v. Purdue Pharma L.P. et*

*al.*, Case No. 1:18-op-46135-DAP, ECF No. 1. It is therefore indisputable that Clinton Charter Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Clinton Charter Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clinton Charter Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clinton Charter Township, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **868.** ***City of Virginia Beach, et al. v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-46137-DAP: Plaintiff Virginia Beach City, Virginia**

Virginia Beach City's untimely motion for leave to amend should be denied for several reasons. Virginia Beach City failed to provide notice of its proposed amendments through a proposed complaint. Virginia Beach City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Virginia Beach City's motion should be denied due to futility, as Virginia Beach City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Virginia Beach City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Virginia Beach City amended its complaint on March 9, 2019, after transfer to the MDL

on October 12, 2018. *See City of Virginia Beach, et al. v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-46137-DAP, ECF No. 11. Unlike many other plaintiffs, Virginia Beach City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Virginia Beach City's deadline to amend was in 2019. Virginia Beach City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Virginia Beach City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Virginia Beach City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Virginia Beach City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Virginia Beach City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Virginia Beach City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Virginia Beach City). That insignificant dispensing volume is much too low to support a finding of good cause for Virginia Beach City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Virginia Beach City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Virginia Beach City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Virginia Beach City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Virginia Beach City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Virginia Beach City's proposed RICO claim against the PBMs has expired. Virginia Beach City filed its original complaint on September 10, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Virginia Beach, et al. v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:18-op-46137-DAP, ECF No. 1. It is therefore indisputable that Virginia Beach City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Virginia Beach City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Virginia Beach City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Virginia Beach City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 869. *Chelan County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46139-DAP: Plaintiff Chelan County, Washington

Chelan County's untimely motion for leave to amend should be denied for several reasons. Chelan County failed to provide notice of its proposed amendments through a proposed complaint. Chelan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the

PBMs. Moreover, Chelan County's motion should be denied due to futility, as Chelan County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chelan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chelan County amended its complaint on March 13, 2019, after transfer to the MDL on October 12, 2018, as well as on May 28, 2019 and December 22, 2020. *See Chelan County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46139-DAP, ECF Nos. 22, 25, 27. Unlike many other plaintiffs, Chelan County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Chelan County's deadline to amend was in 2019. Chelan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chelan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chelan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Chelan County). That insignificant dispensing volume is much too low to support a finding of good cause for Chelan County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chelan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chelan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Chelan County filed its original complaint on September 7, 2018, but waited until December 7, 2018 to implement a litigation hold. *See Chelan County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46139-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 7, 2018). Chelan County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chelan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chelan County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chelan County's proposed RICO claim against the PBMs has expired. Chelan County filed its original complaint on September 7, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Chelan County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46139-DAP, ECF No. 1. It is therefore indisputable that Chelan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Chelan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chelan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Chelan County's public-nuisance claim against the PBMs is therefore time-barred because Chelan County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 7, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Chelan County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 870. *Robeson County v. Actavis, LLC et al.*, Case No. 1:18-op-46141-DAP: Plaintiff Robeson County, North Carolina

Robeson County's untimely motion for leave to amend should be denied for several reasons. Robeson County failed to provide notice of its proposed amendments through a proposed complaint. Robeson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Robeson County's motion should be denied due to futility, as Robeson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Robeson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Robeson County amended its complaint on March 15, 2019, after transfer to the MDL on October 12, 2018. *See Robeson County v. Actavis, LLC et al.*, Case No. 1:18-op-46141-DAP, ECF No. 11. Unlike many other plaintiffs, Robeson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Robeson County's deadline to amend was in 2019. Robeson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Robeson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Robeson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Robeson County). That insignificant dispensing volume is much too low to support a finding of good cause for Robeson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Robeson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Robeson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Robeson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Robeson County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Robeson County's proposed RICO claim against the PBMs has expired. Robeson County filed its original complaint on September 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Robeson County v. Actavis, LLC et al.*, Case No. 1:18-op-46141-DAP, ECF No. 1. It is therefore indisputable that Robeson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Robeson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Robeson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Robeson County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **871.** ***Shinnecock Indian Nation v. McKesson Corporation et al.*, Case No. 1:18-op-46142-DAP: Plaintiff Shinnecock Indian Nation, New York**

Shinnecock Indian Nation's untimely motion for leave to amend should be denied for several reasons. Shinnecock Indian Nation failed to provide notice of its proposed amendments through a proposed complaint. Shinnecock Indian Nation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Shinnecock Indian Nation's motion should

be denied due to futility, as Shinnecock Indian Nation does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Shinnecock Indian Nation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Shinnecock Indian Nation amended its complaint on August 12, 2019, after directly filing in the MDL. *See Shinnecock Indian Nation v. McKesson Corporation et al.*, Case No. 1:18-op-46142-DAP, ECF No. 9. Unlike many other plaintiffs, Shinnecock Indian Nation declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Shinnecock Indian Nation's deadline to amend was in 2019. Shinnecock Indian Nation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Shinnecock Indian Nation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Shinnecock Indian Nation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Shinnecock Indian Nation filed its original complaint on October 9, 2018. *See Shinnecock Indian Nation v. McKesson Corporation et al.*, Case No. 1:18-op-46142-DAP, ECF No. 1. Despite filing its case years ago, Shinnecock Indian Nation *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232;

5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Shinnecock Indian Nation's case would force the parties and the Court to waste time and resources ascertaining the extent of Shinnecock Indian Nation's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Shinnecock Indian Nation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Shinnecock Indian Nation therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shinnecock Indian Nation's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shinnecock Indian Nation, a native tribe in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Shinnecock Indian Nation's proposed RICO claim against the PBMs has expired. Shinnecock Indian Nation filed its original complaint on October 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Shinnecock Indian Nation v. McKesson Corporation et al.*, Case No. 1:18-

3265

op-46142-DAP, ECF No. 1. It is therefore indisputable that Shinnecock Indian Nation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Shinnecock Indian Nation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shinnecock Indian Nation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Shinnecock Indian Nation, a native tribe in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Shinnecock Indian Nation's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

872. ***Fiscal Court of Montgomery County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46144-DAP: Plaintiff Montgomery County, Kentucky**

Montgomery County's untimely motion for leave to amend should be denied for several reasons. Montgomery County failed to provide notice of its proposed amendments through a proposed complaint. Montgomery County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Montgomery County's motion should be denied due to futility, as Montgomery County does not assert any allegations tying the PBMs to its alleged harm,

its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Montgomery County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Montgomery County amended its complaint on March 9, 2019, after transfer to the MDL on October 12, 2018. *See Fiscal Court of Montgomery County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46144-DAP, ECF No. 7. Unlike many other plaintiffs, Montgomery County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Montgomery County's deadline to amend was in 2019. Montgomery County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Montgomery County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Montgomery County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Montgomery County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Montgomery County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Montgomery County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Montgomery County). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Montgomery County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Montgomery County filed its original complaint on September 21, 2018. *See Fiscal Court of Montgomery County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46144-DAP, ECF No. 1. Despite filing its case years ago, Montgomery County *never* implemented a litigation hold and is instead purporting to rely on non-

specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Montgomery County's case would force the parties and the Court to waste time and resources ascertaining the extent of Montgomery County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Montgomery County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Montgomery County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Montgomery County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Montgomery County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Montgomery County's proposed RICO claim against the PBMs has expired. Montgomery County filed its original

complaint on September 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Montgomery County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46144-DAP, ECF No. 1. It is therefore indisputable that Montgomery County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Montgomery County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Montgomery County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Montgomery County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 873. *Fiscal Court of Powell County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46145-DAP: Plaintiff Powell County, Kentucky

Powell County's untimely motion for leave to amend should be denied for several reasons. Powell County failed to provide notice of its proposed amendments through a proposed complaint. Powell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Powell County's motion should be denied due to futility, as Powell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Powell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Powell County amended its complaint on March 11, 2019, after transfer to the MDL on October 12, 2018. *See Fiscal Court of Powell County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46145-DAP, ECF No. 7. Unlike many other plaintiffs, Powell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Powell County's deadline to amend was in 2019. Powell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Powell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Powell County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Powell County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Powell County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Powell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Powell County). That insignificant dispensing volume is much too low to support a finding of good cause for Powell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Powell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Powell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Powell County violated its basic duty to implement a timely litigation hold. Powell County filed its original complaint on September 19, 2018, but waited until September 25, 2024 to implement a litigation hold—six years later. *See Fiscal Court of Powell County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46145-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Powell County's case would force the parties and the Court to waste time and resources ascertaining the

extent of Powell County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Powell County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Powell County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Powell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Powell County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Powell County's proposed RICO claim against the PBMs has expired. Powell County filed its original complaint on September 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Powell County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46145-DAP, ECF No. 1. It is therefore indisputable that Powell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Powell County's RICO claim is therefore time-barred by

RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Powell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Powell County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 874. *Fond du Lac Band of Lake Superior Chippewa v. McKesson Corporation et al.*, Case No. 1:18-op-46146-DAP: Plaintiff Fond du Lac Band of Lake Superior Chippewa, Minnesota

Fond du Lac Band of Lake Superior Chippewa's untimely motion for leave to amend should be denied for several reasons. Fond du Lac Band of Lake Superior Chippewa failed to provide notice of its proposed amendments through a proposed complaint. Fond du Lac Band of Lake Superior Chippewa also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fond du Lac Band of Lake Superior Chippewa's motion should be denied due to futility, as Fond du Lac Band of Lake Superior Chippewa does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fond du Lac Band of Lake Superior Chippewa was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fond du Lac Band of Lake Superior Chippewa filed its original complaint on July 31, 2018 and the case was transferred to the MDL on October 12, 2018. *See Fond du Lac Band of Lake Superior Chippewa v. McKesson Corporation et al.*, Case No. 1:18-

3187 of 6510

op-46146-DAP, ECF No. 17. Fond du Lac Band of Lake Superior Chippewa could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Fond du Lac Band of Lake Superior Chippewa elected not to do so. Instead, Fond du Lac Band of Lake Superior Chippewa waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fond du Lac Band of Lake Superior Chippewa's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fond du Lac Band of Lake Superior Chippewa's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fond du Lac Band of Lake Superior Chippewa to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Fond du Lac Band of Lake Superior Chippewa filed its original complaint on July 31, 2018. *See Fond du Lac Band of Lake Superior Chippewa v. McKesson Corporation et al.*, Case No. 1:18-op-46146-DAP, ECF No. 1. Despite filing its case years ago, Fond du Lac Band of Lake Superior Chippewa *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Fond du Lac Band of Lake Superior Chippewa's case would force

the parties and the Court to waste time and resources ascertaining the extent of Fond du Lac Band of Lake Superior Chippewa's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fond du Lac Band of Lake Superior Chippewa's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fond du Lac Band of Lake Superior Chippewa therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fond du Lac Band of Lake Superior Chippewa's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fond du Lac Band of Lake Superior Chippewa, a native tribe in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fond du Lac Band of Lake Superior Chippewa's proposed RICO claim against the PBMs has expired. Fond du Lac Band of Lake Superior Chippewa filed its original complaint on July 31, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Fond du Lac Band*

*of Lake Superior Chippewa v. McKesson Corporation et al.*, Case No. 1:18-op-46146-DAP, ECF No. 1. Even assuming *arguendo* that Fond du Lac Band of Lake Superior Chippewa first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on July 31, 2022. Fond du Lac Band of Lake Superior Chippewa's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fond du Lac Band of Lake Superior Chippewa's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fond du Lac Band of Lake Superior Chippewa, a native tribe in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

875. ***People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46147-DAP: Plaintiff Schuyler County, Illinois**

Schuyler County's untimely motion for leave to amend should be denied for several reasons. Schuyler County failed to provide notice of its proposed amendments through a proposed complaint. Schuyler County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Schuyler County's motion should be denied due to futility, as Schuyler County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Schuyler County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Schuyler County amended its complaint on March 6, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46147-DAP, ECF No. 3. Unlike many other plaintiffs, Schuyler County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Schuyler County's deadline to amend was in 2019. Schuyler County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Schuyler County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Schuyler County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Schuyler County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Schuyler County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Schuyler County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Schuyler County). That insignificant dispensing volume is much too low to support a finding of good cause for Schuyler County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Schuyler County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Schuyler County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Schuyler County filed its original complaint on October 12, 2018. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46147-DAP, ECF No. 1. Despite filing its case years ago, Schuyler County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Schuyler County's case would force the parties and the Court to waste time and resources ascertaining the extent of Schuyler County's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Schuyler County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Schuyler County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Schuyler County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Schuyler County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Schuyler County's proposed RICO claim against the PBMs has expired. Schuyler County filed its original complaint on October 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46147-DAP, ECF No. 1. It is therefore indisputable that Schuyler County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Schuyler County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Schuyler County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Schuyler County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **876.** *People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-46148-DAP: Plaintiff Johnson County, Illinois**

Johnson County's untimely motion for leave to amend should be denied for several reasons. Johnson County failed to provide notice of its proposed amendments through a proposed complaint. Johnson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Johnson County's motion should be denied due to futility, as Johnson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Johnson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Johnson County amended its complaint on March 6, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46148-DAP, ECF No. 3. Unlike many other plaintiffs, Johnson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Johnson County's deadline to amend was in 2019. Johnson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Johnson County's lack of diligence in pursuing its claims negates any finding

of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Johnson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Johnson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Johnson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Johnson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Johnson County). That insignificant dispensing volume is much too low to support a finding of good cause for Johnson County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Johnson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Johnson County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Johnson County's proposed RICO claim against the PBMs has expired. Johnson County filed its original complaint on October 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46148-DAP, ECF No. 1. It is therefore indisputable that Johnson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Johnson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Johnson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Johnson County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **877.** ***Town of Lunenberg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46156-DAP: Plaintiff Lunenburg Town, Massachusetts**

Lunenburg Town's untimely motion for leave to amend should be denied for several reasons. Lunenburg Town failed to provide notice of its proposed amendments through a proposed complaint. Lunenburg Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lunenburg Town's motion should be denied due to futility, as Lunenburg Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lunenburg Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lunenburg Town amended its complaint on March 6, 2019, after transfer to the MDL on October 18, 2018. *See Town of Lunenberg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46156-DAP, ECF No. 12. Unlike many other plaintiffs, Lunenburg Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lunenburg Town's deadline to amend was in 2019. Lunenburg Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lunenburg Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lunenburg Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lunenburg Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lunenburg Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Lunenburg Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Lunenburg Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Lunenburg Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lunenburg Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lunenburg Town filed its original complaint on September 25, 2018. *See Town of Lunenberg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46156-DAP, ECF No. 1. Despite filing its case years ago, Lunenburg Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lunenburg Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Lunenburg Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lunenburg Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lunenburg Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lunenburg Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lunenburg Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lunenburg Town's proposed RICO claim against the PBMs has expired. Lunenburg Town filed its original complaint on September 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Lunenberg, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46156-DAP, ECF No. 1. It is therefore indisputable that Lunenburg Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Lunenburg Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lunenburg Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Lunenburg Town's public-nuisance claim against the PBMs is therefore time-barred because Lunenburg Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 25, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lunenburg Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 878. ***Town of Wilmington, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46158-DAP: Plaintiff Wilmington Town, Massachusetts**

Wilmington Town's untimely motion for leave to amend should be denied for several reasons. Wilmington Town failed to provide notice of its proposed amendments through a proposed complaint. Wilmington Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wilmington Town's motion should be denied due to futility, as Wilmington Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wilmington Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wilmington Town amended its complaint on March 8, 2019, after transfer to the MDL on October 23, 2018. *See Town of Wilmington, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46158-DAP, ECF No. 11. Unlike many other plaintiffs, Wilmington Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wilmington Town's deadline to amend was in 2019. Wilmington Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wilmington

Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wilmington Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wilmington Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wilmington Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wilmington Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Wilmington Town). That insignificant dispensing

volume is much too low to support a finding of good cause for Wilmington Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wilmington Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wilmington Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wilmington Town filed its original complaint on September 26, 2018. *See Town of Wilmington, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46158-DAP, ECF No. 1. Despite filing its case years ago, Wilmington Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Wilmington Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Wilmington Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wilmington Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wilmington Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time

resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wilmington Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wilmington Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wilmington Town's proposed RICO claim against the PBMs has expired. Wilmington Town filed its original complaint on September 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Wilmington, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46158-DAP, ECF No. 1. It is therefore indisputable that Wilmington Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Wilmington Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wilmington Town's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Wilmington Town's public-nuisance claim against the PBMs is therefore time-barred because Wilmington Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 26, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Wilmington Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

879. ***Town of North Andover, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46159-DAP: Plaintiff North Andover Town, Massachusetts**

North Andover Town's untimely motion for leave to amend should be denied for several reasons. North Andover Town failed to provide notice of its proposed amendments through a proposed complaint. North Andover Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Andover Town's motion should be denied due to futility, as North Andover Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** North Andover Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Andover Town amended its complaint on March 7, 2019, after transfer to the MDL on October 23, 2018. *See Town of North Andover, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46159-DAP, ECF No. 11. Unlike many other plaintiffs, North Andover Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Andover Town's deadline to amend was in 2019. North Andover Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. North Andover Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** North Andover Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. North Andover Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. North Andover Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to North Andover Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, North Andover Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to North Andover Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for North Andover Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** North Andover Town filed its original complaint on September 26, 2018. *See Town of North Andover, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46159-DAP, ECF No. 1. Despite filing its case years ago, North Andover Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455.

Litigating North Andover Town's case would force the parties and the Court to waste time and resources ascertaining the extent of North Andover Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by North Andover Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and North Andover Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Andover Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Andover Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for North Andover Town's proposed RICO claim against the PBMs has expired. North Andover Town filed its original complaint on September 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of North Andover, Massachusetts v. Amerisourcebergen Drug*

*Corporation et al.*, Case No. 1:18-op-46159-DAP, ECF No. 1. It is therefore indisputable that North Andover Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. North Andover Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Andover Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. North Andover Town's public-nuisance claim against the PBMs is therefore time-barred because North Andover Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 26, 2018— and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** North Andover Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

880.   *Town of Upton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-46160-DAP: Plaintiff Upton Town, Massachusetts**

Upton Town's untimely motion for leave to amend should be denied for several reasons. Upton Town failed to provide notice of its proposed amendments through a proposed complaint.

Upton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Upton Town's motion should be denied due to futility, as Upton Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Upton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Upton Town amended its complaint on March 8, 2019, after transfer to the MDL on October 23, 2018. *See Town of Upton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46160-DAP, ECF No. 11. Unlike many other plaintiffs, Upton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Upton Town's deadline to amend was in 2019. Upton Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Upton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Upton Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the

PBMs in 2019. *See* MDL ECF No. 2582. Upton Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Upton Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Upton Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Upton Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Upton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Upton Town filed its original complaint on September 26, 2018. *See Town of Upton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46160-DAP, ECF No. 1. Despite filing its case years ago, Upton Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and

unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Upton Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Upton Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Upton Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Upton Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Upton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Upton Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Upton Town's proposed RICO claim against the PBMs has expired. Upton Town filed its original complaint on September 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*Town of Upton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46160-DAP, ECF No. 1. It is therefore indisputable that Upton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Upton Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Upton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Upton Town's public-nuisance claim against the PBMs is therefore time-barred because Upton Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 26, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Upton Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 881. *City of Laurel, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46161-DAP: Plaintiff Laurel City, Mississippi

Laurel City's untimely motion for leave to amend should be denied for several reasons. Laurel City failed to provide notice of its proposed amendments through a proposed complaint.

Laurel City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Laurel City's motion should be denied due to futility, as Laurel City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Laurel City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Laurel City amended its complaint on March 12, 2019, after transfer to the MDL on October 23, 2018. *See City of Laurel, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46161-DAP, ECF No. 6. Unlike many other plaintiffs, Laurel City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Laurel City's deadline to amend was in 2019. Laurel City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Laurel City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Laurel City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Laurel City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Laurel City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Laurel City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Laurel City). That insignificant dispensing volume is much too low to support a finding of good cause for Laurel City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Laurel City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Laurel City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Laurel City violated its basic duty to implement a timely litigation hold. Laurel City filed its original complaint on September 28, 2018, but waited until December 20, 2019 to implement a litigation hold—more than one year and two months later. *See City of Laurel, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46161-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold

Implemented: December 20, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Laurel City's case would force the parties and the Court to waste time and resources ascertaining the extent of Laurel City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Laurel City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Laurel City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Laurel City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Laurel City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Laurel City's proposed RICO claim against the PBMs has expired. Laurel City filed its original complaint on September 28, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Laurel, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46161-DAP, ECF No. 1. Even assuming *arguendo* that Laurel City first learned of its

injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 28, 2022. Laurel City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Laurel City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Laurel City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 882. ***Town of Stoneham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46164-DAP: Plaintiff Stoneham Town, Massachusetts**

Stoneham Town's untimely motion for leave to amend should be denied for several reasons. Stoneham Town failed to provide notice of its proposed amendments through a proposed complaint. Stoneham Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Stoneham Town's motion should be denied due to futility, as Stoneham Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Stoneham Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Stoneham Town amended its complaint on March 7, 2019, after transfer to the MDL on October 23, 2018. *See Town of Stoneham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*,

Case No. 1:18-op-46164-DAP, ECF No. 11. Unlike many other plaintiffs, Stoneham Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Stoneham Town's deadline to amend was in 2019. Stoneham Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Stoneham Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Stoneham Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Stoneham Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Stoneham Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Stoneham Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Stoneham Town). That insignificant dispensing volume is much too low to support a finding of good cause for Stoneham Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Stoneham Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Stoneham Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Stoneham Town filed its original complaint on September 26, 2018. *See Town of Stoneham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46164-DAP, ECF No. 1. Despite filing its case years ago, Stoneham Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Stoneham Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Stoneham Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Stoneham Town's disregard for its most basic

discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Stoneham Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stoneham Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Stoneham Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Stoneham Town's proposed RICO claim against the PBMs has expired. Stoneham Town filed its original complaint on September 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Stoneham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46164-DAP, ECF No. 1. It is therefore indisputable that Stoneham Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Stoneham Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim"

(quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Stoneham Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Stoneham Town's public-nuisance claim against the PBMs is therefore time-barred because Stoneham Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on September 26, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Stoneham Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 883. *Tazewell County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46167-DAP: Plaintiff Tazewell County, Virginia

Tazewell County's untimely motion for leave to amend should be denied for several reasons. Tazewell County failed to provide notice of its proposed amendments through a proposed complaint. Tazewell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tazewell County's motion should be denied due to futility, as Tazewell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tazewell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tazewell County amended its complaint on March 14, 2019, after transfer to the MDL on October 23, 2018. *See Tazewell County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46167-DAP, ECF No. 21. Unlike many other plaintiffs, Tazewell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tazewell County's deadline to amend was in 2019. Tazewell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tazewell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tazewell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Tazewell County). That insignificant dispensing volume is much too low to support a finding of good cause for Tazewell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tazewell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tazewell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tazewell County filed its original complaint on August 27, 2018. *See Tazewell County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46167-DAP, ECF No. 1. Despite filing its case years ago, Tazewell County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Tazewell County's case would force the parties and the Court to waste time and resources ascertaining the extent of Tazewell County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tazewell County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tazewell County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tazewell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tazewell County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tazewell County's proposed RICO claim against the PBMs has expired. Tazewell County filed its original complaint on August 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Tazewell County, Virginia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46167-DAP, ECF No. 1. It is therefore indisputable that Tazewell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Tazewell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tazewell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tazewell County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 884. *Livingston County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46168-DAP: Plaintiff Livingston County, Missouri

Livingston County's untimely motion for leave to amend should be denied for several reasons. Livingston County failed to provide notice of its proposed amendments through a proposed complaint. Livingston County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Livingston County's motion should be denied due to futility, as Livingston County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Livingston County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Livingston County amended its complaint on March 14, 2019, after transfer to the MDL on October 23, 2018. *See Livingston County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46168-DAP, ECF No. 21. Unlike many other plaintiffs, Livingston County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Livingston County's deadline to amend was in 2019. Livingston County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Livingston County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Livingston County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Livingston County). That insignificant dispensing volume is much too low to support a finding of good cause for Livingston County to add dispensing

claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Livingston County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Livingston County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Livingston County filed its original complaint on October 3, 2018. *See Livingston County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46168-DAP, ECF No. 1. Despite filing its case years ago, Livingston County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Livingston County's case would force the parties and the Court to waste time and resources ascertaining the extent of Livingston County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Livingston County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Livingston County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Livingston County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Livingston County's health plans,

carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Livingston County of this deficiency on September 16, 2024 (*see* Exhibit B), but Livingston County refused to amend or supplement its Fact Sheet. Under this Court's orders, Livingston County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Livingston County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Livingston County's potential claims against them. Livingston County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Livingston County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Livingston County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Livingston County's proposed RICO claim against the PBMs has expired. Livingston County filed its original complaint on October 3, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Livingston County, Missouri v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46168-DAP, ECF No. 1. It is therefore indisputable that Livingston County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Livingston County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Livingston County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Livingston County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

885. *City of Syracuse, New York v. Purdue Pharma, L.P. et al.*, **Case No. 1:18-op-46169-DAP: Plaintiff Syracuse City, New York**

Syracuse City's untimely motion for leave to amend should be denied for several reasons. Syracuse City failed to provide notice of its proposed amendments through a proposed complaint. Syracuse City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Syracuse City's motion should be denied due to futility, as Syracuse City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Syracuse City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Syracuse City amended its complaint on March 6, 2019, after transfer to the MDL on October 24, 2018. *See City of Syracuse, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46169-DAP, ECF No. 42. Unlike many other plaintiffs, Syracuse City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Syracuse City's deadline to amend was in 2019. Syracuse City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Syracuse City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Syracuse City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Syracuse City). That insignificant dispensing volume is much too low to support a finding of good cause for Syracuse City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Syracuse City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Syracuse City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Syracuse City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Syracuse City of the PBM services Express Scripts provides and Syracuse City began receiving those services on January 9, 2006. *See id.* Inasmuch as Syracuse City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Syracuse City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Syracuse City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Syracuse City filed its original complaint on October 1, 2018. *See City of Syracuse, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46169-DAP, ECF No. 1. Despite filing its case years ago, Syracuse City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Syracuse City's case would force the parties and the Court to waste time and resources ascertaining the extent of Syracuse City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Syracuse City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Syracuse City therefore lacks good cause

3317

for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Syracuse City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Syracuse City's proposed RICO claim against the PBMs has expired. Syracuse City filed its original complaint on October 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Syracuse, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46169-DAP, ECF No. 1. It is therefore indisputable that Syracuse City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Syracuse City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Syracuse City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Syracuse City, a city in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state

of New York. *See* Section III.B.6, above. Syracuse City's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at \*2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **886.** ***Lee County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46171-DAP: Plaintiff Lee County, Georgia**

Lee County's untimely motion for leave to amend should be denied for several reasons. Lee County failed to provide notice of its proposed amendments through a proposed complaint. Lee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lee County's motion should be denied due to futility, as Lee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lee County amended its complaint on March 12, 2019, after transfer to the MDL on October 24, 2018. *See Lee County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46171-DAP, ECF No. 5. Unlike many other plaintiffs, Lee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lee County's deadline to amend was in 2019. Lee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lee County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lee County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lee County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Lee County). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Lee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Lee County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lee County's proposed RICO claim against the PBMs has expired. Lee County filed its original complaint on September 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lee County Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46171-DAP, ECF No. 1. It is therefore indisputable that Lee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Lee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lee County's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lee County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 887. *City of Iuka, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46172-DAP: Plaintiff Iuka City, Mississippi

Iuka City's untimely motion for leave to amend should be denied for several reasons. Iuka City failed to provide notice of its proposed amendments through a proposed complaint. Iuka City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Iuka City's motion should be denied due to futility, as Iuka City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Iuka City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Iuka City amended its complaint on March 7, 2019, after transfer to the MDL on October 24, 2018. *See City of Iuka, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46172-DAP, ECF No. 6. Unlike many other plaintiffs, Iuka City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Iuka City's deadline to amend was in 2019. Iuka City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Iuka City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Iuka City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Iuka City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Iuka City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Iuka City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.005% market share for Iuka City). That insignificant dispensing volume is much too low to support a finding of good cause for Iuka City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Iuka City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Iuka City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

 **Failure to Implement a Litigation Hold.** Iuka City filed its original complaint on September 27, 2018. *See City of Iuka, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46172-DAP, ECF No. 1. Despite filing its case years ago, Iuka City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Iuka City's case would force the parties and the Court to waste time and resources ascertaining the extent of Iuka City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Iuka City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Iuka City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

 **Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Iuka City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

 **Failure to State a Claim.** Iuka City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Iuka City's proposed RICO claim against the PBMs has expired. Iuka City filed its original complaint on September 27, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Iuka, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46172-DAP, ECF No. 1. Even assuming *arguendo* that Iuka City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 27, 2022. Iuka City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Iuka City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Iuka City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

888. *Monroe County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-46173-DAP: Plaintiff Monroe County, Mississip**

Monroe County's untimely motion for leave to amend should be denied for several reasons. Monroe County failed to provide notice of its proposed amendments through a proposed complaint. Monroe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Monroe County's motion should be denied due to futility, as Monroe County does not assert any allegations

tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Monroe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Monroe County amended its complaint on March 7, 2019, after transfer to the MDL on October 25, 2018. *See Monroe County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46173-DAP, ECF No. 6. Unlike many other plaintiffs, Monroe County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Monroe County's deadline to amend was in 2019. Monroe County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Monroe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Monroe County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Monroe County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Monroe County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for

many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Monroe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Monroe County). That insignificant dispensing volume is much too low to support a finding of good cause for Monroe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Monroe County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Monroe County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Monroe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Monroe County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Monroe County's proposed RICO claim against the PBMs has expired. Monroe County filed its original complaint on September 27, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Monroe County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46173-DAP, ECF No. 1. Even assuming *arguendo* that Monroe County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 27, 2022. Monroe County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Monroe County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Monroe County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 889. *Currituck County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46174-DAP: Plaintiff Currituck County, North Carolina

Currituck County's untimely motion for leave to amend should be denied for several reasons. Currituck County failed to provide notice of its proposed amendments through a proposed complaint. Currituck County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Currituck County's motion should be denied due to futility, as Currituck County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Currituck County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Currituck County amended its complaint on March 11, 2019, after transfer to the MDL on October 25, 2018. *See Currituck County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46174-DAP, ECF No. 5. Unlike many other plaintiffs, Currituck County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Currituck County's deadline to amend was in 2019. Currituck County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Currituck County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Currituck County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Currituck County, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Currituck County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Currituck County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.18% market share for Currituck County). That insignificant dispensing volume is much too low to support a finding of good cause for Currituck County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Currituck County violated its basic duty to implement a timely litigation hold. Currituck County filed its original complaint on September 27, 2018, but waited until December 13, 2019 to implement a litigation hold—more than one year and two months later. *See Currituck County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46174-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Currituck County's case would force the parties and the Court to waste time and

resources ascertaining the extent of Currituck County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Currituck County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Currituck County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Currituck County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Currituck County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Currituck County's proposed RICO claim against the PBMs has expired. Currituck County filed its original complaint on September 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Currituck County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46174-DAP, ECF No. 1. It is therefore indisputable that Currituck County knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Currituck County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Currituck County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Currituck County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 890. *Chowan County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46175-DAP: Plaintiff Chowan County, North Carolina

Chowan County's untimely motion for leave to amend should be denied for several reasons. Chowan County failed to provide notice of its proposed amendments through a proposed complaint. Chowan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chowan County's motion should be denied due to futility, as Chowan County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chowan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chowan County filed its original complaint on September 27, 2018 and the case was transferred to the MDL on October 25, 2018. *See Chowan County v. AmerisourceBergen Drug Corporation*

*et al.*, Case No. 1:18-op-46175-DAP, ECF No. 6. Chowan County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Chowan County elected not to do so. Instead, Chowan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chowan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Chowan County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Chowan County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Chowan County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chowan County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.30% market share for Chowan County). That insignificant dispensing volume is much too low to support a finding of good cause for Chowan County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chowan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chowan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Chowan County violated its basic duty to implement a timely litigation hold. Chowan County filed its original complaint on September 27, 2018, but waited until December 17, 2019 to implement a litigation hold—more than one year and two months later. *See Chowan County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46175-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 17, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chowan County's case would force the parties and the Court to waste time and resources ascertaining the extent of Chowan County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chowan County's disregard

for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chowan County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chowan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chowan County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chowan County's proposed RICO claim against the PBMs has expired. Chowan County filed its original complaint on September 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Chowan County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46175-DAP, ECF No. 1. It is therefore indisputable that Chowan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Chowan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is

triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chowan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chowan County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 891. *Board of Commissioners for Lucas County, Ohio et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46177-DAP: Plaintiff Lucas County, Ohio

Lucas County's untimely motion for leave to amend should be denied for several reasons. Lucas County failed to provide notice of its proposed amendments through a proposed complaint. Lucas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lucas County's motion should be denied due to futility, as Lucas County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lucas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lucas County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Board of Commissioners for Lucas County, Ohio et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46177-DAP, ECF No. 3. Unlike many other plaintiffs, Lucas County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lucas County's deadline to amend was in 2019. Lucas County waited five years after its deadline to amend to seek

leave to assert claims against the PBMs. Lucas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lucas County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Lucas County). That insignificant dispensing volume is much too low to support a finding of good cause for Lucas County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lucas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lucas County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lucas County is a plaintiff in Ohio. Lucas County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lucas County's proposed RICO claim against the PBMs has expired. Lucas County filed its original complaint on October 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of Commissioners for Lucas County, Ohio et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46177-DAP, ECF No. 1. It is therefore indisputable that Lucas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Lucas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lucas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lucas County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 892. *County of Ingham, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46178-DAP: Plaintiff Ingham County, Michigan

Ingham County's untimely motion for leave to amend should be denied for several reasons. Ingham County failed to provide notice of its proposed amendments through a proposed complaint.

Ingham County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ingham County's motion should be denied due to futility, as Ingham County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ingham County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ingham County amended its complaint on March 16, 2019, after directly filing in the MDL. *See County of Ingham, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46178-DAP, ECF No. 24. Unlike many other plaintiffs, Ingham County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ingham County's deadline to amend was in 2019. Ingham County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ingham County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ingham County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Ingham County). That insignificant dispensing volume is much too low to support a finding of good cause for Ingham County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ingham County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ingham County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ingham County's proposed RICO claim against the PBMs has expired. Ingham County filed its original complaint on October 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Ingham, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46178-DAP, ECF No. 1. It is therefore indisputable that Ingham County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Ingham County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ingham County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ingham County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **893.** *Ashe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46185-DAP: Plaintiff Ashe County, North Carolina

Ashe County's untimely motion for leave to amend should be denied for several reasons. Ashe County failed to provide notice of its proposed amendments through a proposed complaint. Ashe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ashe County's motion should be denied due to futility, as Ashe County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ashe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ashe County amended its complaint on March 11, 2019, after transfer to the MDL on October 26, 2018. *See Ashe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46185-DAP, ECF No. 5. Unlike many other plaintiffs, Ashe County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ashe County's deadline to amend was in 2019. Ashe County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ashe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ashe County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ashe County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ashe County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ashe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Ashe County). That insignificant dispensing volume is much too low to support a finding of good cause for Ashe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ashe County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ashe County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Ashe County violated its basic duty to implement a timely litigation hold. Ashe County filed its original complaint on October 12, 2018, but waited until December 13, 2019 to implement a litigation hold—one year and two months later. *See Ashe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46185-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ashe County's case would force the parties and the Court to waste time and resources ascertaining the extent of Ashe County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ashe County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ashe County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ashe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ashe County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ashe County's proposed RICO claim against the PBMs has expired. Ashe County filed its original complaint on October 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Ashe County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46185-DAP, ECF No. 1. It is therefore indisputable that Ashe County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Ashe County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ashe County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ashe County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

894. ***Cole County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46189-DAP: Plaintiff Cole County, Missouri**

Cole County's untimely motion for leave to amend should be denied for several reasons. Cole County failed to provide notice of its proposed amendments through a proposed complaint. Cole County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because

its untimely motion would unduly prejudice the PBMs. Moreover, Cole County's motion should be denied due to futility, as Cole County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cole County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cole County amended its complaint on March 7, 2019, after directly filing in the MDL. *See Cole County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46189-DAP, ECF No. 3. Unlike many other plaintiffs, Cole County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cole County's deadline to amend was in 2019. Cole County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cole County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cole County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cole County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cole County fails to explain why it was unable to assert claims against the PBMs in

2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cole County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Cole County). That insignificant dispensing volume is much too low to support a finding of good cause for Cole County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cole County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cole County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cole County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cole County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cole County's proposed RICO claim against the PBMs has expired. Cole County filed its original complaint on October 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cole County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46189-DAP, ECF No. 1. It is therefore indisputable that Cole County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Cole County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cole County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cole County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

3347

**895.** *Gasconade County, Missouri v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-46190-DAP: Plaintiff Gasconade County, Missouri**

Gasconade County's untimely motion for leave to amend should be denied for several reasons. Gasconade County failed to provide notice of its proposed amendments through a proposed complaint. Gasconade County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gasconade County's motion should be denied due to futility, as Gasconade County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gasconade County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gasconade County amended its complaint on March 8, 2019, after directly filing in the MDL. *See Gasconade County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46190-DAP, ECF No. 3. Unlike many other plaintiffs, Gasconade County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Gasconade County's deadline to amend was in 2019. Gasconade County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Gasconade County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Gasconade County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Gasconade County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Gasconade County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gasconade County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Gasconade County). That insignificant dispensing volume is much too low to support a finding of good cause for Gasconade County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gasconade County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gasconade County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Gasconade County's proposed RICO claim against the PBMs has expired. Gasconade County filed its original complaint on October 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Gasconade County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46190-DAP, ECF No. 1. It is therefore indisputable that Gasconade County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Gasconade County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gasconade County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Gasconade County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

896. *Osage County, Missouri v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-46191-DAP: Plaintiff Osage County, Missouri**

Osage County's untimely motion for leave to amend should be denied for several reasons. Osage County failed to provide notice of its proposed amendments through a proposed complaint. Osage County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Osage County's motion should be denied due to futility, as Osage County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Osage County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Osage County amended its complaint on March 8, 2019, after directly filing in the MDL. *See Osage County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46191-DAP, ECF No. 3. Unlike many other plaintiffs, Osage County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Osage County's deadline to amend was in 2019. Osage County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Osage County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Osage County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Osage County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Osage County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Osage County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Osage County). That insignificant dispensing volume is much too low to support a finding of good cause for Osage County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Osage County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Osage County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Osage County's proposed RICO claim against the PBMs has expired. Osage County filed its original complaint on October 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Osage County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46191-DAP, ECF No. 1. It is therefore indisputable that Osage County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Osage County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Osage County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Osage County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 897. *Pulaski County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46192-DAP: Plaintiff Pulaski County, Missouri

Pulaski County's untimely motion for leave to amend should be denied for several reasons. Pulaski County failed to provide notice of its proposed amendments through a proposed complaint. Pulaski County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pulaski County's motion should be denied due to futility, as Pulaski County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pulaski County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pulaski County amended its complaint on March 8, 2019, after directly filing in the MDL. *See Pulaski County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46192-DAP, ECF No. 3. Unlike many other plaintiffs, Pulaski County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pulaski County's deadline to amend was in 2019. Pulaski County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pulaski County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pulaski County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pulaski County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pulaski County fails to explain why it was unable to assert claims against the PBMs

3354

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pulaski County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Pulaski County). That insignificant dispensing volume is much too low to support a finding of good cause for Pulaski County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pulaski County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pulaski County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Pulaski County violated its basic duty to implement a timely litigation hold. Pulaski County filed its original complaint on October 26, 2018, but waited until February 1, 2020 to implement a litigation hold—one year and three months later. *See Pulaski County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46192-DAP,

ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 1, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pulaski County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pulaski County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pulaski County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pulaski County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pulaski County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pulaski County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pulaski County's proposed RICO claim against the PBMs has expired. Pulaski County filed its original complaint on October 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pulaski County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46192-DAP, ECF

No. 1. It is therefore indisputable that Pulaski County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Pulaski County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pulaski County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pulaski County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 898. *Reynolds County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46193-DAP: Plaintiff Reynolds County, Missouri

Reynolds County's untimely motion for leave to amend should be denied for several reasons. Reynolds County failed to provide notice of its proposed amendments through a proposed complaint. Reynolds County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Reynolds County's motion should be denied due to futility, as Reynolds County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Reynolds County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Reynolds County amended its complaint on March 8, 2019, after directly filing in the MDL. *See Reynolds County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46193-

DAP, ECF No. 3. Unlike many other plaintiffs, Reynolds County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Reynolds County's deadline to amend was in 2019. Reynolds County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Reynolds County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Reynolds County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Reynolds County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Reynolds County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Reynolds County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Reynolds County). That insignificant dispensing volume is much too low to support a finding of good cause for Reynolds County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Reynolds County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Reynolds County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Reynolds County's proposed RICO claim against the PBMs has expired. Reynolds County filed its original complaint on October 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Reynolds County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46193-DAP, ECF No. 1. It is therefore indisputable that Reynolds County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking

leave to amend. Reynolds County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Reynolds County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Reynolds County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 899. *Maries County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46194-DAP: Plaintiff Maries County, Missouri

Maries County's untimely motion for leave to amend should be denied for several reasons. Maries County failed to provide notice of its proposed amendments through a proposed complaint. Maries County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Maries County's motion should be denied due to futility, as Maries County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Maries County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Maries County filed its original complaint directly into the MDL on October 26, 2018. *See Maries County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46194-DAP, ECF No. 1. Maries County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Maries County elected not to do so. Maries

County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Maries County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Maries County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Maries County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Maries County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Maries County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.25% market share for Maries County). That insignificant dispensing volume is much too

low to support a finding of good cause for Maries County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Maries County violated its basic duty to implement a timely litigation hold. Maries County filed its original complaint on October 26, 2018, but waited until August 26, 2024 to implement a litigation hold—more than five and a half years later. *See Maries County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46194-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 26, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Maries County's case would force the parties and the Court to waste time and resources ascertaining the extent of Maries County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Maries County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Maries County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Maries County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Maries County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Maries County's proposed RICO claim against the PBMs has expired. Maries County filed its original complaint on October 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Maries County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46194-DAP, ECF No. 1. It is therefore indisputable that Maries County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Maries County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Maries County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Maries County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

900. ***Phelps County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46195-DAP: Plaintiff Phelps County, Missouri**

Phelps County's untimely motion for leave to amend should be denied for several reasons. Phelps County failed to provide notice of its proposed amendments through a proposed complaint. Phelps County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and

because its untimely motion would unduly prejudice the PBMs. Moreover, Phelps County's motion should be denied due to futility, as Phelps County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Phelps County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Phelps County amended its complaint on March 8, 2019, after directly filing in the MDL. *See Phelps County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46195-DAP, ECF No. 3. Unlike many other plaintiffs, Phelps County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Phelps County's deadline to amend was in 2019. Phelps County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Phelps County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Phelps County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Phelps County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Phelps County fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Phelps County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Phelps County). That insignificant dispensing volume is much too low to support a finding of good cause for Phelps County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Phelps County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Phelps County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Phelps County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Phelps County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Phelps County's proposed RICO claim against the PBMs has expired. Phelps County filed its original complaint on October 26, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Phelps County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46195-DAP, ECF No. 1. It is therefore indisputable that Phelps County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Phelps County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Phelps County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Phelps County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**901.** ***Warren County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46196-DAP: Plaintiff Warren County, Missouri**

Warren County's untimely motion for leave to amend should be denied for several reasons. Warren County failed to provide notice of its proposed amendments through a proposed complaint. Warren County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Warren County's motion should be denied due to futility, as Warren County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Warren County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Warren County amended its complaint on March 8, 2019, after directly filing in the MDL. *See Warren County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46196-DAP, ECF No. 3. Unlike many other plaintiffs, Warren County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Warren County's deadline to amend was in 2019. Warren County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Warren County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Warren County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Warren County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Warren County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Warren County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Warren County). That insignificant dispensing volume is much too low to support a finding of good cause for Warren County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Warren County violated its basic duty to implement a timely litigation hold. Warren County filed its original complaint on October 29, 2018, but waited until September 27, 2024 to implement a litigation hold—nearly six years later. *See Warren County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46196-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 27, 2024). This

is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Warren County's case would force the parties and the Court to waste time and resources ascertaining the extent of Warren County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Warren County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Warren County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Warren County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Warren County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Warren County of this deficiency on September 16, 2024 (*see* Exhibit B), but Warren County refused to amend or supplement its Fact Sheet. Under this Court's orders, Warren County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Warren County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Warren County's potential claims against them. Warren County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Warren County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Warren County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Warren County's proposed RICO claim against the PBMs has expired. Warren County filed its original complaint on October 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Warren County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46196-DAP, ECF No. 1. It is therefore indisputable that Warren County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Warren County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Warren County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Warren County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 902. *Montgomery County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46197-DAP: Plaintiff Montgomery County, Missouri

Montgomery County's untimely motion for leave to amend should be denied for several reasons. Montgomery County failed to provide notice of its proposed amendments through a proposed complaint. Montgomery County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Montgomery County's motion should be denied due to futility, as Montgomery County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Montgomery County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Montgomery County amended its complaint on March 8, 2019, after directly filing in the MDL. *See Montgomery County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46197-DAP, ECF No. 3. Unlike many other plaintiffs, Montgomery County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Montgomery County's deadline to amend was in 2019. Montgomery County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Montgomery County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Montgomery County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Montgomery County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Montgomery County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Montgomery County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.21% market share for Montgomery County). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Montgomery County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Montgomery County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Montgomery County's proposed RICO claim against the PBMs has expired. Montgomery County filed its original complaint on October 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Montgomery County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46197-DAP, ECF No. 1. It is therefore indisputable that Montgomery County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Montgomery County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Montgomery County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Montgomery County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **903.** ***Ozark County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46198-DAP: Plaintiff Ozark County, Missouri**

Ozark County's untimely motion for leave to amend should be denied for several reasons. Ozark County failed to provide notice of its proposed amendments through a proposed complaint. Ozark County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ozark County's motion should be denied due to futility, as Ozark County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ozark County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ozark County amended its complaint on March 14, 2019, after directly filing in the MDL. *See Ozark County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46198-DAP, ECF No. 3. Unlike many other plaintiffs, Ozark County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ozark County's deadline to amend was in 2019. Ozark County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ozark County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ozark County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ozark County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ozark County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ozark County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Ozark County). That insignificant dispensing volume is much too low to support a finding of good cause for Ozark County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ozark County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ozark County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs

notified Ozark County of this deficiency on September 16, 2024 (*see* Exhibit B), but Ozark County refused to amend or supplement its Fact Sheet. Under this Court's orders, Ozark County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ozark County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ozark County's potential claims against them. Ozark County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ozark County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ozark County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ozark County's proposed RICO claim against the PBMs has expired. Ozark County filed its original complaint on October 29, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Ozark County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46198-DAP, ECF No. 1. It is therefore indisputable that Ozark County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Ozark County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ozark County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ozark County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 904. *Muskegon County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46199-DAP: Plaintiff Muskegon County, Michigan

Muskegon County's untimely motion for leave to amend should be denied for several reasons. Muskegon County failed to provide notice of its proposed amendments through a proposed complaint. Muskegon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Muskegon County's motion should be denied due to futility, as Muskegon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Muskegon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Muskegon County amended its complaint on March 13, 2019, after transfer to the MDL on October 30, 2018. *See Muskegon County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46199-DAP, ECF No. 8. Unlike many other plaintiffs, Muskegon County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Muskegon County's deadline to amend was in 2019. Muskegon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Muskegon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Muskegon County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Muskegon County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Muskegon County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Muskegon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Muskegon County). That insignificant dispensing volume is much too low to support a finding of good cause for Muskegon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Muskegon County filed its original complaint on October 9, 2018. *See Muskegon County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46199-DAP, ECF No. 1. Despite filing its case years ago, Muskegon County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Muskegon County's case would force the parties and the Court to waste time and resources ascertaining the extent of Muskegon County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Muskegon County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Muskegon County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Muskegon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Muskegon County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Muskegon County's proposed RICO claim against the PBMs has expired. Muskegon County filed its original complaint on October 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Muskegon County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46199-DAP, ECF No. 1. It is therefore indisputable that Muskegon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Muskegon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Muskegon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Muskegon County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **905.** ***Town of Middleborough v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46200-DAP: Plaintiff Middleborough Town, Massachusetts**

Middleborough Town's untimely motion for leave to amend should be denied for several reasons. Middleborough Town failed to provide notice of its proposed amendments through a proposed complaint. Middleborough Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Middleborough Town's motion should be denied due to futility, as Middleborough Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Middleborough Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Middleborough Town amended its complaint on March 6, 2019, after transfer to the MDL on October 30, 2018. *See Town of Middleborough v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46200-DAP, ECF No. 13 Unlike many other plaintiffs, Middleborough Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Middleborough Town's deadline to amend was in 2019. Middleborough Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Middleborough Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Middleborough Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Middleborough Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Middleborough Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Middleborough Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Middleborough Town). That insignificant dispensing volume is much too low to support a finding of good cause for Middleborough Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Middleborough Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Middleborough Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Middleborough Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Middleborough Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Middleborough Town's proposed RICO claim against the PBMs has expired. Middleborough Town filed its original complaint on October 12, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Middleborough v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46200-DAP, ECF No. 1. It is therefore indisputable that Middleborough Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost six years before seeking leave to amend. Middleborough Town's RICO claim is

therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Middleborough Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Middleborough Town's public-nuisance claim against the PBMs is therefore time-barred because Middleborough Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on October 12, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Middleborough Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **906.** *City of Ashland, Ohio v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-46203-DAP: Plaintiff Ashland City, Ohio**

Ashland City's untimely motion for leave to amend should be denied for several reasons. Ashland City failed to provide notice of its proposed amendments through a proposed complaint. Ashland City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ashland City's motion should

be denied due to futility, as Ashland City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ashland City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ashland City amended its complaint on March 14, 2019, after directly filing in the MDL. *See City of Ashland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46203-DAP, ECF No. 21. Unlike many other plaintiffs, Ashland City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ashland City's deadline to amend was in 2019. Ashland City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ashland City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ashland City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ashland City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ashland City fails to explain why it was unable to assert claims against the PBMs in

2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ashland City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Ashland City). That insignificant dispensing volume is much too low to support a finding of good cause for Ashland City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Ashland City violated its basic duty to implement a timely litigation hold. Ashland City filed its original complaint on October 31, 2018, but waited until December 16, 2019 to implement a litigation hold—over thirteen months later. *See City of Ashland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46203-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 16, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ashland City's case would force the parties and the Court to waste time and resources ascertaining the extent of Ashland City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ashland City's disregard for its most basic discovery obligations as

a litigant, compounded by the delay in seeking leave to amend, and Ashland City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ashland City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ashland City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ashland City of this deficiency on September 16, 2024 (*see* Exhibit B), but Ashland City refused to amend or supplement its Fact Sheet. Under this Court's orders, Ashland City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ashland City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ashland City's potential claims against them. Ashland City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ashland City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ashland City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Ashland City is a plaintiff in Ohio. Ashland City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Ashland City's proposed RICO claim against the PBMs has expired. Ashland City filed its original complaint on October 31, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Ashland, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46203-DAP, ECF No. 1. It is therefore indisputable that Ashland City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Ashland City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ashland City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ashland City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **907.** ***Alexander County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46205-DAP: Plaintiff Alexander County, North Carolina**

Alexander County's untimely motion for leave to amend should be denied for several reasons. Alexander County failed to provide notice of its proposed amendments through a proposed complaint. Alexander County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alexander County's motion should be denied due to futility, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alexander County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Alexander County amended its complaint on March 11, 2019, after transfer to the MDL on November 1, 2018. *See Alexander County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46205-DAP, ECF No. 5. Unlike many other plaintiffs, Alexander County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Alexander County's deadline to amend was in 2019. Alexander County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Alexander County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Alexander County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Alexander County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Alexander County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alexander County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Alexander County). That insignificant dispensing volume is much too low to support a finding of good cause for Alexander County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alexander County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Alexander County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Alexander County violated its basic duty to implement a timely litigation hold. Alexander County filed its original complaint on October 15, 2018, but waited until December 18, 2019 to implement a litigation hold—over fourteen months later. *See Alexander County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46205-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 18, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Alexander County's case would force the parties and the Court to waste time and resources ascertaining the extent of Alexander County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Alexander County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Alexander County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alexander County's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alexander County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alexander County's proposed RICO claim against the PBMs has expired. Alexander County filed its original complaint on October 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Alexander County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46205-DAP, ECF No. 1. It is therefore indisputable that Alexander County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Alexander County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alexander County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alexander County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

908. ***County Commissioners of Dona Ana County, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:18-op-46206-DAP: Plaintiff Dona Ana County, New Mexico**

Dona Ana County's untimely motion for leave to amend should be denied for several reasons. Dona Ana County failed to provide notice of its proposed amendments through a proposed complaint. Dona Ana County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dona Ana County's motion should be denied due to futility, as Dona Ana County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dona Ana County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dona Ana County amended its complaint on March 6, 2019, after transfer to the MDL on November 1, 2018. *See County Commissioners of Dona Ana County, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:18-op-46206-DAP, ECF No. 6. Unlike many other plaintiffs, Dona Ana County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Dona Ana County's deadline to amend was in 2019. Dona Ana County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dona Ana County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Dona Ana County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Dona Ana County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Dona Ana County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dona Ana County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Dona Ana County). That insignificant dispensing volume is much too low to support a finding of good cause for Dona Ana County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dona Ana County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dona Ana County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dona Ana County's proposed RICO claim against the PBMs has expired. Dona Ana County filed its original complaint on October 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County Commissioners of Dona Ana County, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:18-op-46206-DAP, ECF No. 1. It is therefore indisputable that Dona Ana County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Dona Ana County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dona Ana County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dona Ana County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

909. ***Davie County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46207-DAP: Plaintiff Davie County, North Carolina**

Davie County's untimely motion for leave to amend should be denied for several reasons. Davie County failed to provide notice of its proposed amendments through a proposed complaint. Davie County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Davie County's motion should be denied due to futility, as Davie County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Davie County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Davie County amended its complaint on March 11, 2019, after transfer to the MDL on November 1, 2018. *See Davie County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46207-DAP, ECF No. 6. Unlike many other plaintiffs, Davie County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Davie County's deadline to amend was in 2019. Davie County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Davie County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Davie County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Davie County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Davie County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Davie County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Davie County). That insignificant dispensing volume is much too low to support a finding of good cause for Davie County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Davie County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Davie County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Davie County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Davie County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Davie County's proposed RICO claim against the PBMs has expired. Davie County filed its original complaint on October 15, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Davie County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46207-DAP, ECF No. 1. It is therefore indisputable that Davie County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Davie County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim") (quoting *Rotella*, 528 U.S. at 555); *see* Section III.B.4, above. Davie County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Davie County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 910. *Plains Township, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46215-DAP: Plaintiff Plains Township, Pennsylvania

Plains Township's untimely motion for leave to amend should be denied for several reasons. Plains Township failed to provide notice of its proposed amendments through a proposed complaint. Plains Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Plains Township's motion should be denied due to futility, as Plains Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Plains Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Plains Township amended its complaint on March 13, 2019, after transfer to the MDL on November 8, 2018. *See Plains Township, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46215-DAP, ECF No. 7. Unlike many other plaintiffs, Plains Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Plains Township's deadline to amend was in 2019. Plains Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Plains Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Plains Township cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Plains Township, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Plains Township fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Plains Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Plains Township). That insignificant dispensing volume is much too low to support a finding of good cause for Plains Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Plains Township's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Plains Township to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Plains Township violated its basic duty to implement a timely litigation hold. Plains Township filed its original complaint on October 18, 2018, but waited until September 20, 2024 to implement a litigation hold—nearly six years later. *See Plains Township, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46215-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 20, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Plains Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Plains Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Plains Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Plains Township therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Plains Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Plains Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period.

The PBMs notified Plains Township of this deficiency on September 16, 2024 (*see* Exhibit B), but Plains Township refused to amend or supplement its Fact Sheet. Under this Court's orders, Plains Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Plains Township's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Plains Township's potential claims against them. Plains Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Plains Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Plains Township, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Plains Township's proposed RICO claim against the PBMs has expired. Plains Township filed its original complaint on October

18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Plains Township, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46215-DAP, ECF No. 1. It is therefore indisputable that Plains Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Plains Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Plains Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Plains Township, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 911. *Franklin County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46216-DAP: Plaintiff Franklin County, North Carolina

Franklin County's untimely motion for leave to amend should be denied for several reasons. Franklin County failed to provide notice of its proposed amendments through a proposed complaint. Franklin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin County's motion should be denied due to futility, as Franklin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Franklin County amended its complaint on March 11, 2019, after transfer to the MDL on November 8, 2018. *See Franklin County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46216-DAP, ECF No. 5. Unlike many other plaintiffs, Franklin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Franklin County's deadline to amend was in 2019. Franklin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Franklin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Franklin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Franklin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Franklin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Franklin County). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Franklin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Franklin County filed its original complaint on October 22, 2018. *See Franklin County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46216-DAP, ECF No. 1. Despite filing its case years ago, Franklin County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Franklin County's case would force the parties and the Court to waste time and resources ascertaining the extent of

Franklin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Franklin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Franklin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin County's proposed RICO claim against the PBMs has expired. Franklin County filed its original complaint on October 22, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Franklin County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46216-DAP, ECF No. 1. It is therefore indisputable that Franklin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking

leave to amend. Franklin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Franklin County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 912. *Nye County, Nevada v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46238-DAP: Plaintiff Nye County, Nevada

Nye County's untimely motion for leave to amend should be denied for several reasons. Nye County failed to provide notice of its proposed amendments through a proposed complaint. Nye County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nye County's motion should be denied due to futility, as Nye County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Nye County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nye County amended its complaint on March 6, 2019, after transfer to the MDL on November 14, 2018. *See Nye County, Nevada v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46238-DAP, ECF No. 22. Unlike many other plaintiffs, Nye County declined to add claims against

the PBMs in its amended complaint. *See* Section II.A.1, above. Nye County's deadline to amend was in 2019. Nye County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Nye County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Nye County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; and Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Nye County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Nye County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Nye County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.33% market share for Nye County). That insignificant dispensing volume is much too low to support a finding of good cause for Nye County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nye County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nye County, a municipality in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nye County's proposed RICO claim against the PBMs has expired. Nye County filed its original complaint on October 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Nye County, Nevada v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46238-DAP, ECF No. 1. It is therefore indisputable that Nye County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Nye County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nye County's request for leave to amend to add a RICO claim should be

denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nye County, a municipality in Nevada, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 913. *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46239-DAP: Plaintiff Lac Vieux Desert Band of Lake Superior Chippewa Indians, Michigan

Lac Vieux Desert Band of Lake Superior Chippewa Indians' untimely motion for leave to amend should be denied for several reasons. Lac Vieux Desert Band of Lake Superior Chippewa Indians failed to provide notice of its proposed amendments through a proposed complaint. Lac Vieux Desert Band of Lake Superior Chippewa Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lac Vieux Desert Band of Lake Superior Chippewa Indians' motion should be denied due to futility, as Lac Vieux Desert Band of Lake Superior Chippewa Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lac Vieux Desert Band of Lake Superior Chippewa Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lac Vieux Desert Band of Lake Superior Chippewa Indians amended its complaint on August 9, 2019, after directly filing in the MDL. *See Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46239-DAP, ECF No. 21. Unlike many other plaintiffs, Lac Vieux Desert Band of Lake Superior Chippewa Indians declined to add claims against the PBMs in its amended

complaint. *See* Section II.A.1, above. Lac Vieux Desert Band of Lake Superior Chippewa Indians'
deadline to amend was in 2019. Lac Vieux Desert Band of Lake Superior Chippewa Indians waited
five years after its deadline to amend to seek leave to assert claims against the PBMs. Lac Vieux
Desert Band of Lake Superior Chippewa Indians' lack of diligence in pursuing its claims negates
any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine
months after the scheduling order's deadline because plaintiff "had all the information [she]
needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion
to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Lac Vieux Desert Band of Lake Superior
Chippewa Indians filed its original complaint on November 14, 2018. *See Lac Vieux Desert Band
of Lake Superior Chippewa Indians v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46239-DAP,
ECF No. 1. Despite filing its case years ago, Lac Vieux Desert Band of Lake Superior Chippewa
Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232;
5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lac Vieux
Desert Band of Lake Superior Chippewa Indians' case would force the parties and the Court to
waste time and resources ascertaining the extent of Lac Vieux Desert Band of Lake Superior
Chippewa Indians' document destruction and the appropriate sanctions—just as the parties were
forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The
PBMs are prejudiced by Lac Vieux Desert Band of Lake Superior Chippewa Indians' disregard
for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to
amend, and Lac Vieux Desert Band of Lake Superior Chippewa Indians therefore lacks good cause
for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lac Vieux Desert Band of Lake Superior Chippewa Indians' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lac Vieux Desert Band of Lake Superior Chippewa Indians, a native tribe in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lac Vieux Desert Band of Lake Superior Chippewa Indians' proposed RICO claim against the PBMs has expired. Lac Vieux Desert Band of Lake Superior Chippewa Indians filed its original complaint on November 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46239-DAP, ECF No. 1. It is therefore indisputable that Lac Vieux Desert Band of Lake Superior Chippewa Indians knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Lac Vieux Desert Band of Lake Superior Chippewa Indians' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lac Vieux Desert Band of Lake Superior Chippewa Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lac Vieux Desert Band of Lake Superior Chippewa Indians, a native tribe in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 914. *Leon County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46242-DAP: Plaintiff Leon County, Florida

Leon County's untimely motion for leave to amend should be denied for several reasons. Leon County failed to provide notice of its proposed amendments through a proposed complaint. Leon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Leon County's motion should be denied due to futility, as Leon County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leon County amended its complaint on March 8, 2019, after transfer to the MDL on November 19, 2018. *See Leon County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46242-DAP, ECF No. 8. Unlike many other plaintiffs, Leon County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Leon County's deadline to amend was in 2019. Leon County waited five years after its deadline to amend to seek

leave to assert claims against the PBMs. Leon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Leon County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Leon County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Leon County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Leon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Leon County). That insignificant dispensing volume is much too

low to support a finding of good cause for Leon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Leon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Leon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Leon County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Leon County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Leon County of this deficiency on September 16, 2024 (*see* Exhibit B), but Leon County refused to amend or supplement its Fact Sheet. Under this Court's orders, Leon County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Leon County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Leon County's potential claims against them. Leon County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leon County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leon County's proposed RICO claim against the PBMs has expired. Leon County filed its original complaint on October 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Leon County, Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46242-DAP, ECF No. 1. It is therefore indisputable that Leon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Leon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Leon County's public-nuisance claim against the PBMs is therefore

time-barred because Leon County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on October 25, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Leon County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 915. *Ripley County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46262-DAP: Plaintiff Ripley County, Missouri

Ripley County's untimely motion for leave to amend should be denied for several reasons. Ripley County failed to provide notice of its proposed amendments through a proposed complaint. Ripley County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ripley County's motion should be denied due to futility, as Ripley County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ripley County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ripley County amended its complaint on March 14, 2019, after directly filing in the MDL. *See Ripley County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46262-DAP, ECF No. 2. Unlike many other plaintiffs, Ripley County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ripley County's deadline to amend was in 2019.

Ripley County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ripley County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ripley County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ripley County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ripley County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ripley County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Ripley County). That insignificant dispensing volume is much too

low to support a finding of good cause for Ripley County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ripley County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ripley County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ripley County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ripley County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ripley County's proposed RICO claim against the PBMs has expired. Ripley County filed its original complaint on November 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Ripley County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46262-DAP, ECF No. 1. It is therefore indisputable that Ripley County knew of its RICO injury, at the

very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Ripley County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ripley County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ripley County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 916. *Lewis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46263-DAP: Plaintiff Lewis County, Missouri

Lewis County's untimely motion for leave to amend should be denied for several reasons. Lewis County failed to provide notice of its proposed amendments through a proposed complaint. Lewis County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lewis County's motion should be denied due to futility, as Lewis County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lewis County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lewis County amended its complaint on March 14, 2019, after directly filing in the MDL. *See Lewis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46263-DAP, ECF No. 2.

Unlike many other plaintiffs, Lewis County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lewis County's deadline to amend was in 2019. Lewis County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lewis County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lewis County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lewis County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lewis County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Lewis County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Lewis County). That insignificant dispensing volume is much too low to support a finding of good cause for Lewis County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lewis County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lewis County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lewis County violated its basic duty to implement a timely litigation hold. Lewis County filed its original complaint on November 20, 2018, but waited until September 26, 2024 to implement a litigation hold—nearly six years later. *See Lewis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46263-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 26, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lewis County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lewis County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lewis County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lewis County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lewis County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lewis County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lewis County's proposed RICO claim against the PBMs has expired. Lewis County filed its original complaint on November 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lewis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46263-DAP, ECF No. 1. It is therefore indisputable that Lewis County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Lewis County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lewis County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lewis County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **917.** ***Shelby County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46264-DAP: Plaintiff Shelby County, Missouri**

Shelby County's untimely motion for leave to amend should be denied for several reasons. Shelby County failed to provide notice of its proposed amendments through a proposed complaint. Shelby County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Shelby County's motion should be denied due to futility, as Shelby County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Shelby County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Shelby County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Shelby County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46264-DAP, ECF No. 2. Unlike many other plaintiffs, Shelby County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Shelby County's deadline to amend was in 2019. Shelby County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Shelby County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Shelby County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Shelby County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Shelby County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Shelby County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Shelby County). That insignificant dispensing volume is much too low to support a finding of good cause for Shelby County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Shelby County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Shelby County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shelby County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shelby County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Shelby County's proposed RICO claim against the PBMs has expired. Shelby County filed its original complaint on November 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Shelby County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46264-DAP, ECF No. 1. It is therefore indisputable that Shelby County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Shelby County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shelby County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Shelby County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **918.** ***Audrain County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46265-DAP: Plaintiff Audrain County, Missouri**

Audrain County's untimely motion for leave to amend should be denied for several reasons. Audrain County failed to provide notice of its proposed amendments through a proposed complaint. Audrain County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Audrain County's motion should be denied due to futility, as Audrain County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Audrain County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Audrain County amended its complaint on March 7, 2019, after directly filing in the MDL. *See Audrain County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46265-DAP, ECF No. 3. Unlike many other plaintiffs, Audrain County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Audrain County's deadline to amend was in 2019. Audrain County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Audrain County's lack of diligence in pursuing its claims negates any finding of good

cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Audrain County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Audrain County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Audrain County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Audrain County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Audrain County). That insignificant dispensing volume is much too low to support a finding of good cause for Audrain County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Audrain County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Audrain County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Audrain County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Audrain County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Audrain County's proposed RICO claim against the PBMs has expired. Audrain County filed its amended complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Audrain County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46265-DAP, ECF No. 3. It is therefore indisputable that Audrain County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend.

Audrain County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Audrain County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Audrain County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 919. *Tanana Chiefs Conference et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46268-DAP: Plaintiff Southcentral Foundation, Alaska

Southcentral Foundation's untimely motion for leave to amend should be denied for several reasons. Southcentral Foundation failed to provide notice of its proposed amendments through a proposed complaint. Southcentral Foundation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Southcentral Foundation's motion should be denied due to futility, as Southcentral Foundation does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Southcentral Foundation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Southcentral Foundation first amended its complaint on November 15, 2018. *See Tanana Chiefs Conference et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46268-DAP, ECF No. 6. Southcentral Foundation amended its complaint again on August 12, 2019. *See Tanana*

*Chiefs Conference et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46268-DAP, ECF No. 43. Unlike many other plaintiffs, Southcentral Foundation declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Southcentral Foundation's deadline to amend was in 2019. Southcentral Foundation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Southcentral Foundation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Southcentral Foundation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Southcentral Foundation to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Southcentral Foundation violated its basic duty to implement a timely litigation hold. Southcentral Foundation filed its original complaint on October 30, 2018, but waited until September 16, 2024 to implement a litigation hold—more than five and a half years later. *See Tanana Chiefs Conference et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46268-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Southcentral Foundation's case would force the parties and the Court to

waste time and resources ascertaining the extent of Southcentral Foundation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Southcentral Foundation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Southcentral Foundation therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Lack of Fair Notice.** Southcentral Foundation's failure to provide a proposed amended complaint is especially problematic because Southcentral Foundation is one of several "nonprofit regional tribal health organization that provides health care programs and services" to Alaska Natives. *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 413–14 (9th Cir. 2020); *see also Tanana Chiefs Conference et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46268-DAP (N.D. Ohio Nov. 15, 2018), ECF No. 6 at ¶¶ 40–41. Southcentral Foundation operates under the tribal authority of Cook Inlet Region, Inc., and occupies several unique roles in the Alaska Native healthcare system using funds from the federal government and "other sources." *Tanana Chiefs Conference et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46268-DAP, ECF No. 6 at ¶¶ 40–41. Because of this unique role, the PBMs have no means of determining whether Southcentral Foundation is seeking to recoup federal, state, or private funds without a proposed amended complaint. Southcentral Foundation's motion for leave to amend should therefore be denied because it fails to provide the PBMs with fair notice of Southcentral Foundation's claims. *Beydoun*, 871 F.3d at 469 (noting that a court cannot determine whether amendment is proper without knowing the "substance of the proposed amendment").

**Prejudice Due to Loss of Evidence.** Under Alaska law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Southcentral Foundation's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alaska law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Southcentral Foundation, a native tribe in Alaska, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Southcentral Foundation's proposed RICO claim against the PBMs has expired. Southcentral Foundation filed its original complaint on October 30, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Tanana Chiefs Conference et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46268-DAP, ECF No. 1. It is therefore indisputable that Southcentral Foundation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Southcentral Foundation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Southcentral Foundation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Southcentral Foundation, a native tribe in Alaska, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 920. *Carroll County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46269-DAP: Plaintiff Carroll County, Georgia

Carroll County's untimely motion for leave to amend should be denied for several reasons. Carroll County failed to provide notice of its proposed amendments through a proposed complaint. Carroll County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carroll County's motion should be denied due to futility, as Carroll County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carroll County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carroll County amended its complaint on March 15, 2019, after transfer to the MDL on November 27, 2018. *See Carroll County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46269-DAP, ECF No. 17. Unlike many other plaintiffs, Carroll County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Carroll County's deadline to amend was in 2019. Carroll County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carroll County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carroll County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Carroll County). That insignificant dispensing volume is much too low to support a finding of good cause for Carroll County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Carroll County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Carroll County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Carroll County filed its original complaint on November 2, 2018. *See Carroll County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46269-DAP, ECF No. 1. Despite filing its case years ago, Carroll County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Carroll County's case would force the parties and the Court to waste time and resources ascertaining the extent of Carroll County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Carroll County's disregard for its most basic discovery obligations as a litigant, compounded by

the delay in seeking leave to amend, and Carroll County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carroll County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carroll County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carroll County's proposed RICO claim against the PBMs has expired. Carroll County filed its original complaint on November 2, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Carroll County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46269-DAP, ECF No. 1. It is therefore indisputable that Carroll County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Carroll County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carroll County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Carroll County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 921. *Carbon County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46270-DAP: Plaintiff Carbon County, Utah

Carbon County's untimely motion for leave to amend should be denied for several reasons. Carbon County failed to provide notice of its proposed amendments through a proposed complaint. Carbon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carbon County's motion should be denied due to futility, as Carbon County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carbon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carbon County amended its complaint on March 14, 2019, after transfer to the MDL on November 28, 2018. *See Carbon County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46270-DAP, ECF No. 8. Unlike many other plaintiffs, Carbon County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Carbon County's deadline to amend was in 2019. Carbon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Carbon County's lack of diligence in pursuing its claims negates any finding of

good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carbon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Carbon County). That insignificant dispensing volume is much too low to support a finding of good cause for Carbon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Carbon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Carbon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Carbon County violated its basic duty to implement a timely litigation hold. Carbon County filed its original complaint on November 1, 2018, but waited until September 18, 2024 to implement a litigation hold—more than five and a half years later. *See Carbon County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46270-DAP, ECF No. 2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 18, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Carbon County's

case would force the parties and the Court to waste time and resources ascertaining the extent of Carbon County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Carbon County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Carbon County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Carbon County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Carbon County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Carbon County of this deficiency on September 16, 2024 (*see* Exhibit B), but Carbon County refused to amend or supplement its Fact Sheet. Under this Court's orders, Carbon County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Carbon County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Carbon County's potential claims against them. Carbon County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Utah law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carbon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Utah law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carbon County, a municipality in Utah, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carbon County's proposed RICO claim against the PBMs has expired. Carbon County filed its original complaint on November 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Carbon County v. Purdue Pharma LP et al.*, Case No. 1:18-op-46270-DAP, ECF No. 2. It is therefore indisputable that Carbon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Carbon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carbon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Carbon County, a municipality in Utah, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 922. *Hillsborough County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46281-DAP: Plaintiff Hillsborough County, Florida

Hillsborough County's untimely motion for leave to amend should be denied for several reasons. Hillsborough County failed to provide notice of its proposed amendments through a proposed complaint. Hillsborough County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hillsborough County's motion should be denied due to futility, as Hillsborough County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hillsborough County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hillsborough County first amended its complaint on October 18, 2018. *See Hillsborough County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46281-DAP, ECF No. 1-2. Unlike many other plaintiffs, Hillsborough County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hillsborough County's deadline to amend was in 2019. Hillsborough County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hillsborough County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hillsborough County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.27% market share for Hillsborough County). That insignificant dispensing volume is much too low to support a finding of good cause for Hillsborough County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hillsborough County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hillsborough County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hillsborough County filed its original complaint on August 14, 2018. *See Hillsborough County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46281-DAP, ECF No. 1-4. Despite filing its case years ago, Hillsborough County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hillsborough County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hillsborough County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024.

The PBMs are prejudiced by Hillsborough County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hillsborough County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hillsborough County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hillsborough County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hillsborough County's proposed RICO claim against the PBMs has expired. Hillsborough County filed its original complaint on August 14, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Hillsborough County v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46281-DAP, ECF No. 1-4. Even assuming *arguendo* that Hillsborough County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 14, 2022. Hillsborough County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hillsborough County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Hillsborough County's public-nuisance claim against the PBMs is therefore time-barred because Hillsborough County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 14, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Hillsborough County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **923.** *City of Tampa v. Purdue Pharma L.P. et al.*, **Case No. 1:18-op-46282-DAP: Plaintiff Tampa City, Florida**

Tampa City's untimely motion for leave to amend should be denied for several reasons. Tampa City failed to provide notice of its proposed amendments through a proposed complaint. Tampa City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tampa City's motion should be denied due to futility, as Tampa City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred

by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tampa City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tampa City first amended its complaint on October 16, 2018. *See City of Tampa v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46282-DAP, ECF No. 1-2. Unlike many other plaintiffs, Tampa City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tampa City's deadline to amend was in 2019. Tampa City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tampa City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tampa City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.24% market share for Tampa City). That insignificant dispensing volume is much too low to support a finding of good cause for Tampa City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tampa City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tampa City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tampa City filed its original complaint on October 2, 2018. *See City of Tampa v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46282-DAP, ECF No. 1-5. Despite filing its case years ago, Tampa City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Tampa City's case would force the parties and the Court to waste time and resources ascertaining the extent of Tampa City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tampa City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tampa City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tampa City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tampa City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tampa City's proposed RICO claim against the PBMs has expired. Tampa City filed its original complaint on October 2, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Tampa v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46282-DAP, ECF No. 1-5. Even assuming *arguendo* that Tampa City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 2, 2022. Tampa City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tampa City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Tampa City's public-nuisance claim against the PBMs is therefore time-barred because Tampa City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on October 2, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tampa City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **924.** *Union County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46284-DAP: Plaintiff Union County, Georgia

Union County's untimely motion for leave to amend should be denied for several reasons. Union County failed to provide notice of its proposed amendments through a proposed complaint. Union County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Union County's motion should be denied due to futility, as Union County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Union County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Union County amended its complaint on March 12, 2019, after transfer to the MDL on November 30, 2018. *See Union County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46284-DAP, ECF No. 5. Unlike many other plaintiffs, Union County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Union County's deadline to amend was in 2019. Union County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Union County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Union County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Union County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Union County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Union County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Union County). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Union County filed its original complaint on October 25, 2018. *See Union County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46284-DAP, ECF No. 1. Despite filing its case years ago, Union County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Union County's case would force the parties and the Court to waste time and resources ascertaining the extent of Union County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Union County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Union County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Union County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Union County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Union County's proposed RICO claim against the PBMs has expired. Union County filed its original complaint on October 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Union County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46284-DAP, ECF No. 1. It is therefore indisputable that Union County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Union County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Union County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Union County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 925. *City of Fall River v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46285-DAP: Plaintiff Fall River City, Massachusetts

Fall River City's untimely motion for leave to amend should be denied for several reasons. Fall River City failed to provide notice of its proposed amendments through a proposed complaint. Fall River City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fall River City's motion should be denied due to futility, as Fall River City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim

is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fall River City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fall River City amended its complaint on March 15, 2019, after transfer to the MDL on November 30, 2018. *See City of Fall River v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46285-DAP, ECF No. 14. Unlike many other plaintiffs, Fall River City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fall River City's deadline to amend was in 2019. Fall River City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fall River City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fall River City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Fall River City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fall River City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F.

App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fall River City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Fall River City). That insignificant dispensing volume is much too low to support a finding of good cause for Fall River City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fall River City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fall River City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fall River City violated its basic duty to implement a timely litigation hold. Fall River City filed its original complaint on August 20, 2018, but waited until July 9, 2024 to implement a litigation hold—more than five and a half years later. *See City of Fall River v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46285-DAP, ECF No. 2-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 9, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fall River City's case would force the parties and the Court to waste time and resources ascertaining the extent of Fall River City's

document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fall River City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fall River City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fall River City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fall River City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fall River City's proposed RICO claim against the PBMs has expired. Fall River City filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Fall River v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46285-DAP, ECF No. 14. It is therefore indisputable that Fall River City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Fall River

City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fall River City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Fall River City's public-nuisance claim against the PBMs is therefore time-barred because Fall River City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Fall River City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **926.** ***City of Overland Park, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46287-DAP: Plaintiff Overland Park City, Kansas**

Overland Park City's untimely motion for leave to amend should be denied for several reasons. Overland Park City failed to provide notice of its proposed amendments through a proposed complaint. Overland Park City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Overland Park City's motion should be denied due to

futility, as Overland Park City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Overland Park City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Overland Park City amended its complaint on March 14, 2019, after transfer to the MDL on December 3, 2018. *See City of Overland Park, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46287-DAP, ECF No. 21. Unlike many other plaintiffs, Overland Park City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Overland Park City's deadline to amend was in 2019. Overland Park City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Overland Park City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Overland Park City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Overland Park City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Overland Park City filed its original complaint on November 14, 2018. *See City of Overland Park, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46287-DAP, ECF No. 1. Despite filing its case years ago, Overland Park City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Overland Park City's case would force the parties and the Court to waste time and resources ascertaining the extent of Overland Park City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Overland Park City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Overland Park City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kansas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Overland Park City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kansas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Overland Park City, a municipality in Kansas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Overland Park City's proposed RICO claim against the PBMs has expired. Overland Park City filed its original complaint on November 14, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Overland Park, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46287-DAP, ECF No. 1. It is therefore indisputable that Overland Park City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Overland Park City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Overland Park City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Overland Park City, a municipality in Kansas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 927. *People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46294-DAP: Plaintiff Calhoun County, Illinois

Calhoun County's untimely motion for leave to amend should be denied for several reasons. Calhoun County failed to provide notice of its proposed amendments through a proposed complaint. Calhoun County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would

unduly prejudice the PBMs. Moreover, Calhoun County's motion should be denied due to futility, as Calhoun County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calhoun County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calhoun County amended its complaint on March 6, 2019, after directly filing in the MDL. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46294-DAP, ECF No. 2. Unlike many other plaintiffs, Calhoun County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Calhoun County's deadline to amend was in 2019. Calhoun County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Calhoun County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Calhoun County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Calhoun County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Calhoun County fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*
*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery
when the "plaintiff was obviously aware of the basis of the claim for many months, especially
since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006
(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access
to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's
home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to
Calhoun County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson
Decl. (0.09% market share for Calhoun County). That insignificant dispensing volume is much
too low to support a finding of good cause for Calhoun County to add dispensing claims against
OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2,
above.

**Failure to Timely Implement a Litigation Hold.** Calhoun County violated its basic duty
to implement a timely litigation hold. Calhoun County filed its original complaint on December 3,
2018, but waited until September 25, 2024 to implement a litigation hold—more than five and a
half years later. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No.
1:18-op-46294-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented:
September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455.
Litigating Calhoun County's case would force the parties and the Court to waste time and resources
ascertaining the extent of Calhoun County's document destruction and the appropriate sanctions—
just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation
holds until 2024. The PBMs are prejudiced by Calhoun County's disregard for its most basic

discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Calhoun County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calhoun County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Calhoun County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Calhoun County's proposed RICO claim against the PBMs has expired. Calhoun County filed its original complaint on December 3, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46294-DAP, ECF No. 1. It is therefore indisputable that Calhoun County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Calhoun County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Calhoun County's request for leave to amend

to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Calhoun County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 928. *Rockdale County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46296-DAP: Plaintiff Rockdale County, Georgia

Rockdale County's untimely motion for leave to amend should be denied for several reasons. Rockdale County failed to provide notice of its proposed amendments through a proposed complaint. Rockdale County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rockdale County's motion should be denied due to futility, as Rockdale County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rockdale County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rockdale County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Rockdale County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46296-DAP, ECF No. 2. Unlike many other plaintiffs, Rockdale County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rockdale County's deadline to amend was in 2019. Rockdale County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rockdale County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rockdale County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Rockdale County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Rockdale County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rockdale County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Rockdale County). That insignificant dispensing volume is much too low to support a finding of good cause for Rockdale County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rockdale County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rockdale County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Rockdale County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Rockdale County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Rockdale County of this deficiency on September 16, 2024 (*see* Exhibit B), but Rockdale County refused to amend or supplement its Fact Sheet. Under this Court's orders, Rockdale County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Rockdale County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Rockdale County's potential claims against them. Rockdale County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rockdale County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rockdale County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** Rockdale County previously filed an opioid case outside the MDL against the PBMs on March 21, 2023. *See City of Atlanta, GA et al. v. Mylan Pharmaceuticals, Inc., et al.*, Case No. 1:23-cv-01193-JPB, ECF No. 1 (N.D. Ga.). Rockdale County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 147, 148, 150, 151. By suing the PBMs outside the MDL in 2023, Rockdale County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Rockdale County's proposed RICO claim against the PBMs has expired. Rockdale County filed its original complaint on December 4, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rockdale County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46296-DAP, ECF No. 1. It is therefore indisputable that Rockdale County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking

leave to amend. Rockdale County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rockdale County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rockdale County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 929. *Clayton County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46298-DAP: Plaintiff Clayton County, Georgia

Clayton County's untimely motion for leave to amend should be denied for several reasons. Clayton County failed to provide notice of its proposed amendments through a proposed complaint. Clayton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clayton County's motion should be denied due to futility, as Clayton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clayton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clayton County amended its complaint on March 18, 2019, after directly filing in the MDL. *See Clayton County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46298-DAP, ECF No. 2. Unlike many other plaintiffs, Clayton County declined to add claims against the PBMs in its

amended complaint. *See* Section II.A.1, above. Clayton County's deadline to amend was in 2019. Clayton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clayton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clayton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Clayton County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Clayton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clayton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Clayton County). That insignificant dispensing volume is much too

low to support a finding of good cause for Clayton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clayton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clayton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Clayton County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Clayton County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Clayton County of this deficiency on September 16, 2024 (*see* Exhibit B), but Clayton County refused to amend or supplement its Fact Sheet. Under this Court's orders, Clayton County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Clayton County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Clayton County's potential claims against them. Clayton County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clayton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clayton County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** Clayton County previously filed an opioid case outside the MDL against the PBMs on March 21, 2023. *See City of Atlanta, GA et al. v. Mylan Pharmaceuticals, Inc., et al.*, Case No. 1:23-cv-01193-JPB, ECF No. 1 (N.D. Ga.). Clayton County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 147, 148, 150, 151. By suing the PBMs outside the MDL in 2023, Clayton County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Clayton County's proposed RICO claim against the PBMs has expired. Clayton County filed its original complaint on December 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Clayton County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46298-DAP, ECF No. 1. It is therefore indisputable that Clayton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking

leave to amend. Clayton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clayton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clayton County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 930. *Coos County, Oregon v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46300-DAP: Plaintiff Coos County, Oregon

Coos County's untimely motion for leave to amend should be denied for several reasons. Coos County failed to provide notice of its proposed amendments through a proposed complaint. Coos County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Coos County's motion should be denied due to futility, as Coos County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coos County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coos County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Coos County, Oregon v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46300-DAP, ECF No. 2. Unlike many other plaintiffs, Coos County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Coos County's deadline to amend was in 2019. Coos County

waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Coos County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Coos County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Coos County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Coos County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Coos County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Coos County). That insignificant dispensing volume is much too low to support a finding of good cause for Coos County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Coos County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Coos County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Coos County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Coos County, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Coos County's proposed RICO claim against the PBMs has expired. Coos County filed its original complaint on December 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Coos County, Oregon v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46300-DAP, ECF No. 1. It is therefore indisputable that Coos County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend.

Coos County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Coos County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Coos County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 931. *Lewis County, Washington, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46301-DAP: Plaintiff Lewis County, Washington

Lewis County's untimely motion for leave to amend should be denied for several reasons. Lewis County failed to provide notice of its proposed amendments through a proposed complaint. Lewis County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lewis County's motion should be denied due to futility, as Lewis County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lewis County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lewis County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Lewis County, Washington, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46301-DAP, ECF No. 2. Unlike many other plaintiffs, Lewis County declined to add claims against the PBMs

in its amended complaint. *See* Section II.A.1, above. Lewis County's deadline to amend was in 2019. Lewis County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lewis County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lewis County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Lewis County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lewis County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lewis County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.23% market share for Lewis County). That insignificant dispensing volume is much too

low to support a finding of good cause for Lewis County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lewis County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lewis County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lewis County violated its basic duty to implement a timely litigation hold. Lewis County filed its original complaint on December 9, 2018, but waited until February 25, 2021 to implement a litigation hold—more than two years later. *See Lewis County, Washington, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46301-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 25, 2021). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lewis County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lewis County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lewis County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lewis County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lewis County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lewis County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lewis County's proposed RICO claim against the PBMs has expired. Lewis County filed its original complaint on December 9, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lewis County, Washington, et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46301-DAP, ECF No. 1. It is therefore indisputable that Lewis County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Lewis County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lewis County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lewis County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **932.** ***Camden County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46306-DAP: Plaintiff Camden County, New Jersey**

Camden County's untimely motion for leave to amend should be denied for several reasons. Camden County failed to provide notice of its proposed amendments through a proposed complaint. Camden County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Camden County's motion should be denied due to futility, as Camden County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Camden County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Camden County first amended its complaint on April 17, 2018. *See Camden County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46306-DAP, ECF No. 1-1. Unlike many other plaintiffs, Camden County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Camden County's deadline to amend was in 2019. Camden County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Camden County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Camden County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Camden County). That insignificant dispensing volume is much too low to support a finding of good cause for Camden County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Camden County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Camden County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Camden County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Camden County of the PBM services Express Scripts provides and Camden County began receiving those services on February 24, 2006. *See id.* Inasmuch as Camden County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Camden County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above.

Camden County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Camden County filed its original complaint on February 21, 2018. *See Camden County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46306-DAP, ECF No. 1-1. Despite filing its case years ago, Camden County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Camden County's case would force the parties and the Court to waste time and resources ascertaining the extent of Camden County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Camden County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Camden County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Camden County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Camden County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Camden County of this deficiency on September 16, 2024 (*see* Exhibit B), but Camden County refused to amend or supplement its Fact Sheet. Under this Court's orders, Camden County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF

No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Camden County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Camden County's potential claims against them. Camden County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Camden County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Camden County, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Camden County's proposed RICO claim against the PBMs has expired. Camden County filed its original complaint on February 21, 2018, alleging the same type of injuries *and* alleging a New Jersey RICO claim against other defendants. *See Camden County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46306-DAP, ECF No. 1-1. It is therefore indisputable that Camden County knew of its

RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. *See State v. Ball*, 632 A.2d 1222, 1235 (N.J. Super. Ct. App. Div. 1993) (explaining that New Jersey's "Little RICO" statute is analogous to the federal RICO statute). Camden County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Camden County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Camden County, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 933. *City of Hickory v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46307-DAP: Plaintiff Hickory City, North Carolina

Hickory City's untimely motion for leave to amend should be denied for several reasons. Hickory City failed to provide notice of its proposed amendments through a proposed complaint. Hickory City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hickory City's motion should be denied due to futility, as Hickory City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hickory City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hickory City amended its complaint on March 13, 2019, after transfer to the MDL on December

10, 2018,. *See City of Hickory v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46307-DAP, ECF No. 5. Unlike many other plaintiffs, Hickory City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hickory City's deadline to amend was in 2019. Hickory City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hickory City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hickory City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hickory City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hickory City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hickory City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Hickory City). That insignificant dispensing volume is much too low to support a finding of good cause for Hickory City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hickory City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hickory City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hickory City filed its original complaint on November 19, 2018. *See City of Hickory v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46307-DAP, ECF No. 1. Despite filing its case years ago, Hickory City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hickory City's case would force the parties and the Court to waste time and resources ascertaining the extent of Hickory City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hickory City's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Hickory City therefore lacks good cause

for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents

or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right

to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hickory City's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under North Carolina law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*,

2020 WL 6827791, at *28.

**Failure to State a Claim.** Hickory City, a municipality in North Carolina, has not pleaded

any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from

another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hickory City's proposed

RICO claim against the PBMs has expired. Hickory City filed its original complaint on November

19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See City of Hickory v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46307-

DAP, ECF No. 1. It is therefore indisputable that Hickory City knew of its RICO injury, at the

very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking

leave to amend. Hickory City's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Hickory City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hickory City, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 934. *City of Portland v. Purdue Pharma LP et al.*, **Case No. 1:18-op-46313-DAP: Plaintiff Portland City, Maine**

Portland City's untimely motion for leave to amend should be denied for several reasons. Portland City failed to provide notice of its proposed amendments through a proposed complaint. Portland City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Portland City's motion should be denied due to futility, as Portland City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Portland City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Portland City first amended its complaint on June 18, 2018. *See City of Portland v. Purdue Pharma LP et al.*, Case No. 1:18-op-46313-DAP, ECF No. 6-32. Portland City amended its complaint again on March 18, 2019. *See City of Portland v. Purdue Pharma LP et al.*, Case No. 1:18-op-46313-DAP, ECF No. 100. Unlike many other plaintiffs, Portland City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Portland City's deadline to amend was in 2019. Portland City waited five years after its deadline to amend to seek leave to assert

claims against the PBMs. Portland City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Portland City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Portland City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Portland City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Portland City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Portland City). That insignificant dispensing volume is much too low to support a finding of good cause for Portland City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Portland City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Portland City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Portland City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Portland City of the PBM services Express Scripts provides and Portland City began receiving those services on July 27, 2009. *See id.* Inasmuch as Portland City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Portland City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Portland City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Portland City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Portland City, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Portland City is a plaintiff in Maine. Portland City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Portland City's proposed RICO claim against the PBMs has expired. Portland City filed its second amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Portland v. Purdue Pharma LP et al.*, Case No. 1:18-op-46313-DAP, ECF No. 100. It is therefore indisputable that Portland City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Portland City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Portland City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Portland City, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **935.** ***City of Bangor v. Purdue Pharma LP et al.*, Case No. 1:18-op-46314-DAP: Plaintiff Bangor City, Maine**

Bangor City's untimely motion for leave to amend should be denied for several reasons. Bangor City failed to provide notice of its proposed amendments through a proposed complaint. Bangor City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bangor City's motion should be denied due to futility, as Bangor City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bangor City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bangor City first amended its complaint on July 26, 2018. *See City of Bangor v. Purdue Pharma LP et al.*, Case No. 1:18-op-46314-DAP, ECF No. 1-2. Bangor City amended its complaint again on March 15, 2019. *See City of Bangor v. Purdue Pharma LP et al.*, Case No. 1:18-op-46314-DAP, ECF No. 115. Unlike many other plaintiffs, Bangor City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Bangor City's deadline to amend was in 2019. Bangor City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bangor City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bangor City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Bangor City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bangor City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bangor City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.0009% market share for Bangor City). That insignificant dispensing volume is much too low to support a finding of good cause for Bangor City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bangor City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bangor City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bangor City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bangor City, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Bangor City is a plaintiff in Maine. Bangor City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Bangor City's proposed RICO claim against the PBMs has expired. Bangor City filed its second amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Bangor v. Purdue Pharma LP et al.*, Case No. 1:18-op-46314-DAP, ECF No. 115. It is therefore indisputable that Bangor City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Bangor City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13

(holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bangor City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bangor City, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 936. *City of Lewiston v. Purdue Pharma LP et al.*, **Case No. 1:18-op-46315-DAP: Plaintiff Lewiston City, Maine**

Lewiston City's untimely motion for leave to amend should be denied for several reasons. Lewiston City failed to provide notice of its proposed amendments through a proposed complaint. Lewiston City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lewiston City's motion should be denied due to futility, as Lewiston City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lewiston City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lewiston City first amended its complaint on July 26, 2018. *See City of Lewiston v. Purdue Pharma LP et al.*, Case No. 1:18-op-46315-DAP, ECF No. 1-2. Lewiston City amended its complaint again on March 18, 2019. *See City of Lewiston v. Purdue Pharma LP et al.*, Case No. 1:18-op-46315-DAP, ECF No. 93. Unlike many other plaintiffs, Lewiston City declined to add

claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Lewiston City's deadline to amend was in 2019. Lewiston City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lewiston City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lewiston City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Lewiston City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lewiston City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lewiston City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.01% market share for Lewiston City). That insignificant dispensing volume is much too low to support a finding of good cause for Lewiston City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lewiston City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lewiston City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lewiston City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lewiston City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lewiston City of this deficiency on September 16, 2024 (*see* Exhibit B), but Lewiston City refused to amend or supplement its Fact Sheet. Under this Court's orders, Lewiston City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lewiston City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lewiston City's potential claims against them. Lewiston City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lewiston City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lewiston City, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lewiston City is a plaintiff in Maine. Lewiston City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lewiston City's proposed RICO claim against the PBMs has expired. Lewiston City filed its second amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lewiston v. Purdue Pharma LP et al.*, Case No. 1:18-op-46315-DAP, ECF No. 93. It is therefore indisputable that Lewiston City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lewiston City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury,

not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lewiston City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lewiston City, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

937. ***Washington County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46317-DAP: Plaintiff Washington County, Tennessee**

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County amended its complaint on March 11, 2019, after transfer to the MDL on December 11, 2018. *See Washington County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46317-DAP, ECF No. 8. Unlike many other plaintiffs, Washington County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Washington County's deadline to amend was in 2019. Washington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs.

Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Washington County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Washington County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Washington County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Washington County). That insignificant dispensing

volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Washington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its original complaint on November 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Washington County, Tennessee v. Amerisourcebergen Drug*

*Corporation et al.*, Case No. 1:18-op-46317-DAP, ECF No. 1. It is therefore indisputable that Washington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Washington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washington County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

938. ***Lauderdale County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46324-DAP: Plaintiff Lauderdale County, Tennessee**

Lauderdale County's untimely motion for leave to amend should be denied for several reasons. Lauderdale County failed to provide notice of its proposed amendments through a proposed complaint. Lauderdale County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lauderdale County's motion should be denied due to futility, as Lauderdale County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lauderdale County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

3499

Moreover, Lauderdale County amended its complaint on March 8, 2019, after transfer to the MDL on December 6, 2018. *See Lauderdale County, Tennessee v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:18-op-46324-DAP, ECF No. 9. Unlike many other plaintiffs, Lauderdale County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lauderdale County's deadline to amend was in 2019. Lauderdale County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lauderdale County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lauderdale County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lauderdale County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lauderdale County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lauderdale County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Lauderdale County). That insignificant dispensing volume is much too low to support a finding of good cause for Lauderdale County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lauderdale County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lauderdale County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lauderdale County violated its basic duty to implement a timely litigation hold. Lauderdale County filed its original complaint on November 19, 2018, but waited until December 13, 2019 to implement a litigation hold—more than a year later. *See Lauderdale County, Tennessee v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-46324-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lauderdale County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lauderdale County's document destruction and the appropriate

sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lauderdale County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lauderdale County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lauderdale County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lauderdale County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lauderdale County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lauderdale County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lauderdale County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lauderdale County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lauderdale County's potential claims against them. Lauderdale County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lauderdale County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lauderdale County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lauderdale County's proposed RICO claim against the PBMs has expired. Lauderdale County filed its original complaint on November 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lauderdale County, Tennessee v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:18-op-46324-DAP, ECF No. 1. It is therefore indisputable that Lauderdale County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Lauderdale County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lauderdale County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lauderdale County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **939.** ***Montgomery County Board of County Commissioners et al. v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-46326-DAP: Plaintiff Montgomery County, Ohio**

Montgomery County's untimely motion for leave to amend should be denied for several reasons. Montgomery County failed to provide notice of its proposed amendments through a proposed complaint. Montgomery County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Montgomery County's motion should be denied due to futility, as Montgomery County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Montgomery County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Montgomery County amended its complaint on March 15, 2019, after transfer to the MDL on December 13, 2018, as well as on May 19, 2021. *See Montgomery County Board of County Commissioners et al. v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-46326-DAP, ECF Nos. 27, 37, 46. Unlike many other plaintiffs, Montgomery County declined to add claims against the PBMs in its amended complaints before its deadline to amend in 2019. *See* Section II.A.1, above. Montgomery County was then provided another opportunity to amend its complaint when it was selected as a pharmacy bellwether in 2021, ECF No. 3688, yet it still failed to add any PBMs. *See Montgomery County Board of County Commissioners et al. v. Cardinal Health, Inc. et*

*al.*, Case No. 1:18-op-46326-DAP, ECF No. 46. Montgomery County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Montgomery County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Montgomery County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Montgomery County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Montgomery County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Montgomery County). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Montgomery County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Montgomery County of the PBM services Express Scripts provides and Montgomery County began receiving those services on July 1, 2011. *See id.* Inasmuch as Montgomery County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Montgomery County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Montgomery County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Montgomery County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Montgomery County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Montgomery County of this deficiency on September 16, 2024 (*see* Exhibit B), but Montgomery County refused to amend or supplement its Fact Sheet. Under this Court's orders, Montgomery County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Montgomery County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Montgomery County's potential claims against

them. Montgomery County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Montgomery County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Montgomery County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Montgomery County is a plaintiff in Ohio. Montgomery County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Montgomery County's proposed RICO claim against the PBMs has expired. Montgomery County filed its original

complaint on July 25, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Montgomery County Board of County Commissioners et al. v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-46326-DAP, ECF No. 1-3. Indeed, Montgomery County has previously used those same factual allegations to assert a RICO claim against *other* Defendants, but it declined to assert such a RICO claim against the PBMs. *Montgomery County Board of County Commissioners et al. v. Cardinal Health, Inc. et al.*, Case No. 1:18-op-46326-DAP, ECF No. 46. Even assuming *arguendo* that Montgomery County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on July 25. 2022. Montgomery County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Montgomery County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Montgomery County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 940. *Davidson County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46330-DAP: Plaintiff Davidson County, North Carolina

Davidson County's untimely motion for leave to amend should be denied for several reasons. Davidson County failed to provide notice of its proposed amendments through a proposed complaint. Davidson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Davidson County's motion should be denied due to futility, as

Davidson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Davidson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Davidson County amended its complaint on March 15, 2019, after transfer to the MDL on December 14, 2018. *See Davidson County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46330-DAP, ECF No. 11. Unlike many other plaintiffs, Davidson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Davidson County's deadline to amend was in 2019. Davidson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Davidson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Davidson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Davidson County). That insignificant dispensing volume is much too low to support a finding of good cause for Davidson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Davidson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Davidson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Davidson County filed its original complaint on November 27, 2018. *See Davidson County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46330-DAP, ECF No. 1. Despite filing its case years ago, Davidson County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Davidson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Davidson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Davidson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Davidson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Davidson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Davidson County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Davidson County's proposed RICO claim against the PBMs has expired. Davidson County filed its original complaint on November 27, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Davidson County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46330-DAP, ECF No. 1. It is therefore indisputable that Davidson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Davidson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Davidson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Davidson County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**941.** *City of Bradenton v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:18-op-46331-DAP: Plaintiff Bradenton City, Florida**

Bradenton City's untimely motion for leave to amend should be denied for several reasons. Bradenton City failed to provide notice of its proposed amendments through a proposed complaint. Bradenton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bradenton City's motion should be denied due to futility, as Bradenton City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bradenton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bradenton City amended its complaint on March 15, 2019, after transfer to the MDL on December 14, 2018. *See City of Bradenton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46331-DAP, ECF No. 8. Unlike many other plaintiffs, Bradenton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bradenton City's deadline to amend was in 2019. Bradenton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bradenton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bradenton City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bradenton City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bradenton City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bradenton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.45% market share for Bradenton City). That insignificant dispensing volume is much too low to support a finding of good cause for Bradenton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bradenton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bradenton City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bradenton City of this deficiency on September 16, 2024 (*see* Exhibit B), but Bradenton City refused to amend or supplement its Fact Sheet. Under this Court's orders, Bradenton City's

case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bradenton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Bradenton City's potential claims against them. Bradenton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bradenton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bradenton City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bradenton City's proposed RICO claim against the PBMs has expired. Bradenton City filed its original complaint on November 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Bradenton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46331-DAP, ECF No. 1. It is therefore indisputable that Bradenton City knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Bradenton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bradenton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Bradenton City's public-nuisance claim against the PBMs is therefore time-barred because Bradenton City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on November 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Bradenton City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **942.** ***Commissioners of St. Mary's County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46334-DAP: Plaintiff St. Marys County, Maryland**

St. Marys County's untimely motion for leave to amend should be denied for several reasons. St. Marys County failed to provide notice of its proposed amendments through a proposed complaint. St. Marys County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, St.

Marys County's motion should be denied due to futility, as St. Marys County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Marys County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Marys County amended its complaint on March 15, 2019, after transfer to the MDL on December 14, 2018. *See Commissioners of St. Mary's County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46334-DAP, ECF No. 8. Unlike many other plaintiffs, St. Marys County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Marys County's deadline to amend was in 2019. St. Marys County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Marys County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** St. Marys County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. St. Marys County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. St. Marys County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Marys County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for St. Marys County). That insignificant dispensing volume is much too low to support a finding of good cause for St. Marys County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Marys County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Marys County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Marys County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Marys County, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Marys County's proposed RICO claim against the PBMs has expired. St. Marys County filed its original complaint on November 23, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Commissioners of St. Mary's County, Maryland v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:18-op-46334-DAP, ECF No. 1. It is therefore indisputable that St. Marys County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. St. Marys County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Marys County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. St. Marys County's public-nuisance claim against the PBMs is

therefore time-barred because St. Marys County sought leave to amend its complaint on July 29,

2024—six years after filing its original complaint on November 23, 2018—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing

for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** St. Marys County, a municipality in Maryland, lacks standing

to state a claim for relief under any of the New York laws referenced in the City of Rochester's

complaint. *See* Section III.B.6, above.

> **943.** ***City of Albany Georgia v. AmerisourceBergen Drug Corporation et al.*,
> Case No. 1:18-op-46337-DAP: Plaintiff Albany City, Georgia**

Albany City's untimely motion for leave to amend should be denied for several reasons.

Albany City failed to provide notice of its proposed amendments through a proposed complaint.

Albany City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

timely implement a litigation hold, and because its untimely motion would unduly prejudice the

PBMs. Moreover, Albany City's motion should be denied due to futility, as Albany City does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute

of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Albany City was on notice of its claims against the PBMs for years but

failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Albany City amended its complaint on March 15, 2019, after transfer to the MDL on December

17, 2018. *See City of Albany Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No.

1:18-op-46337-DAP, ECF No. 5. Unlike many other plaintiffs, Albany City declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Albany City's deadline to

amend was in 2019. Albany City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Albany City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Albany City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Albany City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Albany City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Albany City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Albany City). That insignificant dispensing volume is much too

low to support a finding of good cause for Albany City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Albany City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Albany City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Albany City violated its basic duty to implement a timely litigation hold. Albany City filed its original complaint on November 20, 2018, but waited until December 13, 2019 to implement a litigation hold—more than a year later. *See City of Albany Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46337-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Albany City's case would force the parties and the Court to waste time and resources ascertaining the extent of Albany City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Albany City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Albany City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Albany City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Albany City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Albany City's proposed RICO claim against the PBMs has expired. Albany City filed its original complaint on November 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Albany Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46337-DAP, ECF No. 1. It is therefore indisputable that Albany City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Albany City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Albany City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Albany City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **944.** ***City of Findlay v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46339-DAP: Plaintiff Findlay City, Ohio**

Findlay City's untimely motion for leave to amend should be denied for several reasons. Findlay City failed to provide notice of its proposed amendments through a proposed complaint. Findlay City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Findlay City's motion should be denied due to futility, as Findlay City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Findlay City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Findlay City amended its complaint on March 18, 2019, after the case was removed to the MDL on December 17, 2018. *See City of Findlay v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46339-DAP, ECF No. 5. Unlike many other plaintiffs, Findlay City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Findlay City's deadline to amend was in 2019. Findlay City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Findlay City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Findlay City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Findlay City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Findlay City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Findlay City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Findlay City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Findlay City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Findlay City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Findlay City). That insignificant dispensing volume is much too low to support a finding of good cause for Findlay City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Findlay City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Findlay City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Findlay City of this deficiency on September 16, 2024 (*see* Exhibit B), but Findlay City refused to amend or supplement its Fact Sheet. Under this Court's orders, Findlay City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Findlay City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Findlay City's potential claims against them. Findlay City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Findlay City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Findlay City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Findlay City is a plaintiff in Ohio. Findlay City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Findlay City's proposed RICO claim against the PBMs has expired. Findlay City filed its amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Findlay v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46339-DAP, ECF No. 5. It is therefore indisputable that Findlay City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Findlay City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above.

Findlay City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Findlay City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

945. ***Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46344-DAP: Plaintiff Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties, Ohio**

Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' untimely motion for leave to amend should be denied for several reasons. Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties failed to provide notice of its proposed amendments through a proposed complaint. Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' motion should be denied due to futility, as Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mental Health &

Recovery Services Board of Allen, Auglaize and Hardin Counties amended its complaint on March 16, 2019, after directly filing in the MDL. *See Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46344-DAP, ECF No. 2. Unlike many other plaintiffs, Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' deadline to amend was in 2019. Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties filed its original complaint on December 19, 2018. *See Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46344-DAP, ECF No. 1. Despite filing its case years ago, Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' case would force the parties

and the Court to waste time and resources ascertaining the extent of Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties, a hospital in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties is a plaintiff in Ohio. Mental Health & Recovery Services

Board of Allen, Auglaize and Hardin Counties' request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' proposed RICO claim against the PBMs has expired. Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties filed its original complaint on December 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46344-DAP, ECF No. 1. It is therefore indisputable that Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mental Health & Recovery Services Board of Allen, Auglaize and Hardin Counties, a hospital in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **946.** *City of Van Wert v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:18-op-46345-DAP: Plaintiff Van Wert City, Ohio**

Van Wert City's untimely motion for leave to amend should be denied for several reasons. Van Wert City failed to provide notice of its proposed amendments through a proposed complaint. Van Wert City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Van Wert City's motion should be denied due to futility, as Van Wert City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Van Wert City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Van Wert City amended its complaint on March 16, 2019, after directly filing in the MDL. *See City of Van Wert v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46345-DAP, ECF No. 2. Unlike many other plaintiffs, Van Wert City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Van Wert City's deadline to amend was in 2019. Van Wert City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Van Wert City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Van Wert City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Van Wert City). That insignificant dispensing volume is much too low to support a finding of good cause for Van Wert City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Van Wert City filed its original complaint on December 19, 2018. *See City of Van Wert v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46345-DAP, ECF No. 1. Despite filing its case years ago, Van Wert City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Van Wert City's case would force the parties and the Court to waste time and resources ascertaining the extent of Van Wert City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Van Wert City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Van Wert City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Van Wert City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Van Wert City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Van Wert City is a plaintiff in Ohio. Van Wert City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Van Wert City's proposed RICO claim against the PBMs has expired. Van Wert City filed its original complaint on December 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Van Wert v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46345-DAP, ECF No. 1. It is therefore indisputable that Van Wert City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Van Wert City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Van Wert City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Van Wert City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

947. ***Webster County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46350-DAP: Plaintiff Webster County, Missouri**

Webster County's untimely motion for leave to amend should be denied for several reasons. Webster County failed to provide notice of its proposed amendments through a proposed complaint. Webster County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Webster County's motion should be denied due to futility, as Webster County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Webster County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Webster County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Webster County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46350-DAP, ECF No. 2. Unlike many other plaintiffs, Webster County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Webster County's deadline to amend was in 2019. Webster County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Webster County's lack of diligence in pursuing its claims negates any finding of good

cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Webster County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Webster County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Webster County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Webster County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Webster County). That insignificant dispensing volume is much too low to support a finding of good cause for Webster County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Webster County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Webster County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Webster County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Webster County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Webster County of this deficiency on September 16, 2024 (*see* Exhibit B), but Webster County refused to amend or supplement its Fact Sheet. Under this Court's orders, Webster County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Webster County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Webster County's potential claims against them. Webster County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Webster County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Webster County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Webster County's proposed RICO claim against the PBMs has expired. Webster County filed its original complaint on December 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Webster County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46350-DAP, ECF No. 1. It is therefore indisputable that Webster County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Webster County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Webster County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Webster County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 948. *City of Norwalk v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46351-DAP: Plaintiff Norwalk City, Ohio

Norwalk City's untimely motion for leave to amend should be denied for several reasons. Norwalk City failed to provide notice of its proposed amendments through a proposed complaint. Norwalk City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Norwalk City's motion should be denied due to futility, as Norwalk City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Norwalk City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Norwalk City filed its original complaint on November 27, 2018 and the case was removed to the MDL on December 21, 2018. *See City of Norwalk v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46351-DAP, ECF No. 1. Norwalk City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Norwalk City elected not to do so. Instead, Norwalk City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Norwalk City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Norwalk City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Norwalk City). That insignificant dispensing volume is much too low to support a finding of good cause for Norwalk City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Norwalk City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Norwalk City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Norwalk City filed its original complaint on November 27, 2018. *See City of Norwalk v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46351-DAP, ECF No. 1-2. Despite filing its case years ago, Norwalk City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Norwalk City's case would force the parties and the Court to waste time and resources ascertaining the extent of Norwalk City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM

bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Norwalk City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Norwalk City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Norwalk City has *never* served a Plaintiff Fact Sheet. Norwalk City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Norwalk City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Norwalk City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Norwalk City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Norwalk City is a plaintiff in Ohio. Norwalk City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Norwalk City's proposed RICO claim against the PBMs has expired. Norwalk City filed its original complaint on November 27, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Norwalk v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46351-DAP, ECF No. 1-2. Even assuming *arguendo* that Norwalk City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 27, 2022. Norwalk City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Norwalk City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Norwalk City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

949. ***Moniteau County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46352-DAP: Plaintiff Moniteau County, Missouri**

Moniteau County's untimely motion for leave to amend should be denied for several reasons. Moniteau County failed to provide notice of its proposed amendments through a proposed complaint. Moniteau County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Moniteau County's motion should be denied due to futility, as Moniteau County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Moniteau County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Moniteau County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Moniteau County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46352-DAP, ECF No. 2. Unlike many other plaintiffs, Moniteau County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Moniteau County's deadline to amend was in 2019. Moniteau County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Moniteau County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

3542

**Prior Notice Through Counsel.** Moniteau County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Moniteau County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Moniteau County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Moniteau County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Moniteau County). That insignificant dispensing volume is much too low to support a finding of good cause for Moniteau County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Moniteau County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Moniteau County's health plans,

carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Moniteau County of this deficiency on September 16, 2024 (*see* Exhibit B), but Moniteau County refused to amend or supplement its Fact Sheet. Under this Court's orders, Moniteau County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Moniteau County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Moniteau County's potential claims against them. Moniteau County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Moniteau County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Moniteau County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Moniteau County's proposed RICO claim against the PBMs has expired. Moniteau County filed its original complaint on December 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Moniteau County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46352-DAP, ECF No. 1. It is therefore indisputable that Moniteau County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Moniteau County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Moniteau County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Moniteau County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

950. ***Hillsborough County, New Hampshire, v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46353-DAP: Plaintiff Hillsborough County, New Hampshire**

Hillsborough County's untimely motion for leave to amend should be denied for several reasons. Hillsborough County failed to provide notice of its proposed amendments through a proposed complaint. Hillsborough County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hillsborough County's motion should be denied due to futility, as Hillsborough County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hillsborough County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hillsborough County amended its complaint on March 18, 2019, after directly filing in the MDL. *See Hillsborough County, New Hampshire, v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46353-DAP, ECF No. 2. Unlike many other plaintiffs, Hillsborough County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hillsborough County's deadline to amend was in 2019. Hillsborough County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hillsborough County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hillsborough County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Hillsborough County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hillsborough County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part

because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hillsborough County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Hillsborough County). That insignificant dispensing volume is much too low to support a finding of good cause for Hillsborough County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hillsborough County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hillsborough County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hillsborough County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hillsborough County, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hillsborough County's proposed RICO claim against the PBMs has expired. Hillsborough County filed its original complaint on December 24, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hillsborough County, New Hampshire, v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-46353-DAP, ECF No. 1. It is therefore indisputable that Hillsborough County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Hillsborough County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hillsborough County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hillsborough County, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 951. *City of Utica, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46359-DAP: Plaintiff Utica City, New York

Utica City's untimely motion for leave to amend should be denied for several reasons. Utica City failed to provide notice of its proposed amendments through a proposed complaint. Utica City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Utica City's motion should be denied due to futility and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Utica City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Utica City amended its complaint on March 5, 2019, after transfer to the MDL on December 27, 2018. *See City of Utica, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46359-DAP, ECF No. 42. Unlike many other plaintiffs, Utica City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Utica City's deadline to amend was in 2019. Utica City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Utica City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Utica City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Utica City). That insignificant dispensing volume is much too low to support a finding of good cause for Utica City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Utica City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Utica City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Utica City filed its original complaint on November 30, 2018. *See City of Utica, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46359-DAP, ECF No. 1. Despite filing its case years ago, Utica City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Utica City's case would force the parties and the Court to waste time and resources ascertaining the extent of Utica City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Utica City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Utica City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Utica City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Utica City's proposed RICO claim against the PBMs has expired. Utica City filed its original complaint on November 30, 2018,

alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Utica, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-46359-DAP, ECF No. 1. It is therefore indisputable that Utica City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Utica City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Utica City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Utica City, a city in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Utica City's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 952. *Anson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46364-DAP: Plaintiff Anson County, North Carolina

Anson County's untimely motion for leave to amend should be denied for several reasons. Anson County failed to provide notice of its proposed amendments through a proposed complaint. Anson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Anson County's motion should be denied due to futility, as Anson County does not assert any allegations tying the

PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Anson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Anson County amended its complaint on March 13, 2019, after transfer to the MDL on December 28, 2018. *See Anson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46364-DAP, ECF No. 5. Unlike many other plaintiffs, Anson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Anson County's deadline to amend was in 2019. Anson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Anson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Anson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Anson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Anson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Anson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Anson County). That insignificant dispensing volume is much too low to support a finding of good cause for Anson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Anson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Anson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Anson County violated its basic duty to implement a timely litigation hold. Anson County filed its original complaint on December 6, 2018, but waited until September 25, 2024 to implement a litigation hold—nearly six years later. *See Anson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46364-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Anson County's

case would force the parties and the Court to waste time and resources ascertaining the extent of Anson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Anson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Anson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Anson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Anson County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

 **RICO Statute of Limitations.** The statute of limitations for Anson County's proposed RICO claim against the PBMs has expired. Anson County filed its original complaint on December 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Anson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:18-op-46364-DAP, ECF No. 1. It is therefore indisputable that Anson County knew of its RICO injury, at the very

latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Anson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Anson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Anson County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 953. *County of Kent, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45000-DAP: Plaintiff Kent County, Michigan

Kent County's untimely motion for leave to amend should be denied for several reasons. Kent County failed to provide notice of its proposed amendments through a proposed complaint. Kent County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kent County's motion should be denied due to futility, as Kent County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kent County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kent County amended its complaint on March 16, 2019, after directly filing in the MDL. *See County of Kent, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45000-DAP, ECF No. 19. Unlike many other plaintiffs, Kent County declined to add claims against the PBMs in its

amended complaint. *See* Section II.A.1, above. Kent County's deadline to amend was in 2019. Kent County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kent County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kent County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Kent County). That insignificant dispensing volume is much too low to support a finding of good cause for Kent County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kent County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kent County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kent County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kent County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kent County's proposed RICO claim against the PBMs has expired. Kent County filed its original complaint on January 3, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Kent, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45000-DAP, ECF No. 1. It is therefore indisputable that Kent County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Kent County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kent County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kent County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**954.** ***Camden County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45001-DAP: Plaintiff Camden County, North Carolina**

Camden County's untimely motion for leave to amend should be denied for several reasons. Camden County failed to provide notice of its proposed amendments through a proposed complaint. Camden County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Camden County's motion should be denied due to futility, as Camden County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Camden County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Camden County amended its complaint on April 8, 2019, after transfer to the MDL on January 7, 2019. *See Camden County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45001-DAP, ECF No. 5. Unlike many other plaintiffs, Camden County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Camden County's deadline to amend was in 2019. Camden County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Camden County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Camden County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Camden County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Camden County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Camden County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.29% market share for Camden County). That insignificant dispensing volume is much too low to support a finding of good cause for Camden County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Camden County filed its original complaint on December 6, 2018. *See Camden County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45001-DAP, ECF No. 1. Despite filing its case years ago, Camden County *never*

implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Camden County's case would force the parties and the Court to waste time and resources ascertaining the extent of Camden County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Camden County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Camden County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Camden County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Camden County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Camden County's proposed RICO claim against the PBMs has expired. Camden County filed its original complaint on

December 6, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Camden County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45001-DAP, ECF No. 1. It is therefore indisputable that Camden County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Camden County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Camden County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Camden County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **955.** ***Washington County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45002-DAP: Plaintiff Washington County, North Carolina**

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County amended its complaint on March 13, 2019, after transfer to the MDL on January 7, 2019. *See Washington County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45002-DAP, ECF No. 5. Unlike many other plaintiffs, Washington County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Washington County's deadline to amend was in 2019. Washington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Washington County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Washington County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Washington County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Washington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Washington County violated its basic duty to implement a timely litigation hold. Washington County filed its original complaint on December 10, 2018, but waited until December 16, 2019 to implement a litigation hold—one year later. *See Washington County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45002-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 16, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating

Washington County's case would force the parties and the Court to waste time and resources ascertaining the extent of Washington County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Washington County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Washington County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its original complaint on December 10, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Washington County v. AmerisourceBergen Drug Corporation et al.*,

Case No. 1:19-op-45002-DAP, ECF No. 1. It is therefore indisputable that Washington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Washington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washington County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 956. *Madison County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45006-DAP: Plaintiff Madison County, Alabama

Madison County's untimely motion for leave to amend should be denied for several reasons. Madison County failed to provide notice of its proposed amendments through a proposed complaint. Madison County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Madison County's motion should be denied due to futility, as Madison County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Madison County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Madison County amended its complaint on April 15, 2019, after transfer to the MDL on January

15, 2019. *See Madison County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45006-DAP, ECF No. 39. Unlike many other plaintiffs, Madison County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Madison County's deadline to amend was in 2019. Madison County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Madison County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Madison County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Madison County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Madison County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Madison County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Madison County). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Madison County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Madison County violated its basic duty to implement a timely litigation hold. Madison County filed its original complaint on December 10, 2018, but waited until December 19, 2019 to implement a litigation hold—one year later. *See Madison County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45006-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 19, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Madison County's case would force the parties and the Court to waste time and resources ascertaining the extent of Madison County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Madison County's disregard for its most basic discovery

obligations as a litigant, compounded by the delay in seeking leave to amend, and Madison County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Madison County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Madison County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Madison County's proposed RICO claim against the PBMs has expired. Madison County filed its original complaint on December 10, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Madison County, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45006-DAP, ECF No. 1. It is therefore indisputable that Madison County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Madison County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Madison County's request for leave to amend

to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Madison County's public-nuisance claim against the PBMs is therefore time-barred because Madison County sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on December 10, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Madison County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Madison County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 957.  *City of Quincy v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45008-DAP: Plaintiff Quincy City, Massachusetts

Quincy City's untimely motion for leave to amend should be denied for several reasons. Quincy City failed to provide notice of its proposed amendments through a proposed complaint. Quincy City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Quincy City's motion should be denied due to futility, as Quincy City does not assert

any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Quincy City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Quincy City amended its complaint on March 15, 2019, after transfer to the MDL on January 16, 2019. *See City of Quincy v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45008-DAP, ECF No. 14. Unlike many other plaintiffs, Quincy City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Quincy City's deadline to amend was in 2019. Quincy City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Quincy City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Quincy City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Quincy City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Quincy City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Quincy City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Quincy City). That insignificant dispensing volume is much too low to support a finding of good cause for Quincy City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Quincy City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Quincy City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Quincy City filed its original complaint on August 23, 2018. *See City of Quincy v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45008-DAP, ECF No. 1-1. Despite filing its case years ago, Quincy City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Quincy City's case would force the parties and the Court to waste time and resources ascertaining the extent of Quincy City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that

failed to implement litigation holds until 2024. The PBMs are prejudiced by Quincy City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Quincy City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Quincy City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Quincy City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Quincy City's proposed RICO claim against the PBMs has expired. Quincy City filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Quincy v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45008-DAP, ECF No. 14. It is therefore indisputable that Quincy City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Quincy City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13

(holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Quincy City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Quincy City's public-nuisance claim against the PBMs is therefore time-barred because Quincy City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on August 23, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Quincy City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **958.** *City of Clearwater in the County of Pinellas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45009-DAP: Plaintiff Clearwater City, Florida

Clearwater City's untimely motion for leave to amend should be denied for several reasons. Clearwater City failed to provide notice of its proposed amendments through a proposed complaint. Clearwater City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clearwater City's motion should be denied due to futility, as Clearwater City does not assert any allegations tying the PBMs to its alleged harm, its proposed

public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clearwater City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clearwater City amended its complaint on March 15, 2019, after transfer to the MDL on January 17, 2019. *See City of Clearwater in the County of Pinellas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45009-DAP, ECF No. 27. Unlike many other plaintiffs, Clearwater City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Clearwater City's deadline to amend was in 2019. Clearwater City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clearwater City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clearwater City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Clearwater City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Clearwater City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clearwater City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.40% market share for Clearwater City). That insignificant dispensing volume is much too low to support a finding of good cause for Clearwater City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Clearwater City filed its original complaint on November 15, 2018. *See City of Clearwater in the County of Pinellas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45009-DAP, ECF No. 1-1. Despite filing its case years ago, Clearwater City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Clearwater City's case would force the parties and the Court to waste time and resources ascertaining the extent of Clearwater City's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clearwater City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clearwater City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020

WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clearwater City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clearwater City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clearwater City's proposed RICO claim against the PBMs has expired. Clearwater City filed its amended complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Clearwater in the County of Pinellas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45009-DAP, ECF No. 27. It is therefore indisputable that Clearwater City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Clearwater City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clearwater City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Clearwater City's public-nuisance claim against the PBMs is therefore time-barred because Clearwater City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on November 15, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Clearwater City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 959. *City of Saint Martinville v. AmerisourceBergen Corp et al.*, Case No. 1:19-op-45013-DAP: Plaintiff St. Martinville City, Louisiana

St. Martinville City's untimely motion for leave to amend should be denied for several reasons. St. Martinville City failed to provide notice of its proposed amendments through a proposed complaint. St. Martinville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Martinville City's motion should be denied due to futility, as St. Martinville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Martinville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Martinville City amended its complaint on March 13, 2019, after transfer to the

3577

MDL on January 18, 2019. *See City of Saint Martinville v. AmerisourceBergen Corp et al.*, Case No. 1:19-op-45013-DAP, ECF No. 7. Unlike many other plaintiffs, St. Martinville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Martinville City's deadline to amend was in 2019. St. Martinville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Martinville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** St. Martinville City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. St. Martinville City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. St. Martinville City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Martinville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for St. Martinville City). That insignificant dispensing volume is much too low to support a finding of good cause for St. Martinville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Martinville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Martinville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Martinville City filed its original complaint on December 19, 2018. *See City of Saint Martinville v. AmerisourceBergen Corp et al.*, Case No. 1:19-op-45013-DAP, ECF No. 1. Despite filing its case years ago, St. Martinville City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Martinville City's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Martinville City's document destruction and the appropriate sanctions—just as the

parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Martinville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Martinville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Martinville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Martinville City, a municipality in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Martinville City's proposed RICO claim against the PBMs has expired. St. Martinville City filed its original complaint on December 19, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Saint Martinville v. AmerisourceBergen Corp et al.*, Case No. 1:19-op-45013-DAP, ECF No. 1. It is therefore indisputable that St. Martinville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. St. Martinville City's RICO claim is therefore time-barred

by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Martinville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to an one-year limitations period. St. Martinville City's public-nuisance claim against the PBMs is therefore time-barred because St. Martinville City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on December 19, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** St. Martinville City, a municipality in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **960.** ***Haywood County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45014-DAP: Plaintiff Haywood County, North Carolina**

Haywood County's untimely motion for leave to amend should be denied for several reasons. Haywood County failed to provide notice of its proposed amendments through a proposed complaint. Haywood County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Haywood County's motion should be denied due to futility, as Haywood County does not assert any allegations tying the PBMs to its alleged harm, its RICO

claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Haywood County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Haywood County amended its complaint on March 11, 2019, after transfer to the MDL on January 22, 2019. *See Haywood County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45014-DAP, ECF No. 5. Unlike many other plaintiffs, Haywood County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Haywood County's deadline to amend was in 2019. Haywood County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Haywood County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Haywood County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Haywood County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Haywood County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Haywood County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Haywood County). That insignificant dispensing volume is much too low to support a finding of good cause for Haywood County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Haywood County filed its original complaint on December 18, 2018. *See Haywood County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45014-DAP, ECF No. 1. Despite filing its case years ago, Haywood County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Haywood County's case would force the parties and the Court to waste time and resources ascertaining the extent of Haywood County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Haywood County's disregard for its most basic discovery obligations as

a litigant, compounded by the delay in seeking leave to amend, and Haywood County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Haywood County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Haywood County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Haywood County's proposed RICO claim against the PBMs has expired. Haywood County filed its original complaint on December 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Haywood County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45014-DAP, ECF No. 1. It is therefore indisputable that Haywood County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Haywood County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Haywood County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Haywood County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

961. ***Unified Government of Wyandotte County/Kansas City, Kansas v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45015-DAP: Plaintiff Kansas City City, Kansas**

Kansas City City's untimely motion for leave to amend should be denied for several reasons. Kansas City City failed to provide notice of its proposed amendments through a proposed complaint. Kansas City City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kansas City City's motion should be denied due to futility, as Kansas City City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kansas City City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kansas City City amended its complaint on March 15, 2019, after transfer to the MDL on January 22, 2019. *See Unified Government of Wyandotte County/Kansas City, Kansas v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45015-DAP, ECF No. 14. Unlike many other plaintiffs, Kansas City City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Kansas City City's deadline to amend was in 2019. Kansas City City waited five years after its deadline to amend to seek leave to assert claims against the

PBMs. Kansas City City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kansas City City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Kansas City City). That insignificant dispensing volume is much too low to support a finding of good cause for Kansas City City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Kansas City City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Kansas City City of the PBM services Express Scripts provides and Kansas City City began receiving those services on January 2, 2013. *See id.* Inasmuch as Kansas City City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Kansas City City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Kansas City City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's

deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Kansas City City filed its original complaint on December 18, 2018. *See Unified Government of Wyandotte County/Kansas City, Kansas v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45015-DAP, ECF No. 1. Despite filing its case years ago, Kansas City City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Kansas City City's case would force the parties and the Court to waste time and resources ascertaining the extent of Kansas City City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kansas City City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kansas City City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kansas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kansas City City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kansas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kansas City City, a municipality in Kansas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kansas City City's proposed RICO claim against the PBMs has expired. Kansas City City filed its original complaint on December 18, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Unified Government of Wyandotte County/Kansas City, Kansas v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45015-DAP, ECF No. 1. It is therefore indisputable that Kansas City City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Kansas City City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kansas City City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kansas City City, a municipality in Kansas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 962. *Saint Regis Mohawk Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45018-DAP: Plaintiff Saint Regis Mohawk Tribe, New York

Saint Regis Mohawk Tribe's untimely motion for leave to amend should be denied for several reasons. Saint Regis Mohawk Tribe failed to provide notice of its proposed amendments through a proposed complaint. Saint Regis Mohawk Tribe also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely

motion would unduly prejudice the PBMs. Moreover, Saint Regis Mohawk Tribe's motion should be denied due to futility, as Saint Regis Mohawk Tribe does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Saint Regis Mohawk Tribe was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Saint Regis Mohawk Tribe amended its complaint on August 8, 2019, after transfer to the MDL on January 22, 2019, as well as on December 24, 2020. *See Saint Regis Mohawk Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45018-DAP, ECF Nos. 9 and 10. Unlike many other plaintiffs, Saint Regis Mohawk Tribe declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Saint Regis Mohawk Tribe's deadline to amend was in 2019. Saint Regis Mohawk Tribe waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Saint Regis Mohawk Tribe's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Saint Regis Mohawk Tribe's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Saint Regis Mohawk Tribe filed its original complaint on December 21, 2018. *See Saint Regis Mohawk Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45018-DAP, ECF No. 1. Despite filing its case years ago, Saint Regis Mohawk Tribe *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Saint Regis Mohawk Tribe's case would force the parties and the Court to waste time and resources ascertaining the extent of Saint Regis Mohawk Tribe's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Saint Regis Mohawk Tribe's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Saint Regis Mohawk Tribe therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Saint Regis Mohawk Tribe's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Saint Regis Mohawk Tribe, a native tribe in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Saint Regis Mohawk Tribe's proposed RICO claim against the PBMs has expired. Saint Regis Mohawk Tribe filed its original complaint on December 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Saint Regis Mohawk Tribe v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45018-DAP, ECF No. 1. It is therefore indisputable that Saint Regis Mohawk Tribe knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Saint Regis Mohawk Tribe's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Saint Regis Mohawk Tribe's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Saint Regis Mohawk Tribe, a native tribe in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Saint Regis Mohawk Tribe's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**963.** *County of Maricopa v. Purdue Pharma LP et al.*, **Case No. 1:19-op-45020-DAP: Plaintiff Maricopa County, Arizona**

Maricopa County's untimely motion for leave to amend should be denied for several reasons. Maricopa County failed to provide notice of its proposed amendments through a proposed complaint. Maricopa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Maricopa County's motion should be denied due to futility, as Maricopa County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Maricopa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Maricopa County amended its complaint on March 15, 2019, after transfer to the MDL on January 22, 2019, as well as on May 28, 2019 and January 20, 2021. *See County of Maricopa v. Purdue Pharma LP et al.*, Case No. 1:19-op-45020-DAP, ECF Nos. 9, 10, 13. Unlike many other plaintiffs, Maricopa County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Maricopa County's deadline to amend was in 2019. Maricopa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Maricopa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Maricopa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Maricopa County). That insignificant dispensing volume is much too low to support a finding of good cause for Maricopa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Maricopa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Maricopa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Maricopa County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Maricopa County of the PBM services Express Scripts provides and Maricopa County began receiving those services on January 1, 2006. *See id.* Inasmuch as Maricopa County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Maricopa County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Maricopa County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling

order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Maricopa County filed its original complaint on December 21, 2018. *See County of Maricopa v. Purdue Pharma LP et al.*, Case No. 1:19-op-45020-DAP, ECF No. 1. Despite filing its case years ago, Maricopa County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Maricopa County's case would force the parties and the Court to waste time and resources ascertaining the extent of Maricopa County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Maricopa County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Maricopa County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Arizona law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Maricopa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Arizona law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Maricopa County, a municipality in Arizona, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Maricopa County's proposed RICO claim against the PBMs has expired. Maricopa County filed its original complaint on December 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Maricopa v. Purdue Pharma LP et al.*, Case No. 1:19-op-45020-DAP, ECF No. 1. It is therefore indisputable that Maricopa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Maricopa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Maricopa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Maricopa County, a municipality in Arizona, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **964.** ***Town of Stoughton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45023-DAP: Plaintiff Stoughton Town, Massachusetts**

Stoughton Town's untimely motion for leave to amend should be denied for several reasons. Stoughton Town failed to provide notice of its proposed amendments through a proposed complaint. Stoughton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Stoughton Town's motion should be denied due to futility, as Stoughton Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Stoughton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Stoughton Town amended its complaint on March 8, 2019, after transfer to the MDL on January 22, 2019. *See Town of Stoughton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45023-DAP, ECF No. 14. Unlike many other plaintiffs, Stoughton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Stoughton Town's deadline to amend was in 2019. Stoughton Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Stoughton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Stoughton Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Stoughton Town, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Stoughton Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Stoughton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Stoughton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Stoughton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Stoughton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Stoughton Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Stoughton Town previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary

development. *See* Achter Decl., Exhibit A. That contract notified Stoughton Town of the PBM services Express Scripts provides and Stoughton Town began receiving those services on August 1, 2019. *See id.* Inasmuch as Stoughton Town seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Stoughton Town knew or should have known of the alleged wrongful conduct nearly five years before moving to amend. *See* Section III.A.3, above. Stoughton Town's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stoughton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Stoughton Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Stoughton Town's proposed RICO claim against the PBMs has expired. Stoughton Town filed its original complaint on December 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other

defendants. *See Town of Stoughton, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45023-DAP, ECF No. 1. It is therefore indisputable that Stoughton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Stoughton Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Stoughton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Stoughton Town's public-nuisance claim against the PBMs is therefore time-barred because Stoughton Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on December 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Stoughton Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **965.** *City of Anacortes et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45029-DAP: Plaintiff Anacortes City, Washington

Anacortes City's untimely motion for leave to amend should be denied for several reasons. Anacortes City failed to provide notice of its proposed amendments through a proposed complaint.

Anacortes City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Anacortes City's motion should be denied due to futility, as Anacortes City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Anacortes City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Anacortes City amended its complaint on March 15, 2019, after transfer to the MDL on January 24, 2019, as well as on May 28, 2019 and March 25, 2021. *See City of Anacortes et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45029-DAP, ECF Nos. 7, 8, 12. Unlike many other plaintiffs, Anacortes City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Anacortes City's deadline to amend was in 2019. Anacortes City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Anacortes City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Anacortes City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Anacortes City). That insignificant dispensing volume is much too

low to support a finding of good cause for Anacortes City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Anacortes City filed its original complaint on December 21, 2018. *See City of Anacortes et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45029-DAP, ECF No. 1. Despite filing its case years ago, Anacortes City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Anacortes City's case would force the parties and the Court to waste time and resources ascertaining the extent of Anacortes City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Anacortes City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Anacortes City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Anacortes City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Anacortes City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Anacortes City's proposed RICO claim against the PBMs has expired. Anacortes City filed its original complaint on December 21, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Anacortes et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45029-DAP, ECF No. 1. It is therefore indisputable that Anacortes City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Anacortes City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Anacortes City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Anacortes City's public-nuisance claim against the PBMs is therefore time-barred because Anacortes City sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on December 21, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Anacortes City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **966.** ***Board of County Commissioners of the County of McKinley v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45033-DAP: Plaintiff McKinley County, New Mexico**

McKinley County's untimely motion for leave to amend should be denied for several reasons. McKinley County failed to provide notice of its proposed amendments through a proposed complaint. McKinley County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, McKinley County's motion should be denied due to futility, as McKinley County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** McKinley County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, McKinley County amended its complaint on March 6, 2019, after transfer to the MDL on January 28, 2019. *See Board of County Commissioners of the County of McKinley v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45033-DAP, ECF No. 5. Unlike many other plaintiffs, McKinley County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. McKinley County's deadline to amend was in 2019. McKinley County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. McKinley County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after

the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** McKinley County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. McKinley County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. McKinley County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to McKinley County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for McKinley County). That insignificant dispensing volume is much too low to support a finding of good cause for McKinley County to add dispensing claims

against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to McKinley County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for McKinley County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** McKinley County violated its basic duty to implement a timely litigation hold. McKinley County filed its original complaint on January 11, 2019, but waited until December 24, 2019 to implement a litigation hold—nearly a year later. *See Board of County Commissioners of the County of McKinley v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45033-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 24, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating McKinley County's case would force the parties and the Court to waste time and resources ascertaining the extent of McKinley County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by McKinley County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and McKinley County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But McKinley County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** McKinley County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for McKinley County's proposed RICO claim against the PBMs has expired. McKinley County filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of McKinley v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45033-DAP, ECF No. 1. It is therefore indisputable that McKinley County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. McKinley County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. McKinley County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** McKinley County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **967.** *City of Thornton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45034-DAP: Plaintiff Thornton City, Colorado

Thornton City's untimely motion for leave to amend should be denied for several reasons. Thornton City failed to provide notice of its proposed amendments through a proposed complaint. Thornton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Thornton City's motion should be denied due to futility, as Thornton City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Thornton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Thornton City amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and December 30, 2020. *See City of Thornton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45034-DAP, ECF Nos. 10, 11, 16. Unlike many other plaintiffs, Thornton City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Thornton City's deadline to amend was in 2019. Thornton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Thornton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Thornton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Thornton City). That insignificant dispensing volume is much too low to support a finding of good cause for Thornton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Thornton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Thornton City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Thornton City of this deficiency on September 16, 2024 (*see* Exhibit B), but Thornton City refused to amend or supplement its Fact Sheet. Under this Court's orders, Thornton City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Thornton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Thornton City's potential claims against them. Thornton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Thornton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Thornton City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Thornton City's proposed RICO claim against the PBMs has expired. Thornton City filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Thornton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45034-DAP, ECF No. 1. It is therefore indisputable that Thornton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Thornton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Thornton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Thornton City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **968.** ***Board of County Commissioners of the County of Jefferson v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45035-DAP: Plaintiff Jefferson County, Colorado**

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jefferson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson County amended its complaint on March 13, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and December 29, 2020. *See Board of County Commissioners of the County of Jefferson v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45035-DAP, ECF Nos. 10, 11, 16. Unlike many other plaintiffs, Jefferson County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Jefferson County's deadline to amend was in 2019. Jefferson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.21% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jefferson County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Jefferson v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45035-DAP, ECF No. 1. It is therefore indisputable that Jefferson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Jefferson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jefferson County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

969. ***Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Adams County, Colorado**

Adams County's untimely motion for leave to amend should be denied for several reasons. Adams County failed to provide notice of its proposed amendments through a proposed complaint. Adams County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Adams County's motion should be denied due to futility, as Adams County does not assert any allegations tying the

PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Adams County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Adams County amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Adams County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Adams County's deadline to amend was in 2019. Adams County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Adams County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Adams County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.22% market share for Adams County). That insignificant dispensing volume is much too low to support a finding of good cause for Adams County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Adams County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Adams County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Adams County violated its basic duty to implement a timely litigation hold. Adams County filed its original complaint on January 11, 2019, but waited until August 26, 2019 to implement a litigation hold—seven months later. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 26, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Adams County's case would force the parties and the Court to waste time and resources ascertaining the extent of Adams County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Adams County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Adams County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Adams County's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Adams County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Adams County's proposed RICO claim against the PBMs has expired. Adams County filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Adams County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Adams County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Adams County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Adams County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**970.** *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45036-DAP: Plaintiff Arapahoe County, Colorado**

Arapahoe County's untimely motion for leave to amend should be denied for several reasons. Arapahoe County failed to provide notice of its proposed amendments through a proposed complaint. Arapahoe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Arapahoe County's motion should be denied due to futility, as Arapahoe County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Arapahoe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Arapahoe County amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Arapahoe County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Arapahoe County's deadline to amend was in 2019. Arapahoe County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Arapahoe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Arapahoe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Arapahoe County). That insignificant dispensing volume is much too low to support a finding of good cause for Arapahoe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Arapahoe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Arapahoe County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Arapahoe County's proposed RICO claim against the PBMs has expired. Arapahoe County filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Arapahoe County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO

claim, five years before seeking leave to amend. Arapahoe County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Arapahoe County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Arapahoe County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 971. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Aurora City, Colorado

Aurora City's untimely motion for leave to amend should be denied for several reasons. Aurora City failed to provide notice of its proposed amendments through a proposed complaint. Aurora City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Aurora City's motion should be denied due to futility, as Aurora City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Aurora City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Aurora City amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF

Nos. 12, 15, 25. Unlike many other plaintiffs, Aurora City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Aurora City's deadline to amend was in 2019. Aurora City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Aurora City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Aurora City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Aurora City). That insignificant dispensing volume is much too low to support a finding of good cause for Aurora City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Aurora City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Aurora City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Aurora City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Aurora City of the PBM services

Express Scripts provides and Aurora City began receiving those services on August 26, 2007. *See id.* Inasmuch as Aurora City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Aurora City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Aurora City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Aurora City violated its basic duty to implement a timely litigation hold. Aurora City filed its original complaint on January 11, 2019, but waited until September 13, 2024 to implement a litigation hold—five years later. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Aurora City's case would force the parties and the Court to waste time and resources ascertaining the extent of Aurora City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Aurora City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Aurora City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Aurora City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Aurora City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Aurora City of this deficiency on September 16, 2024 (*see* Exhibit B), but Aurora City refused to amend or supplement its Fact Sheet. Under this Court's orders, Aurora City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Aurora City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Aurora City's potential claims against them. Aurora City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Aurora City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Aurora City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Aurora City's proposed RICO claim against the PBMs has expired. Aurora City filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Aurora City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Aurora City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Aurora City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Aurora City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

972. ***Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Black Hawk City, Colorado**

Black Hawk City's untimely motion for leave to amend should be denied for several reasons. Black Hawk City failed to provide notice of its proposed amendments through a proposed complaint. Black Hawk City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Black Hawk City's motion should be denied due to futility, as Black Hawk City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Black Hawk City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Black Hawk City amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Black Hawk City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Black Hawk City's deadline to amend was in 2019. Black Hawk City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Black Hawk City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Black Hawk City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Black Hawk City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Black Hawk City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Black Hawk City's proposed RICO claim against the PBMs has expired. Black Hawk City filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Black Hawk City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Black Hawk City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Black Hawk City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Black Hawk City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

973. ***Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Boulder County, Colorado**

Boulder County's untimely motion for leave to amend should be denied for several reasons. Boulder County failed to provide notice of its proposed amendments through a proposed complaint. Boulder County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Boulder County's motion should be denied due to futility, as Boulder County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Boulder County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Boulder County amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Boulder County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Boulder County's deadline to amend was in 2019. Boulder County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Boulder County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Boulder County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Boulder County). That insignificant dispensing volume is much too low to support a finding of good cause for Boulder County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Boulder County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Boulder County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Boulder County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Boulder County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Boulder County's proposed RICO claim against the PBMs has expired. Boulder County filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Boulder County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Boulder County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Boulder County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Boulder County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **974.** ***Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Broomfield City, Colorado**

Broomfield City's untimely motion for leave to amend should be denied for several reasons. Broomfield City failed to provide notice of its proposed amendments through a proposed complaint. Broomfield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Broomfield City's motion should be denied due to futility, as Broomfield City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Broomfield City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Broomfield City amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Broomfield City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Broomfield City's deadline to amend was in 2019. Broomfield City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Broomfield City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Broomfield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Broomfield City). That insignificant dispensing volume is much too low to support a finding of good cause for Broomfield City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Broomfield City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Broomfield City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Broomfield City violated its basic duty to implement a timely litigation hold. Broomfield City filed its original complaint on January 11, 2019, but waited until September 16, 2024 to implement a litigation hold—five years later. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Broomfield City's case would force the parties and the Court to waste time and resources ascertaining the extent of Broomfield City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Broomfield City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Broomfield City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Broomfield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Broomfield City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Broomfield City's proposed RICO claim against the PBMs has expired. Broomfield City filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Broomfield City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Broomfield City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Broomfield City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Broomfield City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **975.** *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45036-DAP: Plaintiff Commerce City City, Colorado**

Commerce City City's untimely motion for leave to amend should be denied for several reasons. Commerce City City failed to provide notice of its proposed amendments through a proposed complaint. Commerce City City also lacks good cause under Rule 15 or Rule 16 due to

a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Commerce City City's motion should be denied due to futility, as Commerce City City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Commerce City City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Commerce City City amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Commerce City City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Commerce City City's deadline to amend was in 2019. Commerce City City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Commerce City City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Commerce City City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Commerce City City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Commerce City City's proposed RICO claim against the PBMs has expired. Commerce City City filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Commerce City City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Commerce City City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Commerce City City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Commerce City City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

976. ***Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Denver City, Colorado**

Denver City's untimely motion for leave to amend should be denied for several reasons. Denver City failed to provide notice of its proposed amendments through a proposed complaint. Denver City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Denver City's motion should be denied due to futility, as Denver City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Denver City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Denver City amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Denver City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Denver City's deadline to amend was in 2019. Denver City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Denver City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Denver City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.27% market share for Denver City). That insignificant dispensing volume is much too low to support a finding of good cause for Denver City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Denver City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Denver City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Denver City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Denver City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Denver City's proposed RICO claim against the PBMs has expired. Denver City filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board*

*of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Denver City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Denver City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Denver City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Denver City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 977. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Fremont County, Colorado

Fremont County's untimely motion for leave to amend should be denied for several reasons. Fremont County failed to provide notice of its proposed amendments through a proposed complaint. Fremont County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fremont County's motion should be denied due to futility, as Fremont County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fremont County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Fremont County amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Fremont County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Fremont County's deadline to amend was in 2019. Fremont County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fremont County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fremont County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Fremont County). That insignificant dispensing volume is much too low to support a finding of good cause for Fremont County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fremont County violated its basic duty to implement a timely litigation hold. Fremont County filed its original complaint on January 11, 2019, but waited until September 12, 2024 to implement a litigation hold—five years later. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold

Implemented: September 12, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fremont County's case would force the parties and the Court to waste time and resources ascertaining the extent of Fremont County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fremont County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fremont County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fremont County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fremont County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fremont County's proposed RICO claim against the PBMs has expired. Fremont County filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*,

Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Fremont County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Fremont County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fremont County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fremont County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 978. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Hudson Town, Colorado

Hudson Town's untimely motion for leave to amend should be denied for several reasons. Hudson Town failed to provide notice of its proposed amendments through a proposed complaint. Hudson Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hudson Town's motion should be denied due to futility, as Hudson Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hudson Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hudson Town amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners*

*of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Hudson Town declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Hudson Town's deadline to amend was in 2019. Hudson Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hudson Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Hudson Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hudson Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hudson Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hudson Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Hudson Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Hudson Town's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hudson Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hudson Town's potential claims against them. Hudson Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hudson Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hudson Town, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hudson Town's proposed RICO claim against the PBMs has expired. Hudson Town filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Hudson Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Hudson Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hudson Town's request for leave to amend

to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hudson Town, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 979. *Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Larimer County, Colorado

Larimer County's untimely motion for leave to amend should be denied for several reasons. Larimer County failed to provide notice of its proposed amendments through a proposed complaint. Larimer County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Larimer County's motion should be denied due to futility, as Larimer County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Larimer County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Larimer County amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Larimer County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Larimer County's deadline to amend was in 2019. Larimer County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Larimer County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Larimer County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.26% market share for Larimer County). That insignificant dispensing volume is much too low to support a finding of good cause for Larimer County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Larimer County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Larimer County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Larimer County's proposed RICO claim against the PBMs has expired. Larimer County filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*,

Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Larimer County knew

of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years

before seeking leave to amend. Larimer County's RICO claim is therefore time-barred by RICO's

four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is

triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Larimer County's request for leave to amend

to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying

motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Larimer County, a municipality in Colorado, lacks standing to

state a claim for relief under any of the New York laws referenced in the City of Rochester's

complaint. *See* Section III.B.6, above.

> **980.** ***Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Northglenn City, Colorado**

Northglenn City's untimely motion for leave to amend should be denied for several

reasons. Northglenn City failed to provide notice of its proposed amendments through a proposed

complaint. Northglenn City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover,

Northglenn City's motion should be denied due to futility, as Northglenn City does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of

limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Northglenn City was on notice of its claims against the PBMs for years

but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Northglenn City amended its complaint on March 15, 2019, after transfer to the MDL on January

28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners*

*of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Northglenn City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Northglenn City's deadline to amend was in 2019. Northglenn City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Northglenn City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Northglenn City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.39% market share for Northglenn City). That insignificant dispensing volume is much too low to support a finding of good cause for Northglenn City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Northglenn City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Northglenn City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Northglenn City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Northglenn City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Northglenn City's proposed RICO claim against the PBMs has expired. Northglenn City filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Northglenn City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Northglenn City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Northglenn City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Northglenn City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **981.** ***Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Teller County, Colorado**

Teller County's untimely motion for leave to amend should be denied for several reasons. Teller County failed to provide notice of its proposed amendments through a proposed complaint. Teller County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Teller County's motion should be denied due to futility, as Teller County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Teller County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Teller County amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Teller County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Teller County's deadline to amend was in 2019. Teller County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Teller County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Teller County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Teller County). That insignificant dispensing volume is much too low to support a finding of good cause for Teller County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Teller County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Teller County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Teller County of this deficiency on September 16, 2024 (*see* Exhibit B), but Teller County refused to amend or supplement its Fact Sheet. Under this Court's orders, Teller County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Teller County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Teller County's potential claims against them. Teller County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Teller County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Teller County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Teller County's proposed RICO claim against the PBMs has expired. Teller County filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Teller County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Teller County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Teller County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Teller County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **982.** ***Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP: Plaintiff Westminster City, Colorado**

Westminster City's untimely motion for leave to amend should be denied for several reasons. Westminster City failed to provide notice of its proposed amendments through a proposed complaint. Westminster City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Westminster City's motion should be denied due to futility, as Westminster City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Westminster City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Westminster City amended its complaint on March 15, 2019, after transfer to the MDL on January 28, 2019, as well as on May 28, 2019 and January 20, 2021. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF Nos. 12, 15, 25. Unlike many other plaintiffs, Westminster City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Westminster City's deadline to amend was in 2019. Westminster City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Westminster City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Westminster City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Westminster City). That insignificant dispensing volume is much too low to support a finding of good cause for Westminster City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Westminster City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Westminster City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Westminster City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Westminster City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Westminster City's proposed RICO claim against the PBMs has expired. Westminster City filed its original complaint on January 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Adams, et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45036-DAP, ECF No. 1. It is therefore indisputable that Westminster City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Westminster City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westminster City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Westminster City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **983.** ***Cahto Indian Tribe of the Laytonville Rancheria et al. v. McKesson Corporation et al.*, Case No. 1:19-op-45038-DAP: Plaintiff Cahto Indian Tribe of the Laytonville Rancheria, California**

Cahto Indian Tribe of the Laytonville Rancheria's untimely motion for leave to amend should be denied for several reasons. Cahto Indian Tribe of the Laytonville Rancheria failed to provide notice of its proposed amendments through a proposed complaint. Cahto Indian Tribe of the Laytonville Rancheria also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly

prejudice the PBMs. Moreover, Cahto Indian Tribe of the Laytonville Rancheria's motion should be denied due to futility, as Cahto Indian Tribe of the Laytonville Rancheria does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cahto Indian Tribe of the Laytonville Rancheria was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cahto Indian Tribe of the Laytonville Rancheria amended its complaint on August 12, 2019, after directly filing in the MDL. *See Cahto Indian Tribe of the Laytonville Rancheria et al. v. McKesson Corporation et al.*, Case No. 1:19-op-45038-DAP, ECF No. 21. Unlike many other plaintiffs, Cahto Indian Tribe of the Laytonville Rancheria declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cahto Indian Tribe of the Laytonville Rancheria's deadline to amend was in 2019. Cahto Indian Tribe of the Laytonville Rancheria waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cahto Indian Tribe of the Laytonville Rancheria's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cahto Indian Tribe of the Laytonville Rancheria's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing

volume is much too low to support a finding of good cause for Cahto Indian Tribe of the Laytonville Rancheria to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

      **Failure to Implement a Litigation Hold.** Cahto Indian Tribe of the Laytonville Rancheria filed its original complaint on January 28, 2019. *See Cahto Indian Tribe of the Laytonville Rancheria et al. v. McKesson Corporation et al.*, Case No. 1:19-op-45038-DAP, ECF No. 1. Despite filing its case years ago, Cahto Indian Tribe of the Laytonville Rancheria *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cahto Indian Tribe of the Laytonville Rancheria's case would force the parties and the Court to waste time and resources ascertaining the extent of Cahto Indian Tribe of the Laytonville Rancheria's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cahto Indian Tribe of the Laytonville Rancheria's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cahto Indian Tribe of the Laytonville Rancheria therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Failure to State a Claim.** Cahto Indian Tribe of the Laytonville Rancheria, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cahto Indian Tribe of the Laytonville Rancheria's proposed RICO claim against the PBMs has expired. Cahto Indian Tribe of the Laytonville Rancheria filed its original complaint on January 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cahto Indian Tribe of the Laytonville Rancheria et al. v. McKesson Corporation et al.*, Case No. 1:19-op-45038-DAP, ECF No. 1. It is therefore indisputable that Cahto Indian Tribe of the Laytonville Rancheria knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Cahto Indian Tribe of the Laytonville Rancheria's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cahto Indian Tribe of the Laytonville Rancheria's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cahto Indian Tribe of the Laytonville Rancheria, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **984.** *Town of Dedham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:19-op-45039-DAP: Plaintiff Dedham Town, Massachusetts**

Dedham Town's untimely motion for leave to amend should be denied for several reasons. Dedham Town failed to provide notice of its proposed amendments through a proposed complaint. Dedham Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dedham Town's motion should be denied due to futility, as Dedham Town does not

assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dedham Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dedham Town amended its complaint on March 6, 2019, after transfer to the MDL on February 4, 2019. *See Town of Dedham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45039-DAP, ECF No. 9. Unlike many other plaintiffs, Dedham Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Dedham Town's deadline to amend was in 2019. Dedham Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dedham Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Dedham Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Dedham Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Dedham Town fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dedham Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Dedham Town). That insignificant dispensing volume is much too low to support a finding of good cause for Dedham Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dedham Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dedham Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dedham Town filed its original complaint on December 20, 2018. *See Town of Dedham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45039-DAP, ECF No. 1. Despite filing its case years ago, Dedham Town *never* implemented a litigation hold and is instead purporting to rely on non-

specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Dedham Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Dedham Town's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dedham Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dedham Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dedham Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dedham Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dedham Town's proposed RICO claim against the PBMs has expired. Dedham Town filed its original complaint on December 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other

defendants. *See Town of Dedham, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45039-DAP, ECF No. 1. It is therefore indisputable that Dedham Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Dedham Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dedham Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Dedham Town's public-nuisance claim against the PBMs is therefore time-barred because Dedham Town sought leave to amend its complaint on July 29, 2024—five and a half years after filing its original complaint on December 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Dedham Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 985. *Duplin County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45040-DAP: Plaintiff Duplin County, North Carolina

Duplin County's untimely motion for leave to amend should be denied for several reasons. Duplin County failed to provide notice of its proposed amendments through a proposed complaint.

Duplin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Duplin County's motion should be denied due to futility, as Duplin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Duplin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Duplin County amended its complaint on May 6, 2019, after transfer to the MDL on February 4, 2019. *See Duplin County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45040-DAP, ECF No. 5. Unlike many other plaintiffs, Duplin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Duplin County's deadline to amend was in 2019. Duplin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Duplin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Duplin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Duplin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Duplin County fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access

to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's

home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Duplin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.06% market share for Duplin County). That insignificant dispensing volume is much too

low to support a finding of good cause for Duplin County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2,

above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express

Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Duplin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Duplin County to add dispensing claims against Express Scripts' mail

order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Duplin County filed its original complaint on

January 18, 2019. *See Duplin County v. AmerisourceBergen Drug Corporation et al.*, Case No.

1:19-op-45040-DAP, ECF No. 1. Despite filing its case five and a half years ago, Duplin County

*never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Duplin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Duplin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Duplin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Duplin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Duplin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Duplin County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Duplin County's proposed RICO claim against the PBMs has expired. Duplin County filed its original complaint on January

18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Duplin County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45040-DAP, ECF No. 1. It is therefore indisputable that Duplin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Duplin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Duplin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Duplin County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

986. ***Manatee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45044-DAP: Plaintiff Manatee County, Florida**

Manatee County's untimely motion for leave to amend should be denied for several reasons. Manatee County failed to provide notice of its proposed amendments through a proposed complaint. Manatee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Manatee County's motion should be denied due to futility, as Manatee County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Manatee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Manatee County filed its original complaint on January 18, 2019 and the case was transferred to the MDL on February 5, 2019. *See Manatee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45044-DAP, ECF No. 8. Manatee County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Manatee County elected not to do so. Instead, Manatee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Manatee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Manatee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.44% market share for Manatee County). That insignificant dispensing volume is much too low to support a finding of good cause for Manatee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Manatee County filed its original complaint on January 18, 2019. *See Manatee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45044-DAP, ECF No. 1. Despite filing its case years ago, Manatee County *never* implemented a

litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Manatee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Manatee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Manatee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Manatee County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Manatee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Manatee County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Manatee County's proposed RICO claim against the PBMs has expired. Manatee County filed its original complaint on January 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Manatee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45044-DAP, ECF No. 1. It is therefore indisputable that Manatee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Manatee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Manatee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Manatee County's public-nuisance claim against the PBMs is therefore time-barred because Manatee County sought leave to amend its complaint on July 29, 2024—five and a half years after filing its original complaint on January 18, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Manatee County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 987. *Bartow County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45045-DAP: Plaintiff Bartow County, Georgia

Bartow County's untimely motion for leave to amend should be denied for several reasons. Bartow County failed to provide notice of its proposed amendments through a proposed complaint.

Bartow County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bartow County's motion should be denied due to futility, as Bartow County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bartow County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bartow County amended its complaint on March 11, 2019, after transfer to the MDL on February 5, 2019, as well as on May 6, 2019. *See Bartow County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45045-DAP, ECF Nos. 5, 6. Unlike many other plaintiffs, Bartow County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Bartow County's deadline to amend was in 2019. Bartow County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bartow County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bartow County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bartow County, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bartow County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bartow County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Bartow County). That insignificant dispensing volume is much too low to support a finding of good cause for Bartow County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bartow County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bartow County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bartow County filed its original complaint on January 16, 2019. *See Bartow County, Georgia v. AmerisourceBergen Drug Corporation et al.*,

Case No. 1:19-op-45045-DAP, ECF No. 1. Despite filing its case years ago, Bartow County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bartow County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bartow County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bartow County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bartow County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bartow County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bartow County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bartow County's proposed RICO claim against the PBMs has expired. Bartow County filed its original complaint on January

16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bartow County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45045-DAP, ECF No. 1. It is therefore indisputable that Bartow County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Bartow County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bartow County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bartow County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 988. *Polk County, Georgia v. AmerisourceBergen Drug Corporation*, Case No. 1:19-op-45046-DAP: Plaintiff Polk County, Georgia

Polk County's untimely motion for leave to amend should be denied for several reasons. Polk County failed to provide notice of its proposed amendments through a proposed complaint. Polk County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Polk County's motion should be denied due to futility, as Polk County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Polk County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Polk County amended its complaint on May 6, 2019, after transfer to the MDL on February 5, 2019. *See Polk County, Georgia v. AmerisourceBergen Drug Corporation*, Case No. 1:19-op-45046-DAP, ECF No. 5. Unlike many other plaintiffs, Polk County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Polk County's deadline to amend was in 2019. Polk County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Polk County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Polk County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Polk County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Polk County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Polk County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Polk County). That insignificant dispensing volume is much too low to support a finding of good cause for Polk County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Polk County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Polk County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Polk County filed its original complaint on January 16, 2019. *See Polk County, Georgia v. AmerisourceBergen Drug Corporation*, Case No. 1:19-op-45046-DAP, ECF No. 1. Despite filing its case years ago, Polk County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Polk County's case would force the parties and the Court to waste time and resources ascertaining the extent of Polk County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Polk County's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Polk County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Polk County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Polk County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Polk County's proposed RICO claim against the PBMs has expired. Polk County filed its original complaint on January 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Polk County, Georgia v. AmerisourceBergen Drug Corporation*, Case No. 1:19-op-45046-DAP, ECF No. 1. It is therefore indisputable that Polk County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Polk County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Polk County's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Polk County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 989. *Westwego City v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45047-DAP: Plaintiff Westwego City, Louisiana

Westwego City's untimely motion for leave to amend should be denied for several reasons. Westwego City failed to provide notice of its proposed amendments through a proposed complaint. Westwego City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Westwego City's motion should be denied due to futility, as Westwego City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Westwego City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Westwego City filed its original complaint on January 17, 2019 and the case was transferred to the MDL on February 5, 2019. *See Westwego City v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45047-DAP, ECF No. 9. Westwego City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Westwego City elected not to do so. Instead, Westwego City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Westwego City's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Westwego City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Westwego City). That insignificant dispensing volume is much too low to support a finding of good cause for Westwego City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Westwego City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Westwego City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Westwego City filed its original complaint on January 17, 2019. *See Westwego City v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45047-DAP, ECF No. 1. Despite filing its case years ago, Westwego City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Westwego City's case would force the parties

and the Court to waste time and resources ascertaining the extent of Westwego City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Westwego City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Westwego City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Westwego City has *never* served a Plaintiff Fact Sheet. Westwego City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Westwego City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Westwego City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Westwego City, a municipality in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Westwego City's proposed RICO claim against the PBMs has expired. Westwego City filed its original complaint on January 17, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Westwego City v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45047-DAP, ECF No. 1. It is therefore indisputable that Westwego City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Westwego City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westwego City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to an one-year limitations period. Westwego City's public-nuisance claim against the PBMs is therefore time-barred because Westwego City sought leave to amend its complaint on July 29, 2024—five and a half years after filing its original complaint on January 17, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Westwego City, a municipality in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 990. *City of Columbia, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45048-DAP: Plaintiff Columbia City, Mississippi

Columbia City's untimely motion for leave to amend should be denied for several reasons. Columbia City failed to provide notice of its proposed amendments through a proposed complaint. Columbia City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Columbia City's motion should be denied due to futility, as Columbia City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Columbia City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Columbia City amended its complaint on May 6, 2019, after transfer to the MDL on February 5, 2019. *See City of Columbia, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45048-DAP, ECF No. 7. Unlike many other plaintiffs, Columbia City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Columbia City's deadline to amend was in 2019. Columbia City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Columbia City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Columbia City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Columbia City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Columbia City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Columbia City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Columbia City). That insignificant dispensing volume is much too low to support a finding of good cause for Columbia City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Columbia City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Columbia City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Columbia City violated its basic duty to implement a timely litigation hold. Columbia City filed its original complaint on January 16, 2019, but waited until December 18, 2019 to implement a litigation hold—eleven months later. *See City of Columbia, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45048-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 18, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Columbia City's case would force the parties and the Court to waste time and resources ascertaining the extent of Columbia City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Columbia City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Columbia City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Columbia City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Columbia City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Columbia City's proposed RICO claim against the PBMs has expired. Columbia City filed its amended complaint on May 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Columbia, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45048-DAP, ECF No. 7. It is therefore indisputable that Columbia City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Columbia City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Columbia City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Columbia City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**991.** *Pamlico County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45049-DAP: Plaintiff Pamlico County, North Carolina**

Pamlico County's untimely motion for leave to amend should be denied for several reasons. Pamlico County failed to provide notice of its proposed amendments through a proposed complaint. Pamlico County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pamlico County's motion should be denied due to futility, as Pamlico County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pamlico County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pamlico County amended its complaint on March 11, 2019, after transfer to the MDL on February 5, 2019. *See Pamlico County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45049-DAP, ECF No. 7. Unlike many other plaintiffs, Pamlico County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pamlico County's deadline to amend was in 2019. Pamlico County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pamlico County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pamlico County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pamlico County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pamlico County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pamlico County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Pamlico County). That insignificant dispensing volume is much too low to support a finding of good cause for Pamlico County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pamlico County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pamlico County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Pamlico County violated its basic duty to implement a timely litigation hold. Pamlico County filed its original complaint on January 16, 2019, but waited until December 16, 2019 to implement a litigation hold—eleven months later. *See Pamlico County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45049-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 16, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pamlico County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pamlico County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pamlico County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pamlico County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pamlico County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pamlico County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pamlico County's proposed RICO claim against the PBMs has expired. Pamlico County filed its original complaint on January 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pamlico County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45049-DAP, ECF No. 1. It is therefore indisputable that Pamlico County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Pamlico County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pamlico County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pamlico County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

992. ***Board of County Commissioners of the County of Taos v. AmerisourceBergen Drug Corporation et al.***, **Case No. 1:19-op-45051-DAP: Plaintiff Taos County, New Mexico**

Taos County's untimely motion for leave to amend should be denied for several reasons. Taos County failed to provide notice of its proposed amendments through a proposed complaint. Taos County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Taos County's motion should be denied due to futility, as Taos County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Taos County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Taos County amended its complaint on May 8, 2019, after transfer to the MDL on February 7, 2019. *See Board of County Commissioners of the County of Taos v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45051-DAP, ECF No. 7. Unlike many other plaintiffs, Taos County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Taos County's deadline to amend was in 2019. Taos County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Taos County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Taos County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Taos County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Taos County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Taos County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Taos County). That insignificant dispensing volume is much too low to support a finding of good cause for Taos County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Taos County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Taos County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Taos County filed its original complaint on January 18, 2019. *See Board of County Commissioners of the County of Taos v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45051-DAP, ECF No. 1. Despite

filing its case years ago, Taos County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Taos County's case would force the parties and the Court to waste time and resources ascertaining the extent of Taos County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Taos County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Taos County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Taos County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Taos County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Taos County's proposed RICO claim against the PBMs has expired. Taos County filed its original complaint on January

18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Taos v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45051-DAP, ECF No. 1. It is therefore indisputable that Taos County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Taos County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Taos County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Taos County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 993. *Rio Arriba County, New Mexico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45054-DAP: Plaintiff Rio Arriba County, New Mexico

Rio Arriba County's untimely motion for leave to amend should be denied for several reasons. Rio Arriba County failed to provide notice of its proposed amendments through a proposed complaint. Rio Arriba County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rio Arriba County's motion should be denied due to futility, as Rio Arriba County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rio Arriba County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rio Arriba County first amended its complaint on November 13, 2018. *See Rio Arriba County, New Mexico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45054-DAP, ECF No. 1-4. Rio Arriba County amended its complaint again on March 18, 2019. *See Rio Arriba County, New Mexico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45054-DAP, ECF No. 17. Unlike many other plaintiffs, Rio Arriba County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Rio Arriba County's deadline to amend was in 2019. Rio Arriba County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rio Arriba County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rio Arriba County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Rio Arriba County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Rio Arriba County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F.

App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rio Arriba County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Rio Arriba County). That insignificant dispensing volume is much too low to support a finding of good cause for Rio Arriba County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Rio Arriba County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Rio Arriba County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Rio Arriba County of this deficiency on September 16, 2024 (*see* Exhibit B), but Rio Arriba County refused to amend or supplement its Fact Sheet. Under this Court's orders, Rio Arriba County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Rio Arriba County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Rio Arriba County's potential claims against them. Rio Arriba County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693,

at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rio Arriba County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rio Arriba County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rio Arriba County's proposed RICO claim against the PBMs has expired. Rio Arriba County filed its second amended complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rio Arriba County, New Mexico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45054-DAP, ECF No. 17. It is therefore indisputable that Rio Arriba County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Rio Arriba County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rio Arriba County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rio Arriba County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **994.** ***People of the State of Illinois et al. v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45055-DAP: Plaintiff St. Clair County, Illinois**

St. Clair County's untimely motion for leave to amend should be denied for several reasons. St. Clair County failed to provide notice of its proposed amendments through a proposed complaint. St. Clair County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Clair County's motion should be denied due to futility, as St. Clair County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Clair County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Clair County filed its original complaint on August 14, 2018 and the case was transferred to the MDL on February 8, 2019. *See People of the State of Illinois et al. v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45055-DAP, ECF No. 36. St. Clair County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, St. Clair County elected not to do so. Instead, St. Clair County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Clair County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*,

972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Clair County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for St. Clair County). That insignificant dispensing volume is much too low to support a finding of good cause for St. Clair County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Clair County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Clair County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Clair County filed its original complaint on August 14, 2018. *See People of the State of Illinois et al. v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45055-DAP, ECF No. 1-2. Despite filing its case years ago, St. Clair County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Clair

County's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Clair County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Clair County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Clair County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, St. Clair County has *never* served a Plaintiff Fact Sheet. St. Clair County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. St. Clair County's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Clair County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Clair County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** St. Clair County seeks leave to amend to add claims against the PBMs in two cases: *People of the State of Illinois, et al. v. Purdue Pharma LP, et al.*, No. 1:17-op-45048-DAP; and *People of the State of Illinois, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, No. 1:19-op-45055-DAP. St. Clair County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff Filed a Separate PBM Case.** St. Clair County previously filed an opioid case outside the MDL against the PBMs on December 15, 2023. *See St. Clair County v. Evernorth Health, Inc. et al.*, Case No. 3:24-cv-00189 (S.D. Ill.), ECF No. 1-1. St. Clair County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF No. 31. By suing the PBMs outside the MDL in 2023, St. Clair County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for St. Clair County's proposed RICO claim against the PBMs has expired. St. Clair County filed its original complaint on August 14, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See People of the State of Illinois et al. v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45055-DAP, ECF No. 1-2. Even assuming *arguendo* that St. Clair County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 14, 2022. St. Clair County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Clair County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Clair County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

995. ***Town of Athol v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45058-DAP: Plaintiff Athol Town, Massachusetts**

Athol Town's untimely motion for leave to amend should be denied for several reasons. Athol Town failed to provide notice of its proposed amendments through a proposed complaint. Athol Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Athol Town's motion should be denied due to futility, as Athol Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Athol Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Athol Town amended its complaint on March 8, 2019, after transfer to the MDL on February 11, 2019. *See Town of Athol v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45058-DAP, ECF No. 9. Unlike many other plaintiffs, Athol Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Athol Town's deadline to amend was in 2019. Athol Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Athol Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Athol Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Athol Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Athol Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff

was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Athol Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.005% market share for Athol Town). That insignificant dispensing volume is much too low to support a finding of good cause for Athol Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Athol Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Athol Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Athol Town violated its basic duty to implement a timely litigation hold. Athol Town filed its original complaint on January 22, 2019, but waited until December 19, 2019 to implement a litigation hold—eleven months later. *See Town of Athol v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45058-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 19, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Athol Town's case would

force the parties and the Court to waste time and resources ascertaining the extent of Athol Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Athol Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Athol Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Athol Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Athol Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Athol Town's proposed RICO claim against the PBMs has expired. Athol Town filed its original complaint on January 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Athol v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45058-DAP, ECF No. 1. It is therefore indisputable that Athol Town knew of its RICO injury, at the very latest, the day

it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Athol

Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not

discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Athol Town's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO

claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are

subject to a three-year limitations period. Athol Town's public-nuisance claim against the PBMs

is therefore time-barred because Athol Town sought leave to amend its complaint on July 29,

2024—five and a half years after filing its original complaint on January 22, 2019—and the

proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to

the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Athol Town, a municipality in Massachusetts, lacks standing to

state a claim for relief under any of the New York laws referenced in the City of Rochester's

complaint. *See* Section III.B.6, above.

### 996. *Town of Rehoboth v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45059-DAP: Plaintiff Rehoboth Town, Massachusetts

Rehoboth Town's untimely motion for leave to amend should be denied for several

reasons. Rehoboth Town failed to provide notice of its proposed amendments through a proposed

complaint. Rehoboth Town also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly

prejudice the PBMs. Moreover, Rehoboth Town's motion should be denied due to futility, as Rehoboth Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rehoboth Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rehoboth Town amended its complaint on March 8, 2019, after transfer to the MDL on February 11, 2019. *See Town of Rehoboth v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45059-DAP, ECF No. 9. Unlike many other plaintiffs, Rehoboth Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rehoboth Town's deadline to amend was in 2019. Rehoboth Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rehoboth Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rehoboth Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Rehoboth Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Rehoboth Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Failure to Implement a Litigation Hold.** Rehoboth Town filed its original complaint on January 23, 2019. *See Town of Rehoboth v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45059-DAP, ECF No. 1. Despite filing its case years ago, Rehoboth Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Rehoboth Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Rehoboth Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rehoboth Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rehoboth Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rehoboth Town's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rehoboth Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rehoboth Town's proposed RICO claim against the PBMs has expired. Rehoboth Town filed its original complaint on January 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Rehoboth v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45059-DAP, ECF No. 1. It is therefore indisputable that Rehoboth Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Rehoboth Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rehoboth Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Rehoboth Town's public-nuisance claim against the PBMs is therefore time-barred because Rehoboth Town sought leave to amend its complaint on

July 29, 2024—five and a half years after filing its original complaint on January 23, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Rehoboth Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

997. ***Town of Fairhaven, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45060-DAP: Plaintiff Fairhaven Town, Massachusetts**

Fairhaven Town's untimely motion for leave to amend should be denied for several reasons. Fairhaven Town failed to provide notice of its proposed amendments through a proposed complaint. Fairhaven Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fairhaven Town's motion should be denied due to futility, as Fairhaven Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fairhaven Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fairhaven Town amended its complaint on March 6, 2019, after transfer to the MDL on February 11, 2019. *See Town of Fairhaven, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45060-DAP, ECF No. 9. Unlike many other plaintiffs, Fairhaven Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fairhaven Town's

deadline to amend was in 2019. Fairhaven Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fairhaven Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fairhaven Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Fairhaven Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fairhaven Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fairhaven Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.01% market share for Fairhaven Town). That insignificant dispensing volume is much too low to support a finding of good cause for Fairhaven Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fairhaven Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fairhaven Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fairhaven Town violated its basic duty to implement a timely litigation hold. Fairhaven Town filed its original complaint on January 23, 2019, but waited until January 28, 2020 to implement a litigation hold—one year later. *See Town of Fairhaven, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45060-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 28, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fairhaven Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Fairhaven Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fairhaven Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fairhaven Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fairhaven Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fairhaven Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fairhaven Town's proposed RICO claim against the PBMs has expired. Fairhaven Town filed its original complaint on January 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Fairhaven, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45060-DAP, ECF No. 1. It is therefore indisputable that Fairhaven Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Fairhaven Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fairhaven Town's request for leave to amend to add a

3707

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Fairhaven Town's public-nuisance claim against the PBMs is therefore time-barred because Fairhaven Town sought leave to amend its complaint on July 29, 2024—five and a half years after filing its original complaint on January 23, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Fairhaven Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 998. *Town of Norwood v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45061-DAP: Plaintiff Norwood Town, Massachusetts

Norwood Town's untimely motion for leave to amend should be denied for several reasons. Norwood Town failed to provide notice of its proposed amendments through a proposed complaint. Norwood Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Norwood Town's motion should be denied due to futility, as Norwood Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Norwood Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Norwood Town amended its complaint on May 10, 2019, after transfer to the MDL on February 12, 2019. *See Town of Norwood v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45061-DAP, ECF No. 8. Unlike many other plaintiffs, Norwood Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Norwood Town's deadline to amend was in 2019. Norwood Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Norwood Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Norwood Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Norwood Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Norwood Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Norwood Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Norwood Town). That insignificant dispensing volume is much too low to support a finding of good cause for Norwood Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Norwood Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Norwood Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Norwood Town filed its original complaint on January 22, 2019. *See Town of Norwood v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45061-DAP, ECF No. 1. Despite filing its case years ago, Norwood Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Norwood Town's case would force the parties and the Court to waste time and resources ascertaining the extent of

Norwood Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Norwood Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Norwood Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Norwood Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Norwood Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Norwood Town's proposed RICO claim against the PBMs has expired. Norwood Town filed its original complaint on January 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Norwood v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45061-DAP, ECF No. 1. It is therefore indisputable that Norwood Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to

amend. Norwood Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Norwood Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Norwood Town's public-nuisance claim against the PBMs is therefore time-barred because Norwood Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on January 22, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Norwood Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **999.** ***Town of Brookline v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45062-DAP: Plaintiff Brookline Town, Massachusetts**

Brookline Town's untimely motion for leave to amend should be denied for several reasons. Brookline Town failed to provide notice of its proposed amendments through a proposed complaint. Brookline Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brookline Town's motion should be denied due to futility, as

Brookline Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brookline Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brookline Town amended its complaint on March 8, 2019, after transfer to the MDL on February 12, 2019. *See Town of Brookline v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45062-DAP, ECF No. 9. Unlike many other plaintiffs, Brookline Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Brookline Town's deadline to amend was in 2019. Brookline Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Brookline Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Brookline Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Brookline Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Brookline Town fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brookline Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Brookline Town). That insignificant dispensing volume is much too low to support a finding of good cause for Brookline Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brookline Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brookline Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Brookline Town filed its original complaint on January 22, 2019. *See Town of Brookline v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45062-DAP, ECF No. 1. Despite filing its case years ago, Brookline Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified

document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Brookline Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Brookline Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brookline Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brookline Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brookline Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brookline Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brookline Town's proposed RICO claim against the PBMs has expired. Brookline Town filed its original complaint on January 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Town of Brookline v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45062-DAP, ECF No. 1. It is therefore indisputable that Brookline Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Brookline Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brookline Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Brookline Town's public-nuisance claim against the PBMs is therefore time-barred because Brookline Town sought leave to amend its complaint on July 29, 2024—five and a half years after filing its original complaint on January 22, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Brookline Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1000. *Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45063-DAP: Plaintiff Scituate Town, Massachusetts

Scituate Town's untimely motion for leave to amend should be denied for several reasons. Scituate Town failed to provide notice of its proposed amendments through a proposed complaint.

Scituate Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scituate Town's motion should be denied due to futility, as Scituate Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scituate Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scituate Town amended its complaint on May 10, 2019, after transfer to the MDL on February 12, 2019. *See Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45063-DAP, ECF No. 9. Unlike many other plaintiffs, Scituate Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Scituate Town's deadline to amend was in 2019. Scituate Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scituate Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Scituate Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Scituate Town, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Scituate Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Scituate Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Scituate Town). That insignificant dispensing volume is much too low to support a finding of good cause for Scituate Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scituate Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scituate Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Scituate Town filed its original complaint on January 23, 2019. *See Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No.

1:19-op-45063-DAP, ECF No. 1. Despite filing its case years ago, Scituate Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Scituate Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Scituate Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Scituate Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Scituate Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scituate Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scituate Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scituate Town's proposed RICO claim against the PBMs has expired. Scituate Town filed its original complaint on January 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45063-DAP, ECF No. 1. It is therefore indisputable that Scituate Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Scituate Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scituate Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Scituate Town's public-nuisance claim against the PBMs is therefore time-barred because Scituate Town sought leave to amend its complaint on July 29, 2024—five and a half years after filing its original complaint on January 23, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Scituate Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1001.** *County of Brevard, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45064-DAP: Plaintiff Brevard County, Florida

Brevard County's untimely motion for leave to amend should be denied for several reasons. Brevard County failed to provide notice of its proposed amendments through a proposed complaint. Brevard County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brevard County's motion should be denied due to futility, as Brevard County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brevard County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brevard County amended its complaint on May 10, 2019, after transfer to the MDL on February 12, 2019. *See County of Brevard, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45064-DAP, ECF No. 11. Unlike many other plaintiffs, Brevard County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Brevard County's deadline to amend was in 2019. Brevard County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Brevard County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Brevard County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Brevard County). That insignificant dispensing volume is much too low to support a finding of good cause for Brevard County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brevard County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brevard County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Brevard County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Brevard County of the PBM services Express Scripts provides and Brevard County began receiving those services on January 3, 2020. *See id.* Inasmuch as Brevard County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Brevard County knew or should have known of the alleged wrongful conduct more than four years before moving to amend. *See* Section III.A.3, above. Brevard County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brevard County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brevard County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brevard County's proposed RICO claim against the PBMs has expired. Brevard County filed its original complaint on January 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Brevard, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45064-DAP, ECF No. 1. It is therefore indisputable that Brevard County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Brevard County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brevard County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Brevard County's public-nuisance claim against the PBMs is

therefore time-barred because Brevard County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on January 23, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Brevard County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1002.** ***Town of Orange, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45070-DAP: Plaintiff Orange Town, Massachusetts**

Orange Town's untimely motion for leave to amend should be denied for several reasons. Orange Town failed to provide notice of its proposed amendments through a proposed complaint. Orange Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Orange Town's motion should be denied due to futility, as Orange Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Orange Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Orange Town amended its complaint on March 7, 2019, after transfer to the MDL on February 14, 2019. *See Town of Orange, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45070-DAP, ECF No. 8. Unlike many other plaintiffs, Orange Town declined to add

claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Orange Town's deadline to amend was in 2019. Orange Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Orange Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Orange Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Orange Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Orange Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Orange Town's geographic

jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Orange Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Orange Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Orange Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Orange Town's proposed RICO claim against the PBMs has expired. Orange Town filed its original complaint on December 20, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Orange, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45070-DAP, ECF No. 1. It is therefore indisputable that Orange Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. Orange Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Orange Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Orange Town's public-nuisance claim against the PBMs is therefore time-barred because Orange Town sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on December 20, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Orange Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1003. *City of Florence Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45073-DAP: Plaintiff Florence City, Alabama

Florence City's untimely motion for leave to amend should be denied for several reasons. Florence City failed to provide notice of its proposed amendments through a proposed complaint. Florence City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Florence City's motion should be denied due to futility, as Florence City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is

barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Florence City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Florence City amended its complaint on March 15, 2019, after transfer to the MDL on February 15, 2019. *See City of Florence Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45073-DAP, ECF No. 8. Unlike many other plaintiffs, Florence City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Florence City's deadline to amend was in 2019. Florence City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Florence City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Florence City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Florence City). That insignificant dispensing volume is much too low to support a finding of good cause for Florence City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Florence City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Florence City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Florence City filed its original complaint on January 31, 2019. *See City of Florence Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45073-DAP, ECF No. 1. Despite filing its case years ago, Florence City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Florence City's case would force the parties and the Court to waste time and resources ascertaining the extent of Florence City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Florence City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Florence City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Florence City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Florence City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Florence City of this deficiency on September 16, 2024 (*see* Exhibit B), but Florence City refused to amend or supplement its Fact Sheet. Under this Court's orders, Florence City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1

(emphasis in original); *see* Section III.A.5, above. Florence City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Florence City's potential claims against them. Florence City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Florence City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Florence City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Florence City's proposed RICO claim against the PBMs has expired. Florence City filed its original complaint on January 31, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Florence Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45073-DAP, ECF No. 1. It is therefore indisputable that Florence City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Florence

City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Florence City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Florence City's public-nuisance claim against the PBMs is therefore time-barred because Florence City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on January 31, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Florence City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1004. *Ho-Chunk Nation v. McKesson Corporation et al.*, Case No. 1:19-op-45076-DAP: Plaintiff Ho-Chunk Nation, Wisconsin

Ho-Chunk Nation's untimely motion for leave to amend should be denied for several reasons. Ho-Chunk Nation failed to provide notice of its proposed amendments through a proposed complaint. Ho-Chunk Nation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ho-Chunk Nation's motion should be denied due to futility, as

Ho-Chunk Nation does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ho-Chunk Nation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ho-Chunk Nation amended its complaint on August 12, 2019, after directly filing in the MDL. *See Ho-Chunk Nation v. McKesson Corporation et al.*, Case No. 1:19-op-45076-DAP, ECF No. 18. Unlike many other plaintiffs, Ho-Chunk Nation declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ho-Chunk Nation's deadline to amend was in 2019. Ho-Chunk Nation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ho-Chunk Nation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ho-Chunk Nation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ho-Chunk Nation to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ho-Chunk Nation filed its original complaint on February 15, 2019. *See Ho-Chunk Nation v. McKesson Corporation et al.*, Case No. 1:19-op-

45076-DAP, ECF No. 1. Despite filing its case years ago, Ho-Chunk Nation *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ho-Chunk Nation's case would force the parties and the Court to waste time and resources ascertaining the extent of Ho-Chunk Nation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ho-Chunk Nation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ho-Chunk Nation therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ho-Chunk Nation's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ho-Chunk Nation, a native tribe in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ho-Chunk Nation's proposed RICO claim against the PBMs has expired. Ho-Chunk Nation filed its original complaint on February 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Ho-Chunk Nation v. McKesson Corporation et al.*, Case No. 1:19-op-45076-DAP, ECF No. 1. It is therefore indisputable that Ho-Chunk Nation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Ho-Chunk Nation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ho-Chunk Nation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ho-Chunk Nation, a native tribe in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1005. *Town of Tewksbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45077-DAP: Plaintiff Tewksbury Town, Massachusetts

Tewksbury Town's untimely motion for leave to amend should be denied for several reasons. Tewksbury Town failed to provide notice of its proposed amendments through a proposed complaint. Tewksbury Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tewksbury Town's motion should be denied due to futility, as Tewksbury Town does not assert any allegations tying the PBMs to its alleged harm, its proposed

public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tewksbury Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tewksbury Town amended its complaint on May 10, 2019, after transfer to the MDL on February 19, 2019. *See Town of Tewksbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45077-DAP, ECF No. 10. Unlike many other plaintiffs, Tewksbury Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tewksbury Town's deadline to amend was in 2019. Tewksbury Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tewksbury Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Tewksbury Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Tewksbury Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tewksbury Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tewksbury Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Tewksbury Town). That insignificant dispensing volume is much too low to support a finding of good cause for Tewksbury Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tewksbury Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tewksbury Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tewksbury Town filed its original complaint on January 23, 2019. *See Town of Tewksbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45077-DAP, ECF No. 1. Despite filing its case years ago, Tewksbury Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified

document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Tewksbury Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Tewksbury Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tewksbury Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tewksbury Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tewksbury Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tewksbury Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tewksbury Town's proposed RICO claim against the PBMs has expired. Tewksbury Town filed its original complaint on January 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other

defendants. *See Town of Tewksbury v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45077-DAP, ECF No. 1. It is therefore indisputable that Tewksbury Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Tewksbury Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tewksbury Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Tewksbury Town's public-nuisance claim against the PBMs is therefore time-barred because Tewksbury Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on January 23, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Tewksbury Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1006. *City of Nanticoke, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45081-DAP: Plaintiff Nanticoke City, Pennsylvania

Nanticoke City's untimely motion for leave to amend should be denied for several reasons. Nanticoke City failed to provide notice of its proposed amendments through a proposed complaint.

Nanticoke City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nanticoke City's motion should be denied due to futility, as Nanticoke City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Nanticoke City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nanticoke City amended its complaint on May 23, 2019, after transfer to the MDL on February 25, 2019. *See City of Nanticoke, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45081-DAP, ECF No. 6. Unlike many other plaintiffs, Nanticoke City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Nanticoke City's deadline to amend was in 2019. Nanticoke City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Nanticoke City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Nanticoke City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Nanticoke City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Nanticoke City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Nanticoke City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Nanticoke City). That insignificant dispensing volume is much too low to support a finding of good cause for Nanticoke City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Nanticoke City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Nanticoke City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Nanticoke City filed its original complaint on February 2, 2019. *See City of Nanticoke, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45081-DAP, ECF No. 1. Despite filing its case years ago, Nanticoke City *never*

implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Nanticoke City's case would force the parties and the Court to waste time and resources ascertaining the extent of Nanticoke City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Nanticoke City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Nanticoke City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nanticoke City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nanticoke City, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nanticoke City's proposed RICO claim against the PBMs has expired. Nanticoke City filed its original complaint on February

4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Nanticoke, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45081-DAP, ECF No. 1. It is therefore indisputable that Nanticoke City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Nanticoke City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nanticoke City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nanticoke City, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1007. *City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP: Plaintiff Anaconda-Deer Lodge County, Montana

Anaconda-Deer Lodge County's untimely motion for leave to amend should be denied for several reasons. Anaconda-Deer Lodge County failed to provide notice of its proposed amendments through a proposed complaint. Anaconda-Deer Lodge County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Anaconda-Deer Lodge County's motion should be denied due to futility, as Anaconda-Deer Lodge County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Anaconda-Deer Lodge County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Anaconda-Deer Lodge County amended its complaint on March 15, 2019, after transfer to the MDL on February 25, 2019. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 7. Unlike many other plaintiffs, Anaconda-Deer Lodge County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Anaconda-Deer Lodge County's deadline to amend was in 2019. Anaconda-Deer Lodge County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Anaconda-Deer Lodge County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Anaconda-Deer Lodge County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Anaconda-Deer Lodge County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Anaconda-Deer Lodge County's geographic jurisdiction during 2009 to 2019. *See*

DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Anaconda-Deer Lodge County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Anaconda-Deer Lodge County filed its original complaint on February 6, 2019. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 1. Despite filing its case years ago, Anaconda-Deer Lodge County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Anaconda-Deer Lodge County's case would force the parties and the Court to waste time and resources ascertaining the extent of Anaconda-Deer Lodge County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Anaconda-Deer Lodge County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Anaconda-Deer Lodge County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Anaconda-Deer Lodge County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Anaconda-Deer Lodge County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Anaconda-Deer Lodge County of this deficiency on September 16, 2024 (*see* Exhibit B), but Anaconda-Deer Lodge County refused to amend or supplement its Fact Sheet. Under this Court's orders, Anaconda-Deer Lodge County's

case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Anaconda-Deer Lodge County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Anaconda-Deer Lodge County's potential claims against them. Anaconda-Deer Lodge County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Anaconda-Deer Lodge County, a municipality in Montana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Anaconda-Deer Lodge County's proposed RICO claim against the PBMs has expired. Anaconda-Deer Lodge County filed its original complaint on February 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 1. It is therefore indisputable that Anaconda-Deer Lodge County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Anaconda-Deer Lodge County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other

elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Anaconda-Deer Lodge County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Anaconda-Deer Lodge County, a municipality in Montana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1008.** *City of Great Falls et al. v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45083-DAP: Plaintiff Great Falls City, Montana**

Great Falls City's untimely motion for leave to amend should be denied for several reasons. Great Falls City failed to provide notice of its proposed amendments through a proposed complaint. Great Falls City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Great Falls City's motion should be denied due to futility, as Great Falls City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Great Falls City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Great Falls City amended its complaint on March 15, 2019, after transfer to the MDL on February 25, 2019. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 7. Unlike many other plaintiffs, Great Falls City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Great Falls City's deadline to amend was in 2019. Great Falls City waited five years after its deadline to amend to seek leave to assert

claims against the PBMs. Great Falls City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Great Falls City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Great Falls City). That insignificant dispensing volume is much too low to support a finding of good cause for Great Falls City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Great Falls City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Great Falls City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Great Falls City filed its original complaint on February 6, 2019. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 1. Despite filing its case years ago, Great Falls City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Great Falls City's case would force the

parties and the Court to waste time and resources ascertaining the extent of Great Falls City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Great Falls City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Great Falls City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Great Falls City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Great Falls City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Great Falls City of this deficiency on September 16, 2024 (*see* Exhibit B), but Great Falls City refused to amend or supplement its Fact Sheet. Under this Court's orders, Great Falls City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Great Falls City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Great Falls City's potential claims against them. Great Falls City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Great Falls City, a municipality in Montana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Great Falls City's proposed RICO claim against the PBMs has expired. Great Falls City filed its original complaint on February 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 1. It is therefore indisputable that Great Falls City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Great Falls City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Great Falls City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Great Falls City, a municipality in Montana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1009. *City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP: Plaintiff Lake County, Montana

Lake County's untimely motion for leave to amend should be denied for several reasons. Lake County failed to provide notice of its proposed amendments through a proposed complaint. Lake County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lake County's motion should be denied due to futility, as Lake County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lake County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lake County amended its complaint on March 15, 2019, after transfer to the MDL on February 25, 2019. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 7. Unlike many other plaintiffs, Lake County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lake County's deadline to amend was in 2019. Lake County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lake County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lake County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Lake County). That insignificant dispensing volume is much too low to support a finding of good cause for Lake County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lake County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lake County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lake County filed its original complaint on February 6, 2019. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 1. Despite filing its case years ago, Lake County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lake County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lake County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lake County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lake County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Lake County, a municipality in Montana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lake County's proposed RICO claim against the PBMs has expired. Lake County filed its original complaint on February 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 1. It is therefore indisputable that Lake County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lake County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lake County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lake County, a municipality in Montana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1010. *City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP: Plaintiff Missoula City, Montana

Missoula City's untimely motion for leave to amend should be denied for several reasons. Missoula City failed to provide notice of its proposed amendments through a proposed complaint. Missoula City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Missoula City's motion should be denied due to futility, as Missoula City does not assert any allegations tying the PBMs to its alleged

harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Missoula City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Missoula City amended its complaint on March 15, 2019, after transfer to the MDL on February 25, 2019. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 7. Unlike many other plaintiffs, Missoula City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Missoula City's deadline to amend was in 2019. Missoula City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Missoula City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Missoula City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Missoula City). That insignificant dispensing volume is much too low to support a finding of good cause for Missoula City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Missoula City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Missoula City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Missoula City filed its original complaint on February 6, 2019. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 1. Despite filing its case years ago, Missoula City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Missoula City's case would force the parties and the Court to waste time and resources ascertaining the extent of Missoula City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Missoula City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Missoula City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Missoula City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Missoula City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Missoula City of this deficiency on September 16, 2024 (*see* Exhibit B), but Missoula City refused to amend or supplement its Fact Sheet. Under this Court's orders, Missoula City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at

1 (emphasis in original); *see* Section III.A.5, above. Missoula City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Missoula City's potential claims against them. Missoula City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Missoula City, a municipality in Montana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Missoula City's proposed RICO claim against the PBMs has expired. Missoula City filed its original complaint on February 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Great Falls et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45083-DAP, ECF No. 1. It is therefore indisputable that Missoula City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Missoula City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Missoula City's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Missoula City, a municipality in Montana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1011. *Autauga County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45086-DAP: Plaintiff Autauga County, Alabama

Autauga County's untimely motion for leave to amend should be denied for several reasons. Autauga County failed to provide notice of its proposed amendments through a proposed complaint. Autauga County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Autauga County's motion should be denied due to futility, as Autauga County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Autauga County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Autauga County filed its original complaint on February 4, 2019 and the case was transferred to the MDL on February 25, 2019. *See Autauga County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45086-DAP, ECF No. 22. Autauga County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Autauga County elected not to do so. Instead, Autauga County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Autauga County's lack

of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Autauga County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Autauga County). That insignificant dispensing volume is much too low to support a finding of good cause for Autauga County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Autauga County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Autauga County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Autauga County filed its original complaint on February 4, 2019. *See Autauga County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45086-DAP, ECF No. 1. Despite filing its case years ago, Autauga County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Autauga County's case would force the

parties and the Court to waste time and resources ascertaining the extent of Autauga County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Autauga County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Autauga County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**<u>Failure to Prosecute.</u>** In its Plaintiff Fact Sheet, Autauga County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Autauga County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Autauga County of this deficiency on September 16, 2024 (*see* Exhibit B), but Autauga County refused to amend or supplement its Fact Sheet. Under this Court's orders, Autauga County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Autauga County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Autauga County's potential claims against them. Autauga County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Autauga County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Autauga County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Autauga County's proposed RICO claim against the PBMs has expired. Autauga County filed its original complaint on February 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Autauga County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45086-DAP, ECF No. 1. It is therefore indisputable that Autauga County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Autauga County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Autauga County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Autauga County's public-nuisance claim against the PBMs is

therefore time-barred because Autauga County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on February 4, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Autauga County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Autauga County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1012.** ***County Commissioners of Charles County, Maryland v. Purdue Pharma L.P. et al.***, **Case No. 1:19-op-45094-DAP: Plaintiff Charles County, Maryland**

Charles County's untimely motion for leave to amend should be denied for several reasons. Charles County failed to provide notice of its proposed amendments through a proposed complaint. Charles County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Charles County's motion should be denied due to futility, as Charles County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Charles County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Charles County amended its complaint on March 16, 2019, after transfer to the MDL on February 26, 2019. *See County Commissioners of Charles County, Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45094-DAP, ECF No. 13. Unlike many other plaintiffs, Charles County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Charles County's deadline to amend was in 2019. Charles County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Charles County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Charles County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Charles County). That insignificant dispensing volume is much too low to support a finding of good cause for Charles County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Charles County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Charles County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Charles County filed its original complaint on February 4, 2019. *See County Commissioners of Charles County, Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45094-DAP, ECF No. 1. Despite filing its case years ago, Charles County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Charles County's case would force the parties and the Court to waste time and resources ascertaining the extent of Charles County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Charles County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Charles County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Charles County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Charles County, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Charles County's proposed RICO claim against the PBMs has expired. Charles County filed its original complaint on February 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County Commissioners of Charles County, Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45094-DAP, ECF No. 1. It is therefore indisputable that Charles County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Charles County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Charles County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Charles County's public-nuisance claim against the PBMs is therefore time-barred because Charles County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on February 4, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Charles County, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1013. *Noble County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45096-DAP: Plaintiff Noble County, Ohio

Noble County's untimely motion for leave to amend should be denied for several reasons. Noble County failed to provide notice of its proposed amendments through a proposed complaint. Noble County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Noble County's motion should be denied due to futility, as Noble County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Noble County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Noble County filed its original complaint on October 3, 2018 and the case was transferred to the MDL on February 26, 2019. *See Noble County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45096-DAP, ECF No. 45. Noble County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Noble County elected not to do so. Instead, Noble County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Noble County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Noble County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Noble County). That insignificant dispensing volume is much too low to support a finding of good cause for Noble County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Noble County filed its original complaint on October 3, 2018. *See Noble County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45096-DAP, ECF No. 1-2. Despite filing its case years ago, Noble County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Noble County's case would force the parties and the Court to waste time and resources ascertaining the extent of Noble County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Noble County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Noble County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Noble County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Noble County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Noble County of this deficiency on September 16, 2024 (*see* Exhibit B), but Noble County refused to amend or supplement its Fact Sheet. Under this Court's orders, Noble County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Noble County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Noble County's potential claims against them. Noble County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Noble County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Noble County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Noble County is a plaintiff in Ohio. Noble County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Noble County's proposed RICO claim against the PBMs has expired. Noble County filed its original complaint on October 3, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Noble County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45096-DAP, ECF No. 1-2. Even assuming *arguendo* that Noble County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 3, 2022. Noble County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Noble County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Noble County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1014. *Grant County, New Mexico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45108-DAP: Plaintiff Grant County, New Mexico

Grant County's untimely motion for leave to amend should be denied for several reasons. Grant County failed to provide notice of its proposed amendments through a proposed complaint.

Grant County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Grant County's motion should be denied due to futility, as Grant County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Grant County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Grant County amended its complaint on March 18, 2019, after directly filing in the MDL. *See Grant County, New Mexico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45108-DAP, ECF No. 2. Unlike many other plaintiffs, Grant County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Grant County's deadline to amend was in 2019. Grant County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Grant County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Grant County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Grant County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Grant County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Grant County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Grant County). That insignificant dispensing volume is much too low to support a finding of good cause for Grant County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Grant County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Grant County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Grant County's proposed RICO claim against the PBMs has expired. Grant County filed its original complaint on March 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Grant County, New Mexico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45108-DAP, ECF No. 1. It is therefore indisputable that Grant County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Grant County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Grant County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Grant County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1015.** *Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45109-DAP: Plaintiff Hospital Menonita Caguas, Inc., Puerto Rico**

Hospital Menonita Caguas, Inc.'s untimely motion for leave to amend should be denied for several reasons. Hospital Menonita Caguas, Inc. failed to provide notice of its proposed amendments through a proposed complaint. Hospital Menonita Caguas, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hospital Menonita Caguas, Inc.'s motion should be denied due to futility, as Hospital Menonita Caguas, Inc. does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hospital Menonita Caguas, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hospital Menonita Caguas, Inc. amended its complaint on March 15, 2019, after directly filing in the MDL. *See Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP, ECF No. 2. Unlike many other plaintiffs, Hospital Menonita Caguas, Inc. declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hospital Menonita Caguas, Inc.'s deadline to amend was in 2019. Hospital Menonita Caguas, Inc. waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hospital Menonita Caguas, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Hospital Menonita Caguas, Inc. filed its original complaint on March 4, 2019. *See Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP, ECF No. 1. Despite filing its case years ago, Hospital Menonita Caguas, Inc. *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hospital Menonita Caguas, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of Hospital Menonita Caguas, Inc.'s document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hospital Menonita Caguas, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hospital Menonita Caguas, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Hospital Menonita Caguas, Inc., a hospital in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hospital Menonita Caguas, Inc.'s proposed RICO claim against the PBMs has expired. Hospital Menonita Caguas, Inc. filed its original complaint on March 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP, ECF No. 1. It is therefore indisputable that Hospital Menonita Caguas, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Hospital Menonita Caguas, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hospital Menonita Caguas, Inc.'s request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hospital Menonita Caguas, Inc., a hospital in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1016. *Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP: Plaintiff Hospital Menonita Gauyama, Inc., Puerto Rico

Hospital Menonita Gauyama, Inc.'s untimely motion for leave to amend should be denied for several reasons. Hospital Menonita Gauyama, Inc. failed to provide notice of its proposed amendments through a proposed complaint. Hospital Menonita Gauyama, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hospital Menonita Gauyama, Inc.'s motion should be denied due to futility, as Hospital Menonita Gauyama, Inc. does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hospital Menonita Gauyama, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hospital Menonita Gauyama, Inc. amended its complaint on March 15, 2019, after directly filing in the MDL. *See Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP, ECF No. 2. Unlike many other plaintiffs, Hospital Menonita Gauyama, Inc. declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hospital Menonita Gauyama, Inc.'s deadline to amend was in 2019. Hospital Menonita Gauyama, Inc. waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hospital Menonita Gauyama, Inc.'s lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Hospital Menonita Gauyama, Inc. filed its original complaint on March 4, 2019. *See Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP, ECF No. 1. Despite filing its case years ago, Hospital Menonita Gauyama, Inc. *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hospital Menonita Gauyama, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of Hospital Menonita Gauyama, Inc.'s document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hospital Menonita Gauyama, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hospital Menonita Gauyama, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Hospital Menonita Gauyama, Inc., a hospital in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hospital Menonita Gauyama, Inc.'s proposed RICO claim against the PBMs has expired. Hospital Menonita Gauyama, Inc. filed its original complaint on March 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP, ECF No. 1. It is therefore indisputable that Hospital Menonita Gauyama, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Hospital Menonita Gauyama, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hospital Menonita Gauyama, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hospital Menonita Gauyama, Inc., a hospital in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 1017. *Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP: Plaintiff Mennonite General Hospital, Inc., Puerto Rico

Mennonite General Hospital, Inc.'s untimely motion for leave to amend should be denied for several reasons. Mennonite General Hospital, Inc. failed to provide notice of its proposed amendments through a proposed complaint. Mennonite General Hospital, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold

and because its untimely motion would unduly prejudice the PBMs. Moreover, Mennonite General Hospital, Inc.'s motion should be denied due to futility, as Mennonite General Hospital, Inc. does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mennonite General Hospital, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mennonite General Hospital, Inc. amended its complaint on March 15, 2019, after directly filing in the MDL. *See Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP, ECF No. 2. Unlike many other plaintiffs, Mennonite General Hospital, Inc. declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mennonite General Hospital, Inc.'s deadline to amend was in 2019. Mennonite General Hospital, Inc. waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mennonite General Hospital, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Mennonite General Hospital, Inc. filed its original complaint on March 4, 2019. *See Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP, ECF No. 1. Despite filing its case years ago, Mennonite General Hospital, Inc. *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date

Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Mennonite General Hospital, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of Mennonite General Hospital, Inc.'s document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mennonite General Hospital, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mennonite General Hospital, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Mennonite General Hospital, Inc., a hospital in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mennonite General Hospital, Inc.'s proposed RICO claim against the PBMs has expired. Mennonite General Hospital, Inc. filed its original complaint on March 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mennonite General Hospital, Inc. et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45109-DAP, ECF No. 1. It is therefore indisputable that Mennonite General Hospital, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Mennonite General Hospital, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not

discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mennonite General Hospital, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mennonite General Hospital, Inc., a hospital in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1018. *City of Medford v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45110-DAP: Plaintiff Medford City, Massachusetts

Medford City's untimely motion for leave to amend should be denied for several reasons. Medford City failed to provide notice of its proposed amendments through a proposed complaint. Medford City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Medford City's motion should be denied due to futility, as Medford City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Medford City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Medford City filed its original complaint on February 11, 2019 and the case was transferred to the MDL on March 5, 2019. *See City of Medford v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45110-DAP, ECF No. 8. Medford City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Medford City elected not to do so. Instead, Medford City waited five years after its deadline to amend to

seek leave to assert claims against the PBMs. Medford City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Medford City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Medford City). That insignificant dispensing volume is much too low to support a finding of good cause for Medford City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Medford City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Medford City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Medford City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Medford City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Medford City of this deficiency on September 16, 2024 (*see* Exhibit B), but Medford City

refused to amend or supplement its Fact Sheet. Under this Court's orders, Medford City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Medford City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Medford City's potential claims against them. Medford City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Medford City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Medford City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Medford City's proposed RICO claim against the PBMs has expired. Medford City filed its original complaint on February 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See City of Medford v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45110-DAP, ECF No. 1. It is therefore indisputable that Medford City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Medford City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Medford City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Medford City's public-nuisance claim against the PBMs is therefore time-barred because Medford City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on February 11, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Medford City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1019. *Missoula County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45112-DAP: Plaintiff Missoula County, Montana

Missoula County's untimely motion for leave to amend should be denied for several reasons. Missoula County failed to provide notice of its proposed amendments through a proposed

complaint. Missoula County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Missoula County's motion should be denied due to futility, as Missoula County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Missoula County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Missoula County amended its complaint on March 13, 2019, after transfer to the MDL on March 5, 2019, as well as on May 28, 2019 and December 22, 2020. *See Missoula County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45112-DAP, ECF Nos. 5, 6, 11. Unlike many other plaintiffs, Missoula County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Missoula County's deadline to amend was in 2019. Missoula County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Missoula County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Missoula County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Missoula County). That insignificant dispensing volume is much too low to support a finding of good cause for Missoula County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Missoula County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Missoula County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to State a Claim.** Missoula County, a municipality in Montana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Missoula County's proposed RICO claim against the PBMs has expired. Missoula County filed its original complaint on January 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Missoula County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45112-DAP, ECF No. 1. It is therefore indisputable that Missoula County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Missoula County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Missoula County's request for leave to amend to add a RICO claim should be

denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Missoula County, a municipality in Montana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1020. *Harrison County, Mississippi v. McKesson Corporation et al.*, Case No. 1:19-op-45113-DAP: Plaintiff Harrison County, Mississippi

Harrison County's untimely motion for leave to amend should be denied for several reasons. Harrison County failed to provide notice of its proposed amendments through a proposed complaint. Harrison County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Harrison County's motion should be denied due to futility, as Harrison County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Harrison County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Harrison County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Harrison County, Mississippi v. McKesson Corporation et al.*, Case No. 1:19-op-45113-DAP, ECF No. 2. Unlike many other plaintiffs, Harrison County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Harrison County's deadline to amend was in 2019. Harrison County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Harrison County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Harrison County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Harrison County). That insignificant dispensing volume is much too low to support a finding of good cause for Harrison County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Harrison County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Harrison County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Harrison County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Harrison County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Harrison County's proposed RICO claim against the PBMs has expired. Harrison County filed its original complaint on March 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Harrison County, Mississippi v. McKesson Corporation et al.*, Case No. 1:19-op-45113-DAP, ECF No. 1. It is therefore indisputable that Harrison County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Harrison County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Harrison County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Harrison County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1021. *County of Mohave v. Purdue Pharma LP et al.*, Case No. 1:19-op-45117-DAP: Plaintiff Mohave County, Arizona

Mohave County's untimely motion for leave to amend should be denied for several reasons. Mohave County failed to provide notice of its proposed amendments through a proposed complaint. Mohave County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mohave County's motion should be denied due to futility,

as Mohave County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mohave County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mohave County amended its complaint on March 13, 2019, after transfer to the MDL on March 11, 2019, as well as on May 28, 2019 and December 29, 2020. *See County of Mohave v. Purdue Pharma LP et al.*, Case No. 1:19-op-45117-DAP, ECF Nos. 8, 9, 12. Unlike many other plaintiffs, Mohave County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Mohave County's deadline to amend was in 2019. Mohave County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mohave County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mohave County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Mohave County). That insignificant dispensing volume is much too low to support a finding of good cause for Mohave County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mohave County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mohave County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Mohave County violated its basic duty to implement a timely litigation hold. Mohave County filed its original complaint on February 15, 2019, but waited until September 12, 2024 to implement a litigation hold—more than five years and six months later. *See County of Mohave v. Purdue Pharma LP et al.*, Case No. 1:19-op-45117-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 12, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Mohave County's case would force the parties and the Court to waste time and resources ascertaining the extent of Mohave County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mohave County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mohave County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Arizona law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mohave County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Arizona law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mohave County, a municipality in Arizona, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mohave County's proposed RICO claim against the PBMs has expired. Mohave County filed its original complaint on February 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Mohave v. Purdue Pharma LP et al.*, Case No. 1:19-op-45117-DAP, ECF No. 1. It is therefore indisputable that Mohave County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Mohave County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mohave County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mohave County, a municipality in Arizona, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1022.** *Town of Dennis v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:19-op-45124-DAP: Plaintiff Dennis Town, Massachusetts**

Dennis Town's untimely motion for leave to amend should be denied for several reasons. Dennis Town failed to provide notice of its proposed amendments through a proposed complaint. Dennis Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dennis Town's motion should be denied due to futility, as Dennis Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dennis Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dennis Town amended its complaint on June 10, 2019, after transfer to the MDL on March 11, 2019. *See Town of Dennis v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45124-DAP, ECF No. 10. Unlike many other plaintiffs, Dennis Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Dennis Town's deadline to amend was in 2019. Dennis Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dennis Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Dennis Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Dennis Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Dennis Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dennis Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Dennis Town). That insignificant dispensing volume is much too low to support a finding of good cause for Dennis Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Dennis Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dennis Town filed its original complaint on February 18, 2019. *See Town of Dennis v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45124-DAP, ECF No. 1. Despite filing its case years ago, Dennis Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Dennis Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Dennis Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dennis Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dennis Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dennis Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dennis Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dennis Town's proposed RICO claim against the PBMs has expired. Dennis Town filed its original complaint on February 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Dennis v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45124-DAP, ECF No. 1. It is therefore indisputable that Dennis Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Dennis Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dennis Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Dennis Town's public-nuisance claim against the PBMs is therefore time-barred because Dennis Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on February 18, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Dennis Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1023.** ***Town of Provincetown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45125-DAP: Plaintiff Provincetown Town, Massachusetts**

Provincetown Town's untimely motion for leave to amend should be denied for several reasons. Provincetown Town failed to provide notice of its proposed amendments through a proposed complaint. Provincetown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Provincetown Town's motion should be denied due to futility, as Provincetown Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Provincetown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Provincetown Town amended its complaint on June 10, 2019, after transfer to the MDL on March 11, 2019. *See Town of Provincetown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45125-DAP, ECF No. 9. Unlike many other plaintiffs, Provincetown Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Provincetown Town's deadline to amend was in 2019. Provincetown Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Provincetown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Provincetown Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Provincetown Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Provincetown Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Provincetown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Provincetown Town). That insignificant dispensing volume is much too low to support a finding of good cause for Provincetown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Provincetown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Provincetown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Provincetown Town filed its original complaint on February 15, 2019. *See Town of Provincetown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45125-DAP, ECF No. 1. Despite filing its case years ago, Provincetown Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Provincetown Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Provincetown Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Provincetown Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Provincetown Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Provincetown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time.

That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Provincetown Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Provincetown Town's proposed RICO claim against the PBMs has expired. Provincetown Town filed its original complaint on February 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Provincetown v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45125-DAP, ECF No. 1. It is therefore indisputable that Provincetown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Provincetown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Provincetown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Provincetown Town's public-nuisance claim against the PBMs is therefore time-barred because Provincetown Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on February 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Provincetown Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1024. *County of San Mateo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45126-DAP: Plaintiff San Mateo County, California

San Mateo County's untimely motion for leave to amend should be denied for several reasons. San Mateo County failed to provide notice of its proposed amendments through a proposed complaint. San Mateo County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, San Mateo County's motion should be denied due to futility, as San Mateo County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** San Mateo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, San Mateo County amended its complaint on March 15, 2019, after transfer to the MDL on March 11, 2019. *See County of San Mateo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45126-DAP, ECF No. 11. Unlike many other plaintiffs, San Mateo County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. San Mateo County's deadline to amend was in 2019. San Mateo County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. San Mateo County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of

motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to San Mateo County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for San Mateo County). That insignificant dispensing volume is much too low to support a finding of good cause for San Mateo County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to San Mateo County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for San Mateo County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to State a Claim.** San Mateo County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for San Mateo County's proposed RICO claim against the PBMs has expired. San Mateo County filed its amended complaint on

March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of San Mateo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45126-DAP, ECF No. 11. It is therefore indisputable that San Mateo County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. San Mateo County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Mateo County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Mateo County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1025. *County of Santa Barbara et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45128-DAP: Plaintiff Santa Barbara County, California

Santa Barbara County's untimely motion for leave to amend should be denied for several reasons. Santa Barbara County failed to provide notice of its proposed amendments through a proposed complaint. Santa Barbara County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Santa Barbara County's motion should be denied due to futility, as Santa Barbara County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Santa Barbara County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Santa Barbara County amended its complaint on June 5, 2019, after transfer to the MDL on March 12, 2019, as well as on January 7, 2021. *See County of Santa Barbara et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45128-DAP, ECF Nos. 19, 21. Unlike many other plaintiffs, Santa Barbara County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Santa Barbara County's deadline to amend was in 2019. Santa Barbara County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Santa Barbara County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Santa Barbara County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Santa Barbara County). That insignificant dispensing volume is much too low to support a finding of good cause for Santa Barbara County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Santa Barbara County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Santa Barbara County of the PBM services Express Scripts provides and Santa Barbara County began receiving those services on July 7, 2007. *See id.* Inasmuch as Santa Barbara County seeks to add claims against Express

Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Santa Barbara County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Santa Barbara County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**RICO Statute of Limitations.** The statute of limitations for Santa Barbara County's proposed RICO claim against the PBMs has expired. Santa Barbara County filed its original complaint on February 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Santa Barbara et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45128-DAP, ECF No. 1. It is therefore indisputable that Santa Barbara County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Santa Barbara County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Santa Barbara County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Santa Barbara County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1026.  *City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP: Plaintiff Arlington City, Georgia

Arlington City's untimely motion for leave to amend should be denied for several reasons. Arlington City failed to provide notice of its proposed amendments through a proposed complaint. Arlington City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Arlington City's motion should be denied due to futility, as Arlington City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Arlington City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Arlington City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP, ECF No. 2. Unlike many other plaintiffs, Arlington City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Arlington City's deadline to amend was in 2019. Arlington City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Arlington City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Arlington City's geographic

jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Arlington City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Arlington City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Arlington City filed its original complaint on March 12, 2019. *See City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP, ECF No. 1. Despite filing its case years ago, Arlington City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Arlington City's case would force the parties and the Court to waste time and resources ascertaining the extent of Arlington City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Arlington City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Arlington City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Arlington City has *never* served a Plaintiff Fact Sheet. Arlington City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Arlington City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Arlington City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Arlington City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Arlington City's proposed RICO claim against the PBMs has expired. Arlington City filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP, ECF No. 1. It is therefore indisputable that Arlington City knew of its RICO

injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Arlington City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Arlington City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Arlington City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1027. *City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP: Plaintiff Blakely City, Georgia

Blakely City's untimely motion for leave to amend should be denied for several reasons. Blakely City failed to provide notice of its proposed amendments through a proposed complaint. Blakely City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Blakely City's motion should be denied due to futility, as Blakely City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Blakely City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Blakely City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-

45129-DAP, ECF No. 2. Unlike many other plaintiffs, Blakely City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Blakely City's deadline to amend was in 2019. Blakely City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Blakely City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Blakely City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Blakely City). That insignificant dispensing volume is much too low to support a finding of good cause for Blakely City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Blakely City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Blakely City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Blakely City filed its original complaint on March 12, 2019. *See City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et*

*al.*, Case No. 1:19-op-45129-DAP, ECF No. 1. Despite filing its case years ago, Blakely City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Blakely City's case would force the parties and the Court to waste time and resources ascertaining the extent of Blakely City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Blakely City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Blakely City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**<u>Failure to Prosecute.</u>** In its Plaintiff Fact Sheet, Blakely City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Blakely City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Blakely City of this deficiency on September 16, 2024 (*see* Exhibit B), but Blakely City refused to amend or supplement its Fact Sheet. Under this Court's orders, Blakely City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Blakely City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Blakely City's potential claims against them. Blakely City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in

litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Blakely City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Blakely City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Blakely City's proposed RICO claim against the PBMs has expired. Blakely City filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP, ECF No. 1. It is therefore indisputable that Blakely City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Blakely City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Blakely City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Blakely City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1028.** *City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP: Plaintiff Damascus City, Georgia

Damascus City's untimely motion for leave to amend should be denied for several reasons. Damascus City failed to provide notice of its proposed amendments through a proposed complaint. Damascus City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Damascus City's motion should be denied due to futility, as Damascus City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Damascus City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Damascus City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP, ECF No. 2. Unlike many other plaintiffs, Damascus City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Damascus City's deadline to amend was in 2019. Damascus City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Damascus City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Damascus City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Damascus City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Damascus City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Damascus City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Damascus City filed its original complaint on March 12, 2019. *See City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP, ECF No. 1. Despite filing its case years ago, Damascus City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Damascus City's case would force the parties and the Court to waste time and resources ascertaining the extent of

Damascus City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Damascus City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Damascus City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

 **Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Damascus City has *never* served a Plaintiff Fact Sheet. Damascus City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Damascus City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

 **Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Damascus City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

 **Failure to State a Claim.** Damascus City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Damascus City's proposed RICO claim against the PBMs has expired. Damascus City filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Blakely, Georgia et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45129-DAP, ECF No. 1. It is therefore indisputable that Damascus City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Damascus City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Damascus City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Damascus City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1029. *Heard County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45130-DAP: Plaintiff Heard County, Georgia

Heard County's untimely motion for leave to amend should be denied for several reasons. Heard County failed to provide notice of its proposed amendments through a proposed complaint. Heard County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Heard County's motion should be denied due to futility, as Heard County does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Heard County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Heard County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Heard County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45130-DAP, ECF No. 2. Unlike many other plaintiffs, Heard County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Heard County's deadline to amend was in 2019. Heard County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Heard County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Heard County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Heard County). That insignificant dispensing volume is much too low to support a finding of good cause for Heard County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Heard County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Heard County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Heard County filed its original complaint on March 12, 2019. *See Heard County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45130-DAP, ECF No. 1. Despite filing its case years ago, Heard County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Heard County's case would force the parties and the Court to waste time and resources ascertaining the extent of Heard County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Heard County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Heard County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Heard County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Heard County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Heard County's proposed RICO claim against the PBMs has expired. Heard County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Heard County, Georgia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45130-DAP, ECF No. 1. It is therefore indisputable that Heard County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Heard County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Heard County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Heard County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1030.  *Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45132-DAP: Plaintiff Blount County, Tennessee

Blount County's untimely motion for leave to amend should be denied for several reasons. Blount County failed to provide notice of its proposed amendments through a proposed complaint. Blount County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Blount County's motion should be denied due to futility, as Blount County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Blount County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Blount County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45132-DAP, ECF No. 2. Unlike many other plaintiffs, Blount County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Blount County's deadline to amend was in 2019. Blount County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Blount County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Blount County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Blount County). That insignificant dispensing volume is much too low to support a finding of good cause for Blount County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Blount County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Blount County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Blount County filed its original complaint on March 12, 2019. *See Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45132-DAP, ECF No. 1. Despite filing its case years ago, Blount County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Blount County's case would force the parties and the Court to waste time and resources ascertaining the extent of Blount County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Blount County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Blount County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Blount County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Blount County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Blount County's proposed RICO claim against the PBMs has expired. Blount County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45132-DAP, ECF No. 1. It is therefore indisputable that Blount County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Blount County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Blount County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Blount County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1031.** *Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45132-DAP: Plaintiff Jefferson County, Tennessee**

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jefferson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jefferson County amended its complaint on March 15, 2019, after directly filing in the MDL. *See Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45132-DAP, ECF No. 2. Unlike many other plaintiffs, Jefferson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jefferson County's deadline to amend was in 2019. Jefferson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jefferson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jefferson County filed its original complaint on March 12, 2019. *See Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45132-DAP, ECF No. 1. Despite filing its case years ago, Jefferson County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Jefferson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jefferson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jefferson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jefferson County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Jefferson County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Jefferson County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Jefferson County of this deficiency on September 16, 2024 (*see* Exhibit B), but Jefferson County refused to amend or supplement its Fact Sheet. Under this Court's orders, Jefferson County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Jefferson County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Jefferson County's potential claims against them. Jefferson County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Jefferson County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Blount County, Tennessee et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45132-DAP, ECF No. 1. It is therefore indisputable that Jefferson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Jefferson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jefferson County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1032.** ***Hospital Authority of Valdosta and Lowndes County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45133-DAP: Plaintiff Valdosta And Lowndes County, Hospital Authority Of D/B/A South Georgia Medical Center, Georgia**

South Georgia Medical Center's untimely motion for leave to amend should be denied for several reasons. South Georgia Medical Center failed to provide notice of its proposed

amendments through a proposed complaint. South Georgia Medical Center also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, South Georgia Medical Center's motion should be denied due to futility, as South Georgia Medical Center does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** South Georgia Medical Center was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, South Georgia Medical Center filed its original complaint directly into the MDL on March 12, 2019. *See Hospital Authority of Valdosta and Lowndes County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45133-DAP, ECF No. 1. South Georgia Medical Center could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, South Georgia Medical Center elected not to do so. South Georgia Medical Center waited five years after its deadline to amend to seek leave to assert claims against the PBMs. South Georgia Medical Center's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** South Georgia Medical Center filed its original complaint on March 12, 2019. *See Hospital Authority of Valdosta and Lowndes County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45133-DAP, ECF No. 1. Despite filing its case

years ago, South Georgia Medical Center *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating South Georgia Medical Center's case would force the parties and the Court to waste time and resources ascertaining the extent of South Georgia Medical Center's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by South Georgia Medical Center's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and South Georgia Medical Center therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But South Georgia Medical Center's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** South Georgia Medical Center, a hospital in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for South Georgia Medical Center's proposed RICO claim against the PBMs has expired. South Georgia Medical Center filed

its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hospital Authority of Valdosta and Lowndes County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45133-DAP, ECF No. 1. It is therefore indisputable that South Georgia Medical Center knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. South Georgia Medical Center's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. South Georgia Medical Center's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Duplicative Recovery**. Jackson County Health Care Authority, a municipal health care authority, seeks leave to add the same claims and recover the same alleged damages as the related municipality, Jackson County, Alabama, a plaintiff in *Jackson County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, 1:18-op-45634-DAP. These duplicative claims are subject to dismissal and leave to amend should be denied as futile. *See* Section III.B.2, above; *cf. Firestone Laser & Mfg. LLC v. Bristow*, __ F. Supp. 3d __, 2024 WL 3819623, at *12 (N.D. Ohio Aug. 14, 2024) (dismissing claim because otherwise it would produce an impermissible double recovery).

**Plaintiff Lacks Standing.** South Georgia Medical Center, a hospital in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1033.** *Jackson County Health Care Authority v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45134-DAP: Plaintiff Jackson County Health Care Authority, Alabama

Jackson County Health Care Authority's untimely motion for leave to amend should be denied for several reasons. Jackson County Health Care Authority failed to provide notice of its proposed amendments through a proposed complaint. Jackson County Health Care Authority also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jackson County Health Care Authority's motion should be denied due to futility, as Jackson County Health Care Authority does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jackson County Health Care Authority was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jackson County Health Care Authority filed its original complaint directly into the MDL on March 14, 2019. *See Jackson County Health Care Authority v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45134-DAP, ECF No. 1. Jackson County Health Care Authority could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Jackson County Health Care Authority elected not to do so. Jackson County Health Care Authority waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jackson County Health Care Authority's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Jackson County Health Care Authority filed its original complaint on March 14, 2019. *See Jackson County Health Care Authority v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45134-DAP, ECF No. 1. Despite filing its case years ago, Jackson County Health Care Authority *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Jackson County Health Care Authority's case would force the parties and the Court to waste time and resources ascertaining the extent of Jackson County Health Care Authority's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jackson County Health Care Authority's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jackson County Health Care Authority therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jackson County Health Care Authority's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jackson County Health Care Authority, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jackson County Health Care Authority's proposed RICO claim against the PBMs has expired. Jackson County Health Care Authority filed its original complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County Health Care Authority v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45134-DAP, ECF No. 1. It is therefore indisputable that Jackson County Health Care Authority knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Jackson County Health Care Authority's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jackson County Health Care Authority's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Jackson County Health Care Authority's public-nuisance claim against the PBMs is therefore time-barred because Jackson County Health Care Authority sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has

repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Jackson County Health Care Authority, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1034. *City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45135-DAP: Plaintiff Hammondville Town, Alabama

Hammondville Town's untimely motion for leave to amend should be denied for several reasons. Hammondville Town failed to provide notice of its proposed amendments through a proposed complaint. Hammondville Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hammondville Town's motion should be denied due to futility, as Hammondville Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hammondville Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hammondville Town amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45135-DAP, ECF No. 2. Unlike many other plaintiffs, Hammondville Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hammondville Town's deadline to amend was in 2019. Hammondville Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hammondville Town's

lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Hammondville Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Hammondville Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Hammondville Town filed its original complaint on March 14, 2019. *See City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45135-DAP, ECF No. 1. Despite filing its case years ago, Hammondville Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hammondville Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Hammondville Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hammondville Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hammondville Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*,

2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hammondville Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hammondville Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hammondville Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Hammondville Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Hammondville Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hammondville Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hammondville Town's potential claims against them. Hammondville Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hammondville Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hammondville Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hammondville Town's proposed RICO claim against the PBMs has expired. Hammondville Town filed its original complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45135-DAP, ECF No. 1. It is therefore indisputable that Hammondville Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Hammondville Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hammondville Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Hammondville Town's public-nuisance claim against the PBMs is therefore time-barred because Hammondville Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Hammondville Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1035.** *City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45135-DAP: Plaintiff Rainsville City, Alabama**

Rainsville City's untimely motion for leave to amend should be denied for several reasons. Rainsville City failed to provide notice of its proposed amendments through a proposed complaint. Rainsville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rainsville City's motion should be denied due to futility, as Rainsville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rainsville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rainsville City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45135-DAP, ECF No. 2. Unlike many other plaintiffs, Rainsville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rainsville City's deadline to amend was in 2019. Rainsville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rainsville City's lack of diligence in pursuing its claims negates

any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rainsville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Rainsville City). That insignificant dispensing volume is much too low to support a finding of good cause for Rainsville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rainsville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rainsville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Rainsville City filed its original complaint on March 14, 2019. *See City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45135-DAP, ECF No. 1. Despite filing its case years ago, Rainsville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Rainsville City's case would force the parties and the Court to waste time and resources ascertaining the extent of

Rainsville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rainsville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rainsville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Rainsville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Rainsville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Rainsville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Rainsville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Rainsville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Rainsville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Rainsville City's potential claims against them. Rainsville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rainsville City's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rainsville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rainsville City's proposed RICO claim against the PBMs has expired. Rainsville City filed its original complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Rainsville, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45135-DAP, ECF No. 1. It is therefore indisputable that Rainsville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Rainsville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rainsville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Rainsville City's public-nuisance claim against the PBMs is therefore time-barred because Rainsville City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 14, 2019—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Rainsville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1036.** ***City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP: Plaintiff Leighton Town, Alabam**

Leighton Town's untimely motion for leave to amend should be denied for several reasons. Leighton Town failed to provide notice of its proposed amendments through a proposed complaint. Leighton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Leighton Town's motion should be denied due to futility, as Leighton Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leighton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leighton Town amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 2. Unlike many other plaintiffs, Leighton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Leighton Town's deadline to amend was in 2019. Leighton Town waited five years after its deadline to amend to seek leave

to assert claims against the PBMs. Leighton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Leighton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Leighton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Leighton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Leighton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Leighton Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Leighton Town filed its original complaint on March 14, 2019. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 1. Despite filing its case years ago, Leighton Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Leighton Town's case

would force the parties and the Court to waste time and resources ascertaining the extent of Leighton Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leighton Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Leighton Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leighton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leighton Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leighton Town's proposed RICO claim against the PBMs has expired. Leighton Town filed its original complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 1. It is therefore indisputable that Leighton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before

seeking leave to amend. Leighton Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leighton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Leighton Town's public-nuisance claim against the PBMs is therefore time-barred because Leighton Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Leighton Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1037.  *City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP: Plaintiff Red Bay City, Alabama

Red Bay City's untimely motion for leave to amend should be denied for several reasons. Red Bay City failed to provide notice of its proposed amendments through a proposed complaint. Red Bay City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Red Bay City's motion should be

denied due to futility, as Red Bay City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Red Bay City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Red Bay City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 2. Unlike many other plaintiffs, Red Bay City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Red Bay City's deadline to amend was in 2019. Red Bay City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Red Bay City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Red Bay City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Red Bay City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Red Bay City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Red Bay City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Red Bay City filed its original complaint on March 14, 2019. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 1. Despite filing its case years ago, Red Bay City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Red Bay City's case would force the parties and the Court to waste time and resources ascertaining the extent of Red Bay City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Red Bay City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Red Bay City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Red Bay City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Red Bay City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Red Bay City of this deficiency on September 16, 2024 (*see* Exhibit B), but Red Bay City

refused to amend or supplement its Fact Sheet. Under this Court's orders, Red Bay City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Red Bay City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Red Bay City's potential claims against them. Red Bay City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Red Bay City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Red Bay City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Red Bay City's proposed RICO claim against the PBMs has expired. Red Bay City filed its original complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-

op-45136-DAP, ECF No. 1. It is therefore indisputable that Red Bay City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Red Bay City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Red Bay City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Red Bay City's public-nuisance claim against the PBMs is therefore time-barred because Red Bay City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Red Bay City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1038.** ***City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP: Plaintiff Russellville City, Alabama**

Russellville City's untimely motion for leave to amend should be denied for several reasons. Russellville City failed to provide notice of its proposed amendments through a proposed complaint. Russellville City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Russellville City's motion should be denied due to futility, as Russellville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Russellville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Russellville City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 2. Unlike many other plaintiffs, Russellville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Russellville City's deadline to amend was in 2019. Russellville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Russellville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Russellville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Russellville City). That insignificant dispensing volume is much

too low to support a finding of good cause for Russellville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Russellville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Russellville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Russellville City filed its original complaint on March 14, 2019. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 1. Despite filing its case years ago, Russellville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Russellville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Russellville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Russellville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Russellville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Russellville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Russellville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Russellville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Russellville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Russellville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Russellville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Russellville City's potential claims against them. Russellville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Russellville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Russellville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Russellville City's proposed RICO claim against the PBMs has expired. Russellville City filed its original complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 1. It is therefore indisputable that Russellville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Russellville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Russellville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Russellville City's public-nuisance claim against the PBMs is therefore time-barred because Russellville City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Russellville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1039.** *City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45136-DAP: Plaintiff Sheffield City, Alabama**

Sheffield City's untimely motion for leave to amend should be denied for several reasons. Sheffield City failed to provide notice of its proposed amendments through a proposed complaint. Sheffield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheffield City's motion should be denied due to futility, as Sheffield City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheffield City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheffield City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 2. Unlike many other plaintiffs, Sheffield City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheffield City's deadline to amend was in 2019. Sheffield City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheffield City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Sheffield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Sheffield City). That insignificant dispensing volume is much too low to support a finding of good cause for Sheffield City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheffield City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheffield City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheffield City filed its original complaint on March 14, 2019. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 1. Despite filing its case years ago, Sheffield City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheffield City's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheffield City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheffield City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheffield City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheffield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheffield City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheffield City's proposed RICO claim against the PBMs has expired. Sheffield City filed its original complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Red Bay, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45136-DAP, ECF No. 1. It is therefore indisputable that Sheffield City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheffield City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheffield City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Sheffield City's public-nuisance claim against the PBMs is therefore time-barred because Sheffield City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sheffield City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1040. *Iberville Parish Council v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45140-DAP: Plaintiff Iberville Parish Council, Louisiana

Iberville Parish Council's untimely motion for leave to amend should be denied for several reasons. Iberville Parish Council failed to provide notice of its proposed amendments through a proposed complaint. Iberville Parish Council also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Iberville Parish Council's motion should be denied due to futility, as Iberville Parish Council does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Iberville Parish Council was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Iberville Parish Council filed its original complaint on January 15, 2019 and the case was transferred to the MDL on March 14, 2019. *See Iberville Parish Council v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45140-DAP, ECF No. 15. Iberville Parish Council could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Iberville Parish Council elected not to do so. Instead, Iberville Parish Council waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Iberville Parish Council's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Iberville Parish Council's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Iberville Parish Council). That insignificant dispensing volume is much too low to support a finding of good cause for Iberville Parish Council to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Iberville Parish Council's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too

low to support a finding of good cause for Iberville Parish Council to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Iberville Parish Council filed its original complaint on January 15, 2019. *See Iberville Parish Council v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45140-DAP, ECF No. 1-3. Despite filing its case years ago, Iberville Parish Council *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Iberville Parish Council's case would force the parties and the Court to waste time and resources ascertaining the extent of Iberville Parish Council's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Iberville Parish Council's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Iberville Parish Council therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Iberville Parish Council failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Iberville Parish Council's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Iberville Parish Council of this deficiency on September 16, 2024 (*see* Exhibit B), but Iberville Parish Council refused to amend or supplement its Fact Sheet. Under this Court's orders, Iberville Parish Council's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Iberville Parish Council's refusal to provide basic information related to its health care plans

prejudices the PBMs' ability to defend against Iberville Parish Council's potential claims against them. Iberville Parish Council's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Iberville Parish Council's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Iberville Parish Council, a municipality in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Iberville Parish Council's proposed RICO claim against the PBMs has expired. Iberville Parish Council filed its original complaint on January 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Iberville Parish Council v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45140-DAP, ECF No. 1-3. It is therefore indisputable that Iberville Parish Council knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years

before seeking leave to amend. Iberville Parish Council's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Iberville Parish Council's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to an one-year limitations period. Iberville Parish Council's public-nuisance claim against the PBMs is therefore time-barred because Iberville Parish Council sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on January 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Iberville Parish Council, a municipality in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1041.** *City of Vestavia Hills, Alabama v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45141-DAP: Plaintiff Vestavia Hills City, Alabama**

Vestavia Hills City's untimely motion for leave to amend should be denied for several reasons. Vestavia Hills City failed to provide notice of its proposed amendments through a proposed complaint. Vestavia Hills City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Vestavia Hills City's motion should be denied due to

futility, as Vestavia Hills City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Vestavia Hills City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Vestavia Hills City amended its complaint on March 15, 2019, after directly filing in the MDL. *See City of Vestavia Hills, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45141-DAP, ECF No. 2. Unlike many other plaintiffs, Vestavia Hills City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Vestavia Hills City's deadline to amend was in 2019. Vestavia Hills City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Vestavia Hills City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Vestavia Hills City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Vestavia Hills City). That insignificant dispensing volume is much too low to support a finding of good cause for Vestavia Hills City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Vestavia Hills City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Vestavia Hills City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Vestavia Hills City filed its original complaint on March 14, 2019. *See City of Vestavia Hills, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45141-DAP, ECF No. 1. Despite filing its case years ago, Vestavia Hills City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Vestavia Hills City's case would force the parties and the Court to waste time and resources ascertaining the extent of Vestavia Hills City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Vestavia Hills City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Vestavia Hills City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Vestavia Hills City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Vestavia Hills City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Vestavia Hills City's proposed RICO claim against the PBMs has expired. Vestavia Hills City filed its original complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Vestavia Hills, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45141-DAP, ECF No. 1. It is therefore indisputable that Vestavia Hills City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Vestavia Hills City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Vestavia Hills City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Vestavia Hills City's public-nuisance claim against the PBMs is therefore time-barred because Vestavia Hills City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Vestavia Hills City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1042.** ***Jones County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45142-DAP: Plaintiff Jones County, North Carolina**

Jones County's untimely motion for leave to amend should be denied for several reasons. Jones County failed to provide notice of its proposed amendments through a proposed complaint. Jones County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jones County's motion should be denied due to futility, as Jones County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jones County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jones County amended its complaint on June 13, 2019, after transfer to the MDL on March 15, 2019. *See Jones County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45142-DAP, ECF No. 14. Unlike many other plaintiffs, Jones County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jones County's deadline to amend was in 2019. Jones County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jones County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after

the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jones County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jones County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jones County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jones County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Jones County). That insignificant dispensing volume is much too low to support a finding of good cause for Jones County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jones County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jones County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Jones County violated its basic duty to implement a timely litigation hold. Jones County filed its original complaint on February 26, 2019, but waited until December 16, 2019 to implement a litigation hold—more than nine months later. *See Jones County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45142-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 16, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jones County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jones County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jones County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jones County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jones County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jones County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jones County's proposed RICO claim against the PBMs has expired. Jones County filed its original complaint on February 26, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jones County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45142-DAP, ECF No. 1. It is therefore indisputable that Jones County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Jones County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jones County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jones County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1043.** *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45143-DAP: Plaintiff Attentus Mouton, LLC d/b/a Lawrence Medical Center, Alabama**

Attentus Mouton, LLC d/b/a Lawrence Medical Center's untimely motion for leave to amend should be denied for several reasons. Attentus Mouton, LLC d/b/a Lawrence Medical Center failed to provide notice of its proposed amendments through a proposed complaint. Attentus Mouton, LLC d/b/a Lawrence Medical Center also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Attentus Mouton, LLC d/b/a Lawrence Medical Center's motion should be denied due to futility, as Attentus Mouton, LLC d/b/a Lawrence Medical Center does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Attentus Mouton, LLC d/b/a Lawrence Medical Center was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Attentus Mouton, LLC d/b/a Lawrence Medical Center amended its complaint on July 29, 2020, after directly filing in the MDL. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 4. Unlike many other plaintiffs, Attentus Mouton, LLC d/b/a Lawrence Medical Center declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Attentus Mouton, LLC d/b/a Lawrence Medical Center's deadline to amend was in 2019. Attentus Mouton, LLC d/b/a Lawrence Medical Center waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Attentus Mouton, LLC d/b/a Lawrence Medical Center's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling

order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Attentus Mouton, LLC d/b/a Lawrence Medical Center filed its original complaint on March 15, 2019. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. Despite filing its case years ago, Attentus Mouton, LLC d/b/a Lawrence Medical Center *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Attentus Mouton, LLC d/b/a Lawrence Medical Center's case would force the parties and the Court to waste time and resources ascertaining the extent of Attentus Mouton, LLC d/b/a Lawrence Medical Center's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Attentus Mouton, LLC d/b/a Lawrence Medical Center's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Attentus Mouton, LLC d/b/a Lawrence Medical Center therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Attentus Mouton, LLC d/b/a Lawrence Medical Center's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant

evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Attentus Mouton, LLC d/b/a Lawrence Medical Center, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Attentus Mouton, LLC d/b/a Lawrence Medical Center's proposed RICO claim against the PBMs has expired. Attentus Mouton, LLC d/b/a Lawrence Medical Center filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. It is therefore indisputable that Attentus Mouton, LLC d/b/a Lawrence Medical Center knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Attentus Mouton, LLC d/b/a Lawrence Medical Center's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Attentus Mouton, LLC d/b/a Lawrence Medical Center's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Attentus Mouton, LLC d/b/a Lawrence Medical Center's public-nuisance claim against the PBMs is therefore time-barred because Attentus Mouton, LLC d/b/a

Lawrence Medical Center sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Attentus Mouton, LLC d/b/a Lawrence Medical Center, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1044. *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45143-DAP: Plaintiff Health Care Authority of Morgan County - Decatur City, Alabama**

Health Care Authority of Morgan County - Decatur City's untimely motion for leave to amend should be denied for several reasons. Health Care Authority of Morgan County - Decatur City failed to provide notice of its proposed amendments through a proposed complaint. Health Care Authority of Morgan County - Decatur City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Health Care Authority of Morgan County - Decatur City's motion should be denied due to futility, as Health Care Authority of Morgan County - Decatur City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Health Care Authority of Morgan County - Decatur City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Health Care Authority of Morgan County - Decatur

City amended its complaint on July 29, 2020, after directly filing in the MDL. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 4. Unlike many other plaintiffs, Health Care Authority of Morgan County - Decatur City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Health Care Authority of Morgan County - Decatur City's deadline to amend was in 2019. Health Care Authority of Morgan County - Decatur City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Health Care Authority of Morgan County - Decatur City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Health Care Authority of Morgan County - Decatur City filed its original complaint on March 15, 2019. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. Despite filing its case years ago, Health Care Authority of Morgan County - Decatur City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Health Care Authority of Morgan County - Decatur City's case would force the parties and the Court to waste time and resources ascertaining the extent of Health Care Authority of Morgan County - Decatur City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Health Care Authority of Morgan County - Decatur City's disregard for its most

basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Health Care Authority of Morgan County - Decatur City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Health Care Authority of Morgan County - Decatur City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Health Care Authority of Morgan County - Decatur City, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Health Care Authority of Morgan County - Decatur City's proposed RICO claim against the PBMs has expired. Health Care Authority of Morgan County - Decatur City filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. It is therefore indisputable that Health Care Authority of Morgan County - Decatur City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Health Care Authority of Morgan County

- Decatur City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Health Care Authority of Morgan County - Decatur City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Health Care Authority of Morgan County - Decatur City's public-nuisance claim against the PBMs is therefore time-barred because Health Care Authority of Morgan County - Decatur City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Health Care Authority of Morgan County - Decatur City, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1045.** ***Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff Health Care Authority of the City of Huntsville d/b/a HH Health System, Alabama**

Health Care Authority of the City of Huntsville d/b/a HH Health System's untimely motion for leave to amend should be denied for several reasons. Health Care Authority of the City of Huntsville d/b/a HH Health System failed to provide notice of its proposed amendments through a proposed complaint. Health Care Authority of the City of Huntsville d/b/a HH Health System

also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Health Care Authority of the City of Huntsville d/b/a HH Health System's motion should be denied due to futility, as Health Care Authority of the City of Huntsville d/b/a HH Health System does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Health Care Authority of the City of Huntsville d/b/a HH Health System was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Health Care Authority of the City of Huntsville d/b/a HH Health System amended its complaint on July 29, 2020, after directly filing in the MDL. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 4. Unlike many other plaintiffs, Health Care Authority of the City of Huntsville d/b/a HH Health System declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Health Care Authority of the City of Huntsville d/b/a HH Health System's deadline to amend was in 2019. Health Care Authority of the City of Huntsville d/b/a HH Health System waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Health Care Authority of the City of Huntsville d/b/a HH Health System's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Health Care Authority of the City of Huntsville d/b/a HH Health System filed its original complaint on March 15, 2019. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. Despite filing its case years ago, Health Care Authority of the City of Huntsville d/b/a HH Health System *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Health Care Authority of the City of Huntsville d/b/a HH Health System's case would force the parties and the Court to waste time and resources ascertaining the extent of Health Care Authority of the City of Huntsville d/b/a HH Health System's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Health Care Authority of the City of Huntsville d/b/a HH Health System's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Health Care Authority of the City of Huntsville d/b/a HH Health System therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Health Care Authority of the City of Huntsville d/b/a HH Health System's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Health Care Authority of the City of Huntsville d/b/a HH Health System, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** The Health Care Authority of the City of Huntsville is listed as a plaintiff under four different names in *The Health Care Authority of the City of Huntsville, et al. v. Purdue Pharm L.P., et al.*, No. 1:19-op-45143-DAP, ECF No. 1. The Health Care Authority of the City of Huntsville is now purporting to seek leave to amend under each of those four separate names. *See* Moving Plaintiffs Nos. 1045–1048. The Health Care Authority of the City of Huntsville's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Health Care Authority of the City of Huntsville d/b/a HH Health System's proposed RICO claim against the PBMs has expired. Health Care Authority of the City of Huntsville d/b/a HH Health System filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. It is therefore indisputable that Health Care Authority of the City of Huntsville d/b/a HH Health System knew of its RICO injury, at the very

latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Health Care Authority of the City of Huntsville d/b/a HH Health System's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Health Care Authority of the City of Huntsville d/b/a HH Health System's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Health Care Authority of the City of Huntsville d/b/a HH Health System's public-nuisance claim against the PBMs is therefore time-barred because Health Care Authority of the City of Huntsville d/b/a HH Health System sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Health Care Authority of the City of Huntsville d/b/a HH Health System, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1046.** ***Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital, Alabama**

Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's untimely motion for leave to amend should be denied for several reasons. Health Care Authority of the City

of Huntsville d/b/a Huntsville Hospital failed to provide notice of its proposed amendments through a proposed complaint. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's motion should be denied due to futility, as Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital amended its complaint on July 29, 2020, after directly filing in the MDL. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 4. Unlike many other plaintiffs, Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's deadline to amend was in 2019. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital filed its original complaint on March 15, 2019. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. Despite filing its case years ago, Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's case would force the parties and the Court to waste time and resources ascertaining the extent of Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of

relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** The Health Care Authority of the City of Huntsville is listed as a plaintiff under four different names in *The Health Care Authority of the City of Huntsville, et al. v. Purdue Pharm L.P., et al.*, No. 1:19-op-45143-DAP, ECF No. 1. The Health Care Authority of the City of Huntsville is now purporting to seek leave to amend under each of those four separate names. *See* Moving Plaintiffs Nos. 1045–1048. The Health Care Authority of the City of Huntsville's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's proposed RICO claim against the PBMs has expired. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P.*

he

*et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. It is therefore indisputable that Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital's public-nuisance claim against the PBMs is therefore time-barred because Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1047.   ***Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff Health Care**

### Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children, Alabama

Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's untimely motion for leave to amend should be denied for several reasons. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children failed to provide notice of its proposed amendments through a proposed complaint. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's motion should be denied due to futility, as Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children amended its complaint on July 29, 2020, after directly filing in the MDL. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 4. Unlike many other plaintiffs, Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's deadline to amend was in 2019. Health Care

Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children filed its original complaint on March 15, 2019. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. Despite filing its case years ago, Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's case would force the parties and the Court to waste time and resources ascertaining the extent of Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and

Children therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** The Health Care Authority of the City of Huntsville is listed as a plaintiff under four different names in *The Health Care Authority of the City of Huntsville, et al. v. Purdue Pharm L.P., et al.*, No. 1:19-op-45143-DAP, ECF No. 1. The Health Care Authority of the City of Huntsville is now purporting to seek leave to amend under each of those four separate names. *See* Moving Plaintiffs Nos. 1045–1048. The Health Care Authority of the City of Huntsville's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL

5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's proposed RICO claim against the PBMs has expired. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. It is therefore indisputable that Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children's public-nuisance claim against the PBMs is therefore time-

barred because Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1048. *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45143-DAP: Plaintiff Health Care Authority of the City of Huntsville d/b/a Madison Hospital, Alabama**

Health Care Authority of the City of Huntsville d/b/a Madison Hospital's untimely motion for leave to amend should be denied for several reasons. Health Care Authority of the City of Huntsville d/b/a Madison Hospital failed to provide notice of its proposed amendments through a proposed complaint. Health Care Authority of the City of Huntsville d/b/a Madison Hospital also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Health Care Authority of the City of Huntsville d/b/a Madison Hospital's motion should be denied due to futility, as Health Care Authority of the City of Huntsville d/b/a Madison Hospital does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Health Care Authority of the City of Huntsville d/b/a Madison Hospital was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Health Care Authority of the City of Huntsville d/b/a Madison Hospital amended its complaint on July 29, 2020, after directly filing in the MDL. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 4. Unlike many other plaintiffs, Health Care Authority of the City of Huntsville d/b/a Madison Hospital declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Health Care Authority of the City of Huntsville d/b/a Madison Hospital's deadline to amend was in 2019. Health Care Authority of the City of Huntsville d/b/a Madison Hospital waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Health Care Authority of the City of Huntsville d/b/a Madison Hospital's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Health Care Authority of the City of Huntsville d/b/a Madison Hospital filed its original complaint on March 15, 2019. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. Despite filing its case years ago, Health Care Authority of the City of Huntsville d/b/a Madison Hospital *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Health Care Authority of the City of Huntsville d/b/a Madison Hospital's case would force the

parties and the Court to waste time and resources ascertaining the extent of Health Care Authority of the City of Huntsville d/b/a Madison Hospital's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Health Care Authority of the City of Huntsville d/b/a Madison Hospital's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Health Care Authority of the City of Huntsville d/b/a Madison Hospital therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Health Care Authority of the City of Huntsville d/b/a Madison Hospital's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Health Care Authority of the City of Huntsville d/b/a Madison Hospital, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** The Health Care Authority of the City of Huntsville is listed as a plaintiff under four different names in *The Health Care Authority of the City of Huntsville, et al. v. Purdue Pharm L.P., et al.*, No. 1:19-op-45143-DAP, ECF No. 1. The Health

Care Authority of the City of Huntsville is now purporting to seek leave to amend under each of those four separate names. *See* Moving Plaintiffs Nos. 1045–1048. The Health Care Authority of the City of Huntsville's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Health Care Authority of the City of Huntsville d/b/a Madison Hospital's proposed RICO claim against the PBMs has expired. Health Care Authority of the City of Huntsville d/b/a Madison Hospital filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. It is therefore indisputable that Health Care Authority of the City of Huntsville d/b/a Madison Hospital knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Health Care Authority of the City of Huntsville d/b/a Madison Hospital's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Health Care Authority of the City of Huntsville d/b/a Madison Hospital's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Health Care Authority of the City of Huntsville d/b/a Madison Hospital's public-nuisance claim against the PBMs is therefore time-barred because Health Care Authority of the City of Huntsville d/b/a Madison Hospital sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Health Care Authority of the City of Huntsville d/b/a Madison Hospital, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1049.** *Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital, Alabama

HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's untimely motion for leave to amend should be denied for several reasons. HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital failed to provide notice of its proposed amendments through a proposed complaint. HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's motion should be denied due to futility, as HH Health System-Athens

Limestone, LLC d/b/a Athens Limestone Hospital does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital amended its complaint on July 29, 2020, after directly filing in the MDL. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 4. Unlike many other plaintiffs, HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's deadline to amend was in 2019. HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital waited five years after its deadline to amend to seek leave to assert claims against the PBMs. HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital filed its original complaint on March 15, 2019. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-

DAP, ECF No. 1. Despite filing its case years ago, HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's case would force the parties and the Court to waste time and resources ascertaining the extent of HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended

complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's proposed RICO claim against the PBMs has expired. HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. It is therefore indisputable that HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital's public-nuisance claim against the PBMs is therefore time-barred because HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the

applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** HH Health System-Athens Limestone, LLC d/b/a Athens Limestone Hospital, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1050.** ***Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP: Plaintiff HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway, Alabama**

HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's untimely motion for leave to amend should be denied for several reasons. HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway failed to provide notice of its proposed amendments through a proposed complaint. HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's motion should be denied due to futility, as HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway was on notice of its claims against the PBMs for

years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.
Moreover, HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur
Morgan Hospital-Parkway amended its complaint on July 29, 2020, after directly filing in the
MDL. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*,
Case No. 1:19-op-45143-DAP, ECF No. 4. Unlike many other plaintiffs, HH Health System-
Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway
declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. HH
Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan
Hospital-Parkway's deadline to amend was in 2019. HH Health System-Morgan, LLC d/b/a
Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway waited five years after
its deadline to amend to seek leave to assert claims against the PBMs. HH Health System-Morgan,
LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's lack of
diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879
(affirming denial of motion to amend nine months after the scheduling order's deadline because
plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704
F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach"
instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** HH Health System-Morgan, LLC d/b/a Decatur
Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway filed its original complaint on
March 15, 2019. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P.
et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. Despite filing its case years ago, HH Health
System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-
Parkway *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232;

5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's case would force the parties and the Court to waste time and resources ascertaining the extent of HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's proposed RICO claim against the PBMs has expired. HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. It is therefore indisputable that HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway's public-nuisance claim against the PBMs is therefore time-barred because HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-

Decatur and Decatur Morgan Hospital-Parkway sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** HH Health System-Morgan, LLC d/b/a Decatur Morgan Hospital-Decatur and Decatur Morgan Hospital-Parkway, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1051.** ***Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.***, **Case No. 1:19-op-45143-DAP: Plaintiff HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital, Alabama**

HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's untimely motion for leave to amend should be denied for several reasons. HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital failed to provide notice of its proposed amendments through a proposed complaint. HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's motion should be denied due to futility, as HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of

limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital amended its complaint on July 29, 2020, after directly filing in the MDL. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 4. Unlike many other plaintiffs, HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's deadline to amend was in 2019. HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital waited five years after its deadline to amend to seek leave to assert claims against the PBMs. HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital filed its original complaint on March 15, 2019. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. Despite filing its case years ago, HH Health System-Shoals, LLC D/B/A

Helen Keller Hospital and Red Bay Hospital *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's case would force the parties and the Court to waste time and resources ascertaining the extent of HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended

complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's proposed RICO claim against the PBMs has expired. HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Health Care Authority of the City of Huntsville et al. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45143-DAP, ECF No. 1. It is therefore indisputable that HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital's public-nuisance claim against the PBMs is therefore time-barred because HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March

15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** HH Health System-Shoals, LLC D/B/A Helen Keller Hospital and Red Bay Hospital, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1052.  *Wooten v. Purdue Pharmaceuticals, L.P. et al.*, Case No. 1:19-op-45145-DAP: Plaintiff Sheriff of Coffee County, Georgia

Sheriff of Coffee County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Coffee County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Coffee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Coffee County's motion should be denied due to futility, as Sheriff of Coffee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Coffee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Coffee County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Wooten v. Purdue Pharmaceuticals, L.P. et al.*, Case No. 1:19-op-45145-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Coffee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Coffee County's deadline to amend was in 2019. Sheriff of Coffee County waited five years after its deadline to amend to

seek leave to assert claims against the PBMs. Sheriff of Coffee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Coffee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Coffee County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Coffee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Coffee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Coffee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Coffee County filed its original complaint on March 22, 2019. *See Wooten v. Purdue Pharmaceuticals, L.P. et al.*, Case No. 1:19-op-45145-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Coffee County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF

No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Coffee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Coffee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Coffee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Coffee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Coffee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Coffee County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Coffee County's proposed RICO claim against the PBMs has expired. Sheriff of Coffee County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wooten v. Purdue Pharmaceuticals, L.P. et al.*, Case No. 1:19-op-45145-

DAP, ECF No. 1. It is therefore indisputable that Sheriff of Coffee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Coffee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Coffee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Coffee County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1053. *Walker v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45146-DAP: Plaintiff Sheriff of Crawford County, Georgia

Sheriff of Crawford County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Crawford County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Crawford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Crawford County's motion should be denied due to futility, as Sheriff of Crawford County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Crawford County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A,

above. Moreover, Sheriff of Crawford County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Walker v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45146-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Crawford County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Crawford County's deadline to amend was in 2019. Sheriff of Crawford County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Crawford County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Crawford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Crawford County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Crawford County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Crawford County filed its original complaint on March 22, 2019. *See Walker v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45146-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Crawford County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Crawford County's case would

force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Crawford County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Crawford County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Crawford County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Crawford County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Crawford County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Crawford County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Crawford County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Crawford County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Crawford County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Crawford County's potential claims against them. Sheriff of Crawford County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Crawford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Crawford County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Crawford County's proposed RICO claim against the PBMs has expired. Sheriff of Crawford County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Walker v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45146-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Crawford County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Crawford County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Crawford County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Crawford County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1054. *Jolley v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45147-DAP: Plaintiff Sheriff of Harris County, Georgia

Sheriff of Harris County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Harris County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Harris County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Harris County's motion should be denied due to futility, as Sheriff of Harris County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Harris County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Harris County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Jolley v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45147-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Harris County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Harris County's deadline to amend was in 2019. Sheriff of Harris County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Harris County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Sheriff of Harris County filed its original complaint on March 22, 2019. *See Jolley v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45147-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Harris County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Harris County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Harris County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Harris County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Harris County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Harris County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Harris County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Harris County's proposed RICO claim against the PBMs has expired. Sheriff of Harris County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jolley v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45147-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Harris County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Harris County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Harris County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Harris County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1055. *Jump v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45155-DAP: Plaintiff Sheriff of Glynn County, Georgia

Sheriff of Glynn County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Glynn County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Glynn County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff

of Glynn County's motion should be denied due to futility, as Sheriff of Glynn County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Glynn County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Glynn County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Jump v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45155-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Glynn County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Glynn County's deadline to amend was in 2019. Sheriff of Glynn County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Glynn County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Glynn County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Sheriff of Glynn County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Glynn County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Glynn County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Glynn County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Glynn County filed its original complaint on March 22, 2019. *See Jump v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45155-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Glynn County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Glynn County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Glynn County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Glynn County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Glynn County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Glynn County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Glynn County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Glynn County of this deficiency on September 16, 2024 (*see*

Exhibit B), but Sheriff of Glynn County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Glynn County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Glynn County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Glynn County's potential claims against them. Sheriff of Glynn County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Glynn County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Glynn County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Sheriff of Glynn County seeks leave to amend to add claims against the PBMs in two cases: *Glynn County, Georgia v. Purdue Pharma, L.P., et al.*, No.

1:18-op-46115-DAP; and *Jump v. Purdue Pharma L.P., et al.*, No. 1:19-OP-45155-DAP. Sheriff of Glynn County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Glynn County's proposed RICO claim against the PBMs has expired. Sheriff of Glynn County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jump v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45155-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Glynn County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Glynn County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Glynn County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Glynn County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1056.** *County of Albany, New York v. Cardinal Health, Inc. et al.*, **Case No. 1:19-op-45159-DAP: Plaintiff Albany County, New York**

Albany County's untimely motion for leave to amend should be denied for several reasons. Albany County failed to provide notice of its proposed amendments through a proposed complaint. Albany County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Albany County's motion should be denied due to futility, as Albany County does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Albany County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, *above.* Moreover, *Albany* County amended its complaint on June 19, 2019, after transfer to the MDL on March 25, 2019. *See County of Albany, New York v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45159-DAP, ECF No. 9. Unlike many other plaintiffs, Albany County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Albany County's deadline to amend was in 2019. Albany County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Albany County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Albany County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Albany County, through its counsel, was on

notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Albany County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Albany County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Albany County). That insignificant dispensing volume is much too low to support a finding of good cause for Albany County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Albany County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Albany County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Albany County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Albany County of the PBM services Express Scripts provides and Albany County began receiving those services on November 1, 2010. *See id.* Inasmuch as Albany County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Albany County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Albany County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Albany County filed its original complaint on February 27, 2019. *See County of Albany, New York v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45159-DAP, ECF No. 1. Despite filing its case years ago, Albany County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Albany County's case would force the parties and the Court to waste time and resources ascertaining the extent of Albany County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Albany County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Albany County therefore lacks good

cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Albany County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Plaintiff Filed a Separate PBM Case.** Albany County previously filed an opioid case outside the MDL against the PBMs on May 6, 2024. *See County of Albany, New York v. Express Scripts, Inc., et al.*, Case No. 1:24-cv-777 (N.D.N.Y.), ECF No. 1-1. Albany County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF No. 23. By suing the PBMs outside the MDL in 2024, Albany County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Albany County's proposed RICO claim against the PBMs has expired. Albany County filed its original complaint on February 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Albany, New York v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45159-DAP, ECF No. 1. It is therefore indisputable that Albany County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend.

Albany County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Albany County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

### 1057.  *Bohannon v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45161-DAP: Plaintiff Sheriff of Jeff Davis County, Georgia

Sheriff of Jeff Davis County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Jeff Davis County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Jeff Davis County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Jeff Davis County's motion should be denied due to futility, as Sheriff of Jeff Davis County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Jeff Davis County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Jeff Davis County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Bohannon v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45161-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Jeff Davis County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Jeff Davis County's deadline to amend was in 2019. Sheriff of Jeff Davis County waited five years after its

deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Jeff Davis County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Jeff Davis County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Sheriff of Jeff Davis County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Jeff Davis County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Jeff Davis County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Jeff Davis County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Jeff Davis County filed its original complaint on March 22, 2019. *See Bohannon v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45161-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Jeff Davis County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF

No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Jeff Davis County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Jeff Davis County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Jeff Davis County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Jeff Davis County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Jeff Davis County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Jeff Davis County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Jeff Davis County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Jeff Davis County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Jeff Davis County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Jeff Davis County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Jeff Davis County's potential claims against them. Sheriff of Jeff Davis County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel

does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Jeff Davis County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Jeff Davis County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Jeff Davis County's proposed RICO claim against the PBMs has expired. Sheriff of Jeff Davis County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bohannon v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45161-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Jeff Davis County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Jeff Davis County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Jeff Davis County's request for leave to amend

to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Jeff Davis County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1058. *Reece v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45162-DAP: Plaintiff Sheriff of Jones County, Georgia

Sheriff of Jones County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Jones County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Jones County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Jones County's motion should be denied due to futility, as Sheriff of Jones County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Jones County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Jones County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Reece v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45162-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Jones County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Jones County's deadline to amend was in 2019. Sheriff of Jones County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Jones County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Jones County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Sheriff of Jones County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Jones County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Jones County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Jones County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Jones County filed its original complaint on March 22, 2019. *See Reece v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45162-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Jones County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Jones County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Jones

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Jones County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Jones County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Jones County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Jones County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Jones County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Jones County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Jones County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Jones County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Jones County's potential claims against them. Sheriff of Jones County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Jones County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Jones County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Jones County's proposed RICO claim against the PBMs has expired. Sheriff of Jones County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Reece v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45162-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Jones County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Jones County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Jones County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Jones County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1059. *Dean v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45163-DAP: Plaintiff Sheriff of Laurens County, Georgia

Sheriff of Laurens County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Laurens County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Laurens County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Laurens County's motion should be denied due to futility, as Sheriff of Laurens County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Laurens County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Laurens County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Dean v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45163-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Laurens County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Laurens County's deadline to amend was in 2019. Sheriff of Laurens County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Laurens County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all

the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Laurens County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Sheriff of Laurens County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Laurens County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Laurens County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Laurens County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Laurens County filed its original complaint on March 22, 2019. *See Dean v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45163-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Laurens County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Laurens County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Laurens County's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Laurens County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Laurens County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Laurens County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Laurens County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Laurens County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Laurens County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Laurens County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Laurens County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Laurens County's potential claims against them. Sheriff of Laurens County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Laurens County's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Laurens County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Sheriff of Laurens County seeks leave to amend to add claims against the PBMs in two cases: *Laurens County, Georgia v. Amerisourcebergen Drug Corporation, et al.*, No. 1:18-op-45945-DAP; and *Dean v. Purdue Pharma L.P., et al.*, No. 1:19-op-45163-DAP. Sheriff of Laurens County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Laurens County's proposed RICO claim against the PBMs has expired. Sheriff of Laurens County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Dean v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45163-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Laurens County knew of its RICO injury, at the very

latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Laurens County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Laurens County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Laurens County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1060. *Langford v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45164-DAP: Plaintiff Sheriff of Murray County, Georgia

Sheriff of Murray County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Murray County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Murray County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Murray County's motion should be denied due to futility, as Sheriff of Murray County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Murray County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Murray County amended its complaint on June 20, 2019, after directly filing

in the MDL. *See Langford v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45164-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Murray County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Murray County's deadline to amend was in 2019. Sheriff of Murray County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Murray County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Murray County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Sheriff of Murray County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Murray County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Murray County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Murray County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Murray County filed its original complaint on March 22, 2019. *See Langford v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45164-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Murray County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Murray County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Murray County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Murray County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Murray County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Murray County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Murray County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Murray County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Murray County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Murray County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Murray County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Murray County's potential claims against them. Sheriff of Murray County's failure to diligently prosecute its case, coupled

with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Murray County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Murray County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Sheriff of Murray County seeks leave to amend to add claims against the PBMs in two cases: *City of Rome, et al. v. Purdue Pharma L.P., et al.*, No. 1:19-op-45282-DAP; and *Langford v. Purdue Pharma, L.P. et al.*, No. 1:19-op-45164-DAP. Sheriff of Murray County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's

inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Murray County's proposed RICO claim against the PBMs has expired. Sheriff of Murray County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Langford v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45164-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Murray County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Murray County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Murray County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Murray County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1061. *Berry v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45165-DAP: Plaintiff Sheriff of Oconee County, Georgia

Sheriff of Oconee County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Oconee County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Oconee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Sheriff of Oconee County's motion should be denied due to futility, as Sheriff of Oconee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Oconee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Oconee County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Berry v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45165-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Oconee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Oconee County's deadline to amend was in 2019. Sheriff of Oconee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Oconee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Oconee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Sheriff of Oconee County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Oconee County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Oconee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Oconee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Oconee County filed its original complaint on March 22, 2019. *See Berry v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45165-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Oconee County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Oconee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Oconee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Oconee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Oconee County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Oconee County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Oconee County's health plans,

carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Oconee County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Oconee County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Oconee County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Oconee County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Oconee County's potential claims against them. Sheriff of Oconee County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Oconee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Oconee County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Oconee County's proposed RICO claim against the PBMs has expired. Sheriff of Oconee County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Berry v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45165-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Oconee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Oconee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Oconee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Oconee County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1062. *Bennett v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45166-DAP: Plaintiff Sheriff of Pierce County, Georgia

Sheriff of Pierce County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Pierce County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Pierce County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Pierce County's motion should be denied due to futility, as Sheriff of Pierce County does not assert any allegations tying the PBMs to its alleged

harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Pierce County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Pierce County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Bennett v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45166-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Pierce County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Pierce County's deadline to amend was in 2019. Sheriff of Pierce County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Pierce County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Pierce County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Sheriff of Pierce County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Pierce County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Pierce County filed its original complaint on March 22, 2019. *See Bennett v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45166-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Pierce County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Pierce County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Pierce County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Pierce County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Pierce County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Pierce County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Pierce County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Sheriff of Pierce County seeks leave to amend to add claims against the PBMs in two cases: *Pierce County, Georgia v. Amerisourcebergen Drug Corporation, et al.*, No. 1:18-op-46107-DAP; and *Bennett v. Purdue Pharma L.P., et al.*, No. 1:19-op-45166-DAP. Sheriff of Pierce County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Pierce County's proposed RICO claim against the PBMs has expired. Sheriff of Pierce County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bennett v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45166-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Pierce County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Pierce County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Pierce County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Pierce County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1063. *Kile v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45167-DAP: Plaintiff Sheriff of Screven County, Georgia

Sheriff of Screven County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Screven County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Screven County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Screven County's motion should be denied due to futility, as Sheriff of Screven County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Screven County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Screven County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Kile v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45167-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Screven County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Screven County's deadline to amend was in 2019. Sheriff of Screven County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Screven County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all

the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Screven County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.20% market share for Sheriff of Screven County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Screven County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Screven County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Screven County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Screven County filed its original complaint on March 22, 2019. *See Kile v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45167-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Screven County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Screven County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Screven County's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Screven County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Screven County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Screven County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Screven County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Screven County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Screven County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Screven County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Screven County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Screven County's potential claims against them. Sheriff of Screven County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Screven County's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Screven County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Screven County's proposed RICO claim against the PBMs has expired. Sheriff of Screven County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Kile v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45167-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Screven County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Screven County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Screven County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Screven County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1064.** *Scarbrough v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45168-DAP: Plaintiff Sheriff of Tift County, Georgia

Sheriff of Tift County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Tift County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Tift County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Tift County's motion should be denied due to futility, as Sheriff of Tift County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Tift County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Tift County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Scarbrough v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45168-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Tift County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Tift County's deadline to amend was in 2019. Sheriff of Tift County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Tift County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Sheriff of Tift County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Tift County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Tift County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Tift County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Tift County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Tift County filed its original complaint on March 22, 2019. *See Scarbrough v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45168-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Tift County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Tift County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Tift County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Tift County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Tift County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at

*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Tift County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Tift County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Tift County's proposed RICO claim against the PBMs has expired. Sheriff of Tift County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Scarbrough v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45168-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Tift County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Tift County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Tift County's request for leave to amend to

add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Tift County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1065. *Royal v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45169-DAP: Plaintiff Sheriff of Ware County, Georgia

Sheriff of Ware County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Ware County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Ware County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Ware County's motion should be denied due to futility, as Sheriff of Ware County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Ware County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Ware County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Royal v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45169-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Ware County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Ware County's deadline to amend was in 2019. Sheriff of Ware County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Ware County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Ware County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Sheriff of Ware County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Ware County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Ware County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Ware County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Ware County filed its original complaint on March 22, 2019. *See Royal v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45169-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Ware County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Ware County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Ware

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Ware County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Ware County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Ware County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Ware County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Ware County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Ware County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Ware County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Ware County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Ware County's potential claims against them. Sheriff of Ware County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Ware County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Ware County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Ware County's proposed RICO claim against the PBMs has expired. Sheriff of Ware County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Royal v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45169-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Ware County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Ware County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Ware County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Ware County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1066. *Carter v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45170-DAP: Plaintiff Sheriff of Wayne County, Georgia

Sheriff of Wayne County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Wayne County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Wayne County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Wayne County's motion should be denied due to futility, as Sheriff of Wayne County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Wayne County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Wayne County amended its complaint on June 20, 2019, after directly filing in the MDL. *See Carter v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45170-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Wayne County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Wayne County's deadline to amend was in 2019. Sheriff of Wayne County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Wayne County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Wayne County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Sheriff of Wayne County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Wayne County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Wayne County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Wayne County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Wayne County filed its original complaint on March 22, 2019. *See Carter v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45170-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Wayne County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Wayne County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Wayne County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The

PBMs are prejudiced by Sheriff of Wayne County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Wayne County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Wayne County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Wayne County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Wayne County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Wayne County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Wayne County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Wayne County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Wayne County's potential claims against them. Sheriff of Wayne County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Wayne County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Wayne County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Wayne County's proposed RICO claim against the PBMs has expired. Sheriff of Wayne County filed its original complaint on March 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Carter v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45170-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Wayne County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Wayne County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Wayne County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Wayne County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1067.**  *Aroostook County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45183-DAP: Plaintiff Aroostook County, Maine

Aroostook County's untimely motion for leave to amend should be denied for several reasons. Aroostook County failed to provide notice of its proposed amendments through a proposed complaint. Aroostook County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Aroostook County's motion should be denied due to futility, as Aroostook County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Aroostook County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Aroostook County filed its original complaint on November 21, 2018 and the case was transferred to the MDL on March 27, 2019. *See Aroostook County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45183-DAP, ECF No. 57. Aroostook County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Aroostook County elected not to do so. Instead, Aroostook County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Aroostook County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Aroostook County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Aroostook County). That insignificant dispensing volume is much too low to support a finding of good cause for Aroostook County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Aroostook County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Aroostook County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Aroostook County of this deficiency on September 16, 2024 (*see* Exhibit B), but Aroostook County refused to amend or supplement its Fact Sheet. Under this Court's orders, Aroostook County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Aroostook County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Aroostook County's potential claims against them. Aroostook County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Aroostook County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Aroostook County, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Aroostook County is a plaintiff in Maine. Aroostook County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Aroostook County's proposed RICO claim against the PBMs has expired. Aroostook County filed its original complaint on November 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Aroostook County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45183-DAP, ECF No. 1-2. Even assuming *arguendo* that Aroostook County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2022. Aroostook County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see*

Section III.B.4, above. Aroostook County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Aroostook County, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1068. *Penobscot County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45184-DAP: Plaintiff Penobscot County, Maine

Penobscot County's untimely motion for leave to amend should be denied for several reasons. Penobscot County failed to provide notice of its proposed amendments through a proposed complaint. Penobscot County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Penobscot County's motion should be denied due to futility, as Penobscot County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Penobscot County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Penobscot County filed its original complaint on November 21, 2018 and the case was transferred to the MDL on March 27, 2019. *See Penobscot County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45184-DAP, ECF No. 53. Penobscot County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Penobscot County elected not to do so. Instead, Penobscot County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Penobscot

County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Penobscot County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Penobscot County). That insignificant dispensing volume is much too low to support a finding of good cause for Penobscot County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Penobscot County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Penobscot County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Penobscot County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Penobscot County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Penobscot County of this deficiency on September 16, 2024 (*see* Exhibit B), but Penobscot County refused to amend or supplement its Fact Sheet. Under this

Court's orders, Penobscot County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Penobscot County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Penobscot County's potential claims against them. Penobscot County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Penobscot County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Penobscot County, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Penobscot County is a plaintiff in Maine. Penobscot County's request for leave to add the PBMs as defendants to a public nuisance claim

should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Penobscot County's proposed RICO claim against the PBMs has expired. Penobscot County filed its original complaint on November 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Penobscot County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45184-DAP, ECF No. 1-2. Even assuming *arguendo* that Penobscot County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2022. Penobscot County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Penobscot County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Penobscot County, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1069. *Washington County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45185-DAP: Plaintiff Washington County, Maine

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due

to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County filed its original complaint on November 26, 2018 and the case was transferred to the MDL on March 27, 2019. *See Washington County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45185-DAP, ECF No. 57. Washington County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Washington County elected not to do so. Instead, Washington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Washington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Washington County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Washington County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Washington County of this deficiency on September 16, 2024 (*see* Exhibit B), but Washington County refused to amend or supplement its Fact Sheet. Under this Court's orders, Washington County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Washington County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Washington County's potential claims against them. Washington County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Washington County is a plaintiff in Maine. Washington County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its original complaint on November 26, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Washington County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45185-DAP, ECF No. 1-2. Even assuming *arguendo* that Washington County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 26, 2022. Washington County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add

a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washington County, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1070. *Cheyenne & Arapaho Tribes v. McKesson Corporation et al.*, Case No. 1:19-op-45187-DAP: Plaintiff Cheyenne & Arapaho Tribes, Oklahoma

Cheyenne & Arapaho Tribes' untimely motion for leave to amend should be denied for several reasons. Cheyenne & Arapaho Tribes failed to provide notice of their proposed amendments through a proposed complaint. Cheyenne & Arapaho Tribes also lack good cause under Rule 15 or Rule 16 due to a lack of diligence, and because their untimely motion would unduly prejudice the PBMs. Moreover, Cheyenne & Arapaho Tribes' motion should be denied due to futility, as Cheyenne & Arapaho Tribes do not assert any allegations tying the PBMs to their alleged harm, their proposed public nuisance claim is barred by state law in Oklahoma, their RICO claim is barred by the statute of limitations, and they lack standing to assert claims under New York state law.

**Lack of Diligence.** Cheyenne & Arapaho Tribes were on notice of their claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cheyenne & Arapaho Tribes filed their original complaint on December 14, 2018 and the case was transferred to the MDL on March 27, 2019. *See Cheyenne & Arapaho Tribes v. McKesson Corporation et al.*, Case No. 1:19-op-45187-DAP, ECF No. 11. Cheyenne & Arapaho Tribes could have amended their complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Cheyenne & Arapaho Tribes elected not to do so. Instead, Cheyenne & Arapaho Tribes waited five years after their

deadline to amend to seek leave to assert claims against the PBMs. Cheyenne & Arapaho Tribes' lack of diligence in pursuing their claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Cheyenne & Arapaho Tribes' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Cheyenne & Arapaho Tribes' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cheyenne & Arapaho Tribes' delay in seeking to amend their complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cheyenne & Arapaho Tribes, together a single tribal government in Oklahoma, have not pleaded any facts showing that the PBMs caused or substantially

contributed to their injuries. Instead, they rely exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Cheyenne & Arapaho Tribes seek leave to amend to add claims against the PBMs in three cases: *Cheyenne & Arapaho Tribes v. McKesson Corporation, et al.*, No. 1:19-op-45187-DAP; *Cheyenne and Arapaho Tribes v. Purdue Pharma LP, et al.*, No. 1:19-op-45231-DAP; and *Cheyenne & Arapaho Tribes v. Watson Laboratories Inc., et al.*, No. 1:19-op-45232-DAP. Cheyenne & Arapaho Tribes' impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Cheyenne & Arapaho Tribes are a plaintiff in Oklahoma. Cheyenne & Arapaho Tribes' request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Cheyenne & Arapaho Tribes' proposed RICO claim against the PBMs has expired. Cheyenne & Arapaho Tribes filed their original complaint on December 14, 2018, alleging the same type of injuries for which they now seeks to recover under RICO against the PBMs. *See Cheyenne & Arapaho Tribes v. McKesson Corporation et al.*, Case No. 1:19-op-45187-DAP, ECF No. 1-3. Even assuming *arguendo* that

Cheyenne & Arapaho Tribes first learned of their injury on the day they filed their original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 14, 2022. Cheyenne & Arapaho Tribes' RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cheyenne & Arapaho Tribes' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cheyenne & Arapaho Tribes, together a single tribal government in Oklahoma, lack standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1071. *City of Auburn v. Purdue Pharma LP et al.*, Case No. 1:19-op-45188-DAP: Plaintiff Auburn City, Maine

Auburn City's untimely motion for leave to amend should be denied for several reasons. Auburn City failed to provide notice of its proposed amendments through a proposed complaint. Auburn City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Auburn City's motion should be denied due to futility, as Auburn City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Auburn City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Auburn City filed its original complaint on November 21, 2018 and the case was transferred to the

MDL on March 28, 2019. *See City of Auburn v. Purdue Pharma LP et al.*, Case No. 1:19-op-45188-DAP, ECF No. 53. Auburn City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Auburn City elected not to do so. Instead, Auburn City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Auburn City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Auburn City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Auburn City). That insignificant dispensing volume is much too low to support a finding of good cause for Auburn City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Auburn City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Auburn City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Auburn City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Auburn City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Auburn City of this deficiency on September 16, 2024 (*see* Exhibit B), but Auburn City refused to amend or supplement its Fact Sheet. Under this Court's orders, Auburn City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Auburn City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Auburn City's potential claims against them. Auburn City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Auburn City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Auburn City, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Auburn City is a plaintiff in Maine. Auburn City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Auburn City's proposed RICO claim against the PBMs has expired. Auburn City filed its original complaint on November 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Auburn v. Purdue Pharma LP et al.*, Case No. 1:19-op-45188-DAP, ECF No. 1-15. Even assuming *arguendo* that Auburn City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2022. Auburn City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Auburn City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Auburn City, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1072. *Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45190-DAP: Plaintiff Lincoln County, Maine

Lincoln County's untimely motion for leave to amend should be denied for several reasons. Lincoln County failed to provide notice of its proposed amendments through a proposed complaint. Lincoln County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would

unduly prejudice the PBMs. Moreover, Lincoln County's motion should be denied due to futility, as Lincoln County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lincoln County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lincoln County filed its original complaint on November 21, 2018 and the case was transferred to the MDL on March 28, 2019. *See Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45190-DAP, ECF No. 53. Lincoln County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Lincoln County elected not to do so. Instead, Lincoln County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lincoln County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lincoln County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Lincoln County). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lincoln County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lincoln County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lincoln County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lincoln County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lincoln County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lincoln County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lincoln County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lincoln County's potential claims against them. Lincoln County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lincoln County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lincoln County, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lincoln County is a plaintiff in Maine. Lincoln County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Lincoln County's proposed RICO claim against the PBMs has expired. Lincoln County filed its original complaint on November 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Lincoln County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45190-DAP, ECF No. 1-2. Even assuming *arguendo* that Lincoln County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2022. Lincoln County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lincoln County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lincoln County, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1073. *York County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45191-DAP: Plaintiff York County, Maine

York County's untimely motion for leave to amend should be denied for several reasons. York County failed to provide notice of its proposed amendments through a proposed complaint. York County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, York County's motion should be denied due to futility, as York County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** York County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, York County filed its original complaint on November 21, 2018 and the case was transferred to the MDL on March 28, 2019. *See York County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45191-DAP, ECF No. 52. York County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, York County elected not to do so. Instead, York County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. York County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion

to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to York County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for York County). That insignificant dispensing volume is much too low to support a finding of good cause for York County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to York County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for York County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, York County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to York County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified York County of this deficiency on September 16, 2024 (*see* Exhibit B), but York County refused to amend or supplement its Fact Sheet. Under this Court's orders, York County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1

(emphasis in original); *see* Section III.A.5, above. York County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against York County's potential claims against them. York County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But York County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** York County, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** York County is a plaintiff in Maine. York County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for York County's proposed RICO claim against the PBMs has expired. York County filed its original complaint on November

21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See York County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45191-DAP, ECF No. 1-2. Even assuming *arguendo* that York County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2022. York County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. York County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** York County, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1074. *City of Waterville v. Purdue Pharma LP et al.*, Case No. 1:19-op-45193-DAP: Plaintiff Waterville City, Maine

Waterville City's untimely motion for leave to amend should be denied for several reasons. Waterville City failed to provide notice of its proposed amendments through a proposed complaint. Waterville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Waterville City's motion should be denied due to futility, as Waterville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Waterville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Waterville City filed its original complaint on November 21, 2018 and the case was transferred to the MDL on March 28, 2019. *See City of Waterville v. Purdue Pharma LP et al.*, Case No. 1:19-op-45193-DAP, ECF No. 56. Waterville City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Waterville City elected not to do so. Instead, Waterville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Waterville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Waterville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Waterville City). That insignificant dispensing volume is much too low to support a finding of good cause for Waterville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Waterville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Waterville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Waterville City violated its basic duty to implement a timely litigation hold. Waterville City filed its original complaint on November 21, 2018, but waited until June 19, 2020 to implement a litigation hold—more than a year and a half later. *See City of Waterville v. Purdue Pharma LP et al.*, Case No. 1:19-op-45193-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 19, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Waterville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Waterville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Waterville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Waterville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Waterville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Waterville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Waterville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Waterville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Waterville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at

1 (emphasis in original); *see* Section III.A.5, above. Waterville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Waterville City's potential claims against them. Waterville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Waterville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Waterville City, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Waterville City is a plaintiff in Maine. Waterville City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Waterville City's proposed RICO claim against the PBMs has expired. Waterville City filed its original complaint on

November 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Waterville v. Purdue Pharma LP et al.*, Case No. 1:19-op-45193-DAP, ECF No. 1-2. Even assuming *arguendo* that Waterville City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2022. Waterville City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Waterville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Waterville City, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1075. *Androscoggin County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45205-DAP: Plaintiff Androscoggin County, Maine

Androscoggin County's untimely motion for leave to amend should be denied for several reasons. Androscoggin County failed to provide notice of its proposed amendments through a proposed complaint. Androscoggin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Androscoggin County's motion should be denied due to futility, as Androscoggin County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Androscoggin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Androscoggin County filed its original complaint on November 21, 2018 and the case was transferred to the MDL on March 28, 2019. *See Androscoggin County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45205-DAP, ECF No. 56. Androscoggin County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Androscoggin County elected not to do so. Instead, Androscoggin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Androscoggin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Androscoggin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Androscoggin County). That insignificant dispensing volume is much too low to support a finding of good cause for Androscoggin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Androscoggin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Androscoggin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Androscoggin County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Androscoggin County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Androscoggin County of this deficiency on September 16, 2024 (*see* Exhibit B), but Androscoggin County refused to amend or supplement its Fact Sheet. Under this Court's orders, Androscoggin County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Androscoggin County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Androscoggin County's potential claims against them. Androscoggin County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Androscoggin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Androscoggin County, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Androscoggin County is a plaintiff in Maine. Androscoggin County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Androscoggin County's proposed RICO claim against the PBMs has expired. Androscoggin County filed its original complaint on November 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Androscoggin County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45205-DAP, ECF No. 1-1. Even assuming *arguendo* that Androscoggin County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2022. Androscoggin County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Androscoggin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Androscoggin County, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1076.** *City of Geneva, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45214-DAP: Plaintiff Geneva City, New York

Geneva City's untimely motion for leave to amend should be denied for several reasons. Geneva City failed to provide notice of its proposed amendments through a proposed complaint. Geneva City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Geneva City's motion should be denied due to futility, as Geneva City does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Geneva City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Geneva City amended its complaint on June 14, 2019, after transfer to the MDL on April 1, 2019. *See City of Geneva, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45214-DAP, ECF No. 76. Unlike many other plaintiffs, Geneva City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Geneva City's deadline to amend was in 2019. Geneva City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Geneva City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Geneva City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Geneva City). That insignificant dispensing volume is much too low to support a finding of good cause for Geneva City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Geneva City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Geneva City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Geneva City filed its original complaint on March 13, 2019. *See City of Geneva, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45214-DAP, ECF No. 1. Despite filing its case years ago, Geneva City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Geneva City's case would force the parties and the Court to waste time and resources ascertaining the extent of Geneva City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Geneva City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Geneva City therefore lacks good cause for leave to amend

its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Geneva City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Geneva City's proposed RICO claim against the PBMs has expired. Geneva City filed its original complaint on March 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Geneva, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45214-DAP, ECF No. 1. It is therefore indisputable that Geneva City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Geneva City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Geneva City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Geneva City, a city in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state

of New York. *See* Section III.B.6, above. Geneva City's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1077. *Board of County Commissioners of the County of Otero, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45216-DAP: Plaintiff Otero County, New Mexico

Otero County's untimely motion for leave to amend should be denied for several reasons. Otero County failed to provide notice of its proposed amendments through a proposed complaint. Otero County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Otero County's motion should be denied due to futility, as Otero County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Otero County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Otero County amended its complaint on June 28, 2019, after transfer to the MDL on April 1, 2019. *See Board of County Commissioners of the County of Otero, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45216-DAP, ECF No. 7. Unlike many other plaintiffs, Otero County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Otero County's deadline to amend was in 2019. Otero County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Otero County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Otero County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Otero County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Otero County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Otero County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Otero County). That insignificant dispensing volume is much too low to support a finding of good cause for Otero County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Otero County violated its basic duty to implement a timely litigation hold. Otero County filed its original complaint on March 12, 2019, but waited until December 13, 2019 to implement a litigation hold—nine months later. *See Board of County Commissioners of the County of Otero, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45216-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Otero County's case would force the parties and the Court to waste time and resources ascertaining the extent of Otero County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Otero County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Otero County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Otero County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Otero County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Otero County's proposed RICO claim against the PBMs has expired. Otero County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Otero, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45216-DAP, ECF No. 1. It is therefore indisputable that Otero County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Otero County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Otero County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Otero County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1078. *County of Navajo v. Purdue Pharma LP et al.*, Case No. 1:19-op-45217-DAP: Plaintiff Navajo County, Arizona

Navajo County's untimely motion for leave to amend should be denied for several reasons. Navajo County failed to provide notice of its proposed amendments through a proposed complaint. Navajo County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Navajo County's motion should be denied due to futility, as Navajo County does not assert any allegations tying the

PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Navajo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Navajo County amended its complaint on June 5, 2019, after transfer to the MDL on April 1, 2019, as well as on January 7, 2021. *See County of Navajo v. Purdue Pharma LP et al.*, Case No. 1:19-op-45217-DAP, ECF Nos. 8, 9. Unlike many other plaintiffs, Navajo County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Navajo County's deadline to amend was in 2019. Navajo County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Navajo County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Navajo County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.25% market share for Navajo County). That insignificant dispensing volume is much too low to support a finding of good cause for Navajo County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Arizona law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Navajo County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Arizona law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Navajo County, a municipality in Arizona, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Navajo County's proposed RICO claim against the PBMs has expired. Navajo County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Navajo v. Purdue Pharma LP et al.*, Case No. 1:19-op-45217-DAP, ECF No. 1. It is therefore indisputable that Navajo County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Navajo County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Navajo County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Navajo County, a municipality in Arizona, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1079.** *City of Beverly v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45219-DAP: Plaintiff Beverly City, Massachusetts

Beverly City's untimely motion for leave to amend should be denied for several reasons. Beverly City failed to provide notice of its proposed amendments through a proposed complaint. Beverly City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Beverly City's motion should be denied due to futility, as Beverly City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Beverly City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Beverly City amended its complaint on June 28, 2019, after transfer to the MDL on April 2, 2019. *See City of Beverly v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45219-DAP, ECF No. 11. Unlike many other plaintiffs, Beverly City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Beverly City's deadline to amend was in 2019. Beverly City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Beverly City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Beverly City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Beverly City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Beverly City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Beverly City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Beverly City). That insignificant dispensing volume is much too low to support a finding of good cause for Beverly City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Beverly City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Beverly City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Beverly City filed its original complaint on March 4, 2019. *See City of Beverly v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45219-DAP, ECF No. 1. Despite filing its case years ago, Beverly City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Beverly City's case would force the parties and the Court to waste time and resources ascertaining the extent of Beverly City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Beverly City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Beverly City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Beverly City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Beverly City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Beverly City's proposed RICO claim against the PBMs has expired. Beverly City filed its original complaint on March 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Beverly v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45219-DAP, ECF No. 1. It is therefore indisputable that Beverly City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Beverly City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Beverly City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Beverly City's public-nuisance claim against the PBMs is therefore time-barred because Beverly City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 4, 2019—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Beverly City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1080.** *City of Memphis v. Purdue Pharma, L.P. et al.***, Case No. 1:19-op-45220-DAP: Plaintiff Memphis City, Tennessee**

Memphis City's untimely motion for leave to amend should be denied for several reasons. Memphis City failed to provide notice of its proposed amendments through a proposed complaint. Memphis City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Memphis City's motion should be denied due to futility, as Memphis City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Memphis City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Memphis City amended its complaint on July 1, 2019, after transfer to the MDL on April 2, 2019. *See City of Memphis v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45220-DAP, ECF No. 29. Unlike many other plaintiffs, Memphis City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Memphis City's deadline to amend was in 2019. Memphis City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Memphis City's lack of diligence in pursuing its claims negates any finding of good

cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Memphis City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Memphis City). That insignificant dispensing volume is much too low to support a finding of good cause for Memphis City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Memphis City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Memphis City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Memphis City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Memphis City of the PBM services Express Scripts provides and Memphis City began receiving those services on January 1, 2018. *See id.* Inasmuch as Memphis City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl.

¶¶ 733, 741, 786–816, 821–22, 845), Memphis City knew or should have known of the alleged wrongful conduct more than six years before moving to amend. *See* Section III.A.3, above. Memphis City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Memphis City filed its original complaint on March 7, 2019. *See City of Memphis v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45220-DAP, ECF No. 1. Despite filing its case years ago, Memphis City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Memphis City's case would force the parties and the Court to waste time and resources ascertaining the extent of Memphis City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Memphis City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Memphis City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Memphis City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Memphis City, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Memphis City's proposed RICO claim against the PBMs has expired. Memphis City filed its original complaint on March 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Memphis v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45220-DAP, ECF No. 1. It is therefore indisputable that Memphis City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Memphis City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Memphis City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Memphis City, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1081. *City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:19-op-45221-DAP: Plaintiff Lakewood City, Washington

Lakewood City's untimely motion for leave to amend should be denied for several reasons. Lakewood City failed to provide notice of its proposed amendments through a proposed complaint. Lakewood City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lakewood City's motion should be denied due to futility, as Lakewood City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lakewood City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lakewood City amended its complaint on June 17, 2019, after transfer to the MDL on April 2, 2019. *See City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:19-op-45221-DAP, ECF No. 6. Unlike many other plaintiffs, Lakewood City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lakewood City's deadline to amend was in 2019. Lakewood City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lakewood City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Lakewood City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Lakewood City). That insignificant dispensing volume is much too low to support a finding of good cause for Lakewood City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lakewood City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lakewood City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lakewood City filed its original complaint on March 6, 2019. *See City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:19-op-45221-DAP, ECF No. 1. Despite filing its case years ago, Lakewood City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lakewood City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lakewood City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lakewood City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lakewood City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lakewood City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lakewood City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lakewood City's proposed RICO claim against the PBMs has expired. Lakewood City filed its original complaint on March 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lakewood v. Purdue Pharma LP et al.*, Case No. 1:19-op-45221-DAP, ECF No. 1. It is therefore indisputable that Lakewood City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lakewood City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lakewood City's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Lakewood City's public-nuisance claim against the PBMs is therefore time-barred because Lakewood City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 6, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lakewood City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1082.** ***County Commission of Washington County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45222-DAP: Plaintiff Washington County, Oklahoma**

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Oklahoma, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County filed its original complaint on March 12, 2019 and the case was transferred to the MDL on April 2, 2019. *See County Commission of Washington County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45222-DAP, ECF No. 7. Washington County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Washington County elected not to do so. Instead, Washington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Washington County filed its original complaint on March 12, 2019. *See County Commission of Washington County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45222-DAP, ECF No. 1. Despite filing its case years ago,

Washington County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Washington County's case would force the parties and the Court to waste time and resources ascertaining the extent of Washington County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Washington County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Washington County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Washington County is a plaintiff in Oklahoma. Washington County's request for leave to add the PBMs as defendants to a public

nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County Commission of Washington County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45222-DAP, ECF No. 1. It is therefore indisputable that Washington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Washington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washington County, a municipality in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1083.** ***County Commission of Okmulgee County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45223-DAP: Plaintiff Okmulgee County, Oklahoma**

Okmulgee County's untimely motion for leave to amend should be denied for several reasons. Okmulgee County failed to provide notice of its proposed amendments through a proposed complaint. Okmulgee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would

unduly prejudice the PBMs. Moreover, Okmulgee County's motion should be denied due to futility, as Okmulgee County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Oklahoma, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Okmulgee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Okmulgee County filed its original complaint on March 12, 2019 and the case was transferred to the MDL on April 2, 2019. *See County Commission of Okmulgee County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45223-DAP, ECF No. 7. Okmulgee County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Okmulgee County elected not to do so. Instead, Okmulgee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Okmulgee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Okmulgee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Okmulgee County). That insignificant dispensing volume is much too low to support a finding of good cause for Okmulgee County to add dispensing

claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Okmulgee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Okmulgee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Okmulgee County filed its original complaint on March 12, 2019. *See County Commission of Okmulgee County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45223-DAP, ECF No. 1. Despite filing its case years ago, Okmulgee County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Okmulgee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Okmulgee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Okmulgee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Okmulgee County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Okmulgee County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Okmulgee County, a municipality in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Okmulgee County is a plaintiff in Oklahoma. Okmulgee County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Okmulgee County's proposed RICO claim against the PBMs has expired. Okmulgee County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County Commission of Okmulgee County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45223-DAP, ECF No. 1. It is therefore indisputable that Okmulgee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Okmulgee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Okmulgee County's request for leave to

amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Okmulgee County, a municipality in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1084.** ***County Commission of Rogers County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45224-DAP: Plaintiff Rogers County, Oklahoma**

Rogers County's untimely motion for leave to amend should be denied for several reasons. Rogers County failed to provide notice of its proposed amendments through a proposed complaint. Rogers County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rogers County's motion should be denied due to futility, as Rogers County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Oklahoma, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rogers County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rogers County filed its original complaint on March 12, 2019 and the case was transferred to the MDL on April 2, 2019. *See County Commission of Rogers County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45224-DAP, ECF No. 7. Rogers County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Rogers County elected not to do so. Instead, Rogers County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rogers County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*,

972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rogers County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Rogers County). That insignificant dispensing volume is much too low to support a finding of good cause for Rogers County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rogers County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rogers County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Rogers County filed its original complaint on March 12, 2019. *See County Commission of Rogers County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45224-DAP, ECF No. 1. Despite filing its case years ago, Rogers County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Rogers County's case would force the parties and the Court to waste time and resources ascertaining the extent of Rogers

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rogers County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rogers County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rogers County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rogers County, a municipality in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Rogers County is a plaintiff in Oklahoma. Rogers County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Rogers County's proposed RICO claim against the PBMs has expired. Rogers County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County Commission of Rogers County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45224-DAP, ECF No. 1. It is therefore indisputable that Rogers County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Rogers County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rogers County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rogers County, a municipality in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1085.** ***County Commission of Nowata County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45225-DAP: Plaintiff Nowata County, Oklahoma**

Nowata County's untimely motion for leave to amend should be denied for several reasons. Nowata County failed to provide notice of its proposed amendments through a proposed complaint. Nowata County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nowata County's motion should be denied due to futility, as Nowata County does not assert any allegations tying the PBMs to its alleged harm, its proposed

public nuisance claim is barred by state law in Oklahoma, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Nowata County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nowata County filed its original complaint on March 12, 2019 and the case was transferred to the MDL on April 2, 2019. *See County Commission of Nowata County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45225-DAP, ECF No. 8. Nowata County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Nowata County elected not to do so. Instead, Nowata County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Nowata County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Nowata County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Nowata County). That insignificant dispensing volume is much too low to support a finding of good cause for Nowata County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Nowata County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Nowata County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Nowata County filed its original complaint on March 12, 2019. *See County Commission of Nowata County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45225-DAP, ECF No. 1. Despite filing its case years ago, Nowata County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Nowata County's case would force the parties and the Court to waste time and resources ascertaining the extent of Nowata County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Nowata County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Nowata County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nowata County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nowata County, a municipality in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Nowata County is a plaintiff in Oklahoma. Nowata County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Nowata County's proposed RICO claim against the PBMs has expired. Nowata County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County Commission of Nowata County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45225-DAP, ECF No. 1. It is therefore indisputable that Nowata County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Nowata County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nowata County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nowata County, a municipality in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1086.** *County Commission of Creek County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45226-DAP: Plaintiff Creek County, Oklahoma

Creek County's untimely motion for leave to amend should be denied for several reasons. Creek County failed to provide notice of its proposed amendments through a proposed complaint. Creek County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Creek County's motion should be denied due to futility, as Creek County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Oklahoma, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Creek County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Creek County filed its original complaint on March 12, 2019 and the case was transferred to the MDL on April 2, 2019. *See County Commission of Creek County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45226-DAP, ECF No. 7. Creek County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Creek County elected not to do so. Instead, Creek County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Creek County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Creek County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Creek County). That insignificant dispensing volume is much too low to support a finding of good cause for Creek County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Creek County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Creek County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Creek County filed its original complaint on March 12, 2019. *See County Commission of Creek County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45226-DAP, ECF No. 1. Despite filing its case years ago, Creek County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Creek County's case would force the parties and the Court to waste time and resources ascertaining the extent of Creek County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs

are prejudiced by Creek County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Creek County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Creek County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Creek County, a municipality in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Creek County is a plaintiff in Oklahoma. Creek County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Creek County's proposed RICO claim against the PBMs has expired. Creek County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See County Commission of Creek County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45226-DAP, ECF No. 1. It is therefore indisputable that Creek County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Creek County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Creek County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Creek County, a municipality in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1087. *County Commissioner of Mayes County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45227-DAP: Plaintiff Mayes County, Oklahoma

Mayes County's untimely motion for leave to amend should be denied for several reasons. Mayes County failed to provide notice of its proposed amendments through a proposed complaint. Mayes County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mayes County's motion should be denied due to futility, as Mayes County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Oklahoma, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mayes County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Mayes County filed its original complaint on March 12, 2019 and the case was transferred to the MDL on April 2, 2019. *See County Commissioner of Mayes County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45227-DAP, ECF No. 7. Mayes County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Mayes County elected not to do so. Instead, Mayes County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mayes County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mayes County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Mayes County). That insignificant dispensing volume is much too low to support a finding of good cause for Mayes County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mayes County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Mayes County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Mayes County filed its original complaint on March 12, 2019. *See County Commissioner of Mayes County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45227-DAP, ECF No. 1. Despite filing its case years ago, Mayes County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Mayes County's case would force the parties and the Court to waste time and resources ascertaining the extent of Mayes County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mayes County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mayes County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mayes County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mayes County, a municipality in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Mayes County is a plaintiff in Oklahoma. Mayes County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Mayes County's proposed RICO claim against the PBMs has expired. Mayes County filed its original complaint on March 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County Commissioner of Mayes County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45227-DAP, ECF No. 1. It is therefore indisputable that Mayes County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Mayes County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mayes County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mayes County, a municipality in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1088.** *Meigs County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45229-DAP: Plaintiff Meigs County, Ohio

Meigs County's untimely motion for leave to amend should be denied for several reasons. Meigs County failed to provide notice of its proposed amendments through a proposed complaint. Meigs County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Meigs County's motion should be denied due to futility, as Meigs County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Meigs County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Meigs County filed its original complaint on November 8, 2018 and the case was transferred to the MDL on April 11, 2019. *See Meigs County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45229-DAP, ECF No. 35. Meigs County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Meigs County elected not to do so. Instead, Meigs County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Meigs County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Meigs County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Meigs County). That insignificant dispensing volume is much too low to support a finding of good cause for Meigs County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Meigs County filed its original complaint on November 8, 2018. *See Meigs County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45229-DAP, ECF No. 11. Despite filing its case years ago, Meigs County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Meigs County's case would force the parties and the Court to waste time and resources ascertaining the extent of Meigs County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Meigs County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Meigs County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Meigs County's delay in seeking to

amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Meigs County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Meigs County is a plaintiff in Ohio. Meigs County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at \*1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Meigs County's proposed RICO claim against the PBMs has expired. Meigs County filed its original complaint on November 8, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Meigs County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45229-DAP, ECF No. 11. Even assuming *arguendo* that Meigs County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 8, 2022. Meigs County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Meigs County's request for leave to amend to add a RICO claim should be denied as futile. *See*

*Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Meigs County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1089. *Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP: Plaintiff Marietta City, Ohio

Marietta City's untimely motion for leave to amend should be denied for several reasons. Marietta City failed to provide notice of its proposed amendments through a proposed complaint. Marietta City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marietta City's motion should be denied due to futility, as Marietta City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marietta City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marietta City filed its original complaint on November 7, 2018 and the case was transferred to the MDL on April 11, 2019. *See Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP, ECF No. 33. Marietta City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Marietta City elected not to do so. Instead, Marietta City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marietta City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial

of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marietta City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See Gustafson Decl.* (0.04% market share for Marietta City). That insignificant dispensing volume is much too low to support a finding of good cause for Marietta City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marietta City filed its original complaint on November 7, 2018. *See Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP, ECF No. 5. Despite filing its case years ago, Marietta City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marietta City's case would force the parties and the Court to waste time and resources ascertaining the extent of Marietta City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marietta City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marietta City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Marietta City has *never* served a Plaintiff Fact Sheet. Marietta City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Marietta City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marietta City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marietta City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Marietta City is a plaintiff in Ohio. Marietta City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have

been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

      **RICO Statute of Limitations.** The statute of limitations for Marietta City's proposed RICO claim against the PBMs has expired. Marietta City filed its original complaint on November 7, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP, ECF No. 5. Even assuming *arguendo* that Marietta City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 7, 2022. Marietta City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marietta City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

      **Plaintiff Lacks Standing.** Marietta City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1090. *Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP: Plaintiff Washington County, Ohio

      Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington

County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Washington County filed its original complaint on November 7, 2018 and the case was transferred to the MDL on April 11, 2019. *See Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP, ECF No. 33. Washington County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Washington County elected not to do so. Instead, Washington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Washington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Washington County filed its original complaint on November 7, 2018. *See Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP, ECF No. 5. Despite filing its case years ago, Washington County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Washington County's case would force the parties and the Court to waste time and resources ascertaining the extent of Washington County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Washington County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Washington County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Washington County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Washington County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Washington County of this deficiency on September 16, 2024 (*see* Exhibit B), but Washington County refused to amend or supplement its Fact Sheet. Under this Court's orders, Washington County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

Washington County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Washington County's potential claims against them. Washington County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Washington County is a plaintiff in Ohio. Washington County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its original complaint on November 7, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Washington County, Ohio v. Cardinal Health, Inc. et al.*, Case No. 1:19-op-45230-DAP, ECF No. 5. Even assuming *arguendo* that Washington County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 7, 2022. Washington County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washington County, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1091.** *Cheyenne and Arapaho Tribes v. Purdue Pharma LP et al.*, **Case No. 1:19-op-45231-DAP: Plaintiff Cheyenne and Arapaho Tribes, Oklahoma**

Cheyenne and Arapaho Tribes' untimely motion for leave to amend should be denied for several reasons. Cheyenne and Arapaho Tribes failed to provide notice of their proposed amendments through a proposed complaint. Cheyenne and Arapaho Tribes also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because their untimely motion would unduly prejudice the PBMs. Moreover, Cheyenne and Arapaho Tribes' motion should be denied due to futility, as Cheyenne and Arapaho Tribes do not assert any allegations tying the PBMs to their alleged harm, their proposed public nuisance claim is barred by state law in Oklahoma, their

RICO claim is barred by the statute of limitations, and they lack standing to assert claims under New York state law.

**Lack of Diligence.** Cheyenne and Arapaho Tribes were on notice of their claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cheyenne and Arapaho Tribes filed their original complaint on November 29, 2018 and the case was transferred to the MDL on April 11, 2019. *See Cheyenne and Arapaho Tribes v. Purdue Pharma LP et al.*, Case No. 1:19-op-45231-DAP, ECF No. 21. Cheyenne and Arapaho Tribes could have amended their complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Cheyenne and Arapaho Tribes elected not to do so. Instead, Cheyenne and Arapaho Tribes waited five years after their deadline to amend to seek leave to assert claims against the PBMs. Cheyenne and Arapaho Tribes' lack of diligence in pursuing their claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Cheyenne and Arapaho Tribes' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Cheyenne and Arapaho Tribes' geographic jurisdiction during

2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cheyenne and Arapaho Tribes' delay in seeking to amend their complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cheyenne and Arapaho Tribes, together a single tribal government in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to their injuries. Instead, they rely exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Cheyenne and Arapaho Tribes seek leave to amend to add claims against the PBMs in three cases: *Cheyenne & Arapaho Tribes v. McKesson Corporation, et al.*, No. 1:19-op-45187-DAP; *Cheyenne and Arapaho Tribes v. Purdue Pharma LP, et al.*, No. 1:19-op-45231-DAP; and *Cheyenne & Arapaho Tribes v. Watson Laboratories Inc., et al.*, No. 1:19-op-45232-DAP. Cheyenne and Arapaho Tribes' impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Cheyenne and Arapaho Tribes are a plaintiff in Oklahoma. Cheyenne and Arapaho Tribes' request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Cheyenne and Arapaho Tribes' proposed RICO claim against the PBMs has expired. Cheyenne and Arapaho Tribes filed their original complaint on November 29, 2018, alleging the same type of injuries for which they now seek to recover under RICO against the PBMs. *See Cheyenne and Arapaho Tribes v. Purdue Pharma LP et al.*, Case No. 1:19-op-45231-DAP, ECF No. 1-1. Even assuming *arguendo* that Cheyenne and Arapaho Tribes first learned of their injury on the day they filed their original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 29, 2022. Cheyenne and Arapaho Tribes' RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cheyenne and Arapaho Tribes' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cheyenne and Arapaho Tribes, together a single tribal government in Oklahoma, lack standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1092. *Cheyenne & Arapaho Tribes v. Watson Laboratories Inc et al.*, Case No. 1:19-op-45232-DAP: Plaintiff Cheyenne and Arapaho Tribes, Oklahoma

Cheyenne and Arapaho Tribes' untimely motion for leave to amend should be denied for several reasons. Cheyenne and Arapaho Tribes failed to provide notice of their proposed amendments through a proposed complaint. Cheyenne and Arapaho Tribe also lack good cause under Rule 15 or Rule 16 due to a lack of diligence and because their untimely motion would unduly prejudice the PBMs. Moreover, Cheyenne and Arapaho Tribes' motion should be denied due to futility, as Cheyenne and Arapaho Tribes do not assert any allegations tying the PBMs to its alleged harm, their proposed public nuisance claim is barred by state law in Oklahoma, their RICO claim is barred by the statute of limitations, and they lack standing to assert claims under New York state law.

**Lack of Diligence.** Cheyenne and Arapaho Tribes were on notice of their claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cheyenne and Arapaho Tribes filed their original complaint on December 14, 2018 and the case was transferred to the MDL on April 11, 2019. *See Cheyenne & Arapaho Tribes v. Watson Laboratories Inc et al.*, Case No. 1:19-op-45232-DAP, ECF No. 18. Cheyenne and Arapaho Tribes could have amended their complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Cheyenne and Arapaho Tribes elected not to do so. Instead, Cheyenne and Arapaho Tribes waited five years after their deadline to amend to seek leave to assert claims against the PBMs. Cheyenne and Arapaho Tribes' lack of diligence in pursuing their claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Cheyenne and Arapaho Tribes' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Cheyenne and Arapaho Tribes' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cheyenne and Arapaho Tribes' delay in seeking to amend their complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cheyenne and Arapaho Tribes, a native tribe in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to their injuries. Instead, they rely exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Cheyenne and Arapaho Tribes seeks leave to amend to add claims against the PBMs in three cases: *Cheyenne & Arapaho Tribes v. McKesson*

*Corporation, et al.*, No. 1:19-op-45187-DAP; *Cheyenne and Arapaho Tribes v. Purdue Pharma LP, et al.*, No. 1:19-op-45231-DAP; and *Cheyenne & Arapaho Tribes v. Watson Laboratories Inc., et al.*, No. 1:19-op-45232-DAP. Cheyenne and Arapaho Tribes' impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Cheyenne and Arapaho Tribes are a plaintiff in Oklahoma. Cheyenne and Arapaho Tribes' request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Cheyenne and Arapaho Tribes' proposed RICO claim against the PBMs has expired. Cheyenne and Arapaho Tribes filed their original complaint on December 14, 2018, alleging the same type of injuries for which they now seek to recover under RICO against the PBMs. *See Cheyenne & Arapaho Tribes v. Watson Laboratories Inc et al.*, Case No. 1:19-op-45232-DAP, ECF No. 1-1. Even assuming *arguendo* that Cheyenne and Arapaho Tribes first learned of their injury on the day they filed their original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 14, 2022. Cheyenne and Arapaho Tribes' RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of

[the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cheyenne and Arapaho Tribes' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cheyenne and Arapaho Tribes, a native tribe in Oklahoma, lack standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1093. *Montgomery County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45234-DAP: Plaintiff Montgomery County, Virginia

Montgomery County's untimely motion for leave to amend should be denied for several reasons. Montgomery County failed to provide notice of its proposed amendments through a proposed complaint. Montgomery County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Montgomery County's motion should be denied due to futility, as Montgomery County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Montgomery County previously alleged claims against some of the PBMs in its original complaint on August 27, 2018. *See Montgomery County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45234-DAP, ECF No. 1-1–1-3 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Montgomery County also amended its complaint on July 3, 2019 to add claims against additional PBM-related entities. *See id.*, ECF No. 70 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Montgomery County seeks to add

other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Montgomery County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBM entities. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Montgomery County's complaint, Montgomery County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Montgomery County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Montgomery County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Montgomery County). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Montgomery County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Montgomery County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Montgomery County violated its basic duty to implement a timely litigation hold. Montgomery County filed its original complaint on August 27, 2018, but waited until July 5, 2024 to implement a litigation hold—almost six years later. *See Montgomery County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45234-DAP, ECF No. 1-1–1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 5, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Montgomery County's case would force the parties and the Court to waste time and resources ascertaining the extent of Montgomery County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Montgomery County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Montgomery County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Montgomery County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Montgomery County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Montgomery County of this deficiency on September 16, 2024 (*see* Exhibit B), but Montgomery County refused to amend or supplement its Fact Sheet. Under this Court's orders, Montgomery County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Montgomery County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Montgomery County's potential claims against

them. Montgomery County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Montgomery County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Montgomery County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Montgomery County's proposed RICO claim against the PBMs has expired. Montgomery County filed its original complaint on August 27, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Montgomery County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45234-DAP, ECF No. 1-1–1-3. Even assuming *arguendo* that Montgomery County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 27, 2022. Montgomery County's RICO claim is

therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Montgomery County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Montgomery County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1094. *Giles County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45236-DAP: Plaintiff Giles County, Virginia

Giles County's untimely motion for leave to amend should be denied for several reasons. Giles County failed to provide notice of its proposed amendments through a proposed complaint. Giles County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Giles County's motion should be denied due to futility, as Giles County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Giles County previously alleged claims against some of the PBMs in its original complaint on August 27, 2018. *See Giles County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45236-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Giles County also amended its complaint on July 3, 2019 to add claims against additional PBM-related entities. *See id.*, ECF No. 71 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Giles County seeks to add other PBM-related entities as defendants

but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Giles County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBM entities. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Giles County's complaint, Giles County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Giles County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Giles County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Giles County). That insignificant dispensing volume is much too low to support a finding of good cause for Giles County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Giles County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Giles County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Giles County of this deficiency on September 16, 2024 (*see* Exhibit B), but Giles County refused to amend or supplement its Fact Sheet. Under this Court's orders, Giles County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Giles County's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Giles County's potential claims against them. Giles County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Giles County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Giles County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Giles County's proposed RICO claim against the PBMs has expired. Giles County filed its original complaint on August 27, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Giles County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45236-DAP, ECF No. 36. Even assuming *arguendo* that Giles County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 27, 2022. Giles County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that

the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Giles County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Giles County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1095. *County of Jasper v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45238-DAP: Plaintiff Jasper County, Texas

Jasper County's untimely motion for leave to amend should be denied for several reasons. Jasper County failed to provide notice of its proposed amendments through a proposed complaint. Jasper County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jasper County's motion should be denied due to futility, as Jasper County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jasper County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jasper County filed its original complaint on November 5, 2018 and the case was transferred to the MDL on April 15, 2019. *See County of Jasper v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45238-DAP, ECF No. 19. Jasper County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Jasper County elected not to do so. Instead, Jasper County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jasper County's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jasper County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Jasper County). That insignificant dispensing volume is much too low to support a finding of good cause for Jasper County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jasper County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jasper County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jasper County filed its original complaint on November 5, 2018. *See County of Jasper v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45238-DAP, ECF No. 1-2. Despite filing its case years ago, Jasper County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Jasper County's case would force the parties and

4054

the Court to waste time and resources ascertaining the extent of Jasper County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jasper County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jasper County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jasper County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jasper County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jasper County's proposed RICO claim against the PBMs has expired. Jasper County filed its original complaint on November 5, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Jasper v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45238-DAP, ECF No. 1-2. Even assuming *arguendo* that Jasper County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on

November 5, 2022. Jasper County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jasper County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jasper County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1096. *County of Hardin v. Endo Health Solutions, Inc. et al.*, Case No. 1:19-op-45241-DAP: Plaintiff Hardin County, Texas

Hardin County's untimely motion for leave to amend should be denied for several reasons. Hardin County failed to provide notice of its proposed amendments through a proposed complaint. Hardin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hardin County's motion should be denied due to futility, as Hardin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hardin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hardin County filed its original complaint on December 7, 2018 and the case was transferred to the MDL on April 15, 2019. *See County of Hardin v. Endo Health Solutions, Inc. et al.*, Case No. 1:19-op-45241-DAP, ECF No. 16. Hardin County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other

plaintiffs, Hardin County elected not to do so. Instead, Hardin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hardin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hardin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Hardin County). That insignificant dispensing volume is much too low to support a finding of good cause for Hardin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hardin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hardin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hardin County filed its original complaint on December 7, 2018. *See County of Hardin v. Endo Health Solutions, Inc. et al.*, Case No. 1:19-op-45241-DAP, ECF No. 1-2. Despite filing its case years ago, Hardin County *never* implemented a

litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hardin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hardin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hardin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hardin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hardin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hardin County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hardin County's proposed RICO claim against the PBMs has expired. Hardin County filed its original complaint on December 7, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Hardin v. Endo Health Solutions, Inc. et al.*, Case No. 1:19-op-

45241-DAP, ECF No. 1-2. Even assuming *arguendo* that Hardin County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 7, 2022. Hardin County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hardin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hardin County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1097. *County of Newton v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45242-DAP: Plaintiff Newton County, Texas

Newton County's untimely motion for leave to amend should be denied for several reasons. Newton County failed to provide notice of its proposed amendments through a proposed complaint. Newton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Newton County's motion should be denied due to futility, as Newton County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Newton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Newton County filed its original complaint on December 7, 2018 and the case was transferred to the MDL on April 15, 2019. *See County of Newton v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45242-DAP, ECF No. 13. Newton County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Newton County elected not to do so. Instead, Newton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Newton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Newton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Newton County). That insignificant dispensing volume is much too low to support a finding of good cause for Newton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Newton County filed its original complaint on December 7, 2018. *See County of Newton v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45242-DAP, ECF No. 1-2. Despite filing its case years ago, Newton County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Newton County's case would force the

parties and the Court to waste time and resources ascertaining the extent of Newton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Newton County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Newton County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**<u>Failure to Prosecute.</u>** In its Plaintiff Fact Sheet, Newton County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Newton County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Newton County of this deficiency on September 16, 2024 (*see* Exhibit B), but Newton County refused to amend or supplement its Fact Sheet. Under this Court's orders, Newton County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Newton County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Newton County's potential claims against them. Newton County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Newton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Newton County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Newton County's proposed RICO claim against the PBMs has expired. Newton County filed its original complaint on December 7, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Newton v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45242-DAP, ECF No. 1-2. Even assuming *arguendo* that Newton County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 7, 2022. Newton County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Newton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Newton County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1098.** *City of Galax, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45243-DAP: Plaintiff Galax City, Virginia

Galax City's untimely motion for leave to amend should be denied for several reasons. Galax City failed to provide notice of its proposed amendments through a proposed complaint. Galax City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Galax City's motion should be denied due to futility, as Galax City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Galax City previously alleged claims against some of the PBMs in its original complaint on August 27, 2018. *See City of Galax, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45243-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Galax City also amended its complaint on July 3, 2019, to add claims against additional PBM-related entities. *See id.*, ECF No. 70 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Galax City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Galax City's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to

add as defendants to their complaints. And for those entities that were named in an earlier iteration of Galax City's complaint, Galax City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Galax City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Galax City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Galax City). That insignificant dispensing volume is much too low to support a finding of good cause for Galax City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Galax City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Galax City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Galax City violated its basic duty to implement a timely litigation hold. Galax City filed its original complaint on August 27, 2018, but waited until August 8, 2024 to implement a litigation hold—almost six years later. *See City of Galax, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45243-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Galax City's case would force the

parties and the Court to waste time and resources ascertaining the extent of Galax City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Galax City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Galax City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**<u>Failure to Prosecute.</u>** In its Plaintiff Fact Sheet, Galax City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Galax City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Galax City of this deficiency on September 16, 2024 (*see* Exhibit B), but Galax City refused to amend or supplement its Fact Sheet. Under this Court's orders, Galax City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Galax City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Galax City's potential claims against them. Galax City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Galax City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Galax City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Galax City's proposed RICO claim against the PBMs has expired. Galax City filed its original complaint on August 27, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Galax, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45243-DAP, ECF No. 1-1. Even assuming *arguendo* that Galax City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 27, 2022. Galax City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Galax City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Galax City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1099.** *Henry County, Virginia v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45245-DAP: Plaintiff Henry County, Virginia**

Henry County's untimely motion for leave to amend should be denied for several reasons. Henry County failed to provide notice of its proposed amendments through a proposed complaint. Henry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Henry County's motion should be denied due to futility, as Henry County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Henry County previously alleged claims against some of the PBMs in its original complaint on October 3, 2018. *See Henry County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45245-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Henry County also amended its complaint on July 3, 2019 to add claims against additional PBM-related entities. *See id.*, ECF No. 79 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Henry County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Henry County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Henry County's complaint, Henry County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See*

Section II.A, above. Henry County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Henry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.26% market share for Henry County). That insignificant dispensing volume is much too low to support a finding of good cause for Henry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Henry County violated its basic duty to implement a timely litigation hold. Henry County filed its original complaint on October 3, 2018, but waited until August 8, 2024 to implement a litigation hold—almost six years later. *See Henry County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45245-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Henry County's case would force the parties and the Court to waste time and resources ascertaining the extent of Henry County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Henry County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Henry County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Henry County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Henry County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Henry County of this deficiency on September 16, 2024 (*see* Exhibit B), but Henry County refused to amend or supplement its Fact Sheet. Under this Court's orders, Henry County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Henry County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Henry County's potential claims against them. Henry County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Henry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Henry County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Henry County's proposed RICO claim against the PBMs has expired. Henry County filed its original complaint on October 3, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Henry County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45245-DAP, ECF No. 1-1. Even assuming *arguendo* that Henry County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 3, 2022. Henry County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Henry County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Henry County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1100. *City of Alexandria v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45246-DAP: Plaintiff Alexandria City, Virginia**

Alexandria City's untimely motion for leave to amend should be denied for several reasons. Alexandria City failed to provide notice of its proposed amendments through a proposed complaint. Alexandria City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alexandria City's motion should be denied due to futility, as Alexandria City does not assert any allegations tying the PBMs to its alleged harm, its RICO

claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alexandria City previously alleged claims against some of the PBMs in its original complaint on March 14, 2018. *See City of Alexandria v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45246-DAP, ECF No. 1-2–1-3 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Alexandria City also amended its complaint on July 3, 2019 to add claims against additional PBM-related entities. *See id.*, ECF No. 69 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Alexandria City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Alexandria City's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Alexandria City's complaint, Alexandria City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Alexandria City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alexandria City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Alexandria City). That insignificant dispensing volume is much too low to support a finding of good cause for Alexandria City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Alexandria City violated its basic duty to implement a timely litigation hold. Alexandria City filed its original complaint on March 14, 2018, but waited until July 24, 2024 to implement a litigation hold—almost six years later. *See City of Alexandria v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45246-DAP, ECF No. 1-2–1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 24, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Alexandria City's case would force the parties and the Court to waste time and resources ascertaining the extent of Alexandria City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Alexandria City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Alexandria City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Alexandria City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Alexandria City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Alexandria City of this deficiency on September 16, 2024 (*see* Exhibit B), but Alexandria City refused to amend or supplement its Fact Sheet. Under this Court's orders, Alexandria City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Alexandria City's refusal to

provide basic information related to its health care plans prejudices the PBMs' ability to defend against Alexandria City's potential claims against them. Alexandria City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alexandria City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alexandria City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alexandria City's proposed RICO claim against the PBMs has expired. Alexandria City filed its original complaint on March 14, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Alexandria v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45246-DAP, ECF No. 1-2–1-3. Even assuming *arguendo* that Alexandria City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 14, 2022. Alexandria City's RICO claim is therefore time-barred. ECF No. 2568 at 13

(holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alexandria City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alexandria City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1101. *Pittsylvania County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45247-DAP: Plaintiff Pittsylvania County, Virginia

Pittsylvania County's untimely motion for leave to amend should be denied for several reasons. Pittsylvania County failed to provide notice of its proposed amendments through a proposed complaint. Pittsylvania County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pittsylvania County's motion should be denied due to futility, as Pittsylvania County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pittsylvania County previously alleged claims against some of the PBMs in its original complaint on September 26, 2018. *See Pittsylvania County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45247-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Pittsylvania County also amended its complaint on July 3, 2019 to add claims against additional PBM-related entities. *See id.*, ECF No. 79 (adding claims against Express Scripts

Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Pittsylvania County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Pittsylvania County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Pittsylvania County's complaint, Pittsylvania County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Pittsylvania County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pittsylvania County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.48% market share for Pittsylvania County). That insignificant dispensing volume is much too low to support a finding of good cause for Pittsylvania County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Pittsylvania County violated its basic duty to implement a timely litigation hold. Pittsylvania County filed its original complaint on September 26, 2018, but waited until August 12, 2024 to implement a litigation hold—almost six years later. *See Pittsylvania County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45247-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 12, 2024).

This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pittsylvania County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pittsylvania County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pittsylvania County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pittsylvania County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Pittsylvania County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Pittsylvania County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Pittsylvania County of this deficiency on September 16, 2024 (*see* Exhibit B), but Pittsylvania County refused to amend or supplement its Fact Sheet. Under this Court's orders, Pittsylvania County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Pittsylvania County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Pittsylvania County's potential claims against them. Pittsylvania County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pittsylvania County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pittsylvania County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pittsylvania County's proposed RICO claim against the PBMs has expired. Pittsylvania County filed its original complaint on September 26, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Pittsylvania County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45247-DAP, ECF No. 1-1. Even assuming *arguendo* that Pittsylvania County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 26, 2022. Pittsylvania County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pittsylvania County's request for leave to amend to add

a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pittsylvania County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1102. *City of Cullman, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45248-DAP: Plaintiff Cullman City, Alabama

Cullman City's untimely motion for leave to amend should be denied for several reasons. Cullman City failed to provide notice of its proposed amendments through a proposed complaint. Cullman City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cullman City's motion should be denied due to futility, as Cullman City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cullman City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cullman City amended its complaint on July 10, 2019, after transfer to the MDL on April 16, 2019. *See City of Cullman, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45248-DAP, ECF No. 6. Unlike many other plaintiffs, Cullman City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cullman City's deadline to amend was in 2019. Cullman City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cullman City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cullman City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cullman City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cullman City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cullman City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Cullman City). That insignificant dispensing volume is much too low to support a finding of good cause for Cullman City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cullman City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cullman City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cullman City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cullman City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cullman City of this deficiency on September 16, 2024 (*see* Exhibit B), but Cullman City refused to amend or supplement its Fact Sheet. Under this Court's orders, Cullman City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cullman City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cullman City's potential claims against them. Cullman City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cullman City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cullman City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cullman City's proposed RICO claim against the PBMs has expired. Cullman City filed its original complaint on March 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Cullman, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45248-DAP, ECF No. 1. It is therefore indisputable that Cullman City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Cullman City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cullman City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Cullman City's public-nuisance claim against the PBMs is therefore time-barred because Cullman City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Cullman City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1103.** *City of Norton, Virginia v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45249-DAP: Plaintiff Norton City, Virginia**

Norton City's untimely motion for leave to amend should be denied for several reasons. Norton City failed to provide notice of its proposed amendments through a proposed complaint. Norton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Norton City's motion should be denied due to futility, as Norton City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Norton City previously alleged claims against some of the PBMs in its original complaint on October 22, 2018. *See City of Norton, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45249-DAP, ECF No. 1-2–1-3 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Norton City also amended its complaint on July 3, 2019 to add claims against additional PBM-related entities. *See id.*, ECF No. 71 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Norton City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its

original or amended complaints. Norton City's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Norton City's complaint, Norton City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Norton City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Norton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Norton City). That insignificant dispensing volume is much too low to support a finding of good cause for Norton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Norton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Norton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Norton City violated its basic duty to implement a timely litigation hold. Norton City filed its original complaint on October 22, 2018, but waited until July 25, 2024 to implement a litigation hold—nearly six years later. *See City of*

*Norton, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45249-DAP, ECF No. 1-2–1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Norton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Norton City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Norton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Norton City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Norton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Norton City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Norton City of this deficiency on September 16, 2024 (*see* Exhibit B), but Norton City refused to amend or supplement its Fact Sheet. Under this Court's orders, Norton City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Norton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Norton City's potential claims against them. Norton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in

litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Norton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Norton City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Norton City's proposed RICO claim against the PBMs has expired. Norton City filed its original complaint on October 22, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Norton, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45249-DAP, ECF No. 1-2–1-3. Even assuming *arguendo* that Norton City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 22, 2022. Norton City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Norton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Norton City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1104. *Lee County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45251-DAP: Plaintiff Lee County, Virginia

Lee County's untimely motion for leave to amend should be denied for several reasons. Lee County failed to provide notice of its proposed amendments through a proposed complaint. Lee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lee County's motion should be denied due to futility, as Lee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lee County previously alleged claims against some of the PBMs in its original complaint on October 22, 2018. *See Lee County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45251-DAP, ECF No. 1-2 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Lee County also amended its complaint on July 3, 2019 to add claims against additional PBM-related entities. *See id.*, ECF No. 75 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Lee County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Lee County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to

add as defendants to their complaints. And for those entities that were named in an earlier iteration of Lee County's complaint, Lee County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Lee County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Lee County). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lee County violated its basic duty to implement a timely litigation hold. Lee County filed its original complaint on October 22, 2018, but waited until August 9, 2024 to implement a litigation hold—nearly six years later. *See Lee County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45251-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 9, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lee County's case would force

the parties and the Court to waste time and resources ascertaining the extent of Lee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lee County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lee County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lee County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lee County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lee County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lee County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lee County's potential claims against them. Lee County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lee County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lee County's proposed RICO claim against the PBMs has expired. Lee County filed its original complaint on October 22, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Lee County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45251-DAP, ECF No. 1-2. Even assuming *arguendo* that Lee County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 22, 2022. Lee County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lee County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1105.** *Dickenson County v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45252-DAP: Plaintiff Dickenson County, Virginia**

Dickenson County's untimely motion for leave to amend should be denied for several reasons. Dickenson County failed to provide notice of its proposed amendments through a proposed complaint. Dickenson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dickenson County's motion should be denied due to futility, as Dickenson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dickenson County previously alleged claims against some of the PBMs in its original complaint on March 14, 2018. *See Dickenson County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45252-DAP, ECF No. 1-2 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Dickenson County also amended its complaint on July 3, 2019 to add claims against additional PBM-related entities. *See id.*, ECF No. 61 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Dickenson County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Dickenson County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Dickenson County's complaint, Dickenson County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior

complaints against the PBMs. *See* Section II.A, above. Dickenson County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dickenson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Dickenson County). That insignificant dispensing volume is much too low to support a finding of good cause for Dickenson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dickenson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dickenson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Dickenson County violated its basic duty to implement a timely litigation hold. Dickenson County filed its original complaint on March 14, 2018, but waited until August 7, 2024 to implement a litigation hold—over six years later. *See Dickenson County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45252-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 7, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Dickenson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Dickenson County's document destruction and the appropriate sanctions—just as the parties were forced to

do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dickenson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dickenson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Dickenson County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Dickenson County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Dickenson County of this deficiency on September 16, 2024 (*see* Exhibit B), but Dickenson County refused to amend or supplement its Fact Sheet. Under this Court's orders, Dickenson County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dickenson County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Dickenson County's potential claims against them. Dickenson County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dickenson County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dickenson County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dickenson County's proposed RICO claim against the PBMs has expired. Dickenson County filed its original complaint on March 14, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Dickenson County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45252-DAP, ECF No. 1-2. Even assuming *arguendo* that Dickenson County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 14, 2022. Dickenson County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dickenson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dickenson County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1106.** *Washington County, Virginia v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45254-DAP: Plaintiff Washington County, Virginia**

Washington County's untimely motion for leave to amend should be denied for several reasons. Washington County failed to provide notice of its proposed amendments through a proposed complaint. Washington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Washington County's motion should be denied due to futility, as Washington County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Washington County previously alleged claims against some of the PBMs in its original complaint on August 6, 2018. *See Washington County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45254-DAP, ECF No. 1-3 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Washington County also amended its complaint on July 3, 2019, to add claims against additional PBM-related entities. *See id.*, ECF No. 72 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Washington County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Washington County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Washington County's complaint, Washington County already had access to the relevant documents it contends give rise to its proposed claims

when it filed its prior complaints against the PBMs. *See* Section II.A, above. Washington County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Washington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Washington County). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Washington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Washington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Washington County violated its basic duty to implement a timely litigation hold. Washington County filed its original complaint on August 6, 2018, but waited until July 19, 2024 to implement a litigation hold—nearly six years later. *See Washington County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45254-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 19, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Washington County's case would force the parties and the Court to waste time and resources ascertaining the

extent of Washington County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Washington County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Washington County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Washington County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Washington County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Washington County of this deficiency on September 16, 2024 (*see* Exhibit B), but Washington County refused to amend or supplement its Fact Sheet. Under this Court's orders, Washington County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Washington County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Washington County's potential claims against them. Washington County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Washington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Washington County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Washington County's proposed RICO claim against the PBMs has expired. Washington County filed its original complaint on August 6, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Washington County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45254-DAP, ECF No. 1-3. Even assuming *arguendo* that Washington County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 6, 2022. Washington County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Washington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Washington County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1107.** ***Bad River Band of Lake Superior Chippewa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45256-DAP: Plaintiff Bad River Band of Lake Superior Chippewa, Wisconsin**

Bad River Band of Lake Superior Chippewa's untimely motion for leave to amend should be denied for several reasons. Bad River Band of Lake Superior Chippewa failed to provide notice of its proposed amendments through a proposed complaint. Bad River Band of Lake Superior Chippewa also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bad River Band of Lake Superior Chippewa's motion should be denied due to futility, as Bad River Band of Lake Superior Chippewa does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bad River Band of Lake Superior Chippewa was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bad River Band of Lake Superior Chippewa filed its original complaint on November 5, 2018 and the case was transferred to the MDL on April 16, 2019. *See Bad River Band of Lake Superior Chippewa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45256-DAP, ECF No. 19. Bad River Band of Lake Superior Chippewa could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bad River Band of Lake Superior Chippewa elected not to do so. Instead, Bad River Band of Lake Superior Chippewa waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bad River Band of Lake Superior Chippewa's

lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bad River Band of Lake Superior Chippewa's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bad River Band of Lake Superior Chippewa to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bad River Band of Lake Superior Chippewa filed its original complaint on November 5, 2018. *See Bad River Band of Lake Superior Chippewa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45256-DAP, ECF No. 1-3. Despite filing its case years ago, Bad River Band of Lake Superior Chippewa *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bad River Band of Lake Superior Chippewa's case would force the parties and the Court to waste time and resources ascertaining the extent of Bad River Band of Lake Superior Chippewa's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bad River Band of Lake Superior Chippewa's disregard

for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bad River Band of Lake Superior Chippewa therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bad River Band of Lake Superior Chippewa's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bad River Band of Lake Superior Chippewa, a native tribe in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bad River Band of Lake Superior Chippewa's proposed RICO claim against the PBMs has expired. Bad River Band of Lake Superior Chippewa filed its original complaint on November 5, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Bad River Band of Lake Superior Chippewa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45256-DAP, ECF No. 1-3. Even assuming *arguendo* that Bad River Band of Lake Superior Chippewa first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 5, 2022. Bad River Band of Lake Superior Chippewa's RICO claim

is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bad River Band of Lake Superior Chippewa's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bad River Band of Lake Superior Chippewa, a native tribe in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1108. *Kennebec County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45257-DAP: Plaintiff Kennebec County, Maine

Kennebec County's untimely motion for leave to amend should be denied for several reasons. Kennebec County failed to provide notice of its proposed amendments through a proposed complaint. Kennebec County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kennebec County's motion should be denied due to futility, as Kennebec County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kennebec County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kennebec County filed its original complaint on January 18, 2019 and the case was transferred to the MDL on April 16, 2019. *See Kennebec County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45257-DAP, ECF No. 47. Kennebec County could have amended its complaint,

without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Kennebec County elected not to do so. Instead, Kennebec County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kennebec County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kennebec County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Kennebec County). That insignificant dispensing volume is much too low to support a finding of good cause for Kennebec County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kennebec County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kennebec County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Kennebec County violated its basic duty to implement a timely litigation hold. Kennebec County filed its original complaint on January 18,

2019, but waited until June 19, 2020 to implement a litigation hold—almost one and a half years later. *See Kennebec County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45257-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 19, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Kennebec County's case would force the parties and the Court to waste time and resources ascertaining the extent of Kennebec County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kennebec County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kennebec County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Kennebec County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Kennebec County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Kennebec County of this deficiency on September 16, 2024 (*see* Exhibit B), but Kennebec County refused to amend or supplement its Fact Sheet. Under this Court's orders, Kennebec County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Kennebec County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Kennebec County's potential claims against them. Kennebec County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment

Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kennebec County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kennebec County, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Kennebec County is a plaintiff in Maine. Kennebec County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Kennebec County's proposed RICO claim against the PBMs has expired. Kennebec County filed its original complaint on January 18, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Kennebec County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45257-DAP, ECF No. 1-2. Even assuming *arguendo* that Kennebec County first learned of its injury on

the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 18, 2023. Kennebec County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kennebec County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kennebec County, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1109. *Cumberland County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45259-DAP: Plaintiff Cumberland County, Maine

Cumberland County's untimely motion for leave to amend should be denied for several reasons. Cumberland County failed to provide notice of its proposed amendments through a proposed complaint. Cumberland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cumberland County's motion should be denied due to futility, as Cumberland County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cumberland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cumberland County filed its original complaint on January 18, 2019 and the case was

transferred to the MDL on April 16, 2019. *See Cumberland County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45259-DAP, ECF No. 46. Cumberland County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Cumberland County elected not to do so. Instead, Cumberland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cumberland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cumberland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Cumberland County). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cumberland County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cumberland County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cumberland County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cumberland County of this deficiency on September 16, 2024 (*see* Exhibit B), but Cumberland County refused to amend or supplement its Fact Sheet. Under this Court's orders, Cumberland County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cumberland County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cumberland County's potential claims against them. Cumberland County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cumberland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cumberland County, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Cumberland County is a plaintiff in Maine. Cumberland County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Cumberland County's proposed RICO claim against the PBMs has expired. Cumberland County filed its original complaint on January 18, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Cumberland County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45259-DAP, ECF No. 1-2. Even assuming *arguendo* that Cumberland County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 18, 2023. Cumberland County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cumberland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cumberland County, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1110.**  *County of Ionia, Michigan v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45261-DAP: Plaintiff Ionia County, Michigan

Ionia County's untimely motion for leave to amend should be denied for several reasons. Ionia County failed to provide notice of its proposed amendments through a proposed complaint. Ionia County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ionia County's motion should be denied due to futility, as Ionia County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ionia County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ionia County filed its original complaint directly into the MDL on April 9, 2019. *See County of Ionia, Michigan v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45261-DAP, ECF No. 1. Ionia County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Ionia County elected not to do so. Ionia County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ionia County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ionia County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.04% market share for Ionia County). That insignificant dispensing volume is much too low to support a finding of good cause for Ionia County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ionia County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ionia County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ionia County's proposed RICO claim against the PBMs has expired. Ionia County filed its original complaint on April 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Ionia, Michigan v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45261-DAP, ECF No. 1. It is therefore indisputable that Ionia County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Ionia County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ionia County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ionia County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1111. *County of Livingston, Michigan v. Purdue Pharma, Inc., et al.*, Case No. 1:19-op-45262-DAP: Plaintiff Livingston County, Michigan

Livingston County's untimely motion for leave to amend should be denied for several reasons. Livingston County failed to provide notice of its proposed amendments through a proposed complaint. Livingston County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Livingston County's motion should be denied due to futility, as Livingston County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Livingston County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Livingston County filed its original complaint directly into the MDL on April 9, 2019. *See County of Livingston, Michigan v. Purdue Pharma, Inc., et al.*, Case No. 1:19-op-45262-DAP, ECF No. 1. Livingston County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Livingston County elected not to do so. Livingston County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Livingston County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Livingston County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Livingston County). That insignificant dispensing volume is much too low to support a finding of good cause for Livingston County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Livingston County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Livingston County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Livingston County's proposed RICO claim against the PBMs has expired. Livingston County filed its original complaint on April 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See County of Livingston, Michigan v. Purdue Pharma, Inc., et al.*, Case No. 1:19-op-45262-DAP, ECF No. 1. It is therefore indisputable that Livingston County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Livingston County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Livingston County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Livingston County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1112. *Baldwin County, AL v. Sackler et al.*, Case No. 1:19-op-45264-DAP: Plaintiff Baldwin County, Alabama

Baldwin County's untimely motion for leave to amend should be denied for several reasons. Baldwin County failed to provide notice of its proposed amendments through a proposed complaint. Baldwin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Baldwin County's motion should be denied due to futility, as Baldwin County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Baldwin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Baldwin County amended its complaint on June 17, 2019, after transfer to the MDL on April 17, 2019. *See Baldwin County, AL v. Sackler et al.*, Case No. 1:19-op-45264-DAP, ECF No. 7. Unlike many other plaintiffs, Baldwin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Baldwin County's deadline to amend was in 2019. Baldwin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Baldwin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Baldwin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Baldwin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Baldwin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Baldwin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Baldwin County). That insignificant dispensing volume is much too low to support a finding of good cause for Baldwin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Baldwin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Baldwin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Baldwin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Baldwin County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Baldwin County seeks leave to amend to add claims against the PBMs in two cases: *Baldwin County, Alabama v. Amerisourcebergen Drug Corporation, et al.*, No. 1:18-op-45152-DAP; and *Baldwin County, Alabama v. Sackler, et al.*, No. 1:19-op-45264-DAP. Baldwin County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Baldwin County's proposed RICO claim against the PBMs has expired. Baldwin County filed its original complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Baldwin County, AL v. Sackler et al.*, Case No. 1:19-op-45264-DAP, ECF No. 1. It is therefore indisputable that Baldwin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Baldwin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Baldwin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Baldwin County's public-nuisance claim against the PBMs is therefore time-barred because Baldwin County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on March 18, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Baldwin County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Baldwin County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1113. *Board of County Commissioners of the County of Lea v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45266-DAP: Plaintiff Lea County, New Mexico

Lea County's untimely motion for leave to amend should be denied for several reasons. Lea County failed to provide notice of its proposed amendments through a proposed complaint. Lea County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lea County's motion should be denied due to futility, as Lea County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lea County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lea County amended its complaint on July 15, 2019, after transfer to the MDL on April 17, 2019. *See Board of County Commissioners of the County of Lea v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45266-DAP, ECF No. 7. Unlike many other plaintiffs, Lea County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lea County's deadline to amend was in 2019. Lea County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lea County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lea County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lea County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lea County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying

facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lea County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Lea County). That insignificant dispensing volume is much too low to support a finding of good cause for Lea County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lea County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lea County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lea County filed its original complaint on March 15, 2019. *See Board of County Commissioners of the County of Lea v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45266-DAP, ECF No. 1. Despite filing its case years ago, Lea County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lea County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lea County's document destruction and the appropriate sanctions—just

as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lea County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lea County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lea County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lea County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lea County's proposed RICO claim against the PBMs has expired. Lea County filed its original complaint on March 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Lea v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45266-DAP, ECF No. 1. It is therefore indisputable that Lea County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lea County's RICO claim is therefore time-barred by RICO's four-

year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lea County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lea County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1114. *City of Tucson v. Purdue Pharma LP et al.*, Case No. 1:19-op-45267-DAP: Plaintiff Tucson City, Arizona

Tucson City's untimely motion for leave to amend should be denied for several reasons. Tucson City failed to provide notice of its proposed amendments through a proposed complaint. Tucson City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Tucson City's motion should be denied due to futility, as Tucson City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tucson City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tucson City filed its original complaint on January 17, 2019 and the case was transferred to the MDL on April 17, 2019. *See City of Tucson v. Purdue Pharma LP et al.*, Case No. 1:19-op-45267-DAP, ECF No. 17. Tucson City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Tucson City elected not to do so. Instead, Tucson City waited five years after its deadline to amend to seek

leave to assert claims against the PBMs. Tucson City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tucson City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Tucson City). That insignificant dispensing volume is much too low to support a finding of good cause for Tucson City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tucson City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tucson City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Tucson City violated its basic duty to implement a timely litigation hold. Tucson City filed its original complaint on January 17, 2019, but waited until September 11, 2024 to implement a litigation hold—five and a half years later. *See City of Tucson v. Purdue Pharma LP et al.*, Case No. 1:19-op-45267-DAP, ECF No. 1-3; *see*

*also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 11, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Tucson City's case would force the parties and the Court to waste time and resources ascertaining the extent of Tucson City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tucson City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tucson City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Arizona law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tucson City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Arizona law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tucson City, a municipality in Arizona, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tucson City's proposed RICO claim against the PBMs has expired. Tucson City filed its original complaint on January 17, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Tucson v. Purdue Pharma LP et al.*, Case No. 1:19-op-45267-DAP, ECF No. 1-3. Even

assuming *arguendo* that Tucson City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 17, 2023. Tucson City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tucson City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tucson City, a municipality in Arizona, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1115. *County of Pima v. Purdue Pharma LP et al.*, Case No. 1:19-op-45268-DAP: Plaintiff Pima County, Arizona

Pima County's untimely motion for leave to amend should be denied for several reasons. Pima County failed to provide notice of its proposed amendments through a proposed complaint. Pima County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pima County's motion should be denied due to futility, as Pima County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pima County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pima County filed its original complaint on January 17, 2019 and the case was transferred to the MDL on April 29, 2019. *See County of Pima v. Purdue Pharma LP et al.*, Case No. 1:19-op-45268-DAP, ECF No. 12. Pima County could have amended its complaint, without leave, to add

claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Pima County elected not to do so. Instead, Pima County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pima County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pima County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Pima County). That insignificant dispensing volume is much too low to support a finding of good cause for Pima County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pima County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pima County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Pima County violated its basic duty to implement a timely litigation hold. Pima County filed its original complaint on January 17, 2019,

but waited until September 11, 2024 to implement a litigation hold—five and a half years later. *See County of Pima v. Purdue Pharma LP et al.*, Case No. 1:19-op-45268-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 11, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pima County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pima County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pima County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pima County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Arizona law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pima County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Arizona law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pima County, a municipality in Arizona, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pima County's proposed RICO claim against the PBMs has expired. Pima County filed its original complaint on January

17, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Pima v. Purdue Pharma LP et al.*, Case No. 1:19-op-45268-DAP, ECF No. 1-3. Even assuming *arguendo* that Pima County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 17, 2023. Pima County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pima County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pima County, a municipality in Arizona, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1116. *County of Fannin v. Rite Aid of Georgia, Inc. et al.*, Case No. 1:19-op-45269-DAP: Plaintiff Fannin County, Georgia

Fannin County's untimely motion for leave to amend should be denied for several reasons. Fannin County failed to provide notice of its proposed amendments through a proposed complaint. Fannin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fannin County's motion should be denied due to futility, as Fannin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fannin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Fannin County filed its original complaint on October 3, 2018 and the case was transferred to the MDL on April 18, 2019. *See County of Fannin v. Rite Aid of Georgia, Inc. et al.*, Case No. 1:19-op-45269-DAP, ECF No. 23. Fannin County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Fannin County elected not to do so. Instead, Fannin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fannin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fannin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Fannin County). That insignificant dispensing volume is much too low to support a finding of good cause for Fannin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Fannin County filed its original complaint on October 3, 2018. *See County of Fannin v. Rite Aid of Georgia, Inc. et al.*, Case No. 1:19-op-45269-DAP, ECF No. 1-1. Despite filing its case years ago, Fannin County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Fannin County's case would force the parties and

the Court to waste time and resources ascertaining the extent of Fannin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fannin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fannin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Fannin County has *never* served a Plaintiff Fact Sheet. Fannin County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Fannin County's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fannin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fannin County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fannin County's proposed RICO claim against the PBMs has expired. Fannin County filed its original complaint on October 3, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Fannin v. Rite Aid of Georgia, Inc. et al.*, Case No. 1:19-op-45269-DAP, ECF No. 1-1. Even assuming *arguendo* that Fannin County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 3, 2022. Fannin County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fannin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fannin County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1117. *Bad River Band of Lake Superior Chippewa v. McKesson Corporation et al.*, **Case No. 1:19-op-45270-DAP: Plaintiff Bad River Band of Lake Superior Chippewa, Wisconsin**

Bad River Band of Lake Superior Chippewa's untimely motion for leave to amend should be denied for several reasons. Bad River Band of Lake Superior Chippewa failed to provide notice of its proposed amendments through a proposed complaint. Bad River Band of Lake Superior

Chippewa also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bad River Band of Lake Superior Chippewa's motion should be denied due to futility, as Bad River Band of Lake Superior Chippewa does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bad River Band of Lake Superior Chippewa was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bad River Band of Lake Superior Chippewa filed its original complaint on January 7, 2019 and the case was transferred to the MDL on April 17, 2019. *See Bad River Band of Lake Superior Chippewa v. McKesson Corporation et al.*, Case No. 1:19-op-45270-DAP, ECF No. 10. Bad River Band of Lake Superior Chippewa could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bad River Band of Lake Superior Chippewa elected not to do so. Instead, Bad River Band of Lake Superior Chippewa waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bad River Band of Lake Superior Chippewa's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to

Bad River Band of Lake Superior Chippewa's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bad River Band of Lake Superior Chippewa to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bad River Band of Lake Superior Chippewa filed its original complaint on January 7, 2019. *See Bad River Band of Lake Superior Chippewa v. McKesson Corporation et al.*, Case No. 1:19-op-45270-DAP, ECF No. 1-1. Despite filing its case years ago, Bad River Band of Lake Superior Chippewa *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bad River Band of Lake Superior Chippewa's case would force the parties and the Court to waste time and resources ascertaining the extent of Bad River Band of Lake Superior Chippewa's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bad River Band of Lake Superior Chippewa's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bad River Band of Lake Superior Chippewa therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bad River Band of Lake

Superior Chippewa's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bad River Band of Lake Superior Chippewa, a native tribe in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bad River Band of Lake Superior Chippewa's proposed RICO claim against the PBMs has expired. Bad River Band of Lake Superior Chippewa filed its original complaint on January 7, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Bad River Band of Lake Superior Chippewa v. McKesson Corporation et al.*, Case No. 1:19-op-45270-DAP, ECF No. 1-1. Even assuming *arguendo* that Bad River Band of Lake Superior Chippewa first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 7, 2023. Bad River Band of Lake Superior Chippewa's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bad River Band of Lake Superior Chippewa's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bad River Band of Lake Superior Chippewa, a native tribe in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1118. *Winona County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45271-DAP: Plaintiff Winona County, Minnesota

Winona County's untimely motion for leave to amend should be denied for several reasons. Winona County failed to provide notice of its proposed amendments through a proposed complaint. Winona County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winona County's motion should be denied due to futility, as Winona County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winona County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Winona County amended its complaint on July 12, 2019, after transfer to the MDL on April 17, 2019. *See Winona County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45271-DAP, ECF No. 8. Unlike many other plaintiffs, Winona County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Winona County's deadline to amend was in 2019. Winona County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Winona County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Winona County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Winona County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Winona County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Winona County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Winona County). That insignificant dispensing volume is much too low to support a finding of good cause for Winona County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Winona County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Winona County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Winona County violated its basic duty to implement a timely litigation hold. Winona County filed its original complaint on March 28, 2019, but waited until September 10, 2024 to implement a litigation hold—almost five and a half years later. *See Winona County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45271-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 10, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Winona County's case would force the parties and the Court to waste time and resources ascertaining the extent of Winona County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Winona County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Winona County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winona County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winona County, a municipality in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winona County's proposed RICO claim against the PBMs has expired. Winona County filed its original complaint on March 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Winona County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45271-DAP, ECF No. 1. It is therefore indisputable that Winona County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Winona County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winona County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Winona County, a municipality in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1119.** *Marion County, Florida v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45272-DAP: Plaintiff Marion County, Florida**

Marion County's untimely motion for leave to amend should be denied for several reasons. Marion County failed to provide notice of its proposed amendments through a proposed complaint. Marion County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marion County's motion should be denied due to futility, as Marion County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marion County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marion County filed its original complaint on April 3, 2019 and the case was transferred to the MDL on April 17, 2019. *See Marion County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45272-DAP, ECF No. 6. Marion County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Marion County elected not to do so. Instead, Marion County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Marion County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marion County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.18% market share for Marion County). That insignificant dispensing volume is much too low to support a finding of good cause for Marion County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Marion County filed its original complaint on April 3, 2019. *See Marion County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45272-DAP, ECF No. 1. Despite filing its case years ago, Marion County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Marion County's case would force the parties and the Court to waste time and resources ascertaining the extent of Marion County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marion County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marion County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marion County's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Marion County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marion County's proposed RICO claim against the PBMs has expired. Marion County filed its original complaint on April 3, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Marion County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45272-DAP, ECF No. 1. It is therefore indisputable that Marion County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Marion County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marion County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Marion County's public-nuisance claim against the PBMs is therefore time-barred because Marion County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on April 3, 2019—and the proposed

4140

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Marion County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1120. *Miller County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45274-DAP: Plaintiff Miller County, Missouri

Miller County's untimely motion for leave to amend should be denied for several reasons. Miller County failed to provide notice of its proposed amendments through a proposed complaint. Miller County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Miller County's motion should be denied due to futility, as Miller County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Miller County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.. Moreover, Miller County amended its complaint on July 10, 2019, after directly filing in the MDL. *See Miller County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45274-DAP, ECF No. 3. Unlike many other plaintiffs, Miller County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Miller County's deadline to amend was in 2019. Miller County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Miller County's lack of diligence in pursuing its claims negates any finding of good

cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Miller County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Miller County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Miller County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Miller County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Miller County). That insignificant dispensing volume is much too low to support a finding of good cause for Miller County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Miller County filed its original complaint on April 11, 2019. *See Miller County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45274-DAP, ECF No. 1. Despite filing its case years ago, Miller County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Miller County's case would force the parties and the Court to waste time and resources ascertaining the extent of Miller County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Miller County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Miller County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Miller County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Miller County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Miller County's proposed RICO claim against the PBMs has expired. Miller County filed its original complaint on April 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Miller County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45274-DAP, ECF No. 1. It is therefore indisputable that Miller County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Miller County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Miller County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Miller County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1121. *Page County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45275-DAP: Plaintiff Page County, Virginia

Page County's untimely motion for leave to amend should be denied for several reasons. Page County failed to provide notice of its proposed amendments through a proposed complaint. Page County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Page County's motion should be denied due to futility, as Page County does not assert any allegations tying the PBMs to its

alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Page County previously alleged claims against some of the PBMs in its original complaint on September 21, 2018. *See Page County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45275-DAP, ECF No. 1-2 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Page County also amended its complaint on July 3, 2019 to add claims against additional PBM-related entities. *See id.*, ECF No. 80 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Page County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Page County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Page County's complaint, Page County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Page County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Page County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Page County). That insignificant dispensing volume is much too low to support a finding of good cause for Page County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Page County violated its basic duty to implement a timely litigation hold. Page County filed its original complaint on September 21, 2018, but waited until July 19, 2024 to implement a litigation hold—nearly six years later. *See Page County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45275-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 19, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Page County's case would force the parties and the Court to waste time and resources ascertaining the extent of Page County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Page County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Page County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Page County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Page County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Page County of this deficiency on September 16, 2024 (*see* Exhibit B), but Page County refused to amend or supplement its Fact Sheet. Under this Court's orders, Page County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Page County's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Page County's potential claims against them. Page County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Page County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Page County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Page County's proposed RICO claim against the PBMs has expired. Page County filed its original complaint on September 21, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Page County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45275-DAP, ECF No. 1-2. Even assuming *arguendo* that Page County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 21, 2022. Page County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that

the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Page County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Page County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1122. *Hospital Authority of Wayne County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45278-DAP: Plaintiff Wayne County Hospital Authority, Georgia

Wayne County Hospital Authority's untimely motion for leave to amend should be denied for several reasons. The Court previously dismissed Wayne County Hospital Authority's case. Moreover, Wayne County Hospital Authority failed to provide notice of its proposed amendments through a proposed complaint. Wayne County Hospital Authority also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wayne County Hospital Authority's motion should be denied due to futility, as Wayne County Hospital Authority does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously closed Wayne County Hospital Authority's case on September 21, 2023. *See Hospital Authority of Wayne County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45278-DAP, ECF No. 41. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp*, 511 F.3d at 624 (citation omitted). Without such post-judgment relief, the "'district court lacks

power to grant a motion to amend the complaint'" because there is no "live case or controversy before the district court." *Id.* (quoting *Acevedo-Villalobos*, 22 F.3d at 389). Wayne County Hospital Authority has neither moved for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion."). Wayne County Hospital Authority has not offered any basis to reopen its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Lack of Diligence.** Wayne County Hospital Authority was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wayne County Hospital Authority amended its complaint on July 15, 2019, after directly filing in the MDL, as well as on July 15, 2019. *See Hospital Authority of Wayne County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45278-DAP, ECF Nos. 25, 26. Unlike many other plaintiffs, Wayne County Hospital Authority declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Wayne County Hospital Authority's deadline to amend was in 2019. Wayne County Hospital Authority waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wayne County Hospital Authority's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Wayne County Hospital Authority filed its original complaint on April 16, 2019. *See Hospital Authority of Wayne County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45278-DAP, ECF No. 1. Despite filing its case years ago, Wayne County Hospital Authority *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wayne County Hospital Authority's case would force the parties and the Court to waste time and resources ascertaining the extent of Wayne County Hospital Authority's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wayne County Hospital Authority's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wayne County Hospital Authority therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wayne County Hospital Authority's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wayne County Hospital Authority, a hospital in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wayne County Hospital Authority's proposed RICO claim against the PBMs has expired. Wayne County Hospital Authority filed its original complaint on April 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hospital Authority of Wayne County, Georgia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45278-DAP, ECF No. 1. It is therefore indisputable that Wayne County Hospital Authority knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Wayne County Hospital Authority's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wayne County Hospital Authority's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wayne County Hospital Authority, a hospital in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1123. *Town of Warren v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45281-DAP: Plaintiff Warren Town, Rhode Island

Warren Town's untimely motion for leave to amend should be denied for several reasons. Warren Town failed to provide notice of its proposed amendments through a proposed complaint. Warren Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Warren Town's motion should be denied due to futility, as Warren Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Warren Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Warren Town amended its complaint on July 10, 2019, after transfer to the MDL on April 17, 2019. *See Town of Warren v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45281-DAP, ECF No. 7. Unlike many other plaintiffs, Warren Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Warren Town's deadline to amend was in 2019. Warren Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Warren Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Warren Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Warren Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Warren Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of

the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Warren Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Warren Town). That insignificant dispensing volume is much too low to support a finding of good cause for Warren Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Warren Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Warren Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Warren Town filed its original complaint on April 2, 2019. *See Town of Warren v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45281-DAP, ECF No. 1. Despite filing its case years ago, Warren Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Warren Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Warren Town's

document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Warren Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Warren Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Warren Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Warren Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Warren Town's proposed RICO claim against the PBMs has expired. Warren Town filed its original complaint on April 2, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Warren v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45281-DAP, ECF No. 1. It is therefore indisputable that Warren Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend.

Warren Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Warren Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Warren Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1124. *Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45282-DAP: Plaintiff Scituate Town, Rhode Island

Scituate Town's untimely motion for leave to amend should be denied for several reasons. Scituate Town failed to provide notice of its proposed amendments through a proposed complaint. Scituate Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scituate Town's motion should be denied due to futility, as Scituate Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scituate Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scituate Town amended its complaint on July 15, 2019, after transfer to the MDL on April 17, 2019. *See Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45282-DAP, ECF No. 7. Unlike many other plaintiffs, Scituate Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Scituate Town's deadline

to amend was in 2019. Scituate Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scituate Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Scituate Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Scituate Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Scituate Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Scituate Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Scituate Town). That insignificant dispensing volume is much too low to support a finding of good cause for Scituate Town to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scituate Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scituate Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Scituate Town filed its original complaint on April 2, 2019. *See Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45282-DAP, ECF No. 1. Despite filing its case years ago, Scituate Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Scituate Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Scituate Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Scituate Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Scituate Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scituate Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scituate Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scituate Town's proposed RICO claim against the PBMs has expired. Scituate Town filed its original complaint on April 2, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Scituate v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45282-DAP, ECF No. 1. It is therefore indisputable that Scituate Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Scituate Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scituate Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Scituate Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1125. *Jackson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45283-DAP: Plaintiff Jackson County, Florida

Jackson County's untimely motion for leave to amend should be denied for several reasons. Jackson County failed to provide notice of its proposed amendments through a proposed complaint. Jackson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jackson County's motion should be denied due to futility, as Jackson County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jackson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jackson County amended its complaint on July 17, 2019, after transfer to the MDL on April 18, 2019. *See Jackson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45283-DAP, ECF No. 7. Unlike many other plaintiffs, Jackson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Jackson County's deadline to amend was in 2019. Jackson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Jackson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Jackson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Jackson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Jackson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jackson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Jackson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jackson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Jackson County filed its original complaint on April 2, 2019. *See Jackson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-

op-45283-DAP, ECF No. 1. Despite filing its case years ago, Jackson County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jackson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jackson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jackson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Jackson County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jackson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jackson County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jackson County's proposed RICO claim against the PBMs has expired. Jackson County filed its original complaint on April

2, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Jackson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45283-DAP, ECF No. 1. It is therefore indisputable that Jackson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Jackson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jackson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Jackson County's public-nuisance claim against the PBMs is therefore time-barred because Jackson County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on April 2, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Jackson County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1126.** *City of Rome, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45284-DAP: Plaintiff Rome City, New York

Rome City's untimely motion for leave to amend should be denied for several reasons. Rome City failed to provide notice of its proposed amendments through a proposed complaint. Rome City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rome City's motion should be denied due to futility, as Rome City does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Rome City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rome City amended its complaint on July 3, 2019, after transfer to the MDL on April 18, 2019. *See City of Rome, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45284-DAP, ECF No. 78. Unlike many other plaintiffs, Rome City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rome City's deadline to amend was in 2019. Rome City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rome City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rome City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl.

(0.02% market share for Rome City). That insignificant dispensing volume is much too low to support a finding of good cause for Rome City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rome City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rome City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Rome City filed its original complaint on March 28, 2019. *See City of Rome, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45284-DAP, ECF No. 1. Despite filing its case years ago, Rome City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Rome City's case would force the parties and the Court to waste time and resources ascertaining the extent of Rome City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rome City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rome City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rome City's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Rome City's proposed RICO claim against the PBMs has expired. Rome City filed its original complaint on March 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Rome, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45284-DAP, ECF No. 1. It is therefore indisputable that Rome City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Rome City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rome City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rome City, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Rome City's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1127.** *People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45286-DAP: Plaintiff Union County, Illinois**

Union County's untimely motion for leave to amend should be denied for several reasons. Union County failed to provide notice of its proposed amendments through a proposed complaint. Union County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Union County's motion should be denied due to futility, as Union County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Union County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Union County first amended its complaint on September 10, 2018. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45286-DAP, ECF No. 1-2. Union County amended its complaint again on July 17, 2019. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45286-DAP, ECF No. 48. Unlike many other plaintiffs, Union County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Union County's deadline to amend was in 2019. Union County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Union County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Union County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Union County). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Union County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Union County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Union County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Union County of this deficiency on September 16, 2024 (*see* Exhibit B), but Union County refused to amend or supplement its Fact Sheet. Under this Court's orders, Union County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Union County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Union County's potential claims against them. Union County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Union County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Union County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Union County's proposed RICO claim against the PBMs has expired. Union County filed its second amended complaint on July 17, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45286-DAP, ECF No. 48. It is therefore indisputable that Union County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Union County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Union County's request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Union County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1128. *City of Greensboro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45289-DAP: Plaintiff Greensboro City, North Carolina

Greensboro City's untimely motion for leave to amend should be denied for several reasons. Greensboro City failed to provide notice of its proposed amendments through a proposed complaint. Greensboro City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greensboro City's motion should be denied due to futility, as Greensboro City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greensboro City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greensboro City amended its complaint on July 22, 2019, after transfer to the MDL on April 22, 2019. *See City of Greensboro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45289-DAP, ECF No. 25. Unlike many other plaintiffs, Greensboro City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Greensboro City's deadline to amend was in 2019. Greensboro City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Greensboro City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Greensboro City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Greensboro City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Greensboro City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Greensboro City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Greensboro City). That insignificant dispensing volume is much too low to support a finding of good cause for Greensboro City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Greensboro City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Greensboro City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Greensboro City violated its basic duty to implement a timely litigation hold. Greensboro City filed its original complaint on April 8, 2019, but waited until December 13, 2019 to implement a litigation hold—eight months later. *See City of Greensboro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45289-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Greensboro City's case would force the parties and the Court to waste time and resources ascertaining the extent of Greensboro City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Greensboro City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Greensboro City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Greensboro City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Greensboro City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Greensboro City of this deficiency on September 16, 2024 (*see* Exhibit B), but Greensboro City refused to amend or supplement its Fact Sheet. Under this Court's orders, Greensboro City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Greensboro City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Greensboro City's potential claims against them. Greensboro City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greensboro City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greensboro City, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greensboro City's proposed RICO claim against the PBMs has expired. Greensboro City filed its original complaint on April 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Greensboro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45289-DAP, ECF No. 1. It is therefore indisputable that Greensboro City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Greensboro City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greensboro City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Greensboro City, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1129.** *Lee County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45290-DAP: Plaintiff Lee County, North Carolina**

Lee County's untimely motion for leave to amend should be denied for several reasons. Lee County failed to provide notice of its proposed amendments through a proposed complaint. Lee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lee County's motion should be

denied due to futility, as Lee County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lee County amended its complaint on July 22, 2019, after transfer to the MDL on April 22, 2019. *See Lee County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45290-DAP, ECF No. 25. Unlike many other plaintiffs, Lee County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lee County's deadline to amend was in 2019. Lee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lee County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lee County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lee County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195

F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Lee County). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lee County violated its basic duty to implement a timely litigation hold. Lee County filed its original complaint on April 8, 2019, but waited until December 16, 2019 to implement a litigation hold—eight months later. *See Lee County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45290-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 16, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lee County's case would

force the parties and the Court to waste time and resources ascertaining the extent of Lee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lee County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lee County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lee County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lee County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lee County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lee County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lee County's potential claims against them. Lee County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lee County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lee County's proposed RICO claim against the PBMs has expired. Lee County filed its original complaint on April 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lee County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45290-DAP, ECF No. 1. It is therefore indisputable that Lee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lee County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 1130. *City of Gulfport, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45291-DAP: Plaintiff Gulfport City, Mississippi

Gulfport City's untimely motion for leave to amend should be denied for several reasons. Gulfport City failed to provide notice of its proposed amendments through a proposed complaint. Gulfport City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gulfport City's motion should be denied due to futility, as Gulfport City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gulfport City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gulfport City amended its complaint on October 18, 2019, after directly filing in the MDL. *See City of Gulfport, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45291-DAP, ECF No. 31. Unlike many other plaintiffs, Gulfport City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Gulfport City's deadline to amend was in 2019. Gulfport City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Gulfport City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gulfport City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Gulfport City). That insignificant dispensing volume is much too low to support a finding of good cause for Gulfport City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Gulfport City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Gulfport City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Gulfport City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Gulfport City of the PBM services Express Scripts provides and Gulfport City began receiving those services on January 1, 2006. *See id.* Inasmuch as Gulfport City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Gulfport City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Gulfport City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at

879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Gulfport City filed its original complaint on April 24, 2019. *See City of Gulfport, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45291-DAP, ECF No. 1. Despite filing its case years ago, Gulfport City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Gulfport City's case would force the parties and the Court to waste time and resources ascertaining the extent of Gulfport City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gulfport City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Gulfport City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gulfport City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gulfport City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Gulfport City's proposed RICO claim against the PBMs has expired. Gulfport City filed its original complaint on April 24, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Gulfport, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45291-DAP, ECF No. 1. It is therefore indisputable that Gulfport City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Gulfport City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gulfport City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Gulfport City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1131. *City of Prestonsburg v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:19-op-45294-DAP: Plaintiff Prestonsburg City, Kentucky

Prestonsburg City's untimely motion for leave to amend should be denied for several reasons. Prestonsburg City failed to provide notice of its proposed amendments through a proposed complaint. Prestonsburg City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Prestonsburg City's motion should be denied due to futility, as

Prestonsburg City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Prestonsburg City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Prestonsburg City amended its complaint on September 18, 2019, after directly filing in the MDL. *See City of Prestonsburg v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:19-op-45294-DAP, ECF No. 2. Unlike many other plaintiffs, Prestonsburg City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Prestonsburg City's deadline to amend was in 2019. Prestonsburg City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Prestonsburg City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Prestonsburg City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Prestonsburg City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Prestonsburg City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Prestonsburg City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Prestonsburg City filed its original complaint on April 30, 2019. *See City of Prestonsburg v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:19-op-45294-DAP, ECF No. 1. Despite filing its case years ago, Prestonsburg City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Prestonsburg City's case would force the parties and the Court to waste time and resources ascertaining the extent of Prestonsburg City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Prestonsburg City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Prestonsburg City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Prestonsburg City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Prestonsburg City, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Prestonsburg City's proposed RICO claim against the PBMs has expired. Prestonsburg City filed its original complaint on April 30, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Prestonsburg v. AmerisourceBergen Drug Corporation, et al.*, Case No. 1:19-op-45294-DAP, ECF No. 1. It is therefore indisputable that Prestonsburg City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Prestonsburg City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Prestonsburg City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Prestonsburg City, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1132. ***Bad River Band of Lake Superior Chippewa v. Watson Laboratories, Inc. et al.*, Case No. 1:19-op-45297-DAP: Plaintiff Bad River Band of Lake Superior Chippewa, Wisconsin**

Bad River Band of Lake Superior Chippewa's untimely motion for leave to amend should be denied for several reasons. Bad River Band of Lake Superior Chippewa failed to provide notice of its proposed amendments through a proposed complaint. Bad River Band of Lake Superior Chippewa also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bad River Band of Lake Superior Chippewa's motion should be denied due to futility, as Bad River Band of Lake Superior Chippewa does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bad River Band of Lake Superior Chippewa was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bad River Band of Lake Superior Chippewa filed its original complaint on January 7, 2019 and the case was transferred to the MDL on May 6, 2019. *See Bad River Band of Lake Superior Chippewa v. Watson Laboratories, Inc. et al.*, Case No. 1:19-op-45297-DAP, ECF No. 6. Bad River Band of Lake Superior Chippewa could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bad River Band of Lake Superior Chippewa elected not to do so. Instead, Bad River Band of Lake Superior Chippewa waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bad River Band of Lake Superior Chippewa's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bad River Band of Lake Superior Chippewa's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bad River Band of Lake Superior Chippewa to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bad River Band of Lake Superior Chippewa filed its original complaint on January 7, 2019. *See Bad River Band of Lake Superior Chippewa v. Watson Laboratories, Inc. et al.*, Case No. 1:19-op-45297-DAP, ECF No. 1-1. Despite filing its case years ago, Bad River Band of Lake Superior Chippewa *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bad River Band of Lake Superior Chippewa's case would force the parties and the Court to waste time and resources ascertaining the extent of Bad River Band of Lake Superior Chippewa's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bad River Band of Lake Superior Chippewa's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bad River Band of Lake Superior Chippewa therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in

part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bad River Band of Lake Superior Chippewa's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Bad River Band of Lake Superior Chippewa, a native tribe in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bad River Band of Lake Superior Chippewa's proposed RICO claim against the PBMs has expired. Bad River Band of Lake Superior Chippewa filed its original complaint on January 7, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Bad River Band of Lake Superior Chippewa v. Watson Laboratories, Inc. et al.*, Case No. 1:19-op-45297-DAP, ECF No. 1-1. Even assuming *arguendo* that Bad River Band of Lake Superior Chippewa first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 7, 2023. Bad River Band of Lake Superior Chippewa's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bad River Band of Lake Superior

Chippewa's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bad River Band of Lake Superior Chippewa, a native tribe in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1133. *City of Brighton v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45298-DAP: Plaintiff Brighton City, Colorado

Brighton City's untimely motion for leave to amend should be denied for several reasons. Brighton City failed to provide notice of its proposed amendments through a proposed complaint. Brighton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Brighton City's motion should be denied due to futility, as Brighton City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brighton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brighton City amended its complaint on June 6, 2019, after transfer to the MDL on May 6, 2019, as well as on December 22, 2020. *See City of Brighton v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45298-DAP, ECF Nos. 10, 14. Unlike many other plaintiffs, Brighton City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Brighton City's deadline to amend was in 2019. Brighton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Brighton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brighton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.18% market share for Brighton City). That insignificant dispensing volume is much too low to support a finding of good cause for Brighton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brighton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brighton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brighton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brighton City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brighton City's proposed RICO claim against the PBMs has expired. Brighton City filed its original complaint on April 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Brighton v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45298-DAP, ECF No. 1. It is therefore indisputable that Brighton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Brighton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brighton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Brighton City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1134.** *Board of County Commissioners of the County of Bernalillo v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45301-DAP: Plaintiff Bernalillo County, New Mexico**

Bernalillo County's untimely motion for leave to amend should be denied for several reasons. Bernalillo County failed to provide notice of its proposed amendments through a proposed complaint. Bernalillo County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Bernalillo County's motion should be denied due to futility, as Bernalillo County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bernalillo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bernalillo County amended its complaint on August 5, 2019, after transfer to the MDL on May 8, 2019. *See Board of County Commissioners of the County of Bernalillo v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45301-DAP, ECF No. 7. Unlike many other plaintiffs, Bernalillo County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bernalillo County's deadline to amend was in 2019. Bernalillo County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bernalillo County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bernalillo County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bernalillo County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Bernalillo County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bernalillo County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Bernalillo County). That insignificant dispensing volume is much too low to support a finding of good cause for Bernalillo County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bernalillo County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bernalillo County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Bernalillo County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary

development. *See* Achter Decl., Exhibit A. That contract notified Bernalillo County of the PBM services Express Scripts provides and Bernalillo County began receiving those services on July 1, 2015. *See id.* Inasmuch as Bernalillo County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Bernalillo County knew or should have known of the alleged wrongful conduct nine years before moving to amend. *See* Section III.A.3, above. Bernalillo County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bernalillo County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bernalillo County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bernalillo County's proposed RICO claim against the PBMs has expired. Bernalillo County filed its original complaint on April 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Board of County Commissioners of the County of Bernalillo v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45301-DAP, ECF No. 1. It is therefore indisputable that Bernalillo County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Bernalillo County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bernalillo County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bernalillo County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1135. *City of Lackawanna, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45303-DAP: Plaintiff Lackawanna City, New York

Lackawanna City's untimely motion for leave to amend should be denied for several reasons. Lackawanna City failed to provide notice of its proposed amendments through a proposed complaint. Lackawanna City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lackawanna City's motion should be denied due to futility, as Lackawanna City does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Lackawanna City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Lackawanna City amended its complaint on July 22, 2019, after transfer to the MDL on May 8, 2019. *See City of Lackawanna, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45303-DAP, ECF No. 79. Unlike many other plaintiffs, Lackawanna City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lackawanna City's deadline to amend was in 2019. Lackawanna City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lackawanna City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lackawanna City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Lackawanna City). That insignificant dispensing volume is much too low to support a finding of good cause for Lackawanna City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lackawanna City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Lackawanna City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lackawanna City filed its original complaint on April 15, 2019. *See City of Lackawanna, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45303-DAP, ECF No. 1. Despite filing its case years ago, Lackawanna City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lackawanna City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lackawanna City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lackawanna City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lackawanna City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lackawanna City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Lackawanna City's proposed RICO claim against the PBMs has expired. Lackawanna City filed its original complaint on April

15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lackawanna, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45303-DAP, ECF No. 1. It is therefore indisputable that Lackawanna City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lackawanna City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lackawanna City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lackawanna City, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Lackawanna City's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at \*2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1136. *Meriwether County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45305-DAP: Plaintiff Meriwether County, Georgia

Meriwether County's untimely motion for leave to amend should be denied for several reasons. Meriwether County failed to provide notice of its proposed amendments through a proposed complaint. Meriwether County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Meriwether County's motion should be denied due to futility, as Meriwether County does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Meriwether County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Meriwether County amended its complaint on August 5, 2019, after directly filing in the MDL. *See Meriwether County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45305-DAP, ECF No. 2. Unlike many other plaintiffs, Meriwether County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Meriwether County's deadline to amend was in 2019. Meriwether County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Meriwether County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Meriwether County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Meriwether County). That insignificant dispensing volume is much too low to support a finding of good cause for Meriwether County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Meriwether County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Meriwether County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Meriwether County filed its original complaint on May 7, 2019. *See Meriwether County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45305-DAP, ECF No. 1. Despite filing its case years ago, Meriwether County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Meriwether County's case would force the parties and the Court to waste time and resources ascertaining the extent of Meriwether County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Meriwether County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Meriwether County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Meriwether County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Meriwether County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time

period. The PBMs notified Meriwether County of this deficiency on September 16, 2024 (*see* Exhibit B), but Meriwether County refused to amend or supplement its Fact Sheet. Under this Court's orders, Meriwether County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Meriwether County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Meriwether County's potential claims against them. Meriwether County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Meriwether County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Meriwether County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Meriwether County seeks leave to amend to add claims against the PBMs in two cases: *Meriwether County, Georgia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45305-DAP; and *Smith v. Purdue Pharma L.P., et al.*, No. 1:19-op-45306-DAP. Meriwether County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Meriwether County's proposed RICO claim against the PBMs has expired. Meriwether County filed its original complaint on May 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Meriwether County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45305-DAP, ECF No. 1. It is therefore indisputable that Meriwether County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Meriwether County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Meriwether County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Meriwether County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1137.** *Smith v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45306-DAP: Plaintiff Sheriff of Meriwether County, Georgia

Sheriff of Meriwether County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Meriwether County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Meriwether County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Meriwether County's motion should be denied due to futility, as Sheriff of Meriwether County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Meriwether County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Meriwether County amended its complaint on August 5, 2019, after directly filing in the MDL. *See Smith v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45306-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Meriwether County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Meriwether County's deadline to amend was in 2019. Sheriff of Meriwether County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Meriwether County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline

because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Meriwether County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.1% market share for Sheriff of Meriwether County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Meriwether County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Meriwether County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Meriwether County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Meriwether County filed its original complaint on May 7, 2019. *See Smith v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45306-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Meriwether County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Meriwether County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Meriwether County's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Meriwether County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Meriwether County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Meriwether County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Meriwether County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Meriwether County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Meriwether County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Meriwether County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Meriwether County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Meriwether County's potential claims against them. Sheriff of Meriwether County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Meriwether County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Meriwether County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Sheriff of Meriwether County seeks leave to amend to add claims against the PBMs in two cases: *Meriwether County, Georgia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45305-DAP; and *Smith v. Purdue Pharma L.P., et al.*, No. 1:19-op-45306-DAP. Sheriff of Meriwether County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Meriwether County's proposed RICO claim against the PBMs has expired. Sheriff of Meriwether County filed its original complaint on May 7, 2019, alleging the same type of injuries *and* alleging a RICO

claim against other defendants. *See Smith v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45306-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Meriwether County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Meriwether County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Meriwether County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Meriwether County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1138. *Melton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45307-DAP: Plaintiff Sheriff of Appling County, Georgia

Sheriff of Appling County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Appling County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Appling County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Appling County's motion should be denied due to futility, as Sheriff of Appling County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Appling County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Appling County amended its complaint on August 5, 2019, after directly filing in the MDL. *See Melton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45307-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Appling County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Appling County's deadline to amend was in 2019. Sheriff of Appling County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Appling County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Appling County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Sheriff of Appling County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Appling County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Appling County's geographic jurisdiction during 2009 to 2019. *See*

DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Appling County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Appling County filed its original complaint on May 8, 2019. *See Melton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45307-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Appling County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Appling County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Appling County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Appling County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Appling County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Appling County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Appling County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Appling County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Appling County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Appling County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in

original); *see* Section III.A.5, above. Sheriff of Appling County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Appling County's potential claims against them. Sheriff of Appling County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Appling County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Appling County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Appling County's proposed RICO claim against the PBMs has expired. Sheriff of Appling County filed its original complaint on May 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Melton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45307-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Appling County knew of its RICO injury, at the

very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Appling County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Appling County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Appling County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1139. *Talton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45308-DAP: Plaintiff Sheriff of Houston County, Georgia

Sheriff of Houston County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Houston County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Houston County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Houston County's motion should be denied due to futility, as Sheriff of Houston County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Houston County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Houston County amended its complaint on August 5, 2019, after directly

filing in the MDL. *See Talton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45308-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Houston County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Houston County's deadline to amend was in 2019. Sheriff of Houston County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Houston County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Houston County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Sheriff of Houston County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Houston County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Houston County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Houston County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Houston County filed its original complaint on May 8, 2019. *See Talton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45308-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Houston County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Houston County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Houston County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Houston County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Houston County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Houston County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Houston County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Houston County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Houston County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Houston County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff of Houston County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Houston County's potential claims against them. Sheriff of Houston County's failure to

diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Houston County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Houston County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Houston County's proposed RICO claim against the PBMs has expired. Sheriff of Houston County filed its original complaint on May 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Talton v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45308-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Houston County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Houston County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Houston County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Houston County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1140. *City of Sanford v. Purdue Pharma LP et al.*, Case No. 1:19-op-45311-DAP: Plaintiff Sanford City, Maine

Sanford City's untimely motion for leave to amend should be denied for several reasons. Sanford City failed to provide notice of its proposed amendments through a proposed complaint. Sanford City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sanford City's motion should be denied due to futility, as Sanford City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sanford City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sanford City filed its original complaint on February 4, 2019 and the case was transferred to the MDL on May 13, 2019. *See City of Sanford v. Purdue Pharma LP et al.*, Case No. 1:19-op-45311-DAP, ECF No. 40. Sanford City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Sanford City elected not to do so. Instead, Sanford City waited five years after its deadline to amend to seek

leave to assert claims against the PBMs. Sanford City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sanford City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Sanford City). That insignificant dispensing volume is much too low to support a finding of good cause for Sanford City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sanford City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sanford City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sanford City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sanford City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sanford City of this deficiency on September 16, 2024 (*see* Exhibit B), but Sanford City

refused to amend or supplement its Fact Sheet. Under this Court's orders, Sanford City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sanford City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sanford City's potential claims against them. Sanford City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sanford City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sanford City, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Sanford City is a plaintiff in Maine. Sanford City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Sanford City's proposed RICO claim against the PBMs has expired. Sanford City filed its original complaint on February 4, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Sanford v. Purdue Pharma LP et al.*, Case No. 1:19-op-45311-DAP, ECF No. 1-2. Even assuming *arguendo* that Sanford City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 4, 2023. Sanford City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sanford City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sanford City, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1141.   *Steverson v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45313-DAP: Plaintiff Sheriff of Telfair County, Georgia

Sheriff of Telfair County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Telfair County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Telfair County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Telfair County's motion should be denied due to futility, as Sheriff of Telfair County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Telfair County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Telfair County amended its complaint on August 6, 2019, after directly filing in the MDL. *See Steverson v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45313-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Telfair County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Telfair County's deadline to amend was in 2019. Sheriff of Telfair County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Telfair County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Sheriff of Telfair County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Sheriff of Telfair County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Telfair County's geographic jurisdiction during 2009 to 2019. *See*

DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Telfair County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Telfair County filed its original complaint on May 9, 2019. *See Steverson v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45313-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Telfair County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Telfair County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Telfair County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Telfair County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Telfair County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Telfair County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Telfair County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Telfair County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Telfair County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Telfair County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5,

above. Sheriff of Telfair County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Telfair County's potential claims against them. Sheriff of Telfair County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Telfair County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Telfair County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Sheriff of Telfair County seeks leave to amend to add claims against the PBMs in two cases: *City of Rome, et al. v. Purdue Pharma L.P., et al.*, No. 1:18-op-45282-DAP; and *Steverson v. Purdue Pharma L.P., et al.*, No. 1:19-op-45313-DAP. Sheriff of Telfair County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court

dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Telfair County's proposed RICO claim against the PBMs has expired. Sheriff of Telfair County filed its original complaint on May 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Steverson v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45313-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Telfair County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Telfair County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Telfair County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Telfair County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1142. *Deese v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45314-DAP: Plaintiff Sheriff of Peach County, Georgia

Sheriff of Peach County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Peach County failed to provide notice of its proposed amendments through a

proposed complaint. Sheriff of Peach County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Peach County's motion should be denied due to futility, as Sheriff of Peach County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Peach County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Peach County amended its complaint on August 6, 2019, after directly filing in the MDL. *See Deese v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45314-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff of Peach County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff of Peach County's deadline to amend was in 2019. Sheriff of Peach County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Peach County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Peach County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Peach County). That insignificant dispensing volume is

much too low to support a finding of good cause for Sheriff of Peach County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Peach County filed its original complaint on May 9, 2019. *See Deese v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45314-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Peach County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Peach County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Peach County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Peach County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Peach County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff of Peach County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff of Peach County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sheriff of Peach County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff of Peach County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff of Peach County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

Sheriff of Peach County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff of Peach County's potential claims against them. Sheriff of Peach County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Peach County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Peach County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Sheriff of Peach County seeks leave to amend to add claims against the PBMs in two cases: *Peach County, Georgia v. Purdue Pharma, L.P. et al.*, No. 1:18-op-45579-DAP; and *Deese v. Purdue Pharma L.P., et al.*, No. 1:19-op-45314-DAP. Sheriff of Peach County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court

dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Peach County's proposed RICO claim against the PBMs has expired. Sheriff of Peach County filed its original complaint on May 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Deese v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45314-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Peach County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Peach County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Peach County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Peach County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1143.** ***Board of County Commissioners of the County of Catron v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45320-DAP: Plaintiff Catron County, New Mexico**

Catron County's untimely motion for leave to amend should be denied for several reasons. Catron County failed to provide notice of its proposed amendments through a proposed complaint.

Catron County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Catron County's motion should be denied due to futility, as Catron County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Catron County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Catron County amended its complaint on August 5, 2019, after transfer to the MDL on May 14, 2019. *See Board of County Commissioners of the County of Catron v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45320-DAP, ECF No. 7. Unlike many other plaintiffs, Catron County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Catron County's deadline to amend was in 2019. Catron County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Catron County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Catron County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Catron County, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Catron County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Failure to Timely Implement a Litigation Hold.** Catron County violated its basic duty to implement a timely litigation hold. Catron County filed its original complaint on April 23, 2019, but waited until December 13, 2019 to implement a litigation hold—nearly eight months later. *See Board of County Commissioners of the County of Catron v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45320-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Catron County's case would force the parties and the Court to waste time and resources ascertaining the extent of Catron County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Catron County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Catron County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Catron County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Catron County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Catron County's proposed RICO claim against the PBMs has expired. Catron County filed its original complaint on April 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Catron v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45320-DAP, ECF No. 1. It is therefore indisputable that Catron County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Catron County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Catron County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Catron County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1144.** ***Board of County Commissioners of the County of Cibola v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45321-DAP: Plaintiff Cibola County, New Mexico**

Cibola County's untimely motion for leave to amend should be denied for several reasons. Cibola County failed to provide notice of its proposed amendments through a proposed complaint. Cibola County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cibola County's motion should be denied due to futility, as Cibola County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cibola County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cibola County amended its complaint on August 5, 2019, after transfer to the MDL on May 14, 2019. *See Board of County Commissioners of the County of Cibola v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45321-DAP, ECF No. 7. Unlike many other plaintiffs, Cibola County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Cibola County's deadline to amend was in 2019. Cibola County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cibola County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Cibola County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Cibola County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Cibola County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cibola County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Cibola County). That insignificant dispensing volume is much too low to support a finding of good cause for Cibola County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cibola County filed its original complaint on April 23, 2019. *See Board of County Commissioners of the County of Cibola v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45321-DAP, ECF No. 1. Despite filing its case years ago, Cibola County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Cibola County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cibola County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cibola County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cibola County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cibola County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cibola County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cibola County of this deficiency on September 16, 2024 (*see* Exhibit B), but Cibola County refused to amend or supplement its Fact Sheet. Under this Court's orders, Cibola County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cibola County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cibola

County's potential claims against them. Cibola County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cibola County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cibola County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cibola County's proposed RICO claim against the PBMs has expired. Cibola County filed its original complaint on April 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Cibola v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45321-DAP, ECF No. 1. It is therefore indisputable that Cibola County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Cibola County's RICO claim is therefore time-barred

4232

by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cibola County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cibola County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1145.** ***Board of County Commissioners of the County of Sierra v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45322-DAP: Plaintiff Sierra County, New Mexico**

Sierra County's untimely motion for leave to amend should be denied for several reasons. Sierra County failed to provide notice of its proposed amendments through a proposed complaint. Sierra County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sierra County's motion should be denied due to futility, as Sierra County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sierra County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sierra County amended its complaint on August 5, 2019, after transfer to the MDL on May 14, 2019. *See Board of County Commissioners of the County of Sierra v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45322-DAP, ECF No. 7. Unlike many other plaintiffs, Sierra County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sierra County's deadline to amend was in 2019. Sierra County waited five years after its

deadline to amend to seek leave to assert claims against the PBMs. Sierra County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sierra County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sierra County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sierra County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sierra County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Sierra County). That insignificant dispensing volume is much too

low to support a finding of good cause for Sierra County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Sierra County violated its basic duty to implement a timely litigation hold. Sierra County filed its original complaint on April 23, 2019, but waited until December 13, 2019 to implement a litigation hold—nearly eight months later. *See Board of County Commissioners of the County of Sierra v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45322-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sierra County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sierra County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sierra County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sierra County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sierra County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sierra County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sierra County's proposed RICO claim against the PBMs has expired. Sierra County filed its original complaint on April 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Sierra v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45322-DAP, ECF No. 1. It is therefore indisputable that Sierra County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sierra County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sierra County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sierra County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1146. *Board of County Commissioners of the County of Socorro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45323-DAP: Plaintiff Socorro County, New Mexico

Socorro County's untimely motion for leave to amend should be denied for several reasons. Socorro County failed to provide notice of its proposed amendments through a proposed complaint. Socorro County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Socorro County's motion should be denied due to futility, as Socorro County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Socorro County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Socorro County amended its complaint on August 5, 2019, after transfer to the MDL on May 14, 2019. *See Board of County Commissioners of the County of Socorro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45323-DAP, ECF No. 7. Unlike many other plaintiffs, Socorro County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Socorro County's deadline to amend was in 2019. Socorro County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Socorro County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Socorro County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Socorro County, through its counsel, was on notice of

potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Socorro County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Socorro County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Socorro County). That insignificant dispensing volume is much too low to support a finding of good cause for Socorro County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Socorro County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Socorro County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Socorro County violated its basic duty to implement a timely litigation hold. Socorro County filed its original complaint on April 23,

2019, but waited until December 13, 2019 to implement a litigation hold—nearly eight months later. *See Board of County Commissioners of the County of Socorro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45323-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Socorro County's case would force the parties and the Court to waste time and resources ascertaining the extent of Socorro County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Socorro County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Socorro County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Socorro County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Socorro County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Socorro County's proposed RICO claim against the PBMs has expired. Socorro County filed its original complaint on April 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Socorro v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45323-DAP, ECF No. 1. It is therefore indisputable that Socorro County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Socorro County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Socorro County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Socorro County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1147.** ***Board of County Commissioners of the County of Valencia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45324-DAP: Plaintiff Valencia County, New Mexico**

Valencia County's untimely motion for leave to amend should be denied for several reasons. Valencia County failed to provide notice of its proposed amendments through a proposed complaint. Valencia County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Valencia County's motion should be denied due to futility, as Valencia County does not assert any allegations tying the PBMs to its alleged harm, its RICO

claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Valencia County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Valencia County amended its complaint on August 5, 2019, after transfer to the MDL on May 14, 2019. *See Board of County Commissioners of the County of Valencia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45324-DAP, ECF No. 6. Unlike many other plaintiffs, Valencia County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Valencia County's deadline to amend was in 2019. Valencia County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Valencia County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Valencia County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Valencia County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Valencia County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Valencia County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Valencia County). That insignificant dispensing volume is much too low to support a finding of good cause for Valencia County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Valencia County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Valencia County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Valencia County violated its basic duty to implement a timely litigation hold. Valencia County filed its original complaint on April 23, 2019, but waited until December 13, 2019 to implement a litigation hold—nearly eight months later. *See Board of County Commissioners of the County of Valencia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45324-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date

Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Valencia County's case would force the parties and the Court to waste time and resources ascertaining the extent of Valencia County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Valencia County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Valencia County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Valencia County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Valencia County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Valencia County's proposed RICO claim against the PBMs has expired. Valencia County filed its original complaint on April 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Board of County Commissioners of the County of Valencia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45324-DAP, ECF No. 1. It is therefore indisputable that Valencia County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Valencia County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Valencia County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Valencia County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1148.** *Wilkes-Barre Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45325-DAP: Plaintiff Wilkes Barre Township, Pennsylvania**

Wilkes Barre Township's untimely motion for leave to amend should be denied for several reasons. Wilkes Barre Township failed to provide notice of its proposed amendments through a proposed complaint. Wilkes Barre Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wilkes Barre Township's motion should be denied due to futility, as Wilkes Barre Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wilkes Barre Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wilkes Barre Township amended its complaint on July 30, 2019, after transfer to the MDL on May 14, 2019. *See Wilkes-Barre Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45325-DAP, ECF No. 80. Unlike many other plaintiffs, Wilkes Barre Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wilkes Barre Township's deadline to amend was in 2019. Wilkes Barre Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wilkes Barre Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wilkes Barre Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Wilkes Barre Township). That insignificant dispensing volume is much too low to support a finding of good cause for Wilkes Barre Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wilkes Barre Township's geographic jurisdiction during 2009 to 2019. *See*

DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wilkes Barre Township to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wilkes Barre Township filed its original complaint on April 25, 2019. *See Wilkes-Barre Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45325-DAP, ECF No. 1. Despite filing its case years ago, Wilkes Barre Township *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wilkes Barre Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Wilkes Barre Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wilkes Barre Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wilkes Barre Township therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Wilkes Barre Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Wilkes Barre Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Wilkes Barre Township of this deficiency on September 16, 2024 (*see* Exhibit B), but Wilkes Barre Township refused to amend or supplement its Fact Sheet. Under this Court's orders, Wilkes Barre Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

Wilkes Barre Township's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Wilkes Barre Township's potential claims against them. Wilkes Barre Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wilkes Barre Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wilkes Barre Township, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wilkes Barre Township's proposed RICO claim against the PBMs has expired. Wilkes Barre Township filed its original complaint on April 25, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wilkes-Barre Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45325-DAP, ECF No. 1. It is therefore indisputable that Wilkes Barre Township knew

of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Wilkes Barre Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wilkes Barre Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wilkes Barre Township, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1149. *Richland County South Carolina v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45327-DAP: Plaintiff Richland County, South Carolina

Richland County's untimely motion for leave to amend should be denied for several reasons. Richland County failed to provide notice of its proposed amendments through a proposed complaint. Richland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Richland County's motion should be denied due to futility, as Richland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Richland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Richland County filed its original complaint on April 25, 2019 and the case was transferred to the MDL on May 14, 2019. *See Richland County South Carolina v. Purdue Pharma L.P. et al.*, Case

No. 1:19-op-45327-DAP, ECF No. 8. Richland County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Richland County elected not to do so. Instead, Richland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Richland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Richland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Richland County). That insignificant dispensing volume is much too low to support a finding of good cause for Richland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Richland County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Richland County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Richland County filed its original complaint on April 25, 2019. *See Richland County South Carolina v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45327-DAP, ECF No. 1. Despite filing its case years ago, Richland County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Richland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Richland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Richland County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Richland County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under South Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Richland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under South Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Richland County, a municipality in South Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Richland County's proposed RICO claim against the PBMs has expired. Richland County filed its original complaint on April 25, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Richland County South Carolina v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45327-DAP, ECF No. 1. It is therefore indisputable that Richland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Richland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Richland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Richland County, a municipality in South Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1150. *City of Woonsocket, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45328-DAP: Plaintiff Woonsocket City, Rhode Island

Woonsocket City's untimely motion for leave to amend should be denied for several reasons. Woonsocket City failed to provide notice of its proposed amendments through a proposed complaint. Woonsocket City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Woonsocket City's

motion should be denied due to futility, as Woonsocket City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Woonsocket City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Woonsocket City amended its complaint on August 13, 2019, after transfer to the MDL on May 14, 2019. *See City of Woonsocket, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45328-DAP, ECF No. 7. Unlike many other plaintiffs, Woonsocket City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Woonsocket City's deadline to amend was in 2019. Woonsocket City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Woonsocket City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Woonsocket City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Woonsocket City). That insignificant dispensing volume is much too low to support a finding of good cause for Woonsocket City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Woonsocket City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Woonsocket City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Woonsocket City filed its original complaint on April 22, 2019. *See City of Woonsocket, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45328-DAP, ECF No. 1. Despite filing its case years ago, Woonsocket City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Woonsocket City's case would force the parties and the Court to waste time and resources ascertaining the extent of Woonsocket City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Woonsocket City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Woonsocket City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Woonsocket City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Woonsocket City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Woonsocket City of this deficiency on September 16, 2024 (*see* Exhibit

B), but Woonsocket City refused to amend or supplement its Fact Sheet. Under this Court's orders, Woonsocket City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Woonsocket City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Woonsocket City's potential claims against them. Woonsocket City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Woonsocket City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Woonsocket City, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Woonsocket City's proposed RICO claim against the PBMs has expired. Woonsocket City filed its original complaint on April

22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Woonsocket, Rhode Island v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45328-DAP, ECF No. 1. It is therefore indisputable that Woonsocket City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Woonsocket City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Woonsocket City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Woonsocket City, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1151. *City of West Liberty, Kentucky v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45329-DAP: Plaintiff West Liberty City, Kentucky

West Liberty City's untimely motion for leave to amend should be denied for several reasons. West Liberty City failed to provide notice of its proposed amendments through a proposed complaint. West Liberty City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Liberty City's motion should be denied due to futility, as West Liberty City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** West Liberty City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Liberty City filed its original complaint directly into the MDL on May 15, 2019. *See City of West Liberty, Kentucky v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45329-DAP, ECF No. 1. West Liberty City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, West Liberty City elected not to do so. West Liberty City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. West Liberty City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to West Liberty City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, West Liberty City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to West Liberty City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for West Liberty City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** West Liberty City filed its original complaint on May 15, 2019. *See City of West Liberty, Kentucky v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45329-DAP, ECF No. 1. Despite filing its case years ago, West Liberty City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating West Liberty City's case would force the parties and the Court to waste time and resources ascertaining the extent of West Liberty City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by West Liberty City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and West Liberty City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Liberty City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Liberty City, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Liberty City's proposed RICO claim against the PBMs has expired. West Liberty City filed its original complaint on May 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of West Liberty, Kentucky v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45329-DAP, ECF No. 1. It is therefore indisputable that West Liberty City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. West Liberty City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Liberty City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** West Liberty City, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1152. *Sibley County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45333-DAP: Plaintiff Sibley County, Minnesota

Sibley County's untimely motion for leave to amend should be denied for several reasons. Sibley County failed to provide notice of its proposed amendments through a proposed complaint. Sibley County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sibley County's motion should be denied due to futility, as Sibley County does

not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sibley County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sibley County amended its complaint on August 14, 2019, after transfer to the MDL on May 17, 2019. *See Sibley County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45333-DAP, ECF No. 24. Unlike many other plaintiffs, Sibley County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sibley County's deadline to amend was in 2019. Sibley County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sibley County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sibley County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sibley County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sibley County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F.

App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sibley County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Sibley County). That insignificant dispensing volume is much too low to support a finding of good cause for Sibley County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sibley County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sibley County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Sibley County violated its basic duty to implement a timely litigation hold. Sibley County filed its original complaint on May 3, 2019, but waited until March 31, 2020 to implement a litigation hold—more than ten months later. *See Sibley County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45333-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: March 31, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sibley County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sibley County's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sibley County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sibley County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sibley County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sibley County, a municipality in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sibley County's proposed RICO claim against the PBMs has expired. Sibley County filed its original complaint on May 3, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sibley County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45333-DAP, ECF No. 1. It is therefore indisputable that Sibley County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sibley

County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sibley County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sibley County, a municipality in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1153. *Scotland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45336-DAP: Plaintiff Scotland County, North Carolina

Scotland County's untimely motion for leave to amend should be denied for several reasons. Scotland County failed to provide notice of its proposed amendments through a proposed complaint. Scotland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scotland County's motion should be denied due to futility, as Scotland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scotland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Scotland County amended its complaint on August 19, 2019, after transfer to the MDL on May 22, 2019. *See Scotland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45336-DAP, ECF No. 24. Unlike many other plaintiffs, Scotland County declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Scotland County's deadline to amend was in 2019. Scotland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Scotland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Scotland County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Scotland County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Scotland County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Scotland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Scotland County). That insignificant dispensing volume is much too low to support a finding of good cause for Scotland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scotland County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scotland County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Scotland County violated its basic duty to implement a timely litigation hold. Scotland County filed its original complaint on April 8, 2019, but waited until December 13, 2019 to implement a litigation hold—eight months later. *See Scotland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45336-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Scotland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Scotland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Scotland County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Scotland County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scotland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scotland County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scotland County's proposed RICO claim against the PBMs has expired. Scotland County filed its original complaint on April 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Scotland County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45336-DAP, ECF No. 1. It is therefore indisputable that Scotland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Scotland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scotland County's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Scotland County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1154. *Sarasota County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45339-DAP: Plaintiff Sarasota County, Florida

Sarasota County's untimely motion for leave to amend should be denied for several reasons. Sarasota County failed to provide notice of its proposed amendments through a proposed complaint. Sarasota County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sarasota County's motion should be denied due to futility, as Sarasota County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sarasota County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sarasota County amended its complaint on August 22, 2019, after transfer to the MDL on May 30, 2019. *See Sarasota County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45339-DAP, ECF No. 9. Unlike many other plaintiffs, Sarasota County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sarasota County's deadline to amend was in 2019. Sarasota County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sarasota County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after

the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sarasota County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sarasota County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sarasota County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Failure to Implement a Litigation Hold.** Sarasota County filed its original complaint on May 6, 2019. *See Sarasota County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45339-DAP, ECF No. 1. Despite filing its case years ago, Sarasota County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sarasota County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sarasota County's document destruction and the appropriate sanctions—just as the parties were forced to

do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sarasota County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sarasota County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sarasota County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sarasota County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sarasota County's proposed RICO claim against the PBMs has expired. Sarasota County filed its original complaint on May 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sarasota County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45339-DAP, ECF No. 1. It is therefore indisputable that Sarasota County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sarasota County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not

discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sarasota County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Sarasota County's public-nuisance claim against the PBMs is therefore time-barred because Sarasota County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on May 6, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sarasota County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1155. *Guilford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45340-DAP: Plaintiff Guilford County, North Carolina

Guilford County's untimely motion for leave to amend should be denied for several reasons. Guilford County failed to provide notice of its proposed amendments through a proposed complaint. Guilford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Guilford County's motion should be denied due to futility, as Guilford County does not assert any allegations tying the PBMs to its alleged harm, its RICO

claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Guilford County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Guilford County amended its complaint on August 27, 2019, after transfer to the MDL on May 30, 2019. *See Guilford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45340-DAP, ECF No. 6. Unlike many other plaintiffs, Guilford County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Guilford County's deadline to amend was in 2019. Guilford County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Guilford County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Guilford County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Guilford County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Guilford County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Guilford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Guilford County). That insignificant dispensing volume is much too low to support a finding of good cause for Guilford County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Guilford County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Guilford County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Guilford County violated its basic duty to implement a timely litigation hold. Guilford County filed its original complaint on May 4, 2019, but waited until December 23, 2019 to implement a litigation hold—more than seven months later. *See Guilford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45340-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 23,

2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Guilford County's case would force the parties and the Court to waste time and resources ascertaining the extent of Guilford County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Guilford County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Guilford County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Guilford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Guilford County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Guilford County's proposed RICO claim against the PBMs has expired. Guilford County filed its original complaint on May 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Guilford County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45340-

DAP, ECF No. 1. It is therefore indisputable that Guilford County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Guilford County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Guilford County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Guilford County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1156. *Lafayette County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:19-op-45341-DAP: Plaintiff Lafayette County, Mississippi**

Lafayette County's untimely motion for leave to amend should be denied for several reasons. Lafayette County failed to provide notice of its proposed amendments through a proposed complaint. Lafayette County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lafayette County's motion should be denied due to futility, as Lafayette County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lafayette County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lafayette County amended its complaint on August 27, 2019, after transfer to the MDL

on May 30, 2019. *See Lafayette County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45341-DAP, ECF No. 6. Unlike many other plaintiffs, Lafayette County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lafayette County's deadline to amend was in 2019. Lafayette County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lafayette County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lafayette County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lafayette County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lafayette County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lafayette County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Lafayette County). That insignificant dispensing volume is much too low to support a finding of good cause for Lafayette County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lafayette County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lafayette County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lafayette County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lafayette County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lafayette County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lafayette County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lafayette County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lafayette County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lafayette County's potential claims against them. Lafayette County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any

finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lafayette County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lafayette County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lafayette County's proposed RICO claim against the PBMs has expired. Lafayette County filed its amended complaint on August 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lafayette County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45341-DAP, ECF No. 6. It is therefore indisputable that Lafayette County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lafayette County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is

triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lafayette County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lafayette County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1157. *Granville County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45342-DAP: Plaintiff Granville County, North Carolina

Granville County's untimely motion for leave to amend should be denied for several reasons. Granville County failed to provide notice of its proposed amendments through a proposed complaint. Granville County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Granville County's motion should be denied due to futility, as Granville County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Granville County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Granville County amended its complaint on August 27, 2019, after transfer to the MDL on May 30, 2019. *See Granville County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45342-DAP, ECF No. 7. Unlike many other plaintiffs, Granville County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Granville County's deadline to amend was in 2019. Granville County waited five years after its deadline to amend to

seek leave to assert claims against the PBMs. Granville County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Granville County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Granville County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Granville County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Granville County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Granville County). That insignificant dispensing volume

is much too low to support a finding of good cause for Granville County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Granville County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Granville County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Granville County filed its original complaint on May 9, 2019. *See Granville County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45342-DAP, ECF No. 1. Despite filing its case years ago, Granville County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Granville County's case would force the parties and the Court to waste time and resources ascertaining the extent of Granville County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Granville County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Granville County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Granville County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Granville County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Granville County's proposed RICO claim against the PBMs has expired. Granville County filed its original complaint on May 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Granville County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45342-DAP, ECF No. 1. It is therefore indisputable that Granville County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Granville County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Granville County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Granville County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1158. *Meeker County, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45343-DAP: Plaintiff Meeker County, Minnesota

Meeker County's untimely motion for leave to amend should be denied for several reasons. Meeker County failed to provide notice of its proposed amendments through a proposed complaint. Meeker County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Meeker County's motion should be denied due to futility, as Meeker County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Meeker County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Meeker County amended its complaint on August 21, 2019, after transfer to the MDL on May 30, 2019. *See Meeker County, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45343-DAP, ECF No. 27. Unlike many other plaintiffs, Meeker County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Meeker County's deadline to amend was in 2019. Meeker County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Meeker County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Meeker County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Meeker County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Meeker County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Meeker County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Meeker County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Meeker County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Meeker County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Meeker County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Meeker County, a municipality in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Meeker County's proposed RICO claim against the PBMs has expired. Meeker County filed its original complaint on May 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Meeker County, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45343-DAP, ECF No. 1. It is therefore indisputable that Meeker County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Meeker County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Meeker County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Meeker County, a municipality in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1159. *Roseau County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45344-DAP: Plaintiff Roseau County, Minnesota

Roseau County's untimely motion for leave to amend should be denied for several reasons. Roseau County failed to provide notice of its proposed amendments through a proposed complaint. Roseau County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Roseau County's motion should be denied due to futility, as Roseau County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Roseau County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Roseau County amended its complaint on August 21, 2019, after transfer to the MDL on May 30, 2019. *See Roseau County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45344-DAP, ECF No. 24. Unlike many other plaintiffs, Roseau County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Roseau County's deadline to amend was in 2019. Roseau County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Roseau County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Roseau County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Roseau County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Roseau County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Roseau County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Roseau County). That insignificant dispensing volume is much too low to support a finding of good cause for Roseau County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Roseau County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Roseau County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Roseau County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Roseau County, a municipality in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Roseau County's proposed RICO claim against the PBMs has expired. Roseau County filed its original complaint on May 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Roseau County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45344-DAP, ECF No. 1. It is therefore indisputable that Roseau County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Roseau County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Roseau County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Roseau County, a municipality in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1160.  *Durham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45346-DAP: Plaintiff Durham County, North Carolina

Durham County's untimely motion for leave to amend should be denied for several reasons. Durham County failed to provide notice of its proposed amendments through a proposed complaint. Durham County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Durham County's motion should be denied due to futility, as Durham County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Durham County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Durham County amended its complaint on August 27, 2019, after transfer to the MDL on May 30, 2019, as well as on July 19, 2021. *See Durham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45346-DAP, ECF Nos. 6, 43. Unlike many other plaintiffs, Durham County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Durham County's deadline to amend was in 2019. Durham County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Durham County's lack of

diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Durham County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Durham County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Durham County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Durham County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Durham County). That insignificant dispensing volume is much too low to support a finding of good cause for Durham County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Durham County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Durham County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Durham County filed its original complaint on May 10, 2019. *See Durham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45346-DAP, ECF No. 1. Despite filing its case years ago, Durham County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Durham County's case would force the parties and the Court to waste time and resources ascertaining the extent of Durham County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Durham County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Durham County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Durham County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Durham County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Durham County's proposed RICO claim against the PBMs has expired. Durham County filed its original complaint on May 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Durham County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45346-DAP, ECF No. 1. It is therefore indisputable that Durham County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Durham County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Durham County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Durham County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1161.** ***Board of County Commissioners of the County of Curry, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45347-DAP: Plaintiff Curry County, New Mexico**

Curry County's untimely motion for leave to amend should be denied for several reasons. Curry County failed to provide notice of its proposed amendments through a proposed complaint. Curry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Curry County's motion should be denied due to futility, as Curry County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Curry County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Curry County amended its complaint on August 27, 2019, after transfer to the MDL on May 30, 2019. *See Board of County Commissioners of the County of Curry, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45347-DAP, ECF No. 6. Unlike many other plaintiffs, Curry County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Curry County's deadline to amend was in 2019. Curry County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Curry County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Curry County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Curry County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Curry County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Curry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Curry County). That insignificant dispensing volume is much too low to support a finding of good cause for Curry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Curry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Curry County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Curry County's proposed RICO claim against the PBMs has expired. Curry County filed its original complaint on May 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Curry, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45347-DAP, ECF No. 1. It is therefore indisputable that Curry County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Curry County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Curry County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Curry County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1162.** ***Aroostook Band of Micmacs v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45349-DAP: Plaintiff Aroostook Band of Micmacs, Maine**

Aroostook Band of Micmacs' untimely motion for leave to amend should be denied for several reasons. Aroostook Band of Micmacs failed to provide notice of its proposed amendments through a proposed complaint. Aroostook Band of Micmacs also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Aroostook Band of Micmacs' motion should be denied due to futility, as Aroostook Band of Micmacs does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Aroostook Band of Micmacs was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Aroostook Band of Micmacs amended its complaint on August 12, 2019, after directly filing in the MDL. *See Aroostook Band of Micmacs v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45349-DAP, ECF No. 3. Unlike many other plaintiffs, Aroostook Band of Micmacs declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Aroostook Band of Micmacs' deadline to amend was in 2019. Aroostook Band of Micmacs waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Aroostook Band of Micmacs' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Aroostook Band of Micmacs cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Aroostook Band of Micmacs, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Aroostook Band of Micmacs fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.</u>** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Aroostook Band of Micmacs' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too

low to support a finding of good cause for Aroostook Band of Micmacs to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Aroostook Band of Micmacs filed its original complaint on May 28, 2019. *See Aroostook Band of Micmacs v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45349-DAP, ECF No. 1. Despite filing its case years ago, Aroostook Band of Micmacs *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Aroostook Band of Micmacs' case would force the parties and the Court to waste time and resources ascertaining the extent of Aroostook Band of Micmacs' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Aroostook Band of Micmacs' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Aroostook Band of Micmacs therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Aroostook Band of Micmacs' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Aroostook Band of Micmacs, a native tribe in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Aroostook Band of Micmacs is a plaintiff in Maine. Aroostook Band of Micmacs' request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Aroostook Band of Micmacs' proposed RICO claim against the PBMs has expired. Aroostook Band of Micmacs filed its original complaint on May 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Aroostook Band of Micmac v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45349-DAP, ECF No. 1. It is therefore indisputable that Aroostook Band of Micmacs knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Aroostook Band of Micmacs' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Aroostook Band of Micmacs' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Aroostook Band of Micmacs, a native tribe in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1163.** ***Lower Brule Sioux Tribe v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45350-DAP: Plaintiff Lower Brule Sioux Tribe, South Dakota**

Lower Brule Sioux Tribe's untimely motion for leave to amend should be denied for several reasons. Lower Brule Sioux Tribe failed to provide notice of its proposed amendments through a proposed complaint. Lower Brule Sioux Tribe also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lower Brule Sioux Tribe's motion should be denied due to futility, as Lower Brule Sioux Tribe does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lower Brule Sioux Tribe was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lower Brule Sioux Tribe amended its complaint on August 13, 2019, after directly filing in the MDL. *See Lower Brule Sioux Tribe v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45350-DAP, ECF No. 3. Unlike many other plaintiffs, Lower Brule Sioux Tribe declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lower Brule Sioux Tribe's deadline to amend was in 2019. Lower Brule Sioux Tribe waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lower Brule Sioux Tribe's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lower Brule Sioux Tribe cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lower Brule Sioux Tribe, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lower Brule Sioux Tribe fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Lower Brule Sioux Tribe's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lower Brule Sioux Tribe filed its original complaint on May 28, 2019. *See Lower Brule Sioux Tribe v. AmerisourceBergen Drug*

*Corporation et al.*, Case No. 1:19-op-45350-DAP, ECF No. 1. Despite filing its case years ago, Lower Brule Sioux Tribe *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lower Brule Sioux Tribe's case would force the parties and the Court to waste time and resources ascertaining the extent of Lower Brule Sioux Tribe's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lower Brule Sioux Tribe's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lower Brule Sioux Tribe therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under South Dakota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lower Brule Sioux Tribe's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under South Dakota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lower Brule Sioux Tribe, a native tribe in South Dakota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lower Brule Sioux Tribe's proposed RICO claim against the PBMs has expired. Lower Brule Sioux Tribe filed its original complaint on May 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lower Brule Sioux Tribe v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45350-DAP, ECF No. 1. It is therefore indisputable that Lower Brule Sioux Tribe knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lower Brule Sioux Tribe's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lower Brule Sioux Tribe's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lower Brule Sioux Tribe, a native tribe in South Dakota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1164.** ***Board of County Commissioners of County of Tulsa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45352-DAP: Plaintiff Tulsa County, Oklahoma**

Tulsa County's untimely motion for leave to amend should be denied for several reasons. Tulsa County failed to provide notice of its proposed amendments through a proposed complaint. Tulsa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tulsa County's motion should be denied due to futility, as Tulsa County does not assert any allegations tying the PBMs to its

alleged harm, its proposed public nuisance claim is barred by state law in Oklahoma, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tulsa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tulsa County first amended its complaint on April 11, 2019. *See Board of County Commissioners of County of Tulsa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45352-DAP, ECF No. 2-13. Unlike many other plaintiffs, Tulsa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tulsa County's deadline to amend was in 2019. Tulsa County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tulsa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Tulsa County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Tulsa County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tulsa County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tulsa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Tulsa County). That insignificant dispensing volume is much too low to support a finding of good cause for Tulsa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tulsa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tulsa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Tulsa County violated its basic duty to implement a timely litigation hold. Tulsa County filed its original complaint on March 18, 2019, but waited until June 22, 2020 to implement a litigation hold—more than a year later. *See Board of County Commissioners of County of Tulsa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45352-DAP, ECF No. 2-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 22, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Tulsa

County's case would force the parties and the Court to waste time and resources ascertaining the extent of Tulsa County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tulsa County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tulsa County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Tulsa County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Tulsa County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Tulsa County of this deficiency on September 16, 2024 (*see* Exhibit B), but Tulsa County refused to amend or supplement its Fact Sheet. Under this Court's orders, Tulsa County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Tulsa County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Tulsa County's potential claims against them. Tulsa County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tulsa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tulsa County, a municipality in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Tulsa County is a plaintiff in Oklahoma. Tulsa County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Tulsa County's proposed RICO claim against the PBMs has expired. Tulsa County filed its original complaint on March 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of County of Tulsa v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45352-DAP, ECF No. 2-2. It is therefore indisputable that Tulsa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Tulsa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tulsa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tulsa County, a municipality in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1165. *Board of County Commissioners for San Miguel County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45354-DAP: Plaintiff San Miguel County, New Mexico

San Miguel County's untimely motion for leave to amend should be denied for several reasons. San Miguel County failed to provide notice of its proposed amendments through a proposed complaint. San Miguel County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, San Miguel County's motion should be denied due to futility, as San Miguel County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** San Miguel County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, San Miguel County filed its original complaint on December 28, 2018 and the case was transferred to the MDL on May 31, 2019. *See Board of County Commissioners for San Miguel County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45354-DAP, ECF No. 13. San Miguel County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, San Miguel County elected not to do so.

Instead, San Miguel County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. San Miguel County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to San Miguel County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for San Miguel County). That insignificant dispensing volume is much too low to support a finding of good cause for San Miguel County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** San Miguel County filed its original complaint on December 28, 2018. *See Board of County Commissioners for San Miguel County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45354-DAP, ECF No. 1-2. Despite filing its case years ago, San Miguel County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating San Miguel County's case would force the parties and the Court to waste time and resources ascertaining the extent of San Miguel County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by San Miguel County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to

amend, and San Miguel County therefore lacks good cause for leave to amend its complaint. *See*

*Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time

resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4,

above.

 **Failure to Prosecute.** In its Plaintiff Fact Sheet, San Miguel County failed to provide

complete answers to Questions I.B.8 and I.B.9, relating to San Miguel County's health plans,

carriers, third party administrators, and pharmacy benefit managers throughout the relevant time

period. The PBMs notified San Miguel County of this deficiency on September 16, 2024 (*see*

Exhibit B), but San Miguel County refused to amend or supplement its Fact Sheet. Under this

Court's orders, San Miguel County's case is therefore subject to "***dismiss[al] with prejudice***" for

failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. San

Miguel County's refusal to provide basic information related to its health care plans prejudices the

PBMs' ability to defend against San Miguel County's potential claims against them. San Miguel

County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs,

negates any finding of good cause and leave to amend should be denied. *See* Final Amendment

Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that

"plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693,

at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure

to prosecute).

 **Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to

seek to allocate fault to other parties. *See* Section III.A.6, above. But San Miguel County's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** San Miguel County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for San Miguel County's proposed RICO claim against the PBMs has expired. San Miguel County filed its original complaint on December 28, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners for San Miguel County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45354-DAP, ECF No. 1-2. It is therefore indisputable that San Miguel County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five and a half years before seeking leave to amend. San Miguel County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Miguel County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Miguel County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1166.** *Fairview Township, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45355-DAP: Plaintiff Fairview Township, Pennsylvania

Fairview Township's untimely motion for leave to amend should be denied for several reasons. Fairview Township failed to provide notice of its proposed amendments through a proposed complaint. Fairview Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fairview Township's motion should be denied due to futility, as Fairview Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fairview Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fairview Township amended its complaint on August 27, 2019, after transfer to the MDL on May 31, 2019. *See Fairview Township, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45355-DAP, ECF No. 6. Unlike many other plaintiffs, Fairview Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fairview Township's deadline to amend was in 2019. Fairview Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fairview Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fairview Township cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Fairview Township, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fairview Township fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Fairview Township's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Fairview Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Fairview Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Fairview Township of this deficiency on September 16, 2024 (*see* Exhibit B), but Fairview Township refused to amend or supplement its Fact Sheet. Under this

Court's orders, Fairview Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Fairview Township's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Fairview Township's potential claims against them. Fairview Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fairview Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fairview Township, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fairview Township's proposed RICO claim against the PBMs has expired. Fairview Township filed its original complaint on May 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against

other defendants. *See Fairview Township, Pennsylvania v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45355-DAP, ECF No. 1. It is therefore indisputable that Fairview Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Fairview Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fairview Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fairview Township, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1167. *Orange County Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45356-DAP: Plaintiff Orange County, Indiana

Orange County's untimely motion for leave to amend should be denied for several reasons. Orange County failed to provide notice of its proposed amendments through a proposed complaint. Orange County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Orange County's motion should be denied due to futility, as Orange County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Orange County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Orange County filed its original complaint on May 13, 2019 and the case was transferred to the MDL on May 31, 2019. *See Orange County Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45356-DAP, ECF No. 7. Orange County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Orange County elected not to do so. Instead, Orange County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Orange County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Orange County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Orange County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Orange County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Orange County). That insignificant dispensing volume is much too low to support a finding of good cause for Orange County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Orange County filed its original complaint on May 13, 2019, but waited until August 29, 2019 to implement a litigation hold. *See Orange County Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45356-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 29, 2019). Orange County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Orange County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Orange County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Orange County of this deficiency on September 16, 2024 (*see* Exhibit B), but Orange County refused to amend or supplement its Fact Sheet. Under this Court's orders, Orange County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Orange County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Orange County's potential claims against them. Orange County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Indiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Orange County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Indiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Orange County, a municipality in Indiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Orange County's proposed RICO claim against the PBMs has expired. Orange County filed its original complaint on May 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Orange County Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45356-DAP, ECF No. 1. It is therefore indisputable that Orange County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Orange County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Orange County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Orange County, a municipality in Indiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1168.** *White Earth Nation v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:19-op-45357-DAP: Plaintiff White Earth Nation, Minnesota**

White Earth Nation's untimely motion for leave to amend should be denied for several reasons. White Earth Nation failed to provide notice of its proposed amendments through a proposed complaint. White Earth Nation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, White Earth Nation's motion should be denied due to futility, as White Earth Nation does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** White Earth Nation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, White Earth Nation amended its complaint on August 13, 2019, after transfer to the MDL on May 31, 2019. *See White Earth Nation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45357-DAP, ECF No. 8. Unlike many other plaintiffs, White Earth Nation declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. White Earth Nation's deadline to amend was in 2019. White Earth Nation waited five years after its deadline to amend to seek leave to assert claims against the PBMs. White Earth Nation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** White Earth Nation cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. White Earth Nation, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. White Earth Nation fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.</u>** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to White Earth Nation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for White Earth Nation to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** White Earth Nation filed its original complaint on May 10, 2019. *See White Earth Nation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45357-DAP, ECF No. 1. Despite filing its case years ago, White Earth Nation *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating White Earth Nation's case would force the parties and the Court to waste time and resources ascertaining the extent of White Earth Nation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by White Earth Nation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and White Earth Nation therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But White Earth Nation's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** White Earth Nation, a native tribe in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for White Earth Nation's proposed RICO claim against the PBMs has expired. White Earth Nation filed its original complaint on May 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See White Earth Nation v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45357-DAP, ECF No. 1. It is therefore indisputable that White Earth Nation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. White Earth Nation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. White Earth Nation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** White Earth Nation, a native tribe in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1169. *William C. Massee, Jr. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45361-DAP: Plaintiff Sheriff Of Baldwin County, Georgia

Sheriff Of Baldwin County's untimely motion for leave to amend should be denied for several reasons. Sheriff Of Baldwin County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff Of Baldwin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff Of Baldwin County's motion should be denied due to futility, as Sheriff Of Baldwin County does not assert any allegations tying the PBMs to its alleged harm, its proposed

public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff Of Baldwin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff Of Baldwin County amended its complaint on August 23, 2019, after directly filing in the MDL. *See William C. Massee, Jr. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45361-DAP, ECF No. 2. Unlike many other plaintiffs, Sheriff Of Baldwin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheriff Of Baldwin County's deadline to amend was in 2019. Sheriff Of Baldwin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff Of Baldwin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff Of Baldwin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Sheriff Of Baldwin County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff Of Baldwin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff Of Baldwin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff Of Baldwin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff Of Baldwin County filed its original complaint on June 4, 2019. *See William C. Massee, Jr. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45361-DAP, ECF No. 1. Despite filing its case years ago, Sheriff Of Baldwin County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff Of Baldwin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff Of Baldwin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff Of Baldwin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff Of Baldwin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sheriff Of Baldwin County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sheriff Of Baldwin County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the

relevant time period. The PBMs notified Sheriff Of Baldwin County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sheriff Of Baldwin County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sheriff Of Baldwin County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheriff Of Baldwin County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sheriff Of Baldwin County's potential claims against them. Sheriff Of Baldwin County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff Of Baldwin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff Of Baldwin County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff Of Baldwin County's proposed RICO claim against the PBMs has expired. Sheriff Of Baldwin County filed its original complaint on June 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See William C. Massee, Jr. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45361-DAP, ECF No. 1. It is therefore indisputable that Sheriff Of Baldwin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff Of Baldwin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff Of Baldwin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff Of Baldwin County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1170. *Snohomish County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45370-DAP: Plaintiff Snohomish County, Washington

Snohomish County's untimely motion for leave to amend should be denied for several reasons. Snohomish County failed to provide notice of its proposed amendments through a proposed complaint. Snohomish County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Snohomish County's motion should be denied due to futility, as Snohomish County does not assert any allegations tying the PBMs to its alleged harm,

its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Snohomish County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Snohomish County amended its complaint on September 4, 2019, after transfer to the MDL on June 7, 2019. *See Snohomish County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45370-DAP, ECF No. 43. Unlike many other plaintiffs, Snohomish County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Snohomish County's deadline to amend was in 2019. Snohomish County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Snohomish County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Snohomish County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Snohomish County). That insignificant dispensing volume is much too low to support a finding of good cause for Snohomish County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Snohomish County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Snohomish County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Snohomish County filed its original complaint on January 28, 2019. *See Snohomish County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45370-DAP, ECF No. 1-2. Despite filing its case years ago, Snohomish County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Snohomish County's case would force the parties and the Court to waste time and resources ascertaining the extent of Snohomish County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Snohomish County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Snohomish County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Snohomish County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Snohomish County, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Snohomish County's proposed RICO claim against the PBMs has expired. Snohomish County filed its amended complaint on September 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Snohomish County v. Purdue Pharma LP et al.*, Case No. 1:19-op-45370-DAP, ECF No. 43. It is therefore indisputable that Snohomish County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Snohomish County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Snohomish County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Snohomish County's public-nuisance claim against the PBMs is therefore time-barred because Snohomish County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on January 28, 2019—and the

proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Snohomish County, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1171. *Boone County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45375-DAP: Plaintiff Boone County, Missouri

Boone County's untimely motion for leave to amend should be denied for several reasons. Boone County failed to provide notice of its proposed amendments through a proposed complaint. Boone County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Boone County's motion should be denied due to futility, as Boone County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Boone County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Boone County amended its complaint on September 4, 2019, after directly filing in the MDL. *See Boone County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45375-DAP, ECF No. 3. Unlike many other plaintiffs, Boone County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Boone County's deadline to amend was in 2019. Boone County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Boone County's lack of diligence in pursuing its claims negates any finding of good

cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Boone County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Boone County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Boone County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Boone County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Boone County). That insignificant dispensing volume is much too low to support a finding of good cause for Boone County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Boone County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Boone County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Boone County violated its basic duty to implement a timely litigation hold. Boone County filed its original complaint on June 6, 2019, but waited until December 13, 2020 to implement a litigation hold—eighteen months later. *See Boone County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45375-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Boone County's case would force the parties and the Court to waste time and resources ascertaining the extent of Boone County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Boone County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Boone County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Boone County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Boone County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Boone County's proposed RICO claim against the PBMs has expired. Boone County filed its original complaint on June 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Boone County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45375-DAP, ECF No. 1. It is therefore indisputable that Boone County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Boone County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Boone County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Boone County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1172. *Callaway County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45378-DAP: Plaintiff Callaway County, Missouri

Callaway County's untimely motion for leave to amend should be denied for several reasons. Callaway County failed to provide notice of its proposed amendments through a proposed complaint. Callaway County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Callaway County's motion should be denied due to futility, as Callaway County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Callaway County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Callaway County amended its complaint on September 4, 2019, after directly filing in the MDL. *See Callaway County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45378-DAP, ECF No. 3. Unlike many other plaintiffs, Callaway County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Callaway County's deadline to amend was in 2019. Callaway County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Callaway County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Callaway County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Callaway County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Callaway County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Callaway County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Callaway County). That insignificant dispensing volume is much too low to support a finding of good cause for Callaway County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Callaway County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Callaway County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Callaway County violated its basic duty to implement a timely litigation hold. Callaway County filed its original complaint on June 6, 2019, but waited until September 27, 2024 to implement a litigation hold—more than five years later. *See Callaway County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45378-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 27, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Callaway County's case would force the parties and the Court to waste time and resources ascertaining the extent of Callaway County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Callaway County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Callaway County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Callaway County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Callaway County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Callaway County's proposed RICO claim against the PBMs has expired. Callaway County filed its original complaint on June 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Callaway County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45378-DAP, ECF No. 1. It is therefore indisputable that Callaway County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Callaway County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Callaway County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Callaway County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

4335

**1173.** *Wright County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45383-DAP: Plaintiff Wright County, Missouri

Wright County's untimely motion for leave to amend should be denied for several reasons. Wright County failed to provide notice of its proposed amendments through a proposed complaint. Wright County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wright County's motion should be denied due to futility, as Wright County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wright County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wright County amended its complaint on September 4, 2019, after directly filing in the MDL. *See Wright County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45383-DAP, ECF No. 3. Unlike many other plaintiffs, Wright County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wright County's deadline to amend was in 2019. Wright County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wright County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wright County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wright County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wright County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wright County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Wright County). That insignificant dispensing volume is much too low to support a finding of good cause for Wright County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wright County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wright County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Wright County violated its basic duty to implement a timely litigation hold. Wright County filed its original complaint on June 6, 2019, but waited until January 9, 2020 to implement a litigation hold—seven months later. *See Wright County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45383-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 9, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Wright County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wright County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wright County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wright County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wright County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wright County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wright County's proposed RICO claim against the PBMs has expired. Wright County filed its original complaint on June 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wright County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45383-DAP, ECF No. 1. It is therefore indisputable that Wright County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Wright County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wright County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wright County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1174. *Douglas County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45386-DAP: Plaintiff Douglas County, Missouri

Douglas County's untimely motion for leave to amend should be denied for several reasons. Douglas County failed to provide notice of its proposed amendments through a proposed complaint. Douglas County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Douglas County's motion should be denied due to futility, as Douglas County does not assert any allegations tying the PBMs to its alleged harm, its RICO

claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Douglas County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Douglas County amended its complaint on September 4, 2019, after directly filing in the MDL. *See Douglas County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45386-DAP, ECF No. 3. Unlike many other plaintiffs, Douglas County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Douglas County's deadline to amend was in 2019. Douglas County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Douglas County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Douglas County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Douglas County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Douglas County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Douglas County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Douglas County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Douglas County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Douglas County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Douglas County violated its basic duty to implement a timely litigation hold. Douglas County filed its original complaint on June 6, 2019, but waited until January 16, 2020 to implement a litigation hold—seven months later. *See Douglas County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45386-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 16, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Douglas County's case would force the parties and the Court to waste time and resources ascertaining the extent of Douglas

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Douglas County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Douglas County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Douglas County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Douglas County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Douglas County's proposed RICO claim against the PBMs has expired. Douglas County filed its original complaint on June 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Douglas County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45386-DAP, ECF No. 1. It is therefore indisputable that Douglas County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Douglas County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Douglas County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Douglas County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1175. *Shannon County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45401-DAP: Plaintiff Shannon County, Missouri

Shannon County's untimely motion for leave to amend should be denied for several reasons. Shannon County failed to provide notice of its proposed amendments through a proposed complaint. Shannon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Shannon County's motion should be denied due to futility, as Shannon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Shannon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Shannon County amended its complaint on September 5, 2019, after directly filing in the MDL. *See Shannon County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45401-DAP, ECF No. 3. Unlike many other plaintiffs, Shannon County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Shannon County's deadline to amend was in

2019. Shannon County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Shannon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Shannon County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Shannon County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Shannon County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Shannon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Shannon County). That insignificant dispensing volume is much

too low to support a finding of good cause for Shannon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Shannon County filed its original complaint on June 7, 2019. *See Shannon County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45401-DAP, ECF No. 1. Despite filing its case years ago, Shannon County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Shannon County's case would force the parties and the Court to waste time and resources ascertaining the extent of Shannon County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Shannon County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Shannon County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shannon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shannon County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Shannon County's proposed RICO claim against the PBMs has expired. Shannon County filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Shannon County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45401-DAP, ECF No. 1. It is therefore indisputable that Shannon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Shannon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shannon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Shannon County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1176. *Gooding County, Idaho et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45404-DAP: Plaintiff Gooding County, Idaho

Gooding County's untimely motion for leave to amend should be denied for several reasons. Gooding County failed to provide notice of its proposed amendments through a proposed complaint. Gooding County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gooding County's motion should be denied due to futility, as Gooding County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gooding County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gooding County filed its original complaint directly into the MDL on June 7, 2019. *See Gooding County, Idaho et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45404-DAP, ECF No. 1. Gooding County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Gooding County elected not to do so. Gooding County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Gooding County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Gooding County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Gooding County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Gooding County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other

clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gooding County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.19% market share for Gooding County). That insignificant dispensing volume is much too low to support a finding of good cause for Gooding County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Gooding County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Gooding County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Gooding County violated its basic duty to implement a timely litigation hold. Gooding County filed its original complaint on June 7, 2019, but waited until February 8, 2021 to implement a litigation hold—more than a year and a half later. *See Gooding County, Idaho et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45404-DAP,

ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 8, 2021). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Gooding County's case would force the parties and the Court to waste time and resources ascertaining the extent of Gooding County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gooding County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Gooding County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Gooding County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Gooding County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Gooding County of this deficiency on September 16, 2024 (*see* Exhibit B), but Gooding County refused to amend or supplement its Fact Sheet. Under this Court's orders, Gooding County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Gooding County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Gooding County's potential claims against them. Gooding County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gooding County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gooding County, a municipality in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Gooding County's proposed RICO claim against the PBMs has expired. Gooding County filed its original complaint on June 7, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Gooding County, Idaho et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45404-DAP, ECF No. 1. Even assuming *arguendo* that Gooding County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 7, 2023. Gooding County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gooding County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Gooding County, a municipality in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1177. *Knox County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45406-DAP: Plaintiff Knox County, Missouri

Knox County's untimely motion for leave to amend should be denied for several reasons. Knox County failed to provide notice of its proposed amendments through a proposed complaint. Knox County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Knox County's motion should be denied due to futility, as Knox County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Knox County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Knox County amended its complaint on September 5, 2019, after directly filing in the MDL. *See Knox County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45406-DAP, ECF No. 3. Unlike many other plaintiffs, Knox County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Knox County's deadline to amend was in 2019. Knox County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Knox County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Knox County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Knox County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Knox County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Knox County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Knox County). That insignificant dispensing volume is much too low to support a finding of good cause for Knox County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Knox County filed its original complaint on June 7, 2019. *See Knox County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45406-DAP, ECF No. 1. Despite filing its case years ago, Knox County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Knox County's case would force the parties and the Court to waste time and resources ascertaining the extent of Knox County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Knox County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Knox County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Knox County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Knox County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Knox County of this deficiency on September 16, 2024 (*see* Exhibit B), but Knox County refused to amend or supplement its Fact Sheet. Under this Court's orders, Knox County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Knox County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Knox County's potential claims against them. Knox County's failure to diligently prosecute its case,

coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Knox County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Knox County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Knox County's proposed RICO claim against the PBMs has expired. Knox County filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Knox County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45406-DAP, ECF No. 1. It is therefore indisputable that Knox County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Knox County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above.

Knox County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Knox County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1178.** ***Schuyler County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45408-DAP: Plaintiff Schuyler County, Missouri**

Schuyler County's untimely motion for leave to amend should be denied for several reasons. Schuyler County failed to provide notice of its proposed amendments through a proposed complaint. Schuyler County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Schuyler County's motion should be denied due to futility, as Schuyler County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Schuyler County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Schuyler County amended its complaint on September 5, 2019, after directly filing in the MDL. *See Schuyler County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45408-DAP, ECF No. 3. Unlike many other plaintiffs, Schuyler County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Schuyler County's deadline to amend was in 2019. Schuyler County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Schuyler County's lack of diligence in pursuing its claims negates any finding

of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Schuyler County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Schuyler County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Schuyler County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Schuyler County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.25% market share for Schuyler County). That insignificant dispensing volume is much too low to support a finding of good cause for Schuyler County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Schuyler County violated its basic duty to implement a timely litigation hold. Schuyler County filed its original complaint on June 7, 2019, but waited until September 18, 2024 to implement a litigation hold—more than five years later. *See Schuyler County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45408-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 18, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Schuyler County's case would force the parties and the Court to waste time and resources ascertaining the extent of Schuyler County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Schuyler County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Schuyler County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Schuyler County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Schuyler County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Schuyler County's proposed RICO claim against the PBMs has expired. Schuyler County filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Schuyler County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45408-DAP, ECF No. 1. It is therefore indisputable that Schuyler County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Schuyler County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Schuyler County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Schuyler County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1179. *Randolph County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45409-DAP: Plaintiff Randolph County, Missouri

Randolph County's untimely motion for leave to amend should be denied for several reasons. Randolph County failed to provide notice of its proposed amendments through a proposed complaint. Randolph County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Randolph County's motion should be denied due to futility,

as Randolph County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Randolph County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Randolph County amended its complaint on September 5, 2019, after directly filing in the MDL. *See Randolph County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45409-DAP, ECF No. 3. Unlike many other plaintiffs, Randolph County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Randolph County's deadline to amend was in 2019. Randolph County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Randolph County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Randolph County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Randolph County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Randolph County fails to explain why it was unable to assert claims against the

PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Randolph County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Randolph County). That insignificant dispensing volume is much too low to support a finding of good cause for Randolph County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Randolph County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Randolph County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Randolph County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Randolph County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time

period. The PBMs notified Randolph County of this deficiency on September 16, 2024 (*see* Exhibit B), but Randolph County refused to amend or supplement its Fact Sheet. Under this Court's orders, Randolph County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Randolph County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Randolph County's potential claims against them. Randolph County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Randolph County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Randolph County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Randolph County's proposed RICO claim against the PBMs has expired. Randolph County filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Randolph County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45409-DAP, ECF No. 1. It is therefore indisputable that Randolph County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Randolph County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Randolph County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Randolph County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1180. *City of Seven Hills, Ohio v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45413-DAP: Plaintiff Seven Hills City, Ohio

Seven Hills City's untimely motion for leave to amend should be denied for several reasons. Seven Hills City failed to provide notice of its proposed amendments through a proposed complaint. Seven Hills City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Seven Hills City's motion should be denied due to futility, as Seven Hills City does not assert any allegations tying the PBMs to its alleged harm, its proposed

public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Seven Hills City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Seven Hills City filed its original complaint directly into the MDL on June 10, 2019. *See City of Seven Hills, Ohio v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45413-DAP, ECF No. 1. Seven Hills City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Seven Hills City elected not to do so. Seven Hills City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Seven Hills City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

Furthermore, in 2023, Seven Hills City filed a separate complaint in this MDL asserting new claims for public nuisance and negligence against Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Merck-Medco, n/k/a Medco Health Solutions, Inc.; Medco Health Solutions, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; and other defendants. *See Cuyahoga County et al. v. Mylan Pharms., Inc. et al.*, No. 1:23-op-45003 (N.D. Ohio), ECF No. 1. Seven Hills City offers no good cause for its failure to bring its proposed claims against all PBMs in the 2023 case, which is still pending. In addition, Seven Hills City's improper claim-splitting between these two separate cases in the MDL should be rejected. *See Waad*, 762 F. App'x at 260–63 (affirming dismissal for improper claim splitting where the

plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case).

**Prior Notice Through Counsel.** Seven Hills City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Seven Hills City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Seven Hills City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Seven Hills City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Seven Hills City). That insignificant dispensing volume is much too low to support a finding of good cause for Seven Hills City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Seven Hills City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Seven Hills City's health plans, carriers,

third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Seven Hills City of this deficiency on September 16, 2024 (*see* Exhibit B), but Seven Hills City refused to amend or supplement its Fact Sheet. Under this Court's orders, Seven Hills City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Seven Hills City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Seven Hills City's potential claims against them. Seven Hills City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Seven Hills City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Seven Hills City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Seven Hills City is a plaintiff in Ohio. Seven Hills City's request for leave to add the PBMs as defendants to a public nuisance claim should be

denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Seven Hills City's proposed RICO claim against the PBMs has expired. Seven Hills City filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Seven Hills, Ohio v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45413-DAP, ECF No. 1. It is therefore indisputable that Seven Hills City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Seven Hills City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Seven Hills City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Seven Hills City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1181. *Pettis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45416-DAP: Plaintiff Pettis County, Missouri

Pettis County's untimely motion for leave to amend should be denied for several reasons. Pettis County failed to provide notice of its proposed amendments through a proposed complaint. Pettis County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice

the PBMs. Moreover, Pettis County's motion should be denied due to futility, as Pettis County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pettis County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pettis County filed its original complaint directly into the MDL on June 10, 2019. *See Pettis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45416-DAP, ECF No. 1. Pettis County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Pettis County elected not to do so. Pettis County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pettis County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pettis County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Pettis County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pettis County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pettis County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Pettis County). That insignificant dispensing volume is much too low to support a finding of good cause for Pettis County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pettis County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pettis County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Pettis County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Pettis County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Pettis County of this deficiency on September 16, 2024 (*see* Exhibit B), but Pettis County refused to amend or supplement its Fact Sheet. Under this Court's orders, Pettis County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1

(emphasis in original); *see* Section III.A.5, above. Pettis County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Pettis County's potential claims against them. Pettis County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pettis County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pettis County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pettis County's proposed RICO claim against the PBMs has expired. Pettis County filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pettis County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45416-DAP, ECF No. 1. It is therefore indisputable that Pettis County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Pettis County's

RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pettis County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pettis County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1182. *Covington County, Mississippi v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45417-DAP: Plaintiff Covington County, Mississippi

Covington County's untimely motion for leave to amend should be denied for several reasons. Covington County failed to provide notice of its proposed amendments through a proposed complaint. Covington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Covington County's motion should be denied due to futility, as Covington County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Covington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Covington County filed its original complaint directly into the MDL on June 10, 2019. *See Covington County, Mississippi v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45417-DAP, ECF No. 1. Covington County could have amended its complaint, without leave, to add claims

against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Covington County elected not to do so. Covington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Covington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Covington County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Covington County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Covington County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Covington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.01% market share for Covington County). That insignificant dispensing volume is much too low to support a finding of good cause for Covington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Covington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Covington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Covington County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Covington County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Covington County of this deficiency on September 16, 2024 (*see* Exhibit B), but Covington County refused to amend or supplement its Fact Sheet. Under this Court's orders, Covington County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Covington County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Covington County's potential claims against them. Covington County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693,

at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Covington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Covington County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Covington County's proposed RICO claim against the PBMs has expired. Covington County filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Covington County, Mississippi v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45417-DAP, ECF No. 1. It is therefore indisputable that Covington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Covington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Covington County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Covington County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1183. *Forsyth County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45420-DAP: Plaintiff Forsyth County, Georgia

Forsyth County's untimely motion for leave to amend should be denied for several reasons. Forsyth County failed to provide notice of its proposed amendments through a proposed complaint. Forsyth County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Forsyth County's motion should be denied due to futility, as Forsyth County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Forsyth County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Forsyth County filed its original complaint directly into the MDL on June 10, 2019. *See Forsyth County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45420-DAP, ECF No. 1. Forsyth County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Forsyth County elected not to do so. Forsyth County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Forsyth County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Forsyth County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Forsyth County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Forsyth County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Forsyth County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Forsyth County). That insignificant dispensing volume is much too low to support a finding of good cause for Forsyth County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Forsyth County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Forsyth County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Forsyth County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Forsyth County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Forsyth County of this deficiency on September 16, 2024 (*see* Exhibit B), but Forsyth County refused to amend or supplement its Fact Sheet. Under this Court's orders, Forsyth County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Forsyth County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Forsyth County's potential claims against them. Forsyth County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Forsyth County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Forsyth County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** Forsyth County previously filed an opioid case outside the MDL against the PBMs on March 21, 2023. *See City of Atlanta, GA et al. v. Mylan Pharmaceuticals, Inc., et al.*, Case No. 1:23-cv-01193-JPB, ECF No. 1 (N.D. Ga.). Forsyth County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 147, 148, 150, 151. By suing the PBMs outside the MDL in 2023, Forsyth County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Forsyth County's proposed RICO claim against the PBMs has expired. Forsyth County filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Forsyth County, Georgia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45420-DAP, ECF No. 1. It is therefore indisputable that Forsyth County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Forsyth County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Forsyth County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Forsyth County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1184. *Walton County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45423-DAP: Plaintiff Walton County, Florida

Walton County's untimely motion for leave to amend should be denied for several reasons. Walton County failed to provide notice of its proposed amendments through a proposed complaint. Walton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Walton County's motion should be denied due to futility, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Walton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Walton County filed its original complaint directly into the MDL on June 10, 2019. *See Walton County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45423-DAP, ECF No. 1. Walton County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Walton County elected not to do so. Walton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Walton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Walton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Walton County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Walton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Walton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Walton County). That insignificant dispensing volume is much too low to support a finding of good cause for Walton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Walton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Walton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Walton County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Walton County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Walton County of this deficiency on September 16, 2024 (*see* Exhibit B), but Walton County refused to amend or supplement its Fact Sheet. Under this Court's orders, Walton County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Walton County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Walton County's potential claims against them. Walton County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Walton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Walton County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** Walton County previously filed an opioid case outside the MDL against the PBMs on March 21, 2023. *See City of Atlanta, GA et al. v. Mylan Pharmaceuticals, Inc., et al.*, Case No. 1:23-cv-01193-JPB, ECF No. 1 (N.D. Ga.). Walton County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 147, 148, 150, 151. By suing the PBMs outside the MDL in 2023, Walton County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Walton County's proposed RICO claim against the PBMs has expired. Walton County filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Walton County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45423-DAP, ECF No. 1. It is therefore indisputable that Walton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Walton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Walton County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

      **Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Walton County's public-nuisance claim against the PBMs is therefore time-barred because Walton County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 10, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

      **Plaintiff Lacks Standing.** Walton County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

      **1185.** *City of Saint Paul, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45424-DAP: Plaintiff St. Paul City, Minnesota

      St. Paul City's untimely motion for leave to amend should be denied for several reasons. St. Paul City failed to provide notice of its proposed amendments through a proposed complaint. St. Paul City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Paul City's motion should be denied due to futility, as St. Paul City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Paul City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Paul City filed its original complaint directly into the MDL on June 10, 2019. *See City of Saint Paul, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45424-DAP, ECF No. 1. St. Paul City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, St. Paul City elected not to do so. St. Paul City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Paul City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** St. Paul City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. St. Paul City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. St. Paul City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Paul City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for St. Paul City). That insignificant dispensing volume is much too low to support a finding of good cause for St. Paul City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Paul City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Paul City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** St. Paul City violated its basic duty to implement a timely litigation hold. St. Paul City filed its original complaint on June 10, 2019, but waited until August 27, 2020 to implement a litigation hold—over one year later. *See City of Saint Paul, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45424-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 27, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Paul City's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Paul City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St.

Paul City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Paul City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, St. Paul City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to St. Paul City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified St. Paul City of this deficiency on September 16, 2024 (*see* Exhibit B), but St. Paul City refused to amend or supplement its Fact Sheet. Under this Court's orders, St. Paul City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. St. Paul City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against St. Paul City's potential claims against them. St. Paul City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Minnesota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Paul City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Minnesota law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Paul City, a municipality in Minnesota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Paul City's proposed RICO claim against the PBMs has expired. St. Paul City filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Saint Paul, Minnesota v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45424-DAP, ECF No. 1. It is therefore indisputable that St. Paul City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. St. Paul City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Paul City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St. Paul City, a municipality in Minnesota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1186.** *Maverick County, Texas v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45426-DAP: Plaintiff Maverick County, Texas**

Maverick County's untimely motion for leave to amend should be denied for several reasons. Maverick County failed to provide notice of its proposed amendments through a proposed complaint. Maverick County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Maverick County's motion should be denied due to futility, as Maverick County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Maverick County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Maverick County filed its original complaint directly into the MDL on June 10, 2019. *See Maverick County, Texas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45426-DAP, ECF No. 1. Maverick County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Maverick County elected not to do so. Maverick County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Maverick County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Maverick County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Maverick County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Maverick County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Maverick County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Maverick County). That insignificant dispensing volume is much too low to support a finding of good cause for Maverick County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Maverick County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Maverick County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Maverick County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Maverick County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Maverick County of this deficiency on September 16, 2024 (*see* Exhibit B), but Maverick County refused to amend or supplement its Fact Sheet. Under this Court's orders, Maverick County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Maverick County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Maverick County's potential claims against them. Maverick County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Maverick County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Maverick County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Maverick County's proposed RICO claim against the PBMs has expired. Maverick County filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Maverick County, Texas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45426-DAP, ECF No. 1. It is therefore indisputable that Maverick County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Maverick County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Maverick County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Maverick County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1187. *Township of Saddle Brook, New Jersey v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45431-DAP: Plaintiff Saddle Brook Township, New Jersey**

Saddle Brook Township's untimely motion for leave to amend should be denied for several reasons. Saddle Brook Township failed to provide notice of its proposed amendments through a proposed complaint. Saddle Brook Township also lacks good cause under Rule 15 or Rule 16 due

to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff

fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Saddle

Brook Township's motion should be denied due to futility, as Saddle Brook Township does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute

of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Saddle Brook Township was on notice of its claims against the PBMs

for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Saddle Brook Township filed its original complaint directly into the MDL on June 10,

2019. *See Township of Saddle Brook, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-

45431-DAP, ECF No. 1. Saddle Brook Township could have amended its complaint, without

leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other

plaintiffs, Saddle Brook Township elected not to do so. Saddle Brook Township waited five years

after its deadline to amend to seek leave to assert claims against the PBMs. Saddle Brook

Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*,

972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's

deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a

"wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Saddle Brook Township cannot meet the Rule 16 good

cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have

been bringing claims against the PBMs since 2019. Saddle Brook Township—through its

counsel—was on notice of potential claims against the PBMs and could readily have amended its

complaint to add the PBMs much earlier. Saddle Brook Township fails to explain why it was

unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Saddle Brook Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Saddle Brook Township). That insignificant dispensing volume is much too low to support a finding of good cause for Saddle Brook Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Saddle Brook Township's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Saddle Brook Township to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Saddle Brook Township filed its original complaint on June 10, 2019. *See Township of Saddle Brook, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45431-DAP, ECF No. 1. Despite filing its case years ago, Saddle Brook

4392

Township *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Saddle Brook Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Saddle Brook Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Saddle Brook Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Saddle Brook Township therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Saddle Brook Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Saddle Brook Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Saddle Brook Township of this deficiency on September 16, 2024 (*see* Exhibit B), but Saddle Brook Township refused to amend or supplement its Fact Sheet. Under this Court's orders, Saddle Brook Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Saddle Brook Township's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Saddle Brook Township's potential claims against them. Saddle Brook Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Saddle Brook Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Saddle Brook Township, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Saddle Brook Township's proposed RICO claim against the PBMs has expired. Saddle Brook Township filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Township of Saddle Brook, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45431-DAP, ECF No. 1. It is therefore indisputable that Saddle Brook Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Saddle Brook Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Saddle Brook Township's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Saddle Brook Township, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1188. *County of Berkeley, South Carolina v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45436-DAP: Plaintiff Berkeley County, South Carolina

Berkeley County's untimely motion for leave to amend should be denied for several reasons. Berkeley County failed to provide notice of its proposed amendments through a proposed complaint. Berkeley County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Berkeley County's motion should be denied due to futility, as Berkeley County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Berkeley County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Berkeley County filed its original complaint directly into the MDL on June 12, 2019. *See County of Berkeley, South Carolina v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45436-DAP, ECF No. 1. Berkeley County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Berkeley County elected not to do so. Berkeley County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Berkeley County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information

[she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Berkeley County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Berkeley County). That insignificant dispensing volume is much too low to support a finding of good cause for Berkeley County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Berkeley County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Berkeley County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under South Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Berkeley County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under South Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Berkeley County, a municipality in South Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Berkeley County's proposed RICO claim against the PBMs has expired. Berkeley County filed its original complaint on June 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Berkeley, South Carolina v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45436-DAP, ECF No. 1. It is therefore indisputable that Berkeley County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Berkeley County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Berkeley County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Berkeley County, a municipality in South Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1189. *County of Jefferson, NY v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45437-DAP: Plaintiff Jefferson County, New York

Jefferson County's untimely motion for leave to amend should be denied for several reasons. Jefferson County failed to provide notice of its proposed amendments through a proposed complaint. Jefferson County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jefferson County's motion should be denied due to futility, as Jefferson County does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Jefferson County previously alleged claims against some of the PBMs in its original complaint on June 12, 2019. *See County of Jefferson, NY v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45437-DAP, ECF No. 1 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Jefferson County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2019, but elected not to do so. *See* Section II.A.1, above. And while Jefferson County in 2023 secured leave from this Court to move to amend its complaint to add allegations against the PBMs, it failed to take advantage of that leave by ever actually filing a complaint. *See* Jan. 25, 2023 Order, *County of Jefferson, NY v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45437-DAP. Now, Jefferson County again seeks to add other PBM-related entities as defendants but offers no good cause for its failure to add them before. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Jefferson County's complaint, Jefferson County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2019. *See* Section II.A, above. Jefferson County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jefferson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Jefferson County). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jefferson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jefferson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Jefferson County violated its basic duty to implement a timely litigation hold. Jefferson County filed its original complaint on June 12, 2019, but waited until August 9, 2024 to implement a litigation hold—five years later. *See County of Jefferson, NY v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45437-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 9, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Jefferson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Jefferson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Jefferson County's disregard for its most basic discovery obligations as a litigant, compounded by

the delay in seeking leave to amend, and Jefferson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jefferson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**RICO Statute of Limitations.** The statute of limitations for Jefferson County's proposed RICO claim against the PBMs has expired. Jefferson County filed its original complaint on June 12, 2019, alleging a RICO claim against Express Scripts Holding Company; Express Scripts, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. *See County of Jefferson, NY v. Purdue Pharma, L.P. et al.*, 1:19-op-45437-DAP, ECF No. 1. It is therefore indisputable that Jefferson County knew of its injury *and* the factual basis for its alleged RICO claim against the PBMs, at the very latest, the day it filed that complaint, five years before seeking leave to amend. Jefferson County's proposed amended RICO claim against the additional PBMs it did not previously name is therefore time-barred. ECF No. 2568 at 13 (RICO limitations period is triggered by "discovery of the injury, not discovery of the other elements of a claim") (quoting *Rotella*, 528 U.S. at 555); *see* Section III.B.4, above. Jefferson County's request for leave to amend to add a RICO claim should be

denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

> **1190.** ***Coushatta Tribe of Louisiana et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45438-DAP: Plaintiff Coushatta Tribe of Louisiana, Louisiana**

Coushatta Tribe of Louisiana's untimely motion for leave to amend should be denied for several reasons. Coushatta Tribe of Louisiana failed to provide notice of its proposed amendments through a proposed complaint. Coushatta Tribe of Louisiana also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Coushatta Tribe of Louisiana's motion should be denied due to futility, as Coushatta Tribe of Louisiana does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coushatta Tribe of Louisiana was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coushatta Tribe of Louisiana amended its complaint on August 12, 2019, after directly filing in the MDL. *See Coushatta Tribe of Louisiana et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45438-DAP, ECF No. 3. Unlike many other plaintiffs, Coushatta Tribe of Louisiana declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Coushatta Tribe of Louisiana's deadline to amend was in 2019. Coushatta Tribe of Louisiana waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Coushatta Tribe of Louisiana's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information

[she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Coushatta Tribe of Louisiana cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.A.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Coushatta Tribe of Louisiana, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Coushatta Tribe of Louisiana fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Coushatta Tribe of Louisiana's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Coushatta Tribe of Louisiana to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Coushatta Tribe of Louisiana filed its original complaint on June 13, 2019. *See Coushatta Tribe of Louisiana et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45438-DAP, ECF No. 1. Despite filing its case years ago, Coushatta Tribe of Louisiana *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Coushatta Tribe of Louisiana's case would force the parties and the Court to waste time and resources ascertaining the extent of Coushatta Tribe of Louisiana's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Coushatta Tribe of Louisiana's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Coushatta Tribe of Louisiana therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Coushatta Tribe of Louisiana's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Coushatta Tribe of Louisiana, a native tribe in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Coushatta Tribe of Louisiana's proposed RICO claim against the PBMs has expired. Coushatta Tribe of Louisiana filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Coushatta Tribe of Louisiana et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45438-DAP, ECF No. 1. It is therefore indisputable that Coushatta Tribe of Louisiana knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Coushatta Tribe of Louisiana's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Coushatta Tribe of Louisiana's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to an one-year limitations period. Coushatta Tribe of Louisiana's public-nuisance claim against the PBMs is therefore time-barred because Coushatta Tribe of Louisiana sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019— and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Coushatta Tribe of Louisiana, a native tribe in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1191. *Johnson County, Kansas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45443-DAP: Plaintiff Johnson County, Kansas

Johnson County's untimely motion for leave to amend should be denied for several reasons. Johnson County failed to provide notice of its proposed amendments through a proposed complaint. Johnson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Johnson County's motion should be denied due to futility, as Johnson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Johnson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Johnson County filed its original complaint directly into the MDL on June 13, 2019. *See Johnson County, Kansas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45443-DAP, ECF No. 1. Johnson County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Johnson County elected not to do so. Johnson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Johnson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Johnson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Johnson County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Johnson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Johnson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Johnson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Johnson County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Johnson County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period.

The PBMs notified Johnson County of this deficiency on September 16, 2024 (*see* Exhibit B), but Johnson County refused to amend or supplement its Fact Sheet. Under this Court's orders, Johnson County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Johnson County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Johnson County's potential claims against them. Johnson County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kansas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Johnson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kansas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Johnson County, a municipality in Kansas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Johnson County's proposed RICO claim against the PBMs has expired. Johnson County filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Johnson County, Kansas v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45443-DAP, ECF No. 1. It is therefore indisputable that Johnson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Johnson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Johnson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Johnson County, a municipality in Kansas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1192. *Quapaw Tribe of Oklahoma v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45460-DAP: Plaintiff Quapaw Tribe of Oklahoma, Oklahoma

Quapaw Tribe of Oklahoma's untimely motion for leave to amend should be denied for several reasons. Quapaw Tribe of Oklahoma failed to provide notice of its proposed amendments through a proposed complaint. Quapaw Tribe of Oklahoma also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Quapaw Tribe of Oklahoma's motion should be denied due to futility, as Quapaw Tribe of Oklahoma does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Oklahoma, Nits proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Quapaw Tribe of Oklahoma was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Quapaw Tribe of Oklahoma amended its complaint on August 12, 2019, after directly filing in the MDL. *See Quapaw Tribe of Oklahoma v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45460-DAP, ECF No. 3. Unlike many other plaintiffs, Quapaw Tribe of Oklahoma declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Quapaw Tribe of Oklahoma's deadline to amend was in 2019. Quapaw Tribe of Oklahoma waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Quapaw Tribe of Oklahoma's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Quapaw Tribe of Oklahoma cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Quapaw Tribe of Oklahoma, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Quapaw Tribe of Oklahoma fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis

of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Quapaw Tribe of Oklahoma's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Quapaw Tribe of Oklahoma filed its original complaint on June 14, 2019. *See Quapaw Tribe of Oklahoma v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45460-DAP, ECF No. 1. Despite filing its case years ago, Quapaw Tribe of Oklahoma *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Quapaw Tribe of Oklahoma's case would force the parties and the Court to waste time and resources ascertaining the extent of Quapaw Tribe of Oklahoma's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Quapaw Tribe of Oklahoma's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Quapaw Tribe of Oklahoma therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Quapaw Tribe of Oklahoma's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Quapaw Tribe of Oklahoma, a native tribe in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Quapaw Tribe of Oklahoma is a plaintiff in Oklahoma. Quapaw Tribe of Oklahoma's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Quapaw Tribe of Oklahoma's proposed RICO claim against the PBMs has expired. Quapaw Tribe of Oklahoma filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Quapaw Tribe of Oklahoma v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45460-DAP, ECF No. 1. It is therefore indisputable that Quapaw Tribe of Oklahoma knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Quapaw Tribe of Oklahoma's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that

the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Quapaw Tribe of Oklahoma's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Quapaw Tribe of Oklahoma, a native tribe in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1193. *City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP: Plaintiff Canton Town, North Carolina

Canton Town's untimely motion for leave to amend should be denied for several reasons. Canton Town failed to provide notice of its proposed amendments through a proposed complaint. Canton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Canton Town's motion should be denied due to futility, as Canton Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Canton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Canton Town amended its complaint on August 27, 2019, after directly filing in the MDL. *See City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP, ECF No. 2. Unlike many other plaintiffs, Canton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Canton Town's deadline to amend was in 2019. Canton Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs.

Canton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Canton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Canton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Canton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Canton Town filed its original complaint on June 14, 2019. *See City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP, ECF No. 1. Despite filing its case years ago, Canton Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Canton Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Canton Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Canton Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Canton Town therefore lacks good cause for leave to amend

its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Canton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Canton Town, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Canton Town's proposed RICO claim against the PBMs has expired. Canton Town filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP, ECF No. 1. It is therefore indisputable that Canton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Canton Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Canton Town's request for leave to amend to add a RICO claim should be denied as futile. *See*

*Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Canton Town, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1194. *City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP: Plaintiff Chatham County, North Carolina

Chatham County's untimely motion for leave to amend should be denied for several reasons. Chatham County failed to provide notice of its proposed amendments through a proposed complaint. Chatham County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chatham County's motion should be denied due to futility, as Chatham County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chatham County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chatham County amended its complaint on August 27, 2019, after directly filing in the MDL. *See City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP, ECF No. 2. Unlike many other plaintiffs, Chatham County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Chatham County's deadline to amend was in 2019. Chatham County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chatham County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the

scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chatham County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Chatham County). That insignificant dispensing volume is much too low to support a finding of good cause for Chatham County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chatham County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chatham County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Chatham County filed its original complaint on June 14, 2019. *See City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP, ECF No. 1. Despite filing its case years ago, Chatham County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chatham County's case would force the parties and the Court to waste time and resources ascertaining the extent of Chatham County's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chatham County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chatham County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chatham County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chatham County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chatham County's proposed RICO claim against the PBMs has expired. Chatham County filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Canton et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45462-DAP, ECF No. 1. It is therefore indisputable that Chatham County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Chatham

County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chatham County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chatham County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1195.  *City of Tupelo, Mississippi v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-45491-DAP: Plaintiff Tupelo City, Mississippi

Tupelo City's untimely motion for leave to amend should be denied for several reasons. Tupelo City failed to provide notice of its proposed amendments through a proposed complaint. Tupelo City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tupelo City's motion should be denied due to futility, as Tupelo City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tupelo City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tupelo City filed its original complaint directly into the MDL on June 14, 2019. *See City of Tupelo, Mississippi v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-45491-DAP, ECF No. 1. Tupelo City could have amended its complaint, without leave, to add claims against the

PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Tupelo City elected not to do so. Tupelo City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tupelo City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tupelo City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Tupelo City). That insignificant dispensing volume is much too low to support a finding of good cause for Tupelo City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tupelo City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tupelo City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Tupelo City filed its original complaint on June 14, 2019. *See City of Tupelo, Mississippi v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-45491-DAP, ECF No. 1. Despite filing its case years ago, Tupelo City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1

(Date Litigation Hold Implemented: Never). Litigating Tupelo City's case would force the parties and the Court to waste time and resources ascertaining the extent of Tupelo City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tupelo City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tupelo City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Tupelo City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Tupelo City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Tupelo City of this deficiency on September 16, 2024 (*see* Exhibit B), but Tupelo City refused to amend or supplement its Fact Sheet. Under this Court's orders, Tupelo City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Tupelo City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Tupelo City's potential claims against them. Tupelo City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tupelo City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tupelo City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tupelo City's proposed RICO claim against the PBMs has expired. Tupelo City filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Tupelo, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45491-DAP, ECF No. 1. It is therefore indisputable that Tupelo City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Tupelo City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tupelo City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tupelo City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1196.** *City of Inez, KY v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:19-op-45499-DAP: Plaintiff Inez City, Kentucky

Inez City's untimely motion for leave to amend should be denied for several reasons. Inez City failed to provide notice of its proposed amendments through a proposed complaint. Inez City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Inez City's motion should be denied due to futility, as Inez City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Inez City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Inez City amended its complaint on September 18, 2019, after directly filing in the MDL. *See City of Inez, KY v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:19-op-45499-DAP, ECF No. 2. Unlike many other plaintiffs, Inez City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Inez City's deadline to amend was in 2019. Inez City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Inez City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Inez City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Inez City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Inez City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Inez City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Inez City filed its original complaint on June 17, 2019. *See City of Inez, KY v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-45499-DAP, ECF No. 1. Despite filing its case years ago, Inez City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Inez City's case would force the parties and the Court to waste time and resources ascertaining the extent of Inez City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Inez City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to

amend, and Inez City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Inez City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Inez City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Inez City of this deficiency on September 16, 2024 (*see* Exhibit B), but Inez City refused to amend or supplement its Fact Sheet. Under this Court's orders, Inez City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Inez City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Inez City's potential claims against them. Inez City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Inez City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Inez City, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Inez City's proposed RICO claim against the PBMs has expired. Inez City filed its original complaint on June 17, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Inez, KY v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:19-op-45499-DAP, ECF No. 1. It is therefore indisputable that Inez City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Inez City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Inez City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Inez City, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1197. *County of Curry v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45512-DAP: Plaintiff Curry County, Oregon

Curry County's untimely motion for leave to amend should be denied for several reasons. Curry County failed to provide notice of its proposed amendments through a proposed complaint. Curry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Curry County's motion should be denied due to futility, as Curry County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Curry County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Curry County amended its complaint on September 11, 2019, after transfer to the MDL on June 18, 2019. *See County of Curry v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45512-DAP, ECF No. 20. Unlike many other plaintiffs, Curry County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Curry County's deadline to amend was in 2019. Curry County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Curry County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Curry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.24% market share for Curry County). That insignificant dispensing volume is much too low to support a finding of good cause for Curry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Curry County filed its original complaint on May 24, 2019. *See County of Curry v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45512-DAP, ECF No. 1. Despite filing its case years ago, Curry County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Curry County's case would force the parties and the Court to waste time and resources ascertaining the extent of Curry County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Curry County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Curry County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Curry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Curry County, a municipality in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Curry County's proposed RICO claim against the PBMs has expired. Curry County filed its original complaint on May 24, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Curry v. Purdue Pharma, LP et al.*, Case No. 1:19-op-45512-DAP, ECF No. 1. Even assuming *arguendo* that Curry County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 24, 2023. Curry County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Curry County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Curry County, a municipality in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1198.** ***Board of County Commissioners of the County of Lincoln, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45513-DAP: Plaintiff Lincoln County, New Mexico**

Lincoln County's untimely motion for leave to amend should be denied for several reasons. Lincoln County failed to provide notice of its proposed amendments through a proposed complaint. Lincoln County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lincoln County's motion should be denied due to futility, as Lincoln County does not assert any allegations tying the PBMs to its alleged harm, its RICO

claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lincoln County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lincoln County amended its complaint on September 16, 2019, after transfer to the MDL on June 18, 2019. *See Board of County Commissioners of the County of Lincoln, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45513-DAP, ECF No. 7. Unlike many other plaintiffs, Lincoln County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lincoln County's deadline to amend was in 2019. Lincoln County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lincoln County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lincoln County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lincoln County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lincoln County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lincoln County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Lincoln County). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lincoln County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lincoln County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lincoln County violated its basic duty to implement a timely litigation hold. Lincoln County filed its original complaint on May 20, 2019, but waited until December 13, 2019 to implement a litigation hold—nearly seven months later. *See Board of County Commissioners of the County of Lincoln, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45513-DAP, ECF No. 1; *see also* ECF No. 5687-1

(Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lincoln County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lincoln County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lincoln County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lincoln County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lincoln County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lincoln County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lincoln County's proposed RICO claim against the PBMs has expired. Lincoln County filed its original complaint on May 20, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*Board of County Commissioners of the County of Lincoln, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-45513-DAP, ECF No. 1. It is therefore indisputable that Lincoln County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lincoln County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lincoln County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lincoln County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1199.  *City of Long Beach, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45517-DAP: Plaintiff Long Beach City, Mississippi

Long Beach City's untimely motion for leave to amend should be denied for several reasons. Long Beach City failed to provide notice of its proposed amendments through a proposed complaint. Long Beach City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Long Beach City's motion should be denied due to futility, as Long Beach City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Long Beach City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Long Beach City amended its complaint on October 29, 2019, after directly filing in the MDL. *See City of Long Beach, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45517-DAP, ECF No. 43. Unlike many other plaintiffs, Long Beach City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Long Beach City's deadline to amend was in 2019. Long Beach City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Long Beach City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Long Beach City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Long Beach City). That insignificant dispensing volume is much too low to support a finding of good cause for Long Beach City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Long Beach City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Long Beach City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Long Beach City filed its original complaint on June 18, 2019. *See City of Long Beach, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45517-DAP, ECF No. 1. Despite filing its case years ago, Long Beach City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Long Beach City's case would force the parties and the Court to waste time and resources ascertaining the extent of Long Beach City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Long Beach City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Long Beach City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Long Beach City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Long Beach City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Long Beach City's proposed RICO claim against the PBMs has expired. Long Beach City filed its original complaint on June 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Long Beach, Mississippi v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45517-DAP, ECF No. 1. It is therefore indisputable that Long Beach City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Long Beach City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Long Beach City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Long Beach City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1200. *City of Richmond v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45546-DAP: Plaintiff Richmond City, Virginia

Richmond City's untimely motion for leave to amend should be denied for several reasons. Richmond City failed to provide notice of its proposed amendments through a proposed complaint. Richmond City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Richmond City's motion should be denied due to futility, as Richmond City

does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Richmond City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Richmond City amended its complaint on June 3, 2019, after transfer to the MDL on June 21, 2019, as well as on September 19, 2019. *See City of Richmond v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45546-DAP, ECF Nos. 3, 9. Unlike many other plaintiffs, Richmond City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Richmond City's deadline to amend was in 2019. Richmond City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Richmond City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Richmond City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Richmond City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Richmond City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Richmond City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Richmond City). That insignificant dispensing volume is much too low to support a finding of good cause for Richmond City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Richmond City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Richmond City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Richmond City violated its basic duty to implement a timely litigation hold. Richmond City filed its original complaint on May 29, 2019, but waited until January 30, 2020 to implement a litigation hold—eight months later. *See City of Richmond v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45546-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 30, 2020). This is a

plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Richmond City's case would force the parties and the Court to waste time and resources ascertaining the extent of Richmond City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Richmond City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Richmond City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Richmond City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Richmond City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Richmond City's proposed RICO claim against the PBMs has expired. Richmond City filed its original complaint on May 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Richmond v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45546-DAP, ECF No. 1. It is therefore indisputable that Richmond City knew of its RICO injury, at the very

latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Richmond City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Richmond City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Richmond City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1201. *Pearl River County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:19-op-45548-DAP: Plaintiff Pearl River County, Mississippi**

Pearl River County's untimely motion for leave to amend should be denied for several reasons. Pearl River County failed to provide notice of its proposed amendments through a proposed complaint. Pearl River County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pearl River County's motion should be denied due to futility, as Pearl River County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pearl River County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pearl River County amended its complaint on September 23, 2019, after transfer to the MDL on June 24, 2019. *See Pearl River County, Mississippi v. Amerisourcebergen Drug*

*Corporation et al.*, Case No. 1:19-op-45548-DAP, ECF No. 8. Unlike many other plaintiffs, Pearl River County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pearl River County's deadline to amend was in 2019. Pearl River County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pearl River County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pearl River County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pearl River County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pearl River County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Pearl River County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Pearl River County). That insignificant dispensing volume is much too low to support a finding of good cause for Pearl River County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pearl River County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pearl River County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pearl River County filed its original complaint on June 1, 2019. *See Pearl River County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45548-DAP, ECF No. 1. Despite filing its case years ago, Pearl River County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pearl River County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pearl River County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pearl River County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pearl River County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL

6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pearl River County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pearl River County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pearl River County's proposed RICO claim against the PBMs has expired. Pearl River County filed its original complaint on June 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Pearl River County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45548-DAP, ECF No. 1. Even assuming *arguendo* that Pearl River County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 1, 2023. Pearl River County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pearl River County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pearl River County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1202. *City of Amory, Mississippi v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45549-DAP: Plaintiff Amory City, Mississippi

Amory City's untimely motion for leave to amend should be denied for several reasons. Amory City failed to provide notice of its proposed amendments through a proposed complaint. Amory City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Amory City's motion should be denied due to futility, as Amory City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Amory City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Amory City amended its complaint on September 23, 2019, after transfer to the MDL on June 24, 2019. *See City of Amory, Mississippi v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45549-DAP, ECF No. 5. Unlike many other plaintiffs, Amory City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Amory City's deadline to amend was in 2019. Amory City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Amory City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Amory City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Amory City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Amory City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Amory City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Amory City). That insignificant dispensing volume is much too low to support a finding of good cause for Amory City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Amory City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Amory City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Amory City filed its original complaint on June 3, 2019. *See City of Amory, Mississippi v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45549-DAP, ECF No. 1. Despite filing its case years ago, Amory City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Amory City's case would force the parties and the Court to waste time and resources ascertaining the extent of Amory City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Amory City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Amory City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Amory City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Amory City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Amory City's proposed RICO claim against the PBMs has expired. Amory City filed its original complaint on June 3, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Amory, Mississippi v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45549-DAP, ECF No. 1. Even assuming *arguendo* that Amory City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 3, 2023. Amory City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Amory City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Amory City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1203. *Mitchell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45550-DAP: Plaintiff Mitchell County, North Carolina

Mitchell County's untimely motion for leave to amend should be denied for several reasons. Mitchell County failed to provide notice of its proposed amendments through a proposed complaint. Mitchell County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mitchell County's motion should be denied due to futility, as Mitchell County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mitchell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mitchell County amended its complaint on September 23, 2019, after transfer to the MDL on June 24, 2019. *See Mitchell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45550-DAP, ECF No. 5. Unlike many other plaintiffs, Mitchell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mitchell County's deadline to amend was in 2019. Mitchell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Mitchell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mitchell County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Mitchell County, through its counsel, was on notice of potential claims

against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mitchell County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mitchell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Mitchell County). That insignificant dispensing volume is much too low to support a finding of good cause for Mitchell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mitchell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mitchell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Mitchell County filed its original complaint on June 5, 2019, but waited until September 10, 2019 to implement a litigation hold.

*See Mitchell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45550-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 10, 2019). Mitchell County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mitchell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mitchell County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mitchell County's proposed RICO claim against the PBMs has expired. Mitchell County filed its original complaint on June 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mitchell County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45550-DAP, ECF No. 1. It is therefore indisputable that Mitchell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend.

Mitchell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mitchell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mitchell County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1204.  *DeSoto County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45551-DAP: Plaintiff Desoto County, Mississippi

Desoto County's untimely motion for leave to amend should be denied for several reasons. Desoto County failed to provide notice of its proposed amendments through a proposed complaint. Desoto County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Desoto County's motion should be denied due to futility, as Desoto County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Desoto County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Desoto County amended its complaint on September 23, 2019, after transfer to the MDL on June 24, 2019. *See DeSoto County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45551-DAP, ECF No. 5. Unlike many other plaintiffs, Desoto County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Desoto County's

deadline to amend was in 2019. Desoto County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Desoto County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Desoto County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Desoto County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Desoto County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Desoto County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Desoto County). That insignificant dispensing volume is much too

low to support a finding of good cause for Desoto County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Desoto County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Desoto County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Desoto County violated its basic duty to implement a timely litigation hold. Desoto County filed its original complaint on June 3, 2019, but waited until December 17, 2019 to implement a litigation hold—six months later. *See DeSoto County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45551-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 17, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Desoto County's case would force the parties and the Court to waste time and resources ascertaining the extent of Desoto County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Desoto County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Desoto County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Desoto County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Desoto County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Desoto County's proposed RICO claim against the PBMs has expired. Desoto County filed its original complaint on June 3, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See DeSoto County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45551-DAP, ECF No. 1. Even assuming *arguendo* that Desoto County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 3, 2023. Desoto County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Desoto County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Desoto County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1205. *Leflore County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45552-DAP: Plaintiff Leflore County, Mississippi

Leflore County's untimely motion for leave to amend should be denied for several reasons. Leflore County failed to provide notice of its proposed amendments through a proposed complaint. Leflore County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Leflore County's motion should be denied due to futility, as Leflore County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leflore County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leflore County amended its complaint on September 23, 2019, after transfer to the MDL on June 24, 2019. *See Leflore County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45552-DAP, ECF No. 5. Unlike many other plaintiffs, Leflore County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Leflore County's deadline to amend was in 2019. Leflore County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Leflore County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Leflore County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Leflore County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Leflore County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Leflore County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Leflore County). That insignificant dispensing volume is much too low to support a finding of good cause for Leflore County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Leflore County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Leflore County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Leflore County filed its original complaint on June 3, 2019. *See Leflore County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45552-DAP, ECF No. 1. Despite filing its case years ago, Leflore County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Leflore County's case would force the parties and the Court to waste time and resources ascertaining the extent of Leflore County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leflore County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Leflore County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leflore County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leflore County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leflore County's proposed RICO claim against the PBMs has expired. Leflore County filed its original complaint on June 3, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Leflore County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45552-DAP, ECF No. 1. Even assuming *arguendo* that Leflore County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 3, 2023. Leflore County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leflore County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Leflore County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 1206. *City of South Sioux City, Nebraska v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45553-DAP: Plaintiff South Sioux City, Nebraska

South Sioux City's untimely motion for leave to amend should be denied for several reasons. South Sioux City failed to provide notice of its proposed amendments through a proposed complaint. South Sioux City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, South Sioux City's motion should be denied due to futility, as South Sioux City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** South Sioux City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, South Sioux City amended its complaint on September 23, 2019, after transfer to the MDL on June 24, 2019. *See City of South Sioux City, Nebraska v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45553-DAP, ECF No. 13. Unlike many other plaintiffs, South Sioux City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. South Sioux City's deadline to amend was in 2019. South Sioux City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. South Sioux City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to South Sioux City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for South Sioux City). That insignificant dispensing volume is much

too low to support a finding of good cause for South Sioux City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to South Sioux City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for South Sioux City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** South Sioux City violated its basic duty to implement a timely litigation hold. South Sioux City filed its original complaint on June 5, 2019, but waited until December 19, 2019 to implement a litigation hold—six months later. *See City of South Sioux City, Nebraska v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45553-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 19, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating South Sioux City's case would force the parties and the Court to waste time and resources ascertaining the extent of South Sioux City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by South Sioux City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and South Sioux City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, South Sioux City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to South Sioux City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified South Sioux City of this deficiency on September 16, 2024 (*see* Exhibit B), but South Sioux City refused to amend or supplement its Fact Sheet. Under this Court's orders, South Sioux City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. South Sioux City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against South Sioux City's potential claims against them. South Sioux City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Nebraska law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But South Sioux City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nebraska law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** South Sioux City, a municipality in Nebraska, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for South Sioux City's proposed RICO claim against the PBMs has expired. South Sioux City filed its original complaint on June 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of South Sioux City, Nebraska v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45553-DAP, ECF No. 1. It is therefore indisputable that South Sioux City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. South Sioux City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. South Sioux City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Nebraska, public-nuisance claims are subject to a four-year limitations period. South Sioux City's public-nuisance claim against the PBMs is therefore time-barred because South Sioux City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 5, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** South Sioux City, a municipality in Nebraska, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1207.** *Town of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45554-DAP: Plaintiff Portsmouth Town, Rhode Island

Portsmouth Town's untimely motion for leave to amend should be denied for several reasons. Portsmouth Town failed to provide notice of its proposed amendments through a proposed complaint. Portsmouth Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Portsmouth Town's motion should be denied due to futility, as Portsmouth Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Portsmouth Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Portsmouth Town amended its complaint on September 23, 2019, after transfer to the MDL on June 24, 2019. *See Town of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45554-DAP, ECF No. 6. Unlike many other plaintiffs, Portsmouth Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Portsmouth Town's deadline to amend was in 2019. Portsmouth Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Portsmouth Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Portsmouth Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Portsmouth Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Portsmouth Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Portsmouth Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Portsmouth Town). That insignificant dispensing volume is much too low to support a finding of good cause for Portsmouth Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**<u>Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.</u>** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Portsmouth Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Portsmouth Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Portsmouth Town violated its basic duty to implement a timely litigation hold. Portsmouth Town filed its original complaint on June 6, 2019, but waited until December 13, 2019 to implement a litigation hold—six months later. *See Town of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45554-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Portsmouth Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Portsmouth Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Portsmouth Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Portsmouth Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Portsmouth Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Portsmouth Town, a municipality in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Portsmouth Town's proposed RICO claim against the PBMs has expired. Portsmouth Town filed its original complaint on June 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Portsmouth v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45554-DAP, ECF No. 1. It is therefore indisputable that Portsmouth Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Portsmouth Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Portsmouth Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Portsmouth Town, a municipality in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1208.** *County of Northumberland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45555-DAP: Plaintiff Northumberland County, Pennsylvania

Northumberland County's untimely motion for leave to amend should be denied for several reasons. Northumberland County failed to provide notice of its proposed amendments through a proposed complaint. Northumberland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Northumberland County's motion should be denied due to futility, as Northumberland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Northumberland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Northumberland County amended its complaint on September 3, 2019, after transfer to the MDL on June 24, 2019. *See County of Northumberland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45555-DAP, ECF No. 92. Unlike many other plaintiffs, Northumberland County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Northumberland County's deadline to amend was in 2019. Northumberland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Northumberland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Northumberland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Northumberland County). That insignificant dispensing volume is much too low to support a finding of good cause for Northumberland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Northumberland County filed its original complaint on June 3, 2019. *See County of Northumberland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45555-DAP, ECF No. 1. Despite filing its case years ago, Northumberland County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Northumberland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Northumberland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Northumberland County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Northumberland County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Northumberland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those

allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Northumberland County, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Northumberland County's proposed RICO claim against the PBMs has expired. Northumberland County filed its original complaint on June 3, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Northumberland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45555-DAP, ECF No. 1. It is therefore indisputable that Northumberland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Northumberland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Northumberland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Northumberland County, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1209.** *Bladen County v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45557-DAP: Plaintiff Bladen County, North Carolina**

Bladen County's untimely motion for leave to amend should be denied for several reasons. Bladen County failed to provide notice of its proposed amendments through a proposed complaint. Bladen County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bladen County's motion should be denied due to futility, as Bladen County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bladen County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bladen County amended its complaint on September 23, 2019, after transfer to the MDL on June 24, 2019. *See Bladen County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45557-DAP, ECF No. 10. Unlike many other plaintiffs, Bladen County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bladen County's deadline to amend was in 2019. Bladen County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bladen County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bladen County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor,

P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bladen County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bladen County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bladen County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Bladen County). That insignificant dispensing volume is much too low to support a finding of good cause for Bladen County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bladen County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bladen County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Bladen County violated its basic duty to implement a timely litigation hold. Bladen County filed its original complaint on June 5, 2019, but waited until September 25, 2024 to implement a litigation hold—five years and three months later. *See Bladen County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45557-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bladen County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bladen County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bladen County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bladen County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bladen County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bladen County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bladen County's proposed RICO claim against the PBMs has expired. Bladen County filed its original complaint on June 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bladen County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45557-DAP, ECF No. 1. It is therefore indisputable that Bladen County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Bladen County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bladen County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bladen County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1210.** *City of Paintsville, KY v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45559-DAP: Plaintiff Paintsville City, Kentucky**

Paintsville City's untimely motion for leave to amend should be denied for several reasons. Paintsville City failed to provide notice of its proposed amendments through a proposed complaint. Paintsville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Paintsville City's motion should

be denied due to futility, as Paintsville City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Paintsville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Paintsville City amended its complaint on September 18, 2019, after directly filing in the MDL. *See City of Paintsville, KY v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45559-DAP, ECF No. 2. Unlike many other plaintiffs, Paintsville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Paintsville City's deadline to amend was in 2019. Paintsville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Paintsville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Paintsville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Paintsville City). That insignificant dispensing volume is much too low to support a finding of good cause for Paintsville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Paintsville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Paintsville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Paintsville City filed its original complaint on June 24, 2019. *See City of Paintsville, KY v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45559-DAP, ECF No. 1. Despite filing its case years ago, Paintsville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Paintsville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Paintsville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Paintsville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Paintsville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Paintsville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Paintsville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Paintsville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Paintsville

City refused to amend or supplement its Fact Sheet. Under this Court's orders, Paintsville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Paintsville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Paintsville City's potential claims against them. Paintsville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Paintsville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Paintsville City, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Paintsville City's proposed RICO claim against the PBMs has expired. Paintsville City filed its original complaint on June 24, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Paintsville, KY v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45559-

DAP, ECF No. 1. It is therefore indisputable that Paintsville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Paintsville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Paintsville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Paintsville City, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1211. *County of Calhoun v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45560-DAP: Plaintiff Calhoun County, Michigan

Calhoun County's untimely motion for leave to amend should be denied for several reasons. Calhoun County failed to provide notice of its proposed amendments through a proposed complaint. Calhoun County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Calhoun County's motion should be denied due to futility, as Calhoun County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calhoun County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calhoun County amended its complaint on September 23, 2019, after transfer to the MDL on June 25, 2019. *See County of Calhoun v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45560-DAP,

ECF No. 9. Unlike many other plaintiffs, Calhoun County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Calhoun County's deadline to amend was in 2019. Calhoun County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Calhoun County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Calhoun County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Calhoun County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Calhoun County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Calhoun County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Calhoun County). That insignificant dispensing volume is much too low to support a finding of good cause for Calhoun County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Calhoun County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Calhoun County of the PBM services Express Scripts provides and Calhoun County began receiving those services on January 2, 2007. *See id.* Inasmuch as Calhoun County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Calhoun County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Calhoun County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calhoun County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Calhoun County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Calhoun County's proposed RICO claim against the PBMs has expired. Calhoun County filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Calhoun v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45560-DAP, ECF No. 1. It is therefore indisputable that Calhoun County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Calhoun County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Calhoun County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Calhoun County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1212. *County of Kalamazoo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45561-DAP: Plaintiff Kalamazoo County, Michigan

Kalamazoo County's untimely motion for leave to amend should be denied for several reasons. Kalamazoo County failed to provide notice of its proposed amendments through a proposed complaint. Kalamazoo County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kalamazoo County's motion should be denied due to futility, as Kalamazoo County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kalamazoo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kalamazoo County amended its complaint on September 23, 2019, after transfer to the MDL on June 25, 2019. *See County of Kalamazoo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45561-DAP, ECF No. 9. Unlike many other plaintiffs, Kalamazoo County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Kalamazoo County's deadline to amend was in 2019. Kalamazoo County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kalamazoo County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Kalamazoo County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Kalamazoo County, through its counsel, was on notice of potential claims

against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Kalamazoo County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kalamazoo County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Kalamazoo County). That insignificant dispensing volume is much too low to support a finding of good cause for Kalamazoo County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Kalamazoo County violated its basic duty to implement a timely litigation hold. Kalamazoo County filed its original complaint on June 7, 2019, but waited until September 12, 2024 to implement a litigation hold—five years and three months later. *See County of Kalamazoo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45561-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 12, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Kalamazoo County's case would force the parties and the Court to waste time and resources ascertaining the extent of Kalamazoo County's document destruction and the appropriate sanctions—just as the

parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kalamazoo County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kalamazoo County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kalamazoo County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kalamazoo County, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kalamazoo County's proposed RICO claim against the PBMs has expired. Kalamazoo County filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Kalamazoo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45561-DAP, ECF No. 1. It is therefore indisputable that Kalamazoo County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Kalamazoo County's RICO claim is therefore time-barred by RICO's

four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kalamazoo County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kalamazoo County, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1213. *Hancock v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45562-DAP: Plaintiff Sheriff of Crisp County, Georgia

Sheriff of Crisp County's untimely motion for leave to amend should be denied for several reasons. Sheriff of Crisp County failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Crisp County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Crisp County's motion should be denied due to futility, as Sheriff of Crisp County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Crisp County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Crisp County amended its complaint on June 26, 2019, after directly filing in the MDL, as well as on August 23, 2019. *See Hancock v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45562-DAP, ECF Nos. 2, 3. Unlike many other plaintiffs, Sheriff of Crisp County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above.

Sheriff of Crisp County's deadline to amend was in 2019. Sheriff of Crisp County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Crisp County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Crisp County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Sheriff of Crisp County). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Crisp County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Crisp County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Crisp County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Crisp County filed its original complaint on June 26, 2019. *See Hancock v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45562-DAP, ECF No. 1. Despite filing its case years ago, Sheriff of Crisp County *never* implemented a

litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sheriff of Crisp County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Crisp County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Crisp County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Crisp County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Crisp County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Crisp County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Crisp County's proposed RICO claim against the PBMs has expired. Sheriff of Crisp County filed its original complaint on June 26, 2019, alleging the same type of injuries *and* alleging a RICO claim against

other defendants. *See Hancock v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45562-DAP, ECF No. 1. It is therefore indisputable that Sheriff of Crisp County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheriff of Crisp County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Crisp County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheriff of Crisp County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1214. *St. Johns County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45563-DAP: Plaintiff St Johns County, Florida

St Johns County's untimely motion for leave to amend should be denied for several reasons. St Johns County failed to provide notice of its proposed amendments through a proposed complaint. St Johns County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St Johns County's motion should be denied due to futility, as St Johns County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St Johns County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

St Johns County filed its original complaint on June 10, 2019 and the case was transferred to the MDL on July 1, 2019. *See St. Johns County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45563-DAP, ECF No. 8. St Johns County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, St Johns County elected not to do so. Instead, St Johns County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St Johns County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St Johns County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for St Johns County). That insignificant dispensing volume is much too low to support a finding of good cause for St Johns County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St Johns County filed its original complaint on June 10, 2019. *See St. Johns County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45563-DAP, ECF No. 1. Despite filing its case years ago, St Johns County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain

violation of this Court's orders. ECF Nos. 232; 5455. Litigating St Johns County's case would force the parties and the Court to waste time and resources ascertaining the extent of St Johns County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St Johns County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St Johns County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St Johns County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** St Johns County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St Johns County's proposed RICO claim against the PBMs has expired. St Johns County filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See St. Johns County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45563-DAP, ECF No. 1. It is therefore indisputable that St Johns County knew of its RICO injury, at the very latest,

the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. St Johns County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St Johns County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. St Johns County's public-nuisance claim against the PBMs is therefore time-barred because St Johns County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 10, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** St Johns County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1215. *Bradford County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45564-DAP: Plaintiff Bradford County, Florida

Bradford County's untimely motion for leave to amend should be denied for several reasons. Bradford County failed to provide notice of its proposed amendments through a proposed complaint. Bradford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly

prejudice the PBMs. Moreover, Bradford County's motion should be denied due to futility, as Bradford County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bradford County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bradford County filed its original complaint on June 11, 2019 and the case was transferred to the MDL on July 1, 2019. *See Bradford County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45564-DAP, ECF No. 9. Bradford County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bradford County elected not to do so. Instead, Bradford County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bradford County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bradford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.20% market share for Bradford County). That insignificant dispensing volume is much too low to support a finding of good cause for Bradford County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bradford County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bradford County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bradford County filed its original complaint on June 11, 2019. *See Bradford County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45564-DAP, ECF No. 1. Despite filing its case years ago, Bradford County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bradford County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bradford County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bradford County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bradford County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bradford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bradford County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bradford County's proposed RICO claim against the PBMs has expired. Bradford County filed its original complaint on June 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bradford County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45564-DAP, ECF No. 1. It is therefore indisputable that Bradford County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Bradford County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bradford County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Bradford County's public-nuisance claim against the PBMs is

therefore time-barred because Bradford County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 11, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Bradford County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1216. *Seminole County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45565-DAP: Plaintiff Seminole County, Florida

Seminole County's untimely motion for leave to amend should be denied for several reasons. Seminole County failed to provide notice of its proposed amendments through a proposed complaint. Seminole County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Seminole County's motion should be denied due to futility, as Seminole County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Seminole County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Seminole County amended its complaint on June 14, 2019, after transfer to the MDL on July 1, 2019. *See Seminole County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45565-DAP, ECF No. 6. Unlike many other plaintiffs, Seminole County declined to add claims

against the PBMs in its amended complaint. *See* Section II.A.1, above. Seminole County's deadline to amend was in 2019. Seminole County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Seminole County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Seminole County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.27% market share for Seminole County). That insignificant dispensing volume is much too low to support a finding of good cause for Seminole County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Seminole County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Seminole County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Seminole County filed its original complaint on June 10, 2019. *See Seminole County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-

45565-DAP, ECF No. 1. Despite filing its case years ago, Seminole County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Seminole County's case would force the parties and the Court to waste time and resources ascertaining the extent of Seminole County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Seminole County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Seminole County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Seminole County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Seminole County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Seminole County's proposed RICO claim against the PBMs has expired. Seminole County filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Seminole County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45565-DAP, ECF No. 1. It is therefore indisputable that Seminole County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Seminole County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Seminole County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Seminole County's public-nuisance claim against the PBMs is therefore time-barred because Seminole County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 10, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Seminole County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1217.** *Charter Township of Pittsfield, Michigan v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45566-DAP: Plaintiff Pittsfield Charter Township, Michigan**

Pittsfield Charter Township's untimely motion for leave to amend should be denied for several reasons. Pittsfield Charter Township failed to provide notice of its proposed amendments through a proposed complaint. Pittsfield Charter Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pittsfield Charter Township's motion should be denied due to futility, as Pittsfield Charter Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pittsfield Charter Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pittsfield Charter Township amended its complaint on September 30, 2019, after transfer to the MDL on July 1, 2019. *See Charter Township of Pittsfield, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45566-DAP, ECF No. 7. Unlike many other plaintiffs, Pittsfield Charter Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pittsfield Charter Township's deadline to amend was in 2019. Pittsfield Charter Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pittsfield Charter Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pittsfield Charter Township cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pittsfield Charter Township, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pittsfield Charter Township fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Pittsfield Charter Township's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Pittsfield Charter Township cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Pittsfield Charter Township filed its original complaint on June 7, 2019. *See Charter Township of Pittsfield, Michigan v. Purdue Pharma L.P.*

*et al.*, Case No. 1:19-op-45566-DAP, ECF No. 1. Despite filing its case years ago, Pittsfield Charter Township *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pittsfield Charter Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Pittsfield Charter Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pittsfield Charter Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pittsfield Charter Township therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pittsfield Charter Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pittsfield Charter Township, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pittsfield Charter Township's proposed RICO claim against the PBMs has expired. Pittsfield Charter Township filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charter Township of Pittsfield, Michigan v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45566-DAP, ECF No. 1. It is therefore indisputable that Pittsfield Charter Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Pittsfield Charter Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pittsfield Charter Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pittsfield Charter Township, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1218. *Town of Oxford v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45568-DAP: Plaintiff Oxford Town, Massachusetts

Oxford Town's untimely motion for leave to amend should be denied for several reasons. Oxford Town failed to provide notice of its proposed amendments through a proposed complaint. Oxford Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oxford Town's motion should be denied due to futility, as Oxford Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred

by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oxford Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oxford Town amended its complaint on September 30, 2019, after transfer to the MDL on July 2, 2019. *See Town of Oxford v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45568-DAP, ECF No. 9. Unlike many other plaintiffs, Oxford Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Oxford Town's deadline to amend was in 2019. Oxford Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Oxford Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Oxford Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Oxford Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Oxford Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff

was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oxford Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Oxford Town). That insignificant dispensing volume is much too low to support a finding of good cause for Oxford Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Oxford Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Oxford Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Oxford Town filed its original complaint on June 11, 2019. *See Town of Oxford v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45568-DAP, ECF No. 1. Despite filing its case years ago, Oxford Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Oxford Town's case would force

the parties and the Court to waste time and resources ascertaining the extent of Oxford Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Oxford Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Oxford Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oxford Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Oxford Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oxford Town's proposed RICO claim against the PBMs has expired. Oxford Town filed its original complaint on June 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Oxford v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45568-DAP, ECF No. 1. It is therefore indisputable that Oxford Town knew of its RICO injury, at the very

latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Oxford Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oxford Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Oxford Town's public-nuisance claim against the PBMs is therefore time-barred because Oxford Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 11, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Oxford Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1219. *City of New Bedford et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45569-DAP: Plaintiff New Bedford City, Massachusetts

New Bedford City's untimely motion for leave to amend should be denied for several reasons. New Bedford City failed to provide notice of its proposed amendments through a proposed complaint. New Bedford City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would

unduly prejudice the PBMs. Moreover, New Bedford City's motion should be denied due to futility, as New Bedford City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** New Bedford City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, New Bedford City amended its complaint on September 30, 2019, after transfer to the MDL on July 2, 2019. *See City of New Bedford et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45569-DAP, ECF No. 13. Unlike many other plaintiffs, New Bedford City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. New Bedford City's deadline to amend was in 2019. New Bedford City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. New Bedford City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** New Bedford City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC— that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. New Bedford City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. New Bedford City fails to explain why it was unable

to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to New Bedford City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for New Bedford City). That insignificant dispensing volume is much too low to support a finding of good cause for New Bedford City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to New Bedford City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for New Bedford City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** New Bedford City filed its original complaint on June 6, 2019. *See City of New Bedford et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45569-DAP, ECF No. 1. Despite filing its case years ago, New Bedford City

*never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating New Bedford City's case would force the parties and the Court to waste time and resources ascertaining the extent of New Bedford City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by New Bedford City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and New Bedford City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But New Bedford City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** New Bedford City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for New Bedford City's proposed RICO claim against the PBMs has expired. New Bedford City filed its original complaint on June

6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of New Bedford et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45569-DAP, ECF No. 1. It is therefore indisputable that New Bedford City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. New Bedford City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. New Bedford City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. New Bedford City's public-nuisance claim against the PBMs is therefore time-barred because New Bedford City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 6, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** New Bedford City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1220.** *Town of Ayer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45570-DAP: Plaintiff Ayer Town, Massachusetts

Ayer Town's untimely motion for leave to amend should be denied for several reasons. Ayer Town failed to provide notice of its proposed amendments through a proposed complaint. Ayer Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ayer Town's motion should be denied due to futility, as Ayer Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ayer Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ayer Town amended its complaint on September 30, 2019, after transfer to the MDL on July 2, 2019. *See Town of Ayer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45570-DAP, ECF No. 12. Unlike many other plaintiffs, Ayer Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ayer Town's deadline to amend was in 2019. Ayer Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ayer Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ayer Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Levin, Papantonio,

Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ayer Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ayer Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Ayer Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Ayer Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ayer Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ayer Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ayer Town filed its original complaint on June 7, 2019. *See Town of Ayer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45570-DAP, ECF No. 1. Despite filing its case years ago, Ayer Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ayer Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Ayer Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ayer Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ayer Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ayer Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ayer Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ayer Town's proposed RICO claim against the PBMs has expired. Ayer Town filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Ayer, Massachusetts v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45570-DAP, ECF No. 1. It is therefore indisputable that Ayer Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Ayer Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ayer Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Ayer Town's public-nuisance claim against the PBMs is therefore time-barred because Ayer Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 7, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Ayer Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1221. *Morgan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45571-DAP: Plaintiff Morgan County, Kentucky

Morgan County's untimely motion for leave to amend should be denied for several reasons. Morgan County failed to provide notice of its proposed amendments through a proposed complaint. Morgan County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Morgan County's motion should be denied due to futility, as Morgan County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Morgan County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Morgan County amended its complaint on September 30, 2019, after transfer to the MDL on July 2, 2019. *See Morgan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45571-DAP, ECF No. 7. Unlike many other plaintiffs, Morgan County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Morgan County's deadline to amend was in 2019. Morgan County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Morgan County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Morgan County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Morgan County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Morgan County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.</u>** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Morgan County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Morgan County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**<u>Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.</u>** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Morgan County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Morgan County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Morgan County filed its original complaint on June 7, 2019. *See Morgan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45571-DAP, ECF No. 1. Despite filing its case years ago, Morgan County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Morgan County's case would force the parties and the Court to waste time and resources ascertaining the extent of Morgan County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Morgan County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Morgan County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Morgan County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Morgan County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Morgan County's proposed RICO claim against the PBMs has expired. Morgan County filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Morgan County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45571-DAP, ECF No. 1. It is therefore indisputable that Morgan County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Morgan County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Morgan County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Morgan County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1222. *City of Sheridan v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45572-DAP: Plaintiff Sheridan City, Colorado

Sheridan City's untimely motion for leave to amend should be denied for several reasons. Sheridan City failed to provide notice of its proposed amendments through a proposed complaint. Sheridan City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and

because its untimely motion would unduly prejudice the PBMs. Moreover, Sheridan City's motion should be denied due to futility, as Sheridan City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheridan City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheridan City amended its complaint on December 24, 2020, after transfer to the MDL on July 2, 2019. *See City of Sheridan v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45572-DAP, ECF No. 12. Unlike many other plaintiffs, Sheridan City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sheridan City's deadline to amend was in 2019. Sheridan City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sheridan City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Sheridan City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Sheridan City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheridan City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheridan City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheridan City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheridan City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheridan City's proposed RICO claim against the PBMs has expired. Sheridan City filed its original complaint on June 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Sheridan v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45572-DAP, ECF No. 1. It is therefore indisputable that Sheridan City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sheridan City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of

[the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheridan City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheridan City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1223. *City of Federal Heights v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45573-DAP: Plaintiff Federal Heights City, Colorado

Federal Heights City's untimely motion for leave to amend should be denied for several reasons. Federal Heights City failed to provide notice of its proposed amendments through a proposed complaint. Federal Heights City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Federal Heights City's motion should be denied due to futility, as Federal Heights City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Federal Heights City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Federal Heights City amended its complaint on December 24, 2020, after transfer to the MDL on July 2, 2019. *See City of Federal Heights v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45573-DAP, ECF No. 12. Unlike many other plaintiffs, Federal Heights City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Federal Heights City's deadline to amend was in 2019. Federal Heights City waited five years after its deadline to

amend to seek leave to assert claims against the PBMs. Federal Heights City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Federal Heights City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Federal Heights City). That insignificant dispensing volume is much too low to support a finding of good cause for Federal Heights City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Federal Heights City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Federal Heights City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Federal Heights City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Federal Heights City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Federal Heights City of this deficiency on September 16, 2024 (*see*

Exhibit B), but Federal Heights City refused to amend or supplement its Fact Sheet. Under this Court's orders, Federal Heights City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Federal Heights City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Federal Heights City's potential claims against them. Federal Heights City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Federal Heights City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Federal Heights City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Federal Heights City's proposed RICO claim against the PBMs has expired. Federal Heights City filed its original

complaint on June 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Federal Heights v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45573-DAP, ECF No. 1. It is therefore indisputable that Federal Heights City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Federal Heights City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Federal Heights City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Federal Heights City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1224. *Wright Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45574-DAP: Plaintiff Wright Township, Pennsylvania

Wright Township's untimely motion for leave to amend should be denied for several reasons. Wright Township failed to provide notice of its proposed amendments through a proposed complaint. Wright Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wright Township's motion should be denied due to futility, as Wright Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wright Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wright Township amended its complaint on September 11, 2019, after transfer to the MDL on July 2, 2019. *See Wright Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45574-DAP, ECF No. 94. Unlike many other plaintiffs, Wright Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wright Township's deadline to amend was in 2019. Wright Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wright Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Wright Township's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Wright Township cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wright Township's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Wright Township to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wright Township filed its original complaint on June 5, 2019. *See Wright Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45574-DAP, ECF No. 1. Despite filing its case years ago, Wright Township *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wright Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Wright Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wright Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wright Township therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Wright Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Wright Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Wright Township of this deficiency on September 16, 2024 (*see* Exhibit B), but Wright Township refused to amend or supplement its Fact Sheet. Under this Court's orders, Wright Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Wright Township's refusal to provide basic information related to its health care plans prejudices the

PBMs' ability to defend against Wright Township's potential claims against them. Wright Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wright Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wright Township, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wright Township's proposed RICO claim against the PBMs has expired. Wright Township filed its original complaint on June 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wright Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45574-DAP, ECF No. 1. It is therefore indisputable that Wright Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend.

Wright Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wright Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wright Township, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1225. *County of Yuma v. Purdue Pharma LP et al.*, Case No. 1:19-op-45575-DAP: Plaintiff Yuma County, Arizona

Yuma County's untimely motion for leave to amend should be denied for several reasons. Yuma County failed to provide notice of its proposed amendments through a proposed complaint. Yuma County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Yuma County's motion should be denied due to futility, as Yuma County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Yuma County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Yuma County amended its complaint on January 7, 2021, after transfer to the MDL on July 3, 2019. *See County of Yuma v. Purdue Pharma LP et al.*, Case No. 1:19-op-45575-DAP, ECF No. 9. Unlike many other plaintiffs, Yuma County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Yuma County's deadline to amend was in 2019.

Yuma County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Yuma County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Yuma County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.21% market share for Yuma County). That insignificant dispensing volume is much too low to support a finding of good cause for Yuma County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Arizona law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Yuma County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Arizona law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Yuma County, a municipality in Arizona, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Yuma County's proposed RICO claim against the PBMs has expired. Yuma County filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Yuma v. Purdue Pharma LP et al.*, Case No. 1:19-op-45575-DAP, ECF No. 1. It is therefore indisputable that Yuma County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Yuma County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Yuma County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Yuma County, a municipality in Arizona, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1226.** *City of Wiggins, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45576-DAP: Plaintiff Wiggins City, Mississippi

Wiggins City's untimely motion for leave to amend should be denied for several reasons. Wiggins City failed to provide notice of its proposed amendments through a proposed complaint. Wiggins City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Wiggins City's motion should be denied due to futility, as Wiggins City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wiggins City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wiggins City amended its complaint on October 7, 2019, after transfer to the MDL on July 8, 2019. *See City of Wiggins, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45576-DAP, ECF No. 6. Unlike many other plaintiffs, Wiggins City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wiggins City's deadline to amend was in 2019. Wiggins City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wiggins City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wiggins City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wiggins City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wiggins City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's

counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wiggins City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Wiggins City). That insignificant dispensing volume is much too low to support a finding of good cause for Wiggins City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wiggins City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wiggins City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wiggins City filed its original complaint on June 7, 2019. *See City of Wiggins, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45576-DAP, ECF No. 1. Despite filing its case years ago, Wiggins City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Wiggins City's case would force the parties and the Court to waste time and resources ascertaining the extent of Wiggins City's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wiggins City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wiggins City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wiggins City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wiggins City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wiggins City's proposed RICO claim against the PBMs has expired. Wiggins City filed its original complaint on June 7, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Wiggins, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45576-DAP, ECF No. 1. Even assuming *arguendo* that Wiggins City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 7, 2023. Wiggins City's RICO claim is therefore time-barred. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wiggins City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wiggins City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1227.** *Franklin County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45577-DAP: Plaintiff Franklin County, Mississippi

Franklin County's untimely motion for leave to amend should be denied for several reasons. Franklin County failed to provide notice of its proposed amendments through a proposed complaint. Franklin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin County's motion should be denied due to futility, as Franklin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Franklin County amended its complaint on October 7, 2019, after transfer to the MDL on July 8, 2019. *See Franklin County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45577-DAP, ECF No. 7. Unlike many other plaintiffs, Franklin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Franklin County's

deadline to amend was in 2019. Franklin County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Franklin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Franklin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Franklin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Franklin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Franklin County). That insignificant dispensing volume is much

too low to support a finding of good cause for Franklin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Franklin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Franklin County filed its original complaint on June 6, 2019. *See Franklin County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45577-DAP, ECF No. 1. Despite filing its case years ago, Franklin County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Franklin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Franklin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Franklin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Franklin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin County's proposed RICO claim against the PBMs has expired. Franklin County filed its original complaint on June 6, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Franklin County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45577-DAP, ECF No. 1. Even assuming *arguendo* that Franklin County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 6, 2023. Franklin County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Franklin County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1228.** ***Tule River Indian Tribe of California v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45579-DAP: Plaintiff Tule River Indian Tribe of California, California**

Tule River Indian Tribe of California's untimely motion for leave to amend should be denied for several reasons. Tule River Indian Tribe of California failed to provide notice of its proposed amendments through a proposed complaint. Tule River Indian Tribe of California also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tule River Indian Tribe of California's motion should be denied due to futility, as Tule River Indian Tribe of California does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tule River Indian Tribe of California was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tule River Indian Tribe of California amended its complaint on August 12, 2019, after transfer to the MDL on June 8, 2019. *See Tule River Indian Tribe of California v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45579-DAP, ECF No. 10. Unlike many other plaintiffs, Tule River Indian Tribe of California declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Tule River Indian Tribe of California's deadline to amend was in 2019. Tule River Indian Tribe of California waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Tule River Indian Tribe of California's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*,

972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Tule River Indian Tribe of California cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Tule River Indian Tribe of California, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Tule River Indian Tribe of California fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.</u>** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tule River Indian Tribe of California's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tule River Indian Tribe of California to

add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Tule River Indian Tribe of California violated its basic duty to implement a timely litigation hold. Tule River Indian Tribe of California filed its original complaint on June 7, 2019, but waited until September 11, 2024 to implement a litigation hold—five years and three months later. *See Tule River Indian Tribe of California v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45579-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 11, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Tule River Indian Tribe of California's case would force the parties and the Court to waste time and resources ascertaining the extent of Tule River Indian Tribe of California's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Tule River Indian Tribe of California's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Tule River Indian Tribe of California therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Tule River Indian Tribe of California, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tule River Indian Tribe of California's proposed RICO claim against the PBMs has expired. Tule River Indian Tribe of California filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Tule River Indian Tribe of California v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45579-DAP, ECF No. 1. It is therefore indisputable that Tule River Indian Tribe of California knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Tule River Indian Tribe of California's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tule River Indian Tribe of California's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tule River Indian Tribe of California, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1229. *Lytton Band of Pomo Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45580-DAP: Plaintiff Lytton Band of Pomo Indians, California

Lytton Band of Pomo Indians' untimely motion for leave to amend should be denied for several reasons. Lytton Band of Pomo Indians failed to provide notice of its proposed amendments through a proposed complaint. Lytton Band of Pomo Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lytton Band of Pomo Indians' motion should be denied due to futility, as Lytton Band of Pomo Indians does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lytton Band of Pomo Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lytton Band of Pomo Indians amended its complaint on August 13, 2019, after transfer to the MDL on July 8, 2019. *See Lytton Band of Pomo Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45580-DAP, ECF No. 8. Unlike many other plaintiffs, Lytton Band of Pomo Indians declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lytton Band of Pomo Indians' deadline to amend was in 2019. Lytton Band of Pomo Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lytton Band of Pomo Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lytton Band of Pomo Indians cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lytton Band of Pomo Indians, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lytton Band of Pomo Indians fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming

denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lytton Band of Pomo Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lytton Band of Pomo Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lytton Band of Pomo Indians violated its basic duty to implement a timely litigation hold. Lytton Band of Pomo Indians filed its original complaint on June 7, 2019, but waited until September 25, 2024 to implement a litigation hold—five years and three months later. *See Lytton Band of Pomo Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45580-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lytton Band of Pomo Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Lytton Band of Pomo Indians' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lytton Band of Pomo Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lytton Band of Pomo Indians

therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Lytton Band of Pomo Indians, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lytton Band of Pomo Indians' proposed RICO claim against the PBMs has expired. Lytton Band of Pomo Indians filed its original complaint on June 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lytton Band of Pomo Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45580-DAP, ECF No. 1. It is therefore indisputable that Lytton Band of Pomo Indians knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lytton Band of Pomo Indians' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lytton Band of Pomo Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lytton Band of Pomo Indians, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1230.** *Sampson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45583-DAP: Plaintiff Sampson County, North Carolina

Sampson County's untimely motion for leave to amend should be denied for several reasons. Sampson County failed to provide notice of its proposed amendments through a proposed complaint. Sampson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Sampson County's motion should be denied due to futility, as Sampson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sampson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sampson County amended its complaint on October 7, 2019, after transfer to the MDL on July 8, 2019. *See Sampson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45583-DAP, ECF No. 5. Unlike many other plaintiffs, Sampson County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sampson County's deadline to amend was in 2019. Sampson County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sampson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sampson County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sampson County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sampson County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sampson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Sampson County). That insignificant dispensing volume is much too low to support a finding of good cause for Sampson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sampson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sampson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

 **Failure to Timely Implement a Litigation Hold.** Sampson County violated its basic duty to implement a timely litigation hold. Sampson County filed its original complaint on June 12, 2019, but waited until December 19, 2019 to implement a litigation hold—six months later. *See Sampson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45583-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 19, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sampson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sampson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sampson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sampson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

 **Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sampson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sampson County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sampson County's proposed RICO claim against the PBMs has expired. Sampson County filed its original complaint on June 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sampson County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45583-DAP, ECF No. 1. It is therefore indisputable that Sampson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sampson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sampson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sampson County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1231. *City of Oviedo, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45584-DAP: Plaintiff Oviedo City, Florida

Oviedo City's untimely motion for leave to amend should be denied for several reasons. Oviedo City failed to provide notice of its proposed amendments through a proposed complaint. Oviedo City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Oviedo City's motion should be denied due to futility, as Oviedo City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oviedo City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oviedo City filed its original complaint on June 13, 2019 and the case was transferred to the MDL on July 8, 2019. *See City of Oviedo, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45584-DAP, ECF No. 8. Oviedo City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Oviedo City elected not to do so. Instead, Oviedo City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Oviedo City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oviedo City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Oviedo City). That insignificant dispensing volume is much too low to support a finding of good cause for Oviedo City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Oviedo City filed its original complaint on June 13, 2019. *See City of Oviedo, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45584-DAP, ECF No. 1. Despite filing its case years ago, Oviedo City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Oviedo City's case would force the parties and the Court to waste time and resources ascertaining the extent of Oviedo City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Oviedo City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Oviedo City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oviedo City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Oviedo City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oviedo City's proposed RICO claim against the PBMs has expired. Oviedo City filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Oviedo, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45584-DAP, ECF No. 1. It is therefore indisputable that Oviedo City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Oviedo City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oviedo City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Oviedo City's public-nuisance claim against the PBMs is therefore time-barred because Oviedo City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Oviedo City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1232. *Kingston Borough, Pennyslvania v. Purdue Pharma LP et al.*, Case No. 1:19-op-45585-DAP: Plaintiff Kingston Borough, Pennsylvania

Kingston Borough's untimely motion for leave to amend should be denied for several reasons. Kingston Borough failed to provide notice of its proposed amendments through a proposed complaint. Kingston Borough also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet and because its untimely motion would unduly prejudice the PBMs. Moreover, Kingston Borough's motion should be denied due to futility, as Kingston Borough does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kingston Borough was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kingston Borough amended its complaint on October 7, 2019, after transfer to the MDL on July 8, 2019. *See Kingston Borough, Pennyslvania v. Purdue Pharma LP et al.*, Case No. 1:19-op-45585-DAP, ECF No. 5. Unlike many other plaintiffs, Kingston Borough declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Kingston Borough's deadline to amend was in 2019. Kingston Borough waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Kingston Borough's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Kingston Borough cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Kingston Borough, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Kingston Borough fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.</u>** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Kingston Borough's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Kingston Borough cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**<u>Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.</u>** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

4551

units shipped to Kingston Borough's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kingston Borough to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Kingston Borough filed its original complaint on June 11, 2019. *See Kingston Borough, Pennyslvania v. Purdue Pharma LP et al.*, Case No. 1:19-op-45585-DAP, ECF No. 1. Despite filing its case years ago, Kingston Borough *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Kingston Borough's case would force the parties and the Court to waste time and resources ascertaining the extent of Kingston Borough's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kingston Borough's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kingston Borough therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Kingston Borough failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Kingston Borough's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Kingston Borough of this deficiency on September 16, 2024 (*see* Exhibit B), but Kingston Borough refused to amend or supplement its Fact Sheet. Under this

Court's orders, Kingston Borough's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Kingston Borough's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Kingston Borough's potential claims against them. Kingston Borough's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kingston Borough's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kingston Borough, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kingston Borough's proposed RICO claim against the PBMs has expired. Kingston Borough filed its original complaint on June 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Kingston Borough, Pennyslvania v. Purdue Pharma LP et al.*, Case No. 1:19-op-45585-DAP, ECF No. 1. It is therefore indisputable that Kingston Borough knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Kingston Borough's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kingston Borough's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kingston Borough, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1233. *City of Deltona, Florida v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45586-DAP: Plaintiff Deltona City, Florida

Deltona City's untimely motion for leave to amend should be denied for several reasons. Deltona City failed to provide notice of its proposed amendments through a proposed complaint. Deltona City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Deltona City's motion should be denied due to futility, as Deltona City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Deltona City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Deltona City filed its original complaint on June 13, 2019 and the case was transferred to the MDL on July 8, 2019. *See City of Deltona, Florida v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45586-DAP, ECF No. 6. Deltona City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Deltona City elected not to do so. Instead, Deltona City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Deltona City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Deltona City filed its original complaint on June 13, 2019. *See City of Deltona, Florida v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45586-DAP, ECF No. 1. Despite filing its case years ago, Deltona City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Deltona City's case would force the parties and the Court to waste time and resources ascertaining the extent of Deltona City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Deltona City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Deltona City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Deltona City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Deltona City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Deltona City's proposed RICO claim against the PBMs has expired. Deltona City filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Deltona, Florida v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45586-DAP, ECF No. 1. It is therefore indisputable that Deltona City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Deltona City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Deltona City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Deltona City's public-nuisance claim against the PBMs is therefore time-barred because Deltona City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Deltona City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1234. *Hamilton County, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45589-DAP: Plaintiff Hamilton County, Florida

Hamilton County's untimely motion for leave to amend should be denied for several reasons. Hamilton County failed to provide notice of its proposed amendments through a proposed complaint. Hamilton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Hamilton County's motion should be denied due to futility, as Hamilton County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hamilton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hamilton County filed its original complaint on June 13, 2019 and the case was

transferred to the MDL on July 8, 2019. *See Hamilton County, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45589-DAP, ECF No. 4. Hamilton County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Hamilton County elected not to do so. Instead, Hamilton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hamilton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hamilton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Hamilton County). That insignificant dispensing volume is much too low to support a finding of good cause for Hamilton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hamilton County filed its original complaint on June 13, 2019. *See Hamilton County, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45589-DAP, ECF No. 1. Despite filing its case years ago, Hamilton County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hamilton County's case would

force the parties and the Court to waste time and resources ascertaining the extent of Hamilton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hamilton County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hamilton County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hamilton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hamilton County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hamilton County's proposed RICO claim against the PBMs has expired. Hamilton County filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hamilton County, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45589-DAP, ECF No. 1. It is therefore indisputable that Hamilton County knew of its RICO injury, at the very latest,

the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Hamilton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hamilton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Hamilton County's public-nuisance claim against the PBMs is therefore time-barred because Hamilton County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Hamilton County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1235. *Suwannee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45590-DAP: Plaintiff Suwannee County, Florida

Suwannee County's untimely motion for leave to amend should be denied for several reasons. Suwannee County failed to provide notice of its proposed amendments through a proposed complaint. Suwannee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact

sheet and because its untimely motion would unduly prejudice the PBMs. Moreover, Suwannee County's motion should be denied due to futility, as Suwannee County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Suwannee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Suwannee County filed its original complaint on , June 13, 2019 and the case was transferred to the MDL on July 8, 2019. *See Suwannee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45590-DAP, ECF No. 4. Suwannee County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Suwannee County elected not to do so. Instead, Suwannee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Suwannee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Suwannee County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Suwannee County). That insignificant dispensing volume is much too low to support a finding of good cause for Suwannee County to add dispensing claims

against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Suwannee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Suwannee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Suwannee County filed its original complaint on June 13, 2019. *See Suwannee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45590-DAP, ECF No. 1. Despite filing its case years ago, Suwannee County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Suwannee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Suwannee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Suwannee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Suwannee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Suwannee County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Suwannee County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Suwannee County of this deficiency on September 16, 2024 (*see* Exhibit B), but Suwannee County refused to amend or supplement its Fact Sheet. Under this Court's orders, Suwannee County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Suwannee County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Suwannee County's potential claims against them. Suwannee County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Suwannee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Suwannee County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Suwannee County's proposed RICO claim against the PBMs has expired. Suwannee County filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Suwannee County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45590-DAP, ECF No. 1. It is therefore indisputable that Suwannee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Suwannee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Suwannee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Suwannee County's public-nuisance claim against the PBMs is therefore time-barred because Suwannee County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Suwannee County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 1236. *Clay County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45591-DAP: Plaintiff Clay County, Florida

Clay County's untimely motion for leave to amend should be denied for several reasons. Clay County failed to provide notice of its proposed amendments through a proposed complaint. Clay County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Clay County's motion should be denied due to futility, as Clay County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clay County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clay County filed its original complaint on June 13, 2019 and the case was transferred to the MDL on July 8, 2019. *See Clay County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45591-DAP, ECF No. 4. Clay County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Clay County elected not to do so. Instead, Clay County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clay County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clay County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Clay County). That insignificant dispensing volume is much too low to support a finding of good cause for Clay County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Clay County filed its original complaint on June 13, 2019. *See Clay County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45591-DAP, ECF No. 1. Despite filing its case years ago, Clay County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Clay County's case would force the parties and the Court to waste time and resources ascertaining the extent of Clay County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clay County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clay County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clay County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clay County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clay County's proposed RICO claim against the PBMs has expired. Clay County filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Clay County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45591-DAP, ECF No. 1. It is therefore indisputable that Clay County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Clay County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clay County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Clay County's public-nuisance claim against the PBMs is therefore

time-barred because Clay County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Clay County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1237. *City of St. Augustine, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45592-DAP: Plaintiff St. Augustine City, Florida

St. Augustine City's untimely motion for leave to amend should be denied for several reasons. St. Augustine City failed to provide notice of its proposed amendments through a proposed complaint. St. Augustine City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Augustine City's motion should be denied due to futility, as St. Augustine City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Augustine City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Augustine City filed its original complaint on June 13, 2019 and the case was transferred to the MDL on July 8, 2019. *See City of St. Augustine, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45592-DAP, ECF No. 4. St. Augustine City could have amended its

complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, St. Augustine City elected not to do so. Instead, St. Augustine City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Augustine City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Augustine City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for St. Augustine City). That insignificant dispensing volume is much too low to support a finding of good cause for St. Augustine City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Augustine City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Augustine City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Augustine City filed its original complaint on June 13, 2019. *See City of St. Augustine, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-

op-45592-DAP, ECF No. 1. Despite filing its case years ago, St. Augustine City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Augustine City's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Augustine City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Augustine City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Augustine City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Augustine City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Augustine City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Augustine City's proposed RICO claim against the PBMs has expired. St. Augustine City filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of St. Augustine, Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45592-DAP, ECF No. 1. It is therefore indisputable that St. Augustine City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. St. Augustine City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Augustine City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. St. Augustine City's public-nuisance claim against the PBMs is therefore time-barred because St. Augustine City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** St. Augustine City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1238. *City of Florida City, Florida v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45594-DAP: Plaintiff City of Florida City, Florida**

City of Florida City's untimely motion for leave to amend should be denied for several reasons. City of Florida City failed to provide notice of its proposed amendments through a proposed complaint. City of Florida City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, City of Florida City's motion should be denied due to futility, as City of Florida City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** City of Florida City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, City of Florida City filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 9, 2019. *See City of Florida City, Florida v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45594-DAP, ECF No. 5. City of Florida City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, City of Florida City elected not to do so. Instead, City of Florida City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. City of Florida City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** City of Florida City filed its original complaint on June 14, 2019. *See City of Florida City, Florida v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45594-DAP, ECF No. 1. Despite filing its case years ago, City of Florida City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating City of Florida City's case would force the parties and the Court to waste time and resources ascertaining the extent of City of Florida City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by City of Florida City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and City of Florida City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But City of Florida City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** City of Florida City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for City of Florida City's proposed RICO claim against the PBMs has expired. City of Florida City filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Florida City, Florida v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45594-DAP, ECF No. 1. It is therefore indisputable that City of Florida City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. City of Florida City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. City of Florida City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. City of Florida City's public-nuisance claim against the PBMs is therefore time-barred because City of Florida City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** City of Florida City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1239.** *City of Port St. Lucie, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45596-DAP: Plaintiff Port St. Lucie City, Florida

Port St. Lucie City's untimely motion for leave to amend should be denied for several reasons. Port St. Lucie City failed to provide notice of its proposed amendments through a proposed complaint. Port St. Lucie City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Port St. Lucie City's motion should be denied due to futility, as Port St. Lucie City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Port St. Lucie City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Port St. Lucie City filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 10, 2019. *See City of Port St. Lucie, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45596-DAP, ECF No. 4. Port St. Lucie City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Port St. Lucie City elected not to do so. Instead, Port St. Lucie City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Port St. Lucie City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Port St. Lucie City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.40% market share for Port St. Lucie City). That insignificant dispensing volume is much too low to support a finding of good cause for Port St. Lucie City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Port St. Lucie City filed its original complaint on June 14, 2019. *See City of Port St. Lucie, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45596-DAP, ECF No. 1. Despite filing its case years ago, Port St. Lucie City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Port St. Lucie City's case would force the parties and the Court to waste time and resources ascertaining the extent of Port St. Lucie City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Port St. Lucie City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Port St. Lucie City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Port St. Lucie City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Port St. Lucie City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Port St. Lucie City's proposed RICO claim against the PBMs has expired. Port St. Lucie City filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Port St. Lucie, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45596-DAP, ECF No. 1. It is therefore indisputable that Port St. Lucie City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Port St. Lucie City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Port St. Lucie City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Port St. Lucie City's public-nuisance claim against the PBMs is therefore time-barred because Port St. Lucie City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Port St. Lucie City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1240.** *Taylor County Florida v. Purdue Pharma LP et al.*, **Case No. 1:19-op-45597-DAP: Plaintiff Taylor County, Florida**

Taylor County's untimely motion for leave to amend should be denied for several reasons. Taylor County failed to provide notice of its proposed amendments through a proposed complaint. Taylor County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet and because its untimely motion would unduly prejudice the PBMs. Moreover, Taylor County's motion should be denied due to futility, as Taylor County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Taylor County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Taylor County filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 10, 2019. *See Taylor County Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45597-DAP, ECF No. 4. Taylor County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Taylor County elected not to do so. Instead, Taylor County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Taylor County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Taylor County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Taylor County). That insignificant dispensing volume is much too low to support a finding of good cause for Taylor County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Taylor County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Taylor County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Taylor County filed its original complaint on June 14, 2019. *See Taylor County Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45597-DAP, ECF No. 1. Despite filing its case years ago, Taylor County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Taylor County's case would force the parties and the Court to waste time and resources ascertaining the extent of Taylor County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Taylor County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Taylor County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Taylor County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Taylor County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Taylor County of this deficiency on September 16, 2024 (*see* Exhibit B), but Taylor County refused to amend or supplement its Fact Sheet. Under this Court's orders, Taylor County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Taylor County's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Taylor County's potential claims against them. Taylor County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Taylor County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Taylor County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Taylor County's proposed RICO claim against the PBMs has expired. Taylor County filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Taylor County Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45597-DAP, ECF No. 1. It is therefore indisputable that Taylor County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Taylor County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Taylor County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Taylor County's public-nuisance claim against the PBMs is therefore time-barred because Taylor County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Taylor County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1241. *City of Sanford, Florida v. Purdue Pharma L.P.., et al.*, Case No. 1:19-op-45599-DAP: Plaintiff Sanford City, Florida

Sanford City's untimely motion for leave to amend should be denied for several reasons. Sanford City failed to provide notice of its proposed amendments through a proposed complaint. Sanford City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Sanford City's motion should be denied due to futility, as Sanford City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred

by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sanford City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sanford City filed its original complaint on June 13, 2019 and the case was transferred to the MDL on July 10, 2019. *See City of Sanford, Florida v. Purdue Pharma L.P.., et al.*, Case No. 1:19-op-45599-DAP, ECF No. 8. Sanford City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Sanford City elected not to do so. Instead, Sanford City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sanford City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sanford City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.20% market share for Sanford City). That insignificant dispensing volume is much too low to support a finding of good cause for Sanford City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sanford City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sanford City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sanford City filed its original complaint on June 13, 2019. *See City of Sanford, Florida v. Purdue Pharma L.P.., et al.*, Case No. 1:19-op-45599-DAP, ECF No. 1. Despite filing its case years ago, Sanford City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sanford City's case would force the parties and the Court to waste time and resources ascertaining the extent of Sanford City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sanford City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sanford City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sanford City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sanford City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sanford City's proposed RICO claim against the PBMs has expired. Sanford City filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Sanford, Florida v. Purdue Pharma L.P.., et al.*, Case No. 1:19-op-45599-DAP, ECF No. 1. It is therefore indisputable that Sanford City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sanford City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sanford City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Sanford City's public-nuisance claim against the PBMs is therefore time-barred because Sanford City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*,

44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sanford City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1242.** *United Keetoowah Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45600-DAP: Plaintiff United Keetoowah Band of Cherokee Indians, Kansas**

United Keetoowah Band of Cherokee Indians' untimely motion for leave to amend should be denied for several reasons. United Keetoowah Band of Cherokee Indians failed to provide notice of its proposed amendments through a proposed complaint. United Keetoowah Band of Cherokee Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, United Keetoowah Band of Cherokee Indians' motion should be denied due to futility, as United Keetoowah Band of Cherokee Indians does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** United Keetoowah Band of Cherokee Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, United Keetoowah Band of Cherokee Indians amended its complaint on August 12, 2019, after transfer to the MDL on July 10, 2019. *See United Keetoowah Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45600-DAP, ECF No. 6. Unlike many other plaintiffs, United Keetoowah Band of Cherokee Indians declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1,

above. United Keetoowah Band of Cherokee Indians' deadline to amend was in 2019. United Keetoowah Band of Cherokee Indians waited five years after its deadline to amend to seek leave to assert claims against the PBMs. United Keetoowah Band of Cherokee Indians' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** United Keetoowah Band of Cherokee Indians cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. United Keetoowah Band of Cherokee Indians, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. United Keetoowah Band of Cherokee Indians fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to United Keetoowah Band of Cherokee Indians' geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for United Keetoowah Band of Cherokee Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** United Keetoowah Band of Cherokee Indians filed its original complaint on June 13, 2019, but waited until December 13, 2019 to implement a litigation hold. *See United Keetoowah Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45600-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). United Keetoowah Band of Cherokee Indians' violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kansas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But United Keetoowah Band of Cherokee Indians' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kansas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** United Keetoowah Band of Cherokee Indians, a native tribe in Kansas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for United Keetoowah Band of Cherokee Indians' proposed RICO claim against the PBMs has expired. United Keetoowah Band of Cherokee Indians filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See United Keetoowah Band of Cherokee Indians v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45600-DAP, ECF No. 1. It is therefore indisputable that United Keetoowah Band of Cherokee Indians knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. United Keetoowah Band of Cherokee Indians' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. United Keetoowah Band of Cherokee Indians' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** United Keetoowah Band of Cherokee Indians, a native tribe in Kansas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1243.** *Board of Commissioners of Leavenworth County, Kansas v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-45602-DAP: Plaintiff Leavenworth County, Kansas**

Leavenworth County's untimely motion for leave to amend should be denied for several reasons. Leavenworth County failed to provide notice of its proposed amendments through a proposed complaint. Leavenworth County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Leavenworth County's motion should be denied due to futility, as Leavenworth County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leavenworth County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leavenworth County amended its complaint on October 9, 2019, after transfer to the MDL on July 11, 2019. *See Board of Commissioners of Leavenworth County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45602-DAP, ECF No. 7. Unlike many other plaintiffs, Leavenworth County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Leavenworth County's deadline to amend was in 2019. Leavenworth County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Leavenworth County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Leavenworth County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Leavenworth County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Leavenworth County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Leavenworth County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Leavenworth County). That insignificant dispensing volume is much too low to support a finding of good cause for Leavenworth County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Leavenworth County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Leavenworth County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Leavenworth County violated its basic duty to implement a timely litigation hold. Leavenworth County filed its original complaint on June 14, 2019, but waited until December 20, 2019 to implement a litigation hold—six months later. *See Board of Commissioners of Leavenworth County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45602-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 20, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Leavenworth County's case would force the parties and the Court to waste time and resources ascertaining the extent of Leavenworth County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leavenworth County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Leavenworth County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kansas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leavenworth County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kansas law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leavenworth County, a municipality in Kansas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leavenworth County's proposed RICO claim against the PBMs has expired. Leavenworth County filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of Commissioners of Leavenworth County, Kansas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45602-DAP, ECF No. 1. It is therefore indisputable that Leavenworth County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Leavenworth County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leavenworth County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Leavenworth County, a municipality in Kansas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1244.** *Union County, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45603-DAP: Plaintiff Union County, Florida

Union County's untimely motion for leave to amend should be denied for several reasons. Union County failed to provide notice of its proposed amendments through a proposed complaint. Union County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Union County's motion should be denied due to futility, as Union County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Union County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Union County filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 11, 2019. *See Union County, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45603-DAP, ECF No. 3. Union County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Union County elected not to do so. Instead, Union County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Union County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Union County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Union County). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Union County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Union County filed its original complaint on June 14, 2019. *See Union County, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45603-DAP, ECF No. 1. Despite filing its case years ago, Union County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Union County's case would force the parties and the Court to waste time and resources ascertaining the extent of Union County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Union County's disregard for its most basic discovery obligations as a litigant, compounded by the delay

in seeking leave to amend, and Union County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Union County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Union County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Union County's proposed RICO claim against the PBMs has expired. Union County filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Union County, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45603-DAP, ECF No. 1. It is therefore indisputable that Union County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Union County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Union County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Union County's public-nuisance claim against the PBMs is therefore time-barred because Union County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Union County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1245.** *Dixie County Florida v. Purdue Pharma LP et al.*, **Case No. 1:19-op-45604-DAP: Plaintiff Dixie County, Florida**

Dixie County's untimely motion for leave to amend should be denied for several reasons. Dixie County failed to provide notice of its proposed amendments through a proposed complaint. Dixie County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet and because its untimely motion would unduly prejudice the PBMs. Moreover, Dixie County's motion should be denied due to futility, as Dixie County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dixie County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dixie County filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 11, 2019. *See Dixie County Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45604-DAP, ECF No. 6. Dixie County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Dixie County elected not to do so. Instead, Dixie County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dixie County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Dixie County filed its original complaint on June 14, 2019. *See Dixie County Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45604-DAP, ECF No. 1. Despite filing its case years ago, Dixie County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Dixie County's case would force the parties and the Court to waste time and resources ascertaining the extent of Dixie County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dixie County's disregard for its most basic discovery obligations as a litigant, compounded by the delay

in seeking leave to amend, and Dixie County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Dixie County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Dixie County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Dixie County of this deficiency on September 16, 2024 (*see* Exhibit B), but Dixie County refused to amend or supplement its Fact Sheet. Under this Court's orders, Dixie County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dixie County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Dixie County's potential claims against them. Dixie County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dixie County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Dixie County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dixie County's proposed RICO claim against the PBMs has expired. Dixie County filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Dixie County Florida v. Purdue Pharma LP et al.*, Case No. 1:19-op-45604-DAP, ECF No. 1. It is therefore indisputable that Dixie County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Dixie County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dixie County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Dixie County's public-nuisance claim against the PBMs is therefore time-barred because Dixie County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates

a new cause of action and there is no relation back to the original filing for purposes of limitations."
(cleaned up)).

**Plaintiff Lacks Standing.** Dixie County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1246.** *County Commissioners of Calvert County, Maryland v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45609-DAP: Plaintiff Calvert County, Maryland**

Calvert County's untimely motion for leave to amend should be denied for several reasons. Calvert County failed to provide notice of its proposed amendments through a proposed complaint. Calvert County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Calvert County's motion should be denied due to futility, as Calvert County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calvert County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calvert County amended its complaint on June 18, 2019, after transfer to the MDL on July 11, 2019. *See County Commissioners of Calvert County, Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45609-DAP, ECF No. 3. Unlike many other plaintiffs, Calvert County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Calvert County's deadline to amend was in 2019. Calvert County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Calvert County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial

of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Calvert County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Calvert County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Calvert County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Calvert County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Calvert County). That insignificant dispensing volume is much too low to support a finding of good cause for Calvert County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Calvert County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Calvert County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Calvert County filed its original complaint on June 13, 2019. *See County Commissioners of Calvert County, Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45609-DAP, ECF No. 1. Despite filing its case years ago, Calvert County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Calvert County's case would force the parties and the Court to waste time and resources ascertaining the extent of Calvert County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Calvert County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Calvert County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calvert County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Calvert County, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Calvert County's proposed RICO claim against the PBMs has expired. Calvert County filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County Commissioners of Calvert County, Maryland v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45609-DAP, ECF No. 1. It is therefore indisputable that Calvert County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Calvert County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Calvert County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Calvert County's public-nuisance claim against the PBMs is therefore time-barred because Calvert County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Calvert County, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1247. *Georgetown County, South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45612-DAP: Plaintiff Georgetown County, South Carolin

Georgetown County's untimely motion for leave to amend should be denied for several reasons. Georgetown County failed to provide notice of its proposed amendments through a proposed complaint. Georgetown County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Georgetown County's motion should be denied due to futility, as Georgetown County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Georgetown County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Georgetown County filed its original complaint on June 12, 2019 and the case was transferred to the MDL on July 11, 2019. *See Georgetown County, South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45612-DAP, ECF No. 6. Georgetown County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Georgetown County elected not to do so. Instead, Georgetown County waited five years after its deadline to amend to seek leave to assert claims against the

PBMs. Georgetown County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Georgetown County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Georgetown County). That insignificant dispensing volume is much too low to support a finding of good cause for Georgetown County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Georgetown County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Georgetown County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Georgetown County filed its original complaint on June 12, 2019. *See Georgetown County, South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45612-DAP, ECF No. 1. Despite filing its case years ago, Georgetown County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)).

This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Georgetown County's case would force the parties and the Court to waste time and resources ascertaining the extent of Georgetown County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Georgetown County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Georgetown County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under South Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Georgetown County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under South Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Georgetown County, a municipality in South Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Georgetown County's proposed RICO claim against the PBMs has expired. Georgetown County filed its original complaint on June 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Georgetown County, South Carolina v. Purdue Pharma LP et al.*, Case No.

1:19-op-45612-DAP, ECF No. 1. It is therefore indisputable that Georgetown County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Georgetown County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Georgetown County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Georgetown County, a municipality in South Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1248. *Alamance County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45615-DAP: Plaintiff Alamance County, North Carolina

Alamance County's untimely motion for leave to amend should be denied for several reasons. Alamance County failed to provide notice of its proposed amendments through a proposed complaint. Alamance County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alamance County's motion should be denied due to futility, as Alamance County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alamance County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Alamance County amended its complaint on October 9, 2019, after transfer to the MDL

on July 11, 2019. *See Alamance County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45615-DAP, ECF No. 7. Unlike many other plaintiffs, Alamance County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Alamance County's deadline to amend was in 2019. Alamance County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Alamance County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Alamance County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Alamance County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Alamance County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alamance County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Alamance County). That insignificant dispensing volume is much too low to support a finding of good cause for Alamance County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alamance County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Alamance County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Alamance County violated its basic duty to implement a timely litigation hold. Alamance County filed its original complaint on June 13, 2019, but waited until September 9, 2024 to implement a litigation hold—more than five years later. *See Alamance County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45615-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 9, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Alamance County's case would force the parties and the Court to waste time and resources ascertaining the extent of Alamance County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Alamance County's disregard for its most basic discovery

obligations as a litigant, compounded by the delay in seeking leave to amend, and Alamance County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Alamance County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Alamance County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Alamance County of this deficiency on September 16, 2024 (*see* Exhibit B), but Alamance County refused to amend or supplement its Fact Sheet. Under this Court's orders, Alamance County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Alamance County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Alamance County's potential claims against them. Alamance County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alamance County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alamance County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alamance County's proposed RICO claim against the PBMs has expired. Alamance County filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Alamance County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45615-DAP, ECF No. 1. It is therefore indisputable that Alamance County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Alamance County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alamance County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alamance County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1249.** *Sussex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45616-DAP: Plaintiff Sussex County, New Jersey

Sussex County's untimely motion for leave to amend should be denied for several reasons. Sussex County failed to provide notice of its proposed amendments through a proposed complaint. Sussex County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sussex County's motion should be denied due to futility, as Sussex County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sussex County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sussex County filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 11, 2019. *See Sussex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45616-DAP, ECF No. 4. Sussex County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Sussex County elected not to do so. Instead, Sussex County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Sussex County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Sussex County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Sussex County). That insignificant dispensing volume is much too low to support a finding of good cause for Sussex County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sussex County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sussex County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Sussex County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Sussex County of the PBM services Express Scripts provides and Sussex County began receiving those services on November 2, 2007. *See id.* Inasmuch as Sussex County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Sussex County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Sussex County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Sussex County filed its original complaint on June 14, 2019. *See Sussex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45616-DAP, ECF No. 1. Despite filing its case years ago, Sussex County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sussex County's case would force the parties and the Court to waste time and resources ascertaining the extent of Sussex County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sussex County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sussex County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sussex County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sussex County, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sussex County's proposed RICO claim against the PBMs has expired. Sussex County filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sussex County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45616-DAP, ECF No. 1. It is therefore indisputable that Sussex County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Sussex County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sussex County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sussex County, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1250.** *City of Clarksdale v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45620-DAP: Plaintiff Clarksdale City, Mississippi

Clarksdale City's untimely motion for leave to amend should be denied for several reasons. Clarksdale City failed to provide notice of its proposed amendments through a proposed complaint. Clarksdale City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet and because its untimely motion would unduly prejudice the PBMs. Moreover, Clarksdale City's motion should be denied due to futility, as Clarksdale City does not assert any allegations tying the PBMs to its

alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clarksdale City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clarksdale City filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 16, 2019. *See City of Clarksdale v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45620-DAP, ECF No. 3. Clarksdale City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Clarksdale City elected not to do so. Instead, Clarksdale City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Clarksdale City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clarksdale City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Clarksdale City). That insignificant dispensing volume is much too low to support a finding of good cause for Clarksdale City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clarksdale City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clarksdale City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Clarksdale City filed its original complaint on June 14, 2019. *See City of Clarksdale v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45620-DAP, ECF No. 1. Despite filing its case years ago, Clarksdale City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Clarksdale City's case would force the parties and the Court to waste time and resources ascertaining the extent of Clarksdale City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clarksdale City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clarksdale City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Clarksdale City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Clarksdale City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Clarksdale City of this deficiency on September 16, 2024 (*see* Exhibit B), but Clarksdale

City refused to amend or supplement its Fact Sheet. Under this Court's orders, Clarksdale City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Clarksdale City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Clarksdale City's potential claims against them. Clarksdale City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clarksdale City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clarksdale City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clarksdale City's proposed RICO claim against the PBMs has expired. Clarksdale City filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*City of Clarksdale v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45620-DAP, ECF No. 1. It is therefore indisputable that Clarksdale City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Clarksdale City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clarksdale City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clarksdale City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1251.  *City of Bismarck v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45629-DAP: Plaintiff Bismarck City, North Dakota

Bismarck City's untimely motion for leave to amend should be denied for several reasons. Bismarck City failed to provide notice of its proposed amendments through a proposed complaint. Bismarck City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bismarck City's motion should be denied due to futility, as Bismarck City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bismarck City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Bismarck City filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 18, 2019. *See City of Bismarck v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45629-DAP, ECF No. 5. Bismarck City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bismarck City elected not to do so. Instead, Bismarck City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bismarck City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bismarck City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Bismarck City). That insignificant dispensing volume is much too low to support a finding of good cause for Bismarck City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bismarck City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Bismarck City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bismarck City filed its original complaint on June 14, 2019. *See City of Bismarck v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45629-DAP, ECF No. 1. Despite filing its case years ago, Bismarck City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. See ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bismarck City's case would force the parties and the Court to waste time and resources ascertaining the extent of Bismarck City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bismarck City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bismarck City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bismarck City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bismarck City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bismarck City of this deficiency on September 16, 2024 (*see* Exhibit B), but Bismarck City refused to amend or supplement its Fact Sheet. Under this Court's orders, Bismarck City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bismarck City's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Bismarck City's potential claims against them. Bismarck City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under North Dakota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bismarck City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Dakota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bismarck City, a municipality in North Dakota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bismarck City's proposed RICO claim against the PBMs has expired. Bismarck City filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Bismarck v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45629-DAP, ECF No. 1. It is therefore indisputable that Bismarck City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Bismarck

City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bismarck City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bismarck City, a municipality in North Dakota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1252. *Williams County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45633-DAP: Plaintiff Williams County, North Dakota

Williams County's untimely motion for leave to amend should be denied for several reasons. Williams County failed to provide notice of its proposed amendments through a proposed complaint. Williams County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Williams County's motion should be denied due to futility, as Williams County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Williams County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Williams County filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 19, 2019. *See Williams County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45633-DAP, ECF No. 4. Williams County could have amended its complaint, without leave, to

add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Williams County elected not to do so. Instead, Williams County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Williams County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Williams County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Williams County). That insignificant dispensing volume is much too low to support a finding of good cause for Williams County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Williams County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Williams County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Williams County filed its original complaint on June 14, 2019. *See Williams County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45633-DAP,

ECF No. 1. Despite filing its case years ago, Williams County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Williams County's case would force the parties and the Court to waste time and resources ascertaining the extent of Williams County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Williams County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Williams County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Dakota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Williams County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Dakota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Williams County, a municipality in North Dakota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Williams County's proposed RICO claim against the PBMs has expired. Williams County filed its original complaint on June

14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Williams County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45633-DAP, ECF No. 1. It is therefore indisputable that Williams County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Williams County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Williams County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Williams County, a municipality in North Dakota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1253. *Grand Forks County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45647-DAP: Plaintiff Grand Forks County, North Dakota

Grand Forks County's untimely motion for leave to amend should be denied for several reasons. Grand Forks County failed to provide notice of its proposed amendments through a proposed complaint. Grand Forks County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Grand Forks County's motion should be denied due to futility, as Grand Forks County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Grand Forks County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Grand Forks County filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 22, 2019. *See Grand Forks County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45647-DAP, ECF No. 4. Grand Forks County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Grand Forks County elected not to do so. Instead, Grand Forks County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Grand Forks County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Grand Forks County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Grand Forks County). That insignificant dispensing volume is much too low to support a finding of good cause for Grand Forks County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Grand Forks County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Grand Forks County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

      **Failure to Implement a Litigation Hold.** Grand Forks County filed its original complaint on June 14, 2019. *See Grand Forks County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45647-DAP, ECF No. 1. Despite filing its case years ago, Grand Forks County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Grand Forks County's case would force the parties and the Court to waste time and resources ascertaining the extent of Grand Forks County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Grand Forks County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Grand Forks County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Prejudice Due to Loss of Evidence.** Under North Dakota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Grand Forks County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Dakota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Grand Forks County, a municipality in North Dakota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Grand Forks County's proposed RICO claim against the PBMs has expired. Grand Forks County filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Grand Forks County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45647-DAP, ECF No. 1. It is therefore indisputable that Grand Forks County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Grand Forks County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Grand Forks County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Grand Forks County, a municipality in North Dakota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1254. *County Commission of Craig County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45652-DAP: Plaintiff Craig County, Oklahoma

Craig County's untimely motion for leave to amend should be denied for several reasons. Craig County failed to provide notice of its proposed amendments through a proposed complaint. Craig County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Craig County's motion should be denied due to futility, as Craig County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Oklahoma, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Craig County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Craig County filed its original complaint on June 14, 2019 and the case was transferred to the MDL on July 22, 2019. *See County Commission of Craig County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45652-DAP, ECF No. 6. Craig County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Craig County elected not to do so. Instead, Craig County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Craig County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Craig County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Craig County). That insignificant dispensing volume is much too

low to support a finding of good cause for Craig County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Craig County filed its original complaint on June 14, 2019. *See County Commission of Craig County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45652-DAP, ECF No. 2. Despite filing its case years ago, Craig County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Craig County's case would force the parties and the Court to waste time and resources ascertaining the extent of Craig County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Craig County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Craig County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Craig County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Craig County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Craig County of this deficiency on September 16, 2024 (*see* Exhibit B), but Craig County refused to amend or supplement its Fact Sheet. Under this Court's orders, Craig County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Craig County's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Craig County's potential claims against them. Craig County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Oklahoma law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Craig County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oklahoma law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Craig County, a municipality in Oklahoma, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Craig County is a plaintiff in Oklahoma. Craig County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Craig County's proposed RICO claim against the PBMs has expired. Craig County filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County Commission of Craig County, Oklahoma v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45652-DAP, ECF No. 2. It is therefore indisputable that Craig County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Craig County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Craig County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Craig County, a municipality in Oklahoma, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1255. *Hanover Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45654-DAP: Plaintiff Hanover Township, Pennsylvania

Hanover Township's untimely motion for leave to amend should be denied for several reasons. Hanover Township failed to provide notice of its proposed amendments through a proposed complaint. Hanover Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hanover Township's motion should be denied due to futility, as Hanover Township does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hanover Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hanover Township amended its complaint on September 27, 2019, after transfer to the MDL on July 22, 2019. *See Hanover Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45654-DAP, ECF No. 85. Unlike many other plaintiffs, Hanover Township declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hanover Township's deadline to amend was in 2019. Hanover Township waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hanover Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hanover Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Hanover Township). That insignificant dispensing volume is much too low to support a finding of good cause for Hanover Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hanover Township filed its original complaint on June 21, 2019. *See Hanover Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45654-DAP, ECF No. 1. Despite filing its case years ago, Hanover Township *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hanover Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Hanover Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hanover Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hanover Township therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hanover Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hanover Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hanover Township of this deficiency on September 16, 2024 (*see* Exhibit B), but Hanover Township refused to amend or supplement its Fact Sheet. Under this Court's orders, Hanover Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hanover Township's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hanover Township's potential claims against them. Hanover Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs,

negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hanover Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hanover Township, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hanover Township's proposed RICO claim against the PBMs has expired. Hanover Township filed its original complaint on June 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hanover Township, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45654-DAP, ECF No. 1. It is therefore indisputable that Hanover Township knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Hanover Township's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period

is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hanover Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hanover Township, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1256. *County of Lycoming v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45655-DAP: Plaintiff Lycoming County, Pennsylvania

Lycoming County's untimely motion for leave to amend should be denied for several reasons. Lycoming County failed to provide notice of its proposed amendments through a proposed complaint. Lycoming County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lycoming County's motion should be denied due to futility, as Lycoming County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lycoming County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lycoming County amended its complaint on September 26, 2019, after transfer to the MDL on July 22, 2019. *See County of Lycoming v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45655-DAP, ECF No. 86. Unlike many other plaintiffs, Lycoming County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lycoming County's deadline to amend was in 2019. Lycoming County waited five years after its deadline to amend to

seek leave to assert claims against the PBMs. Lycoming County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lycoming County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Lycoming County). That insignificant dispensing volume is much too low to support a finding of good cause for Lycoming County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lycoming County filed its original complaint on June 19, 2019. *See County of Lycoming v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45655-DAP, ECF No. 1. Despite filing its case years ago, Lycoming County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lycoming County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lycoming County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lycoming County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lycoming County therefore lacks good

cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lycoming County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lycoming County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lycoming County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lycoming County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lycoming County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lycoming County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lycoming County's potential claims against them. Lycoming County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lycoming County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lycoming County, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lycoming County's proposed RICO claim against the PBMs has expired. Lycoming County filed its original complaint on June 19, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Lycoming v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45655-DAP, ECF No. 1. It is therefore indisputable that Lycoming County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lycoming County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lycoming County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lycoming County, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1257. *St. Lucie County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45656-DAP: Plaintiff St. Lucie County, Florida

St. Lucie County's untimely motion for leave to amend should be denied for several reasons. St. Lucie County failed to provide notice of its proposed amendments through a proposed complaint. St. Lucie County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Lucie County's motion should be denied due to futility, as St. Lucie County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Lucie County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Lucie County filed its original complaint on June 13, 2019 and the case was transferred to the MDL on July 23, 2019. *See St. Lucie County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45656-DAP, ECF No. 12. St. Lucie County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, St. Lucie County elected not to do so. Instead, St. Lucie County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Lucie County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Lucie County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.45% market share for St. Lucie County). That insignificant dispensing volume is much too low to support a finding of good cause for St. Lucie County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Lucie County filed its original complaint on June 13, 2019. *See St. Lucie County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45656-DAP, ECF No. 1. Despite filing its case years ago, St. Lucie County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating St. Lucie County's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Lucie County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Lucie County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Lucie County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. Lucie County's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. Lucie County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Lucie County's proposed RICO claim against the PBMs has expired. St. Lucie County filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See St. Lucie County, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45656-DAP, ECF No. 1. It is therefore indisputable that St. Lucie County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. St. Lucie County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Lucie County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. St. Lucie County's public-nuisance claim against the PBMs is therefore time-barred because St. Lucie County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 13, 2019—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** St. Lucie County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1258. *People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45657-DAP: Plaintiff Williamson County, Illinois

Williamson County's untimely motion for leave to amend should be denied for several reasons. Williamson County failed to provide notice of its proposed amendments through a proposed complaint. Williamson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Williamson County's motion should be denied due to futility, as Williamson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Williamson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Williamson County filed its original complaint on May 23, 2019 and the case was transferred to the MDL on July 12, 2019. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45657-DAP, ECF No. 10. Williamson County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Williamson County elected not to do so. Instead, Williamson County

waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Williamson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Williamson County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Williamson County). That insignificant dispensing volume is much too low to support a finding of good cause for Williamson County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Williamson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Williamson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Williamson County filed its original complaint on May 23, 2019. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45657-DAP, ECF No. 1-2. Despite filing its case years ago, Williamson County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF

No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Williamson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Williamson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Williamson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Williamson County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Williamson County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Williamson County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Williamson County's proposed RICO claim against the PBMs has expired. Williamson County filed its original complaint on May 23, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See People of the State of Illinois et al. v. Purdue Pharma L.P. et*

*al.*, Case No. 1:19-op-45657-DAP, ECF No. 1-2. Even assuming *arguendo* that Williamson County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 23, 2023. Williamson County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Williamson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Williamson County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1259. *Claiborne County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45658-DAP: Plaintiff Claiborne County, Tennessee

Claiborne County's untimely motion for leave to amend should be denied for several reasons. Claiborne County failed to provide notice of its proposed amendments through a proposed complaint. Claiborne County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Claiborne County's motion should be denied due to futility, as Claiborne County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Claiborne County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Claiborne County amended its complaint on October 17, 2019, after transfer to the MDL on July 18, 2019. *See Claiborne County, Tennessee v. Amerisourcebergen Drug Corporation*

*et al.*, Case No. 1:19-op-45658-DAP, ECF No. 9. Unlike many other plaintiffs, Claiborne County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Claiborne County's deadline to amend was in 2019. Claiborne County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Claiborne County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Claiborne County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Claiborne County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Claiborne County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Claiborne County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Claiborne County). That insignificant dispensing volume is much too low to support a finding of good cause for Claiborne County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Claiborne County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Claiborne County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Claiborne County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Claiborne County, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Claiborne County's proposed RICO claim against the PBMs has expired. Claiborne County filed its original complaint on June 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Claiborne County, Tennessee v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45658-DAP, ECF No. 1. It is therefore indisputable that Claiborne County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Claiborne County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Claiborne County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Claiborne County, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1260. *County of Rockland, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45662-DAP: Plaintiff Rockland County, New York

Rockland County's untimely motion for leave to amend should be denied for several reasons. Rockland County failed to provide notice of its proposed amendments through a proposed complaint. Rockland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rockland County's motion should be denied due to futility, as Rockland County does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Rockland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rockland County filed its original complaint on June 17, 2019 and the case was transferred to the MDL on July 29, 2019. *See County of Rockland, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45662-DAP, ECF No. 10. Rockland County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Rockland County elected not to do so. Instead, Rockland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rockland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rockland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Rockland County). That insignificant dispensing volume is much too low to support a finding of good cause for Rockland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rockland County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rockland County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Rockland County filed its original complaint on June 17, 2019. *See County of Rockland, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45662-DAP, ECF No. 4. Despite filing its case years ago, Rockland County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Rockland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Rockland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rockland County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rockland County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Rockland County has *never* served a Plaintiff Fact Sheet. Rockland County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Rockland County's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6

(denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rockland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Rockland County's proposed RICO claim against the PBMs has expired. Rockland County filed its original complaint on June 17, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Rockland, New York v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45662-DAP, ECF No. 4. It is therefore indisputable that Rockland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Rockland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rockland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

## 1261. *Hernando County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45667-DAP: Plaintiff Hernando County, Florida

Hernando County's untimely motion for leave to amend should be denied for several reasons. Hernando County failed to provide notice of its proposed amendments through a proposed

complaint. Hernando County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hernando County's motion should be denied due to futility, as Hernando County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hernando County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hernando County amended its complaint on September 30, 2019, after transfer to the MDL on July 1, 2019. *See Hernando County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45667-DAP, ECF No. 8. Unlike many other plaintiffs, Hernando County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hernando County's deadline to amend was in 2019. Hernando County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hernando County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hernando County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hernando County, through its counsel, was on notice of potential claims against the PBMs and

could readily have amended its complaint to add the PBMs much earlier. Hernando County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hernando County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.26% market share for Hernando County). That insignificant dispensing volume is much too low to support a finding of good cause for Hernando County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Hernando County violated its basic duty to implement a timely litigation hold. Hernando County filed its original complaint on June 6, 2019, but waited until December 13, 2019 to implement a litigation hold—six months later. *See Hernando County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45667-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hernando County's case would force the parties and the Court to waste time and resources ascertaining the extent of Hernando County's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hernando County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hernando County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hernando County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hernando County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hernando County's proposed RICO claim against the PBMs has expired. Hernando County filed its original complaint on June 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hernando County v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45667-DAP, ECF No. 1. It is therefore indisputable that Hernando County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Hernando County's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hernando County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Hernando County's public-nuisance claim against the PBMs is therefore time-barred because Hernando County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on June 6, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Hernando County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1262. *Lee County v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45671-DAP: Plaintiff Lee County, Florida

Lee County's untimely motion for leave to amend should be denied for several reasons. Lee County failed to provide notice of its proposed amendments through a proposed complaint. Lee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lee County's motion should be denied due to futility, as Lee County does not assert any allegations tying the PBMs to its alleged

harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lee County filed its original complaint on July 9, 2019 and the case was transferred to the MDL on July 31, 2019. *See Lee County v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45671-DAP, ECF No. 9. Lee County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Lee County elected not to do so. Instead, Lee County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Lee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Lee County filed its original complaint on July 9, 2019. *See Lee County v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45671-DAP, ECF No. 1. Despite filing its case years ago, Lee County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to

implement litigation holds until 2024. The PBMs are prejudiced by Lee County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

  **Failure to Prosecute.** In its Plaintiff Fact Sheet, Lee County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lee County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lee County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lee County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lee County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lee County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lee County's potential claims against them. Lee County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

  **Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lee County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lee County's proposed RICO claim against the PBMs has expired. Lee County filed its original complaint on July 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lee County v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45671-DAP, ECF No. 1. It is therefore indisputable that Lee County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Lee County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lee County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Lee County's public-nuisance claim against the PBMs is therefore time-barred because Lee County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on July 9, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new

cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lee County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1263. *Town of Braintree v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45673-DAP: Plaintiff Braintree Town City, Massachusetts

Braintree Town City's untimely motion for leave to amend should be denied for several reasons. Braintree Town City failed to provide notice of its proposed amendments through a proposed complaint. Braintree Town City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Braintree Town City's motion should be denied due to futility, as Braintree Town City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Braintree Town City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Braintree Town City amended its complaint on October 28, 2019, after transfer to the MDL on July 31, 2019. *See Town of Braintree v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45673-DAP, ECF No. 11. Unlike many other plaintiffs, Braintree Town City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Braintree Town City's deadline to amend was in 2019. Braintree Town City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Braintree Town City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial

of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Braintree Town City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Braintree Town City). That insignificant dispensing volume is much too low to support a finding of good cause for Braintree Town City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Braintree Town City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Braintree Town City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Braintree Town City filed its original complaint on July 3, 2019. *See Town of Braintree v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45673-DAP, ECF No. 1. Despite filing its case years ago, Braintree Town City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Braintree Town City's case would force the parties and the Court to waste time and resources ascertaining the extent of Braintree Town

City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Braintree Town City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Braintree Town City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Braintree Town City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Braintree Town City, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Braintree Town City's proposed RICO claim against the PBMs has expired. Braintree Town City filed its original complaint on July 3, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Braintree v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45673-DAP, ECF No. 1. It is therefore indisputable that Braintree Town City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave

to amend. Braintree Town City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Braintree Town City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Braintree Town City's public-nuisance claim against the PBMs is therefore time-barred because Braintree Town City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on July 3, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Braintree Town City, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1264. *County of Wicomico, Maryland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45681-DAP: Plaintiff Wicomico County, Maryland

Wicomico County's untimely motion for leave to amend should be denied for several reasons. Wicomico County failed to provide notice of its proposed amendments through a proposed complaint. Wicomico County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wicomico County's motion should be denied due to

futility, as Wicomico County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wicomico County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wicomico County filed its original complaint on July 9, 2019 and the case was transferred to the MDL on August 1, 2019. *See County of Wicomico, Maryland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45681-DAP, ECF No. 5. Wicomico County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Wicomico County elected not to do so. Instead, Wicomico County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Wicomico County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wicomico County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Wicomico County). That insignificant dispensing volume is much too low to support a finding of good cause for Wicomico County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wicomico County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wicomico County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wicomico County filed its original complaint on July 9, 2019. *See County of Wicomico, Maryland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45681-DAP, ECF No. 1. Despite filing its case years ago, Wicomico County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wicomico County's case would force the parties and the Court to waste time and resources ascertaining the extent of Wicomico County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wicomico County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wicomico County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wicomico County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wicomico County, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wicomico County's proposed RICO claim against the PBMs has expired. Wicomico County filed its original complaint on July 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Wicomico, Maryland v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45681-DAP, ECF No. 1. It is therefore indisputable that Wicomico County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Wicomico County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wicomico County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Wicomico County's public-nuisance claim against the PBMs is therefore time-barred because Wicomico County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on July 9, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See*

*Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Wicomico County, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1265. *Fauquier County, Virginia v. Mallinckrodt LLC, et al.*, Case No. 1:19-op-45686-DAP: Plaintiff Fauquier County, Virginia

Fauquier County's untimely motion for leave to amend should be denied for several reasons. Fauquier County failed to provide notice of its proposed amendments through a proposed complaint. Fauquier County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fauquier County's motion should be denied due to futility, as Fauquier County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fauquier County previously alleged claims against some of the PBMs in its original complaint on March 27, 2019. *See Fauquier County, Virginia v. Mallinckrodt LLC, et al.*, Case No. 1:19-op-45686-DAP, ECF No. 1-1–1-4 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Fauquier County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 49 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Fauquier County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these

entities as defendants in its original or amended complaints. Fauquier County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Fauquier County's complaint, Fauquier County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Fauquier County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fauquier County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Fauquier County). That insignificant dispensing volume is much too low to support a finding of good cause for Fauquier County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fauquier County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fauquier County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fauquier County violated its basic duty to implement a timely litigation hold. Fauquier County filed its original complaint on March 27, 2019, but waited until August 7, 2024 to implement a litigation hold—more than five years later. *See Fauquier County, Virginia v. Mallinckrodt LLC, et al.*, Case No. 1:19-op-45686-DAP, ECF No. 1-1–1-4; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 7, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fauquier County's case would force the parties and the Court to waste time and resources ascertaining the extent of Fauquier County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fauquier County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fauquier County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Fauquier County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Fauquier County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Fauquier County of this deficiency on September 16, 2024 (*see* Exhibit B), but Fauquier County refused to amend or supplement its Fact Sheet. Under this Court's orders, Fauquier County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Fauquier County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Fauquier County's potential claims against them. Fauquier County's failure to diligently

prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fauquier County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fauquier County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fauquier County's proposed RICO claim against the PBMs has expired. Fauquier County filed its original complaint on March 27, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Fauquier County, Virginia v. Mallinckrodt LLC, et al.*, Case No. 1:19-op-45686-DAP, ECF No. 1-1–1-4. Even assuming *arguendo* that Fauquier County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 27, 2023. Fauquier County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Fauquier County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fauquier County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1266.** ***Board of Supervisors, Prince William County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45687-DAP: Plaintiff Prince William County, Virginia**

Prince William County's untimely motion for leave to amend should be denied for several reasons. Prince William County failed to provide notice of its proposed amendments through a proposed complaint. Prince William County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Prince William County's motion should be denied due to futility, as Prince William County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Prince William County previously alleged claims against some of the PBMs in its original complaint on March 27, 2019. *See Board of Supervisors, Prince William County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45687-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Co; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Prince William County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 42 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Prince William County seeks to add other PBM-related entities as defendants but offers no good cause

for its failure to name these entities as defendants in its original or amended complaints. Prince William County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Prince William County's complaint, Prince William County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Prince William County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Prince William County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Prince William County). That insignificant dispensing volume is much too low to support a finding of good cause for Prince William County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Prince William County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Prince William County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Prince William County violated its basic duty to implement a timely litigation hold. Prince William County filed its original complaint on March 27, 2019, but waited until July 15, 2024 to implement a litigation hold—more than five years later. *See Board of Supervisors, Prince William County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45687-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 15, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Prince William County's case would force the parties and the Court to waste time and resources ascertaining the extent of Prince William County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Prince William County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Prince William County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Prince William County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Prince William County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Prince William County of this deficiency on September 16, 2024 (*see* Exhibit B), but Prince William County refused to amend or supplement its Fact Sheet. Under this Court's orders, Prince William County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Prince William County's refusal to provide basic information related to its health care plans

prejudices the PBMs' ability to defend against Prince William County's potential claims against them. Prince William County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Prince William County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Prince William County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Prince William County's proposed RICO claim against the PBMs has expired. Prince William County filed its original complaint on March 27, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Board of Supervisors, Prince William County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45687-DAP, ECF No. 1-1. Even assuming *arguendo* that Prince William County first learned of its injury on the day it filed its original complaint, RICO's

four-year statute of limitations expired, at the very latest, on March 27, 2023. Prince William County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Prince William County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Prince William County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1267. *Northumberland County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45688-DAP: Plaintiff Northumberland County, Virginia

Northumberland County's untimely motion for leave to amend should be denied for several reasons. Northumberland County failed to provide notice of its proposed amendments through a proposed complaint. Northumberland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Northumberland County's motion should be denied due to futility, as Northumberland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Northumberland County previously alleged claims against some of the PBMs in its original complaint on April 5, 2019. *See Northumberland County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45688-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Northumberland County also amended its complaint on October 29, 2019 to

add claims against additional PBM-related entities. *See id.*, at ECF No. 61 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Northumberland County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Northumberland County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Northumberland County's complaint, Northumberland County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Northumberland County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** But OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Northumberland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.46% market share for Northumberland County). That insignificant dispensing volume is much too low to support a finding of good cause for Northumberland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Northumberland County violated its basic duty to implement a timely litigation hold. Northumberland County filed its original complaint on April 5, 2019, but waited until August 13, 2024 to implement a litigation hold— more than five years later. *See Northumberland County, Virginia v. Purdue Pharma L.P. et al.*,

Case No. 1:19-op-45688-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Northumberland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Northumberland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Northumberland County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Northumberland County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Northumberland County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Northumberland County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Northumberland County of this deficiency on September 16, 2024 (*see* Exhibit B), but Northumberland County refused to amend or supplement its Fact Sheet. Under this Court's orders, Northumberland County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Northumberland County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Northumberland County's potential claims against them. Northumberland County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend,

in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Northumberland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Northumberland County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Northumberland County's proposed RICO claim against the PBMs has expired. Northumberland County filed its original complaint on April 5, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Northumberland County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45688-DAP, ECF No. 1-1. Even assuming *arguendo* that Northumberland County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 5, 2023. Northumberland County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Northumberland County's request for leave to amend to

add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Northumberland County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1268. *Strafford County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45689-DAP: Plaintiff Strafford County, New Hampshire

Strafford County's untimely motion for leave to amend should be denied for several reasons. Strafford County failed to provide notice of its proposed amendments through a proposed complaint. Strafford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Strafford County's motion should be denied due to futility, as Strafford County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Strafford County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Strafford County filed its original complaint on September 18, 2018 and the case was transferred to the MDL on August 2, 2019. *See Strafford County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45689-DAP, ECF No. 53. Strafford County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Strafford County elected not to do so. Instead, Strafford County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Strafford County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial

of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Strafford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Strafford County). That insignificant dispensing volume is much too low to support a finding of good cause for Strafford County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Strafford County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Strafford County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Strafford County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Strafford County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Strafford County of this deficiency on September 16, 2024 (*see* Exhibit B), but Strafford County refused to amend or supplement its Fact Sheet. Under this Court's orders, Strafford County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute.

ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Strafford County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Strafford County's potential claims against them. Strafford County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Strafford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Strafford County, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Strafford County's proposed RICO claim against the PBMs has expired. Strafford County filed its original complaint on September 18, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Strafford County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45689-DAP, ECF No. 1-1. Even assuming *arguendo* that Strafford County first learned of its

injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 18, 2022. Strafford County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Strafford County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Strafford County, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1269.**  *City of Claremont, NH v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45690-DAP: Plaintiff Claremont City, New Hampshire**

Claremont City's untimely motion for leave to amend should be denied for several reasons. Claremont City failed to provide notice of its proposed amendments through a proposed complaint. Claremont City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Claremont City's motion should be denied due to futility, as Claremont City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Claremont City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Claremont City filed its original complaint on September 18, 2018 and the case was transferred to the MDL on August 5, 2019. *See City of Claremont, NH v. Purdue Pharma L.P. et al.*, Case No.

1:19-op-45690-DAP, ECF No. 54. Claremont City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Claremont City elected not to do so. Instead, Claremont City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Claremont City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Claremont City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Claremont City). That insignificant dispensing volume is much too low to support a finding of good cause for Claremont City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Claremont City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Claremont City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Claremont City filed its original complaint on September 18, 2018. *See City of Claremont, NH v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45690-DAP, ECF No. 1-1. Despite filing its case years ago, Claremont City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Claremont City's case would force the parties and the Court to waste time and resources ascertaining the extent of Claremont City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Claremont City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Claremont City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Claremont City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Claremont City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Claremont City of this deficiency on September 16, 2024 (*see* Exhibit B), but Claremont City refused to amend or supplement its Fact Sheet. Under this Court's orders, Claremont City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Claremont City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Claremont City's potential claims against them. Claremont City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave

to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Claremont City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Claremont City, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Claremont City's proposed RICO claim against the PBMs has expired. Claremont City filed its original complaint on September 18, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Claremont, NH v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45690-DAP, ECF No. 1-1. Even assuming *arguendo* that Claremont City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 18, 2022. Claremont City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see*

Section III.B.4, above. Claremont City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Claremont City, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1270. *Grafton County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45691-DAP: Plaintiff Grafton County, New Hampshire

Grafton County's untimely motion for leave to amend should be denied for several reasons. Grafton County failed to provide notice of its proposed amendments through a proposed complaint. Grafton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Grafton County's motion should be denied due to futility, as Grafton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Grafton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Grafton County filed its original complaint on September 18, 2018 and the case was transferred to the MDL on August 5, 2019. *See Grafton County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45691-DAP, ECF No. 51. Grafton County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Grafton County elected not to do so. Instead, Grafton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Grafton County's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Grafton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Grafton County). That insignificant dispensing volume is much too low to support a finding of good cause for Grafton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Grafton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Grafton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Grafton County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Grafton County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Grafton County of this deficiency on September 16, 2024 (*see* Exhibit B), but Grafton County refused to amend or supplement its Fact Sheet. Under this Court's orders, Grafton

County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Grafton County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Grafton County's potential claims against them. Grafton County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Grafton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Grafton County, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Grafton County's proposed RICO claim against the PBMs has expired. Grafton County filed its original complaint on September 18, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Grafton County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-

45691-DAP, ECF No. 1-1. Even assuming *arguendo* that Grafton County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 18, 2022. Grafton County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Grafton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Grafton County, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1271. *Halifax County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45692-DAP: Plaintiff Halifax County, Virginia

Halifax County's untimely motion for leave to amend should be denied for several reasons. Halifax County failed to provide notice of its proposed amendments through a proposed complaint. Halifax County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Halifax County's motion should be denied due to futility, as Halifax County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Halifax County previously alleged claims against some of the PBMs in its original complaint on April 29, 2019. *See Halifax County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45692-DAP, ECF No. 1-1 (bringing claims against Express Scripts

Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Halifax County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 40 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Halifax County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Halifax County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Halifax County's complaint, Halifax County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Halifax County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Halifax County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Halifax County). That insignificant dispensing volume is much too low to support a finding of good cause for Halifax County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Halifax County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Halifax County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Halifax County violated its basic duty to implement a timely litigation hold. Halifax County filed its original complaint on April 29, 2019, but waited until August 6, 2024 to implement a litigation hold—more than five years later. *See Halifax County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45692-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 6, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Halifax County's case would force the parties and the Court to waste time and resources ascertaining the extent of Halifax County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Halifax County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Halifax County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Halifax County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Halifax County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Halifax County of this deficiency on September 16, 2024 (*see* Exhibit B), but Halifax County refused to amend or supplement its Fact Sheet. Under this Court's orders, Halifax County's

case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Halifax County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Halifax County's potential claims against them. Halifax County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Halifax County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Halifax County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Halifax County's proposed RICO claim against the PBMs has expired. Halifax County filed its original complaint on April 29, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Halifax County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45692-DAP, ECF No. 1-1. Even assuming *arguendo* that Halifax County first learned of its injury on the

day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 29, 2023. Halifax County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Halifax County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Halifax County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1272. *City of Lexington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45693-DAP: Plaintiff Lexington City, Virginia

Lexington City's untimely motion for leave to amend should be denied for several reasons. Lexington City failed to provide notice of its proposed amendments through a proposed complaint. Lexington City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lexington City's motion should be denied due to futility, as Lexington City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lexington City previously alleged claims against some of the PBMs in its original complaint on April 9, 2019. *See City of Lexington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45693-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx,

Inc.). Lexington City also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 47 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Lexington City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Lexington City's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Lexington City's complaint, Lexington City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Lexington City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lexington City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Lexington City). That insignificant dispensing volume is much too low to support a finding of good cause for Lexington City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lexington City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Lexington City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lexington City violated its basic duty to implement a timely litigation hold. Lexington City filed its original complaint on April 9, 2019, but waited until August 6, 2024 to implement a litigation hold—more than five years later. *See City of Lexington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45693-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 6, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lexington City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lexington City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lexington City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lexington City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lexington City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lexington City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lexington City of this deficiency on September 16, 2024 (*see* Exhibit B), but Lexington City refused to amend or supplement its Fact Sheet. Under this Court's orders, Lexington City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lexington City's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Lexington City's potential claims against them. Lexington City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lexington City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lexington City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lexington City's proposed RICO claim against the PBMs has expired. Lexington City filed its original complaint on April 9, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Lexington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45693-DAP, ECF No. 1-1. Even assuming *arguendo* that Lexington City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 9, 2023. Lexington City's RICO claim is therefore time-barred. ECF No. 2568 at 13

(holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lexington City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lexington City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1273.** *Rockbridge County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45694-DAP: Plaintiff Rockbridge County, Virginia

Rockbridge County's untimely motion for leave to amend should be denied for several reasons. Rockbridge County failed to provide notice of its proposed amendments through a proposed complaint. Rockbridge County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rockbridge County's motion should be denied due to futility, as Rockbridge County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rockbridge County previously alleged claims against some of the PBMs in its original complaint on April 29, 2019. *See Rockbridge County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45694-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Rockbridge County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 38 (adding claims against

Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Rockbridge County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Rockbridge County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Rockbridge County's complaint, Rockbridge County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Rockbridge County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**Failure to Timely Implement a Litigation Hold.** Rockbridge County violated its basic duty to implement a timely litigation hold. Rockbridge County filed its original complaint on April 29, 2019, but waited until July 24, 2024 to implement a litigation hold—more than five years later. *See Rockbridge County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45694-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 24, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Rockbridge County's case would force the parties and the Court to waste time and resources ascertaining the extent of Rockbridge County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rockbridge County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rockbridge County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at

*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Rockbridge County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Rockbridge County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Rockbridge County of this deficiency on September 16, 2024 (*see* Exhibit B), but Rockbridge County refused to amend or supplement its Fact Sheet. Under this Court's orders, Rockbridge County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Rockbridge County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Rockbridge County's potential claims against them. Rockbridge County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rockbridge County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rockbridge County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rockbridge County's proposed RICO claim against the PBMs has expired. Rockbridge County filed its original complaint on April 29, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Rockbridge County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45694-DAP, ECF No. 1-1. Even assuming *arguendo* that Rockbridge County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 29, 2023. Rockbridge County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rockbridge County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rockbridge County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1274. *Roanoke County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45695-DAP: Plaintiff Roanoke County, Virginia

Roanoke County's untimely motion for leave to amend should be denied for several reasons. Roanoke County failed to provide notice of its proposed amendments through a proposed complaint. Roanoke County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Roanoke County's motion should be denied due to futility, as Roanoke County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Roanoke County previously alleged claims against some of the PBMs in its original complaint on March 25, 2019. *See Roanoke County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45695-DAP, ECF No. 1-2 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Roanoke County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 44 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Roanoke County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Roanoke County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Roanoke County's complaint, Roanoke County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Roanoke County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Roanoke County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.23% market share for Roanoke County). That insignificant dispensing volume is much too low to support a finding of good cause for Roanoke County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Roanoke County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Roanoke County of the PBM services Express Scripts provides and Roanoke County began receiving those services on April 2, 2012. *See id.* Inasmuch as Roanoke County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Roanoke County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Roanoke County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Roanoke County violated its basic duty to implement a timely litigation hold. Roanoke County filed its original complaint on March 25, 2019, but waited until August 12, 2024 to implement a litigation hold—more than five years later. *See Roanoke County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45695-DAP, ECF

No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 12, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Roanoke County's case would force the parties and the Court to waste time and resources ascertaining the extent of Roanoke County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Roanoke County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Roanoke County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Roanoke County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Roanoke County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Roanoke County of this deficiency on September 16, 2024 (*see* Exhibit B), but Roanoke County refused to amend or supplement its Fact Sheet. Under this Court's orders, Roanoke County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Roanoke County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Roanoke County's potential claims against them. Roanoke County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Roanoke County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Roanoke County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Roanoke County's proposed RICO claim against the PBMs has expired. Roanoke County filed its original complaint on March 25, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Roanoke County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45695-DAP, ECF No. 1-2. Even assuming *arguendo* that Roanoke County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 25, 2023. Roanoke County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Roanoke County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Roanoke County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1275.** *City of Roanoke, Virginia v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45696-DAP: Plaintiff Roanoke City, Virginia**

Roanoke City's untimely motion for leave to amend should be denied for several reasons. Roanoke City failed to provide notice of its proposed amendments through a proposed complaint. Roanoke City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Roanoke City's motion should be denied due to futility, as Roanoke City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Roanoke City previously alleged claims against some of the PBMs in its original complaint on March 25, 2019. *See City of Roanoke, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45696-DAP, ECF No. 1-2 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Roanoke City also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 48 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Roanoke City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Roanoke City's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities

that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Roanoke City's complaint, Roanoke City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Roanoke City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Roanoke City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Roanoke City). That insignificant dispensing volume is much too low to support a finding of good cause for Roanoke City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Roanoke City violated its basic duty to implement a timely litigation hold. Roanoke City filed its original complaint on March 22, 2019, but waited until August 6, 2024 to implement a litigation hold—more than five years later. *See City of Roanoke, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45696-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 6, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Roanoke City's case would force the parties and the Court to waste time and resources ascertaining the extent of Roanoke City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Roanoke City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Roanoke City therefore lacks good cause

for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Roanoke City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Roanoke City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Roanoke City of this deficiency on September 16, 2024 (*see* Exhibit B), but Roanoke City refused to amend or supplement its Fact Sheet. Under this Court's orders, Roanoke City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Roanoke City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Roanoke City's potential claims against them. Roanoke City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Roanoke City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Roanoke City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Roanoke City's proposed RICO claim against the PBMs has expired. Roanoke City filed its original complaint on March 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Roanoke, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45696-DAP, ECF No. 1-2. Even assuming *arguendo* that Roanoke City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 22, 2023. Roanoke City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Roanoke City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Roanoke City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1276. *City of Salem, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45697-DAP: Plaintiff Salem City, Virginia

Salem City's untimely motion for leave to amend should be denied for several reasons. Salem City failed to provide notice of its proposed amendments through a proposed complaint. Salem City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Salem City's motion should be denied due to futility, as Salem City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Salem City previously alleged claims against some of the PBMs in its original complaint on March 22, 2019. *See City of Salem, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45697-DAP, ECF No. 1-2 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Salem City also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 41 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Salem City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Salem City's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Salem City's complaint, Salem City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Salem City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Salem City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Salem City). That insignificant dispensing volume is much too low to support a finding of good cause for Salem City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Salem City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Salem City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Salem City violated its basic duty to implement a timely litigation hold. Salem City filed its original complaint on March 22, 2019, but waited until July 8, 2024 to implement a litigation hold—more than five years later. *See City of Salem, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45697-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Salem City's case would force the parties and the Court to waste time and resources ascertaining the extent of Salem City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Salem City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Salem City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Salem City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Salem City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Salem City of this deficiency on September 16, 2024 (*see* Exhibit B), but Salem City refused to amend or supplement its Fact Sheet. Under this Court's orders, Salem City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Salem City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Salem City's potential claims against them. Salem City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Salem City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Salem City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Salem City's proposed RICO claim against the PBMs has expired. Salem City filed its original complaint on March 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Salem, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45697-DAP, ECF No. 1-2. Even assuming *arguendo* that Salem City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 22, 2023. Salem City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Salem City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Salem City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1277. *Floyd County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45698-DAP: Plaintiff Floyd County, Virginia

Floyd County's untimely motion for leave to amend should be denied for several reasons. Floyd County failed to provide notice of its proposed amendments through a proposed complaint. Floyd County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Floyd County's motion should be denied due to futility, as Floyd County does not assert any allegations tying the PBMs to its

alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Floyd County previously alleged claims against some of the PBMs in its original complaint on May 10, 2019. *See Floyd County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45698-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Floyd County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 26 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Floyd County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Floyd County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Floyd County's complaint, Floyd County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Floyd County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Floyd County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Floyd County). That insignificant dispensing volume is much too low to support a finding of good cause for Floyd County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Floyd County violated its basic duty to implement a timely litigation hold. Floyd County filed its original complaint on May 9, 2019, but waited until August 8, 2024 to implement a litigation hold—more than five years later. *See Floyd County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45698-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Floyd County's case would force the parties and the Court to waste time and resources ascertaining the extent of Floyd County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Floyd County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Floyd County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Floyd County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Floyd County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Floyd County of this deficiency on September 16, 2024 (*see* Exhibit B), but Floyd County refused to amend or supplement its Fact Sheet. Under this Court's orders, Floyd County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Floyd County's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Floyd County's potential claims against them. Floyd County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Floyd County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Floyd County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Floyd County's proposed RICO claim against the PBMs has expired. Floyd County filed its original complaint on May 10, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Floyd County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45698-DAP, ECF No. 1-1. Even assuming *arguendo* that Floyd County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 10, 2023. Floyd County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding

that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Floyd County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Floyd County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1278.** *Alleghany County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45700-DAP: Plaintiff Alleghany County, Virginia

Alleghany County's untimely motion for leave to amend should be denied for several reasons. Alleghany County failed to provide notice of its proposed amendments through a proposed complaint. Alleghany County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alleghany County's motion should be denied due to futility, as Alleghany County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alleghany County previously alleged claims against some of the PBMs in its original complaint on March 25, 2019. *See Alleghany County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45700-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Alleghany County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 43 (adding claims against Express

Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Alleghany County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Alleghany County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Alleghany County's complaint, Alleghany County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Alleghany County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alleghany County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.45% market share for Alleghany County). That insignificant dispensing volume is much too low to support a finding of good cause for Alleghany County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alleghany County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Alleghany County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Alleghany County violated its basic duty to implement a timely litigation hold. Alleghany County filed its original complaint on March 25, 2019, but waited until July 8, 2024 to implement a litigation hold—more than five years later. *See Alleghany County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45700-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Alleghany County's case would force the parties and the Court to waste time and resources ascertaining the extent of Alleghany County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Alleghany County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Alleghany County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Alleghany County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Alleghany County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Alleghany County of this deficiency on September 16, 2024 (*see* Exhibit B), but Alleghany County refused to amend or supplement its Fact Sheet. Under this Court's orders, Alleghany County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

Alleghany County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Alleghany County's potential claims against them. Alleghany County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alleghany County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alleghany County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alleghany County's proposed RICO claim against the PBMs has expired. Alleghany County filed its original complaint on March 25, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Alleghany County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45700-DAP, ECF No. 1-1. Even assuming *arguendo* that Alleghany County first learned of its injury on

the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 25, 2023. Alleghany County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alleghany County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alleghany County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1279. *Franklin County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45701-DAP: Plaintiff Franklin County, Virginia

Franklin County's untimely motion for leave to amend should be denied for several reasons. Franklin County failed to provide notice of its proposed amendments through a proposed complaint. Franklin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin County's motion should be denied due to futility, as Franklin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin County previously alleged claims against some of the PBMs in its original complaint on April 9, 2019. *See Franklin County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45701-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and

OptumRx, Inc.). Franklin County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 47 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Franklin County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Franklin County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Franklin County's complaint, Franklin County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Franklin County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Franklin County). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Franklin County violated its basic duty to implement a timely litigation hold. Franklin County filed its original complaint on April 9, 2019, but waited until July 8, 2024 to implement a litigation hold—more than five years later. *See*

*Franklin County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45701-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Franklin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Franklin County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Franklin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Franklin County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Franklin County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Franklin County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Franklin County of this deficiency on September 16, 2024 (*see* Exhibit B), but Franklin County refused to amend or supplement its Fact Sheet. Under this Court's orders, Franklin County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Franklin County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Franklin County's potential claims against them. Franklin County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin County's proposed RICO claim against the PBMs has expired. Franklin County filed its original complaint on April 9, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Franklin County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45701-DAP, ECF No. 1-1. Even assuming *arguendo* that Franklin County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 9, 2023. Franklin County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Franklin County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1280. *Madison County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45702-DAP: Plaintiff Madison County, Virginia

Madison County's untimely motion for leave to amend should be denied for several reasons. Madison County failed to provide notice of its proposed amendments through a proposed complaint. Madison County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Madison County's motion should be denied due to futility, as Madison County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Madison County previously alleged claims against some of the PBMs in its original complaint on May 10, 2019. *See Madison County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45702-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Madison County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 28 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Madison County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Madison County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the

entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Madison County's complaint, Madison County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Madison County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Madison County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Madison County). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Madison County violated its basic duty to implement a timely litigation hold. Madison County filed its original complaint on May 10, 2019, but waited until July 11, 2024 to implement a litigation hold—more than five years later. *See Madison County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45702-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 11, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Madison County's case would force the parties and the Court to waste time and resources ascertaining the extent of Madison County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Madison County's disregard for its most basic discovery obligations as a

litigant, compounded by the delay in seeking leave to amend, and Madison County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Madison County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Madison County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Madison County of this deficiency on September 16, 2024 (*see* Exhibit B), but Madison County refused to amend or supplement its Fact Sheet. Under this Court's orders, Madison County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Madison County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Madison County's potential claims against them. Madison County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Madison County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Madison County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Madison County's proposed RICO claim against the PBMs has expired. Madison County filed its original complaint on May 10, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Madison County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45702-DAP, ECF No. 1-1. Even assuming *arguendo* that Madison County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 10, 2023. Madison County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Madison County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Madison County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1281. *Rockingham County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45703-DAP: Plaintiff Rockingham County, New Hampshire

Rockingham County's untimely motion for leave to amend should be denied for several reasons. Rockingham County failed to provide notice of its proposed amendments through a proposed complaint. Rockingham County also lacks good cause under Rule 15 or Rule 16 due to

a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rockingham County's motion should be denied due to futility, as Rockingham County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rockingham County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rockingham County filed its original complaint on September 18, 2018 and the case was transferred to the MDL on August 19, 2019. *See Rockingham County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45703-DAP, ECF No. 52. Rockingham County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Rockingham County elected not to do so. Instead, Rockingham County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Rockingham County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rockingham County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Rockingham County). That insignificant dispensing volume is much too low to support a finding of good cause for Rockingham County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rockingham County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Rockingham County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Rockingham County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Rockingham County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Rockingham County of this deficiency on September 16, 2024 (*see* Exhibit B), but Rockingham County refused to amend or supplement its Fact Sheet. Under this Court's orders, Rockingham County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Rockingham County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Rockingham County's potential claims against them. Rockingham County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rockingham County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rockingham County, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rockingham County's proposed RICO claim against the PBMs has expired. Rockingham County filed its original complaint on September 18, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Rockingham County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45703-DAP, ECF No. 1-1. Even assuming *arguendo* that Rockingham County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 18, 2022. Rockingham County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rockingham County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rockingham County, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1282. *Belknap County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45705-DAP: Plaintiff Belknap County, New Hampshire

Belknap County's untimely motion for leave to amend should be denied for several reasons. Belknap County failed to provide notice of its proposed amendments through a proposed complaint. Belknap County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Belknap County's motion should be denied due to futility, as Belknap County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Belknap County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Belknap County filed its original complaint on September 18, 2018 and the case was transferred to the MDL on August 20, 2019. *See Belknap County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45705-DAP, ECF No. 53. Belknap County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Belknap County elected not to do so. Instead, Belknap County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Belknap County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Belknap County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Belknap County). That insignificant dispensing volume is much too low to support a finding of good cause for Belknap County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Belknap County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Belknap County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Belknap County filed its original complaint on September 18, 2018. *See Belknap County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45705-DAP, ECF No. 1-1. Despite filing its case years ago, Belknap County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Belknap County's case would force the parties and the Court to waste time and resources ascertaining the extent of Belknap County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Belknap County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Belknap County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Failure to Prosecute.** In its Plaintiff Fact Sheet, Belknap County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Belknap County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Belknap County of this deficiency on September 16, 2024 (*see* Exhibit B), but Belknap County refused to amend or supplement its Fact Sheet. Under this Court's orders, Belknap County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Belknap County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Belknap County's potential claims against them. Belknap County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

      **Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Belknap County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Belknap County, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Belknap County's proposed RICO claim against the PBMs has expired. Belknap County filed its original complaint on September 18, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Belknap County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45705-DAP, ECF No. 1-1. Even assuming *arguendo* that Belknap County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 18, 2022. Belknap County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Belknap County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Belknap County, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1283.** *Cheshire County v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45706-DAP: Plaintiff Cheshire County, New Hampshire**

Cheshire County's untimely motion for leave to amend should be denied for several reasons. Cheshire County failed to provide notice of its proposed amendments through a proposed complaint. Cheshire County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cheshire County's motion should be denied due to futility, as Cheshire County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cheshire County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cheshire County filed its original complaint on September 19, 2018 and the case was transferred to the MDL on August 20, 2019. *See Cheshire County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45706-DAP, ECF No. 53. Cheshire County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Cheshire County elected not to do so. Instead, Cheshire County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cheshire County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cheshire County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Cheshire County). That insignificant dispensing volume is much too low to support a finding of good cause for Cheshire County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cheshire County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cheshire County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cheshire County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cheshire County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cheshire County of this deficiency on September 16, 2024 (*see* Exhibit B), but Cheshire County refused to amend or supplement its Fact Sheet. Under this Court's orders, Cheshire County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cheshire County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cheshire County's potential claims against them. Cheshire County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause

and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cheshire County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cheshire County, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cheshire County's proposed RICO claim against the PBMs has expired. Cheshire County filed its original complaint on September 19, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Cheshire County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45706-DAP, ECF No. 1-1. Even assuming *arguendo* that Cheshire County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 19, 2022. Cheshire County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Cheshire County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

    **Plaintiff Lacks Standing.** Cheshire County, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1284. *Town of Belmont, NH v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45707-DAP: Plaintiff Belmont Town, New Hampshire

    Belmont Town's untimely motion for leave to amend should be denied for several reasons. Belmont Town failed to provide notice of its proposed amendments through a proposed complaint. Belmont Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Belmont Town's motion should be denied due to futility, as Belmont Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

    **Lack of Diligence.** Belmont Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Belmont Town filed its original complaint on September 19, 2018 and the case was transferred to the MDL on August 22, 2019. *See Town of Belmont, NH v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45707-DAP, ECF No. 51. Belmont Town could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Belmont Town elected not to do so. Instead, Belmont Town waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Belmont Town's lack of

diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Belmont Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Belmont Town). That insignificant dispensing volume is much too low to support a finding of good cause for Belmont Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Belmont Town filed its original complaint on September 19, 2018. *See Town of Belmont, NH v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45707-DAP, ECF No. 1-1. Despite filing its case years ago, Belmont Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Belmont Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Belmont Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Belmont Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Belmont Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Belmont Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Belmont Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Belmont Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Belmont Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Belmont Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Belmont Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Belmont Town's potential claims against them. Belmont Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Belmont Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Belmont Town, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Belmont Town's proposed RICO claim against the PBMs has expired. Belmont Town filed its original complaint on September 19, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Belmont, NH v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45707-DAP, ECF No. 1-1. Even assuming *arguendo* that Belmont Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 19, 2022. Belmont Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Belmont Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Belmont Town, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1285. *City of Chesapeake, Virginia v. Actavis, LLC et al.*, Case No. 1:19-op-45712-DAP: Plaintiff Chesapeake City, Virginia

Chesapeake City's untimely motion for leave to amend should be denied for several reasons. Chesapeake City failed to provide notice of its proposed amendments through a proposed complaint. Chesapeake City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chesapeake City's motion should be denied due to futility, as Chesapeake City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chesapeake City previously alleged claims against some of the PBMs in its original complaint on April 5, 2019. *See City of Chesapeake, Virginia v. Actavis, LLC et al.*, Case No. 1:19-op-45712-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Chesapeake City also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 38 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Chesapeake City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Chesapeake City's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Chesapeake City's complaint, Chesapeake City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Chesapeake City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Chesapeake City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Chesapeake City). That insignificant dispensing volume is much too low to support a finding of good cause for Chesapeake City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chesapeake City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chesapeake City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Chesapeake City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Chesapeake City of the PBM services Express Scripts provides and Chesapeake City began receiving those services on July 7, 2007. *See id.* Inasmuch as Chesapeake City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Chesapeake City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Chesapeake City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Chesapeake City violated its basic duty to implement a timely litigation hold. Chesapeake City filed its original complaint on April 5, 2019, but waited until August 1, 2024 to implement a litigation hold—more than five years later. *See City of Chesapeake, Virginia v. Actavis, LLC et al.*, Case No. 1:19-op-45712-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 1, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chesapeake City's case would force the parties and the Court to waste time and resources ascertaining the extent of Chesapeake City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chesapeake City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chesapeake City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Chesapeake City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Chesapeake City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Chesapeake City of this deficiency on September 16, 2024 (*see* Exhibit B), but Chesapeake City refused to amend or supplement its Fact Sheet. Under this Court's orders, Chesapeake City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Chesapeake City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Chesapeake City's potential claims against them. Chesapeake City's failure to diligently

prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chesapeake City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chesapeake City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chesapeake City's proposed RICO claim against the PBMs has expired. Chesapeake City filed its original complaint on April 5, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Chesapeake, Virginia v. Actavis, LLC et al.*, Case No. 1:19-op-45712-DAP, ECF No. 1-1. Even assuming *arguendo* that Chesapeake City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 5, 2023. Chesapeake City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above.

Chesapeake City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chesapeake City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1286. *Accomack County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45715-DAP: Plaintiff Accomack County, Virginia

Accomack County's untimely motion for leave to amend should be denied for several reasons. Accomack County failed to provide notice of its proposed amendments through a proposed complaint. Accomack County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Accomack County's motion should be denied due to futility, as Accomack County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Accomack County previously alleged claims against some of the PBMs in its original complaint on April 5, 2019. *See Accomack County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45715-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Accomack County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 33 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Accomack County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these

entities as defendants in its original or amended complaints. Accomack County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Accomack County's complaint, Accomack County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Accomack County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Accomack County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Accomack County). That insignificant dispensing volume is much too low to support a finding of good cause for Accomack County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Accomack County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.48% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Accomack County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Accomack County violated its basic duty to implement a timely litigation hold. Accomack County filed its original complaint on April 5, 2019, but waited until July 21, 2024 to implement a litigation hold—more than five years later. *See Accomack County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45715-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 21, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Accomack County's case would force the parties and the Court to waste time and resources ascertaining the extent of Accomack County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Accomack County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Accomack County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Accomack County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Accomack County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Accomack County of this deficiency on September 16, 2024 (*see* Exhibit B), but Accomack County refused to amend or supplement its Fact Sheet. Under this Court's orders, Accomack County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Accomack County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Accomack County's potential claims against them. Accomack

County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Accomack County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Accomack County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Accomack County's proposed RICO claim against the PBMs has expired. Accomack County filed its original complaint on April 5, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Accomack County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45715-DAP, ECF No. 1-1. Even assuming *arguendo* that Accomack County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 5, 2023. Accomack County's RICO claim is therefore time-barred. ECF

No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Accomack County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Accomack County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above

### 1287. *City of Bristol, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45719-DAP: Plaintiff Bristol City, Virginia

Bristol City's untimely motion for leave to amend should be denied for several reasons. Bristol City failed to provide notice of its proposed amendments through a proposed complaint. Bristol City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bristol City's motion should be denied due to futility, as Bristol City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bristol City previously alleged claims against some of the PBMs in its original complaint on March 25, 2019. *See City of Bristol, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45719-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Bristol City also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 45 (adding claims against Express Scripts Pharmacy,

Inc., and ESI Mail Pharmacy Service, Inc.). Now, Bristol City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Bristol City's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Bristol City's complaint, Bristol City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Bristol City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bristol City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Bristol City). That insignificant dispensing volume is much too low to support a finding of good cause for Bristol City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bristol City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bristol City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Bristol City violated its basic duty to implement a timely litigation hold. Bristol City filed its original complaint on March 25, 2019, but waited until July 22, 2024 to implement a litigation hold—more than five years later. *See City of Bristol, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45719-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 22, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bristol City's case would force the parties and the Court to waste time and resources ascertaining the extent of Bristol City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bristol City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bristol City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bristol City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bristol City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bristol City of this deficiency on September 16, 2024 (*see* Exhibit B), but Bristol City refused to amend or supplement its Fact Sheet. Under this Court's orders, Bristol City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bristol City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Bristol City's potential claims against them. Bristol City's failure to diligently prosecute its case, coupled

with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bristol City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bristol City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bristol City's proposed RICO claim against the PBMs has expired. Bristol City filed its original complaint on March 25, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Bristol, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45719-DAP, ECF No. 1-1. Even assuming *arguendo* that Bristol City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 25, 2023. Bristol City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bristol City's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bristol City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1288.** *Louisa County, Virginia v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45720-DAP: Plaintiff Louisa County, Virginia

Louisa County's untimely motion for leave to amend should be denied for several reasons. Louisa County failed to provide notice of its proposed amendments through a proposed complaint. Louisa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Louisa County's motion should be denied due to futility, as Louisa County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Louisa County previously alleged claims against some of the PBMs in its original complaint on May 10, 2019. *See Louisa County, Virginia v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45720-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Louisa County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 27 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Louisa County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Louisa County's deadline to amend was in

2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Louisa County's complaint, Louisa County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Louisa County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Louisa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.21% market share for Louisa County). That insignificant dispensing volume is much too low to support a finding of good cause for Louisa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Louisa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Louisa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Louisa County violated its basic duty to implement a timely litigation hold. Louisa County filed its original complaint on May 10, 2019, but waited until August 5, 2024 to implement a litigation hold—more than five years later. *See*

*Louisa County, Virginia v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45720-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 5, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Louisa County's case would force the parties and the Court to waste time and resources ascertaining the extent of Louisa County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Louisa County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Louisa County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Louisa County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Louisa County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Louisa County of this deficiency on September 16, 2024 (*see* Exhibit B), but Louisa County refused to amend or supplement its Fact Sheet. Under this Court's orders, Louisa County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Louisa County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Louisa County's potential claims against them. Louisa County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Louisa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Louisa County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Louisa County's proposed RICO claim against the PBMs has expired. Louisa County filed its original complaint on May 10, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Louisa County, Virginia v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45720-DAP, ECF No. 1-1. Even assuming *arguendo* that Louisa County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 10, 2023. Louisa County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Louisa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Louisa County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1289.** ***City of St. Albans, VT v. AmerisourceBergen Drug Corporation et al.,*** **Case No. 1:19-op-45721-DAP: Plaintiff St. Albans City, Vermont**

St. Albans City's untimely motion for leave to amend should be denied for several reasons. St. Albans City failed to provide notice of its proposed amendments through a proposed complaint. St. Albans City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. Albans City's motion should be denied due to futility, as St. Albans City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** St. Albans City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. Albans City amended its complaint on November 19, 2019, after transfer to the MDL on August 23, 2019. *See City of St. Albans, VT v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45721-DAP, ECF No. 4. Unlike many other plaintiffs, St. Albans City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. St. Albans City's deadline to amend was in 2019. St. Albans City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. St. Albans City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** St. Albans City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. St. Albans City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. St. Albans City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to St. Albans City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for St. Albans City). That insignificant dispensing volume is much too low to support a finding of good cause for St. Albans City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to St. Albans City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for St. Albans City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** St. Albans City filed its original complaint on June 10, 2019. *See City of St. Albans, VT v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45721-DAP, ECF No. 1. Despite filing its case years ago, St. Albans City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating St. Albans City's case would force the parties and the Court to waste time and resources ascertaining the extent of St. Albans City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by St. Albans City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and St. Albans City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** St. Albans City, a municipality in Vermont, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St. Albans City's proposed RICO claim against the PBMs has expired. St. Albans City filed its original complaint on June 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*City of St. Albans, VT v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45721-DAP, ECF No. 1. It is therefore indisputable that St. Albans City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. St. Albans City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St. Albans City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**<u>Plaintiff Lacks Standing.</u>** St. Albans City, a municipality in Vermont, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1290. *City of Youngstown v. Actavis Pharma, Inc. et al.*, Case No. 1:19-op-45722-DAP: Plaintiff Youngstown City, Ohio

Youngstown City's untimely motion for leave to amend should be denied for several reasons. Youngstown City failed to provide notice of its proposed amendments through a proposed complaint. Youngstown City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Youngstown City's motion should be denied due to futility, as Youngstown City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Youngstown City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Youngstown City filed its original complaint directly into the MDL on August 22, 2019. *See City of Youngstown v. Actavis Pharma, Inc. et al.*, Case No. 1:19-op-45722-DAP, ECF No. 1. Youngstown City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Youngstown City elected not to do so. Youngstown City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Youngstown City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Youngstown City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Youngstown City). That insignificant dispensing volume is much too low to support a finding of good cause for Youngstown City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Youngstown City filed its original complaint on August 22, 2019. *See City of Youngstown v. Actavis Pharma, Inc. et al.*, Case No. 1:19-op-45722-DAP, ECF No. 1. Despite filing its case years ago, Youngstown City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1

4764

(Date Litigation Hold Implemented: Never). Litigating Youngstown City's case would force the parties and the Court to waste time and resources ascertaining the extent of Youngstown City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Youngstown City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Youngstown City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Youngstown City has *never* served a Plaintiff Fact Sheet. Youngstown City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Youngstown City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Youngstown City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Youngstown City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Youngstown City is a plaintiff in Ohio. Youngstown City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Youngstown City's proposed RICO claim against the PBMs has expired. Youngstown City filed its original complaint on August 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Youngstown v. Actavis Pharma, Inc. et al.*, Case No. 1:19-op-45722-DAP, ECF No. 1. It is therefore indisputable that Youngstown City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Youngstown City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Youngstown City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Youngstown City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1291.** *City of Hazleton, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45724-DAP: Plaintiff Hazleton City, Pennsylvania

Hazleton City's untimely motion for leave to amend should be denied for several reasons. Hazleton City failed to provide notice of its proposed amendments through a proposed complaint. Hazleton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hazleton City's motion should be denied due to futility, as Hazleton City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hazleton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hazleton City amended its complaint on November 26, 2019, after transfer to the MDL on September 18, 2019. *See City of Hazleton, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45724-DAP, ECF No. 79. Unlike many other plaintiffs, Hazleton City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hazleton City's deadline to amend was in 2019. Hazleton City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Hazleton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of

motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hazleton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Hazleton City). That insignificant dispensing volume is much too low to support a finding of good cause for Hazleton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hazleton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hazleton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hazleton City filed its original complaint on August 13, 2019. *See City of Hazleton, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45724-DAP, ECF No. 1. Despite filing its case years ago, Hazleton City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hazleton City's case would force the parties and the Court to waste time and resources ascertaining the extent of Hazleton City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Hazleton City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hazleton City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hazleton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hazleton City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hazleton City of this deficiency on September 16, 2024 (*see* Exhibit B), but Hazleton City refused to amend or supplement its Fact Sheet. Under this Court's orders, Hazleton City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hazleton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hazleton City's potential claims against them. Hazleton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hazleton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

 **Failure to State a Claim.** Hazleton City, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

 **RICO Statute of Limitations.** The statute of limitations for Hazleton City's proposed RICO claim against the PBMs has expired. Hazleton City filed its original complaint on August 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Hazleton, Pennsylvania v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45724-DAP, ECF No. 1. It is therefore indisputable that Hazleton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Hazleton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hazleton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

 **Plaintiff Lacks Standing.** Hazleton City, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1292.** *Chatham County Hospital Authority, Georgia v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:19-op-45725-DAP: Plaintiff Chatham County Hospital Authority, Georgia**

Chatham County Hospital Authority's untimely motion for leave to amend should be denied for several reasons. Chatham County Hospital Authority failed to provide notice of its proposed amendments through a proposed complaint. Chatham County Hospital Authority also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Chatham County Hospital Authority's motion should be denied due to futility, as Chatham County Hospital Authority does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chatham County Hospital Authority was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chatham County Hospital Authority filed its original complaint on July 3, 2019 and the case was transferred to the MDL on August 27, 2019. *See Chatham County Hospital Authority, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45725-DAP, ECF No. 5. Chatham County Hospital Authority could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Chatham County Hospital Authority elected not to do so. Instead, Chatham County Hospital Authority waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chatham County Hospital Authority's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chatham County Hospital Authority's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chatham County Hospital Authority, a hospital in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chatham County Hospital Authority's proposed RICO claim against the PBMs has expired. Chatham County Hospital Authority filed its original complaint on July 3, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Chatham County Hospital Authority, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45725-DAP, ECF No. 1. It is therefore indisputable that Chatham County Hospital Authority knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Chatham County Hospital Authority's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chatham County Hospital Authority's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chatham County Hospital Authority, a hospital in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1293.** *County of Alameda, California et al. v. Purdue Pharma L.P. et al.*, **Case No. 1:20-op-45055-DAP: Plaintiff Alameda County, California**

Alameda County's untimely motion for leave to amend should be denied for several reasons. Alameda County failed to provide notice of its proposed amendments through a proposed complaint. Alameda County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Alameda County's motion should be denied due to futility, as Alameda County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alameda County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Alameda County amended its complaint on October 4, 2019, before transfer to the MDL on February 7, 2020. *See County of Alameda, California et al. v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-4. Unlike many other plaintiffs, Alameda County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Alameda County's deadline to amend was in 2020. Alameda County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Alameda County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alameda County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Alameda County). That insignificant dispensing volume is much too low to support a finding of good cause for Alameda County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alameda County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Alameda County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to State a Claim.** Alameda County, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alameda County's proposed RICO claim against the PBMs has expired. Alameda County filed its amended complaint on October 4, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Alameda, California et al. v. Purdue Pharma L.P. et al.*, Case

No. 1:20-op-45055-DAP, ECF No. 1-4. Even assuming *arguendo* that Alameda County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 4, 2023. Alameda County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alameda County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alameda County, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1294. *City of Westminster et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45727-DAP: Plaintiff Westminster City, California

Westminster City's untimely motion for leave to amend should be denied for several reasons. Westminster City failed to provide notice of its proposed amendments through a proposed complaint. Westminster City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Westminster City's motion should be denied due to futility, as Westminster City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Westminster City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Westminster City filed its original complaint on March 28, 2019 and the case was

transferred to the MDL on August 27, 2019. *See City of Westminster et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45727-DAP, ECF No. 24. Westminster City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Westminster City elected not to do so. Instead, Westminster City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Westminster City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Westminster City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Westminster City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Westminster City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Westminster City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Westminster City). That insignificant dispensing volume is much too low to support a finding of good cause for Westminster City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Westminster City violated its basic duty to implement a timely litigation hold. Westminster City filed its original complaint on March 28, 2019, but waited until February 26, 2020 to implement a litigation hold—nearly eleven months later. *See City of Westminster et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45727-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 26, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Westminster City's case would force the parties and the Court to waste time and resources ascertaining the extent of Westminster City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Westminster City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Westminster City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Westminster City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Westminster City's proposed RICO claim against the PBMs has expired. Westminster City filed its original complaint on March 28, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Westminster et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45727-DAP, ECF No. 1-2. Even assuming *arguendo* that Westminster City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 28, 2023. Westminster City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westminster City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Westminster City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1295. *City of San Clemente et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45728-DAP: Plaintiff San Clemente City, California

San Clemente City's untimely motion for leave to amend should be denied for several reasons. The Court previously dismissed San Clemente City's case. Moreover, San Clemente City failed to provide notice of its proposed amendments through a proposed complaint. San Clemente City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover,

San Clemente City's motion should be denied due to futility, as San Clemente City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously dismissed San Clemente City's case on September 30, 2019. *See City of San Clemente et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45728-DAP, ECF No. 29. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp*, 511 F.3d at 624 (citation omitted). Without such post-judgment relief, the "'district court lacks power to grant a motion to amend the complaint'" because there is no "live case or controversy before the district court." *Id.* (quoting *Acevedo-Villalobos*, 22 F.3d at 389). San Clemente City has neither moved for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion."). San Clemente City has not offered any basis to reopen its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Prior Notice Through Counsel.** San Clemente City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. San Clemente City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. San Clemente City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of

other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Lack of Diligence.** San Clemente City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, San Clemente City filed its original complaint on March 28, 2019 and the case was transferred to the MDL on August 27, 2019. *See City of San Clemente et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45728-DAP, ECF No. 28. San Clemente City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, San Clemente City elected not to do so. Instead, San Clemente City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. San Clemente City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to San Clemente City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.18% market share for San Clemente City). That insignificant dispensing volume is much

too low to support a finding of good cause for San Clemente City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to San Clemente City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for San Clemente City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** San Clemente City filed its original complaint on March 28, 2019. *See City of San Clemente et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45728-DAP, ECF No. 1-3. Despite filing its case years ago, San Clemente City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating San Clemente City's case would force the parties and the Court to waste time and resources ascertaining the extent of San Clemente City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by San Clemente City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and San Clemente City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** San Clemente City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for San Clemente City's proposed RICO claim against the PBMs has expired. San Clemente City filed its original complaint on March 28, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of San Clemente et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45728-DAP, ECF No. 1-3. Even assuming *arguendo* that San Clemente City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 28, 2023. San Clemente City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Clemente City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Clemente City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1296. *City of Danville, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45730-DAP: Plaintiff Danville City, Virginia

Danville City's untimely motion for leave to amend should be denied for several reasons. Danville City failed to provide notice of its proposed amendments through a proposed complaint. Danville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Danville City's motion should be denied due to futility, as Danville City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Danville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Danville City amended its complaint on November 19, 2019, after transfer to the MDL on August 27, 2019. *See City of Danville, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45730-DAP, ECF No. 6. Unlike many other plaintiffs, Danville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Danville City's deadline to amend was in 2019. Danville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Danville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Danville City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Danville City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Danville City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Danville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Danville City). That insignificant dispensing volume is much too low to support a finding of good cause for Danville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Danville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Danville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Danville City violated its basic duty to implement a timely litigation hold. Danville City filed its original complaint on June 6, 2019, but waited until December 16, 2019 to implement a litigation hold—six months later. *See City of*

*Danville, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45730-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 16, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Danville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Danville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Danville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Danville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **<u>Prejudice Due to Loss of Evidence.</u>** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Danville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

      **<u>Failure to State a Claim.</u>** Danville City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

      **<u>RICO Statute of Limitations.</u>** The statute of limitations for Danville City's proposed RICO claim against the PBMs has expired. Danville City filed its original complaint on June 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*City of Danville, Virginia v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45730-DAP, ECF No. 1. It is therefore indisputable that Danville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Danville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Danville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Danville City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1297. *Pemiscot County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45733-DAP: Plaintiff Pemiscot County, Missouri

Pemiscot County's untimely motion for leave to amend should be denied for several reasons. Pemiscot County failed to provide notice of its proposed amendments through a proposed complaint. Pemiscot County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Pemiscot County's motion should be denied due to futility, as Pemiscot County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pemiscot County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pemiscot County amended its complaint on November 19, 2019, after directly filing in the MDL.

*See Pemiscot County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45733-DAP, ECF No. 3. Unlike many other plaintiffs, Pemiscot County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pemiscot County's deadline to amend was in 2019. Pemiscot County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Pemiscot County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pemiscot County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Pemiscot County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pemiscot County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pemiscot County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Pemiscot County). That insignificant dispensing volume is much too low to support a finding of good cause for Pemiscot County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pemiscot County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pemiscot County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pemiscot County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pemiscot County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pemiscot County's proposed RICO claim against the PBMs has expired. Pemiscot County filed its original complaint on August 26, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pemiscot County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45733-DAP, ECF No. 1. It is therefore indisputable that Pemiscot County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Pemiscot County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pemiscot County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pemiscot County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1298. *City of Irvine et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45734-DAP: Plaintiff Irvine City, California

Irvine City's untimely motion for leave to amend should be denied for several reasons. Irvine City failed to provide notice of its proposed amendments through a proposed complaint. Irvine City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Irvine City's motion should be denied due to futility, as Irvine City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim

is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Irvine City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Irvine City filed its original complaint on March 28, 2019 and the case was transferred to the MDL on August 27, 2019. *See City of Irvine et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45734-DAP, ECF No. 25. Irvine City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Irvine City elected not to do so. Instead, Irvine City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Irvine City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Irvine City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Irvine City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Irvine City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since

some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Irvine City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Irvine City). That insignificant dispensing volume is much too low to support a finding of good cause for Irvine City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Irvine City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Irvine City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Irvine City filed its original complaint on March 28, 2019. *See City of Irvine et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45734-DAP, ECF No. 1-3. Despite filing its case years ago, Irvine City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Irvine City's case would force the parties and the Court to waste time and resources ascertaining the extent of Irvine City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Irvine City's disregard

for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Irvine City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Irvine City has *never* served a Plaintiff Fact Sheet. Irvine City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Irvine City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Irvine City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Irvine City's proposed RICO claim against the PBMs has expired. Irvine City filed its original complaint on March 28, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Irvine et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45734-DAP, ECF No. 1-3. Even assuming *arguendo* that Irvine City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 28, 2023. Irvine City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO

limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Irvine City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Irvine City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1299. *City of Costa Mesa et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45736-DAP: Plaintiff Costa Mesa City, California

Costa Mesa City's untimely motion for leave to amend should be denied for several reasons. The Court previously dismissed Costa Mesa City's case. Moreover, Costa Mesa City failed to provide notice of its proposed amendments through a proposed complaint. Costa Mesa City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Costa Mesa City's motion should be denied due to futility, as Costa Mesa City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously dismissed Costa Mesa City's case on October 4, 2019. *See City of Costa Mesa et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45736-DAP, ECF No. 27. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp*, 511 F.3d at 624 (citation omitted). Without such post-judgment relief, the "'district court lacks power to grant a motion to amend the complaint'" because there is no "live case or controversy before the district court." *Id.*

(quoting *Acevedo-Villalobos*, 22 F.3d at 389). Costa Mesa City has neither moved for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion."). Costa Mesa City has not offered any basis to reopen its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Lack of Diligence.** Costa Mesa City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Costa Mesa City filed its original complaint on March 28, 2019 and the case was transferred to the MDL on August 28, 2019. *See City of Costa Mesa et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45736-DAP, ECF No. 26. Costa Mesa City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Costa Mesa City elected not to do so. Instead, Costa Mesa City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Costa Mesa City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Costa Mesa City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Costa Mesa City, through its counsel, was on

notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Costa Mesa City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Costa Mesa City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Costa Mesa City). That insignificant dispensing volume is much too low to support a finding of good cause for Costa Mesa City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Costa Mesa City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Costa Mesa City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Costa Mesa City violated its basic duty to implement a timely litigation hold. Costa Mesa City filed its original complaint on March 28, 2019, but waited until February 26, 2020 to implement a litigation hold—nearly eleven months later. *See City of Costa Mesa et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45736-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 26, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Costa Mesa City's case would force the parties and the Court to waste time and resources ascertaining the extent of Costa Mesa City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Costa Mesa City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Costa Mesa City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Costa Mesa City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Costa Mesa City's proposed RICO claim against the PBMs has expired. Costa Mesa City filed its original complaint on March 28, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Costa Mesa et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45736-DAP, ECF No. 1-2. Even assuming *arguendo* that Costa Mesa City first learned of its injury on

the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 28, 2023. Costa Mesa City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Costa Mesa City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Costa Mesa City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1300. *City of Austin, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45739-DAP: Plaintiff Austin City, Indiana

Austin City's untimely motion for leave to amend should be denied for several reasons. Austin City failed to provide notice of its proposed amendments through a proposed complaint. Austin City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Austin City's motion should be denied due to futility, as Austin City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Austin City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Austin City amended its complaint on April 22, 2021, after transfer to the MDL on August 28, 2019. *See City of Austin, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45739-DAP, ECF No. 24. Unlike many other plaintiffs, Austin City declined to add claims against the PBMs in

its amended complaint. *See* Section II.A.1, above. Austin City's deadline to amend was in 2019. Austin City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Austin City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Austin City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Austin City). That insignificant dispensing volume is much too low to support a finding of good cause for Austin City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Austin City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Austin City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Austin City filed its original complaint on June 14, 2019. *See City of Austin, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45739-DAP, ECF No. 1-1. Despite filing its case years ago, Austin City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See*

ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Austin City's case would force the parties and the Court to waste time and resources ascertaining the extent of Austin City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Austin City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Austin City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Indiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Austin City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Indiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Austin City, a municipality in Indiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Austin City's proposed RICO claim against the PBMs has expired. Austin City filed its original complaint on June 14, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Austin, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45739-DAP, ECF No.

1-1. <u>Indeed, Austin City has previously used those same factual allegations to assert a RICO claim against *other* Defendants, but it declined to assert such a RICO claim against the PBMs.</u> *City of Austin, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45739-DAP, ECF No. 24<u>.</u> Even assuming *arguendo* that Austin City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 14, 2023. Austin City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Austin City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Austin City, a municipality in Indiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1301. *City of Madison, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45740-DAP: Plaintiff Madison City, Indiana

Madison City's untimely motion for leave to amend should be denied for several reasons. Madison City failed to provide notice of its proposed amendments through a proposed complaint. Madison City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Madison City's motion should be denied due to futility, as Madison City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Madison City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Madison City amended its complaint on June 18, 2019, after transfer to the MDL on August 19, 2019, as well as on April 22, 2021. *See City of Madison, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45740-DAP, ECF Nos. 1-1, 25. Unlike many other plaintiffs, Madison City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Madison City's deadline to amend was in 2019. Madison City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Madison City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Madison City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Madison City). That insignificant dispensing volume is much too low to support a finding of good cause for Madison City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Madison City filed its original complaint on June 14, 2019. *See City of Madison, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45740-DAP, ECF No. 1-2. Despite filing its case years ago, Madison City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain

violation of this Court's orders. ECF Nos. 232; 5455. Litigating Madison City's case would force the parties and the Court to waste time and resources ascertaining the extent of Madison City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Madison City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Madison City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Indiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Madison City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Indiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Madison City, a municipality in Indiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Madison City's proposed RICO claim against the PBMs has expired. Madison City filed its original complaint on June 14, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Madison, Indiana v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45740-DAP, ECF No. 1-2. Even assuming *arguendo* that Madison City first learned of its injury on the day it

filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 14, 2023. Madison City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Madison City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Madison City, a municipality in Indiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1302. *Passaic County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45741-DAP: Plaintiff Passaic County, New Jersey

Passaic County's untimely motion for leave to amend should be denied for several reasons. Passaic County failed to provide notice of its proposed amendments through a proposed complaint. Passaic County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Passaic County's motion should be denied due to futility, as Passaic County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Passaic County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Passaic County filed its original complaint on July 25, 2019 and the case was transferred to the MDL on August 29, 2019. *See Passaic County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45741-DAP, ECF No. 4. Passaic County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other

plaintiffs, Passaic County elected not to do so. Instead, Passaic County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Passaic County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Passaic County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Passaic County). That insignificant dispensing volume is much too low to support a finding of good cause for Passaic County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Passaic County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Passaic County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Passaic County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Passaic County of the PBM

services Express Scripts provides and Passaic County began receiving those services on April 5, 2006. *See id.* Inasmuch as Passaic County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Passaic County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Passaic County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Passaic County filed its original complaint on July 25, 2019. *See Passaic County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45741-DAP, ECF No. 1. Despite filing its case years ago, Passaic County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Passaic County's case would force the parties and the Court to waste time and resources ascertaining the extent of Passaic County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Passaic County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Passaic County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Passaic County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Passaic County, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Passaic County's proposed RICO claim against the PBMs has expired. Passaic County filed its original complaint on July 25, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Passaic County, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45741-DAP, ECF No. 1. It is therefore indisputable that Passaic County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Passaic County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Passaic County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Passaic County, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1303. *City of Fairfield, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45742-DAP: Plaintiff Fairfield City, Ohio

Fairfield City's untimely motion for leave to amend should be denied for several reasons. Fairfield City failed to provide notice of its proposed amendments through a proposed complaint. Fairfield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fairfield City's motion should be denied due to futility, as Fairfield City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fairfield City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fairfield City amended its complaint on November 25, 2019, after transfer to the MDL on August 29, 2019. *See City of Fairfield, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45742-DAP, ECF No. 21. Unlike many other plaintiffs, Fairfield City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Fairfield City's deadline to amend was in 2019. Fairfield City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Fairfield City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information

[she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Fairfield City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Fairfield City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Fairfield City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fairfield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Fairfield City). That insignificant dispensing volume is much too low to support a finding of good cause for Fairfield City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fairfield City filed its original complaint on July 22, 2019, but waited until December 13, 2019 to implement a litigation hold. *See City of Fairfield, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45742-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 13, 2019). Fairfield City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Fairfield City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Fairfield City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Fairfield City of this deficiency on September 16, 2024 (*see* Exhibit B), but Fairfield City refused to amend or supplement its Fact Sheet. Under this Court's orders, Fairfield City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Fairfield City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Fairfield City's potential claims against them. Fairfield City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fairfield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fairfield City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Fairfield City is a plaintiff in Ohio. Fairfield City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Fairfield City's proposed RICO claim against the PBMs has expired. Fairfield City filed its original complaint on July 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Fairfield, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45742-DAP, ECF No. 1. It is therefore indisputable that Fairfield City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Fairfield City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Fairfield City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fairfield City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1304. *City of Argo, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45744-DAP: Plaintiff Argo Town, Alabama

Argo Town's untimely motion for leave to amend should be denied for several reasons. Argo Town failed to provide notice of its proposed amendments through a proposed complaint. Argo Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Argo Town's motion should be denied due to futility, as Argo Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Argo Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Argo Town filed its original complaint on August 8, 2019 and the case was transferred to the MDL on August 29, 2019. *See City of Argo, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45744-DAP, ECF No. 10. Argo Town could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Argo Town elected not to do so. Instead, Argo Town waited five years after its deadline to amend to

seek leave to assert claims against the PBMs. Argo Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Argo Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Argo Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Argo Town filed its original complaint on August 8, 2019. *See City of Argo, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45744-DAP, ECF No. 1. Despite filing its case years ago, Argo Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Argo Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Argo Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Argo Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Argo Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Argo Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Argo Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Argo Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Argo Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Argo Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Argo Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Argo Town's potential claims against them. Argo Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Argo Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Argo Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Argo Town's proposed RICO claim against the PBMs has expired. Argo Town filed its original complaint on August 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Argo, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45744-DAP, ECF No. 1. It is therefore indisputable that Argo Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Argo Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Argo Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Argo Town's public-nuisance claim against the PBMs is therefore time-barred because Argo Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on August 8, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Argo Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1305.** *Covington County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45751-DAP: Plaintiff Covington County, Alabama

Covington County's untimely motion for leave to amend should be denied for several reasons. Covington County failed to provide notice of its proposed amendments through a proposed complaint. Covington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Covington County's motion should be denied due to futility, as Covington County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Covington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Covington County filed its original complaint on July 31, 2019 and the case was transferred to the MDL on August 29, 2019. *See Covington County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45751-DAP, ECF No. 25. Covington County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Covington County elected not to do so. Instead, Covington County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Covington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Covington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Covington County). That insignificant dispensing volume is much too low to support a finding of good cause for Covington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Covington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Covington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Covington County filed its original complaint on July 31, 2019. *See Covington County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45751-DAP, ECF No. 1. Despite filing its case years ago, Covington County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Covington County's case would force the parties and the Court to waste time and resources ascertaining the extent of Covington County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The

PBMs are prejudiced by Covington County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Covington County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Covington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Covington County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Covington County's proposed RICO claim against the PBMs has expired. Covington County filed its original complaint on July 31, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Covington County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45751-DAP, ECF No. 1. It is therefore indisputable that Covington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Covington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the

injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Covington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Covington County's public-nuisance claim against the PBMs is therefore time-barred because Covington County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on July 31, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Covington County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Covington County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1306. *Bingham County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45758-DAP: Plaintiff Bingham County, Idaho

Bingham County's untimely motion for leave to amend should be denied for several reasons. Bingham County failed to provide notice of its proposed amendments through a proposed complaint. Bingham County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Bingham County's motion should be denied due to futility, as Bingham County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bingham County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bingham County filed its original complaint on July 26, 2019 and the case was transferred to the MDL on August 30, 2019. *See Bingham County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45758-DAP, ECF No. 4. Bingham County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Bingham County elected not to do so. Instead, Bingham County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bingham County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bingham County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Bingham County). That insignificant dispensing volume is much too low to support a finding of good cause for Bingham County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bingham County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bingham County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bingham County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bingham County, a municipality in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bingham County's proposed RICO claim against the PBMs has expired. Bingham County filed its original complaint on July 26, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bingham County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45758-DAP, ECF No. 1. It is therefore indisputable that Bingham County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Bingham

County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bingham County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bingham County, a municipality in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1307. *Bertie County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45759-DAP: Plaintiff Bertie County, North Carolina

Bertie County's untimely motion for leave to amend should be denied for several reasons. Bertie County failed to provide notice of its proposed amendments through a proposed complaint. Bertie County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bertie County's motion should be denied due to futility, as Bertie County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bertie County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bertie County amended its complaint on November 19, 2019, after transfer to the MDL on August 30, 2019. *See Bertie County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45759-DAP, ECF No. 5. Unlike many other plaintiffs, Bertie County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bertie County's deadline

to amend was in 2019. Bertie County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Bertie County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bertie County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bertie County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bertie County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bertie County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Bertie County). That insignificant dispensing volume is much too

low to support a finding of good cause for Bertie County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bertie County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bertie County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Bertie County filed its original complaint on August 3, 2019, but waited until January 9, 2020 to implement a litigation hold. *See Bertie County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45759-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 9, 2020). Bertie County's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bertie County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bertie County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bertie County's proposed RICO claim against the PBMs has expired. Bertie County filed its original complaint on August 3, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bertie County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45759-DAP, ECF No. 1. It is therefore indisputable that Bertie County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Bertie County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bertie County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bertie County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

4824

**1308.** *LaMoure County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45760-DAP: Plaintiff La Moure County, North Dakota

La Moure County's untimely motion for leave to amend should be denied for several reasons. La Moure County failed to provide notice of its proposed amendments through a proposed complaint. La Moure County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, La Moure County's motion should be denied due to futility, as La Moure County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** La Moure County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, La Moure County filed its original complaint on August 13, 2019 and the case was transferred to the MDL on August 30, 2019. *See LaMoure County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45760-DAP, ECF No. 4. La Moure County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, La Moure County elected not to do so. Instead, La Moure County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. La Moure County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to La Moure County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, La Moure County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** La Moure County filed its original complaint on August 13, 2019. *See LaMoure County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45760-DAP, ECF No. 1. Despite filing its case years ago, La Moure County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating La Moure County's case would force the parties and the Court to waste time and resources ascertaining the extent of La Moure County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by La Moure County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and La Moure County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, La Moure County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to La Moure County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified La Moure County of this deficiency on September 16, 2024 (*see* Exhibit

B), but La Moure County refused to amend or supplement its Fact Sheet. Under this Court's orders, La Moure County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. La Moure County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against La Moure County's potential claims against them. La Moure County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under North Dakota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But La Moure County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Dakota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** La Moure County, a municipality in North Dakota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for La Moure County's proposed RICO claim against the PBMs has expired. La Moure County filed its original complaint on

August 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See LaMoure County v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45760-DAP, ECF No. 1. It is therefore indisputable that La Moure County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. La Moure County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. La Moure County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** La Moure County, a municipality in North Dakota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1309. *Fairfax County Board Of Supervisors v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45766-DAP: Plaintiff Fairfax County, Virginia

Fairfax County's untimely motion for leave to amend should be denied for several reasons. Fairfax County failed to provide notice of its proposed amendments through a proposed complaint. Fairfax County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fairfax County's motion should be denied due to futility, as Fairfax County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fairfax County previously alleged claims against some of the PBMs in its original complaint on April 30, 2019. *See Fairfax County Board Of Supervisors v. Purdue*

*Pharma, L.P. et al.*, Case No. 1:19-op-45766-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Fairfax County also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 32 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Fairfax County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Fairfax County's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Fairfax County's complaint, Fairfax County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Fairfax County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fairfax County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Fairfax County). That insignificant dispensing volume is much too low to support a finding of good cause for Fairfax County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Fairfax County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Fairfax County of the PBM services Express Scripts provides and Fairfax County began receiving those services on November 7, 2013. *See id.* Inasmuch as Fairfax County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Fairfax County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Fairfax County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Fairfax County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Fairfax County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Fairfax County of this deficiency on September 16, 2024 (*see* Exhibit B), but Fairfax County refused to amend or supplement its Fact Sheet. Under this Court's orders, Fairfax County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Fairfax County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Fairfax County's potential claims against them. Fairfax County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to

dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fairfax County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fairfax County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fairfax County's proposed RICO claim against the PBMs has expired. Fairfax County filed its original complaint on April 30, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Fairfax County Board Of Supervisors v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45766-DAP, ECF No. 1-1. Even assuming *arguendo* that Fairfax County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 30, 2023. Fairfax County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fairfax County's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fairfax County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1310. *City Of San Jose v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45768-DAP: Plaintiff San Jose City, California

San Jose City's untimely motion for leave to amend should be denied for several reasons. San Jose City failed to provide notice of its proposed amendments through a proposed complaint. San Jose City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, San Jose City's motion should be denied due to futility, as San Jose City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** San Jose City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, San Jose City amended its complaint on November 25, 2019, after transfer to the MDL on September 3, 2019. *See City Of San Jose v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45768-DAP, ECF No. 8. Unlike many other plaintiffs, San Jose City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. San Jose City's deadline to amend was in 2019. San Jose City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. San Jose City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information

[she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** San Jose City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. San Jose City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. San Jose City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to San Jose City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for San Jose City). That insignificant dispensing volume is much too low to support a finding of good cause for San Jose City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**<u>Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.</u>** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to San Jose City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for San Jose City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** San Jose City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified San Jose City of the PBM services Express Scripts provides and San Jose City began receiving those services on April 16, 2010. *See id.* Inasmuch as San Jose City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), San Jose City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. San Jose City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** San Jose City filed its original complaint on August 2, 2019, but waited until January 24, 2020 to implement a litigation hold. *See City Of San Jose v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45768-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 24, 2020). San Jose City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because

the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** San Jose City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** San Jose City seeks leave to amend to add claims against the PBMs in two cases: *City of San Jose v. Amerisourcebergen Drug Corp., et al.*, No. 1:19-op-45768-DAP; and *City of San Jose, California, et al. v. Sackler, et al.*, No. 1:19-op-45964-DAP. San Jose City's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for San Jose City's proposed RICO claim against the PBMs has expired. San Jose City filed its original complaint on August 2, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City Of San Jose v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45768-DAP, ECF No. 1. It is therefore indisputable that San Jose City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. San Jose City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF

No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Jose City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Jose City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1311. *Oxford, Alabama, City of v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45774-DAP: Plaintiff Oxford City, Alabama

Oxford City's untimely motion for leave to amend should be denied for several reasons. Oxford City failed to provide notice of its proposed amendments through a proposed complaint. Oxford City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oxford City's motion should be denied due to futility, as Oxford City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oxford City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oxford City filed its original complaint on August 27, 2019 and the case was transferred to the MDL on September 18, 2019. *See Oxford, Alabama, City of v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45774-DAP, ECF No. 12. Oxford City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other

plaintiffs, Oxford City elected not to do so. Instead, Oxford City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Oxford City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oxford City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Oxford City). That insignificant dispensing volume is much too low to support a finding of good cause for Oxford City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Oxford City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Oxford City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Oxford City filed its original complaint on August 27, 2019. *See Oxford, Alabama, City of v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45774-DAP, ECF No. 1. Despite filing its case years ago, Oxford City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1

(Date Litigation Hold Implemented: Never). Litigating Oxford City's case would force the parties and the Court to waste time and resources ascertaining the extent of Oxford City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Oxford City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Oxford City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oxford City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Oxford City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oxford City's proposed RICO claim against the PBMs has expired. Oxford City filed its original complaint on August 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Oxford, Alabama, City of v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45774-DAP, ECF No. 1. It is therefore indisputable that Oxford City knew of its RICO injury, at the very latest, the day it filed

a complaint asserting a RICO claim, five years before seeking leave to amend. Oxford City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oxford City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Oxford City's public-nuisance claim against the PBMs is therefore time-barred because Oxford City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on August 27, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Oxford City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1312.  *Ada County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45775-DAP: Plaintiff Ada County, Idaho

Ada County's untimely motion for leave to amend should be denied for several reasons. Ada County failed to provide notice of its proposed amendments through a proposed complaint. Ada County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Ada County's motion should

be denied due to futility, as Ada County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ada County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ada County amended its complaint on October 8, 2019, after transfer to the MDL on September 6, 2019, as well as on December 22, 2020. *See Ada County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45775-DAP, ECF Nos. 6, 11. Unlike many other plaintiffs, Ada County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Ada County's deadline to amend was in 2019. Ada County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ada County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ada County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Ada County). That insignificant dispensing volume is much too low to support a finding of good cause for Ada County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ada County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ada County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Idaho law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ada County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Idaho law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ada County, a municipality in Idaho, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ada County's proposed RICO claim against the PBMs has expired. Ada County filed its original complaint on June 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Ada County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45775-DAP, ECF No. 1. It is therefore indisputable that Ada County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Ada County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other

elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ada County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ada County, a municipality in Idaho, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1313. *Locust Fork, Town of v. Purdue Pharma LP et al.*, Case No. 1:19-op-45777-DAP: Plaintiff Locust Fork Town, Alabama

Locust Fork Town's untimely motion for leave to amend should be denied for several reasons. Locust Fork Town failed to provide notice of its proposed amendments through a proposed complaint. Locust Fork Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Locust Fork Town's motion should be denied due to futility, as Locust Fork Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Locust Fork Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Locust Fork Town filed its original complaint on August 12, 2019 and the case was transferred to the MDL on September 6, 2019. *See Locust Fork, Town of v. Purdue Pharma LP et al.*, Case No. 1:19-op-45777-DAP, ECF No. 16. Locust Fork Town could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Locust Fork Town elected not to do so. Instead, Locust Fork Town

waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Locust Fork Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Locust Fork Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See Gustafson Decl..* Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Locust Fork Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Locust Fork Town's geographic jurisdiction during 2009 to 2019. *See DeCarlo Decl.*, Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Locust Fork Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Locust Fork Town filed its original complaint on August 12, 2019. *See Locust Fork, Town of v. Purdue Pharma LP et al.*, Case No. 1:19-op-45777-DAP, ECF No. 1. Despite filing its case years ago, Locust Fork Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Locust Fork Town's case would force the

parties and the Court to waste time and resources ascertaining the extent of Locust Fork Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Locust Fork Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Locust Fork Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Locust Fork Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Locust Fork Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Locust Fork Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Locust Fork Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Locust Fork Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Locust Fork Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Locust Fork Town's potential claims against them. Locust Fork Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Locust Fork Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Locust Fork Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Locust Fork Town's proposed RICO claim against the PBMs has expired. Locust Fork Town filed its original complaint on August 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Locust Fork, Town of v. Purdue Pharma LP et al.*, Case No. 1:19-op-45777-DAP, ECF No. 1. It is therefore indisputable that Locust Fork Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Locust Fork Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Locust Fork Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Locust Fork Town's public-nuisance claim against the PBMs is therefore time-barred because Locust Fork Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on August 12, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Locust Fork Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1314. *City of Daleville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45778-DAP: Plaintiff Daleville City, Alabama

Daleville City's untimely motion for leave to amend should be denied for several reasons. Daleville City failed to provide notice of its proposed amendments through a proposed complaint. Daleville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Daleville City's motion should be denied due to futility, as Daleville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Daleville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Daleville City filed its original complaint on August 7, 2019 and the case was transferred to the MDL on September 6, 2019. *See City of Daleville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45778-DAP, ECF No. 24. Daleville City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Daleville City elected not to do so. Instead, Daleville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Daleville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Daleville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Daleville City). That insignificant dispensing volume is much too low to support a finding of good cause for Daleville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Daleville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Daleville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Daleville City filed its original complaint on August 7, 2019. *See City of Daleville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45778-DAP, ECF No. 1. Despite filing its case years ago, Daleville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Daleville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Daleville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Daleville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Daleville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Daleville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Daleville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Daleville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Daleville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Daleville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Daleville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Daleville

City's potential claims against them. Daleville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Daleville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Daleville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Daleville City's proposed RICO claim against the PBMs has expired. Daleville City filed its original complaint on August 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Daleville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45778-DAP, ECF No. 1. It is therefore indisputable that Daleville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Daleville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury,

not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Daleville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Daleville City's public-nuisance claim against the PBMs is therefore time-barred because Daleville City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on August 7, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Daleville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1315. *City of Dadeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45779-DAP: Plaintiff Dadeville City, Alabama

Dadeville City's untimely motion for leave to amend should be denied for several reasons. Dadeville City failed to provide notice of its proposed amendments through a proposed complaint. Dadeville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Dadeville City's motion should be denied due to futility, as Dadeville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dadeville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dadeville City filed its original complaint on August 7, 2019 and the case was transferred to the MDL on September 6, 2019. *See City of Dadeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45779-DAP, ECF No. 24. Dadeville City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Dadeville City elected not to do so. Instead, Dadeville City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Dadeville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dadeville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Dadeville City). That insignificant dispensing volume is much too low to support a finding of good cause for Dadeville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dadeville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dadeville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dadeville City filed its original complaint on August 7, 2019. *See City of Dadeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45779-DAP, ECF No. 1. Despite filing its case years ago, Dadeville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Dadeville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Dadeville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dadeville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dadeville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dadeville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dadeville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dadeville City's proposed RICO claim against the PBMs has expired. Dadeville City filed its original complaint on August 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Dadeville, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45779-DAP, ECF No. 1. It is therefore indisputable that Dadeville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Dadeville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dadeville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Dadeville City's public-nuisance claim against the PBMs is therefore time-barred because Dadeville City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on August 7, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Dadeville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1316. *Triad Health Systems, Inc. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45780-DAP: Plaintiff Triad Health Systems, Inc., Kentucky

Triad Health Systems, Inc.'s untimely motion for leave to amend should be denied for several reasons. Triad Health Systems, Inc. failed to provide notice of its proposed amendments through a proposed complaint. Triad Health Systems, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold and because its untimely motion would unduly prejudice the PBMs. Moreover, Triad Health Systems, Inc.'s motion should be denied due to futility, as Triad Health Systems, Inc. does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Triad Health Systems, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Triad Health Systems, Inc. filed its original complaint directly into the MDL on September 6, 2019. *See Triad Health Systems, Inc. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45780-DAP, ECF No. 1. Triad Health Systems, Inc. could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Triad Health Systems, Inc. elected not to do so. Triad Health Systems, Inc. waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Triad Health

Systems, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Triad Health Systems, Inc. filed its original complaint on September 6, 2019. *See Triad Health Systems, Inc. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45780-DAP, ECF No. 1. Despite filing its case years ago, Triad Health Systems, Inc. *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. See ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Triad Health Systems, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of Triad Health Systems, Inc.'s document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Triad Health Systems, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Triad Health Systems, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Triad Health Systems, Inc.'s delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Triad Health Systems, Inc., a hospital in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Triad Health Systems, Inc.'s proposed RICO claim against the PBMs has expired. Triad Health Systems, Inc. filed its original complaint on September 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Triad Health Systems, Inc. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45780-DAP, ECF No. 1. It is therefore indisputable that Triad Health Systems, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Triad Health Systems, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Triad Health Systems, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Triad Health Systems, Inc., a hospital in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1317.** *City of Orange Beach, Alabama v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-45784-DAP: Plaintiff Orange Beach City, Alabama**

Orange Beach City's untimely motion for leave to amend should be denied for several reasons. Orange Beach City failed to provide notice of its proposed amendments through a proposed complaint. Orange Beach City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Orange Beach City's motion should be denied due to futility, as Orange Beach City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Orange Beach City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Orange Beach City amended its complaint on October 28, 2019, after directly filing in the MDL. *See City of Orange Beach, Alabama v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45784-DAP, ECF No. 5. Unlike many other plaintiffs, Orange Beach City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Orange Beach City's deadline to amend was in 2019. Orange Beach City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Orange Beach City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Orange Beach City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Orange Beach City). That insignificant dispensing volume is much too low to support a finding of good cause for Orange Beach City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Orange Beach City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Orange Beach City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Orange Beach City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Orange Beach City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Orange Beach City's proposed RICO claim against the PBMs has expired. Orange Beach City filed its original complaint on September 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Orange Beach, Alabama v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45784-DAP, ECF No. 1. It is therefore indisputable that Orange Beach City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Orange Beach City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Orange Beach City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Orange Beach City's public-nuisance claim against the PBMs is therefore time-barred because Orange Beach City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on September 10, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Orange Beach City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1318.  *City of Warfield, KY v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45787-DAP: Plaintiff Warfield City, Kentucky

Warfield City's untimely motion for leave to amend should be denied for several reasons. Warfield City failed to provide notice of its proposed amendments through a proposed complaint. Warfield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Warfield City's motion should be denied due to futility, as Warfield City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Warfield City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Warfield City filed its original complaint directly into the MDL on September 13, 2019. *See City of Warfield, KY v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45787-DAP, ECF No. 1. Warfield City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Warfield City elected not to do so. Warfield City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Warfield City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Warfield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Warfield City). That insignificant dispensing volume is much too low to support a finding of good cause for Warfield City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Warfield City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Warfield City filed its original complaint on September 13, 2019. *See City of Warfield, KY v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45787-DAP, ECF No. 1. Despite filing its case years ago, Warfield City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Warfield City's case would force the parties and the Court to waste time and resources ascertaining the extent of Warfield City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Warfield City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Warfield City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Warfield City has *never* served a Plaintiff Fact Sheet. Warfield City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Warfield City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Warfield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Warfield City, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Warfield City's proposed RICO claim against the PBMs has expired. Warfield City filed its original complaint on September 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Warfield, KY v. AmerisourceBergen Corporation et al.*, Case No. 1:19-op-45787-DAP, ECF No. 1. It is therefore indisputable that Warfield City knew of its RICO injury, at the very

latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Warfield City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Warfield City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Warfield City, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1319. *Chariton County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45790-DAP: Plaintiff Chariton County, Missouri

Chariton County's untimely motion for leave to amend should be denied for several reasons. Chariton County failed to provide notice of its proposed amendments through a proposed complaint. Chariton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Chariton County's motion should be denied due to futility, as Chariton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chariton County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chariton County amended its complaint on December 11, 2019, after directly filing in the MDL. *See Chariton County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45790-DAP, ECF No. 2. Unlike many other plaintiffs, Chariton County declined to add claims against the PBMs in

its amended complaint. *See* Section II.A.1, above. Chariton County's deadline to amend was in 2019. Chariton County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Chariton County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Chariton County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Chariton County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Chariton County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**<u>OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.</u>** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chariton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.01% market share for Chariton County). That insignificant dispensing volume is much too low to support a finding of good cause for Chariton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chariton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chariton County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chariton County's proposed RICO claim against the PBMs has expired. Chariton County filed its original complaint on September 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Chariton County, Missouri v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45790-DAP, ECF No. 1. It is therefore indisputable that Chariton County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Chariton County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chariton County's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chariton County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1320.** ***Town of Bennington, Vermont v. Mallinckrodt PLC, et al.*, Case No. 1:19-op-45791-DAP: Plaintiff Sharon Town, Vermont**

Sharon Town's untimely motion for leave to amend should be denied for several reasons. Sharon Town failed to provide notice of its proposed amendments through a proposed complaint. Sharon Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sharon Town's motion should be denied due to futility, as Sharon Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sharon Town previously alleged claims against some of the PBMs in its complaint on December 16, 2019. *See Town of Bennington, Vermont v. Mallinckrodt PLC, et al.*, Case No. 1:19-op-45791-DAP, ECF No. 1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; Express Scripts, Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Sharon Town could have amended its complaint, without leave, to add claims against other PBM-related entities in 2019. And while Sharon Town in 2023 secured leave from this Court to move to amend its complaint to add allegations against the PBMs, it failed to take advantage of that leave by ever actually filing a complaint. *See* Jan. 25, 2023 Order, *Town of Bennington, Vermont v. Mallinckrodt*

*PLC, et al.*, Case No. 1:19-op-45791-DAP. Now, Sharon Town again seeks to add other PBM-related entities as defendants but offers no good cause for its failure to add them before. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Sharon Town's complaint, Sharon Town already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2019. *See* Section II.A, above. Sharon Town was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Sharon Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Sharon Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Sharon Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Sharon Town violated its basic duty to implement a timely litigation hold. Sharon Town filed its original complaint on September 17, 2019, but waited until August 12, 2024 to implement a litigation hold—nearly five years later. *See Town of Bennington, Vermont v. Mallinckrodt PLC, et al.*, Case No. 1:19-op-45791-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 12, 2024). This is a

plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sharon Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Sharon Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sharon Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sharon Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sharon Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sharon Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sharon Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Sharon Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Sharon Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sharon Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sharon Town's potential claims against them. Sharon Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Sharon Town, a municipality in Vermont, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sharon Town's proposed RICO claim against the PBMs has expired. Sharon Town filed a complaint on September 17, 2019, alleging a RICO claim against Express Scripts Holding Company; Express Scripts, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; UnitedHealth Group Incorporated, Optum, Inc.; and OptumRx, Inc. *See Town of Bennington, Vermont v. Mallinckrodt PLC, et al.*, 1:19-op-45791-DAP, ECF No. 1. It is therefore indisputable that Sharon Town knew of its injury *and* the factual basis for its alleged RICO claim against the PBMs, at the very latest, the day it filed that complaint, almost five years before seeking leave to amend. Sharon Town's proposed amended RICO claim against the additional PBMs it did not previously name is therefore time-barred. ECF No. 2568 at 13 (RICO limitations period is triggered by "discovery of the injury, not discovery of the other elements of a claim") (quoting *Rotella*, 528 U.S. at 555); *see* Section III.B.4, above. Sharon Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sharon Town, a municipality in Vermont, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1321.** ***Laborers Local 235 Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45792-DAP: Plaintiff Laborers Local 235 Welfare Fund, New York**

Laborers Local 235 Welfare Fund's untimely motion for leave to amend should be denied for several reasons. Laborers Local 235 Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. Laborers Local 235 Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Laborers Local 235 Welfare Fund's motion should be denied due to futility, as Laborers Local 235 Welfare Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Laborers Local 235 Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Laborers Local 235 Welfare Fund filed its original complaint on August 28, 2019 and the case was transferred to the MDL on September 18, 2019. *See Laborers Local 235 Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45792-DAP, ECF No. 8. Laborers Local 235 Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Laborers Local 235 Welfare Fund elected not to do so. Instead, Laborers Local 235 Welfare Fund waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Laborers Local 235 Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Laborers Local 235 Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Laborers Local 235 Welfare Fund of the PBM services Express Scripts provides and Laborers Local 235 Welfare Fund began receiving those services on January 3, 2011. *See id.* Inasmuch as Laborers Local 235 Welfare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Laborers Local 235 Welfare Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Laborers Local 235 Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Laborers Local 235 Welfare Fund has *never* served a Plaintiff Fact Sheet. Laborers Local 235 Welfare Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Laborers Local 235 Welfare Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Laborers Local 235 Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Laborers Local 235 Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Laborers Local 235 Welfare Fund's proposed RICO claim against the PBMs has expired. Laborers Local 235 Welfare Fund filed its original complaint on August 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Laborers Local 235 Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45792-DAP, ECF No. 1. It is therefore indisputable that Laborers Local 235 Welfare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Laborers Local 235 Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Laborers Local 235 Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Laborers Local 235 Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Laborers Local 235 Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1322. *Painting Industry Insurance Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45793-DAP: Plaintiff Painting Industry Insurance Fund, New York

Painting Industry Insurance Fund's untimely motion for leave to amend should be denied for several reasons. Painting Industry Insurance Fund failed to provide notice of its proposed amendments through a proposed complaint. Painting Industry Insurance Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Painting Industry Insurance Fund's motion should be denied due to futility, as Painting Industry Insurance Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Painting Industry Insurance Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Painting Industry Insurance Fund filed its original complaint on August 29, 2019 and the case was transferred to the MDL on September 19, 2019. *See Painting Industry Insurance Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45793-DAP, ECF No. 7. Painting Industry Insurance Fund could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Painting Industry Insurance Fund elected not to do so. Instead, Painting Industry Insurance Fund waited five years

after its deadline to amend to seek leave to assert claims against the PBMs. Painting Industry Insurance Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Painting Industry Insurance Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Painting Industry Insurance Fund of the PBM services Express Scripts provides and Painting Industry Insurance Fund began receiving those services on April 1, 2014. *See id.* Inasmuch as Painting Industry Insurance Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Painting Industry Insurance Fund knew or should have known of the alleged wrongful conduct ten years before moving to amend. *See* Section III.A.3, above. Painting Industry Insurance Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Painting Industry Insurance Fund has *never* served a Plaintiff Fact Sheet. Painting Industry Insurance Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Painting Industry Insurance Fund's

failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Painting Industry Insurance Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Painting Industry Insurance Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Painting Industry Insurance Fund's proposed RICO claim against the PBMs has expired. Painting Industry Insurance Fund filed its original complaint on August 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Painting Industry Insurance Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45793-DAP, ECF No. 1. It is therefore indisputable that Painting Industry Insurance Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, nearly five years before seeking leave to amend. Painting Industry Insurance Fund's RICO claim is therefore time-barred by RICO's four-year limitations period.

ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Painting Industry Insurance Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Painting Industry Insurance Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Painting Industry Insurance Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1323. *CWA Local 1182 & 1183 Health & Welfare Funds v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45794-DAP: Plaintiff CWA Local 1182 Health & Welfare Fund, New York

CWA Local 1182 Health & Welfare Fund's untimely motion for leave to amend should be denied for several reasons. CWA Local 1182 Health & Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. CWA Local 1182 Health & Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, CWA Local 1182 Health & Welfare Fund's motion should be denied due to futility, as CWA Local 1182 Health & Welfare Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** CWA Local 1182 Health & Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, CWA Local 1182 Health & Welfare Fund filed its original

complaint on August 27, 2019 and the case was transferred to the MDL on September 20, 2019. *See CWA Local 1182 & 1183 Health & Welfare Funds v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45794-DAP, ECF No. 7. CWA Local 1182 Health & Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, CWA Local 1182 Health & Welfare Fund elected not to do so. Instead, CWA Local 1182 Health & Welfare Fund waited five years after its deadline to amend to seek leave to assert claims against the PBMs. CWA Local 1182 Health & Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** CWA Local 1182 Health & Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified CWA Local 1182 Health & Welfare Fund of the PBM services Express Scripts provides and CWA Local 1182 Health & Welfare Fund began receiving those services on March 1, 2008. *See id.* Inasmuch as CWA Local 1182 Health & Welfare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), CWA Local 1182 Health & Welfare Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. CWA Local 1182 Health & Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying

motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, CWA Local 1182 Health & Welfare Fund has *never* served a Plaintiff Fact Sheet. CWA Local 1182 Health & Welfare Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. CWA Local 1182 Health & Welfare Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But CWA Local 1182 Health & Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** CWA Local 1182 Health & Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for CWA Local 1182 Health & Welfare Fund's proposed RICO claim against the PBMs has expired. CWA Local 1182 Health &

Welfare Fund filed its original complaint on August 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See CWA Local 1182 & 1183 Health & Welfare Funds v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45794-DAP, ECF No. 1. It is therefore indisputable that CWA Local 1182 Health & Welfare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, nearly five years before seeking leave to amend. CWA Local 1182 Health & Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. CWA Local 1182 Health & Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** CWA Local 1182 Health & Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. CWA Local 1182 Health & Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1324. *CWA Local 1182 & 1183 Health & Welfare Funds v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45794-DAP: Plaintiff CWA Local 1183 Health & Welfare Fund, New York**

CWA Local 1183 Health & Welfare Fund's untimely motion for leave to amend should be denied for several reasons. CWA Local 1183 Health & Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. CWA Local 1183 Health & Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a

plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, CWA Local 1183 Health & Welfare Fund's motion should be denied due to futility, as CWA Local 1183 Health & Welfare Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** CWA Local 1183 Health & Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, CWA Local 1183 Health & Welfare Fund filed its original complaint on August 27, 2019 and the case was transferred to the MDL on September 20, 2019. *See CWA Local 1182 & 1183 Health & Welfare Funds v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45794-DAP, ECF No. 7. CWA Local 1183 Health & Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, CWA Local 1183 Health & Welfare Fund elected not to do so. Instead, CWA Local 1183 Health & Welfare Fund waited five years after its deadline to amend to seek leave to assert claims against the PBMs. CWA Local 1183 Health & Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** CWA Local 1183 Health & Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified CWA Local 1183 Health & Welfare Fund of the PBM services Express Scripts provides and CWA

Local 1183 Health & Welfare Fund began receiving those services on March 1, 2008. *See id.* Inasmuch as CWA Local 1183 Health & Welfare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), CWA Local 1183 Health & Welfare Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. CWA Local 1183 Health & Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, CWA Local 1183 Health & Welfare Fund has *never* served a Plaintiff Fact Sheet. CWA Local 1183 Health & Welfare Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. CWA Local 1183 Health & Welfare Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But CWA Local 1183 Health & Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time.

That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** CWA Local 1183 Health & Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for CWA Local 1183 Health & Welfare Fund's proposed RICO claim against the PBMs has expired. CWA Local 1183 Health & Welfare Fund filed its original complaint on August 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See CWA Local 1182 & 1183 Health & Welfare Funds v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45794-DAP, ECF No. 1. It is therefore indisputable that CWA Local 1183 Health & Welfare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, nearly five years before seeking leave to amend. CWA Local 1183 Health & Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. CWA Local 1183 Health & Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** CWA Local 1183 Health & Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. CWA Local

1183 Health & Welfare Fund's request for leave to amend its complaint to add a claim under NY

SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3

(affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1325.** ***Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund v. Purdue Pharma L.P. et al.***, **Case No. 1:19-op-45795-DAP: Plaintiff Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund, New York**

Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's untimely

motion for leave to amend should be denied for several reasons. Westchester Heavy Construction

Laborers Local 60 Health & Welfare Fund failed to provide notice of its proposed amendments

through a proposed complaint. Westchester Heavy Construction Laborers Local 60 Health &

Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's motion

should be denied due to futility, as Westchester Heavy Construction Laborers Local 60 Health &

Welfare Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO

claim is barred by the statute of limitations.

**Lack of Diligence.** Westchester Heavy Construction Laborers Local 60 Health & Welfare

Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence

by moving to amend earlier. *See* Section II.A, above. Moreover, Westchester Heavy Construction

Laborers Local 60 Health & Welfare Fund filed its original complaint on August 29, 2019 and the

case was transferred to the MDL on September 20, 2019. *See Westchester Heavy Construction

Laborers Local 60 Health & Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45795-

DAP, ECF No. 7. Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund

could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See*

Section II.A.1, above. Unlike many other plaintiffs, Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund elected not to do so. Instead, Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund of the PBM services Express Scripts provides and Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund began receiving those services on October 2, 2014. *See id.* Inasmuch as Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund knew or should have known of the alleged wrongful conduct ten years before moving to amend. *See* Section III.A.3, above. Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879

(denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund has *never* served a Plaintiff Fact Sheet. Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's proposed RICO claim against the PBMs has expired. Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund filed its original complaint on August 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45795-DAP, ECF No. 1. It is therefore indisputable that Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Westchester Heavy Construction Laborers Local 60 Health & Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1326.** *Orange County, Florida v. Pudue Pharma L.P., et al.*, Case No. 1:19-op-45797-DAP: Plaintiff Orange County, Florida

Orange County's untimely motion for leave to amend should be denied for several reasons. Orange County failed to provide notice of its proposed amendments through a proposed complaint. Orange County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Orange County's motion should be denied due to futility, as Orange County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Orange County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Orange County filed its original complaint on August 29, 2019, and the case was transferred to the MDL on September 20, 2019. *See Orange County, Florida v. Pudue Pharma L.P., et al.*, Case No. 1:19-op-45797-DAP, ECF No. 8. Orange County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Orange County elected not to do so. Instead, Orange County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Orange County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Orange County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Orange County). That insignificant dispensing volume is much too low to support a finding of good cause for Orange County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Orange County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Orange County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Orange County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Orange County of the PBM services Express Scripts provides and Orange County began receiving those services on January 1, 2009. *See id.* Inasmuch as Orange County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Orange County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Orange County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's

deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Orange County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Orange County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Orange County of this deficiency on September 16, 2024 (*see* Exhibit B), but Orange County refused to amend or supplement its Fact Sheet. Under this Court's orders, Orange County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Orange County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Orange County's potential claims against them. Orange County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Orange County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Orange County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Orange County's proposed RICO claim against the PBMs has expired. Orange County filed its original complaint on August 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Orange County, Florida v. Pudue Pharma L.P., et al.*, Case No. 1:19-op-45797-DAP, ECF No. 1. It is therefore indisputable that Orange County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Orange County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Orange County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Orange County's public-nuisance claim against the PBMs is therefore time-barred because Orange County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on August 29, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Orange County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1327.** *City of Covington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45799-DAP: Plaintiff Covington City, Virginia

Covington City's untimely motion for leave to amend should be denied for several reasons. Covington City failed to provide notice of its proposed amendments through a proposed complaint. Covington City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Covington City's motion should be denied due to futility, as Covington City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Covington City previously alleged claims against some of the PBMs in its original complaint on May 10, 2019. *See City of Covington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45799-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Covington City also amended its complaint on October 29, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 25 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Covington City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Covington City's deadline to amend was in 2019, but it waited five years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the

entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Covington City's complaint, Covington City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Covington City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Covington City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.34% market share for Covington City). That insignificant dispensing volume is much too low to support a finding of good cause for Covington City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Covington City violated its basic duty to implement a timely litigation hold. Covington City filed its original complaint on May 9, 2019, but waited until July 8, 2024 to implement a litigation hold—over five years later. *See City of Covington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45799-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Covington City's case would force the parties and the Court to waste time and resources ascertaining the extent of Covington City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Covington City's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Covington City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Covington City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Covington City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Covington City of this deficiency on September 16, 2024 (*see* Exhibit B), but Covington City refused to amend or supplement its Fact Sheet. Under this Court's orders, Covington City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Covington City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Covington City's potential claims against them. Covington City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Covington City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Covington City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Covington City's proposed RICO claim against the PBMs has expired. Covington City filed its original complaint on May 9, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Covington, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45799-DAP, ECF No. 1-1. Even assuming *arguendo* that Covington City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 9, 2023. Covington City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Covington City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Covington City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1328. *City of Blackshear, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45802-DAP: Plaintiff Blackshear City, Georgia

Blackshear City's untimely motion for leave to amend should be denied for several reasons. Blackshear City failed to provide notice of its proposed amendments through a proposed complaint. Blackshear City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Blackshear City's motion should be denied due to futility, as Blackshear City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Blackshear City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Blackshear City filed its original complaint on August 22, 2019 and the case was transferred to the MDL on September 20, 2019. *See City of Blackshear, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45802-DAP, ECF No. 4. Blackshear City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Blackshear City elected not to do so. Instead, Blackshear City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Blackshear City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Blackshear City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Blackshear City). That insignificant dispensing volume is much too low to support a finding of good cause for Blackshear City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Blackshear City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Blackshear City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Blackshear City of this deficiency on September 16, 2024 (*see* Exhibit B), but Blackshear City refused to amend or supplement its Fact Sheet. Under this Court's orders, Blackshear City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Blackshear City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Blackshear City's potential claims against them. Blackshear City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Blackshear City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Blackshear City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Blackshear City's proposed RICO claim against the PBMs has expired. Blackshear City filed its original complaint on August 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Blackshear, Georgia v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45802-DAP, ECF No. 1. Even assuming *arguendo* that Blackshear City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 22, 2023. Blackshear City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Blackshear City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Blackshear City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1329. *Charleston County, South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45803-DAP: Plaintiff Charleston County, South Carolina

Charleston County's untimely motion for leave to amend should be denied for several reasons. Charleston County failed to provide notice of its proposed amendments through a proposed complaint. Charleston County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Charleston County's motion should be denied due to

futility, as Charleston County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Charleston County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Charleston County filed its original complaint on July 26, 2019 and the case was transferred to the MDL on September 20, 2019. *See Charleston County, South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45803-DAP, ECF No. 7. Charleston County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Charleston County elected not to do so. Instead, Charleston County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Charleston County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Charleston County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Charleston County). That insignificant dispensing volume is much too low to support a finding of good cause for Charleston County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Charleston County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Charleston County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Charleston County filed its original complaint on July 26, 2019. *See Charleston County, South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45803-DAP, ECF No. 1. Despite filing its case years ago, Charleston County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Charleston County's case would force the parties and the Court to waste time and resources ascertaining the extent of Charleston County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Charleston County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Charleston County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under South Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Charleston County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under South Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Charleston County, a municipality in South Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Charleston County's proposed RICO claim against the PBMs has expired. Charleston County filed its original complaint on July 26, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Charleston County, South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45803-DAP, ECF No. 1. It is therefore indisputable that Charleston County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Charleston County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Charleston County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Charleston County, a municipality in South Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1330. *NOITU Insurance Trust Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45808-DAP: Plaintiff NOITU Insurance Trust Fund, New York

NOITU Insurance Trust Fund's untimely motion for leave to amend should be denied for several reasons. NOITU Insurance Trust Fund failed to provide notice of its proposed amendments through a proposed complaint. NOITU Insurance Trust Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, NOITU Insurance Trust Fund's motion should be denied due to futility, as NOITU Insurance Trust Fund does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** NOITU Insurance Trust Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, NOITU Insurance Trust Fund filed its original complaint on August 29, 2019 and the case was transferred to the MDL on September 23, 2019. *See NOITU Insurance Trust Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45808-DAP, ECF No. 7. NOITU Insurance Trust Fund could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, NOITU Insurance Trust Fund elected not to do so. Instead, NOITU Insurance Trust Fund waited five years after its deadline to amend to seek leave to assert claims against the PBMs. NOITU Insurance Trust Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, NOITU Insurance Trust Fund has *never* served a Plaintiff Fact Sheet. NOITU Insurance Trust Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. NOITU Insurance Trust Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But NOITU Insurance Trust Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** NOITU Insurance Trust Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for NOITU Insurance Trust Fund's proposed RICO claim against the PBMs has expired. NOITU Insurance Trust Fund filed its original complaint on August 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See NOITU Insurance Trust Fund v. Purdue Pharma L.P. et al.*,

Case No. 1:19-op-45808-DAP, ECF No. 1. It is therefore indisputable that NOITU Insurance Trust Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. NOITU Insurance Trust Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. NOITU Insurance Trust Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** NOITU Insurance Trust Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. NOITU Insurance Trust Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1331. *Local 8A-28A Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45809-DAP: Plaintiff Local 8A-28A Welfare Fund, New York

Local 8A-28A Welfare Fund's untimely motion for leave to amend should be denied for several reasons. Local 8A-28A Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. Local 8A-28A Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Local 8A-28A Welfare Fund's motion should be denied due to futility, as Local 8A-28A Welfare Fund does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Local 8A-28A Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Local 8A-28A Welfare Fund filed its original complaint on August 29, 2019 and the case was transferred to the MDL on September 23, 2019. *See Local 8A-28A Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45809-DAP, ECF No. 7. Local 8A-28A Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Local 8A-28A Welfare Fund elected not to do so. Instead, Local 8A-28A Welfare Fund waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Local 8A-28A Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Local 8A-28A Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Local 8A-28A Welfare Fund of the PBM services Express Scripts provides and Local 8A-28A Welfare Fund began receiving those services on April 7, 2014. *See id.* Inasmuch as Local 8A-28A Welfare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Local 8A-28A

Welfare Fund knew or should have known of the alleged wrongful conduct ten years before moving to amend. *See* Section III.A.3, above. Local 8A-28A Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Local 8A-28A Welfare Fund has *never* served a Plaintiff Fact Sheet. Local 8A-28A Welfare Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Local 8A-28A Welfare Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Local 8A-28A Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Local 8A-28A Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Local 8A-28A Welfare Fund's proposed RICO claim against the PBMs has expired. Local 8A-28A Welfare Fund filed its original complaint on August 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Local 8A-28A Welfare Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45809-DAP, ECF No. 1. It is therefore indisputable that Local 8A-28A Welfare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Local 8A-28A Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Local 8A-28A Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Local 8A-28A Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Local 8A-28A Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

1332. *Drywall Tapers Insurance Fund v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45810-DAP: Plaintiff Drywall Tapers Insurance Fund, New York**

Drywall Tapers Insurance Fund's untimely motion for leave to amend should be denied for several reasons. Drywall Tapers Insurance Fund failed to provide notice of its proposed amendments through a proposed complaint. Drywall Tapers Insurance Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Drywall Tapers Insurance Fund's motion should be denied due to futility, as Drywall Tapers Insurance Fund does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Drywall Tapers Insurance Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Drywall Tapers Insurance Fund filed its original complaint on August 29, 2019 and the case was transferred to the MDL on September 24, 2019. *See Drywall Tapers Insurance Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45810-DAP, ECF No. 7. Drywall Tapers Insurance Fund could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Drywall Tapers Insurance Fund elected not to do so. Instead, Drywall Tapers Insurance Fund waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Drywall Tapers Insurance Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Drywall Tapers Insurance Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Drywall Tapers Insurance Fund of the PBM services Express Scripts provides and Drywall Tapers Insurance Fund began receiving those services on January 15, 2006. *See id.* Inasmuch as Drywall Tapers Insurance Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Drywall Tapers Insurance Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Drywall Tapers Insurance Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Drywall Tapers Insurance Fund has *never* served a Plaintiff Fact Sheet. Drywall Tapers Insurance Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Drywall Tapers Insurance Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Drywall Tapers Insurance Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Drywall Tapers Insurance Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Drywall Tapers Insurance Fund's proposed RICO claim against the PBMs has expired. Drywall Tapers Insurance Fund filed its original complaint on August 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Drywall Tapers Insurance Fund v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45810-DAP, ECF No. 1. It is therefore indisputable that Drywall Tapers Insurance Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Drywall Tapers Insurance Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Drywall Tapers Insurance Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Drywall Tapers Insurance Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Drywall Tapers Insurance Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1333. *Nassau University Medical Center v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45812-DAP: Plaintiff Nassau University Medical Center, New York

Nassau University Medical Center's untimely motion for leave to amend should be denied for several reasons. Nassau University Medical Center failed to provide notice of its proposed amendments through a proposed complaint. Nassau University Medical Center also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nassau University Medical Center's motion should be denied due to futility, as Nassau University Medical Center does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Nassau University Medical Center was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nassau University Medical Center filed its original complaint on August 30, 2019 and the case was transferred to the MDL on September 24, 2019. *See Nassau University Medical Center v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45812-DAP, ECF No. 8. Nassau University Medical Center could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Nassau University Medical Center elected not to do so. Instead, Nassau University Medical Center waited five years

after its deadline to amend to seek leave to assert claims against the PBMs. Nassau University Medical Center's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Nassau University Medical Center filed its original complaint on August 30, 2019. *See Nassau University Medical Center v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45812-DAP, ECF No. 1. Despite filing its case years ago, Nassau University Medical Center *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Nassau University Medical Center's case would force the parties and the Court to waste time and resources ascertaining the extent of Nassau University Medical Center's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Nassau University Medical Center's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Nassau University Medical Center therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nassau University Medical Center's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those

allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nassau University Medical Center, a hospital in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nassau University Medical Center's proposed RICO claim against the PBMs has expired. Nassau University Medical Center filed its original complaint on August 30, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Nassau University Medical Center v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45812-DAP, ECF No. 1. It is therefore indisputable that Nassau University Medical Center knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Nassau University Medical Center's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nassau University Medical Center's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nassau University Medical Center, a hospital in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Nassau University Medical

Center's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1334.** ***Municipality of Villalba v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45815-DAP: Plaintiff Municipality of Villalba, Puerto Rico**

Municipality of Villalba's untimely motion for leave to amend should be denied for several reasons. Municipality of Villalba failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Villalba also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Villalba's motion should be denied due to futility, as Municipality of Villalba does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Villalba was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Villalba filed its original complaint on August 30, 2019 and the case was transferred to the MDL on September 25, 2019. *See Municipality of Villalba v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45815-DAP, ECF No. 7. Municipality of Villalba could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Municipality of Villalba elected not to do so. Instead, Municipality of Villalba waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Villalba's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Municipality of Villalba's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Municipality of Villalba cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Municipality of Villalba's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Municipality of Villalba to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Villalba filed its original complaint on August 30, 2019. *See Municipality of Villalba v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45815-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Villalba *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Villalba's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Villalba's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024.

The PBMs are prejudiced by Municipality of Villalba's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Villalba therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Villalba failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Villalba's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Villalba of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Villalba refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Villalba's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Villalba's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Villalba's potential claims against them. Municipality of Villalba's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

      **Failure to State a Claim.** Municipality of Villalba, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Villalba's proposed RICO claim against the PBMs has expired. Municipality of Villalba filed its original complaint on August 30, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Villalba v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45815-DAP, ECF No. 1. It is therefore indisputable that Municipality of Villalba knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Municipality of Villalba's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Villalba's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Villalba, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1335.** *Municipality of Catano, Puerto Rico v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45816-DAP: Plaintiff Municipality of Catano, Puerto Rico**

Municipality of Catano's untimely motion for leave to amend should be denied for several reasons. Municipality of Catano failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Catano also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover,

Municipality of Catano's motion should be denied due to futility, as Municipality of Catano does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Catano was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Catano filed its original complaint on August 30, 2019 and the case was transferred to the MDL on September 25, 2019. *See Municipality of Catano, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45816-DAP, ECF No. 8. Municipality of Catano could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Municipality of Catano elected not to do so. Instead, Municipality of Catano waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Catano's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Municipality of Catano's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Municipality of Catano cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Municipality of Catano's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Municipality of Catano to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Catano filed its original complaint on August 30, 2019. *See Municipality of Catano, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45816-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Catano *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Catano's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Catano's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Catano's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Catano therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Catano failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Catano's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Catano of this deficiency on September 16, 2024 (*see*

Exhibit B), but Municipality of Catano refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Catano's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Catano's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Catano's potential claims against them. Municipality of Catano's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Catano, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Catano's proposed RICO claim against the PBMs has expired. Municipality of Catano filed its original complaint on August 30, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Catano, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45816-DAP, ECF No. 1. It is therefore indisputable that Municipality of Catano knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Municipality of Catano's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO

limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Catano's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Catano, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1336. *Municipality of Arroyo, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45817-DAP: Plaintiff Municipality of Arroyo, Puerto Ric

Municipality of Arroyo's untimely motion for leave to amend should be denied for several reasons. Municipality of Arroyo failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Arroyo also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Arroyo's motion should be denied due to futility, as Municipality of Arroyo does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Arroyo was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Arroyo filed its original complaint on August 29, 2019 and the case was transferred to the MDL on September 25, 2019. *See Municipality of Arroyo, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45817-DAP, ECF No. 8. Municipality of Arroyo could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Municipality of Arroyo elected not to do so.

Instead, Municipality of Arroyo waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Arroyo's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Municipality of Arroyo's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Municipality of Arroyo cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Municipality of Arroyo's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Arroyo filed its original complaint on August 29, 2019. *See Municipality of Arroyo, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45817-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Arroyo *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality

of Arroyo's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Arroyo's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Arroyo's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Arroyo therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Arroyo failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Arroyo's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Arroyo of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Arroyo refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Arroyo's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Arroyo's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Arroyo's potential claims against them. Municipality of Arroyo's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Arroyo, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Arroyo's proposed RICO claim against the PBMs has expired. Municipality of Arroyo filed its original complaint on August 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Arroyo, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45817-DAP, ECF No. 1. It is therefore indisputable that Municipality of Arroyo knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Municipality of Arroyo's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Arroyo's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Arroyo, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1337. ***Municipality of Bayamon, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45818-DAP: Plaintiff Municipality of Bayamon, Puerto Rico**

Municipality of Bayamon's untimely motion for leave to amend should be denied for several reasons. Municipality of Bayamon failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Bayamon also lacks good cause under Rule 15 or

Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Bayamon's motion should be denied due to futility, as Municipality of Bayamon does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Bayamon was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Bayamon filed its original complaint on August 29, 2019 and the case was transferred to the MDL on September 25, 2019. *See Municipality of Bayamon, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45818-DAP, ECF No. 7. Municipality of Bayamon could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Municipality of Bayamon elected not to do so. Instead, Municipality of Bayamon waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Bayamon's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Municipality of Bayamon's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson

Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Municipality of Bayamon cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Municipality of Bayamon's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Municipality of Bayamon to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Bayamon filed its original complaint on August 29, 2019. *See Municipality of Bayamon, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45818-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Bayamon *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Bayamon's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Bayamon's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Bayamon's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Bayamon therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Bayamon failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Bayamon's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Bayamon of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Bayamon refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Bayamon's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Bayamon's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Bayamon's potential claims against them. Municipality of Bayamon's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Bayamon, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Bayamon's proposed RICO claim against the PBMs has expired. Municipality of Bayamon filed its original

complaint on August 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Bayamon, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45818-DAP, ECF No. 1. It is therefore indisputable that Municipality of Bayamon knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Municipality of Bayamon's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Bayamon's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Bayamon, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1338. *Municipality of Ceiba, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45819-DAP: Plaintiff Municipality of Ceiba, Puerto Rico

Municipality of Ceiba's untimely motion for leave to amend should be denied for several reasons. Municipality of Ceiba failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Ceiba also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Ceiba's motion should be denied due to futility, as Municipality of Ceiba does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Ceiba was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Ceiba filed its original complaint on August 30, 2019 and the case was transferred to the MDL on September 25, 2019. *See Municipality of Ceiba, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45819-DAP, ECF No. 7. Municipality of Ceiba could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Municipality of Ceiba elected not to do so. Instead, Municipality of Ceiba waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Ceiba's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Municipality of Ceiba's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Municipality of Ceiba). That insignificant dispensing volume is much too low to support a finding of good cause for Municipality of Ceiba to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Ceiba filed its original complaint on August 30, 2019. *See Municipality of Ceiba, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45819-DAP, ECF No. 1. Despite filing its case years ago, Municipality of

Ceiba *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Ceiba's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Ceiba's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Ceiba's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Ceiba therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Ceiba failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Ceiba's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Ceiba of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Ceiba refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Ceiba's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Ceiba's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Ceiba's potential claims against them. Municipality of Ceiba's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Ceiba, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Ceiba's proposed RICO claim against the PBMs has expired. Municipality of Ceiba filed its original complaint on August 30, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Ceiba, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45819-DAP, ECF No. 1. It is therefore indisputable that Municipality of Ceiba knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Municipality of Ceiba's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Ceiba's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Ceiba, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1339. ***Municipality of Coamo, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45820-DAP: Plaintiff Municipality of Coamo, Puerto Rico**

Municipality of Coamo's untimely motion for leave to amend should be denied for several reasons. Municipality of Coamo failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Coamo also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Coamo's motion should be denied due to futility, as Municipality of Coamo does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Coamo was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Coamo filed its original complaint on August 29, 2019 and the case was transferred to the MDL on September 25, 2019. *See Municipality of Coamo, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45820-DAP, ECF No. 7. Municipality of Coamo could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Municipality of Coamo elected not to do so. Instead, Municipality of Coamo waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Coamo's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Municipality of Coamo's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.001% market share for Municipality of Coamo). That insignificant dispensing volume is much too low to support a finding of good cause for Municipality of Coamo to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Coamo failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Coamo's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Coamo of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Coamo refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Coamo's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Coamo's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Coamo's potential claims against them. Municipality of Coamo's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Coamo, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Coamo's proposed RICO claim against the PBMs has expired. Municipality of Coamo filed its original complaint on August 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Coamo, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45820-DAP, ECF No. 1. It is therefore indisputable that Municipality of Coamo knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Municipality of Coamo's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Coamo's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Coamo, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 1340.  *County of Knox et al. v. Purdue Pharma LP et al.*, Case No. 1:19-op-45822-DAP: Plaintiff Knox County, Maine

Knox County's untimely motion for leave to amend should be denied for several reasons. Knox County failed to provide notice of its proposed amendments through a proposed complaint. Knox County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Knox County's motion should be denied due to futility, as Knox County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Knox County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Knox County filed its original complaint on May 13, 2019 and the case was transferred to the MDL on September 25, 2019. *See County of Knox et al. v. Purdue Pharma LP et al.*, Case No. 1:19-op-45822-DAP, ECF No. 50. Knox County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Knox County elected not to do so. Instead, Knox County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Knox County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Knox County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Knox County). That insignificant dispensing volume is much too

low to support a finding of good cause for Knox County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Knox County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Knox County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Knox County violated its basic duty to implement a timely litigation hold. Knox County filed its original complaint on May 13, 2019, but waited until June 30, 2020 to implement a litigation hold—over one year later. *See County of Knox et al. v. Purdue Pharma LP et al.*, Case No. 1:19-op-45822-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 30, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Knox County's case would force the parties and the Court to waste time and resources ascertaining the extent of Knox County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Knox County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Knox County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Knox County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Knox County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Knox County of this deficiency on September 16, 2024 (*see* Exhibit B), but Knox County refused to amend or supplement its Fact Sheet. Under this Court's orders, Knox County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Knox County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Knox County's potential claims against them. Knox County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Knox County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Knox County, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Knox County is a plaintiff in Maine. Knox County's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Knox County's proposed RICO claim against the PBMs has expired. Knox County filed its original complaint on May 13, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Knox et al. v. Purdue Pharma LP et al.*, Case No. 1:19-op-45822-DAP, ECF No. 1-1. Even assuming *arguendo* that Knox County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 13, 2023. Knox County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Knox County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Knox County, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1341. *Russell County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45826-DAP: Plaintiff Russell County, Alabama

Russell County's untimely motion for leave to amend should be denied for several reasons. Russell County failed to provide notice of its proposed amendments through a proposed complaint. Russell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its

untimely motion would unduly prejudice the PBMs. Moreover, Russell County's motion should be denied due to futility, as Russell County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Russell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Russell County filed its original complaint on September 6, 2019 and the case was transferred to the MDL on September 26, 2019. *See Russell County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45826-DAP, ECF No. 20. Russell County could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Russell County elected not to do so. Instead, Russell County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Russell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Russell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Russell County). That insignificant dispensing volume is much too low to support a finding of good cause for Russell County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Russell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Russell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Russell County filed its original complaint on September 6, 2019. *See Russell County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45826-DAP, ECF No. 1. Despite filing its case years ago, Russell County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Russell County's case would force the parties and the Court to waste time and resources ascertaining the extent of Russell County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Russell County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Russell County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Russell County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Russell County's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Russell County of this deficiency on September 16, 2024 (*see* Exhibit B), but Russell County refused to amend or supplement its Fact Sheet. Under this Court's orders, Russell County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Russell County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Russell County's potential claims against them. Russell County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Russell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Russell County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Russell County's proposed RICO claim against the PBMs has expired. Russell County filed its original complaint on

September 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Russell County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45826-DAP, ECF No. 1. It is therefore indisputable that Russell County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Russell County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Russell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Russell County's public-nuisance claim against the PBMs is therefore time-barred because Russell County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on September 6, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Russell County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Part III.B.3, above. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Russell County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1342. *City of Alexander City, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45827-DAP: Plaintiff City of Alexander City, Alabama

City of Alexander City's untimely motion for leave to amend should be denied for several reasons. City of Alexander City failed to provide notice of its proposed amendments through a proposed complaint. City of Alexander City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, City of Alexander City's motion should be denied due to futility, as City of Alexander City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** City of Alexander City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, City of Alexander City filed its original complaint on August 30, 2019 and the case was transferred to the MDL on September 27, 2019. *See City of Alexander City, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45827-DAP, ECF No. 22. City of Alexander City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, City of Alexander City elected not to do so. Instead, City of Alexander City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. City of Alexander City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after

the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to City of Alexander City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for City of Alexander City). That insignificant dispensing volume is much too low to support a finding of good cause for City of Alexander City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to City of Alexander City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for City of Alexander City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** City of Alexander City filed its original complaint on August 30, 2019. *See City of Alexander City, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45827-DAP, ECF No. 1. Despite filing its case years ago, City of Alexander City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating City of Alexander City's case would force the parties and the Court to waste time and resources ascertaining the extent of City of Alexander City's document destruction and the appropriate sanctions—just as

the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by City of Alexander City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and City of Alexander City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, City of Alexander City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to City of Alexander City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified City of Alexander City of this deficiency on September 16, 2024 (*see* Exhibit B), but City of Alexander City refused to amend or supplement its Fact Sheet. Under this Court's orders, City of Alexander City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. City of Alexander City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against City of Alexander City's potential claims against them. City of Alexander City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But City of Alexander City's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** City of Alexander City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for City of Alexander City's proposed RICO claim against the PBMs has expired. City of Alexander City filed its original complaint on August 30, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Alexander City, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45827-DAP, ECF No. 1. It is therefore indisputable that City of Alexander City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. City of Alexander City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. City of Alexander City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. City of Alexander City's public-nuisance claim against the PBMs is therefore time-barred because City of Alexander City sought leave to amend its complaint on

July 29, 2024—five years after filing its original complaint on August 30, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** City of Alexander City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1343.** ***Structural Steel 806 Health Plan v. McKesson Corporation et al.*, Case No. 1:19-op-45831-DAP: Plaintiff Structural Steel 806 Health Plan, New York**

Structural Steel 806 Health Plan's untimely motion for leave to amend should be denied for several reasons. Structural Steel 806 Health Plan failed to provide notice of its proposed amendments through a proposed complaint. Structural Steel 806 Health Plan also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Structural Steel 806 Health Plan's motion should be denied due to futility, as Structural Steel 806 Health Plan does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Structural Steel 806 Health Plan was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Structural Steel 806 Health Plan filed its original complaint directly into the MDL on September 26, 2019. *See Structural Steel 806 Health Plan v. McKesson Corporation et al.*, Case No. 1:19-op-45831-DAP, ECF No. 1. Structural Steel 806 Health Plan could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1,

above. Unlike many other plaintiffs, Structural Steel 806 Health Plan elected not to do so. Structural Steel 806 Health Plan waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Structural Steel 806 Health Plan's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Structural Steel 806 Health Plan previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Structural Steel 806 Health Plan of the PBM services Express Scripts provides and Structural Steel 806 Health Plan began receiving those services on April 3, 2014. *See id.* Inasmuch as Structural Steel 806 Health Plan seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Structural Steel 806 Health Plan knew or should have known of the alleged wrongful conduct ten years before moving to amend. *See* Section III.A.3, above. Structural Steel 806 Health Plan's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Structural Steel 806 Health Plan has *never* served a Plaintiff Fact Sheet. Structural Steel 806 Health Plan's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at

1 (emphasis in original); *see* Section III.A.5, above. Structural Steel 806 Health Plan's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Structural Steel 806 Health Plan's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Structural Steel 806 Health Plan, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Structural Steel 806 Health Plan's proposed RICO claim against the PBMs has expired. Structural Steel 806 Health Plan filed its original complaint on September 26, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Structural Steel 806 Health Plan v. McKesson Corporation et al.*, Case No. 1:19-op-45831-DAP, ECF No. 1. It is therefore indisputable that Structural Steel 806 Health Plan knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Structural

Steel 806 Health Plan's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Structural Steel 806 Health Plan's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Structural Steel 806 Health Plan, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Structural Steel 806 Health Plan's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1344. *International Brotherhood of Trade Unions Local 713 v. McKesson Corporation et al.*, Case No. 1:19-op-45832-DAP: Plaintiff International Brotherhood of Trade Unions Local 713, New York

International Brotherhood of Trade Unions Local 713's untimely motion for leave to amend should be denied for several reasons. International Brotherhood of Trade Unions Local 713 failed to provide notice of its proposed amendments through a proposed complaint. International Brotherhood of Trade Unions Local 713 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, International Brotherhood of Trade Unions Local 713's motion should be denied due to futility, as International Brotherhood of Trade Unions Local 713 does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** International Brotherhood of Trade Unions Local 713 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, International Brotherhood of Trade Unions Local 713 filed its original complaint directly into the MDL on September 26, 2019. *See International Brotherhood of Trade Unions Local 713 v. McKesson Corporation et al.*, Case No. 1:19-op-45832-DAP, ECF No. 1. International Brotherhood of Trade Unions Local 713 could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, International Brotherhood of Trade Unions Local 713 elected not to do so. International Brotherhood of Trade Unions Local 713 waited five years after its deadline to amend to seek leave to assert claims against the PBMs. International Brotherhood of Trade Unions Local 713's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, International Brotherhood of Trade Unions Local 713 has *never* served a Plaintiff Fact Sheet. International Brotherhood of Trade Unions Local 713's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. International Brotherhood of Trade Unions Local 713's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But International Brotherhood of Trade Unions Local 713's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** International Brotherhood of Trade Unions Local 713, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for International Brotherhood of Trade Unions Local 713's proposed RICO claim against the PBMs has expired. International Brotherhood of Trade Unions Local 713 filed its original complaint on September 26, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See International Brotherhood of Trade Unions Local 713 v. McKesson Corporation et al.*, Case No. 1:19-op-45832-DAP, ECF No. 1. It is therefore indisputable that International Brotherhood of Trade Unions Local 713 knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. International Brotherhood of Trade Unions Local 713's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. International Brotherhood of Trade Unions Local 713's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** International Brotherhood of Trade Unions Local 713, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. International Brotherhood of Trade Unions Local 713's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1345. *City of San Antonio, Texas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45833-DAP: Plaintiff San Antonio City, Texas

San Antonio City's untimely motion for leave to amend should be denied for several reasons. San Antonio City failed to provide notice of its proposed amendments through a proposed complaint. San Antonio City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, San Antonio City's motion should be denied due to futility, as San Antonio City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** San Antonio City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, San Antonio City amended its complaint on December 19, 2019, after transfer to the MDL on October 2, 2019. *See City of San Antonio, Texas v. AmerisourceBergen Drug Corporation*

*et al.*, Case No. 1:19-op-45833-DAP, ECF No. 4. Unlike many other plaintiffs, San Antonio City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. San Antonio City's deadline to amend was in 2019. San Antonio City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. San Antonio City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** San Antonio City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. San Antonio City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. San Antonio City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to San Antonio City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for San Antonio City). That insignificant dispensing volume is much too low to support a finding of good cause for San Antonio City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to San Antonio City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for San Antonio City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** San Antonio City filed its original complaint on September 10, 2019. *See City of San Antonio, Texas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45833-DAP, ECF No. 1. Despite filing its case years ago, San Antonio City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating San Antonio City's case would force the parties and the Court to waste time and resources ascertaining the extent of San Antonio City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by San Antonio City's disregard for its most basic discovery

obligations as a litigant, compounded by the delay in seeking leave to amend, and San Antonio City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But San Antonio City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** San Antonio City, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for San Antonio City's proposed RICO claim against the PBMs has expired. San Antonio City filed its original complaint on September 10, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of San Antonio, Texas v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45833-DAP, ECF No. 1. It is therefore indisputable that San Antonio City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. San Antonio City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Antonio City's request for leave to

amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Antonio City, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1346. *City of Ocala, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45834-DAP: Plaintiff Ocala City, Florida

Ocala City's untimely motion for leave to amend should be denied for several reasons. Ocala City failed to provide notice of its proposed amendments through a proposed complaint. Ocala City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ocala City's motion should be denied due to futility, as Ocala City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ocala City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ocala City filed its original complaint on September 5, 2019 and the case was transferred to the MDL on October 2, 2019. *See City of Ocala, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45834-DAP, ECF No. 5. Ocala City could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, Ocala City elected not to do so. Instead, Ocala City waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Ocala City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion

to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ocala City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Ocala City). That insignificant dispensing volume is much too low to support a finding of good cause for Ocala City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ocala City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ocala City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ocala City filed its original complaint on September 5, 2019. *See City of Ocala, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45834-DAP, ECF No. 1. Despite filing its case years ago, Ocala City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never))*. This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ocala City's case would force the parties and the Court to waste time and resources ascertaining the extent of Ocala City's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ocala City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ocala City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ocala City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ocala City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ocala City's proposed RICO claim against the PBMs has expired. Ocala City filed its original complaint on September 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Ocala, Florida v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45834-DAP, ECF No. 1. It is therefore indisputable that Ocala City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Ocala City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13

(holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ocala City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Ocala City's public-nuisance claim against the PBMs is therefore time-barred because Ocala City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on September 5, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Ocala City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1347.** *Brighton Health Plan Solutions, llc d/b/a MagnaCare Administrative Services v. McKesson Corporation et al.*, Case No. 1:19-op-45837-DAP: Plaintiff Brighton Health Plan Solutions, llc d/b/a MagnaCare Administrative Services, New York

MagnaCare Administrative Services' untimely motion for leave to amend should be denied for several reasons. MagnaCare Administrative Services failed to provide notice of its proposed amendments through a proposed complaint. MagnaCare Administrative Services also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, MagnaCare Administrative Services' motion should be

denied due to futility, as MagnaCare Administrative Services does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** MagnaCare Administrative Services was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, MagnaCare Administrative Services filed its original complaint directly into the MDL on September 27, 2019. *See Brighton Health Plan Solutions, llc d/b/a MagnaCare Administrative Services v. McKesson Corporation et al.*, Case No. 1:19-op-45837-DAP, ECF No. 1. MagnaCare Administrative Services could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, MagnaCare Administrative Services elected not to do so. MagnaCare Administrative Services waited five years after its deadline to amend to seek leave to assert claims against the PBMs. MagnaCare Administrative Services' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But MagnaCare Administrative Services' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** MagnaCare Administrative Services, a hospital in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** MagnaCare Administrative Services seeks leave to amend to add claims against the PBMs in two cases: *Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services v. McKesson Corporation, et al*., No. 1:19-op-45837-DAP; and *Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services & MagnaCare, LLC v. McKesson Corporation*, *et al*., No. 1:19-op-45838-DAP. MagnaCare Administrative Services' impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for MagnaCare Administrative Services' proposed RICO claim against the PBMs has expired. MagnaCare Administrative Services filed its original complaint on September 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brighton Health Plan Solutions, llc d/b/a MagnaCare Administrative Services v. McKesson Corporation et al.*, Case No. 1:19-op-45837-DAP, ECF No. 1. It is therefore indisputable that MagnaCare Administrative Services knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five

years before seeking leave to amend. MagnaCare Administrative Services' RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. MagnaCare Administrative Services' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** MagnaCare Administrative Services, a hospital in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. MagnaCare Administrative Services' request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at \*2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1348.** ***Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services and MagnaCare, LLC v. McKesson Corporation et al.*, Case No. 1:19-op-45838-DAP: Plaintiff Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services and MagnaCare, LLC, New York**

MagnaCare Administrative Services and MagnaCare, LLC's untimely motion for leave to amend should be denied for several reasons. MagnaCare Administrative Services and MagnaCare, LLC failed to provide notice of its proposed amendments through a proposed complaint. MagnaCare Administrative Services and MagnaCare, LLC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, MagnaCare Administrative Services and MagnaCare, LLC's motion should be denied due to futility, as MagnaCare Administrative Services and MagnaCare, LLC does not assert

any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** MagnaCare Administrative Services and MagnaCare, LLC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, MagnaCare Administrative Services and MagnaCare, LLC amended its complaint on November 1, 2019, after directly filing in the MDL. *See Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services and MagnaCare, LLC v. McKesson Corporation et al.*, Case No. 1:19-op-45838-DAP, ECF No. 12. Unlike many other plaintiffs, MagnaCare Administrative Services and MagnaCare, LLC declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. MagnaCare Administrative Services and MagnaCare, LLC's deadline to amend was in 2019. MagnaCare Administrative Services and MagnaCare, LLC waited five years after its deadline to amend to seek leave to assert claims against the PBMs. MagnaCare Administrative Services and MagnaCare, LLC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Brighton Health Plan Solutions, LLC, previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Brighton Health Plan Solutions, LLC, of the PBM services Express Scripts provides and Brighton Health Plan Solutions, LLC, began receiving those services on January 3, 2006. *See id.* Inasmuch

as Brighton Health Plan Solutions, LLC, seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Brighton Health Plan Solutions, LLC knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Brighton Health Plan Solutions, LLC's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But MagnaCare Administrative Services and MagnaCare, LLC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** MagnaCare Administrative Services and MagnaCare, LLC, a hospital in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** MagnaCare Administrative Services and MagnaCare, LLC seeks leave to amend to add claims against the PBMs in two cases: *Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services v. McKesson Corporation, et al*., No. 1:19-op-45837-DAP; and *Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services & MagnaCare, LLC v. McKesson Corporation, et al*., No. 1:19-op-45838-DAP.

MagnaCare Administrative Services and MagnaCare, LLC's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for MagnaCare Administrative Services and MagnaCare, LLC's proposed RICO claim against the PBMs has expired. MagnaCare Administrative Services and MagnaCare, LLC filed its original complaint on September 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brighton Health Plan Solutions, LLC d/b/a MagnaCare Administrative Services and MagnaCare, LLC v. McKesson Corporation et al.*, Case No. 1:19-op-45838-DAP, ECF No. 1. It is therefore indisputable that MagnaCare Administrative Services and MagnaCare, LLC knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. MagnaCare Administrative Services and MagnaCare, LLC's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. MagnaCare Administrative Services and MagnaCare, LLC's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** MagnaCare Administrative Services and MagnaCare, LLC, a hospital in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. MagnaCare Administrative Services and MagnaCare, LLC's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1349. *Loudoun County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45842-DAP: Plaintiff Loudoun County, Virginia

Loudoun County's untimely motion for leave to amend should be denied for several reasons. Loudoun County failed to provide notice of its proposed amendments through a proposed complaint. Loudoun County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Loudoun County's motion should be denied due to futility, as Loudoun County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Loudoun County previously alleged claims against some of the PBMs in its original complaint on June 6, 2019. *See Loudoun County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45842-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Loudoun County also amended its complaint on December 20, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 28 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Loudoun County seeks to

add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Loudoun County's deadline to amend was in 2020, but it waited four years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Loudoun County's complaint, Loudoun County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Loudoun County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Loudoun County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Loudoun County). That insignificant dispensing volume is much too low to support a finding of good cause for Loudoun County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Loudoun County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Loudoun County of the PBM services Express Scripts provides and Loudoun County began receiving those services on January 2, 2011. *See id.* Inasmuch as Loudoun County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl.

¶¶ 733, 741, 786–816, 821–22, 845), Loudoun County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Loudoun County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Loudoun County violated its basic duty to implement a timely litigation hold. Loudoun County filed its original complaint on June 6, 2019, but waited until August 8, 2024 to implement a litigation hold—more than five years later. *See Loudoun County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45842-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Loudoun County's case would force the parties and the Court to waste time and resources ascertaining the extent of Loudoun County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Loudoun County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Loudoun County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Loudoun County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Loudoun County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period.

The PBMs notified Loudoun County of this deficiency on September 16, 2024 (*see* Exhibit B), but Loudoun County refused to amend or supplement its Fact Sheet. Under this Court's orders, Loudoun County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Loudoun County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Loudoun County's potential claims against them. Loudoun County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Loudoun County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Loudoun County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Loudoun County's proposed RICO claim against the PBMs has expired. Loudoun County filed its original complaint on June 6, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against

the PBMs. *See Loudoun County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45842-DAP, ECF No. 1-1. Even assuming *arguendo* that Loudoun County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 6, 2023. Loudoun County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Loudoun County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Loudoun County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1350. *City of Auburn v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45843-DAP: Plaintiff Auburn City, New York

Auburn City's untimely motion for leave to amend should be denied for several reasons. Auburn City failed to provide notice of its proposed amendments through a proposed complaint. Auburn City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Auburn City's motion should be denied due to futility, as Auburn City does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Auburn City previously alleged claims against some of the PBMs in its original complaint on June 7, 2019. *See City of Auburn v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45843-DAP, ECF No. 1-4 (bringing claims against Express Scripts Holding Company;

Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Auburn City could have amended its complaint, without leave, to add claims against other PBM-related entities in 2019, but elected not to do so. *See* Section II.A.1, above. Now, Auburn City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants five years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Auburn City's complaint, Auburn City already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2019. *See* Section II.A, above. Auburn City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Auburn City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Auburn City). That insignificant dispensing volume is much too low to support a finding of good cause for Auburn City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Auburn City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Auburn City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Auburn City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Auburn City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Auburn City of this deficiency on September 16, 2024 (*see* Exhibit B), but Auburn City refused to amend or supplement its Fact Sheet. Under this Court's orders, Auburn City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Auburn City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Auburn City's potential claims against them. Auburn City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Auburn City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Auburn City's proposed RICO claim against the PBMs has expired. Auburn City filed its original complaint on June 7, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Auburn v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45843-DAP, ECF No. 1-4. Even assuming *arguendo* that Auburn City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 7, 2023. Auburn City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Auburn City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Auburn City, a city in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Auburn City's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1351.** ***Wampanoag Tribe of Gay Head (Aquinnah) v. Mallinckrodt Brand Pharmaceuticals, Inc. et al.*, Case No. 1:19-op-45844-DAP: Plaintiff Wampanoag Tribe of Gay Head (Aquinnah), Massachusetts**

Wampanoag Tribe of Gay Head (Aquinnah)'s untimely motion for leave to amend should be denied for several reasons. Wampanoag Tribe of Gay Head (Aquinnah) failed to provide notice of its proposed amendments through a proposed complaint. Wampanoag Tribe of Gay Head (Aquinnah) also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Wampanoag Tribe of Gay Head (Aquinnah)'s motion should be denied due to futility, as Wampanoag Tribe of Gay Head (Aquinnah) does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wampanoag Tribe of Gay Head (Aquinnah) was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wampanoag Tribe of Gay Head (Aquinnah) filed its original complaint on April 19, 2019 and the case was transferred to the MDL on October 8, 2019. *See Wampanoag Tribe of Gay Head (Aquinnah) v. Mallinckrodt Brand Pharmaceuticals, Inc. et al.*, Case No. 1:19-op-45844-DAP, ECF No. 21. Wampanoag Tribe of Gay Head (Aquinnah) could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Wampanoag Tribe of Gay Head (Aquinnah) elected not to do so. Instead, Wampanoag Tribe of Gay Head (Aquinnah) waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Wampanoag Tribe of Gay Head (Aquinnah)'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Wampanoag Tribe of Gay Head (Aquinnah) filed its original complaint on April 19, 2019. *See Wampanoag Tribe of Gay Head (Aquinnah) v. Mallinckrodt Brand Pharmaceuticals, Inc. et al.*, Case No. 1:19-op-45844-DAP, ECF No. 4.

Despite filing its case years ago, Wampanoag Tribe of Gay Head (Aquinnah) *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wampanoag Tribe of Gay Head (Aquinnah)'s case would force the parties and the Court to waste time and resources ascertaining the extent of Wampanoag Tribe of Gay Head (Aquinnah)'s document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wampanoag Tribe of Gay Head (Aquinnah)'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wampanoag Tribe of Gay Head (Aquinnah) therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wampanoag Tribe of Gay Head (Aquinnah)'s delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wampanoag Tribe of Gay Head (Aquinnah), a native tribe in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wampanoag Tribe of Gay Head (Aquinnah)'s proposed RICO claim against the PBMs has expired. Wampanoag Tribe of Gay Head (Aquinnah) filed its original complaint on April 19, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Wampanoag Tribe of Gay Head (Aquinnah) v. Mallinckrodt Brand Pharmaceuticals, Inc. et al.*, Case No. 1:19-op-45844-DAP, ECF No. 4. Even assuming *arguendo* that Wampanoag Tribe of Gay Head (Aquinnah) first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 19, 2023. Wampanoag Tribe of Gay Head (Aquinnah)'s RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wampanoag Tribe of Gay Head (Aquinnah)'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Wampanoag Tribe of Gay Head (Aquinnah)'s public-nuisance claim against the PBMs is therefore time-barred because Wampanoag Tribe of Gay Head (Aquinnah) sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on April 19, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Wampanoag Tribe of Gay Head (Aquinnah), a native tribe in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1352.** *Greensville County, VA v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45848-DAP: Plaintiff Greensville County, Virginia

Greensville County's untimely motion for leave to amend should be denied for several reasons. Greensville County failed to provide notice of its proposed amendments through a proposed complaint. Greensville County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greensville County's motion should be denied due to futility, as Greensville County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greensville County previously alleged claims against some of the PBMs in its original complaint on June 14, 2019. *See Greensville County, VA v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45848-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Greensville County also amended its complaint on December 20, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 22 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Greensville County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Greensville County's deadline to amend was in 2020, but it waited four years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about

the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Greensville County's complaint, Greensville County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Greensville County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Greensville County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Greensville County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Greensville County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.40% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Greensville County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Greensville County violated its basic duty to implement a timely litigation hold. Greensville County filed its original complaint on June 14, 2019, but waited until July 10, 2024 to implement a litigation hold—five years later. *See Greensville County, VA v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45848-DAP, ECF No. 1-

1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 10, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Greensville County's case would force the parties and the Court to waste time and resources ascertaining the extent of Greensville County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Greensville County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Greensville County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Greensville County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Greensville County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Greensville County of this deficiency on September 16, 2024 (*see* Exhibit B), but Greensville County refused to amend or supplement its Fact Sheet. Under this Court's orders, Greensville County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Greensville County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Greensville County's potential claims against them. Greensville County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greensville County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greensville County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greensville County's proposed RICO claim against the PBMs has expired. Greensville County filed its original complaint on June 14, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Greensville County, VA v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45848-DAP, ECF No. 1-1. Even assuming *arguendo* that Greensville County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 14, 2023. Greensville County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greensville County's request for leave to amend to add

a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Greensville County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1353. *Culpeper County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45849-DAP: Plaintiff Culpeper County, Virginia

Culpeper County's untimely motion for leave to amend should be denied for several reasons. Culpeper County failed to provide notice of its proposed amendments through a proposed complaint. Culpeper County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Culpeper County's motion should be denied due to futility, as Culpeper County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Culpeper County previously alleged claims against some of the PBMs in its original complaint on June 20, 2019. *See Culpeper County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45849-DAP, ECF No. 1-2 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Culpeper County also amended its complaint on December 20, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 36 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Culpeper County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Culpeper County's deadline to amend

was in 2020, but it waited four years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Culpeper County's complaint, Culpeper County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Culpeper County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Culpeper County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Culpeper County). That insignificant dispensing volume is much too low to support a finding of good cause for Culpeper County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Culpeper County violated its basic duty to implement a timely litigation hold. Culpeper County filed its original complaint on June 20, 2019, but waited until July 19, 2024 to implement a litigation hold—five years later. *See Culpeper County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45849-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 19, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Culpeper County's case would force the parties and the Court to waste time and resources ascertaining the extent of Culpeper County's document destruction and the appropriate sanctions—just as the parties were forced to do in the

three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Culpeper County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Culpeper County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Culpeper County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Culpeper County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Culpeper County of this deficiency on September 16, 2024 (*see* Exhibit B), but Culpeper County refused to amend or supplement its Fact Sheet. Under this Court's orders, Culpeper County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Culpeper County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Culpeper County's potential claims against them. Culpeper County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Culpeper County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Culpeper County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Culpeper County's proposed RICO claim against the PBMs has expired. Culpeper County filed its original complaint on June 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Culpeper County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45849-DAP, ECF No. 1-2. Even assuming *arguendo* that Culpeper County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 20, 2023. Culpeper County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Culpeper County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Culpeper County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1354.** *Charlotte County, Virginia v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45851-DAP: Plaintiff Charlotte County, Virginia**

Charlotte County's untimely motion for leave to amend should be denied for several reasons. Charlotte County failed to provide notice of its proposed amendments through a proposed complaint. Charlotte County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Charlotte County's motion should be denied due to futility, as Charlotte County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Charlotte County previously alleged claims against some of the PBMs in its original complaint on June 14, 2019. *See Charlotte County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45851-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Charlotte County also amended its complaint on December 20, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 34 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Charlotte County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Charlotte County's deadline to amend was in 2020, but it waited four years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Charlotte County's complaint, Charlotte County already had access to the relevant documents it contends give rise to its proposed claims when it

filed its prior complaints against the PBMs. *See* Section II.A, above. Charlotte County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Charlotte County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.47% market share for Charlotte County). That insignificant dispensing volume is much too low to support a finding of good cause for Charlotte County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Charlotte County violated its basic duty to implement a timely litigation hold. Charlotte County filed its original complaint on June 14, 2019, but waited until July 10, 2024 to implement a litigation hold—five years later. *See Charlotte County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45851-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 10, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Charlotte County's case would force the parties and the Court to waste time and resources ascertaining the extent of Charlotte County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Charlotte County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Charlotte County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Charlotte County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Charlotte County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Charlotte County of this deficiency on September 16, 2024 (*see* Exhibit B), but Charlotte County refused to amend or supplement its Fact Sheet. Under this Court's orders, Charlotte County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Charlotte County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Charlotte County's potential claims against them. Charlotte County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Charlotte County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Charlotte County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Charlotte County's proposed RICO claim against the PBMs has expired. Charlotte County filed its original complaint on June 14, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Charlotte County, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45851-DAP, ECF No. 1-1. Even assuming *arguendo* that Charlotte County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 14, 2023. Charlotte County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Charlotte County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Charlotte County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1355. *City of Ogdensburg v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45852-DAP: Plaintiff Ogdensburg City, New York

Ogdensburg City's untimely motion for leave to amend should be denied for several reasons. Ogdensburg City failed to provide notice of its proposed amendments through a proposed complaint. Ogdensburg City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs.[2]

**Lack of Diligence.** Ogdensburg City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ogdensburg City previously alleged claims against some of the PBMs in its original complaint on June 7, 2019. *See City of Ogdensburg v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45852-DAP, ECF No. 1-4 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; and UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Ogdensburg City could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020 after transfer to the MDL, but elected not to do so. *See* Section II.A.1, above. Now, Ogdensburg City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants five years ago.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ogdensburg City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ogdensburg City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time

---

[2] Ogdensburg City has been selected as the replacement PBM bellwether case. *See* ECF No. 5834. But even with that bellwether selection, the omnibus motions for leave to amend remain Ogdensburg City's "last chance" to amend its complaint to add defendants. *See* ECF No. 5656 at 2 ("The Court now clarifies that, in fact, the *Final Amendment Order **did*** set forth the 'last chance' procedures for any MDL plaintiff to amend a complaint to add a defendant. . . . [The Court] will not allow any further amendment by any MDL plaintiff to add a new defendant."). Ogdensburg City cannot establish good cause to add any additional PBM-related entities when it previously alleged claims against some of the PBM entities in its original complaint, so its motion for leave to amend should be denied. But at this time, the PBMs take no position on whether Ogdensburg City should be allowed to amend its complaint "to update allegations or to add claims" against existing defendants because those issues should be addressed during the separate amendment process established by the CMO for Track 22. *See id.* at 2–3 ("The Court ***may*** later allow amendment of complaints by a newly-chosen bellwether plaintiff to update allegations or to add claims, but it will not allow any further amendment by any MDL plaintiff to add a new defendant.").

period. The PBMs notified Ogdensburg City of this deficiency on September 16, 2024 (*see* Exhibit B), but Ogdensburg City refused to amend or supplement its Fact Sheet. Under this Court's orders, Ogdensburg City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ogdensburg City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ogdensburg City's potential claims against them. Ogdensburg City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ogdensburg City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

> 1356. ***Jamaica Hospital Medical Center v. McKesson Corporation et al.*, Case No. 1:19-op-45855-DAP: Plaintiff Jamaica Hospital Medical Center, New York**

Jamaica Hospital Medical Center's untimely motion for leave to amend should be denied for several reasons. Jamaica Hospital Medical Center failed to provide notice of its proposed amendments through a proposed complaint. Jamaica Hospital Medical Center also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence because its untimely motion would unduly prejudice the PBMs. Moreover, Jamaica Hospital Medical Center's motion should be

denied due to futility, as Jamaica Hospital Medical Center does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Jamaica Hospital Medical Center was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jamaica Hospital Medical Center filed its original complaint directly into the MDL on October 10, 2019. *See Jamaica Hospital Medical Center v. McKesson Corporation et al.*, Case No. 1:19-op-45855-DAP, ECF No. 1. Jamaica Hospital Medical Center could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Jamaica Hospital Medical Center elected not to do so. Jamaica Hospital Medical Center waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Jamaica Hospital Medical Center's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jamaica Hospital Medical Center's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jamaica Hospital Medical Center, a hospital in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Jamaica Hospital Medical Center's proposed RICO claim against the PBMs has expired. Jamaica Hospital Medical Center filed its original complaint on October 10, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Jamaica Hospital Medical Center v. McKesson Corporation et al.*, Case No. 1:19-op-45855-DAP, ECF No. 1. Even assuming *arguendo* that Jamaica Hospital Medical Center first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 10, 2023. Jamaica Hospital Medical Center's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Jamaica Hospital Medical Center's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Jamaica Hospital Medical Center, a hospital in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Jamaica Hospital Medical Center's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1357.** *County of Kauai v. CVS Health Corporation, et al.*, Case No. 1:19-op-45862-DAP: Plaintiff Kauai County, Hawaii

Kauai County's untimely motion for leave to amend should be denied for several reasons. Kauai County failed to provide notice of its proposed amendments through a proposed complaint. Kauai County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kauai County's motion should be denied due to futility, as Kauai County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kauai County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kauai County filed its original complaint on May 17, 2019 and the case was transferred to the MDL on October 18, 2019. *See County of Kauai v. CVS Health Corporation, et al.*, Case No. 1:19-op-45862-DAP, ECF No. 39. Kauai County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Kauai County elected not to do so. Instead, Kauai County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Kauai County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Kauai County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Kauai County). That insignificant dispensing volume is much too low to support a finding of good cause for Kauai County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kauai County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kauai County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Kauai County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Kauai County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Kauai County of this deficiency on September 16, 2024 (*see* Exhibit B), but Kauai County refused to amend or supplement its Fact Sheet. Under this Court's orders, Kauai County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Kauai County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Kauai County's potential claims against them. Kauai County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Hawaii law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kauai County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Hawaii law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Kauai County, a municipality in Hawaii, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kauai County's proposed RICO claim against the PBMs has expired. Kauai County filed its original complaint on May 17, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Kauai v. CVS Health Corporation, et al.*, Case No. 1:19-op-45862-DAP, ECF No. 1-3. Even assuming *arguendo* that Kauai County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 17, 2023. Kauai County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kauai County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kauai County, a municipality in Hawaii, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1358.** ***Flushing Hospital Medical Center v. McKesson Corporation et al.*, Case No. 1:19-op-45866-DAP: Plaintiff Flushing Hospital Medical Center, New York**

Flushing Hospital Medical Center's untimely motion for leave to amend should be denied for several reasons. Flushing Hospital Medical Center failed to provide notice of its proposed amendments through a proposed complaint. Flushing Hospital Medical Center also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Flushing Hospital Medical Center's motion should be denied due to futility, as Flushing Hospital Medical Center does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Flushing Hospital Medical Center was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Flushing Hospital Medical Center filed its original complaint directly into the MDL on October 10, 2019. *See Flushing Hospital Medical Center v. McKesson Corporation et al.*, Case No. 1:19-op-45866-DAP, ECF No. 1. Flushing Hospital Medical Center could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Flushing Hospital Medical Center elected not to do so. Flushing Hospital Medical Center waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Flushing Hospital Medical Center's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Flushing Hospital Medical Center's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Flushing Hospital Medical Center, a hospital in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Flushing Hospital Medical Center's proposed RICO claim against the PBMs has expired. Flushing Hospital Medical Center filed its original complaint on October 10, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Flushing Hospital Medical Center v. McKesson Corporation et al.*, Case No. 1:19-op-45866-DAP, ECF No. 1. Even assuming *arguendo* that Flushing Hospital Medical Center first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 10, 2023. Flushing Hospital Medical Center's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section

III.B.4, above. Flushing Hospital Medical Center's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Flushing Hospital Medical Center, a hospital in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Flushing Hospital Medical Center's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1359. *City of Apopka, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45883-DAP: Plaintiff Apopka City, Florida

Apopka City's untimely motion for leave to amend should be denied for several reasons. Apopka City failed to provide notice of its proposed amendments through a proposed complaint. Apopka City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Apopka City's motion should be denied due to futility, as Apopka City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Apopka City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Apopka City filed its original complaint on September 25, 2019 and the case was transferred to the MDL on October 23, 2019. *See City of Apopka, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45883-DAP, ECF No. 9. Apopka City could have amended its complaint,

without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Apopka City elected not to do so. Instead, Apopka City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Apopka City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Apopka City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.35% market share for Apopka City). That insignificant dispensing volume is much too low to support a finding of good cause for Apopka City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Apopka City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Apopka City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Apopka City filed its original complaint on September 25, 2019. *See City of Apopka, Florida v. Endo Health Solutions Inc. et al.*, Case No.

1:19-op-45883-DAP, ECF No. 1. Despite filing its case years ago, Apopka City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Apopka City's case would force the parties and the Court to waste time and resources ascertaining the extent of Apopka City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Apopka City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Apopka City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Apopka City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Apopka City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Apopka City's proposed RICO claim against the PBMs has expired. Apopka City filed its original complaint on September

25, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Apopka, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45883-DAP, ECF No. 1. It is therefore indisputable that Apopka City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Apopka City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Apopka City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Apopka City's public-nuisance claim against the PBMs is therefore time-barred because Apopka City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on September 25, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Apopka City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1360.** *City of Dothan, Alabama v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45886-DAP: Plaintiff Dothan City, Alabama**

Dothan City's untimely motion for leave to amend should be denied for several reasons. Dothan City failed to provide notice of its proposed amendments through a proposed complaint. Dothan City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dothan City's motion should be denied due to futility, as Dothan City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dothan City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dothan City filed its original complaint on September 27, 2019 and the case was transferred to the MDL on October 23, 2019. *See City of Dothan, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45886-DAP, ECF No. 33. Dothan City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Dothan City elected not to do so. Instead, Dothan City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Dothan City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dothan City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Dothan City). That insignificant dispensing volume is much too low to support a finding of good cause for Dothan City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dothan City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dothan City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dothan City filed its original complaint on September 27, 2019. *See City of Dothan, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45886-DAP, ECF No. 1. Despite filing its case years ago, Dothan City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Dothan City's case would force the parties and the Court to waste time and resources ascertaining the extent of Dothan City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dothan City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dothan City therefore lacks good cause for leave to amend

its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Dothan City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Dothan City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Dothan City of this deficiency on September 16, 2024 (*see* Exhibit B), but Dothan City refused to amend or supplement its Fact Sheet. Under this Court's orders, Dothan City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dothan City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Dothan City's potential claims against them. Dothan City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dothan City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dothan City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dothan City's proposed RICO claim against the PBMs has expired. Dothan City filed its original complaint on September 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Dothan, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45886-DAP, ECF No. 1. It is therefore indisputable that Dothan City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Dothan City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dothan City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Dothan City's public-nuisance claim against the PBMs is therefore time-barred because Dothan City sought leave to amend its complaint on July 29, 2024— five years after filing its original complaint on September 27, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new

party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Dothan City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1361.** *The Fiscal Court of Casey County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, **Case No. 1:19-op-45887-DAP: Plaintiff Casey County, Kentucky**

Casey County's untimely motion for leave to amend should be denied for several reasons. Casey County failed to provide notice of its proposed amendments through a proposed complaint. Casey County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Casey County's motion should be denied due to futility, as Casey County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Casey County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Casey County filed its original complaint directly into the MDL on October 18, 2019. *See The Fiscal Court of Casey County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45887-DAP, ECF No. 1. Casey County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Casey County elected not to do so. Casey County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Casey County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Casey County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Casey County). That insignificant dispensing volume is much too low to support a finding of good cause for Casey County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Casey County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Casey County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Casey County filed its original complaint on October 18, 2019. *See The Fiscal Court of Casey County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45887-DAP, ECF No. 1. Despite filing its case years ago, Casey County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Casey County's case would force the parties and the Court to waste time and resources

ascertaining the extent of Casey County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Casey County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Casey County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Casey County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Casey County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Casey County's proposed RICO claim against the PBMs has expired. Casey County filed its original complaint on October 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The Fiscal Court of Casey County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45887-DAP, ECF No. 1. It is therefore indisputable that Casey County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Casey County's RICO claim is therefore time-barred by

RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Casey County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Casey County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1362.** ***The Fiscal Court of Lewis County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45889-DAP: Plaintiff Lewis County, Kentucky**

Lewis County's untimely motion for leave to amend should be denied for several reasons. Lewis County failed to provide notice of its proposed amendments through a proposed complaint. Lewis County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lewis County's motion should be denied due to futility, as Lewis County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lewis County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lewis County filed its original complaint directly into the MDL on October 18, 2019. *See The Fiscal Court of Lewis County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45889-DAP, ECF No. 1. Lewis County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs,

Lewis County elected not to do so. Lewis County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Lewis County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lewis County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Lewis County). That insignificant dispensing volume is much too low to support a finding of good cause for Lewis County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lewis County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lewis County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lewis County filed its original complaint on October 18, 2019. *See The Fiscal Court of Lewis County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45889-DAP, ECF No. 1. Despite filing its case years ago,

Lewis County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lewis County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lewis County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lewis County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lewis County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lewis County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lewis County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lewis County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lewis County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lewis County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lewis County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lewis County's potential claims against them. Lewis County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lewis County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Lewis County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lewis County's proposed RICO claim against the PBMs has expired. Lewis County filed its original complaint on October 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The Fiscal Court of Lewis County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45889-DAP, ECF No. 1. It is therefore indisputable that Lewis County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Lewis County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lewis County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lewis County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1363.** *The Fiscal Court of Gallatin County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, **Case No. 1:19-op-45891-DAP: Plaintiff Gallatin County, Kentucky**

Gallatin County's untimely motion for leave to amend should be denied for several reasons. Gallatin County failed to provide notice of its proposed amendments through a proposed complaint. Gallatin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gallatin County's motion should be denied due to futility, as Gallatin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gallatin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gallatin County filed its original complaint directly into the MDL on October 18, 2019. *See The Fiscal Court of Gallatin County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45891-DAP, ECF No. 1. Gallatin County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Gallatin County elected not to do so. Gallatin County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Gallatin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gallatin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Gallatin County). That insignificant dispensing volume is much too low to support a finding of good cause for Gallatin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Gallatin County filed its original complaint on October 18, 2019. *See The Fiscal Court of Gallatin County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45891-DAP, ECF No. 1. Despite filing its case years ago, Gallatin County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Gallatin County's case would force the parties and the Court to waste time and resources ascertaining the extent of Gallatin County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gallatin County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Gallatin County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gallatin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gallatin County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Gallatin County's proposed RICO claim against the PBMs has expired. Gallatin County filed its original complaint on October 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The Fiscal Court of Gallatin County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45891-DAP, ECF No. 1. It is therefore indisputable that Gallatin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Gallatin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Gallatin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Gallatin County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1364.** ***Okaloosa County, FL v. Teva Pharmaceuticals USA Inc. et al.*, Case No. 1:19-op-45894-DAP: Plaintiff Okaloosa County, Florida**

Okaloosa County's untimely motion for leave to amend should be denied for several reasons. Okaloosa County failed to provide notice of its proposed amendments through a proposed complaint. Okaloosa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Okaloosa County's motion should be denied due to futility, as Okaloosa County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Okaloosa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Okaloosa County filed its original complaint directly into the MDL on October 18, 2019. *See Okaloosa County, FL v. Teva Pharmaceuticals USA Inc. et al.*, Case No. 1:19-op-45894-DAP, ECF No. 1. Okaloosa County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Okaloosa County elected not to do so. Okaloosa County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Okaloosa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Okaloosa County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Okaloosa County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Okaloosa County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Okaloosa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Okaloosa County). That insignificant dispensing volume is much too low to support a finding of good cause for Okaloosa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Okaloosa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Okaloosa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Okaloosa County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Okaloosa County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Okaloosa County of this deficiency on September 16, 2024 (*see* Exhibit B), but Okaloosa County refused to amend or supplement its Fact Sheet. Under this Court's orders, Okaloosa County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Okaloosa County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Okaloosa County's potential claims against them. Okaloosa County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Okaloosa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Okaloosa County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Filed a Separate PBM Case.** Okaloosa County previously filed an opioid case outside the MDL against the PBMs on March 17, 2023. *See Palm Beach County et al. v. Mylan Pharms., Inc. et al.*, Case No. 9:23-cv-80431 (S.D. Fla.), ECF No. 1. Okaloosa County also voluntarily dismissed its claims against the PBMs in that case. *Id.*, ECF Nos. 199, 200, 202, 203. By suing the PBMs outside the MDL in 2023, Okaloosa County shows that it possessed facts to assert claims against the PBMs before it moved to amend in the MDL, precluding a showing of good cause here. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend where plaintiff previously possessed documents showing underlying factual basis for proposed claim).

**RICO Statute of Limitations.** The statute of limitations for Okaloosa County's proposed RICO claim against the PBMs has expired. Okaloosa County filed its original complaint on October 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Okaloosa County, FL v. Teva Pharmaceuticals USA Inc. et al.*, Case No. 1:19-op-45894-DAP, ECF No. 1. It is therefore indisputable that Okaloosa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Okaloosa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Okaloosa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Okaloosa County's public-nuisance claim against the PBMs is therefore time-barred because Okaloosa County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 18, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Okaloosa County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1365. *Mayflower Municipal Health Group et al. v. Johnson & Johnson et al.*, Case No. 1:19-op-45897-DAP: Plaintiff Mayflower Municipal Health Group, Massachusetts

Mayflower Municipal Health Group's untimely motion for leave to amend should be denied for several reasons. Mayflower Municipal Health Group failed to provide notice of its proposed amendments through a proposed complaint. Mayflower Municipal Health Group also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mayflower Municipal Health Group's motion should be denied due to futility, as Mayflower Municipal Health Group does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the

statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mayflower Municipal Health Group was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mayflower Municipal Health Group filed its original complaint directly into the MDL on October 20, 2019. *See Mayflower Municipal Health Group et al. v. Johnson & Johnson et al.*, Case No. 1:19-op-45897-DAP, ECF No. 1. Mayflower Municipal Health Group could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Mayflower Municipal Health Group elected not to do so. Mayflower Municipal Health Group waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Mayflower Municipal Health Group's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Mayflower Municipal Health Group cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Mayflower Municipal Health Group—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Mayflower Municipal Health Group fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195

F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mayflower Municipal Health Group's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mayflower Municipal Health Group, a hospital in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mayflower Municipal Health Group's proposed RICO claim against the PBMs has expired. Mayflower Municipal Health Group filed its original complaint on October 20, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mayflower Municipal Health Group et al. v. Johnson & Johnson et al.*, Case No. 1:19-op-45897-DAP, ECF No. 1. It is therefore indisputable that Mayflower Municipal Health Group knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Mayflower Municipal Health Group's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mayflower Municipal Health Group's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Mayflower Municipal Health Group's public-nuisance claim against the PBMs is therefore time-barred because Mayflower Municipal Health Group sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 20, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Mayflower Municipal Health Group, a hospital in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1366. *City of Fredericksburg, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45898-DAP: Plaintiff Fredericksburg City, Virginia

Fredericksburg City's untimely motion for leave to amend should be denied for several reasons. Fredericksburg City failed to provide notice of its proposed amendments through a proposed complaint. Fredericksburg City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fredericksburg City's motion should be denied due to futility, as Fredericksburg City does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fredericksburg City previously alleged claims against some of the PBMs in its original complaint on June 14, 2019. *See City of Fredericksburg, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45898-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Fredericksburg City also amended its complaint on December 20, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 33 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Fredericksburg City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Fredericksburg City's deadline to amend was in 2020, but it waited four years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Fredericksburg City's complaint, Fredericksburg City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Fredericksburg City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fredericksburg City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Fredericksburg City). That insignificant dispensing

volume is much too low to support a finding of good cause for Fredericksburg City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fredericksburg City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fredericksburg City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fredericksburg City violated its basic duty to implement a timely litigation hold. Fredericksburg City filed its original complaint on June 14, 2019, but waited until July 5, 2024 to implement a litigation hold—five years later. *See City of Fredericksburg, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45898-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 5, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fredericksburg City's case would force the parties and the Court to waste time and resources ascertaining the extent of Fredericksburg City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fredericksburg City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fredericksburg City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Fredericksburg City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Fredericksburg City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Fredericksburg City of this deficiency on September 16, 2024 (*see* Exhibit B), but Fredericksburg City refused to amend or supplement its Fact Sheet. Under this Court's orders, Fredericksburg City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Fredericksburg City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Fredericksburg City's potential claims against them. Fredericksburg City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fredericksburg City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fredericksburg City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fredericksburg City's proposed RICO claim against the PBMs has expired. Fredericksburg City filed its original complaint on June 14, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Fredericksburg, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45898-DAP, ECF No. 1-1. Even assuming *arguendo* that Fredericksburg City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 14, 2023. Fredericksburg City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fredericksburg City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fredericksburg City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1367. *Incorporated Village of Garden City, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45902-DAP: Plaintiff Garden City Village, New Yor

Garden City Village's untimely motion for leave to amend should be denied for several reasons. Garden City Village failed to provide notice of its proposed amendments through a proposed complaint. Garden City Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Garden City Village's motion should be denied due to futility, as Garden City Village does not

assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Garden City Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Garden City Village filed its original complaint directly into the MDL on October 22, 2019. *See Incorporated Village of Garden City, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45902-DAP, ECF No. 1. Garden City Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Garden City Village elected not to do so. Garden City Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Garden City Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Garden City Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Garden City Village). That insignificant dispensing volume is much too low to support a finding of good cause for Garden City Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Garden City Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Garden City Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Garden City Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Garden City Village's proposed RICO claim against the PBMs has expired. Garden City Village filed its original complaint on October 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Garden City, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45902-DAP, ECF No. 1. Even assuming *arguendo* that Garden City Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 22, 2023. Garden City Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Garden City Village's

5029

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Garden City Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Garden City Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1368.** *Incorporated Village of Island Park, NY v. McKesson Corporation et al.*,
> Case No. 1:19-op-45903-DAP: Plaintiff Island Park Village, New York

Island Park Village's untimely motion for leave to amend should be denied for several reasons. Island Park Village failed to provide notice of its proposed amendments through a proposed complaint. Island Park Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Island Park Village's motion should be denied due to futility, as Island Park Village does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Island Park Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Island Park Village filed its original complaint directly into the MDL on October 22, 2019. *See Incorporated Village of Island Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45903-DAP, ECF No. 1. Island Park Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Island Park Village elected not to do so. Island Park Village waited four years after its deadline to

amend to seek leave to assert claims against the PBMs. Island Park Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Island Park Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Island Park Village). That insignificant dispensing volume is much too low to support a finding of good cause for Island Park Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Island Park Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Island Park Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Island Park Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Island Park Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Island Park Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Island Park Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Island Park Village's potential claims against them. Island Park Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs,

negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Island Park Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Island Park Village's proposed RICO claim against the PBMs has expired. Island Park Village filed its original complaint on October 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Island Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45903-DAP, ECF No. 1. Even assuming *arguendo* that Island Park Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 22, 2023. Island Park Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Island Park Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Island Park Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Island Park Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1369. *Wise County Board of Supervisors v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45907-DAP: Plaintiff Wise County, Virginia

Wise County's untimely motion for leave to amend should be denied for several reasons. Wise County failed to provide notice of its proposed amendments through a proposed complaint. Wise County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wise County's motion should be denied due to futility, as Wise County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wise County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wise County amended its complaint on January 21, 2020, after transfer to the MDL on October 23, 2019. *See Wise County Board of Supervisors v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45907-DAP, ECF No. 6. Unlike many other plaintiffs, Wise County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wise County's deadline to amend was in 2020. Wise County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Wise County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Wise County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Wise County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Wise County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wise County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Wise County). That insignificant dispensing volume is much too low to support a finding of good cause for Wise County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wise County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wise County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wise County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wise County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wise County's proposed RICO claim against the PBMs has expired. Wise County filed its original complaint on September 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wise County Board of Supervisors v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45907-DAP, ECF No. 1. It is therefore indisputable that Wise County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years

before seeking leave to amend. Wise County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wise County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wise County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1370. *City of Vancouver v. Sackler et al.*, Case No. 1:19-op-45908-DAP: Plaintiff Vancouver City, Washington

Vancouver City's untimely motion for leave to amend should be denied for several reasons. Vancouver City failed to provide notice of its proposed amendments through a proposed complaint. Vancouver City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Vancouver City's motion should be denied due to futility, as Vancouver City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Vancouver City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Vancouver City amended its complaint on December 22, 2020, after transfer to the MDL on October 23, 2019. *See City of Vancouver v. Sackler et al.*, Case No. 1:19-op-45908-DAP, ECF No.

7. Unlike many other plaintiffs, Vancouver City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Vancouver City's deadline to amend was in 2020. Vancouver City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Vancouver City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Vancouver City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Vancouver City). That insignificant dispensing volume is much too low to support a finding of good cause for Vancouver City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Vancouver City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Vancouver City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Vancouver City violated its basic duty to implement a timely litigation hold. Vancouver City filed its original complaint on October 1,

2018, but waited until October 1, 2019 to implement a litigation hold—one year later. *See City of Vancouver v. Sackler et al.*, Case No. 1:19-op-45908-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: October 1, 2019). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Vancouver City's case would force the parties and the Court to waste time and resources ascertaining the extent of Vancouver City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Vancouver City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Vancouver City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Vancouver City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Vancouver City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Vancouver City of this deficiency on September 16, 2024 (*see* Exhibit B), but Vancouver City refused to amend or supplement its Fact Sheet. Under this Court's orders, Vancouver City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Vancouver City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Vancouver City's potential claims against them. Vancouver City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing

counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Vancouver City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Vancouver City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Vancouver City's proposed RICO claim against the PBMs has expired. Vancouver City filed its original complaint on October 1, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Vancouver v. Sackler et al.*, Case No. 1:19-op-45908-DAP, ECF No. 1. It is therefore indisputable that Vancouver City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Vancouver City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Vancouver City's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Vancouver City's public-nuisance claim against the PBMs is therefore time-barred because Vancouver City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 1, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Vancouver City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1371. *Town of Vance, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-45909-DAP: Plaintiff Vance Town, Alabama

Vance Town's untimely motion for leave to amend should be denied for several reasons. Vance Town failed to provide notice of its proposed amendments through a proposed complaint. Vance Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Vance Town's motion should be denied due to futility, as Vance Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Vance Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Vance Town filed its original complaint on September 20, 2019 and the case was transferred to the MDL on October 23, 2019. *See Town of Vance, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-45909-DAP, ECF No. 17. Vance Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Vance Town elected not to do so. Instead, Vance Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Vance Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Vance Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Vance Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Vance Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Vance Town filed its original complaint on September 20, 2019. *See Town of Vance, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-45909-DAP, ECF No. 1. Despite filing its case years ago, Vance Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Vance Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Vance Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Vance Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Vance Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Vance Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Vance Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Vance Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Vance Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Vance Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Vance Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Vance Town's potential claims against them. Vance Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Vance Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Vance Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Vance Town's proposed RICO claim against the PBMs has expired. Vance Town filed its original complaint on September 20, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Vance, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-45909-DAP, ECF No. 1. It is therefore indisputable that Vance Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Vance Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Vance Town's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

   **Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Vance Town's public-nuisance claim against the PBMs is therefore time-barred because Vance Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on September 20, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

   **Plaintiff Lacks Standing.** Vance Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

   **1372.** *City of Brent, Alabama v. Purdue Pharma LP et al.*, **Case No. 1:19-op-45910-DAP: Plaintiff Brent City, Alabama**

   Brent City's untimely motion for leave to amend should be denied for several reasons. Brent City failed to provide notice of its proposed amendments through a proposed complaint. Brent City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brent City's motion should be denied due to futility, as Brent City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brent City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brent City filed its original complaint on September 20, 2019 and the case was transferred to the MDL on October 24, 2019. *See City of Brent, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-45910-DAP, ECF No. 15. Brent City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Brent City elected not to do so. Instead, Brent City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Brent City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Brent City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Brent City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brent City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Brent City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Brent City filed its original complaint on September 20, 2019. *See City of Brent, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-45910-DAP, ECF No. 1. Despite filing its case years ago, Brent City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Brent City's case would force the parties and the Court to waste time and resources ascertaining the extent of Brent City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brent City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brent City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Brent City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Brent City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Brent City of this deficiency on September 16, 2024 (*see* Exhibit B), but Brent City refused to amend or supplement its Fact Sheet. Under this Court's orders, Brent City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Brent City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Brent City's potential claims

against them. Brent City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brent City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brent City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brent City's proposed RICO claim against the PBMs has expired. Brent City filed its original complaint on September 20, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Brent, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-45910-DAP, ECF No. 1. It is therefore indisputable that Brent City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Brent City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of

[the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brent City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Brent City's public-nuisance claim against the PBMs is therefore time-barred because Brent City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on September 20, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Brent City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1373.** *City of Sweetwater, Florida v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45914-DAP: Plaintiff Sweetwater City, Florida**

Sweetwater City's untimely motion for leave to amend should be denied for several reasons. Sweetwater City failed to provide notice of its proposed amendments through a proposed complaint. Sweetwater City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sweetwater City's motion should be denied due to futility, as Sweetwater City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of

limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sweetwater City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sweetwater City amended its complaint on September 16, 2019, before transfer to the MDL on October 24, 2019. *See City of Sweetwater, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45914-DAP, ECF No. 4. Unlike many other plaintiffs, Sweetwater City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sweetwater City's deadline to amend was in 2020. Sweetwater City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Sweetwater City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Sweetwater City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Sweetwater City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Sweetwater City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sweetwater City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sweetwater City filed its original complaint on September 16, 2019. *See City of Sweetwater, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45914-DAP, ECF No. 4. Despite filing its case years ago, Sweetwater City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sweetwater City's case would force the parties and the Court to waste time and resources ascertaining the extent of Sweetwater City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sweetwater City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sweetwater City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sweetwater City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sweetwater City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sweetwater City of this deficiency on September 16, 2024 (*see* Exhibit B), but Sweetwater City refused to amend or supplement its Fact Sheet. Under this Court's orders,

Sweetwater City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sweetwater City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sweetwater City's potential claims against them. Sweetwater City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sweetwater City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sweetwater City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sweetwater City's proposed RICO claim against the PBMs has expired. Sweetwater City filed its original complaint on September 16, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Sweetwater, Florida v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45914-DAP, ECF No. 4. It is therefore indisputable that Sweetwater City knew of its RICO injury,

at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Sweetwater City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sweetwater City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Sweetwater City's public-nuisance claim against the PBMs is therefore time-barred because Sweetwater City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on September 16, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sweetwater City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1374. *Town of Rockford, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45915-DAP: Plaintiff Rockford Town, Alabama

Rockford Town's untimely motion for leave to amend should be denied for several reasons. Rockford Town failed to provide notice of its proposed amendments through a proposed complaint. Rockford Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet,

and because its untimely motion would unduly prejudice the PBMs. Moreover, Rockford Town's motion should be denied due to futility, as Rockford Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rockford Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rockford Town filed its original complaint on September 27, 2019 and the case was transferred to the MDL on October 24, 2019. *See Town of Rockford, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45915-DAP, ECF No. 23. Rockford Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Rockford Town elected not to do so. Instead, Rockford Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Rockford Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Rockford Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the

case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Rockford Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Rockford Town filed its original complaint on September 27, 2019. *See Town of Rockford, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45915-DAP, ECF No. 1. Despite filing its case years ago, Rockford Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Rockford Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Rockford Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rockford Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rockford Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Rockford Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Rockford Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Rockford Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Rockford Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Rockford Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Rockford Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend

against Rockford Town's potential claims against them. Rockford Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rockford Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rockford Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rockford Town's proposed RICO claim against the PBMs has expired. Rockford Town filed its original complaint on September 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Rockford, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45915-DAP, ECF No. 1. It is therefore indisputable that Rockford Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Rockford Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rockford Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Rockford Town's public-nuisance claim against the PBMs is therefore time-barred because Rockford Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on September 27, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Rockford Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1375. *Dickey County v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45919-DAP: Plaintiff Dickey County, North Dakota

Dickey County's untimely motion for leave to amend should be denied for several reasons. Dickey County failed to provide notice of its proposed amendments through a proposed complaint. Dickey County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dickey County's motion should be denied due to futility, as Dickey County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dickey County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dickey County filed its original complaint on September 23, 2019 and the case was transferred to the MDL on October 24, 2019. *See Dickey County v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45919-DAP, ECF No. 4. Dickey County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Dickey County elected not to do so. Instead, Dickey County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Dickey County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Dickey County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Dickey County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dickey County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Dickey County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dickey County filed its original complaint on September 23, 2019. *See Dickey County v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45919-DAP, ECF No. 1. Despite filing its case years ago, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Dickey County's case would force the parties and the Court to waste time and resources ascertaining the extent of Dickey County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dickey County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dickey County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Dakota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dickey County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Dakota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dickey County, a municipality in North Dakota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dickey County's proposed RICO claim against the PBMs has expired. Dickey County filed its original complaint on September 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Dickey County v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45919-DAP, ECF No. 1. It is therefore indisputable that Dickey County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Dickey County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dickey County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dickey County, a municipality in North Dakota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1376.** *Town of Easton v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:19-op-45920-DAP: Plaintiff Easton Town, Massachusetts**

Easton Town's untimely motion for leave to amend should be denied for several reasons. Easton Town failed to provide notice of its proposed amendments through a proposed complaint. Easton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Easton Town's motion should be denied due to futility, as Easton Town does not assert any allegations tying the PBMs to its

alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Easton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Easton Town amended its complaint on January 22, 2020, after transfer to the MDL on October 24, 2019. *See Town of Easton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45920-DAP, ECF No. 9. Unlike many other plaintiffs, Easton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Easton Town's deadline to amend was in 2020. Easton Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Easton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Easton Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Easton Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Easton Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Easton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Easton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Easton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Easton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Easton Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Easton Town filed its original complaint on September 11, 2019, but waited until December 16, 2019 to implement a litigation hold. *See Town of Easton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45920-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: December 16, 2019). Easton Town's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its

discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Easton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Easton Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Easton Town's proposed RICO claim against the PBMs has expired. Easton Town filed its original complaint on September 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Easton v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-45920-DAP, ECF No. 1. It is therefore indisputable that Easton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Easton Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Easton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Easton Town's public-nuisance claim against the PBMs is therefore time-barred because Easton Town sought leave to amend its complaint on July 29, 2024—almost five years after filing its original complaint on September 11, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Easton Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1377. *Village of Wappingers Falls, New York v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45922-DAP: Plaintiff Wappingers Falls Village, New York

Wappingers Falls Village's untimely motion for leave to amend should be denied for several reasons. Wappingers Falls Village failed to provide notice of its proposed amendments through a proposed complaint. Wappingers Falls Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and failure to submit a complete plaintiff fact sheet. Moreover, Wappingers Falls Village's motion should be denied due to futility, as Wappingers Falls Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Wappingers Falls Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wappingers Falls Village filed its original complaint on September 18, 2019 and the case was transferred to the MDL on October 31, 2019. *See Village of Wappingers Falls, New York v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45922-DAP, ECF No. 5. Wappingers Falls Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Wappingers Falls Village elected not to do so. Instead, Wappingers Falls Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Wappingers Falls Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wappingers Falls Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Wappingers Falls Village). That insignificant dispensing volume is much too low to support a finding of good cause for Wappingers Falls Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Wappingers Falls Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wappingers Falls Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Wappingers Falls Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Wappingers Falls Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Wappingers Falls Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Wappingers Falls Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Wappingers Falls Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Wappingers Falls Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Wappingers Falls Village's potential claims against them. Wappingers Falls Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wappingers Falls Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Wappingers Falls Village's proposed RICO claim against the PBMs has expired. Wappingers Falls Village filed its original complaint on September 19, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Wappingers Falls, New York v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45922-DAP, ECF No. 3. Even assuming *arguendo* that Wappingers Falls Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 19, 2023. Wappingers Falls Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wappingers Falls Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wappingers Falls Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Wappingers Falls Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1378.** *Board of County Commissioners of the County of Mesa v. Sackler et al.*, Case No. 1:19-op-45923-DAP: Plaintiff Mesa County, Colorado

Mesa County's untimely motion for leave to amend should be denied for several reasons. Mesa County failed to provide notice of its proposed amendments through a proposed complaint. Mesa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Mesa County's motion should be denied due to futility, as Mesa County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mesa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mesa County amended its complaint on December 24, 2020, after transfer to the MDL on October 31, 2019. *See Board of County Commissioners of the County of Mesa v. Sackler et al.*, Case No. 1:19-op-45923-DAP, ECF No. 15. Unlike many other plaintiffs, Mesa County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Mesa County's deadline to amend was in 2020. Mesa County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Mesa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Mesa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Mesa County). That insignificant dispensing volume is much too low to support a finding of good cause for Mesa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mesa County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mesa County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mesa County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mesa County, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mesa County's proposed RICO claim against the PBMs has expired. Mesa County filed its original complaint on September 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Board of County Commissioners of the County of Mesa v. Sackler et al.*, Case No. 1:19-op-45923-DAP, ECF No. 1. It is therefore indisputable that Mesa County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Mesa County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mesa County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mesa County, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1379. *City of Norfolk, VA v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45926-DAP: Plaintiff Norfolk City, Virginia

Norfolk City's untimely motion for leave to amend should be denied for several reasons. Norfolk City failed to provide notice of its proposed amendments through a proposed complaint. Norfolk City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Norfolk City's motion should be denied due to futility, as Norfolk City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Norfolk City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Norfolk City amended its complaint on January 30, 2020, after transfer to the MDL on November

1, 2019. *See City of Norfolk, VA v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45926-DAP, ECF No. 6. Unlike many other plaintiffs, Norfolk City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Norfolk City's deadline to amend was in 2020. Norfolk City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Norfolk City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Norfolk City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Norfolk City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Norfolk City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Norfolk City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Norfolk City). That insignificant dispensing volume is much too low to support a finding of good cause for Norfolk City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Norfolk City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Norfolk City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Norfolk City violated its basic duty to implement a timely litigation hold. Norfolk City filed its original complaint on June 6, 2019, but waited until January 17, 2020 to implement a litigation hold—over seven months later. *See City of Norfolk, VA v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45926-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 17, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Norfolk City's case would force the parties and the Court to waste time and resources ascertaining the extent of Norfolk City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Norfolk City's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Norfolk City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Norfolk City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Norfolk City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Norfolk City's proposed RICO claim against the PBMs has expired. Norfolk City filed its original complaint on June 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Norfolk, VA v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45926-DAP, ECF No. 1. It is therefore indisputable that Norfolk City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Norfolk City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Norfolk City's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Norfolk City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1380.** *County of Burlington v. Purdue Pharma L.P. et al.*, **Case No. 1:19-op-45928-DAP: Plaintiff Burlington County, New Jersey**

Burlington County's untimely motion for leave to amend should be denied for several reasons. Burlington County failed to provide notice of its proposed amendments through a proposed complaint. Burlington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Burlington County's motion should be denied due to futility, as Burlington County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Burlington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Burlington County filed its original complaint on May 8, 2019 and the case was transferred to the MDL on November 1, 2019. *See County of Burlington v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45928-DAP, ECF No. 32. Burlington County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Burlington County elected not to do so. Instead, Burlington County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Burlington County's lack of diligence in pursuing its claims negates any finding of good cause.

*See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Burlington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Burlington County). That insignificant dispensing volume is much too low to support a finding of good cause for Burlington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Burlington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Burlington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Burlington County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Burlington County of the PBM services Express Scripts provides and Burlington County began receiving those services on January 2, 2013. *See id.* Inasmuch as Burlington County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am.

Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Burlington County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Burlington County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Burlington County filed its original complaint on May 8, 2019. *See County of Burlington v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45928-DAP, ECF No. 1-1. Despite filing its case years ago, Burlington County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Burlington County's case would force the parties and the Court to waste time and resources ascertaining the extent of Burlington County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Burlington County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Burlington County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Burlington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Burlington County, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Burlington County's proposed RICO claim against the PBMs has expired. Burlington County filed its original complaint on May 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Burlington v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45928-DAP, ECF No. 1-1. It is therefore indisputable that Burlington County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Burlington County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Burlington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Burlington County, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1381.** *Prince George County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45929-DAP: Plaintiff Prince George County, Virginia

Prince George County's untimely motion for leave to amend should be denied for several reasons. Prince George County failed to provide notice of its proposed amendments through a proposed complaint. Prince George County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Prince George County's motion should be denied due to futility, as Prince George County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Prince George County previously alleged claims against some of the PBMs in its original complaint on June 14, 2019. *See Prince George County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45929-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Prince George County also amended its complaint on December 20, 2019 to add claims against additional PBM-related entities. *See id.*, at ECF No. 25 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Prince George County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Prince George County's deadline to amend was in 2020, but it waited four years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Prince George County's complaint, Prince George County already had access to the relevant documents it

contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Prince George County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**Failure to Timely Implement a Litigation Hold.** Prince George County violated its basic duty to implement a timely litigation hold. Prince George County filed its original complaint on June 14, 2019, but waited until August 13, 2024 to implement a litigation hold—over five years later. *See Prince George County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45929-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Prince George County's case would force the parties and the Court to waste time and resources ascertaining the extent of Prince George County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Prince George County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Prince George County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Prince George County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Prince George County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Prince George County of this deficiency on September 16, 2024 (*see* Exhibit B), but Prince George County refused to amend or supplement its Fact Sheet. Under this

Court's orders, Prince George County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Prince George County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Prince George County's potential claims against them. Prince George County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Prince George County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Prince George County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Prince George County's proposed RICO claim against the PBMs has expired. Prince George County filed its original complaint on June 14, 2019, alleging the same type of injuries for which it now seeks to recover

under RICO against the PBMs. *See Prince George County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-45929-DAP, ECF No. 1-1. Even assuming *arguendo* that Prince George County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 14, 2023. Prince George County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Prince George County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Prince George County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1382. *Suffolk Transportation Services, Inc. v. McKesson Corporation et al.*, Case No. 1:19-op-45933-DAP: Plaintiff Suffolk Transportation Services, Inc., New York

Suffolk Transportation Services, Inc.'s untimely motion for leave to amend should be denied for several reasons. Suffolk Transportation Services, Inc. failed to provide notice of its proposed amendments through a proposed complaint. Suffolk Transportation Services, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Suffolk Transportation Services, Inc.'s motion should be denied due to futility, as Suffolk Transportation Services, Inc. does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Suffolk Transportation Services, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section

II.A, above. Moreover, Suffolk Transportation Services, Inc. filed its original complaint directly into the MDL on October 22, 2019. *See Suffolk Transportation Services, Inc. v. McKesson Corporation et al.*, Case No. 1:19-op-45933-DAP, ECF No. 1. Suffolk Transportation Services, Inc. could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Suffolk Transportation Services, Inc. elected not to do so. Suffolk Transportation Services, Inc. waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Suffolk Transportation Services, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Suffolk Transportation Services, Inc.'s delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Suffolk Transportation Services, Inc., a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Suffolk Transportation Services, Inc.'s proposed RICO claim against the PBMs has expired. Suffolk Transportation Services, Inc. filed its original complaint on October 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Suffolk Transportation Services, Inc. v. McKesson Corporation et al.*, Case No. 1:19-op-45933-DAP, ECF No. 1. It is therefore indisputable that Suffolk Transportation Services, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Suffolk Transportation Services, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Suffolk Transportation Services, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Suffolk Transportation Services, Inc., a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Suffolk Transportation Services, Inc.'s request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1383. *City of Pascagoula, Mississippi v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45934-DAP: Plaintiff Pascagoula City, Mississippi

Pascagoula City's untimely motion for leave to amend should be denied for several reasons. Pascagoula City failed to provide notice of its proposed amendments through a proposed complaint. Pascagoula City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pascagoula City's motion should be denied due to futility, as Pascagoula City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pascagoula City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pascagoula City filed its original complaint directly into the MDL on October 22, 2019. *See City of Pascagoula, Mississippi v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45934-DAP, ECF No. 1. Pascagoula City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Pascagoula City elected not to do so. Pascagoula City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Pascagoula City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pascagoula City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Pascagoula City). That insignificant dispensing volume is much too low to support a finding of good cause for Pascagoula City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pascagoula City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pascagoula City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pascagoula City filed its original complaint on October 22, 2019. *See City of Pascagoula, Mississippi v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45934-DAP, ECF No. 1. Despite filing its case years ago, Pascagoula City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Pascagoula City's case would force the parties and the Court to waste time and resources ascertaining the extent of Pascagoula City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pascagoula City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pascagoula City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pascagoula City's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pascagoula City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pascagoula City's proposed RICO claim against the PBMs has expired. Pascagoula City filed its original complaint on October 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Pascagoula, Mississippi v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45934-DAP, ECF No. 1. It is therefore indisputable that Pascagoula City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Pascagoula City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pascagoula City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pascagoula City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1384.** ***UOPW Local 175 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45940-DAP: Plaintiff UOPW Local 175 Welfare Fund, New York**

UOPW Local 175 Welfare Fund's untimely motion for leave to amend should be denied for several reasons. UOPW Local 175 Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. UOPW Local 175 Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, UOPW Local 175 Welfare Fund's motion should be denied due to futility, as UOPW Local 175 Welfare Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** UOPW Local 175 Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, UOPW Local 175 Welfare Fund filed its original complaint directly into the MDL on October 23, 2019. *See UOPW Local 175 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45940-DAP, ECF No. 1. UOPW Local 175 Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, UOPW Local 175 Welfare Fund elected not to do so. UOPW Local 175 Welfare Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. UOPW Local 175 Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But UOPW Local 175 Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** UOPW Local 175 Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for UOPW Local 175 Welfare Fund's proposed RICO claim against the PBMs has expired. UOPW Local 175 Welfare Fund filed its original complaint on October 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See UOPW Local 175 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45940-DAP, ECF No. 1. It is therefore indisputable that UOPW Local 175 Welfare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. UOPW Local 175 Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. UOPW Local 175 Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** UOPW Local 175 Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. UOPW Local 175 Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1385. *AFL-CIO Local 475 Health & Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45941-DAP: Plaintiff AFL-CIO Local 475 Health & Welfare Fund, New York

AFL-CIO Local 475 Health & Welfare Fund's untimely motion for leave to amend should be denied for several reasons. AFL-CIO Local 475 Health & Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. AFL-CIO Local 475 Health & Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, AFL-CIO Local 475 Health & Welfare Fund's motion should be denied due to futility, as AFL-CIO Local 475 Health & Welfare Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** AFL-CIO Local 475 Health & Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, AFL-CIO Local 475 Health & Welfare Fund filed its original complaint directly into the MDL on October 24, 2019. *See AFL-CIO Local 475 Health & Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45941-DAP, ECF No. 1. AFL-CIO Local 475 Health & Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, AFL-CIO Local 475 Health & Welfare Fund elected not to do so. AFL-CIO Local 475 Health & Welfare Fund

waited four years after its deadline to amend to seek leave to assert claims against the PBMs. AFL-CIO Local 475 Health & Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** AFL-CIO Local 475 Health & Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified AFL-CIO Local 475 Health & Welfare Fund of the PBM services Express Scripts provides and AFL-CIO Local 475 Health & Welfare Fund began receiving those services on January 3, 2006. *See id.* Inasmuch as AFL-CIO Local 475 Health & Welfare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), AFL-CIO Local 475 Health & Welfare Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. AFL-CIO Local 475 Health & Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But AFL-CIO Local 475 Health & Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to

exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** AFL-CIO Local 475 Health & Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for AFL-CIO Local 475 Health & Welfare Fund's proposed RICO claim against the PBMs has expired. AFL-CIO Local 475 Health & Welfare Fund filed its original complaint on October 24, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See AFL-CIO Local 475 Health & Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45941-DAP, ECF No. 1. It is therefore indisputable that AFL-CIO Local 475 Health & Welfare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. AFL-CIO Local 475 Health & Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. AFL-CIO Local 475 Health & Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** AFL-CIO Local 475 Health & Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York

City, a county in New York, or the state of New York. *See* Section III.B.6, above. AFL-CIO Local 475 Health & Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1386. *Local 381 Group Insurance Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45942-DAP: Plaintiff Local 381 Group Insurance Fund, New York

Local 381 Group Insurance Fund's untimely motion for leave to amend should be denied for several reasons. Local 381 Group Insurance Fund failed to provide notice of its proposed amendments through a proposed complaint. Local 381 Group Insurance Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Local 381 Group Insurance Fund's motion should be denied due to futility, as Local 381 Group Insurance Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Local 381 Group Insurance Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Local 381 Group Insurance Fund filed its original complaint directly into the MDL on October 24, 2019. *See Local 381 Group Insurance Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45942-DAP, ECF No. 1. Local 381 Group Insurance Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Local 381 Group Insurance Fund elected not to do so. Local 381 Group Insurance Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Local 381 Group Insurance Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the

information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Local 381 Group Insurance Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Local 381 Group Insurance Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Local 381 Group Insurance Fund's proposed RICO claim against the PBMs has expired. Local 381 Group Insurance Fund filed its original complaint on October 24, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Local 381 Group Insurance Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45942-DAP, ECF No. 1. It is therefore indisputable that Local 381 Group Insurance Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Local 381 Group Insurance Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Local 381 Group Insurance Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Local 381 Group Insurance Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Local 381 Group Insurance Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1387. *IUOE Local 138 Health Benefit Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45943-DAP: Plaintiff IUOE Local 138 Health Benefit Fund, New York

IUOE Local 138 Health Benefit Fund's untimely motion for leave to amend should be denied for several reasons. IUOE Local 138 Health Benefit Fund failed to provide notice of its proposed amendments through a proposed complaint. IUOE Local 138 Health Benefit Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence. Moreover, IUOE Local 138 Health Benefit Fund's motion should be denied due to futility, as IUOE Local 138 Health Benefit Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** IUOE Local 138 Health Benefit Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, IUOE Local 138 Health Benefit Fund filed its original complaint directly into the MDL on October 24, 2025. *See IUOE Local 138 Health Benefit Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45943-DAP, ECF No. 1. IUOE Local 138 Health Benefit Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020.

*See* Section II.A.1, above. Unlike many other plaintiffs, IUOE Local 138 Health Benefit Fund elected not to do so. IUOE Local 138 Health Benefit Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. IUOE Local 138 Health Benefit Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But IUOE Local 138 Health Benefit Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** IUOE Local 138 Health Benefit Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for IUOE Local 138 Health Benefit Fund's proposed RICO claim against the PBMs has expired. IUOE Local 138 Health Benefit Fund filed its original complaint on October 24, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See IUOE Local 138 Health Benefit Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45943-DAP, ECF No. 1. It is therefore

indisputable that IUOE Local 138 Health Benefit Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. IUOE Local 138 Health Benefit Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. IUOE Local 138 Health Benefit Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** IUOE Local 138 Health Benefit Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. IUOE Local 138 Health Benefit Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1388. *United Crafts Benefits Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45945-DAP: Plaintiff United Crafts Benefits Fund, New York

United Crafts Benefits Fund's untimely motion for leave to amend should be denied for several reasons. United Crafts Benefits Fund failed to provide notice of its proposed amendments through a proposed complaint. United Crafts Benefits Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, United Crafts Benefits Fund's motion should be denied due to futility, as United Crafts Benefits Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** United Crafts Benefits Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, United Crafts Benefits Fund filed its original complaint directly into the MDL on October 24, 2019. *See United Crafts Benefits Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45945-DAP, ECF No. 1. United Crafts Benefits Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, United Crafts Benefits Fund elected not to do so. United Crafts Benefits Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. United Crafts Benefits Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But United Crafts Benefits Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** United Crafts Benefits Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for United Crafts Benefits Fund's proposed RICO claim against the PBMs has expired. United Crafts Benefits Fund filed its original complaint on October 24, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See United Crafts Benefits Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45945-DAP, ECF No. 1. It is therefore indisputable that United Crafts Benefits Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. United Crafts Benefits Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. United Crafts Benefits Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** United Crafts Benefits Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. United Crafts Benefits Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1389.** ***Uniformed Fire Officers Association Benefits Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45946-DAP: Plaintiff Uniformed Fire Officers Association Benefits Fund, New York**

Uniformed Fire Officers Association Benefits Fund's untimely motion for leave to amend should be denied for several reasons. Uniformed Fire Officers Association Benefits Fund failed to provide notice of its proposed amendments through a proposed complaint. Uniformed Fire Officers

Association Benefits Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Uniformed Fire Officers Association Benefits Fund's motion should be denied due to futility, as Uniformed Fire Officers Association Benefits Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitation.

**Lack of Diligence.** Uniformed Fire Officers Association Benefits Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Uniformed Fire Officers Association Benefits Fund filed its original complaint directly into the MDL on October 24, 2019. *See Uniformed Fire Officers Association Benefits Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45946-DAP, ECF No. 1. Uniformed Fire Officers Association Benefits Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Uniformed Fire Officers Association Benefits Fund elected not to do so. Uniformed Fire Officers Association Benefits Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Uniformed Fire Officers Association Benefits Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Uniformed Fire Officers Association Benefits Fund's delay in seeking to amend its complaint has impaired the PBMs'

ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Uniformed Fire Officers Association Benefits Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Uniformed Fire Officers Association Benefits Fund's proposed RICO claim against the PBMs has expired. Uniformed Fire Officers Association Benefits Fund filed its original complaint on October 24, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Uniformed Fire Officers Association Benefits Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45946-DAP, ECF No. 1. It is therefore indisputable that Uniformed Fire Officers Association Benefits Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Uniformed Fire Officers Association Benefits Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Uniformed Fire Officers Association Benefits Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Uniformed Fire Officers Association Benefits Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not

New York City, a county in New York, or the state of New York. *See* Section III.B.6, above.

Uniformed Fire Officers Association Benefits Fund's request for leave to amend its complaint to

add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL

9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the

proposed claim).

### 1390. *City of Huntsville, Alabama v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45947-DAP: Plaintiff Huntsville City, Alabama

Huntsville City's untimely motion for leave to amend should be denied for several reasons.

Huntsville City failed to provide notice of its proposed amendments through a proposed complaint.

Huntsville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Huntsville City's motion should be denied due to futility, as Huntsville City does not

assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it

lacks standing to assert claims under New York state law.

**Lack of Diligence.** Huntsville City was on notice of its claims against the PBMs for years

but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Huntsville City filed its original complaint directly into the MDL on October 25, 2019. *See City*

*of Huntsville, Alabama v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45947-DAP,

ECF No. 1. Huntsville City could have amended its complaint, without leave, to add claims against

the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Huntsville City elected

not to do so. Huntsville City waited four years after its deadline to amend to seek leave to assert

claims against the PBMs. Huntsville City's lack of diligence in pursuing its claims negates any

finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Huntsville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Huntsville City). That insignificant dispensing volume is much too low to support a finding of good cause for Huntsville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Huntsville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Huntsville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Huntsville City filed its original complaint on October 25, 2019. *See City of Huntsville, Alabama v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45947-DAP, ECF No. 1. Despite filing its case years ago, Huntsville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Huntsville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Huntsville City's document destruction and the appropriate sanctions—just as the parties were forced to do

in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Huntsville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Huntsville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Huntsville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Huntsville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Huntsville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Huntsville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Huntsville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Huntsville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Huntsville City's potential claims against them. Huntsville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Huntsville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Huntsville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Huntsville City's proposed RICO claim against the PBMs has expired. Huntsville City filed its original complaint on October 25, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Huntsville, Alabama v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-45947-DAP, ECF No. 1. It is therefore indisputable that Huntsville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Huntsville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Huntsville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Huntsville City's public-nuisance claim against the PBMs is therefore time-barred because Huntsville City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 25, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Huntsville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 1391. *Village of Islandia, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45954-DAP: Plaintiff Islandia Village, New York

Islandia Village's untimely motion for leave to amend should be denied for several reasons. Islandia Village failed to provide notice of its proposed amendments through a proposed complaint. Islandia Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Islandia Village's motion should be denied due to futility, as Islandia Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Islandia Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Islandia Village filed its original complaint directly into the MDL on October 29, 2019. *See Village of Islandia, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45954-DAP, ECF No. 1. Islandia Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Islandia Village elected not to do so. Islandia Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Islandia Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after

the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Islandia Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Islandia Village). That insignificant dispensing volume is much too low to support a finding of good cause for Islandia Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Islandia Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Islandia Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Islandia Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Islandia Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Islandia Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Islandia Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Islandia Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Islandia Village's refusal to

provide basic information related to its health care plans prejudices the PBMs' ability to defend against Islandia Village's potential claims against them. Islandia Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Islandia Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Islandia Village's proposed RICO claim against the PBMs has expired. Islandia Village filed its original complaint on October 29, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Islandia, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45954-DAP, ECF No. 1. Even assuming *arguendo* that Islandia Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 29, 2023. Islandia Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Islandia Village's request for leave to amend to add a RICO claim should be denied as futile. *See*

*Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Islandia Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Islandia Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1392.** ***Village of Amityville, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45955-DAP: Plaintiff Amityville Village, New York**

Amityville Village's untimely motion for leave to amend should be denied for several reasons. Amityville Village failed to provide notice of its proposed amendments through a proposed complaint. Amityville Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Amityville Village's motion should be denied due to futility, as Amityville Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Amityville Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Amityville Village filed its original complaint directly into the MDL on October 30, 2019. *See Village of Amityville, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45955-DAP, ECF No. 1. Amityville Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Amityville Village elected not to do so. Amityville Village waited four years after its deadline to

amend to seek leave to assert claims against the PBMs. Amityville Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Amityville Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Amityville Village). That insignificant dispensing volume is much too low to support a finding of good cause for Amityville Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Amityville Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Amityville Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Amityville Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Amityville Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Amityville Village of this deficiency on September 16, 2024 (*see*

Exhibit B), but Amityville Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Amityville Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Amityville Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Amityville Village's potential claims against them. Amityville Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Amityville Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Amityville Village's proposed RICO claim against the PBMs has expired. Amityville Village filed its original complaint on October 30, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Amityville, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45955-DAP, ECF No. 1. Even assuming *arguendo* that Amityville Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at

the very latest, on October 30, 2023. Amityville Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Amityville Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Amityville Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Amityville Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1393.** ***Brookhaven Ambulance Co., Inc. d/b/a South Country Ambulance v. McKesson Corporation et al.*, Case No. 1:19-op-45957-DAP: Plaintiff Brookhaven Ambulance Co., Inc. d/b/a South Country Ambulance, New York**

South Country Ambulance's untimely motion for leave to amend should be denied for several reasons. South Country Ambulance failed to provide notice of its proposed amendments through a proposed complaint. South Country Ambulance also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, South Country Ambulance's motion should be denied due to futility, as South Country Ambulance does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** South Country Ambulance was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, South Country Ambulance filed its original complaint directly into the MDL on October 31, 2019. *See Brookhaven Ambulance Co., Inc. d/b/a South Country Ambulance v. McKesson Corporation et al.*, Case No. 1:19-op-45957-DAP, ECF No. 1. South Country Ambulance could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, South Country Ambulance elected not to do so. South Country Ambulance waited four years after its deadline to amend to seek leave to assert claims against the PBMs. South Country Ambulance's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But South Country Ambulance's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** South Country Ambulance, a ambulance district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for South Country Ambulance's proposed RICO claim against the PBMs has expired. South Country Ambulance filed its original complaint on October 31, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Brookhaven Ambulance Co., Inc. d/b/a South Country Ambulance v. McKesson Corporation et al.*, Case No. 1:19-op-45957-DAP, ECF No. 1. It is therefore indisputable that South Country Ambulance knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. South Country Ambulance's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. South Country Ambulance's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** South Country Ambulance, a ambulance district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. South Country Ambulance's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1394. *Fiscal Court of Grant County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45961-DAP: Plaintiff Grant County, Kentucky

Grant County's untimely motion for leave to amend should be denied for several reasons. Grant County failed to provide notice of its proposed amendments through a proposed complaint. Grant County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Grant County's motion should be denied due to futility, as Grant County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Grant County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Grant County filed its original complaint directly into the MDL on November 1, 2019. *See Fiscal Court of Grant County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45961-DAP, ECF No. 1. Grant County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Grant County elected not to do so. Grant County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Grant County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Grant County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Grant County). That insignificant dispensing volume is much too low to support a finding of good cause for Grant County to add dispensing claims against

5113

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Grant County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Grant County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Grant County filed its original complaint on November 1, 2019. *See Fiscal Court of Grant County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45961-DAP, ECF No. 1. Despite filing its case years ago, Grant County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Grant County's case would force the parties and the Court to waste time and resources ascertaining the extent of Grant County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Grant County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Grant County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Grant County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Grant County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Grant County's proposed RICO claim against the PBMs has expired. Grant County filed its original complaint on <u>November 1, 2019</u>, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fiscal Court of Grant County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-45961-DAP, ECF No. 1. It is therefore indisputable that Grant County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Grant County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Grant County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Grant County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1395.** *City of San Jose, California et al. v. Sackler et al.*, **Case No. 1:19-op-45964-DAP: Plaintiff San Jose City, California**

San Jose City's untimely motion for leave to amend should be denied for several reasons. San Jose City failed to provide notice of its proposed amendments through a proposed complaint. San Jose City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, San Jose City's motion should be denied due to futility, as San Jose City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** San Jose City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, San Jose City filed its original complaint on October 9, 2019 and the case was transferred to the MDL on November 5, 2019. *See City of San Jose, California et al. v. Sackler et al.*, Case No. 1:19-op-45964-DAP, ECF No. 4. San Jose City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, San Jose City elected not to do so. Instead, San Jose City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. San Jose City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** San Jose City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. San Jose City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. San Jose City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to San Jose City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for San Jose City). That insignificant dispensing volume is much too low to support a finding of good cause for San Jose City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to San Jose City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for San Jose City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** San Jose City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified San Jose City of the PBM services Express Scripts provides and San Jose City began receiving those services on April 16, 2010. *See id.* Inasmuch as San Jose City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), San Jose City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. San Jose City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** San Jose City filed its original complaint on October 9, 2019, but waited until January 24, 2020 to implement a litigation hold. *See City of San Jose, California et al. v. Sackler et al.*, Case No. 1:19-op-45964-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: January 24, 2020). San Jose City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of

time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** San Jose City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** San Jose City seeks leave to amend to add claims against the PBMs in two cases: *City of San Jose v. Amerisourcebergen Drug Corp., et al.*, No. 1:19-OP-45768-DAP; and *City of San Jose, California, et al. v. Sackler, et al.*, No. 1:19-OP-45964-DAP. San Jose City's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for San Jose City's proposed RICO claim against the PBMs has expired. San Jose City filed its original complaint on October 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of San Jose, California et al. v. Sackler et al.*, Case No. 1:19-op-45964-DAP, ECF No. 1. It is therefore indisputable that San Jose City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. San Jose City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No.

2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. San Jose City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** San Jose City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1396. *City of Ocoee, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-45966-DAP: Plaintiff Ocoee City, Florida

Ocoee City's untimely motion for leave to amend should be denied for several reasons. Ocoee City failed to provide notice of its proposed amendments through a proposed complaint. Ocoee City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ocoee City's motion should be denied due to futility, as Ocoee City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ocoee City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ocoee City filed its original complaint on October 7, 2019 and the case was transferred to the MDL on November 5, 2019. *See City of Ocoee, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-45966-DAP, ECF No. 9. Ocoee City could have amended its complaint, without

leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Ocoee City elected not to do so. Instead, Ocoee City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Ocoee City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ocoee City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Ocoee City). That insignificant dispensing volume is much too low to support a finding of good cause for Ocoee City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ocoee City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ocoee City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ocoee City filed its original complaint on October 7, 2019. *See City of Ocoee, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-45966-DAP, ECF No. 1. Despite filing its case years ago, Ocoee City *never* implemented a

litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Ocoee City's case would force the parties and the Court to waste time and resources ascertaining the extent of Ocoee City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ocoee City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ocoee City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ocoee City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ocoee City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ocoee City of this deficiency on September 16, 2024 (*see* Exhibit B), but Ocoee City refused to amend or supplement its Fact Sheet. Under this Court's orders, Ocoee City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ocoee City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ocoee City's potential claims against them. Ocoee City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in

litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ocoee City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ocoee City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ocoee City's proposed RICO claim against the PBMs has expired. Ocoee City filed its original complaint on October 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Ocoee, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-45966-DAP, ECF No. 1. It is therefore indisputable that Ocoee City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Ocoee City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ocoee City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Ocoee City's public-nuisance claim against the PBMs is therefore time-barred because Ocoee City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 7, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Ocoee City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1397.** *Town of Southampton, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45968-DAP: Plaintiff Southampton Town, New York

Southampton Town's untimely motion for leave to amend should be denied for several reasons. Southampton Town failed to provide notice of its proposed amendments through a proposed complaint. Southampton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Southampton Town's motion should be denied due to futility, as Southampton Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Southampton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Southampton Town filed its original complaint directly into the MDL on November 4, 2019. *See Town of Southampton, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45968-

DAP, ECF No. 1. Southampton Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Southampton Town elected not to do so. Southampton Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Southampton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Southampton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Southampton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Southampton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Southampton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Southampton Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Southampton Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Southampton Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Southampton Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Southampton Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Southampton Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Southampton Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Southampton Town's potential claims against them. Southampton Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Southampton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Southampton Town's proposed RICO claim against the PBMs has expired. Southampton Town filed its original

complaint on November 4, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Southampton, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45968-DAP, ECF No. 1. Even assuming *arguendo* that Southampton Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 4, 2023. Southampton Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Southampton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Southampton Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Southampton Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1398. *Coquille Indian Tribe v. McKesson Corporation et al.*, Case No. 1:19-op-45970-DAP: Plaintiff Coquille Indian Tribe, Oregon

Coquille Indian Tribe's untimely motion for leave to amend should be denied for several reasons. Coquille Indian Tribe failed to provide notice of its proposed amendments through a proposed complaint. Coquille Indian Tribe also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Coquille Indian Tribe's motion should be denied due to futility, as Coquille Indian Tribe does not assert any allegations tying the PBMs to its alleged harm,

its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coquille Indian Tribe was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coquille Indian Tribe filed its original complaint directly into the MDL on November 5, 2019. *See Coquille Indian Tribe v. McKesson Corporation et al.*, Case No. 1:19-op-45970-DAP, ECF No. 1. Coquille Indian Tribe could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Coquille Indian Tribe elected not to do so. Coquille Indian Tribe waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Coquille Indian Tribe's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Coquille Indian Tribe's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Coquille Indian Tribe to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Coquille Indian Tribe filed its original complaint on November 5, 2019. *See Coquille Indian Tribe v. McKesson Corporation et al.*, Case No. 1:19-

op-45970-DAP, ECF No. 1. Despite filing its case years ago, Coquille Indian Tribe *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Coquille Indian Tribe's case would force the parties and the Court to waste time and resources ascertaining the extent of Coquille Indian Tribe's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Coquille Indian Tribe's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Coquille Indian Tribe therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Oregon law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Coquille Indian Tribe's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Oregon law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Coquille Indian Tribe, a native tribe in Oregon, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Coquille Indian Tribe's proposed RICO claim against the PBMs has expired. Coquille Indian Tribe filed its original

complaint on November 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Coquille Indian Tribe v. McKesson Corporation et al.*, Case No. 1:19-op-45970-DAP, ECF No. 1. It is therefore indisputable that Coquille Indian Tribe knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Coquille Indian Tribe's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Coquille Indian Tribe's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Coquille Indian Tribe, a native tribe in Oregon, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1399.** *Confederated Tribes of the Goshute Reservation v. McKesson Corporation et al.*, **Case No. 1:19-op-45972-DAP: Plaintiff Confederated Tribes of the Goshute Reservation, Nevada and Utah**

Confederated Tribes of the Goshute Reservation's untimely motion for leave to amend should be denied for several reasons. Confederated Tribes of the Goshute Reservation failed to provide notice of its proposed amendments through a proposed complaint. Confederated Tribes of the Goshute Reservation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Confederated Tribes of the Goshute Reservation's motion should be denied due to futility, as Confederated Tribes of the Goshute Reservation does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of

limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Confederated Tribes of the Goshute Reservation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Confederated Tribes of the Goshute Reservation filed its original complaint directly into the MDL on November 5, 2019. *See Confederated Tribes of the Goshute Reservation v. McKesson Corporation et al.*, Case No. 1:19-op-45972-DAP, ECF No. 1. Confederated Tribes of the Goshute Reservation could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Confederated Tribes of the Goshute Reservation elected not to do so. Confederated Tribes of the Goshute Reservation waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Confederated Tribes of the Goshute Reservation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Confederated Tribes of the Goshute Reservation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Confederated Tribes of the Goshute Reservation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Confederated Tribes of the Goshute Reservation filed its original complaint on November 5, 2019. *See Confederated Tribes of the Goshute Reservation v. McKesson Corporation et al.*, Case No. 1:19-op-45972-DAP, ECF No. 1. Despite filing its case years ago, Confederated Tribes of the Goshute Reservation *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Confederated Tribes of the Goshute Reservation's case would force the parties and the Court to waste time and resources ascertaining the extent of Confederated Tribes of the Goshute Reservation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Confederated Tribes of the Goshute Reservation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Confederated Tribes of the Goshute Reservation therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Nevada and Utah law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Confederated Tribes of the Goshute Reservation's delay in seeking to amend its complaint has impaired the PBMs' ability to

exercise those allocation-of-fault rights under Nevada and Utah law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Confederated Tribes of the Goshute Reservation, a native tribe in Nevada and Utah, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Confederated Tribes of the Goshute Reservation's proposed RICO claim against the PBMs has expired. Confederated Tribes of the Goshute Reservation filed its original complaint on November 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Confederated Tribes of the Goshute Reservation v. McKesson Corporation et al.*, Case No. 1:19-op-45972-DAP, ECF No. 1. It is therefore indisputable that Confederated Tribes of the Goshute Reservation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Confederated Tribes of the Goshute Reservation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Confederated Tribes of the Goshute Reservation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Confederated Tribes of the Goshute Reservation, a native tribe in Nevada and Utah, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1400.** *City of Homewood, Alabama v. Teva Pharmaceuticals et al.*, Case No.
> 1:19-op-45973-DAP: Plaintiff Homewood City, Alabama

Homewood City's untimely motion for leave to amend should be denied for several reasons. Homewood City failed to provide notice of its proposed amendments through a proposed complaint. Homewood City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Homewood City's motion should be denied due to futility, as Homewood City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Homewood City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Homewood City filed its original complaint directly into the MDL on November 5, 2019. *See City of Homewood, Alabama v. Teva Pharmaceuticals et al.*, Case No. 1:19-op-45973-DAP, ECF No. 1. Homewood City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Homewood City elected not to do so. Homewood City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Homewood City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Homewood City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Homewood City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Homewood City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Homewood City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Homewood City violated its basic duty to implement a timely litigation hold. Homewood City filed its original complaint on November 5, 2019, but waited until August 3, 2020 to implement a litigation hold—nearly nine months later. *See City of Homewood, Alabama v. Teva Pharmaceuticals et al.*, Case No. 1:19-op-45973-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 3, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Homewood City's case would force the parties and the Court to waste time and resources ascertaining the extent of Homewood City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The

PBMs are prejudiced by Homewood City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Homewood City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Homewood City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Homewood City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Homewood City of this deficiency on September 16, 2024 (*see* Exhibit B), but Homewood City refused to amend or supplement its Fact Sheet. Under this Court's orders, Homewood City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Homewood City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Homewood City's potential claims against them. Homewood City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Homewood City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Homewood City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Homewood City's proposed RICO claim against the PBMs has expired. Homewood City filed its original complaint on November 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Homewood, Alabama v. Teva Pharmaceuticals et al.*, Case No. 1:19-op-45973-DAP, ECF No. 1. It is therefore indisputable that Homewood City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Homewood City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Homewood City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Homewood City's public-nuisance claim against the PBMs is therefore time-barred because Homewood City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on November 5, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Homewood City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1401.** ***Pinoleville Pomo Nation v. McKesson Corporation et al.*, Case No. 1:19-op-45974-DAP: Plaintiff Pinoleville Pomo Nation, California**

Pinoleville Pomo Nation's untimely motion for leave to amend should be denied for several reasons. Pinoleville Pomo Nation failed to provide notice of its proposed amendments through a proposed complaint. Pinoleville Pomo Nation also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pinoleville Pomo Nation's motion should be denied due to futility, as Pinoleville Pomo Nation does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pinoleville Pomo Nation was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pinoleville Pomo Nation filed its original complaint directly into the MDL on November 5, 2019. *See Pinoleville Pomo Nation v. McKesson Corporation et al.*, Case No. 1:19-op-45974-DAP, ECF No. 1. Pinoleville Pomo Nation could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Pinoleville Pomo Nation elected not to do so. Pinoleville Pomo Nation waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Pinoleville Pomo

Nation's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pinoleville Pomo Nation's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pinoleville Pomo Nation to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pinoleville Pomo Nation filed its original complaint on November 5, 2019. *See Pinoleville Pomo Nation v. McKesson Corporation et al.*, Case No. 1:19-op-45974-DAP, ECF No. 1. Despite filing its case years ago, Pinoleville Pomo Nation *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pinoleville Pomo Nation's case would force the parties and the Court to waste time and resources ascertaining the extent of Pinoleville Pomo Nation's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pinoleville Pomo Nation's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pinoleville Pomo Nation therefore lacks good cause for leave to amend its

complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Pinoleville Pomo Nation, a native tribe in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pinoleville Pomo Nation's proposed RICO claim against the PBMs has expired. Pinoleville Pomo Nation filed its original complaint on November 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pinoleville Pomo Nation v. McKesson Corporation et al.*, Case No. 1:19-op-45974-DAP, ECF No. 1. It is therefore indisputable that Pinoleville Pomo Nation knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Pinoleville Pomo Nation's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pinoleville Pomo Nation's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pinoleville Pomo Nation, a native tribe in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1402.** ***Pueblo of Pojoaque v. McKesson Corporation et al.*, Case No. 1:19-op-45975-DAP: Plaintiff Pueblo of Pojoaque, New Mexico**

Pueblo of Pojoaque's untimely motion for leave to amend should be denied for several reasons. Pueblo of Pojoaque failed to provide notice of its proposed amendments through a proposed complaint. Pueblo of Pojoaque also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pueblo of Pojoaque's motion should be denied due to futility, as Pueblo of Pojoaque does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pueblo of Pojoaque was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pueblo of Pojoaque filed its original complaint directly into the MDL on November 5, 2019. *See Pueblo of Pojoaque v. McKesson Corporation et al.*, Case No. 1:19-op-45975-DAP, ECF No. 1. Pueblo of Pojoaque could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Pueblo of Pojoaque elected not to do so. Pueblo of Pojoaque waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Pueblo of Pojoaque's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Pueblo of Pojoaque filed its original complaint on November 5, 2019. *See Pueblo of Pojoaque v. McKesson Corporation et al.*, Case No. 1:19-op-45975-DAP, ECF No. 1. Despite filing its case years ago, Pueblo of Pojoaque *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pueblo of Pojoaque's case would force the parties and the Court to waste time and resources ascertaining the extent of Pueblo of Pojoaque's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pueblo of Pojoaque's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pueblo of Pojoaque therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Pueblo of Pojoaque has *never* served a Plaintiff Fact Sheet. Pueblo of Pojoaque's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Pueblo of Pojoaque's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6

(denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pueblo of Pojoaque's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pueblo of Pojoaque, a native tribe in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pueblo of Pojoaque's proposed RICO claim against the PBMs has expired. Pueblo of Pojoaque filed its original complaint on November 5, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pueblo of Pojoaque v. McKesson Corporation et al.*, Case No. 1:19-op-45975-DAP, ECF No. 1. It is therefore indisputable that Pueblo of Pojoaque knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Pueblo of Pojoaque's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pueblo of Pojoaque's request for leave to

amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pueblo of Pojoaque, a native tribe in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 1403. *City of Greeley v. Sackler et al.*, Case No. 1:19-op-45977-DAP: Plaintiff Greeley City, Colorado

Greeley City's untimely motion for leave to amend should be denied for several reasons. Greeley City failed to provide notice of its proposed amendments through a proposed complaint. Greeley City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Greeley City's motion should be denied due to futility, as Greeley City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Greeley City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greeley City amended its complaint on January 4, 2021, after transfer to the MDL on November 6, 2019. *See City of Greeley v. Sackler et al.*, Case No. 1:19-op-45977-DAP, ECF No. 11. Unlike many other plaintiffs, Greeley City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Greeley City's deadline to amend was in 2020. Greeley City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Greeley City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Greeley City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Greeley City). That insignificant dispensing volume is much too low to support a finding of good cause for Greeley City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Greeley City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Greeley City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Colorado law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greeley City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Colorado law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greeley City, a municipality in Colorado, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greeley City's proposed RICO claim against the PBMs has expired. Greeley City filed its original complaint on October 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Greeley v. Sackler et al.*, Case No. 1:19-op-45977-DAP, ECF No. 2. It is therefore indisputable that Greeley City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Greeley City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greeley City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Greeley City, a municipality in Colorado, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1404. *City of Columbia South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45979-DAP: Plaintiff Columbia City, South Carolina

Columbia City's untimely motion for leave to amend should be denied for several reasons. Columbia City failed to provide notice of its proposed amendments through a proposed complaint. Columbia City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Columbia City's motion should be denied

due to futility, as Columbia City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Columbia City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Columbia City filed its original complaint on October 11, 2019 and the case was transferred to the MDL on November 7, 2019. *See City of Columbia South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45979-DAP, ECF No. 7. Columbia City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Columbia City elected not to do so. Instead, Columbia City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Columbia City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Columbia City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Columbia City). That insignificant dispensing volume is much too low to support a finding of good cause for Columbia City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Columbia City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Columbia City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Columbia City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Columbia City of the PBM services Express Scripts provides and Columbia City began receiving those services on March 1, 2010. *See id.* Inasmuch as Columbia City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Columbia City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Columbia City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Columbia City filed its original complaint on October 11, 2019. *See City of Columbia South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45979-DAP, ECF No. 1. Despite filing its case years ago, Columbia City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Columbia City's case would

force the parties and the Court to waste time and resources ascertaining the extent of Columbia City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Columbia City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Columbia City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Columbia City has *never* served a Plaintiff Fact Sheet. Columbia City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Columbia City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under South Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Columbia City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under South Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Columbia City, a municipality in South Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Columbia City's proposed RICO claim against the PBMs has expired. Columbia City filed its original complaint on October 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Columbia South Carolina v. Purdue Pharma LP et al.*, Case No. 1:19-op-45979-DAP, ECF No. 1. It is therefore indisputable that Columbia City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Columbia City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Columbia City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Columbia City, a municipality in South Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1405. *City of Homestead, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45980-DAP: Plaintiff Homestead City, Florida

Homestead City's untimely motion for leave to amend should be denied for several reasons. Homestead City failed to provide notice of its proposed amendments through a proposed complaint. Homestead City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Homestead City's motion should be denied due to futility, as Homestead City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Homestead City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Homestead City filed its original complaint on October 7, 2019 and the case was transferred to the MDL on November 7, 2019. *See City of Homestead, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45980-DAP, ECF No. 6. Homestead City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Homestead City elected not to do so. Instead, Homestead City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Homestead City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Homestead City filed its original complaint on October 7, 2019. *See City of Homestead, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45980-DAP, ECF No. 1. Despite filing its case years ago, Homestead City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified

document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Homestead City's case would force the parties and the Court to waste time and resources ascertaining the extent of Homestead City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Homestead City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Homestead City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Homestead City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Homestead City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Homestead City of this deficiency on September 16, 2024 (*see* Exhibit B), but Homestead City refused to amend or supplement its Fact Sheet. Under this Court's orders, Homestead City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Homestead City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Homestead City's potential claims against them. Homestead City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Homestead City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Homestead City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Homestead City's proposed RICO claim against the PBMs has expired. Homestead City filed its original complaint on October 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Homestead, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45980-DAP, ECF No. 1. It is therefore indisputable that Homestead City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Homestead City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Homestead City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Homestead City's public-nuisance claim against the PBMs is therefore time-barred because Homestead City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 7, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Homestead City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1406. *City of Bainbridge Island v. Sackler et al.*, Case No. 1:19-op-45981-DAP: Plaintiff Bainbridge Island City, Washington

Bainbridge Island City's untimely motion for leave to amend should be denied for several reasons. Bainbridge Island City failed to provide notice of its proposed amendments through a proposed complaint. Bainbridge Island City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bainbridge Island City's motion should be denied due to futility, as Bainbridge Island City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bainbridge Island City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Bainbridge Island City amended its complaint on February 9, 2021, after transfer to the MDL on November 7, 2019. *See City of Bainbridge Island v. Sackler et al.*, Case No. 1:19-op-45981-DAP, ECF No. 11. Unlike many other plaintiffs, Bainbridge Island City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bainbridge Island City's deadline to amend was in 2020. Bainbridge Island City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Bainbridge Island City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** But OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bainbridge Island City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Bainbridge Island City). That insignificant dispensing volume is much too low to support a finding of good cause for Bainbridge Island City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bainbridge Island City filed its original complaint on October 8, 2019. *See City of Bainbridge Island v. Sackler et al.*, Case No. 1:19-op-45981-DAP, ECF No. 1. Despite filing its case years ago, Bainbridge Island City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)).

This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bainbridge Island City's case would force the parties and the Court to waste time and resources ascertaining the extent of Bainbridge Island City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bainbridge Island City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bainbridge Island City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bainbridge Island City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bainbridge Island City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bainbridge Island City's proposed RICO claim against the PBMs has expired. Bainbridge Island City filed its original complaint on October 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Bainbridge Island v. Sackler et al.*, Case No. 1:19-op-45981-DAP,

ECF No. 1. It is therefore indisputable that Bainbridge Island City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Bainbridge Island City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bainbridge Island City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Bainbridge Island City's public-nuisance claim against the PBMs is therefore time-barred because Bainbridge Island City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 8, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Bainbridge Island City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1407. *Macon County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45982-DAP: Plaintiff Macon County, Alabama

Macon County's untimely motion for leave to amend should be denied for several reasons. Macon County failed to provide notice of its proposed amendments through a proposed complaint. Macon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Macon County's motion should be denied due to futility, as Macon County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Macon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Macon County filed its original complaint on October 9, 2019 and the case was transferred to the MDL on November 7, 2019. *See Macon County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45982-DAP, ECF No. 26. Macon County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Macon County elected not to do so. Instead, Macon County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Macon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Macon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.33% market share for Macon County). That insignificant dispensing volume is much too low to support a finding of good cause for Macon County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Macon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Macon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Macon County filed its original complaint on October 9, 2019. *See Macon County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45982-DAP, ECF No. 1. Despite filing its case years ago, Macon County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Macon County's case would force the parties and the Court to waste time and resources ascertaining the extent of Macon County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Macon County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Macon County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Macon County's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Macon County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Macon County's proposed RICO claim against the PBMs has expired. Macon County filed its original complaint on October 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Macon County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45982-DAP, ECF No. 1. It is therefore indisputable that Macon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Macon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Macon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Macon County's public-nuisance claim against the PBMs is therefore time-barred because Macon County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 9, 2019—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Macon County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Macon County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1408. *Crenshaw County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45983-DAP: Plaintiff Crenshaw County, Alabama

Crenshaw County's untimely motion for leave to amend should be denied for several reasons. Crenshaw County failed to provide notice of its proposed amendments through a proposed complaint. Crenshaw County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Crenshaw County's motion should be denied due to futility, as Crenshaw County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Crenshaw County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Crenshaw County filed its original complaint on October 4, 2019 and the case was transferred to the MDL on November 7, 2019. *See Crenshaw County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45983-DAP, ECF No. 23. Crenshaw County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Crenshaw County elected not to do so. Instead, Crenshaw County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Crenshaw County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Crenshaw County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Crenshaw County). That insignificant dispensing volume is much too low to support a finding of good cause for Crenshaw County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Crenshaw County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Crenshaw County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Crenshaw County filed its original complaint on October 4, 2019. *See Crenshaw County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45983-DAP, ECF No. 1. Despite filing its case years ago, Crenshaw County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Crenshaw County's case would force the parties and the Court to waste time and resources ascertaining the extent of Crenshaw County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Crenshaw County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Crenshaw County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Crenshaw County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Crenshaw County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Crenshaw County of this deficiency on September 16, 2024 (*see* Exhibit B), but Crenshaw County refused to amend or supplement its Fact Sheet. Under this Court's orders, Crenshaw County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Crenshaw County's refusal to provide basic information related to its health care plans prejudices

the PBMs' ability to defend against Crenshaw County's potential claims against them. Crenshaw County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Crenshaw County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Crenshaw County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Crenshaw County's proposed RICO claim against the PBMs has expired. Crenshaw County filed its original complaint on October 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Crenshaw County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45983-DAP, ECF No. 1. It is therefore indisputable that Crenshaw County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years

before seeking leave to amend. Crenshaw County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Crenshaw County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Crenshaw County's public-nuisance claim against the PBMs is therefore time-barred because Crenshaw County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 4, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Crenshaw County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Crenshaw County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1409.** *City of Palatka, Florida v. Endo Health Solutions Inc., et al.*, **Case No. 1:19-op-45984-DAP: Plaintiff Palatka City, Florida**

Palatka City's untimely motion for leave to amend should be denied for several reasons. Palatka City failed to provide notice of its proposed amendments through a proposed complaint. Palatka City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Palatka City's motion should be denied due to futility, as Palatka City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Palatka City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Palatka City filed its original complaint on October 8, 2019 and the case was transferred to the MDL on November 7, 2019. *See City of Palatka, Florida v. Endo Health Solutions Inc., et al.*, Case No. 1:19-op-45984-DAP, ECF No. 4. Palatka City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Palatka City elected not to do so. Instead, Palatka City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Palatka City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Palatka City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.45% market share for Palatka City). That insignificant dispensing volume is much too low to support a finding of good cause for Palatka City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Palatka City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Palatka City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Palatka City filed its original complaint on October 8, 2019. *See City of Palatka, Florida v. Endo Health Solutions Inc., et al.*, Case No. 1:19-op-45984-DAP, ECF No. 1. Despite filing its case years ago, Palatka City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Palatka City's case would force the parties and the Court to waste time and resources ascertaining the extent of Palatka City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Palatka City's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Palatka City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Palatka City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Palatka City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Palatka City's proposed RICO claim against the PBMs has expired. Palatka City filed its original complaint on October 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Palatka, Florida v. Endo Health Solutions Inc., et al.*, Case No. 1:19-op-45984-DAP, ECF No. 1. It is therefore indisputable that Palatka City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Palatka City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Palatka City's request for leave to amend to add a RICO claim should be denied as

5168

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Palatka City's public-nuisance claim against the PBMs is therefore time-barred because Palatka City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 8, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Palatka City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1410. *County of Freestone v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45985-DAP: Plaintiff Freestone County, Texas

Freestone County's untimely motion for leave to amend should be denied for several reasons. Freestone County failed to provide notice of its proposed amendments through a proposed complaint. Freestone County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Freestone County's motion should be denied due to futility, as Freestone County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Freestone County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Freestone County first amended its complaint on September 3, 2019. *See County of Freestone v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45985-DAP, ECF No. 1-1. Unlike many other plaintiffs, Freestone County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Freestone County's deadline to amend was in 2020. Freestone County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Freestone County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Freestone County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.27% market share for Freestone County). That insignificant dispensing volume is much too low to support a finding of good cause for Freestone County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Freestone County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Freestone County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Freestone County filed its original complaint on October 23, 2018. *See County of Freestone v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45985-DAP, ECF No. 1-1. Despite filing its case years ago, Freestone County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Freestone County's case would force the parties and the Court to waste time and resources ascertaining the extent of Freestone County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Freestone County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Freestone County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Freestone County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Freestone County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Freestone County of this deficiency on September 16, 2024 (*see* Exhibit B), but Freestone County refused to amend or supplement its Fact Sheet. Under this Court's orders, Freestone County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Freestone County's refusal to provide basic information related to its health care plans prejudices the PBMs'

ability to defend against Freestone County's potential claims against them. Freestone County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Freestone County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Freestone County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Freestone County's proposed RICO claim against the PBMs has expired. Freestone County filed its first amended complaint on September 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Freestone v. Purdue Pharma L.P., et al.*, Case No. 1:19-op-45985-DAP, ECF No. 1-1. It is therefore indisputable that Freestone County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Freestone County's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Freestone County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Freestone County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1411. *City of Geneva, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45986-DAP: Plaintiff Geneva City, Alabama

Geneva City's untimely motion for leave to amend should be denied for several reasons. Geneva City failed to provide notice of its proposed amendments through a proposed complaint. Geneva City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Geneva City's motion should be denied due to futility, as Geneva City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Geneva City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Geneva City filed its original complaint on October 9, 2019 and the case was transferred to the MDL on November 7, 2019. *See City of Geneva, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45986-DAP, ECF No. 22. Geneva City could have amended its complaint, without leave,

to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Geneva City elected not to do so. Instead, Geneva City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Geneva City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Geneva City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.005% market share for Geneva City). That insignificant dispensing volume is much too low to support a finding of good cause for Geneva City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Geneva City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Geneva City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Geneva City filed its original complaint on October 9, 2019. *See City of Geneva, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-

45986-DAP, ECF No. 1. Despite filing its case years ago, Geneva City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Geneva City's case would force the parties and the Court to waste time and resources ascertaining the extent of Geneva City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Geneva City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Geneva City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Geneva City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Geneva City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Geneva City of this deficiency on September 16, 2024 (*see* Exhibit B), but Geneva City refused to amend or supplement its Fact Sheet. Under this Court's orders, Geneva City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Geneva City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Geneva City's potential claims against them. Geneva City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in

litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Geneva City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Geneva City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Geneva City's proposed RICO claim against the PBMs has expired. Geneva City filed its original complaint on October 9, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Geneva, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45986-DAP, ECF No. 1. It is therefore indisputable that Geneva City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Geneva City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Geneva City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Geneva City's public-nuisance claim against the PBMs is therefore time-barred because Geneva City sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 9, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Geneva City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1412.** ***Building Service Local 2 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45991-DAP: Plaintiff Building Service Local 2 Welfare Fund, New York**

Building Service Local 2 Welfare Fund's untimely motion for leave to amend should be denied for several reasons. Building Service Local 2 Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. Building Service Local 2 Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Building Service Local 2 Welfare Fund's motion should be denied due to futility, as Building Service Local 2 Welfare Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Building Service Local 2 Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Building Service Local 2 Welfare Fund filed its original complaint

directly into the MDL on November 6, 2019. *See Building Service Local 2 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45991-DAP, ECF No. 1. Building Service Local 2 Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Building Service Local 2 Welfare Fund elected not to do so. Building Service Local 2 Welfare Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Building Service Local 2 Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Building Service Local 2 Welfare Fund has *never* served a Plaintiff Fact Sheet. Building Service Local 2 Welfare Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Building Service Local 2 Welfare Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Building Service Local 2 Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise

those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Building Service Local 2 Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Building Service Local 2 Welfare Fund's proposed RICO claim against the PBMs has expired. Building Service Local 2 Welfare Fund filed its original complaint on November 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Building Service Local 2 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-45991-DAP, ECF No. 1. It is therefore indisputable that Building Service Local 2 Welfare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Building Service Local 2 Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Building Service Local 2 Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Building Service Local 2 Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Building Service

5179

Local 2 Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL §

145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming

denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1413. *Incorporated Village of Lawrence, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45992-DAP: Plaintiff Lawrence Village, New York

Lawrence Village's untimely motion for leave to amend should be denied for several

reasons. Lawrence Village failed to provide notice of its proposed amendments through a proposed

complaint. Lawrence Village also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would

unduly prejudice the PBMs. Moreover, Lawrence Village's motion should be denied due to

futility, as Lawrence Village does not assert any allegations tying the PBMs to its alleged harm,

and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Lawrence Village was on notice of its claims against the PBMs for

years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Lawrence Village filed its original complaint directly into the MDL on November 6,

2019. *See Incorporated Village of Lawrence, NY v. McKesson Corporation et al.*, Case No. 1:19-

op-45992-DAP, ECF No. 1. Lawrence Village could have amended its complaint, without leave,

to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs,

Lawrence Village elected not to do so. Lawrence Village waited four years after its deadline to

amend to seek leave to assert claims against the PBMs. Lawrence Village's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial

of motion to amend nine months after the scheduling order's deadline because plaintiff "had all

the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lawrence Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Lawrence Village). That insignificant dispensing volume is much too low to support a finding of good cause for Lawrence Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lawrence Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lawrence Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lawrence Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Lawrence Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Lawrence Village's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lawrence Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lawrence Village's potential claims against them. Lawrence Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693,

at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lawrence Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Lawrence Village's proposed RICO claim against the PBMs has expired. Lawrence Village filed its original complaint on November 6, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Lawrence, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45992-DAP, ECF No. 1. Even assuming *arguendo* that Lawrence Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 6, 2023. Lawrence Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lawrence Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lawrence Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Lawrence Village's request for leave to

amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1414. *Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP: Plaintiff Richmond County, Virginia

Richmond County's untimely motion for leave to amend should be denied for several reasons. Richmond County failed to provide notice of its proposed amendments through a proposed complaint. Richmond County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Richmond County's motion should be denied due to futility, as Richmond County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Richmond County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Richmond County amended its complaint on March 16, 2021, after directly filing in the MDL. *See Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP, ECF No. 5. Unlike many other plaintiffs, Richmond County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Richmond County's deadline to amend was in 2020. Richmond County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Richmond County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Richmond County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Richmond County). That insignificant dispensing volume is much too low to support a finding of good cause for Richmond County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Richmond County filed its original complaint on November 7, 2019. *See Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP, ECF No. 1. Despite filing its case years ago, Richmond County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Richmond County's case would force the parties and the Court to waste time and resources ascertaining the extent of Richmond County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Richmond County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Richmond County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time

resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Richmond County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Richmond County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Richmond County's proposed RICO claim against the PBMs has expired. Richmond County filed its original complaint on November 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP, ECF No. 1. It is therefore indisputable that Richmond County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Richmond County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Richmond County's request for leave to

amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Richmond County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1415. *Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP: Plaintiff Warren County, Virginia

Warren County's untimely motion for leave to amend should be denied for several reasons. Warren County failed to provide notice of its proposed amendments through a proposed complaint. Warren County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Warren County's motion should be denied due to futility, as Warren County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Warren County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Warren County amended its complaint on March 16, 2021, after directly filing in the MDL. *See Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP, ECF No. 5. Unlike many other plaintiffs, Warren County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Warren County's deadline to amend was in 2020. Warren County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Warren County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Warren County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Warren County). That insignificant dispensing volume is much too low to support a finding of good cause for Warren County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Warren County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Warren County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Warren County filed its original complaint on November 7, 2019. *See Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP, ECF No. 1. Despite filing its case years ago, Warren County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Warren County's case would force the parties and the Court to waste time and resources ascertaining the extent of Warren County's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Warren County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Warren County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Warren County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Warren County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Warren County's proposed RICO claim against the PBMs has expired. Warren County filed its original complaint on November 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP, ECF No. 1. It is therefore indisputable that Warren County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Warren County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is

triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Warren County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Warren County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1416. *Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP: Plaintiff Westmoreland County, Virginia

Westmoreland County's untimely motion for leave to amend should be denied for several reasons. Westmoreland County failed to provide notice of its proposed amendments through a proposed complaint. Westmoreland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Westmoreland County's motion should be denied due to futility, as Westmoreland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Westmoreland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Westmoreland County amended its complaint on March 16, 2021, after directly filing in the MDL. *See Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP, ECF No. 5. Unlike many other plaintiffs, Westmoreland County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Westmoreland County's deadline to amend was in 2020. Westmoreland County waited four years after its

deadline to amend to seek leave to assert claims against the PBMs. Westmoreland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Westmoreland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.32% market share for Westmoreland County). That insignificant dispensing volume is much too low to support a finding of good cause for Westmoreland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Westmoreland County filed its original complaint on November 7, 2019. *See Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP, ECF No. 1. Despite filing its case years ago, Westmoreland County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Westmoreland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Westmoreland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Westmoreland County's

disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Westmoreland County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Westmoreland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Westmoreland County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Westmoreland County's proposed RICO claim against the PBMs has expired. Westmoreland County filed its original complaint on November 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Westmoreland County, Virginia et al. v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45993-DAP, ECF No. 1. It is therefore indisputable that Westmoreland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Westmoreland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that

the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westmoreland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Westmoreland County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1417. *Coosa County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45995-DAP: Plaintiff Coosa County, Alabama

Coosa County's untimely motion for leave to amend should be denied for several reasons. Coosa County failed to provide notice of its proposed amendments through a proposed complaint. Coosa County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Coosa County's motion should be denied due to futility, as Coosa County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coosa County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coosa County filed its original complaint on October 4, 2019 and the case was transferred to the MDL on November 12, 2019. *See Coosa County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45995-DAP, ECF No. 26. Coosa County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other

plaintiffs, Coosa County elected not to do so. Instead, Coosa County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Coosa County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Coosa County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Coosa County). That insignificant dispensing volume is much too low to support a finding of good cause for Coosa County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Coosa County filed its original complaint on October 4, 2019. *See Coosa County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45995-DAP, ECF No. 1. Despite filing its case years ago, Coosa County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Coosa County's case would force the parties and the Court to waste time and resources ascertaining the extent of Coosa County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Coosa County's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Coosa County therefore lacks good cause

for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents

or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek

to allocate fault to other parties. *See* Section III.A.6, above. But Coosa County's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially

prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Coosa County, a municipality in Alabama, has not pleaded any

facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from

another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Coosa County's proposed

RICO claim against the PBMs has expired. Coosa County filed its original complaint on October

4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Coosa County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-45995-DAP, ECF

No. 1. It is therefore indisputable that Coosa County knew of its RICO injury, at the very latest,

the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to

amend. Coosa County's RICO claim is therefore time-barred by RICO's four-year limitations

period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery

of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Coosa County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Coosa County's public-nuisance claim against the PBMs is therefore time-barred because Coosa County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 4, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Coosa County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Coosa County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1418. *Town of Andover v. Teva Pharmaceuticals USA Inc et al.*, Case No. 1:19-op-45996-DAP: Plaintiff Andover Town, Massachusetts

Andover Town's untimely motion for leave to amend should be denied for several reasons. Andover Town failed to provide notice of its proposed amendments through a proposed complaint. Andover Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Andover Town's motion should

be denied due to futility, as Andover Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Andover Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Andover Town amended its complaint on February 10, 2020, after transfer to the MDL on November 12, 2019. *See Town of Andover v. Teva Pharmaceuticals USA Inc et al.*, Case No. 1:19-op-45996-DAP, ECF No. 26. Unlike many other plaintiffs, Andover Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Andover Town's deadline to amend was in 2020. Andover Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Andover Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Andover Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Andover Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Andover Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of

discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Andover Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.0001% market share for Andover Town). That insignificant dispensing volume is much too low to support a finding of good cause for Andover Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Andover Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Andover Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Andover Town filed its original complaint on October 11, 2019, but waited until February 27, 2020 to implement a litigation hold. *See Town of Andover v. Teva Pharmaceuticals USA Inc et al.*, Case No. 1:19-op-45996-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 27, 2020). Andover Town's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery

obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Andover Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Andover Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Andover Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Andover Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Andover Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Andover Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Andover Town's potential claims against them. Andover Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Andover Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Andover Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Andover Town's proposed RICO claim against the PBMs has expired. Andover Town filed its original complaint on October 11, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Andover v. Teva Pharmaceuticals USA Inc et al.*, Case No. 1:19-op-45996-DAP, ECF No. 1. It is therefore indisputable that Andover Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Andover Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Andover Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Andover Town's public-nuisance claim against the PBMs is therefore time-barred because Andover Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on October 11, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Andover Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1419.** ***West Pittston, Pennsylvania v. The Purdue Frederick Company, Inc., et al.*, Case No. 1:19-op-45997-DAP: Plaintiff West Pittston Borough, Pennsylvania**

West Pittston Borough's untimely motion for leave to amend should be denied for several reasons. West Pittston Borough failed to provide notice of its proposed amendments through a proposed complaint. West Pittston Borough also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Pittston Borough's motion should be denied due to futility, as West Pittston Borough does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** West Pittston Borough was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Pittston Borough filed its original complaint on October 14, 2019 and the case was transferred to the MDL on November 12, 2019. *See West Pittston, Pennsylvania v. The Purdue Frederick Company, Inc., et al.*, Case No. 1:19-op-45997-DAP, ECF No. 4. West Pittston Borough could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, West Pittston Borough elected not to do so. Instead, West Pittston Borough waited four years after its deadline to amend to seek leave to assert

claims against the PBMs. West Pittston Borough's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to West Pittston Borough's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, West Pittston Borough cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** West Pittston Borough filed its original complaint on October 14, 2019. *See West Pittston, Pennsylvania v. The Purdue Frederick Company, Inc., et al.*, Case No. 1:19-op-45997-DAP, ECF No. 1. Despite filing its case years ago, West Pittston Borough *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating West Pittston Borough's case would force the parties and the Court to waste time and resources ascertaining the extent of West Pittston Borough's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by West Pittston Borough's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and West Pittston Borough therefore lacks good cause for leave to

amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, West Pittston Borough failed to provide complete answers to Questions I.B.8 and I.B.9, relating to West Pittston Borough's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified West Pittston Borough of this deficiency on September 16, 2024 (*see* Exhibit B), but West Pittston Borough refused to amend or supplement its Fact Sheet. Under this Court's orders, West Pittston Borough's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. West Pittston Borough's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against West Pittston Borough's potential claims against them. West Pittston Borough's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Pittston Borough's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time.

That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Pittston Borough, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Pittston Borough's proposed RICO claim against the PBMs has expired. West Pittston Borough filed its original complaint on October 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See West Pittston, Pennsylvania v. The Purdue Frederick Company, Inc., et al.*, Case No. 1:19-op-45997-DAP, ECF No. 1. It is therefore indisputable that West Pittston Borough knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. West Pittston Borough's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Pittston Borough's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** West Pittston Borough, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1420. ***Village of Millerton, NY et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45998-DAP: Plaintiff Millerton Village, New York**

Millerton Village's untimely motion for leave to amend should be denied for several reasons. Millerton Village failed to provide notice of its proposed amendments through a proposed complaint. Millerton Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Millerton Village's motion should be denied due to futility, as Millerton Village does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Millerton Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Millerton Village filed its original complaint directly into the MDL on November 11, 2019. *See Village of Millerton, NY et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45998-DAP, ECF No. 1. Millerton Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Millerton Village elected not to do so. Millerton Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Millerton Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Millerton Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Millerton Village). That insignificant dispensing volume is much too low to support a finding of good cause for Millerton Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Millerton Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Millerton Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Millerton Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Millerton Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Millerton Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Millerton Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Millerton Village's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Millerton Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Millerton Village's potential claims against them. Millerton Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs'

counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Millerton Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Millerton Village's proposed RICO claim against the PBMs has expired. Millerton Village filed its original complaint on November 11, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Millerton, NY et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-45998-DAP, ECF No. 1. Even assuming *arguendo* that Millerton Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 11, 2023. Millerton Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Millerton Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Millerton Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York,

or the state of New York. *See* Section III.B.6, above. Millerton Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1421.** ***Incorporated Village of East Rockaway, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45999-DAP: Plaintiff East Rockaway Village, New York**

East Rockaway Village's untimely motion for leave to amend should be denied for several reasons. East Rockaway Village failed to provide notice of its proposed amendments through a proposed complaint. East Rockaway Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, East Rockaway Village's motion should be denied due to futility, as East Rockaway Village does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** East Rockaway Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, East Rockaway Village filed its original complaint directly into the MDL on November 11, 2019. *See Incorporated Village of East Rockaway, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45999-DAP, ECF No. 1. East Rockaway Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, East Rockaway Village elected not to do so. East Rockaway Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. East Rockaway Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to East Rockaway Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for East Rockaway Village). That insignificant dispensing volume is much too low to support a finding of good cause for East Rockaway Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, East Rockaway Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to East Rockaway Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified East Rockaway Village of this deficiency on September 16, 2024 (*see* Exhibit B), but East Rockaway Village refused to amend or supplement its Fact Sheet. Under this Court's orders, East Rockaway Village's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. East Rockaway Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against East Rockaway Village's potential claims against them. East Rockaway Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But East Rockaway Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for East Rockaway Village's proposed RICO claim against the PBMs has expired. East Rockaway Village filed its original complaint on November 11, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of East Rockaway, NY v. McKesson Corporation et al.*, Case No. 1:19-op-45999-DAP, ECF No. 1. Even assuming *arguendo* that East Rockaway Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 11, 2023. East Rockaway Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. East Rockaway Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** East Rockaway Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in

New York, or the state of New York. *See* Section III.B.6, above. East Rockaway Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1422. *Incorporated Village of Floral Park v. McKesson Corporation et al.*, Case No. 1:19-op-46000-DAP: Plaintiff Floral Park Village, New York

Floral Park Village's untimely motion for leave to amend should be denied for several reasons. Floral Park Village failed to provide notice of its proposed amendments through a proposed complaint. Floral Park Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Floral Park Village's motion should be denied due to futility, as Floral Park Village does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Floral Park Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Floral Park Village filed its original complaint directly into the MDL on November 11, 2019. *See Incorporated Village of Floral Park v. McKesson Corporation et al.*, Case No. 1:19-op-46000-DAP, ECF No. 1. Floral Park Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Floral Park Village elected not to do so. Floral Park Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Floral Park Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Floral Park Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Floral Park Village). That insignificant dispensing volume is much too low to support a finding of good cause for Floral Park Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Floral Park Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Floral Park Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Floral Park Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Floral Park Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Floral Park Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Floral Park Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Floral Park Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Floral Park Village's refusal to provide basic information related to its health care plans prejudices the

PBMs' ability to defend against Floral Park Village's potential claims against them. Floral Park Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Floral Park Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Floral Park Village's proposed RICO claim against the PBMs has expired. Floral Park Village filed its original complaint on November 11, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Floral Park v. McKesson Corporation et al.*, Case No. 1:19-op-46000-DAP, ECF No. 1. Even assuming *arguendo* that Floral Park Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 11, 2023. Floral Park Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Floral Park Village's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Floral Park Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Floral Park Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1423. *Village of Stewart Manor, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46002-DAP: Plaintiff Stewart Manor Village, New York

Stewart Manor Village's untimely motion for leave to amend should be denied for several reasons. Stewart Manor Village failed to provide notice of its proposed amendments through a proposed complaint. Stewart Manor Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Stewart Manor Village's motion should be denied due to futility, as Stewart Manor Village does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Stewart Manor Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Stewart Manor Village filed its original complaint directly into the MDL on November 13, 2019. *See Village of Stewart Manor, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46002-DAP, ECF No. 1. Stewart Manor Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs,

Stewart Manor Village elected not to do so. Stewart Manor Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Stewart Manor Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Stewart Manor Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Stewart Manor Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Stewart Manor Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.36% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Stewart Manor Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Stewart Manor Village violated its basic duty to implement a timely litigation hold. Stewart Manor Village filed its original complaint on November 13, 2019, but waited until November 13, 2020 to implement a litigation hold—one year

later. *See Village of Stewart Manor, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46002-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 13, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Stewart Manor Village's case would force the parties and the Court to waste time and resources ascertaining the extent of Stewart Manor Village's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Stewart Manor Village's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Stewart Manor Village therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Stewart Manor Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Stewart Manor Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Stewart Manor Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Stewart Manor Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Stewart Manor Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Stewart Manor Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Stewart Manor Village's potential claims against them. Stewart Manor Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See*

Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stewart Manor Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Stewart Manor Village's proposed RICO claim against the PBMs has expired. Stewart Manor Village filed its original complaint on November 13, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Stewart Manor, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46002-DAP, ECF No. 1. Even assuming *arguendo* that Stewart Manor Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 13, 2023. Stewart Manor Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Stewart Manor Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Stewart Manor Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Stewart Manor Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1424.** ***South Farmingdale Fire District, NY v. McKesson Corporation et al.*****, Case No.  1:19-op-46003-DAP:  Plaintiff  South  Farmingdale  Fire District, New York**

South Farmingdale Fire District's untimely motion for leave to amend should be denied for several reasons. South Farmingdale Fire District failed to provide notice of its proposed amendments through a proposed complaint. South Farmingdale Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, South Farmingdale Fire District's motion should be denied due to futility, as South Farmingdale Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** South Farmingdale Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, South Farmingdale Fire District amended its complaint on November 14, 2019, after directly filing in the MDL. *See South Farmingdale Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46003-DAP, ECF No. 2. Unlike many other plaintiffs, South Farmingdale Fire District declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. South Farmingdale Fire District's deadline to amend was in 2020. South Farmingdale Fire District waited four years after its deadline to amend to seek leave to assert

claims against the PBMs. South Farmingdale Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, South Farmingdale Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to South Farmingdale Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified South Farmingdale Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but South Farmingdale Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, South Farmingdale Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. South Farmingdale Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against South Farmingdale Fire District's potential claims against them. South Farmingdale Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But South Farmingdale Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** South Farmingdale Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for South Farmingdale Fire District's proposed RICO claim against the PBMs has expired. South Farmingdale Fire District filed its original complaint on November 13, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See South Farmingdale Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46003-DAP, ECF No. 1. Even assuming *arguendo* that South Farmingdale Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 13, 2023. South Farmingdale Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. South Farmingdale Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** South Farmingdale Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. South Farmingdale Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1425.** ***Port Washington Water District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46004-DAP: Plaintiff Port Washington Water District, New York**

Port Washington Water District's untimely motion for leave to amend should be denied for several reasons. Port Washington Water District failed to provide notice of its proposed amendments through a proposed complaint. Port Washington Water District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Port Washington Water District's motion should be denied due to futility, as Port Washington Water District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Port Washington Water District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Port Washington Water District amended its complaint on November 14, 2019, after directly filing in the MDL. *See Port Washington Water District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46004-DAP, ECF No. 2. Unlike many other plaintiffs, Port Washington Water District declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Port Washington Water District's deadline to amend was in 2020. Port Washington Water District waited four years after its deadline to amend to seek leave to assert claims against

the PBMs. Port Washington Water District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Port Washington Water District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Port Washington Water District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Port Washington Water District of this deficiency on September 16, 2024 (*see* Exhibit B), but Port Washington Water District refused to amend or supplement its Fact Sheet. Under this Court's orders, Port Washington Water District's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Port Washington Water District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Port Washington Water District's potential claims against them. Port Washington Water District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Port Washington Water

District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Port Washington Water District, a water district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Port Washington Water District's proposed RICO claim against the PBMs has expired. Port Washington Water District filed its original complaint on November 13, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Port Washington Water District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46004-DAP, ECF No. 1. Even assuming *arguendo* that Port Washington Water District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 13, 2023. Port Washington Water District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Port Washington Water District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Port Washington Water District, a water district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county

in New York, or the state of New York. *See* Section III.B.6, above. Port Washington Water District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1426. *City of Long Beach, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46005-DAP: Plaintiff Long Beach City, New York

Long Beach City's untimely motion for leave to amend should be denied for several reasons. Long Beach City failed to provide notice of its proposed amendments through a proposed complaint. Long Beach City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Long Beach City's motion should be denied due to futility, as Long Beach City does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Long Beach City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Long Beach City filed its original complaint directly into the MDL on November 13, 2019. *See City of Long Beach, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46005-DAP, ECF No. 1. Long Beach City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Long Beach City elected not to do so. Long Beach City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Long Beach City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Long Beach City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Long Beach City). That insignificant dispensing volume is much too low to support a finding of good cause for Long Beach City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Long Beach City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Long Beach City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Long Beach City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Long Beach City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Long Beach City of this deficiency on September 16, 2024 (*see* Exhibit B), but Long Beach City refused to amend or supplement its Fact Sheet. Under this Court's orders, Long Beach City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Long Beach City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend

against Long Beach City's potential claims against them. Long Beach City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Long Beach City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Long Beach City's proposed RICO claim against the PBMs has expired. Long Beach City filed its original complaint on November 13, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Long Beach, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46005-DAP, ECF No. 1. Even assuming *arguendo* that Long Beach City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 13, 2023. Long Beach City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Long Beach City's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Long Beach City, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Long Beach City's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1427. *Plumbers Local Union No. 68 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46008-DAP: Plaintiff Plumbers Local Union No. 68 Welfare Fund, Texas

Plumbers Local Union No. 68 Welfare Fund's untimely motion for leave to amend should be denied for several reasons. Plumbers Local Union No. 68 Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. Plumbers Local Union No. 68 Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Plumbers Local Union No. 68 Welfare Fund's motion should be denied due to futility, as Plumbers Local Union No. 68 Welfare Fund does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Plumbers Local Union No. 68 Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Plumbers Local Union No. 68 Welfare Fund filed its original complaint directly into the MDL on November 14, 2019. *See Plumbers Local Union No. 68 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46008-DAP, ECF No. 1.

Plumbers Local Union No. 68 Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Plumbers Local Union No. 68 Welfare Fund elected not to do so. Plumbers Local Union No. 68 Welfare Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Plumbers Local Union No. 68 Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Plumbers Local Union No. 68 Welfare Fund has *never* served a Plaintiff Fact Sheet. Plumbers Local Union No. 68 Welfare Fund's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Plumbers Local Union No. 68 Welfare Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Plumbers Local Union No. 68 Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time.

That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Plumbers Local Union No. 68 Welfare Fund, a third party payor in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Plumbers Local Union No. 68 Welfare Fund's proposed RICO claim against the PBMs has expired. Plumbers Local Union No. 68 Welfare Fund filed its original complaint on November 14, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Plumbers Local Union No. 68 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46008-DAP, ECF No. 1. Even assuming *arguendo* that Plumbers Local Union No. 68 Welfare Fund first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 14, 2023. Plumbers Local Union No. 68 Welfare Fund's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Plumbers Local Union No. 68 Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Plumbers Local Union No. 68 Welfare Fund, a third party payor in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1428.** *Incorporated Village of Lynbrook, NY v. McKesson Corporation et al.*,
Case No. 1:19-op-46009-DAP: Plaintiff Lynbrook Village, New York

Lynbrook Village's untimely motion for leave to amend should be denied for several reasons. Lynbrook Village failed to provide notice of its proposed amendments through a proposed complaint. Lynbrook Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lynbrook Village's motion should be denied due to futility, as Lynbrook Village does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Lynbrook Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lynbrook Village filed its original complaint directly into the MDL on November 15, 2019. *See Incorporated Village of Lynbrook, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46009-DAP, ECF No. 1. Lynbrook Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Lynbrook Village elected not to do so. Lynbrook Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Lynbrook Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Lynbrook Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.0009% market share for Lynbrook Village). That insignificant dispensing volume is much too low to support a finding of good cause for Lynbrook Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lynbrook Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lynbrook Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lynbrook Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lynbrook Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lynbrook Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Lynbrook Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Lynbrook Village's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lynbrook Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lynbrook Village's potential claims against them. Lynbrook Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that

"plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lynbrook Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Lynbrook Village's proposed RICO claim against the PBMs has expired. Lynbrook Village filed its original complaint on November 15, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Lynbrook, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46009-DAP, ECF No. 1. Even assuming *arguendo* that Lynbrook Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 15, 2023. Lynbrook Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lynbrook Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lynbrook Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York,

or the state of New York. *See* Section III.B.6, above. Lynbrook Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1429. *Town of Eatonville, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-46014-DAP: Plaintiff Eatonville Town, Florida

Eatonville Town's untimely motion for leave to amend should be denied for several reasons. Eatonville Town failed to provide notice of its proposed amendments through a proposed complaint. Eatonville Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Eatonville Town's motion should be denied due to futility, as Eatonville Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Eatonville Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Eatonville Town filed its original complaint on October 21, 2019 and the case was transferred to the MDL on November 15, 2019. *See Town of Eatonville, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-46014-DAP, ECF No. 6. Eatonville Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Eatonville Town elected not to do so. Instead, Eatonville Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Eatonville Town's lack of diligence in pursuing its claims negates any finding of good cause. *See*

*Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Eatonville Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Eatonville Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Eatonville Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Eatonville Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Eatonville Town filed its original complaint on October 21, 2019. *See Town of Eatonville, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-46014-DAP, ECF No. 1. Despite filing its case years ago, Eatonville Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. See ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Eatonville Town's case would force the parties and the Court to waste time and resources ascertaining the extent of

Eatonville Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Eatonville Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Eatonville Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Eatonville Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Eatonville Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Eatonville Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Eatonville Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Eatonville Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Eatonville Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Eatonville Town's potential claims against them. Eatonville Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Eatonville Town's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Eatonville Town, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Eatonville Town's proposed RICO claim against the PBMs has expired. Eatonville Town filed its original complaint on October 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Eatonville, Florida v. Endo Health Solutions, Inc., et al.*, Case No. 1:19-op-46014-DAP, ECF No. 1. It is therefore indisputable that Eatonville Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Eatonville Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Eatonville Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Eatonville Town's public-nuisance claim against the PBMs is therefore time-barred because Eatonville Town sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on October 21, 2019—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Eatonville Town, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1430. *Roslyn Water District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46015-DAP: Plaintiff Roslyn Water District, New York

Roslyn Water District's untimely motion for leave to amend should be denied for several reasons. Roslyn Water District failed to provide notice of its proposed amendments through a proposed complaint. Roslyn Water District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Roslyn Water District's motion should be denied due to futility, as Roslyn Water District does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Roslyn Water District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Roslyn Water District filed its original complaint directly into the MDL on November 15, 2019. *See Rosalyn Water District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46015-DAP, ECF No. 1. Roslyn Water District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Roslyn Water District elected not to do so. Roslyn Water District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Roslyn Water District's lack

of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Roslyn Water District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Roslyn Water District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Roslyn Water District of this deficiency on September 16, 2024 (*see* Exhibit B), but Roslyn Water District refused to amend or supplement its Fact Sheet. Under this Court's orders, Roslyn Water District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Roslyn Water District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Roslyn Water District's potential claims against them. Roslyn Water District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Roslyn Water District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Roslyn Water District, a water district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Roslyn Water District's proposed RICO claim against the PBMs has expired. Roslyn Water District filed its original complaint on November 15, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Rosalyn Water District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46015-DAP, ECF No. 1. Even assuming *arguendo* that Roslyn Water District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 15, 2023. Roslyn Water District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Roslyn Water District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Roslyn Water District, a water district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Roslyn Water District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and

should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1431. *Town of Brookhaven, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46018-DAP: Plaintiff Brookhaven Town, New York

Brookhaven Town's untimely motion for leave to amend should be denied for several reasons. Brookhaven Town failed to provide notice of its proposed amendments through a proposed complaint. Brookhaven Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brookhaven Town's motion should be denied due to futility, as Brookhaven Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Brookhaven Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brookhaven Town filed its original complaint directly into the MDL on November 15, 2019. *See Town of Brookhaven, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46018-DAP, ECF No. 1. Brookhaven Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Brookhaven Town elected not to do so. Brookhaven Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Brookhaven Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

5239

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brookhaven Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Brookhaven Town). That insignificant dispensing volume is much too low to support a finding of good cause for Brookhaven Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Brookhaven Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Brookhaven Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Brookhaven Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Brookhaven Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Brookhaven Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Brookhaven Town's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Brookhaven Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Brookhaven Town's potential claims against them. Brookhaven Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in

any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brookhaven Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**RICO Statute of Limitations.** The statute of limitations for Brookhaven Town's proposed RICO claim against the PBMs has expired. Brookhaven Town filed its original complaint on November 15, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Brookhaven, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46018-DAP, ECF No. 1. Even assuming *arguendo* that Brookhaven Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 15, 2023. Brookhaven Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brookhaven Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Brookhaven Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York,

or the state of New York. *See* Section III.B.6, above. Brookhaven Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1432.** ***Village of Bellport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46019-DAP: Plaintiff Bellport Village, New York**

Bellport Village's untimely motion for leave to amend should be denied for several reasons. Bellport Village failed to provide notice of its proposed amendments through a proposed complaint. Bellport Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bellport Village's motion should be denied due to futility, as Bellport Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Bellport Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bellport Village filed its original complaint directly into the MDL on November 15, 2019. *See Village of Bellport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46019-DAP, ECF No. 1. Bellport Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Bellport Village elected not to do so. Bellport Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Bellport Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bellport Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Bellport Village). That insignificant dispensing volume is much too low to support a finding of good cause for Bellport Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bellport Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bellport Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bellport Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bellport Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bellport Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Bellport Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Bellport Village's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bellport Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend

against Bellport Village's potential claims against them. Bellport Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bellport Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Bellport Village's proposed RICO claim against the PBMs has expired. Bellport Village filed its original complaint on November 15, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Bellport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46019-DAP, ECF No. 1. Even assuming *arguendo* that Bellport Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 15, 2023. Bellport Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bellport Village's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bellport Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Bellport Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> ### 1433. *Incorporated Village of New Hyde Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46022-DAP: Plaintiff New Hyde Park Village, New York

New Hyde Park Village's untimely motion for leave to amend should be denied for several reasons. New Hyde Park Village failed to provide notice of its proposed amendments through a proposed complaint. New Hyde Park Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, New Hyde Park Village's motion should be denied due to futility, as New Hyde Park Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** New Hyde Park Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, New Hyde Park Village filed its original complaint directly into the MDL on November 15, 2019. *See Incorporated Village of New Hyde Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46022-DAP, ECF No. 1. New Hyde Park Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, New Hyde Park Village elected not to do so. New Hyde Park Village waited four

years after its deadline to amend to seek leave to assert claims against the PBMs. New Hyde Park Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to New Hyde Park Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for New Hyde Park Village). That insignificant dispensing volume is much too low to support a finding of good cause for New Hyde Park Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to New Hyde Park Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for New Hyde Park Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, New Hyde Park Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to New Hyde Park Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified New Hyde Park Village of this deficiency on September 16, 2024 (*see*

Exhibit B), but New Hyde Park Village refused to amend or supplement its Fact Sheet. Under this Court's orders, New Hyde Park Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. New Hyde Park Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against New Hyde Park Village's potential claims against them. New Hyde Park Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But New Hyde Park Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for New Hyde Park Village's proposed RICO claim against the PBMs has expired. New Hyde Park Village filed its original complaint on November 15, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of New Hyde Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46022-DAP, ECF No. 1. Even assuming *arguendo* that New Hyde Park Village first learned of its injury on the day it filed its original

complaint, RICO's four-year statute of limitations expired, at the very latest, on November 15, 2023. New Hyde Park Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. New Hyde Park Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** New Hyde Park Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. New Hyde Park Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1434. *Incorporated Village of Valley Stream, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46023-DAP: Plaintiff Valley Stream Village, New York

Valley Stream Village's untimely motion for leave to amend should be denied for several reasons. Valley Stream Village failed to provide notice of its proposed amendments through a proposed complaint. Valley Stream Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Valley Stream Village's motion should be denied due to futility, as Valley Stream Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Valley Stream Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Valley Stream Village filed its original complaint directly into the MDL on November 15, 2019. *See Incorporated Village of Valley Stream, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46023-DAP, ECF No. 1. Valley Stream Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Valley Stream Village elected not to do so. Valley Stream Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Valley Stream Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Valley Stream Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.28% market share for Valley Stream Village). That insignificant dispensing volume is much too low to support a finding of good cause for Valley Stream Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Valley Stream Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Valley Stream Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Valley Stream Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Valley Stream Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Valley Stream Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Valley Stream Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Valley Stream Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Valley Stream Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Valley Stream Village's potential claims against them. Valley Stream Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Valley Stream Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Valley Stream Village's proposed RICO claim against the PBMs has expired. Valley Stream Village filed its original complaint on November 15, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Valley Stream, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46023-DAP, ECF No. 1. Even assuming *arguendo* that Valley Stream Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 15, 2023. Valley Stream Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Valley Stream Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Valley Stream Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Valley Stream Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1435. *Incorporated Village of Massapequa Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46024-DAP: Plaintiff Massapequa Park Village, New York

Massapequa Park Village's untimely motion for leave to amend should be denied for several reasons. Massapequa Park Village failed to provide notice of its proposed amendments through a proposed complaint. Massapequa Park Village also lacks good cause under Rule 15 or

Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Massapequa Park Village's motion should be denied due to futility, as Massapequa Park Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Massapequa Park Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Massapequa Park Village filed its original complaint directly into the MDL on November 18, 2019. *See Incorporated Village of Massapequa Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46024-DAP, ECF No. 1. Massapequa Park Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Massapequa Park Village elected not to do so. Massapequa Park Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Massapequa Park Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Massapequa Park Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Massapequa Park Village). That insignificant dispensing volume is much too low to support a finding of good cause for Massapequa Park Village to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Massapequa Park Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Massapequa Park Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Massapequa Park Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Massapequa Park Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Massapequa Park Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Massapequa Park Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Massapequa Park Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Massapequa Park Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Massapequa Park Village's potential claims against them. Massapequa Park Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Massapequa Park Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Massapequa Park Village's proposed RICO claim against the PBMs has expired. Massapequa Park Village filed its original complaint on November 18, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Massapequa Park, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46024-DAP, ECF No. 1. Even assuming *arguendo* that Massapequa Park Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 18, 2023. Massapequa Park Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Massapequa Park Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Massapequa Park Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Massapequa Park Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile

and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1436. *Incorporated Village of Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46025-DAP: Plaintiff Westbury Village, New York

Westbury Village's untimely motion for leave to amend should be denied for several reasons. Westbury Village failed to provide notice of its proposed amendments through a proposed complaint. Westbury Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Westbury Village's motion should be denied due to futility, as Westbury Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Westbury Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Westbury Village filed its original complaint directly into the MDL on November 18, 2019. *See Incorporated Village of Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46025-DAP, ECF No. 1. Westbury Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Westbury Village elected not to do so. Westbury Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Westbury Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Westbury Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Westbury Village). That insignificant dispensing volume is much too low to support a finding of good cause for Westbury Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Westbury Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Westbury Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Westbury Village violated its basic duty to implement a timely litigation hold. Westbury Village filed its original complaint on November 18, 2019, but waited until November 18, 2020 to implement a litigation hold—one year later. *See Incorporated Village of Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46025-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: November 18, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Westbury Village's case would force the parties and the Court to waste time and resources ascertaining the extent of Westbury Village's document destruction and the appropriate sanctions—just as the

parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Westbury Village's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Westbury Village therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Westbury Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Westbury Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Westbury Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Westbury Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Westbury Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Westbury Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Westbury Village's potential claims against them. Westbury Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Westbury Village's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Westbury Village's proposed RICO claim against the PBMs has expired. Westbury Village filed its original complaint on November 18, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46025-DAP, ECF No. 1. Even assuming *arguendo* that Westbury Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 18, 2023. Westbury Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Westbury Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Westbury Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Westbury Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1437.** *Incorporated Village of Hempstead, NY v. McKesson Corporation et al.*,
Case No. 1:19-op-46026-DAP: Plaintiff Hempstead Village, New York

Hempstead Village's untimely motion for leave to amend should be denied for several reasons. Hempstead Village failed to provide notice of its proposed amendments through a proposed complaint. Hempstead Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hempstead Village's motion should be denied due to futility, as Hempstead Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Hempstead Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hempstead Village filed its original complaint directly into the MDL on November 18, 2019. *See Incorporated Village of Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46026-DAP, ECF No. 1. Hempstead Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Hempstead Village elected not to do so. Hempstead Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hempstead Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Hempstead Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Hempstead Village). That insignificant dispensing volume is much too low to support a finding of good cause for Hempstead Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hempstead Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hempstead Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hempstead Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hempstead Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hempstead Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Hempstead Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Hempstead Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hempstead Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hempstead Village's potential claims against them. Hempstead Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in

any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hempstead Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Hempstead Village's proposed RICO claim against the PBMs has expired. Hempstead Village filed its original complaint on November 18, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46026-DAP, ECF No. 1. Even assuming *arguendo* that Hempstead Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 18, 2023. Hempstead Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hempstead Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hempstead Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York,

or the state of New York. *See* Section III.B.6, above. Hempstead Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1438.** ***Incorporated Village of Poquott, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46031-DAP: Plaintiff Poquott Village, New York**

Poquott Village's untimely motion for leave to amend should be denied for several reasons. Poquott Village failed to provide notice of its proposed amendments through a proposed complaint. Poquott Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Poquott Village's motion should be denied due to futility, as Poquott Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Poquott Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Poquott Village filed its original complaint directly into the MDL on November 20, 2019. *See Incorporated Village of Poquott, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46031-DAP, ECF No. 1. Poquott Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Poquott Village elected not to do so. Poquott Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Poquott Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she]

needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Poquott Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Poquott Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Poquott Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Poquott Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Poquott Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Poquott Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Poquott Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Poquott Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Poquott Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Poquott Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Poquott Village's potential claims against them. Poquott Village's failure to diligently

prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Poquott Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Poquott Village's proposed RICO claim against the PBMs has expired. Poquott Village filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Poquott, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46031-DAP, ECF No. 1. Even assuming *arguendo* that Poquott Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. Poquott Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Poquott Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Poquott Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Poquott Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1439. *Incorporated Village of Lake Grove, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46032-DAP: Plaintiff Lake Grove Village, New York

Lake Grove Village's untimely motion for leave to amend should be denied for several reasons. Lake Grove Village failed to provide notice of its proposed amendments through a proposed complaint. Lake Grove Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lake Grove Village's motion should be denied due to futility, as Lake Grove Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Lake Grove Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lake Grove Village filed its original complaint directly into the MDL on November 20, 2019. *See Incorporated Village of Lake Grove, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46032-DAP, ECF No. 1. Lake Grove Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Lake Grove Village elected not to do so. Lake Grove Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Lake Grove Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Lake Grove Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lake Grove Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lake Grove Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lake Grove Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Lake Grove Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Lake Grove Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lake Grove Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lake Grove Village's potential claims against them. Lake Grove Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lake Grove Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Lake Grove Village's proposed RICO claim against the PBMs has expired. Lake Grove Village filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Lake Grove, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46032-DAP, ECF No. 1. Even assuming *arguendo* that Lake Grove Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. Lake Grove Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lake Grove Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lake Grove Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Lake Grove Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied.

*Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1440.  *Town of Smithtown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46033-DAP: Plaintiff Smithtown Town, New York

Smithtown Town's untimely motion for leave to amend should be denied for several reasons. Smithtown Town failed to provide notice of its proposed amendments through a proposed complaint. Smithtown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Smithtown Town's motion should be denied due to futility, as Smithtown Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Smithtown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Smithtown Town filed its original complaint directly into the MDL on November 20, 2019. *See Town of Smithtown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46033-DAP, ECF No. 1. Smithtown Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Smithtown Town elected not to do so. Smithtown Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Smithtown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Smithtown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Smithtown Town). That insignificant dispensing volume is much too low to support a finding of good cause for Smithtown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Smithtown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Smithtown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Smithtown Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Smithtown Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Smithtown Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Smithtown Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Smithtown Town's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Smithtown Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Smithtown Town's potential claims against them. Smithtown Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any

finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Smithtown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Smithtown Town's proposed RICO claim against the PBMs has expired. Smithtown Town filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Smithtown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46033-DAP, ECF No. 1. Even assuming *arguendo* that Smithtown Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. Smithtown Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Smithtown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Smithtown Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Smithtown Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1441.  *Bellmore Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46034-DAP: Plaintiff Bellmore Fire District, New York

Bellmore Fire District's untimely motion for leave to amend should be denied for several reasons. Bellmore Fire District failed to provide notice of its proposed amendments through a proposed complaint. Bellmore Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bellmore Fire District's motion should be denied due to futility, as Bellmore Fire District does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Bellmore Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bellmore Fire District filed its original complaint directly into the MDL on November 20, 2019. *See Bellmore Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46034-DAP, ECF No. 1. Bellmore Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Bellmore Fire District elected not to do so. Bellmore Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Bellmore Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bellmore Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bellmore Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bellmore Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Bellmore Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Bellmore Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bellmore Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Bellmore Fire District's potential claims against them. Bellmore Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bellmore Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bellmore Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bellmore Fire District's proposed RICO claim against the PBMs has expired. Bellmore Fire District filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Bellmore Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46034-DAP, ECF No. 1. Even assuming *arguendo* that Bellmore Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. Bellmore Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bellmore Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bellmore Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Bellmore Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and

should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1442.** ***Town of Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46035-DAP: Plaintiff Hempstead Town, New York**

Hempstead Town's untimely motion for leave to amend should be denied for several reasons. Hempstead Town failed to provide notice of its proposed amendments through a proposed complaint. Hempstead Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hempstead Town's motion should be denied due to futility, as Hempstead Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**<u>Lack of Diligence.</u>** Hempstead Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hempstead Town filed its original complaint directly into the MDL on November 20, 2019. *See Town of Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46035-DAP, ECF No. 1. Hempstead Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Hempstead Town elected not to do so. Hempstead Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hempstead Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hempstead Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Hempstead Town). That insignificant dispensing volume is much too low to support a finding of good cause for Hempstead Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hempstead Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.07% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hempstead Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hempstead Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hempstead Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hempstead Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Hempstead Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Hempstead Town's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hempstead Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hempstead Town's potential claims against them. Hempstead Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any

finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hempstead Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Hempstead Town's proposed RICO claim against the PBMs has expired. Hempstead Town filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46035-DAP, ECF No. 1. Even assuming *arguendo* that Hempstead Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. Hempstead Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hempstead Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hempstead Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Hempstead Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1443.** ***Town of Riverhead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46036-DAP: Plaintiff Riverhead Town, New York**

Riverhead Town's untimely motion for leave to amend should be denied for several reasons. Riverhead Town failed to provide notice of its proposed amendments through a proposed complaint. Riverhead Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Riverhead Town's motion should be denied due to futility, as Riverhead Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Riverhead Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Riverhead Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Riverhead Town). That insignificant dispensing volume is much too low to support a finding of good cause for Riverhead Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Riverhead Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Riverhead Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Riverhead Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Riverhead Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Riverhead Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Riverhead Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Riverhead Town's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Riverhead Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Riverhead Town's potential claims against them. Riverhead Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Riverhead Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Riverhead Town's proposed RICO claim against the PBMs has expired. Riverhead Town filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Riverhead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46036-DAP, ECF No. 1. Even assuming *arguendo* that Riverhead Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. Riverhead Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Riverhead Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Riverhead Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Riverhead Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1444.** *Incorporated Village of Farmingdale, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46037-DAP: Plaintiff Farmingdale Village, New York

Farmingdale Village's untimely motion for leave to amend should be denied for several reasons. Farmingdale Village failed to provide notice of its proposed amendments through a proposed complaint. Farmingdale Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Farmingdale Village's motion should be denied due to futility, as Farmingdale Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Farmingdale Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Farmingdale Village filed its original complaint directly into the MDL on November 20, 2019. *See Incorporated Village of Farmingdale, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46037-DAP, ECF No. 1. Farmingdale Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Farmingdale Village elected not to do so. Farmingdale Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Farmingdale Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Farmingdale Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Farmingdale Village). That insignificant dispensing volume is much too low to support a finding of good cause for Farmingdale Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Farmingdale Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Farmingdale Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Farmingdale Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Farmingdale Village's proposed RICO claim against the PBMs has expired. Farmingdale Village filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Farmingdale, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46037-DAP, ECF No. 1. Even assuming *arguendo* that Farmingdale Village first learned of its injury on the day it filed its original complaint, RICO's

four-year statute of limitations expired, at the very latest, on November 20, 2023. Farmingdale Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Farmingdale Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Farmingdale Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Farmingdale Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1445. *Town of Huntington, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46038-DAP: Plaintiff Huntington Town, New York

Huntington Town's untimely motion for leave to amend should be denied for several reasons. Huntington Town failed to provide notice of its proposed amendments through a proposed complaint. Huntington Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Huntington Town's motion should be denied due to futility, as Huntington Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Huntington Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Huntington Town filed its original complaint directly into the MDL on November 20,

2019. *See Town of Huntington, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46038-DAP, ECF No. 1. Huntington Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Huntington Town elected not to do so. Huntington Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Huntington Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Huntington Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Huntington Town). That insignificant dispensing volume is much too low to support a finding of good cause for Huntington Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Huntington Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Huntington Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Huntington Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Huntington Town's proposed RICO claim against the PBMs has expired. Huntington Town filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Huntington, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46038-DAP, ECF No. 1. Even assuming *arguendo* that Huntington Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. Huntington Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Huntington Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Huntington Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Huntington Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied.

*Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1446.  *Incorporated Village of Patchogue, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46039-DAP: Plaintiff Patchogue Village, New York

Patchogue Village's untimely motion for leave to amend should be denied for several reasons. Patchogue Village failed to provide notice of its proposed amendments through a proposed complaint. Patchogue Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Patchogue Village's motion should be denied due to futility, as Patchogue Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Patchogue Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Patchogue Village filed its original complaint directly into the MDL on November 20, 2019. *See Incorporated Village of Patchogue, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46039-DAP, ECF No. 1. Patchogue Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Patchogue Village elected not to do so. Patchogue Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Patchogue Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Patchogue Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Patchogue Village). That insignificant dispensing volume is much too low to support a finding of good cause for Patchogue Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Patchogue Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Patchogue Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Patchogue Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Patchogue Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Patchogue Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Patchogue Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Patchogue Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Patchogue Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Patchogue Village's potential claims against them. Patchogue Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs,

negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Patchogue Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Patchogue Village's proposed RICO claim against the PBMs has expired. Patchogue Village filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Patchogue, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46039-DAP, ECF No. 1. Even assuming *arguendo* that Patchogue Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. Patchogue Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Patchogue Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Patchogue Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Patchogue Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at \*2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1447. *Town of East Hampton, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46040-DAP: Plaintiff East Hampton Village, New York

East Hampton Village's untimely motion for leave to amend should be denied for several reasons. East Hampton Village failed to provide notice of its proposed amendments through a proposed complaint. East Hampton Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, East Hampton Village's motion should be denied due to futility, as East Hampton Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** East Hampton Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, East Hampton Village filed its original complaint directly into the MDL on November 20, 2019. *See Town of East Hampton, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46040-DAP, ECF No. 1. East Hampton Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, East Hampton Village elected not to do so. East Hampton Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. East Hampton Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to East Hampton Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for East Hampton Village). That insignificant dispensing volume is much too low to support a finding of good cause for East Hampton Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to East Hampton Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for East Hampton Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, East Hampton Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to East Hampton Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified East Hampton Village of this deficiency on September 16, 2024 (*see* Exhibit B), but East Hampton Village refused to amend or supplement its Fact Sheet. Under this Court's orders, East Hampton Village's case is therefore subject to "*dismiss[al] with prejudice*"

for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. East Hampton Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against East Hampton Village's potential claims against them. East Hampton Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But East Hampton Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for East Hampton Village's proposed RICO claim against the PBMs has expired. East Hampton Village filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of East Hampton, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46040-DAP, ECF No. 1. Even assuming *arguendo* that East Hampton Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. East Hampton Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is

triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. East Hampton Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** East Hampton Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. East Hampton Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1448. *Town of Oyster Bay, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46041-DAP: Plaintiff Oyster Bay Town, New York

Oyster Bay Town's untimely motion for leave to amend should be denied for several reasons. Oyster Bay Town failed to provide notice of its proposed amendments through a proposed complaint. Oyster Bay Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oyster Bay Town's motion should be denied due to futility, as Oyster Bay Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Oyster Bay Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oyster Bay Town filed its original complaint directly into the MDL on November 20, 2019. *See Town of Oyster Bay, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46041-DAP, ECF No. 1. Oyster Bay Town could have amended its complaint, without leave, to add claims

against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Oyster Bay Town elected not to do so. Oyster Bay Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Oyster Bay Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oyster Bay Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Oyster Bay Town). That insignificant dispensing volume is much too low to support a finding of good cause for Oyster Bay Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Oyster Bay Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Oyster Bay Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Oyster Bay Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Oyster Bay Town's health plans,

carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Oyster Bay Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Oyster Bay Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Oyster Bay Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Oyster Bay Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Oyster Bay Town's potential claims against them. Oyster Bay Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oyster Bay Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Oyster Bay Town's proposed RICO claim against the PBMs has expired. Oyster Bay Town filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Oyster Bay, NY v. McKesson Corporation et al.*, Case No.

1:19-op-46041-DAP, ECF No. 1. Even assuming *arguendo* that Oyster Bay Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. Oyster Bay Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oyster Bay Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Oyster Bay Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Oyster Bay Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1449.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Baltimore City Board of School Commissioners, Maryland**

Baltimore City Board of School Commissioners' untimely motion for leave to amend should be denied for several reasons. Baltimore City Board of School Commissioners failed to provide notice of its proposed amendments through a proposed complaint. Baltimore City Board of School Commissioners also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Baltimore City Board of School Commissioners' motion should be denied due to futility, as Baltimore City Board of School Commissioners does not assert any

allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Baltimore City Board of School Commissioners was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Baltimore City Board of School Commissioners filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Baltimore City Board of School Commissioners could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Baltimore City Board of School Commissioners elected not to do so. Baltimore City Board of School Commissioners waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Baltimore City Board of School Commissioners' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Baltimore City Board of School Commissioners previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Baltimore City Board of School Commissioners of the PBM services Express Scripts provides and Baltimore City Board of School Commissioners began receiving those services on January 1, 2006. *See id.* Inasmuch as Baltimore City Board of School Commissioners seeks to add

claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Baltimore City Board of School Commissioners knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Baltimore City Board of School Commissioners' delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Baltimore City Board of School Commissioners moved to amend the original complaint on October 26, 2020. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6. Despite anticipating litigation years ago, Baltimore City Board of School Commissioners *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. See ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Baltimore City Board of School Commissioners' case would force the parties and the Court to waste time and resources ascertaining the extent of Baltimore City Board of School Commissioners' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Baltimore City Board of School Commissioners' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Baltimore City Board of School Commissioners therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Baltimore City Board of School Commissioners' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Baltimore City Board of School Commissioners, a school district in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Baltimore City Board of School Commissioners seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Baltimore City Board of School Commissioners' impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion

to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Baltimore City Board of School Commissioners seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Baltimore City Board of School Commissioners is not a named plaintiff in that case. Because Baltimore City Board of School Commissioners has not submitted any proposed complaint and is not a plaintiff in the existing case, Baltimore City Board of School Commissioners has not pleaded any facts establishing injury to Baltimore City Board of School Commissioners and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Baltimore City Board of School Commissioners' public-nuisance claim against the PBMs is therefore time-barred because Baltimore City Board of School Commissioners sought leave to amend its complaint on July 29, 2024—three and a half years after filing its complaint in *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP on December 16, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Baltimore City Board of School Commissioners, a school district in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1450.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, **Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Bangor School Department, Maine**

Board of Education of Bangor School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Bangor School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Bangor School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Bangor School Department's motion should be denied due to futility, as Board of Education of Bangor School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Bangor School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Bangor School Department filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Bangor School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Bangor School Department elected not to do so. Board of Education of Bangor School Department waited three and a half years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Bangor School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Bangor School Department violated its basic duty to implement a timely litigation hold. Board of Education of Bangor School Department moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Bangor School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Bangor School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Bangor School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Bangor School Department therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Board of Education of Bangor School Department has *never* served a Plaintiff Fact Sheet. Board of Education of Bangor School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Bangor School Department's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Bangor School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Bangor School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Bangor School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and

*Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Bangor School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at \*2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Bangor School Department seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Bangor School Department is not a named plaintiff in that case. Because Board of Education of Bangor School Department has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Bangor School Department has not pleaded any facts establishing injury to Board of Education of Bangor School Department and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at \*2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Bangor School Department is a plaintiff in Maine. Board of Education of Bangor School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at \*6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Bangor School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1451.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Cape Elizabeth School District, Maine**

Board of Education of Cape Elizabeth School District's untimely motion for leave to amend should be denied for several reasons. Board of Education of Cape Elizabeth School District failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Cape Elizabeth School District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Cape Elizabeth School District's motion should be denied due to futility, as Board of Education of Cape Elizabeth School District does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Cape Elizabeth School District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Cape Elizabeth School District filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Cape Elizabeth School District could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Cape Elizabeth School District elected not to do so. Board of Education of Cape Elizabeth School District waited three and a half

years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Cape Elizabeth School District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**<u>Failure to Timely Implement a Litigation Hold.</u>** Board of Education of Cape Elizabeth School District violated its basic duty to implement a timely litigation hold. Board of Education of Cape Elizabeth School District moved to amend its original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Cape Elizabeth School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Cape Elizabeth School District's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Cape Elizabeth School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Cape Elizabeth School District therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Cape Elizabeth School District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Cape Elizabeth School District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Cape Elizabeth School District of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Cape Elizabeth School District refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Cape Elizabeth School District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Cape Elizabeth School District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Cape Elizabeth School District's potential claims against them. Board of Education of Cape Elizabeth School District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Cape Elizabeth School District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Cape Elizabeth School District, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Cape Elizabeth School District seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Cape Elizabeth School District's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Cape Elizabeth School District seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Cape Elizabeth School District is not a named plaintiff in that case. Because Board of Education of Cape Elizabeth School District has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Cape Elizabeth School District has not pleaded any facts establishing injury to Board of Education of Cape Elizabeth School District and its request for leave to amend should

be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Cape Elizabeth School District is a plaintiff in Maine. Board of Education of Cape Elizabeth School District's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Cape Elizabeth School District, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1452.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff The Board of Education of the City of Chicago, School District No. 299, Illinois**

The Board of Education of the City of Chicago, School District No. 299's untimely motion for leave to amend should be denied for several reasons. The Board of Education of the City of Chicago, School District No. 299 failed to provide notice of its proposed amendments through a proposed complaint. The Board of Education of the City of Chicago, School District No. 299 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, The Board of Education of the City of Chicago, School District No. 299's motion should be denied due to futility, as The Board of Education of the City of Chicago, School District No. 299 does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** The Board of Education of the City of Chicago, School District No. 299 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, the Board of Education of the City of Chicago, School District No. 299 filed its original complaint directly into the MDL on November 20, 2019. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 1. And while the Board of Education of the City of Chicago, School District No. 299 did attempt to amend its complaint, the amendment it sought did not name the PBMs. Thus, unlike many other plaintiffs, the Board of Education of the City of Chicago, School District No. 299 waited four years after its deadline to amend to seek leave to assert claims against the PBMs. The Board of Education of the City of Chicago, School District No. 299's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** The Board of Education of the City of Chicago, School District No. 299 filed its original complaint on November 20, 2019. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 1. Despite filing its case years ago, The Board of Education of the City of Chicago, School District No. 299 *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating The Board of Education of the City of Chicago, School District No. 299's

case would force the parties and the Court to waste time and resources ascertaining the extent of

The Board of Education of the City of Chicago, School District No. 299's document destruction

and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers

that failed to implement litigation holds until 2024. The PBMs are prejudiced by The Board of

Education of the City of Chicago, School District No. 299's disregard for its most basic discovery

obligations as a litigant, compounded by the delay in seeking leave to amend, and The Board of

Education of the City of Chicago, School District No. 299 therefore lacks good cause for leave to

amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or

records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, The Board

of Education of the City of Chicago, School District No. 299 has *never* served a Plaintiff Fact

Sheet. The Board of Education of the City of Chicago, School District No. 299's case is therefore

subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in

original); *see* Section III.A.5, above. The Board of Education of the City of Chicago, School

District No. 299's failure to diligently prosecute its case negates any finding of good cause and

leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing

counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave

to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek

to allocate fault to other parties. *See* Section III.A.6, above. But The Board of Education of the

City of Chicago, School District No. 299's delay in seeking to amend its complaint has impaired

the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** The Board of Education of the City of Chicago, School District No. 299, a school district in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for The Board of Education of the City of Chicago, School District No. 299's proposed RICO claim against the PBMs has expired. The Board of Education of the City of Chicago, School District No. 299 filed its original complaint on November 20, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 1. It is therefore indisputable that The Board of Education of the City of Chicago, School District No. 299 knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. The Board of Education of the City of Chicago, School District No. 299's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. The Board of Education of the City of Chicago, School District No. 299's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** The Board of Education of the City of Chicago, School District No. 299, a school district in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1453.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of East Aurora, School District 131, Illinois**

Board of Education of East Aurora, School District 131's untimely motion for leave to amend should be denied for several reasons. Board of Education of East Aurora, School District 131 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of East Aurora, School District 131 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of East Aurora, School District 131's motion should be denied due to futility, as Board of Education of East Aurora, School District 131 does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of East Aurora, School District 131 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of East Aurora, School District 131 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of East Aurora, School District 131 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of East Aurora, School District 131 elected not to do so. Board of Education of East Aurora, School District 131 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs.

Board of Education of East Aurora, School District 131's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of East Aurora, School District 131 violated its basic duty to implement a timely litigation hold. Board of Education of East Aurora, School District 131 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of East Aurora, School District 131's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of East Aurora, School District 131's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of East Aurora, School District 131's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of East Aurora, School District 131 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of East Aurora, School District 131's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of East Aurora, School District 131, a school district in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of East Aurora, School District 131 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of East Aurora, School District 131's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority

and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of East Aurora, School District 131 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of East Aurora, School District 131 is not a named plaintiff in that case. Because Board of Education of East Aurora, School District 131 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of East Aurora, School District 131 has not pleaded any facts establishing injury to Board of Education of East Aurora, School District 131 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff Lacks Standing.** Board of Education of East Aurora, School District 131, a school district in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 1454. ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Ellsworth School Department, Maine**

Board of Education of Ellsworth School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Ellsworth School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Ellsworth School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Ellsworth School Department's motion should be denied due to futility, as Board of

Education of Ellsworth School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Ellsworth School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Ellsworth School Department filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Ellsworth School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Ellsworth School Department elected not to do so. Board of Education of Ellsworth School Department waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Ellsworth School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Ellsworth School Department violated its basic duty to implement a timely litigation hold. Board of Education of Ellsworth School Department moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of*

*Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Ellsworth School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Ellsworth School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Ellsworth School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Ellsworth School Department therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Ellsworth School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Ellsworth School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Ellsworth School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Ellsworth School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Ellsworth School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Ellsworth School Department's refusal to provide basic information related to its health care plans prejudices the

PBMs' ability to defend against Board of Education of Ellsworth School Department's potential claims against them. Board of Education of Ellsworth School Department's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Ellsworth School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Ellsworth School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Ellsworth School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Ellsworth School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*,

762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Ellsworth School Department seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Ellsworth School Department is not a named plaintiff in that case. Because Board of Education of Ellsworth School Department has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Ellsworth School Department has not pleaded any facts establishing injury to Board of Education of Ellsworth School Department and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Ellsworth School Department is a plaintiff in Maine. Board of Education of Ellsworth School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Ellsworth School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1455.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, **Case No. 1:19-op-46042-DAP: Plaintiff Joliet Public Schools, Illinois**

Joliet Public Schools' untimely motion for leave to amend should be denied for several reasons. Joliet Public Schools failed to provide notice of its proposed amendments through a proposed complaint. Joliet Public Schools also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Joliet Public Schools' motion should be denied due to futility, as Joliet Public Schools does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Joliet Public Schools was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Joliet Public Schools filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Joliet Public Schools could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Joliet Public Schools elected not to do so. Joliet Public Schools waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Joliet Public Schools' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Joliet Public Schools violated its basic duty to implement a timely litigation hold. Joliet Public Schools moved to amend the original

complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Joliet Public Schools' case would force the parties and the Court to waste time and resources ascertaining the extent of Joliet Public Schools' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Joliet Public Schools' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Joliet Public Schools therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

 **Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Joliet Public Schools' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

 **Failure to State a Claim.** Joliet Public Schools, a school district in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Joliet Public Schools seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Joliet Public Schools' impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Joliet Public Schools seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Joliet Public Schools is not a named plaintiff in that case. Because Joliet Public Schools has not submitted any proposed complaint and is not a plaintiff in the existing case, Joliet Public Schools has not pleaded any facts establishing injury to Joliet Public Schools and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff Lacks Standing.** Joliet Public Schools, a school district in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1456.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 10, Maine

Board of Education of Maine Regional School Unit 10's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 10 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 10 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 10's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 10 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 10 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 10 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 10 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 10 elected not to do so. Board of Education of Maine Regional School Unit 10 waited three and a

half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 10's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**<u>Failure to Timely Implement a Litigation Hold.</u>** Board of Education of Maine Regional School Unit 10 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 10 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 10's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 10's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 10's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 10 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 10 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 10's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 10 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 10 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 10's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 10's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 10's potential claims against them. Board of Education of Maine Regional School Unit 10's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 10's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 10, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 10 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 10's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 10 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 10 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 10 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine Regional School Unit 10 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 10 and its request for leave to amend should

be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 10 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 10's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 10, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1457.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, **Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 13, Maine**

Board of Education of Maine Regional School Unit 13's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 13 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 13 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 13's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 13 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 13 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend

earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 13 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 13 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 13 elected not to do so. Board of Education of Maine Regional School Unit 13 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 13's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 13 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 13 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 13's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 13's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 13's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 13 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 13 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 13's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 13 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 13 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 13's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 13's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 13's potential claims against them. Board of Education of Maine Regional School Unit 13's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 13's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 13, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 13 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 13's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority

and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 13 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 13 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 13 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine Regional School Unit 13 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 13 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 13 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 13's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 13, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1458.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 25, Maine**

Board of Education of Maine Regional School Unit 25's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 25 failed to provide notice of its proposed amendments through a proposed complaint. Board of

Education of Maine Regional School Unit 25 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 25's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 25 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 25 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 25 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 25 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 25 elected not to do so. Board of Education of Maine Regional School Unit 25 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 25's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 25 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 25 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 25's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 25's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 25's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 25 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 25 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 25's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 25 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 25 refused to amend or supplement its

Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 25's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 25's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 25's potential claims against them. Board of Education of Maine Regional School Unit 25's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 25's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 25, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 25 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City*

*of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and

*Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 25's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

 **Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 25 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 25 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 25 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine Regional School Unit 25 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 25 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

 **Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 25 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 25's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as

futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 25, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1459. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 26, Maine

Board of Education of Maine Regional School Unit 26's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 26 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 26 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 26's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 26 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 26 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 26 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 26 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section

II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 26 elected not to do so. Board of Education of Maine Regional School Unit 26 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 26's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 26 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 26 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 26's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 26's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 26's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 26 therefore lacks good cause for leave to amend its complaint. *See Pethtel*,

2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 26 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 26's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 26 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 26 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 26's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 26's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 26's potential claims against them. Board of Education of Maine Regional School Unit 26's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 26's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence

over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 26, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 26 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 26's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 26 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 26 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 26 has not submitted any proposed complaint and is not a plaintiff in the existing case,

Board of Education of Maine Regional School Unit 26 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 26 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 26 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 26's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 26, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1460.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 29, Maine**

Board of Education of Maine Regional School Unit 29's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 29 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 29 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 29's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 29 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 29 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 29 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 29 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 29 elected not to do so. Board of Education of Maine Regional School Unit 29 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 29's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 29 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 29 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine

Regional School Unit 29's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 29's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 29's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 29 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 29 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 29's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 29 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 29 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 29's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 29's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 29's potential claims against them. Board of Education of Maine Regional School Unit 29's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing

counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 29's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 29, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 29 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 29's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority

and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 29 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 29 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 29 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine Regional School Unit 29 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 29 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 29 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 29's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 29, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1461.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, **Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 34, Maine**

Board of Education of Maine Regional School Unit 34's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 34 failed to provide notice of its proposed amendments through a proposed complaint. Board of

Education of Maine Regional School Unit 34 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 34's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 34 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 34 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 34 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 34 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 34 elected not to do so. Board of Education of Maine Regional School Unit 34 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 34's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 34 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 34 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 34's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 34's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 34's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 34 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 34 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 34's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 34 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 34 refused to amend or supplement its

Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 34's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 34's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 34's potential claims against them. Board of Education of Maine Regional School Unit 34's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 34's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 34, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 34 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City*

*of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 34's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 34 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 34 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 34 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine Regional School Unit 34 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 34 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 34 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 34's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as

futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 34, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1462.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 40, Maine**

Board of Education of Maine Regional School Unit 40's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 40 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 40 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 40's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 40 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 40 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 40 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 40 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section

II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 40 elected not to do so. Board of Education of Maine Regional School Unit 40 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 40's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 40 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 40 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 40's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 40's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 40's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 40 therefore lacks good cause for leave to amend its complaint. *See Pethel*,

2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 40 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 40's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 40 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 40 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 40's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 40's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 40's potential claims against them. Board of Education of Maine Regional School Unit 40's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 40's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence

over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 40, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 40 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 40's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at \*2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 40 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 40 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 40 has not submitted any proposed complaint and is not a plaintiff in the existing case,

Board of Education of Maine Regional School Unit 40 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 40 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 40 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 40's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 40, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1463.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, **Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 50, Maine**

Board of Education of Maine Regional School Unit 50's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 50 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 50 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 50's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 50 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 50 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 50 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 50 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 50 elected not to do so. Board of Education of Maine Regional School Unit 50 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 50's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 50 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 50 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine

Regional School Unit 50's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 50's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 50's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 50 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 50 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 50's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 50 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 50 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 50's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 50's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 50's potential claims against them. Board of Education of Maine Regional School Unit 50's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing

counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 50's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 50, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 50 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 50's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority

and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 50 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 50 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 50 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine Regional School Unit 50 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 50 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 50 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 50's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 50, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1464.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 57, Maine**

Board of Education of Maine Regional School Unit 57's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 57 failed to provide notice of its proposed amendments through a proposed complaint. Board of

Education of Maine Regional School Unit 57 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 57's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 57 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 57 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 57 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 57 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 57 elected not to do so. Board of Education of Maine Regional School Unit 57 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 57's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 57 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 57 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 57's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 57's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 57's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 57 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 57 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 57's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 57 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 57 refused to amend or supplement its

Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 57's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 57's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 57's potential claims against them. Board of Education of Maine Regional School Unit 57's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 57's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 57, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 57 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City*

*of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 57's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 57 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 57 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 57 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine Regional School Unit 57 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 57 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 57 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 57's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as

futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 57, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1465.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, **Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 60, Maine**

Board of Education of Maine Regional School Unit 60's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 60 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 60 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 60's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 60 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 60 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 60 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 60 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section

II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 60 elected not to do so. Board of Education of Maine Regional School Unit 60 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 60's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 60 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 60 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 60's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 60's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 60's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 60 therefore lacks good cause for leave to amend its complaint. *See Pethtel*,

2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 60 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 60's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 60 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 60 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 60's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 60's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 60's potential claims against them. Board of Education of Maine Regional School Unit 60's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 60's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence

over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 60, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 60 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 60's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 60 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 60 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 60 has not submitted any proposed complaint and is not a plaintiff in the existing case,

Board of Education of Maine Regional School Unit 60 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 60 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 60 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 60's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 60, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1466.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 71, Maine**

Board of Education of Maine Regional School Unit 71's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 71 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 71 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 71's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 71 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 71 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 71 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 71 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 71 elected not to do so. Board of Education of Maine Regional School Unit 71 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 71's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 71 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 71 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine

Regional School Unit 71's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 71's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 71's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 71 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 71 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 71's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 71 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 71 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 71's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 71's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 71's potential claims against them. Board of Education of Maine Regional School Unit 71's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing

counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 71's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 71, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 71 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 71's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority

and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 71 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 71 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 71 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine Regional School Unit 71 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 71 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 71 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 71's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 71, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1467.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, **Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine Regional School Unit 9, Maine**

Board of Education of Maine Regional School Unit 9's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 9 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education

of Maine Regional School Unit 9 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 9's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 9 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 9 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 9 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 9 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 9 elected not to do so. Board of Education of Maine Regional School Unit 9 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 9's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 9 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 9 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 9's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 9's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 9's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 9 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 9 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 9's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 9 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 9 refused to amend or supplement its

Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 9's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 9's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 9's potential claims against them. Board of Education of Maine Regional School Unit 9's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 9's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 9, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 9 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City*

*of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 9's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine Regional School Unit 9 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine Regional School Unit 9 is not a named plaintiff in that case. Because Board of Education of Maine Regional School Unit 9 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine Regional School Unit 9 has not pleaded any facts establishing injury to Board of Education of Maine Regional School Unit 9 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 9 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 9's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as

futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 9, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1468.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 15, Maine**

Board of Education of Maine School Administrative District 15's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 15 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 15 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 15's motion should be denied due to futility, as Board of Education of Maine School Administrative District 15 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 15 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 15 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine

School Administrative District 15 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 15 elected not to do so. Board of Education of Maine School Administrative District 15 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 15's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 15 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 15 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 15's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 15's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative

District 15's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 15 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 15 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 15's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 15 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 15 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 15's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 15's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 15's potential claims against them. Board of Education of Maine School Administrative District 15's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 15's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 15, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 15 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 15's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine School Administrative District 15 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine School Administrative District 15 is not a named plaintiff in that case. Because Board of Education of Maine School Administrative District 15 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine School Administrative District 15 has not pleaded any facts establishing injury to Board of Education of Maine School Administrative District 15 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 15 is a plaintiff in Maine. Board of Education of Maine School Administrative District 15's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 15, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1469. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 35, Maine

Board of Education of Maine School Administrative District 35's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 35 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 35 also lacks good cause

under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 35's motion should be denied due to futility, as Board of Education of Maine School Administrative District 35 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 35 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 35 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 35 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 35 elected not to do so. Board of Education of Maine School Administrative District 35 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 35's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 35 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 35 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 35's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 35's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 35's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 35 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 35 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 35's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 35 of this deficiency

on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 35 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 35's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 35's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 35's potential claims against them. Board of Education of Maine School Administrative District 35's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 35's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 35, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 35 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 35's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine School Administrative District 35 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine School Administrative District 35 is not a named plaintiff in that case. Because Board of Education of Maine School Administrative District 35 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine School Administrative District 35 has not pleaded any facts establishing injury to Board of Education of Maine School Administrative District 35 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 35 is a plaintiff in Maine. Board of Education of Maine School Administrative District 35's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 35, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1470. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 44, Maine

Board of Education of Maine School Administrative District 44's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 44 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 44 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 44's motion should be denied due to futility, as Board of Education of Maine School Administrative District 44 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 44 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School

Administrative District 44 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 44 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 44 elected not to do so. Board of Education of Maine School Administrative District 44 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 44's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**<u>Failure to Timely Implement a Litigation Hold.</u>** Board of Education of Maine School Administrative District 44 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 44 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 44's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School

Administrative District 44's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 44's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 44 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 44 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 44's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 44 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 44 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 44's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 44's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 44's potential claims against them. Board of Education of Maine School Administrative District 44's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to

dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 44's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 44, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 44 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 44's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the

Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine School Administrative District 44 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine School Administrative District 44 is not a named plaintiff in that case. Because Board of Education of Maine School Administrative District 44 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine School Administrative District 44 has not pleaded any facts establishing injury to Board of Education of Maine School Administrative District 44 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 44 is a plaintiff in Maine. Board of Education of Maine School Administrative District 44's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 44, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1471. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 53, Maine

Board of Education of Maine School Administrative District 53's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School

Administrative District 53 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 53 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 53's motion should be denied due to futility, as Board of Education of Maine School Administrative District 53 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 53 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 53 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 53 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 53 elected not to do so. Board of Education of Maine School Administrative District 53 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 53's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 53 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 53 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 53's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 53's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 53's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 53 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 53 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 53's health plans, carriers, third

party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 53 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 53 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 53's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 53's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 53's potential claims against them. Board of Education of Maine School Administrative District 53's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 53's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 53, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially

contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 53 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 53's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine School Administrative District 53 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine School Administrative District 53 is not a named plaintiff in that case. Because Board of Education of Maine School Administrative District 53 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine School Administrative District 53 has not pleaded any facts establishing injury to Board of Education of Maine School Administrative District 53 and its request for leave to amend should be denied as futile. *See*

*Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 53 is a plaintiff in Maine. Board of Education of Maine School Administrative District 53's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 53, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1472. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 55, Maine

Board of Education of Maine School Administrative District 55's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 55 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 55 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 55's motion should be denied due to futility, as Board of Education of Maine School Administrative District 55 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 55 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 55 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 55 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 55 elected not to do so. Board of Education of Maine School Administrative District 55 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 55's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 55 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 55 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16,

2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 55's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 55's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 55's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 55 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 55 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 55's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 55 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 55 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 55's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 55's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 55's potential claims against them.

Board of Education of Maine School Administrative District 55's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 55's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 55, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 55 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 55's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where

district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine School Administrative District 55 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine School Administrative District 55 is not a named plaintiff in that case. Because Board of Education of Maine School Administrative District 55 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine School Administrative District 55 has not pleaded any facts establishing injury to Board of Education of Maine School Administrative District 55 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 55 is a plaintiff in Maine. Board of Education of Maine School Administrative District 55's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 55, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1473.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, **Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 6, Maine**

Board of Education of Maine School Administrative District 6's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 6 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 6 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 6's motion should be denied due to futility, as Board of Education of Maine School Administrative District 6 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 6 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 6 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 6 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 6 elected not to do so. Board of Education of Maine School Administrative District 6 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 6's

lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 6 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 6 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 6's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 6's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 6's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 6 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 6 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 6's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 6 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 6 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 6's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 6's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 6's potential claims against them. Board of Education of Maine School Administrative District 6's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 6's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant

evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 6, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 6 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 6's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at \*2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine School Administrative District 6 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine School Administrative District 6 is not a named plaintiff in that case. Because Board of Education of Maine School Administrative District 6 has not submitted any proposed complaint

and is not a plaintiff in the existing case, Board of Education of Maine School Administrative District 6 has not pleaded any facts establishing injury to Board of Education of Maine School Administrative District 6 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 6 is a plaintiff in Maine. Board of Education of Maine School Administrative District 6's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 6, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1474. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 61, Maine

Board of Education of Maine School Administrative District 61's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 61 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 61 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 61's motion should be denied due to futility, as Board of Education of Maine School Administrative District 61 does not assert any allegations tying the PBMs to its alleged harm, its proposed public

nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 61 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 61 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 61 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 61 elected not to do so. Board of Education of Maine School Administrative District 61 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 61's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 61 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 61 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of*

*the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 61's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 61's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 61's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 61 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 61 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 61's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 61 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 61 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 61's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 61's refusal to provide

basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 61's potential claims against them. Board of Education of Maine School Administrative District 61's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 61's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 61, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 61 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School

Administrative District 61's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine School Administrative District 61 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine School Administrative District 61 is not a named plaintiff in that case. Because Board of Education of Maine School Administrative District 61 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine School Administrative District 61 has not pleaded any facts establishing injury to Board of Education of Maine School Administrative District 61 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 61 is a plaintiff in Maine. Board of Education of Maine School Administrative District 61's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 61, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1475.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 72, Maine**

Board of Education of Maine School Administrative District 72's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 72 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 72 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 72's motion should be denied due to futility, as Board of Education of Maine School Administrative District 72 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 72 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 72 file a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 72 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School

Administrative District 72 elected not to do so. Board of Education of Maine School Administrative District 72 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 72's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 72 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 72 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 72's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 72's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 72's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District

72 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 72 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 72's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 72 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 72 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 72's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 72's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 72's potential claims against them. Board of Education of Maine School Administrative District 72's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine

School Administrative District 72's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 72, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 72 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 72's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine School Administrative District 72 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education

of Maine School Administrative District 72 is not a named plaintiff in that case. Because Board of Education of Maine School Administrative District 72 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine School Administrative District 72 has not pleaded any facts establishing injury to Board of Education of Maine School Administrative District 72 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at \*2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 72 is a plaintiff in Maine. Board of Education of Maine School Administrative District 72's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at \*6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 72, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1476.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Maine School Administrative District 28/Five Town Central School District, Maine

Board of Education of Maine School Administrative District 28/Five Town Central School District's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 28/Five Town Central School District failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 28/Five Town Central School District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation

hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 28/Five Town Central School District's motion should be denied due to futility, as Board of Education of Maine School Administrative District 28/Five Town Central School District does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 28/Five Town Central School District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 28/Five Town Central School District filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 28/Five Town Central School District could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 28/Five Town Central School District elected not to do so. Board of Education of Maine School Administrative District 28/Five Town Central School District waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 28/Five Town Central School District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 28/Five Town Central School District violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 28/Five Town Central School District moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 28/Five Town Central School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 28/Five Town Central School District's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 28/Five Town Central School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 28/Five Town Central School District therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 28/Five Town Central School District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 28/Five Town Central School District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 28/Five Town Central School District of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 28/Five Town Central School District refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 28/Five Town Central School District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 28/Five Town Central School District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 28/Five Town Central School District's potential claims against them. Board of Education of Maine School Administrative District 28/Five Town Central School District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine

School Administrative District 28/Five Town Central School District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 28/Five Town Central School District, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 28/Five Town Central School District seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 28/Five Town Central School District's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Maine School Administrative District 28/Five Town Central School District seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Maine School Administrative District 28/Five Town Central School District is not a named plaintiff in that case. Because Board of Education of Maine School Administrative District 28/Five Town Central School District has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Maine School Administrative District 28/Five Town Central School District has not pleaded any facts establishing injury to Board of Education of Maine School Administrative District 28/Five Town Central School District and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 28/Five Town Central School District is a plaintiff in Maine. Board of Education of Maine School Administrative District 28/Five Town Central School District's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 28/Five Town Central School District, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1477.** ***The Board of Education of the City of Chicago, School District No. 299
v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Miami-
Dade County Public School District, Florida**

Miami-Dade County Public School District's untimely motion for leave to amend should

be denied for several reasons. Miami-Dade County Public School District failed to provide notice

of its proposed amendments through a proposed complaint. Miami-Dade County Public School

District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely

implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion

would unduly prejudice the PBMs. Moreover, Miami-Dade County Public School District's

motion should be denied due to futility, as Miami-Dade County Public School District does not

assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims

under New York state law.

**Lack of Diligence.** Miami-Dade County Public School District was on notice of its claims

against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See*

Section II.A, above. Moreover, Miami-Dade County Public School District filed a complaint in

another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton

Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP,

ECF No. 1. Miami-Dade County Public School District could have amended its complaint, without

leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other

plaintiffs, Miami-Dade County Public School District elected not to do so. Miami-Dade County

Public School District waited three and a half years after its deadline to amend to seek leave to

assert claims against the PBMs. Miami-Dade County Public School District's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial

of motion to amend nine months after the scheduling order's deadline because plaintiff "had all

the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Miami-Dade County Public School District violated its basic duty to implement a timely litigation hold. Miami-Dade County Public School District moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 12, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 12, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Miami-Dade County Public School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Miami-Dade County Public School District's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Miami-Dade County Public School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Miami-Dade County Public School District therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Miami-Dade County Public School District has *never* served a Plaintiff Fact Sheet. Miami-Dade County Public School District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Miami-Dade

County Public School District's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Miami-Dade County Public School District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Miami-Dade County Public School District, a school district in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff is Not a Party.** Miami-Dade County Public School District seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Miami-Dade County Public School District is not a named plaintiff in that case. Because Miami-Dade County Public School District has not submitted any proposed complaint and is not a plaintiff in the existing case, Miami-Dade County Public School District has not pleaded any facts establishing injury to Miami-Dade County Public School District and its request for leave to amend should be denied as futile. *See Stuebing*

*Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff Lacks Standing.** Miami-Dade County Public School District, a school district in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1478. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Portland School Department, Maine

Board of Education of Portland School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Portland School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Portland School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Portland School Department's motion should be denied due to futility, as Board of Education of Portland School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Portland School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Portland School Department filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Portland School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section

II.A.1, above. Unlike many other plaintiffs, Board of Education of Portland School Department elected not to do so. Board of Education of Portland School Department waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Portland School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Portland School Department violated its basic duty to implement a timely litigation hold. Board of Education of Portland School Department moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Portland School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Portland School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Portland School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Portland School Department therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL

6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Portland School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Portland School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Portland School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Portland School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Portland School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Portland School Department's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Portland School Department's potential claims against them. Board of Education of Portland School Department's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Portland School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over

time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Portland School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Portland School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Portland School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Portland School Department seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Portland School Department is not a named plaintiff in that case. Because Board of Education of Portland School Department has not submitted any proposed complaint and is not a plaintiff in the existing case,

Board of Education of Portland School Department has not pleaded any facts establishing injury to Board of Education of Portland School Department and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Portland School Department is a plaintiff in Maine. Board of Education of Portland School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Portland School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1479.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Rochester City School District, New York**

Board of Education of Rochester City School District's untimely motion for leave to amend should be denied for several reasons. Board of Education of Rochester City School District failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Rochester City School District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Rochester City School District's motion should be denied due to futility, as Board of Education of Rochester City School District does not assert any allegations tying the PBMs to its alleged harm.

**Lack of Diligence.** Board of Education of Rochester City School District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend

earlier. *See* Section II.A, above. Moreover, Board of Education of Rochester City School District filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Rochester City School District could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Rochester City School District elected not to do so. Board of Education of Rochester City School District waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Rochester City School District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Board of Education of Rochester City School District previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Board of Education of Rochester City School District of the PBM services Express Scripts provides and Board of Education of Rochester City School District began receiving those services on July 2, 2007. *See id.* Inasmuch as Board of Education of Rochester City School District seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Board of Education of Rochester City School District knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Board of

Education of Rochester City School District's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Rochester City School District violated its basic duty to implement a timely litigation hold. Board of Education of Rochester City School District moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 10, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 10, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Rochester City School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Rochester City School District's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Rochester City School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Rochester City School District therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Rochester City School District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Rochester City School District, a school district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Rochester City School District seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Rochester City School District's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Rochester City School District seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Rochester City School District is not a named plaintiff in that case. Because Board of Education of Rochester City School District has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Rochester City School District has not pleaded any facts establishing injury to Board of Education of Rochester City School District and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff Lacks Standing.** Board of Education of Rochester City School District, a school district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Board of Education of Rochester City School District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1480. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Scarborough School Department, Maine

Board of Education of Scarborough School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Scarborough School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Scarborough School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs.

Moreover, Board of Education of Scarborough School Department's motion should be denied due to futility, as Board of Education of Scarborough School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Scarborough School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Scarborough School Department filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Scarborough School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Scarborough School Department elected not to do so. Board of Education of Scarborough School Department waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Scarborough School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Scarborough School Department violated its basic duty to implement a timely litigation hold. Board of Education of Scarborough School Department moved to amend the original complaint on October

26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Scarborough School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Scarborough School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Scarborough School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Scarborough School Department therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Scarborough School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Scarborough School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Scarborough School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Scarborough School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Scarborough School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to

prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Scarborough School Department's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Scarborough School Department's potential claims against them. Board of Education of Scarborough School Department's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Scarborough School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See* *Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Scarborough School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Scarborough School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and

*Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Scarborough School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Scarborough School Department seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Scarborough School Department is not a named plaintiff in that case. Because Board of Education of Scarborough School Department has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Scarborough School Department has not pleaded any facts establishing injury to Board of Education of Scarborough School Department and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Scarborough School Department is a plaintiff in Maine. Board of Education of Scarborough School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as

futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at \*6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Scarborough School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1481. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of South Portland School Department, Maine

Board of Education of South Portland School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of South Portland School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of South Portland School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and failure to submit a complete plaintiff fact sheet. Moreover, Board of Education of South Portland School Department's motion should be denied due to futility, as Board of Education of South Portland School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of South Portland School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of South Portland School Department filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of South Portland School Department could have amended its complaint, without leave, to add claims against the PBMs in

2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of South Portland School Department elected not to do so. Board of Education of South Portland School Department waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of South Portland School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of South Portland School Department violated its basic duty to implement a timely litigation hold. Board of Education of South Portland School Department moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of South Portland School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of South Portland School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of South Portland School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend,

and Board of Education of South Portland School Department therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of South Portland School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of South Portland School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of South Portland School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of South Portland School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of South Portland School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of South Portland School Department's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of South Portland School Department's potential claims against them. Board of Education of South Portland School Department's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of South Portland School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of South Portland School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of South Portland School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of South Portland School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of South Portland School Department seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of South Portland School Department is not a named plaintiff in that case. Because Board of Education of South Portland School Department has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of South Portland School Department has not pleaded any facts establishing injury to Board of Education of South Portland School Department and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of South Portland School Department is a plaintiff in Maine. Board of Education of South Portland School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of South Portland School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1482. *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of St. George Municipal School District, Maine

Board of Education of St. George Municipal School District's untimely motion for leave to amend should be denied for several reasons. Board of Education of St. George Municipal School District failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of St. George Municipal School District also lacks good cause under Rule 15 or Rule

16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of St. George Municipal School District's motion should be denied due to futility, as Board of Education of St. George Municipal School District does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of St. George Municipal School District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of St. George Municipal School District filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of St. George Municipal School District could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of St. George Municipal School District elected not to do so. Board of Education of St. George Municipal School District waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of St. George Municipal School District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of St. George Municipal School District violated its basic duty to implement a timely litigation hold. Board of Education of St. George Municipal School District moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of St. George Municipal School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of St. George Municipal School District's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of St. George Municipal School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of St. George Municipal School District therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of St. George Municipal School District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of St. George Municipal School District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of St. George Municipal School District of this deficiency on

September 16, 2024 (*see* Exhibit B), but Board of Education of St. George Municipal School District refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of St. George Municipal School District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of St. George Municipal School District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of St. George Municipal School District's potential claims against them. Board of Education of St. George Municipal School District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of St. George Municipal School District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of St. George Municipal School District, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of St. George Municipal School District seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of St. George Municipal School District's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of St. George Municipal School District seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of St. George Municipal School District is not a named plaintiff in that case. Because Board of Education of St. George Municipal School District has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of St. George Municipal School District has not pleaded any facts establishing injury to Board of Education of St. George Municipal School District and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of St. George Municipal School District is a plaintiff in Maine. Board of Education of St. George Municipal School District's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of St. George Municipal School District, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1483.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Thornton Fractional Township High Schools, District 215, Illinois**

Board of Education of Thornton Fractional Township High Schools, District 215's untimely motion for leave to amend should be denied for several reasons. Board of Education of Thornton Fractional Township High Schools, District 215 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Thornton Fractional Township High Schools, District 215 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Thornton Fractional Township High Schools, District 215's motion should be denied due to futility, as Board of Education of Thornton Fractional Township High Schools, District 215 does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Thornton Fractional Township High Schools, District 215 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of

Thornton Fractional Township High Schools, District 215 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Thornton Fractional Township High Schools, District 215 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Thornton Fractional Township High Schools, District 215 elected not to do so. Board of Education of Thornton Fractional Township High Schools, District 215 waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Thornton Fractional Township High Schools, District 215's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Thornton Fractional Township High Schools, District 215 violated its basic duty to implement a timely litigation hold. Board of Education of Thornton Fractional Township High Schools, District 215 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Thornton Fractional Township High

Schools, District 215's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Thornton Fractional Township High Schools, District 215's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Thornton Fractional Township High Schools, District 215's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Thornton Fractional Township High Schools, District 215 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Thornton Fractional Township High Schools, District 215's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Thornton Fractional Township High Schools, District 215, a school district in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Thornton Fractional Township High Schools, District 215 seeks leave to amend to add claims against the PBMs in two cases:

*Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Thornton Fractional Township High Schools, District 215's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Thornton Fractional Township High Schools, District 215 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Thornton Fractional Township High Schools, District 215 is not a named plaintiff in that case. Because Board of Education of Thornton Fractional Township High Schools, District 215 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Thornton Fractional Township High Schools, District 215 has not pleaded any facts establishing injury to Board of Education of Thornton Fractional Township High Schools, District 215 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff Lacks Standing.** Board of Education of Thornton Fractional Township High Schools, District 215, a school district in Illinois, lacks standing to state a claim for relief under

any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1484.** ***The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Thornton Township High Schools, District 205, Illinois**

Board of Education of Thornton Township High Schools, District 205's untimely motion for leave to amend should be denied for several reasons. Board of Education of Thornton Township High Schools, District 205 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Thornton Township High Schools, District 205 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Thornton Township High Schools, District 205's motion should be denied due to futility, as Board of Education of Thornton Township High Schools, District 205 does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Thornton Township High Schools, District 205 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Thornton Township High Schools, District 205 filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Thornton Township High Schools, District 205 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Thornton Township High Schools, District 205 elected not to do so. Board of Education of Thornton Township High Schools, District 205 waited three and a half years after

its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Thornton Township High Schools, District 205's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Thornton Township High Schools, District 205 violated its basic duty to implement a timely litigation hold. Board of Education of Thornton Township High Schools, District 205 moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Thornton Township High Schools, District 205's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Thornton Township High Schools, District 205's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Thornton Township High Schools, District 205's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Thornton Township High Schools, District 205 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part

because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Thornton Township High Schools, District 205's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Thornton Township High Schools, District 205, a school district in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Thornton Township High Schools, District 205 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Thornton Township High Schools, District 205's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's

inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Thornton Township High Schools, District 205 seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Thornton Township High Schools, District 205 is not a named plaintiff in that case. Because Board of Education of Thornton Township High Schools, District 205 has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Thornton Township High Schools, District 205 has not pleaded any facts establishing injury to Board of Education of Thornton Township High Schools, District 205 and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff Lacks Standing.** Board of Education of Thornton Township High Schools, District 205, a school district in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1485.** *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, **Case No. 1:19-op-46042-DAP: Plaintiff Board of Education of Waterville School Department, Maine**

Board of Education of Waterville School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Waterville School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Waterville School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Waterville School Department's motion should be denied due to futility, as Board of

Education of Waterville School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Waterville School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Waterville School Department filed a complaint in another case directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Waterville School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Waterville School Department elected not to do so. Board of Education of Waterville School Department waited three and a half years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Waterville School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Waterville School Department violated its basic duty to implement a timely litigation hold. Board of Education of Waterville School Department moved to amend the original complaint on October 26, 2020, thereby signaling that it was anticipating litigation, but waited until September 16, 2024 to implement a litigation hold—almost four years later. *See The Board of Education of the City of*

*Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, ECF No. 6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Waterville School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Waterville School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Waterville School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Waterville School Department therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Waterville School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Waterville School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Waterville School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Waterville School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Waterville School Department's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Waterville School Department's refusal to provide basic information related to its health care plans prejudices the

PBMs' ability to defend against Board of Education of Waterville School Department's potential claims against them. Board of Education of Waterville School Department's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Waterville School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Waterville School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Waterville School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Waterville School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*,

762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Board of Education of Waterville School Department seeks leave to amend the complaint in *The Board of Education of the City of Chicago, School District No. 299 v. Cephalon, Inc. et al.*, Case No. 1:19-op-46042-DAP, but Board of Education of Waterville School Department is not a named plaintiff in that case. Because Board of Education of Waterville School Department has not submitted any proposed complaint and is not a plaintiff in the existing case, Board of Education of Waterville School Department has not pleaded any facts establishing injury to Board of Education of Waterville School Department and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Waterville School Department is a plaintiff in Maine. Board of Education of Waterville School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Waterville School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1486.** *Town of North Hempstead, NY v. McKesson Corporation et al.*, **Case No. 1:19-op-46043-DAP: Plaintiff North Hempstead Town, New York**

North Hempstead Town's untimely motion for leave to amend should be denied for several reasons. North Hempstead Town failed to provide notice of its proposed amendments through a proposed complaint. North Hempstead Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Hempstead Town's motion should be denied due to futility, as North Hempstead Town does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** North Hempstead Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Hempstead Town amended its complaint on November 26, 2019, after directly filing in the MDL. *See Town of North Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46043-DAP, ECF No. 2. Unlike many other plaintiffs, North Hempstead Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. North Hempstead Town's deadline to amend was in 2020. North Hempstead Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. North Hempstead Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

North Hempstead Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.45% market share for North Hempstead Town). That insignificant dispensing volume is much too low to support a finding of good cause for North Hempstead Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to North Hempstead Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for North Hempstead Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, North Hempstead Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to North Hempstead Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified North Hempstead Town of this deficiency on September 16, 2024 (*see* Exhibit B), but North Hempstead Town refused to amend or supplement its Fact Sheet. Under this Court's orders, North Hempstead Town's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. North Hempstead Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against North Hempstead Town's potential claims against them. North Hempstead Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend,

in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Hempstead Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for North Hempstead Town's proposed RICO claim against the PBMs has expired. North Hempstead Town filed its original complaint on November 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of North Hempstead, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46043-DAP, ECF No. 1. Even assuming *arguendo* that North Hempstead Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 20, 2023. North Hempstead Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Hempstead Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** North Hempstead Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in

New York, or the state of New York. *See* Section III.B.6, above. North Hempstead Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1487. *City of Bayonne, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46044-DAP: Plaintiff Bayonne City, New Jersey

Bayonne City's untimely motion for leave to amend should be denied for several reasons. Bayonne City failed to provide notice of its proposed amendments through a proposed complaint. Bayonne City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bayonne City's motion should be denied due to futility, as Bayonne City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**<u>Lack of Diligence.</u>** Bayonne City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bayonne City filed its original complaint directly into the MDL on November 20, 2019. *See City of Bayonne, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46044-DAP, ECF No. 1. Bayonne City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Bayonne City elected not to do so. Bayonne City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Bayonne City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bayonne City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Bayonne City). That insignificant dispensing volume is much too low to support a finding of good cause for Bayonne City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bayonne City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bayonne City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Bayonne City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Bayonne City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Bayonne City of this deficiency on September 16, 2024 (*see* Exhibit B), but Bayonne City refused to amend or supplement its Fact Sheet. Under this Court's orders, Bayonne City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Bayonne City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Bayonne

City's potential claims against them. Bayonne City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bayonne City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bayonne City, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bayonne City's proposed RICO claim against the PBMs has expired. Bayonne City filed its original complaint on November 20, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Bayonne, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46044-DAP, ECF No. 1. It is therefore indisputable that Bayonne City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Bayonne City's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bayonne City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bayonne City, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1488. *City of Elizabeth, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46045-DAP: Plaintiff Elizabeth City, New Jersey

Elizabeth City's untimely motion for leave to amend should be denied for several reasons. Elizabeth City failed to provide notice of its proposed amendments through a proposed complaint. Elizabeth City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Elizabeth City's motion should be denied due to futility, as Elizabeth City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Elizabeth City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Elizabeth City filed its original complaint directly into the MDL on November 20, 2019. *See City of Elizabeth, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46045-DAP, ECF No. 1. Elizabeth City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Elizabeth City elected not to do so. Elizabeth City waited four years after its deadline to amend to seek leave to assert claims

against the PBMs. Elizabeth City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Elizabeth City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Elizabeth City). That insignificant dispensing volume is much too low to support a finding of good cause for Elizabeth City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Elizabeth City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.04% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Elizabeth City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Elizabeth City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Elizabeth City of the PBM services Express Scripts provides and Elizabeth City began receiving those services on July 17, 2006. *See id.* Inasmuch as Elizabeth City seeks to add claims against Express Scripts entities

related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Elizabeth City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Elizabeth City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Elizabeth City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Elizabeth City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Elizabeth City of this deficiency on September 16, 2024 (*see* Exhibit B), but Elizabeth City refused to amend or supplement its Fact Sheet. Under this Court's orders, Elizabeth City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Elizabeth City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Elizabeth City's potential claims against them. Elizabeth City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Elizabeth City's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Elizabeth City, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Elizabeth City's proposed RICO claim against the PBMs has expired. Elizabeth City filed its original complaint on November 20, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Elizabeth, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46045-DAP, ECF No. 1. It is therefore indisputable that Elizabeth City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Elizabeth City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Elizabeth City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Elizabeth City, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1489.** *Borough of Paramus, New Jersey v. McKesson Corporation et al.*, **Case No. 1:19-op-46046-DAP: Plaintiff Paramus Borough, New Jersey**

Paramus Borough's untimely motion for leave to amend should be denied for several reasons. Paramus Borough failed to provide notice of its proposed amendments through a proposed complaint. Paramus Borough also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Paramus Borough's motion should be denied due to futility, as Paramus Borough does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Paramus Borough was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Paramus Borough filed its original complaint directly into the MDL on November 20, 2019. *See Borough of Paramus, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46046-DAP, ECF No. 1. Paramus Borough could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Paramus Borough elected not to do so. Paramus Borough waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Paramus Borough's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Paramus Borough's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Paramus Borough cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Paramus Borough's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Paramus Borough to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Paramus Borough failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Paramus Borough's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Paramus Borough of this deficiency on September 16, 2024 (*see* Exhibit B), but Paramus Borough refused to amend or supplement its Fact Sheet. Under this Court's orders, Paramus Borough's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Paramus Borough's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Paramus Borough's potential claims against them. Paramus Borough's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment

Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Paramus Borough's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Paramus Borough, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Paramus Borough's proposed RICO claim against the PBMs has expired. Paramus Borough filed its original complaint on November 20, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Borough of Paramus, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46046-DAP, ECF No. 1. It is therefore indisputable that Paramus Borough knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Paramus Borough's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Paramus Borough's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Paramus Borough, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1490.** *Town of Babylon, NY v. McKesson Corporation et al.*, **Case No. 1:19-op-46047-DAP: Plaintiff Babylon Town, New York**

Babylon Town's untimely motion for leave to amend should be denied for several reasons. Babylon Town failed to provide notice of its proposed amendments through a proposed complaint. Babylon Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Babylon Town's motion should be denied due to futility, as Babylon Town does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Babylon Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Babylon Town filed its original complaint directly into the MDL on November 21, 2019. *See Town of Babylon, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46047-DAP, ECF No. 1. Babylon Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Babylon Town elected not to do so. Babylon Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Babylon Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after

the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Babylon Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Babylon Town). That insignificant dispensing volume is much too low to support a finding of good cause for Babylon Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Babylon Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Babylon Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Babylon Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Babylon Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Babylon Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Babylon Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Babylon Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Babylon Town's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Babylon Town's potential claims against them. Babylon Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Babylon Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**RICO Statute of Limitations.** The statute of limitations for Babylon Town's proposed RICO claim against the PBMs has expired. Babylon Town filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Babylon, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46047-DAP, ECF No. 1. Even assuming *arguendo* that Babylon Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. Babylon Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Babylon Town's request for leave to amend to add a RICO claim should be denied

as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Babylon Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Babylon Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1491.** *North Merrick Fire District, NY v. McKesson Corporation, et al.*, **Case No. 1:19-op-46048-DAP: Plaintiff North Merrick Fire District, New York**

North Merrick Fire District's untimely motion for leave to amend should be denied for several reasons. North Merrick Fire District failed to provide notice of its proposed amendments through a proposed complaint. North Merrick Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, North Merrick Fire District's motion should be denied due to futility, as North Merrick Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** North Merrick Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Merrick Fire District filed its original complaint directly into the MDL on November 21, 2019. *See North Merrick Fire District, NY v. McKesson Corporation, et al.*, Case No. 1:19-op-46048-DAP, ECF No. 1. North Merrick Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above.

Unlike many other plaintiffs, North Merrick Fire District elected not to do so. North Merrick Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. North Merrick Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, North Merrick Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to North Merrick Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified North Merrick Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but North Merrick Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, North Merrick Fire District's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. North Merrick Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against North Merrick Fire District's potential claims against them. North Merrick Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

5470

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Merrick Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Merrick Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for North Merrick Fire District's proposed RICO claim against the PBMs has expired. North Merrick Fire District filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See North Merrick Fire District, NY v. McKesson Corporation, et al.*, Case No. 1:19-op-46048-DAP, ECF No. 1. Even assuming *arguendo* that North Merrick Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. North Merrick Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Merrick Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** North Merrick Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. North Merrick Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1492. *Uniondale Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46049-DAP: Plaintiff Uniondale Fire District, New York

Uniondale Fire District's untimely motion for leave to amend should be denied for several reasons. Uniondale Fire District failed to provide notice of its proposed amendments through a proposed complaint. Uniondale Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Uniondale Fire District's motion should be denied due to futility, as Uniondale Fire District does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Uniondale Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Uniondale Fire District filed its original complaint directly into the MDL on November 21, 2019. *See Uniondale Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46049-DAP, ECF No. 1. Uniondale Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Uniondale Fire District elected not to do so. Uniondale Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Uniondale Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Uniondale Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Uniondale Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Uniondale Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Uniondale Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Uniondale Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Uniondale Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Uniondale Fire District's potential claims against them. Uniondale Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Uniondale Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Uniondale Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Uniondale Fire District's proposed RICO claim against the PBMs has expired. Uniondale Fire District filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Uniondale Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46049-DAP, ECF No. 1. Even assuming *arguendo* that Uniondale Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. Uniondale Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Uniondale Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Uniondale Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Uniondale Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and

should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1493. *Incorporated Village of Northport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46050-DAP: Plaintiff Northport Village, New York

Northport Village's untimely motion for leave to amend should be denied for several reasons. Northport Village failed to provide notice of its proposed amendments through a proposed complaint. Northport Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Northport Village's motion should be denied due to futility, as Northport Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Northport Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Northport Village filed its original complaint directly into the MDL on November 21, 2019. *See Incorporated Village of Northport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46050-DAP, ECF No. 1. Northport Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Northport Village elected not to do so. Northport Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Northport Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Northport Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.30% market share for Northport Village). That insignificant dispensing volume is much too low to support a finding of good cause for Northport Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Northport Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Northport Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Northport Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Northport Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Northport Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Northport Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Northport Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Northport Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Northport Village's potential claims against them. Northport Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs,

negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Northport Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Northport Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Northport Village's proposed RICO claim against the PBMs has expired. Northport Village filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Northport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46050-DAP, ECF No. 1. Even assuming *arguendo* that Northport Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. Northport Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Northport Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Northport Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Northport Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1494. *Village of Port Washington North, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46051-DAP: Plaintiff Port Washington North Village, New York

Port Washington North Village's untimely motion for leave to amend should be denied for several reasons. Port Washington North Village failed to provide notice of its proposed amendments through a proposed complaint. Port Washington North Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Port Washington North Village's motion should be denied due to futility, as Port Washington North Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Port Washington North Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Port Washington North Village filed its original complaint directly into the MDL on November 21, 2019. *See Village of Port Washington North, NY v. McKesson Corporation et*

*al.*, Case No. 1:19-op-46051-DAP, ECF No. 1. Port Washington North Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Port Washington North Village elected not to do so. Port Washington North Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Port Washington North Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Port Washington North Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Port Washington North Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Port Washington North Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Port Washington North Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Port Washington North Village filed its original complaint on November 21, 2019. *See Village of Port Washington North, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46051-DAP, ECF No. 1. Despite filing its case years ago, Port Washington North Village *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Port Washington North Village's case would force the parties and the Court to waste time and resources ascertaining the extent of Port Washington North Village's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Port Washington North Village's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Port Washington North Village therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Port Washington North Village has *never* served a Plaintiff Fact Sheet. Port Washington North Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Port Washington North Village's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Port Washington North Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Port Washington North Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Port Washington North Village's proposed RICO claim against the PBMs has expired. Port Washington North Village filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Port Washington North, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46051-DAP, ECF No. 1. Even assuming *arguendo* that Port Washington North Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. Port Washington North Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Port Washington North Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Port Washington North Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Port Washington North Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1495. *Incorporated Village of Lloyd Harbor, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46052-DAP: Plaintiff Lloyd Harbor Village, New York

Lloyd Harbor Village's untimely motion for leave to amend should be denied for several reasons. Lloyd Harbor Village failed to provide notice of its proposed amendments through a proposed complaint. Lloyd Harbor Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lloyd Harbor Village's motion should be denied due to futility, as Lloyd Harbor Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Lloyd Harbor Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lloyd Harbor Village filed its original complaint directly into the MDL on November 21, 2019. *See Incorporated Village of Lloyd Harbor, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46052-DAP, ECF No. 1. Lloyd Harbor Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Lloyd Harbor Village elected not to do so. Lloyd Harbor Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Lloyd Harbor Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at

879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lloyd Harbor Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lloyd Harbor Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lloyd Harbor Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lloyd Harbor Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lloyd Harbor Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Lloyd Harbor Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Lloyd Harbor Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lloyd Harbor Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lloyd Harbor Village's potential claims against them. Lloyd Harbor Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017

WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lloyd Harbor Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lloyd Harbor Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lloyd Harbor Village's proposed RICO claim against the PBMs has expired. Lloyd Harbor Village filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Lloyd Harbor, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46052-DAP, ECF No. 1. Even assuming *arguendo* that Lloyd Harbor Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. Lloyd Harbor Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lloyd Harbor Village's request for leave to amend to add a RICO claim should be denied as futile. *See*

5484

*Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lloyd Harbor Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Lloyd Harbor Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1496.** *The City of Dunwoody, Georgia v. Amerisourcebergen Drug Coropration et al.*, **Case No. 1:19-op-46054-DAP: Plaintiff Dunwoody City, Georgia**

Dunwoody City's untimely motion for leave to amend should be denied for several reasons. Dunwoody City failed to provide notice of its proposed amendments through a proposed complaint. Dunwoody City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dunwoody City's motion should be denied due to futility, as Dunwoody City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dunwoody City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dunwoody City filed its original complaint directly into the MDL on November 21, 2019. *See The City of Dunwoody, Georgia v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-46054-DAP, ECF No. 1. Dunwoody City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs,

Dunwoody City elected not to do so. Dunwoody City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Dunwoody City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dunwoody City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Dunwoody City). That insignificant dispensing volume is much too low to support a finding of good cause for Dunwoody City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dunwoody City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dunwoody City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dunwoody City filed its original complaint on November 21, 2019. *See The City of Dunwoody, Georgia v. Amerisourcebergen Drug Cororpration et al.*, Case No. 1:19-op-46054-DAP, ECF No. 1. Despite filing its case years ago, Dunwoody City

*never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Dunwoody City's case would force the parties and the Court to waste time and resources ascertaining the extent of Dunwoody City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dunwoody City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dunwoody City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Dunwoody City has *never* served a Plaintiff Fact Sheet. Dunwoody City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dunwoody City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dunwoody City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dunwoody City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dunwoody City's proposed RICO claim against the PBMs has expired. Dunwoody City filed its original complaint on November 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The City of Dunwoody, Georgia v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-46054-DAP, ECF No. 1. It is therefore indisputable that Dunwoody City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Dunwoody City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dunwoody City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dunwoody City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1497.** *Incorporated Village of West Hampton Dunes, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46055-DAP: Plaintiff West Hampton Dunes Village, New York

West Hampton Dunes Village's untimely motion for leave to amend should be denied for several reasons. West Hampton Dunes Village failed to provide notice of its proposed amendments through a proposed complaint. West Hampton Dunes Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Hampton Dunes Village's motion should be denied due to futility, as West Hampton Dunes Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** West Hampton Dunes Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Hampton Dunes Village filed its original complaint directly into the MDL on November 21, 2019. *See Incorporated Village of West Hampton Dunes, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46055-DAP, ECF No. 1. West Hampton Dunes Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, West Hampton Dunes Village elected not to do so. West Hampton Dunes Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. West Hampton Dunes Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to West Hampton Dunes Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, West Hampton Dunes Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, West Hampton Dunes Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to West Hampton Dunes Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified West Hampton Dunes Village of this deficiency on September 16, 2024 (*see* Exhibit B), but West Hampton Dunes Village refused to amend or supplement its Fact Sheet. Under this Court's orders, West Hampton Dunes Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. West Hampton Dunes Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against West Hampton Dunes Village's potential claims against them. West Hampton Dunes Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Hampton Dunes Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Hampton Dunes Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Hampton Dunes Village's proposed RICO claim against the PBMs has expired. West Hampton Dunes Village filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of West Hampton Dunes, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46055-DAP, ECF No. 1. Even assuming *arguendo* that West Hampton Dunes Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. West Hampton Dunes Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Hampton Dunes Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** West Hampton Dunes Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. West Hampton Dunes Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1498. *The City of Doraville, Georgia v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-46056-DAP: Plaintiff Doraville City, Georgia

Doraville City's untimely motion for leave to amend should be denied for several reasons. Doraville City failed to provide notice of its proposed amendments through a proposed complaint. Doraville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Doraville City's motion should be denied due to futility, as Doraville City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Doraville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Doraville City filed its original complaint directly into the MDL on November 21, 2019. *See The City of Doraville, Georgia v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-46056-DAP, ECF No. 1. Doraville City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Doraville City elected not to do so. Doraville City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Doraville City's lack of diligence in pursuing its

claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Doraville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Doraville City). That insignificant dispensing volume is much too low to support a finding of good cause for Doraville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Doraville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.19% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Doraville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Doraville City filed its original complaint on November 21, 2019. *See The City of Doraville, Georgia v. Amerisourcebergen Drug Coroporation et al.*, Case No. 1:19-op-46056-DAP, ECF No. 1. Despite filing its case years ago, Doraville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Doraville City's case

would force the parties and the Court to waste time and resources ascertaining the extent of Doraville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Doraville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Doraville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Doraville City has *never* served a Plaintiff Fact Sheet. Doraville City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Doraville City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Doraville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Doraville City, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Doraville City's proposed RICO claim against the PBMs has expired. Doraville City filed its original complaint on November 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The City of Doraville, Georgia v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:19-op-46056-DAP, ECF No. 1. It is therefore indisputable that Doraville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Doraville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Doraville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Doraville City, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 1499. ***The City of Louisville, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46058-DAP: Plaintiff Louisville Town, Alabama**

Louisville Town's untimely motion for leave to amend should be denied for several reasons. Louisville Town failed to provide notice of its proposed amendments through a proposed complaint. Louisville Town also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Louisville Town's motion should be denied due to futility, as Louisville Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Louisville Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Louisville Town filed its original complaint directly into the MDL on November 21, 2019. *See The City of Louisville, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46058-DAP, ECF No. 1. Louisville Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Louisville Town elected not to do so. Louisville Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Louisville Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Louisville Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Louisville Town filed its original complaint on November 21, 2019. *See The City of Louisville, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46058-DAP, ECF No. 1. Despite filing its case years ago, Louisville Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Louisville Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Louisville Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Louisville Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Louisville Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Louisville Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Louisville Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Louisville Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Louisville Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Louisville Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Louisville Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Louisville Town's potential claims against them. Louisville Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause

and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Louisville Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Louisville Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Louisville Town's proposed RICO claim against the PBMs has expired. Louisville Town filed its original complaint on November 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The City of Louisville, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46058-DAP, ECF No. 1. It is therefore indisputable that Louisville Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Louisville Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Louisville Town's request for leave

to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Louisville Town's public-nuisance claim against the PBMs is therefore time-barred because Louisville Town sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on November 21, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Louisville Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1500.** *The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, **Case No. 1:19-op-46059-DAP: Plaintiff Cullman Regional Medical Center, Inc., Alabama**

Cullman Regional Medical Center, Inc.'s untimely motion for leave to amend should be denied for several reasons. Cullman Regional Medical Center, Inc. failed to provide notice of its proposed amendments through a proposed complaint. Cullman Regional Medical Center, Inc. also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cullman Regional Medical Center, Inc.'s motion should be denied due to futility, as Cullman Regional Medical Center, Inc. does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cullman Regional Medical Center, Inc. was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cullman Regional Medical Center, Inc. filed its original complaint directly into the MDL on November 21, 2019. *See The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:19-op-46059-DAP, ECF No. 1. Cullman Regional Medical Center, Inc. could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Cullman Regional Medical Center, Inc. elected not to do so. Cullman Regional Medical Center, Inc. waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Cullman Regional Medical Center, Inc.'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Cullman Regional Medical Center, Inc. filed its original complaint on November 21, 2019. *See The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:19-op-46059-DAP, ECF No. 1. Despite filing its case years ago, Cullman Regional Medical Center, Inc. *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cullman Regional Medical Center, Inc.'s case would force the parties and the Court to waste time and resources ascertaining the extent of Cullman Regional Medical Center, Inc.'s document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation

holds until 2024. The PBMs are prejudiced by Cullman Regional Medical Center, Inc.'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cullman Regional Medical Center, Inc. therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cullman Regional Medical Center, Inc.'s delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cullman Regional Medical Center, Inc., a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cullman Regional Medical Center, Inc.'s proposed RICO claim against the PBMs has expired. Cullman Regional Medical Center, Inc. filed its original complaint on November 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:19-op-46059-DAP, ECF No. 1. It is therefore indisputable that Cullman Regional Medical Center, Inc. knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years

before seeking leave to amend. Cullman Regional Medical Center, Inc.'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cullman Regional Medical Center, Inc.'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Cullman Regional Medical Center, Inc.'s public-nuisance claim against the PBMs is therefore time-barred because Cullman Regional Medical Center, Inc. sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on November 21, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Duplicative Recovery**. Cullman Regional Medical Center, Inc., a hospital owned and operated by the Health Care Authority of Cullman County, seeks leave to add the same claims and recover the same alleged damages as the related municipality, Cullman County, Alabama, a plaintiff in *Cullman County, Alabama v. Amerisourcebergen Drug Corporation et al.*, 1:18-op-45227-DAP. These duplicative claims are subject to dismissal and leave to amend should be denied as futile. *See* Section III.B.2, above; *cf. Firestone Laser & Mfg. LLC v. Bristow*, __ F. Supp. 3d __, 2024 WL 3819623, at *12 (N.D. Ohio Aug. 14, 2024) (dismissing claim because otherwise it would produce an impermissible double recovery).

**Plaintiff Lacks Standing.** Cullman Regional Medical Center, Inc., a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1501.** *The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:19-op-46059-DAP: Plaintiff Health Care Authority of Cullman County, Alabama

Health Care Authority of Cullman County's untimely motion for leave to amend should be denied for several reasons. Health Care Authority of Cullman County failed to provide notice of its proposed amendments through a proposed complaint. Health Care Authority of Cullman County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Health Care Authority of Cullman County's motion should be denied due to futility, as Health Care Authority of Cullman County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Health Care Authority of Cullman County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Health Care Authority of Cullman County filed its original complaint directly into the MDL on November 21, 2019. *See The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:19-op-46059-DAP, ECF No. 1. Health Care Authority of Cullman County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Health Care Authority of Cullman County elected not to do so. Health Care Authority of Cullman County waited four years after its deadline to amend to seek leave to assert

claims against the PBMs. Health Care Authority of Cullman County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Health Care Authority of Cullman County filed its original complaint on November 21, 2019. *See The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:19-op-46059-DAP, ECF No. 1. Despite filing its case years ago, Health Care Authority of Cullman County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Health Care Authority of Cullman County's case would force the parties and the Court to waste time and resources ascertaining the extent of Health Care Authority of Cullman County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Health Care Authority of Cullman County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Health Care Authority of Cullman County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Health Care Authority of Cullman

5504

County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Health Care Authority of Cullman County, a hospital in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Health Care Authority of Cullman County's proposed RICO claim against the PBMs has expired. Health Care Authority of Cullman County filed its original complaint on November 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The Health Care Authority of Cullman County et al. v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:19-op-46059-DAP, ECF No. 1. It is therefore indisputable that Health Care Authority of Cullman County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Health Care Authority of Cullman County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Health Care Authority of Cullman County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Health Care Authority of Cullman County's public-nuisance claim against the PBMs is therefore time-barred because Health Care Authority of Cullman County sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 21, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Duplicative Recovery**. Health Care Authority of Cullman County, a municipal health care authority, seeks leave to add the same claims and recover the same alleged damages as the related municipality, Cullman County, Alabama, a plaintiff in *Cullman County, Alabama v. Amerisourcebergen Drug Corporation et al.*, 1:18-op-45227-DAP. These duplicative claims are subject to dismissal and leave to amend should be denied as futile. *See* Section III.B.2, above; *cf. Firestone Laser & Mfg. LLC v. Bristow*, __ F. Supp. 3d __, 2024 WL 3819623, at *12 (N.D. Ohio Aug. 14, 2024) (dismissing claim because otherwise it would produce an impermissible double recovery).

**Plaintiff Lacks Standing.** Health Care Authority of Cullman County, a hospital in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1502. *Plainview-Old Bethpage Public Library v. McKesson Corporation et al.*, Case No. 1:19-op-46061-DAP: Plaintiff Plainview-Old Bethpage Public Library, New York

Plainview-Old Bethpage Public Library's untimely motion for leave to amend should be denied for several reasons. Plainview-Old Bethpage Public Library failed to provide notice of its

proposed amendments through a proposed complaint. Plainview-Old Bethpage Public Library also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Plainview-Old Bethpage Public Library's motion should be denied due to futility, as Plainview-Old Bethpage Public Library does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Plainview-Old Bethpage Public Library was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Plainview-Old Bethpage Public Library filed its original complaint directly into the MDL on November 21, 2019. *See Plainview-Old Bethpage Public Library v. McKesson Corporation et al.*, Case No. 1:19-op-46061-DAP, ECF No. 1. Plainview-Old Bethpage Public Library could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Plainview-Old Bethpage Public Library elected not to do so. Plainview-Old Bethpage Public Library waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Plainview-Old Bethpage Public Library's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Plainview-Old Bethpage Public Library failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Plainview-Old Bethpage Public Library's health plans, carriers, third party administrators, and pharmacy benefit

managers throughout the relevant time period. The PBMs notified Plainview-Old Bethpage Public Library of this deficiency on September 16, 2024 (*see* Exhibit B), but Plainview-Old Bethpage Public Library refused to amend or supplement its Fact Sheet. Under this Court's orders, Plainview-Old Bethpage Public Library's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Plainview-Old Bethpage Public Library's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Plainview-Old Bethpage Public Library's potential claims against them. Plainview-Old Bethpage Public Library's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Plainview-Old Bethpage Public Library's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Plainview-Old Bethpage Public Library, a library in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Plainview-Old Bethpage Public Library's proposed RICO claim against the PBMs has expired. Plainview-Old Bethpage Public Library filed its original complaint on November 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Plainview-Old Bethpage Public Library v. McKesson Corporation et al.*, Case No. 1:19-op-46061-DAP, ECF No. 1. It is therefore indisputable that Plainview-Old Bethpage Public Library knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Plainview-Old Bethpage Public Library's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Plainview-Old Bethpage Public Library's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Plainview-Old Bethpage Public Library, a library in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Plainview-Old Bethpage Public Library's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1503. *Incorporated Village of Babylon, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46062-DAP: Plaintiff Babylon Village, New York

Babylon Village's untimely motion for leave to amend should be denied for several reasons. Babylon Village failed to provide notice of its proposed amendments through a proposed complaint. Babylon Village also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Babylon Village's motion should be denied due to futility, as Babylon Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Babylon Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Babylon Village filed its original complaint directly into the MDL on November 21, 2019. *See Incorporated Village of Babylon, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46062-DAP, ECF No. 1. Babylon Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Babylon Village elected not to do so. Babylon Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Babylon Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Babylon Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Babylon Village). That insignificant dispensing volume is much too low to support a finding of good cause for Babylon Village to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Babylon Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Babylon Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Babylon Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Babylon Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Babylon Village's proposed RICO claim against the PBMs has expired. Babylon Village filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Babylon, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46062-DAP, ECF No. 1. Even assuming *arguendo* that Babylon Village first

learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. Babylon Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Babylon Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Babylon Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Babylon Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1504.** ***Incorporated Village of Nissequogue, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46063-DAP: Plaintiff Nissequogue Village, New York**

Nissequogue Village's untimely motion for leave to amend should be denied for several reasons. Nissequogue Village failed to provide notice of its proposed amendments through a proposed complaint. Nissequogue Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nissequogue Village's motion should be denied due to futility, as Nissequogue Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Nissequogue Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Nissequogue Village filed its original complaint directly into the MDL on November 21, 2019. *See Incorporated Village of Nissequogue, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46063-DAP, ECF No. 1. Nissequogue Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Nissequogue Village elected not to do so. Nissequogue Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Nissequogue Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Nissequogue Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Nissequogue Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Nissequogue Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Nissequogue Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Nissequogue Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Nissequogue Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Nissequogue Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Nissequogue Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Nissequogue Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Nissequogue Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Nissequogue Village's potential claims against them. Nissequogue Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nissequogue Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nissequogue Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nissequogue Village's proposed RICO claim against the PBMs has expired. Nissequogue Village filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Nissequogue, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46063-DAP, ECF No. 1. Even assuming *arguendo* that Nissequogue Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. Nissequogue Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nissequogue Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nissequogue Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Nissequogue Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at \*2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1505.** *Incorporated Village of Lindenhurst, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46064-DAP: Plaintiff Lindenhurst Village, New York

Lindenhurst Village's untimely motion for leave to amend should be denied for several reasons. Lindenhurst Village failed to provide notice of its proposed amendments through a proposed complaint. Lindenhurst Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lindenhurst Village's motion should be denied due to futility, as Lindenhurst Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Lindenhurst Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lindenhurst Village filed its original complaint directly into the MDL on November 21, 2019. *See Incorporated Village of Lindenhurst, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46064-DAP, ECF No. 1. Lindenhurst Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Lindenhurst Village elected not to do so. Lindenhurst Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Lindenhurst Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Lindenhurst Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Lindenhurst Village). That insignificant dispensing volume is much too low to support a finding of good cause for Lindenhurst Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lindenhurst Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lindenhurst Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lindenhurst Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lindenhurst Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lindenhurst Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Lindenhurst Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Lindenhurst Village's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lindenhurst Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lindenhurst Village's potential claims against them. Lindenhurst Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in

any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lindenhurst Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lindenhurst Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lindenhurst Village's proposed RICO claim against the PBMs has expired. Lindenhurst Village filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Lindenhurst, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46064-DAP, ECF No. 1. Even assuming *arguendo* that Lindenhurst Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. Lindenhurst Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lindenhurst Village's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lindenhurst Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Lindenhurst Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> ### 1506. *Rockville Centre Public Library v. McKesson Corporation et al.*, Case No. 1:19-op-46065-DAP: Plaintiff Rockville Centre Public Library, New York

Rockville Centre Public Library's untimely motion for leave to amend should be denied for several reasons. Rockville Centre Public Library failed to provide notice of its proposed amendments through a proposed complaint. Rockville Centre Public Library also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rockville Centre Public Library's motion should be denied due to futility, as Rockville Centre Public Library does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Rockville Centre Public Library was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rockville Centre Public Library filed its original complaint directly into the MDL on November 21, 2019. *See Rockville Centre Public Library v. McKesson Corporation et al.*, Case No. 1:19-op-46065-DAP, ECF No. 1. Rockville Centre Public Library could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1,

above. Unlike many other plaintiffs, Rockville Centre Public Library elected not to do so. Rockville Centre Public Library waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Rockville Centre Public Library's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Rockville Centre Public Library failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Rockville Centre Public Library's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Rockville Centre Public Library of this deficiency on September 16, 2024 (*see* Exhibit B), but Rockville Centre Public Library refused to amend or supplement its Fact Sheet. Under this Court's orders, Rockville Centre Public Library's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Rockville Centre Public Library's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Rockville Centre Public Library's potential claims against them. Rockville Centre Public Library's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693,

at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rockville Centre Public Library's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rockville Centre Public Library, a library in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Rockville Centre Public Library's proposed RICO claim against the PBMs has expired. Rockville Centre Public Library filed its original complaint on November 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rockville Centre Public Library v. McKesson Corporation et al.*, Case No. 1:19-op-46065-DAP, ECF No. 1. It is therefore indisputable that Rockville Centre Public Library knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Rockville Centre Public Library's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Rockville Centre Public Library's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Rockville Centre Public Library, a library in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Rockville Centre Public Library's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1507.** *City of Alamogordo v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-46067-DAP: Plaintiff Alamogordo City, New Mexico**

Alamogordo City's untimely motion for leave to amend should be denied for several reasons. Alamogordo City failed to provide notice of its proposed amendments through a proposed complaint. Alamogordo City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Alamogordo City's motion should be denied due to futility, as Alamogordo City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Alamogordo City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Alamogordo City amended its complaint on February 20, 2020, after transfer to the MDL on November 22, 2019. *See City of Alamogordo v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46067-DAP, ECF No. 7. Unlike many other plaintiffs, Alamogordo City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Alamogordo City's deadline to amend was in 2020. Alamogordo City waited four years after its

deadline to amend to seek leave to assert claims against the PBMs. Alamogordo City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Alamogordo City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Alamogordo City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Alamogordo City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Alamogordo City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.02% market share for Alamogordo City). That insignificant dispensing volume is much too low to support a finding of good cause for Alamogordo City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Alamogordo City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Alamogordo City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Alamogordo City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Alamogordo City, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Alamogordo City's proposed RICO claim against the PBMs has expired. Alamogordo City filed its original complaint on October 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other

defendants. *See City of Alamogordo v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46067-DAP, ECF No. 1. It is therefore indisputable that Alamogordo City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Alamogordo City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Alamogordo City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Alamogordo City, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1508. *City of Hobbs, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46068-DAP: Plaintiff Hobbs City, New Mexico

Hobbs City's untimely motion for leave to amend should be denied for several reasons. Hobbs City failed to provide notice of its proposed amendments through a proposed complaint. Hobbs City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hobbs City's motion should be denied due to futility, as Hobbs City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hobbs City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hobbs City amended its complaint on February 20, 2020, after transfer to the MDL on November

22, 2019. *See City of Hobbs, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46068-DAP, ECF No. 7. Unlike many other plaintiffs, Hobbs City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hobbs City's deadline to amend was in 2020. Hobbs City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hobbs City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

  **Prior Notice Through Counsel.** Hobbs City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hobbs City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hobbs City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hobbs City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Hobbs City). That insignificant dispensing volume is much too low to support a finding of good cause for Hobbs City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hobbs City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hobbs City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hobbs City filed its original complaint on October 28, 2019. *See City of Hobbs, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46068-DAP, ECF No. 1. Despite filing its case years ago, Hobbs City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hobbs City's case would force the parties and the Court to waste time and resources ascertaining the extent of Hobbs City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hobbs City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hobbs City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hobbs City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hobbs City, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hobbs City's proposed RICO claim against the PBMs has expired. Hobbs City filed its original complaint on October 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Hobbs, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46068-DAP, ECF No. 1. It is therefore indisputable that Hobbs City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Hobbs City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hobbs City's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hobbs City, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1509.** ***Board of County Commissioners of the County of Hidalgo, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-46069-DAP: Plaintiff Hidalgo County, New Mexico**

Hidalgo County's untimely motion for leave to amend should be denied for several reasons. Hidalgo County failed to provide notice of its proposed amendments through a proposed complaint. Hidalgo County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hidalgo County's motion should be denied due to futility, as Hidalgo County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hidalgo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hidalgo County amended its complaint on February 20, 2020, after transfer to the MDL on November 22, 2019. *See Board of County Commissioners of the County of Hidalgo, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-46069-DAP, ECF No. 7. Unlike many other plaintiffs, Hidalgo County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Hidalgo County's deadline to amend was in 2020. Hidalgo County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hidalgo County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the

scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hidalgo County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hidalgo County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hidalgo County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hidalgo County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hidalgo County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hidalgo County's proposed RICO claim against the PBMs has expired. Hidalgo County filed its original complaint on October 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Board of County Commissioners of the County of Hidalgo, New Mexico v. AmerisourceBergen Drug Corporation et al*, Case No. 1:19-op-46069-DAP, ECF No. 1. It is therefore indisputable that Hidalgo County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Hidalgo County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hidalgo County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hidalgo County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1510.** ***Atlantic County, New Jersey v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46071-DAP: Plaintiff Atlantic County, New Jersey**

Atlantic County's untimely motion for leave to amend should be denied for several reasons. Atlantic County failed to provide notice of its proposed amendments through a proposed

complaint. Atlantic County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Atlantic County's motion should be denied due to futility, as Atlantic County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Atlantic County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Atlantic County amended its complaint on April 15, 2021, after transfer to the MDL on November 22, 2019. *See Atlantic County, New Jersey v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46071-DAP, ECF No. 6. Unlike many other plaintiffs, Atlantic County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Atlantic County's deadline to amend was in 2020. Atlantic County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Atlantic County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Atlantic County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Atlantic County). That insignificant dispensing volume is much too

low to support a finding of good cause for Atlantic County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Atlantic County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Atlantic County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Atlantic County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Atlantic County of the PBM services Express Scripts provides and Atlantic County began receiving those services on July 30, 2007. *See id.* Inasmuch as Atlantic County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Atlantic County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Atlantic County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Atlantic County violated its basic duty to implement a timely litigation hold. Atlantic County filed its original complaint on October 28,

2019, but waited until September 16, 2024 to implement a litigation hold—nearly five years later. *See Atlantic County, New Jersey v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46071-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Atlantic County's case would force the parties and the Court to waste time and resources ascertaining the extent of Atlantic County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Atlantic County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Atlantic County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Atlantic County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Atlantic County, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Atlantic County's proposed RICO claim against the PBMs has expired. Atlantic County filed its original complaint on October 28, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Atlantic County, New Jersey v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46071-DAP, ECF No. 1. It is therefore indisputable that Atlantic County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Atlantic County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Atlantic County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Atlantic County, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1511. *Town of Clinton, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46072-DAP: Plaintiff Clinton Town, Massachusetts

Clinton Town's untimely motion for leave to amend should be denied for several reasons. Clinton Town failed to provide notice of its proposed amendments through a proposed complaint. Clinton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clinton Town's motion should be denied due to futility, as Clinton Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is

barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clinton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clinton Town amended its complaint on February 19, 2020, after transfer to the MDL on November 22, 2019. *See Town of Clinton, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46072-DAP, ECF No. 9. Unlike many other plaintiffs, Clinton Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Clinton Town's deadline to amend was in 2020. Clinton Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Clinton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clinton Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Clinton Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Clinton Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clinton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Clinton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Clinton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clinton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clinton Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Clinton Town filed its original complaint on October 29, 2019. *See Town of Clinton, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46072-DAP, ECF No. 1. Despite filing its case years ago, Clinton Town *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)).

This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Clinton Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Clinton Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clinton Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clinton Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Clinton Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Clinton Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Clinton Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Clinton Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Clinton Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Clinton Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Clinton Town's potential claims against them. Clinton Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

5538

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clinton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clinton Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clinton Town's proposed RICO claim against the PBMs has expired. Clinton Town filed its original complaint on October 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Clinton, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46072-DAP, ECF No. 1. It is therefore indisputable that Clinton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Clinton Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clinton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Clinton Town's public-nuisance claim against the PBMs is therefore time-barred because Clinton Town sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on October 29, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Clinton Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1512. *City of New Port Ritchey v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46073-DAP: Plaintiff New Port Richey City, Florida

New Port Richey City's untimely motion for leave to amend should be denied for several reasons. New Port Richey City failed to provide notice of its proposed amendments through a proposed complaint. New Port Richey City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, New Port Richey City's motion should be denied due to futility, as New Port Richey City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** New Port Richey City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, New Port Richey City amended its complaint on February 20, 2020, after transfer to

the MDL on November 22, 2019. *See City of New Port Ritchey v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46073-DAP, ECF No. 8. Unlike many other plaintiffs, New Port Richey City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. New Port Richey City's deadline to amend was in 2020. New Port Richey City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. New Port Richey City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** New Port Richey City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. New Port Richey City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. New Port Richey City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But New Port Richey City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** New Port Richey City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for New Port Richey City's proposed RICO claim against the PBMs has expired. New Port Richey City filed its original complaint on October 29, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of New Port Ritchey v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46073-DAP, ECF No. 1. It is therefore indisputable that New Port Richey City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. New Port Richey City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. New Port Richey City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. New Port Richey City's public-nuisance claim against the PBMs is therefore time-barred because New Port Richey City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on October 29, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** New Port Richey City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1513. *Incorporated Village of Mill Neck, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46074-DAP: Plaintiff Mill Neck Village, New York

Mill Neck Village's untimely motion for leave to amend should be denied for several reasons. Mill Neck Village failed to provide notice of its proposed amendments through a proposed complaint. Mill Neck Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mill Neck Village's motion should be denied due to futility, as Mill Neck Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Mill Neck Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mill Neck Village filed its original complaint directly into the MDL on November 22, 2019. *See Incorporated Village of Mill Neck, NY v. McKesson Corporation et al.*, Case No. 1:19-

op-46074-DAP, ECF No. 1. Mill Neck Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Mill Neck Village elected not to do so. Mill Neck Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Mill Neck Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Mill Neck Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Mill Neck Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Mill Neck Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Mill Neck Village's geographic jurisdiction during 2009 to 2019.

*See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Mill Neck Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Mill Neck Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Mill Neck Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Mill Neck Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Mill Neck Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Mill Neck Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Mill Neck Village's potential claims against them. Mill Neck Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mill Neck Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mill Neck Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mill Neck Village's proposed RICO claim against the PBMs has expired. Mill Neck Village filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Incorporated Village of Mill Neck, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46074-DAP, ECF No. 1. Even assuming *arguendo* that Mill Neck Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Mill Neck Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mill Neck Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mill Neck Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Mill Neck Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1514.** *Incorporated Village of Old Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46075-DAP: Plaintiff Old Westbury Village, New York

Old Westbury Village's untimely motion for leave to amend should be denied for several reasons. Old Westbury Village failed to provide notice of its proposed amendments through a proposed complaint. Old Westbury Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Old Westbury Village's motion should be denied due to futility, as Old Westbury Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Old Westbury Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Old Westbury Village filed its original complaint directly into the MDL on November 22, 2019. *See Incorporated Village of Old Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46075-DAP, ECF No. 1. Old Westbury Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Old Westbury Village elected not to do so. Old Westbury Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Old Westbury Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Old Westbury Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Old Westbury Village filed its original complaint on November 22, 2019. *See Incorporated Village of Old Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46075-DAP, ECF No. 1. Despite filing its case years ago, Old Westbury Village *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Old Westbury Village's case would force the parties and the Court to waste time and resources ascertaining the extent of Old Westbury Village's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Old Westbury Village's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Old Westbury Village therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Old Westbury Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Old Westbury Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Old Westbury Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Old Westbury Village refused to amend or supplement its Fact Sheet. Under this

Court's orders, Old Westbury Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Old Westbury Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Old Westbury Village's potential claims against them. Old Westbury Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Old Westbury Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Old Westbury Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Old Westbury Village's proposed RICO claim against the PBMs has expired. Old Westbury Village filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to

recover under RICO against the PBMs. *See Incorporated Village of Old Westbury, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46075-DAP, ECF No. 1. Even assuming *arguendo* that Old Westbury Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Old Westbury Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Old Westbury Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Old Westbury Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Old Westbury Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1515. *City of Clifton, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46076-DAP: Plaintiff Clifton City, New Jersey

Clifton City's untimely motion for leave to amend should be denied for several reasons. Clifton City failed to provide notice of its proposed amendments through a proposed complaint. Clifton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clifton City's motion should be denied due to futility, as Clifton City does

not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clifton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clifton City filed its original complaint directly into the MDL on November 22, 2019. *See City of Clifton, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46076-DAP, ECF No. 1. Clifton City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Clifton City elected not to do so. Clifton City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Clifton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clifton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Clifton City). That insignificant dispensing volume is much too low to support a finding of good cause for Clifton City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clifton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clifton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Clifton City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Clifton City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Clifton City of this deficiency on September 16, 2024 (*see* Exhibit B), but Clifton City refused to amend or supplement its Fact Sheet. Under this Court's orders, Clifton City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Clifton City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Clifton City's potential claims against them. Clifton City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clifton City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clifton City, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clifton City's proposed RICO claim against the PBMs has expired. Clifton City filed its original complaint on November 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Clifton, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46076-DAP, ECF No. 1. It is therefore indisputable that Clifton City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Clifton City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clifton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clifton City, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1516. *Levittown Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46077-DAP: Plaintiff Levittown Fire District, New York

Levittown Fire District's untimely motion for leave to amend should be denied for several reasons. Levittown Fire District failed to provide notice of its proposed amendments through a proposed complaint. Levittown Fire District also lacks good cause under Rule 15 or Rule 16 due

to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Levittown Fire District's motion should be denied due to futility, as Levittown Fire District does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Levittown Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Levittown Fire District filed its original complaint directly into the MDL on November 22, 2019. *See Levittown Fire District, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46077-DAP, ECF No. 1. Levittown Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Levittown Fire District elected not to do so. Levittown Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Levittown Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Levittown Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Levittown Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Levittown Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Levittown Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Levittown Fire District's case is therefore subject to "***dismiss[al] with prejudice***"

for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Levittown Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Levittown Fire District's potential claims against them. Levittown Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Levittown Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Levittown Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Levittown Fire District's proposed RICO claim against the PBMs has expired. Levittown Fire District filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Levittown Fire District, NY v. McKesson Corporation*

*et al.*, Case No. 1:19-op-46077-DAP, ECF No. 1. Even assuming *arguendo* that Levittown Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Levittown Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Levittown Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Levittown Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Levittown Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1517. *Friendship Engine & Hose Company, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46078-DAP: Plaintiff Friendship Engine & Hose Company, New York

Friendship Engine & Hose Company's untimely motion for leave to amend should be denied for several reasons. Friendship Engine & Hose Company failed to provide notice of its proposed amendments through a proposed complaint. Friendship Engine & Hose Company also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Friendship Engine & Hose Company's motion should be denied due to futility, as Friendship Engine & Hose Company does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Friendship Engine & Hose Company was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Friendship Engine & Hose Company filed its original complaint directly into the MDL on November 22, 2019. *See Friendship Engine & Hose Company, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46078-DAP, ECF No. 1. Friendship Engine & Hose Company could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Friendship Engine & Hose Company elected not to do so. Friendship Engine & Hose Company waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Friendship Engine & Hose Company's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Friendship Engine & Hose Company failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Friendship Engine & Hose Company's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Friendship Engine & Hose Company of this deficiency on September 16, 2024 (*see* Exhibit B), but Friendship Engine & Hose Company refused to amend or supplement its Fact Sheet. Under this Court's orders, Friendship Engine & Hose Company's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Friendship Engine & Hose Company's refusal to provide basic information related to its health care plans prejudices the

PBMs' ability to defend against Friendship Engine & Hose Company's potential claims against them. Friendship Engine & Hose Company's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Friendship Engine & Hose Company's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Friendship Engine & Hose Company, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Friendship Engine & Hose Company's proposed RICO claim against the PBMs has expired. Friendship Engine & Hose Company filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Friendship Engine & Hose Company, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46078-DAP, ECF No. 1. Even assuming *arguendo* that Friendship Engine & Hose Company first learned of its injury on the day

it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Friendship Engine & Hose Company's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Friendship Engine & Hose Company's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Friendship Engine & Hose Company, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Friendship Engine & Hose Company's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1518. *Town of Islip, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46079-DAP: Plaintiff Islip Town, New York

Islip Town's untimely motion for leave to amend should be denied for several reasons. Islip Town failed to provide notice of its proposed amendments through a proposed complaint. Islip Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Islip Town's motion should be denied due to futility, as Islip Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Islip Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Islip Town filed its original complaint directly into the MDL on November 22, 2019. *See Town of Islip, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46079-DAP, ECF No. 1. Islip Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Islip Town elected not to do so. Islip Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Islip Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Islip Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Islip Town). That insignificant dispensing volume is much too low to support a finding of good cause for Islip Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Islip Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Islip Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Islip Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Islip Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Islip Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Islip Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Islip Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Islip Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Islip Town's potential claims against them. Islip Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Islip Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Islip Town, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Islip Town's proposed RICO claim against the PBMs has expired. Islip Town filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Islip, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46079-DAP, ECF No. 1. Even assuming *arguendo* that Islip Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Islip Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Islip Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Islip Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Islip Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1519. *Village of Saltaire, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46080-DAP: Plaintiff Saltaire Village, New York

Saltaire Village's untimely motion for leave to amend should be denied for several reasons. Saltaire Village failed to provide notice of its proposed amendments through a proposed complaint. Saltaire Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Saltaire Village's motion should be denied due to futility, as Saltaire Village

does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Saltaire Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Saltaire Village filed its original complaint directly into the MDL on November 22, 2019. *See Village of Saltaire, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46080-DAP, ECF No. 1. Saltaire Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Saltaire Village elected not to do so. Saltaire Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Saltaire Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Saltaire Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Saltaire Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Saltaire Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Saltaire Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Saltaire Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Saltaire Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Saltaire Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Saltaire Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Saltaire Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Saltaire Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Saltaire Village's potential claims against them. Saltaire Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Saltaire Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Saltaire Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Saltaire Village's proposed RICO claim against the PBMs has expired. Saltaire Village filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Saltaire, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46080-DAP, ECF No. 1. Even assuming *arguendo* that Saltaire Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Saltaire Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Saltaire Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Saltaire Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Saltaire Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1520.** *Town of Orangetown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46081-DAP: Plaintiff Orangetown Town, New York

Orangetown Town's untimely motion for leave to amend should be denied for several reasons. Orangetown Town failed to provide notice of its proposed amendments through a proposed complaint. Orangetown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Orangetown Town's motion should be denied due to futility, as Orangetown Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Orangetown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Orangetown Town filed its original complaint directly into the MDL on November 22, 2019. *See Town of Orangetown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46081-DAP, ECF No. 1. Orangetown Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Orangetown Town elected not to do so. Orangetown Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Orangetown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Orangetown Town's geographic

jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Orangetown Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Orangetown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Orangetown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Orangetown Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Orangetown Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Orangetown Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Orangetown Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Orangetown Town's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Orangetown Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Orangetown Town's potential claims against them. Orangetown Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in

any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Orangetown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Orangetown Town, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Orangetown Town's proposed RICO claim against the PBMs has expired. Orangetown Town filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Orangetown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46081-DAP, ECF No. 1. Even assuming *arguendo* that Orangetown Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Orangetown Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Orangetown Town's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Orangetown Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Orangetown Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1521. *Town of Haverstraw, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46083-DAP: Plaintiff Haverstraw Town, New York

Haverstraw Town's untimely motion for leave to amend should be denied for several reasons. Haverstraw Town failed to provide notice of its proposed amendments through a proposed complaint. Haverstraw Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Haverstraw Town's motion should be denied due to futility, as Haverstraw Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Haverstraw Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Haverstraw Town filed its original complaint directly into the MDL on November 22, 2019. *See Town of Haverstraw, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46083-DAP, ECF No. 1. Haverstraw Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Haverstraw Town elected not to do so. Haverstraw Town waited four years after its deadline to

amend to seek leave to assert claims against the PBMs. Haverstraw Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Haverstraw Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Haverstraw Town). That insignificant dispensing volume is much too low to support a finding of good cause for Haverstraw Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Haverstraw Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Haverstraw Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Haverstraw Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Haverstraw Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Haverstraw Town of this deficiency on September 16, 2024 (*see*

Exhibit B), but Haverstraw Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Haverstraw Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Haverstraw Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Haverstraw Town's potential claims against them. Haverstraw Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Haverstraw Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Haverstraw Town, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Haverstraw Town's proposed RICO claim against the PBMs has expired. Haverstraw Town filed its original complaint on

November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Haverstraw, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46083-DAP, ECF No. 1. Even assuming *arguendo* that Haverstraw Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Haverstraw Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Haverstraw Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Haverstraw Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Haverstraw Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1522. *Village of Greenport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46084-DAP: Plaintiff Greenport Village, New York

Greenport Village's untimely motion for leave to amend should be denied for several reasons. Greenport Village failed to provide notice of its proposed amendments through a proposed complaint. Greenport Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Greenport Village's motion should be denied due to

futility, as Greenport Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Greenport Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Greenport Village filed its original complaint directly into the MDL on November 22, 2019. *See Village of Greenport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46084-DAP, ECF No. 1. Greenport Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Greenport Village elected not to do so. Greenport Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Greenport Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Greenport Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Greenport Village). That insignificant dispensing volume is much too low to support a finding of good cause for Greenport Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Greenport Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Greenport Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Greenport Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Greenport Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Greenport Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Greenport Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Greenport Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Greenport Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Greenport Village's potential claims against them. Greenport Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Greenport Village's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Greenport Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Greenport Village's proposed RICO claim against the PBMs has expired. Greenport Village filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Greenport, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46084-DAP, ECF No. 1. Even assuming *arguendo* that Greenport Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Greenport Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Greenport Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Greenport Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Greenport Village's request for leave to

amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1523. *Town of Clinton, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46085-DAP: Plaintiff Clinton Town, New Jersey

Clinton Town's untimely motion for leave to amend should be denied for several reasons. Clinton Town failed to provide notice of its proposed amendments through a proposed complaint. Clinton Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clinton Town's motion should be denied due to futility, as Clinton Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clinton Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clinton Town filed its original complaint directly into the MDL on November 22, 2019. *See Town of Clinton, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46085-DAP, ECF No. 1. Clinton Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Clinton Town elected not to do so. Clinton Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Clinton Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clinton Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Clinton Town). That insignificant dispensing volume is much too low to support a finding of good cause for Clinton Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clinton Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clinton Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Clinton Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Clinton Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Clinton Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Clinton Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Clinton Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Clinton Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Clinton Town's potential claims against them. Clinton Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clinton Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clinton Town, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clinton Town's proposed RICO claim against the PBMs has expired. Clinton Town filed its original complaint on November 22, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Clinton, New Jersey v. McKesson Corporation et al.*, Case No. 1:19-op-46085-DAP, ECF No. 1. It is therefore indisputable that Clinton Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Clinton Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Clinton Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clinton Town, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1524.** *Village of Suffern, NY v. McKesson Corporation et al.*, **Case No. 1:19-op-46087-DAP: Plaintiff Suffern Village, New York**

Suffern Village's untimely motion for leave to amend should be denied for several reasons. Suffern Village failed to provide notice of its proposed amendments through a proposed complaint. Suffern Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Suffern Village's motion should be denied due to futility, as Suffern Village does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Suffern Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Suffern Village filed its original complaint directly into the MDL on November 22, 2019. *See Village of Suffern, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46087-DAP, ECF No. 1. Suffern Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Suffern Village elected not to do so. Suffern Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Suffern Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Suffern Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Suffern Village). That insignificant dispensing volume is much too low to support a finding of good cause for Suffern Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Suffern Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Suffern Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Suffern Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Suffern Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Suffern Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Suffern Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Suffern Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Suffern Village's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Suffern Village's potential claims against them. Suffern Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Suffern Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Suffern Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Suffern Village's proposed RICO claim against the PBMs has expired. Suffern Village filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Suffern, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46087-DAP, ECF No. 1. Even assuming *arguendo* that Suffern Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at

the very latest, on November 22, 2023. Suffern Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Suffern Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Suffern Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Suffern Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1525. *Town of Clarkstown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46088-DAP: Plaintiff Clarkstown Town, New York

Clarkstown Town's untimely motion for leave to amend should be denied for several reasons. Clarkstown Town failed to provide notice of its proposed amendments through a proposed complaint. Clarkstown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Clarkstown Town's motion should be denied due to futility, as Clarkstown Town does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Clarkstown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clarkstown Town filed its original complaint directly into the MDL on November 22,

2019. *See Town of Clarkstown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46088-DAP, ECF No. 1. Clarkstown Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Clarkstown Town elected not to do so. Clarkstown Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Clarkstown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Clarkstown Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Clarkstown Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clarkstown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clarkstown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clarkstown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clarkstown Town, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clarkstown Town's proposed RICO claim against the PBMs has expired. Clarkstown Town filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Clarkstown, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46088-DAP, ECF No. 1. Even assuming *arguendo* that Clarkstown Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Clarkstown Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Clarkstown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clarkstown Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Clarkstown Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1526. *Village of West Haverstraw, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46089-DAP: Plaintiff West Haverstraw Village, New York

West Haverstraw Village's untimely motion for leave to amend should be denied for several reasons. West Haverstraw Village failed to provide notice of its proposed amendments through a proposed complaint. West Haverstraw Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Haverstraw Village's motion should be denied due to futility, as West Haverstraw Village does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** West Haverstraw Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Haverstraw Village filed its original complaint directly into the MDL on November 22, 2019. *See Village of West Haverstraw, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46089-DAP, ECF No. 1. West Haverstraw Village could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, West Haverstraw Village elected not to do so. West Haverstraw Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. West Haverstraw Village's lack of diligence in pursuing its claims negates any finding of good cause.

*See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to West Haverstraw Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, West Haverstraw Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to West Haverstraw Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for West Haverstraw Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, West Haverstraw Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to West Haverstraw Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified West Haverstraw Village of this deficiency on September 16, 2024 (*see* Exhibit B), but West Haverstraw Village refused to amend or supplement its Fact Sheet. Under this Court's orders, West Haverstraw Village's case is therefore subject to "***dismiss[al] with***

*prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. West Haverstraw Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against West Haverstraw Village's potential claims against them. West Haverstraw Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Haverstraw Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Haverstraw Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Haverstraw Village's proposed RICO claim against the PBMs has expired. West Haverstraw Village filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of West Haverstraw, NY v. McKesson*

*Corporation et al.*, Case No. 1:19-op-46089-DAP, ECF No. 1. Even assuming *arguendo* that West Haverstraw Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. West Haverstraw Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Haverstraw Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** West Haverstraw Village, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. West Haverstraw Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1527. *Town of Southold, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46090-DAP: Plaintiff Southold Town, New York

Southold Town's untimely motion for leave to amend should be denied for several reasons. Southold Town failed to provide notice of its proposed amendments through a proposed complaint. Southold Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Southold Town's motion should be denied due to futility, as Southold Town does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Southold Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Southold Town filed its original complaint directly into the MDL on November 22, 2019. *See Town of Southold, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46090-DAP, ECF No. 1. Southold Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Southold Town elected not to do so. Southold Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Southold Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Southold Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Southold Town). That insignificant dispensing volume is much too low to support a finding of good cause for Southold Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Southold Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Southold Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Southold Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Southold Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Southold Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Southold Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Southold Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Southold Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Southold Town's potential claims against them. Southold Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Southold Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Southold Town, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Southold Town's proposed RICO claim against the PBMs has expired. Southold Town filed its original complaint on November 22, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Southold, NY v. McKesson Corporation et al.*, Case No. 1:19-op-46090-DAP, ECF No. 1. Even assuming *arguendo* that Southold Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 22, 2023. Southold Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Southold Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Southold Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Southold Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1528.** ***The Town of Wappingers Falls, New York v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46091-DAP: Plaintiff Wappinger Town, New York**

Wappinger Town's untimely motion for leave to amend should be denied for several reasons. Wappinger Town failed to provide notice of its proposed amendments through a proposed complaint. Wappinger Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wappinger Town's motion should be denied due to futility, as Wappinger Town does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Wappinger Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wappinger Town amended its complaint on November 8, 2019 before transfer to the MDL on November 25, 2019. *See The Town of Wappingers Falls, New York v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46091-DAP, ECF No. 4. Unlike many other plaintiffs, Wappinger Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Wappinger Town's deadline to amend was in 2020. Wappinger Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Wappinger Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Wappinger Town's geographic

jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Wappinger Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Wappinger Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Wappinger Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Wappinger Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Wappinger Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Wappinger Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Wappinger Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Wappinger Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Wappinger Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Wappinger Town's potential claims against them. Wappinger Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6

(denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wappinger Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wappinger Town, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wappinger Town's proposed RICO claim against the PBMs has expired. Wappinger Town filed its original complaint on November 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See The Town of Wappingers Falls, New York v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46091-DAP, ECF No. 1. Even assuming *arguendo* that Wappinger Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 1, 2023. Wappinger Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wappinger Town's request for leave to

amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wappinger Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Wappinger Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1529. *City of Spokane v. Endo Health Solutions Inc et al.*, Case No. 1:19-op-46092-DAP: Plaintiff Spokane City, Washington

Spokane City's untimely motion for leave to amend should be denied for several reasons. Spokane City failed to provide notice of its proposed amendments through a proposed complaint. Spokane City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Spokane City's motion should be denied due to futility, as Spokane City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Spokane City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Spokane City amended its complaint on December 24, 2020, after transfer to the MDL on December 2, 2019. *See City of Spokane v. Endo Health Solutions Inc et al.*, Case No. 1:19-op-46092-DAP, ECF No. 6. Unlike many other plaintiffs, Spokane City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Spokane City's deadline to amend

was in 2020. Spokane City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Spokane City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Spokane City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Spokane City). That insignificant dispensing volume is much too low to support a finding of good cause for Spokane City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Spokane City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Spokane City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Spokane City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Spokane City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Spokane City's proposed RICO claim against the PBMs has expired. Spokane City filed its original complaint on November 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Spokane v. Endo Health Solutions Inc et al.*, Case No. 1:19-op-46092-DAP, ECF No. 1. It is therefore indisputable that Spokane City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Spokane City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Spokane City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Spokane City's public-nuisance claim against the PBMs is therefore time-barred because Spokane City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 4, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing**. Spokane City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1530.** ***Merrick Library v. McKesson Corporation et al.*, Case No. 1:19-op-46097-DAP: Plaintiff Merrick Library, New York**

Merrick Library's untimely motion for leave to amend should be denied for several reasons. Merrick Library failed to provide notice of its proposed amendments through a proposed complaint. Merrick Library also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Merrick Library's motion should be denied due to futility, as Merrick Library does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Merrick Library was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Merrick Library filed its original complaint directly into the MDL on December 2, 2019. *See Merrick Library v. McKesson Corporation et al.*, Case No. 1:19-op-46097-DAP, ECF No. 1. Merrick Library could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Merrick Library elected not to do so. Merrick Library waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Merrick Library's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after

the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Merrick Library failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Merrick Library's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Merrick Library of this deficiency on September 16, 2024 (*see* Exhibit B), but Merrick Library refused to amend or supplement its Fact Sheet. Under this Court's orders, Merrick Library's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Merrick Library's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Merrick Library's potential claims against them. Merrick Library's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Merrick Library's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Merrick Library, a library in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Merrick Library's proposed RICO claim against the PBMs has expired. Merrick Library filed its original complaint on December 2, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Merrick Library v. McKesson Corporation et al.*, Case No. 1:19-op-46097-DAP, ECF No. 1. It is therefore indisputable that Merrick Library knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Merrick Library's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Merrick Library's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Merrick Library, a library in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Merrick Library's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1531.** *Dade County, Georgia v. McKesson Corporation et al.*, Case No. 1:19-op-46099-DAP: Plaintiff Dade County, Georgia

Dade County's untimely motion for leave to amend should be denied for several reasons. Dade County failed to provide notice of its proposed amendments through a proposed complaint. Dade County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dade County's motion should be denied due to futility, as Dade County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dade County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dade County filed its original complaint directly into the MDL on December 2, 2019. *See Dade County, Georgia v. McKesson Corporation et al.*, Case No. 1:19-op-46099-DAP, ECF No. 1. Dade County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Dade County elected not to do so. Dade County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Dade County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dade County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.03% market share for Dade County). That insignificant dispensing volume is much too low to support a finding of good cause for Dade County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Dade County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Dade County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Dade County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Dade County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Dade County of this deficiency on September 16, 2024 (*see* Exhibit B), but Dade County refused to amend or supplement its Fact Sheet. Under this Court's orders, Dade County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dade County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Dade County's potential claims against them. Dade County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dade County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dade County, a municipality in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dade County's proposed RICO claim against the PBMs has expired. Dade County filed its original complaint on December 2, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Dade County, Georgia v. McKesson Corporation et al.*, Case No. 1:19-op-46099-DAP, ECF No. 1. Even assuming *arguendo* that Dade County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 2, 2023. Dade County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dade County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dade County, a municipality in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1532.** *Centereach Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46100-DAP: Plaintiff Centereach Fire District, New York

Centereach Fire District's untimely motion for leave to amend should be denied for several reasons. Centereach Fire District failed to provide notice of its proposed amendments through a proposed complaint. Centereach Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Centereach Fire District's motion should be denied due to futility, as Centereach Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Centereach Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Centereach Fire District filed its original complaint directly into the MDL on December 3, 2019. *See Centereach Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46100-DAP, ECF No. 1. Centereach Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Centereach Fire District elected not to do so. Centereach Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Centereach Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Centereach Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Centereach Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Centereach Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Centereach Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Centereach Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Centereach Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Centereach Fire District's potential claims against them. Centereach Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Centereach Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Centereach Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Centereach Fire District's proposed RICO claim against the PBMs has expired. Centereach Fire District filed its original complaint on December 3, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Centereach Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46100-DAP, ECF No. 1. Even assuming *arguendo* that Centereach Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 3, 2023. Centereach Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Centereach Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Centereach Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Centereach Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1533.** *City of Ashland, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46102-DAP: Plaintiff Ashland Town, Alabama

Ashland Town's untimely motion for leave to amend should be denied for several reasons. Ashland Town failed to provide notice of its proposed amendments through a proposed complaint. Ashland Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ashland Town's motion should be denied due to futility, as Ashland Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ashland Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ashland Town filed its original complaint on November 6, 2019 and the case was transferred to the MDL on December 5, 2019. *See City of Ashland, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46102-DAP, ECF No. 10. Ashland Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Ashland Town elected not to do so. Instead, Ashland Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Ashland Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Ashland Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Ashland Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ashland Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ashland Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ashland Town filed its original complaint on November 6, 2019. *See City of Ashland, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46102-DAP, ECF No. 1. Despite filing its case years ago, Ashland Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Ashland Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Ashland Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ashland Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ashland Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ashland Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ashland Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ashland Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Ashland Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Ashland Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ashland Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ashland Town's potential claims against them. Ashland Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ashland Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ashland Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ashland Town's proposed RICO claim against the PBMs has expired. Ashland Town filed its original complaint on November 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Ashland, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46102-DAP, ECF No. 1. It is therefore indisputable that Ashland Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Ashland Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ashland Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Ashland Town's public-nuisance claim against the PBMs is therefore time-barred because Ashland Town sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 6, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Ashland Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1534.** ***City of Center Point, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46103-DAP: Plaintiff Center Point City, Alabama**

Center Point City's untimely motion for leave to amend should be denied for several reasons. Center Point City failed to provide notice of its proposed amendments through a proposed complaint. Center Point City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Center Point City's motion should be denied due to futility, as Center Point City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Center Point City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Center Point City filed its original complaint on November 6, 2019 and the case was transferred to the MDL on December 5, 2019. *See City of Center Point, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46103-DAP, ECF No. 10. Center Point City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Center Point City elected not to do so. Instead, Center Point City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Center Point City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling

order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Center Point City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Center Point City). That insignificant dispensing volume is much too low to support a finding of good cause for Center Point City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Center Point City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Center Point City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Center Point City filed its original complaint on November 6, 2019. *See City of Center Point, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46103-DAP, ECF No. 1. Despite filing its case years ago, Center Point City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Center Point City's case would force the parties and the Court to waste time and resources ascertaining the extent of Center Point City's document destruction and the appropriate sanctions—just as the parties were forced to do in the

three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Center Point City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Center Point City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Center Point City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Center Point City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Center Point City of this deficiency on September 16, 2024 (*see* Exhibit B), but Center Point City refused to amend or supplement its Fact Sheet. Under this Court's orders, Center Point City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Center Point City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Center Point City's potential claims against them. Center Point City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Center Point City's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Center Point City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Center Point City's proposed RICO claim against the PBMs has expired. Center Point City filed its original complaint on November 6, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Center Point, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46103-DAP, ECF No. 1. It is therefore indisputable that Center Point City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Center Point City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Center Point City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Center Point City's public-nuisance claim against the PBMs is therefore time-barred because Center Point City sought leave to amend its complaint on July 29,

2024—nearly five years after filing its original complaint on November 6, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Center Point City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1535. *City of Buffalo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46104-DAP: Plaintiff Buffalo City, New York

Buffalo City's untimely motion for leave to amend should be denied for several reasons. Buffalo City failed to provide notice of its proposed amendments through a proposed complaint. Buffalo City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Buffalo City's motion should be denied due to futility, as Buffalo City does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Buffalo City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Buffalo City filed its original complaint on September 5, 2019 and the case was transferred to the MDL on December 5, 2019. *See City of Buffalo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46104-DAP, ECF No. 19. Buffalo City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Buffalo City elected not to do so. Instead, Buffalo City waited four years after its deadline to amend to

seek leave to assert claims against the PBMs. Buffalo City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Buffalo City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Buffalo City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Buffalo City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Buffalo City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Buffalo City). That insignificant dispensing volume is much too low to support a finding of good cause for Buffalo City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Buffalo City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Buffalo City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Buffalo City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Buffalo City of the PBM services Express Scripts provides and Buffalo City began receiving those services on March 1, 2016. *See id.* Inasmuch as Buffalo City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Buffalo City knew or should have known of the alleged wrongful conduct eight years before moving to amend. *See* Section III.A.3, above. Buffalo City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Buffalo City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Buffalo City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Buffalo City of this deficiency on September 16, 2024 (*see* Exhibit B), but Buffalo City

refused to amend or supplement its Fact Sheet. Under this Court's orders, Buffalo City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Buffalo City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Buffalo City's potential claims against them. Buffalo City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Buffalo City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Buffalo City, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Buffalo City's proposed RICO claim against the PBMs has expired. Buffalo City filed its original complaint on September 5, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the

PBMs. *See City of Buffalo v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46104-DAP, ECF No. 1-4. Even assuming *arguendo* that Buffalo City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 5, 2023. Buffalo City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Buffalo City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Buffalo City, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Buffalo City's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1536.** ***United Wire, Metal & Machine Local 810 Health Benefit Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46105-DAP: Plaintiff United Wire, Metal & Machine Local 810 Health Benefit Fund, New York**

United Wire, Metal & Machine Local 810 Health Benefit Fund's untimely motion for leave to amend should be denied for several reasons. United Wire, Metal & Machine Local 810 Health Benefit Fund failed to provide notice of its proposed amendments through a proposed complaint. United Wire, Metal & Machine Local 810 Health Benefit Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, United Wire, Metal & Machine Local 810 Health Benefit Fund's motion should be denied due to futility, as United Wire, Metal

& Machine Local 810 Health Benefit Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** United Wire, Metal & Machine Local 810 Health Benefit Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, United Wire, Metal & Machine Local 810 Health Benefit Fund filed its original complaint directly into the MDL on December 4, 2019. *See United Wire, Metal & Machine Local 810 Health Benefit Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46105-DAP, ECF No. 1. United Wire, Metal & Machine Local 810 Health Benefit Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, United Wire, Metal & Machine Local 810 Health Benefit Fund elected not to do so. United Wire, Metal & Machine Local 810 Health Benefit Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. United Wire, Metal & Machine Local 810 Health Benefit Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, United Wire, Metal & Machine Local 810 Health Benefit Fund has *never* served a Plaintiff Fact Sheet. United Wire, Metal & Machine Local 810 Health Benefit Fund's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. United Wire, Metal & Machine Local 810 Health Benefit Fund's failure

to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But United Wire, Metal & Machine Local 810 Health Benefit Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** United Wire, Metal & Machine Local 810 Health Benefit Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for United Wire, Metal & Machine Local 810 Health Benefit Fund's proposed RICO claim against the PBMs has expired. United Wire, Metal & Machine Local 810 Health Benefit Fund filed its original complaint on December 4, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See United Wire, Metal & Machine Local 810 Health Benefit Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46105-DAP, ECF No. 1. It is therefore indisputable that United Wire, Metal & Machine Local 810 Health Benefit Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking

leave to amend. United Wire, Metal & Machine Local 810 Health Benefit Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. United Wire, Metal & Machine Local 810 Health Benefit Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** United Wire, Metal & Machine Local 810 Health Benefit Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. United Wire, Metal & Machine Local 810 Health Benefit Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1537. *Nesconset Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46106-DAP: Plaintiff Nesconset Fire District, New York

Nesconset Fire District's untimely motion for leave to amend should be denied for several reasons. Nesconset Fire District failed to provide notice of its proposed amendments through a proposed complaint. Nesconset Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Nesconset Fire District's motion should be denied due to futility, as Nesconset Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Nesconset Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Nesconset Fire District filed its original complaint directly into the MDL on December 4, 2019. *See Nesconset Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46106-DAP, ECF No. 1. Nesconset Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Nesconset Fire District elected not to do so. Nesconset Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Nesconset Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Nesconset Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Nesconset Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Nesconset Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Nesconset Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Nesconset Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Nesconset Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Nesconset Fire District's potential claims against them. Nesconset Fire District's failure to diligently prosecute its case, coupled with the prejudice

against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Nesconset Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Nesconset Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Nesconset Fire District's proposed RICO claim against the PBMs has expired. Nesconset Fire District filed its original complaint on December 4, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Nesconset Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46106-DAP, ECF No. 1. Even assuming *arguendo* that Nesconset Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 4, 2023. Nesconset Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO

limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Nesconset Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Nesconset Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Nesconset Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1538. *Centerport Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46107-DAP: Plaintiff Centerport Fire District, New York

Centerport Fire District's untimely motion for leave to amend should be denied for several reasons. Centerport Fire District failed to provide notice of its proposed amendments through a proposed complaint. Centerport Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Centerport Fire District's motion should be denied due to futility, as Centerport Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Centerport Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Centerport Fire District filed its original complaint directly into the MDL on December 4, 2019. *See Centerport Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46107-DAP, ECF No. 1. Centerport Fire District could have amended its complaint, without

leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Centerport Fire District elected not to do so. Centerport Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Centerport Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Centerport Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Centerport Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Centerport Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Centerport Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Centerport Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Centerport Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Centerport Fire District's potential claims against them. Centerport Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Centerport Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Centerport Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Centerport Fire District's proposed RICO claim against the PBMs has expired. Centerport Fire District filed its original complaint on December 4, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Centerport Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46107-DAP, ECF No. 1. Even assuming *arguendo* that Centerport Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 4, 2023. Centerport Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Centerport Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Centerport Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Centerport Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1539.** *Hauppauge Fire District, New York v. McKesson Corporation et al.*, **Case No. 1:19-op-46108-DAP: Plaintiff Hauppauge Fire District, New York**

Hauppauge Fire District's untimely motion for leave to amend should be denied for several reasons. Hauppauge Fire District failed to provide notice of its proposed amendments through a proposed complaint. Hauppauge Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hauppauge Fire District's motion should be denied due to futility, as Hauppauge Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Hauppauge Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hauppauge Fire District filed its original complaint directly into the MDL on December 4, 2019. *See Hauppauge Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46108-DAP, ECF No. 1. Hauppauge Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Hauppauge Fire District elected not to do so. Hauppauge Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hauppauge Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*,

972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hauppauge Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hauppauge Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hauppauge Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Hauppauge Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Hauppauge Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hauppauge Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hauppauge Fire District's potential claims against them. Hauppauge Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hauppauge Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hauppauge Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hauppauge Fire District's proposed RICO claim against the PBMs has expired. Hauppauge Fire District filed its original complaint on December 4, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Hauppauge Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46108-DAP, ECF No. 1. Even assuming *arguendo* that Hauppauge Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 4, 2023. Hauppauge Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hauppauge Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hauppauge Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Hauppauge Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and

should be denied. *Gallant*, 2020 WL 9349975, at \*2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1540. *Miller Place Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46109-DAP: Plaintiff Miller Place Fire District, New York

Miller Place Fire District's untimely motion for leave to amend should be denied for several reasons. Miller Place Fire District failed to provide notice of its proposed amendments through a proposed complaint. Miller Place Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Miller Place Fire District's motion should be denied due to futility, as Miller Place Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Miller Place Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Miller Place Fire District filed its original complaint directly into the MDL on December 4, 2019. *See Miller Place Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46109-DAP, ECF No. 1. Miller Place Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Miller Place Fire District elected not to do so. Miller Place Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Miller Place Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Miller Place Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Miller Place Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Miller Place Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Miller Place Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Miller Place Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Miller Place Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Miller Place Fire District's potential claims against them. Miller Place Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Miller Place Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Miller Place Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Miller Place Fire District's proposed RICO claim against the PBMs has expired. Miller Place Fire District filed its original complaint on December 4, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Miller Place Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46109-DAP, ECF No. 1. Even assuming *arguendo* that Miller Place Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 4, 2023. Miller Place Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Miller Place Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Miller Place Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Miller Place Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1541. *Mount Sinai Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46110-DAP: Plaintiff Mount Sinai Fire District, New York

Mount Sinai Fire District's untimely motion for leave to amend should be denied for several reasons. Mount Sinai Fire District failed to provide notice of its proposed amendments

through a proposed complaint. Mount Sinai Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mount Sinai Fire District's motion should be denied due to futility, as Mount Sinai Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Mount Sinai Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mount Sinai Fire District filed its original complaint directly into the MDL on December 4, 2019. *See Mount Sinai Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46110-DAP, ECF No. 1. Mount Sinai Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Mount Sinai Fire District elected not to do so. Mount Sinai Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Mount Sinai Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Mount Sinai Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Mount Sinai Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Mount Sinai Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Mount Sinai Fire District refused to amend or supplement its Fact Sheet. Under

this Court's orders, Mount Sinai Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Mount Sinai Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Mount Sinai Fire District's potential claims against them. Mount Sinai Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mount Sinai Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mount Sinai Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mount Sinai Fire District's proposed RICO claim against the PBMs has expired. Mount Sinai Fire District filed its original complaint on December 4, 2019, alleging the same type of injuries for which it now seeks to

recover under RICO against the PBMs. *See Mount Sinai Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46110-DAP, ECF No. 1. Even assuming *arguendo* that Mount Sinai Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 4, 2023. Mount Sinai Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mount Sinai Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mount Sinai Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Mount Sinai Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1542. *Smithtown Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46111-DAP: Plaintiff Smithtown Fire District, New York

Smithtown Fire District's untimely motion for leave to amend should be denied for several reasons. Smithtown Fire District failed to provide notice of its proposed amendments through a proposed complaint. Smithtown Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Smithtown Fire District's motion should be denied due to futility, as Smithtown Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Smithtown Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Smithtown Fire District filed its original complaint directly into the MDL on December 4, 2019. *See Smithtown Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46111-DAP, ECF No. 1. Smithtown Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Smithtown Fire District elected not to do so. Smithtown Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Smithtown Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Smithtown Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Smithtown Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Smithtown Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Smithtown Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Smithtown Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Smithtown Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Smithtown Fire District's potential claims against them. Smithtown Fire District's failure to diligently prosecute its case, coupled with the prejudice

against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Smithtown Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Smithtown Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Smithtown Fire District's proposed RICO claim against the PBMs has expired. Smithtown Fire District filed its original complaint on December 4, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Smithtown Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46111-DAP, ECF No. 1. Even assuming *arguendo* that Smithtown Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 4, 2023. Smithtown Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO

limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Smithtown Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Smithtown Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Smithtown Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1543. *Melville Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46112-DAP: Plaintiff Melville Fire District, New York

Melville Fire District's untimely motion for leave to amend should be denied for several reasons. Melville Fire District failed to provide notice of its proposed amendments through a proposed complaint. Melville Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Melville Fire District's motion should be denied due to futility, as Melville Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Melville Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Melville Fire District filed its original complaint directly into the MDL on December 5, 2019. *See Melville Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46112-DAP, ECF No. 1. Melville Fire District could have amended its complaint, without leave,

to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Melville Fire District elected not to do so. Melville Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Melville Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Melville Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Melville Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Melville Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Melville Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Melville Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Melville Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Melville Fire District's potential claims against them. Melville Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Melville Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Melville Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Melville Fire District's proposed RICO claim against the PBMs has expired. Melville Fire District filed its original complaint on December 5, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Melville Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46112-DAP, ECF No. 1. Even assuming *arguendo* that Melville Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 5, 2023. Melville Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Melville Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Melville Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Melville Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1544. *Stony Brook Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46113-DAP: Plaintiff Stony Brook Fire District, New York

Stony Brook Fire District's untimely motion for leave to amend should be denied for several reasons. Stony Brook Fire District failed to provide notice of its proposed amendments through a proposed complaint. Stony Brook Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Stony Brook Fire District's motion should be denied due to futility, as Stony Brook Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Stony Brook Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Stony Brook Fire District filed its original complaint directly into the MDL on December 5, 2019. *See Stony Brook Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46113-DAP, ECF No. 1. Stony Brook Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Stony Brook Fire District elected not to do so. Stony Brook Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Stony Brook Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See*

*Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Stony Brook Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Stony Brook Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Stony Brook Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Stony Brook Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Stony Brook Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Stony Brook Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Stony Brook Fire District's potential claims against them. Stony Brook Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stony Brook Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Stony Brook Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Stony Brook Fire District's proposed RICO claim against the PBMs has expired. Stony Brook Fire District filed its original complaint on December 5, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Stony Brook Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46113-DAP, ECF No. 1. Even assuming *arguendo* that Stony Brook Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 5, 2023. Stony Brook Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Stony Brook Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Stony Brook Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Stony Brook Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile

and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1545.** ***Village of the Branch, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46114-DAP: Plaintiff Village of the Branch, New York**

Village of the Branch's untimely motion for leave to amend should be denied for several reasons. Village of the Branch failed to provide notice of its proposed amendments through a proposed complaint. Village of the Branch also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Village of the Branch's motion should be denied due to futility, as Village of the Branch does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Village of the Branch was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Village of the Branch filed its original complaint directly into the MDL on December 5, 2019. *See Village of the Branch, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46114-DAP, ECF No. 1. Village of the Branch could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Village of the Branch elected not to do so. Village of the Branch waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Village of the Branch's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Village of the Branch's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Village of the Branch cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Village of the Branch's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Village of the Branch to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Village of the Branch failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Village of the Branch's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Village of the Branch of this deficiency on September 16, 2024 (*see* Exhibit B), but Village of the Branch refused to amend or supplement its Fact Sheet. Under this Court's orders, Village of the Branch's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Village of the Branch's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Village of the Branch's potential claims against them. Village of the Branch's failure to diligently prosecute its case, coupled with the prejudice

against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Village of the Branch's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Village of the Branch, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Village of the Branch's proposed RICO claim against the PBMs has expired. Village of the Branch filed its original complaint on December 5, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of the Branch, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46114-DAP, ECF No. 1. Even assuming *arguendo* that Village of the Branch first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 5, 2023. Village of the Branch's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO

limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Village of the Branch's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Village of the Branch, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Village of the Branch's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1546. *City of Haleyville, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46118-DAP: Plaintiff Haleyville City, Alabama

Haleyville City's untimely motion for leave to amend should be denied for several reasons. Haleyville City failed to provide notice of its proposed amendments through a proposed complaint. Haleyville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Haleyville City's motion should be denied due to futility, as Haleyville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Haleyville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Haleyville City amended its complaint on March 6, 2020, after transfer to the MDL on December 9, 2019. *See City of Haleyville, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No.

1:19-op-46118-DAP, ECF No. 5. Unlike many other plaintiffs, Haleyville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Haleyville City's deadline to amend was in 2020. Haleyville City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Haleyville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Haleyville City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Haleyville City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Haleyville City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Haleyville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Haleyville City). That insignificant dispensing volume is much too low to support a finding of good cause for Haleyville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Haleyville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Haleyville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Haleyville City filed its original complaint on November 14, 2019. *See City of Haleyville, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46118-DAP, ECF No. 1. Despite filing its case years ago, Haleyville City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Haleyville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Haleyville City's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Haleyville City's disregard for its most basic

discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Haleyville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Haleyville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Haleyville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Haleyville City's proposed RICO claim against the PBMs has expired. Haleyville City filed its original complaint on November 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Haleyville, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46118-DAP, ECF No. 1. It is therefore indisputable that Haleyville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Haleyville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Haleyville City's request for leave to amend

to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Haleyville City's public-nuisance claim against the PBMs is therefore time-barred because Haleyville City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Haleyville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1547. *City of Centerville, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46120-DAP: Plaintiff Centreville City, Alabama

Centreville City's untimely motion for leave to amend should be denied for several reasons. Centreville City failed to provide notice of its proposed amendments through a proposed complaint. Centreville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Centreville City's motion should be denied due to futility, as Centreville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Centreville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Centreville City filed its original complaint on November 14, 2019 and the case was transferred to the MDL on December 9, 2019. *See City of Centerville, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46120-DAP, ECF No. 5. Centreville City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Centreville City elected not to do so. Instead, Centreville City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Centreville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Centreville City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Centreville City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Centreville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Centreville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Centreville City filed its original complaint on November 14, 2019. *See City of Centerville, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46120-DAP, ECF No. 1. Despite filing its case years ago, Centreville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Centreville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Centreville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Centreville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Centreville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Centreville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Centreville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Centreville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Centreville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Centreville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Centreville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend

against Centreville City's potential claims against them. Centreville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Centreville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Centreville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Centreville City's proposed RICO claim against the PBMs has expired. Centreville City filed its original complaint on November 14, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Centerville, Alabama v. Purdue Pharma LP et al.*, Case No. 1:19-op-46120-DAP, ECF No. 1. It is therefore indisputable that Centreville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Centreville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Centreville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Centreville City's public-nuisance claim against the PBMs is therefore time-barred because Centreville City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 14, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Centreville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1548.** *The City of Ormond Beach, Florida v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:19-op-46121-DAP: Plaintiff Ormond Beach City, Florida**

Ormond Beach City's untimely motion for leave to amend should be denied for several reasons. Ormond Beach City failed to provide notice of its proposed amendments through a proposed complaint. Ormond Beach City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ormond Beach City's motion should be denied due to futility, as Ormond Beach City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ormond Beach City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ormond Beach City amended its complaint on March 6, 2020, after transfer to the MDL on December 9, 2019, as well as on May 26, 2020. *See The City of Ormond Beach, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46121-DAP, ECF Nos. 10, 18. Unlike many other plaintiffs, Ormond Beach City declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Ormond Beach City's deadline to amend was in 2020. Ormond Beach City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Ormond Beach City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Ormond Beach City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Ormond Beach City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Ormond Beach City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of

discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ormond Beach City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.42% market share for Ormond Beach City). That insignificant dispensing volume is much too low to support a finding of good cause for Ormond Beach City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ormond Beach City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ormond Beach City, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ormond Beach City's proposed RICO claim against the PBMs has expired. Ormond Beach City filed its original complaint on November 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The City of Ormond Beach, Florida v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46121-DAP, ECF No. 1. It is therefore indisputable that Ormond Beach City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Ormond Beach City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ormond Beach City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Ormond Beach City's public-nuisance claim against the PBMs is therefore time-barred because Ormond Beach City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 13, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing**. Ormond Beach City, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1549.** *Putnam County, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-46122-DAP: Plaintiff Putnam County, Florida

**Lack of Diligence.** Putnam County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Putnam County filed its original complaint on November 7, 2019 and the case was transferred to the MDL on December 11, 2019. *See Putnam County, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-46122-DAP, ECF No. 3. Putnam County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Putnam County elected not to do so. Instead, Putnam County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Putnam County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Putnam County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.47% market share for Putnam County). That insignificant dispensing volume is much too low to support a finding of good cause for Putnam County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Putnam County filed its original complaint on November 7, 2019. *See Putnam County, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-46122-DAP, ECF No. 1. Despite filing its case years ago, Putnam County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Putnam County's case would force the parties and the Court to waste time and resources ascertaining the extent of Putnam County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Putnam County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Putnam County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Putnam County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Putnam County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Putnam County of this deficiency on September 16, 2024 (*see* Exhibit B), but Putnam County refused to amend or supplement its Fact Sheet. Under this Court's orders, Putnam County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Putnam County's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Putnam County's potential claims against them. Putnam County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Putnam County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Putnam County, a municipality in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Putnam County's proposed RICO claim against the PBMs has expired. Putnam County filed its original complaint on November 7, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Putnam County, Florida v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-46122-DAP, ECF No. 1. It is therefore indisputable that Putnam County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Putnam County's RICO claim is therefore time-barred by RICO's four-

year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Putnam County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. Putnam County's public-nuisance claim against the PBMs is therefore time-barred because Putnam County sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 7, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Putnam County, a municipality in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1550. *City of Brundidge, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46128-DAP: Plaintiff Brundidge City, Alabama

Brundidge City's untimely motion for leave to amend should be denied for several reasons. Brundidge City failed to provide notice of its proposed amendments through a proposed complaint. Brundidge City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brundidge City's motion should be denied due to futility, as Brundidge City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is

barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brundidge City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brundidge City filed its original complaint on November 8, 2019 and the case was transferred to the MDL on December 11, 2019. *See City of Brundidge, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46128-DAP, ECF No. 26. Brundidge City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Brundidge City elected not to do so. Instead, Brundidge City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Brundidge City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brundidge City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.45% market share for Brundidge City). That insignificant dispensing volume is much too low to support a finding of good cause for Brundidge City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brundidge City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.39% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brundidge City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Brundidge City filed its original complaint on November 8, 2019. *See City of Brundidge, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46128-DAP, ECF No. 1. Despite filing its case years ago, Brundidge City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Brundidge City's case would force the parties and the Court to waste time and resources ascertaining the extent of Brundidge City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brundidge City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brundidge City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brundidge City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brundidge City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brundidge City's proposed RICO claim against the PBMs has expired. Brundidge City filed its original complaint on November 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Brundidge, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46128-DAP, ECF No. 1. It is therefore indisputable that Brundidge City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Brundidge City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brundidge City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Brundidge City's public-nuisance claim against the PBMs is therefore time-barred because Brundidge City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 8, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Brundidge City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1551. *City of Lanett, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46130-DAP: Plaintiff Lanett City, Alabama

Lanett City's untimely motion for leave to amend should be denied for several reasons. Lanett City failed to provide notice of its proposed amendments through a proposed complaint. Lanett City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lanett City's motion should be denied due to futility, as Lanett City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lanett City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lanett City filed its original complaint on November 15, 2019 and the case was transferred to the MDL on December 11, 2019. *See City of Lanett, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46130-DAP, ECF No. 24. Lanett City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Lanett City elected not to do so. Instead, Lanett City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Lanett City's lack of diligence in pursuing its

claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lanett City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Lanett City). That insignificant dispensing volume is much too low to support a finding of good cause for Lanett City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lanett City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lanett City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Lanett City filed its original complaint on November 15, 2019. *See City of Lanett, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46130-DAP, ECF No. 1. Despite filing its case years ago, Lanett City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Lanett City's case would force the parties and the Court to waste time and resources ascertaining the extent of Lanett City's document

destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lanett City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lanett City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lanett City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lanett City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lanett City's proposed RICO claim against the PBMs has expired. Lanett City filed its original complaint on November 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lanett, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46130-DAP, ECF No. 1. It is therefore indisputable that Lanett City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Lanett City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF

No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lanett City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Lanett City's public-nuisance claim against the PBMs is therefore time-barred because Lanett City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Lanett City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1552. *City of Headland, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46131-DAP: Plaintiff Headland City, Alabama

Headland City's untimely motion for leave to amend should be denied for several reasons. Headland City failed to provide notice of its proposed amendments through a proposed complaint. Headland City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Headland City's motion should be denied due to futility, as Headland City does not assert any allegations tying the PBMs to its alleged

harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Headland City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Headland City filed its original complaint on November 15, 2019 and the case was transferred to the MDL on December 11, 2019. *See City of Headland, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46131-DAP, ECF No. 19. Headland City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Headland City elected not to do so. Instead, Headland City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Headland City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Headland City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Headland City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Headland City filed its original complaint on November 15, 2019. *See City of Headland, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46131-DAP, ECF No. 1. Despite filing its case years ago, Headland City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Headland City's case would force the parties and the Court to waste time and resources ascertaining the extent of Headland City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Headland City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Headland City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Headland City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Headland City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Headland City of this deficiency on September 16, 2024 (*see* Exhibit B), but Headland City refused to amend or supplement its Fact Sheet. Under this Court's orders, Headland City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Headland City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Headland City's potential claims against them. Headland City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Headland City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Headland City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Headland City's proposed RICO claim against the PBMs has expired. Headland City filed its original complaint on November 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Headland, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46131-DAP, ECF No. 1. It is therefore indisputable that Headland City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Headland City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Headland City's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Headland City's public-nuisance claim against the PBMs is therefore time-barred because Headland City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 15, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Headland City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1553. *City of Eufaula, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46132-DAP: Plaintiff Eufaula City, Alabama

Eufaula City's untimely motion for leave to amend should be denied for several reasons. Eufaula City failed to provide notice of its proposed amendments through a proposed complaint. Eufaula City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Eufaula City's motion should be denied due to futility, as Eufaula City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Eufaula City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Eufaula City filed its original complaint on November 8, 2019 and the case was transferred to the MDL on December 11, 2019. *See City of Eufaula, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46132-DAP, ECF No. 27. Eufaula City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Eufaula City elected not to do so. Instead, Eufaula City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Eufaula City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Eufaula City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Eufaula City). That insignificant dispensing volume is much too low to support a finding of good cause for Eufaula City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Eufaula City filed its original complaint on November 8, 2019. *See City of Eufaula, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46132-DAP, ECF No. 1. Despite filing its case years ago, Eufaula City *never* implemented a

litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Eufaula City's case would force the parties and the Court to waste time and resources ascertaining the extent of Eufaula City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Eufaula City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Eufaula City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Eufaula City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Eufaula City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Eufaula City of this deficiency on September 16, 2024 (*see* Exhibit B), but Eufaula City refused to amend or supplement its Fact Sheet. Under this Court's orders, Eufaula City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Eufaula City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Eufaula City's potential claims against them. Eufaula City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in

litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Eufaula City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Eufaula City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Eufaula City's proposed RICO claim against the PBMs has expired. Eufaula City filed its original complaint on November 8, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Eufaula, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46132-DAP, ECF No. 1. It is therefore indisputable that Eufaula City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Eufaula City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Eufaula City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Eufaula City's public-nuisance claim against the PBMs is therefore time-barred because Eufaula City sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on November 8, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Eufaula City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1554. *City of Middletown, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46133-DAP: Plaintiff Middletown City, Ohio

Middletown City's untimely motion for leave to amend should be denied for several reasons. Middletown City failed to provide notice of its proposed amendments through a proposed complaint. Middletown City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Middletown City's motion should be denied due to futility, as Middletown City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Middletown City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Middletown City amended its complaint on March 6, 2020, after transfer to the MDL on December

11, 2019. *See City of Middletown, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46133-DAP, ECF No. 21. Unlike many other plaintiffs, Middletown City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Middletown City's deadline to amend was in 2020. Middletown City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Middletown City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Middletown City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Middletown City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Middletown City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Middletown City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.16% market share for Middletown City). That insignificant dispensing volume is much too low to support a finding of good cause for Middletown City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Middletown City filed its original complaint on November 15, 2019. *See City of Middletown, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46133-DAP, ECF No. 1. Despite filing its case years ago, Middletown City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Middletown City's case would force the parties and the Court to waste time and resources ascertaining the extent of Middletown City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Middletown City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Middletown City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Middletown City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Middletown City, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Middletown City is a plaintiff in Ohio. Middletown City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Middletown City's proposed RICO claim against the PBMs has expired. Middletown City filed its original complaint on November 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Middletown, Ohio v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46133-DAP, ECF No. 1. It is therefore indisputable that Middletown City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Middletown City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting

*Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Middletown City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Middletown City, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1555. *Coos County et al. v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-46136-DAP: Plaintiff Coos County, New Hampshire

Coos County's untimely motion for leave to amend should be denied for several reasons. Coos County failed to provide notice of its proposed amendments through a proposed complaint. Coos County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Coos County's motion should be denied due to futility, as Coos County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coos County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coos County filed its original complaint on June 13, 2018 and the case was transferred to the MDL on December 16, 2019. *See Coos County et al. v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-46136-DAP, ECF No. 6. Coos County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Coos County elected not to do so. Instead, Coos County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Coos County's lack of diligence in pursuing

its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Coos County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.11% market share for Coos County). That insignificant dispensing volume is much too low to support a finding of good cause for Coos County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Coos County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Coos County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Coos County has *never* served a Plaintiff Fact Sheet. Coos County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Coos County's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF

No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

 **Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Coos County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

 **Failure to State a Claim.** Coos County, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

 **RICO Statute of Limitations.** The statute of limitations for Coos County's proposed RICO claim against the PBMs has expired. Coos County filed its original complaint on June 13, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Coos County et al. v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-46136-DAP, ECF No. 1. It is therefore indisputable that Coos County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Coos County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Coos County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Coos County, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1556. *Carroll County v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-46137-DAP: Plaintiff Carroll County, New Hampshire

Carroll County's untimely motion for leave to amend should be denied for several reasons. Carroll County failed to provide notice of its proposed amendments through a proposed complaint. Carroll County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Carroll County's motion should be denied due to futility, as Carroll County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carroll County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carroll County filed its original complaint on October 18, 2019 and the case was transferred to the MDL on December 16, 2019. *See Carroll County v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-46137-DAP, ECF No. 7. Carroll County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Carroll County elected not to do so. Instead, Carroll County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Carroll County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Carroll County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Carroll County). That insignificant dispensing volume is much too low to support a finding of good cause for Carroll County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Carroll County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Carroll County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Carroll County has *never* served a Plaintiff Fact Sheet. Carroll County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Carroll County's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs'

counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New Hampshire law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carroll County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Hampshire law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carroll County, a municipality in New Hampshire, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Carroll County's proposed RICO claim against the PBMs has expired. Carroll County filed its original complaint on October 18, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Carroll County v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:19-op-46137-DAP, ECF No. 1. It is therefore indisputable that Carroll County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Carroll County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Carroll County's request for leave to amend to add a RICO claim should

be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Carroll County, a municipality in New Hampshire, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1557. *Livingston Parish v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-46140-DAP: Plaintiff Livingston Parish, Louisiana

Livingston Parish's untimely motion for leave to amend should be denied for several reasons. Livingston Parish failed to provide notice of its proposed amendments through a proposed complaint. Livingston Parish also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Livingston Parish's motion should be denied due to futility, as Livingston Parish does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Livingston Parish was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Livingston Parish filed its original complaint on October 16, 2019 and the case was transferred to the MDL on December 17, 2019. *See Livingston Parish v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-46140-DAP, ECF No. 12. Livingston Parish could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Livingston Parish elected not to do so. Instead, Livingston Parish waited four years after its deadline to amend to seek leave to assert claims against the PBMs.

Livingston Parish's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Livingston Parish's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Livingston Parish). That insignificant dispensing volume is much too low to support a finding of good cause for Livingston Parish to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Livingston Parish's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Livingston Parish to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Livingston Parish filed its original complaint on October 16, 2019. *See Livingston Parish v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-46140-DAP, ECF No. 1-3. Despite filing its case years ago, Livingston Parish *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)).

This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Livingston Parish's case would force the parties and the Court to waste time and resources ascertaining the extent of Livingston Parish's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Livingston Parish's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Livingston Parish therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Livingston Parish failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Livingston Parish's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Livingston Parish of this deficiency on September 16, 2024 (*see* Exhibit B), but Livingston Parish refused to amend or supplement its Fact Sheet. Under this Court's orders, Livingston Parish's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Livingston Parish's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Livingston Parish's potential claims against them. Livingston Parish's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6

(denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Livingston Parish's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Livingston Parish, a municipality in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Livingston Parish seeks leave to amend to add claims against the PBMs in two cases: *Livingston Parish v. Teva Pharmaceutical Industries, Ltd., et al.*, No. 1:19-op-46140-DAP; and *Ard v. Teva Pharmaceuticals USA, Inc., et al.*, No. 1:20-op-45220-DAP. Livingston Parish's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Livingston Parish's proposed RICO claim against the PBMs has expired. Livingston Parish filed its original complaint on October 16, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Livingston Parish v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:19-op-46140-DAP, ECF No. 1-3. Even assuming *arguendo* that Livingston Parish first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 16, 2023. Livingston Parish's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Livingston Parish's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to an one-year limitations period. Livingston Parish's public-nuisance claim against the PBMs is therefore time-barred because Livingston Parish sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on October 16, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Livingston Parish, a municipality in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1558.** *City of Espanola, New Mexico v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-46142-DAP: Plaintiff Española City, New Mexico**

Española City's untimely motion for leave to amend should be denied for several reasons. Española City failed to provide notice of its proposed amendments through a proposed complaint. Española City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Española City's motion should be denied due to futility, as Española City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Española City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Española City amended its complaint on March 16, 2020, after transfer to the MDL on December 17, 2019. *See City of Espanola, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46142-DAP, ECF No. 6. Unlike many other plaintiffs, Española City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Española City's deadline to amend was in 2020. Española City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Española City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Española City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Española City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Española City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Española City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Española City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Española City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Española City, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Española City's proposed RICO claim against the PBMs has expired. Española City filed its original complaint on November 15, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Espanola, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46142-DAP, ECF No. 1. It is therefore indisputable that Española City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Española City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Española City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Española City, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1559. *City of Brookhaven, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46143-DAP: Plaintiff Brookhaven City, Mississippi

Brookhaven City's untimely motion for leave to amend should be denied for several reasons. Brookhaven City failed to provide notice of its proposed amendments through a proposed complaint. Brookhaven City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brookhaven City's motion should be denied due to futility, as Brookhaven City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brookhaven City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brookhaven City amended its complaint on March 6, 2020, after transfer to the MDL on December 17, 2019. *See City of Brookhaven, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46143-DAP, ECF No. 7. Unlike many other plaintiffs, Brookhaven City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Brookhaven City's deadline to amend was in 2020. Brookhaven City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Brookhaven City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Brookhaven City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Brookhaven City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Brookhaven City fails to explain why it was unable to

assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brookhaven City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Brookhaven City). That insignificant dispensing volume is much too low to support a finding of good cause for Brookhaven City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Brookhaven City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Brookhaven City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Brookhaven City filed its original complaint on November 21, 2019. *See City of Brookhaven, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46143-DAP, ECF No. 1. Despite filing its case years ago, Brookhaven

City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Brookhaven City's case would force the parties and the Court to waste time and resources ascertaining the extent of Brookhaven City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brookhaven City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brookhaven City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brookhaven City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brookhaven City, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Brookhaven City's proposed RICO claim against the PBMs has expired. Brookhaven City filed its original complaint on November 21, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Brookhaven, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46143-DAP, ECF No. 1. Even assuming *arguendo* that Brookhaven City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 21, 2023. Brookhaven City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Brookhaven City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Brookhaven City, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1560. *Ridge Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46144-DAP: Plaintiff Ridge Fire District, New York

Ridge Fire District's untimely motion for leave to amend should be denied for several reasons. Ridge Fire District failed to provide notice of its proposed amendments through a proposed complaint. Ridge Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ridge Fire District's motion should be denied due to futility, as Ridge Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Ridge Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ridge Fire District filed its original complaint directly into the MDL on December 19, 2019. *See Ridge Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46144-DAP, ECF No. 1. Ridge Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Ridge Fire District elected not to do so. Ridge Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Ridge Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ridge Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ridge Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ridge Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Ridge Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Ridge Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ridge Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ridge Fire District's potential claims against them. Ridge Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs,

negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ridge Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ridge Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ridge Fire District's proposed RICO claim against the PBMs has expired. Ridge Fire District filed its original complaint on December 19, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Ridge Fire District, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46144-DAP, ECF No. 1. Even assuming *arguendo* that Ridge Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 19, 2023. Ridge Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered

by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Ridge Fire District's request for leave to amend to add a

RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for

leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ridge Fire District, a fire district in New York, lacks standing

to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York,

or the state of New York. *See* Section III.B.6, above. Ridge Fire District's request for leave to

amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied.

*Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked

standing to assert the proposed claim).

### 1561. *Village of Great Neck, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46145-DAP: Plaintiff Great Neck Village, New York

Great Neck Village's untimely motion for leave to amend should be denied for several

reasons. Great Neck Village failed to provide notice of its proposed amendments through a

proposed complaint. Great Neck Village also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion

would unduly prejudice the PBMs. Moreover, Great Neck Village's motion should be denied due

to futility, as Great Neck Village does not assert any allegations tying the PBMs to its alleged

harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Great Neck Village was on notice of its claims against the PBMs for

years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above.

Moreover, Great Neck Village filed its original complaint directly into the MDL on December 19,

2019. *See Village of Great Neck, New York v. McKesson Corporation et al.*, Case No. 1:19-op-

46145-DAP, ECF No. 1. Great Neck Village could have amended its complaint, without leave, to

add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Great Neck Village elected not to do so. Great Neck Village waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Great Neck Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Great Neck Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Great Neck Village). That insignificant dispensing volume is much too low to support a finding of good cause for Great Neck Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Great Neck Village's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Great Neck Village to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Great Neck Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Great Neck Village's health plans,

carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Great Neck Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Great Neck Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Great Neck Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Great Neck Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Great Neck Village's potential claims against them. Great Neck Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Great Neck Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Great Neck Village, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Great Neck Village's proposed RICO claim against the PBMs has expired. Great Neck Village filed its original complaint on December 19, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Village of Great Neck, New York v. McKesson Corporation et al.*, Case No. 1:19-op-46145-DAP, ECF No. 1. Even assuming *arguendo* that Great Neck Village first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 19, 2023. Great Neck Village's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Great Neck Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Great Neck Village, a village in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Great Neck Village's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1562. *Teamsters Local 445 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46146-DAP: Plaintiff Teamsters Local 445 Welfare Fund, New York

Teamsters Local 445 Welfare Fund's untimely motion for leave to amend should be denied for several reasons. Teamsters Local 445 Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. Teamsters Local 445 Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would

unduly prejudice the PBMs. Moreover, Teamsters Local 445 Welfare Fund's motion should be denied due to futility, as Teamsters Local 445 Welfare Fund does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Teamsters Local 445 Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Teamsters Local 445 Welfare Fund filed its original complaint directly into the MDL on December 20, 2019. *See Teamsters Local 445 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46146-DAP, ECF No. 1. Teamsters Local 445 Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Teamsters Local 445 Welfare Fund elected not to do so. Teamsters Local 445 Welfare Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Teamsters Local 445 Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Teamsters Local 445 Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Teamsters Local 445 Welfare Fund of the PBM services Express Scripts provides and Teamsters Local 445 Welfare Fund began receiving those services on September 17, 2009. *See id.* Inasmuch as Teamsters Local 445 Welfare Fund seeks to add claims against Express Scripts entities related to utilization

management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Teamsters Local 445 Welfare Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Teamsters Local 445 Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Teamsters Local 445 Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Teamsters Local 445 Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Teamsters Local 445 Welfare Fund's proposed RICO claim against the PBMs has expired. Teamsters Local 445 Welfare Fund filed its original complaint on December 20, 2019 alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Teamsters Local 445 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46146-DAP, ECF No. 1. It is therefore indisputable that Teamsters Local 445 Welfare Fund knew of its RICO injury, at the very latest, the day it filed a

complaint asserting a RICO claim, four and a half years before seeking leave to amend. Teamsters Local 445 Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Teamsters Local 445 Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Teamsters Local 445 Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Teamsters Local 445 Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1563. *Roofers Local 8 WBPA Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46147-DAP: Plaintiff Roofers Local 8 WBPA Fund, New York

Roofers Local 8 WBPA Fund's untimely motion for leave to amend should be denied for several reasons. Roofers Local 8 WBPA Fund failed to provide notice of its proposed amendments through a proposed complaint. Roofers Local 8 WBPA Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Roofers Local 8 WBPA Fund's motion should be denied due to futility, as Roofers Local 8 WBPA Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Roofers Local 8 WBPA Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Roofers Local 8 WBPA Fund filed its original complaint directly into the MDL on December 20, 2019. *See Roofers Local 8 WBPA Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46147-DAP, ECF No. 1. Roofers Local 8 WBPA Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Roofers Local 8 WBPA Fund elected not to do so. Roofers Local 8 WBPA Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Roofers Local 8 WBPA Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Roofers Local 8 WBPA Fund has *never* served a Plaintiff Fact Sheet. Roofers Local 8 WBPA Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Roofers Local 8 WBPA Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Roofers Local 8 WBPA Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Roofers Local 8 WBPA Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Roofers Local 8 WBPA Fund's proposed RICO claim against the PBMs has expired. Roofers Local 8 WBPA Fund filed its original complaint on December 20, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Roofers Local 8 WBPA Fund v. McKesson Corporation et al.*, Case No. 1:19-op-46147-DAP, ECF No. 1. It is therefore indisputable that Roofers Local 8 WBPA Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Roofers Local 8 WBPA Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Roofers Local 8 WBPA Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Roofers Local 8 WBPA Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Roofers Local 8 WBPA Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1564. *Patrick County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46149-DAP: Plaintiff Patrick County, Virginia

Patrick County's untimely motion for leave to amend should be denied for several reasons. Patrick County failed to provide notice of its proposed amendments through a proposed complaint. Patrick County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Patrick County's motion should be denied due to futility, as Patrick County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Patrick County previously alleged claims against some of the PBMs in its original complaint on July 16, 2019. *See Patrick County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46149-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Patrick County could have added claims against other PBM-related entities when it amended its complaint on March 17, 2020, after transfer to the MDL on December 23, 2019. *See id.*, ECF No. 37. But Patrick County elected not to do so. Now, Patrick County seeks to add other PBM-related entities as defendants but offers

no good cause for its failure to name these entities as defendants five years ago. As described above, the omnibus motions say nothing about the majority of the entities that plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Patrick County's complaint, Patrick County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against Express Scripts Holding Co.; Express Scripts, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. in 2019. *See* Section II.A, above. Patrick County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Patrick County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Patrick County). That insignificant dispensing volume is much too low to support a finding of good cause for Patrick County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Patrick County violated its basic duty to implement a timely litigation hold. Patrick County filed its original complaint on July 15, 2019, but waited until July 8, 2024 to implement a litigation hold—four years and eleven months later. *See Patrick County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46149-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Patrick County's case would force the parties and the Court to waste time and resources ascertaining the extent of Patrick

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Patrick County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Patrick County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Patrick County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Patrick County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Patrick County of this deficiency on September 16, 2024 (*see* Exhibit B), but Patrick County refused to amend or supplement its Fact Sheet. Under this Court's orders, Patrick County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Patrick County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Patrick County's potential claims against them. Patrick County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Patrick County's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Patrick County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Patrick County's proposed RICO claim against the PBMs has expired. Patrick County filed its original complaint on July 15, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Patrick County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46149-DAP, ECF No. 1-1. Even assuming *arguendo* that Patrick County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on July 15, 2023. Patrick County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Patrick County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Patrick County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1565.** *Shenandoah County, Virginia v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-46150-DAP: Plaintiff Shenandoah County, Virginia**

Shenandoah County's untimely motion for leave to amend should be denied for several reasons. Shenandoah County failed to provide notice of its proposed amendments through a proposed complaint. Shenandoah County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Shenandoah County's motion should be denied due to futility, as Shenandoah County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Shenandoah County previously alleged claims against some of the PBMs in its original complaint on August 5, 2019. *See Shenandoah County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46150-DAP, ECF No. 1-3 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Shenandoah County could have added claims against other PBM-related entities when it amended its complaint on March 17, 2020. *Id.*, ECF No. 33. But Shenandoah County elected not to do so. Now, Shenandoah County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants five years ago. As described above, the omnibus motions say nothing about the majority of the entities that plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Shenandoah County's complaint, Shenandoah County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against Express Scripts Holding Co.; Express Scripts, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.;

UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. in 2019. *See* Section II.A, above. Shenandoah County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Shenandoah County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Shenandoah County). That insignificant dispensing volume is much too low to support a finding of good cause for Shenandoah County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Shenandoah County violated its basic duty to implement a timely litigation hold. Shenandoah County filed its original complaint on August 5, 2019, but waited until August 12, 2024 to implement a litigation hold—five years later. *See Shenandoah County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46150-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 12, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Shenandoah County's case would force the parties and the Court to waste time and resources ascertaining the extent of Shenandoah County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Shenandoah County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Shenandoah County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020

WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Shenandoah County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Shenandoah County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Shenandoah County of this deficiency on September 16, 2024 (*see* Exhibit B), but Shenandoah County refused to amend or supplement its Fact Sheet. Under this Court's orders, Shenandoah County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Shenandoah County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Shenandoah County's potential claims against them. Shenandoah County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Shenandoah County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Shenandoah County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Shenandoah County's proposed RICO claim against the PBMs has expired. Shenandoah County filed its original complaint on August 5, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Shenandoah County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46150-DAP, ECF No. 1-3. Even assuming *arguendo* that Shenandoah County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 5, 2023. Shenandoah County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Shenandoah County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Shenandoah County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1566. *Allegany County v. Purdue Pharma Lp et al.*, Case No. 1:19-op-46151-DAP: Plaintiff Allegany County, New York

Allegany County's untimely motion for leave to amend should be denied for several reasons. Allegany County failed to provide notice of its proposed amendments through a proposed complaint. Allegany County also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Allegany County's motion should be denied due to futility, as Allegany County does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Allegany County previously alleged claims against some of the PBMs in its original complaint on June 7, 2019. *See Allegany County v. Purdue Pharma Lp et al.*, Case No. 1:19-op-46151-DAP, ECF No. 1-5 (bringing claims against Express Scripts Holding Company; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Allegany County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Allegany County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Allegany County's complaint, Allegany County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2019. *See* Section II.A, above. Allegany County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Allegany County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Allegany County). That insignificant dispensing volume is much too low to support a finding of good cause for Allegany County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Allegany County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Allegany County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Allegany County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Allegany County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Allegany County of this deficiency on September 16, 2024 (*see* Exhibit B), but Allegany County refused to amend or supplement its Fact Sheet. Under this Court's orders, Allegany County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Allegany County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Allegany County's potential claims against them. Allegany County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Allegany County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Allegany County, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Allegany County's proposed RICO claim against the PBMs has expired. Allegany County filed its original complaint on June 7, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Allegany County v. Purdue Pharma Lp et al.*, Case No. 1:19-op-46151-DAP, ECF No. 1-5. Even assuming *arguendo* that Allegany County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 7, 2023. Allegany County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Allegany County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**1567.** *City of Waynesboro, Virginia v. Purdue Pharma, L.P. et al.*, **Case No. 1:19-op-46152-DAP: Plaintiff Waynesboro City, Virginia**

Waynesboro City's untimely motion for leave to amend should be denied for several reasons. Waynesboro City failed to provide notice of its proposed amendments through a proposed complaint. Waynesboro City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Waynesboro City's motion should be denied due to futility, as Waynesboro City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Waynesboro City previously alleged claims against some of the PBMs in its first amended complaint on August 5, 2019. *See City of Waynesboro, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46152-DAP, ECF No. 1-3 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Waynesboro City could have added claims against other PBM-related entities when it amended its complaint again on March 17, 2020, after transfer to the MDL on December 23, 2019 *See id.*, ECF No. 28. But Waynesboro City elected not to do so. Now, Waynesboro City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants five years ago. As described above, the omnibus motions say nothing about the majority of the entities that plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Waynesboro City's complaint, Waynesboro City already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against Express Scripts Holding Co.; Express Scripts, Inc.; Express Scripts

Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. in 2019. *See* Section II.A, above. Waynesboro City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Waynesboro City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Waynesboro City). That insignificant dispensing volume is much too low to support a finding of good cause for Waynesboro City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Waynesboro City violated its basic duty to implement a timely litigation hold. Waynesboro City filed its original complaint on June 7, 2019, but waited until August 12, 2024 to implement a litigation hold—five years later. *See City of Waynesboro, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46152-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 12, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Waynesboro City's case would force the parties and the Court to waste time and resources ascertaining the extent of Waynesboro City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Waynesboro City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Waynesboro City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying

leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Waynesboro City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Waynesboro City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Waynesboro City of this deficiency on September 16, 2024 (*see* Exhibit B), but Waynesboro City refused to amend or supplement its Fact Sheet. Under this Court's orders, Waynesboro City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Waynesboro City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Waynesboro City's potential claims against them. Waynesboro City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Waynesboro City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Waynesboro City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Waynesboro City's proposed RICO claim against the PBMs has expired. Waynesboro City filed its original complaint on August 5, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Waynesboro, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46152-DAP, ECF No. 1-3. Even assuming *arguendo* that Waynesboro City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 5, 2023. Waynesboro City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Waynesboro City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Waynesboro City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1568. *Cumberland County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46153-DAP: Plaintiff Cumberland County, Virginia

Cumberland County's untimely motion for leave to amend should be denied for several reasons. Cumberland County failed to provide notice of its proposed amendments through a proposed complaint. Cumberland County also lacks good cause under Rule 15 or Rule 16 due to

a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cumberland County's motion should be denied due to futility, as Cumberland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cumberland County previously alleged claims against some of the PBMs in its first amended complaint on August 5, 2019. *See Cumberland County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46153-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Now, Cumberland County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants five years ago. As described above, the omnibus motions say nothing about the majority of the entities that plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Cumberland County's complaint, Cumberland County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against Express Scripts Holding Co.; Express Scripts, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. in 2019. *See* Section II.A, above. Cumberland County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cumberland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.04% market share for Cumberland County). That insignificant dispensing volume is much too low to support a finding of good cause for Cumberland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Cumberland County violated its basic duty to implement a timely litigation hold. Cumberland County filed its original complaint on August 9, 2019, but waited until July 19, 2024 to implement a litigation hold—four years and eleven months later. *See Cumberland County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46153-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 19, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Cumberland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Cumberland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cumberland County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cumberland County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cumberland County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cumberland County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cumberland County of this deficiency on September 16, 2024 (*see*

Exhibit B), but Cumberland County refused to amend or supplement its Fact Sheet. Under this Court's orders, Cumberland County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cumberland County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cumberland County's potential claims against them. Cumberland County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cumberland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cumberland County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cumberland County's proposed RICO claim against the PBMs has expired. Cumberland County filed its original

complaint on August 9, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Cumberland County, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46153-DAP, ECF No. 1-1. Even assuming *arguendo* that Cumberland County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 9, 2023. Cumberland County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cumberland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cumberland County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1569. *City of Radford, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46154-DAP: Plaintiff Radford City, Virginia

Radford City's untimely motion for leave to amend should be denied for several reasons. Radford City failed to provide notice of its proposed amendments through a proposed complaint. Radford City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Radford City's motion should be denied due to futility, as Radford City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Radford City previously alleged claims against some of the PBMs in its original complaint on June 14, 2019. *See City of Radford, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46154-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Radford City also amended its complaint on March 17, 2020 to add claims against additional PBM-related entities. *See id.*, ECF No. 29 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Radford City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Radford City's deadline to amend was in 2020, but it waited four years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Radford City's complaint, Radford City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Radford City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Radford City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.17% market share for Radford City). That insignificant dispensing volume is much too low to support a finding of good cause for Radford City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Radford City violated its basic duty to implement a timely litigation hold. Radford City filed its original complaint on June 14, 2019, but waited until July 19, 2024 to implement a litigation hold—five years and one month later. *See City of Radford, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46154-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 19, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Radford City's case would force the parties and the Court to waste time and resources ascertaining the extent of Radford City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Radford City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Radford City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Radford City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Radford City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Radford City of this deficiency on September 16, 2024 (*see* Exhibit B), but Radford City refused to amend or supplement its Fact Sheet. Under this Court's orders, Radford City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Radford City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Radford City's potential claims against them. Radford City's failure to diligently prosecute its case, coupled

with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Radford City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Radford City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Radford City's proposed RICO claim against the PBMs has expired. Radford City filed its original complaint on June 14, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Radford, Virginia v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46154-DAP, ECF No. 1-1. Even assuming *arguendo* that Radford City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 14, 2023. Radford City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Radford

City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Radford City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1570. *County of Ocean, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46157-DAP: Plaintiff Ocean County, New Jersey

Ocean County's untimely motion for leave to amend should be denied for several reasons. Ocean County failed to provide notice of its proposed amendments through a proposed complaint. Ocean County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ocean County's motion should be denied due to futility, as Ocean County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ocean County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ocean County filed its original complaint on June 13, 2019 and the case was transferred to the MDL on December 30, 2019. *See County of Ocean, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46157-DAP, ECF No. 38. Ocean County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Ocean County elected not to do so. Instead, Ocean County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Ocean County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because

plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ocean County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Ocean County). That insignificant dispensing volume is much too low to support a finding of good cause for Ocean County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ocean County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ocean County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ocean County filed its original complaint on June 13, 2019. *See County of Ocean, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46157-DAP, ECF No. 1-1. Despite filing its case years ago, Ocean County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Ocean County's case would force the parties and the Court to waste time and resources ascertaining the extent of Ocean County's document destruction and the appropriate sanctions—just as the parties were forced to do in the

three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ocean County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ocean County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ocean County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ocean County, a municipality in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ocean County's proposed RICO claim against the PBMs has expired. Ocean County filed its original complaint on June 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See County of Ocean, New Jersey v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46157-DAP, ECF No. 1-1. It is therefore indisputable that Ocean County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, five years before seeking leave to amend. Ocean County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF

No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ocean County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ocean County, a municipality in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1571. *City of Poughkeepsie v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46163-DAP: Plaintiff Poughkeepsie City, New York

Poughkeepsie City's untimely motion for leave to amend should be denied for several reasons. Poughkeepsie City failed to provide notice of its proposed amendments through a proposed complaint. Poughkeepsie City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Poughkeepsie City's motion should be denied due to futility, as Poughkeepsie City does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Poughkeepsie City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Poughkeepsie City filed its original complaint on March 28, 2019 and the case was transferred to the MDL on December 31, 2019. *See City of Poughkeepsie v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46163-DAP, ECF No. 27. Poughkeepsie City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Poughkeepsie City elected not to do so. Instead, Poughkeepsie City

waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Poughkeepsie City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Poughkeepsie City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Poughkeepsie City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Poughkeepsie City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Poughkeepsie City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Poughkeepsie City). That insignificant dispensing volume is much too low to support a finding of good cause for Poughkeepsie City to add dispensing

claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

      **<u>Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.</u>** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Poughkeepsie City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Poughkeepsie City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

      **<u>Failure to Prosecute.</u>** In its Plaintiff Fact Sheet, Poughkeepsie City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Poughkeepsie City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Poughkeepsie City of this deficiency on September 16, 2024 (*see* Exhibit B), but Poughkeepsie City refused to amend or supplement its Fact Sheet. Under this Court's orders, Poughkeepsie City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Poughkeepsie City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Poughkeepsie City's potential claims against them. Poughkeepsie City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Poughkeepsie City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Poughkeepsie City, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Poughkeepsie City's proposed RICO claim against the PBMs has expired. Poughkeepsie City filed its original complaint on March 28, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Poughkeepsie v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46163-DAP, ECF No. 3-1. Even assuming *arguendo* that Poughkeepsie City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 28, 2023. Poughkeepsie City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Poughkeepsie City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Poughkeepsie City, a city in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Poughkeepsie City's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1572. *Clark County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46168-DAP: Plaintiff Clark County, Nevada

Clark County's untimely motion for leave to amend should be denied for several reasons. Clark County previously dismissed its claims against some of the PBMs with prejudice. Moreover, Clark County failed to provide notice of its proposed amendments through a proposed complaint. Clark County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Clark County's motion should be denied due to futility, as Clark County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Prior Dismissal with Prejudice.** Clark County previously dismissed its claims against Express Scripts Holding Company and Express Scripts, Inc., with prejudice. *See Clark County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46168-DAP, ECF No 6. That dismissal "operates as a final adjudication on the merits and has a res judicata effect." *Warfield*, 267 F.3d at 542; *see also Taylor*, 21 F. App'x at 266 ("A dismissal with prejudice [by stipulation of the parties] operates as a rejection of the plaintiff's claims on the merits and the doctrine of claim preclusion bars further litigation."). Clark County's proposed claims against Express Scripts Holding Company; and

Express Scripts, Inc.; are therefore barred by res judicata and leave to amend should be denied as futile. *See Gale*, 142 F. Supp. 3d at 554–55 ("[A] stipulated dismissal with prejudice constitutes an adjudication on the merits" and denying motion for leave to amend complaint when "[p]laintiffs fail to allege any claim within this Court's federal question jurisdiction that would not be barred by *res judicata*.").

**Lack of Diligence.** Clark County previously alleged claims against Express Scripts, Inc., and Express Scripts Holding Company in its third amended complaint on September 12, 2019. *See Clark County v. Purdue Pharma, L.P. et al.*, Case No. 1:19-op-46168-DAP, ECF No. 1-3. Clark County later dismissed those claims *with prejudice*. *Id.*, ECF No. 6. Clark County also amended its complaint on March 23, 2020, after transfer to the MDL. *Id.*, ECF No. 49. Clark County did not add any claims against other PBM-related entities in that complaint, and Clark County offers no good cause to do so now. As described above, the omnibus motions say nothing about the majority of the entities that plaintiffs seek to add as defendants to their complaints. And Clark County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against Express Scripts Holding Company; and Express Scripts, Inc. in 2019. *See* Section II.A, above. Clark County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clark County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Clark County). That insignificant dispensing volume is much too low to support a finding of good cause for Clark County to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clark County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.34% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clark County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Clark County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Clark County, a municipality in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Clark County's proposed RICO claim against the PBMs has expired. Clark County filed a complaint on September 12, 2019, alleging a state-law RICO claim against Express Scripts Holding Company and Express Scripts, Inc. *See Clark County v. Purdue Pharma, L.P. et al.*, 1:19-op-46168-DAP, ECF No. 1-3. Clark County later dismissed that claim with prejudice. *Id.*, ECF No. 6. It is therefore indisputable that Clark County knew of its injury *and* the factual basis for its alleged RICO claim against the PBMs,

at the very latest, the day it filed that complaint, almost five years before seeking leave to amend. Clark County's proposed amended RICO claim against the additional PBMs it did not previously name is therefore time-barred. ECF No. 2568 at 13 (RICO limitations period is triggered by "discovery of the injury, not discovery of the other elements of a claim") (quoting *Rotella*, 528 U.S. at 555); *see* Section III.B.4, above. Clark County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Clark County, a municipality in Nevada, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1573. *Howard County, Maryland v. Teva Pharmaceuticals USA, Inc., et al.*, Case No. 1:19-op-46169-DAP: Plaintiff Howard County, Maryland

Howard County's untimely motion for leave to amend should be denied for several reasons. Howard County failed to provide notice of its proposed amendments through a proposed complaint. Howard County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Howard County's motion should be denied due to futility, as Howard County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Howard County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Howard County amended its complaint on March 30, 2020, after transfer to the MDL on December 31, 2019. *See Howard County, Maryland v. Teva Pharmaceuticals USA, Inc., et al.*, Case No. 1:19-

op-46169-DAP, ECF No. 56. Unlike many other plaintiffs, Howard County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Howard County's deadline to amend was in 2020. Howard County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Howard County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Howard County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Motley Rice LLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Howard County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Howard County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Howard County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Howard County). That insignificant dispensing volume is much too low to support a finding of good cause for Howard County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Howard County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Howard County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Howard County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Howard County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Howard County of this deficiency on September 16, 2024 (*see* Exhibit B), but Howard County refused to amend or supplement its Fact Sheet. Under this Court's orders, Howard County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Howard County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Howard County's potential claims against them. Howard County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Howard County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Howard County, a municipality in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Howard County's proposed RICO claim against the PBMs has expired. Howard County filed its original complaint on May 17, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Howard County, Maryland v. Teva Pharmaceuticals USA, Inc., et al.*, Case No. 1:19-op-46169-DAP, ECF No. 1-3. Even assuming *arguendo* that Howard County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 17, 2023. Howard County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Howard County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Howard County's public-nuisance claim against the PBMs is therefore time-barred because Howard County sought leave to amend its complaint on July 29, 2024—five years after filing its original complaint on May 17, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Howard County, a municipality in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1574.** ***Town of Hull v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46172-DAP: Plaintiff Hull Town, Massachusetts**

Hull Town's untimely motion for leave to amend should be denied for several reasons. Hull Town failed to provide notice of its proposed amendments through a proposed complaint. Hull Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hull Town's motion should be denied due to futility, as Hull Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hull Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hull Town amended its complaint on March 30, 2020, after transfer to the MDL on December 31,

2019, as well as on September 11, 2020 and September 9, 2024. *See Town of Hull v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46172-DAP, ECF Nos. 9, 17, 29. Unlike many other plaintiffs, Hull Town declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Hull Town's deadline to amend was in 2020. Hull Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hull Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Hull Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Hull Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Hull Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hull Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Hull Town). That insignificant dispensing volume is much too low to support a finding of good cause for Hull Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hull Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hull Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Hull Town filed its original complaint on December 2, 2019. *See Town of Hull v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46172-DAP, ECF No. 1. Despite filing its case years ago, Hull Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hull Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Hull Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hull Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hull Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hull Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hull Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hull Town's proposed RICO claim against the PBMs has expired. Hull Town filed its original complaint on December 2, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Hull v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46172-DAP, ECF No. 1. It is therefore indisputable that Hull Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Hull Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hull Town's request for leave to amend to add a RICO claim should be denied as

futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Hull Town's public-nuisance claim against the PBMs is therefore time-barred because Hull Town sought leave to amend its complaint on July 29, 2024—nearly five years after filing its original complaint on December 2, 2019—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Hull Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1575. *Scott County, Missouri v. AmerisourceBergen Drug Corp. et al.*, Case No. 1:19-op-46174-DAP: Plaintiff Scott County, Missouri

Scott County's untimely motion for leave to amend should be denied for several reasons. Scott County failed to provide notice of its proposed amendments through a proposed complaint. Scott County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Scott County's motion should be denied due to futility, as Scott County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Scott County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Scott County filed its original complaint on November 21, 2019 and the case was transferred to the MDL on December 31, 2019. *See Scott County, Missouri v. AmerisourceBergen Drug Corp. et al.*, Case No. 1:19-op-46174-DAP, ECF No. 5. Scott County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Scott County elected not to do so. Instead, Scott County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Scott County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Scott County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Scott County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Scott County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Scott County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Scott County). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Scott County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Scott County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Scott County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Scott County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Scott County of this deficiency on September 16, 2024 (*see* Exhibit B), but Scott County refused to amend or supplement its Fact Sheet. Under this Court's orders, Scott County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Scott County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Scott County's potential claims against them. Scott County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Scott County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Scott County, a municipality in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Scott County's proposed RICO claim against the PBMs has expired. Scott County filed its original complaint on November 21, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Scott County, Missouri v. AmerisourceBergen Drug Corp. et al.*, Case No. 1:19-op-46174-DAP, ECF No. 1. It is therefore indisputable that Scott County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Scott County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Scott County's request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Scott County, a municipality in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1576. ***Borough of Edwardsville, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46176-DAP: Plaintiff Edwardsville Borough, Pennsylvania**

Edwardsville Borough's untimely motion for leave to amend should be denied for several reasons. Edwardsville Borough failed to provide notice of its proposed amendments through a proposed complaint. Edwardsville Borough also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Edwardsville Borough's motion should be denied due to futility, as Edwardsville Borough does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Edwardsville Borough was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Edwardsville Borough filed its original complaint on November 27, 2019, and the case was transferred to the MDL on December 31, 2019. *See Borough of Edwardsville, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46176-DAP, ECF No. 4. Edwardsville Borough could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Edwardsville Borough elected not to do so. Instead, Edwardsville Borough waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Edwardsville Borough's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Edwardsville Borough cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Edwardsville Borough, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Edwardsville Borough fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Edwardsville Borough's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Edwardsville

Borough cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Edwardsville Borough's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Edwardsville Borough to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Edwardsville Borough filed its original complaint on November 27, 2019. *See Borough of Edwardsville, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46176-DAP, ECF No. 1. Despite filing its case years ago, Edwardsville Borough *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Edwardsville Borough's case would force the parties and the Court to waste time and resources ascertaining the extent of Edwardsville Borough's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Edwardsville Borough's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Edwardsville Borough therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Edwardsville Borough failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Edwardsville Borough's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Edwardsville Borough of this deficiency on September 16, 2024 (*see* Exhibit B), but Edwardsville Borough refused to amend or supplement its Fact Sheet. Under this Court's orders, Edwardsville Borough's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Edwardsville Borough's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Edwardsville Borough's potential claims against them. Edwardsville Borough's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Edwardsville Borough's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See* *Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Edwardsville Borough, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Edwardsville Borough's proposed RICO claim against the PBMs has expired. Edwardsville Borough filed its original complaint on November 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Borough of Edwardsville, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46176-DAP, ECF No. 1. It is therefore indisputable that Edwardsville Borough knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Edwardsville Borough's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Edwardsville Borough's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Edwardsville Borough, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1577. *Forty Fort Borough, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46177-DAP: Plaintiff Forty Fort Borough, Pennsylvania

Forty Fort Borough's untimely motion for leave to amend should be denied for several reasons. Forty Fort Borough failed to provide notice of its proposed amendments through a proposed complaint. Forty Fort Borough also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact

sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Forty Fort Borough's motion should be denied due to futility, as Forty Fort Borough does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Forty Fort Borough was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Forty Fort Borough amended its complaint on March 30, 2020, after transfer to the MDL on December 31, 2019. *See Forty Fort Borough, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46177-DAP, ECF No. 6. Unlike many other plaintiffs, Forty Fort Borough declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Forty Fort Borough's deadline to amend was in 2020. Forty Fort Borough waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Forty Fort Borough's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Forty Fort Borough cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Forty Fort Borough, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier.

Forty Fort Borough fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Forty Fort Borough's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Forty Fort Borough cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Forty Fort Borough's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Forty Fort Borough to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Forty Fort Borough filed its original complaint on November 27, 2019. *See Forty Fort Borough, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46177-DAP, ECF No. 1. Despite filing its case years ago,

Forty Fort Borough *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Forty Fort Borough's case would force the parties and the Court to waste time and resources ascertaining the extent of Forty Fort Borough's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Forty Fort Borough's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Forty Fort Borough therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Forty Fort Borough failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Forty Fort Borough's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Forty Fort Borough of this deficiency on September 16, 2024 (*see* Exhibit B), but Forty Fort Borough refused to amend or supplement its Fact Sheet. Under this Court's orders, Forty Fort Borough's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Forty Fort Borough's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Forty Fort Borough's potential claims against them. Forty Fort Borough's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment

Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Forty Fort Borough's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Forty Fort Borough, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Forty Fort Borough's proposed RICO claim against the PBMs has expired. Forty Fort Borough filed its original complaint on November 27, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Forty Fort Borough, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:19-op-46177-DAP, ECF No. 1. It is therefore indisputable that Forty Fort Borough knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Forty Fort Borough's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of

[the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Forty Fort Borough's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Forty Fort Borough, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1578. *City of Pontiac, Michigan v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46183-DAP: Plaintiff Pontiac City, Michigan

Pontiac City's untimely motion for leave to amend should be denied for several reasons. Pontiac City failed to provide notice of its proposed amendments through a proposed complaint. Pontiac City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pontiac City's motion should be denied due to futility, as Pontiac City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pontiac City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pontiac City filed its original complaint directly into the MDL on December 31, 2019. *See City of Pontiac, Michigan v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46183-DAP, ECF No. 1. Pontiac City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Pontiac City elected not to do so. Pontiac City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Pontiac City's lack of diligence in pursuing its claims negates any

finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pontiac City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Pontiac City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Pontiac City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pontiac City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Pontiac City). That insignificant dispensing volume is much too low to support a finding of good cause for Pontiac City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Pontiac City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Pontiac City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Pontiac City of this deficiency on September 16, 2024 (*see* Exhibit B), but Pontiac City refused to amend or supplement its Fact Sheet. Under this Court's orders, Pontiac City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Pontiac City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Pontiac City's potential claims against them. Pontiac City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Michigan law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pontiac City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Michigan law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pontiac City, a municipality in Michigan, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pontiac City's proposed RICO claim against the PBMs has expired. Pontiac City filed its original complaint on December 31, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Pontiac, Michigan v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46183-DAP, ECF No. 1. It is therefore indisputable that Pontiac City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Pontiac City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pontiac City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pontiac City, a municipality in Michigan, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1579.** *Lawrence County, Kentucky v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:19-op-46184-DAP: Plaintiff Lawrence County, Kentucky**

Lawrence County's untimely motion for leave to amend should be denied for several reasons. Lawrence County failed to provide notice of its proposed amendments through a proposed complaint. Lawrence County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lawrence County's motion should be denied due to futility, as Lawrence County does not assert any allegations tying the PBMs to its alleged harm,

its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lawrence County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lawrence County filed its original complaint directly into the MDL on December 31, 2019. *See Lawrence County, Kentucky v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:19-op-46184-DAP, ECF No. 1. Lawrence County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Lawrence County elected not to do so. Lawrence County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Lawrence County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lawrence County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Lawrence County—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lawrence County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months,

especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lawrence County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Lawrence County). That insignificant dispensing volume is much too low to support a finding of good cause for Lawrence County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lawrence County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lawrence County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lawrence County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lawrence County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lawrence County of this deficiency on September 16, 2024 (*see* Exhibit B), but Lawrence County refused to amend or supplement its Fact Sheet. Under this Court's orders, Lawrence County's case is therefore subject to "***dismiss[al] with prejudice***" for

failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lawrence County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lawrence County's potential claims against them. Lawrence County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lawrence County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lawrence County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lawrence County's proposed RICO claim against the PBMs has expired. Lawrence County filed its original complaint on December 31, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Lawrence County, Kentucky v. AmerisourceBergen Drug Corporation et al.*, Case

No. 1:19-op-46184-DAP, ECF No. 1. It is therefore indisputable that Lawrence County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Lawrence County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lawrence County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lawrence County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1580. *City of Emporia, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46850-DAP: Plaintiff Emporia City, Virginia

Emporia City's untimely motion for leave to amend should be denied for several reasons. Emporia City failed to provide notice of its proposed amendments through a proposed complaint. Emporia City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Emporia City's motion should be denied due to futility, as Emporia City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Emporia City previously alleged claims against some of the PBMs in its original complaint on July 9, 2019. *See City of Emporia, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46850-DAP, ECF No. 1-1 (bringing claims against Express Scripts Holding Co.;

Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Emporia City also amended its complaint on December 20, 2019, to add claims against additional PBM-related entities. *See id.*, ECF No. 24 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Emporia City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Emporia City's deadline to amend was in 2020, but it waited four years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Emporia City's complaint, Emporia City already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Emporia City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Emporia City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Emporia City). That insignificant dispensing volume is much too low to support a finding of good cause for Emporia City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Emporia City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Emporia City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Emporia City violated its basic duty to implement a timely litigation hold. Emporia City filed its original complaint on July 9, 2019, but waited until August 13, 2024 to implement a litigation hold—five years and one month later. *See City of Emporia, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46850-DAP, ECF No. 1-1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Emporia City's case would force the parties and the Court to waste time and resources ascertaining the extent of Emporia City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Emporia City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Emporia City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Emporia City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Emporia City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Emporia City of this deficiency on September 16, 2024 (*see* Exhibit B), but Emporia City refused to amend or supplement its Fact Sheet. Under this Court's orders, Emporia City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1

5773

(emphasis in original); *see* Section III.A.5, above. Emporia City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Emporia City's potential claims against them. Emporia City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Emporia City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Emporia City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Emporia City's proposed RICO claim against the PBMs has expired. Emporia City filed its original complaint on July 9, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Emporia, Virginia v. Purdue Pharma L.P. et al.*, Case No. 1:19-op-46850-DAP, ECF No. 1-1. Even assuming *arguendo* that Emporia City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on

July 9, 2023. Emporia City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Emporia City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Emporia City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1581. *Village of Pleasant Prairie Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45010-DAP: Plaintiff Pleasant Prairie Village, Wisconsin

Pleasant Prairie Village's untimely motion for leave to amend should be denied for several reasons. Pleasant Prairie Village failed to provide notice of its proposed amendments through a proposed complaint. Pleasant Prairie Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pleasant Prairie Village's motion should be denied due to futility, as Pleasant Prairie Village does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pleasant Prairie Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pleasant Prairie Village amended its complaint on April 6, 2020, after transfer to the MDL on January 8, 2020. *See Village of Pleasant Prairie Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45010-DAP, ECF No. 4. Unlike many other plaintiffs, Pleasant Prairie Village declined to add claims against the PBMs in its amended complaint. *See*

Section II.A.1, above. Pleasant Prairie Village's deadline to amend was in 2020. Pleasant Prairie

Village waited four years after its deadline to amend to seek leave to assert claims against the

PBMs. Pleasant Prairie Village's lack of diligence in pursuing its claims negates any finding of

good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after

the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because

plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Pleasant Prairie Village cannot meet the Rule 16 good

cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey

& Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty &

Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019.

*See* MDL ECF No. 2582. Pleasant Prairie Village, through its counsel, was on notice of potential

claims against the PBMs and could readily have amended its complaint to add the PBMs much

earlier. Pleasant Prairie Village fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See,*

*e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery

when the "plaintiff was obviously aware of the basis of the claim for many months, especially

since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access

to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's

home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Pleasant Prairie Village's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.10% market share for Pleasant Prairie Village). That insignificant dispensing volume is much too low to support a finding of good cause for Pleasant Prairie Village to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pleasant Prairie Village filed its original complaint on December 13, 2019. *See Village of Pleasant Prairie Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45010-DAP, ECF No. 1. Despite filing its case years ago, Pleasant Prairie Village *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pleasant Prairie Village's case would force the parties and the Court to waste time and resources ascertaining the extent of Pleasant Prairie Village's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pleasant Prairie Village's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pleasant Prairie Village therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pleasant Prairie Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pleasant Prairie Village, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pleasant Prairie Village's proposed RICO claim against the PBMs has expired. Pleasant Prairie Village filed its original complaint on December 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Village of Pleasant Prairie Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45010-DAP, ECF No. 1. It is therefore indisputable that Pleasant Prairie Village knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Pleasant Prairie Village's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pleasant Prairie Village's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pleasant Prairie Village, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

5778

1582. *City of Kenosha, Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45011-DAP: Plaintiff Kenosha City, Wisconsin

Kenosha City's untimely motion for leave to amend should be denied for several reasons. Kenosha City failed to provide notice of its proposed amendments through a proposed complaint. Kenosha City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kenosha City's motion should be denied due to futility, as Kenosha City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kenosha City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kenosha City amended its complaint on April 6, 2020, after transfer to the MDL on January 8, 2020. *See City of Kenosha, Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45011-DAP, ECF No. 4. Unlike many other plaintiffs, Kenosha City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Kenosha City's deadline to amend was in 2020. Kenosha City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Kenosha City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Kenosha City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Kenosha City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Kenosha City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kenosha City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Kenosha City). That insignificant dispensing volume is much too low to support a finding of good cause for Kenosha City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Kenosha City violated its basic duty to implement a timely litigation hold. Kenosha City filed its original complaint on December 13, 2019, but waited until September 25, 2024 to implement a litigation hold—four years and nine months later. *See City of Kenosha, Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45011-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold

Implemented: September 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Kenosha City's case would force the parties and the Court to waste time and resources ascertaining the extent of Kenosha City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kenosha City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kenosha City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kenosha City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kenosha City, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kenosha City's proposed RICO claim against the PBMs has expired. Kenosha City filed its original complaint on December 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Kenosha, Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-

op-45011-DAP, ECF No. 1. It is therefore indisputable that Kenosha City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Kenosha City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kenosha City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kenosha City, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1583. *Bath County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45012-DAP: Plaintiff Bath County, Kentucky

Bath County's untimely motion for leave to amend should be denied for several reasons. Bath County failed to provide notice of its proposed amendments through a proposed complaint. Bath County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bath County's motion should be denied due to futility, as Bath County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bath County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bath County amended its complaint on April 6, 2020, after transfer to the MDL on January 8, 2020. *See Bath County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No.

1:20-op-45012-DAP, ECF No. 7. Unlike many other plaintiffs, Bath County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bath County's deadline to amend was in 2020. Bath County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Bath County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Bath County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Bath County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Bath County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Bath County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Bath County). That insignificant dispensing volume is much too low to support a finding of good cause for Bath County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Bath County violated its basic duty to implement a timely litigation hold. Bath County filed its original complaint on December 12, 2019, but waited until September 18, 2024 to implement a litigation hold—four years and nine months later. *See Bath County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45012-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 18, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Bath County's case would force the parties and the Court to waste time and resources ascertaining the extent of Bath County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bath County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bath County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bath County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bath County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bath County's proposed RICO claim against the PBMs has expired. Bath County filed its original complaint on December 12, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Bath County Fiscal Court v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45012-DAP, ECF No. 1. It is therefore indisputable that Bath County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Bath County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bath County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bath County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1584.** *County of Hawaii v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45014-DAP: Plaintiff Hawaii County, Hawaii

Hawaii County's untimely motion for leave to amend should be denied for several reasons. Hawaii County failed to provide notice of its proposed amendments through a proposed complaint. Hawaii County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hawaii County's motion should be denied due to futility, as Hawaii County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hawaii County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hawaii County filed its original complaint on June 10, 2019, and the case was transferred to the MDL on January 8, 2020. *See County of Hawaii v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45014-DAP, ECF No. 19. Hawaii County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Hawaii County elected not to do so. Instead, Hawaii County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hawaii County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Hawaii County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.36% market share for Hawaii County). That insignificant dispensing volume is much too low to support a finding of good cause for Hawaii County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hawaii County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hawaii County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Hawaii County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Hawaii County of the PBM services Express Scripts provides and Hawaii County began receiving those services on July 2, 2007. *See id.* Inasmuch as Hawaii County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Hawaii County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Hawaii County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hawaii County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hawaii County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hawaii County of this deficiency on September 16, 2024 (*see* Exhibit B), but Hawaii County refused to amend or supplement its Fact Sheet. Under this Court's orders, Hawaii County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hawaii County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hawaii County's potential claims against them. Hawaii County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Hawaii law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hawaii County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Hawaii law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hawaii County, a municipality in Hawaii, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hawaii County's proposed RICO claim against the PBMs has expired. Hawaii County filed its original complaint on June 10, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Hawaii v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45014-DAP, ECF No. 1-1. Even assuming *arguendo* that Hawaii County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 10, 2023. Hawaii County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hawaii County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hawaii County, a municipality in Hawaii, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1585.** ***Fiscal Court of Monroe County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45016-DAP: Plaintiff Monroe County, Kentucky**

Monroe County's untimely motion for leave to amend should be denied for several reasons. Monroe County failed to provide notice of its proposed amendments through a proposed complaint. Monroe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Monroe County's motion should be denied due to futility, as Monroe County does not assert any allegations tying

the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Monroe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Monroe County filed its original complaint directly into the MDL on January 10, 2020. *See Fiscal Court of Monroe County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45016-DAP, ECF No. 1. Monroe County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Monroe County elected not to do so. Monroe County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Monroe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Monroe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Monroe County). That insignificant dispensing volume is much too low to support a finding of good cause for Monroe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Monroe County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Monroe County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Monroe County filed its original complaint on January 10, 2020. *See Fiscal Court of Monroe County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45016-DAP, ECF No. 1. Despite filing its case years ago, Monroe County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Monroe County's case would force the parties and the Court to waste time and resources ascertaining the extent of Monroe County's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Monroe County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Monroe County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Monroe County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Monroe County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The

PBMs notified Monroe County of this deficiency on September 16, 2024 (*see* Exhibit B), but Monroe County refused to amend or supplement its Fact Sheet. Under this Court's orders, Monroe County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Monroe County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Monroe County's potential claims against them. Monroe County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Monroe County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Monroe County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Monroe County's proposed RICO claim against the PBMs has expired. Monroe County filed its original complaint on January 10, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants.

*See Fiscal Court of Monroe County, Kentucky v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45016-DAP, ECF No. 1. It is therefore indisputable that Monroe County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Monroe County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Monroe County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Monroe County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1586.** *West Hempstead Public Library v. McKesson Corporation et al.*, **Case No. 1:20-op-45018-DAP: Plaintiff West Hempstead Public Library, New York**

West Hempstead Public Library's untimely motion for leave to amend should be denied for several reasons. West Hempstead Public Library failed to provide notice of its proposed amendments through a proposed complaint. West Hempstead Public Library also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Hempstead Public Library's motion should be denied due to futility, as West Hempstead Public Library does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** West Hempstead Public Library was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A,

above. Moreover, West Hempstead Public Library filed its original complaint directly into the MDL on January 13, 2020. *See West Hempstead Public Library v. McKesson Corporation et al.*, Case No. 1:20-op-45018-DAP, ECF No. 1. West Hempstead Public Library could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, West Hempstead Public Library elected not to do so. West Hempstead Public Library waited four years after its deadline to amend to seek leave to assert claims against the PBMs. West Hempstead Public Library's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, West Hempstead Public Library failed to provide complete answers to Questions I.B.8 and I.B.9, relating to West Hempstead Public Library's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified West Hempstead Public Library of this deficiency on September 16, 2024 (*see* Exhibit B), but West Hempstead Public Library refused to amend or supplement its Fact Sheet. Under this Court's orders, West Hempstead Public Library's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. West Hempstead Public Library's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against West Hempstead Public Library's potential claims against them. West Hempstead Public Library's failure to diligently prosecute its case, coupled with the prejudice against the PBMs,

negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

 **Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Hempstead Public Library's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

 **Failure to State a Claim.** West Hempstead Public Library, a library in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

 **RICO Statute of Limitations.** The statute of limitations for West Hempstead Public Library's proposed RICO claim against the PBMs has expired. West Hempstead Public Library filed its original complaint on January 13, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See West Hempstead Public Library v. McKesson Corporation et al.*, Case No. 1:20-op-45018-DAP, ECF No. 1. It is therefore indisputable that West Hempstead Public Library knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. West Hempstead Public Library's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF

No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Hempstead Public Library's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** West Hempstead Public Library, a library in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. West Hempstead Public Library's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1587. *Hui Huliau, A Native Hawaiian Organization v. McKesson Corporation et al.*, Case No. 1:20-op-45025-DAP: Plaintiff Hui Huliau, A Native Hawaiian Organization, Hawaii

Hui Huliau, A Native Hawaiian Organization's untimely motion for leave to amend should be denied for several reasons. Hui Huliau failed to provide notice of its proposed amendments through a proposed complaint. Hui Huliau also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hui Huliau's motion should be denied due to futility, as Hui Huliau does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hui Huliau was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hui Huliau filed its original complaint directly into the MDL on January 17, 2020. *See Hui Huliau,*

*A Native Hawaiian Organization v. McKesson Corporation et al.*, Case No. 1:20-op-45025-DAP, ECF No. 1. Hui Huliau could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Hui Huliau elected not to do so. Hui Huliau waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hui Huliau's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Hui Huliau filed its original complaint on January 17, 2020. *See Hui Huliau, A Native Hawaiian Organization v. McKesson Corporation et al.*, Case No. 1:20-op-45025-DAP, ECF No. 1. Despite filing its case years ago, Hui Huliau *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Hui Huliau's case would force the parties and the Court to waste time and resources ascertaining the extent of Hui Huliau's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hui Huliau's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hui Huliau therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Hui Huliau has *never* served a Plaintiff Fact Sheet. Hui Huliau's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hui Huliau's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Hawaii law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hui Huliau's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Hawaii law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hui Huliau, a third party payor in Hawaii, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hui Huliau's proposed RICO claim against the PBMs has expired. Hui Huliau filed its original complaint on January 17, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Hui Huliau, A Native Hawaiian Organization v. McKesson Corporation et al.*, Case No. 1:20-op-45025-DAP, ECF No. 1. It is therefore indisputable that Hui Huliau knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave

to amend. Hui Huliau's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hui Huliau's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hui Huliau, a third party payor in Hawaii, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1588. *Hudson Regional Hospital v. McKesson Corporation et al.*, Case No. 1:20-op-45026-DAP: Plaintiff Hudson Regional Hospital, New Jersey

Hudson Regional Hospital's untimely motion for leave to amend should be denied for several reasons. The Court previously dismissed Hudson Regional Hospital's case. Moreover, Hudson Regional Hospital failed to provide notice of its proposed amendments through a proposed complaint. Hudson Regional Hospital also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hudson Regional Hospital's motion should be denied due to futility, as Hudson Regional Hospital does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously dismissed Hudson Regional Hospital's case on April 2, 2024. *See Hudson Regional Hospital v. McKesson Corporation et al.*, Case No. 1:20-op-45026-DAP, ECF No. 21. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp*, 511 F.3d at 624 (citation

omitted). Without such post-judgment relief, the "'district court lacks power to grant a motion to amend the complaint'" because there is no "live case or controversy before the district court." *Id.* (quoting *Acevedo-Villalobos*, 22 F.3d at 389). Hudson Regional Hospital has neither moved for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion."). Hudson Regional Hospital has not offered any basis to reopen its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Lack of Diligence.** Hudson Regional Hospital was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hudson Regional Hospital filed its original complaint directly into the MDL on January 18, 2020. *See Hudson Regional Hospital v. McKesson Corporation et al.*, Case No. 1:20-op-45026-DAP, ECF No. 1. Hudson Regional Hospital could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Hudson Regional Hospital elected not to do so. Hudson Regional Hospital waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hudson Regional Hospital's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New Jersey law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hudson Regional Hospital's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Jersey law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hudson Regional Hospital, a hospital in New Jersey, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Hudson Regional Hospital, a hospital in New Jersey, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1589.** *Iron Workers Local 40 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45027-DAP: Plaintiff Iron Workers Local 40 Health Fund, New York

Iron Workers Local 40 Health Fund's untimely motion for leave to amend should be denied for several reasons. Iron Workers Local 40 Health Fund failed to provide notice of its proposed amendments through a proposed complaint. Iron Workers Local 40 Health Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Iron Workers Local 40 Health Fund's motion should be denied due to futility, as Iron Workers Local 40 Health Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Iron Workers Local 40 Health Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section

II.A, above. Moreover, Iron Workers Local 40 Health Fund filed its original complaint directly into the MDL on January 18, 2020. *See Iron Workers Local 40 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45027-DAP, ECF No. 1. Iron Workers Local 40 Health Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Iron Workers Local 40 Health Fund elected not to do so. Iron Workers Local 40 Health Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Iron Workers Local 40 Health Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Iron Workers Local 40 Health Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Iron Workers Local 40 Health Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Iron Workers Local 40 Health Fund's proposed RICO claim against the PBMs has expired. Iron Workers Local 40 Health Fund filed its original complaint on January 18, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Iron Workers Local 40 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45027-DAP, ECF No. 1. It is therefore indisputable that Iron Workers Local 40 Health Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Iron Workers Local 40 Health Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Iron Workers Local 40 Health Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Iron Workers Local 40 Health Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Iron Workers Local 40 Health Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> 1590. ***Iron Workers Local 361 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45028-DAP: Plaintiff Iron Workers Local 361 Health Fund, New York**

Iron Workers Local 361 Health Fund's untimely motion for leave to amend should be denied for several reasons. Iron Workers Local 361 Health Fund failed to provide notice of its proposed amendments through a proposed complaint. Iron Workers Local 361 Health Fund also

lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Iron Workers Local 361 Health Fund's motion should be denied due to futility, as Iron Workers Local 361 Health Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Iron Workers Local 361 Health Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Iron Workers Local 361 Health Fund filed its original complaint directly into the MDL on January 18, 2020. *See Iron Workers Local 361 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45028-DAP, ECF No. 1. Iron Workers Local 361 Health Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Iron Workers Local 361 Health Fund elected not to do so. Iron Workers Local 361 Health Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Iron Workers Local 361 Health Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Iron Workers Local 361 Health Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time.

That impairment substantially prejudices the PBMs in their ability to defend themselves. *See*

*Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Iron Workers Local 361 Health Fund, a third party payor in New

York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its

injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a

differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Iron Workers Local 361

Health Fund's proposed RICO claim against the PBMs has expired. Iron Workers Local 361

Health Fund filed its original complaint on January 18, 2020, alleging the same type of injuries

*and* alleging a RICO claim against other defendants. *See Iron Workers Local 361 Health Fund v.*

*McKesson Corporation et al.*, Case No. 1:20-op-45028-DAP, ECF No. 1. It is therefore

indisputable that Iron Workers Local 361 Health Fund knew of its RICO injury, at the very latest,

the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Iron

Workers Local 361 Health Fund's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528

U.S. at 555)); *see* Section III.B.4, above. Iron Workers Local 361 Health Fund's request for leave

to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5

(denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Iron Workers Local 361 Health Fund, a third party payor in

New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York

City, a county in New York, or the state of New York. *See* Section III.B.6, above. Iron Workers

Local 361 Health Fund's request for leave to amend its complaint to add a claim under NY SSL §

145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1591. *Iron Workers Local 417 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45029-DAP: Plaintiff Iron Workers Local 417 Health Fund, New York

Iron Workers Local 417 Health Fund's untimely motion for leave to amend should be denied for several reasons. Iron Workers Local 417 Health Fund failed to provide notice of its proposed amendments through a proposed complaint. Iron Workers Local 417 Health Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Iron Workers Local 417 Health Fund's motion should be denied due to futility, as Iron Workers Local 417 Health Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Iron Workers Local 417 Health Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Iron Workers Local 417 Health Fund filed its original complaint directly into the MDL on January 18, 2020. *See Iron Workers Local 417 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45029-DAP, ECF No. 1. Iron Workers Local 417 Health Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Iron Workers Local 417 Health Fund elected not to do so. Iron Workers Local 417 Health Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Iron Workers Local 417 Health Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Iron Workers Local 417 Health Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Iron Workers Local 417 Health Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Iron Workers Local 417 Health Fund's proposed RICO claim against the PBMs has expired. Iron Workers Local 417 Health Fund filed its original complaint on January 18, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Iron Workers Local 417 Health Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45029-DAP, ECF No. 1. It is therefore indisputable that Iron Workers Local 417 Health Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Iron Workers Local 417 Health Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Iron Workers Local 417 Health Fund's request for leave

to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Iron Workers Local 417 Health Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Iron Workers Local 417 Health Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1592.** ***Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45030-DAP: Plaintiff Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund, New York**

Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund's untimely motion for leave to amend should be denied for several reasons. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund failed to provide notice of its proposed amendments through a proposed complaint. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund's motion should be denied due to futility, as Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Metallic Lathers and

Reinforcing Iron Workers Local 46 Health & Benefit Fund filed its original complaint directly into the MDL on January 19, 2020. *See Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45030-DAP, ECF No. 1. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund elected not to do so. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund of the PBM services Express Scripts provides and Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund began receiving those services on July 7, 2020. *See id.* Inasmuch as Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845),

Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund knew or should have known of the alleged wrongful conduct four years before moving to amend. *See* Section III.A.3, above. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund's proposed RICO claim against the PBMs has expired. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund filed its original complaint on January 19, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45030-DAP, ECF No. 1. It is therefore indisputable that Metallic Lathers and Reinforcing Iron

Workers Local 46 Health & Benefit Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Metallic Lathers and Reinforcing Iron Workers Local 46 Health & Benefit Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1593.** ***UFCW Local 342 Healthcare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45033-DAP: Plaintiff UFCW Local 342 Healthcare Fund, New York**

UFCW Local 342 Healthcare Fund's untimely motion for leave to amend should be denied for several reasons. UFCW Local 342 Healthcare Fund failed to provide notice of its proposed amendments through a proposed complaint. UFCW Local 342 Healthcare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, UFCW Local 342 Healthcare Fund's motion should be

denied due to futility, as UFCW Local 342 Healthcare Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** UFCW Local 342 Healthcare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, UFCW Local 342 Healthcare Fund filed its original complaint directly into the MDL on January 19, 2020. *See UFCW Local 342 Healthcare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45033-DAP, ECF No. 1. UFCW Local 342 Healthcare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, UFCW Local 342 Healthcare Fund elected not to do so. UFCW Local 342 Healthcare Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. UFCW Local 342 Healthcare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** UFCW Local 342 Healthcare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified UFCW Local 342 Healthcare Fund of the PBM services Express Scripts provides and UFCW Local 342 Healthcare Fund began receiving those services on January 1, 2006. *See id.* Inasmuch as UFCW Local 342 Healthcare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–

22, 845), UFCW Local 342 Healthcare Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. UFCW Local 342 Healthcare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But UFCW Local 342 Healthcare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** UFCW Local 342 Healthcare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for UFCW Local 342 Healthcare Fund's proposed RICO claim against the PBMs has expired. UFCW Local 342 Healthcare Fund filed its original complaint on January 19, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See UFCW Local 342 Healthcare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45033-DAP, ECF No. 1. It is therefore indisputable that UFCW Local 342 Healthcare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. UFCW Local 342

Healthcare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. UFCW Local 342 Healthcare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** UFCW Local 342 Healthcare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. UFCW Local 342 Healthcare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1594. *UFCW Local 342 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45034-DAP: Plaintiff UFCW Local 342 Welfare Fund, New York

UFCW Local 342 Welfare Fund's untimely motion for leave to amend should be denied for several reasons. UFCW Local 342 Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. UFCW Local 342 Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, UFCW Local 342 Welfare Fund's motion should be denied due to futility, as UFCW Local 342 Welfare Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** UFCW Local 342 Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, UFCW Local 342 Welfare Fund filed its original complaint directly into the

MDL on January 19, 2020. *See UFCW Local 342 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45034-DAP, ECF No. 1. UFCW Local 342 Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, UFCW Local 342 Welfare Fund elected not to do so. UFCW Local 342 Welfare Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. UFCW Local 342 Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** UFCW Local 342 Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified UFCW Local 342 Welfare Fund of the PBM services Express Scripts provides and UFCW Local 342 Welfare Fund began receiving those services on January 1, 2006. *See id.* Inasmuch as UFCW Local 342 Welfare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), UFCW Local 342 Welfare Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. UFCW Local 342 Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's

deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But UFCW Local 342 Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** UFCW Local 342 Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for UFCW Local 342 Welfare Fund's proposed RICO claim against the PBMs has expired. UFCW Local 342 Welfare Fund filed its original complaint on January 19, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See UFCW Local 342 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45034-DAP, ECF No. 1. It is therefore indisputable that UFCW Local 342 Welfare Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. UFCW Local 342 Welfare Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. UFCW Local 342 Welfare Fund's request for leave to amend to add a RICO claim should be

denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** UFCW Local 342 Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. UFCW Local 342 Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1595.** ***St. James Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45035-DAP: Plaintiff St James Fire District, New York**

St James Fire District's untimely motion for leave to amend should be denied for several reasons. St James Fire District failed to provide notice of its proposed amendments through a proposed complaint. St James Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, St James Fire District's motion should be denied due to futility, as St James Fire District does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** St James Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St James Fire District filed its original complaint directly into the MDL on January 19, 2020. *See St. James Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45035-DAP, ECF No. 1. St James Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, St James Fire District elected not to do so. St James Fire District waited four years after its deadline to amend to

seek leave to assert claims against the PBMs. St James Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, St James Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to St James Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified St James Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but St James Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, St James Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. St James Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against St James Fire District's potential claims against them. St James Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St James Fire District's delay

in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St James Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for St James Fire District's proposed RICO claim against the PBMs has expired. St James Fire District filed its original complaint on January 19, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See St. James Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45035-DAP, ECF No. 1. Even assuming *arguendo* that St James Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 19, 2024. St James Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. St James Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** St James Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. St James Fire District's request for leave to

amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1596. *Town of Stony Point, New York v. McKesson Corporation et al.*, Case No. 1:20-op-45036-DAP: Plaintiff Stony Point Town, New York

Stony Point Town's untimely motion for leave to amend should be denied for several reasons. Stony Point Town failed to provide notice of its proposed amendments through a proposed complaint. Stony Point Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Stony Point Town's motion should be denied due to futility, as Stony Point Town does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Stony Point Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Stony Point Town filed its original complaint directly into the MDL on January 22, 2020. *See Town of Stony Point, New York v. McKesson Corporation et al.*, Case No. 1:20-op-45036-DAP, ECF No. 1. Stony Point Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Stony Point Town elected not to do so. Stony Point Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Stony Point Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Stony Point Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Stony Point Town). That insignificant dispensing volume is much too low to support a finding of good cause for Stony Point Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Stony Point Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Stony Point Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Stony Point Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Stony Point Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Stony Point Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Stony Point Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Stony Point Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Stony Point Town's refusal to provide basic information related to its health care plans prejudices the

PBMs' ability to defend against Stony Point Town's potential claims against them. Stony Point Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stony Point Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Stony Point Town, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Stony Point Town's proposed RICO claim against the PBMs has expired. Stony Point Town filed its original complaint on January 22, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Stony Point, New York v. McKesson Corporation et al.*, Case No. 1:20-op-45036-DAP, ECF No. 1. Even assuming *arguendo* that Stony Point Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired,

at the very latest, on January 22, 2024. Stony Point Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Stony Point Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Stony Point Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Stony Point Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1597. *IBEW Local 25 Health & Benefit Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45037-DAP: Plaintiff IBEW Local 25 Health & Benefit Fund, New York

IBEW Local 25 Health & Benefit Fund's untimely motion for leave to amend should be denied for several reasons. IBEW Local 25 Health & Benefit Fund failed to provide notice of its proposed amendments through a proposed complaint. IBEW Local 25 Health & Benefit Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, IBEW Local 25 Health & Benefit Fund's motion should be denied due to futility, as IBEW Local 25 Health & Benefit Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** IBEW Local 25 Health & Benefit Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See*

Section II.A, above. Moreover, IBEW Local 25 Health & Benefit Fund filed its original complaint directly into the MDL on January 22, 2020. *See IBEW Local 25 Health & Benefit Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45037-DAP, ECF No. 1. IBEW Local 25 Health & Benefit Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, IBEW Local 25 Health & Benefit Fund elected not to do so. IBEW Local 25 Health & Benefit Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. IBEW Local 25 Health & Benefit Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** IBEW Local 25 Health & Benefit Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified IBEW Local 25 Health & Benefit Fund of the PBM services Express Scripts provides and IBEW Local 25 Health & Benefit Fund began receiving those services on January 1, 2006. *See id.* Inasmuch as IBEW Local 25 Health & Benefit Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), IBEW Local 25 Health & Benefit Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. IBEW Local 25 Health & Benefit Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying

motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But IBEW Local 25 Health & Benefit Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** IBEW Local 25 Health & Benefit Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for IBEW Local 25 Health & Benefit Fund's proposed RICO claim against the PBMs has expired. IBEW Local 25 Health & Benefit Fund filed its original complaint on January 22, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See IBEW Local 25 Health & Benefit Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45037-DAP, ECF No. 1. It is therefore indisputable that IBEW Local 25 Health & Benefit Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. IBEW Local 25 Health & Benefit Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. IBEW Local 25 Health & Benefit Fund's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** IBEW Local 25 Health & Benefit Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. IBEW Local 25 Health & Benefit Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at \*2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1598. *Tishomingo County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, **Case No. 1:20-op-45039-DAP: Plaintiff Tishomingo County, Mississippi**

Tishomingo County's untimely motion for leave to amend should be denied for several reasons. Tishomingo County failed to provide notice of its proposed amendments through a proposed complaint. Tishomingo County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Tishomingo County's motion should be denied due to futility, as Tishomingo County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Tishomingo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Tishomingo County filed its original complaint on December 30, 2019, and the case was transferred to the MDL on January 23, 2020. *See Tishomingo County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45039-DAP, ECF No. 3. Tishomingo County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Tishomingo County

elected not to do so. Instead, Tishomingo County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Tishomingo County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Tishomingo County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Tishomingo County). That insignificant dispensing volume is much too low to support a finding of good cause for Tishomingo County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Tishomingo County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Tishomingo County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Tishomingo County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Tishomingo County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Tishomingo County's proposed RICO claim against the PBMs has expired. Tishomingo County filed its original complaint on December 30, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Tishomingo County, Mississippi v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45039-DAP, ECF No. 1. Even assuming *arguendo* that Tishomingo County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on December 30, 2023. Tishomingo County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Tishomingo County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Tishomingo County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1599.** *UFCW Local 1500 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45041-DAP: Plaintiff UFCW Local 1500 Welfare Fund, New York

UFCW Local 1500 Welfare Fund's untimely motion for leave to amend should be denied for several reasons. UFCW Local 1500 Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. UFCW Local 1500 Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, UFCW Local 1500 Welfare Fund's motion should be denied due to futility, as UFCW Local 1500 Welfare Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** UFCW Local 1500 Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, UFCW Local 1500 Welfare Fund filed its original complaint directly into the MDL on January 27, 2020. *See UFCW Local 1500 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45041-DAP, ECF No. 1. UFCW Local 1500 Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, UFCW Local 1500 Welfare Fund elected not to do so. UFCW Local 1500 Welfare Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. UFCW Local 1500 Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** UFCW Local 1500 Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified UFCW Local 1500 Welfare Fund of the PBM services Express Scripts provides and UFCW Local 1500 Welfare Fund began receiving those services on December 1, 2012. *See id.* Inasmuch as UFCW Local 1500 Welfare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), UFCW Local 1500 Welfare Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. UFCW Local 1500 Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But UFCW Local 1500 Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** UFCW Local 1500 Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for UFCW Local 1500 Welfare Fund's proposed RICO claim against the PBMs has expired. UFCW Local 1500 Welfare Fund filed its original complaint on January 27, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See UFCW Local 1500 Welfare Fund v. McKesson Corporation et al.*, Case No. 1:20-op-45041-DAP, ECF No. 1. Even assuming *arguendo* that UFCW Local 1500 Welfare Fund first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 27, 2024. UFCW Local 1500 Welfare Fund's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. UFCW Local 1500 Welfare Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** UFCW Local 1500 Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. UFCW Local 1500 Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1600. *Town of Ramapo, New York v. McKesson Corporation et al.*, Case No. 1:20-op-45042-DAP: Plaintiff Ramapo Town, New York

Ramapo Town's untimely motion for leave to amend should be denied for several reasons. Ramapo Town failed to provide notice of its proposed amendments through a proposed complaint. Ramapo Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ramapo Town's motion should be denied due to futility, as Ramapo Town does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Ramapo Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ramapo Town filed its original complaint directly into the MDL on January 27, 2020. *See Town of Ramapo, New York v. McKesson Corporation et al.*, Case No. 1:20-op-45042-DAP, ECF No. 1. Ramapo Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Ramapo Town elected not to do so. Ramapo Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Ramapo Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Ramapo Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Ramapo Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ramapo Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ramapo Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ramapo Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ramapo Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ramapo Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Ramapo Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Ramapo Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ramapo Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ramapo Town's potential claims against them. Ramapo Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ramapo Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ramapo Town, a municipality in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ramapo Town's proposed RICO claim against the PBMs has expired. Ramapo Town filed its original complaint on January 27, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Town of Ramapo, New York v. McKesson Corporation et al.*, Case No. 1:20-op-45042-DAP, ECF No. 1. Even assuming *arguendo* that Ramapo Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 27, 2024. Ramapo Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ramapo Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ramapo Town, a municipality in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Ramapo Town's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*,

2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1601.** *City of Milwaukee, Wisconsin v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:20-op-45044-DAP: Plaintiff Milwaukee City, Wisconsin**

Milwaukee City's untimely motion for leave to amend should be denied for several reasons. Milwaukee City failed to provide notice of its proposed amendments through a proposed complaint. Milwaukee City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Milwaukee City's motion should be denied due to futility, as Milwaukee City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Milwaukee City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Milwaukee City filed its original complaint directly into the MDL on January 29, 2020. *See City of Milwaukee, Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45044-DAP, ECF No. 1. Milwaukee City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Milwaukee City elected not to do so. Milwaukee City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Milwaukee City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming

denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Milwaukee City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Milwaukee City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Milwaukee City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Milwaukee City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Milwaukee City). That insignificant dispensing volume is much too low to support a finding of good cause for Milwaukee City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

5836

units shipped to Milwaukee City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Milwaukee City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Milwaukee City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Milwaukee City of the PBM services Express Scripts provides and Milwaukee City began receiving those services on January 1, 2012. *See id.* Inasmuch as Milwaukee City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Milwaukee City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Milwaukee City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Milwaukee City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Milwaukee City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Milwaukee City of this deficiency on September 16, 2024 (*see* Exhibit B), but Milwaukee City refused to amend or supplement its Fact Sheet. Under this Court's orders, Milwaukee City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Milwaukee City's refusal to

5837

provide basic information related to its health care plans prejudices the PBMs' ability to defend against Milwaukee City's potential claims against them. Milwaukee City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Wisconsin law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Milwaukee City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Wisconsin law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Milwaukee City, a municipality in Wisconsin, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Milwaukee City's proposed RICO claim against the PBMs has expired. Milwaukee City filed its original complaint on January 29, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Milwaukee, Wisconsin v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45044-DAP, ECF No. 1. It is therefore indisputable that Milwaukee City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before

seeking leave to amend. Milwaukee City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Milwaukee City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Milwaukee City, a municipality in Wisconsin, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1602. *Amherst County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45046-DAP: Plaintiff Amherst County, Virginia

Amherst County's untimely motion for leave to amend should be denied for several reasons. Amherst County failed to provide notice of its proposed amendments through a proposed complaint. Amherst County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Amherst County's motion should be denied due to futility, as Amherst County does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Amherst County previously alleged claims against some of the PBMs in its original complaint on November 13, 2019. *See Amherst County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45046-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Amherst

County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Amherst County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Amherst County's complaint, Amherst County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2019. *See* Section II.A, above. Amherst County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Amherst County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Amherst County). That insignificant dispensing volume is much too low to support a finding of good cause for Amherst County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Amherst County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Amherst County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Amherst County violated its basic duty to implement a timely litigation hold. Amherst County filed its original complaint on November 13, 2019, but waited until July 8, 2024 to implement a litigation hold—four and a half years later. *See Amherst County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45046-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Amherst County's case would force the parties and the Court to waste time and resources ascertaining the extent of Amherst County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Amherst County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Amherst County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Amherst County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Amherst County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Amherst County of this deficiency on September 16, 2024 (*see* Exhibit B), but Amherst County refused to amend or supplement its Fact Sheet. Under this Court's orders, Amherst County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Amherst County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Amherst County's potential claims against them. Amherst County's failure to diligently

prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Amherst County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Amherst County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Amherst County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1603. *Narragansett Indian Tribe v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45047-DAP: Plaintiff Narragansett Indian Tribe, Rhode Island

Narragansett Indian Tribe's untimely motion for leave to amend should be denied for several reasons. Narragansett Indian Tribe failed to provide notice of its proposed amendments through a proposed complaint. Narragansett Indian Tribe also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Narragansett Indian Tribe's motion should

be denied due to futility, as Narragansett Indian Tribe does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Narragansett Indian Tribe was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Narragansett Indian Tribe filed its original complaint directly into the MDL on February 4, 2020. *See Narragansett Indian Tribe v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45047-DAP, ECF No. 1. Narragansett Indian Tribe could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Narragansett Indian Tribe elected not to do so. Narragansett Indian Tribe waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Narragansett Indian Tribe's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Narragansett Indian Tribe's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Narragansett Indian Tribe to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Narragansett Indian Tribe filed its original complaint on February 4, 2020. *See Narragansett Indian Tribe v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45047-DAP, ECF No. 1. Despite filing its case years ago, Narragansett Indian Tribe *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Narragansett Indian Tribe's case would force the parties and the Court to waste time and resources ascertaining the extent of Narragansett Indian Tribe's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Narragansett Indian Tribe's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Narragansett Indian Tribe therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Rhode Island law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Narragansett Indian Tribe's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Rhode Island law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Narragansett Indian Tribe, a native tribe in Rhode Island, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Narragansett Indian Tribe's proposed RICO claim against the PBMs has expired. Narragansett Indian Tribe filed its original complaint on February 4, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Narragansett Indian Tribe v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45047-DAP, ECF No. 1. It is therefore indisputable that Narragansett Indian Tribe knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, over four years before seeking leave to amend. Narragansett Indian Tribe's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Narragansett Indian Tribe's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Narragansett Indian Tribe, a native tribe in Rhode Island, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1604. *Medford Volunteer Ambulance v. McKesson Corporation et al.*, Case No. 1:20-op-45048-DAP: Plaintiff Medford Volunteer Ambulance, New York

Medford Volunteer Ambulance's untimely motion for leave to amend should be denied for several reasons. Medford Volunteer Ambulance failed to provide notice of its proposed amendments through a proposed complaint. Medford Volunteer Ambulance also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly

prejudice the PBMs. Moreover, Medford Volunteer Ambulance's motion should be denied due to futility, as Medford Volunteer Ambulance does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Medford Volunteer Ambulance was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Medford Volunteer Ambulance filed its original complaint directly into the MDL on February 5, 2020. *See Medford Volunteer Ambulance v. McKesson Corporation et al.*, Case No. 1:20-op-45048-DAP, ECF No. 1. Medford Volunteer Ambulance could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Medford Volunteer Ambulance elected not to do so. Medford Volunteer Ambulance waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Medford Volunteer Ambulance's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Medford Volunteer Ambulance's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Medford Volunteer Ambulance, an ambulance district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Medford Volunteer Ambulance's proposed RICO claim against the PBMs has expired. Medford Volunteer Ambulance filed its original complaint on February 5, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Medford Volunteer Ambulance v. McKesson Corporation et al.*, Case No. 1:20-op-45048-DAP, ECF No. 1. It is therefore indisputable that Medford Volunteer Ambulance knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Medford Volunteer Ambulance's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Medford Volunteer Ambulance's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Medford Volunteer Ambulance, a ambulance district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Medford Volunteer Ambulance's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1605.** *Islip Terrace Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45049-DAP: Plaintiff Islip Terrace Fire District, New York

Islip Terrace Fire District's untimely motion for leave to amend should be denied for several reasons. Islip Terrace Fire District failed to provide notice of its proposed amendments through a proposed complaint. Islip Terrace Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Islip Terrace Fire District's motion should be denied due to futility, as Islip Terrace Fire District does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Islip Terrace Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Islip Terrace Fire District filed its original complaint directly into the MDL on February 5, 2020. *See Islip Terrace Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45049-DAP, ECF No. 1. Islip Terrace Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Islip Terrace Fire District elected not to do so. Islip Terrace Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Islip Terrace Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Islip Terrace Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Islip Terrace Fire District's health plans,

carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Islip Terrace Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but Islip Terrace Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, Islip Terrace Fire District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Islip Terrace Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Islip Terrace Fire District's potential claims against them. Islip Terrace Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Islip Terrace Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Islip Terrace Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Islip Terrace Fire District's proposed RICO claim against the PBMs has expired. Islip Terrace Fire District filed its original complaint on February 5, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Islip Terrace Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45049-DAP, ECF No. 1. Even assuming *arguendo* that Islip Terrace Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 5, 2024. Islip Terrace Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Islip Terrace Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Islip Terrace Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Islip Terrace Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1606. *North Patchogue Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45050-DAP: Plaintiff North Patchogue Fire District, New York

North Patchogue Fire District's untimely motion for leave to amend should be denied for several reasons. North Patchogue Fire District failed to provide notice of its proposed amendments through a proposed complaint. North Patchogue Fire District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because

its untimely motion would unduly prejudice the PBMs. Moreover, North Patchogue Fire District's motion should be denied due to futility, as North Patchogue Fire District does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** North Patchogue Fire District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, North Patchogue Fire District filed its original complaint directly into the MDL on February 5, 2020. *See North Patchogue Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45050-DAP, ECF No. 1. North Patchogue Fire District could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, North Patchogue Fire District elected not to do so. North Patchogue Fire District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. North Patchogue Fire District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, North Patchogue Fire District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to North Patchogue Fire District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified North Patchogue Fire District of this deficiency on September 16, 2024 (*see* Exhibit B), but North Patchogue Fire District refused to amend or supplement its Fact Sheet. Under this Court's orders, North Patchogue Fire District's case is

therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. North Patchogue Fire District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against North Patchogue Fire District's potential claims against them. North Patchogue Fire District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But North Patchogue Fire District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** North Patchogue Fire District, a fire district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for North Patchogue Fire District's proposed RICO claim against the PBMs has expired. North Patchogue Fire District filed its original complaint on February 5, 2020, alleging the same type of injuries for which it now

seeks to recover under RICO against the PBMs. *See North Patchogue Fire District v. McKesson Corporation et al.*, Case No. 1:20-op-45050-DAP, ECF No. 1. Even assuming *arguendo* that North Patchogue Fire District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 5, 2024. North Patchogue Fire District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. North Patchogue Fire District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** North Patchogue Fire District, a fire district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. North Patchogue Fire District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1607. *City of Calais, Maine v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45051-DAP: Plaintiff Calais City, Maine

Calais City's untimely motion for leave to amend should be denied for several reasons. Calais City failed to provide notice of its proposed amendments through a proposed complaint. Calais City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Calais City's motion should be denied due to futility, as Calais City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim

is barred by state law in Maine, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calais City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calais City filed its original complaint directly into the MDL on February 6, 2020. *See City of Calais, Maine v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45051-DAP, ECF No. 1. Calais City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Calais City elected not to do so. Calais City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Calais City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Calais City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. Calais City—through its counsel—was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Calais City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006

(affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Calais City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Calais City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Calais City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.08% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Calais City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Calais City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Calais City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Calais City of this deficiency on September 16, 2024 (*see* Exhibit B), but Calais City refused to amend or supplement its Fact Sheet. Under this Court's orders, Calais City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Calais City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Calais City's potential claims against them. Calais City's failure to diligently prosecute its case, coupled

with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calais City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Calais City, a municipality in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Calais City is a plaintiff in Maine. Calais City's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for Calais City's proposed RICO claim against the PBMs has expired. Calais City filed its original complaint on February 6, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Calais, Maine v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45051-DAP, ECF No. 1. It is therefore indisputable that Calais City knew of its RICO injury, at the very latest,

the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Calais City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Calais City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Calais City, a municipality in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1608. *County of Angelina v. Allergan PLC, et al.*, Case No. 1:20-op-45053-DAP: Plaintiff Angelina County, Texas

Angelina County's untimely motion for leave to amend should be denied for several reasons. Angelina County failed to provide notice of its proposed amendments through a proposed complaint. Angelina County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Angelina County's motion should be denied due to futility, as Angelina County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Angelina County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Angelina County amended its complaint on August 23, 2019, before its transfer to the MDL on February 7, 2020. *See County of Angelina v. Allergan PLC, et al.*, Case No. 1:20-op-45053-DAP,

ECF No. 1-5. Unlike many other plaintiffs, Angelina County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Angelina County's deadline to amend was in 2020. Angelina County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Angelina County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Angelina County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Angelina County). That insignificant dispensing volume is much too low to support a finding of good cause for Angelina County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Angelina County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Angelina County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Angelina County filed its original complaint on November 14, 2018. *See County of Angelina v. Allergan PLC, et al.*, Case No. 1:20-op-45053-

DAP, ECF No. 1-4. Despite filing its case years ago, Angelina County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Angelina County's case would force the parties and the Court to waste time and resources ascertaining the extent of Angelina County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Angelina County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Angelina County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Angelina County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Angelina County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Angelina County of this deficiency on September 16, 2024 (*see* Exhibit B), but Angelina County refused to amend or supplement its Fact Sheet. Under this Court's orders, Angelina County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Angelina County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Angelina County's potential claims against them. Angelina County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Angelina County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Angelina County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Angelina County's proposed RICO claim against the PBMs has expired. Angelina County filed its original complaint on November 14, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Angelina v. Allergan PLC, et al.*, Case No. 1:20-op-45053-DAP, ECF No. 1-4. Even assuming *arguendo* that Angelina County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on November 14, 2022. Angelina County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Angelina County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Angelina County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1609.** *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Anaheim City, California

Anaheim City's untimely motion for leave to amend should be denied for several reasons. Anaheim City failed to provide notice of its proposed amendments through a proposed complaint. Anaheim City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Anaheim City's motion should be denied due to futility, as Anaheim City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Anaheim City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Anaheim City first amended its complaint on October 4, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-4. Unlike many other plaintiffs, Anaheim City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Anaheim City's deadline to amend was in 2020. Anaheim City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Anaheim City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Anaheim City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Anaheim City). That insignificant dispensing volume is much too low to support a finding of good cause for Anaheim City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Anaheim City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Anaheim City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Anaheim City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Anaheim City of the PBM services Express Scripts provides and Anaheim City began receiving those services on July 2, 2007. *See id.* Inasmuch as Anaheim City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Anaheim City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Anaheim City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972

F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Anaheim City filed its original complaint on October 1, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9. Despite filing its case years ago, Anaheim City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Anaheim City's case would force the parties and the Court to waste time and resources ascertaining the extent of Anaheim City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Anaheim City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Anaheim City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Anaheim City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Anaheim City's proposed RICO claim against the PBMs has expired. Anaheim City filed its original complaint on October 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-

DAP, ECF No. 1-9. Even assuming *arguendo* that Anaheim City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 1, 2023. Anaheim City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Anaheim City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Anaheim City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1610. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Encinitas City, California

Encinitas City's untimely motion for leave to amend should be denied for several reasons. Encinitas City failed to provide notice of its proposed amendments through a proposed complaint. Encinitas City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Encinitas City's motion should be denied due to futility, as Encinitas City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Encinitas City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Encinitas City first amended its complaint on October 4, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-4. Unlike many other

plaintiffs, Encinitas City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Encinitas City's deadline to amend was in 2020. Encinitas City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Encinitas City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Encinitas City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Encinitas City). That insignificant dispensing volume is much too low to support a finding of good cause for Encinitas City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Encinitas City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.43% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Encinitas City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Encinitas City filed its original complaint on October 1, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-

45055-DAP, ECF No. 1-9. Despite filing its case years ago, Encinitas City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Encinitas City's case would force the parties and the Court to waste time and resources ascertaining the extent of Encinitas City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Encinitas City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Encinitas City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Encinitas City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Encinitas City's proposed RICO claim against the PBMs has expired. Encinitas City filed its original complaint on October 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9. Even assuming *arguendo* that Encinitas City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 1, 2023. Encinitas City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of

[the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Encinitas City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Encinitas City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1611. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff La Habra City, California

La Habra City's untimely motion for leave to amend should be denied for several reasons. La Habra City failed to provide notice of its proposed amendments through a proposed complaint. La Habra City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, La Habra City's motion should be denied due to futility, as La Habra City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** La Habra City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, La Habra City first amended its complaint on October 4, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-4. Unlike many other plaintiffs, La Habra City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. La Habra City's deadline to amend was in 2020. La Habra City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. La Habra City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at

879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to La Habra City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for La Habra City). That insignificant dispensing volume is much too low to support a finding of good cause for La Habra City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to La Habra City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for La Habra City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** La Habra City filed its original complaint on October 1, 2019, but waited until February 26, 2020 to implement a litigation hold. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 26, 2020). La Habra City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because

the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** La Habra City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for La Habra City's proposed RICO claim against the PBMs has expired. La Habra City filed its original complaint on October 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9. Even assuming *arguendo* that La Habra City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 1, 2023. La Habra City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. La Habra City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** La Habra City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1612.** *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff La Mesa City, California

La Mesa City's untimely motion for leave to amend should be denied for several reasons. La Mesa City failed to provide notice of its proposed amendments through a proposed complaint. La Mesa City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, La Mesa City's motion should be denied due to futility, as La Mesa City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** La Mesa City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, La Mesa City first amended its complaint on October 4, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-4. Unlike many other plaintiffs, La Mesa City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. La Mesa City's deadline to amend was in 2020. La Mesa City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. La Mesa City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to La Mesa City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl.

(0.12% market share for La Mesa City). That insignificant dispensing volume is much too low to support a finding of good cause for La Mesa City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to La Mesa City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for La Mesa City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** La Mesa City filed its original complaint on October 1, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9. Despite filing its case years ago, La Mesa City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating La Mesa City's case would force the parties and the Court to waste time and resources ascertaining the extent of La Mesa City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by La Mesa City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and La Mesa City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** La Mesa City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for La Mesa City's proposed RICO claim against the PBMs has expired. La Mesa City filed its original complaint on October 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9. Even assuming *arguendo* that La Mesa City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 1, 2023. La Mesa City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. La Mesa City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** La Mesa City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1613. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Oxnard City, California

Oxnard City's untimely motion for leave to amend should be denied for several reasons. Oxnard City failed to provide notice of its proposed amendments through a proposed complaint. Oxnard City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oxnard City's motion should be denied due to futility, as Oxnard City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oxnard City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oxnard City first amended its complaint on October 4, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-4. Unlike many other plaintiffs, Oxnard City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Oxnard City's deadline to amend was in 2020. Oxnard City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Oxnard City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oxnard City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Oxnard City). That insignificant dispensing volume is much too low to support a finding of good cause for Oxnard City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Oxnard City filed its original complaint on October 1, 2019, but waited until February 26, 2020 to implement a litigation hold. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 26, 2020). Oxnard City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Oxnard City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oxnard City's proposed RICO claim against the PBMs has expired. Oxnard City filed its original complaint on October 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9. Even assuming *arguendo* that Oxnard City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 1, 2023. Oxnard City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oxnard City's

request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Oxnard City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1614. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Placentia City, California

Placentia City's untimely motion for leave to amend should be denied for several reasons. Placentia City failed to provide notice of its proposed amendments through a proposed complaint. Placentia City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Placentia City's motion should be denied due to futility, as Placentia City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Placentia City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Placentia City first amended its complaint on October 4, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-4. Unlike many other plaintiffs, Placentia City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Placentia City's deadline to amend was in 2020. Placentia City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Placentia City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Placentia City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Placentia City). That insignificant dispensing volume is much too low to support a finding of good cause for Placentia City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Placentia City filed its original complaint on October 1, 2019, but waited until February 26, 2020 to implement a litigation hold. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 26, 2020). Placentia City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Placentia City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Placentia City's proposed RICO claim against the PBMs has expired. Placentia City filed its original complaint on October 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9. Even assuming *arguendo* that Placentia City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 1, 2023. Placentia City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Placentia City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Placentia City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1615. *County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP: Plaintiff Santa Ana City, California

Santa Ana City's untimely motion for leave to amend should be denied for several reasons. Santa Ana City failed to provide notice of its proposed amendments through a proposed complaint. Santa Ana City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Santa Ana City's motion should be denied due to futility, as Santa Ana City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Santa Ana City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Santa Ana City first amended its complaint on October 4, 2019. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-4. Unlike many other plaintiffs, Santa Ana City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Santa Ana City's deadline to amend was in 2020. Santa Ana City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Santa Ana City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Santa Ana City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Santa Ana City). That insignificant dispensing volume is much too low to support a finding of good cause for Santa Ana City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Santa Ana City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Santa Ana City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Santa Ana City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Santa Ana City of the PBM services Express Scripts provides and Santa Ana City began receiving those services on July 10, 2007. *See id.* Inasmuch as Santa Ana City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Santa Ana City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Santa Ana City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to State a Claim.** Santa Ana City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Santa Ana City's proposed RICO claim against the PBMs has expired. Santa Ana City filed its original complaint on October 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Alameda et al. v. Richard S. Sackler et al.*, Case No. 1:20-op-45055-DAP, ECF No. 1-9. Even assuming *arguendo* that Santa Ana City first learned of its injury on the

day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 1, 2023. Santa Ana City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Santa Ana City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Santa Ana City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1616. *The Fiscal Court of Adair County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45059-DAP: Plaintiff Adair County, Kentucky

Adair County's untimely motion for leave to amend should be denied for several reasons. Adair County failed to provide notice of its proposed amendments through a proposed complaint. Adair County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Adair County's motion should be denied due to futility, as Adair County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Adair County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Adair County amended its complaint on May 8, 2020, after transfer to the MDL on February 10, 2020. *See The Fiscal Court of Adair County v. AmerisourceBergen Drug Corporation et al.*, Case

No. 1:20-op-45059-DAP, ECF No. 5. Unlike many other plaintiffs, Adair County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Adair County's deadline to amend was in 2020. Adair County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Adair County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Adair County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Adair County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Adair County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Adair County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Adair County). That insignificant dispensing volume is much too low to support a finding of good cause for Adair County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Adair County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Adair County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Adair County filed its original complaint on January 15, 2020. *See The Fiscal Court of Adair County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45059-DAP, ECF No. 1. Despite filing its case years ago, Adair County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Adair County's case would force the parties and the Court to waste time and resources ascertaining the extent of Adair County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Adair County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Adair County therefore lacks good cause

for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Adair County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Adair County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Adair County of this deficiency on September 16, 2024 (*see* Exhibit B), but Adair County refused to amend or supplement its Fact Sheet. Under this Court's orders, Adair County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Adair County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Adair County's potential claims against them. Adair County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Adair County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Adair County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Adair County's proposed RICO claim against the PBMs has expired. Adair County filed its original complaint on January 15, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The Fiscal Court of Adair County v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45059-DAP, ECF No. 1. It is therefore indisputable that Adair County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, over four years before seeking leave to amend. Adair County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Adair County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Adair County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1617. *City of Henderson v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45062-DAP: Plaintiff Henderson City, Kentucky

Henderson City's untimely motion for leave to amend should be denied for several reasons. Henderson City failed to provide notice of its proposed amendments through a proposed complaint. Henderson City also lacks good cause under Rule 15 or Rule 16 due to a lack of

diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Henderson City's motion should be denied due to futility, as Henderson City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Henderson City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Henderson City amended its complaint on October 4, 2019, before transfer to the MDL on February 10, 2020. *See City of Henderson v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45062-DAP, ECF No. 5. Unlike many other plaintiffs, Henderson City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Henderson City's deadline to amend was in 2020. Henderson City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Henderson City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Henderson City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Henderson City). That insignificant dispensing volume is much too low to support a finding of good cause for Henderson City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Henderson City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Henderson City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Henderson City filed its original complaint on September 13, 2019. *See City of Henderson v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45062-DAP, ECF Nos. 1-2–1-9. Despite filing its case years ago, Henderson City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Henderson City's case would force the parties and the Court to waste time and resources ascertaining the extent of Henderson City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Henderson City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Henderson City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Henderson City's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Henderson City, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Henderson City's proposed RICO claim against the PBMs has expired. Henderson City filed its original complaint on September 13, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Henderson v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45062-DAP, ECF No. 1-2-1-9. Even assuming *arguendo* that Henderson City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 13, 2023. Henderson City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Henderson City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Henderson City, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1618.** *Hardin County Fiscal Court et al. v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45063-DAP: Plaintiff Ohio County, Kentucky

Ohio County's untimely motion for leave to amend should be denied for several reasons. Ohio County failed to provide notice of its proposed amendments through a proposed complaint. Ohio County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ohio County's motion should be denied due to futility, as Ohio County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ohio County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ohio County amended its complaint on October 4, 2019, before transfer to the MDL on February 11, 2020. *See Hardin County Fiscal Court et al. v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45063-DAP, ECF No. 6. Unlike many other plaintiffs, Ohio County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Ohio County's deadline to amend was in 2020. Ohio County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Ohio County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Ohio County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.01% market share for Ohio County). That insignificant dispensing volume is much too low to support a finding of good cause for Ohio County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ohio County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ohio County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ohio County filed its original complaint on September 13, 2019. *See Hardin County Fiscal Court et al. v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45063-DAP, ECF No. 1-1. Despite filing its case years ago, Ohio County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Ohio County's case would force the parties and the Court to waste time and resources ascertaining the extent of Ohio County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ohio County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ohio County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Ohio County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Ohio County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Ohio County of this deficiency on September 16, 2024 (*see* Exhibit B), but Ohio County refused to amend or supplement its Fact Sheet. Under this Court's orders, Ohio County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ohio County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Ohio County's potential claims against them. Ohio County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ohio County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ohio County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ohio County's proposed RICO claim against the PBMs has expired. Ohio County filed its original complaint on September 13, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Hardin County Fiscal Court et al. v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45063-DAP, ECF No. 1-1. Even assuming *arguendo* that Ohio County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 13, 2023. Ohio County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ohio County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ohio County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1619.  *Botetourt County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45064-DAP: Plaintiff Botetourt County, Virginia

Botetourt County's untimely motion for leave to amend should be denied for several reasons. Botetourt County failed to provide notice of its proposed amendments through a proposed complaint. Botetourt County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Botetourt County's motion should be denied due to futility, as Botetourt County does not assert any

allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Botetourt County previously alleged claims against some of the PBMs in its original complaint on September 20, 2019. *See Botetourt County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45064-DAP, ECF No. 1-3 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Botetourt County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Botetourt County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Botetourt County's complaint, Botetourt County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2019. *See* Section II.A, above. Botetourt County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Botetourt County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Botetourt County). That insignificant dispensing volume is much too low to support a finding of good cause for Botetourt County to add dispensing claims

against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Botetourt County violated its basic duty to implement a timely litigation hold. Botetourt County filed its original complaint on September 20, 2019, but waited until August 5, 2024 to implement a litigation hold—nearly five years later. *See Botetourt County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45064-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 5, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Botetourt County's case would force the parties and the Court to waste time and resources ascertaining the extent of Botetourt County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Botetourt County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Botetourt County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Botetourt County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Botetourt County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Botetourt County of this deficiency on September 16, 2024 (*see* Exhibit B), but Botetourt County refused to amend or supplement its Fact Sheet. Under this Court's orders, Botetourt County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Botetourt

County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Botetourt County's potential claims against them. Botetourt County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Botetourt County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Botetourt County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Botetourt County's proposed RICO claim against the PBMs has expired. Botetourt County filed its original complaint on September 20, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Botetourt County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45064-DAP, ECF No. 1-3. Even assuming *arguendo* that Botetourt County first learned

of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on September 20, 2023. Botetourt County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Botetourt County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Botetourt County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1620. *Hicksville Water District v. McKesson Corporation et al.*, Case No. 1:20-op-45072-DAP: Plaintiff Hicksville Water District, New York

Hicksville Water District's untimely motion for leave to amend should be denied for several reasons. Hicksville Water District failed to provide notice of its proposed amendments through a proposed complaint. Hicksville Water District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hicksville Water District's motion should be denied due to futility, as Hicksville Water District does not assert any allegations tying the PBMs to its alleged harm and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Hicksville Water District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hicksville Water District filed its original complaint directly into the MDL on February 10, 2020. *See Hicksville Water District v. McKesson Corporation et al.*, Case No. 1:20-op-45072-DAP, ECF No. 1. Hicksville Water District could have amended its complaint, without leave, to

add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Hicksville Water District elected not to do so. Hicksville Water District waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hicksville Water District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hicksville Water District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hicksville Water District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hicksville Water District of this deficiency on September 16, 2024 (*see* Exhibit B), but Hicksville Water District refused to amend or supplement its Fact Sheet. Under this Court's orders, Hicksville Water District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hicksville Water District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hicksville Water District's potential claims against them. Hicksville Water District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hicksville Water District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hicksville Water District, a water district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hicksville Water District's proposed RICO claim against the PBMs has expired. Hicksville Water District filed its original complaint on February 10, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Hicksville Water District v. McKesson Corporation et al.*, Case No. 1:20-op-45072-DAP, ECF No. 1. Even assuming *arguendo* that Hicksville Water District first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 10, 2024. Hicksville Water District's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hicksville Water District's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hicksville Water District, a water district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Hicksville Water District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1621. *Williams v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45073-DAP: Plaintiff Sonji B. Williams, administratrix of The Estate of Tyler Michael Wain Williams, North Carolina

The untimely motion for leave to amend of Sonji B. Williams, administratrix of The Estate of Tyler Michael Wain Williams, should be denied for several reasons. Williams failed to provide notice of her proposed amendments through a proposed complaint. Williams also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, the motion should be denied due to futility, as Williams does not assert any allegations tying the PBMs to her alleged harm, her RICO claim is barred by the statute of limitations, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Williams was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Williams filed her original complaint on December 23, 2019 and the case was transferred to the MDL on February 11, 2020. *See Williams v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45073-DAP, ECF No. 23. Williams could have amended her complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, she elected not to do so. Instead, Williams waited four years after her deadline to amend to seek leave to assert claims against the PBMs. Her lack of diligence in pursuing her claims

negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Williams filed her original complaint on December 23, 2019. *See Williams v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45073-DAP, ECF No. 1-1. Despite filing her case years ago, Williams *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating this case would force the parties and the Court to waste time and resources ascertaining the extent of the document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Williams disregard of her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend; therefore, Williams lacks good cause for leave to amend her complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Williams' delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Williams, an individual in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above).

**RICO Statute of Limitations.** The statute of limitations for Williams' RICO claim has expired. Williams filed her original complaint on December 23, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Williams v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45073-DAP, ECF No. 1-1. It is therefore indisputable that Williams knew of her RICO injury, at the very latest, the day she filed a complaint asserting a RICO claim, four and a half years before seeking leave to amend. Her RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Williams' request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Williams, an individual in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1622. *The Fiscal Court of Edmonson County v. Endo Health Solutions Inc. et al.*, **Case No. 1:20-op-45084-DAP: Plaintiff Edmonson County, Kentucky**

Edmonson County's untimely motion for leave to amend should be denied for several reasons. Edmonson County failed to provide notice of its proposed amendments through a proposed complaint. Edmonson County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would

unduly prejudice the PBMs. Moreover, Edmonson County's motion should be denied due to futility, as Edmonson County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Edmonson County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Edmonson County filed its original complaint on February 5, 2020 and the case was transferred to the MDL on February 27, 2020. *See The Fiscal Court of Edmonson County v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45084-DAP, ECF No. 5. Edmonson County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Edmonson County elected not to do so. Instead, Edmonson County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Edmonson County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Edmonson County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Edmonson County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Edmonson County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Edmonson County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Edmonson County filed its original complaint on February 5, 2020. *See The Fiscal Court of Edmonson County v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45084-DAP, ECF No. 1. Despite filing its case years ago, Edmonson County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Edmonson County's case would force the parties and the Court to waste time and resources ascertaining the extent of Edmonson County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Edmonson County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Edmonson County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Edmonson County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Edmonson County, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Edmonson County's proposed RICO claim against the PBMs has expired. Edmonson County filed its original complaint on February 5, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The Fiscal Court of Edmonson County v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45084-DAP, ECF No. 1. It is therefore indisputable that Edmonson County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, over four years before seeking leave to amend. Edmonson County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Edmonson County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Edmonson County, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1623.** *Wyoming, Pennsylvania v. Cephalon, Inc. et al.*, Case No. 1:20-op-45087-DAP: Plaintiff Wyoming Borough, Pennsylvania

Wyoming Borough's untimely motion for leave to amend should be denied for several reasons. Wyoming Borough failed to provide notice of its proposed amendments through a proposed complaint. Wyoming Borough also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wyoming Borough's motion should be denied due to futility, as Wyoming Borough does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wyoming Borough was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wyoming Borough filed its original complaint on February 12, 2020 and the case was transferred to the MDL on March 4, 2020. *See Wyoming, Pennsylvania v. Cephalon, Inc. et al.*, Case No. 1:20-op-45087-DAP, ECF No. 4. Wyoming Borough could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Wyoming Borough elected not to do so. Instead, Wyoming Borough waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Wyoming Borough's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Wyoming Borough's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Wyoming Borough cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Wyoming Borough filed its original complaint on February 12, 2020. *See Wyoming, Pennsylvania v. Cephalon, Inc. et al.*, Case No. 1:20-op-45087-DAP, ECF No. 1. Despite filing its case years ago, Wyoming Borough *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wyoming Borough's case would force the parties and the Court to waste time and resources ascertaining the extent of Wyoming Borough's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wyoming Borough's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wyoming Borough therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Wyoming Borough failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Wyoming Borough's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time

period. The PBMs notified Wyoming Borough of this deficiency on September 16, 2024 (*see* Exhibit B), but Wyoming Borough refused to amend or supplement its Fact Sheet. Under this Court's orders, Wyoming Borough's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Wyoming Borough's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Wyoming Borough's potential claims against them. Wyoming Borough's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wyoming Borough's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Wyoming Borough, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wyoming Borough's proposed RICO claim against the PBMs has expired. Wyoming Borough filed its original complaint on February 12, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wyoming, Pennsylvania v. Cephalon, Inc. et al.*, Case No. 1:20-op-45087-DAP, ECF No. 1. It is therefore indisputable that Wyoming Borough knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, over four years before seeking leave to amend. Wyoming Borough's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wyoming Borough's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Wyoming Borough, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1624. *City of Leeds, Alabama v. Purdue Pharma L P et al.*, Case No. 1:20-op-45088-DAP: Plaintiff Leeds City, Alabama

Leeds City's untimely motion for leave to amend should be denied for several reasons. Leeds City failed to provide notice of its proposed amendments through a proposed complaint. Leeds City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Leeds City's motion should be denied due to futility, as Leeds City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is

barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leeds City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leeds City filed its original complaint on February 14, 2020 and the case was transferred to the MDL on March 4, 2020. *See City of Leeds, Alabama v. Purdue Pharma L P et al.*, Case No. 1:20-op-45088-DAP, ECF No. 8. Leeds City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Leeds City elected not to do so. Instead, Leeds City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Leeds City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Leeds City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Leeds City). That insignificant dispensing volume is much too low to support a finding of good cause for Leeds City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Leeds City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Leeds City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Leeds City filed its original complaint on February 14, 2020. *See City of Leeds, Alabama v. Purdue Pharma L P et al.*, Case No. 1:20-op-45088-DAP, ECF No. 1. Despite filing its case years ago, Leeds City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Leeds City's case would force the parties and the Court to waste time and resources ascertaining the extent of Leeds City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leeds City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Leeds City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Leeds City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Leeds City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Leeds City of this deficiency on September 16, 2024 (*see* Exhibit B), but Leeds City refused to amend or supplement its Fact Sheet. Under this Court's orders, Leeds City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1

(emphasis in original); *see* Section III.A.5, above. Leeds City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Leeds City's potential claims against them. Leeds City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leeds City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leeds City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leeds City's proposed RICO claim against the PBMs has expired. Leeds City filed its original complaint on February 14, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Leeds, Alabama v. Purdue Pharma L P et al.*, Case No. 1:20-op-45088-DAP, ECF No. 1. It is therefore indisputable that Leeds City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Leeds City's RICO

claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leeds City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Leeds City's public-nuisance claim against the PBMs is therefore time-barred because Leeds City sought leave to amend its complaint on July 29, 2024—over four years after filing its original complaint on February 14, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Leeds City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1625. *Fairfield, City of, Alabama v. Purdue Pharma LP et al.*, Case No. 1:20-op-45089-DAP: Plaintiff Fairfield City, Alabama

Fairfield City's untimely motion for leave to amend should be denied for several reasons. Fairfield City failed to provide notice of its proposed amendments through a proposed complaint. Fairfield City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fairfield City's motion should be

denied due to futility, as Fairfield City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fairfield City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fairfield City filed its original complaint on February 14, 2020 and the case was transferred to the MDL on March 4, 2020. *See Fairfield, City of, Alabama v. Purdue Pharma LP et al.*, Case No. 1:20-op-45089-DAP, ECF No. 7. Fairfield City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Fairfield City elected not to do so. Instead, Fairfield City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Fairfield City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fairfield City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.23% market share for Fairfield City). That insignificant dispensing volume is much too low to support a finding of good cause for Fairfield City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fairfield City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fairfield City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Fairfield City filed its original complaint on February 14, 2020. *See Fairfield, City of, Alabama v. Purdue Pharma LP et al.*, Case No. 1:20-op-45089-DAP, ECF No. 1. Despite filing its case years ago, Fairfield City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Fairfield City's case would force the parties and the Court to waste time and resources ascertaining the extent of Fairfield City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fairfield City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fairfield City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Fairfield City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Fairfield City's health plans, carriers, third party

administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Fairfield City of this deficiency on September 16, 2024 (*see* Exhibit B), but Fairfield City refused to amend or supplement its Fact Sheet. Under this Court's orders, Fairfield City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Fairfield City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Fairfield City's potential claims against them. Fairfield City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fairfield City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fairfield City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fairfield City's proposed RICO claim against the PBMs has expired. Fairfield City filed its original complaint on February

14, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Fairfield, City of, Alabama v. Purdue Pharma LP et al.*, Case No. 1:20-op-45089-DAP, ECF No. 1. It is therefore indisputable that Fairfield City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, over four years before seeking leave to amend. Fairfield City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fairfield City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Fairfield City's public-nuisance claim against the PBMs is therefore time-barred because Fairfield City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on February 14, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Fairfield City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1626.** ***Sugar Notch Borough, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45090-DAP: Plaintiff Sugar Notch Borough, Pennsylvania**

Sugar Notch Borough's untimely motion for leave to amend should be denied for several reasons. Sugar Notch Borough failed to provide notice of its proposed amendments through a proposed complaint. Sugar Notch Borough also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sugar Notch Borough's motion should be denied due to futility, as Sugar Notch Borough does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sugar Notch Borough was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sugar Notch Borough amended its complaint on June 3, 2020, after transfer to the MDL on March 4, 2020. *See Sugar Notch Borough, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45090-DAP, ECF No. 5. Unlike many other plaintiffs, Sugar Notch Borough declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sugar Notch Borough's deadline to amend was in 2020. Sugar Notch Borough waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Sugar Notch Borough's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sugar Notch Borough cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sugar Notch Borough, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sugar Notch Borough fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Sugar Notch Borough's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Sugar Notch Borough cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Sugar Notch Borough's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.02% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sugar Notch Borough to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sugar Notch Borough failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sugar Notch Borough's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sugar Notch Borough of this deficiency on September 16, 2024 (*see* Exhibit B), but Sugar Notch Borough refused to amend or supplement its Fact Sheet. Under this Court's orders, Sugar Notch Borough's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sugar Notch Borough's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sugar Notch Borough's potential claims against them. Sugar Notch Borough's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sugar Notch Borough's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sugar Notch Borough, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sugar Notch Borough's proposed RICO claim against the PBMs has expired. Sugar Notch Borough filed its original complaint on February 17, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Sugar Notch Borough, Pennsylvania v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45090-DAP, ECF No. 1. It is therefore indisputable that Sugar Notch Borough knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Sugar Notch Borough's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sugar Notch Borough's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sugar Notch Borough, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1627.** *Pell City, Alabama, City of v. Purdue Pharma LP et al.*, Case No. 1:20-op-45091-DAP: Plaintiff Pell City, Alabama

Pell City's untimely motion for leave to amend should be denied for several reasons. Pell City failed to provide notice of its proposed amendments through a proposed complaint. Pell City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pell City's motion should be denied due to futility, as Pell City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pell City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pell City filed its original complaint on February 14, 2020 and the case was transferred to the MDL on March 4, 2020. *See Pell City, Alabama, City of v. Purdue Pharma LP et al.*, Case No. 1:20-op-45091-DAP, ECF No. 11. Pell City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Pell City elected not to do so. Instead, Pell City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Pell City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Pell City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Pell City). That insignificant dispensing volume is much too low to support a finding of good cause for Pell City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pell City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pell City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pell City filed its original complaint on February 14, 2020. *See Pell City, Alabama, City of v. Purdue Pharma LP et al.*, Case No. 1:20-op-45091-DAP, ECF No. 1. Despite filing its case years ago, Pell City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Pell City's case would force the parties and the Court to waste time and resources ascertaining the extent of Pell City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pell City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pell City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pell City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pell City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pell City's proposed RICO claim against the PBMs has expired. Pell City filed its original complaint on February 14, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Pell City, Alabama, City of v. Purdue Pharma LP et al.*, Case No. 1:20-op-45091-DAP, ECF No. 1. It is therefore indisputable that Pell City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Pell City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pell City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Pell City's public-nuisance claim against the PBMs is therefore

time-barred because Pell City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on February 14, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Pell City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1628. *Stevens v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45092-DAP: Plaintiff Susan K. Stevens, administratrix of The Estate of Toria Captri Stevens, North Carolina

Susan K. Stevens, administratrix of The Estate of Toria Captri Stevens's untimely motion for leave to amend should be denied for several reasons. Stevens failed to provide notice of her proposed amendments through a proposed complaint. Stevens also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Stevens's motion should be denied due to futility, as Stevens does not assert any allegations tying the PBMs to her alleged harm, her RICO claim is barred by the statute of limitations, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Stevens was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Stevens filed her original complaint on January 17, 2020 and the case was transferred to the MDL on March 4, 2020. *See Stevens v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45092-DAP, ECF No. 17. Stevens could have amended her complaint, without leave, to add claims

against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Stevens elected not to do so. Instead, Stevens waited four years after her deadline to amend to seek leave to assert claims against the PBMs. Stevens's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Stevens filed her original complaint on January 17, 2020. *See Stevens v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45092-DAP, ECF No. 1-1. Despite filing her case years ago, Stevens *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Stevens's case would force the parties and the Court to waste time and resources ascertaining the extent of Stevens's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Stevens's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Stevens therefore lacks good cause for leave to amend her complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stevens's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Stevens, an individual in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Stevens's proposed RICO claim against the PBMs has expired. Stevens filed its original complaint on January 17, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Stevens v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45092-DAP, ECF No. 1-1. It is therefore indisputable that Stevens knew of her RICO injury, at the very latest, the day she filed a complaint asserting a RICO claim, four years before seeking leave to amend. Stevens's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Stevens's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Stevens, an individual in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1629.** *City of Level Plains, Alabama v. Purdue Pharma L.P. et al.*, **Case No. 1:20-op-45100-DAP: Plaintiff Level Plains Town, Alabama**

Level Plains Town's untimely motion for leave to amend should be denied for several reasons. Level Plains Town failed to provide notice of its proposed amendments through a proposed complaint. Level Plains Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Level Plains Town's motion should be denied due to futility, as Level Plains Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Level Plains Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Level Plains Town filed its original complaint on February 25, 2020 and the case was transferred to the MDL on March 12, 2020. *See City of Level Plains, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45100-DAP, ECF No. 18. Level Plains Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Level Plains Town elected not to do so. Instead, Level Plains Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Level Plains Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Level Plains Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Level Plains Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Level Plains Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.11% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Level Plains Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Level Plains Town filed its original complaint on February 25, 2020. *See City of Level Plains, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45100-DAP, ECF No. 1. Despite filing its case years ago, Level Plains Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Level Plains Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Level Plains Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Level Plains Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Level Plains Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying

leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Level Plains Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Level Plains Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Level Plains Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Level Plains Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Level Plains Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Level Plains Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Level Plains Town's potential claims against them. Level Plains Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Level Plains Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Level Plains Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Level Plains Town's proposed RICO claim against the PBMs has expired. Level Plains Town filed its original complaint on February 25, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Level Plains, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45100-DAP, ECF No. 1. It is therefore indisputable that Level Plains Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Level Plains Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Level Plains Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Level Plains Town's public-nuisance claim against the PBMs is therefore time-barred because Level Plains Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on February 25, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Level Plains Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1630. *Kickapoo Traditional Tribe of Texas v. McKesson Corporation et al.*, Case No. 1:20-op-45104-DAP: Plaintiff Kickapoo Traditional Tribe of Texas, Texas

Kickapoo Traditional Tribe of Texas's untimely motion for leave to amend should be denied for several reasons. Kickapoo Traditional Tribe of Texas failed to provide notice of its proposed amendments through a proposed complaint. Kickapoo Traditional Tribe of Texas also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kickapoo Traditional Tribe of Texas's motion should be denied due to futility, as Kickapoo Traditional Tribe of Texas does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kickapoo Traditional Tribe of Texas was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kickapoo Traditional Tribe of Texas filed its original complaint directly into the MDL on March 13, 2020. *See Kickapoo Traditional Tribe of Texas v. McKesson Corporation et al.*, Case No. 1:20-op-45104-DAP, ECF No. 1. Kickapoo Traditional Tribe of Texas could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Kickapoo Traditional Tribe of Texas elected not to do so. Kickapoo Traditional Tribe of Texas waited four years after its deadline to

amend to seek leave to assert claims against the PBMs. Kickapoo Traditional Tribe of Texas's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kickapoo Traditional Tribe of Texas's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kickapoo Traditional Tribe of Texas to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Kickapoo Traditional Tribe of Texas filed its original complaint on March 13, 2020. *See Kickapoo Traditional Tribe of Texas v. McKesson Corporation et al.*, Case No. 1:20-op-45104-DAP, ECF No. 1. Despite filing its case years ago, Kickapoo Traditional Tribe of Texas *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Kickapoo Traditional Tribe of Texas's case would force the parties and the Court to waste time and resources ascertaining the extent of Kickapoo Traditional Tribe of Texas's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kickapoo Traditional Tribe of Texas's disregard for its most basic discovery

obligations as a litigant, compounded by the delay in seeking leave to amend, and Kickapoo Traditional Tribe of Texas therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kickapoo Traditional Tribe of Texas's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kickapoo Traditional Tribe of Texas, a native tribe in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kickapoo Traditional Tribe of Texas's proposed RICO claim against the PBMs has expired. Kickapoo Traditional Tribe of Texas filed its original complaint on March 13, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Kickapoo Traditional Tribe of Texas v. McKesson Corporation et al.*, Case No. 1:20-op-45104-DAP, ECF No. 1. It is therefore indisputable that Kickapoo Traditional Tribe of Texas knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Kickapoo Traditional Tribe of Texas's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

5932

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kickapoo Traditional Tribe of Texas's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kickapoo Traditional Tribe of Texas, a native tribe in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1631. *Geneva County, Alabama v. Purdue Pharma L.P.*, Case No. 1:20-op-45105-DAP: Plaintiff Geneva County, Alabama

Geneva County's untimely motion for leave to amend should be denied for several reasons. Geneva County failed to provide notice of its proposed amendments through a proposed complaint. Geneva County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Geneva County's motion should be denied due to futility, as Geneva County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Geneva County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Geneva County filed its original complaint on February 25, 2020 and the case was transferred to the MDL on March 13, 2020. *See Geneva County, Alabama v. Purdue Pharma L.P.*, Case No. 1:20-op-45105-DAP, ECF No. 26. Geneva County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Geneva County elected not to do so. Instead, Geneva County waited four years after its

deadline to amend to seek leave to assert claims against the PBMs. Geneva County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Geneva County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Geneva County). That insignificant dispensing volume is much too low to support a finding of good cause for Geneva County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Geneva County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.37% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Geneva County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Geneva County filed its original complaint on February 25, 2020. *See Geneva County, Alabama v. Purdue Pharma L.P.*, Case No. 1:20-op-45105-DAP, ECF No. 1. Despite filing its case years ago, Geneva County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1

(Date Litigation Hold Implemented: Never). Litigating Geneva County's case would force the parties and the Court to waste time and resources ascertaining the extent of Geneva County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Geneva County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Geneva County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Geneva County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Geneva County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Geneva County's proposed RICO claim against the PBMs has expired. Geneva County filed its original complaint on February 25, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Geneva County, Alabama v. Purdue Pharma L.P.*, Case No. 1:20-op-45105-DAP, ECF No. 1. It is therefore indisputable that Geneva County knew of its RICO injury, at the very latest, the day

it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Geneva County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Geneva County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Geneva County's public-nuisance claim against the PBMs is therefore time-barred because Geneva County sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on February 25, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Geneva County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Geneva County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1632.** *Leysen v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45107-DAP: Plaintiff Patty Carol Leysen, administrator of The Estate of Brian Keith Johnston, North Carolina

Patty Carol Leysen, administrator of The Estate of Brian Keith Johnston's untimely motion for leave to amend should be denied for several reasons. Leysen failed to provide notice of her proposed amendments through a proposed complaint. Leysen also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Leysen's motion should be denied due to futility, as Leysen does not assert any allegations tying the PBMs to her alleged harm, her RICO claim is barred by the statute of limitations, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Leysen was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Leysen filed her original complaint on January 17, 2020 and the case was transferred to the MDL on March 18, 2020. *See Leysen v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45107-DAP, ECF No. 19. Leysen could have amended her complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Leysen elected not to do so. Instead, Leysen waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Leysen's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Leysen filed her original complaint on January 17, 2020. *See Leysen v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45107-

DAP, ECF No. 1-1. Despite filing her case years ago, Leysen *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Leysen's case would force the parties and the Court to waste time and resources ascertaining the extent of Leysen's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Leysen's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Leysen therefore lacks good cause for leave to amend her complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Leysen's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Leysen, an individual in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Leysen's proposed RICO claim against the PBMs has expired. Leysen filed her original complaint on January 17, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Leysen*

*v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45107-DAP, ECF No. 1-1. It is therefore indisputable that Leysen knew of its RICO injury, at the very latest, the day she filed a complaint asserting a RICO claim, four years before seeking leave to amend. Leysen's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Leysen's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Leysen, an individual in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1633. *City of Luverne, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45109-DAP: Plaintiff Luverne City, Alabama

Luverne City's untimely motion for leave to amend should be denied for several reasons. Luverne City failed to provide notice of its proposed amendments through a proposed complaint. Luverne City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Luverne City's motion should be denied due to futility, as Luverne City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Luverne City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Luverne City filed its original complaint on February 25, 2020 and the case was transferred to the

MDL on March 24, 2020. *See City of Luverne, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45109-DAP, ECF No. 19. Luverne City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Luverne City elected not to do so. Instead, Luverne City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Luverne City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Luverne City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Luverne City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Luverne City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Luverne City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Luverne City filed its original complaint on February 25, 2020. *See City of Luverne, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45109-DAP, ECF No. 1. Despite filing its case years ago, Luverne City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Luverne City's case would force the parties and the Court to waste time and resources ascertaining the extent of Luverne City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Luverne City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Luverne City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Luverne City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Luverne City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Luverne City's proposed RICO claim against the PBMs has expired. Luverne City filed its original complaint on February 25, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Luverne, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45109-DAP, ECF No. 1. It is therefore indisputable that Luverne City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Luverne City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Luverne City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Luverne City's public-nuisance claim against the PBMs is therefore time-barred because Luverne City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on February 25, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Luverne City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1634.** *Rapides Parish Police Jury v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45111-DAP: Plaintiff Rapides Parish, Louisiana

Rapides Parish's untimely motion for leave to amend should be denied for several reasons. Rapides Parish failed to provide notice of its proposed amendments through a proposed complaint. Rapides Parish also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Rapides Parish's motion should be denied due to futility, as Rapides Parish does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rapides Parish was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rapides Parish amended its complaint on June 22, 2020, after transfer to the MDL on March 25, 2020. *See Rapides Parish Police Jury v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45111-DAP, ECF No. 9. Unlike many other plaintiffs, Rapides Parish declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Rapides Parish's deadline to amend was in 2020. Rapides Parish waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Rapides Parish's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Rapides Parish cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey &

Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Rapides Parish, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Rapides Parish fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Rapides Parish's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Rapides Parish). That insignificant dispensing volume is much too low to support a finding of good cause for Rapides Parish to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Rapides Parish's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support

a finding of good cause for Rapides Parish to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Rapides Parish filed its original complaint on March 6, 2020. *See Rapides Parish Police Jury v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45111-DAP, ECF No. 1. Despite filing its case years ago, Rapides Parish *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Rapides Parish's case would force the parties and the Court to waste time and resources ascertaining the extent of Rapides Parish's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rapides Parish's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rapides Parish therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rapides Parish's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rapides Parish, a municipality in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Rapides Parish seeks leave to amend to add claims against the PBMs in two cases: *Rapides Parish Police Jury v. AmerisourceBergen Drug Corp., et al.*, No. 1:20-op-45111-DAP; and *Phillip Terrell v. AmerisourceBergen Drug Corp., et al.*, No. 1:20-op-45123-DAP. Rapides Parish's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Rapides Parish's proposed RICO claim against the PBMs has expired. Rapides Parish filed its original complaint on March 6, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Rapides Parish Police Jury v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45111-DAP, ECF No. 1. It is therefore indisputable that Rapides Parish knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Rapides Parish's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555));

*see* Section III.B.4, above. Rapides Parish's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to a one-year limitations period. Rapides Parish's public-nuisance claim against the PBMs is therefore time-barred because Rapides Parish sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 6, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Rapides Parish, a municipality in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1635. *Escambia County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45112-DAP: Plaintiff Escambia County, Alabama

Escambia County's untimely motion for leave to amend should be denied for several reasons. Escambia County failed to provide notice of its proposed amendments through a proposed complaint. Escambia County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Escambia County's motion should be denied due to futility, as Escambia County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Escambia County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Escambia County filed its original complaint on March 5, 2020 and the case was transferred to the MDL on March 25, 2020. *See Escambia County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45112-DAP, ECF No. 13. Escambia County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Escambia County elected not to do so. Instead, Escambia County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Escambia County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Escambia County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Escambia County). That insignificant dispensing volume is much too low to support a finding of good cause for Escambia County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Escambia County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Escambia County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Escambia County filed its original complaint on March 5, 2020. *See Escambia County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45112-DAP, ECF No. 1. Despite filing its case years ago, Escambia County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Escambia County's case would force the parties and the Court to waste time and resources ascertaining the extent of Escambia County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Escambia County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Escambia County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Escambia County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Escambia County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Escambia County's proposed RICO claim against the PBMs has expired. Escambia County filed its original complaint on March 5, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Escambia County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45112-DAP, ECF No. 1. It is therefore indisputable that Escambia County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Escambia County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Escambia County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Escambia County's public-nuisance claim against the PBMs is therefore time-barred because Escambia County sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 5, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Escambia County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Escambia County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1636. *City of Chickasaw, Alabama v. Purdue Pharma, L.P. et al.*, Case No. 1:20-op-45115-DAP: Plaintiff Chickasaw City, Alabama

Chickasaw City's untimely motion for leave to amend should be denied for several reasons. Chickasaw City failed to provide notice of its proposed amendments through a proposed complaint. Chickasaw City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chickasaw City's motion should be denied due to futility, as Chickasaw City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chickasaw City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chickasaw City filed its original complaint on February 28, 2020 and the case was transferred to the MDL on March 26, 2020. *See City of Chickasaw, Alabama v. Purdue Pharma, L.P. et al.*, Case

No. 1:20-op-45115-DAP, ECF No. 8. Chickasaw City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Chickasaw City elected not to do so. Instead, Chickasaw City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Chickasaw City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chickasaw City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Chickasaw City). That insignificant dispensing volume is much too low to support a finding of good cause for Chickasaw City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chickasaw City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chickasaw City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Chickasaw City filed its original complaint on February 28, 2020. *See City of Chickasaw, Alabama v. Purdue Pharma, L.P. et al.*, Case No. 1:20-op-45115-DAP, ECF No. 1. Despite filing its case years ago, Chickasaw City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Chickasaw City's case would force the parties and the Court to waste time and resources ascertaining the extent of Chickasaw City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chickasaw City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chickasaw City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Chickasaw City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Chickasaw City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Chickasaw City of this deficiency on September 16, 2024 (*see* Exhibit B), but Chickasaw City refused to amend or supplement its Fact Sheet. Under this Court's orders, Chickasaw City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Chickasaw City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Chickasaw City's potential claims against them. Chickasaw City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause

and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chickasaw City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chickasaw City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chickasaw City's proposed RICO claim against the PBMs has expired. Chickasaw City filed its original complaint on February 28, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Chickasaw, Alabama v. Purdue Pharma, L.P. et al.*, Case No. 1:20-op-45115-DAP, ECF No. 1. It is therefore indisputable that Chickasaw City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Chickasaw City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chickasaw City's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Chickasaw City's public-nuisance claim against the PBMs is therefore time-barred because Chickasaw City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on February 28, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Chickasaw City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1637. *City of Satsuma, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45116-DAP: Plaintiff Satsuma City, Alabama

Satsuma City's untimely motion for leave to amend should be denied for several reasons. Satsuma City failed to provide notice of its proposed amendments through a proposed complaint. Satsuma City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Satsuma City's motion should be denied due to futility, as Satsuma City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Satsuma City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Satsuma City filed its original complaint on March 3, 2020 and the case was transferred to the MDL on March 26, 2020. *See City of Satsuma, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45116-DAP, ECF No. 9. Satsuma City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Satsuma City elected not to do so. Instead, Satsuma City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Satsuma City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Satsuma City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Satsuma City). That insignificant dispensing volume is much too low to support a finding of good cause for Satsuma City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Satsuma City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Satsuma City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Satsuma City filed its original complaint on March 3, 2020. *See City of Satsuma, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45116-DAP, ECF No. 1. Despite filing its case years ago, Satsuma City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Satsuma City's case would force the parties and the Court to waste time and resources ascertaining the extent of Satsuma City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Satsuma City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Satsuma City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Satsuma City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Satsuma City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Satsuma City of this deficiency on September 16, 2024 (*see* Exhibit B), but Satsuma City refused to amend or supplement its Fact Sheet. Under this Court's orders, Satsuma City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Satsuma City's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Satsuma City's potential claims against them. Satsuma City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Satsuma City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Satsuma City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Satsuma City's proposed RICO claim against the PBMs has expired. Satsuma City filed its original complaint on March 3, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Satsuma, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45116-DAP, ECF No. 1. It is therefore indisputable that Satsuma City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Satsuma City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568

at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Satsuma City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Satsuma City's public-nuisance claim against the PBMs is therefore time-barred because Satsuma City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 3, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Satsuma City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1638.** *City of Uniontown, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45117-DAP: Plaintiff Uniontown Town, Alabama

Uniontown Town's untimely motion for leave to amend should be denied for several reasons. Uniontown Town failed to provide notice of its proposed amendments through a proposed complaint. Uniontown Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Uniontown Town's motion should be denied due to futility, as Uniontown Town does not assert any allegations tying the PBMs to its alleged harm, its proposed

public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Uniontown Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Uniontown Town filed its original complaint on March 3, 2020 and the case was transferred to the MDL on March 26, 2020. *See City of Uniontown, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45117-DAP, ECF No. 11. Uniontown Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Uniontown Town elected not to do so. Instead, Uniontown Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Uniontown Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Uniontown Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.43% market share for Uniontown Town). That insignificant dispensing volume is much too low to support a finding of good cause for Uniontown Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Uniontown Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.03% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Uniontown Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Uniontown Town filed its original complaint on March 3, 2020. *See City of Uniontown, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45117-DAP, ECF No. 1. Despite filing its case years ago, Uniontown Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Uniontown Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Uniontown Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Uniontown Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Uniontown Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Uniontown Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Uniontown Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Uniontown Town's proposed RICO claim against the PBMs has expired. Uniontown Town filed its original complaint on March 3, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Uniontown, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45117-DAP, ECF No. 1. It is therefore indisputable that Uniontown Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Uniontown Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Uniontown Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Uniontown Town's public-nuisance claim against the PBMs is therefore time-barred because Uniontown Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 3, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Uniontown Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1639.** *City of Linden, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45118-DAP: Plaintiff Linden City, Alabama

Linden City's untimely motion for leave to amend should be denied for several reasons. Linden City failed to provide notice of its proposed amendments through a proposed complaint. Linden City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Linden City's motion should be denied due to futility, as Linden City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Linden City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Linden City filed its original complaint on March 3, 2020 and the case was transferred to the MDL on March 26, 2020. *See City of Linden, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45118-DAP, ECF No. 8. Linden City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Linden City elected not to do so. Instead, Linden City waited four years after its deadline to amend to seek

leave to assert claims against the PBMs. Linden City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Linden City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Linden City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Linden City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Linden City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Linden City filed its original complaint on March 3, 2020. *See City of Linden, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45118-DAP, ECF No. 1. Despite filing its case years ago, Linden City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Linden City's case would force the parties

and the Court to waste time and resources ascertaining the extent of Linden City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Linden City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Linden City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Linden City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Linden City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Linden City of this deficiency on September 16, 2024 (*see* Exhibit B), but Linden City refused to amend or supplement its Fact Sheet. Under this Court's orders, Linden City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Linden City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Linden City's potential claims against them. Linden City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Linden City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Linden City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Linden City's proposed RICO claim against the PBMs has expired. Linden City filed its original complaint on March 3, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Linden, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45118-DAP, ECF No. 1. It is therefore indisputable that Linden City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Linden City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Linden City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Linden City's public-nuisance claim against the PBMs is therefore

time-barred because Linden City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 3, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Linden City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1640. *Town of Dauphin Island, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45119-DAP: Plaintiff Dauphin Island Town, Alabama

Dauphin Island Town's untimely motion for leave to amend should be denied for several reasons. Dauphin Island Town failed to provide notice of its proposed amendments through a proposed complaint. Dauphin Island Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dauphin Island Town's motion should be denied due to futility, as Dauphin Island Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dauphin Island Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dauphin Island Town filed its original complaint on March 5, 2020 and the case was transferred to the MDL on March 27, 2020. *See Town of Dauphin Island, Alabama v. Purdue*

*Pharma L.P. et al.*, Case No. 1:20-op-45119-DAP, ECF No. 11. Dauphin Island Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Dauphin Island Town elected not to do so. Instead, Dauphin Island Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Dauphin Island Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Dauphin Island Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dauphin Island Town filed its original complaint on March 5, 2020. *See Town of Dauphin Island, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45119-DAP, ECF No. 1. Despite filing its case years ago, Dauphin Island Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Dauphin Island Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Dauphin Island Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dauphin Island Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dauphin Island

Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Dauphin Island Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Dauphin Island Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Dauphin Island Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Dauphin Island Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Dauphin Island Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dauphin Island Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Dauphin Island Town's potential claims against them. Dauphin Island Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dauphin Island Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dauphin Island Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dauphin Island Town's proposed RICO claim against the PBMs has expired. Dauphin Island Town filed its original complaint on March 5, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Dauphin Island, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45119-DAP, ECF No. 1. It is therefore indisputable that Dauphin Island Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Dauphin Island Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dauphin Island Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Dauphin Island Town's public-nuisance claim against the PBMs is therefore time-barred because Dauphin Island Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 5, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Dauphin Island Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1641.** ***Town of Sweet Water, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45120-DAP: Plaintiff Sweet Water Town, Alabama**

Sweet Water Town's untimely motion for leave to amend should be denied for several reasons. Sweet Water Town failed to provide notice of its proposed amendments through a proposed complaint. Sweet Water Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sweet Water Town's motion should be denied due to futility, as Sweet Water Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sweet Water Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sweet Water Town filed its original complaint on March 9, 2020 and the case was transferred to the MDL on March 27, 2020. *See Town of Sweet Water, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45120-DAP, ECF No. 9. Sweet Water Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Sweet Water Town elected not to do so. Instead, Sweet Water Town

waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Sweet Water Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Sweet Water Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sweet Water Town filed its original complaint on March 9, 2020. *See Town of Sweet Water, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45120-DAP, ECF No. 1. Despite filing its case years ago, Sweet Water Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Sweet Water Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Sweet Water Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sweet Water Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sweet Water Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sweet Water Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sweet Water Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sweet Water Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Sweet Water Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Sweet Water Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sweet Water Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sweet Water Town's potential claims against them. Sweet Water Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sweet Water Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sweet Water Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sweet Water Town's proposed RICO claim against the PBMs has expired. Sweet Water Town filed its original complaint on March 9, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Sweet Water, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45120-DAP, ECF No. 1. It is therefore indisputable that Sweet Water Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Sweet Water Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sweet Water Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Sweet Water Town's public-nuisance claim against the PBMs is therefore time-barred because Sweet Water Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 9, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sweet Water Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1642. *City of Kirkland v. Endo Health Solutions Inc et al.*, Case No. 1:20-op-45121-DAP: Plaintiff Kirkland City, Washington

Kirkland City's untimely motion for leave to amend should be denied for several reasons. Kirkland City failed to provide notice of its proposed amendments through a proposed complaint. Kirkland City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kirkland City's motion should be denied due to futility, as Kirkland City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kirkland City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kirkland City amended its complaint on December 4, 2020, after transfer to the MDL on March 27, 2020. *See City of Kirkland v. Endo Health Solutions Inc et al.*, Case No. 1:20-op-45121-DAP, ECF No. 9. Unlike many other plaintiffs, Kirkland City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Kirkland City's deadline to amend was in 2020. Kirkland City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Kirkland City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring

claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kirkland City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Kirkland City). That insignificant dispensing volume is much too low to support a finding of good cause for Kirkland City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Kirkland City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.35% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Kirkland City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kirkland City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kirkland City, a municipality in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kirkland City's proposed RICO claim against the PBMs has expired. Kirkland City filed its original complaint on March 11, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Kirkland v. Endo Health Solutions Inc et al.*, Case No. 1:20-op-45121-DAP, ECF No. 1. It is therefore indisputable that Kirkland City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Kirkland City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kirkland City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Kirkland City's public-nuisance claim against the PBMs is therefore time-barred because Kirkland City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 11, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Kirkland City, a municipality in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1643. *Town of Faunsdale, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45122-DAP: Plaintiff Faunsdale Town, Alabama

Faunsdale Town's untimely motion for leave to amend should be denied for several reasons. Faunsdale Town failed to provide notice of its proposed amendments through a proposed complaint. Faunsdale Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Faunsdale Town's motion should be denied due to futility, as Faunsdale Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Faunsdale Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Faunsdale Town filed its original complaint on March 9, 2020 and the case was transferred to the MDL on March 27, 2020. *See Town of Faunsdale, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45122-DAP, ECF No. 8. Faunsdale Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Faunsdale Town elected not to do so. Instead, Faunsdale Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Faunsdale Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because

plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Faunsdale Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Faunsdale Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Faunsdale Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Faunsdale Town filed its original complaint on March 9, 2020. *See Town of Faunsdale, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45122-DAP, ECF No. 1. Despite filing its case years ago, Faunsdale Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Faunsdale Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Faunsdale Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Faunsdale Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Faunsdale Town therefore lacks good

cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Faunsdale Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Faunsdale Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Faunsdale Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Faunsdale Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Faunsdale Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Faunsdale Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Faunsdale Town's potential claims against them. Faunsdale Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Faunsdale Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Faunsdale Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Faunsdale Town's proposed RICO claim against the PBMs has expired. Faunsdale Town filed its original complaint on March 9, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Town of Faunsdale, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45122-DAP, ECF No. 1. It is therefore indisputable that Faunsdale Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Faunsdale Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Faunsdale Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Faunsdale Town's public-nuisance claim against the PBMs is therefore time-barred because Faunsdale Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 9, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Faunsdale Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1644. *Phillip Terrell v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45123-DAP: Plaintiff District Attorney of Rapides Parish, Louisiana

District Attorney of Rapides Parish's untimely motion for leave to amend should be denied for several reasons. District Attorney of Rapides Parish failed to provide notice of its proposed amendments through a proposed complaint. District Attorney of Rapides Parish also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, District Attorney of Rapides Parish's motion should be denied due to futility, as District Attorney of Rapides Parish does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** District Attorney of Rapides Parish was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, District Attorney of Rapides Parish amended its complaint on June 22, 2020, after transfer to the MDL on March 27, 2020. *See Phillip Terrell v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45123-DAP, ECF No. 8. Unlike many other plaintiffs, District Attorney of Rapides Parish declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. District Attorney of Rapides Parish's deadline to amend was in 2020.

District Attorney of Rapides Parish waited four years after its deadline to amend to seek leave to assert claims against the PBMs. District Attorney of Rapides Parish's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** District Attorney of Rapides Parish cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. District Attorney of Rapides Parish, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. District Attorney of Rapides Parish fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

District Attorney of Rapides Parish's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for District Attorney of Rapides Parish). That insignificant dispensing volume is much too low to support a finding of good cause for District Attorney of Rapides Parish to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to District Attorney of Rapides Parish's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.18% market share). That insignificant dispensing volume is much too low to support a finding of good cause for District Attorney of Rapides Parish to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** District Attorney of Rapides Parish filed its original complaint on March 13, 2020. *See Phillip Terrell v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45123-DAP, ECF No. 1. Despite filing its case years ago, District Attorney of Rapides Parish *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating District Attorney of Rapides Parish's case would force the parties and the Court to waste time and resources ascertaining the extent of District Attorney of Rapides Parish's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by District Attorney of Rapides Parish's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and District Attorney of Rapides Parish

therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, District Attorney of Rapides Parish failed to provide complete answers to Questions I.B.8 and I.B.9, relating to District Attorney of Rapides Parish's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified District Attorney of Rapides Parish of this deficiency on September 16, 2024 (*see* Exhibit B), but District Attorney of Rapides Parish refused to amend or supplement its Fact Sheet. Under this Court's orders, District Attorney of Rapides Parish's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. District Attorney of Rapides Parish's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against District Attorney of Rapides Parish's potential claims against them. District Attorney of Rapides Parish's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But District Attorney of Rapides Parish's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** District Attorney of Rapides Parish, a municipality in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** District Attorney of Rapides Parish seeks leave to amend to add claims against the PBMs in two cases: *Rapides Parish Police Jury v. AmerisourceBergen Drug Corp., et al.*, No. 1:20-op-45111-DAP; and *Phillip Terrell v. AmerisourceBergen Drug Corp., et al.*, No. 1:20-op-45123-DAP. District Attorney of Rapides Parish's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for District Attorney of Rapides Parish's proposed RICO claim against the PBMs has expired. District Attorney of Rapides Parish filed its original complaint on March 13, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Phillip Terrell v. AmerisourceBergen Drug Corp et al.*, Case No. 1:20-op-45123-DAP, ECF No. 1. It is therefore indisputable that District Attorney of Rapides Parish knew of its RICO injury, at the very latest, the day it filed a complaint asserting a

RICO claim, four years before seeking leave to amend. District Attorney of Rapides Parish's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. District Attorney of Rapides Parish's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to a one-year limitations period. District Attorney of Rapides Parish's public-nuisance claim against the PBMs is therefore time-barred because District Attorney of Rapides Parish sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on March 13, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** District Attorney of Rapides Parish, a municipality in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1645. *King and Queen County, VA v. Mallinckrodt, PLC, et al.*, Case No. 1:20-op-45138-DAP: Plaintiff King and Queen County, Virginia

King and Queen County's untimely motion for leave to amend should be denied for several reasons. King and Queen County failed to provide notice of its proposed amendments through a proposed complaint. King and Queen County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete

plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, King and Queen County's motion should be denied due to futility, as King and Queen County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** King and Queen County previously alleged claims against some of the PBMs in its original complaint on January 3, 2020. *See King and Queen County, VA v. Mallinckrodt, PLC, et al.*, Case No. 1:20-op-45138-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). King and Queen County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, King and Queen County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of King and Queen County's complaint, King and Queen County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A, above. King and Queen County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in King and Queen County's geographic jurisdiction during 2009

to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** King and Queen County violated its basic duty to implement a timely litigation hold. King and Queen County filed its original complaint on January 3, 2020, but waited until August 8, 2024 to implement a litigation hold—four and a half years later. *See King and Queen County, VA v. Mallinckrodt, PLC, et al.*, Case No. 1:20-op-45138-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 8, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating King and Queen County's case would force the parties and the Court to waste time and resources ascertaining the extent of King and Queen County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by King and Queen County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and King and Queen County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, King and Queen County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to King and Queen County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified King and Queen County of this deficiency on September 16, 2024 (*see* Exhibit B), but King and Queen County refused to amend or supplement its Fact Sheet. Under this Court's orders, King and Queen County's case is therefore subject to "***dismiss[al] with prejudice***"

for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. King and Queen County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against King and Queen County's potential claims against them. King and Queen County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But King and Queen County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** King and Queen County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for King and Queen County's proposed RICO claim against the PBMs has expired. King and Queen County filed its original complaint on January 3, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See King and Queen County, VA v. Mallinckrodt, PLC, et al.*, Case

No. 1:20-op-45138-DAP, ECF No. 1-2. Even assuming *arguendo* that King and Queen County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 3, 2024. King and Queen County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. King and Queen County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** King and Queen County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1646. *Adams County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45140-DAP: Plaintiff Adams County, Pennsylvania

Adams County's untimely motion for leave to amend should be denied for several reasons. Adams County failed to provide notice of its proposed amendments through a proposed complaint. Adams County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Adams County's motion should be denied due to futility, as Adams County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Adams County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Adams County filed its original complaint on August 6, 2019 and the case was transferred to the

MDL on April 1, 2020. *See Adams County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45140-DAP, ECF No. 23. Adams County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Adams County elected not to do so. Instead, Adams County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Adams County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Adams County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Adams County). That insignificant dispensing volume is much too low to support a finding of good cause for Adams County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Adams County filed its original complaint on August 6, 2019. *See Adams County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45140-DAP, ECF No. 1-2; 1-3; 1-4; 1-5. Despite filing its case years ago, Adams County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Adams County's case would force

the parties and the Court to waste time and resources ascertaining the extent of Adams County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Adams County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Adams County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Adams County has *never* served a Plaintiff Fact Sheet. Adams County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Adams County's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Adams County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Adams County, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Adams County's proposed RICO claim against the PBMs has expired. Adams County filed its original complaint on August 6, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Adams County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45140-DAP, ECF No. 1-2; 1-3; 1-4; 1-5. Even assuming *arguendo* that Adams County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on August 6, 2023. Adams County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Adams County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Adams County, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1647. *City of Fullerton et al. v. Cephalon Inc. et al.*, Case No. 1:20-op-45143-DAP: Plaintiff Fullerton City, California

Fullerton City's untimely motion for leave to amend should be denied for several reasons. Fullerton City failed to provide notice of its proposed amendments through a proposed complaint. Fullerton City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fullerton City's motion should be denied due to futility, as Fullerton City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fullerton City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fullerton City filed its original complaint on October 24, 2019 and the case was transferred to the MDL on April 2, 2020. *See City of Fullerton et al. v. Cephalon Inc. et al.*, Case No. 1:20-op-45143-DAP, ECF No. 42. Fullerton City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Fullerton City elected not to do so. Instead, Fullerton City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Fullerton City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fullerton City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Fullerton City). That insignificant dispensing volume is much too low to support a finding of good cause for Fullerton City to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fullerton City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.44% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fullerton City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fullerton City filed its original complaint on October 24, 2019, but waited until February 26, 2020 to implement a litigation hold. *See City of Fullerton et al. v. Cephalon Inc. et al.*, Case No. 1:20-op-45143-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: February 26, 2020). Fullerton City's violation of the Court's orders (ECF Nos. 232; 5455) and disregard for its discovery obligations is prejudicial to the PBMs and weighs heavily against any finding of good cause for leave to amend. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Fullerton City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fullerton City's proposed RICO claim against the PBMs has expired. Fullerton City filed its original complaint on October

24, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Fullerton et al. v. Cephalon Inc. et al.*, Case No. 1:20-op-45143-DAP, ECF No. 1-3. Even assuming *arguendo* that Fullerton City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on October 24, 2023. Fullerton City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fullerton City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fullerton City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1648.** *Northampton County, VA v. Mallinckrodt, PLC*, **Case No. 1:20-op-45144-DAP: Plaintiff Northampton County, Virginia**

Northampton County's untimely motion for leave to amend should be denied for several reasons. Northampton County failed to provide notice of its proposed amendments through a proposed complaint. Northampton County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Northampton County's motion should be denied due to futility, as Northampton County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Northampton County previously alleged claims against some of the PBMs in its original complaint on January 3, 2020. *See Northampton County, VA v. Mallinckrodt, PLC*, Case No. 1:20-op-45144-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Northampton County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Northampton County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Northampton County's complaint, Northampton County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A, above. Northampton County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Northampton County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Northampton County). That insignificant dispensing volume is much too low to support a finding of good cause for Northampton County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

5998

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Northampton County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Northampton County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Northampton County violated its basic duty to implement a timely litigation hold. Northampton County filed its original complaint on January 3, 2020, but waited until August 13, 2024 to implement a litigation hold—four and a half years later. *See Northampton County, VA v. Mallinckrodt, PLC*, Case No. 1:20-op-45144-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Northampton County's case would force the parties and the Court to waste time and resources ascertaining the extent of Northampton County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Northampton County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Northampton County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Northampton County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Northampton County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time

period. The PBMs notified Northampton County of this deficiency on September 16, 2024 (*see* Exhibit B), but Northampton County refused to amend or supplement its Fact Sheet. Under this Court's orders, Northampton County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Northampton County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Northampton County's potential claims against them. Northampton County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Northampton County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Northampton County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Northampton County's proposed RICO claim against the PBMs has expired. Northampton County filed its original complaint on January 3, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Northampton County, VA v. Mallinckrodt, PLC*, Case No. 1:20-op-45144-DAP, ECF No. 1-2. Even assuming *arguendo* that Northampton County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 3, 2024. Northampton County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Northampton County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Northampton County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1649. *Isle of Wight County v. Mallinckrodt, PLC*, Case No. 1:20-op-45145-DAP: Plaintiff Isle of Wight County, Virginia

Isle of Wight County's untimely motion for leave to amend should be denied for several reasons. Isle of Wight County failed to provide notice of its proposed amendments through a proposed complaint. Isle of Wight County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Isle of Wight County's motion should be denied due to futility, as Isle of Wight County does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Isle of Wight County previously alleged claims against some of the PBMs in its original complaint on January 3, 2020. *See Isle of Wight County v. Mallinckrodt, PLC*, Case No. 1:20-op-45145-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Isle of Wight County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Isle of Wight County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Isle of Wight County's complaint, Isle of Wight County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A, above. Isle of Wight County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Isle of Wight County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Isle of Wight County). That insignificant dispensing volume is much too low to support a finding of good cause for Isle of Wight County to add dispensing claims

against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Isle of Wight County violated its basic duty to implement a timely litigation hold. Isle of Wight County filed its original complaint on January 3, 2020, but waited until August 13, 2024 to implement a litigation hold—four and a half years later. *See Isle of Wight County v. Mallinckrodt, PLC*, Case No. 1:20-op-45145-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Isle of Wight County's case would force the parties and the Court to waste time and resources ascertaining the extent of Isle of Wight County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Isle of Wight County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Isle of Wight County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Isle of Wight County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Isle of Wight County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Isle of Wight County of this deficiency on September 16, 2024 (*see* Exhibit B), but Isle of Wight County refused to amend or supplement its Fact Sheet. Under this Court's orders, Isle of Wight County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Isle of

Wight County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Isle of Wight County's potential claims against them. Isle of Wight County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Isle of Wight County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Isle of Wight County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Isle of Wight County's proposed RICO claim against the PBMs has expired. Isle of Wight County filed its original complaint on January 3, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Isle of Wight County v. Mallinckrodt, PLC*, Case No. 1:20-op-45145-DAP, ECF No. 1-2. Even assuming *arguendo* that Isle of Wight County first learned of its

injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 3, 2024. Isle of Wight County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Isle of Wight County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Isle of Wight County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1650.** *IBEW Local 716 Electrical Medical Trust v. McKesson Corporation et al.*, **Case No. 1:20-op-45148-DAP: Plaintiff IBEW Local 716 Electrical Medical Trust, Texas**

IBEW Local 716 Electrical Medical Trust's untimely motion for leave to amend should be denied for several reasons. IBEW Local 716 Electrical Medical Trust failed to provide notice of its proposed amendments through a proposed complaint. IBEW Local 716 Electrical Medical Trust also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, IBEW Local 716 Electrical Medical Trust's motion should be denied due to futility, as IBEW Local 716 Electrical Medical Trust does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** IBEW Local 716 Electrical Medical Trust was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, IBEW Local 716 Electrical Medical Trust filed its original

complaint directly into the MDL on April 7, 2020. *See IBEW Local 716 Electrical Medical Trust v. McKesson Corporation et al.*, Case No. 1:20-op-45148-DAP, ECF No. 1. IBEW Local 716 Electrical Medical Trust could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, IBEW Local 716 Electrical Medical Trust elected not to do so. IBEW Local 716 Electrical Medical Trust waited four years after its deadline to amend to seek leave to assert claims against the PBMs. IBEW Local 716 Electrical Medical Trust's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** IBEW Local 716 Electrical Medical Trust filed its original complaint on April 7, 2020. *See IBEW Local 716 Electrical Medical Trust v. McKesson Corporation et al.*, Case No. 1:20-op-45148-DAP, ECF No. 1. Despite filing its case years ago, IBEW Local 716 Electrical Medical Trust *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating IBEW Local 716 Electrical Medical Trust's case would force the parties and the Court to waste time and resources ascertaining the extent of IBEW Local 716 Electrical Medical Trust's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by IBEW Local 716 Electrical Medical Trust's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and IBEW

Local 716 Electrical Medical Trust therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But IBEW Local 716 Electrical Medical Trust's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** IBEW Local 716 Electrical Medical Trust, a third party payor in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for IBEW Local 716 Electrical Medical Trust's proposed RICO claim against the PBMs has expired. IBEW Local 716 Electrical Medical Trust filed its original complaint on April 7, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See IBEW Local 716 Electrical Medical Trust v. McKesson Corporation et al.*, Case No. 1:20-op-45148-DAP, ECF No. 1. It is therefore indisputable that IBEW Local 716 Electrical Medical Trust knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. IBEW Local 716 Electrical Medical Trust's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period

is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. IBEW Local 716 Electrical Medical Trust's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** IBEW Local 716 Electrical Medical Trust, a third party payor in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1651. *The People of the State of Illinois et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45154-DAP: Plaintiff Sangamon County, Illinois

Sangamon County's untimely motion for leave to amend should be denied for several reasons. Sangamon County failed to provide notice of its proposed amendments through a proposed complaint. Sangamon County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sangamon County's motion should be denied due to futility, as Sangamon County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sangamon County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sangamon County amended its complaint on July 15, 2020, after transfer to the MDL on April 15, 2020. *See The People of the State of Illinois et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45154-DAP, ECF No. 5. Unlike many other plaintiffs, Sangamon County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Sangamon County's deadline to amend was in 2020. Sangamon County waited four years

after its deadline to amend to seek leave to assert claims against the PBMs. Sangamon County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Sangamon County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Sangamon County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Sangamon County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sangamon County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See*

Gustafson Decl. (0.03% market share for Sangamon County). That insignificant dispensing volume is much too low to support a finding of good cause for Sangamon County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sangamon County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sangamon County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Sangamon County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Sangamon County of the PBM services Express Scripts provides and Sangamon County began receiving those services on January 2, 2006. *See id.* Inasmuch as Sangamon County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Sangamon County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Sangamon County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Sangamon County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Sangamon County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Sangamon County of this deficiency on September 16, 2024 (*see* Exhibit B), but Sangamon County refused to amend or supplement its Fact Sheet. Under this Court's orders, Sangamon County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sangamon County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Sangamon County's potential claims against them. Sangamon County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sangamon County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sangamon County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sangamon County's proposed RICO claim against the PBMs has expired. Sangamon County filed its original complaint on February 27, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See The People of the State of Illinois et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45154-DAP, ECF No. 1. It is therefore indisputable that Sangamon County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Sangamon County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sangamon County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sangamon County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1652. *Perry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45158-DAP: Plaintiff Perry County, Alabama

Perry County's untimely motion for leave to amend should be denied for several reasons. Perry County failed to provide notice of its proposed amendments through a proposed complaint. Perry County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Perry County's motion should be denied due to futility, as Perry County does not assert

any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Perry County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Perry County filed its original complaint on February 27, 2020 and the case was transferred to the MDL on April 21, 2020. *See Perry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45158-DAP, ECF No. 5. Perry County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Perry County elected not to do so. Instead, Perry County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Perry County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Perry County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Perry County). That insignificant dispensing volume is much too low to support a finding of good cause for Perry County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Perry County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Perry County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Perry County filed its original complaint on February 27, 2020. *See Perry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45158-DAP, ECF No. 1. Despite filing its case years ago, Perry County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Perry County's case would force the parties and the Court to waste time and resources ascertaining the extent of Perry County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Perry County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Perry County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Perry County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Perry County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Perry County's proposed RICO claim against the PBMs has expired. Perry County filed its original complaint on February 27, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Perry County, Alabama v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45158-DAP, ECF No. 1. It is therefore indisputable that Perry County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Perry County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Perry County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Perry County's public-nuisance claim against the PBMs is therefore time-barred because Perry County sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on February 27, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

      **Plaintiff Lacks Standing.** Perry County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

      **Plaintiff Lacks Standing.** Perry County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1653. *City of Buena Vista, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45159-DAP: Plaintiff Buena Vista City, Virginia

      Buena Vista City's untimely motion for leave to amend should be denied for several reasons. Buena Vista City failed to provide notice of its proposed amendments through a proposed complaint. Buena Vista City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Buena Vista City's motion should be denied due to futility, as Buena Vista City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

      **Lack of Diligence.** Buena Vista City previously alleged claims against some of the PBMs in its original complaint on January 3, 2020. *See City of Buena Vista, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45159-DAP, ECF No. 1-2; 1-3 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts

Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Buena Vista City could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Buena Vista City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Buena Vista City's complaint, Buena Vista City already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A, above. Buena Vista City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Buena Vista City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.21% market share for Buena Vista City). That insignificant dispensing volume is much too low to support a finding of good cause for Buena Vista City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Buena Vista City violated its basic duty to implement a timely litigation hold. Buena Vista City filed its original complaint on January 3, 2020, but waited until August 5, 2024 to implement a litigation hold—over four and a half years later. *See City of Buena Vista, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45159-DAP, ECF No. 1-2; 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 5, 2024).

This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Buena Vista City's case would force the parties and the Court to waste time and resources ascertaining the extent of Buena Vista City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Buena Vista City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Buena Vista City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Buena Vista City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Buena Vista City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Buena Vista City of this deficiency on September 16, 2024 (*see* Exhibit B), but Buena Vista City refused to amend or supplement its Fact Sheet. Under this Court's orders, Buena Vista City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Buena Vista City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Buena Vista City's potential claims against them. Buena Vista City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Buena Vista City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Buena Vista City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Buena Vista City's proposed RICO claim against the PBMs has expired. Buena Vista City filed its original complaint on January 3, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Buena Vista, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45159-DAP, ECF No. 1-2; 1-3. Even assuming *arguendo* that Buena Vista City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 3, 2024. Buena Vista City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Buena Vista City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Buena Vista City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1654.** ***Mohegan Tribe of Indians of Connecticut v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45164-DAP: Plaintiff Mohegan Tribe of Indians of Connecticut, Connecticut**

Mohegan Tribe of Indians of Connecticut's untimely motion for leave to amend should be denied for several reasons. Mohegan Tribe of Indians of Connecticut failed to provide notice of its proposed amendments through a proposed complaint. Mohegan Tribe of Indians of Connecticut also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mohegan Tribe of Indians of Connecticut's motion should be denied due to futility, as Mohegan Tribe of Indians of Connecticut does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mohegan Tribe of Indians of Connecticut was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Mohegan Tribe of Indians of Connecticut filed its original complaint directly into the MDL on May 12, 2020. *See Mohegan Tribe of Indians of Connecticut v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45164-DAP, ECF No. 1. Mohegan Tribe of Indians of Connecticut could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Mohegan Tribe of Indians of Connecticut elected not to do so. Mohegan Tribe of Indians of Connecticut waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Mohegan Tribe of Indians of Connecticut's lack of diligence in pursuing its claims negates any finding of good cause.

*See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Mohegan Tribe of Indians of Connecticut's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Mohegan Tribe of Indians of Connecticut to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Connecticut law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mohegan Tribe of Indians of Connecticut's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Connecticut law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mohegan Tribe of Indians of Connecticut, a native tribe in Connecticut, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mohegan Tribe of Indians of Connecticut's proposed RICO claim against the PBMs has expired. Mohegan Tribe of Indians of

Connecticut filed its original complaint on May 12, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Mohegan Tribe of Indians of Connecticut v. Endo Health Solutions Inc. et al.*, Case No. 1:20-op-45164-DAP, ECF No. 1. It is therefore indisputable that Mohegan Tribe of Indians of Connecticut knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Mohegan Tribe of Indians of Connecticut's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mohegan Tribe of Indians of Connecticut's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Connecticut, public-nuisance claims are subject to a three-year limitations period. Mohegan Tribe of Indians of Connecticut's public-nuisance claim against the PBMs is therefore time-barred because Mohegan Tribe of Indians of Connecticut sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on May 12, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Mohegan Tribe of Indians of Connecticut, a native tribe in Connecticut, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1655.** *Elko Band of the Te-Moak Tribe of Western Shoshone Indians v. Endo Health Solutions, Inc. et al.*, **Case No. 1:20-op-45165-DAP: Plaintiff Elko Band of the Te-Moak Tribe of Western Shoshone Indians, Nevada**

Elko Band of the Te-Moak Tribe of Western Shoshone Indians's untimely motion for leave to amend should be denied for several reasons. Elko Band of the Te-Moak Tribe of Western Shoshone Indians failed to provide notice of its proposed amendments through a proposed complaint. Elko Band of the Te-Moak Tribe of Western Shoshone Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Elko Band of the Te-Moak Tribe of Western Shoshone Indians's motion should be denied due to futility, as Elko Band of the Te-Moak Tribe of Western Shoshone Indians does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Elko Band of the Te-Moak Tribe of Western Shoshone Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Elko Band of the Te-Moak Tribe of Western Shoshone Indians filed its original complaint directly into the MDL on May 15, 2020. *See Elko Band of the Te-Moak Tribe of Western Shoshone Indians v. Endo Health Solutions, Inc. et al.*, Case No. 1:20-op-45165-DAP, ECF No. 1. Elko Band of the Te-Moak Tribe of Western Shoshone Indians could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Elko Band of the Te-Moak Tribe of Western Shoshone Indians elected not to do so. Elko Band of the Te-Moak Tribe of Western Shoshone Indians waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Elko Band of the Te-Moak Tribe of Western Shoshone Indians' lack of

diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Elko Band of the Te-Moak Tribe of Western Shoshone Indians's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.09% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Elko Band of the Te-Moak Tribe of Western Shoshone Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Elko Band of the Te-Moak Tribe of Western Shoshone Indians filed its original complaint on May 15, 2020. *See Elko Band of the Te-Moak Tribe of Western Shoshone Indians v. Endo Health Solutions, Inc. et al.*, Case No. 1:20-op-45165-DAP, ECF No. 1. Despite filing its case years ago, Elko Band of the Te-Moak Tribe of Western Shoshone Indians *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Elko Band of the Te-Moak Tribe of Western Shoshone Indians' case would force the parties and the Court to waste time and resources ascertaining the extent of Elko Band of the Te-Moak Tribe of Western Shoshone Indians' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Elko Band of the Te-Moak Tribe of Western Shoshone

Indians' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Elko Band of the Te-Moak Tribe of Western Shoshone Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Nevada law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Elko Band of the Te-Moak Tribe of Western Shoshone Indians's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Nevada law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Elko Band of the Te-Moak Tribe of Western Shoshone Indians, a native tribe in Nevada, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Elko Band of the Te-Moak Tribe of Western Shoshone Indians's proposed RICO claim against the PBMs has expired. Elko Band of the Te-Moak Tribe of Western Shoshone Indians filed its original complaint on May 15, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Elko Band of the Te-Moak Tribe of Western Shoshone Indians v. Endo Health Solutions, Inc. et al.*, Case No. 1:20-op-45165-DAP, ECF No. 1. It is therefore indisputable that Elko Band of the Te-Moak Tribe of Western Shoshone Indians knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Elko Band

of the Te-Moak Tribe of Western Shoshone Indians's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Elko Band of the Te-Moak Tribe of Western Shoshone Indians's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Elko Band of the Te-Moak Tribe of Western Shoshone Indians, a native tribe in Nevada, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1656.  *Stone County, Mississippi v. McKesson Corporation et al.*, Case No. 1:20-op-45168-DAP: Plaintiff Stone County, Mississippi

Stone County's untimely motion for leave to amend should be denied for several reasons. The Court previously dismissed Stone County's case. Moreover, Stone County failed to provide notice of its proposed amendments through a proposed complaint. Stone County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Stone County's motion should be denied due to futility, as Stone County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Jurisdiction.** This Court previously dismissed Stone County's case on February 23, 2023. *See Stone County, Mississippi v. McKesson Corporation et al.*, Case No. 1:20-op-45168-DAP, ECF No. 4. "Following entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or

Rule 60 of the Federal Rules of Civil Procedure." *In re Ferro Corp*, 511 F.3d at 624 (citation omitted). Without such post-judgment relief, the "'district court lacks power to grant a motion to amend the complaint'" because there is no "live case or controversy before the district court." *Id.* (quoting *Acevedo-Villalobos*, 22 F.3d at 389). Stone County has neither moved for post-judgment relief nor met the heightened requirements for reopening a case. *See Leisure Caviar*, 616 F.3d at 617 ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion."). Stone County has not offered any basis to reopen its case, so its motion for leave to amend must be denied. *See id.* (affirming denial of leave to amend after judgment, in part, because the plaintiff was previously on notice of the alleged "newly discovered evidence" offered in support of the motion).

**Lack of Diligence.** Stone County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Stone County filed its original complaint directly into the MDL on June 2, 2020. *See Stone County, Mississippi v. McKesson Corporation et al.*, Case No. 1:20-op-45168-DAP, ECF No. 1. Stone County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Stone County elected not to do so. Stone County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Stone County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Stone County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Stone County). That insignificant dispensing volume is much too low to support a finding of good cause for Stone County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Stone County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Stone County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Stone County filed its original complaint on June 2, 2020. *See Stone County, Mississippi v. McKesson Corporation et al.*, Case No. 1:20-op-45168-DAP, ECF No. 1. Despite filing its case years ago, Stone County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Stone County's case would force the parties and the Court to waste time and resources ascertaining the extent of Stone County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Stone County's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Stone County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stone County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Stone County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Stone County seeks leave to amend to add claims against the PBMs in two cases: *Stone County, Mississippi v. Amerisourcebergen Drug Corporation, et al.*, No. 1:18-op-45775-DAP; and *Stone County, Mississippi v. McKesson Corporation, et al.*, No. 1:20-op-45168-DAP. Stone County's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the

Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Stone County's proposed RICO claim against the PBMs has expired. Stone County filed its original complaint on June 2, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Stone County, Mississippi v. McKesson Corporation et al.*, Case No. 1:20-op-45168-DAP, ECF No. 1. It is therefore indisputable that Stone County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Stone County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Stone County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Stone County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1657.** *Seeley v. McKesson Corporation et al.*, **Case No. 1:20-op-45169-DAP: Plaintiff Christopher Seeley, as temporary administrator of the Estate of Jennifer Kaczor, deceased, and as guardian of Jocelyn Kaczor, New York**

Seeley's untimely motion for leave to amend should be denied for several reasons. Seeley failed to provide notice of his proposed amendments through a proposed complaint. Seeley also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because his untimely motion would unduly prejudice the PBMs. Moreover,

Seeley's motion should be denied due to futility, as Seeley does not assert any allegations tying the PBMs to his alleged harm, his RICO claim is barred by the statute of limitations, and he lacks standing to assert claims under New York state law.

**Lack of Diligence.** Seeley was on notice of his claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Seeley filed his original complaint directly into the MDL on June 5, 2020. *See Seeley v. McKesson Corporation et al.*, Case No. 1:20-op-45169-DAP, ECF No. 1. Seeley could have amended his complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Seeley elected not to do so. Seeley waited four years after his deadline to amend to seek leave to assert claims against the PBMs. Seeley's lack of diligence in pursuing his claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Seeley filed his original complaint on June 5, 2020. *See Seeley v. McKesson Corporation et al.*, Case No. 1:20-op-45169-DAP, ECF No. 1. Despite filing his case years ago, Seeley *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Seeley's case would force the parties and the Court to waste time and resources ascertaining the extent of Seeley's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Seeley's disregard for his most basic discovery obligations

as a litigant, compounded by the delay in seeking leave to amend, and Seeley therefore lacks good cause for leave to amend his complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Seeley's delay in seeking to amend his complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Seeley, an individual in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to his injuries. Instead, he relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Seeley's proposed RICO claim against the PBMs has expired. Seeley filed his original complaint on June 5, 2020, alleging the same type of injuries for which he now seeks to recover under RICO against the PBMs. *See Seeley v. McKesson Corporation et al.*, Case No. 1:20-op-45169-DAP, ECF No. 1. Even assuming *arguendo* that Seeley first learned of his injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 5, 2024. Seeley's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Seeley's request for leave to amend to add a RICO claim

should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Seeley, an individual in New York, lacks standing to assert a claim under NY SSL § 145-B because he is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Seeley's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1658.** ***Wampanoag Tribe of Gay Head (Aquinnah) v. McKesson Corporation et al.*, Case No. 1:20-op-45170-DAP: Plaintiff Wampanoag Tribe of Gay Head (Aquinnah), Massachusetts**

Wampanoag Tribe of Gay Head (Aquinnah)'s untimely motion for leave to amend should be denied for several reasons. Wampanoag Tribe of Gay Head (Aquinnah) failed to provide notice of its proposed amendments through a proposed complaint. Wampanoag Tribe of Gay Head (Aquinnah) also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wampanoag Tribe of Gay Head (Aquinnah)'s motion should be denied due to futility, as Wampanoag Tribe of Gay Head (Aquinnah) does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wampanoag Tribe of Gay Head (Aquinnah) was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wampanoag Tribe of Gay Head (Aquinnah) filed its original complaint directly into the MDL on June 5, 2020. *See Wampanoag Tribe of Gay Head (Aquinnah)*

*v. McKesson Corporation et al.*, Case No. 1:20-op-45170-DAP, ECF No. 1. Wampanoag Tribe of Gay Head (Aquinnah) could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Wampanoag Tribe of Gay Head (Aquinnah) elected not to do so. Wampanoag Tribe of Gay Head (Aquinnah) waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Wampanoag Tribe of Gay Head (Aquinnah)'s lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Wampanoag Tribe of Gay Head (Aquinnah)'s geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Wampanoag Tribe of Gay Head (Aquinnah) filed its original complaint on June 5, 2020. *See Wampanoag Tribe of Gay Head (Aquinnah) v. McKesson Corporation et al.*, Case No. 1:20-op-45170-DAP, ECF No. 1. Despite filing its case years ago, Wampanoag Tribe of Gay Head (Aquinnah) *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Wampanoag Tribe of Gay Head (Aquinnah)'s case would force the parties and the Court to waste time and resources ascertaining the extent of Wampanoag Tribe of Gay Head (Aquinnah)'s document destruction and the appropriate sanctions—just as the parties

were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wampanoag Tribe of Gay Head (Aquinnah)'s disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wampanoag Tribe of Gay Head (Aquinnah) therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wampanoag Tribe of Gay Head (Aquinnah)'s delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wampanoag Tribe of Gay Head (Aquinnah), a native tribe in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Wampanoag Tribe of Gay Head (Aquinnah)'s proposed RICO claim against the PBMs has expired. Wampanoag Tribe of Gay Head (Aquinnah) filed its original complaint on June 5, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Wampanoag Tribe of Gay Head (Aquinnah) v. McKesson Corporation et al.*, Case No. 1:20-op-45170-DAP, ECF No. 1. It is therefore indisputable that Wampanoag Tribe of Gay Head (Aquinnah) knew of its RICO injury,

at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Wampanoag Tribe of Gay Head (Aquinnah)'s RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Wampanoag Tribe of Gay Head (Aquinnah)'s request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at \*5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Wampanoag Tribe of Gay Head (Aquinnah)'s public-nuisance claim against the PBMs is therefore time-barred because Wampanoag Tribe of Gay Head (Aquinnah) sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on June 5, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Wampanoag Tribe of Gay Head (Aquinnah), a native tribe in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1659. *Henrico County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45172-DAP: Plaintiff Henrico County, Virginia

Henrico County's untimely motion for leave to amend should be denied for several reasons. Henrico County failed to provide notice of its proposed amendments through a proposed

complaint. Henrico County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Henrico County's motion should be denied due to futility, as Henrico County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Henrico County previously alleged claims against some of the PBMs in its original complaint on January 23, 2020. *See Henrico County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45172-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Henrico County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Henrico County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants nearly four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Henrico County's complaint, Henrico County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A, above. Henrico County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Henrico County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.26% market share for Henrico County). That insignificant dispensing volume is much too low to support a finding of good cause for Henrico County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Henrico County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Henrico County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Henrico County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Henrico County of the PBM services Express Scripts provides and Henrico County began receiving those services on January 1, 2018. *See id.* Inasmuch as Henrico County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Henrico County knew or should have known of the alleged wrongful conduct more than six years before moving to amend. *See* Section III.A.3, above. Henrico County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Henrico County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Henrico County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Henrico County of this deficiency on September 16, 2024 (*see* Exhibit B), but Henrico County refused to amend or supplement its Fact Sheet. Under this Court's orders, Henrico County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Henrico County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Henrico County's potential claims against them. Henrico County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Henrico County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Henrico County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Henrico County's proposed RICO claim against the PBMs has expired. Henrico County filed its original complaint on January 23, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Henrico County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45172-DAP, ECF No. 1-2. Even assuming *arguendo* that Henrico County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 23, 2024. Henrico County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Henrico County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Henrico County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1660. *Chesterfield County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45173-DAP: Plaintiff Chesterfield County, Virginia

Chesterfield County's untimely motion for leave to amend should be denied for several reasons. Chesterfield County failed to provide notice of its proposed amendments through a proposed complaint. Chesterfield County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chesterfield County's motion should be denied due to futility, as Chesterfield County does not

assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chesterfield County previously alleged claims against some of the PBMs in its original complaint on January 8, 2020. *See Chesterfield County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45173-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Chesterfield County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Chesterfield County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants nearly four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Chesterfield County's complaint, Chesterfield County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A, above. Chesterfield County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chesterfield County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Chesterfield County). That insignificant dispensing volume is much too low to support a finding of good cause for Chesterfield County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Chesterfield County violated its basic duty to implement a timely litigation hold. Chesterfield County filed its original complaint on January 8, 2020, but waited until July 11, 2024 to implement a litigation hold—over five years later. *See Chesterfield County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45173-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 11, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Chesterfield County's case would force the parties and the Court to waste time and resources ascertaining the extent of Chesterfield County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chesterfield County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Chesterfield County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Chesterfield County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Chesterfield County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Chesterfield County of this deficiency on September 16, 2024 (*see* Exhibit B), but Chesterfield County refused to amend or supplement its Fact Sheet. Under this Court's orders, Chesterfield County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

Chesterfield County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Chesterfield County's potential claims against them. Chesterfield County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chesterfield County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chesterfield County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chesterfield County's proposed RICO claim against the PBMs has expired. Chesterfield County filed its original complaint on January 8, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Chesterfield County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45173-DAP, ECF No. 1-2. Even assuming *arguendo* that Chesterfield County first

learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 8, 2024. Chesterfield County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chesterfield County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chesterfield County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1661.  *Mecklenburg County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45174-DAP: Plaintiff Mecklenburg County, Virginia

Mecklenburg County's untimely motion for leave to amend should be denied for several reasons. Mecklenburg County failed to provide notice of its proposed amendments through a proposed complaint. Mecklenburg County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Mecklenburg County's motion should be denied due to futility, as Mecklenburg County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Mecklenburg County previously alleged claims against some of the PBMs in its original complaint on June 14, 2019. *See Mecklenburg County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45174-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; UnitedHealth Group Incorporated; Optum, Inc.; and

OptumRx Inc.). Mecklenburg County amended its complaint on in state court on October 15, 2019, to add claims against other PBM-related entities. *See id.*, ECF No. 1-2, 1-3 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Mecklenburg County could have amended its complaint again, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Mecklenburg County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants nearly four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Mecklenburg County's complaint, Mecklenburg County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs in 2019. *See* Section II.A, above. Mecklenburg County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Mecklenburg County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.18% market share for Mecklenburg County). That insignificant dispensing volume is much too low to support a finding of good cause for Mecklenburg County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Mecklenburg County violated its basic duty to implement a timely litigation hold. Mecklenburg County filed its original complaint on June 14, 2019, but waited until July 10, 2024 to implement a litigation hold—over five years later.

*See Mecklenburg County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45174-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 10, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Mecklenburg County's case would force the parties and the Court to waste time and resources ascertaining the extent of Mecklenburg County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Mecklenburg County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Mecklenburg County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Mecklenburg County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Mecklenburg County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Mecklenburg County of this deficiency on September 16, 2024 (*see* Exhibit B), but Mecklenburg County refused to amend or supplement its Fact Sheet. Under this Court's orders, Mecklenburg County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Mecklenburg County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Mecklenburg County's potential claims against them. Mecklenburg County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend,

in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Mecklenburg County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Mecklenburg County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Mecklenburg County's proposed RICO claim against the PBMs has expired. Mecklenburg County filed its original complaint on June 14, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Mecklenburg County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45174-DAP, ECF No. 1-2. Even assuming *arguendo* that Mecklenburg County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 14, 2023. Mecklenburg County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Mecklenburg County's request for leave to amend to add

a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Mecklenburg County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1662.** *Goochland County, VA v. Mallinckrodt, PLC et al.*, **Case No. 1:20-op-45175-DAP: Plaintiff Goochland County, Virginia**

Goochland County's untimely motion for leave to amend should be denied for several reasons. Goochland County failed to provide notice of its proposed amendments through a proposed complaint. Goochland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Goochland County's motion should be denied due to futility, as Goochland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Goochland County previously alleged claims against some of the PBMs in its original complaint on January 14, 2020. *See Goochland County, VA v. Mallinckrodt, PLC et al.*, Case No. 1:20-op-45175-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Goochland County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Goochland County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants nearly four years ago. As described above, the omnibus motions say nothing

about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Goochland County's complaint, Goochland County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A, above. Goochland County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Goochland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Goochland County). That insignificant dispensing volume is much too low to support a finding of good cause for Goochland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Goochland County violated its basic duty to implement a timely litigation hold. Goochland County filed its original complaint on January 14, 2020, but waited until July 25, 2024 to implement a litigation hold—over four and a half years later. *See Goochland County, VA v. Mallinckrodt, PLC et al.*, Case No. 1:20-op-45175-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 25, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Goochland County's case would force the parties and the Court to waste time and resources ascertaining the extent of Goochland County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Goochland County's disregard for its most basic discovery

obligations as a litigant, compounded by the delay in seeking leave to amend, and Goochland County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Goochland County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Goochland County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Goochland County of this deficiency on September 16, 2024 (*see* Exhibit B), but Goochland County refused to amend or supplement its Fact Sheet. Under this Court's orders, Goochland County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Goochland County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Goochland County's potential claims against them. Goochland County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Goochland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Goochland County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Goochland County's proposed RICO claim against the PBMs has expired. Goochland County filed its original complaint on January 14, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Goochland County, VA v. Mallinckrodt, PLC et al.*, Case No. 1:20-op-45175-DAP, ECF No. 1-2. Even assuming *arguendo* that Goochland County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 14, 2024. Goochland County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Goochland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Goochland County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1663. *City of Winchester, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45176-DAP: Plaintiff Winchester City, Virginia

Winchester City's untimely motion for leave to amend should be denied for several reasons. Winchester City failed to provide notice of its proposed amendments through a proposed complaint. Winchester City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winchester City's motion should be denied due to futility, as Winchester City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winchester City previously alleged claims against some of the PBMs in its original complaint on February 12, 2020. *See City of Winchester, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45176-DAP, ECF No. 1-3 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Winchester City could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Winchester City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants nearly four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Winchester City's complaint, Winchester City already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A,

above. Winchester City was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Winchester City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Winchester City). That insignificant dispensing volume is much too low to support a finding of good cause for Winchester City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Winchester City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Winchester City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Winchester City violated its basic duty to implement a timely litigation hold. Winchester City filed its original complaint on February 12, 2020, but waited until August 12, 2024 to implement a litigation hold—four and a half years later. *See City of Winchester, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45176-DAP, ECF No. 1-3; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: August 12, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Winchester City's case would force the parties and the Court to waste time and resources ascertaining the extent of Winchester City's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Winchester City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Winchester City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Winchester City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Winchester City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Winchester City of this deficiency on September 16, 2024 (*see* Exhibit B), but Winchester City refused to amend or supplement its Fact Sheet. Under this Court's orders, Winchester City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Winchester City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Winchester City's potential claims against them. Winchester City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winchester City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winchester City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Winchester City's proposed RICO claim against the PBMs has expired. Winchester City filed its original complaint on February 12, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Winchester, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45176-DAP, ECF No. 1-3. Even assuming *arguendo* that Winchester City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 12, 2024. Winchester City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Winchester City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Winchester City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1664.** *City of Fairfax, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45177-DAP: Plaintiff Fairfax City, Virginia

Fairfax City's untimely motion for leave to amend should be denied for several reasons. Fairfax City failed to provide notice of its proposed amendments through a proposed complaint. Fairfax City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fairfax City's motion should be denied due to futility, as Fairfax City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fairfax City previously alleged claims against some of the PBMs in its original complaint on January 3, 2020. *See City of Fairfax, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45177-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Fairfax City could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Fairfax City seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants nearly four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Fairfax City's complaint, Fairfax City already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A, above. Fairfax City was

not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fairfax City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Fairfax City). That insignificant dispensing volume is much too low to support a finding of good cause for Fairfax City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Fairfax City violated its basic duty to implement a timely litigation hold. Fairfax City filed its original complaint on January 3, 2020, but waited until July 26, 2024 to implement a litigation hold—over four and a half years later. *See City of Fairfax, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45177-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 26, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Fairfax City's case would force the parties and the Court to waste time and resources ascertaining the extent of Fairfax City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fairfax City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fairfax City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Fairfax City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Fairfax City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Fairfax City of this deficiency on September 16, 2024 (*see* Exhibit B), but Fairfax City refused to amend or supplement its Fact Sheet. Under this Court's orders, Fairfax City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Fairfax City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Fairfax City's potential claims against them. Fairfax City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fairfax City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fairfax City, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fairfax City's proposed RICO claim against the PBMs has expired. Fairfax City filed its original complaint on January 3, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Fairfax, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45177-DAP, ECF No. 1-2. Even assuming *arguendo* that Fairfax City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 3, 2024. Fairfax City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fairfax City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Fairfax City, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1665.  *Stafford County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45178-DAP: Plaintiff Stafford County, Virginia

Stafford County's untimely motion for leave to amend should be denied for several reasons. Stafford County failed to provide notice of its proposed amendments through a proposed complaint. Stafford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Stafford County's motion should be denied due to futility, as Stafford County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Stafford County previously alleged claims against some of the PBMs in its original complaint on January 3, 2020. *See Stafford County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45178-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Stafford County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Stafford County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants nearly four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Stafford County's complaint, Stafford County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A, above. Stafford County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Stafford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Stafford County). That insignificant dispensing volume is much too low to support a finding of good cause for Stafford County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Stafford County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Stafford County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Stafford County violated its basic duty to implement a timely litigation hold. Stafford County filed its original complaint on January 3, 2020, but waited until July 17, 2024 to implement a litigation hold—over four and a half years later. *See Stafford County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45178-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 17, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Stafford County's case would force the parties and the Court to waste time and resources ascertaining the extent of Stafford County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Stafford County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Stafford County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Stafford County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Stafford County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period.

The PBMs notified Stafford County of this deficiency on September 16, 2024 (*see* Exhibit B), but Stafford County refused to amend or supplement its Fact Sheet. Under this Court's orders, Stafford County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Stafford County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Stafford County's potential claims against them. Stafford County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Stafford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Stafford County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Stafford County's proposed RICO claim against the PBMs has expired. Stafford County filed its original complaint on January 3, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against

the PBMs. *See Stafford County, VA v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45178-DAP, ECF No. 1-2. Even assuming *arguendo* that Stafford County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on January 3, 2024. Stafford County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Stafford County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Stafford County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1666. *Bedford County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45184-DAP: Plaintiff Bedford County, Pennsylvania

Bedford County's untimely motion for leave to amend should be denied for several reasons. Bedford County failed to provide notice of its proposed amendments through a proposed complaint. Bedford County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bedford County's motion should be denied due to futility, as Bedford County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bedford County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Bedford County filed its original complaint on February 11, 2020 and the case was transferred to the MDL on June 15, 2020. *See Bedford County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45184-DAP, ECF No. 13. Bedford County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Bedford County elected not to do so. Instead, Bedford County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Bedford County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bedford County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.12% market share for Bedford County). That insignificant dispensing volume is much too low to support a finding of good cause for Bedford County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bedford County filed its original complaint on February 11, 2020. *See Bedford County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45184-DAP, ECF No. 1, 1-1. Despite filing its case years ago, Bedford County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Bedford County's case would force the

parties and the Court to waste time and resources ascertaining the extent of Bedford County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bedford County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bedford County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bedford County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bedford County, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Bedford County's proposed RICO claim against the PBMs has expired. Bedford County filed its original complaint on February 11, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Bedford County v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45184-DAP, ECF No. 1; 1-1. Even assuming *arguendo* that Bedford County first learned of its injury on

the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 11, 2024. Bedford County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Bedford County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Bedford County, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1667. *City of Chico et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45189-DAP: Plaintiff Chico City, California

Chico City's untimely motion for leave to amend should be denied for several reasons. Chico City failed to provide notice of its proposed amendments through a proposed complaint. Chico City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chico City's motion should be denied due to futility, as Chico City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chico City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chico City amended its complaint on September 23, 2020, after transfer to the MDL on June 25, 2020. *See City of Chico et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45189-DAP, ECF No. 12. Unlike many other plaintiffs, Chico City declined to add claims against

the PBMs in its amended complaint. *See* Section II.A.1, above. Chico City's deadline to amend was in 2020. Chico City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Chico City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Chico City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Chico City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Chico City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chico City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl.

(0.10% market share for Chico City). That insignificant dispensing volume is much too low to support a finding of good cause for Chico City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Chico City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Chico City's proposed RICO claim against the PBMs has expired. Chico City filed its original complaint on April 29, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Chico et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45189-DAP, ECF No. 1. It is therefore indisputable that Chico City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Chico City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Chico City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Chico City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1668.** *Hinds County, Mississippi v. Teva Pharmaceuticals USA, Inc., et al.*, Case No. 1:20-op-45190-DAP: Plaintiff Hinds County, Mississippi

Hinds County's untimely motion for leave to amend should be denied for several reasons. Hinds County failed to provide notice of its proposed amendments through a proposed complaint. Hinds County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hinds County's motion should be denied due to futility, as Hinds County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hinds County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hinds County filed its original complaint directly into the MDL on June 24, 2020. *See Hinds County, Mississippi v. Teva Pharmaceuticals USA, Inc., et al.*, Case No. 1:20-op-45190-DAP, ECF No. 1. Hinds County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Hinds County elected not to do so. Hinds County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Hinds County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Hinds County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.03% market share for Hinds County). That insignificant dispensing volume is much too low to support a finding of good cause for Hinds County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Hinds County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Hinds County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Mississippi law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hinds County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Mississippi law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hinds County, a municipality in Mississippi, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Hinds County's proposed RICO claim against the PBMs has expired. Hinds County filed its original complaint on June 24, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See*

*Hinds County, Mississippi v. Teva Pharmaceuticals USA, Inc., et al.*, Case No. 1:20-op-45190-DAP, ECF No. 1. It is therefore indisputable that Hinds County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Hinds County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Hinds County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Hinds County, a municipality in Mississippi, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1669.** *City of West Frankfort, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, **Case No. 1:20-op-45191-DAP: Plaintiff West Frankfort City, Illinois**

West Frankfort City's untimely motion for leave to amend should be denied for several reasons. West Frankfort City failed to provide notice of its proposed amendments through a proposed complaint. West Frankfort City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, West Frankfort City's motion should be denied due to futility, as West Frankfort City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** West Frankfort City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, West Frankfort City amended its complaint on September 18, 2020, after directly filing

in the MDL. *See City of West Frankfort, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45191-DAP, ECF No. 2. Unlike many other plaintiffs, West Frankfort City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. West Frankfort City's deadline to amend was in 2020. West Frankfort City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. West Frankfort City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** West Frankfort City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. West Frankfort City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. West Frankfort City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to West Frankfort City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for West Frankfort City). That insignificant dispensing volume is much too low to support a finding of good cause for West Frankfort City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to West Frankfort City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for West Frankfort City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But West Frankfort City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** West Frankfort City, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for West Frankfort City's proposed RICO claim against the PBMs has expired. West Frankfort City filed its original complaint on June 24, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of West Frankfort, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45191-DAP, ECF No. 1. It is therefore indisputable that West Frankfort City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. West Frankfort City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. West Frankfort City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** West Frankfort City, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1670. *City of Herrin, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45192-DAP: Plaintiff Herrin City, Illinois

Herrin City's untimely motion for leave to amend should be denied for several reasons. Herrin City failed to provide notice of its proposed amendments through a proposed complaint. Herrin City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Herrin City's motion should be denied due to futility, as Herrin City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Herrin City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Herrin City amended its complaint on September 18, 2020, after directly filing in the MDL. *See City of Herrin, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45192-DAP, ECF No. 2. Unlike many other plaintiffs, Herrin City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Herrin City's deadline to amend was in 2020. Herrin City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Herrin City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Herrin City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Herrin City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Herrin City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part

because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Herrin City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Herrin City). That insignificant dispensing volume is much too low to support a finding of good cause for Herrin City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Herrin City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Herrin City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Herrin City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Herrin City, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Herrin City's proposed RICO claim against the PBMs has expired. Herrin City filed its original complaint on June 25, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Herrin, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45192-DAP, ECF No. 1. It is therefore indisputable that Herrin City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Herrin City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Herrin City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Herrin City, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1671. *People of the State of Illinois et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45194-DAP: Plaintiff Franklin County, Illinois**

Franklin County's untimely motion for leave to amend should be denied for several reasons. Franklin County failed to provide notice of its proposed amendments through a proposed complaint. Franklin County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Franklin County's motion should be denied due to futility, as Franklin County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Franklin County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Franklin County amended its complaint on September 18, 2020, after directly filing in the MDL. *See People of the State of Illinois et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45194-DAP, ECF No. 2. Unlike many other plaintiffs, Franklin County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Franklin County's deadline to amend was in 2020. Franklin County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Franklin County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Franklin County cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Franklin County, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Franklin County fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part

of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Franklin County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Franklin County). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Franklin County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Franklin County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Franklin County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Franklin County, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Franklin County's proposed RICO claim against the PBMs has expired. Franklin County filed its original complaint on June 30, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See People of the State of Illinois et al. v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45194-DAP, ECF No. 1. It is therefore indisputable that Franklin County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Franklin County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Franklin County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Franklin County, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1672. *City of Madison, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45198-DAP: Plaintiff Madison City, Alabama

Madison City's untimely motion for leave to amend should be denied for several reasons. Madison City failed to provide notice of its proposed amendments through a proposed complaint. Madison City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Madison City's motion should be

denied due to futility, as Madison City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Madison City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Madison City filed its original complaint directly into the MDL on July 15, 2020. *See City of Madison, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45198-DAP, ECF No. 1. Madison City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Madison City elected not to do so. Madison City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Madison City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Madison City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Madison City). That insignificant dispensing volume is much too low to support a finding of good cause for Madison City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Madison City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.46% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Madison City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Madison City filed its original complaint on July 15, 2020. *See City of Madison, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45198-DAP, ECF No. 1. Despite filing its case years ago, Madison City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Madison City's case would force the parties and the Court to waste time and resources ascertaining the extent of Madison City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Madison City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Madison City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Madison City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Madison City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Madison City of this deficiency on September 16, 2024 (*see* Exhibit B), but Madison City

refused to amend or supplement its Fact Sheet. Under this Court's orders, Madison City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Madison City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Madison City's potential claims against them. Madison City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Madison City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Madison City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Madison City's proposed RICO claim against the PBMs has expired. Madison City filed its original complaint on July 15, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Madison, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-

45198-DAP, ECF No. 1. It is therefore indisputable that Madison City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Madison City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Madison City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Madison City's public-nuisance claim against the PBMs is therefore time-barred because Madison City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on July 15, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Madison City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1673.** ***City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP: Plaintiff Decatur Town, Tennessee**

Decatur Town's untimely motion for leave to amend should be denied for several reasons. Decatur Town failed to provide notice of its proposed amendments through a proposed complaint. Decatur Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Decatur Town's motion should be denied due to futility, as Decatur Town does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Decatur Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Decatur Town filed its original complaint directly into the MDL on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Decatur Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Decatur Town elected not to do so. Decatur Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Decatur Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Decatur Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Decatur Town). That insignificant dispensing volume is much too low to support a finding of good cause for Decatur Town to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

    **Failure to Implement a Litigation Hold.** Decatur Town filed its original complaint on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Despite filing its case years ago, Decatur Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Decatur Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Decatur Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Decatur Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Decatur Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

    **Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Decatur Town has *never* served a Plaintiff Fact Sheet. Decatur Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Decatur Town's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6

(denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Decatur Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Decatur Town, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Decatur Town's proposed RICO claim against the PBMs has expired. Decatur Town filed its original complaint on July 15, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. It is therefore indisputable that Decatur Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Decatur Town's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Decatur Town's request for leave to amend to add a RICO

claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Decatur Town, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1674.** *City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, **Case No. 1:20-op-45199-DAP: Plaintiff Germantown City, Tennessee**

Germantown City's untimely motion for leave to amend should be denied for several reasons. Germantown City failed to provide notice of its proposed amendments through a proposed complaint. Germantown City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Germantown City's motion should be denied due to futility, as Germantown City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Germantown City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Germantown City filed its original complaint directly into the MDL on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Germantown City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Germantown City elected not to do so. Germantown City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Germantown City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Germantown City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Germantown City). That insignificant dispensing volume is much too low to support a finding of good cause for Germantown City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Germantown City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Germantown City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Germantown City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Germantown City of the PBM services Express Scripts provides and Germantown City began receiving those services on April 2, 2009. *See id.* Inasmuch as Germantown City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl.

¶¶ 733, 741, 786–816, 821–22, 845), Germantown City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Germantown City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Germantown City filed its original complaint on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Despite filing its case years ago, Germantown City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Germantown City's case would force the parties and the Court to waste time and resources ascertaining the extent of Germantown City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Germantown City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Germantown City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Germantown City has *never* served a Plaintiff Fact Sheet. Germantown City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Germantown City's failure to diligently prosecute its case

negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Germantown City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Germantown City, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Germantown City's proposed RICO claim against the PBMs has expired. Germantown City filed its original complaint on July 15, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. It is therefore indisputable that Germantown City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Germantown City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period

is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Germantown City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Germantown City, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1675.** *City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, **Case No. 1:20-op-45199-DAP: Plaintiff Maryville City, Tennessee**

Maryville City's untimely motion for leave to amend should be denied for several reasons. Maryville City failed to provide notice of its proposed amendments through a proposed complaint. Maryville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Maryville City's motion should be denied due to futility, as Maryville City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Maryville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Maryville City filed its original complaint directly into the MDL on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Maryville City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Maryville City elected not to do so. Maryville City waited four years after its deadline to amend

to seek leave to assert claims against the PBMs. Maryville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Maryville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Maryville City). That insignificant dispensing volume is much too low to support a finding of good cause for Maryville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Maryville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.32% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Maryville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Maryville City previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Maryville City of the PBM services Express Scripts provides and Maryville City began receiving those services on January 1,

2006. *See id.* Inasmuch as Maryville City seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Maryville City knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Maryville City's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Maryville City filed its original complaint on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Despite filing its case years ago, Maryville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Maryville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Maryville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Maryville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Maryville City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Maryville City has *never* served a Plaintiff Fact Sheet. Maryville City's case is therefore subject to

"*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Maryville City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Maryville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Maryville City, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Maryville City's proposed RICO claim against the PBMs has expired. Maryville City filed its original complaint on July 15, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. It is therefore indisputable that Maryville City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before

seeking leave to amend. Maryville City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Maryville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Maryville City, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1676.** *City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, **Case No. 1:20-op-45199-DAP: Plaintiff Pigeon Forge City, Tennessee**

Pigeon Forge City's untimely motion for leave to amend should be denied for several reasons. Pigeon Forge City failed to provide notice of its proposed amendments through a proposed complaint. Pigeon Forge City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pigeon Forge City's motion should be denied due to futility, as Pigeon Forge City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pigeon Forge City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pigeon Forge City filed its original complaint directly into the MDL on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Pigeon Forge City could have amended its complaint, without

leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Pigeon Forge City elected not to do so. Pigeon Forge City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Pigeon Forge City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pigeon Forge City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Pigeon Forge City). That insignificant dispensing volume is much too low to support a finding of good cause for Pigeon Forge City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pigeon Forge City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pigeon Forge City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Pigeon Forge City filed its original complaint on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD,*

*et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Despite filing its case years ago, Pigeon Forge

City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455).

*See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Pigeon Forge City's

case would force the parties and the Court to waste time and resources ascertaining the extent of

Pigeon Forge City's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The

PBMs are prejudiced by Pigeon Forge City's disregard for its most basic discovery obligations as

a litigant, compounded by the delay in seeking leave to amend, and Pigeon Forge City therefore

lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying

leave to amend in part because the passage of time resulted in significant prejudice due to the loss

of documents or records); *see also* Section III.A.4, above.

      **Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Pigeon

Forge City has *never* served a Plaintiff Fact Sheet. Pigeon Forge City's case is therefore subject to

"***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original);

*see* Section III.A.5, above. Pigeon Forge City's failure to diligently prosecute its case negates any

finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF

No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs'

counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6

(denying motion for leave to amend as moot because claims were dismissed for failure to

prosecute).

      **Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to

seek to allocate fault to other parties. *See* Section III.A.6, above. But Pigeon Forge City's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pigeon Forge City, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Pigeon Forge City's proposed RICO claim against the PBMs has expired. Pigeon Forge City filed its original complaint on July 15, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. It is therefore indisputable that Pigeon Forge City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Pigeon Forge City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Pigeon Forge City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Pigeon Forge City, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1677.** *City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, **Case No. 1:20-op-45199-DAP: Plaintiff Ripley City, Tennessee**

Ripley City's untimely motion for leave to amend should be denied for several reasons. Ripley City failed to provide notice of its proposed amendments through a proposed complaint. Ripley City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Ripley City's motion should be denied due to futility, as Ripley City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Ripley City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Ripley City filed its original complaint directly into the MDL on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Ripley City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Ripley City elected not to do so. Ripley City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Ripley City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Ripley City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Ripley City). That insignificant dispensing volume is much too low to support a finding of good cause for Ripley City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Ripley City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Ripley City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Ripley City filed its original complaint on July 15, 2020. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. Despite filing its case years ago, Ripley City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Ripley City's case would force the parties and the Court to waste time and resources ascertaining the extent of Ripley City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Ripley City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Ripley City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Ripley City has *never* served a Plaintiff Fact Sheet. Ripley City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Ripley City's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Ripley City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Ripley City, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Ripley City's proposed RICO claim against the PBMs has expired. Ripley City filed its original complaint on July 15, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Maryville, Tennessee et al. v. Teva Pharmaceutical Industries, LTD, et al.*, Case No. 1:20-op-45199-DAP, ECF No. 1. It is therefore indisputable that Ripley City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave

to amend. Ripley City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Ripley City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Ripley City, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1678. *DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45209-DAP: Plaintiff DeKalb County, Alabama

DeKalb County's untimely motion for leave to amend should be denied for several reasons. DeKalb County failed to provide notice of its proposed amendments through a proposed complaint. DeKalb County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, DeKalb County's motion should be denied due to futility, as DeKalb County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** DeKalb County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, DeKalb County filed its original complaint directly into the MDL on July 24, 2020. *See DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45209-

DAP, ECF No. 1. DeKalb County could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, DeKalb County elected not to do so. DeKalb County waited four years after its deadline to amend to seek leave to assert claims against the PBMs. DeKalb County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to DeKalb County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for DeKalb County). That insignificant dispensing volume is much too low to support a finding of good cause for DeKalb County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to DeKalb County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.30% market share). That insignificant dispensing volume is much too low to support a finding of good cause for DeKalb County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** DeKalb County filed its original complaint on July 24, 2020. *See DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*,

Case No. 1:20-op-45209-DAP, ECF No. 1. Despite filing its case years ago, DeKalb County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating DeKalb County's case would force the parties and the Court to waste time and resources ascertaining the extent of DeKalb County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by DeKalb County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and DeKalb County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, DeKalb County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to DeKalb County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified DeKalb County of this deficiency on September 16, 2024 (*see* Exhibit B), but DeKalb County refused to amend or supplement its Fact Sheet. Under this Court's orders, DeKalb County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. DeKalb County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against DeKalb County's potential claims against them. DeKalb County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend

to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But DeKalb County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** DeKalb County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for DeKalb County's proposed RICO claim against the PBMs has expired. DeKalb County filed its original complaint on July 24, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45209-DAP, ECF No. 1. It is therefore indisputable that DeKalb County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. DeKalb County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. DeKalb County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. DeKalb County's public-nuisance claim against the PBMs is therefore time-barred because DeKalb County sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on July 24, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** DeKalb County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** DeKalb County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1679.** ***DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45209-DAP: Plaintiff Powell Town, Alabama**

Powell Town's untimely motion for leave to amend should be denied for several reasons. Powell Town failed to provide notice of its proposed amendments through a proposed complaint. Powell Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Powell Town's motion should be denied due to futility, as Powell Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is

barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Powell Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Powell Town filed its original complaint directly into the MDL on July 24, 2020. *See DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45209-DAP, ECF No. 1. Powell Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Powell Town elected not to do so. Powell Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Powell Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Powell Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Powell Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Powell Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl.,

Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Powell Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Powell Town filed its original complaint on July 24, 2020. *See DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45209-DAP, ECF No. 1. Despite filing its case years ago, Powell Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Powell Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Powell Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Powell Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Powell Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Powell Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Powell Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Powell Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Powell Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Powell Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Powell Town's refusal to provide basic

information related to its health care plans prejudices the PBMs' ability to defend against Powell Town's potential claims against them. Powell Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Powell Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Powell Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Powell Town's proposed RICO claim against the PBMs has expired. Powell Town filed its original complaint on July 24, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See DeKalb County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45209-DAP, ECF No. 1. It is therefore indisputable that Powell Town knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Powell Town's RICO claim is therefore time-barred by RICO's four-year

limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Powell Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Powell Town's public-nuisance claim against the PBMs is therefore time-barred because Powell Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on July 24, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Powell Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1680. *City of Oneonta, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45210-DAP: Plaintiff Oneonta City, Alabama

Oneonta City's untimely motion for leave to amend should be denied for several reasons. Oneonta City failed to provide notice of its proposed amendments through a proposed complaint. Oneonta City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Oneonta City's motion should be denied due to futility, as Oneonta City does not assert any allegations tying the PBMs to its alleged

harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Oneonta City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Oneonta City filed its original complaint directly into the MDL on July 24, 2020. *See City of Oneonta, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45210-DAP, ECF No. 1. Oneonta City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Oneonta City elected not to do so. Oneonta City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Oneonta City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Oneonta City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Oneonta City). That insignificant dispensing volume is much too low to support a finding of good cause for Oneonta City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Oneonta City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Oneonta City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Oneonta City filed its original complaint on July 24, 2020. *See City of Oneonta, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45210-DAP, ECF No. 1. Despite filing its case years ago, Oneonta City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Oneonta City's case would force the parties and the Court to waste time and resources ascertaining the extent of Oneonta City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Oneonta City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Oneonta City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Oneonta City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Oneonta City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Oneonta City of this deficiency on September 16, 2024 (*see* Exhibit B), but Oneonta City

refused to amend or supplement its Fact Sheet. Under this Court's orders, Oneonta City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Oneonta City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Oneonta City's potential claims against them. Oneonta City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Oneonta City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Oneonta City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Oneonta City's proposed RICO claim against the PBMs has expired. Oneonta City filed its original complaint on July 24, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Oneonta, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-

45210-DAP, ECF No. 1. It is therefore indisputable that Oneonta City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Oneonta City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Oneonta City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Oneonta City's public-nuisance claim against the PBMs is therefore time-barred because Oneonta City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on July 24, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Oneonta City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1681. *City of Marion, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45215-DAP: Plaintiff Marion City, Illinois

Marion City's untimely motion for leave to amend should be denied for several reasons. Marion City failed to provide notice of its proposed amendments through a proposed complaint. Marion City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because

its untimely motion would unduly prejudice the PBMs. Moreover, Marion City's motion should be denied due to futility, as Marion City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marion City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marion City amended its complaint on October 26, 2020, after directly filing in the MDL. *See City of Marion, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45215-DAP, ECF No. 2. Unlike many other plaintiffs, Marion City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Marion City's deadline to amend was in 2020. Marion City waited almost four years after its deadline to amend to seek leave to assert claims against the PBMs. Marion City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Marion City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Marion City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Marion City fails to explain why it was unable to assert claims against the PBMs in 2019 when its

own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Marion City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Marion City). That insignificant dispensing volume is much too low to support a finding of good cause for Marion City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Marion City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Marion City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marion City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marion City, a municipality in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Marion City's proposed RICO claim against the PBMs has expired. Marion City filed its original complaint on July 28, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Marion, Illinois v. Teva Pharmaceutical Industries, Ltd. et al.*, Case No. 1:20-op-45215-DAP, ECF No. 1. It is therefore indisputable that Marion City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Marion City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Marion City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Marion City, a municipality in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1682.** ***Town of Dandridge, Tennessee v. Teva Pharmaceutical Industries, LTD.*** ***et al.*, Case No. 1:20-op-45216-DAP: Plaintiff Dandridge Town, Tennessee**

Dandridge Town's untimely motion for leave to amend should be denied for several reasons. Dandridge Town failed to provide notice of its proposed amendments through a proposed complaint. Dandridge Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dandridge Town's motion should be denied due to futility, as Dandridge Town does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dandridge Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dandridge Town filed its original complaint directly into the MDL on July 29, 2020. *See Town of Dandridge, Tennessee v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:20-op-45216-DAP, ECF No. 1. Dandridge Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Dandridge Town elected not to do so. Dandridge Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Dandridge Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Dandridge Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.14% market share for Dandridge Town). That insignificant dispensing volume is much too low to support a finding of good cause for Dandridge Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Dandridge Town filed its original complaint on July 29, 2020. *See Town of Dandridge, Tennessee v. Teva Pharmaceutical Industries, LTD. et al.*, Case No. 1:20-op-45216-DAP, ECF No. 1. Despite filing its case years ago, Dandridge Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Dandridge Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Dandridge Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dandridge Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dandridge Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Dandridge Town has *never* served a Plaintiff Fact Sheet. Dandridge Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dandridge Town's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF

No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dandridge Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dandridge Town, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Dandridge Town, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1683.** ***Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP: Plaintiff Cleveland Town, Alabama**

Cleveland Town's untimely motion for leave to amend should be denied for several reasons. Cleveland Town failed to provide notice of its proposed amendments through a proposed complaint. Cleveland Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cleveland Town's motion should be denied due to futility, as

Cleveland Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cleveland Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cleveland Town filed its original complaint directly into the MDL on July 29, 2020. *See Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP, ECF No. 1. Cleveland Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Cleveland Town elected not to do so. Cleveland Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Cleveland Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Cleveland Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Cleveland Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cleveland Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cleveland Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cleveland Town filed its original complaint on July 29, 2020. *See Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP, ECF No. 1. Despite filing its case years ago, Cleveland Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cleveland Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Cleveland Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cleveland Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cleveland Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cleveland Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cleveland Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cleveland Town of this deficiency on September 16, 2024 (*see* Exhibit B), but

Cleveland Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Cleveland Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cleveland Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cleveland Town's potential claims against them. Cleveland Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cleveland Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cleveland Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Cleveland Town's public-nuisance claim against the PBMs is therefore time-barred because Cleveland Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on July 29, 2020—and the proposed

amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Cleveland Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1684. *Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:20-op-45217-DAP: Plaintiff Gurley Town, Alabama**

Gurley Town's untimely motion for leave to amend should be denied for several reasons. Gurley Town failed to provide notice of its proposed amendments through a proposed complaint. Gurley Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gurley Town's motion should be denied due to futility, as Gurley Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gurley Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gurley Town filed its original complaint directly into the MDL on July 29, 2020. *See Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP, ECF No. 1. Gurley Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Gurley Town elected not to do so. Gurley Town waited four years after its deadline to amend to seek leave

to assert claims against the PBMs. Gurley Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gurley Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Gurley Town). That insignificant dispensing volume is much too low to support a finding of good cause for Gurley Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Gurley Town filed its original complaint on July 29, 2020. *See Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP, ECF No. 1. Despite filing its case years ago, Gurley Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Gurley Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Gurley Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gurley Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Gurley Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend

in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Gurley Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Gurley Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Gurley Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Gurley Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Gurley Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Gurley Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Gurley Town's potential claims against them. Gurley Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gurley Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gurley Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Gurley Town's public-nuisance claim against the PBMs is therefore time-barred because Gurley Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on July 29, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Gurley Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 1685. ***Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP: Plaintiff Priceville Town, Alabama**

Priceville Town's untimely motion for leave to amend should be denied for several reasons. Priceville Town failed to provide notice of its proposed amendments through a proposed complaint. Priceville Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Priceville Town's motion should be denied due to futility, as Priceville Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Priceville Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Priceville Town filed its original complaint directly into the MDL on July 29, 2020. *See Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP, ECF No. 1. Priceville Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Priceville Town elected not to do so. Priceville Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Priceville Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Priceville Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Priceville Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Priceville Town filed its original complaint on July 29, 2020. *See Town of Cleveland, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45217-DAP, ECF No. 1. Despite filing its case years ago, Priceville Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See*

ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Priceville Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Priceville Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Priceville Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Priceville Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Priceville Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Priceville Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Priceville Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Priceville Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Priceville Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Priceville Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Priceville Town's potential claims against them. Priceville Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Priceville Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Priceville Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Priceville Town's public-nuisance claim against the PBMs is therefore time-barred because Priceville Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on July 29, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Priceville Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1686. *City of Killen, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45218-DAP: Plaintiff Killen Town, Alabama

Killen Town's untimely motion for leave to amend should be denied for several reasons. Killen Town failed to provide notice of its proposed amendments through a proposed complaint.

Killen Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Killen Town's motion should be denied due to futility, as Killen Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Killen Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Killen Town filed its original complaint directly into the MDL on July 30, 2020. *See City of Killen, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45218-DAP, ECF No. 1. Killen Town could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Killen Town elected not to do so. Killen Town waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Killen Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Killen Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Killen Town). That insignificant dispensing volume is much too low to support a finding of good cause for Killen Town to add dispensing claims against

OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Killen Town filed its original complaint on July 30, 2020. *See City of Killen, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45218-DAP, ECF No. 1. Despite filing its case years ago, Killen Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Killen Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Killen Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Killen Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Killen Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Killen Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Killen Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Killen Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Killen Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Killen Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Killen Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Killen

Town's potential claims against them. Killen Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Killen Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Killen Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Killen Town's public-nuisance claim against the PBMs is therefore time-barred because Killen Town sought leave to amend its complaint on July 29, 2024— nearly four years after filing its original complaint on July 30, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Killen Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1687. *Ard v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:20-op-45220-DAP: Plaintiff Sheriff of Livingston Parish, Louisiana

Sheriff of Livingston Parish's untimely motion for leave to amend should be denied for several reasons. Sheriff of Livingston Parish failed to provide notice of its proposed amendments through a proposed complaint. Sheriff of Livingston Parish also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheriff of Livingston Parish's motion should be denied due to futility, as Sheriff of Livingston Parish does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheriff of Livingston Parish was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheriff of Livingston Parish filed its original complaint on June 11, 2020 and the case was transferred to the MDL on August 5, 2020. *See Ard v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:20-op-45220-DAP, ECF No. 11. Sheriff of Livingston Parish could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Sheriff of Livingston Parish elected not to do so. Instead, Sheriff of Livingston Parish waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Sheriff of Livingston Parish's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Sheriff of Livingston Parish's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.003% market share for Livingston Parish). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Livingston Parish to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Sheriff of Livingston Parish's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Sheriff of Livingston Parish to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Sheriff of Livingston Parish filed its original complaint on June 11, 2020. *See Ard v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:20-op-45220-DAP, ECF No. 1-3. Despite filing its case years ago, Sheriff of Livingston Parish *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sheriff of

Livingston Parish's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheriff of Livingston Parish's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheriff of Livingston Parish's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheriff of Livingston Parish therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Louisiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheriff of Livingston Parish's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Louisiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheriff of Livingston Parish, a municipality in Louisiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Sheriff of Livingston Parish seeks leave to amend to add claims against the PBMs in two cases: *Livingston Parish v. Teva Pharmaceutical Industries, Ltd., et al.*, No. 1:19-op-46140-DAP; and *Ard v. Teva Pharmaceuticals USA, Inc., et al.*, No. 1:20-op-45220-DAP. Sheriff of Livingston Parish's impermissible claim-splitting is a waste of judicial

resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Sheriff of Livingston Parish's proposed RICO claim against the PBMs has expired. Sheriff of Livingston Parish filed its original complaint on June 11, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Ard v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:20-op-45220-DAP, ECF No. 1-3. Even assuming *arguendo* that Sheriff of Livingston Parish first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 11, 2024. Sheriff of Livingston Parish's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheriff of Livingston Parish's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Louisiana, public-nuisance claims are subject to an one-year limitations period. Sheriff of Livingston Parish's public-nuisance claim against the PBMs is therefore time-barred because Sheriff of Livingston Parish sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on June 11, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Sheriff of Livingston Parish, a municipality in Louisiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1688. *City of Daphne, Alabama v. Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45227-DAP: Plaintiff Daphne City, Alabama

Daphne City's untimely motion for leave to amend should be denied for several reasons. Daphne City failed to provide notice of its proposed amendments through a proposed complaint. Daphne City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Daphne City's motion should be denied due to futility, as Daphne City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Daphne City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Daphne City filed its original complaint on February 21, 2020 and the case was transferred to the MDL on August 7, 2020. *See City of Daphne, Alabama v. Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45227-DAP, ECF No. 44. Daphne City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Daphne City elected not to do so. Instead, Daphne City waited four years after its

deadline to amend to seek leave to assert claims against the PBMs. Daphne City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Daphne City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Daphne City). That insignificant dispensing volume is much too low to support a finding of good cause for Daphne City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has a Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Daphne City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.14% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Daphne City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Daphne City filed its original complaint on February 21, 2020. *See City of Daphne, Alabama v. Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45227-DAP, ECF No. 1-1. Despite filing its case years ago, Daphne City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF

No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Daphne City's case would force the parties and the Court to waste time and resources ascertaining the extent of Daphne City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Daphne City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Daphne City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Daphne City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Daphne City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Daphne City of this deficiency on September 16, 2024 (*see* Exhibit B), but Daphne City refused to amend or supplement its Fact Sheet. Under this Court's orders, Daphne City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Daphne City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Daphne City's potential claims against them. Daphne City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Daphne City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Daphne City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Daphne City's proposed RICO claim against the PBMs has expired. Daphne City filed its original complaint on February 21, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Daphne, Alabama v. Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45227-DAP, ECF No. 1-1. Even assuming *arguendo* that Daphne City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on February 21, 2024. Daphne City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Daphne City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Daphne City's public-nuisance claim against the PBMs is

therefore time-barred because Daphne City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on February 21, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Daphne City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1689. ***Wayne Farms, LLC v. McKesson Corporation et al.*, Case No. 1:20-op-45229-DAP: Plaintiff Wayne Farms, LLC, Oklahoma[3]**

Wayne Farms, LLC's untimely motion for leave to amend should be denied for several reasons. Wayne Farms, LLC failed to provide notice of its proposed amendments through a

---

[3] While the PEC's omnibus motions identify Wayne Farms, LLC as an Oklahoma plaintiff (*see* ECF No. 5546-1 at 120, 224; ECF No. 5565-1 at 124, 227), the allegations in Wayne Farms, LLC's original complaint relate only to Georgia (*see Wayne Farms, LLC v. McKesson Corporation et al.*, Case No. 1:20-op-45229-DAP, ECF No. 1). Additionally, the civil cover sheet filed with Wayne Farms, LLC's original complaint identifies Wayne Farms, LLC as a resident of Hall County, Georgia. *See Wayne Farms, LLC v. McKesson Corporation et al.*, Case No. 1:20-op-45229-DAP, ECF No. 1-1. Accordingly, the PBMs treat Wayne Farms, LLC as a Georgia plaintiff notwithstanding the PEC's representation. But even if Wayne Farms, LLC were an Oklahoma plaintiff, its untimely motion for leave to amend should still be denied for the same reasons explained below. The only argument raised that turns on Wayne Farms, LLC's status as a Georgia or Oklahoma plaintiff relates to the impairment of the PBMs' ability to exercise their rights under Georgia law to allocate fault to other parties given Wayne Farms, LLC's delay in seeking to amend its complaint. But the PBMs have similar rights under Oklahoma law, so that argument applies with equal force if Wayne Farms, LLC is an Oklahoma plaintiff. *See* Section III.A.6, above. Additionally, if Wayne Farms, LLC is an Oklahoma plaintiff, then its request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because its proposed public nuisance claim is barred by state law in Oklahoma. Oklahoma's public nuisance law does not extend to "the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 730; *see* Section III.B.3, above.

proposed complaint. Wayne Farms, LLC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wayne Farms, LLC's motion should be denied due to futility, as Wayne Farms, LLC does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wayne Farms, LLC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wayne Farms, LLC filed its original complaint directly into the MDL on August 10, 2020. *See Wayne Farms, LLC v. McKesson Corporation et al.*, Case No. 1:20-op-45229-DAP, ECF No. 1. Wayne Farms, LLC could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Wayne Farms, LLC elected not to do so. Wayne Farms, LLC waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Wayne Farms, LLC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Wayne Farms, LLC filed its original complaint on August 10, 2020. *See Wayne Farms, LLC v. McKesson Corporation et al.*, Case No. 1:20-op-45229-DAP, ECF No. 1. Despite filing its case years ago, Wayne Farms, LLC *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1

(Date Litigation Hold Implemented: Never). Litigating Wayne Farms, LLC's case would force the parties and the Court to waste time and resources ascertaining the extent of Wayne Farms, LLC's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Wayne Farms, LLC's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Wayne Farms, LLC therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Wayne Farms, LLC has *never* served a Plaintiff Fact Sheet. Wayne Farms, LLC's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Wayne Farms, LLC's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Georgia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wayne Farms, LLC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Georgia law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wayne Farms, LLC, a third party payor in Georgia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Wayne Farms, LLC, a third party payor in Georgia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1690. *Poarch Band of Creek Indians v. Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45231-DAP: Plaintiff Poarch Band of Creek Indians, Alabama

Poarch Band of Creek Indians's untimely motion for leave to amend should be denied for several reasons. Poarch Band of Creek Indians failed to provide notice of its proposed amendments through a proposed complaint. Poarch Band of Creek Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Poarch Band of Creek Indians's motion should be denied due to futility, as Poarch Band of Creek Indians does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Poarch Band of Creek Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Poarch Band of Creek Indians filed its original complaint on April 3, 2020 and the case was transferred to the MDL on August 13, 2020. *See Poarch Band of Creek Indians v.*

*Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45231-DAP, ECF No. 43. Poarch Band of Creek Indians could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Poarch Band of Creek Indians elected not to do so. Instead, Poarch Band of Creek Indians waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Poarch Band of Creek Indians's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Poarch Band of Creek Indians cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Poarch Band of Creek Indians, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Poarch Band of Creek Indians fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Poarch Band of Creek Indians's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Poarch Band of Creek Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Poarch Band of Creek Indians filed its original complaint on April 3, 2020. *See Poarch Band of Creek Indians v. Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45231-DAP, ECF No. 1-1. Despite filing its case years ago, Poarch Band of Creek Indians *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Poarch Band of Creek Indians's case would force the parties and the Court to waste time and resources ascertaining the extent of Poarch Band of Creek Indians's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Poarch Band of Creek Indians's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Poarch Band of Creek Indians therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Poarch Band of Creek Indians's

delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Poarch Band of Creek Indians, a native tribe in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Poarch Band of Creek Indians seeks leave to amend to add claims against the PBMs in four cases: *Poarch Band of Creek Indians v. Amneal Pharmaceuticals, LLC, et al.*, No. 1:20-op-45231-DAP; *Poarch Band of Creek Indians v. Amerisourcebergen Drug Corporation*, No. 1:20-op-45285-DAP; *Poarch Band of Creek Indians v. McKesson Corporation, et al.*, No. 1:20-op-45286-DAP; and *Poarch Band of Creek Indians v. Cardinal Health, Inc.*, No. 1:20-op-45294-DAP. Poarch Band of Creek Indians's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for Poarch Band of Creek Indians's proposed RICO claim against the PBMs has expired. Poarch Band of Creek Indians filed

its original complaint on April 3, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Poarch Band of Creek Indians v. Amneal Pharmaceuticals, LLC et al.*, Case No. 1:20-op-45231-DAP, ECF No. 1-1. Even assuming *arguendo* that Poarch Band of Creek Indians first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 3, 2024. Poarch Band of Creek Indians's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Poarch Band of Creek Indians's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Poarch Band of Creek Indians's public-nuisance claim against the PBMs is therefore time-barred because Poarch Band of Creek Indians sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on April 3, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Poarch Band of Creek Indians, a native tribe in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1691.** *Frederick County, Virginia v. Mallinckrodt PLC et al.*, **Case No. 1:20-op-45233-DAP: Plaintiff Frederick County, Virginia**

Frederick County's untimely motion for leave to amend should be denied for several reasons. Frederick County failed to provide notice of its proposed amendments through a proposed complaint. Frederick County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Frederick County's motion should be denied due to futility, as Frederick County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Frederick County previously alleged claims against some of the PBMs in its original complaint on May 6, 2020. *See Frederick County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45233-DAP, ECF No. 1-2 (bringing claims against Express Scripts, Inc.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx Inc.). Frederick County could have amended its complaint, without leave, to add claims against other PBM-related entities in 2020, but elected not to do so. *See* Section II.A.1, above. Now, Frederick County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants nearly four years ago. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Frederick County's complaint, Frederick County already had access to the relevant documents it contends give rise to its proposed claims when it filed its original complaint against the PBMs in 2020. *See* Section II.A,

above. Frederick County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Frederick County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.27% market share for Frederick County). That insignificant dispensing volume is much too low to support a finding of good cause for Frederick County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Frederick County violated its basic duty to implement a timely litigation hold. Frederick County filed its original complaint on May 6, 2020, but waited until July 15, 2024 to implement a litigation hold—four years and two months later. *See Frederick County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45233-DAP, ECF No. 1-2; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 15, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Frederick County's case would force the parties and the Court to waste time and resources ascertaining the extent of Frederick County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Frederick County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Frederick County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Frederick County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Frederick County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Frederick County of this deficiency on September 16, 2024 (*see* Exhibit B), but Frederick County refused to amend or supplement its Fact Sheet. Under this Court's orders, Frederick County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Frederick County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Frederick County's potential claims against them. Frederick County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Frederick County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Frederick County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Frederick County's proposed RICO claim against the PBMs has expired. Frederick County filed its original complaint on May 6, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Frederick County, Virginia v. Mallinckrodt PLC et al.*, Case No. 1:20-op-45233-DAP, ECF No. 1-2. Even assuming *arguendo* that Frederick County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 6, 2024. Frederick County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Frederick County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Frederick County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1692. *City of Lakeport et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45242-DAP: Plaintiff Lakeport City, California

Lakeport City's untimely motion for leave to amend should be denied for several reasons. Lakeport City failed to provide notice of its proposed amendments through a proposed complaint. Lakeport City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Lakeport City's motion should be denied due to futility, as Lakeport City does not assert any allegations tying the PBMs

to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lakeport City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lakeport City amended its complaint on November 23, 2020, after transfer to the MDL on August 25, 2020. *See City of Lakeport et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45242-DAP, ECF No. 7. Unlike many other plaintiffs, Lakeport City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Lakeport City's deadline to amend was in 2020. Lakeport City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Lakeport City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Lakeport City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Lakeport City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Lakeport City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g., Duggins*, 195 F.3d at 834 (affirming

denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Lakeport City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Lakeport City). That insignificant dispensing volume is much too low to support a finding of good cause for Lakeport City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lakeport City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lakeport City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to State a Claim.** Lakeport City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lakeport City's proposed RICO claim against the PBMs has expired. Lakeport City filed its original complaint on June 16, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See City of Lakeport et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45242-DAP, ECF No. 1. It is therefore indisputable that Lakeport City knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Lakeport City's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lakeport City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lakeport City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1693. *Municipality of Cidra, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45244-DAP: Plaintiff Municipality of Cidra, Puerto Rico

Municipality of Cidra's untimely motion for leave to amend should be denied for several reasons. Municipality of Cidra failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Cidra also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Cidra's motion should be denied due to futility, as Municipality of Cidra does not assert any allegations tying the PBMs to its alleged harm,

its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Cidra was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Cidra filed its original complaint on June 23, 2020 and the case was transferred to the MDL on September 1, 2020. *See Municipality of Cidra, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45244-DAP, ECF No. 6. Municipality of Cidra could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Municipality of Cidra elected not to do so. Instead, Municipality of Cidra waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Cidra's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Municipality of Cidra's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.30% market share for Municipality of Cidra). That insignificant dispensing volume is much too low to support a finding of good cause for Municipality of Cidra to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Municipality of Cidra's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Municipality of Cidra to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Cidra filed its original complaint on June 23, 2020. *See Municipality of Cidra, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45244-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Cidra *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Cidra's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Cidra's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Cidra's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Cidra therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Municipality of Cidra, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Cidra's proposed RICO claim against the PBMs has expired. Municipality of Cidra filed its original complaint on June 23, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Cidra, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45244-DAP, ECF No. 1. It is therefore indisputable that Municipality of Cidra knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Municipality of Cidra's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Cidra's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Cidra, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1694.** *Municipality of Adjuntas, Puerto Rico v. Purdue Pharma L.P. et al.*, **Case No. 1:20-op-45245-DAP: Plaintiff Municipality of Adjuntas, Puerto Rico**

Municipality of Adjuntas's untimely motion for leave to amend should be denied for several reasons. Municipality of Adjuntas failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Adjuntas also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Adjuntas's motion should be denied due to futility, as Municipality of Adjuntas does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is

barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Adjuntas was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Adjuntas filed its original complaint on June 23, 2020 and the case was transferred to the MDL on September 1, 2020. *See Municipality of Adjuntas, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45245-DAP, ECF No. 6. Municipality of Adjuntas could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Municipality of Adjuntas elected not to do so. Instead, Municipality of Adjuntas waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Adjuntas's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Municipality of Adjuntas's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Municipality of Adjuntas cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Municipality of Adjuntas's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Adjuntas filed its original complaint on June 23, 2020. *See Municipality of Adjuntas, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45245-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Adjuntas *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Adjuntas's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Adjuntas's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Adjuntas's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Municipality of Adjuntas therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Adjuntas failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Adjuntas's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Adjuntas of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Adjuntas refused to amend or supplement its Fact Sheet. Under

this Court's orders, Municipality of Adjuntas's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Adjuntas's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Adjuntas's potential claims against them. Municipality of Adjuntas's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Adjuntas, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Municipality of Adjuntas's proposed RICO claim against the PBMs has expired. Municipality of Adjuntas filed its original complaint on June 23, 2020, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Municipality of Adjuntas, Puerto Rico v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45245-DAP, ECF No. 1. It is therefore indisputable that Municipality of Adjuntas knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, four years before seeking leave to amend. Municipality of Adjuntas's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of

a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Municipality of Adjuntas's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Municipality of Adjuntas, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1695.** ***Fond du Lac Band of Lake Superior Chippewa v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:20-op-45250-DAP: Plaintiff Fond du Lac Band of Lake Superior Chippewa, Ohio**

Fond du Lac Band of Lake Superior Chippewa's untimely motion for leave to amend should be denied for several reasons. Fond du Lac Band of Lake Superior Chippewa failed to provide notice of its proposed amendments through a proposed complaint. Fond du Lac Band of Lake Superior Chippewa also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fond du Lac Band of Lake Superior Chippewa's motion should be denied due to futility, as Fond du Lac Band of Lake Superior Chippewa does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fond du Lac Band of Lake Superior Chippewa was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fond du Lac Band of Lake Superior Chippewa filed its original complaint directly into the MDL on September 18, 2020. *See Fond du Lac Band of Lake Superior Chippewa v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:20-op-45250-DAP, ECF No. 1. Fond du Lac Band of Lake Superior Chippewa could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs,

Fond du Lac Band of Lake Superior Chippewa elected not to do so. Fond du Lac Band of Lake Superior Chippewa waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Fond du Lac Band of Lake Superior Chippewa's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Fond du Lac Band of Lake Superior Chippewa filed its original complaint on September 18, 2020. *See Fond du Lac Band of Lake Superior Chippewa v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:20-op-45250-DAP, ECF No. 1. Despite filing its case years ago, Fond du Lac Band of Lake Superior Chippewa *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Fond du Lac Band of Lake Superior Chippewa's case would force the parties and the Court to waste time and resources ascertaining the extent of Fond du Lac Band of Lake Superior Chippewa's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fond du Lac Band of Lake Superior Chippewa's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fond du Lac Band of Lake Superior Chippewa therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fond du Lac Band of Lake Superior Chippewa's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fond du Lac Band of Lake Superior Chippewa, a native tribe in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Fond du Lac Band of Lake Superior Chippewa is a plaintiff in Ohio. Fond du Lac Band of Lake Superior Chippewa's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Fond du Lac Band of Lake Superior Chippewa, a native tribe in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1696. *City of Clearlake et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45251-DAP: Plaintiff Clearlake City, California

Clearlake City's untimely motion for leave to amend should be denied for several reasons. Clearlake City failed to provide notice of its proposed amendments through a proposed complaint. Clearlake City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure

to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Clearlake City's motion should be denied due to futility, as Clearlake City does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Clearlake City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Clearlake City filed its original complaint on September 2, 2020 and the case was transferred to the MDL on September 22, 2020. *See City of Clearlake et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45251-DAP, ECF No. 5. Clearlake City could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Clearlake City elected not to do so. Instead, Clearlake City waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Clearlake City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Clearlake City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Clearlake City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs

much earlier. Clearlake City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Clearlake City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for Clearlake City). That insignificant dispensing volume is much too low to support a finding of good cause for Clearlake City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Clearlake City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Clearlake City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Clearlake City violated its basic duty to implement a timely litigation hold. Clearlake City filed its original complaint on September 2, 2020, but waited until September 24, 2024 to implement a litigation hold—over four years later.

*See City of Clearlake et al. v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45251-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 24, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Clearlake City's case would force the parties and the Court to waste time and resources ascertaining the extent of Clearlake City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Clearlake City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Clearlake City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Clearlake City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Clearlake City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1697. *City of Dublin et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45255-DAP: Plaintiff Dublin City, California

Dublin City's untimely motion for leave to amend should be denied for several reasons. Dublin City failed to provide notice of its proposed amendments through a proposed complaint. Dublin City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dublin City's motion should be

denied due to futility, as Dublin City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dublin City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Dublin City filed its original complaint on May 26, 2020 and the case was transferred to the MDL on October 6, 2020. *See City of Dublin et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45255-DAP, ECF No. 31. Dublin City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Dublin City elected not to do so. Instead, Dublin City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Dublin City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Dublin City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.26% market share for Dublin City). That insignificant dispensing volume is much too low to support a finding of good cause for Dublin City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to State a Claim.** Dublin City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dublin City's proposed RICO claim against the PBMs has expired. Dublin City filed its original complaint on May 26, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Dublin et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45255-DAP, ECF No. 1-2. Even assuming *arguendo* that Dublin City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 26, 2024. Dublin City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dublin City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dublin City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1698. *City of Dublin et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45255-DAP: Plaintiff Murrieta City, California

Murrieta City's untimely motion for leave to amend should be denied for several reasons. Murrieta City failed to provide notice of its proposed amendments through a proposed complaint. Murrieta City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Murrieta City's motion

should be denied due to futility, as Murrieta City does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Murrieta City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Murrieta City filed its original complaint on May 26, 2020 and the case was transferred to the MDL on October 6, 2020. *See City of Dublin et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45255-DAP, ECF No. 31. Murrieta City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Murrieta City elected not to do so. Instead, Murrieta City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Murrieta City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Murrieta City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Murrieta City). That insignificant dispensing volume is much too low to support a finding of good cause for Murrieta City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

6172

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Murrieta City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.29% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Murrieta City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to State a Claim.** Murrieta City, a municipality in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Murrieta City's proposed RICO claim against the PBMs has expired. Murrieta City filed its original complaint on May 26, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See City of Dublin et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45255-DAP, ECF No. 1-2. Even assuming *arguendo* that Murrieta City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 26, 2024. Murrieta City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Murrieta City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Murrieta City, a municipality in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1699. *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Attalla City, Alabama

Attalla City's untimely motion for leave to amend should be denied for several reasons. Attalla City failed to provide notice of its proposed amendments through a proposed complaint. Attalla City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Attalla City's motion should be denied due to futility, as Attalla City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Attalla City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Attalla City filed its original complaint on May 13, 2020 and the case was transferred to the MDL on October 20, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 37. Attalla City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Attalla City elected not to do so. Instead, Attalla City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Attalla City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had

all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Attalla City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Attalla City). That insignificant dispensing volume is much too low to support a finding of good cause for Attalla City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Attalla City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.27% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Attalla City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Attalla City filed its original complaint on May 13, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 1-1; 1-2; 1-3. Despite filing its case years ago, Attalla City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Attalla City's case would force the parties and the Court to waste time and resources ascertaining the extent of Attalla City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Attalla City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Attalla City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Attalla City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Attalla City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Attalla City of this deficiency on September 16, 2024 (*see* Exhibit B), but Attalla City refused to amend or supplement its Fact Sheet. Under this Court's orders, Attalla City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Attalla City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Attalla City's potential claims against them. Attalla City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Attalla City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Attalla City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Attalla City's proposed RICO claim against the PBMs has expired. Attalla City filed its original complaint on May 13, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 1-1; 1-2; 1-3. Even assuming *arguendo* that Attalla City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 13, 2024. Attalla City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Attalla City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Attalla City's public-nuisance claim against the PBMs is therefore time-barred because Attalla City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on May 13, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th

at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Attalla City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1700.** ***Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Camp Hill Town, Alabama**

Camp Hill Town's untimely motion for leave to amend should be denied for several reasons. Camp Hill Town failed to provide notice of its proposed amendments through a proposed complaint. Camp Hill Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Camp Hill Town's motion should be denied due to futility, as Camp Hill Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Camp Hill Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Camp Hill Town filed its original complaint on May 13, 2020 and the case was transferred to the MDL on October 20, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 37. Camp Hill Town could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Camp Hill Town elected not to do so. Instead, Camp Hill Town

waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Camp Hill Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Camp Hill Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Camp Hill Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Camp Hill Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Camp Hill Town filed its original complaint on May 13, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 1-1; 1-2; 1-3. Despite filing its case years ago, Camp Hill Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Camp Hill Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Camp Hill Town's document destruction and the appropriate sanctions—just as the parties were forced

to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Camp Hill Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Camp Hill Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Camp Hill Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Camp Hill Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Camp Hill Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Camp Hill Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Camp Hill Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Camp Hill Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Camp Hill Town's potential claims against them. Camp Hill Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Camp Hill Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Camp Hill Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Camp Hill Town's proposed RICO claim against the PBMs has expired. Camp Hill Town filed its original complaint on May 13, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 1-1; 1-2; 1-3. Even assuming *arguendo* that Camp Hill Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 13, 2024. Camp Hill Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Camp Hill Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Camp Hill Town's public-nuisance claim against the PBMs is therefore time-barred because Camp Hill Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on May 13, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Camp Hill Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1701.** ***Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*,**
> **Case No. 1:20-op-45265-DAP: Plaintiff Cedar Bluff Town, Alabama**

Cedar Bluff Town's untimely motion for leave to amend should be denied for several reasons. Cedar Bluff Town failed to provide notice of its proposed amendments through a proposed complaint. Cedar Bluff Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cedar Bluff Town's motion should be denied due to futility, as Cedar Bluff Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cedar Bluff Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cedar Bluff Town filed its original complaint on May 13, 2020 and the case was transferred to the MDL on October 20, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 37. Cedar Bluff Town could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Cedar Bluff Town elected not to do so. Instead, Cedar

Bluff Town waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Cedar Bluff Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cedar Bluff Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Cedar Bluff Town). That insignificant dispensing volume is much too low to support a finding of good cause for Cedar Bluff Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Cedar Bluff Town filed its original complaint on May 13, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF Nos. 1-1; 1-2; 1-3. Despite filing its case years ago, Cedar Bluff Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Cedar Bluff Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Cedar Bluff Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Cedar Bluff Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Cedar Bluff

Town therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cedar Bluff Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cedar Bluff Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cedar Bluff Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Cedar Bluff Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Cedar Bluff Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cedar Bluff Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cedar Bluff Town's potential claims against them. Cedar Bluff Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cedar Bluff Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cedar Bluff Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cedar Bluff Town's proposed RICO claim against the PBMs has expired. Cedar Bluff Town filed its original complaint on May 13, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF Nos. 1-1; 1-2; 1-3. Even assuming *arguendo* that Cedar Bluff Town first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 13, 2024. Cedar Bluff Town's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cedar Bluff Town's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Cedar Bluff Town's public-nuisance claim against the PBMs is therefore time-barred because Cedar Bluff Town sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on May 13, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of

limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Cedar Bluff Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1702.** *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.,* **Case No. 1:20-op-45265-DAP: Plaintiff Centre City, Alabama**

Centre City's untimely motion for leave to amend should be denied for several reasons. Centre City failed to provide notice of its proposed amendments through a proposed complaint. Centre City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Centre City's motion should be denied due to futility, as Centre City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Centre City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Centre City filed its original complaint on May 13, 2020 and the case was transferred to the MDL on October 20, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 37. Centre City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Centre City elected not to do so. Instead, Centre City waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Centre City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Centre City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Centre City). That insignificant dispensing volume is much too low to support a finding of good cause for Centre City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Centre City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.26% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Centre City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Centre City filed its original complaint on May 13, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF Nos. 1-1; 1-2; 1-3. Despite filing its case years ago, Centre City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Centre City's case would force

the parties and the Court to waste time and resources ascertaining the extent of Centre City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Centre City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Centre City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Centre City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Centre City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Centre City of this deficiency on September 16, 2024 (*see* Exhibit B), but Centre City refused to amend or supplement its Fact Sheet. Under this Court's orders, Centre City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Centre City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Centre City's potential claims against them. Centre City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Centre City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Centre City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Centre City's proposed RICO claim against the PBMs has expired. Centre City filed its original complaint on May 13, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF Nos. 1-1; 1-2; 1-3. Even assuming *arguendo* that Centre City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 13, 2024. Centre City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Centre City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Centre City's public-nuisance claim against the PBMs is therefore

time-barred because Centre City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on May 13, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Centre City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1703. *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Fultondale City, Alabama

Fultondale City's untimely motion for leave to amend should be denied for several reasons. Fultondale City failed to provide notice of its proposed amendments through a proposed complaint. Fultondale City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Fultondale City's motion should be denied due to futility, as Fultondale City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Fultondale City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Fultondale City filed its original complaint on May 13, 2020 and the case was transferred to the MDL on October 20, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 37. Fultondale City could have amended its

complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Fultondale City elected not to do so. Instead, Fultondale City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Fultondale City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Fultondale City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Fultondale City). That insignificant dispensing volume is much too low to support a finding of good cause for Fultondale City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Fultondale City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.05% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Fultondale City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Fultondale City filed its original complaint on May 13, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case

No. 1:20-op-45265-DAP, ECF Nos. 1-1; 1-2; 1-3. Despite filing its case years ago, Fultondale City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Fultondale City's case would force the parties and the Court to waste time and resources ascertaining the extent of Fultondale City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Fultondale City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Fultondale City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Fultondale City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Fultondale City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Fultondale City's proposed RICO claim against the PBMs has expired. Fultondale City filed its original complaint on May 13, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the

PBMs. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF Nos. 1-1; 1-2; 1-3. Even assuming *arguendo* that Fultondale City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 13, 2024. Fultondale City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Fultondale City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Fultondale City's public-nuisance claim against the PBMs is therefore time-barred because Fultondale City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on May 13, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Fultondale City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1704. *Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP: Plaintiff Graysville City, Alabama

Graysville City's untimely motion for leave to amend should be denied for several reasons. Graysville City failed to provide notice of its proposed amendments through a proposed complaint.

Graysville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Graysville City's motion should be denied due to futility, as Graysville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Graysville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Graysville City filed its original complaint on May 13, 2020 and the case was transferred to the MDL on October 20, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF No. 37. Graysville City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Graysville City elected not to do so. Instead, Graysville City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Graysville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Graysville City's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl..

Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Graysville City cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Graysville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.10% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Graysville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Graysville City filed its original complaint on May 13, 2020. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF Nos. 1-1; 1-2; 1-3. Despite filing its case years ago, Graysville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Graysville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Graysville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Graysville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Graysville City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Graysville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Graysville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Graysville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Graysville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Graysville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Graysville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Graysville City's potential claims against them. Graysville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Graysville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Graysville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Graysville City's proposed RICO claim against the PBMs has expired. Graysville City filed its original complaint on May 13, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Fultondale, Alabama, City of et al. v. Amneal Pharmaceuticals LLC et al.*, Case No. 1:20-op-45265-DAP, ECF Nos. 1-1; 1-2; 1-3. Even assuming *arguendo* that Graysville City first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 13, 2024. Graysville City's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Graysville City's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Graysville City's public-nuisance claim against the PBMs is therefore time-barred because Graysville City sought leave to amend its complaint on July 29, 2024—four years after filing its original complaint on May 13, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Graysville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1705.** *Municipality of Barceloneta v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45267-DAP: Plaintiff Municipality of Barceloneta, Puerto Rico

Municipality of Barceloneta's untimely motion for leave to amend should be denied for several reasons. Municipality of Barceloneta failed to provide notice of its proposed amendments through a proposed complaint. Municipality of Barceloneta also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Municipality of Barceloneta's motion should be denied due to futility, as Municipality of Barceloneta does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Municipality of Barceloneta was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Municipality of Barceloneta amended its complaint on September 24, 2020, after transfer to the MDL on October 22, 2020. *See Municipality of Barceloneta v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45267-DAP, ECF No. 4. Unlike many other plaintiffs, Municipality of Barceloneta declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Municipality of Barceloneta's deadline to amend was in 2020. Municipality of Barceloneta waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Municipality of Barceloneta's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Municipality of Barceloneta's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Municipality of Barceloneta cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Municipality of Barceloneta's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.01% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Municipality of Barceloneta to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Municipality of Barceloneta filed its original complaint on September 18, 2020. *See Municipality of Barceloneta v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45267-DAP, ECF No. 1. Despite filing its case years ago, Municipality of Barceloneta *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Municipality of Barceloneta's case would force the parties and the Court to waste time and resources ascertaining the extent of Municipality of Barceloneta's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Municipality of Barceloneta's disregard for its most basic discovery obligations as a litigant, compounded by the

delay in seeking leave to amend, and Municipality of Barceloneta therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Municipality of Barceloneta failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Municipality of Barceloneta's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Municipality of Barceloneta of this deficiency on September 16, 2024 (*see* Exhibit B), but Municipality of Barceloneta refused to amend or supplement its Fact Sheet. Under this Court's orders, Municipality of Barceloneta's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Municipality of Barceloneta's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Municipality of Barceloneta's potential claims against them. Municipality of Barceloneta's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Failure to State a Claim.** Municipality of Barceloneta, a municipality in Puerto Rico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Municipality of Barceloneta, a municipality in Puerto Rico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1706.** *City of Muscle Shoals, Alabama v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:20-op-45268-DAP: Plaintiff Muscle Shoals City, Alabama**

Muscle Shoals City's untimely motion for leave to amend should be denied for several reasons. Muscle Shoals City failed to provide notice of its proposed amendments through a proposed complaint. Muscle Shoals City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Muscle Shoals City's motion should be denied due to futility, as Muscle Shoals City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Muscle Shoals City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Muscle Shoals City filed its original complaint directly into the MDL on October 19, 2020. *See City of Muscle Shoals, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45268-DAP, ECF No. 1. Muscle Shoals City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Muscle Shoals City elected not to do so. Muscle Shoals City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Muscle Shoals City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline);

*Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Muscle Shoals City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Muscle Shoals City). That insignificant dispensing volume is much too low to support a finding of good cause for Muscle Shoals City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Muscle Shoals City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Muscle Shoals City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Muscle Shoals City filed its original complaint on October 19, 2020. *See City of Muscle Shoals, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45268-DAP, ECF No. 1. Despite filing its case years ago, Muscle Shoals City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Muscle Shoals City's case would force the parties and the Court to waste time and resources ascertaining the extent of Muscle Shoals City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to

implement litigation holds until 2024. The PBMs are prejudiced by Muscle Shoals City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Muscle Shoals City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Muscle Shoals City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Muscle Shoals City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Muscle Shoals City of this deficiency on September 16, 2024 (*see* Exhibit B), but Muscle Shoals City refused to amend or supplement its Fact Sheet. Under this Court's orders, Muscle Shoals City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Muscle Shoals City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Muscle Shoals City's potential claims against them. Muscle Shoals City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Muscle Shoals City's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Muscle Shoals City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Muscle Shoals City's public-nuisance claim against the PBMs is therefore time-barred because Muscle Shoals City sought leave to amend its complaint on July 29, 2024—three and a half years after filing its original complaint on October 19, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Muscle Shoals City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1707.** *City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:20-op-45272-DAP: Plaintiff Brookwood Town, Alabama**

Brookwood Town's untimely motion for leave to amend should be denied for several reasons. Brookwood Town failed to provide notice of its proposed amendments through a proposed complaint. Brookwood Town also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Brookwood Town's motion should be denied due to futility, as Brookwood Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Brookwood Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Brookwood Town amended its complaint on January 28, 2021, after directly filing in the MDL. *See City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP, ECF No. 19. Unlike many other plaintiffs, Brookwood Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Brookwood Town's deadline to amend was in 2021. Brookwood Town waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Brookwood Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Brookwood Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Brookwood Town). That insignificant dispensing volume is much too low to support a finding of good cause for Brookwood Town to add dispensing

claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Brookwood Town filed its original complaint on October 27, 2020. *See City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP, ECF No. 1. Despite filing its case years ago, Brookwood Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Brookwood Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Brookwood Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Brookwood Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Brookwood Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Brookwood Town failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Brookwood Town's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Brookwood Town of this deficiency on September 16, 2024 (*see* Exhibit B), but Brookwood Town refused to amend or supplement its Fact Sheet. Under this Court's orders, Brookwood Town's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

Brookwood Town's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Brookwood Town's potential claims against them. Brookwood Town's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Brookwood Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Brookwood Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Brookwood Town's public-nuisance claim against the PBMs is therefore time-barred because Brookwood Town sought leave to amend its complaint on July 29, 2024—three and a half years after filing its original complaint on October 27, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable

statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Brookwood Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1708.** *City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.***, Case No. 1:20-op-45272-DAP: Plaintiff Northport City, Alabama**

Northport City's untimely motion for leave to amend should be denied for several reasons. Northport City failed to provide notice of its proposed amendments through a proposed complaint. Northport City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Northport City's motion should be denied due to futility, as Northport City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Northport City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Northport City amended its complaint on January 28, 2021, after directly filing in the MDL. *See City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP, ECF No. 19. Unlike many other plaintiffs, Northport City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Northport City's deadline to amend was in 2021. Northport City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Northport City's lack of diligence in pursuing its claims negates

any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Northport City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Northport City). That insignificant dispensing volume is much too low to support a finding of good cause for Northport City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Northport City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.45% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Northport City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Northport City filed its original complaint on October 27, 2020. *See City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP, ECF No. 1. Despite filing its case years ago, Northport City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Northport City's case would force the parties and the Court to waste time and resources ascertaining the extent of

Northport City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Northport City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Northport City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Northport City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Northport City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Northport City's public-nuisance claim against the PBMs is therefore time-barred because Northport City sought leave to amend its complaint on July 29, 2024—three and a half years after filing its original complaint on October 27, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Northport City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1709.** *City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP: Plaintiff Robertsdale City, Alabama

Robertsdale City's untimely motion for leave to amend should be denied for several reasons. Robertsdale City failed to provide notice of its proposed amendments through a proposed complaint. Robertsdale City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Robertsdale City's motion should be denied due to futility, as Robertsdale City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Robertsdale City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Robertsdale City amended its complaint on January 28, 2021, after directly filing in the MDL. *See City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP, ECF No. 19. Unlike many other plaintiffs, Robertsdale City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Robertsdale City's deadline to amend was in 2021. Robertsdale City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Robertsdale City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to

amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Robertsdale City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Robertsdale City). That insignificant dispensing volume is much too low to support a finding of good cause for Robertsdale City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Robertsdale City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.21% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Robertsdale City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Robertsdale City filed its original complaint on October 27, 2020. *See City of Northport, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45272-DAP, ECF No. 1. Despite filing its case years ago, Robertsdale City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Robertsdale City's case would force the parties and the Court to waste time and resources ascertaining the extent of

Robertsdale City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Robertsdale City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Robertsdale City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Robertsdale City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Robertsdale City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Robertsdale City's public-nuisance claim against the PBMs is therefore time-barred because Robertsdale City sought leave to amend its complaint on July 29, 2024—three and a half years after filing its original complaint on October 27, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an

amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Robertsdale City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1710. *Monroe County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45273-DAP: Plaintiff Monroe County, Alabama

Monroe County's untimely motion for leave to amend should be denied for several reasons. Monroe County failed to provide notice of its proposed amendments through a proposed complaint. Monroe County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Monroe County's motion should be denied due to futility, as Monroe County does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Monroe County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Monroe County filed its original complaint directly into the MDL on October 30, 2020. *See Monroe County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45273-DAP, ECF No. 1. Monroe County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Monroe County elected not to do so. Monroe County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Monroe County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion

to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Monroe County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Monroe County). That insignificant dispensing volume is much too low to support a finding of good cause for Monroe County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Monroe County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Monroe County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Monroe County filed its original complaint on October 30, 2020. *See Monroe County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45273-DAP, ECF No. 1. Despite filing its case years ago, Monroe County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Monroe County's case would force the parties and the Court to waste time and resources ascertaining the extent of Monroe

County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Monroe County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Monroe County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Monroe County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Monroe County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Monroe County of this deficiency on September 16, 2024 (*see* Exhibit B), but Monroe County refused to amend or supplement its Fact Sheet. Under this Court's orders, Monroe County's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Monroe County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Monroe County's potential claims against them. Monroe County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Monroe County's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Monroe County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Monroe County's public-nuisance claim against the PBMs is therefore time-barred because Monroe County sought leave to amend its complaint on July 29, 2024—three and a half years after filing its original complaint on October 30, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Monroe County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Monroe County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1711. ***Monroe County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45273-DAP: Plaintiff Monroeville City, Alabama**

Monroeville City's untimely motion for leave to amend should be denied for several reasons. Monroeville City failed to provide notice of its proposed amendments through a proposed complaint. Monroeville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Monroeville City's motion should be denied due to futility, as Monroeville City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Monroeville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Monroeville City filed its original complaint directly into the MDL on October 30, 2020. *See Monroe County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45273-DAP, ECF No. 1. Monroeville City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Monroeville City elected not to do so. Monroeville City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Monroeville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Monroeville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.002% market share for Monroeville City). That insignificant dispensing volume is much too low to support a finding of good cause for Monroeville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Monroeville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.06% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Monroeville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Monroeville City filed its original complaint on October 30, 2020. *See Monroe County, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:20-op-45273-DAP, ECF No. 1. Despite filing its case years ago, Monroeville City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Monroeville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Monroeville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Monroeville City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Monroeville City therefore

lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Monroeville City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Monroeville City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Monroeville City of this deficiency on September 16, 2024 (*see* Exhibit B), but Monroeville City refused to amend or supplement its Fact Sheet. Under this Court's orders, Monroeville City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Monroeville City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Monroeville City's potential claims against them. Monroeville City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Monroeville City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Monroeville City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Monroeville City's public-nuisance claim against the PBMs is therefore time-barred because Monroeville City sought leave to amend its complaint on July 29, 2024—three and a half years after filing its original complaint on October 30, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Monroeville City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 1712. *Town of Millis, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45275-DAP: Plaintiff Millis Town, Massachusetts

Millis Town's untimely motion for leave to amend should be denied for several reasons. Millis Town failed to provide notice of its proposed amendments through a proposed complaint. Millis Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Millis Town's motion should be denied due to futility, as Millis Town does not assert any allegations tying the PBMs to its

alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Millis Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Millis Town amended its complaint on February 18, 2021, after transfer to the MDL on December 21, 2020. *See Town of Millis, MA v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45275-DAP, ECF No. 8. Unlike many other plaintiffs, Millis Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Millis Town's deadline to amend was in 2021. Millis Town waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Millis Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Millis Town cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Millis Town, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Millis Town fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff

was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Millis Town's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Millis Town cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has No Market Share.** Express Scripts' mail order pharmacy shipped *zero* opioid prescriptions to Millis Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit B. Because Express Scripts' mail order pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Massachusetts law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Millis Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Massachusetts law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Millis Town, a municipality in Massachusetts, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Massachusetts, public-nuisance claims are subject to a three-year limitations period. Millis Town's public-nuisance claim against the PBMs is therefore time-barred because Millis Town sought leave to amend its complaint on July 29, 2024—three and a half years after filing its original complaint on December 3, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Millis Town, a municipality in Massachusetts, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1713.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Baltimore City Board of School Commissioners, Maryland**

Baltimore City Board of School Commissioners's untimely motion for leave to amend should be denied for several reasons. Baltimore City Board of School Commissioners failed to provide notice of its proposed amendments through a proposed complaint. Baltimore City Board of School Commissioners also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Baltimore City Board of School Commissioners's motion should be denied due to futility, as Baltimore City Board of School Commissioners does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Baltimore City Board of School Commissioners was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Baltimore City Board of School Commissioners filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Baltimore City Board of School Commissioners could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Baltimore City Board of School Commissioners elected not to do so. Baltimore City Board of School Commissioners waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Baltimore City Board of School Commissioners's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Baltimore City Board of School Commissioners previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Baltimore City Board of School Commissioners of the PBM services Express Scripts provides and Baltimore City Board of School Commissioners began receiving those services on January 1, 2006. *See id.* Inasmuch as Baltimore City Board of School Commissioners seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Baltimore City Board of

School Commissioners knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Baltimore City Board of School Commissioners's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Baltimore City Board of School Commissioners filed its original complaint on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Despite filing its case years ago, Baltimore City Board of School Commissioners *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Baltimore City Board of School Commissioners's case would force the parties and the Court to waste time and resources ascertaining the extent of Baltimore City Board of School Commissioners's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Baltimore City Board of School Commissioners's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Baltimore City Board of School Commissioners therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Baltimore City Board of School Commissioners's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Baltimore City Board of School Commissioners, a school district in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Baltimore City Board of School Commissioners seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc.*, et al., No. 1:20-op-45281-DAP. Baltimore City Board of School Commissioners's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Public Nuisance Statute of Limitations.** In Maryland, public-nuisance claims are subject to a three-year limitations period. Baltimore City Board of School Commissioners's public-nuisance claim against the PBMs is therefore time-barred because Baltimore City Board of School Commissioners sought leave to amend its complaint on July 29, 2024—three and a half years after filing its original complaint on December 16, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Baltimore City Board of School Commissioners, a school district in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1714. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Bangor School Department, Maine

Board of Education of Bangor School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Bangor School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Bangor School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Bangor School Department's motion should be denied due to futility, as Board of Education of Bangor School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Bangor School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Bangor School Department filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Bangor School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Bangor School Department elected not to do so. Board of Education of Bangor School Department waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Bangor School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Bangor School Department violated its basic duty to implement a timely litigation hold. Board of Education of Bangor School Department filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Bangor School Department's case would force the parties

and the Court to waste time and resources ascertaining the extent of Board of Education of Bangor School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Bangor School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Bangor School Department therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Board of Education of Bangor School Department has *never* served a Plaintiff Fact Sheet. Board of Education of Bangor School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Bangor School Department's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Bangor School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over

time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Bangor School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Bangor School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Bangor School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Bangor School Department is a plaintiff in Maine. Board of Education of Bangor School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Bangor School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

>   **1715.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Cape Elizabeth School District, Maine**

Board of Education of Cape Elizabeth School District's untimely motion for leave to amend should be denied for several reasons. Board of Education of Cape Elizabeth School District failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Cape Elizabeth School District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Cape Elizabeth School District's motion should be denied due to futility, as Board of Education of Cape Elizabeth School District does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Cape Elizabeth School District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Cape Elizabeth School District filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Cape Elizabeth School District could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Cape Elizabeth School District elected not to do so. Board of Education of Cape Elizabeth School District waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Cape Elizabeth School District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Cape Elizabeth School District violated its basic duty to implement a timely litigation hold. Board of Education of Cape Elizabeth School District filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Cape Elizabeth School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Cape Elizabeth School District's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Cape Elizabeth School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Cape Elizabeth School District therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Cape Elizabeth School District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Cape Elizabeth School District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Cape Elizabeth School District of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Cape Elizabeth School District refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Cape Elizabeth School District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Cape Elizabeth School District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Cape Elizabeth School District's potential claims against them. Board of Education of Cape Elizabeth School District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Cape Elizabeth School District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Cape Elizabeth School District, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Cape Elizabeth School District seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Cape Elizabeth School District's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Cape Elizabeth School District is a plaintiff in Maine. Board of Education of Cape Elizabeth School District's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Cape Elizabeth School District, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1716.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of East Aurora, School District 131, Illinois**

Board of Education of East Aurora, School District 131's untimely motion for leave to amend should be denied for several reasons. Board of Education of East Aurora, School District 131 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of East Aurora, School District 131 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of East Aurora, School District 131's motion should be denied due to futility, as Board of Education of East Aurora, School District 131 does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of East Aurora, School District 131 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of East Aurora, School District 131 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of East Aurora, School District 131 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of East Aurora, School District 131 elected not to do so. Board of Education of East Aurora, School District 131 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of

Education of East Aurora, School District 131's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of East Aurora, School District 131 violated its basic duty to implement a timely litigation hold. Board of Education of East Aurora, School District 131 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of East Aurora, School District 131's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of East Aurora, School District 131's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of East Aurora, School District 131's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of East Aurora, School District 131 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of East Aurora, School District 131's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of East Aurora, School District 131, a school district in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of East Aurora, School District 131 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of East Aurora, School District 131's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff Lacks Standing.** Board of Education of East Aurora, School District 131, a school district in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1717.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Ellsworth School Department, Maine**

Board of Education of Ellsworth School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Ellsworth School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Ellsworth School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Ellsworth School Department's motion should be denied due to futility, as Board of Education of Ellsworth School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Ellsworth School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Ellsworth School Department filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Ellsworth School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Ellsworth School Department elected not to do so. Board of Education of Ellsworth School Department waited three years after its deadline to

amend to seek leave to assert claims against the PBMs. Board of Education of Ellsworth School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Ellsworth School Department violated its basic duty to implement a timely litigation hold. Board of Education of Ellsworth School Department filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Ellsworth School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Ellsworth School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Ellsworth School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Ellsworth School Department therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Ellsworth School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Ellsworth School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Ellsworth School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Ellsworth School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Ellsworth School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Ellsworth School Department's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Ellsworth School Department's potential claims against them. Board of Education of Ellsworth School Department's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Ellsworth School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Ellsworth School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Ellsworth School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Ellsworth School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Ellsworth School Department is a plaintiff in Maine. Board of Education of Ellsworth School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Ellsworth School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1718.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Joliet Public Schools, Illinois**

Joliet Public Schools' untimely motion for leave to amend should be denied for several reasons. Joliet Public Schools failed to provide notice of its proposed amendments through a proposed complaint. Joliet Public Schools also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Joliet Public Schools' motion should be denied due to futility, as Joliet Public Schools does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Joliet Public Schools was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Joliet Public Schools filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Joliet Public Schools could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Joliet Public Schools elected not to do so. Joliet Public Schools waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Joliet Public Schools' lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims

before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Joliet Public Schools violated its basic duty to implement a timely litigation hold. Joliet Public Schools filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Joliet Public Schools' case would force the parties and the Court to waste time and resources ascertaining the extent of Joliet Public Schools' document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Joliet Public Schools' disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Joliet Public Schools therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Joliet Public Schools' delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Joliet Public Schools, a school district in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Joliet Public Schools seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Joliet Public Schools' impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff is Not a Party.** Joliet Public Schools seeks leave to amend the complaint in *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, but Joliet Public Schools is not a named plaintiff in that case. Because Joliet Public Schools has not submitted any proposed complaint and is not a plaintiff in the existing case, Joliet Public Schools has not pleaded any facts establishing injury to Joliet Public Schools and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**Plaintiff Lacks Standing.** Joliet Public Schools, a school district in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1719.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 10, Maine**

Board of Education of Maine Regional School Unit 10's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 10 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 10 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 10's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 10 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 10 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 10 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 10 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 10 elected not to do so. Board of Education of Maine Regional School Unit 10 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 10's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 10 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 10 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 10's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 10's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 10's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 10 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 10 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 10's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 10 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 10 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 10's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 10's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 10's potential claims against them. Board of Education of Maine Regional School Unit 10's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 10's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 10, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 10 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 10's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 10 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 10's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 10, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1720.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 13, Maine**

Board of Education of Maine Regional School Unit 13's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 13 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 13 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 13's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 13 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 13 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 13 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 13 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 13 elected not to do so. Board of Education of Maine Regional School Unit 13 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 13's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 13 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 13 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 13's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 13's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 13's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 13 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 13 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 13's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 13 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 13 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 13's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 13's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 13's potential claims against them. Board of Education of Maine Regional School Unit 13's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 13's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 13, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 13 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 13's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 13 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 13's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 13, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1721.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 25, Maine**

Board of Education of Maine Regional School Unit 25's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 25 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 25 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 25's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 25 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 25 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 25 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 25 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 25 elected not to do so. Board of Education of Maine Regional School Unit 25 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 25's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 25 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 25 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 25's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 25's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 25's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 25 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 25 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 25's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 25 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 25 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 25's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 25's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 25's potential claims against them. Board of Education of Maine Regional School Unit 25's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 25's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 25, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 25 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 25's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 25 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 25's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 25, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1722.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 26, Maine**

Board of Education of Maine Regional School Unit 26's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 26 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 26 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 26's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 26 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 26 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 26 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 26 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 26 elected not to do so. Board of Education of Maine Regional School Unit 26 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 26's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 26 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 26 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 26's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 26's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 26's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 26 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 26 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 26's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 26 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 26 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 26's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 26's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 26's potential claims against them. Board of Education of Maine Regional School Unit 26's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 26's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 26, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 26 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 26's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 26 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 26's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 26, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1723.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 29, Maine**

Board of Education of Maine Regional School Unit 29's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 29 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 29 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 29's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 29 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 29 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 29 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 29 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 29 elected not to do so. Board of Education of Maine Regional School Unit 29 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 29's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 29 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 29 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 29's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 29's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 29's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 29 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 29 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 29's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 29 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 29 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 29's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 29's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 29's potential claims against them. Board of Education of Maine Regional School Unit 29's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 29's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 29, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 29 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 29's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 29 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 29's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 29, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1724.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 34, Maine**

Board of Education of Maine Regional School Unit 34's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 34 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 34 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 34's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 34 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 34 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 34 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 34 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 34 elected not to do so. Board of Education of Maine Regional School Unit 34 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 34's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 34 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 34 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 34's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 34's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 34's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 34 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 34 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 34's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 34 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 34 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 34's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 34's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 34's potential claims against them. Board of Education of Maine Regional School Unit 34's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 34's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 34, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 34 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 34's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 34 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 34's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 34, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1725.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 40, Maine**

Board of Education of Maine Regional School Unit 40's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 40 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 40 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 40's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 40 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 40 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 40 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 40 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 40 elected not to do so. Board of Education of Maine Regional School Unit 40 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 40's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 40 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 40 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 40's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 40's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 40's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 40 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 40 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 40's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 40 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 40 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 40's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 40's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 40's potential claims against them. Board of Education of Maine Regional School Unit 40's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 40's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 40, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 40 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 40's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 40 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 40's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 40, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1726.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 50, Maine**

Board of Education of Maine Regional School Unit 50's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 50 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 50 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 50's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 50 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 50 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 50 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 50 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 50 elected not to do so. Board of Education of Maine Regional School Unit 50 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 50's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 50 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 50 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 50's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 50's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 50's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 50 therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 50 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 50's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 50 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 50 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 50's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 50's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 50's potential claims against them. Board of Education of Maine Regional School Unit 50's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 50's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 50, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 50 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 50's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 50 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 50's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 50, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1727. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 57, Maine

Board of Education of Maine Regional School Unit 57's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 57 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 57 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 57's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 57 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 57 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 57 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 57 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 57 elected not to do so. Board of Education of Maine Regional School Unit 57 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 57's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 57 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 57 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 57's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 57's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 57's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 57 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 57 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 57's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 57 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 57 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 57's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 57's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 57's potential claims against them. Board of Education of Maine Regional School Unit 57's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 57's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 57, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 57 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon*, Inc., et al., No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 57's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 57 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 57's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 57, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1728.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 60, Maine**

Board of Education of Maine Regional School Unit 60's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 60 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 60 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 60's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 60 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 60 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 60 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 60 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 60 elected not to do so. Board of Education of Maine Regional School Unit 60 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 60's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 60 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 60 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 60's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 60's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 60's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 60 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 60 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 60's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 60 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 60 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 60's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 60's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 60's potential claims against them. Board of Education of Maine Regional School Unit 60's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 60's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 60, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 60 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and B*oard of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 60's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 60 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 60's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 60, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1729.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 71, Maine**

Board of Education of Maine Regional School Unit 71's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 71 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 71 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 71's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 71 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 71 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 71 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 71 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 71 elected not to do so. Board of Education of Maine Regional School Unit 71 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 71's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 71 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 71 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 71's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 71's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 71's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 71 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 71 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 71's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 71 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 71 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 71's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 71's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 71's potential claims against them. Board of Education of Maine Regional School Unit 71's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 71's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 71, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 71 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 71's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 71 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 71's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 71, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1730.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine Regional School Unit 9, Maine**

Board of Education of Maine Regional School Unit 9's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine Regional School Unit 9 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine Regional School Unit 9 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine Regional School Unit 9's motion should be denied due to futility, as Board of Education of Maine Regional School Unit 9 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine Regional School Unit 9 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine Regional School Unit 9 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine Regional School Unit 9 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine Regional School Unit 9 elected not to do so. Board of Education of Maine Regional School Unit 9 waited three years after its

deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine Regional School Unit 9's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine Regional School Unit 9 violated its basic duty to implement a timely litigation hold. Board of Education of Maine Regional School Unit 9 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine Regional School Unit 9's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine Regional School Unit 9's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine Regional School Unit 9's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine Regional School Unit 9 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine Regional School Unit 9 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine Regional School Unit 9's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine Regional School Unit 9 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine Regional School Unit 9 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine Regional School Unit 9's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine Regional School Unit 9's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine Regional School Unit 9's potential claims against them. Board of Education of Maine Regional School Unit 9's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine Regional School Unit 9's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine Regional School Unit 9, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine Regional School Unit 9 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine Regional School Unit 9's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine Regional School Unit 9 is a plaintiff in Maine. Board of Education of Maine Regional School Unit 9's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine Regional School Unit 9, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1731.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 15, Maine**

Board of Education of Maine School Administrative District 15's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 15 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 15 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 15's motion should be denied due to futility, as Board of Education of Maine School Administrative District 15 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 15 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 15 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 15 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of

Maine School Administrative District 15 elected not to do so. Board of Education of Maine School Administrative District 15 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 15's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 15 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 15 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 15's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 15's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 15's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 15 therefore lacks good cause for leave to amend its complaint. *See*

*Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 15 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 15's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 15 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 15 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 15's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 15's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 15's potential claims against them. Board of Education of Maine School Administrative District 15's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine

School Administrative District 15's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 15, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 15 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 15's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 15 is a plaintiff in Maine. Board of Education of Maine School Administrative District 15's request for leave to add the PBMs as defendants to a public nuisance

claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 15, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1732. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 35, Maine

Board of Education of Maine School Administrative District 35's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 35 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 35 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 35's motion should be denied due to futility, as Board of Education of Maine School Administrative District 35 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 35 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 35 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School

Administrative District 35 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 35 elected not to do so. Board of Education of Maine School Administrative District 35 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 35's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 35 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 35 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 35's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 35's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 35's disregard for its most basic discovery obligations as

a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 35 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 35 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 35's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 35 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 35 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 35's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 35's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 35's potential claims against them. Board of Education of Maine School Administrative District 35's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 35's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 35, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 35 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 35's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 35 is a plaintiff in Maine. Board of Education of Maine School Administrative District 35's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 35, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1733. ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 44, Maine**

Board of Education of Maine School Administrative District 44's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 44 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 44 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 44's motion should be denied due to futility, as Board of Education of Maine School Administrative District 44 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 44 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School

Administrative District 44 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 44 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 44 elected not to do so. Board of Education of Maine School Administrative District 44 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 44's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 44 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 44 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 44's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 44's document destruction and the

appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 44's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 44 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 44 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 44's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 44 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 44 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 44's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 44's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 44's potential claims against them. Board of Education of Maine School Administrative District 44's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to

dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 44's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 44, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 44 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 44's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the

Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 44 is a plaintiff in Maine. Board of Education of Maine School Administrative District 44's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 44, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1734.** *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 53, Maine

Board of Education of Maine School Administrative District 53's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 53 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 53 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 53's motion should be denied due to futility, as Board of Education of Maine School Administrative District 53 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 53 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 53 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 53 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 53 elected not to do so. Board of Education of Maine School Administrative District 53 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 53's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 53 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 53 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders.

ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 53's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 53's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 53's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 53 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 53 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 53's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 53 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 53 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 53's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 53's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 53's potential claims against them.

Board of Education of Maine School Administrative District 53's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 53's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 53, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 53 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 53's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where

district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at \*2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 53 is a plaintiff in Maine. Board of Education of Maine School Administrative District 53's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at \*6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 53, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1735.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 55, Maine**

Board of Education of Maine School Administrative District 55's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 55 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 55 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 55's motion should be denied due to futility, as Board of Education of Maine School Administrative District 55 does not assert any allegations tying the PBMs to its alleged harm, its proposed public

nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 55 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 55 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 55 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 55 elected not to do so. Board of Education of Maine School Administrative District 55 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 55's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 55 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 55 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v.*

*Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 55's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 55's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 55's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 55 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 55 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 55's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 55 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 55 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 55's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 55's refusal to provide

basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 55's potential claims against them. Board of Education of Maine School Administrative District 55's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 55's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 55, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 55 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School

Administrative District 55's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 55 is a plaintiff in Maine. Board of Education of Maine School Administrative District 55's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 55, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1736.** *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 6, Maine

Board of Education of Maine School Administrative District 6's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 6 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 6 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 6's

motion should be denied due to futility, as Board of Education of Maine School Administrative District 6 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 6 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 6 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 6 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 6 elected not to do so. Board of Education of Maine School Administrative District 6 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 6's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 6 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 6 filed its original complaint on December 16,

2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 6's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 6's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 6's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 6 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 6 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 6's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 6 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 6 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 6's case is therefore subject to "***dismiss[al]***"

*with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 6's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 6's potential claims against them. Board of Education of Maine School Administrative District 6's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 6's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 6, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 6 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-

DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 6's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 6 is a plaintiff in Maine. Board of Education of Maine School Administrative District 6's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 6, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1737. ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 61, Maine**

Board of Education of Maine School Administrative District 61's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 61 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 61 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold,

failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 61's motion should be denied due to futility, as Board of Education of Maine School Administrative District 61 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 61 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 61 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 61 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 61 elected not to do so. Board of Education of Maine School Administrative District 61 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 61's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 61 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 61 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 61's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 61's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 61's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 61 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 61 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 61's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 61 of this deficiency

on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 61 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 61's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 61's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 61's potential claims against them. Board of Education of Maine School Administrative District 61's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 61's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 61, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 61 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 61's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 61 is a plaintiff in Maine. Board of Education of Maine School Administrative District 61's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 61, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

      **1738.** *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, **Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 72, Maine**

Board of Education of Maine School Administrative District 72's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School

Administrative District 72 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 72 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 72's motion should be denied due to futility, as Board of Education of Maine School Administrative District 72 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 72 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 72 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 72 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 72 elected not to do so. Board of Education of Maine School Administrative District 72 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 72's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 72 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 72 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 72's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 72's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 72's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 72 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 72 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 72's health plans, carriers, third

6324

party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 72 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 72 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 72's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 72's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 72's potential claims against them. Board of Education of Maine School Administrative District 72's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 72's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 72, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially

contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 72 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 72's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 72 is a plaintiff in Maine. Board of Education of Maine School Administrative District 72's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 72, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1739.** *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 28/Five Town Central School District, Maine

Board of Education of Maine School Administrative District 28/Five Town Central School District's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 28/Five Town Central School District failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 28/Five Town Central School District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 28/Five Town Central School District's motion should be denied due to futility, as Board of Education of Maine School Administrative District 28/Five Town Central School District does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 28/Five Town Central School District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 28/Five Town Central School District filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 28/Five Town Central School District could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of

Education of Maine School Administrative District 28/Five Town Central School District elected not to do so. Board of Education of Maine School Administrative District 28/Five Town Central School District waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 28/Five Town Central School District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 28/Five Town Central School District violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 28/Five Town Central School District filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 28/Five Town Central School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 28/Five Town Central School District's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative

District 28/Five Town Central School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 28/Five Town Central School District therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 28/Five Town Central School District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 28/Five Town Central School District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 28/Five Town Central School District of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 28/Five Town Central School District refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 28/Five Town Central School District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 28/Five Town Central School District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 28/Five Town Central School District's potential claims against them. Board of Education of Maine School Administrative District 28/Five Town Central School District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave

to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 28/Five Town Central School District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 28/Five Town Central School District, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Maine School Administrative District 28/Five Town Central School District seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Maine School Administrative District 28/Five Town Central School District's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's

claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 28/Five Town Central School District is a plaintiff in Maine. Board of Education of Maine School Administrative District 28/Five Town Central School District's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 28/Five Town Central School District, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1740.** *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Maine School Administrative District 11, Maine

Board of Education of Maine School Administrative District 11's untimely motion for leave to amend should be denied for several reasons. Board of Education of Maine School Administrative District 11 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Maine School Administrative District 11 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Maine School Administrative District 11's

motion should be denied due to futility, as Board of Education of Maine School Administrative District 11 does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Maine School Administrative District 11 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Maine School Administrative District 11 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Maine School Administrative District 11 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Maine School Administrative District 11 elected not to do so. Board of Education of Maine School Administrative District 11 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Maine School Administrative District 11's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Maine School Administrative District 11 violated its basic duty to implement a timely litigation hold. Board of Education of Maine School Administrative District 11 filed its original complaint on December

16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Maine School Administrative District 11's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Maine School Administrative District 11's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Maine School Administrative District 11's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Maine School Administrative District 11 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Maine School Administrative District 11 failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Maine School Administrative District 11's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Maine School Administrative District 11 of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Maine School Administrative District 11 refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Maine School Administrative District 11's case is therefore subject to "***dismiss[al]***

*with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Maine School Administrative District 11's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Maine School Administrative District 11's potential claims against them. Board of Education of Maine School Administrative District 11's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Maine School Administrative District 11's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Maine School Administrative District 11, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Maine School Administrative District 11 is a plaintiff in Maine. Board of Education of Maine School Administrative District 11's request for leave to add the PBMs as defendants to a public nuisance

claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Maine School Administrative District 11, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1741.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.***, **Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Mason County Public Schools, West Virginia**

Board of Education of Mason County Public Schools's untimely motion for leave to amend should be denied for several reasons. Board of Education of Mason County Public Schools failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Mason County Public Schools also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Mason County Public Schools's motion should be denied due to futility, as Board of Education of Mason County Public Schools does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in West Virginia, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Mason County Public Schools was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Mason County Public Schools filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Mason County Public Schools could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1,

above. Unlike many other plaintiffs, Board of Education of Mason County Public Schools elected not to do so. Board of Education of Mason County Public Schools waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Mason County Public Schools's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Mason County Public Schools violated its basic duty to implement a timely litigation hold. Board of Education of Mason County Public Schools filed its original complaint on December 16, 2020, but waited until September 11, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 11, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Mason County Public Schools's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Mason County Public Schools's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Mason County Public Schools's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Mason County Public Schools therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Mason County Public Schools failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Mason County Public Schools's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Mason County Public Schools of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Mason County Public Schools refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Mason County Public Schools's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Mason County Public Schools's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Mason County Public Schools's potential claims against them. Board of Education of Mason County Public Schools's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under West Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Mason County Public Schools's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under West Virginia law due to the loss of

relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Mason County Public Schools, a school district in West Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Mason County Public Schools is a plaintiff in West Virginia. Board of Education of Mason County Public Schools's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because West Virginia's public nuisance law does not extend to "the sale, distribution, and manufacture of opioids." *Huntington*, 609 F. Supp. 3d at 475; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Mason County Public Schools, a school district in West Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1742.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Portland School Department, Maine**

Board of Education of Portland School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Portland School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Portland School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Portland School Department's motion should be denied due to futility, as Board of Education of Portland School Department does not assert any allegations tying the PBMs to its

alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Portland School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Portland School Department filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Portland School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Portland School Department elected not to do so. Board of Education of Portland School Department waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Portland School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Portland School Department violated its basic duty to implement a timely litigation hold. Board of Education of Portland School Department filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold

Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Portland School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Portland School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Portland School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Portland School Department therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Portland School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Portland School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Portland School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Portland School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Portland School Department's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Portland School Department's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Portland School Department's potential claims against them. Board of Education of Portland School Department's failure to diligently

prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Portland School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Portland School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Portland School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Portland School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and

improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Portland School Department is a plaintiff in Maine. Board of Education of Portland School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Portland School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1743.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.***, **Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Rochester City School District, New York**

Board of Education of Rochester City School District's untimely motion for leave to amend should be denied for several reasons. Board of Education of Rochester City School District failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Rochester City School District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Rochester City School District's motion should be denied due to futility, as Board of Education of Rochester City School District does not assert any allegations tying the PBMs to its alleged harm.

**Lack of Diligence.** Board of Education of Rochester City School District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend

earlier. *See* Section II.A, above. Moreover, Board of Education of Rochester City School District filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Rochester City School District could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Rochester City School District elected not to do so. Board of Education of Rochester City School District waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Rochester City School District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Board of Education of Rochester City School District previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Board of Education of Rochester City School District of the PBM services Express Scripts provides and Board of Education of Rochester City School District began receiving those services on July 2, 2007. *See id.* Inasmuch as Board of Education of Rochester City School District seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Board of Education of Rochester City School District knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Board of

6343

Education of Rochester City School District's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Rochester City School District violated its basic duty to implement a timely litigation hold. Board of Education of Rochester City School District filed its original complaint on December 16, 2020, but waited until September 10, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 10, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Rochester City School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Rochester City School District's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Rochester City School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Rochester City School District therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of

Rochester City School District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Rochester City School District, a school district in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Rochester City School District seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Rochester City School District's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff Lacks Standing.** Board of Education of Rochester City School District, a school district in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Board of

Education of Rochester City School District's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1744.** ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Scarborough School Department, Maine**

Board of Education of Scarborough School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Scarborough School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Scarborough School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Scarborough School Department's motion should be denied due to futility, as Board of Education of Scarborough School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Scarborough School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Scarborough School Department filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Scarborough School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Scarborough School Department

elected not to do so. Board of Education of Scarborough School Department waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Scarborough School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Scarborough School Department violated its basic duty to implement a timely litigation hold. Board of Education of Scarborough School Department filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Scarborough School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Scarborough School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Scarborough School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Scarborough School Department therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Scarborough School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Scarborough School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Scarborough School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Scarborough School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Scarborough School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Scarborough School Department's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Scarborough School Department's potential claims against them. Board of Education of Scarborough School Department's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Scarborough School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to

exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Board of Education of Scarborough School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Scarborough School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Scarborough School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at \*2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Scarborough School Department is a plaintiff in Maine. Board of Education of Scarborough School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as

futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Scarborough School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1745. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of South Portland School Department, Maine

Board of Education of South Portland School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of South Portland School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of South Portland School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of South Portland School Department's motion should be denied due to futility, as Board of Education of South Portland School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of South Portland School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of South Portland School Department filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of South Portland School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See*

Section II.A.1, above. Unlike many other plaintiffs, Board of Education of South Portland School Department elected not to do so. Board of Education of South Portland School Department waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of South Portland School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of South Portland School Department violated its basic duty to implement a timely litigation hold. Board of Education of South Portland School Department filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of South Portland School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of South Portland School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of South Portland School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of South Portland School Department therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020

WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of South Portland School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of South Portland School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of South Portland School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of South Portland School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of South Portland School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of South Portland School Department's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of South Portland School Department's potential claims against them. Board of Education of South Portland School Department's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of South Portland School Department's delay in seeking to amend its complaint has impaired the PBMs'

ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of South Portland School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of South Portland School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of South Portland School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of South Portland School Department is a plaintiff in Maine. Board of Education of South Portland School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as

futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of South Portland School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1746. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of St. George Municipal School District, Maine

Board of Education of St. George Municipal School District's untimely motion for leave to amend should be denied for several reasons. Board of Education of St. George Municipal School District failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of St. George Municipal School District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of St. George Municipal School District's motion should be denied due to futility, as Board of Education of St. George Municipal School District does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of St. George Municipal School District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of St. George Municipal School District filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of St. George Municipal School District could have amended its complaint, without leave, to add claims against the PBMs in 2021.

*See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of St. George Municipal School District elected not to do so. Board of Education of St. George Municipal School District waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of St. George Municipal School District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of St. George Municipal School District violated its basic duty to implement a timely litigation hold. Board of Education of St. George Municipal School District filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of St. George Municipal School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of St. George Municipal School District's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of St. George Municipal School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of St. George

Municipal School District therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of St. George Municipal School District failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of St. George Municipal School District's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of St. George Municipal School District of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of St. George Municipal School District refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of St. George Municipal School District's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of St. George Municipal School District's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of St. George Municipal School District's potential claims against them. Board of Education of St. George Municipal School District's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of St. George

Municipal School District's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of St. George Municipal School District, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of St. George Municipal School District seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of St. George Municipal School District's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of St. George Municipal School District is a plaintiff in Maine. Board of Education of St. George Municipal School District's request for leave to add the PBMs as defendants to a public nuisance claim should be

denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of St. George Municipal School District, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> 1747. ***Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Thornton Fractional Township High Schools, District 215, Illinois**

Board of Education of Thornton Fractional Township High Schools, District 215's untimely motion for leave to amend should be denied for several reasons. Board of Education of Thornton Fractional Township High Schools, District 215 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Thornton Fractional Township High Schools, District 215 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Thornton Fractional Township High Schools, District 215's motion should be denied due to futility, as Board of Education of Thornton Fractional Township High Schools, District 215 does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Thornton Fractional Township High Schools, District 215 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Thornton Fractional Township High Schools, District 215 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of

Education of Thornton Fractional Township High Schools, District 215 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Thornton Fractional Township High Schools, District 215 elected not to do so. Board of Education of Thornton Fractional Township High Schools, District 215 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Thornton Fractional Township High Schools, District 215's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Thornton Fractional Township High Schools, District 215 violated its basic duty to implement a timely litigation hold. Board of Education of Thornton Fractional Township High Schools, District 215 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Thornton Fractional Township High Schools, District 215's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Thornton Fractional Township High Schools, District 215's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to

implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Thornton Fractional Township High Schools, District 215's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Thornton Fractional Township High Schools, District 215 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Thornton Fractional Township High Schools, District 215's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Thornton Fractional Township High Schools, District 215, a school district in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Thornton Fractional Township High Schools, District 215 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Thornton

Fractional Township High Schools, District 215's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff Lacks Standing.** Board of Education of Thornton Fractional Township High Schools, District 215, a school district in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1748.** *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Thornton Township High Schools, District 205, Illinois

Board of Education of Thornton Township High Schools, District 205's untimely motion for leave to amend should be denied for several reasons. Board of Education of Thornton Township High Schools, District 205 failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Thornton Township High Schools, District 205 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Thornton Township High Schools, District 205's motion should be denied due to futility, as Board of Education of Thornton Township High Schools, District 205 does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Thornton Township High Schools, District 205 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Thornton Township High Schools, District 205 filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Thornton Township High Schools, District 205 could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Thornton Township High Schools, District 205 elected not to do so. Board of Education of Thornton Township High Schools, District 205 waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Thornton Township High Schools, District 205's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Thornton Township High Schools, District 205 violated its basic duty to implement a timely litigation hold. Board of Education of Thornton Township High Schools, District 205 filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this

Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Thornton Township High Schools, District 205's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Thornton Township High Schools, District 205's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Thornton Township High Schools, District 205's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Thornton Township High Schools, District 205 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Illinois law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Thornton Township High Schools, District 205's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Illinois law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Thornton Township High Schools, District 205, a school district in Illinois, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Thornton Township High Schools, District 205 seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Thornton Township High Schools, District 205's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff Lacks Standing.** Board of Education of Thornton Township High Schools, District 205, a school district in Illinois, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1749. *Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP: Plaintiff Board of Education of Waterville School Department, Maine

Board of Education of Waterville School Department's untimely motion for leave to amend should be denied for several reasons. Board of Education of Waterville School Department failed to provide notice of its proposed amendments through a proposed complaint. Board of Education of Waterville School Department also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Waterville School Department's motion should be denied due to futility, as Board of

Education of Waterville School Department does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Maine, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Waterville School Department was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Waterville School Department filed its original complaint directly into the MDL on December 16, 2020. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon, Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1. Board of Education of Waterville School Department could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Waterville School Department elected not to do so. Board of Education of Waterville School Department waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Waterville School Department's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Waterville School Department violated its basic duty to implement a timely litigation hold. Board of Education of Waterville School Department filed its original complaint on December 16, 2020, but waited until September 16, 2024 to implement a litigation hold—over three and a half years later. *See Board of Education of Thornton Township High Schools, District 205 et al. v. Cephalon,*

*Inc. et al.*, Case No. 1:20-op-45281-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 16, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Waterville School Department's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Waterville School Department's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Waterville School Department's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Waterville School Department therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Waterville School Department failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Waterville School Department's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Waterville School Department of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Waterville School Department refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Waterville School Department's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Waterville School Department's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Waterville School Department's potential

claims against them. Board of Education of Waterville School Department's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Maine law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Waterville School Department's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maine law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See* *Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Waterville School Department, a school district in Maine, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Board of Education of Waterville School Department seeks leave to amend to add claims against the PBMs in two cases: *Board of Education of the City of Chicago, School District No. 299 et al. v. Cephalon, Inc., et al.*, No. 1:19-op-46042-DAP; and *Board of Education of Thornton Township High Schools, District 205, et al. v. Cephalon, Inc., et al.*, No. 1:20-op-45281-DAP. Board of Education of Waterville School Department's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's

claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Waterville School Department is a plaintiff in Maine. Board of Education of Waterville School Department's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because such a claim is not cognizable under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Waterville School Department, a school district in Maine, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1750.  *City of Auburn, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45282-DAP: Plaintiff Auburn City, Alabama

Auburn City's untimely motion for leave to amend should be denied for several reasons. Auburn City failed to provide notice of its proposed amendments through a proposed complaint. Auburn City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Auburn City's motion should be denied due to futility, as Auburn City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Auburn City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover,

Auburn City amended its complaint on January 14, 2021, after transfer to the MDL on December 21, 2020. *See City of Auburn, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45282-DAP, ECF No. 5. Unlike many other plaintiffs, Auburn City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Auburn City's deadline to amend was in 2021. Auburn City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Auburn City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Auburn City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Auburn City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Auburn City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Auburn City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.005% market share for Auburn City). That insignificant dispensing volume is much too low to support a finding of good cause for Auburn City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Auburn City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.17% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Auburn City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Auburn City filed its original complaint on November 30, 2020. *See City of Auburn, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:20-op-45282-DAP, ECF No. 1. Despite filing its case years ago, Auburn City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Auburn City's case would force the parties and the Court to waste time and resources ascertaining the extent of Auburn City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Auburn City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Auburn City therefore lacks good cause

for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Auburn City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Auburn City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Auburn City's public-nuisance claim against the PBMs is therefore time-barred because Auburn City sought leave to amend its complaint on July 29, 2024— three and a half years after filing its original complaint on November 30, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Auburn City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1751.** *Lower Makefield Township v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45284-DAP: Plaintiff Lower Makefield Township, Pennsylvania

Lower Makefield Township's untimely motion for leave to amend should be denied for several reasons. Lower Makefield Township failed to provide notice of its proposed amendments through a proposed complaint. Lower Makefield Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lower Makefield Township's motion should be denied due to futility, as Lower Makefield Township does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lower Makefield Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lower Makefield Township filed its original complaint on June 19, 2020 and the case was transferred to the MDL on December 21, 2020. *See Lower Makefield Township v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45284-DAP, ECF No. 12. Lower Makefield Township could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Lower Makefield Township elected not to do so. Instead, Lower Makefield Township waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Lower Makefield Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Lower Makefield Township's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Lower Makefield Township cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Lower Makefield Township filed its original complaint on June 19, 2020. *See Lower Makefield Township v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45284-DAP, ECF No. 1-2. Despite filing its case years ago, Lower Makefield Township *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lower Makefield Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Lower Makefield Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lower Makefield Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lower Makefield Township therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in

part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lower Makefield Township failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lower Makefield Township's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lower Makefield Township of this deficiency on September 16, 2024 (*see* Exhibit B), but Lower Makefield Township refused to amend or supplement its Fact Sheet. Under this Court's orders, Lower Makefield Township's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lower Makefield Township's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lower Makefield Township's potential claims against them. Lower Makefield Township's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lower Makefield Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lower Makefield Township, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Lower Makefield Township's proposed RICO claim against the PBMs has expired. Lower Makefield Township filed its original complaint on June 19, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Lower Makefield Township v. Purdue Pharma L.P. et al.*, Case No. 1:20-op-45284-DAP, ECF No. 1-2. Even assuming *arguendo* that Lower Makefield Township first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on June 19, 2024. Lower Makefield Township's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Lower Makefield Township's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Lower Makefield Township, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1752. *Poarch Band of Creek Indians v. Amerisourcebergen Drug Corporation*, Case No. 1:20-op-45285-DAP: Plaintiff Poarch Band of Creek Indians, Alabama

Poarch Band of Creek Indians's untimely motion for leave to amend should be denied for several reasons. Poarch Band of Creek Indians failed to provide notice of its proposed amendments through a proposed complaint. Poarch Band of Creek Indians also lacks good cause under Rule 15

or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Poarch Band of Creek Indians's motion should be denied due to futility, as Poarch Band of Creek Indians does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Poarch Band of Creek Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Poarch Band of Creek Indians filed its original complaint on August 5, 2020 and the case was transferred to the MDL on December 21, 2020. *See Poarch Band of Creek Indians v. Amerisourcebergen Drug Corporation*, Case No. 1:20-op-45285-DAP, ECF No. 15. Poarch Band of Creek Indians could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Poarch Band of Creek Indians elected not to do so. Instead, Poarch Band of Creek Indians waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Poarch Band of Creek Indians's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Poarch Band of Creek Indians cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Poarch Band of Creek Indians, through its counsel, was on notice of potential claims

against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Poarch Band of Creek Indians fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Poarch Band of Creek Indians's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Poarch Band of Creek Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Poarch Band of Creek Indians filed its original complaint on August 5, 2020. *See Poarch Band of Creek Indians v. Amerisourcebergen Drug Corporation*, Case No. 1:20-op-45285-DAP, ECF No. 1-1. Despite filing its case years ago, Poarch Band of Creek Indians *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Poarch Band of Creek Indians's case would force the parties and the Court to waste time and resources ascertaining the extent of Poarch Band of Creek Indians's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that

failed to implement litigation holds until 2024. The PBMs are prejudiced by Poarch Band of Creek Indians's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Poarch Band of Creek Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Poarch Band of Creek Indians's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Poarch Band of Creek Indians, a native tribe in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Poarch Band of Creek Indians seeks leave to amend to add claims against the PBMs in four cases: *Poarch Band of Creek Indians v. Amneal Pharmaceuticals, LLC, et al.*, No. 1:20-op-45231-DAP; *Poarch Band of Creek Indians v. Amerisourcebergen Drug Corporation*, No. 1:20-op-45285-DAP; *Poarch Band of Creek Indians v. McKesson Corporation, et al.*, No. 1:20-op-45286-DAP; *Poarch Band of Creek Indians v. Cardinal Health, Inc*., 1:20-op-45294-DAP. Poarch Band of Creek Indians's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–

63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Poarch Band of Creek Indians's public-nuisance claim against the PBMs is therefore time-barred because Poarch Band of Creek Indians sought leave to amend its complaint on July 29, 2024—nearly four years after filing its original complaint on August 5, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Poarch Band of Creek Indians, a native tribe in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1753.** *Poarch Band of Creek Indians v. McKesson Corporation et al.*, **Case No. 1:20-op-45286-DAP: Plaintiff Poarch Band of Creek Indians, Alabama**

Poarch Band of Creek Indians's untimely motion for leave to amend should be denied for several reasons. Poarch Band of Creek Indians failed to provide notice of its proposed amendments through a proposed complaint. Poarch Band of Creek Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Poarch Band of Creek Indians's

motion should be denied due to futility, as Poarch Band of Creek Indians does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Poarch Band of Creek Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Poarch Band of Creek Indians filed its original complaint on August 5, 2020 and the case was transferred to the MDL on December 21, 2020. *See Poarch Band of Creek Indians v. McKesson Corporation et al.*, Case No. 1:20-op-45286-DAP, ECF No. 19. Poarch Band of Creek Indians could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Poarch Band of Creek Indians elected not to do so. Instead, Poarch Band of Creek Indians waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Poarch Band of Creek Indians's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Poarch Band of Creek Indians cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Poarch Band of Creek Indians, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Poarch Band of Creek Indians fails to explain why it was unable to assert claims against the PBMs

in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Poarch Band of Creek Indians's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Poarch Band of Creek Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Poarch Band of Creek Indians filed its original complaint on August 5, 2020. *See Poarch Band of Creek Indians v. McKesson Corporation et al.*, Case No. 1:20-op-45286-DAP, ECF No. 1-2. Despite filing its case years ago, Poarch Band of Creek Indians *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Poarch Band of Creek Indians's case would force the parties and the Court to waste time and resources ascertaining the extent of Poarch Band of Creek Indians's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Poarch Band of Creek Indians's disregard for its most basic discovery obligations as a litigant, compounded by the delay

in seeking leave to amend, and Poarch Band of Creek Indians therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Poarch Band of Creek Indians's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Poarch Band of Creek Indians, a native tribe in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Poarch Band of Creek Indians seeks leave to amend to add claims against the PBMs in four cases: *Poarch Band of Creek Indians v. Amneal Pharmaceuticals, LLC, et al.*, No. 1:20-op-45231-DAP; *Poarch Band of Creek Indians v. Amerisourcebergen Drug Corporation*, No. 1:20-op-45285-DAP; *Poarch Band of Creek Indians v. McKesson Corporation, et al.*, No. 1:20-op-45286-DAP; *Poarch Band of Creek Indians v. Cardinal Health, Inc.*, 1:20-op-45294-DAP. Poarch Band of Creek Indians's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly

split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Poarch Band of Creek Indians's public-nuisance claim against the PBMs is therefore time-barred because Poarch Band of Creek Indians sought leave to amend its complaint on July 29, 2024—nearly four years after filing its original complaint on August 5, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Poarch Band of Creek Indians, a native tribe in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1754. *Dinwiddie County v. Mallinckrodt, PLC et al.*, Case No. 1:20-op-45291-DAP: Plaintiff Dinwiddie County, Virginia

Dinwiddie County's untimely motion for leave to amend should be denied for several reasons. Dinwiddie County failed to provide notice of its proposed amendments through a proposed complaint. Dinwiddie County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Dinwiddie County's motion should be denied due to futility, as Dinwiddie County does not assert

any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Dinwiddie County previously alleged claims against some of the PBMs in its original complaint on April 4, 2019. *See Dinwiddie County v. Mallinckrodt, PLC et al.*, Case No. 1:20-op-45291-DAP, ECF No. 1-4; 1-5; 1-6 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Dinwiddie County also amended its complaint on August 5, 2020, to add claims against additional PBM-related entities. *See id.*, ECF No. 1-4; 1-5; 1-6 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Dinwiddie County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Dinwiddie County's deadline to amend was in 2021, but it waited three years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Dinwiddie County's complaint, Dinwiddie County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Dinwiddie County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**Failure to Timely Implement a Litigation Hold.** Dinwiddie County violated its basic duty to implement a timely litigation hold. Dinwiddie County filed its original complaint on April 4, 2019, but waited until July 19, 2024 to implement a litigation hold—over five years later. *See Dinwiddie County v. Mallinckrodt, PLC et al.*, Case No. 1:20-op-45291-DAP, ECF No. 1-4; 1-5;

1-6; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 19, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Dinwiddie County's case would force the parties and the Court to waste time and resources ascertaining the extent of Dinwiddie County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Dinwiddie County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Dinwiddie County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Dinwiddie County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Dinwiddie County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Dinwiddie County of this deficiency on September 16, 2024 (*see* Exhibit B), but Dinwiddie County refused to amend or supplement its Fact Sheet. Under this Court's orders, Dinwiddie County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Dinwiddie County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Dinwiddie County's potential claims against them. Dinwiddie County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693,

at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Dinwiddie County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Dinwiddie County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Dinwiddie County's proposed RICO claim against the PBMs has expired. Dinwiddie County filed its original complaint on April 4, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Dinwiddie County v. Mallinckrodt, PLC et al.*, Case No. 1:20-op-45291-DAP, ECF No. 1-4; 1-5; 1-6. Even assuming *arguendo* that Dinwiddie County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 4, 2023. Dinwiddie County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Dinwiddie County's request for leave to amend to add a RICO claim should be

denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Dinwiddie County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1755. *Poorch Band of Creek Indians v. Cardinal Health, Inc.*, Case No. 1:20-op-45294-DAP: Plaintiff Poorch Band of Creek Indians, Alabama

Poorch Band of Creek Indians's untimely motion for leave to amend should be denied for several reasons. Poorch Band of Creek Indians failed to provide notice of its proposed amendments through a proposed complaint. Poorch Band of Creek Indians also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Poorch Band of Creek Indians's motion should be denied due to futility, as Poorch Band of Creek Indians does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Poorch Band of Creek Indians was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Poorch Band of Creek Indians filed its original complaint on August 4, 2020 and the case was transferred to the MDL on December 28, 2020. *See Poorch Band of Creek Indians v. Cardinal Health, Inc.*, Case No. 1:20-op-45294-DAP, ECF No. 17. Poorch Band of Creek Indians could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Poorch Band of Creek Indians elected not to do so. Instead, Poorch Band of Creek Indians waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Poorch Band of Creek Indians's lack of diligence in

pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Poarch Band of Creek Indians's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.20% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Poarch Band of Creek Indians to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Poarch Band of Creek Indians filed its original complaint on August 4, 2020. *See Poarch Band of Creek Indians v. Cardinal Health, Inc.*, Case No. 1:20-op-45294-DAP, ECF No. 1-2. Despite filing its case years ago, Poarch Band of Creek Indians *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Poarch Band of Creek Indians's case would force the parties and the Court to waste time and resources ascertaining the extent of Poarch Band of Creek Indians's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Poarch Band of Creek Indians's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Poarch Band of Creek Indians therefore lacks good cause for leave

to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Poarch Band of Creek Indians's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Poarch Band of Creek Indians, a native tribe in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Impermissible Claim-splitting.** Poarch Band of Creek Indians seeks leave to amend to add claims against the PBMs in four cases: *Poarch Band of Creek Indians v. Amneal Pharmaceuticals, LLC, et al.*, No. 1:20-op-45231-DAP; *Poarch Band of Creek Indians v. Amerisourcebergen Drug Corporation*, No. 1:20-op-45285-DAP; *Poarch Band of Creek Indians v. McKesson Corporation, et al.*, No. 1:20-op-45286-DAP; *Poarch Band of Creek Indians v. Cardinal Health, Inc*., 1:20-op-45294-DAP. Poarch Band of Creek Indians's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent

suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Poarch Band of Creek Indians's public-nuisance claim against the PBMs is therefore time-barred because Poarch Band of Creek Indians sought leave to amend its complaint on July 29, 2024—nearly four years after filing its original complaint on August 4, 2020—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Poarch Band of Creek Indians, a native tribe in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1756.** ***District Attorney of Clearfield County v. Purdue Pharma L.P. et al.*, Case No. 1:21-op-45022-DAP: Plaintiff District Attorney of Clearfield County, Pennsylvania**

District Attorney of Clearfield County's untimely motion for leave to amend should be denied for several reasons. District Attorney of Clearfield County failed to provide notice of its proposed amendments through a proposed complaint. District Attorney of Clearfield County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, District Attorney of Clearfield County's motion should be denied due to futility, as District Attorney of Clearfield County does not assert any

allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** District Attorney of Clearfield County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, District Attorney of Clearfield County filed its original complaint on August 21, 2020 and the case was transferred to the MDL on February 27, 2021. *See District Attorney of Clearfield County v. Purdue Pharma L.P. et al.*, Case No. 1:21-op-45022-DAP, ECF No. 14. District Attorney of Clearfield County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, District Attorney of Clearfield County elected not to do so. Instead, District Attorney of Clearfield County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. District Attorney of Clearfield County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to District Attorney of Clearfield County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.10% market share for District Attorney of Clearfield County). That insignificant dispensing volume is much too low to support a finding of good cause for District Attorney of Clearfield County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** District Attorney of Clearfield County filed its original complaint on August 21, 2020. *See District Attorney of Clearfield County v. Purdue Pharma L.P. et al.*, Case No. 1:21-op-45022-DAP, ECF No. 1-2. Despite filing its case years ago, District Attorney of Clearfield County *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating District Attorney of Clearfield County's case would force the parties and the Court to waste time and resources ascertaining the extent of District Attorney of Clearfield County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by District Attorney of Clearfield County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and District Attorney of Clearfield County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, District Attorney of Clearfield County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to District Attorney of Clearfield County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified District Attorney of Clearfield County of this deficiency on September 16, 2024 (*see* Exhibit B), but District Attorney of Clearfield County refused to amend or supplement its Fact Sheet. Under this Court's orders, District Attorney of Clearfield County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above.

District Attorney of Clearfield County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against District Attorney of Clearfield County's potential claims against them. District Attorney of Clearfield County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But District Attorney of Clearfield County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See* *Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** District Attorney of Clearfield County, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** District Attorney of Clearfield County, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1757.** *Sheet Metal Workers Local 19 Health Fund v. Purdue Pharma L.P. et al.*, **Case No. 1:21-op-45025-DAP: Plaintiff Sheet Metal Workers Local 19 Health Fund, Pennsylvania**

Sheet Metal Workers Local 19 Health Fund's untimely motion for leave to amend should be denied for several reasons. Sheet Metal Workers Local 19 Health Fund failed to provide notice of its proposed amendments through a proposed complaint. Sheet Metal Workers Local 19 Health Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Sheet Metal Workers Local 19 Health Fund's motion should be denied due to futility, as Sheet Metal Workers Local 19 Health Fund does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Sheet Metal Workers Local 19 Health Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Sheet Metal Workers Local 19 Health Fund filed its original complaint on July 27, 2020 and the case was transferred to the MDL on February 17, 2021. *See Sheet Metal Workers Local 19 Health Fund v. Purdue Pharma L.P. et al.*, Case No. 1:21-op-45025-DAP, ECF No. 14. Sheet Metal Workers Local 19 Health Fund could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Sheet Metal Workers Local 19 Health Fund elected not to do so. Instead, Sheet Metal Workers Local 19 Health Fund waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Sheet Metal Workers Local 19 Health Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Sheet Metal Workers Local 19 Health Fund filed its original complaint on July 27, 2020. *See Sheet Metal Workers Local 19 Health Fund v. Purdue Pharma L.P. et al.*, Case No. 1:21-op-45025-DAP, ECF No. 1-2. Despite filing its case years ago, Sheet Metal Workers Local 19 Health Fund *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Sheet Metal Workers Local 19 Health Fund's case would force the parties and the Court to waste time and resources ascertaining the extent of Sheet Metal Workers Local 19 Health Fund's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Sheet Metal Workers Local 19 Health Fund's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Sheet Metal Workers Local 19 Health Fund therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Sheet Metal Workers Local 19 Health Fund has *never* served a Plaintiff Fact Sheet. Sheet Metal Workers Local 19 Health Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Sheet Metal Workers Local 19 Health Fund's failure to diligently prosecute its case negates any finding of

good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Sheet Metal Workers Local 19 Health Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Sheet Metal Workers Local 19 Health Fund, a third party payor in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Sheet Metal Workers Local 19 Health Fund's proposed RICO claim against the PBMs has expired. Sheet Metal Workers Local 19 Health Fund filed its original complaint on July 27, 2020, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See Sheet Metal Workers Local 19 Health Fund v. Purdue Pharma L.P. et al.*, Case No. 1:21-op-45025-DAP, ECF No. 1-2. Even assuming *arguendo* that Sheet Metal Workers Local 19 Health Fund first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on July 27, 2024. Sheet Metal Workers Local 19 Health Fund's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by

"discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Sheet Metal Workers Local 19 Health Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Sheet Metal Workers Local 19 Health Fund, a third party payor in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1758. *Middletown Township v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:21-op-45030-DAP: Plaintiff Middletown Township, Pennsylvania

Middletown Township's untimely motion for leave to amend should be denied for several reasons. Middletown Township failed to provide notice of its proposed amendments through a proposed complaint. Middletown Township also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Middletown Township's motion should be denied due to futility, as Middletown Township does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Middletown Township was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Middletown Township filed its original complaint on December 17, 2020 and the case was transferred to the MDL on February 21, 2021. *See Middletown Township v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:21-op-45030-DAP, ECF No. 6. Middletown Township could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Middletown Township elected not to do so. Instead, Middletown Township waited three years after its deadline to amend to seek

leave to assert claims against the PBMs. Middletown Township's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Middletown Township's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Middletown Township). That insignificant dispensing volume is much too low to support a finding of good cause for Middletown Township to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Middletown Township filed its original complaint on December 17, 2020. *See Middletown Township v. Teva Pharmaceuticals USA, Inc. et al.*, Case No. 1:21-op-45030-DAP, ECF No. 1-2. Despite filing its case years ago, Middletown Township *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Middletown Township's case would force the parties and the Court to waste time and resources ascertaining the extent of Middletown Township's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Middletown

Township's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Middletown Township therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Middletown Township's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Middletown Township, a municipality in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Middletown Township, a municipality in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1759.** ***Pennington County, South Dakota v. Mylan Pharmaceuticals, Inc. et al.*, Case No. 1:21-op-45048-DAP: Plaintiff Pennington County, South Dakota**

Pennington County's untimely motion for leave to amend should be denied for several reasons. Pennington County failed to provide notice of its proposed amendments through a proposed complaint. Pennington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact

sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pennington County's motion should be denied due to futility, as Pennington County does not assert any allegations tying the PBMs to its alleged harm and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pennington County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pennington County filed its original complaint directly into the MDL on April 9, 2021. *See Pennington County, South Dakota v. Mylan Pharmaceuticals, Inc. et al.*, Case No. 1:21-op-45048-DAP, ECF No. 1. Pennington County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Pennington County elected not to do so. Pennington County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Pennington County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pennington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Pennington County). That insignificant dispensing volume is much too low to support a finding of good cause for Pennington County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Pennington County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.13% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pennington County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prior Notice as an Express Scripts Client.** Pennington County previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Pennington County of the PBM services Express Scripts provides and Pennington County began receiving those services on September 1, 2010. *See id.* Inasmuch as Pennington County seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Pennington County knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Pennington County's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Pennington County filed its original complaint on April 9, 2021. *See Pennington County, South Dakota v. Mylan Pharmaceuticals, Inc. et al.*, Case No. 1:21-op-45048-DAP, ECF No. 1. Despite filing its case years ago, Pennington County

*never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Pennington County's case would force the parties and the Court to waste time and resources ascertaining the extent of Pennington County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pennington County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pennington County therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Pennington County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Pennington County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Pennington County of this deficiency on September 16, 2024 (*see* Exhibit B), but Pennington County refused to amend or supplement its Fact Sheet. Under this Court's orders, Pennington County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Pennington County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Pennington County's potential claims against them. Pennington County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final

Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at \*4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under South Dakota law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pennington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under South Dakota law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Pennington County, a municipality in South Dakota, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Pennington County, a municipality in South Dakota, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1760. *City of Piedmont, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45049-DAP: Plaintiff Piedmont City, Alabama

Piedmont City's untimely motion for leave to amend should be denied for several reasons. Piedmont City failed to provide notice of its proposed amendments through a proposed complaint. Piedmont City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Piedmont City's motion should be denied due to futility, as Piedmont City does not

assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Piedmont City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Piedmont City amended its complaint on July 21, 2021, after directly filing in the MDL. *See City of Piedmont, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45049-DAP, ECF No. 18. Unlike many other plaintiffs, Piedmont City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Piedmont City's deadline to amend was in 2021. Piedmont City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Piedmont City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Piedmont City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Piedmont City). That insignificant dispensing volume is much too low to support a finding of good cause for Piedmont City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Piedmont City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Piedmont City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Piedmont City filed its original complaint on April 12, 2021. *See City of Piedmont, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45049-DAP, ECF No. 1. Despite filing its case years ago, Piedmont City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Piedmont City's case would force the parties and the Court to waste time and resources ascertaining the extent of Piedmont City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Piedmont City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Piedmont City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Piedmont City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Piedmont City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Piedmont City's public-nuisance claim against the PBMs is therefore time-barred because Piedmont City sought leave to amend its complaint on July 29, 2024—three years after filing its original complaint on April 12, 2021—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Piedmont City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1761. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Cerro Gordo County, Iowa

Cerro Gordo County's untimely motion for leave to amend should be denied for several reasons. Cerro Gordo County failed to provide notice of its proposed amendments through a proposed complaint. Cerro Gordo County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cerro Gordo County's motion should be denied due to futility, as Cerro Gordo County does not

assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cerro Gordo County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cerro Gordo County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 13, 2021. *See Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP, ECF No. 6. Cerro Gordo County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Cerro Gordo County elected not to do so. Instead, Cerro Gordo County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Cerro Gordo County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cerro Gordo County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.004% market share for Cerro Gordo County). That insignificant dispensing volume is much too low to support a finding of good cause for Cerro Gordo County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cerro Gordo County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Cerro Gordo County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cerro Gordo County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cerro Gordo County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Cerro Gordo County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1762. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Chickasaw County, Iowa

Chickasaw County's untimely motion for leave to amend should be denied for several reasons. Chickasaw County failed to provide notice of its proposed amendments through a proposed complaint. Chickasaw County also lacks good cause under Rule 15 or Rule 16 due to a

lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Chickasaw County's motion should be denied due to futility, as Chickasaw County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chickasaw County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chickasaw County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 13, 2021. *See Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP, ECF No. 6. Chickasaw County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Chickasaw County elected not to do so. Instead, Chickasaw County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Chickasaw County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Chickasaw County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.15% market share for Chickasaw County). That insignificant dispensing volume is much too low to support a finding of good cause for Chickasaw County to add

dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Chickasaw County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Chickasaw County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chickasaw County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chickasaw County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Chickasaw County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1763. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Emmet County, Iowa

Emmet County's untimely motion for leave to amend should be denied for several reasons. Emmet County failed to provide notice of its proposed amendments through a proposed complaint.

Emmet County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Emmet County's motion should be denied due to futility, as Emmet County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Emmet County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Emmet County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 13, 2021. *See Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP, ECF No. 6. Emmet County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Emmet County elected not to do so. Instead, Emmet County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Emmet County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Emmet County's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Emmet County cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Emmet County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.12% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Emmet County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Emmet County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Emmet County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Emmet County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1764.  *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Jones County, Iowa

Jones County's untimely motion for leave to amend should be denied for several reasons. Jones County failed to provide notice of its proposed amendments through a proposed complaint. Jones County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Jones County's motion

should be denied due to futility, as Jones County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Jones County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Jones County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 13, 2021. *See Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP, ECF No. 6. Jones County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Jones County elected not to do so. Instead, Jones County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Jones County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Jones County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Jones County). That insignificant dispensing volume is much too low to support a finding of good cause for Jones County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Jones County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.15% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Jones County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Jones County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Jones County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Jones County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 1765. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Madison County, Iowa

Madison County's untimely motion for leave to amend should be denied for several reasons. Madison County failed to provide notice of its proposed amendments through a proposed complaint. Madison County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Madison

County's motion should be denied due to futility, as Madison County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Madison County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Madison County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 13, 2021. *See Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP, ECF No. 6. Madison County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Madison County elected not to do so. Instead, Madison County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Madison County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Madison County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Madison County). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Madison County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.42% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Madison County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Madison County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Madison County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Madison County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1766.  *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Muscatine County, Iowa

Muscatine County's untimely motion for leave to amend should be denied for several reasons. Muscatine County failed to provide notice of its proposed amendments through a proposed complaint. Muscatine County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover,

Muscatine County's motion should be denied due to futility, as Muscatine County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Muscatine County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Muscatine County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 13, 2021. *See Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP, ECF No. 6. Muscatine County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Muscatine County elected not to do so. Instead, Muscatine County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Muscatine County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Muscatine County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Muscatine County). That insignificant dispensing volume is much too low to support a finding of good cause for Muscatine County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Muscatine County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.24% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Muscatine County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Muscatine County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Muscatine County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Muscatine County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1767. *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Osceola County, Iowa

Osceola County's untimely motion for leave to amend should be denied for several reasons. Osceola County failed to provide notice of its proposed amendments through a proposed complaint. Osceola County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would

unduly prejudice the PBMs. Moreover, Osceola County's motion should be denied due to futility, as Osceola County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Osceola County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Osceola County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 13, 2021. *See Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP, ECF No. 6. Osceola County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Osceola County elected not to do so. Instead, Osceola County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Osceola County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Osceola County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Osceola County). That insignificant dispensing volume is much too low to support a finding of good cause for Osceola County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Osceola County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Osceola County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Osceola County of this deficiency on September 16, 2024 (*see* Exhibit B), but Osceola County refused to amend or supplement its Fact Sheet. Under this Court's orders, Osceola County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Osceola County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Osceola County's potential claims against them. Osceola County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Osceola County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Osceola County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Osceola County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1768.** *Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP: Plaintiff Poweshiek County, Iowa

Poweshiek County's untimely motion for leave to amend should be denied for several reasons. Poweshiek County failed to provide notice of its proposed amendments through a proposed complaint. Poweshiek County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Poweshiek County's motion should be denied due to futility, as Poweshiek County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Poweshiek County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Poweshiek County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 13, 2021. *See Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP, ECF No. 6. Poweshiek County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Poweshiek County elected not to do so. Instead, Poweshiek County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Poweshiek County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the

deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Poweshiek County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.04% market share for Poweshiek County). That insignificant dispensing volume is much too low to support a finding of good cause for Poweshiek County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Poweshiek County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Poweshiek County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Poweshiek County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1769.** *Appanoose County et al. v. Allergan PLC et al.*, **Case No. 1:21-op-45051-DAP: Plaintiff Wright County, Iowa**

Wright County's untimely motion for leave to amend should be denied for several reasons. Wright County failed to provide notice of its proposed amendments through a proposed complaint. Wright County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Wright County's motion should be denied due to futility, as Wright County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wright County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wright County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 13, 2021. *See Appanoose County et al. v. Allergan PLC et al.*, Case No. 1:21-op-45051-DAP, ECF No. 6. Wright County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Wright County elected not to do so. Instead, Wright County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Wright County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Wright County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson

Decl. (0.13% market share for Wright County). That insignificant dispensing volume is much too low to support a finding of good cause for Wright County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under Iowa law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wright County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Iowa law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wright County, a municipality in Iowa, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Wright County, a municipality in Iowa, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1770. *Board of County Commissioners of the County of Luna v. Allergan PLC et al.*, Case No. 1:21-op-45056-DAP: Plaintiff Luna County, New Mexico

Luna County's untimely motion for leave to amend should be denied for several reasons. Luna County failed to provide notice of its proposed amendments through a proposed complaint. Luna County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence and because its untimely motion would unduly prejudice the PBMs. Moreover, Luna County's motion should be denied due to futility, as Luna County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Luna County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Luna County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 21, 2021. *See Board of County Commissioners of the County of Luna v. Allergan PLC et al.*, Case No. 1:21-op-45056-DAP, ECF No. 4. Luna County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Luna County elected not to do so. Instead, Luna County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Luna County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Luna County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.29% market share for Luna County). That insignificant dispensing volume is much too low to support a finding of good cause for Luna County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Luna County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Luna County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Luna County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1771. *Board of County Commissioners of The County of Union v. Allergan PLC et al.*, Case No. 1:21-op-45057-DAP: Plaintiff Union County, New Mexico

Union County's untimely motion for leave to amend should be denied for several reasons. Union County failed to provide notice of its proposed amendments through a proposed complaint. Union County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Union County's motion should be denied due to futility, as Union County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Union County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Union County filed its original complaint on March 24, 2021 and the case was transferred to the MDL on April 21, 2021. *See Board of County Commissioners of The County of Union v. Allergan PLC et al.*, Case No. 1:21-op-45057-DAP, ECF No. 4. Union County could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above.

Unlike many other plaintiffs, Union County elected not to do so. Instead, Union County waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Union County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Union County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Union County). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Union County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Union County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Union County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-

fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Union County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Union County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1772.** *City of Las Cruces, New Mexico v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:21-op-45059-DAP: Plaintiff Las Cruces City, New Mexico**

Las Cruces City's untimely motion for leave to amend should be denied for several reasons. Las Cruces City failed to provide notice of its proposed amendments through a proposed complaint. Las Cruces City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Las Cruces City's motion should be denied due to futility, as Las Cruces City does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Las Cruces City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Las Cruces City amended its complaint on August 2, 2021, after transfer to the MDL on May 6, 2021. *See City of Las Cruces, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45059-DAP, ECF No. 25. Unlike many other plaintiffs, Las Cruces City declined to

add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Las Cruces City's deadline to amend was in 2021. Las Cruces City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Las Cruces City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Las Cruces City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; and McHugh Fuller Law Group, PLLC—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Las Cruces City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Las Cruces City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Las

Cruces City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.07% market share for Las Cruces City). That insignificant dispensing volume is much too low to support a finding of good cause for Las Cruces City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Las Cruces City filed its original complaint on April 14, 2021. *See City of Las Cruces, New Mexico v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45059-DAP, ECF No. 1. Despite filing its case years ago, Las Cruces City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Las Cruces City's case would force the parties and the Court to waste time and resources ascertaining the extent of Las Cruces City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Las Cruces City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Las Cruces City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Las Cruces City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Las Cruces City, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Las Cruces City, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1773. *St. John's Riverside Hospital v. McKesson Corporation et al.*, Case No. 1:21-op-45063-DAP: Plaintiff St. John's Riverside Hospital, New York

St. John's Riverside Hospital's untimely motion for leave to amend should be denied for several reasons. St. John's Riverside Hospital failed to provide notice of its proposed amendments through a proposed complaint. St. John's Riverside Hospital also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, St. John's Riverside Hospital's motion should be denied due to futility, as St. John's Riverside Hospital does not assert any allegations tying the PBMs to its alleged harm.

**Lack of Diligence.** St. John's Riverside Hospital was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, St. John's Riverside Hospital filed its original complaint directly into the MDL on May 8, 2021. *See St. John's Riverside Hospital v. McKesson Corporation et al.*, Case No. 1:21-op-45063-DAP, ECF No. 1. St. John's Riverside Hospital could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, St. John's Riverside Hospital elected not to do so. St. John's Riverside Hospital

waited three years after its deadline to amend to seek leave to assert claims against the PBMs. St. John's Riverside Hospital's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But St. John's Riverside Hospital's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** St. John's Riverside Hospital, a hospital in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** St. John's Riverside Hospital, a hospital in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. St. John's Riverside Hospital's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

**1774.** *Transitions Recovery Program v. McKesson Corporation et al.*, **Case No. 1:21-op-45066-DAP: Plaintiff Transitions Recovery Program, Florida**

Transitions Recovery Program's untimely motion for leave to amend should be denied for several reasons. Transitions Recovery Program failed to provide notice of its proposed amendments through a proposed complaint. Transitions Recovery Program also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Transitions Recovery Program's motion should be denied due to futility, as Transitions Recovery Program does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Transitions Recovery Program was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Transitions Recovery Program filed its original complaint directly into the MDL on May 19, 2021. *See Transitions Recovery Program v. McKesson Corporation et al.*, Case No. 1:21-op-45066-DAP, ECF No. 1. Transitions Recovery Program could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Transitions Recovery Program elected not to do so. Transitions Recovery Program waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Transitions Recovery Program's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Transitions Recovery Program's

delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Transitions Recovery Program, a hospital in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Transitions Recovery Program, a hospital in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1775.** *Teamsters Local 456 Welfare Fund v. McKesson Corporation et al.*, **Case No. 1:21-op-45067-DAP: Plaintiff Teamsters Local 456 Welfare Fund, New York**

Teamsters Local 456 Welfare Fund's untimely motion for leave to amend should be denied for several reasons. Teamsters Local 456 Welfare Fund failed to provide notice of its proposed amendments through a proposed complaint. Teamsters Local 456 Welfare Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Teamsters Local 456 Welfare Fund's motion should be denied due to futility, as Teamsters Local 456 Welfare Fund does not assert any allegations tying the PBMs to its alleged harm.

**Lack of Diligence.** Teamsters Local 456 Welfare Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Teamsters Local 456 Welfare Fund filed its original complaint directly into the MDL on May 19, 2021. *See Teamsters Local 456 Welfare Fund v. McKesson Corporation et*

*al.*, Case No. 1:21-op-45067-DAP, ECF No. 1. Teamsters Local 456 Welfare Fund could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Teamsters Local 456 Welfare Fund elected not to do so. Teamsters Local 456 Welfare Fund waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Teamsters Local 456 Welfare Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Teamsters Local 456 Welfare Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Teamsters Local 456 Welfare Fund of the PBM services Express Scripts provides and Teamsters Local 456 Welfare Fund began receiving those services on January 1, 2006. *See id.* Inasmuch as Teamsters Local 456 Welfare Fund seeks to add claims against Express Scripts entities related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Teamsters Local 456 Welfare Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Teamsters Local 456 Welfare Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Teamsters Local 456 Welfare Fund has *never* served a Plaintiff Fact Sheet. Teamsters Local 456 Welfare Fund's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Teamsters Local 456 Welfare Fund's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Teamsters Local 456 Welfare Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Teamsters Local 456 Welfare Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Teamsters Local 456 Welfare Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Teamsters Local 456 Welfare Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is

therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1776.** *City of Calera, Alabama v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:21-op-45070-DAP: Plaintiff Calera City, Alabama

Calera City's untimely motion for leave to amend should be denied for several reasons. Calera City failed to provide notice of its proposed amendments through a proposed complaint. Calera City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Calera City's motion should be denied due to futility, as Calera City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calera City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calera City filed its original complaint directly into the MDL on May 21, 2021. *See City of Calera, Alabama v. Amerisourcebergen Drug Coropration et al.*, Case No. 1:21-op-45070-DAP, ECF No. 1. Calera City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Calera City elected not to do so. Calera City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Calera City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Calera City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Calera City). That insignificant dispensing volume is much too low to support a finding of good cause for Calera City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Calera City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Calera City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Calera City filed its original complaint on May 21, 2021. *See City of Calera, Alabama v. Amerisourcebergen Drug Cororpation et al.*, Case No. 1:21-op-45070-DAP, ECF No. 1. Despite filing its case years ago, Calera City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Calera City's case would force the parties and the Court to waste time and resources ascertaining the extent of Calera City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Calera City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Calera City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the

passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calera City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Calera City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Calera City's public-nuisance claim against the PBMs is therefore time-barred because Calera City sought leave to amend its complaint on July 29, 2024—three years after filing its original complaint on May 21, 2021—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Calera City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1777.** *City of Gatlinburg, Tennessee v. Teva Pharmaceutical Industries, LTD et al.*, Case No. 1:21-op-45071-DAP: Plaintiff Gatlinburg City, Tennessee

Gatlinburg City's untimely motion for leave to amend should be denied for several reasons. Gatlinburg City failed to provide notice of its proposed amendments through a proposed complaint. Gatlinburg City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gatlinburg City's motion should be denied due to futility, as Gatlinburg City does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gatlinburg City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gatlinburg City filed its original complaint directly into the MDL on May 21, 2021. *See City of Gatlinburg, Tennessee v. Teva Pharmaceutical Industries, LTD et al.*, Case No. 1:21-op-45071-DAP, ECF No. 1. Gatlinburg City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Gatlinburg City elected not to do so. Gatlinburg City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Gatlinburg City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to

Gatlinburg City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.08% market share for Gatlinburg City). That insignificant dispensing volume is much too low to support a finding of good cause for Gatlinburg City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Gatlinburg City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.16% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Gatlinburg City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Gatlinburg City filed its original complaint on May 21, 2021. *See City of Gatlinburg, Tennessee v. Teva Pharmaceutical Industries, LTD et al.*, Case No. 1:21-op-45071-DAP, ECF No. 1. Despite filing its case years ago, Gatlinburg City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Gatlinburg City's case would force the parties and the Court to waste time and resources ascertaining the extent of Gatlinburg City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gatlinburg City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Gatlinburg City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to

amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Gatlinburg City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Gatlinburg City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Gatlinburg City of this deficiency on September 16, 2024 (*see* Exhibit B), but Gatlinburg City refused to amend or supplement its Fact Sheet. Under this Court's orders, Gatlinburg City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Gatlinburg City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Gatlinburg City's potential claims against them. Gatlinburg City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gatlinburg City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gatlinburg City, a municipality in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Gatlinburg City, a municipality in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1778. *County Board of Arlington County, Virginia v. Mallinckrodt PLC, et al.*, Case No. 1:21-op-45078-DAP: Plaintiff Arlington County, Virginia

Arlington County's untimely motion for leave to amend should be denied for several reasons. Arlington County failed to provide notice of its proposed amendments through a proposed complaint. Arlington County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Arlington County's motion should be denied due to futility, as Arlington County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Arlington County previously alleged claims against some of the PBMs in its original complaint on April 1, 2019. *See County Board of Arlington County, Virginia v. Mallinckrodt PLC, et al.*, Case No. 1:21-op-45078-DAP, ECF Nos. 1-3; 1-4 (bringing claims against Express Scripts Holding Co.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.). Arlington County also amended its complaint on October 18, 2019, to add claims against additional PBM-related entities. *See id.*, ECF No. 1-3 (adding claims against Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.). Now, Arlington

County seeks to add other PBM-related entities as defendants but offers no good cause for its failure to name these entities as defendants in its original or amended complaints. Arlington County's deadline to amend was in 2021, but it waited nearly three years after its deadline to seek leave to assert claims against the remaining PBMs. As described above, the omnibus motions say nothing about the majority of the entities that the Moving Plaintiffs seek to add as defendants to their complaints. And for those entities that were named in an earlier iteration of Arlington County's complaint, Arlington County already had access to the relevant documents it contends give rise to its proposed claims when it filed its prior complaints against the PBMs. *See* Section II.A, above. Arlington County was not diligent in pursuing its claims against the PBMs and leave to amend should be denied for lack of good cause.

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Arlington County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.13% market share for Arlington County). That insignificant dispensing volume is much too low to support a finding of good cause for Arlington County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Arlington County violated its basic duty to implement a timely litigation hold. Arlington County filed its original complaint on April 1, 2019, but waited until June 9, 2020 to implement a litigation hold—one year and two months later. *See County Board of Arlington County, Virginia v. Mallinckrodt PLC, et al.*, Case No. 1:21-op-45078-DAP, ECF No. 1-3; 1-4; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: June 9, 2020). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating

Arlington County's case would force the parties and the Court to waste time and resources ascertaining the extent of Arlington County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Arlington County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Arlington County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Arlington County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Arlington County, a municipality in Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Arlington County's proposed RICO claim against the PBMs has expired. Arlington County filed its original complaint on April 1, 2019, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County Board of Arlington County, Virginia v. Mallinckrodt PLC, et al.*, Case No.

1:21-op-45078-DAP, ECF No. 1-3; 1-4. Even assuming *arguendo* that Arlington County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on April 1, 2023. Arlington County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Arlington County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Arlington County, a municipality in Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1779. *City of Niceville Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45081-DAP: Plaintiff Niceville City, Florida

Niceville City's untimely motion for leave to amend should be denied for several reasons. Niceville City failed to provide notice of its proposed amendments through a proposed complaint. Niceville City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Niceville City's motion should be denied due to futility, as Niceville City does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Niceville City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Niceville City amended its complaint on September 13, 2021, after transfer to the MDL on June 14, 2021. *See City of Niceville Florida v. AmerisourceBergen Drug Corporation et al.*, Case No.

1:21-op-45081-DAP, ECF No. 8. Unlike many other plaintiffs, Niceville City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Niceville City's deadline to amend was in 2021. Niceville City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Niceville City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice Through Counsel.** Niceville City cannot meet the Rule 16 good cause standard because it is represented by the same counsel—Powell & Majestro, PLLC; Baron & Budd, P.C.; and Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.—that filed claims against the PBMs in 2019. *See* MDL ECF No. 2582. Niceville City, through its counsel, was on notice of potential claims against the PBMs and could readily have amended its complaint to add the PBMs much earlier. Niceville City fails to explain why it was unable to assert claims against the PBMs in 2019 when its own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Duggins*, 195 F.3d at 834 (affirming denial of leave to amend after the close of discovery when the "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint"); *Thurmond*, 649 F. App'x at 1006 (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Niceville City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Niceville City). That insignificant dispensing volume is much too low to support a finding of good cause for Niceville City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Niceville City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Niceville City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Niceville City filed its original complaint on May 14, 2021. *See City of Niceville Florida v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:21-op-45081-DAP, ECF No. 1. Despite filing its case years ago, Niceville City *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Niceville City's case would force the parties and the Court to waste time and resources ascertaining the extent of Niceville City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Niceville City's disregard for its most basic discovery obligations as a

litigant, compounded by the delay in seeking leave to amend, and Niceville City therefore lacks

good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave

to amend in part because the passage of time resulted in significant prejudice due to the loss of

documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek

to allocate fault to other parties. *See* Section III.A.6, above. But Niceville City's delay in seeking

to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Florida law due to the loss of relevant evidence over time. That impairment substantially

prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Niceville City, a municipality in Florida, has not pleaded any

facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from

another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Niceville City, a municipality in Florida, lacks standing to state

a claim for relief under any of the New York laws referenced in the City of Rochester's complaint.

*See* Section III.B.6, above.

### 1780. *Russell, KY et al. v. Abbott Laboratories et al.*, Case No. 1:21-op-45094-DAP: Plaintiff Russell City, Kentucky

Russell City's untimely motion for leave to amend should be denied for several reasons.

Russell City failed to provide notice of its proposed amendments through a proposed complaint.

Russell City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to

implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its

untimely motion would unduly prejudice the PBMs. Moreover, Russell City's motion should be

denied due to futility, as Russell City does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Russell City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Russell City filed its original complaint on June 25, 2021 and the case was transferred to the MDL on August 11, 2021. *See Russell, KY et al. v. Abbott Laboratories et al.*, Case No. 1:21-op-45094-DAP, ECF No. 18. Russell City could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, Russell City elected not to do so. Instead, Russell City waited three years after its deadline to amend to seek leave to assert claims against the PBMs. Russell City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Russell City filed its original complaint on June 25, 2021. *See Russell, KY et al. v. Abbott Laboratories et al.*, Case No. 1:21-op-45094-DAP, ECF No. 1-2. Despite filing its case years ago, Russell City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Russell City's case would force the parties and the Court to waste time and resources ascertaining the extent of Russell City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Russell City's

disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Russell City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Russell City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Russell City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Russell City of this deficiency on September 16, 2024 (*see* Exhibit B), but Russell City refused to amend or supplement its Fact Sheet. Under this Court's orders, Russell City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Russell City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Russell City's potential claims against them. Russell City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Russell City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Russell City, a municipality in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Russell City, a municipality in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1781. *Village of Lexington v. Actavis LLC et al.*, Case No. 1:21-op-45109-DAP: Plaintiff Lexington Village, Ohio

Lexington Village's untimely motion for leave to amend should be denied for several reasons. Lexington Village failed to provide notice of its proposed amendments through a proposed complaint. Lexington Village also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lexington Village's motion should be denied due to futility, as Lexington Village does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lexington Village was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lexington Village filed its original complaint directly into the MDL on November 5, 2021. *See Village of Lexington v. Actavis LLC et al.*, Case No. 1:21-op-45109-DAP, ECF No. 1. Lexington Village could have amended its complaint, without leave, to add claims against the

PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Lexington Village elected not to do so. Lexington Village waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Lexington Village's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Had Zero Dispenses.** OptumRx's home-delivery pharmacy did not dispense a single opioid prescription to Lexington Village's geographic jurisdiction over the period for which OptumRx has data (2010 to 2019). *See* Gustafson Decl.. Because OptumRx's home-delivery pharmacy "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above. Thus, Lexington Village cannot show good cause to add claims against OptumRx in its capacity as a home delivery pharmacy.

**Failure to Implement a Litigation Hold.** Lexington Village filed its original complaint on November 5, 2021. *See Village of Lexington v. Actavis LLC et al.*, Case No. 1:21-op-45109-DAP, ECF No. 1. Despite filing its case years ago, Lexington Village *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lexington Village's case would force the parties and the Court to waste time and resources ascertaining the extent of Lexington Village's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs

are prejudiced by Lexington Village's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lexington Village therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Lexington Village failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Lexington Village's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Lexington Village of this deficiency on September 16, 2024 (*see* Exhibit B), but Lexington Village refused to amend or supplement its Fact Sheet. Under this Court's orders, Lexington Village's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lexington Village's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Lexington Village's potential claims against them. Lexington Village's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lexington Village's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

.

**Failure to State a Claim.** Lexington Village, a municipality in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Lexington Village is a plaintiff in Ohio. Lexington Village's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Lexington Village, a municipality in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1782.** ***Threadgill v. McKesson Corporation et al.*, Case No. 1:21-op-45118-DAP: Plaintiff Shannon Lee Threadgill, individually and as next of friend and guardian of Child K.R.T., Washington**

Shannon Lee Threadgill's untimely motion for leave to amend should be denied for several reasons. Threadgill failed to provide notice of her proposed amendments through a proposed complaint. Threadgill also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Threadgill's motion should be denied due to futility, as Threadgill does not assert any allegations tying the PBMs to her alleged harm, her proposed public nuisance claim is

barred by the statute of limitations, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Threadgill was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Threadgill filed her original complaint directly into the MDL on December 15, 2021. *See Threadgill v. McKesson Corporation et al.*, Case No. 1:21-op-45118-DAP, ECF No. 1. Threadgill could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Threadgill elected not to do so. Threadgill waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Threadgill's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Threadgill filed her original complaint on December 15, 2021. *See Threadgill v. McKesson Corporation et al.*, Case No. 1:21-op-45118-DAP, ECF No. 1. Despite filing her case years ago, Threadgill *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Threadgill's case would force the parties and the Court to waste time and resources ascertaining the extent of Threadgill's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Threadgill's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to

amend, and Threadgill therefore lacks good cause for leave to amend her complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Washington law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Threadgill's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Washington law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Threadgill, an individual in Washington, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Washington, public-nuisance claims are subject to a two-year limitations period. Threadgill's public-nuisance claim against the PBMs is therefore time-barred because Threadgill sought leave to amend her complaint on July 29, 2024—two and a half years after filing her original complaint on December 15, 2021—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Threadgill, an individual in Washington, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1783.** *Vincent v. McKesson Corporation et al.*, Case No. 1:21-op-45119-DAP: **Plaintiff Beth Vincent, individually and as next of friend and guardian of Child S.J.S, Kentucky**

Vincent's untimely motion for leave to amend should be denied for several reasons. Vincent failed to provide notice of her proposed amendments through a proposed complaint. Vincent also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Vincent's motion should be denied due to futility, as Vincent does not assert any allegations tying the PBMs to her alleged harm, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Vincent was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Vincent filed her original complaint directly into the MDL on December 15, 2021. *See Vincent v. McKesson Corporation et al.*, Case No. 1:21-op-45119-DAP, ECF No. 1. Vincent could have amended her complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Vincent elected not to do so. Vincent waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Vincent's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Vincent filed her original complaint on December 15, 2021. *See Vincent v. McKesson Corporation et al.*, Case No. 1:21-op-45119-DAP, ECF No. 1. Despite filing her case years ago, Vincent *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Vincent's case would force the parties and the Court to waste time and resources ascertaining the extent of Vincent's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Vincent's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Vincent therefore lacks good cause for leave to amend her complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Kentucky law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Vincent's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Kentucky law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Vincent, an individual in Kentucky, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Vincent, an individual in Kentucky, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1784.** ***Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45121-DAP: Plaintiff Adam Matthew Rubin, individually and as next of friend and guardian of Child C.A.R., New York**

Adam Matthew Rubin, individually and as next of friend and guardian of Child C.A.R.'s untimely motion for leave to amend should be denied for several reasons. Rubin failed to provide notice of his proposed amendments through a proposed complaint. Rubin also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because his untimely motion would unduly prejudice the PBMs. Moreover, Rubin's motion should be denied due to futility, as Rubin does not assert any allegations tying the PBMs to his alleged harm.

**Lack of Diligence.** Rubin was on notice of his claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rubin filed his original complaint directly into the MDL on December 16, 2021. *See Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45121-DAP, ECF No. 1. Rubin could have amended his complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Rubin elected not to do so. Rubin waited more than two years after his deadline to amend to seek leave to assert claims against the PBMs. Rubin's lack of diligence in pursuing his claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Rubin filed his original complaint on December 16, 2021. *See Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45121-DAP, ECF No. 1. Despite filing his case years ago, Rubin *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Rubin's case would force the parties and the Court to waste time and resources ascertaining the extent of Rubin's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rubin's disregard for his most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rubin therefore lacks good cause for leave to amend his complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rubin's delay in seeking to amend his complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rubin, an individual in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to his injuries. Instead, he relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Rubin, an individual in New York, lacks standing to assert a claim under NY SSL § 145-B because he is not New York City, a county in New York, or the state

of New York. *See* Section III.B.6, above. Rubin's request for leave to amend his complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1785. *Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45122-DAP: Plaintiff Adam Matthew Rubin, individually and as next of friend and guardian of Child C.M.R., New York

Adam Matthew Rubin, individually and as next of friend and guardian of Child C.M.R.'s untimely motion for leave to amend should be denied for several reasons. Rubin failed to provide notice of his proposed amendments through a proposed complaint. Rubin also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because his untimely motion would unduly prejudice the PBMs. Moreover, Rubin's motion should be denied due to futility, as Rubin does not assert any allegations tying the PBMs to his alleged harm.

**Lack of Diligence.** Rubin was on notice of his claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rubin filed his original complaint directly into the MDL on December 16, 2021. *See Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45122-DAP, ECF No. 1. Rubin could have amended his complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Rubin elected not to do so. Rubin waited more than two years after his deadline to amend to seek leave to assert claims against the PBMs. Rubin's lack of diligence in pursuing his claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459

(affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Rubin filed his original complaint on December 16, 2021. *See Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45122-DAP, ECF No. 1. Despite filing his case years ago, Rubin *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Rubin's case would force the parties and the Court to waste time and resources ascertaining the extent of Rubin's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rubin's disregard for his most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rubin therefore lacks good cause for leave to amend his complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rubin's delay in seeking to amend his complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rubin, an individual in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to his injuries. Instead, he relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Rubin, an individual in New York, lacks standing to assert a claim under NY SSL § 145-B because he is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Rubin's request for leave to amend his complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1786.** ***Rubin v. McKesson Corporation et al.***, **Case No. 1:21-op-45123-DAP: Plaintiff Adam Matthew Rubin, individually and as next of friend and guardian of Child C.J.R., New York**

Adam Matthew Rubin, individually and as next of friend and guardian of Child C.J.R.'s untimely motion for leave to amend should be denied for several reasons. Rubin failed to provide notice of his proposed amendments through a proposed complaint. Rubin also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because his untimely motion would unduly prejudice the PBMs. Moreover, Rubin's motion should be denied due to futility, as Rubin does not assert any allegations tying the PBMs to its alleged harm.

**Lack of Diligence.** Rubin was on notice of his claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rubin filed his original complaint directly into the MDL on December 16, 2021. *See Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45123-DAP, ECF No. 1. Rubin could have amended his complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Rubin elected not to do so. Rubin waited more than two years after his deadline to amend to seek leave to assert claims against the PBMs. Rubin's lack of diligence in pursuing his claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had

all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Rubin filed his original complaint on December 16, 2021. *See Rubin v. McKesson Corporation et al.*, Case No. 1:21-op-45123-DAP, ECF No. 1. Despite filing his case years ago, Rubin *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Rubin's case would force the parties and the Court to waste time and resources ascertaining the extent of Rubin's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Rubin's disregard for his most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rubin therefore lacks good cause for leave to amend his complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rubin's delay in seeking to amend his complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rubin, an individual in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to his injuries. Instead, he relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Rubin, an individual in New York, lacks standing to assert a claim under NY SSL § 145-B because he is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Rubin's request for leave to amend his complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

> **1787.** *Farrell v. McKesson Corporation et al.*, Case No. 1:21-op-45124-DAP: **Plaintiff Maryann Farrell, individually and as next of friend and guardian of Child A.N.F., Pennsylvania**

Maryann Farrell, individually and as next of friend and guardian of Child A.N.F.'s untimely motion for leave to amend should be denied for several reasons. Farrell failed to provide notice of her proposed amendments through a proposed complaint. Farrell also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Farrell's motion should be denied due to futility, as Farrell does not assert any allegations tying the PBMs to her alleged harm, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Farrell was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Farrell filed her original complaint directly into the MDL on December 16, 2021. *See Farrell v. McKesson Corporation et al.*, Case No. 1:21-op-45124-DAP, ECF No. 1. Farrell could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Farrell elected not to do so. Farrell waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Farrell's lack of

diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Farrell filed her original complaint on December 16, 2021. *See Farrell v. McKesson Corporation et al.*, Case No. 1:21-op-45124-DAP, ECF No. 1. Despite filing its case years ago, Farrell *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Farrell's case would force the parties and the Court to waste time and resources ascertaining the extent of Farrell's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Farrell's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Farrell therefore lacks good cause for leave to amend her complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Pennsylvania law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Farrell's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Pennsylvania law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Farrell, an individual in Pennsylvania, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Farrell, an individual in Pennsylvania, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1788. *Funston v. McKesson Corporation et al.*, Case No. 1:21-op-45125-DAP: Plaintiff Christopher Michael Funston, individually and as next of friend and guardian of Child C.C.F., Missouri

Christopher Michael Funston, individually and as next of friend and guardian of Child C.C.F.'s untimely motion for leave to amend should be denied for several reasons. Funston failed to provide notice of his proposed amendments through a proposed complaint. Funston also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because his untimely motion would unduly prejudice the PBMs. Moreover, Funston's motion should be denied due to futility, as Funston does not assert any allegations tying the PBMs to his alleged harm, and he lacks standing to assert claims under New York state law.

**Lack of Diligence.** Funston was on notice of his claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Funston filed his original complaint directly into the MDL on December 16, 2021. *See Funston v. McKesson Corporation et al.*, Case No. 1:21-op-45125-DAP, ECF No. 1. Funston could have amended his complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Funston elected not to do so. Funston waited more than two years after his deadline to amend to seek leave to assert claims against the PBMs. Funston's lack of diligence in pursuing his claims negates any finding of good cause. *See Garza*, 972 F.3d at 879

(affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Funston filed his original complaint on December 16, 2021. *See Funston v. McKesson Corporation et al.*, Case No. 1:21-op-45125-DAP, ECF No. 1. Despite filing his case years ago, Funston *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Funston's case would force the parties and the Court to waste time and resources ascertaining the extent of Funston's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Funston's disregard for his most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Funston therefore lacks good cause for leave to amend his complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Funston's delay in seeking to amend his complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Funston, an individual in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to his injuries. Instead, he relies

exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Funston, an individual in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1789. *MSP Recovery Claims, Series LLC, a*, Case No. 1:21-op-45126-DAP: Plaintiff Tiffany Nicole Burcham, individually and as next of friend and guardian of Child L.R.K., Indiana

Tiffany Nicole Burcham, individually and as next of friend and guardian of Child L.R.K.'s untimely motion for leave to amend should be denied for several reasons. Burcham failed to provide notice of her proposed amendments through a proposed complaint. Burcham also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Burcham's motion should be denied due to futility, as Burcham does not assert any allegations tying the PBMs to her alleged harm, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Burcham was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Burcham filed her original complaint directly into the MDL on December 16, 2021. *See MSP Recovery Claims, Series LLC, a*, Case No. 1:21-op-45126-DAP, ECF No. 1. Burcham could have amended her complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Burcham elected not to do so. Burcham waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Burcham's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704

F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Burcham filed her original complaint on December 16, 2021. *See MSP Recovery Claims, Series LLC, a*, Case No. 1:21-op-45126-DAP, ECF No. 1. Despite filing her case years ago, Burcham *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Burcham's case would force the parties and the Court to waste time and resources ascertaining the extent of Burcham's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Burcham's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Burcham therefore lacks good cause for leave to amend her complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Indiana law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Burcham's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Indiana law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Burcham, an individual in Indiana, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Burcham, an individual in Indiana, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1790.** ***Moser et al. v. McKesson Corporation et al.*, Case No. 1:21-op-45127-DAP: Plaintiff Rachel Renee Moser, individually and as next of friend and guardian of Child A.W.J., Florida**

Rachel Renee Moser, individually and as next of friend and guardian of Child A.W.J.'s untimely motion for leave to amend should be denied for several reasons. Moser failed to provide notice of her proposed amendments through a proposed complaint. Moser also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Moser's motion should be denied due to futility, as Moser does not assert any allegations tying the PBMs to her alleged harm, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Moser was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Moser filed her original complaint directly into the MDL on December 16, 2021. *See Moser et al. v. McKesson Corporation et al.*, Case No. 1:21-op-45127-DAP, ECF No. 1. Moser could have amended her complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Moser elected not to do so. Moser waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Moser's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Moser filed her original complaint on December 16, 2021. *See Moser et al. v. McKesson Corporation et al.*, Case No. 1:21-op-45127-DAP, ECF No. 1. Despite filing her case years ago, Moser *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Moser's case would force the parties and the Court to waste time and resources ascertaining the extent of Moser's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Moser's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Moser therefore lacks good cause for leave to amend her complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Moser's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Moser, an individual in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Moser, an individual in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> ### 1791. *Aanestad v. McKesson Corporation et al.*, Case No. 1:21-op-45128-DAP: Plaintiff Christina Marie Aanestad, individually and as next of friend and guardian of Child P.J.A., California

Christina Marie Aanestad, individually and as next of friend and guardian of Child P.J.A.'s untimely motion for leave to amend should be denied for several reasons. Aanestad failed to provide notice of her proposed amendments through a proposed complaint. Aanestad also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Aanestad's motion should be denied due to futility, as Aanestad does not assert any allegations tying the PBMs to her alleged harm, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Aanestad was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Aanestad filed her original complaint directly into the MDL on December 17, 2021. *See Aanestad v. McKesson Corporation et al.*, Case No. 1:21-op-45128-DAP, ECF No. 1. Aanestad could have amended her complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Aanestad elected not to do so. Aanestad waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Aanestad's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Aanestad filed her original complaint on December 17, 2021. *See Aanestad v. McKesson Corporation et al.*, Case No. 1:21-op-45128-DAP, ECF No. 1. Despite filing her case years ago, Aanestad *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Aanestad's case would force the parties and the Court to waste time and resources ascertaining the extent of Aanestad's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Aanestad's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Aanestad therefore lacks good cause for leave to amend her complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Aanestad, an individual in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Aanestad, an individual in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1792. *Rowaihy v. McKesson Corporation et al.*, Case No. 1:21-op-45129-DAP: Plaintiff Marsha Marie Rowaihy, individually and as next of friend and guardian of Child J.J.A., Missouri

Marsha Marie Rowaihy, individually and as next of friend and guardian of Child J.J.A.'s untimely motion for leave to amend should be denied for several reasons. Rowaihy failed to provide notice of her proposed amendments through a proposed complaint. Rowaihy also lacks

good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Rowaihy's motion should be denied due to futility, as Rowaihy does not assert any allegations tying the PBMs to her alleged harm, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Rowaihy was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Rowaihy filed her original complaint directly into the MDL on December 17, 2021. *See Rowaihy v. McKesson Corporation et al.*, Case No. 1:21-op-45129-DAP, ECF No. 1. Rowaihy could have amended her complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Rowaihy elected not to do so. Rowaihy waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Rowaihy's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Rowaihy filed her original complaint on December 17, 2021. *See Rowaihy v. McKesson Corporation et al.*, Case No. 1:21-op-45129-DAP, ECF No. 1. Despite filing her case years ago, Rowaihy *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Rowaihy's case would force the parties and the Court to waste time and resources ascertaining the extent of Rowaihy's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to

implement litigation holds until 2024. The PBMs are prejudiced by Rowaihy's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Rowaihy therefore lacks good cause for leave to amend her complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Rowaihy's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Rowaihy, an individual in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Rowaihy, an individual in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1793. *Calkins v. McKesson Corporation et al.*, Case No. 1:21-op-45130-DAP: Plaintiff Vada Elizabeth Calkins, individually and as next of friend and guardian of Child D.V.L.C., Missouri

Vada Elizabeth Calkins, individually and as next of friend and guardian of Child D.V.L.C.'s untimely motion for leave to amend should be denied for several reasons. Calkins failed to provide notice of her proposed amendments through a proposed complaint. Calkins also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover,

Calkins's motion should be denied due to futility, as Calkins does not assert any allegations tying the PBMs to her alleged harm, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Calkins was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Calkins filed her original complaint directly into the MDL on December 17, 2021. *See Calkins v. McKesson Corporation et al.*, Case No. 1:21-op-45130-DAP, ECF No. 1. Calkins could have amended her complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Calkins elected not to do so. Calkins waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Calkins's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Calkins filed her original complaint on December 17, 2021. *See Calkins v. McKesson Corporation et al.*, Case No. 1:21-op-45130-DAP, ECF No. 1. Despite filing her case years ago, Calkins *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Calkins's case would force the parties and the Court to waste time and resources ascertaining the extent of Calkins's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Calkins's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend,

and Calkins therefore lacks good cause for leave to amend her complaint. *See Pethtel*, 2020 WL 6827791, at \*28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Calkins's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Calkins, an individual in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Calkins, an individual in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1794.** *Carpenter v. McKesson Corporation et al.*, **Case No. 1:21-op-45131-DAP: Plaintiff Holly Janelle Carpenter, individually and as next of friend and guardian of Child C.M.C., Maryland**

Holly Janelle Carpenter, individually and as next of friend and guardian of Child C.M.C.'s untimely motion for leave to amend should be denied for several reasons. Carpenter failed to provide notice of her proposed amendments through a proposed complaint. Carpenter also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Carpenter's motion should be denied due to futility, as Carpenter does not assert any allegations tying the PBMs to her alleged harm, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Carpenter was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Carpenter filed her original complaint directly into the MDL on December 17, 2021. *See Carpenter v. McKesson Corporation et al.*, Case No. 1:21-op-45131-DAP, ECF No. 1. Carpenter could have amended her complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Carpenter elected not to do so. Carpenter waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Carpenter's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Carpenter filed her original complaint on December 17, 2021. *See Carpenter v. McKesson Corporation et al.*, Case No. 1:21-op-45131-DAP, ECF No. 1. Despite filing her case years ago, Carpenter *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Carpenter's case would force the parties and the Court to waste time and resources ascertaining the extent of Carpenter's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Carpenter's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Carpenter therefore lacks good cause for leave to amend her complaint. *See Pethtel*,

2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Maryland law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Carpenter's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Maryland law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Carpenter, an individual in Maryland, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Carpenter, an individual in Maryland, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

1795. ***Chapman v. McKesson Corporation et al.*, Case No. 1:21-op-45132-DAP: Plaintiff Thomas Wayne Chapman, individually and as next of friend and guardian of Child V.D.C., Alabama**

Thomas Wayne Chapman, individually and as next of friend and guardian of Child V.D.C.'s untimely motion for leave to amend should be denied for several reasons. Chapman failed to provide notice of her proposed amendments through a proposed complaint. Chapman also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Chapman's motion should be denied due to futility, as Chapman does not assert any allegations tying the PBMs to her alleged harm, her proposed public nuisance claim is barred by the statute of limitations, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Chapman was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Chapman filed her original complaint directly into the MDL on December 17, 2021. *See Chapman v. McKesson Corporation et al.*, Case No. 1:21-op-45132-DAP, ECF No. 1. Chapman could have amended her complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Chapman elected not to do so. Thomas Wayne Chapman, individually and as next of friend and guardian of Child V.D.C. waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Thomas Wayne Chapman, individually and as next of friend and guardian of Child V.D.C.'s lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Chapman filed her original complaint on December 17, 2021. *See Chapman v. McKesson Corporation et al.*, Case No. 1:21-op-45132-DAP, ECF No. 1. Despite filing her case years ago, Chapman *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Chapman's case would force the parties and the Court to waste time and resources ascertaining the extent of Chapman's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Chapman's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend,

and Chapman therefore lacks good cause for leave to amend her complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Chapman's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Chapman, an individual in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Chapman's public-nuisance claim against the PBMs is therefore time-barred because Chapman sought leave to amend her complaint on July 29, 2024—two and a half years after filing her original complaint on December 17, 2021—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Chapman, an individual in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1796.** *Covington v. McKesson Corporation et al.*, **Case No. 1:21-op-45133-DAP: Plaintiff Regina Marie Covington, individually and as next of friend and guardian of Child K.W.C.C., Missouri**

Regina Marie Covington, individually and as next of friend and guardian of Child K.W.C.C.'s untimely motion for leave to amend should be denied for several reasons. Covington failed to provide notice of her proposed amendments through a proposed complaint. Covington also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because her untimely motion would unduly prejudice the PBMs. Moreover, Covington's motion should be denied due to futility, as Covington does not assert any allegations tying the PBMs to her alleged harm, and she lacks standing to assert claims under New York state law.

**Lack of Diligence.** Covington was on notice of her claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Covington filed her original complaint directly into the MDL on December 17, 2021. *See Covington v. McKesson Corporation et al.*, Case No. 1:21-op-45133-DAP, ECF No. 1. Covington could have amended her complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Covington elected not to do so. Covington waited more than two years after her deadline to amend to seek leave to assert claims against the PBMs. Covington's lack of diligence in pursuing her claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Covington filed her original complaint on December 17, 2021. *See Covington v. McKesson Corporation et al.*, Case No. 1:21-op-45133-

DAP, ECF No. 1. Despite filing her case years ago, Covington *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Covington's case would force the parties and the Court to waste time and resources ascertaining the extent of Covington's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Covington's disregard for her most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Covington therefore lacks good cause for leave to amend her complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Missouri law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Covington's delay in seeking to amend her complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Missouri law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Covington, an individual in Missouri, has not pleaded any facts showing that the PBMs caused or substantially contributed to her injuries. Instead, she relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Covington, an individual in Missouri, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1797.** *Creech v. McKesson Corporation et al.*, Case No. 1:21-op-45134-DAP: Plaintiff Christopher Creech, individually and as next friend and guardian of Child L.R.C., New Mexico

Christopher Creech, individually and as next friend and guardian of Child L.R.C.'s untimely motion for leave to amend should be denied for several reasons. Creech failed to provide notice of his proposed amendments through a proposed complaint. Creech also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because his untimely motion would unduly prejudice the PBMs. Moreover, Creech's motion should be denied due to futility, as Creech does not assert any allegations tying the PBMs to his alleged harm, and he lacks standing to assert claims under New York state law.

**Lack of Diligence.** Creech was on notice of his claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Creech filed his original complaint directly into the MDL on December 17, 2021. *See Creech v. McKesson Corporation et al.*, Case No. 1:21-op-45134-DAP, ECF No. 1. Creech could have amended his complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Creech elected not to do so. Creech waited more than two years after his deadline to amend to seek leave to assert claims against the PBMs. Creech's lack of diligence in pursuing his claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Creech filed his original complaint on December 17, 2021. *See Creech v. McKesson Corporation et al.*, Case No. 1:21-op-45134-DAP, ECF No. 1. Despite filing his case years ago, Creech *never* implemented a litigation hold, in violation of this

Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Creech's case would force the parties and the Court to waste time and resources ascertaining the extent of Creech's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Creech's disregard for his most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Creech therefore lacks good cause for leave to amend his complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Creech's delay in seeking to amend his complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Creech, an individual in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to his injuries. Instead, he relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Creech, an individual in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

**1798.** ***Board of County Commissioners of the County of Torrance v. Allergan PLC et al.*, Case No. 1:22-op-45004-DAP: Plaintiff Torrance County, New Mexico**

Torrance County's untimely motion for leave to amend should be denied for several reasons. Torrance County failed to provide notice of its proposed amendments through a proposed complaint. Torrance County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Torrance County's motion should be denied due to futility, as Torrance County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Torrance County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Torrance County filed its original complaint on December 30, 2021 and the case was transferred to the MDL on January 28, 2022. *See Board of County Commissioners of the County of Torrance v. Allergan PLC et al.*, Case No. 1:22-op-45004-DAP, ECF No. 4. Torrance County could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Torrance County elected not to do so. Instead, Torrance County waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Torrance County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Torrance County's delay in

seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Torrance County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Torrance County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1799. *County of Coryell v. Walgreens Co. et al.*, Case No. 1:22-op-45009-DAP: Plaintiff Coryell County, Texas

Coryell County's untimely motion for leave to amend should be denied for several reasons. Coryell County failed to provide notice of its proposed amendments through a proposed complaint. Coryell County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Coryell County's motion should be denied due to futility, as Coryell County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Coryell County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Coryell County first amended its complaint on September 3, 2021. *See County of Coryell v. Walgreens Co. et al.*, Case No. 1:22-op-45009-DAP, ECF No. 1-2. Unlike many other plaintiffs,

Coryell County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Coryell County's deadline to amend was in 2022. Coryell County waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Coryell County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Coryell County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Coryell County). That insignificant dispensing volume is much too low to support a finding of good cause for Coryell County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Coryell County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.41% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Coryell County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Coryell County filed its original complaint on March 30, 2018. *See County of Coryell v. Walgreens Co. et al.*, Case No. 1:22-op-45009-DAP,

ECF No. 7-2. Despite filing its case years ago, Coryell County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Coryell County's case would force the parties and the Court to waste time and resources ascertaining the extent of Coryell County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Coryell County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Coryell County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Coryell County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Coryell County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Coryell County of this deficiency on September 16, 2024 (*see* Exhibit B), but Coryell County refused to amend or supplement its Fact Sheet. Under this Court's orders, Coryell County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Coryell County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Coryell County's potential claims against them. Coryell County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Coryell County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Coryell County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Coryell County's proposed RICO claim against the PBMs has expired. Coryell County filed its original complaint on March 30, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against the PBMs. *See County of Coryell v. Walgreens Co. et al.*, Case No. 1:22-op-45009-DAP, ECF No. 7-2. Even assuming *arguendo* that Coryell County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on March 30, 2022. Coryell County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Coryell County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Coryell County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1800.** ***County of Kendall v. Walgreens Co. et al.*, Case No. 1:22-op-45010-DAP: Plaintiff Kendall County, Texas**

Kendall County's untimely motion for leave to amend should be denied for several reasons. Kendall County failed to provide notice of its proposed amendments through a proposed complaint. Kendall County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kendall County's motion should be denied due to futility, as Kendall County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kendall County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Kendall County first amended its complaint on September 3, 2021. *See County of Kendall v. Walgreens Co. et al.*, Case No. 1:22-op-45010-DAP, ECF No. 1-2. Unlike many other plaintiffs, Kendall County declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Kendall County's deadline to amend was in 2022. Kendall County waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Kendall County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Kendall County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.23% market share for Kendall County). That insignificant dispensing volume is much too low to support a finding of good cause for Kendall County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Kendall County filed its original complaint on May 16, 2018. *See County of Kendall v. Walgreens Co. et al.*, Case No. 1:22-op-45010-DAP, ECF No. 7-2. Despite filing its case years ago, Kendall County *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Kendall County's case would force the parties and the Court to waste time and resources ascertaining the extent of Kendall County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kendall County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Kendall County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Kendall County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Kendall County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The

PBMs notified Kendall County of this deficiency on September 16, 2024 (*see* Exhibit B), but Kendall County refused to amend or supplement its Fact Sheet. Under this Court's orders, Kendall County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Kendall County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Kendall County's potential claims against them. Kendall County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Texas law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kendall County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Texas law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kendall County, a municipality in Texas, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Kendall County's proposed RICO claim against the PBMs has expired. Kendall County filed its original complaint on May 16, 2018, alleging the same type of injuries for which it now seeks to recover under RICO against

the PBMs. *See County of Kendall v. Walgreens Co. et al.*, Case No. 1:22-op-45010-DAP, ECF No. 7-2. Even assuming *arguendo* that Kendall County first learned of its injury on the day it filed its original complaint, RICO's four-year statute of limitations expired, at the very latest, on May 16, 2022. Kendall County's RICO claim is therefore time-barred. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Kendall County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Kendall County, a municipality in Texas, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1801. *Eddy County v. Allergan PLC et al.*, Case No. 1:22-op-45015-DAP: Plaintiff Eddy County, New Mexico

Eddy County's untimely motion for leave to amend should be denied for several reasons. Eddy County failed to provide notice of its proposed amendments through a proposed complaint. Eddy County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, and because its untimely motion would unduly prejudice the PBMs. Moreover, Eddy County's motion should be denied due to futility, as Eddy County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Eddy County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Eddy County filed its original complaint on February 24, 2022 and the case was transferred to the MDL on March 24, 2022. *See Eddy County v. Allergan PLC et al.*, Case No. 1:22-op-45015-DAP,

ECF No. 4. Eddy County could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Eddy County elected not to do so. Instead, Eddy County waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Eddy County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Eddy County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Eddy County). That insignificant dispensing volume is much too low to support a finding of good cause for Eddy County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Eddy County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.49% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Eddy County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Prejudice Due to Loss of Evidence.** Under New Mexico law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Eddy County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New Mexico law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Eddy County, a municipality in New Mexico, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Plaintiff Lacks Standing.** Eddy County, a municipality in New Mexico, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1802.** *City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP: Plaintiff Columbiana City, Alabama

Columbiana City's untimely motion for leave to amend should be denied for several reasons. Columbiana City failed to provide notice of its proposed amendments through a proposed complaint. Columbiana City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Columbiana City's motion should be denied due to futility, as Columbiana City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Columbiana City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Columbiana City amended its complaint on March 3, 2023, after directly filing in the MDL. *See City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP, ECF No. 4. Unlike many other plaintiffs, Columbiana City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Columbiana City's deadline to amend was in 2022. Columbiana City waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Columbiana City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Columbiana City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Columbiana City). That insignificant dispensing volume is much too low to support a finding of good cause for Columbiana City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Columbiana City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Columbiana City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Columbiana City filed its original complaint on March 1, 2022. *See City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP, ECF No. 1. Despite filing its case years ago, Columbiana City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Columbiana City's case would force the parties and the Court to waste time and resources ascertaining the extent of Columbiana City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Columbiana City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Columbiana City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Columbiana City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Columbiana City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Columbiana City of this deficiency on September 16, 2024 (*see* Exhibit B), but Columbiana City refused to amend or supplement its Fact Sheet. Under this Court's orders, Columbiana City's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Columbiana City's refusal

to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Columbiana City's potential claims against them. Columbiana City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Columbiana City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Columbiana City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Columbiana City's public-nuisance claim against the PBMs is therefore time-barred because Columbiana City sought leave to amend its complaint on July 29, 2024—two years after filing its original complaint on March 1, 2022—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which

adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Columbiana City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1803.** *City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:22-op-45016-DAP: Plaintiff Helena City, Alabama**

Helena City's untimely motion for leave to amend should be denied for several reasons. Helena City failed to provide notice of its proposed amendments through a proposed complaint. Helena City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Helena City's motion should be denied due to futility, as Helena City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Helena City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Helena City amended its complaint on March 3, 2023, after directly filing in the MDL. *See City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP, ECF No. 4. Unlike many other plaintiffs, Helena City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Helena City's deadline to amend was in 2022. Helena City waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Helena City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine

months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Helena City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.03% market share for Helena City). That insignificant dispensing volume is much too low to support a finding of good cause for Helena City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Helena City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.28% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Helena City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Helena City filed its original complaint on March 1, 2022. *See City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP, ECF No. 1. Despite filing its case years ago, Helena City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Helena City's case would force the parties and the Court to waste time and resources ascertaining the extent of Helena City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are

prejudiced by Helena City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Helena City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Helena City failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Helena City's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Helena City of this deficiency on September 16, 2024 (*see* Exhibit B), but Helena City refused to amend or supplement its Fact Sheet. Under this Court's orders, Helena City's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Helena City's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Helena City's potential claims against them. Helena City's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Helena City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Helena City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Helena City's public-nuisance claim against the PBMs is therefore time-barred because Helena City sought leave to amend its complaint on July 29, 2024—two years after filing its original complaint on March 1, 2022—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Helena City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

>    **1804.** ***City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.***, **Case No. 1:22-op-45016-DAP: Plaintiff Pelham City, Alabama**

Pelham City's untimely motion for leave to amend should be denied for several reasons. Pelham City failed to provide notice of its proposed amendments through a proposed complaint. Pelham City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Pelham City's motion should be denied due to futility, as Pelham City does not assert

any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Pelham City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Pelham City amended its complaint on March 3, 2023, after directly filing in the MDL. *See City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP, ECF No. 4. Unlike many other plaintiffs, Pelham City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Pelham City's deadline to amend was in 2022. Pelham City waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Pelham City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Pelham City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.06% market share for Pelham City). That insignificant dispensing volume is much too low to support a finding of good cause for Pelham City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid

units shipped to Pelham City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Pelham City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**<u>Failure to Implement a Litigation Hold.</u>** Pelham City filed its original complaint on March 1, 2022. *See City of Columbiana, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45016-DAP, ECF No. 1. Despite filing its case years ago, Pelham City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Pelham City's case would force the parties and the Court to waste time and resources ascertaining the extent of Pelham City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Pelham City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Pelham City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**<u>Prejudice Due to Loss of Evidence.</u>** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Pelham City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Pelham City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Pelham City's public-nuisance claim against the PBMs is therefore time-barred because Pelham City sought leave to amend its complaint on July 29, 2024—two years after filing its original complaint on March 1, 2022—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Pelham City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1805.** *City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:22-op-45018-DAP: Plaintiff Bay Minette City, Alabama**

Bay Minette City's untimely motion for leave to amend should be denied for several reasons. Bay Minette City failed to provide notice of its proposed amendments through a proposed complaint. Bay Minette City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Bay Minette City's motion should be denied due to futility, as Bay Minette City does not assert any allegations tying the PBMs to its alleged harm, its proposed public

nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Bay Minette City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Bay Minette City amended its complaint on May 9, 2022, after directly filing in the MDL. *See City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45018-DAP, ECF No. 12. Unlike many other plaintiffs, Bay Minette City declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Bay Minette City's deadline to amend was in 2022. Bay Minette City waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Bay Minette City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Bay Minette City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.01% market share for Bay Minette City). That insignificant dispensing volume is much too low to support a finding of good cause for Bay Minette City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Bay Minette City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.25% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Bay Minette City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Bay Minette City filed its original complaint on March 22, 2022. *See City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45018-DAP, ECF No. 1. Despite filing its case years ago, Bay Minette City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Bay Minette City's case would force the parties and the Court to waste time and resources ascertaining the extent of Bay Minette City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Bay Minette City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Bay Minette City therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Bay Minette City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Bay Minette City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Bay Minette City's public-nuisance claim against the PBMs is therefore time-barred because Bay Minette City sought leave to amend its complaint on July 29, 2024—two years after filing its original complaint on March 22, 2022—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Bay Minette City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1806.** *City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:22-op-45018-DAP: Plaintiff Loxley Town, Alabama**

Loxley Town's untimely motion for leave to amend should be denied for several reasons. Loxley Town failed to provide notice of its proposed amendments through a proposed complaint. Loxley Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Loxley Town's motion should be denied due to futility, as Loxley Town does not assert

any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Loxley Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Loxley Town amended its complaint on May 9, 2022, after directly filing in the MDL. *See City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45018-DAP, ECF No. 12. Unlike many other plaintiffs, Loxley Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Loxley Town's deadline to amend was in 2022. Loxley Town waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Loxley Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Loxley Town's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.02% market share for Loxley Town). That insignificant dispensing volume is much too low to support a finding of good cause for Loxley Town to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Loxley Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.31% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Loxley Town to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Loxley Town filed its original complaint on March 22, 2022. *See City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45018-DAP, ECF No. 1. Despite filing its case years ago, Loxley Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Loxley Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Loxley Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Loxley Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Loxley Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Loxley Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights

under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Loxley Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Loxley Town's public-nuisance claim against the PBMs is therefore time-barred because Loxley Town sought leave to amend its complaint on July 29, 2024—two years after filing its original complaint on March 22, 2022—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Loxley Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1807.** *City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, **Case No. 1:22-op-45018-DAP: Plaintiff Summerdale Town, Alabama**

Summerdale Town's untimely motion for leave to amend should be denied for several reasons. Summerdale Town failed to provide notice of its proposed amendments through a proposed complaint. Summerdale Town also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Summerdale Town's motion should be denied due to

futility, as Summerdale Town does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Summerdale Town was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Summerdale Town amended its complaint on May 9, 2022, after directly filing in the MDL. *See City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45018-DAP, ECF No. 12. Unlike many other plaintiffs, Summerdale Town declined to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Summerdale Town's deadline to amend was in 2022. Summerdale Town waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Summerdale Town's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' PBM Has No Market Share.** Express Scripts' PBM processed *zero* claims for prescription opioids in Summerdale Town's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit A. Because Express Scripts' PBM "ha[s] no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14; *see* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Summerdale Town filed its original complaint on March 22, 2022. *See City of Bay Minette, Alabama et al. v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45018-DAP, ECF No. 1. Despite filing its case years ago,

Summerdale Town *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Summerdale Town's case would force the parties and the Court to waste time and resources ascertaining the extent of Summerdale Town's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Summerdale Town's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Summerdale Town therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Summerdale Town's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Summerdale Town, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Summerdale Town's public-nuisance claim against the PBMs is

therefore time-barred because Summerdale Town sought leave to amend its complaint on July 29, 2024—two years after filing its original complaint on March 22, 2022—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Summerdale Town, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1808. *City of Gulf Shores, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:22-op-45019-DAP: Plaintiff Gulf Shores City, Alabama

Gulf Shores City's untimely motion for leave to amend should be denied for several reasons. Gulf Shores City failed to provide notice of its proposed amendments through a proposed complaint. Gulf Shores City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Gulf Shores City's motion should be denied due to futility, as Gulf Shores City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Gulf Shores City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Gulf Shores City filed its original complaint on March 4, 2022 and the case was transferred to the MDL on March 23, 2022. *See City of Gulf Shores, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:22-op-45019-DAP, ECF No. 3. Gulf Shores City could have

amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Gulf Shores City elected not to do so. Instead, Gulf Shores City waited more than two years after its deadline to amend to seek leave to assert claims against the PBMs. Gulf Shores City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Gulf Shores City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Gulf Shores City). That insignificant dispensing volume is much too low to support a finding of good cause for Gulf Shores City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Gulf Shores City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.47% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Gulf Shores City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Gulf Shores City violated its basic duty to implement a timely litigation hold. Gulf Shores City filed its original complaint on March 4,

2022, but waited until July 15, 2024 to implement a litigation hold—more than two years later. *See City of Gulf Shores, Alabama v. Amerisourcebergen Drug Corporation et al.*, Case No. 1:22-op-45019-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 15, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Gulf Shores City's case would force the parties and the Court to waste time and resources ascertaining the extent of Gulf Shores City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Gulf Shores City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Gulf Shores City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Gulf Shores City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Gulf Shores City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Gulf Shores City's public-nuisance claim against the PBMs is

therefore time-barred because Gulf Shores City sought leave to amend its complaint on July 29, 2024—two years after filing its original complaint on March 4, 2022—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Gulf Shores City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1809.  *City of Childersburg, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45020-DAP: Plaintiff Childersburg City, Alabama

Childersburg City's untimely motion for leave to amend should be denied for several reasons. Childersburg City failed to provide notice of its proposed amendments through a proposed complaint. Childersburg City also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Childersburg City's motion should be denied due to futility, as Childersburg City does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Childersburg City was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Childersburg City amended its complaint on May 9, 2022, after directly filing in the MDL. *See City of Childersburg, Alabama v. AmerisourceBergen Drug Corporation et al.*, Case No. 1:22-op-45020-DAP, ECF No. 11. Unlike many other plaintiffs, Childersburg City declined

to add claims against the PBMs in its amended complaint. *See* Section II.A.1, above. Childersburg City's deadline to amend was in 2022. Childersburg City waited two years after its deadline to amend to seek leave to assert claims against the PBMs. Childersburg City's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Childersburg City's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.05% market share for Childersburg City). That insignificant dispensing volume is much too low to support a finding of good cause for Childersburg City to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Childersburg City's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.23% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Childersburg City to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Implement a Litigation Hold.** Childersburg City filed its original complaint on April 8, 2022. *See City of Childersburg, Alabama v. AmerisourceBergen Drug Corporation et*

*al.*, Case No. 1:22-op-45020-DAP, ECF No. 1. Despite filing its case years ago, Childersburg City *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Childersburg City's case would force the parties and the Court to waste time and resources ascertaining the extent of Childersburg City's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Childersburg City's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Childersburg City therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Childersburg City's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Childersburg City, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Public Nuisance Statute of Limitations.** In Alabama, public-nuisance claims are subject to a two-year limitations period. Childersburg City's public-nuisance claim against the PBMs is

therefore time-barred because Childersburg City sought leave to amend its complaint on July 29, 2024—two years after filing its original complaint on April 8, 2022—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** Childersburg City, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1810. *Board of Education of Boardman Local Schools et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45023-DAP: Plaintiff Board Of Education of Boardman Local Schools, Ohio

Board Of Education of Boardman Local Schools's untimely motion for leave to amend should be denied for several reasons. Board Of Education of Boardman Local Schools failed to provide notice of its proposed amendments through a proposed complaint. Board Of Education of Boardman Local Schools also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board Of Education of Boardman Local Schools's motion should be denied due to futility, as Board Of Education of Boardman Local Schools does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board Of Education of Boardman Local Schools was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board Of Education of Boardman Local Schools filed its

original complaint directly into the MDL on May 19, 2022. *See Board of Education of Boardman Local Schools et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45023-DAP, ECF No. 1. Board Of Education of Boardman Local Schools could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Board Of Education of Boardman Local Schools elected not to do so. Board Of Education of Boardman Local Schools waited nearly two years after its deadline to amend to seek leave to assert claims against the PBMs. Board Of Education of Boardman Local Schools's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board Of Education of Boardman Local Schools violated its basic duty to implement a timely litigation hold. Board Of Education of Boardman Local Schools filed its original complaint on May 19, 2022, but waited until September 13, 2024 to implement a litigation hold—more than two years later. *See Board of Education of Boardman Local Schools et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45023-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board Of Education of Boardman Local Schools's case would force the parties and the Court to waste time and resources ascertaining the extent of Board Of Education of Boardman Local Schools's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board Of

Education of Boardman Local Schools's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board Of Education of Boardman Local Schools therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Failure to Prosecute.** In its Plaintiff Fact Sheet, Board Of Education of Boardman Local Schools failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board Of Education of Boardman Local Schools's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board Of Education of Boardman Local Schools of this deficiency on September 16, 2024 (*see* Exhibit B), but Board Of Education of Boardman Local Schools refused to amend or supplement its Fact Sheet. Under this Court's orders, Board Of Education of Boardman Local Schools's case is therefore subject to "*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board Of Education of Boardman Local Schools's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board Of Education of Boardman Local Schools's potential claims against them. Board Of Education of Boardman Local Schools's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board Of Education of Boardman Local Schools's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board Of Education of Boardman Local Schools, a school district in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Plaintiff's Public Nuisance Claim is Futile.** Board Of Education of Boardman Local Schools is a plaintiff in Ohio. Board Of Education of Boardman Local Schools's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board Of Education of Boardman Local Schools, a school district in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1811. *Board of Education of Boardman Local Schools et al. v. Cephalon, Inc. et al.*, **Case No. 1:22-op-45023-DAP: Plaintiff Board of Education of Liberty Local Schools, Ohio**

Board of Education of Liberty Local Schools's untimely motion for leave to amend should be denied for several reasons. Board of Education of Liberty Local Schools failed to provide notice

of its proposed amendments through a proposed complaint. Board of Education of Liberty Local Schools also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Board of Education of Liberty Local Schools's motion should be denied due to futility, as Board of Education of Liberty Local Schools does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Board of Education of Liberty Local Schools was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Board of Education of Liberty Local Schools filed its original complaint directly into the MDL on May 19, 2022. *See Board of Education of Boardman Local Schools et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45023-DAP, ECF No. 1. Board of Education of Liberty Local Schools could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Board of Education of Liberty Local Schools elected not to do so. Board of Education of Liberty Local Schools waited nearly two years after its deadline to amend to seek leave to assert claims against the PBMs. Board of Education of Liberty Local Schools's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Board of Education of Liberty Local Schools violated its basic duty to implement a timely litigation hold. Board of Education of Liberty Local Schools filed its original complaint on May 19, 2022, but waited until September 13, 2024 to implement a litigation hold—more than two years later. *See Board of Education of Boardman Local Schools et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45023-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Board of Education of Liberty Local Schools's case would force the parties and the Court to waste time and resources ascertaining the extent of Board of Education of Liberty Local Schools's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Board of Education of Liberty Local Schools's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Board of Education of Liberty Local Schools therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Board of Education of Liberty Local Schools failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Board of Education of Liberty Local Schools's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Board of Education of Liberty Local Schools of this deficiency on September 16, 2024 (*see* Exhibit B), but Board of Education of Liberty Local Schools refused to amend or supplement its Fact Sheet. Under this Court's orders, Board of Education of Liberty Local Schools's case is therefore subject to

"*dismiss[al] with prejudice*" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Board of Education of Liberty Local Schools's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Board of Education of Liberty Local Schools's potential claims against them. Board of Education of Liberty Local Schools's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Board of Education of Liberty Local Schools's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Board of Education of Liberty Local Schools, a school district in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Plaintiff's Public Nuisance Claim is Futile.** Board of Education of Liberty Local Schools is a plaintiff in Ohio. Board of Education of Liberty Local Schools's request for leave to add the

PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Board of Education of Liberty Local Schools, a school district in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1812. *MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP: Plaintiff MSPA Claims 1, LLC, Ohio

MSPA Claims 1, LLC's untimely motion for leave to amend should be denied for several reasons. MSPA Claims 1, LLC failed to provide notice of its proposed amendments through a proposed complaint. MSPA Claims 1, LLC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, MSPA Claims 1, LLC's motion should be denied due to futility, as MSPA Claims 1, LLC does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** MSPA Claims 1, LLC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, MSPA Claims 1, LLC filed its original complaint directly into the MDL on January 17, 2018. *See MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP, ECF No. 1. MSPA Claims 1, LLC could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, MSPA Claims 1, LLC elected not to do so. MSPA Claims 1, LLC waited five years after its deadline to

amend to seek leave to assert claims against the PBMs. MSPA Claims 1, LLC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** MSPA Claims 1, LLC filed its original complaint on January 17, 2018. *See MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP, ECF No. 1. Despite filing its case years ago, MSPA Claims 1, LLC *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating MSPA Claims 1, LLC's case would force the parties and the Court to waste time and resources ascertaining the extent of MSPA Claims 1, LLC's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by MSPA Claims 1, LLC's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and MSPA Claims 1, LLC therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But MSPA Claims 1, LLC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment

substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** MSPA Claims 1, LLC, a third-party payer in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Impermissible Claim-splitting.** MSPA Claims 1, LLC seeks leave to amend to add claims against the PBMs in two cases: *MSPA Claims 1, LLC, et al. v. Purdue Pharma L.P., et al.*, No. 1:18- OP-45057-DAP; and *MSPA Claims 1, LLC, et al. v. Anda, Inc., et al.*, No. 1:18-OP-45526-DAP. MSPA Claims 1, LLC's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** MSPA Claims 1, LLC is a plaintiff in Ohio. MSPA Claims 1, LLC's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for MSPA Claims 1, LLC's proposed RICO claim against the PBMs has expired. MSPA Claims 1, LLC filed its original

complaint on January 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP, ECF No. 1. It is therefore indisputable that MSPA Claims 1, LLC knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. MSPA Claims 1, LLC's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. MSPA Claims 1, LLC's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** MSPA Claims 1, LLC, a third-party payer in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1813. *MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP: Plaintiff MAO-MSO Recovery II, LLC, Ohio

MAO-MSO Recovery II, LLC's untimely motion for leave to amend should be denied for several reasons. MAO-MSO Recovery II, LLC failed to provide notice of its proposed amendments through a proposed complaint. MAO-MSO Recovery II, LLC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, MAO-MSO Recovery II, LLC's motion should be denied due to futility, as MAO-MSO Recovery II, LLC does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** MAO-MSO Recovery II, LLC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, MAO-MSO Recovery II, LLC filed its original complaint directly into the MDL on January 17, 2018. *See MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP, ECF No. 1. MAO-MSO Recovery II, LLC could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, MAO-MSO Recovery II, LLC elected not to do so. MAO-MSO Recovery II, LLC waited five years after its deadline to amend to seek leave to assert claims against the PBMs. MAO-MSO Recovery II, LLC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** MAO-MSO Recovery II, LLC filed its original complaint on January 17, 2018. *See MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP, ECF No. 1. Despite filing its case years ago, MAO-MSO Recovery II, LLC *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating MAO-MSO Recovery II, LLC's case would force the parties and the Court to waste time and resources ascertaining the extent of MAO-MSO Recovery II, LLC's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by MAO-MSO Recovery II, LLC's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend,

and MAO-MSO Recovery II, LLC therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But MAO-MSO Recovery II, LLC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** MAO-MSO Recovery II, LLC a third-party payer in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Impermissible Claim-splitting.** MAO-MSO Recovery II, LLC seeks leave to amend to add claims against the PBMs in two cases: *MSPA Claims 1, LLC, et al. v. Purdue Pharma L.P., et al.*, No. 1:18- OP-45057-DAP; and *MSPA Claims 1, LLC, et al. v. Anda, Inc., et al.*, No. 1:18-OP-45526-DAP. MAO-MSO Recovery II, LLC's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same

facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** MAO-MSO Recovery II, LLC is a plaintiff in Ohio. MAO-MSO Recovery II, LLC's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for MAO-MSO Recovery II, LLC's proposed RICO claim against the PBMs has expired. MAO-MSO Recovery II, LLC filed its original complaint on January 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP, ECF No. 1. It is therefore indisputable that MAO-MSO Recovery II, LLC knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. MAO-MSO Recovery II, LLC's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. MAO-MSO Recovery II, LLC's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** MAO-MSO Recovery II, LLC, a third-party payer in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1814. *MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP: Plaintiff MSP Recovery Claims, Series LLC, Ohio

MSP Recovery Claims, Series LLC's untimely motion for leave to amend should be denied for several reasons. MSP Recovery Claims, Series LLC failed to provide notice of its proposed amendments through a proposed complaint. MSP Recovery Claims, Series LLC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, MSP Recovery Claims, Series LLC's motion should be denied due to futility, as MSP Recovery Claims, Series LLC does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in Ohio, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** MSP Recovery Claims, Series LLC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, MSP Recovery Claims, Series LLC filed its original complaint directly into the MDL on January 17, 2018. *See MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP, ECF No. 1. MSP Recovery Claims, Series LLC could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, MSP Recovery Claims, Series LLC elected not to do so. MSP Recovery Claims, Series LLC waited five years after its deadline to amend to seek leave to assert claims against the PBMs. MSP Recovery Claims, Series LLC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion

to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** MSP Recovery Claims, Series LLC filed its original complaint on January 17, 2018. *See MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP, ECF No. 1. Despite filing its case years ago, MSP Recovery Claims, Series LLC *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating MSP Recovery Claims, Series LLC's case would force the parties and the Court to waste time and resources ascertaining the extent of MSP Recovery Claims, Series LLC's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by MSP Recovery Claims, Series LLC's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and MSP Recovery Claims, Series LLC therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Ohio law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But MSP Recovery Claims, Series LLC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Ohio law due to the loss of relevant evidence over time. That

impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** MSP Recovery Claims, Series LLC, a third-party payer in Ohio, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Impermissible Claim-splitting.** MSP Recovery Claims, Series LLC seeks leave to amend to add claims against the PBMs in two cases: *MSPA Claims 1, LLC, et al. v. Purdue Pharma L.P., et al.*, No. 1:18- OP-45057-DAP; and *MSPA Claims 1, LLC, et al. v. Anda, Inc., et al.*, No. 1:18-OP-45526-DAP. MSP Recovery Claims, Series LLC's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**Plaintiff's Public Nuisance Claim is Futile.** MSP Recovery Claims, Series LLC is a plaintiff in Ohio. MSP Recovery Claims, Series LLC's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because "all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *1, 2024-OHIO-5744, ¶ 1; *see* Section III.B.3, above.

**RICO Statute of Limitations.** The statute of limitations for MSP Recovery Claims, Series LLC's proposed RICO claim against the PBMs has expired. MSP Recovery Claims, Series LLC filed its original complaint on January 17, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See MSPA Claims 1, LLC et al. v. Purdue Pharma L.P. et al.*, Case No. 1:18-op-45057-DAP, ECF No. 1. It is therefore indisputable that MSP Recovery Claims, Series LLC knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. MSP Recovery Claims, Series LLC's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. MSP Recovery Claims, Series LLC's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** MSP Recovery Claims, Series LLC, a third-party payer in Ohio, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1815. *MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP: Plaintiff MSPA Claims 1, LLC, Florida

MSPA Claims 1, LLC's untimely motion for leave to amend should be denied for several reasons. MSPA Claims 1, LLC failed to provide notice of its proposed amendments through a proposed complaint. MSPA Claims 1, LLC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, MSPA Claims 1, LLC's motion should be denied due to futility, as MSPA Claims 1, LLC does not assert any allegations tying the PBMs to its alleged

harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** MSPA Claims 1, LLC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, MSPA Claims 1, LLC filed its original complaint on February 16, 2018 and the case was transferred to the MDL on May 7, 2018. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 24. MSPA Claims 1, LLC could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, MSPA Claims 1, LLC elected not to do so. Instead, MSPA Claims 1, LLC waited five years after its deadline to amend to seek leave to assert claims against the PBMs. MSPA Claims 1, LLC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Claims Dismissed with Prejudice.** This Court previously dismissed with prejudice "[a]ll claims in this case" brought by assignees of six third party payor assignors. Sept. 22, 2023 Order, *MSPA Claims 1, LLC et al. v. Anda, Inc., et al.*, No. 1:18-op-45526-DAP. MSPA Claims 1, LLC cannot amend its complaint to reassert claims that were dismissed with prejudice and leave to amend should be denied. *See Gale*, 142 F. Supp. 3d at 554–55 ("[A] stipulated dismissal with prejudice constitutes an adjudication on the merits" and denying motion for leave to amend

complaint when "[p]laintiffs fail to allege any claim within this Court's federal question jurisdiction that would not be barred by *res judicata*.").

**Failure to Implement a Litigation Hold.** MSPA Claims 1, LLC filed its original complaint on February 16, 2018. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 1-1. Despite filing its case years ago, MSPA Claims 1, LLC *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating MSPA Claims 1, LLC's case would force the parties and the Court to waste time and resources ascertaining the extent of MSPA Claims 1, LLC's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by MSPA Claims 1, LLC's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and MSPA Claims 1, LLC therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But MSPA Claims 1, LLC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** MSPA Claims 1, LLC, a third-party payer in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead,

it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Impermissible Claim-splitting.** MSPA Claims 1, LLC seeks leave to amend to add claims against the PBMs in two cases: *MSPA Claims 1, LLC, et al. v. Purdue Pharma L.P., et al.*, No. 1:18- op-45057-DAP; and *MSPA Claims 1, LLC, et al. v. Anda, Inc., et al.*, No. 1:18-op-45526-DAP. MSPA Claims 1, LLC's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for MSPA Claims 1, LLC's proposed RICO claim against the PBMs has expired. MSPA Claims 1, LLC filed its original complaint on February 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 1-1. It is therefore indisputable that MSPA Claims 1, LLC knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. MSPA Claims 1, LLC's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. MSPA Claims 1, LLC's request for leave to

amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. MSPA Claims 1, LLC's public-nuisance claim against the PBMs is therefore time-barred because MSPA Claims 1, LLC sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on February 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** MSPA Claims 1, LLC, a third-party payer in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1816. *MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP: Plaintiff MAO-MSO Recovery II, LLC, Florida

MAO-MSO Recovery II, LLC's untimely motion for leave to amend should be denied for several reasons. MAO-MSO Recovery II, LLC failed to provide notice of its proposed amendments through a proposed complaint. MAO-MSO Recovery II, LLC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, MAO-MSO Recovery II, LLC's motion should be denied due to futility, as MAO-MSO Recovery II, LLC does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** MAO-MSO Recovery II, LLC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, MAO-MSO Recovery II, LLC filed its original complaint on February 16, 2018 and the case was transferred to the MDL on May 7, 2018. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 24. MAO-MSO Recovery II, LLC could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, MAO-MSO Recovery II, LLC elected not to do so. Instead, MAO-MSO Recovery II, LLC waited five years after its deadline to amend to seek leave to assert claims against the PBMs. MAO-MSO Recovery II, LLC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Claims Dismissed with Prejudice.** This Court previously dismissed with prejudice "[a]ll claims in this case" brought by assignees of six third party payor assignors. Sept. 22, 2023 Order, *MSPA Claims 1, LLC et al. v. Anda, Inc., et al.*, No. 1:18-op-45526-DAP. MAO-MSO Recovery II, LLC cannot amend its complaint to reassert claims that were dismissed with prejudice and leave to amend should be denied. *See Gale*, 142 F. Supp. 3d at 554–55 ("[A] stipulated dismissal with prejudice constitutes an adjudication on the merits" and denying motion for leave to amend complaint when "[p]laintiffs fail to allege any claim within this Court's federal question jurisdiction that would not be barred by *res judicata*.").

**Failure to Implement a Litigation Hold.** MAO-MSO Recovery II, LLC filed its original complaint on February 16, 2018. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 1-1. Despite filing its case years ago, MAO-MSO Recovery II, LLC *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating MAO-MSO Recovery II, LLC's case would force the parties and the Court to waste time and resources ascertaining the extent of MAO-MSO Recovery II, LLC's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by MAO-MSO Recovery II, LLC's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and MAO-MSO Recovery II, LLC therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But MAO-MSO Recovery II, LLC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** MAO-MSO Recovery II, LLC, a third-party payer in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Impermissible Claim-splitting.** MAO-MSO Recovery II, LLC seeks leave to amend to add claims against the PBMs in two cases: *MSPA Claims 1, LLC, et al. v. Purdue Pharma L.P., et al.*, No. 1:18- op-45057-DAP; and *MSPA Claims 1, LLC, et al. v. Anda, Inc., et al.*, No. 1:18-op-45526-DAP. MAO-MSO Recovery II, LLC's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for MAO-MSO Recovery II, LLC's proposed RICO claim against the PBMs has expired. MAO-MSO Recovery II, LLC filed its original complaint on February 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 1-1. It is therefore indisputable that MAO-MSO Recovery II, LLC knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. MAO-MSO Recovery II, LLC's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. MAO-MSO Recovery II, LLC's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*,

2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. MAO-MSO Recovery II, LLC's public-nuisance claim against the PBMs is therefore time-barred because MAO-MSO Recovery II, LLC sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on February 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** MAO-MSO Recovery II, LLC, a third-party payer in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1817. *MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP: Plaintiff MSP Recovery Claims, Series LLC, Florida

MSP Recovery Claims, Series LLC's untimely motion for leave to amend should be denied for several reasons. MSP Recovery Claims, Series LLC failed to provide notice of its proposed amendments through a proposed complaint. MSP Recovery Claims, Series LLC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, MSP Recovery Claims, Series LLC's motion should be denied due to futility, as MSP Recovery Claims, Series LLC does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** MSP Recovery Claims, Series LLC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, MSP Recovery Claims, Series LLC filed its original complaint on February 16, 2018 and the case was transferred to the MDL on May 7, 2018. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 24. MSP Recovery Claims, Series LLC could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, MSP Recovery Claims, Series LLC elected not to do so. Instead, MSP Recovery Claims, Series LLC waited five years after its deadline to amend to seek leave to assert claims against the PBMs. MSP Recovery Claims, Series LLC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Claims Dismissed with Prejudice.** This Court previously dismissed with prejudice "[a]ll claims in this case" brought by assignees of six third party payor assignors. Sept. 22, 2023 Order, *MSPA Claims 1, LLC et al. v. Anda, Inc., et al.*, No. 1:18-op-45526-DAP. MSP Recovery Claims, Series LLC cannot amend its complaint to reassert claims that were dismissed with prejudice and leave to amend should be denied. *See Gale*, 142 F. Supp. 3d at 554–55 ("[A] stipulated dismissal with prejudice constitutes an adjudication on the merits" and denying motion for leave to amend complaint when "[p]laintiffs fail to allege any claim within this Court's federal question jurisdiction that would not be barred by *res judicata*.").

**Failure to Implement a Litigation Hold.** MSP Recovery Claims, Series LLC filed its original complaint on February 16, 2018. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 1-1. Despite filing its case years ago, MSP Recovery Claims, Series LLC *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating MSP Recovery Claims, Series LLC's case would force the parties and the Court to waste time and resources ascertaining the extent of MSP Recovery Claims, Series LLC's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by MSP Recovery Claims, Series LLC's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and MSP Recovery Claims, Series LLC therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But MSP Recovery Claims, Series LLC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** MSP Recovery Claims, Series LLC, a third-party payer in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a

differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Impermissible Claim-splitting.** MSP Recovery Claims, Series LLC seeks leave to amend to add claims against the PBMs in two cases: *MSPA Claims 1, LLC, et al. v. Purdue Pharma L.P., et al.*, No. 1:18- op-45057-DAP; and *MSPA Claims 1, LLC, et al. v. Anda, Inc., et al.*, No. 1:18-op-45526-DAP. MSP Recovery Claims, Series LLC's impermissible claim-splitting is a waste of judicial resources and should be rejected. *See Waad*, 762 F. App'x at 260–63 (finding no abuse of discretion where district court dismissed plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case); *Stripling*, 2023 WL 5120238, at *2–4 (dismissing subsequent suit based on the same facts pursuant to the Court's inherent authority and discretion to manage its own docket). It also demonstrates a fundamental lack of diligence on the part of Plaintiff and the PEC.

**RICO Statute of Limitations.** The statute of limitations for MSP Recovery Claims, Series LLC's proposed RICO claim against the PBMs has expired. MSP Recovery Claims, Series LLC filed its original complaint on February 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 1-1. It is therefore indisputable that MSP Recovery Claims, Series LLC knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. MSP Recovery Claims, Series LLC's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. MSP Recovery Claims, Series LLC's request for leave to amend to add a RICO claim should be

denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. MSP Recovery Claims, Series LLC's public-nuisance claim against the PBMs is therefore time-barred because MSP Recovery Claims, Series LLC sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on February 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** MSP Recovery Claims, Series LLC, a third-party payer in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1818. *MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP: Plaintiff MSP Recovery Services LLC, Florida

MSP Recovery Services LLC's untimely motion for leave to amend should be denied for several reasons. MSP Recovery Services LLC failed to provide notice of its proposed amendments through a proposed complaint. MSP Recovery Services LLC also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, MSP Recovery Services LLC's motion should be denied due to futility, as MSP Recovery Services LLC does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by the statute of limitations, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** MSP Recovery Services LLC was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, MSP Recovery Services LLC filed its original complaint on February 16, 2018 and the case was transferred to the MDL on May 7, 2018. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 24. MSP Recovery Services LLC could have amended its complaint, without leave, to add claims against the PBMs in 2019. *See* Section II.A.1, above. Unlike many other plaintiffs, MSP Recovery Services LLC elected not to do so. Instead, MSP Recovery Services LLC waited five years after its deadline to amend to seek leave to assert claims against the PBMs. MSP Recovery Services LLC's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Claims Dismissed with Prejudice.** This Court previously dismissed with prejudice "[a]ll claims in this case" brought by assignees of six third party payor assignors. Sept. 22, 2023 Order, *MSPA Claims 1, LLC et al. v. Anda, Inc., et al.*, No. 1:18-op-45526-DAP. MSP Recovery Services LLC cannot amend its complaint to reassert claims that were dismissed with prejudice and leave to amend should be denied. *See Gale*, 142 F. Supp. 3d at 554–55 ("[A] stipulated dismissal with prejudice constitutes an adjudication on the merits" and denying motion for leave to amend complaint when "[p]laintiffs fail to allege any claim within this Court's federal question jurisdiction that would not be barred by *res judicata*.").

**Failure to Implement a Litigation Hold.** MSP Recovery Services LLC filed its original complaint on February 16, 2018. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 1-1. Despite filing its case years ago, MSP Recovery Services LLC *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating MSP Recovery Services LLC's case would force the parties and the Court to waste time and resources ascertaining the extent of MSP Recovery Services LLC's document destruction and the appropriate sanctions— just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by MSP Recovery Services LLC's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and MSP Recovery Services LLC therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But MSP Recovery Services LLC's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** MSP Recovery Services LLC, a third-party payer in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Plaintiff is Not a Party.** MSP Recovery Services LLC seeks leave to amend the complaint in *MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, but MSP Recovery Services LLC is not a named plaintiff in that case. Because MSP Recovery Services LLC has not submitted any proposed complaint and is not a plaintiff in the existing case, MSP Recovery Services LLC has not pleaded any facts establishing injury to MSP Recovery Services LLC and its request for leave to amend should be denied as futile. *See Stuebing Automatic Mach. Co.*, 2016 WL 7365093, at *2 (denying leave to amend where counterclaim plaintiff failed to set forth facts showing a cognizable injury).

**RICO Statute of Limitations.** The statute of limitations for MSP Recovery Services LLC's proposed RICO claim against the PBMs has expired. MSP Recovery Services LLC filed its original complaint on February 16, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See MSPA Claims 1, LLC et al. v. Anda, Inc. et al.*, Case No. 1:18-op-45526-DAP, ECF No. 1-1. It is therefore indisputable that MSP Recovery Services LLC knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. MSP Recovery Services LLC's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. MSP Recovery Services LLC's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Public Nuisance Statute of Limitations.** In Florida, public-nuisance claims are subject to a four-year limitations period. MSP Recovery Services LLC's public-nuisance claim against the PBMs is therefore time-barred because MSP Recovery Services LLC sought leave to amend its complaint on July 29, 2024—six years after filing its original complaint on February 16, 2018—and the proposed amendment does not relate back to the original filing for purposes of the applicable statute of limitations. *See Zakora*, 44 F.4th at 480 ("This court has repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." (cleaned up)).

**Plaintiff Lacks Standing.** MSP Recovery Services LLC, a third-party payer in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1819. *International Union of Painters and Allied Trades 1974 v. Purde Pharma L.P. et al.*, Case No. 1:19-op-45854-DAP: Plaintiff International Union of Painters and Allied Trades 1974, New York

International Union of Painters and Allied Trades 1974's untimely motion for leave to amend should be denied for several reasons. International Union of Painters and Allied Trades 1974 failed to provide notice of its proposed amendments through a proposed complaint. International Union of Painters and Allied Trades 1974 also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, International Union of Painters and Allied Trades 1974's motion should be denied due to futility, as International Union of Painters and Allied Trades 1974 does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** International Union of Painters and Allied Trades 1974 was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend

earlier. *See* Section II.A, above. Moreover, International Union of Painters and Allied Trades 1974 filed its original complaint on September 13, 2019 and the case was transferred to the MDL on October 17, 2019. *See International Union of Painters and Allied Trades 1974 v. Purde Pharma L.P. et al.*, Case No. 1:19-op-45854-DAP, ECF No. 7. International Union of Painters and Allied Trades 1974 could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, International Union of Painters and Allied Trades 1974 elected not to do so. Instead, International Union of Painters and Allied Trades 1974 waited four years after its deadline to amend to seek leave to assert claims against the PBMs. International Union of Painters and Allied Trades 1974's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** International Union of Painters and Allied Trades 1974 filed its original complaint on September 13, 2019. *See International Union of Painters and Allied Trades 1974 v. Purde Pharma L.P. et al.*, Case No. 1:19-op-45854-DAP, ECF No. 1. Despite filing its case years ago, International Union of Painters and Allied Trades 1974 *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating International Union of Painters and Allied Trades 1974's case would force the parties and the Court to waste time and resources ascertaining the extent of International Union of Painters and Allied Trades 1974's document destruction and the appropriate sanctions—just as the parties were forced to do in the

three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by International Union of Painters and Allied Trades 1974's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and International Union of Painters and Allied Trades 1974 therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But International Union of Painters and Allied Trades 1974's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** International Union of Painters and Allied Trades 1974, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**RICO Statute of Limitations.** The statute of limitations for International Union of Painters and Allied Trades 1974's proposed RICO claim against the PBMs has expired. International Union of Painters and Allied Trades 1974 filed its original complaint on September 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See International Union of Painters and Allied Trades 1974 v. Purde Pharma L.P. et al.*, Case No.

1:19-op-45854-DAP, ECF No. 1. It is therefore indisputable that International Union of Painters and Allied Trades 1974 knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. International Union of Painters and Allied Trades 1974's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. International Union of Painters and Allied Trades 1974's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** International Union of Painters and Allied Trades 1974, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. International Union of Painters and Allied Trades 1974's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1820. *Building Trades Welfare Benefit Fund et. al. v. Purdue Pharma L.P. et. al.*, Case No. 1:19-op-45899-DAP: Plaintiff Building Trades Welfare Benefit Fund, New York

Building Trades Welfare Benefit Fund's untimely motion for leave to amend should be denied for several reasons. Building Trades Welfare Benefit Fund failed to provide notice of its proposed amendments through a proposed complaint. Building Trades Welfare Benefit Fund also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Building Trades Welfare Benefit Fund's motion should be denied due to futility, as Building

Trades Welfare Benefit Fund does not assert any allegations tying the PBMs to its alleged harm, and its RICO claim is barred by the statute of limitations.

**Lack of Diligence.** Building Trades Welfare Benefit Fund was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Building Trades Welfare Benefit Fund filed its original complaint on September 13, 2019 and the case was transferred to the MDL on October 21, 2019. *See Building Trades Welfare Benefit Fund et. al. v. Purdue Pharma L.P. et. al.*, Case No. 1:19-op-45899-DAP, ECF No. 8. Building Trades Welfare Benefit Fund could have amended its complaint, without leave, to add claims against the PBMs in 2020. *See* Section II.A.1, above. Unlike many other plaintiffs, Building Trades Welfare Benefit Fund elected not to do so. Instead, Building Trades Welfare Benefit Fund waited four years after its deadline to amend to seek leave to assert claims against the PBMs. Building Trades Welfare Benefit Fund's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prior Notice as an Express Scripts Client.** Building Trades Welfare Benefit Fund previously entered into a contract with Express Scripts for PBM services related to utilization management and formulary development. *See* Achter Decl., Exhibit A. That contract notified Building Trades Welfare Benefit Fund of the PBM services Express Scripts provides and Building Trades Welfare Benefit Fund began receiving those services on January 2, 2006. *See id.* Inasmuch as Building Trades Welfare Benefit Fund seeks to add claims against Express Scripts entities

related to utilization management or formulary placement (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), Building Trades Welfare Benefit Fund knew or should have known of the alleged wrongful conduct more than ten years before moving to amend. *See* Section III.A.3, above. Building Trades Welfare Benefit Fund's delay in seeking leave to amend negates any finding of good cause for leave to amend. *Garza*, 972 F.3d at 879 (denying motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline).

**Failure to Implement a Litigation Hold.** Building Trades Welfare Benefit Fund filed its original complaint on September 13, 2019. *See Building Trades Welfare Benefit Fund et. al. v. Purdue Pharma L.P. et. al.*, Case No. 1:19-op-45899-DAP, ECF No. 1. Despite filing its case years ago, Building Trades Welfare Benefit Fund *never* implemented a litigation hold, in violation of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating Building Trades Welfare Benefit Fund's case would force the parties and the Court to waste time and resources ascertaining the extent of Building Trades Welfare Benefit Fund's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Building Trades Welfare Benefit Fund's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Building Trades Welfare Benefit Fund therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under New York law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Building Trades Welfare Benefit Fund's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under New York law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Building Trades Welfare Benefit Fund, a third party payor in New York, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**RICO Statute of Limitations.** The statute of limitations for Building Trades Welfare Benefit Fund's proposed RICO claim against the PBMs has expired. Building Trades Welfare Benefit Fund filed its original complaint on September 13, 2019, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Building Trades Welfare Benefit Fund et. al. v. Purdue Pharma L.P. et. al.*, Case No. 1:19-op-45899-DAP, ECF No. 1. It is therefore indisputable that Building Trades Welfare Benefit Fund knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, almost five years before seeking leave to amend. Building Trades Welfare Benefit Fund's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Building Trades Welfare Benefit Fund's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Building Trades Welfare Benefit Fund, a third party payor in New York, lacks standing to assert a claim under NY SSL § 145-B because it is not New York City, a county in New York, or the state of New York. *See* Section III.B.6, above. Building Trades Welfare Benefit Fund's request for leave to amend its complaint to add a claim under NY SSL § 145-B is therefore futile and should be denied. *Gallant*, 2020 WL 9349975, at *2–3 (affirming denial of leave to amend where plaintiff lacked standing to assert the proposed claim).

### 1821. *SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, v. Par Pharmaceutical*, **Case No. 1:21-op-45079-DAP: Plaintiff SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company, Florida**

SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company's untimely motion for leave to amend should be denied for several reasons. SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company failed to provide notice of its proposed amendments through a proposed complaint. SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company's motion should be denied due to futility, as SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A,

above. Moreover, SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company filed its original complaint on November 13, 2020 and the case was transferred to the MDL on June 8, 2021. *See SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, v. Par Pharmaceutical*, Case No. 1:21-op-45079-DAP, ECF No. 19. SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company could have amended its complaint, without leave, to add claims against the PBMs in 2021. *See* Section II.A.1, above. Unlike many other plaintiffs, SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company elected not to do so. Instead, SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company waited three years after its deadline to amend to seek leave to assert claims against the PBMs. SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company filed its original complaint on November 13, 2020. *See SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, v. Par Pharmaceutical*, Case No. 1:21-op-45079-DAP, ECF No. 1-1. Despite filing its case years ago, SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company *never* implemented a litigation hold, in violation

of this Court's orders (ECF Nos. 232; 5455). *See* ECF No. 5687-1 (Date Litigation Hold Implemented: Never). Litigating SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company's case would force the parties and the Court to waste time and resources ascertaining the extent of SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company, a third-party payer in Florida,

has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Plaintiff Lacks Standing.** SERIES 17-03-615, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company, a third-party payer in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1822. *Putnam County School Board v. Cephalon, Inc. et al.*, Case No. 1:22-op-45025-DAP: Plaintiff Putnam County School Board, Florida

Putnam County School Board's untimely motion for leave to amend should be denied for several reasons. Putnam County School Board failed to provide notice of its proposed amendments through a proposed complaint. Putnam County School Board also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Putnam County School Board's motion should be denied due to futility, as Putnam County School Board does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Putnam County School Board was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Putnam County School Board filed its original complaint directly into the MDL on May 27, 2022. *See Putnam County School Board v. Cephalon, Inc. et al.*, Case No. 1:22-op-45025-DAP, ECF No. 1. Putnam County School Board could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Putnam County School Board elected not to do so. Putnam County School Board waited

nearly two years after its deadline to amend to seek leave to assert claims against the PBMs. Putnam County School Board's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Putnam County School Board violated its basic duty to implement a timely litigation hold. Putnam County School Board filed its original complaint on May 27, 2022, but waited until September 13, 2024 to implement a litigation hold—more than two years later. *See Putnam County School Board v. Cephalon, Inc. et al.*, Case No. 1:22-op-45025-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 13, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Putnam County School Board's case would force the parties and the Court to waste time and resources ascertaining the extent of Putnam County School Board's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Putnam County School Board's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Putnam County School Board therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Putnam County School Board failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Putnam County School Board's

health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Putnam County School Board of this deficiency on September 16, 2024 (*see* Exhibit B), but Putnam County School Board refused to amend or supplement its Fact Sheet. Under this Court's orders, Putnam County School Board's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Putnam County School Board's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Putnam County School Board's potential claims against them. Putnam County School Board's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Florida law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Putnam County School Board's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Florida law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Putnam County School Board, a school district in Florida, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries.

Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Plaintiff Lacks Standing.** Putnam County School Board, a school district in Florida, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1823.** ***Hancock County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45027-DAP: Plaintiff Hamblen County Board of Education, Tennessee**

Hamblen County Board of Education's untimely motion for leave to amend should be denied for several reasons. Hamblen County Board of Education failed to provide notice of its proposed amendments through a proposed complaint. Hamblen County Board of Education also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hamblen County Board of Education's motion should be denied due to futility, as Hamblen County Board of Education does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hamblen County Board of Education was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hamblen County Board of Education filed its original complaint directly into the MDL on June 27, 2022. *See Hancock County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45027-DAP, ECF No. 1. Hamblen County Board of Education could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Hamblen County Board of Education elected not to do so. Hamblen County Board of Education waited nearly two years after its deadline to amend to seek

leave to assert claims against the PBMs. Hamblen County Board of Education's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Hamblen County Board of Education violated its basic duty to implement a timely litigation hold. Hamblen County Board of Education filed its original complaint on June 27, 2022, but waited until September 10, 2024 to implement a litigation hold—more than two years later. *See Hancock County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45027-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 10, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hamblen County Board of Education's case would force the parties and the Court to waste time and resources ascertaining the extent of Hamblen County Board of Education's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hamblen County Board of Education's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hamblen County Board of Education therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Hamblen County Board of Education failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Hamblen County Board

of Education's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Hamblen County Board of Education of this deficiency on September 16, 2024 (*see* Exhibit B), but Hamblen County Board of Education refused to amend or supplement its Fact Sheet. Under this Court's orders, Hamblen County Board of Education's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Hamblen County Board of Education's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Hamblen County Board of Education's potential claims against them. Hamblen County Board of Education's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hamblen County Board of Education's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Hamblen County Board of Education, a school district in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a

differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Plaintiff Lacks Standing.** Hamblen County Board of Education, a school district in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1824.** ***Hancock County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45027-DAP: Plaintiff Hancock County Board of Education, Tennessee**

Hancock County Board of Education's untimely motion for leave to amend should be denied for several reasons. Hancock County Board of Education failed to provide notice of its proposed amendments through a proposed complaint. Hancock County Board of Education also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Hancock County Board of Education's motion should be denied due to futility, as Hancock County Board of Education does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Hancock County Board of Education was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Hancock County Board of Education filed its original complaint directly into the MDL on June 27, 2022. *See Hancock County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45027-DAP, ECF No. 1. Hancock County Board of Education could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Hancock County Board of Education elected not to do so. Hancock County Board of Education waited nearly two years after its deadline to amend to seek leave to assert claims against the PBMs. Hancock County Board of Education's lack of diligence

in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Implement a Litigation Hold.** Hancock County Board of Education filed its original complaint on June 27, 2022. *See Hancock County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45027-DAP, ECF No. 1. Despite filing its case years ago, Hancock County Board of Education *never* implemented a litigation hold and is instead purporting to rely on non-specific and unidentified document retention laws. *See* ECF No. 5687-1 (Date Litigation Hold Implemented: *(Never)). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Hancock County Board of Education's case would force the parties and the Court to waste time and resources ascertaining the extent of Hancock County Board of Education's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Hancock County Board of Education's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Hancock County Board of Education therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Tennessee law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Hancock County Board of Education's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise

those allocation-of-fault rights under Tennessee law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at \*28.

**Failure to State a Claim.** Hancock County Board of Education, a school district in Tennessee, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Plaintiff Lacks Standing.** Hancock County Board of Education, a school district in Tennessee, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1825.** ***Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP: Plaintiff Kanawha County Board of Education, West Virginia**

Kanawha County Board of Education's untimely motion for leave to amend should be denied for several reasons. Kanawha County Board of Education failed to provide notice of its proposed amendments through a proposed complaint. Kanawha County Board of Education also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Kanawha County Board of Education's motion should be denied due to futility, as Kanawha County Board of Education does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in West Virginia, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Kanawha County Board of Education was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See*

Section II.A, above. Moreover, Kanawha County Board of Education filed its original complaint directly into the MDL on July 1, 2022. *See Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP, ECF No. 1. Kanawha County Board of Education could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Kanawha County Board of Education elected not to do so. Kanawha County Board of Education waited nearly two years after its deadline to amend to seek leave to assert claims against the PBMs. Kanawha County Board of Education's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Kanawha County Board of Education violated its basic duty to implement a timely litigation hold. Kanawha County Board of Education filed its original complaint on July 1, 2022, but waited until September 11, 2024 to implement a litigation hold—more than two years later. *See Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 11, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Kanawha County Board of Education's case would force the parties and the Court to waste time and resources ascertaining the extent of Kanawha County Board of Education's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Kanawha County Board of Education's disregard for its most basic discovery

obligations as a litigant, compounded by the delay in seeking leave to amend, and Kanawha County

Board of Education therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020

WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in

significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

      **Failure to Prosecute.** In its Plaintiff Fact Sheet, Kanawha County Board of Education

failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Kanawha County

Board of Education's health plans, carriers, third party administrators, and pharmacy benefit

managers throughout the relevant time period. The PBMs notified Kanawha County Board of

Education of this deficiency on September 16, 2024 (*see* Exhibit B), but Kanawha County Board

of Education refused to amend or supplement its Fact Sheet. Under this Court's orders, Kanawha

County Board of Education's case is therefore subject to "*dismiss[al] with prejudice*" for failure

to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Kanawha

County Board of Education's refusal to provide basic information related to its health care plans

prejudices the PBMs' ability to defend against Kanawha County Board of Education's potential

claims against them. Kanawha County Board of Education's failure to diligently prosecute its case,

coupled with the prejudice against the PBMs, negates any finding of good cause and leave to

amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to

dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously

pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as

moot because claims were dismissed for failure to prosecute).

      **Prejudice Due to Loss of Evidence.** Under West Virginia law, the PBMs have the right

to seek to allocate fault to other parties. *See* Section III.A.6, above. But Kanawha County Board

of Education's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise

those allocation-of-fault rights under West Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Kanawha County Board of Education, a school district in West Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above; *Glenn*, 642 F. Supp. 3d at 638.

**Plaintiff's Public Nuisance Claim is Futile.** Kanawha County Board of Education is a plaintiff in West Virginia. Kanawha County Board of Education's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because West Virginia's public nuisance law does not extend to "the sale, distribution, and manufacture of opioids." *Huntington*, 609 F. Supp. 3d at 475; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Kanawha County Board of Education, a school district in West Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1826.** ***Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP: Plaintiff Marion County Board of Education, West Virginia**

Marion County Board of Education's untimely motion for leave to amend should be denied for several reasons. Marion County Board of Education failed to provide notice of its proposed amendments through a proposed complaint. Marion County Board of Education also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Marion County Board of Education's motion should be denied due to futility, as Marion County Board of

Education does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in West Virginia, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Marion County Board of Education was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Marion County Board of Education filed its original complaint directly into the MDL on July 1, 2022. *See Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP, ECF No. 1. Marion County Board of Education could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Marion County Board of Education elected not to do so. Marion County Board of Education waited nearly two years after its deadline to amend to seek leave to assert claims against the PBMs. Marion County Board of Education's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Marion County Board of Education violated its basic duty to implement a timely litigation hold. Marion County Board of Education filed its original complaint on July 1, 2022, but waited until September 11, 2024 to implement a litigation hold—more than two years later. *See Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 11, 2024). This is a plain violation of this Court's orders.

ECF Nos. 232; 5455. Litigating Marion County Board of Education's case would force the parties and the Court to waste time and resources ascertaining the extent of Marion County Board of Education's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Marion County Board of Education's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Marion County Board of Education therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under West Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Marion County Board of Education's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under West Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Marion County Board of Education, a school district in West Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Marion County Board of Education is a plaintiff in West Virginia. Marion County Board of Education's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because West Virginia's public

nuisance law does not extend to "the sale, distribution, and manufacture of opioids." *Huntington*, 609 F. Supp. 3d at 475; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Marion County Board of Education, a school district in West Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1827.** ***Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP: Plaintiff McDowell County Board of Education, West Virginia**

McDowell County Board of Education's untimely motion for leave to amend should be denied for several reasons. McDowell County Board of Education failed to provide notice of its proposed amendments through a proposed complaint. McDowell County Board of Education also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, McDowell County Board of Education's motion should be denied due to futility, as McDowell County Board of Education does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in West Virginia, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** McDowell County Board of Education was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, McDowell County Board of Education filed its original complaint directly into the MDL on July 1, 2022. *See Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP, ECF No. 1. McDowell County Board of Education could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, McDowell County Board of Education elected not to do so. McDowell County Board of Education waited nearly two years after its deadline to amend

to seek leave to assert claims against the PBMs. McDowell County Board of Education's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** McDowell County Board of Education violated its basic duty to implement a timely litigation hold. McDowell County Board of Education filed its original complaint on July 1, 2022, but waited until September 11, 2024 to implement a litigation hold—more than two years later. *See Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 11, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating McDowell County Board of Education's case would force the parties and the Court to waste time and resources ascertaining the extent of McDowell County Board of Education's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by McDowell County Board of Education's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and McDowell County Board of Education therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under West Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But McDowell County Board of Education's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under West Virginia law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** McDowell County Board of Education, a school district in West Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** McDowell County Board of Education is a plaintiff in West Virginia. McDowell County Board of Education's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because West Virginia's public nuisance law does not extend to "the sale, distribution, and manufacture of opioids." *Huntington*, 609 F. Supp. 3d at 475; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** McDowell County Board of Education, a school district in West Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1828.** *Marion County Board of Education et al. v. Cephalon, Inc. et al.*, **Case No. 1:22-op-45028-DAP: Plaintiff Wyoming County Board of Education, West Virginia**

Wyoming County Board of Education's untimely motion for leave to amend should be denied for several reasons. Wyoming County Board of Education failed to provide notice of its proposed amendments through a proposed complaint. Wyoming County Board of Education also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement

a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Wyoming County Board of Education's motion should be denied due to futility, as Wyoming County Board of Education does not assert any allegations tying the PBMs to its alleged harm, its proposed public nuisance claim is barred by state law in West Virginia, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Wyoming County Board of Education was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Wyoming County Board of Education filed its original complaint directly into the MDL on July 1, 2022. *See Marion County Board of Education et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45028-DAP, ECF No. 1. Wyoming County Board of Education could have amended its complaint, without leave, to add claims against the PBMs in 2022. *See* Section II.A.1, above. Unlike many other plaintiffs, Wyoming County Board of Education elected not to do so. Wyoming County Board of Education waited nearly two years after its deadline to amend to seek leave to assert claims against the PBMs. Wyoming County Board of Education's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Prejudice Due to Loss of Evidence.** Under West Virginia law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Wyoming County Board of Education's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under West Virginia law due to the loss of relevant evidence over

time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Wyoming County Board of Education, a school district in West Virginia, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff's Public Nuisance Claim is Futile.** Wyoming County Board of Education is a plaintiff in West Virginia. Wyoming County Board of Education's request for leave to add the PBMs as defendants to a public nuisance claim should be denied as futile because West Virginia's public nuisance law does not extend to "the sale, distribution, and manufacture of opioids." *Huntington*, 609 F. Supp. 3d at 475; *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Wyoming County Board of Education, a school district in West Virginia, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

> **1829.** *Susanville Elementary School District et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45031-DAP: Plaintiff Lassen County Office of Education, California

Lassen County Office of Education's untimely motion for leave to amend should be denied for several reasons. Lassen County Office of Education failed to provide notice of its proposed amendments through a proposed complaint. Lassen County Office of Education also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lassen County Office of Education's motion should be denied due to futility, as Lassen County Office of Education does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lassen County Office of Education was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Lassen County Office of Education filed its original complaint directly into the MDL on October 4, 2022. *See Susanville Elementary School District et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45031-DAP, ECF No. 1. Lassen County Office of Education could have amended its complaint, without leave, to add claims against the PBMs in 2023. *See* Section II.A.1, above. Unlike many other plaintiffs, Lassen County Office of Education elected not to do so. Lassen County Office of Education waited a year and a half after its deadline to amend to seek leave to assert claims against the PBMs. Lassen County Office of Education's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Lassen County Office of Education violated its basic duty to implement a timely litigation hold. Lassen County Office of Education filed its original complaint on October 4, 2022, but waited until September 9, 2024 to implement a litigation hold—nearly two years later. *See Susanville Elementary School District et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45031-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 9, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lassen County Office of Education's case would force the parties and the Court to waste time and resources ascertaining the extent of Lassen County Office of Education's document destruction and the appropriate sanctions—just as the parties were forced

to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lassen County Office of Education's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Lassen County Office of Education therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Lassen County Office of Education, a school district in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Lassen County Office of Education, a school district in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1830. *Susanville Elementary School District et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45031-DAP: Plaintiff Susanville Elementary School District, California

Susanville Elementary School District's untimely motion for leave to amend should be denied for several reasons. Susanville Elementary School District failed to provide notice of its proposed amendments through a proposed complaint. Susanville Elementary School District also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Susanville Elementary School District's motion should be denied due to futility, as Susanville Elementary School District does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Susanville Elementary School District was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Susanville Elementary School District filed its original complaint directly into the MDL on October 4, 2022. *See Susanville Elementary School District et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45031-DAP, ECF No. 1. Susanville Elementary School District could have amended its complaint, without leave, to add claims against the PBMs in 2023. *See* Section II.A.1, above. Unlike many other plaintiffs, Susanville Elementary School District elected not to do so. Susanville Elementary School District waited a year and a half after its deadline to amend to seek leave to assert claims against the PBMs. Susanville Elementary School District's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Failure to Timely Implement a Litigation Hold.** Susanville Elementary School District violated its basic duty to implement a timely litigation hold. Susanville Elementary School District filed its original complaint on October 4, 2022, but waited until September 9, 2024 to implement a litigation hold—nearly two years later. *See Susanville Elementary School District et al. v. Cephalon, Inc. et al.*, Case No. 1:22-op-45031-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: September 9, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Susanville Elementary School District's case would force the parties and the Court to waste time and resources ascertaining the extent of Susanville Elementary School District's document destruction and the appropriate sanctions—just as the parties were

forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Susanville Elementary School District's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Susanville Elementary School District therefore lacks good cause for leave to amend its complaint. *See Pethel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to State a Claim.** Susanville Elementary School District, a school district in California, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Susanville Elementary School District, a school district in California, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1831. *Lee County, AL et al. v. Mylan Pharmaceuticals Inc. et al.*, Case No. 1:23-op-45010-DAP: Plaintiff Lee County, Alabama

Lee County's untimely motion for leave to amend should be denied for several reasons. Lee County failed to provide notice of its proposed amendments through a proposed complaint. Lee County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, failure to submit a plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Lee County's motion should be denied due to futility, as Lee County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Lee County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Lee County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Lee County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.33% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Lee County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Lee County violated its basic duty to implement a timely litigation hold. Lee County filed its original complaint on November 8, 2023, but waited until July 15, 2024 to implement a litigation hold—more than eight months later. *See Lee County, AL et al. v. Mylan Pharmaceuticals Inc. et al.*, Case No. 1:23-op-45010-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 15, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Lee County's case would force the parties and the Court to waste time and resources ascertaining the extent of Lee County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Lee County's disregard for its most basic discovery obligations as a litigant,

compounded by the delay in seeking leave to amend, and Lee County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Failure to Prosecute.** Despite the Court's repeated instructions to the contrary, Lee County has *never* served a Plaintiff Fact Sheet. Lee County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Lee County's failure to diligently prosecute its case negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Lee County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Lee County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Lee County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and

thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Lee County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1832. *Lee County, AL et al. v. Mylan Pharmaceuticals Inc. et al.*, Case No. 1:23-op-45010-DAP: Plaintiff Winston County, Alabama

Winston County's untimely motion for leave to amend should be denied for several reasons. Winston County failed to provide notice of its proposed amendments through a proposed complaint. Winston County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to timely implement a litigation hold, and because its untimely motion would unduly prejudice the PBMs. Moreover, Winston County's motion should be denied due to futility, as Winston County does not assert any allegations tying the PBMs to its alleged harm, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Winston County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Winston County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Winston County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo

Decl., Exhibit C (0.22% market share). That insignificant dispensing volume is much too low to support a finding of good cause for Winston County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Timely Implement a Litigation Hold.** Winston County violated its basic duty to implement a timely litigation hold. Winston County filed its original complaint on November 8, 2023, but waited until July 15, 2024 to implement a litigation hold—more than eight months later. *See Lee County, AL et al. v. Mylan Pharmaceuticals Inc. et al.*, Case No. 1:23-op-45010-DAP, ECF No. 1; *see also* ECF No. 5687-1 (Date Litigation Hold Implemented: July 15, 2024). This is a plain violation of this Court's orders. ECF Nos. 232; 5455. Litigating Winston County's case would force the parties and the Court to waste time and resources ascertaining the extent of Winston County's document destruction and the appropriate sanctions—just as the parties were forced to do in the three PBM bellwethers that failed to implement litigation holds until 2024. The PBMs are prejudiced by Winston County's disregard for its most basic discovery obligations as a litigant, compounded by the delay in seeking leave to amend, and Winston County therefore lacks good cause for leave to amend its complaint. *See Pethtel*, 2020 WL 6827791, at *28 (denying leave to amend in part because the passage of time resulted in significant prejudice due to the loss of documents or records); *see also* Section III.A.4, above.

**Prejudice Due to Loss of Evidence.** Under Alabama law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Winston County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under Alabama law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Winston County, a municipality in Alabama, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**Plaintiff Lacks Standing.** Winston County lacks statutory standing to assert a public nuisance claim under Alabama law because it "is clearly not an individual, nor a city, nor the [s]tate," and thus amendment is futile. *Lee County*, 2022 WL 450810, at *4 (concluding an Alabama county lacked standing to bring a Ala. Code § 6-5-121 claim); *see* Section III.B.3, above.

**Plaintiff Lacks Standing.** Winston County, a municipality in Alabama, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

### 1833. *Cleveland County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45304-DAP: Plaintiff Cleveland County, North Carolina

Cleveland County's untimely motion for leave to amend should be denied for several reasons. Cleveland County failed to provide notice of its proposed amendments through a proposed complaint. Cleveland County also lacks good cause under Rule 15 or Rule 16 due to a lack of diligence, failure to submit a complete plaintiff fact sheet, and because its untimely motion would unduly prejudice the PBMs. Moreover, Cleveland County's motion should be denied due to futility, as Cleveland County does not assert any allegations tying the PBMs to its alleged harm, its RICO claim is barred by the statute of limitations, and it lacks standing to assert claims under New York state law.

**Lack of Diligence.** Cleveland County was on notice of its claims against the PBMs for years but failed to exercise due diligence by moving to amend earlier. *See* Section II.A, above. Moreover, Cleveland County first amended its complaint on May 25, 2018. *See Cleveland County*

*v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45304-DAP, ECF No. 5. Cleveland County amended its complaint again on March 15, 2019. *See Cleveland County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45304-DAP, ECF No. 8. Unlike many other plaintiffs, Cleveland County declined to add claims against the PBMs in its amended complaints. *See* Section II.A.1, above. Cleveland County's deadline to amend was in 2019. Cleveland County waited five years after its deadline to amend to seek leave to assert claims against the PBMs. Cleveland County's lack of diligence in pursuing its claims negates any finding of good cause. *See Garza*, 972 F.3d at 879 (affirming denial of motion to amend nine months after the scheduling order's deadline because plaintiff "had all the information [she] needed" to bring claims before the deadline); *Glazer*, 704 F.3d at 459 (affirming denial of motion to amend because plaintiff took a "wait-and-see approach" instead of timely moving to amend).

**OptumRx's Home-Delivery Pharmacy Has a Negligible Market Share.** OptumRx's home-delivery pharmacy shipped *less than 0.5%* of the total number of opioid units shipped to Cleveland County's geographic jurisdiction over the ten-year period of 2010 to 2019. *See* Gustafson Decl. (0.09% market share for Cleveland County). That insignificant dispensing volume is much too low to support a finding of good cause for Cleveland County to add dispensing claims against OptumRx's home-delivery pharmacy years after the amendment deadline. *See* Section III.A.2, above.

**Express Scripts' Mail Order Pharmacy Has A Negligible Market Share.** Express Scripts' mail order pharmacy shipped *less than 0.5%* of the total number of prescription opioid units shipped to Cleveland County's geographic jurisdiction during 2009 to 2019. *See* DeCarlo Decl., Exhibit C (0.38% market share). That insignificant dispensing volume is much too low to

support a finding of good cause for Cleveland County to add dispensing claims against Express Scripts' mail order pharmacy entities. *See* Section III.A.2, above.

**Failure to Prosecute.** In its Plaintiff Fact Sheet, Cleveland County failed to provide complete answers to Questions I.B.8 and I.B.9, relating to Cleveland County's health plans, carriers, third party administrators, and pharmacy benefit managers throughout the relevant time period. The PBMs notified Cleveland County of this deficiency on September 16, 2024 (*see* Exhibit B), but Cleveland County refused to amend or supplement its Fact Sheet. Under this Court's orders, Cleveland County's case is therefore subject to "***dismiss[al] with prejudice***" for failure to prosecute. ECF No. 4985 at 1 (emphasis in original); *see* Section III.A.5, above. Cleveland County's refusal to provide basic information related to its health care plans prejudices the PBMs' ability to defend against Cleveland County's potential claims against them. Cleveland County's failure to diligently prosecute its case, coupled with the prejudice against the PBMs, negates any finding of good cause and leave to amend should be denied. *See* Final Amendment Order, ECF No. 5455 at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range*, 2017 WL 9477693, at *4 n.6 (denying motion for leave to amend as moot because claims were dismissed for failure to prosecute).

**Prejudice Due to Loss of Evidence.** Under North Carolina law, the PBMs have the right to seek to allocate fault to other parties. *See* Section III.A.6, above. But Cleveland County's delay in seeking to amend its complaint has impaired the PBMs' ability to exercise those allocation-of-fault rights under North Carolina law due to the loss of relevant evidence over time. That impairment substantially prejudices the PBMs in their ability to defend themselves. *See Pethtel*, 2020 WL 6827791, at *28.

**Failure to State a Claim.** Cleveland County, a municipality in North Carolina, has not pleaded any facts showing that the PBMs caused or substantially contributed to its injuries. Instead, it relies exclusively on the amended complaint of the City of Rochester, a differently situated plaintiff from another state. *See* Section III.B.1, above.

**RICO Statute of Limitations.** The statute of limitations for Cleveland County's proposed RICO claim against the PBMs has expired. Cleveland County filed its second amended complaint on May 25, 2018, alleging the same type of injuries *and* alleging a RICO claim against other defendants. *See Cleveland County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45304-DAP, ECF No. 5. It is therefore indisputable that Cleveland County knew of its RICO injury, at the very latest, the day it filed a complaint asserting a RICO claim, six years before seeking leave to amend. Cleveland County's RICO claim is therefore time-barred by RICO's four-year limitations period. ECF No. 2568 at 13 (holding that the RICO limitations period is triggered by "discovery of the injury, not discovery of [the] other elements of a claim" (quoting *Rotella*, 528 U.S. at 555)); *see* Section III.B.4, above. Cleveland County's request for leave to amend to add a RICO claim should be denied as futile. *See Oakley*, 2016 WL 1117596, at *5 (denying motion for leave to amend because RICO claims were time-barred).

**Plaintiff Lacks Standing.** Cleveland County, a municipality in North Carolina, lacks standing to state a claim for relief under any of the New York laws referenced in the City of Rochester's complaint. *See* Section III.B.6, above.

## **CONCLUSION**

The Moving Plaintiffs' omnibus motions for leave to amend fail to satisfy Rules 15 and 16 at every step. Allowing these proposed amendments would contravene the Rules of Civil Procedure, Sixth Circuit precedent, and this Court's own orders. The Court should deny the Moving Plaintiffs' omnibus motions for leave to amend.

Respectfully submitted this 16th day of January, 2025.

 /s/ Brian D. Boone

Brian D. Boone
Brandon C.E. Springer
Matthew P. Hooker
William W. Metcalf
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com
brandon.springer@alston.com
matthew.hooker@alston.com
will.metcalf@alston.com

Andrew Hatchett
Grace Assaye
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Suite 4900
Atlanta, GA 30309
T: (404) 881-7000
andrew.hatchett@alston.com
grace.assaye@alston.com

*Attorneys for UnitedHealth Group*
*Incorporated; Optum, Inc.; OptumInsight,*
*Inc.; OptumInsight Life Sciences, Inc.;*
*OptumRx, Inc.; OptumRx Discount Card*
*Services, LLC; Optum Perks, LLC;*
*OptumHealth Care Solutions, LLC;*
*OptumHealth Holdings, LLC; and Optum*
*Health Networks, Inc.*

 /s/ Jonathan G. Cooper

Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
T: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

Sage R. Vanden Heuvel
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
T: (213) 443-3000
sagevandenheuvel@quinnemanuel.com

Tara MacNeill
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
T: (305) 402-4880
taramacneill@quinnemanuel.com

*Attorneys for Express Scripts, Inc.; Express*
*Scripts Administrators, LLC; Medco Health*
*Solutions, Inc.; ESI Mail Order Processing,*
*Inc.; ESI Mail Pharmacy Service, Inc.;*
*Express Scripts Pharmacy, Inc.; Evernorth*
*Health, Inc. (formerly Express Scripts*
*Holding Company); and Express Scripts*
*Specialty Distribution Services, Inc.*